QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Charles K. Verhoeven (Bar No. 170151)
  charlesverhoeven@quinnemanuel.com
  Melissa Baily (Bar No. 237649)
  melissabaily@quinnemanuel.com
  Jordan Jaffe (Bar No. 254886)
  jordanjaffe@quinnemanuel.com
  Lindsay Cooper (Bar No. 287125)
  lindsaycooper@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

Attorneys for GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOOGLE LLC,<br><br>                  Plaintiff,<br><br>          vs.<br><br>SONOS, INC.,<br><br>                  Defendant. | CASE NO. 3:20-cv-06754-WHA<br><br>**FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NOS. 9,967,615; 10,779,033; 9,344,206; 10,469,966; AND 9,219,460**<br><br>**DEMAND FOR JURY TRIAL** |

**FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NOS. 9,967,615; 10,779,033; 9,344,206; 10,469,966; AND 9,219,460**

1.      Plaintiff Google LLC ("Google") seeks a declaratory judgment of non-infringement of United States Patent Nos. 9,967,615; 10,779,033; 9,344,206; 10,469,966; and 9,219,460 as follows:

**NATURE OF THE ACTION**

2.      This is an action for a declaratory judgment of non-infringement arising under the patent laws of the United States, Title 35 of the United States Code.  Google requests this relief because Defendant Sonos, Inc. ("Sonos") claims that Google infringes United States Patent Nos. 9,967,615 ("the '615 patent"); 10,779,033 ("the '033 patent"); 9,344,206 ("the '206 patent"); 10,469,966 ("the '966 patent"); and 9,219,460 ("the '460 patent") (collectively, the "Patents-in-Suit") by making, using, selling, offering for sale, and/or importing the following products: Chromecast, Chromecast Ultra, Chromecast Audio, Chromecast with Google TV,  Home Mini, Nest Mini, Home, Home Max, Home Hub, Nest Hub, Nest Hub Max, Nest Audio, Nest Wifi Point, YouTube Music app, Google Play Music app, YouTube app, Google Home app, and Google's "Pixel" phones, tablets, and laptops (collectively, "Google Accused Products"). Sonos' litigation campaign has harmed the reputations of these Google Accused Products; and Sonos' affirmative allegations of infringement of the Patents-in-Suit by the Google Accused Products has created a justiciable controversy between Google and Sonos.

3.      As a result of Sonos' communication to Google of its intention to pursue claims of infringement of the Patents-in-Suit against Google, Google is under reasonable apprehension of suit by Sonos.

**THE PARTIES**

4.      Plaintiff Google LLC is a subsidiary of Alphabet Inc. with its principal place of business located at 1600 Amphitheatre Parkway, Mountain View, California 94043.

5.      Defendant Sonos, Inc. is a Delaware corporation with headquarters at 614 Chapala Street, Santa Barbara, California 93101.

**JURISDICTIONAL STATEMENT**

6.      This action arises under the Declaratory Judgment Act, 28 U.S.C. § 2201, and under the patent laws of the United States, 35 U.S.C. §§ 1-390.

7.      This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338(a), and 2201(a).

8.      This Court has personal jurisdiction over defendant Sonos.  Sonos is registered to do business in the State of California (Registration No. C2465272), has its headquarters in the State of California, and has offices in this District. Sonos, directly and through agents, regularly does, solicits, and transacts business in this District and elsewhere in the State of California.

9.      Venue is proper in this District under 28 U.S.C. Section 1391.  Sonos has a regular and established place of business in this District—specifically, offices and employees located at 550 Montgomery Street, Suite 750, San Francisco, CA 94111.  Sonos lists this San Francisco office on its website (https://www.sonos.com/en-us/contact, a true and correct copy of which is attached as Exhibit 1), and the Sonos office at this location is advertised by Sonos as a current place of business (including in the building's directory in the public lobby).  Also, a substantial part of the events giving rise to Google's claim occurred in this District, and because Sonos is subject to personal jurisdiction here.  For example, on September 28, 2020, Sonos sent an email to a Google employee who works in this District indicating that Sonos will be initiating a case against Google LLC asserting infringement of the Patents-in-Suit.

10.     An immediate, real, and justiciable controversy exists between Google and Sonos as to whether Google is infringing or has infringed the Patents-in-Suit.

## INTRADISTRICT ASSIGNMENT

11.     For purposes of intradistrict assignment under Civil Local Rules 3-2(c) and 3-5(b), this Intellectual Property Action will be assigned on a district-wide basis.

## SONOS' CAMPAIGN AGAINST GOOGLE

12.     Google was founded in 1998, and has a mission to organize the world's information and make it universally accessible and useful. Over the past two decades, in service of that mission, Google has become one of the world's most innovative technology companies.

13.     Google's revolutionary advances in search, software, mobile computing, wireless networking, content streaming, machine learning, and voice-assisted technologies including speech recognition and advanced audio processing, have changed and improved millions of lives.

14.     As part of its commitment to innovation, Google has invested significantly in extensive research and development efforts, including its own research, as well as investments in

and acquisitions of other cutting-edge technology companies. Google is the current assignee of tens of thousands of patents worldwide.

15.     Google partners with other companies to bring Google's innovations to millions of shared customers. In particular, Google has long had a continued partnership with Sonos. In these collaborations, Sonos has repeatedly asked Google for assistance, so that Sonos could employ Google technology to improve Sonos' products.

16.     In 2013, Sonos asked for Google's assistance to integrate with Google's popular Play Music service. Google gave Sonos that assistance, and provided significant engineering resources, technical support, and other resources to integrate Sonos' products with Google's Play Music service in 2014.

17.     In 2016, Sonos again asked for Google's assistance–this time to integrate with Google's innovative Assistant software. And again, Google was willing to help. Google gave Sonos significant assistance in designing, implementing, and testing a solution that would bring Google's voice recognition software to Sonos' devices. This effort again involved substantial Google engineering resources, including significant months of employee work time, for the initial launch of Google's Assistant on Sonos' products in May 2019.

18.     Google is proud of its more than five-year partnership with Sonos, and has worked constructively with Sonos to make the companies' products work seamlessly by building special integrations for Sonos. For instance, when Google rolled out the ability to set a Sonos speaker as the default option for Google Assistant, it was the first time Google had done that for any partner company.

19.     Sonos has made false claims about the companies' shared work and Google's technology in lawsuits that Sonos filed against Google earlier this year.  The parties are also engaged in an additional litigation here in the Northern District of California, Case No. C 3-20-cv-03845-EMC.

### GOOGLE DOES NOT INFRINGE THE PATENTS-IN-SUIT

20.     The Google Accused Products do not directly or indirectly infringe any claim of the Patents-in-Suit, literally or under the doctrine of equivalents.

21.      No third party infringes any claim of the Patents-in-Suit by using a Google product or service.  Google has not caused, directed, requested, or facilitated any such infringement, much less with specific intent to do so.  The Google Accused Products are not designed for use in any combination that infringes any claim of the Patents-in-Suit.  To the contrary, each has substantial uses that do not infringe any claim of the Patents-in-Suit.

## FIRST COUNT

### (Declaration of Noninfringement of 9,967,615)

22.      Google restates and incorporates by reference the allegations in paragraphs 1 through 21 of this Complaint as if fully set forth herein.

23.      Sonos claims to own all rights, title, and interest in and under the '615 patent.  A true and correct copy of the '615 patent is attached hereto as Exhibit 2.

24.      Google does not directly or indirectly infringe the '615 patent, either literally or under the doctrine of equivalents, at least because the Google Accused Products do not comprise a tangible, non-transitory computer-readable storage medium including instructions for execution by a processor, the instructions, when executed, cause a control device to implement a  method comprising: (1) causing a graphical interface to display a control interface including one or more transport controls to control playback by the control device; (2) after connecting to a local area network via a network interface, identifying playback devices connected to the local area network; (3) causing the graphical interface to display a selectable option for transferring playback from the control device; (4) detecting a set of inputs to transfer playback from the control device to a particular playback device, wherein the set of inputs comprises: (i) a selection of the selectable option for transferring playback from the control device and (ii) a selection of the particular playback device from the identified playback devices connected to the local area network: (5) after detecting the set of inputs to transfer playback from the control device to the particular playback device, causing playback to be transferred from the control device to the particular playback device, (6) wherein transferring playback from the control device to the particular playback device comprises: (a) causing one or more first cloud servers to add multimedia content to a local playback queue on the particular playback device, wherein adding the multimedia content to the

local playback queue comprises the one or more first cloud servers adding, to the local playback queue, one or more resource locators corresponding to respective locations of the multimedia content at one or more second cloud servers of a streaming content service; (b) causing playback at the control device to be stopped; and (c) modifying the one or more transport controls of the control interface to control playback by the playback device; and (7) causing the particular playback device to play back the multimedia content, wherein the particular playback device playing back the multimedia content comprises the particular playback device retrieving the multimedia content from one or more second cloud servers of a streaming content service and playing back the retrieved multimedia content.

25.     For example, the Chromecast, Chromecast Ultra, Chromecast Audio, Chromecast with Google TV,  Home Mini, Nest Mini, Home, Home Max, Home Hub, Nest Hub, Nest Hub Max, Nest Audio, Nest Wifi Point, YouTube Music app, Google Play Music app, YouTube app, Google Home app, and Google's "Pixel" phones, tablets, and laptops do not include the claimed transfer or addition to a "local playback queue on the particular playback device."  All the independent claims of the '615 patent include limitations requiring "transferring playback from the control device to the particular playback device."  '615 patent, Claims 1, 13 and 25.  Transferring playback comprises "causing one or more first cloud servers to add multimedia content to a local playback queue on the particular playback device" *Id*.  This functionality is not included in any of the Google Accused Products, according to Google's understanding of this limitation of the '615 patent.  For example, the Google Accused Products do not include a local queue on an alleged remote playback device for playback of media.  Instead, the alleged playback device (i.e., Chromecast, Chromecast Ultra, Chromecast Audio, Chromecast with Google TV,  Home Mini, Nest Mini, Home, Home Max, Home Hub, Nest Hub, Nest Hub Max, Nest Audio, Nest Wifi Point) requests each song one-by-one to play back.  Accordingly, none of the Google Accused Products include the claimed transfer or addition to a "local playback queue on the particular playback device" and consequently also do not perform any of the recited steps in connection with the local playback queue.  Because the terms "causing one or more first cloud servers to add multimedia content to a local playback queue on the particular playback device" are included in

1   every independent claim of the '615 patent, none of the Google Accused Products infringe any

2   claims of the '615 patent.

3         26.     No third party infringes any claim of the '615 patent by using a Google product or

4   service.  Google has not caused, directed, requested, or facilitated any such infringement, much

5   less with specific intent to do so.  The Google Accused Products are not designed for use in any

6   combination which infringes any claim of the '615 patent.  To the contrary, each has substantial

7   uses that do not infringe any claim of the '615 patent.

8         27.     A substantial, immediate, and real controversy therefore exists between Google and

9   Sonos regarding whether Google infringes the '615 patent. A judicial declaration is appropriate

10  and necessary to determine the parties' respective rights regarding the '615 patent.

11        28.     Google seeks a judgment declaring that Google does not directly or indirectly

12  infringe any claim of the '615 patent.

**SECOND COUNT**

**(Declaration of Noninfringement of 10,779,033)**

15        29.     Google restates and incorporates by reference the allegations in paragraphs 1

16  through 26 of this Complaint as if fully set forth herein.

17        30.     Sonos claims to own all rights, title, and interest in and under the '033 patent.  A

18  true and correct copy of the '033 patent is attached hereto as Exhibit 3.

19        31.     Google does not directly or indirectly infringe the '033 patent, either literally or

20  under the doctrine of equivalents, at least because the Google Accused Products do not comprise a

21  computing device comprising: (1) at least one processor; (2) a non-transitory computer-readable

22  medium; and (3) program instructions stored on the non-transitory computer-readable medium

23  that, when executed by the at least one processor, cause the computing device to perform functions

24  comprising: (4) operating in a first mode in which the computing device is configured for

25  playback of a remote playback queue provided by a cloud-based computing system associated

26  with a cloud-based media service; (5) while operating in the first mode, displaying a

27  representation of one or more playback devices in a media playback system that are each (i)

28  communicatively coupled to the computing device over a data network and (ii) available to accept

playback responsibility for the remote playback queue; (6) while displaying the representation of

the one or more playback devices, receiving user input indicating a selection of at least one given

playback device from the one or more playback devices; (7) based on receiving the user input,

transmitting an instruction for the at least one given playback device to take over responsibility for

playback of the remote playback queue from the computing device, wherein the instruction

configures the at least one given playback device to (i) communicate with the cloud-based

computing system in order to obtain data identifying a next one or more media items that are in

the remote playback queue, (ii) use the obtained data to retrieve at least one media item in the

remote playback queue from the cloud-based media service; and (iii) play back the retrieved at

least one media item; (8) detecting an indication that playback responsibility for the remote

playback queue has been successfully transferred from the computing device to the at least one

given playback device; and (9) after detecting the indication, transitioning from (i) the first mode

in which the computing device is configured for playback of the remote playback queue to (ii) a

second mode in which the computing device is configured to control the at least one given

playback device's playback of the remote playback queue and the computing device is no longer

configured for playback of the remote playback queue.

32.     For example, the Chromecast, Chromecast Ultra, Chromecast Audio, Chromecast

with Google TV,  Home Mini, Nest Mini, Home, Home Max, Home Hub, Nest Hub, Nest Hub

Max, Nest Audio, Nest Wifi Point, YouTube Music app, Google Play Music app, YouTube app,

Google Home app, and Google's "Pixel" phones, tablets, and laptops do not include the claimed

instruction "wherein *the* instruction configures the at least one given playback device to (i)

communicate with the cloud-based computing system in order to obtain data identifying a next

one or more media items that are in the remote playback queue, (ii) use the obtained data to

retrieve at least one media item in the remote playback queue from the cloud-based media service;

and (iii) play back the retrieved at least one media item." (emphasis added). All independent

claims of the '033 patent include limitations requiring "operating in a first [playback] mode."

'033 patent, Claims 1, 12 and 15.  While operating in this first mode, the computing device

transmits an instruction to the playback device, "wherein **the** instruction configures the at least one

1    given playback device to (i) communicate with the cloud-based computing system in order to

2    obtain data identifying a next one or more media items that are in the remote playback queue, (ii)

3    use the obtained data to retrieve at least one media item in the remote playback queue from the

4    cloud-based media service; and (iii) play back the retrieved at least one media item" *Id*.  The

5    Google Accused Products do not include a single instruction that performs all these functions.

6    While Google does not admit it performs any of these claim limitations, at a minimum, it uses

7    multiple different "instructions" when a user is employing the Cast protocol to play audio on a

8    remote playback device, such as a Google Home Max.  Because these terms are included in every

9    independent claim of the '033 patent, none of the Google Accused Products infringe any claims of

10   the '033 patent.

11         33.    No third party infringes any claim of the '033 patent by using a Google product or

12   service.  Google has not caused, directed, requested, or facilitated any such infringement, much

13   less with specific intent to do so.  The Google Accused Products are not designed for use in any

14   combination which infringes any claim of the '033 patent.  To the contrary, each has substantial

15   uses that do not infringe any claim of the '033 patent.

16         34.    A substantial, immediate, and real controversy therefore exists between Google and

17   Sonos regarding whether Google infringes the '033 patent. A judicial declaration is appropriate

18   and necessary to determine the parties' respective rights regarding the '033 patent.

19         35.    Google seeks a judgment declaring that Google does not directly or indirectly

20   infringe any claim of the '033 patent.

**THIRD COUNT**

**(Declaration of Noninfringement of 9,344,206)**

23         36.    Google restates and incorporates by reference the allegations in paragraphs 1

24   through 31 of this Complaint as if fully set forth herein.

25         37.    Sonos claims to own all rights, title, and interest in and under the '206 patent.  A

26   true and correct copy of the '206 patent is attached hereto as Exhibit 4.

27         38.    Google does not directly or indirectly infringe the '206 patent, either literally or

28   under the doctrine of equivalents, at least because the Google Accused Products do not comprise a

multimedia controller including a processor, the controller configured to: (1) receive, via a

network interface, a zone configuration from a first independent playback device of a plurality of

independent playback devices, wherein the zone configuration is configured via the controller and

maintained at the first independent playback device, and wherein the zone configuration

characterizes one or more zone scenes, each zone scene identifying a group configuration

associated with two or more of the plurality of independent playback devices; and (2) cause a

selectable indication of the received zone configuration to be displayed, wherein the displayed

selectable indication is selectable to cause one or more of the zone scenes to be invoked by two or

more of the plurality of independent playback devices.

39.　　For example, the Chromecast, Chromecast Ultra, Chromecast Audio, Chromecast

with Google TV,  Home Mini, Nest Mini, Home, Home Max, Home Hub, Nest Hub, Nest Hub

Max, Nest Audio, Nest Wifi Point, YouTube Music app, Google Play Music app, YouTube app,

Google Home app, and Google's "Pixel" phones, tablets, and laptops do not include the claimed

"zone scene[s]," including at the one or more claimed playback devices.  "Zone scene"

functionality is not included in any of the Google Accused Products, according to Google's

understanding of the term.  The Google Accused Products in some configurations and instances

include conventional speaker grouping functionality.  For example, Chromecast (1st gen) does not

support speaker grouping.  But the patent repeatedly distinguishes conventional speaker grouping

from the claimed "zone scene" technology.  For example, the '206 patent describes speaker groups

as "groups." *E.g.*, '206 patent at 1:56-2:10.  To contrast, the '206 patent describes "one aspect of

the present invention" as "a mechanism [] provided to allow a user to group some of the players

according to a theme or scene . . . ." *E.g., id.* 2:30-33.  None of the Google Accused Products

provide the "zone scene" functionality as described in the '206 patent, including at the one or

more claimed playback devices, but instead only contain conventional speaker grouping in certain

configurations or instances.  Because the term "zone scene" is included in every independent

claim of the '206 patent, none of the Google Accused Products infringe any claims of the '206

patent.

40.     No third party infringes any claim of the '206 patent by using a Google product or service.  Google has not caused, directed, requested, or facilitated any such infringement, much less with specific intent to do so.  The Google Accused Products are not designed for use in any combination which infringes any claim of the '206 patent.  To the contrary, each has substantial uses that do not infringe any claim of the '206 patent.

41.     A substantial, immediate, and real controversy therefore exists between Google and Sonos regarding whether Google infringes the '206 patent. A judicial declaration is appropriate and necessary to determine the parties' respective rights regarding the '206 patent.

42.     Google seeks a judgment declaring that Google does not directly or indirectly infringe any claim of the '206 patent.

## FOURTH COUNT

### (Declaration of Noninfringement of 10,469,966)

43.     Google restates and incorporates by reference the allegations in paragraphs 1 through 36 of this Complaint as if fully set forth herein.

44.     Sonos claims to own all rights, title, and interest in and under the '966 patent.  A true and correct copy of the '966 patent is attached hereto as Exhibit 5.

45.     Google does not directly or indirectly infringe the '966 patent, either literally or under the doctrine of equivalents, at least because the Google Accused Products do not comprise a computing device comprising: (1) one or more processors; (2) a non-transitory computer-readable medium; and (3) program instructions stored on the non-transitory computer-readable medium that, when executed by the one or more processors, cause the computing device to perform functions comprising: (4) while serving as a controller for a networked media playback system comprising a first zone player and at least two other zone players, wherein the first zone player is operating in a standalone mode in which the first zone player is configured to play back media individually: (5) receiving a first request to create a first zone scene comprising a first predefined grouping of zone players including at least the first zone player and a second zone player that are to be configured for synchronous playback of media when the first zone scene is invoked; (6) based on the first request, (i) causing creation of the first zone scene, (ii) causing an indication of

the first zone scene to be transmitted to the first zone player, and (iii) causing storage of the first zone scene; (7) receiving a second request to create a second zone scene comprising a second predefined grouping of zone players including at least the first zone player and a third zone player that are to be configured for synchronous playback of media when the second zone scene is invoked, wherein the third zone player is different than the second zone player; (8) based on the second request, (i) causing creation of the second zone scene, (ii) causing an indication of the second zone scene to be transmitted to the first zone player, and (iii) causing storage of the second zone scene; (9) displaying a representation of the first zone scene and a representation of the second zone scene; and (10) while displaying the representation of the first zone scene and the representation of the second zone scene, receiving a third request to invoke the first zone scene; and (11) based on the third request, causing the first zone player to transition from operating in the standalone mode to operating in accordance with the first predefined grouping of zone players such that the first zone player is configured to coordinate with at least the second zone player to output media in synchrony with output of media by at least the second zone player.

46.     For example, the Chromecast, Chromecast Ultra, Chromecast Audio, Chromecast with Google TV,  Home Mini, Nest Mini, Home, Home Max, Home Hub, Nest Hub, Nest Hub Max, Nest Audio, Nest Wifi Point, YouTube Music app, Google Play Music app, YouTube app, Google Home app, and Google's "Pixel" phones, tablets, and laptops do not include  the claimed "zone scene[s]," including at the one or more claimed "zone players."  "Zone scene" functionality is not included in any of the Google Accused Products, according to Google's understanding of the term.  The Google Accused Products in certain configurations and instances include conventional speaker grouping functionality.  For example, Chromecast (1st gen) does not support speaker grouping.   But the patent repeatedly distinguishes conventional speaker grouping from the claimed "zone scene" technology.  For example, the '966 patent describes speaker groups as "groups." *E.g.*, '966 patent at 1:62-2:17.  To contrast, the '966 patent describes "one aspect of the present invention" as "a mechanism [] provided to allow a user to group some of the players according to a theme or scene . . . ." *E.g., id.* 2:38-41.  None of the Google Accused Products provide the "zone scene" functionality as described in the '966 patent, including at the one ore

FIRST AMENDED COMPLAINT

1  more claimed "zone players," but instead only contain conventional speaker grouping in certain

2  configurations or instances.  Because the term "zone scene" is included in every independent

3  claim of the '966 patent, none of the Google Accused Products infringe any claims of the '966

4  patent.

5          47.     No third party infringes any claim of the '966 patent by using a Google product or

6  service.  Google has not caused, directed, requested, or facilitated any such infringement, much

7  less with specific intent to do so.  The Google Accused Products are not designed for use in any

8  combination which infringes any claim of the '966 patent.  To the contrary, each has substantial

9  uses that do not infringe any claim of the '966 patent.

10         48.     A substantial, immediate, and real controversy therefore exists between Google and

11  Sonos regarding whether Google infringes the '966 patent. A judicial declaration is appropriate

12  and necessary to determine the parties' respective rights regarding the '966 patent.

13         49.     Google seeks a judgment declaring that Google does not directly or indirectly

14  infringe any claim of the '966 patent.

## FIFTH COUNT

### (Declaration of Noninfringement of 9,219,460)

17         50.     Google restates and incorporates by reference the allegations in paragraphs 1

18  through 41 of this Complaint as if fully set forth herein.

19         51.     Sonos claims to own all rights, title, and interest in and under the '460 patent.  A

20  true and correct copy of the '460 patent is attached hereto as Exhibit 6.

21         52.     Google does not directly or indirectly infringe the '460 patent, either literally or

22  under the doctrine of equivalents, at least because the Google Accused Products do not comprise:

23  a playback device, comprising: (1) a speaker; (2) a microphone that is physically coupled to the

24  speaker; (3) a processor; (4) a network interface; (5) a data storage; and (6) a program logic stored

25  in the data storage and executable by the processor to: (7) emit a first audio signal from the

26  speaker; (8) detect, via the microphone, a second audio signal, wherein at least a portion of the

27  second audio signal is a reflection of the first audio signal; (9) in response to the detecting,

28  determine a first reflection characteristic based on at least the second audio signal; (10) adjust an

1    equalization setting of the playback device based on at least the first reflection characteristic; and

2    (11) play, via the speaker, an audio track according to the equalization setting.

3        53.    As an initial matter, except for the Google Home Max, none of the Google Accused

4    Products include the relevant Room EQ feature that Sonos has alleged infringes the claims of the

5    '460 patent.  Those products therefore do not infringe on that basis.  For the Google Home Max, it

6    does not include the claimed "first audio signal" or "second audio signal" to determine a

7    "reflection characteristic."   Specifically, the claim language of the '460 patent distinguishes

8    between an "audio signal" and an "audio track," indicating that they are not the same.  *See, e.g.*,

9    '460 patent, Claim 1 ("emitting, by a playback device, a first audio signal… causing an audio

10   track to play according to the adjusted equalization setting.").  The specification also refers to the

11   first audio signal several times as a curated audio signal to enhance detection of "reflection

12   characteristics."  *See, e.g.*, '460 Patent, 12:43-45 ("For instance, the first audio signal may include

13   a pulse. Such a pulse may be a recording of a brief audio pulse that approximates an audio impulse

14   signal.").  The claimed "audio signal" in the '460 patent is thus separate and distinct from the

15   "audio track" that is played according to the equalization settings that are adjusted based on

16   reflection characteristics.  Google Home Max, on the other hand, simply plays back media and

17   does not include a separate "audio signal" as claimed.  It therefore does not include the claimed

18   first or second "audio signal" or determine reflection characteristic that adjust equalization settings

19   based on an audio signal that is separate and distinct from the audio track itself.   Because the

20   terms "first audio signal," "second audio signal," and "reflection characteristic" are included in

21   every independent claim of the '460 patent, none of the Google Accused Products infringe any

22   claims of the '460 patent.

23       54.    No third party infringes any claim of the '460 patent by using a Google product or

24   service.  Google has not caused, directed, requested, or facilitated any such infringement, much

25   less with specific intent to do so.  The Google Accused Products are not designed for use in any

26   combination which infringes any claim of the '460 patent.  To the contrary, each has substantial

27   uses that do not infringe any claim of the '460 patent.

28

55.     A substantial, immediate, and real controversy therefore exists between Google and Sonos regarding whether Google infringes the '460 patent. A judicial declaration is appropriate and necessary to determine the parties' respective rights regarding the '460 patent.

56.     Google seeks a judgment declaring that Google does not directly or indirectly infringe any claim of the '460 patent.

## PRAYER FOR RELIEF

WHEREFORE, Google prays for judgment as follows:

A.     Declaring that the Google Accused Products do not infringe, directly or indirectly, the Patents-in-Suit;

B.     Declaring that Google does not induce infringement of the Patents-in-Suit;

C.     Declaring that Google does not contributorily infringe on the Patents-in-Suit;

D.     Declaring that judgment be entered in favor of Google and against Sonos on Google's claims;

E.     Finding that this is an exceptional case under 35 U.S.C. § 285;

F.     Awarding Google its costs and attorneys' fees in connection with this action; and

G.     Granting Google such further and additional relief as the Court deems just and proper.

DATED:  December 11, 2020          QUINN EMANUEL URQUHART &
                                   SULLIVAN, LLP


                                   By _____/s/ Charles K. Verhoeven_____
                                      Charles K. Verhoeven
                                      Attorneys for GOOGLE LLC

1

**DEMAND FOR JURY TRIAL**

2      Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Google respectfully

3   demands a trial by jury on all issues triable by jury.

4

5   DATED:  December 11, 2020          QUINN EMANUEL URQUHART &
                                       SULLIVAN, LLP
6

7

8                                      By _____*/s/ Charles K. Verhoeven*_____
                                          Charles K. Verhoeven
9                                         Attorneys for GOOGLE LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED COMPLAINT