Pages 1 - 20

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable William Alsup, Judge

GOOGLE LLC ,                        )
                                    )
          Plaintiff,                )
                                    )
   VS.                              )   NO. C 20-06754-WHA
                                    )
SONOS, INC.,                        )
                                    )
          Defendant.                )
_____)

                         San Francisco, California
                         Thursday, October 7, 2021

**TRANSCRIPT OF REMOTE TELECONFERENCE PROCEEDINGS**

**APPEARANCES**: (Appearances via AT&T Teleconference.)

For Plaintiff:
                         QUINN, EMANUEL, URQUHART
                            & SULLIVAN LLP
                         50 California Street - 22nd Floor
                         San Francisco, California 94111
                   BY:   **CHARLES K. VERHOEVEN, ATTORNEY AT LAW**

For Defendant:
                         ORRICK, HERRINGTON & SUTCLIFFE LLP
                         The Orrick Building
                         405 Howard Street
                         San Francisco, California 94105
                   BY:   **CLEMENT S. ROBERTS, ATTORNEY AT LAW**

                         ORRICK, HERRINGTON & SUTCLIFFE LLP
                         777 South Figueroa Street - Suite 3200
                         Los Angeles, California 90017
                   BY:   **ALYSSA M. CARIDIS, ATTORNEY AT LAW**

Reported By:  Ruth Levine Ekhaus, RMR, RDR, FCRR
             Official Reporter, CSR No. 12219

| | |
|---|---|
| 1 | <u>**Thursday - October 7, 2021**</u>                                            <u>**2:21 p.m.**</u> |
| 2 | **P R O C E E D I N G S** |
| 3 | ---o0o--- |
| 4 | **THE CLERK:**  Please come to order. |
| 5 | We're now calling Civil Case -- |
| 6 | **THE COURT:**  The Google case. |
| 7 | **THE CLERK:**  I'm sorry? |
| 8 | **THE COURT:**  Call the Google case first. |
| 9 | **THE CLERK:**  Oh.  Okay. |
| 10 | We're now calling Civil Case 20-06754-WHA, Google LLC |
| 11 | versus Sonos Inc. |
| 12 | Counsel, starting with the plaintiff, please state your |
| 13 | appearance for the record. |
| 14 | **MR. ROBERTS:**  Well, Your Honor, this Mr. Roberts, Clem |
| 15 | Roberts, from Orrick Herrington, and with me is Ms. Caridis, on |
| 16 | behalf of Sonos.  Whether we are the plaintiff or defendant, |
| 17 | I'm not sure whether the clerk called the DJ case or the |
| 18 | transferred case, but we're certainly operatively plaintiffs. |
| 19 | **THE COURT:**  Okay. |
| 20 | **MR. VERHOEVEN:**  Good afternoon, Your Honor.  Charles |
| 21 | Verhoeven on behalf of Google.  And with me are some of my |
| 22 | colleagues, and we also have in-house counsel on the phone. |
| 23 | **THE COURT:**  All right.  Welcome. |
| 24 | Anyone else? |
| 25 | (No response.) |

PROCEEDINGS

1      **THE COURT:**  All right.  Just let me make sure I --

2  let's see.

3      The Sonos case, has our district court received that from

4  Texas yet?

5      **MR. VERHOEVEN:**  Your Honor, this is Mr. Verhoeven.

6      I believe it has, and the case has been assigned to a

7  magistrate.  Let's see --

8      **THE COURT:**  Well, I was going to relate it to me,

9  unless I --

10      **MR. VERHOEVEN:**  Right, but -- I'm sorry.

11      **THE COURT:**  Does everyone one agree it should be

12  related to me?

13      **MR. VERHOEVEN:**  Yes, we all do, Your Honor.

14      **MR. ROBERTS:**  Your Honor, we agree it's related to the

15  existing case.  There is also -- for your consideration, there

16  is another case that's pending between Google and Sonos in the

17  same courtroom.  I understand your preference is to relate

18  these two cases and that's fine.  I just wanted to give you

19  complete information.

20      **THE COURT:**  Well, I'm unaware of two other cases.  I

21  thought there was just one in Texas, and then it's now showed

22  up here.  But you're saying there is yet a third one?

23      **MR. ROBERTS:**  Yes, Your Honor.  There is a case where

24  Google has sued Sonos that -- on several patents that is also

25  pending in the Northern District of California.  And that is an

1    earlier filed case.  So it's the same parties.  It's different

2    patents.  It's different accused products.  It's going in the

3    other direction.  But it is an active litigation between the

4    two parties.

5            THE COURT:  Well, is that the one that was in front of

6    Judge Chen, I think?

7            MR. VERHOEVEN:  Yes, Your Honor.

8            THE COURT:  All right.  So I'm not going to relate

9    that one.  That one is different patents.  So that one, I think

10   it's the same parties, but they -- it's a completely different

11   problem.  So I'm not going to relate that one.  But I will

12   relate the one that is the mirror-image of the case I have that

13   is coming from Texas.  That's what I meant to do.

14       I hope my law clerk understands that difference.  I'm only

15   going to relate one of the two, namely the one from Texas.

16       All right.  So here is my plan for your case:  We're going

17   to do my showdown, patent showdown and by, probably, May of

18   next year, we'll be in trial.  I will get out an order that

19   explains how that works.

20       But the trial will only be on two claims; each of you get

21   a chance to pick a claim.  It won't be on the entire mess.  But

22   I need for you to give me an outside date for the rest of the

23   mess such -- you know, like, November of next year or even

24   February of the following year.  I can live with that.

25       But on the showdown, I'm going to speed things along and

1  make you work hard, wreck your holidays.  You'll wish that you

2  had stayed in Texas.

3       So I'll let you try to talk me out of that.  The plaintiff

4  gets to go first.  Mr. Roberts.

5       **MR. ROBERTS:**  Yes.  Thank you so much, Your Honor.

6       Your Honor, our preference, if the Court is willing to

7  consider it, would be to have the whole mess go to trial in

8  June.  The parties were working --

9       **THE COURT:**  No, that's not possible.  It's impossible.

10  There are too many claims.  How many claims are in suit here?

11       **MR. ROBERTS:**  Too many claims are in suit, Your Honor.

12  At the moment, there are 69 claims asserted -- but we know that

13  those need to be narrowed -- and 353 pieces of prior art.

14       **THE COURT:**  That is ridiculous.  That is ridiculous.

15       Do you know how hard we're working here at the district

16  court?  I can't imagine that you would try to file a case with

17  69 claims.  It's even more reason to do the patent showdown

18  faster and get to the heart of it, rather than to let you drag

19  this out with -- even if it was 29 claims, that's too many.

20  It's got to be a single-digit case.  Maybe nine would not be

21  too many, but that's ridiculous.

22       Okay.  You haven't talked me out of it.

23       Mr. Verhoeven, would you like to try to talk me out of it?

24       **MR. VERHOEVEN:**  The only -- I'm not going to try to

25  talk you out of it, Your Honor.

1      I will mention, just for context, that this is a large

2    dispute between Google and Sonos, which Sonos instigated, and

3    there is litigations in other countries as well.  And it's a

4    very large dispute, and so because of that, there is a

5    possibility -- and I'm not advocating for not doing this

6    procedure, Your Honor, but there is a possibility that it would

7    be less effective than it would be in a normal case where the

8    entire case is subsumed within one courtroom.

9          THE COURT:  Well, you know, you raise a good point.

10   And I am a victim of my own experience, and when you have these

11   gigantic, messy cases that sprawl the universe, if some judge

12   doesn't take the bull by the horns and say "Get in here, we're

13   going to get a jury" -- see, I've learned that these patent

14   lawyers don't like juries, and so you will not -- you will be

15   afraid.

16     I'm just -- I'm exaggerating here because I know --

17   Mr. Verhoeven, at least you've tried a case -- that I'm telling

18   you something, getting it in front of a jury -- I'm pounding

19   the desk -- is the way to get this whole thing settled.  The

20   whole thing will settle, in my view.

21     So it's going to be May or June, and I'll give you a date

22   in, like, February of '23 to try the rest of the case.  And --

23          MR. ROBERTS:  Your Honor, could I ask a --

24          THE COURT:   -- that's the way we're going to go.

25     Okay.  Go ahead.  Let me hear what you have to say.

1          **MR. ROBERTS:**  Yes, Your Honor.  This is Mr. Roberts.

2      If I could ask for you to consider two possible, small

3  modifications to your usual procedure.  I mean the patent

4  showdown procedure.

5      The first is, if it's possible, we'd like to try two

6  claims.  If you look at the four patents that we have here in

7  suit, Your Honor, they're basically two types of inventions.

8  There are two patents on one invention.  There are two patents

9  on another invention.

10      And if what we're talking about is trying to, you know,

11  grab the bull by the horns and get the parties some

12  information, it would be very helpful if we could put one claim

13  from each of those two categories of patents in front of Your

14  Honor and have that.  And if Mr. Verhoeven wanted do two

15  claims, so we were going to trial on four claims, we would have

16  no objection to that.

17      And the second part is, Your Honor, is that I know very

18  often in your patent showdowns, you don't allow damages in.

19  But, again, as there are many disputes between both parties

20  relating to lots of patents, part of what we're talking about

21  here is the valuation of portfolios.  And so giving the parties

22  information about how those patents are valued ought to be

23  helpful insofar as we're signaling and extrapolating.

24      And so, if you would consider either or both of those two

25  modifications, we would appreciate it.

1      **THE COURT:**  Well, wait a minute.  I understand the

2   point about the two versus one, but I don't understand -- what

3   do you mean I don't allow damages in?

4      **MR. ROBERTS:**  My understanding was that damages would

5   be bifurcated.  But if we're going to have damages in the

6   patent showdown procedure so we can put on a damages case, then

7   that's fine.

8      **THE COURT:**  Well, okay.  I see what you mean.  I'll

9   think about it.  I don't --

10      **MR. VERHOEVEN:**  Your Honor, this is Mr. Verhoeven.

11   If I could quickly respond?

12      **THE COURT:**  Yes, please.

13      **MR. VERHOEVEN:**  I think it's a little premature to

14   make decisions like this at this point.  For example, we're

15   going to be amending our complaint.  I don't believe that --

16   believe it or not, I don't believe the case is at issue yet.

17   But, in any event, we intend to amend the complaint.  And we'll

18   work with Mr. Roberts and his side to see if we can't just do

19   it by stipulation.  But that's one thing.

20      And in terms of the number of claims and damages and not

21   damages, I just think it would be better for -- if there was a

22   dispute, that we should meet and confer with each other.  And

23   if there is a dispute or a joint suggestion, we could make that

24   at a later point in time.  We've got a lot of time until May.

25      **THE COURT:**  All right.  I'll consider what you've just

1    said.

2         What is the product?

3         **MR. ROBERTS:**  So, Your Honor, the accused products

4    that we're talking about here really are smartphones and

5    speakers.  So we're talking about, you know, speakers that go

6    inside your house and that can be used to play back music.  And

7    when we're talking about the controllers, which are implemented

8    in software on a smartphone -- and so we're talking really

9    about, you know, software on smartphones and, you know, home

10   stereo -- wireless smartphone stereo systems.

11        **MR. VERHOEVEN:**  Your Honor, Mr. Verhoeven here.

12        I would tend to agree with that description.  These are

13   speaker patents that concern a system that has speakers.

14        In our view, I wanted to raise this issue with Your Honor

15   today too on the patents.  We believe that these patents are so

16   trivial and so -- lack so much detail that it would be worth

17   the Court's effort if we did an early Section 101 motion on the

18   patents.

19        And to the extent we're talking about a schedule, I would

20   request to the Court that we -- I think, it would be efficient

21   to do that right at the outset, Your Honor, rather than spend a

22   bunch of money on discovery and whatnot, just to learn that the

23   patents are going to be invalidated under 101.

24        So I would suggest that we have an early 12(c) motion, if

25   you want to call it that, where Your Honor can determine

PROCEEDINGS

1  whether or not the patents are enforceable under Section 101.

2          THE COURT:  Do you have any -- is there a PTAB

3  proceeding?

4          MR. VERHOEVEN:  There is one IPR that's been filed on

5  one of the patents, and that's it so far.  And we -- I can

6  speak for Google, we don't intend to move for a stay based on

7  that.

8          THE COURT:  How many -- how many patents are there all

9  together?

10         MR. VERHOEVEN:  It's four patents, Your Honor.  And I

11 can go through in detail and explain why I think they are

12 susceptible to 101 if you would like, but --

13         THE COURT:  No, not yet.  But what's the one that's in

14 the IPR?

15         MR. VERHOEVEN:  The '615.  Let's see.  Which one --

16         MR. ROBERTS:  Your Honor, they just filed the IPR a

17 couple of days ago after the transfer decision came down.  I

18 don't think they filed it before then because of Fintiv, and

19 they -- then they thought they got more time after the case was

20 transferred, so then they went ahead and filed the IPR.

21         THE COURT:  "They" being who?

22         MR. ROBERTS:  "They" being Google, Your Honor.

23     This is Mr. Roberts from --

24         THE COURT:  Google has sought an IPR on the '615?

25         MR. ROBERTS:  Correct, Your Honor.

PROCEEDINGS

1          **MR. VERHOEVEN:**  To answer your question, Your Honor,

2   the '615 is -- we've grouped the patents into two categories

3   for ease of reference.  I think we have.  I'll be corrected if

4   I'm wrong but two of the patents are referred to as the "zone

5   scene" patents.  Those are the '966 -- '966 and '885.

6          And then -- bear with me here.  And then those two patents

7   are referred to as -- we call them the Q, as in Charles -- I'm

8   sorry, C as in Charles, Q patents.  And those are the '033

9   patent and the '615 patent.

10         **THE COURT:**  Are you going to file IPR on any more?

11         **MR. VERHOEVEN:**  We're considering it, but they have no

12   current plans to move forward with more IPRs.

13         **THE COURT:**  If you could only bring a Section 101

14   motion on one individual patent, which one would it be?

15         **MR. VERHOEVEN:**  I would have to go re-look at them,

16   Your Honor, because, frankly, they are very trivial and they

17   are all great candidates.  I could pick one if Your Honor would

18   prefer to do it that way.

19         **THE COURT:**  Explain to me why they are so ridiculous.

20         **MR. VERHOEVEN:**  Well, for example, the QC patent,

21   essentially, what they're -- what they concern, Your Honor, is

22   transferring playback of media from one hardware device to

23   another.  That's the invention.  And, you know, two patents

24   that basically concern some details about a method for

25   transferring streaming media from one playback device to

**PROCEEDINGS**

1  another playback device; something that's been done manually

2  for years and years.  At your house, you turn on the radio, and

3  if you want to listen in a different room, you turn on the

4  other radio in the different room.  You're still manually --

5  you're doing it manually, but you're able to do this basic

6  practice.  So that's the QC patents.

7      The other two patents, Your Honor, the zone scene patents

8  are continuations, and there's patents that Sonos already has

9  on the arrangement and placement of speakers in zones.  And

10  these patents add the words "zone scene" and that's it.  The

11  word "scene."  And that's been construed already by the Court

12  to mean that the zones have a common theme.

13      So these patents are essentially grouping zones according

14  to a common theme.  You know, again, it's very simple ways of

15  manipulating existing technology that anyone could do who's put

16  their head to it.  And they are not -- there is no technical

17  innovation there.  They're -- we think they are all subject to

18  101.

19          **MR. ROBERTS:**  Your Honor, this is Mr. Roberts.  .

20  May I respond briefly?

21          **THE COURT:**  Sure.  Of course.  Go ahead.

22          **MR. ROBERTS:**  So a couple of things, Your Honor.

23      First, Mr. Verhoeven -- the rhetorics around, like, these

24  are simple patents, I would just ask the Court to leave that

25  aside.  Mr. Verhoeven was saying the exact same things about

1    the five Sonos patents in the ITC.  They were trivial; they

2    were obvious in light of the prior art; we had so much prior

3    art; these are completely trivial; it was Rule 11, yet all five

4    of them were found valid and infringed.

5         So I would ask the Court to withhold judgment,

6    notwithstanding Mr. Verhoeven's rhetoric about these how these

7    are trivial or simple.  Obviously, we disagree.

8         The second point I would make is:  If these were ripe

9    candidates for 101, this case has been around for quite a

10   while, Mr. Verhoeven hasn't filed any 101 challenges.  He could

11   have filed the 12(c) motion before now.  He could have filed a

12   12(b)(6) motion before now.  No such motion has been filed.

13        We have final invalidity contentions.  We have final

14   infringement contentions.  This case has been moving along,

15   quite along.  We have coming to Your Honor early next week a

16   request to go to the Hague for third-party discovery as soon as

17   we get back the discovery responses from Spotify, which has

18   refused to provide discovery here.  We're actively in

19   discovery.

20        So the notion that somehow we ought to slow the trains up

21   and do 101 because this is totally trivial and ought to be

22   disposed of at the outset, you know, there has been quite a lot

23   of motions and quite a lot of paper spilt on these patents

24   already and the notion that this is really a trivial

25   outset-type issue just doesn't ring true in light of that

**PROCEEDINGS**

1    history.

2         I would be happy to respond to the specifics about the

3    patents if it would be interesting to Your Honor.  But there

4    is -- you know, the way in which you transfer media that is

5    playing back to your phone, in synchronicity, without skipping

6    a beat, using the cloud, to a set of devices within the home

7    and how you do that, that is a technology that they have

8    adopted from us.  And nobody was doing it before Sonos.  And,

9    you know, they -- we just fundamentally disagree with their

10   characterization of the patents.

11             THE COURT:  All right.  I'll get out an order -- yes?

12             MR. VERHOEVEN:  I was just going to have a quick

13   response, Your Honor.

14             THE COURT:  All right.  Go ahead.

15             MR. VERHOEVEN:  Just so you know, the reason that we

16   haven't filed it yet is because in the local rules in the

17   Western District of Texas, the first -- I don't know -- six to

18   eight months of the case are devoted to -- if it's a transfer

19   motion, are devoted to discovery solely and exclusively on the

20   issue of transfer.  And so we have had no discovery.  We have

21   had no opportunity to do anything except have the transfer

22   motion decided.  Although the Court did rule on Markman -- what

23   was it -- four days after he denied transfer.

24        But we haven't -- the reason we haven't been filing a 101

25   is because we were focusing on get the case transferred,

PROCEEDINGS

1   Your Honor.

2       Secondly, I'm not really interested in playing games about

3   what happened in another case.  But I will point out that

4   counsel neglected to mention that, in the initial determination

5   at the ITC, the ALJ recommended and found that there is no

6   infringement of any of the five asserted patents under Google's

7   design-around, which has been adjudicated and ruled upon.

8       I'm done, Your Honor.

9       **THE COURT:**  All right.  With respect to ADR, what is

10  your druther?  Do you want a private mediator?  Do you want a

11  magistrate judge?  What do you want?

12      **MR. ROBERTS:**  Your Honor, I hesitate to take up court

13  resources for this.  The parties have mediated this dispute

14  several times.  I think it's certainly appropriate to order us

15  to do so at some point.  But, as Mr. Verhoeven said, this is a

16  large, complex dispute.  And I just -- I hesitate to impose on

17  the court's resources any more than we are.

18      **THE COURT:**  Are you saying private mediation?

19      **MR. ROBERTS:**  Yes, Your Honor.

20      **THE COURT:**  All right.  I'm going to give you until

21  December 3rd to pick the mediator and be on the calendar of the

22  mediator.  And then I'll give you until May 27 to actually do

23  the mediation.

24      All right.  The way this is going to work is I'm going to

25  give you a standard a case management order, but then I'm going

1    to also give you a showdown order and they will operate side by

2    side.  And you must do all of your infringement contentions on

3    everything and your invalidity contentions on every single

4    claim that's at issue.  Even if we're doing the showdown, you

5    still got to -- the big case moves along in parallel with the

6    showdown.  So that's the way I like to do it.

7            **MR. ROBERTS:**  Your Honor, could I just ask a question

8    about that?

9        We did final infringement and invalidity contentions in

10   Texas.  And those are in two parts.  There is a cover pleading,

11   which differs from this Court's form a little bit.  And then

12   there are charts, which are essentially identical to this

13   Court's requirement.

14       And so we, on behalf of Sonos, would propose that the

15   charts which everybody submitted as final infringement and

16   invalidity contentions, be fixed and that those are done, and

17   that we redo the cover pleadings, because we want to put them

18   in the form that this Court prefers.  But we do not necessarily

19   think we ought to be going back and doing another full bite at

20   the apple on infringement and invalidity when we've got those

21   contentions done, in final form, and everybody understood that

22   they were set in Texas.

23           **THE COURT:**  All right.  What's the response to that?

24           **MR. VERHOEVEN:**  This is Mr. Verhoeven.

25       I don't have an issue with that, Your Honor.

PROCEEDINGS

1    I would also mention, along the same lines, in terms of

2  cleaning up things, there are two outstanding motions that have

3  been filed and have not been ruled upon in the Western

4  District.  And my suggestion would be that we just refile them

5  pursuant to the local rules here.  But if Your Honor wants, we

6  could just indicate what they are and, Your Honor, could pull

7  them out.

8        **THE COURT:**  What are those motions?

9        **MR. VERHOEVEN:**  Oh.  Okay.  One is, a motion to

10  dismiss Sonos's willfulness allegations.

11    And it might be helpful to wait until we see what

12  they're -- I assume we're going to get some counterclaims from

13  them for patent infringement.  So it may make sense for us

14  to -- well, I guess we should talk about that.  I mean,

15  currently --

16        **MR. ROBERTS:**  Mr. Verhoeven -- sorry.

17        **MR. VERHOEVEN:**  Currently there is -- I'm sorry.  I

18  didn't want to interrupt.  Is someone talking?

19        **MR. ROBERTS:**  Yeah.  I was just saying, I'm happy -- I

20  don't have a problem with your either refiling the motions or

21  you renewing them.  Perhaps we could just talk about this

22  offline in terms of working on amending the pleadings, and

23  those kind of things.  I'm sure we could work this out.

24        **MR. VERHOEVEN:**  Great.  I just didn't -- in case His

25  Honor had a preference, I just -- those were the two options I

1  was looking at, Your Honor.

2       **THE COURT:**  I want you to refile those motions, but

3  the one on the willfulness, okay.  What is the other one on?

4       **MR. VERHOEVEN:**  The other one is a motion to strike

5  Sonos's conception dates.  There is a -- there is a -- Google

6  filed a motion to strike Sonos's conception date because Sonos

7  failed to timely disclose conception and reduction to practice

8  evidence in compliance with Judge Allbright's rules.

9      You know, this motion is based on the local rules of the

10  Western District of Texas, but they are basically the same as

11  the Northern District rules in substance, Your Honor.

12       **THE COURT:**  Wait.  Wait.  I am not going to -- no.

13  That will have to be refiled and be based on whatever rules we

14  got here.  I'm not going to -- please don't -- I'm not going to

15  start enforcing Western District rules.  So that one I'm not

16  going to allow.  That one is denied.  But the other one, I'll

17  let you refile it under -- and I'll go ahead and hear that one.

18       **MR. VERHOEVEN:**  Thank you, Your Honor.

19      On the -- on the one about conception date, I don't want

20  Google to be prejudiced because of the transfer.  And although

21  the local rules aren't identical, Your Honor, there is

22  deadlines in California as well that have the same consequences

23  if they're missed.

24       **THE COURT:**  But the case just got here.

25       **MR. VERHOEVEN:**  I'm sorry?

1    **THE COURT:**  Didn't the case just arrive here?  And I

2    had stayed the case, the other case; right?  So I don't see how

3    it could be late here.

4    **MR. VERHOEVEN:**  All right.  Well, this ties into the

5    contentions and whatnot.  So I'll confer -- hopefully, we can

6    just resolve it and I'll confer with Sonos's counsel.

7    **THE COURT:**  This must be a pretty sold old patent,

8    because if we're having to rely on a date of conception -- how

9    old are these patents?

10    **MR. ROBERTS:**  I apologize, Your Honor.  I don't have

11    the priority dates in front of me.

12    **THE COURT:**  Okay.

13    **MR. ROBERTS:**  Some of them go back a way.

14    **THE COURT:**  Do they go back more than 10 years?

15    **MR. VERHOEVEN:**  Here, I have them, Your Honor.  Hold

16    on a sec.

17    **MR. ROBERTS:**  Ms. Caridis, do you have that handy?

18    **MS. CARIDIS:**  Yes, Your Honor.  This is Alyssa Caridis

19    on behalf of Sonos.

20    The zone scenes patents date back to 2005 and the Cloud Q

21    patents date back to 2011.

22    **THE COURT:**  All right.  Well, 2005, I guess, the date

23    of conception doesn't matter.  Maybe.

24    **MR. ROBERTS:**  I will point out, Your Honor, that they

25    have, I think, if I'm get the number here correct, they have

**PROCEEDINGS**

 1  353 prior art references that they have cited against the

 2  patents.

 3          THE COURT:  Well, you've got 69 claims.  That's not so

 4  bad with 69 claims.

 5          MR. ROBERTS:  Yes, your Honor.  I'm not arguing about

 6  excessiveness.  I'm just saying that I believe they've already

 7  boiled the ocean.

 8          THE COURT:  Well, excellent.

 9          MR. VERHOEVEN:  And anyway, Your Honor, I'll meet and

10  confer on that other motion and see if we can't throw that in

11  the mix of things we're negotiating with to see if we can't

12  just resolve it and not have to raise -- have it raise its head

13  again.

14          THE COURT:  Thank you.

15      All right.  I've got to run because I've got another case

16  to deal with here.  And I'll get some orders out.

17      And welcome to the Court.  Good luck to both sides.

18          MR. VERHOEVEN:  Thank you, Your Honor.

19          MR. ROBERTS:  Thank you.

20          THE COURT:  You all can hang up now.

21              (Proceedings adjourned at 2:59 p.m.)

22                      ---o0o---

23

24

25

## CERTIFICATE OF REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


DATE:   Tuesday, October 12, 2021




_____
Ruth Levine Ekhaus, RMR, RDR, FCRR, CSR No. 12219
Official Reporter, U.S. District Court