# **EXHIBIT B**



**Cole B. Richter** | Attorney

656 W Randolph St
Floor 5W
Chicago, Illinois 60661

312.757.4478 Office
richter@ls3ip.com

September 23, 2021

**VIA EMAIL (jordanjaffe@quinnemanuel.com)**

Jordan Jaffe
QUINN EMANUEL URQUHART & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, California 94111

Re:  *Sonos, Inc. v. Google LLC*, Case No. 6:20-cv-00881-ADA [W.D. Tx.]

Counsel,

Google's discovery responses and document production are deficient in numerous respects. Please confirm that Google will remedy each and every deficiency noted below or whether the parties are at an impasse.

Below, Sonos has endeavored to articulate why Google's responses are deficient. For the avoidance of doubt, any deficiency that Sonos may have missed is not a waiver of Sonos's right to raise the deficiency with Google later.

**Deficiencies in Google's Responses to Sonos's Interrogatories**

Google's interrogatory responses are plagued with inappropriate objections and inappropriate or incomplete responses.

*First*, Google inappropriately objects to several of Sonos's definitions, effectively unilaterally re-writing Sonos's infringement contentions to just the instrumentalities that Google desires responding to. Google has no basis to delete various accused instrumentalities from this case (and it certainly does not try to articulate such a basis). For instance, Google objects to "Accused Cast-Enabled App(s)" insofar as it includes third-party apps (such as Spotify) and cast-enabled software executable on an accused cast-enabled display. Moreover, Google objects to "Accused Google Server[s]" insofar as it includes a server that hosts an accused app for download, a server that facilitates casting from accused apps to accused media players, a server that facilitates moving media from one cast device to another, and a server that, in response to user input at any accused app, facilitates delivering media to an accused media player. These are instrumentalities that are specifically accused of infringement and that facilitate the operation of other accused instrumentalities. Google must respond with respect to these instrumentalities – not some subset that Google chooses.

*Second*, in almost every interrogatory response, Google objects "to the extent [the request] seeks confidential and/or proprietary business information." Under no circumstances should Google information be withheld on the grounds that the information is confidential or proprietary to

1



**Cole B. Richter** | Attorney

Lee Sullivan Shea & Smith LLP

656 W Randolph St
Floor 5W
Chicago, Illinois 60661

312.757.4478  Office
richter@ls3ip.com

Google.  The Court recently entered a protective order and the parties have been operating under the provisions of a similar protective order entered in the Northern District of California since December 2020.  Please confirm that Google is not withholding information on this basis.

***Third***, in many instances Google fails to respond at all, saying either that it is still investigating or that in lieu of a response it requests a meet and confer to "narrow the scope" of the interrogatory.  Google cannot withhold information it is currently aware of simply because the case is ongoing.  *E.g., Guarriello v. Fam. Endowment Partners, LP*, Case No. 14-cv-1335, 2015 WL 13694425, at *3 (D. Mass. Oct. 30, 2015) ("while Defendants may supplement their response to this interrogatory upon review of Plaintiffs' discovery responses, they may not withhold whatever responsive information is currently reasonably available to them.").

Nor can Google unilaterally hold responsive information hostage as a negotiation tactic in an attempt to answer a narrower interrogatory.  *Muller v. City of Tacoma*, Case No. 14-cv-05743, 2015 WL 3793570, at *2 (W.D. Wash. June 18, 2015) ("whether or not counsel for Plaintiff and Defendants had a formal meet and confer under Fed.R.Civ.P. 37(a) is immaterial to [responder's] good faith obligation to respond to what is, in this Court's view, a reasonable discovery request.").  As further detailed in individual instances below, Google cannot refuse to answer whole interrogatories based on objections to portions thereof.

***Fourth***, in many instances Google relies on Rule 33(d) but cites to a document production so large and irrelevant as to render it meaningless.  For example, in response to interrogatories seeking specific information concerning the functionalities of Google's own products, Google cites to a 48,000+ page document production (consisting of 12,500+ individual documents), the vast majority of which have nothing to do with the accused products – let alone the specific functionality of the specific accused products the interrogatory seeks.  *See, e.g.*, *Acosta v. Med. Staffing of Am., LLC*, Case No. 18-cv-226, 2019 WL 6122016, at *5 (E.D. Va. Mar. 15, 2019) ("Rule 33(d) does not permit a party to answer discovery requests by referring to the party's entire document production, but requires the producing party to specify the documents in the production that are responsive to each interrogatory.").  To fulfill its obligation under Rule 33(d), Google must provide an appropriate Bates numbered range of documents that are actually responsive to each interrogatory.

In some instances, Google points to its ***entire*** source code production under Rule 33(d).  Clearly too, this is inappropriate.  *See, e.g.*, *Pers. Audio, LLC v. Apple, Inc.*, Case No. 09-cv-111, 2010 WL 9499679 at *3 (E.D. Tex. June 1, 2010) (requiring defendant to answer interrogatories about how its products work because the production of source code alone did not satisfy the defendant's obligation to answer the interrogatories, noting generally that it is "'implausible for the defendants to contend that the plaintiff stands on equal footing when it comes to determining how the defendants' own products operate.'").



Cole B. Richter | Attorney

Lee Sullivan Shea & Smith LLP

656 W Randolph St
Floor 5W
Chicago, Illinois 60661

312.757.4478  Office
richter@ls3ip.com

**Interrogatory No. 1**

This interrogatory calls for information regarding Google's first awareness of the Asserted Patents.  Google's answer is non-responsive insofar as it fails to provide (i) the date it was first aware of the '615 Patent, (ii) the date it was first aware of the '033 Patent, (iii) an identification of the person(s) who first became of the Asserted Patents, and (iv) an identification of the person(s) aware of the Asserted Patents prior to this suit.  Google answers only as to the date it first became aware of the '966 and '885 Patents.  Regarding the '615 Patent, Google answers only as to when **Sonos alleged** that Google first became aware – not the date that Google actually became aware.[1]  *See Intervet, Inc. v. Merial Ltd.*, 256 F.R.D. 229, 232-33 (D.D.C. 2009) (requiring the accused infringer to identify the person who first discovered the patent-in-suit and to describe the circumstances under which the discovery was made, including, if applicable, that the patent was discovered by an attorney).  And Google provides no answer whatsoever regarding the '033 Patent.

**Interrogatory No. 2**

Google provides no substantive response to this interrogatory, improperly relying on a privilege objection.  But this interrogatory calls for information that is not protected by attorney-client privilege or the work product doctrine, such as whether or not any patent analysis occurred, the identity of the Google personnel that conducted any such analysis, the date the analysis took place, and the general subject matter of the analysis, including an identification of what patent(s) or application(s) were the subject of any analysis.  As Google is no doubt aware, attorney-client privilege and the work product doctrine do not protect underlying facts.  *E.g., Intervet, Inc.*, 256 F.R.D. 229.  They also do not protect against any analysis that was not undertaken by, or performed at the direction of, Google's lawyers.

These facts are relevant to Sonos's willfulness allegations as well as many Google defenses.  Indeed, Google's Fifth Affirmative Defense alleges that "Sonos' conduct led Google to reasonably infer that . . . Sonos did not intend to enforce its purported intellectual property rights with respect to that technology . . . [and that] Google relied on Sonos' conduct by, for instance, proceeding with the development and commercialization of its technology."  Dkt. 32 at Affirmative Defenses, ¶¶ 14-15.  For Google to have purportedly inferred that Sonos did not intend to enforce its intellectual property rights, Google must have had some understanding as to what Sonos's intellectual property rights were.  Google cannot claim to have made such an inference in the past but refuse to disclose the facts surrounding that inference during discovery.  Nor can Google shield certain harmful information from production based on attorney-client privilege and/or the work product doctrine, while reserving the right to later reveal information helpful to Google's case.  *See Energy Heating, LLC v. Heat On-The-Fly, LLC*, 889 F.3d 1291,

---

[1] Given that Google repeated this allegation back to Sonos, we will assume that Google is acquiescing to the date that Sonos alleges Google first became aware of the '615 Patent, unless otherwise specified.



Cole B. Richter | Attorney

Lee Sullivan Shea & Smith LLP

656 W Randolph St
Floor 5W
Chicago, Illinois 60661

312.757.4478  Office
richter@ls3ip.com

1303 (Fed. Cir. 2018) ("The attorney-client privilege cannot be used as both a sword and a shield.").

**Interrogatory No. 3**

This interrogatory seeks information regarding the conception, research, design, development, engineering, and/or testing of the Accused Instrumentalities. Google's only response is to note that it is continuing to investigate these acts and to block cite nearly 49,000 pages of its document production. This is insufficient. *See Acosta*, 2019 WL 6122016, at *5. Google has clearly investigated these acts to some extent as it has told the Court on multiple occasions that it has investigated these acts in enough detail to allege that some of the accused products were engineered in Mountain View and to identify the individuals responsible for such engineering. *See, e.g.*, Dkt. 35 (Google's motion to transfer stating: "The Google witnesses responsible for the development of . . . the functionality allowing casting playback of Google Play Music, YouTube Music, or YouTube to a Cast receiver . . . allowing creating and managing speaker groupings for media playback . . . are based primarily in the Bay Area."); *see also* Dkt. 35-2 (Decl. of Friedland in support of Google's motion to transfer articulating alleged facts concerning the "design and development of the accused functionalities").

Google must respond with the information that its investigation yielded, despite that it may be harmful to Google's case. Moreover, Google must respond with the facts it is presently aware of, despite that it may be continuing to investigate its case. *See Guarriello*, 2015 WL 13694425, at *3.

**Interrogatory No. 4**

This interrogatory seeks information regarding Google's analysis of Sonos's products. Google responds only by incorporating its briefing in connection with its Motion to Transfer. However, neither Google's Motion to Transfer, nor the documents cited therein, are responsive to this interrogatory. At best, Google's motion merely discusses the allegations **Sonos made** in its complaint concerning the parties 2013 collaboration (Dkt. 35 at 4-5) and the venue selection clause from the CIA (*id.* at 5-6). Google's reply is similarly deficient, as it merely discusses alleged activities of **Sonos** engineer Tad Coburn (Dkt. 84 at 2-3) and arguments as to what Sonos allegedly did or did not do during the collaboration (*id.* at 3-4).

Obviously, Google studied Sonos's products. This occurred at least during the parties' 2013 collaborations. After all, that is why Google cited to its transfer briefing—which discussed (albeit vaguely) the parties' 2013 collaboration – in response to an interrogatory asking for details about how Google studied Sonos's products. But this transfer briefing does not adequately provide the information sought by the interrogatory, including a description of Google's analysis, consideration, study, review, communication, discussion, tear-down, competitive analysis investigation or study, or opinion of a Sonos product. At a minimum, it fails in the first instance

4



**Lee Sullivan Shea & Smith LLP**

Cole B. Richter | Attorney

656 W Randolph St
Floor 5W
Chicago, Illinois 60661

312.757.4478  Office
richter@ls3ip.com

to identify "when, why, and by whom any such analysis, consideration, study, review, communication, discussion, or opinion was made."

**Interrogatory No. 5**

This interrogatory calls for codenames (etc.) of the accused instrumentalities, a listing of the software/firmware versions of each accused instrumentality, and an identification of the version(s) of such produced for inspection in this case.  Google provides merely the codenames of some of the accused *hardware* products (but omits the Pixel 6 devices).  There are many other accused instrumentalities in this case, including apps and servers.  Google's response is, therefore, deficient insofar as it fails to provide codenames for accused instrumentalities other than the hardware products, a listing of the software and firmware versions of the accused instrumentalities correlated by release date, and an identification of the versions of such that were produced for inspection in this case.

**Interrogatory No. 6**

This interrogatory calls for an identification of the persons most knowledgeable regarding various relevant activities, including some specific, discrete functionality of the accused instrumentalities.[2]  Google cites only to its Rule 26(a)(1) initial disclosures, which do not provide an identification of the persons most knowledgeable regarding the enumerated activities.  As a general matter, assuming Google's initial disclosures identified people who purported to be knowledgeable about the topics sought by the interrogatory, Google's initial disclosures contain caveats that render them non-responsive to this interrogatory.  For instance, the initial disclosures state that "Google does not represent that every individual or entity identified herein necessarily possesses such information or that the individual or entity possesses relevant information," and that "[t]he following list shall not be interpreted to be an admission that any of the listed individuals will have discoverable information."  These caveats alone render Google's citation to its initial disclosures useless as a response to this interrogatory.

Despite this, the categories of information that these individuals may possess are too vague to even be useful – let alone to identify people that are knowledgeable about the specific categories of information sought by this interrogatory.  For instance, for each individual listed in Google's initial disclosures, Google notes that the individual may be knowledgeable about, for example, "Matters concerning the design and development of the accused grouping functionalities," without any further explanation as to whether this is all "matters" concerning design and development of the accused grouping functionalities or whether this is just some "matters," and/or what these matters are.

---

[2] *E.g.,* "the ability of the YouTube TV app to allow a user to transfer playback of streaming media content from a smartphone, tablet, or computer devices to an Accused Cast-Enabled Media Player and then control the Accused Cast-Enabled Media Player's playback."



Lee Sullivan Shea & Smith LLP

Cole B. Richter | Attorney

656 W Randolph St
Floor 5W
Chicago, Illinois 60661

312.757.4478 Office
richter@ls3ip.com

More specifically, but still by way of example, the interrogatory seeks an identification of, *inter alia*, the people most knowledgeable regarding the "Marketing, advertising, instructions or suggestions provided to customers concerning the intended or possible uses and operations." Google's initial disclosures list no individual as being knowledgeable about these activities.

As another non-limiting example, the interrogatory seeks an identification of the people most knowledgeable regarding "the ability of the YouTube app to allow a user to transfer playback of streaming media content from a smartphone, tablet, or computer devices to an Accused Cast-Enabled Media Player and then control the Accused Cast-Enabled Media Player's playback." Google's initial disclosures list ▓▓▓▓▓▓▓ as having knowledge regarding "Matters concerning the design and development of the accused casting playback of queues functionality for YouTube and YouTube Music." But it is not clear whether Google considers "accused casting playback of queues" to cover "transfer playback of streaming media content from a smartphone, tablet, or computer devices to an Accused Cast-Enabled Media Player and then control the Accused Cast-Enabled Media Player's playback."

**Interrogatory No. 7**

Google provides no substantive response to this interrogatory whatsoever, offering only to meet and confer to "narrow the scope." Google cannot withhold responsive information based on its desire to answer an interrogatory of a narrower scope. *See Muller*, 2015 WL 3793570, at *2. This interrogatory seeks information regarding Google's making and using of an accused instrumentality – essentially instances of direct infringement. The information sought is unquestionably relevant and is tailored to avoid irrelevant information.

**Interrogatory No. 9**

This interrogatory seeks actual and projected "sales, prices, costs, revenues, downloads, installs, and profits" for the accused instrumentalities. Google cites a single document[3] that purports to list "net revenue" and "unit sales" in the United States from Q4 2018 through Q4 2020 for certain accused products. This single document does not even come close to providing the information sought by this interrogatory. For instance, this document fails at a minimum to identify (1) profits for the accused instrumentalities, (2) cost of goods for the accused instrumentalities, (3) prices for the accused instrumentalities, (4) revenues[4] for the accused products, or (5) downloads or installs of the accused apps.

Moreover, the interrogatory also does not limit the information to Q4 2018, but rather seeks information from September 2014 to present. Although the earliest asserted patent issued in May 2018, sales data from earlier is relevant to willful infringement and secondary considerations.

---

[3] GOOG-SONOSWDTX-00053613.

[4] GOOG-SONOSWDTX-00053613 purports to provide "net revenues," not "revenues."



**Cole B. Richter** | Attorney

656 W Randolph St
Floor 5W
Chicago, Illinois 60661

312.757.4478  Office
richter@ls3ip.com

Nor does the interrogatory limit the geographic territory of sales information to the United States. Sonos's infringement theories under at least § 271(f)(1) and § 271(f)(2) render foreign sales relevant.  *See Union Carbide Chemicals & Plastics Technology Corp. v. Shell Oil Co.*, 425 F.3d 1366, 1380 (Fed. Cir. 2005); *W.H. Wall Family Holdings LLP v. CeloNova Biosciences, Inc.*, 2020 WL 1644003, *2-*3 (W.D. Tex. 2020).

Finally, the interrogatory does not limit the requested information to particular sales channels. Accordingly, please confirm that Google's current data is for all its sales channels, and please confirm that Google will provide the requested categories of sales data for the requested time frame in all locations in which Google sells products.

**Interrogatory No. 10-11**

Google offers no response to these interrogatories whatsoever, offering only to meet and confer to "narrow the scope."  Again, this is improper.  *See Muller*, 2015 WL 3793570, at *2.  These interrogatories seek an identification of sales and revenue data for (1) certain accused apps, (2) for ads served via accused devices or apps, (3) searches initiated via accused devices or apps, (4) in-app purchases, (5) e-commerce transactions initiated via the accused devices or apps, (6) consumer data collected via the accused devices and apps, and (7) the accused apps' use of the Google Cloud Platform.  This information sought is relevant to Sonos's damages positions, as all this data is related to sales and revenue that Google has derived from the accused devices and apps in this case.

**Interrogatories 13-17**

These interrogatories seek information regarding how the accused devices and apps perform certain discrete functions as well as evidence of indirect infringement.  In particular:

- **Interrogatory No. 13** seeks a description of how the Google Home app enables a user to manually, as opposed to dynamically, create a speaker group of two or more accused media players and then play media from such a manually created speaker group;

- **Interrogatory No. 14** seeks a description of how each accused app enables a user to cast, or otherwise move or transfer media, to an accused media player;

- **Interrogatory No. 15** seeks a description of how each accused media player and device receives and then plays back a sequence of media items in connection with each media service (e.g., YouTube, YouTube Music, YouTube TV, Google Play Music, Google Podcasts, and Spotify media services);



Cole B. Richter | Attorney

Lee Sullivan Shea & Smith LLP

656 W Randolph St
Floor 5W
Chicago, Illinois 60661

312.757.4478 Office
richter@ls3ip.com

- **Interrogatory No. 16** seeks a description of how a given accused app is made available for download onto computing devices;

- **Interrogatory No. 17** seeks an identification of instructions (etc.) by Google to users concerning downloading and subscribing to the accused apps, using a computing device installed with an accused app(s), or using or purchasing an accused media player.

For interrogatory Nos. 13, 16, and 17, Google fails to respond at all. For interrogatory No. 13, Google feigns ignorance as to what "manually, as opposed to dynamically, create a speaker group" means, despite using these exact words in its own literature to describe the accused products.[5] For interrogatory No. 16, Google objects that the request is irrelevant. But, this interrogatory is relevant to the understanding how the accused apps are made available for download from download servers (in the U.S. and abroad), which is an accused instrumentality. For interrogatory No. 17, Google objects that the request is unduly burdensome, yet this request clearly implicates Sonos's indirect infringement theories.

For interrogatory Nos. 14, and 15, Google inappropriately block cites to its 48,000+ page document production[6] (consisting of 12,519 individual documents) pursuant to Rule 33(d) in a blatant attempt to conceal which documents, if any, are responsive to this interrogatory. For instance, this already-massive document production contains a huge number of irrelevant documents produced as a result of a web crawl of various Google websites, including, to name a few:

(1) a crawl of irrelevant Google Play app store pages (e.g., GOOG-SONOSWDTX-00023387 (page titled "Kids -Android Apps on Google Play"));

(2) a crawl of irrelevant Google Blog webpages (e.g., GOOG-SONOSWDTX-00005322 (Blog post titled "6 New Ways Android Can Help This Holiday Season"));

---

[5] *See, e.g.*, https://blog.google/products/google-nest/new-multi-room-audio-control-nest/ ("You can already **manually group** Nest devices in order to play the same music on various speakers at the same time, and now we're launching multi-room control so you can **dynamically group** multiple cast-enabled Nest devices (speakers, Smart Displays, Chromecasts) in real-time to fill multiple rooms with music."); https://support.google.com/googlenest/answer/7174267?co=GENIE.Platform%3DAndroid&hl=e#zippy=%2Cfrom-the-google-home-app ("Create and manage **speaker groups** Group any combination of Google Nest or Home speakers and displays and Chromecast devices together for synchronous music throughout the home.").

[6] This despite having already (and inaccurately) complained to the Court that Sonos was purportedly relying on a 6,000 page document production for conception and reduction to practice (it is not).



Lee Sullivan Shea & Smith LLP

Cole B. Richter | Attorney

656 W Randolph St
Floor 5W
Chicago, Illinois 60661

312.757.4478  Office
richter@ls3ip.com

(3) a crawl of irrelevant pages from the Google Store (e.g., GOOG-SONOSWDTX-00006356 (Google store page for non-accused product "Nest X Yale Lock"));

(4) a crawl of irrelevant Google Help Center Community User Profile Pages (e.g., GOOG-SONOSWDTX-00007280 (Google Help Community User Profile Page for an individual named "Skalk van der Merwe"));

(5) a crawl of irrelevant Pixelbook Help Pages (e.g., GOOG-SONOSWDTX-00017213 (page titled "Manage Passwords - Computer- Pixelbook Help")); and

(6) a crawl of irrelevant Community Forum Posts (e.g., GOOG-SONOSWDTX-00017346 (Post titled "Printing jobs from pixelbook end up with last pages on top. How to reverse order")).

Although it should go without saying, pointing to a litigant's entire document production (especially where the document production contains a large cache of irrelevant material) is inappropriate as it defeats the purpose of Rule 33(d). *Acosta*, 2019 WL 6122016, at *5 ("Rule 33(d) does not permit a party to answer discovery requests by referring to the party's entire document production, but requires the producing party to specify the documents in the production that are responsive to each interrogatory.").[7]

So too is pointing to an infringer's entire source code production to answer an interrogatory concerning how the infringer's product works. Obviously, Google knows more about how its own products work than Sonos's litigation source code reviewers. As such, Google must provide a narrative response concerning the operation of its own products. *See, e.g., Pers. Audio*, 2010 WL 9499679 at *3 (requiring defendant to answer interrogatories about how its products work because the production of source code alone did not satisfy the defendant's obligation to answer the interrogatories, noting generally that it is "'implausible for the defendants to contend that the plaintiff stands on equal footing when it comes to determining how the defendants' own products operate.'"); *Facedouble, Inc. v. Face.com, Inc.*, Case No. 12-cv-1584, 2014 WL 585868 at *2 (S.D. Cal. Feb. 13, 2014) (same, noting that "Plaintiff bears a substantially greater burden in determining how Defendant's software works by examining Defendant's source code than does Defendant. After all, engineers employed by Defendant wrote the code with an object in mind.").

---

[7] *See also Brown v. Blue Cross and Blue Shield of Alabama*, Case No. 13-cv-121, 2014 WL 3519100 at *6 (W.D.N.C. July 15, 2014) ("[A] party seeking to employ Rule 33(d) must specify for each interrogatory the documents that will actually reveal answers to the interrogatories."); *Minter v. Wells Fargo Bank, N.A.*, 286 F.R.D. 273, 278-79 (D. Md. 2012) ("The specificity requirement in 33(d)(1) is designed to limit the practice of responding by directing the interrogating party to a mass of business records or by offering to make all... records available.").



**Cole B. Richter** | Attorney

656 W Randolph St
Floor 5W
Chicago, Illinois 60661

312.757.4478  Office
richter@ls3ip.com

**Interrogatory No. 18**

This interrogatory seeks information concerning efforts to design around or otherwise avoid infringement of the asserted claims.  Google fails to substantively respond at all, instead objecting on grounds that the information is protected by attorney-client privilege.  Google is incorrect and must respond to this interrogatory.  *Illumina Inc. v. BGI Genomics Co., Ltd.*, 2020 WL 7047708, *1–*3 (N.D. Cal. 2020) ("Defendants' efforts at designing around Illumina's patents are not protected by the attorney-client privilege or the attorney work product doctrine.").  Please confirm that Google will answer this interrogatory immediately.

**Deficiencies in Google's Responses to Sonos's Document Requests**

Google's responses to Sonos's document requests (and therefore its document production) are deficient in similar ways.  For instance, Google objects to the same definitions as it did with Sonos's interrogatories.  Based on these improper objections, Google inappropriately stands on its existing document production and refuses to conduct any additional search or agree to provide any additional documents for 32 of Sonos's 52 document requests.  Of course, this is insufficient, as explained elsewhere herein.

**Request Nos. 1-5, 8-20, 36**

Google does not appear to have produced documents (and code where appropriate) responsive to these requests for at least the YouTubeTV and Spotify apps, as well as other accused instrumentalities, including cast-enabled software executable on an accused cast-enabled display, servers that host an accused app for download, servers that facilitate casting from accused apps to accused media players, servers that facilitate moving media from one cast device to another, and servers that, in response to user input at any accused app, facilitates delivering media to an accused media player.  These are instrumentalities that are specifically accused of infringement and that facilitate the operation of other accused instrumentalities.   Indeed, the Court has already concluded that such servers are relevant.  *See* 6/14/21 Email from Santasawatkul to Parties.  Google must respond with documents concerning these instrumentalities.

**Request Nos. 6, 22, 25**

These requests seek documents concerning Google's promotional material and/or instructions for using (etc.) the accused instrumentalities.  Google refuses to produce any documents on account of this material purportedly being "publicly available" and/or the request(s) being overly broad. This is an insufficient basis on which to refuse production. Even were the requests to seek purely "public" material (which they don't), courts consistently hold that parties have an obligation to produce even publicly available information. *E.g.*, *Pepperwood of Naples Condo. Ass'n, Inc. v. Nationwide Mut. Fire Ins. Co.*, Case No. 10–cv–753, 2011 WL 3841557, at *4 (M.D.Fla. Aug. 29, 2011) ("Courts have unambiguously stated that this exact objection is insufficient to resist a discovery request."); *accord Marshman v. Instrument Mfg. Co.*, Case No. 20-cv-00972, 2021 WL



Cole B. Richter | Attorney

656 W Randolph St
Floor 5W
Chicago, Illinois 60661

312.757.4478  Office
richter@ls3ip.com

2262605, at *4 (W.D. Tex. June 3, 2021) (granting motion to compel production over objection that documents were "publicly available information that Plaintiff can obtain on his own."). This material is relevant to Sonos's indirect infringement theories, and the burden of locating and producing these documents is much lower for Google than Sonos.

**Request No. 7**

Google's response is deficient for similar reasons as discussed above in connection with Interrogatory No. 5.

**Request No. 23-24**

Contrary to Google's objections, these requests are not overly broad as they relate to Sonos's damages theories, willfulness, and secondary considerations.

**Request No. 26-28, 45-53**

Google's responses are deficient for similar reasons as discussed above in connection with Interrogatory Nos. 9-11.

**Request No. 29**

Google's response is deficient for similar reasons as discussed above in connection with Interrogatory No. 18.

**Request No. 30, 39**

Google's response is deficient for similar reasons as discussed above in connection with Interrogatory No. 6.

**Request No. 32**

Google's response is deficient for similar reasons as discussed above in connection with Interrogatory No. 2.

**Request No. 33**

Google's response is deficient for similar reasons as discussed above in connection with Interrogatory No. 1.



Cole B. Richter | Attorney

Lee Sullivan Shea & Smith LLP

656 W Randolph St
Floor 5W
Chicago, Illinois 60661

312.757.4478  Office
richter@ls3ip.com

**Request No. 34**

Google's response is deficient for similar reasons as discussed above in connection with Interrogatory Nos. 2, 4.

**Request No. 37**

Google's response is deficient for similar reasons as discussed above in connection with Interrogatory No. 2.  Moreover, Google must produce documents "reflecting Google's understanding, if any, that Sonos would not enforce IP rights against Google," above and beyond those that Google may have cited in its transfer briefing.  In other words, Google's transfer briefing does not relieve Google from conducting a reasonable search and producing documents responsive to this request to the extent any can be located.  Given Google's apparent failure to produce any additional documents outside of those it has already cited in its transfer briefing, Sonos assumes that Google was unable to locate any additional responsive documents, and Sonos will rely on this moving forward with the case.

**Request No. 40**

Aside from the Nexus Q system, Google has failed to produce or make available for inspection any alleged "prior art system" despite relying on several such "systems" in its invalidity contentions.  *See* Invalidity Contentions at Section IV.A.2 (identifying 19 "Prior Art Systems and Products" for the '966 Pat.), Section V.A.2 (same for '885 Pat.), Section VI.A.2 (identifying 12 "Prior Art Systems and Products" for the '033 Pat.), Section VII.A.2 (same for the '615 Pat.).  On September 16, 2021, Sonos inquired with Google as to whether Google had any additional alleged "prior art systems" in its possession and/or whether Google would be making any such systems available for inspection.  Google has failed to identify any such additional "prior art systems" in response to Sonos's inquiry.  In light of this, Sonos assumes that Google has no other alleged "prior art system" in its possession and that Google will not be producing or making available for inspection any such "system," and Sonos will rely on this moving forward with the case.

We are available to confer on these issues this week or next week.

Best regards,

*C.B.R.*

Cole B. Richter
cc: counsel of record