# **EXHIBIT C**

AO 88B  (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Western District of Texas

| | | |
|---|---|---|
| Sonos, Inc. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   6:20-cv-00881-ADA |
| Google LLC | ) | |
| | ) | (If the action is pending in another district, state where: |
| *Defendant* | ) | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:  SPOTIFY USA INC., 4 WORLD TRADE CENTER,150 GREENWICH STREET, NEW YORK,  NY 10007
C/O CT CORP. SYSTEM, 28 LIBERTY STREET, NEW YORK, NY 10005

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material: See attached Schedule A.

| Place: Orrick, Herrington & Sutcliffe LLP<br>51 W 52nd St.<br>New York, NY 10019 | Date and Time:<br><br>09/10/2021 5:00 pm |
|---|---|

❑ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:   08/27/2021

|   *CLERK OF COURT*   | OR | |
|---|---|---|
| | | /s/ Cole B. Richter |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*   Sonos, Inc.
, who issues or requests this subpoena, are:

Cole Richter, 656 W Randolph St., Floor 5W, Chicago, IL 60661, richter@ls3ip.com, (312) 754-9602

AO 88B  (Rev.  06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   6:20-cv-00881-ADA

**PROOF OF SERVICE**
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏  I served the subpoena by delivering a copy to the named person as follows: _____

_____   on *(date)* _____ ; or

❏  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .

I declare under penalty of perjury that this information is true.

Date: _____           _____
                                                      *Server's signature*

                                                     _____
                                                      *Printed name and title*

                                                     _____
                                                      *Server's address*

Additional information regarding attempted service, etc:

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

**(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information;

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

**(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

## SCHEDULE A

Plaintiff Sonos, Inc. commands Spotify USA Inc. to produce the documents and things specified in the following requests by September 10, 2021, at 5:00 pm (or as agreed upon) at the offices of Sonos, Inc.'s counsel, Orrick, Herrington & Sutcliffe LLP, 51 W 52nd St., New York, NY 10019 (or as agreed upon).

## DEFINITIONS AND INSTRUCTIONS

For purposes of responding to these requests, the following definitions and instructions shall apply:

1.      The term "Spotify" shall mean Spotify USA Inc., any company name under which Spotify is doing business; and its predecessors, parents, subsidiaries, divisions, licensees, franchisees, assigns or other related business entities, as well as directors, officers, employees, agents, distributors, jobbers, salespersons, sales representatives, and each person acting or purporting to act on its or their behalf or under its or their control, including but not limited to any observers, stringers, and/or reporters working for or with Spotify.

2.      The term and "Sonos" shall mean Sonos, Inc., any predecessor, successor, parent, subsidiary, or affiliate, and where applicable, Sonos's officers, directors, employees, partners, agents, attorneys, or any other person or business entity acting or purporting to act on Sonos's behalf.

3.      The term "Google," shall mean Google LLC, and any other name under which Google LLC is doing or has done business, any predecessor, successor, parent, subsidiary, or affiliate, and where applicable, Google's officers, directors, employees, partners, agents, attorneys, or any other person or business entity acting or purporting to act on Google's behalf.

4.      The terms "document," "documents," and "information" each incorporates all

1

documents, electronically stored information (ESI), and things as broadly defined in Rule 34 of the Federal Rules of Civil Procedure and related case law.

5.     The terms "communication" and "communications" shall mean all exchanges or transmittals, whether in paper, electronic, oral or any other form or medium, of information (including but not limited to transmittals of facts, ideas, inquiries, analyses, assertions, concerns, instructions, opinions, reservations, thoughts or otherwise) by any mode of transmission, including e-mail, facsimile, telex, courier, U.S. mail, in person, telephone, cell phone and other internet-based, wireless-based, and satellite-based modes of transmission, between or among two or more persons and includes all documents and things constituting, relating to, incorporating, including, summarizing, describing or identifying the contents, subject matter, date, place and time of or participants in an exchange or transmittal.

6.     The terms "person" and "persons" shall mean any natural person.

7.     The terms "entity" and "entities" shall mean any business, legal or governmental entity or association.

8.     The terms "and," "or," and "and/or" shall be construed disjunctively or conjunctively as necessary to bring within the scope of the request all responses that otherwise might be construed to be outside its scope.

9.     The terms "all," "any," "each," and "every" shall be construed as encompassing any and all.

10.     The terms "including" and "include" shall be construed in such a way as to suggest or provide an example or examples.  The terms "including" and "include" shall not be construed in such a way as to limit or confine the broader term or concept for which a suggestion or example is being given.

11.     Each of "relating to," "relate to," "referring to," "refer to," "regarding," "with regard to," "concern," "concerning" and derivatives thereof shall be construed broadly so as to encompass the liberal scope of discovery set forth in Rule 26(b) of the Federal Rules of Civil Procedure and shall mean directly or indirectly affecting, alluding to, analyzing, bearing upon, commenting on, comparing, complementing, comprising, concerning, constituting, containing, contemplating, contradicting, criticizing, critiquing, dealing with, depicting, describing, discussing, embodying, evaluating, evidencing, identifying, incorporating, involving, mentioning, negating, noting, pertaining to, providing a basis for, referencing, referring to, reflecting, refuting, regarding, relating to, respecting, responding to, reviewing, stating, summarizing, supporting, with respect to or otherwise in any manner pertaining to or being connected to, whether logically, circumstantially, factually, legally, directly or indirectly, the document, thing, information, matter, topic, issue, fact, assertion, allegation or circumstance being stated, discussed or referenced.

12.     The use of the singular form of any word includes the plural and *vice versa* to bring within the scope of the request all responses that otherwise might be construed to be outside its scope.

13.     The term "how" shall be construed as how, what, why, when, who, and/or where as necessary to bring within the scope of the request all responses that otherwise might be construed to be outside its scope.

14.     The term "date" shall mean the exact day, month, and year (to the degree ascertainable) or if not ascertainable, the best approximation (including relationship to other events).

15.     The term "the '206 Patent" shall mean U.S. Patent No. 9,344,206, as well as its application and any publications thereof.

16.     The term "the '615 Patent" shall mean U.S. Patent No. 9,967,615, as well as its application and any publications thereof.

17.     The term "the '966 Patent" shall mean U.S. Patent No. 10,469,966, as well as its application and any publications thereof.

18.     The term "the '033 Patent" shall mean U.S. Patent No. 10,779,033, as well as its application and any publications thereof.

19.     The term "the '885 Patent" shall mean U.S. Patent No. 10,848,885, as well as its application and any publications thereof.

20.     The term "Patent(s)-in-Suit" shall mean the '206 Patent, the '615 Patent, the '966 Patent, the '033 Patent, and the '885 Patent, either collectively or individually.

21.     The term "customer(s)" shall mean any purchaser, reseller, distributor, dealer, retailor, wholesaler, user, and/or recipient.

22.     The term "knowledge" shall include firsthand information and information derived from any source, including hearsay knowledge.

23.     The term "Google Media Player(s)" shall mean the following products, including any and all versions thereof, either collectively or individually: CHROMECAST, CHROMECAST ULTRA, CHROMECAST AUDIO, CHROMECAST WITH GOOGLE TV, HOME MINI, NEST MINI, HOME, HOME MAX, NEST AUDIO, HOME HUB, NEST HUB, NEST HUB MAX, and NEST WIFI POINT.

24.     The term "Google Display(s)" shall mean the following products, including any and all versions thereof, either collectively or individually: HOME HUB, NEST HUB, and NEST HUB MAX.

25.     The term "Pixel Device(s)" shall mean the following products, including any and

all versions thereof, either collectively or individually: PIXEL, PIXEL XL, PIXEL 2, PIXEL 2
XL, PIXEL  3, PIXEL 3 XL, PIXEL 3A, PIXEL 3A XL, PIXEL 4, PIXEL 4 XL, PIXEL 4A,
PIXEL 4A (5G), PIXEL 5, PIXEL SLATE, PIXELBOOK, PIXELBOOK GO.

26.     The term "Google Product(s)" shall mean any Google Media Player(s), Pixel
Device(s), and/or Google Display(s).

27.     The term "Google Server(s)" shall mean any Google server that hosts the Spotify
app for download, any Google server that facilitates moving or transferring playback of Spotify
from a computing device running the Spotify app to a Google Media Player (e.g., by virtue of the
"Spotify Connect"[1] or Google "Cast"[2] feature), and any Google server that, in response to user
input at the Spotify app, facilitates delivering Spotify media to a Google Media Player (including
but not limited to any Cloud Content Delivery Network (CDN) server), either collectively or
individually.

28.     The term "Spotify Server(s)" shall mean any server that facilitates playback of
Spotify by a computing device or Google Media Player, any server that facilitates moving or
transferring playback of Spotify from a computing device running the Spotify app to a Google
Media Player (e.g., by virtue of the "Spotify Connect"[3] or Google "Cast"[4] feature), and any server
that, in response to user input at the Spotify app, facilitates delivering Spotify media to a computing
device or Google Media Player, either collectively or individually.

29.     No request or subpart hereof shall be construed as a limitation on any other

---

[1] *See, e.g.*, https://developer.spotify.com/use-cases/hardware/home-audio/.
[2] *See, e.g.*, https://techcrunch.com/2015/09/29/spotify-comes-to-google-chromecast-and-chromecast-audio/.
[3] *See, e.g.*, https://developer.spotify.com/use-cases/hardware/home-audio/.
[4] *See, e.g.*, https://techcrunch.com/2015/09/29/spotify-comes-to-google-chromecast-and-chromecast-audio/.

request or subpart hereof.

30.     Please produce all documents and things responsive to these requests that are within Spotify's possession, custody, or control, whether directly or indirectly.

31.     If, after exercising due diligence, Spotify is unable to determine the existence of any documents or things falling within a document request, please state so in Spotify's written response as required by Rule 34 of the Federal Rules of Civil Procedure.

32.     Please produce all documents responsive to these requests as they are kept in the ordinary course of business.  In this respect, please produce all responsive documents in their entirety, including all attachments or affixations thereto.

33.     Please produce documents from any single file in the same order as they were found in such file.   If copies of documents are produced, such copies should be legible and bound or stapled in the same manner as the original.

34.     When objecting to any request, please state with specificity the grounds for each objection and the request(s) to which each objection applies.  Any request to which an objection is made should be responded to insofar as it is not deemed objectionable.

35.     For each responsive document withheld on a claim of privilege, including but not limited to the attorney-client privilege and/or work product immunity, please identify the nature of the privilege being claimed, state the basis for the claim of privilege, and provide the following information:

  a.  the type of document (e.g., letter, email, memorandum, etc.);
  b.  the date of the document;
  c.  the general subject matter of the document; and
  d.  other information sufficient to identify the document for a subpoena *duces tecum*, including but not limited to, where appropriate, the identity of the author and any other person involved in the preparation of the document, the identity of the addressees and any other recipients of the document, the identity of the custodian of the document, and where not apparent, the relationship of the such persons to one

other.

36.     Further, if a claim of privilege applies to only a portion of a responsive document, please produce the portion(s) of the document not subject to the claim of privilege.

37.     For each responsive document withheld on a claim of third-party confidentiality, please state the basis for the claim of third-party confidentiality and provide the following information:

   a.   the type of document (e.g., letter, email, memorandum, etc.);
   b.   the date of the document;
   c.   the general subject matter of the document; and
   d.   other information sufficient to identify the document for a subpoena duces tecum, including but not limited to, where appropriate, the identity of the author and any other person involved in the preparation of the document, the identity of the addressees and any other recipients of the document, the identity of the custodian of the document, and where not apparent, the relationship of the such persons to one other.

38.     Further, if a claim of third-party confidentiality applies to only a portion of a responsive document, please produce the portion(s) of the document not subject to the claim of third-party confidentiality.

39.     For each responsive document of which Spotify is aware that has been destroyed, lost, or is otherwise unavailable for production, please state so and provide the following information:

   a.   the type of document (e.g., letter, email, memorandum, etc.);
   b.   the date of the document;
   c.   the contents of the document;
   d.   other information sufficient to identify the document for a subpoena duces tecum, including but not limited to, where appropriate, the identity of the author and any other person involved in the preparation of the document, the identity of the addressees and any other recipients of the document, the identity of the custodian of the document, and where not apparent, the relationship of the such persons to one other;
   e.   the date of the unavailability;
   f.   the identity of the person who authorized the destruction (if any); and
   g.   the identity of the person known to have last had possession, custody, or control of

the document.

40.     These requests for production shall be deemed continuing so as to require further and supplemental production in accordance with the Federal Rules of Civil Procedure.

## **PRODUCTION REQUESTS**

### **REQUEST NO. 1**

Documents sufficient to show the process by which a computing device (e.g., a Pixel Device or other mobile phone, tablet, laptop, etc.) running the Spotify app plays back media items from Spotify, as that functionality existed on and/or after September 29, 2014, including but not limited to (i) the computing device receiving user input selecting one or more media items for playback, (ii) the computing device and/or any server "queueing"[5] the one or more media items for playback, (iii) the computing device obtaining a first of the media items for playback, (iv) the computing device playing back the first media item, (v) the computing device facilitating play back of a next media item after playback of the first media item, and (vi) the circumstances surrounding how and when the Spotify app was modified to facilitate the aforementioned functionality.

### **REQUEST NO. 2**

Documents sufficient to show the process by which a computing device (e.g., a Pixel Device or other mobile phone, tablet, laptop, etc.) running the Spotify app facilitates causing a Google Media Player to play back Spotify media items, including but not limited to (i) the Spotify GUI elements and/or screens displayed on the computing device that facilitate such functionality, (ii) message and/or signal flow between the computing device, Google Media Player, and any

---

[5] *See, e.g.*, https://support.spotify.com/us/article/play-queue/.

Spotify and/or third-party server (e.g., Google Server, such as the Google Cloud Platform[6]) that facilitates such functionality, and (iii) any server-side operations that facilitate such functionality.

**REQUEST NO. 3**

Documents sufficient to show the process by which a Google Display running the Spotify app facilitates causing a Google Media player to play back Spotify media items from Spotify, including but not limited to (i) the Spotify GUI elements and/or screens displayed on the Google Display that facilitate such functionality, (ii) message and/or signal flow between the Google Display, Google Media Player, and any Spotify and/or third-party server (e.g., Google Server, such as the Google Cloud Platform[7]) that facilitates such functionality, and (iii) any server-side operations that facilitate such functionality.

**REQUEST NO. 4**

Documents sufficient to show the process by which a computing device (e.g., a Pixel Device or other mobile phone, tablet, laptop, etc.) running the Spotify app that is connected to a Wi-Fi network discovers any Google Media Player that is also connected to the Wi-Fi network.

**REQUEST NO. 5**

Documents sufficient to show the process by which a Google Display running the Spotify app that is connected to a Wi-Fi network discovers any Google Media Player that is also connected to the Wi-Fi network.

---

[6] *See, e.g.*, https://engineering.atspotify.com/2019/12/09/views-from-the-cloud-a-history-of-spotifys-journey-to-the-cloud-part-1-2/.
[7] *See, e.g.*, https://engineering.atspotify.com/2019/12/09/views-from-the-cloud-a-history-of-spotifys-journey-to-the-cloud-part-1-2/.

**REQUEST NO. 6**

Documents sufficient to show how a computing device (e.g., a Pixel Device or other mobile phone, tablet, laptop, etc.) running the Spotify app moves or transfers media playback from the computing device to a Google Media Player (e.g., by virtue of the "Spotify Connect"[8] or Google "Cast"[9] feature), including but not limited to (i) any information that is exchanged between the computing device, the Google Media Player, any Spotify Server, and/or any third-party server (e.g., Google Server, such as the Google Cloud Platform[10]) to facilitate the aforementioned functionality and (ii) any creation, existence, modification, or deletion of any "queue" of one or more media items to facilitate the aforementioned functionality.

**REQUEST NO. 7**

Documents sufficient to show how a Google Display running the Spotify app moves or transfers media playback from the Google Display to a Google Media Player(e.g., by virtue of the "Spotify Connect"[11] or Google "Cast"[12] feature), including but not limited to (i) any information that is exchanged between the computing device, the Google Media Player, any Spotify Server, and/or any third-party server (e.g., Google Server, such as the Google Cloud Platform[13]) to facilitate the aforementioned functionality and (ii) any creation, existence, modification, or

---

[8] *See, e.g.*, https://developer.spotify.com/use-cases/hardware/home-audio/.

[9] *See, e.g.*, https://techcrunch.com/2015/09/29/spotify-comes-to-google-chromecast-and-chromecast-audio/.

[10] *See, e.g.*, https://engineering.atspotify.com/2019/12/09/views-from-the-cloud-a-history-of-spotifys-journey-to-the-cloud-part-1-2/.

[11] *See, e.g.*, https://developer.spotify.com/use-cases/hardware/home-audio/.

[12] *See, e.g.*, https://techcrunch.com/2015/09/29/spotify-comes-to-google-chromecast-and-chromecast-audio/.

[13] *See, e.g.*, https://engineering.atspotify.com/2019/12/09/views-from-the-cloud-a-history-of-spotifys-journey-to-the-cloud-part-1-2/.

deletion of any "queue" of one or more media items to facilitate the aforementioned functionality.

## REQUEST NO. 8

Documents sufficient to show how a computing device (e.g., a Pixel Device or other mobile phone, tablet, laptop, etc.) running the Spotify app transitions from locally playing back Spotify content to controlling[14] playback of the Spotify content by a Google Media Player after moving or transferring playback of the Spotify content from the computing device to the Google Media Player (e.g., by virtue of the "Spotify Connect"[15] or Google "Cast"[16] feature), including but not limited to any determination made by the computing device to make such a transition.

## REQUEST NO. 9

Documents sufficient to show how a Google Display running the Spotify app transitions from locally playing back Spotify content to controlling[17] playback of the Spotify content by one or more other Google Media Players after moving or transferring playback of the Spotify content from the Google Display to the one or more other Google Media Players (e.g., by virtue of the "Spotify Connect"[18] or Google "Cast"[19] feature), including but not limited to any determination made by the Google Display to make such a transition.

---

[14] *See, e.g.*, https://www.spotify.com/us/connect/ ("Listen on your speakers or TV, using the Spotify app as a remote").
[15] *See, e.g.*, https://developer.spotify.com/use-cases/hardware/home-audio/.
[16] *See, e.g.*, https://techcrunch.com/2015/09/29/spotify-comes-to-google-chromecast-and-chromecast-audio/.
[17] *See, e.g.*, https://www.spotify.com/us/connect/ ("Listen on your speakers or TV, using the Spotify app as a remote").
[18] *See, e.g.*, https://developer.spotify.com/use-cases/hardware/home-audio/.
[19] *See, e.g.*, https://techcrunch.com/2015/09/29/spotify-comes-to-google-chromecast-and-chromecast-audio/.

**REQUEST NO. 10**

Documents sufficient to show how a computing device (e.g., a Pixel Device or other mobile phone, tablet, laptop, etc.) running the Spotify app controls or otherwise manages playback of media by a Google Media Player after moving or transferring media playback from the computing device to a Google Media Player (e.g., by virtue of the "Spotify Connect"[20] or Google "Cast"[21] feature), including but not limited to (i) displaying icons representing any transport controls (e.g., play, pause, skip forward, skip back, etc.) and invoking such controls and (ii) stopping media playback at the Google Media Player and returning media playback to the computing device.

**REQUEST NO. 11**

Documents sufficient to show how a Google Display running the Spotify app controls or otherwise manages playback of media by a Google Media Player after moving or transferring media playback from the Google Display to a Google Media Player (e.g., by virtue of the "Spotify Connect"[22] or Google "Cast"[23] feature) including but not limited to (i) displaying icons representing any transport controls (e.g., play, pause, skip forward, skip back, etc.) and invoking such controls and (ii) stopping media playback at the Google Media Player and returning media playback to the Google Display.

---

[20] *See, e.g.*, https://developer.spotify.com/use-cases/hardware/home-audio/.
[21] *See, e.g.*, https://techcrunch.com/2015/09/29/spotify-comes-to-google-chromecast-and-chromecast-audio/.
[22] *See, e.g.*, https://developer.spotify.com/use-cases/hardware/home-audio/.
[23] *See, e.g.*, https://techcrunch.com/2015/09/29/spotify-comes-to-google-chromecast-and-chromecast-audio/.

**REQUEST NO. 12**

Documents sufficient to show how any Spotify Server and/or third-party server (e.g., Google Server, such as the Google Cloud Platform[24]), in response to user input at the Spotify app, facilitates playback of one or more media items by a Google Media Player, including but not limited to any such server generating, populating, updating, extending, recommending, managing, or hosting a set of one or more media items that are scheduled for playback.

**REQUEST NO. 13**

Documents sufficient to show how any Spotify Server and/or third-party server (e.g., Google Server, such as the Google Cloud Platform[25]), in response to user input at the Spotify app, facilitates playback of one or more media items by a computing device (e.g., a Pixel Device or other mobile phone, tablet, laptop, etc.) running the Spotify app, as that functionality existed on and/or after September 29, 2014, including but not limited to any such server generating, populating, updating, extending, recommending, managing, or hosting a set of one or more media items that are scheduled for playback.

**REQUEST NO. 14**

Documents sufficient to show the extent to which Spotify employees have used (e.g., by testing or demonstrating) the Spotify app running on a computing device (e.g., Pixel Device or other mobile phone, tablet, laptop, etc.) to move or transfer playback of Spotify content from the

---

[24] *See, e.g.*, https://engineering.atspotify.com/2019/12/09/views-from-the-cloud-a-history-of-spotifys-journey-to-the-cloud-part-1-2/.
[25] *See, e.g.*, https://engineering.atspotify.com/2019/12/09/views-from-the-cloud-a-history-of-spotifys-journey-to-the-cloud-part-1-2/.

computing device to a Google Media Player (e.g., by virtue of the "Spotify Connect"[26] or Google "Cast"[27] feature), including the approximate date(s) such activity took place and who conducted or was present during such activity.

**REQUEST NO. 15**

Documents sufficient to show the extent to which Spotify users have engaged in one or more of the following:  (i) downloading the Spotify app onto a computing device (e.g., Pixel Device or other mobile phone, tablet, laptop, etc.); or (ii) operating the Spotify app to move or transfer playback of Spotify content from the computing device to a Google Media Player (e.g., by virtue of the "Spotify Connect"[28] or Google "Cast"[29] feature).

**REQUEST NO. 16**

Documents sufficient to show the monetary value to Spotify, in the aggregate and on a per-user basis, of the Spotify app incorporating functionality that enables a user to move or transfer playback of Spotify content from a computing device to a Google Media Player (e.g., by virtue of the "Spotify Connect"[30] or Google "Cast"[31] feature).

---

[26] *See, e.g.*, https://developer.spotify.com/use-cases/hardware/home-audio/.
[27] *See, e.g.*, https://techcrunch.com/2015/09/29/spotify-comes-to-google-chromecast-and-chromecast-audio/.
[28] *See, e.g.*, https://developer.spotify.com/use-cases/hardware/home-audio/.
[29] *See, e.g.*, https://techcrunch.com/2015/09/29/spotify-comes-to-google-chromecast-and-chromecast-audio/.
[30] *See, e.g.*, https://developer.spotify.com/use-cases/hardware/home-audio/.
[31] *See, e.g.*, https://techcrunch.com/2015/09/29/spotify-comes-to-google-chromecast-and-chromecast-audio/.

Dated: August 27, 2021                     Respectfully submitted,

                                           By:____/s/ Cole B. Richter_____

                                           Cole B. Richter (admitted *pro hac vice*)
                                           Illinois Bar No. 6315686
                                           LEE SULLIVAN SHEA & SMITH LLP
                                           656 W. Randolph St., Floor 5W
                                           Chicago, IL 60661
                                           Telephone:  312.754.9602
                                           Facsimile:  312.754.9603
                                           richter@ls3ip.com

                                           Alyssa Caridis (admitted *pro hac vice*)
                                           California Bar No. 260103
                                           ORRICK, HERRINGTON & SUTCLIFFE LLP
                                           777 South Figueroa St., Suite 3200
                                           Los Angeles, CA 90017
                                           Telephone:  213.612.2372
                                           Facsimile:  213.612.2499
                                           acaridis@orrick.com

                                           Clement Seth Roberts (admitted *pro hac vice*)
                                           California Bar No. 209203
                                           ORRICK, HERRINGTON & SUTCLIFFE LLP
                                           405 Howard St.
                                           San Francisco, CA 94105
                                           Telephone:  415.773.5484
                                           Facsimile:  415.773.5759
                                           croberts@orrick.com

                                           Bas de Blank (admitted *pro hac vice*)
                                           California Bar No. 191487
                                           ORRICK, HERRINGTON & SUTCLIFFE LLP
                                           1000 Marsh Blvd.
                                           Menlo Park, CA 94205
                                           Telephone:  650.614.7343
                                           Facsimile:  650.614.7401
                                           bdeblank@orrick.com

                                           George I. Lee (admitted *pro hac vice*)
                                           Illinois Bar No. 6225430
                                           Sean M. Sullivan (admitted *pro hac vice*)
                                           Illinois Bar No. 6230605
                                           Rory P. Shea (admitted *pro hac vice*)
                                           Illinois Bar No. 6290745
                                           J. Dan Smith (admitted *pro hac vice*)
                                           Illinois Bar No. 6300912

Cole B. Richter (admitted pro hac vice)
Illinois Bar No. 6315686
LEE SULLIVAN SHEA & SMITH LLP
656 W. Randolph St., Floor 5W
Chicago, IL 60661
Telephone:  312.754.9602
Facsimile:  312.754.9603
lee@ls3ip.com
sullivan@ls3ip.com
shea@ls3ip.com
smith@ls3ip.com
richter@ls3ip.com

Mark D. Siegmund
State Bar No. 24117055
mark@waltfairpllc.com
Law Firm of Walt, Fair PLLC.
1508 North Valley Mills Drive
Waco, Texas 76710
Telephone: (254) 772-6400
Facsimile: (254) 772-6432

*Counsel for Plaintiff Sonos, Inc.*

AO 88A  (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

## for the

Western District of Texas

| | | |
|---|---|---|
| Sonos, Inc. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. 6:20-cv-00881-ADA |
| Google LLC | ) | |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:  SPOTIFY USA INC., 4 WORLD TRADE CENTER, 150 GREENWICH STREET, NEW YORK,  NY 10007
C/O CT CORP. SYSTEM, 28 LIBERTY STREET, NEW YORK, NY 10005

*(Name of person to whom this subpoena is directed)*

☑ *Testimony:*  **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:
See attached  Schedule B.

| Place: Orrick, Herrington & Sutcliffe LLP<br>51 W 52nd St.<br>New York, NY 10019 | Date and Time:<br><br>09/24/2021 9:00 am |
|---|---|

The deposition will be recorded by this method: __Court reporting services and videography__

❏ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  __08/27/2021__

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| _____ | | /s/ Cole B. Richter |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* __Sonos, Inc.__
_____ , who issues or requests this subpoena, are:
Cole Richter, 656 W Randolph St., Floor 5W, Chicago, IL 60661, richter@ls3ip.com, (312) 754-9602

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.  6:20-cv-00881-ADA

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**SCHEDULE B**

Plaintiff Sonos, Inc. ("Sonos") commands Spotify USA Inc. ("Spotify") to appear on September 24, 2021, at 9:00am (or as agreed upon) to testify at a deposition to be taken at the offices of Sonos's counsel, Orrick, Herrington & Sutcliffe LLP, 51 W 52nd St., New York, NY 10019 (or as agreed upon). Sonos reserves the right to postpone the date and time of the deposition if Spotify has not produced, by September 10, 2021, at 5:00pm (or as agreed upon), the documents and things requested in Schedule A of the Subpoena to Produce Documents served herewith. The subject matter of the deposition will include the following topics.

**DEFINITIONS AND INSTRUCTIONS**

For purposes of responding to this deposition request, the following definitions and instructions shall apply:

1.      The term "Spotify" shall mean Spotify USA Inc., any company name under which Spotify is doing business; and its predecessors, parents, subsidiaries, divisions, licensees, franchisees, assigns or other related business entities, as well as directors, officers, employees, agents, distributors, jobbers, salespersons, sales representatives, and each person acting or purporting to act on its or their behalf or under its or their control, including but not limited to any observers, stringers, and/or reporters working for or with Spotify.

2.      The term and "Sonos" shall mean Sonos, Inc., any predecessor, successor, parent, subsidiary, or affiliate, and where applicable, Sonos's officers, directors, employees, partners, agents, attorneys, or any other person or business entity acting or purporting to act on Sonos's behalf.

3.      The term "Google," shall mean Google LLC, and any other name under which Google LLC is doing or has done business, any predecessor, successor, parent, subsidiary, or

affiliate, and where applicable, Google's officers, directors, employees, partners, agents, attorneys, or any other person or business entity acting or purporting to act on Google's behalf.

4.      The terms "document," "documents," and "information" each incorporates all documents, electronically stored information (ESI), and things as broadly defined in Rule 34 of the Federal Rules of Civil Procedure and related case law.

5.      The terms "communication" and "communications" shall mean all exchanges or transmittals, whether in paper, electronic, oral or any other form or medium, of information (including but not limited to transmittals of facts, ideas, inquiries, analyses, assertions, concerns, instructions, opinions, reservations, thoughts or otherwise) by any mode of transmission, including e-mail, facsimile, telex, courier, U.S. mail, in person, telephone, cell phone and other internet-based, wireless-based, and satellite-based modes of transmission, between or among two or more persons and includes all documents and things constituting, relating to, incorporating, including, summarizing, describing or identifying the contents, subject matter, date, place and time of or participants in an exchange or transmittal.

6.      The terms "person" and "persons" shall mean any natural person.

7.      The terms "entity" and "entities" shall mean any business, legal or governmental entity or association.

8.      The terms "and," "or," and "and/or" shall be construed disjunctively or conjunctively as necessary to bring within the scope of the request all responses that otherwise might be construed to be outside its scope.

9.      The terms "all," "any," "each," and "every" shall be construed as encompassing any and all.

10.      The terms "including" and "include" shall be construed in such a way as to suggest

or provide an example or examples.  The terms "including" and "include" shall not be construed in such a way as to limit or confine the broader term or concept for which a suggestion or example is being given.

11.     Each of "relating to," "relate to," "referring to," "refer to," "regarding," "with regard to,"  "concern," "concerning" and derivatives thereof shall be construed broadly so as to encompass the liberal scope of discovery set forth in Rule 26(b) of the Federal Rules of Civil Procedure and shall mean directly or indirectly affecting, alluding to, analyzing, bearing upon, commenting on, comparing, complementing, comprising, concerning, constituting, containing, contemplating, contradicting, criticizing, critiquing, dealing with, depicting, describing, discussing, embodying, evaluating, evidencing, identifying, incorporating, involving, mentioning, negating, noting, pertaining to, providing a basis for, referencing, referring to, reflecting, refuting, regarding, relating to, respecting, responding to, reviewing, stating, summarizing, supporting, with respect to or otherwise in any manner pertaining to or being connected to, whether logically, circumstantially, factually, legally, directly or indirectly, the document, thing, information, matter, topic, issue, fact, assertion, allegation or circumstance being stated, discussed or referenced.

12.     The use of the singular form of any word includes the plural and *vice versa* to bring within the scope of the request all responses that otherwise might be construed to be outside its scope.

13.     The term "how" shall be construed as how, what, why, when, who, and/or where as necessary to bring within the scope of the request all responses that otherwise might be construed to be outside its scope.

14.     The term "date" shall mean the exact day, month, and year (to the degree ascertainable) or if not ascertainable, the best approximation (including relationship to other

events).

15.     The term "the '206 Patent" shall mean U.S. Patent No. 9,344,206, as well as its application and any publications thereof.

16.     The term "the '615 Patent" shall mean U.S. Patent No. 9,967,615, as well as its application and any publications thereof.

17.     The term "the '966 Patent" shall mean U.S. Patent No. 10,469,966, as well as its application and any publications thereof.

18.     The term "the '033 Patent" shall mean U.S. Patent No. 10,779,033, as well as its application and any publications thereof.

19.     The term "the '885 Patent" shall mean U.S. Patent No. 10,848,885, as well as its application and any publications thereof.

20.     The term "Patent(s)-in-Suit" shall mean the '206 Patent, the '615 Patent, the '966 Patent, the '033 Patent, and the '885 Patent, either collectively or individually.

21.     The term "customer(s)" shall mean any purchaser, reseller, distributor, dealer, retailor, wholesaler, user, and/or recipient.

22.     The term "knowledge" shall include firsthand information and information derived from any source, including hearsay knowledge.

23.     The term "Google Media Player(s)" shall mean the following products, including any and all versions thereof, either collectively or individually: CHROMECAST, CHROMECAST ULTRA, CHROMECAST AUDIO, CHROMECAST WITH GOOGLE TV, HOME MINI, NEST MINI, HOME, HOME MAX, NEST AUDIO, HOME HUB, NEST HUB, NEST HUB MAX, and NEST WIFI POINT.

24.     The term "Google Display(s)" shall mean the following products, including any

and all versions thereof, either collectively or individually: HOME HUB, NEST HUB, and NEST HUB MAX.

25.     The term "Pixel Device(s)" shall mean the following products, including any and all versions thereof, either collectively or individually: PIXEL, PIXEL XL, PIXEL 2, PIXEL 2 XL, PIXEL  3, PIXEL 3 XL, PIXEL 3A, PIXEL 3A XL, PIXEL 4, PIXEL 4 XL, PIXEL 4A, PIXEL 4A (5G), PIXEL 5, PIXEL SLATE, PIXELBOOK, PIXELBOOK GO.

26.     The term "Google Product(s)" shall mean any Google Media Player(s), Pixel Device(s), and/or Google Display(s).

27.     The term "Google Server(s)" shall mean any Google server that hosts the Spotify app for download, any Google server that facilitates moving or transferring playback of Spotify from a computing device running the Spotify app to a Google Media Player (e.g., by virtue of the "Spotify Connect"[1] or Google "Cast"[2] feature), and any Google server that, in response to user input at the Spotify app, facilitates delivering Spotify media to a Google Media Player (including but not limited to any Cloud Content Delivery Network (CDN) server), either collectively or individually.

28.     The term "Spotify Server(s)" shall mean any server that facilitates playback of Spotify by a computing device or Google Media Player, any server that facilitates moving or transferring playback of Spotify from a computing device running the Spotify app to a Google Media Player (e.g., by virtue of the "Spotify Connect"[3] or Google "Cast"[4] feature), and any server

---

[1] *See, e.g.*, https://developer.spotify.com/use-cases/hardware/home-audio/.
[2] *See, e.g.*, https://techcrunch.com/2015/09/29/spotify-comes-to-google-chromecast-and-chromecast-audio/.
[3] *See, e.g.*, https://developer.spotify.com/use-cases/hardware/home-audio/.
[4] *See, e.g.*, https://techcrunch.com/2015/09/29/spotify-comes-to-google-chromecast-and-chromecast-audio/.

that, in response to user input at the Spotify app, facilitates delivering Spotify media to a computing device or Google Media Player, either collectively or individually.

29.     No topic or subpart hereof shall be construed as a limitation on any other topic or subpart hereof.

30.     When objecting to any topic, please state with specificity the grounds for each objection and the topic or subpart to which each objection applies.

**DEPOSITION TOPICS**

**TOPIC NO. 1**

How the Spotify app, running on a computing device (e.g., Pixel Device or other mobile phone, tablet, laptop, etc.), independently or working with other software on the computing device, enables a user to move or transfer playback of Spotify content from the computing device to a Google Media Player (e.g., by virtue of the "Spotify Connect"[5] or Google "Cast"[6] feature), including but not limited to (i) describing in detail any information that is exchanged between the computing device, the Google Media Player, any Spotify Server, and/or any third-party server (e.g., Google Server, such as the Google Cloud Platform[7]) to facilitate the aforementioned functionality and how such exchange takes place, (ii) describing in detail any creation, existence, modification, or deletion of any "queue"[8] of one or more media items to facilitate the aforementioned functionality and how such creation, existence, modification, or deletion takes

---

[5] *See, e.g.*, https://developer.spotify.com/use-cases/hardware/home-audio/.
[6] *See, e.g.*, https://techcrunch.com/2015/09/29/spotify-comes-to-google-chromecast-and-chromecast-audio/.
[7] *See, e.g.*, https://engineering.atspotify.com/2019/12/09/views-from-the-cloud-a-history-of-spotifys-journey-to-the-cloud-part-1-2/.
[8] *See, e.g.*, https://support.spotify.com/us/article/play-queue/.

place, and (iii) the circumstances surrounding how and when the Spotify app was modified to facilitate the aforementioned functionality.


**TOPIC NO. 2**

How the Spotify app, running on a Google Display, independently or working with other software on the Google Display, enables a user to move or transfer playback of Spotify content from the Google Display to one or more other Google Media Players (e.g., by virtue of the "Spotify Connect"[9] or Google "Cast"[10] feature), including but not limited to (i) describing in detail any information that is exchanged between the Google Display, the Google Media Player(s), any Spotify Server, and/or any third-party server (e.g., a Google Server, such as the Google Cloud Platform[11]) to facilitate the aforementioned functionality and how such exchange takes place, (ii) describing in detail any creation, existence, modification, or deletion of any "queue"[12] of one or more media items to facilitate the aforementioned functionality and how such creation, existence, modification, or deletion takes place, and (iii) the circumstances surrounding how and when the Spotify app was modified to facilitate the aforementioned functionality.


**TOPIC NO. 3**

How the Spotify app, running on a computing device (e.g., Pixel Device or other mobile phone, tablet, laptop, etc.), independently or working with other software on the computing device,

---

[9] *See, e.g.*, https://developer.spotify.com/use-cases/hardware/home-audio/.

[10] *See, e.g.*, https://techcrunch.com/2015/09/29/spotify-comes-to-google-chromecast-and-chromecast-audio/.

[11] *See, e.g.*, https://engineering.atspotify.com/2019/12/09/views-from-the-cloud-a-history-of-spotifys-journey-to-the-cloud-part-1-2/.

[12] *See, e.g.*, https://support.spotify.com/us/article/play-queue/.

transitions the computing device from locally playing Spotify content to controlling[13] playback of the Spotify content by a Google Media Player after moving or transferring playback of the Spotify content from the computing device to the Google Media Player (e.g., by virtue of the "Spotify Connect"[14] or Google "Cast"[15] feature), including but not limited to describing in detail how the computing device determines to make such a transition and how such determination takes place.


**TOPIC NO. 4**

How the Spotify app, running on a Google Display, independently or working with other software on the Google Display, transitions the Google Display from locally playing Spotify content to controlling[16] playback of the Spotify content by one or more other Google Media Players after moving or transferring playback of the Spotify content from the computing device to the one or more other Google Media Players (e.g., by virtue of the "Spotify Connect"[17] or Google "Cast"[18] feature), including but not limited to describing in detail how the Google Display determines to make such a transition and how such determination takes place.


**TOPIC NO. 5**

How the Spotify service enables a Google Product (e.g., a Google Media Player or Pixel

---

[13] *See, e.g.*, https://www.spotify.com/us/connect/ ("Listen on your speakers or TV, using the Spotify app as a remote").
[14] *See, e.g.*, https://developer.spotify.com/use-cases/hardware/home-audio/.
[15] *See, e.g.*, https://techcrunch.com/2015/09/29/spotify-comes-to-google-chromecast-and-chromecast-audio/.
[16] *See, e.g.*, https://www.spotify.com/us/connect/ ("Listen on your speakers or TV, using the Spotify app as a remote").
[17] *See, e.g.*, https://developer.spotify.com/use-cases/hardware/home-audio/.
[18] *See, e.g.*, https://techcrunch.com/2015/09/29/spotify-comes-to-google-chromecast-and-chromecast-audio/.

Device) to receive and then play back a sequence of media items (e.g., songs, podcast episodes, etc.), including but not limited to (i) describing in detail any communications between the Google Product and any web server (e.g., a Google Server, such as the Google Cloud Platform[19], or a Spotify Server) and how such communications take place, (ii) describing in detail any communications between one or more web servers (e.g., a Google Server, such as the Google Cloud Platform[20], or a Spotify Server) and how such communications take place, and (iii) describing in detail how any web server (e.g., Google and/or Spotify Servers) creates, updates, manages, or hosts a set of one or more media items that are scheduled for playback by the Google Product and how such creating, updating, managing, or hosting occurs.

**TOPIC NO. 6**

How the Spotify service enables a Google Display to receive and then play back a sequence of media items (e.g., songs, podcast episodes, etc.), including but not limited to (i) describing in detail any communications between the Google Display and any web server (e.g., a Google Server, such as the Google Cloud Platform[21], or a Spotify Server) and how such communications take place, (ii) describing in detail any communications between one or more web servers (e.g., a Google Server, such as the Google Cloud Platform[22], or a Spotify Server) and how such communications take place, and (iii) describing in detail how any web server (e.g., Google and/or

---

[19] *See, e.g.*, https://engineering.atspotify.com/2019/12/09/views-from-the-cloud-a-history-of-spotifys-journey-to-the-cloud-part-1-2/.

[20] *See, e.g.*, https://engineering.atspotify.com/2019/12/09/views-from-the-cloud-a-history-of-spotifys-journey-to-the-cloud-part-1-2/.

[21] *See, e.g.*, https://engineering.atspotify.com/2019/12/09/views-from-the-cloud-a-history-of-spotifys-journey-to-the-cloud-part-1-2/.

[22] *See, e.g.*, https://engineering.atspotify.com/2019/12/09/views-from-the-cloud-a-history-of-spotifys-journey-to-the-cloud-part-1-2/.

Spotify Servers) creates, updates, manages, or hosts a set of one or more media items that are scheduled for playback by the Google Product and how such creating, updating, managing, or hosting occurs.

**TOPIC NO. 5**

The extent to which Spotify employees have used (e.g., by testing or demonstrating) the Spotify app running on a computing device (e.g., Pixel Device or other mobile phone, tablet, laptop, etc.) to move or transfer playback of Spotify content from the computing device to a Google Media Player (e.g., by virtue of the "Spotify Connect"[23] or Google "Cast"[24] feature), including the approximate date(s) such activity took place and who conducted or was present during such activity.

**TOPIC NO. 6**

The extent to which Spotify users have engaged in one or more of the following:  (i) downloading the Spotify app onto a computing device (e.g., Pixel Device or other mobile phone, tablet, laptop, etc.); or (ii) operating the Spotify app to move or transfer playback of Spotify content from the computing device to a Google Media Player (e.g., by virtue of the "Spotify Connect"[25] or Google "Cast"[26] feature).

---

[23] *See, e.g.*, https://developer.spotify.com/use-cases/hardware/home-audio/.
[24] *See, e.g.*, https://techcrunch.com/2015/09/29/spotify-comes-to-google-chromecast-and-chromecast-audio/.
[25] *See, e.g.*, https://developer.spotify.com/use-cases/hardware/home-audio/.
[26] *See, e.g.*, https://techcrunch.com/2015/09/29/spotify-comes-to-google-chromecast-and-chromecast-audio/.

**TOPIC NO. 7**

The monetary value to Spotify, in the aggregate and on a per-user basis, of the Spotify app incorporating functionality that enables a user to move or transfer playback of Spotify content from a computing device to a Google Media Player (e.g., by virtue of the "Spotify Connect"[27] or Google "Cast"[28] feature).

Dated: August 27, 2021

Respectfully submitted,

By:      /s/ Cole B. Richter

Cole B. Richter (admitted *pro hac vice*)
Illinois Bar No. 6315686
LEE SULLIVAN SHEA & SMITH LLP
656 W. Randolph St., Floor 5W
Chicago, IL 60661
Telephone:  312.754.9602
Facsimile:  312.754.9603
richter@ls3ip.com

Alyssa Caridis (admitted *pro hac vice*)
California Bar No. 260103
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa St., Suite 3200
Los Angeles, CA 90017
Telephone:  213.612.2372
Facsimile:  213.612.2499
acaridis@orrick.com

Clement Seth Roberts (admitted *pro hac vice*)
California Bar No. 209203
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard St.
San Francisco, CA 94105
Telephone:  415.773.5484

---

[27] *See, e.g.*, https://developer.spotify.com/use-cases/hardware/home-audio/.
[28] *See, e.g.*, https://techcrunch.com/2015/09/29/spotify-comes-to-google-chromecast-and-chromecast-audio/.

Facsimile:  415.773.5759
croberts@orrick.com

Bas de Blank (admitted *pro hac vice*)
California Bar No. 191487
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Blvd.
Menlo Park, CA 94205
Telephone:  650.614.7343
Facsimile:  650.614.7401
bdeblank@orrick.com

George I. Lee (admitted *pro hac vice*)
Illinois Bar No. 6225430
Sean M. Sullivan (admitted *pro hac vice*)
Illinois Bar No. 6230605
Rory P. Shea (admitted *pro hac vice*)
Illinois Bar No. 6290745
J. Dan Smith (admitted *pro hac vice*)
Illinois Bar No. 6300912
Cole B. Richter (admitted pro hac vice)
Illinois Bar No. 6315686
LEE SULLIVAN SHEA & SMITH LLP
656 W. Randolph St., Floor 5W
Chicago, IL 60661
Telephone:  312.754.9602
Facsimile:  312.754.9603
lee@ls3ip.com
sullivan@ls3ip.com
shea@ls3ip.com
smith@ls3ip.com
richter@ls3ip.com

Mark D. Siegmund
State Bar No. 24117055
mark@waltfairpllc.com
Law Firm of Walt, Fair PLLC.
1508 North Valley Mills Drive
Waco, Texas 76710
Telephone: (254) 772-6400
Facsimile: (254) 772-6432

*Counsel for Plaintiff Sonos, Inc.*