# **<u>EXHIBIT D</u>**

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **SONOS, INC.,** | § | |
| *Plaintiff*, | § | |
| | § | |
| | § | **CIVIL ACTION 6:20-cv-00881-ADA** |
| **v.** | § | |
| | § | |
| | § | |
| **GOOGLE LLC** | § | |
| *Defendant.* | § | |

**PLAINTIFF'S FIRST SET OF FACT DISCOVERY REQUESTS FOR
THE PRODUCTION OF DOCUMENTS AND THINGS TO DEFENDANTS**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the Order Governing Proceedings - Patent Case, Plaintiff Sonos, Inc. ("Sonos") propounds the following requests to Defendant Google LLC ("Google") for the production of the documents and things specified below for inspection and copying.  The documents and things shall be produced within thirty days from the service of these requests to Sonos's counsel, Lee Sullivan Shea & Smith LLP, 656 W. Randolph St., Chicago, Illinois 60661.  This is a continuing request for documents and things as they become available to you.

## DEFINITIONS AND INSTRUCTIONS

For purposes of responding to these requests, the following definitions and instructions shall apply:

1.     The Definitions and Instructions set forth in Sonos's First Set of Fact Discovery Interrogatories for to Defendant are incorporated by reference and apply to these discovery requests, in addition to those stated below.

2.     The terms "Plaintiff" and "Sonos" shall mean Sonos, Inc., any predecessor,

1

successor, parent, subsidiary, or affiliate, and where applicable, Sonos's officers, directors, employees, partners, agents, attorneys, or any other person or business entity acting or purporting to act on Sonos's behalf.

3.      The terms "Defendant," "Google," "You," and "Your" shall mean Google LLC, and any other name under which Defendant is doing or has done business, any predecessor, successor, parent, subsidiary, or affiliate, and where applicable, Defendant's officers, directors, employees, partners, agents, attorneys, or any other person or business entity acting or purporting to act on Defendant's behalf.

4.      The terms "document," "documents," and "information" each incorporates all documents, electronically stored information (ESI), and things as broadly defined in Rule 34 of the Federal Rules of Civil Procedure and related case law.

5.      The terms "communication" and "communications" shall mean all exchanges or transmittals, whether in paper, electronic, oral or any other form or medium, of information (including but not limited to transmittals of facts, ideas, inquiries, analyses, assertions, concerns, instructions, opinions, reservations, thoughts or otherwise) by any mode of transmission, including e-mail, facsimile, telex, courier, U.S. mail, in person, telephone, cell phone and other internet-based, wireless-based, and satellite-based modes of transmission, between or among two or more persons and includes all documents and things constituting, relating to, incorporating, including, summarizing, describing or identifying the contents, subject matter, date, place and time of or participants in an exchange or transmittal.

6.      The terms "person" and "persons" shall mean any natural person.

7.      The terms "entity" and "entities" shall mean any business, legal or governmental entity or association.

8.      The terms "and," "or," and "and/or" shall be construed disjunctively or conjunctively as necessary to bring within the scope of the request all responses that otherwise might be construed to be outside its scope.

9.      The terms "all," "any," "each," and "every" shall be construed as encompassing any and all.

10.     The terms "including" and "include" shall be construed in such a way as to suggest or provide an example or examples.  The terms "including" and "include" shall not be construed in such a way as to limit or confine the broader term or concept for which a suggestion or example is being given.

11.     Each of "relating to," "relate to," "referring to," "refer to," "regarding," "with regard to,"  "concern," "concerning" and derivatives thereof shall be construed broadly so as to encompass the liberal scope of discovery set forth in Rule 26(b) of the Federal Rules of Civil Procedure and shall mean directly or indirectly affecting, alluding to, analyzing, bearing upon, commenting on, comparing, complementing, comprising, concerning, constituting, containing, contemplating, contradicting, criticizing, critiquing, dealing with, depicting, describing, discussing, embodying, evaluating, evidencing, identifying, incorporating, involving, mentioning, negating, noting, pertaining to, providing a basis for, referencing, referring to, reflecting, refuting, regarding, relating to, respecting, responding to, reviewing, stating, summarizing, supporting, with respect to or otherwise in any manner pertaining to or being connected to, whether logically, circumstantially, factually, legally, directly or indirectly, the document, thing, information, matter, topic, issue, fact, assertion, allegation or circumstance being stated, discussed or referenced.

12.     The use of the singular form of any word includes the plural and *vice versa* to bring within the scope the request all responses that otherwise might be construed to be outside its

scope.

13.     The term "how" shall be construed as how, what, why, when, who, and/or where as necessary to bring within the scope of the request all responses that otherwise might be construed to be outside its scope.

14.     The term "date" shall mean the exact day, month, and year (to the degree ascertainable) or if not ascertainable, the best approximation (including relationship to other events).

15.     The term "the '206 Patent" shall mean U.S. Patent No. 9,344,206, as well as its application and any publications thereof.

16.     The term "the '615 Patent" shall mean U.S. Patent No. 9,967,615, as well as its application and any publications thereof.

17.     The term "the '966 Patent" shall mean U.S. Patent No. 10,469,966, as well as its application and any publications thereof.

18.     The term "the '033 Patent" shall mean U.S. Patent No. 10,779,033, as well as its application and any publications thereof.

19.     The term "the '885 Patent" shall mean U.S. Patent No. 10,848,885, as well as its application and any publications thereof.

20.     The term "Patent(s)-in-Suit" shall mean the '206 Patent, the '615 Patent, the '966 Patent, the '033 Patent, and the '885 Patent, either collectively or individually.

21.     The term "Sonos IP Rights" shall mean any intellectual property rights that are associated with Sonos, including but not limited to any patent, trademark, trade dress, trade secret, copyright, or any application therefor, that is assigned to, applied for on behalf of, or otherwise inures to the benefit of Sonos, either collectively or individually.

4

22.    The term "customer(s)" shall mean any purchaser, reseller, distributor, dealer, retailor, wholesaler, user, and/or recipient.

23.    The term "knowledge" shall include firsthand information and information derived from any source, including hearsay knowledge.

24.    The term "Sonos Product(s)" shall mean any product made, offered, or sold by Sonos, including but not limited to any Sonos app (including but not limited to the Sonos S1 and S2 apps), any Sonos player (including but not limited to the PLAY:1, ONE, ONE SL, PLAY:3, PLAY:5, FIVE, MOVE, ROAM, PLAYBAR, PLAYBASE, BEAM, ARC, SUB, CONNECT, PORT, CONNECT:AMP, AMP, and any predecessor product thereof), any Sonos controller device (including but not limited to the CR100 and CR200), and any Sonos networking device (including but not limited to the BRIDGE and the BOOST), either collectively or individually.

25.    The term "Accused Cast-Enabled Media Player(s)" shall mean the following products, including any and all versions thereof, either collectively or individually: CHROMECAST, CHROMECAST ULTRA, CHROMECAST AUDIO, CHROMECAST WITH GOOGLE TV, HOME MINI, NEST MINI, HOME, HOME MAX, NEST AUDIO, HOME HUB, NEST HUB, NEST HUB MAX, and NEST WIFI POINT.

26.    The term "Accused Cast-Enabled Display(s)" shall mean the following products, including any and all versions thereof, either collectively or individually: HOME HUB, NEST HUB, and NEST HUB MAX.

27.    The term "Accused Pixel Device(s)" shall mean the following products, including any and all versions thereof, either collectively or individually: PIXEL, PIXEL XL, PIXEL 2, PIXEL 2 XL, PIXEL  3, PIXEL 3 XL, PIXEL 3A, PIXEL 3A XL, PIXEL 4, PIXEL 4 XL, PIXEL 4A, PIXEL 4A (5G), PIXEL 5, PIXEL SLATE, PIXELBOOK, PIXELBOOK GO.

28.     The term "Accused Cast-Enabled App(s)" shall mean the Google Home app, any of Google's own Cast-enabled Android, iOS, or Chrome apps (including but not limited to the YouTube Music app, Google Play Music app, YouTube app, Google Podcasts app, and YouTube TV app), any third-party Cast-enabled app that allows a user to "cast"[1] to an Accused Cast-Enabled Media Player (including but not limited to the Spotify app), and any Cast-enabled software (e.g., firmware and/or Cast-enabled apps) executable on an Accused Cast-Enabled Display that enables a user to "[m]ove media from one cast device to another,"[2] either collectively or individually.

29.     The term "Accused Google Product(s)" shall mean any Accused Cast-Enabled Media Player(s), Accused Pixel Device(s), and/or Accused Cast-Enabled App(s), either collectively or individually.

30.     The term "Accused Google Server(s)" shall mean any server that hosts at least one of the Accused Cast-Enabled App(s) for download, any server that facilitates "[c]asting from Chromecast-enabled apps to [Accused Cast-Enabled Media Player(s)],"[3] any server that facilitates "[m]ov[ing] media from one cast device to another,"[4] and any server that, in response to user input at any Accused Cast-Enabled App, facilitates delivering media to an Accused Cast-Enabled Media Player (including but not limited to any Cloud Content Delivery Network (CDN) server), either collectively or individually.

31.     The terms "Accused Instrumentality" and "Accused Instrumentalities" refer to the instrumentalities identified in Sonos's Complaint (as may be amended), as well as any infringement contentions, including but not limited to the Accused Google Product(s) and Accused Google Server(s), either collectively or individually.

---

[1] *See, e.g.*, https://support.google.com/googlenest/answer/7181830.
[2] *See, e.g.*, https://support.google.com/chromecast/answer/9563059?co=GENIE.Platform%3DAndroid&hl=en.
[3] *See, e.g.*, https://support.google.com/googlenest/answer/7181830.
[4] *See, e.g.*, https://support.google.com/chromecast/answer/9563059?co=GENIE.Platform%3DAndroid&hl=en.

32.     No request or subpart hereof shall be construed as a limitation on any other request or subpart hereof.

33.     Please produce all documents and things responsive to these requests that are within Defendant's possession, custody, or control, whether directly or indirectly.

34.     If, after exercising due diligence, Defendant is unable to determine the existence of any documents or things falling within a document request, please state so in Defendant's written response as required by Rule 34 of the Federal Rules of Civil Procedure.

35.     Please produce all documents responsive to these requests as they are kept in the ordinary course of business.  In this respect, please produce all responsive documents in their entirety, including all attachments or affixations thereto.

36.     Please produce documents from any single file in the same order as they were found in such file.   If copies of documents are produced, such copies should be legible and bound or stapled in the same manner as the original.

37.     When objecting to any request, please state with specificity the grounds for each objection and the request(s) to which each objection applies.  Any request to which an objection is made should be responded to insofar as it is not deemed objectionable.

38.     For each responsive document withheld on a claim of privilege, including but not limited to the attorney-client privilege and/or work product immunity, please identify the nature of the privilege being claimed, state the basis for the claim of privilege, and provide the following information:

   a.  the type of document (e.g., letter, email, memorandum, etc.);
   b.  the date of the document;
   c.  the general subject matter of the document; and
   d.  other information sufficient to identify the document for a subpoena *duces tecum*, including but not limited to, where appropriate, the identity of the author and any other person involved in the preparation of the document, the identity of the

addressees and any other recipients of the document, the identity of the custodian of the document, and where not apparent, the relationship of the such persons to one other.

39.     Further, if a claim of privilege applies to only a portion of a responsive document, please produce the portion(s) of the document not subject to the claim of privilege.

40.     For each responsive document withheld on a claim of third-party confidentiality, please state the basis for the claim of third-party confidentiality and provide the following information:

    a.   the type of document (e.g., letter, email, memorandum, etc.);
    b.   the date of the document;
    c.   the general subject matter of the document; and
    d.   other information sufficient to identify the document for a subpoena duces tecum, including but not limited to, where appropriate, the identity of the author and any other person involved in the preparation of the document, the identity of the addressees and any other recipients of the document, the identity of the custodian of the document, and where not apparent, the relationship of the such persons to one other.

41.     Further, if a claim of third-party confidentiality applies to only a portion of a responsive document, please produce the portion(s) of the document not subject to the claim of third-party confidentiality.

42.     For each responsive document of which Defendant is aware that has been destroyed, lost, or is otherwise unavailable for production, please state so and provide the following information:

    a.   the type of document (e.g., letter, email, memorandum, etc.);
    b.   the date of the document;
    c.   the contents of the document;
    d.   other information sufficient to identify the document for a subpoena duces tecum, including but not limited to, where appropriate, the identity of the author and any other person involved in the preparation of the document, the identity of the addressees and any other recipients of the document, the identity of the custodian of the document, and where not apparent, the relationship of the such persons to one other;
    e.   the date of the unavailability;

f.   the identity of the person who authorized the destruction (if any); and

g.   the identity of the person known to have last had possession, custody, or control of the document.

43.    These requests for production shall be deemed continuing so as to require further and supplemental production in accordance with the Federal Rules of Civil Procedure.

## PRODUCTION REQUESTS

### REQUEST NO. 1

The complete source code for each Accused Instrumentality, including but not limited to (i) the complete source code for each version of each Accused Cast-Enabled App, (ii) the complete source code for each version of the firmware for each Accused Cast-Enabled Media Player and each Accused Pixel Device, and (iii) the complete source code for each version of the firmware for each Accused Google Server.

### REQUEST NO. 2

All documents and things concerning the source code for the Accused Instrumentalities, including but not limited to source code comments, requirements documents, design documents, testing documents, bug reports, user documentation, versioning documents, changelogs, release notes, and documents showing structure and/or organization of the source code for the Accused Google Products and Accused Google Servers.

### REQUEST NO. 3

All documents and things (other than source code) concerning the architecture and functionality of each Accused Instrumentality, including but not limited to proposals, project wikis, specifications, product overviews, diagrams, schematics, flow charts, internal notes,

communications, memoranda, presentations, release notes, parts lists, bills of material, guides, manuals, training materials, and customer support materials.

**REQUEST NO. 4**

All documents and things (other than source code) concerning the conception, research, design, and/or development of each Accused Instrumentality, including but not limited to market analyses, proposals, project plans, project schedules, project wikis, reports, specifications, diagrams, schematics, flow charts, internal notes, communications, memoranda, presentations, release notes, parts lists, bills of material, and revision histories.

**REQUEST NO. 5**

All documents and things concerning Defendant's decision for selecting the design configuration and functionality of the Accused Instrumentalities, including but not limited to Defendant's decision to implement and/or to not implement any feature of the Accused Instrumentalities.

**REQUEST NO. 6**

All promotional, instructional, and informational material prepared by, or on behalf of, Defendant concerning the Accused Instrumentalities, including but not limited to press releases, product announcements, advertisements, webpages, sales flyers, instruction manuals, and customer support materials.

**REQUEST NO. 7**

Documents sufficient to identify and correlate the commercial names, internal names, project names, versions, and model numbers of (i) all of the Accused Cast-Enabled Apps, (ii) all of the Accused Cast-Enabled Media Players and Accused Pixel Devices, (iii) all of the firmware for all of the Accused Cast-Enabled Media Players and Accused Pixel Devices, and (iv) all of the Accused Google Servers.

**REQUEST NO. 8**

All documents and things concerning how each Accused Cast-Enabled App is made available for download onto computing devices (e.g., an Accused Pixel Device, an Accused Cast-Enabled Display, or a third-party mobile phone or tablet) including but not limited to (i) description of where and/or how any web server (e.g., Accused Google Server) stores, maintains, or otherwise hosts the given Accused Cast-Enabled App for download, (ii) description of where and/or how any web server (e.g., Accused Google Server) stores, maintains, or otherwise hosts different versions of the given Accused Cast-Enabled App (e.g., past or future public versions of the given Accused Cast-Enabled App), and (iii) description of the process by which the given Accused Cast-Enabled App is provided by any web server (e.g., Accused Google Server) to computing devices (e.g., an Accused Pixel Device, an Accused Cast-Enabled Display, or a third-party mobile phone or tablet).

**REQUEST NO. 9**

All documents and things concerning the respective user interface (e.g., graphical user interface) of each of the Accused Cast-Enabled Apps, including but not limited to (i) the interface

for creating, and controlling media playback from, a "speaker group,"[5] (ii) the interface for "casting"[6] to one or more Accused Cast-Enabled Media Players, and (iii) the interface for moving media from an Accused Cast-Enabled Display to one or more other Accused Cast-Enabled Media Players.[7]

## REQUEST NO. 10

All documents and things concerning creating a "speaker group" of two or more Accused Cast-Enabled Media Players and then activating playback of media from the created "speaker group," including but not limited to (i) any communication between a computing device running the Google Home app and the Accused Cast-Enabled Media Players that facilitates the aforementioned functionality and (ii) any information that is stored at the Accused Cast-Enabled Media Players that facilitates the aforementioned functionality.

## REQUEST NO. 11

All documents and things concerning information that is stored at an Accused Cast-Enabled Media Player that reflects, indicates, or otherwise characterizes any "speaker group" that the Accused Cast-Enabled Media Player is a part of.

## REQUEST NO. 12

All documents and things concerning information that is communicated by an Accused Cast-Enabled Media Player and received by a computing device running the Google Home app

---

[5] *See, e.g.*, https://support.google.com/googlenest/answer/7174267?co=GENIE.Platform%3DAndroid&hl=en.
[6] *See, e.g.*, https://support.google.com/googlenest/answer/7181830.
[7] *See, e.g.*, https://support.google.com/chromecast/answer/9563059?co=GENIE.Platform%3DAndroid&hl=en.

that reflects, indicates, or otherwise characterizes any "speaker group" that the Accused Cast-Enabled Media Player is a part of.

## REQUEST NO. 13

All documents and things concerning multiple Accused Cast-Enabled Media Players playing the same media at the same time, including but not limited to (i) multiple Accused Cast-Enabled Media Players playing the same media at the same time in a "speaker group" and (ii) multiple Accused Cast-Enabled Media Players playing the same media at the same time in a "speaker pair."[8]

## REQUEST NO. 14

All documents and things concerning the process by which an Accused Cast-Enabled Media Player plays back media items from an Internet-based media source (e.g., YouTube, YouTube Music, YouTube TV, Google Play Music, Google Podcasts, Spotify, etc.), including but not limited to (i) the Accused Cast-Enabled Media Player receiving an identification of a given media item for playback, (ii) the Accused Cast-Enabled Media Player "queueing"[9] the given media item for playback, (iii) the Accused Cast-Enabled Media Player obtaining the given media item for playback, (iv) the Accused Cast-Enabled Media Player playing back the given media item, and (v) the Accused Cast-Enabled Media Player facilitating playback of a next media item after playback of the given media item.

---

[8] *See, e.g.*, https://support.google.com/googlenest/answer/7559493?co=GENIE.Platform%3DAndroid&hl=en.
[9] *See, e.g.*, https://developers.google.com/cast/docs/ios_sender/queueing.

**REQUEST NO. 15**

All documents and things concerning the process by which a computing device (e.g., an Accused Pixel Device, an Accused Cast-Enabled Display, or a third-party mobile phone or tablet) running an Accused Cast-Enabled App (e.g., the YouTube app, the YouTube Music app, the YouTube TV app, the Google Play Music app, the Google Podcasts app, the Spotify app, etc.) plays back media items from an associated Internet-based media source (e.g., YouTube, YouTube Music, YouTube TV, Google Play Music, Google Podcasts, Spotify, etc.), including but not limited to (i) the computing device receiving user input selecting one or more media items for playback, (ii) the computing device "queueing" the one or more media items for playback, (iii) the computing device obtaining a first of the media items for playback, (iv) the computing device playing back the first media item, and (v) the computing device facilitating play back of a next media item after playback of the first media item.

**REQUEST NO. 16**

All documents and things concerning the process by which a computing device (e.g., an Accused Pixel Device, an Accused Cast-Enabled Display, or a third-party mobile phone or tablet) running an Accused Cast-Enabled App that is connected to a Wi-Fi network discovers any Accused Cast-Enabled Media Player that is also connected to the Wi-Fi network.

**REQUEST NO. 17**

For each Accused Cast-Enabled App, all documents and things concerning how a computing device (e.g., an Accused Pixel Device, an Accused Cast-Enabled Display, or a third-

party mobile phone or tablet) running a given Accused Cast-Enabled App "casts,"[10] or otherwise moves or transfers media,[11] to an Accused Cast-Enabled Media Player, including but not limited to (i) any information that is exchanged between the computing device, the Accused Cast-Enabled Media Player, and/or any Accused Google Server to facilitate the aforementioned functionality and (ii) any creation, existence, modification, or deletion of any "queue"[12] of one or more media items to facilitate the aforementioned functionality.

## REQUEST NO. 18

For each Accused Cast-Enabled App, all documents and things concerning how a computing device (e.g., an Accused Pixel Device, an Accused Cast-Enabled Display, or a third-party mobile phone or tablet) running a given Accused Cast-Enabled App controls or otherwise manages playback of media by an Accused Cast-Enabled Media Player after "casting," or otherwise moving or transferring media, to the Accused Cast-Enabled Media Player, including but not limited to (i) displaying icons representing any transport controls[13] and invoking such controls and (ii) stopping "casting" at the Accused Cast-Enabled Media Player.

## REQUEST NO. 19

For each Accused Cast-Enabled App, all documents and things concerning how any server (e.g., any Accused Google Server), in response to user input at a given Accused Cast-Enabled App, facilitates playback of one or more media items by (i) an Accused Cast-Enabled Media Player or (ii) a computing device (e.g., an Accused Pixel Device, an Accused Cast-

---

[10] *See, e.g.*, https://support.google.com/googlenest/answer/7181830.
[11] *See, e.g.*, https://support.google.com/chromecast/answer/9563059?co=GENIE.Platform%3DAndroid&hl=en.
[12] *See, e.g.*, https://developers.google.com/cast/docs/ios_sender/queueing.
[13] *See, e.g.*, https://developer.android.com/reference/android/media/session/MediaController.TransportControls.

Enabled Display, or a third-party mobile phone or tablet) running the given Accused Cast-Enabled App, including but not limited to any such server generating, populating, updating, extending, recommending, managing, or hosting a set of one or more media items that are scheduled for playback.

**REQUEST NO. 20**

For each of the YouTube, YouTube Music, YouTube TV, Google Play Music, Google Podcasts, and Spotify media services, all documents and things concerning how a sequence of media items (e.g., songs, podcast episodes, etc.) is generated and/or utilized in connection with a given one of the aforementioned media services and provided to an Accused Google Product (e.g., an Accused Cast-Enabled Media Player or Accused Pixel Device) for playback including but not limited to (i) description of any communications between the Accused Google Product and any web server (e.g., Accused Google Server or third-party server), (ii) description of how any Accused Google Server generates, maintains, and/or updates a set of one or more media-item "recommendations"[14] that are sent to the Accused Google Product and how those "recommendations" are sent to the Accused Google Product, and (iii) description of how any Accused Google Server facilitates Google's "Autoplay feature"[15] for playback at the Accused Google Product and how the "Autoplay feature" is utilized at the Accused Google Product.

---

[14] *See, e.g.*, https://www.youtube.com/howyoutubeworks/product-features/recommendations/;
https://support.google.com/youtubemusic/answer/6313542?hl=en;
https://support.google.com/websearch/answer/10017274?hl=en&co=GENIE.Platform%3DAndroid#zippy=.
[15] *See, e.g.*, https://support.google.com/youtube/answer/6327615?hl=en&co=GENIE.Platform%3DAndroid;
https://support.google.com/websearch/answer/10017274?hl=en&co=GENIE.Platform%3DAndroid#zippy=.

**REQUEST NO. 21**

All documents and things concerning any test, study, or evaluation of the Accused Instrumentalities, whether internal or external, including but not limited to any alpha test, beta test, user study, or third-party approval process for any Accused Instrumentality.

**REQUEST NO. 22**

All documents and things concerning use or demonstration of, or training related to, the Accused Instrumentalities by Google or by any third party (including but not limited to customers of the Accused Instrumentalities).

**REQUEST NO. 23**

All documents and things concerning the manufacture of each Accused Pixel Device and Accused Cast-Enabled Media Player, including but not limited to bills of materials, costs of goods, and documents concerning any pre-installed software (e.g., firmware and/or any Accused Cast-Enabled Apps).

**REQUEST NO. 24**

All documents and things concerning communications between Defendant and any third party regarding the Accused Instrumentalities, including but not limited to communications between Defendant and customers of the Accused Instrumentalities and feedback from customers of the Accused Instrumentalities relating thereto.

**REQUEST NO. 25**

All documents and things concerning marketing material, advertisement, instruction or suggestion by Defendant  concerning downloading any Accused Cast-Enabled App, subscribing to a paid or premium version of the Accused Cast-Enabled App, using a computing device installed with any Accused Cast-Enabled App, or using or purchasing any Accused Cast-Enabled Media Player.

**REQUEST NO. 26**

All documents and things concerning the distribution, importation, offer for sale, and/or sale of each Accused Google Product in/into the United States.

**REQUEST NO. 27**

All documents and things concerning the release, distribution, provision, upload, download, and/or installation of each version of each Accused Cast-Enabled App.

**REQUEST NO. 28**

All documents and things concerning the release, distribution, provision, upload, download, and/or installation of each version of firmware for each Accused Cast-Enabled Media Player.

**REQUEST NO. 29**

All documents and things concerning any modifications, revisions, or updates to the

Accused Instrumentalities.

## REQUEST NO. 30

Documents and things sufficient to identify the name and title of, and the curriculum vitae for, each person substantively involved in:

a.  Research, design, development, and/or testing of the Accused Instrumentalities;
b.  Training and/or demonstration of the Accused Instrumentalities;
c.  Manufacture of the Accused Google Products;
d.  Distribution, importation, offer for sale, and/or sale of the Accused Google Products in/into the United States;
e.  Release, distribution, and/or provision of the Accused Cast-Enabled Apps; and
f.  Release, distribution, and/or provision of the firmware for the Accused Google Products.

## REQUEST NO. 31

All documents and things concerning any search for, or clearance, freedom to operate, infringement, non-infringement, validity, or invalidity analysis of, any issued patent or pending patent application conducted by or on behalf of Defendant in connection with the Accused Instrumentalities.

## REQUEST NO. 32

All documents and things concerning the Patents-in-Suit, including but not limited to internal notes, communications, memoranda, presentations, analyses, studies, reviews, evaluations, opinions, and comparisons.

**REQUEST NO. 33**

All documents and things concerning any awareness or knowledge by Defendant of any of the Patents-in-Suit prior to the filing of the above-captioned lawsuit.

**REQUEST NO. 34**

All documents and things concerning Sonos, any Sonos IP Rights, or any Sonos Products or features thereof, including but not limited to internal notes, communications, memoranda, presentations, analyses, studies, reviews, evaluations, opinions, and comparisons.

**REQUEST NO. 35**

All documents and things concerning any comparisons or similarities between (i) the Accused Google Products and Sonos's Products, (ii) Defendant's marketing of the Accused Google Products and Sonos's marketing, or (iii) Defendant's branding of the Accused Google Products and Sonos's branding.

**REQUEST NO. 36**

All documents and things concerning Defendant's decision to begin work on a product in the multi-room audio market.[16]

**REQUEST NO. 37**

All documents and things reflecting Google's understanding, if any, that Sonos would not enforce IP rights against Google.

---

[16] *See, e.g.*, https://support.google.com/googlenest/answer/10012636?hl=en; https://chrome.googleblog.com/2015/12/even-more-to-love-about-chromecast-audio.html.

**REQUEST NO. 38**

All documents and things concerning Google's decision to implement a cloud-based queue for media items in connection with

**REQUEST NO. 39**

Documents and things sufficient to identify the individuals that are or were responsible for or are or were working on either or both of technology associated with playing back music from the Google Play Music app to Sonos players, and technology associated with transferring content from one device to another using Google's Cast technology.

**REQUEST NO. 40**

All documents and things concerning any item of alleged prior art or other document or thing that Defendant believes may have any bearing on the validity of any of the Patents-in-Suit.

**REQUEST NO. 41**

All documents and things concerning any objective indicia (or "secondary considerations") of non-obviousness of the inventions claimed in the Patents-in-Suit, including but not limited to commercial success, long-felt need, failure of others, initial skepticism, copying, acceptance in the marketplace, and industry praise.

**REQUEST NO. 42**

All documents and things concerning any U.S. or foreign patent applications or issued

patents that were filed in connection with the design or development of the Accused Instrumentalities or are otherwise directed to any aspect of the Accused Instrumentalities.

**REQUEST NO. 43**

All documents and things concerning any opinion of counsel upon which Defendant intends to rely in defense of willful infringement, including but not limited to a copy of any such opinion, all documents and things relating to the subject matter of any such opinion, and all bills related to the preparation of any such opinion.

**REQUEST NO. 44**

All documents and things supporting or refuting each defense pled in Google's Answer and Counterclaims (Dkt. 32).

**REQUEST NO. 45**

All documents and things concerning sales, downloads, and/or installs in the United States of the Accused Instrumentalities and any other product or service connected to and/or promoted by the Accused Instrumentalities.

**REQUEST NO. 46**

For each Accused Instrumentality, documents and things sufficient to identify the actual and projected number of units sold, downloaded, and/or installed in the United States, and the associated prices, revenues, costs, and profits, on a monthly basis (or if monthly information is not available, whatever other periodic reporting period is available) from September 2014 to

present.

**REQUEST NO. 47**

To the extent not provided in response to Request No. 46, for each Google revenue stream connected to and/or promoted by the Accused Instrumentalities, documents and things sufficient to identify the actual and projected number of units sold, prices, costs, revenues, and profits associated with such revenue stream from September 2014 to present, including but not limited to, Google revenue associated with Google's own subscription-based streaming media services (e.g., Google revenue associated with Google Play Music, YouTube Music Premium, and/or YouTube TV subscriptions) provided via the Accused Cast-Enabled Apps; Google revenue associated with third-party subscription-based streaming media services (e.g., Google revenue share associated with Spotify Premium, Pandora Plus, and/or Pandora Premium subscriptions purchased through the Google Play store) provided via the Accused Cast-Enabled Apps; Google revenue associated with advertisements provided via the Accused Cast-Enabled Media Players, the Accused Cast-Enabled Displays, and/or the Accused Cast-Enabled Apps; Google revenue associated with searches initiated via the Accused Cast-Enabled Media Players, the Accused Cast-Enabled Displays, and/or the Accused Cast-Enabled Apps; Google revenue associated with in-app purchases made within the Accused Cast-Enabled Apps; Google revenue associated with ecommerce transactions initiated via the Accused Cast-Enabled Media Players, the Accused Cast-Enabled Displays, and/or the Accused Cast-Enabled Apps; and any Google revenue associated with consumer data collected via the Accused Cast-Enabled Media Players, the Accused Cast-Enabled Displays, the Accused Cast-Enabled Apps, and/or the Accused Google Servers (e.g., Google revenue associated with the sale of such consumer data and/or

Google revenue associated with advertisements that target consumers based at least in part on such consumer data).

**REQUEST NO. 48**

For each Accused Cast-Enabled App, documents and things sufficient to identify the actual and projected sales, prices, costs, revenues, and profits associated with such Accused Cast-Enabled App's use of the Google Cloud Platform (e.g., revenue associated with hosting such Accused Cast-Enabled Apps and/or related streaming media services and functionality on an Accused Google Server, revenue associated with storing media associated with streaming media services provided via the such Accused Cast-Enabled App, and/or revenue associated with storing user profiles associated with such Accused Cast-Enabled App).

**REQUEST NO. 49**

All documents and things concerning Defendant's pricing (including pricing for resellers, distributors, dealers, retailers, wholesalers, and/or consumers/end users) of the Accused Instrumentalities and any other product or service connected to and/or promoted by the Accused Instrumentalities, any changes in Defendant's pricing of the Accused Instrumentalities and any other product or service connected to and/or promoted by the Accused Instrumentalities, and/or any discounts offered or given on the Instrumentalities and any other product or service connected to and/or promoted by the Accused Instrumentalities .

**REQUEST NO. 50**

All documents and things concerning any determination, by Defendant or on behalf of

Defendant, of the cost of goods sold for the Accused Google Instrumentalities sold in the United States and any other product or service connected to and/or promoted by the Accused Instrumentalities sold in the United States.

**REQUEST NO. 51**

All documents and things concerning any determination, by Defendant or on behalf of Defendant, of profits from the sales of the Accused Google Instrumentalities and any other product or service connected to and/or promoted by the Accused Instrumentalities in the United States, including but not limited to any determination of gross profit, operating profit, net profit, and/or marginal profit.

**REQUEST NO. 52**

All documents and things concerning any actual or projected benefits (monetary or otherwise) of providing any Accused Google Instrumentality or any other product or service connected to and/or promoted by an Accused Instrumentality to customers free of charge.

**REQUEST NO. 53**

Documents and things sufficient to identify the number of Accused Google Instrumentalities and any other product or service connected to and/or promoted by the Accused Instrumentalities that have been manufactured in, or imported into, the United States on a monthly basis (or if monthly information is not available, whatever other periodic reporting period is available) from September 2014 to present.

**REQUEST NO. 54**

      All documents and things concerning any actual or prospective agreement and/or relationship between Defendant and any third-party streaming media service provider (e.g., Spotify, TuneIn, iHeartRadio, TIDAL, Amazon Music, Deezer, etc.) regarding the Accused Instrumentalities.

**REQUEST NO. 55**

      All documents and things concerning any royalty base or royalty rate related to the Accused Instrumentalities or any other product or service connected to and/or promoted by the Accused Instrumentalities.

Dated: August 7, 2021                  Respectfully submitted,

                                  By: *  /s/ Cole B. Richter  *

                                  Cole B. Richter (admitted *pro hac vice*)
                                  Illinois Bar No. 6315686
                                  LEE SULLIVAN SHEA & SMITH LLP
                                  656 W. Randolph St., Floor 5W
                                  Chicago, IL 60661
                                  Telephone:  312.754.9602
                                  Facsimile:  312.754.9603
                                  richter@ls3ip.com

                                  Alyssa Caridis (admitted *pro hac vice*)
                                  California Bar No. 260103
                                  ORRICK, HERRINGTON & SUTCLIFFE LLP
                                  777 South Figueroa St., Suite 3200
                                  Los Angeles, CA 90017
                                  Telephone:  213.612.2372

Facsimile:  213.612.2499
acaridis@orrick.com

Clement Seth Roberts (admitted *pro hac vice*)
California Bar No. 209203
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard St.
San Francisco, CA 94105
Telephone:  415.773.5484
Facsimile:  415.773.5759
croberts@orrick.com

Bas de Blank (admitted *pro hac vice*)
California Bar No. 191487
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Blvd.
Menlo Park, CA 94205
Telephone:  650.614.7343
Facsimile:  650.614.7401
bdeblank@orrick.com


George I. Lee (admitted *pro hac vice*)
Illinois Bar No. 6225430
Sean M. Sullivan (admitted *pro hac vice*)
Illinois Bar No. 6230605
Rory P. Shea (admitted *pro hac vice*)
Illinois Bar No. 6290745
J. Dan Smith (admitted *pro hac vice*)
Illinois Bar No. 6300912
Cole B. Richter (admitted pro hac vice)
Illinois Bar No. 6315686
LEE SULLIVAN SHEA & SMITH LLP
656 W. Randolph St., Floor 5W
Chicago, IL 60661
Telephone:  312.754.9602
Facsimile:  312.754.9603
lee@ls3ip.com
sullivan@ls3ip.com
shea@ls3ip.com
smith@ls3ip.com
richter@ls3ip.com

Mark D. Siegmund
State Bar No. 24117055
mark@waltfairpllc.com
Law Firm of Walt, Fair PLLC.

1508 North Valley Mills Drive
Waco, Texas 76710
Telephone: (254) 772-6400
Facsimile: (254) 772-6432

*Counsel for Plaintiff Sonos, Inc.*