# Exhibit 2

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Charles K. Verhoeven (Bar No. 170151)
  charlesverhoeven@quinnemanuel.com
  Melissa Baily (Bar No. 237649)
  melissabaily@quinnemanuel.com
  ~~Jordan Jaffe (Bar No. 254886)~~
  ~~jordanjaffe@quinnemanuel.com~~
  Lindsay Cooper (Bar No. 287125)
  lindsaycooper@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

*Attorneys for GOOGLE LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOOGLE LLC, | CASE NO. 3:20-cv-06754-WHA |
| Plaintiff, | ~~FIRST~~ SECOND AMENDED COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NOS. 9,967,615; 10,779,033; 9,344,206; AND 10,469,966; ~~AND 9,219,460~~ BREACH OF CONTRACT; BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; CONVERSION |
| vs. | |
| SONOS, INC., | |
| Defendant. | |
| | **DEMAND FOR JURY TRIAL** |

~~FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NOS. 9,967,615; 10,779,033; 9,344,206; 10,469,966; AND 9,219,460~~

1. Plaintiff Google LLC ("Google") seeks a declaratory judgment of non-infringement and invalidity of United States Patent Nos. 9,967,615; 10,779,033; 9,344,206; 10,469,966; and ~~9,219,460~~ 10,848,885 as follows:

## NATURE OF THE ACTION

2. This is an action for a declaratory judgment of non-infringement and invalidity arising under the patent laws of the United States, Title 35 of the United States Code. Google requests this relief because Defendant Sonos, Inc. ("Sonos") claims that Google infringes United States Patent Nos. 9,967,615 ("the '615 patent"); 10,779,033 ("the '033 patent"); 9,344,206 ("the '206 patent"); 10,469,966 ("the '966 patent"); and ~~9,219,460~~ 10,848,885 ("the ~~'460~~ '885 patent") (collectively, the "Patents-in-Suit") by making, using, selling, offering for sale, and/or importing the following products: ~~Chromecast, Chromecast Ultra, Chromecast Audio, Chromecast with Google TV, Home Mini, Nest Mini, Home, Home Max, Home Hub, Nest Hub, Nest Hub Max, Nest Audio, Nest Wifi Point, YouTube Music app, Google Play Music app, YouTube app, Google Home app, and Google's "Pixel" phones, tablets, and laptops (collectively, "Google Accused Products"). Sonos' litigation campaign has harmed the reputations of these Google Accused Products; and Sonos' affirmative allegations of infringement of the Patents-in-Suit by the Google Accused Products has created a justiciable controversy between Google and Sonos.~~ (collectively, "Accused Products"):

- "Smartphone, tablet, and computer devices, including Google's own "Pixel" smartphone, tablet, and computer devices (e.g., the Pixel, Pixel XL, Pixel 2, Pixel 2 XL, Pixel 3, Pixel 3 XL, Pixel 3a, Pixel 3a XL, Pixel 4, Pixel 4 XL, Pixel 4a, Pixel 4a (5G), Pixel 5, Pixel 5a (5G), and Pixel 6 phones, the Pixel Slate tablet, and the Pixelbook and Pixelbook Go laptops), as well as third-party smartphone, tablet, or computer devices, that are installed with (i) any of Google's own Cast-enabled Android, iOS, or Chrome apps that allow a user to transfer playback of streaming

media content from the user's smartphone, tablet, or computer devices to a Cast-enabled media player and then control the Cast-enabled media player's playback, including but not limited to the YouTube Music app, Google Play Music app, YouTube app, Google Podcasts app, and YouTube TV app, (ii) any third-party Cast-enabled app that allows a user to transfer playback of streaming media content from the user's smartphone, tablet, or computer devices to a Cast-enabled media player and then control the Cast-enabled media player's playback, including but not limited to the Spotify app; and/or (iii) third-party smartphone, tablet, or computer devices, that are installed with the Google Home app;"

- "Cast-enabled media players having a display screen and installed with Cast-enabled software (*e.g.*, firmware and/or Cast-enabled apps) that allows a user to transfer playback of streaming media content from the Cast-enabled media player to another Cast-enabled media player and then control the other Cast-enabled media player's playback, including Google's Home Hub, Nest Hub, and Nest Hub Max media players;"

- "Servers that host the Google Home app for download onto smartphone, tablet, and computer devices;" and

- "Cast-enabled media players, including Google's Chromecast, Chromecast Ultra, Chromecast Audio, Chromecast with Google TV, Home Mini, Nest Mini, Home, Home Max, Home Hub, Nest Hub, Nest Hub Max, Nest Audio, and Nest Wifi Point media players."

*See* Sonos's 10-21-2021 and 6-14-2021 Disclosure of Asserted Claims And Infringement Contentions.

3.      Sonos's affirmative allegations of infringement of the Patents-in-Suit by the Accused Products has created a justiciable controversy between Google and Sonos.

~~3.~~4.      As a result of ~~Sonos'~~ Sonos's communication to Google of its intention to pursue claims of infringement of the Patents-in-Suit against Google, Google ~~is~~ was under reasonable

apprehension of suit by Sonos no later than September 28, 2020.  Sonos subsequently filed an action for infringement of the Patents-in-Suit against Google on September 29, 2020.

5.     This is also an action for breach of contract, breach of the implied covenant of good faith and fair dealing, and conversion between Sonos and Google.

## THE PARTIES

4.6.     Plaintiff Google LLC is a subsidiary of Alphabet Inc. and a Delaware limited liability company with its principal place of business located at 1600 Amphitheatre Parkway, Mountain View, California 94043.

5.7.     Defendant Sonos, Inc. is a Delaware corporation with headquarters its principal place of business at 614 Chapala Street, Santa Barbara, California 93101.

## JURISDICTIONAL STATEMENT

6.8.     This action arises Google's declaratory judgment claims arise under the Declaratory Judgment Act, 28 U.S.C. § 2201, and under the patent laws of the United States, 35 U.S.C. §§ 1-390.  This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338(a), and 2201(a).

9.     This Court also has supplemental jurisdiction over the state law claims alleged in this Second Amended Complaint pursuant to 28 U.S.C. § 1367.  The claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and conversion are so related to the claims for non-infringement that they form part of the same case or controversy.

7.     This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338(a), and 2201(a).

8.10.    This Court has personal jurisdiction over defendant Sonos.  Sonos is registered to do business in the State of California (Registration No. C2465272), has its headquarters in the State of California, and has offices in this District. Sonos, directly and through agents, regularly does, solicits, and transacts business in this District and elsewhere in the State of California.

9.11.    Venue is proper in this District under 28 U.S.C. Section 1391.  Sonos has a regular and established place of business in this District—specifically, offices and employees located at 550 Montgomery Street, Suite 750, San Francisco, CA 94111.  Sonos lists this San Francisco

office on its website (https://www.sonos.com/en-us/contact https://www.sonos.com/en-us/contact, a true and correct copy of which is attached as Exhibit 1), and the Sonos office at this location is advertised by Sonos as a current place of business (including in the building's directory in the public lobby).  Also, a substantial part of the events giving rise to Google's claim occurred in this District, and because Sonos is subject to personal jurisdiction here.  For example, on September 28, 2020, Sonos sent an email to a Google employee who works in this District indicating that Sonos will be initiating a case against Google LLC asserting infringement of the Patents-in-Suit. Sonos then filed an action for patent infringement against Google on September 29, 2020 in the Western District of Texas, which was transferred to the Northern District of California on September 28, 2021.  *See Sonos, Inc. v. Google LLC*, Case No. 3:21-cv-07559-WHA, Dkt. No. 118 (N.D. Cal.).  Further, a substantial part of the events that give rise to Google's state law claims, including events pertaining to Sonos and Google's collaboration between 2013 to 2015 and the development of the cloud queue technology occurred in this District.  And the Content Integration Agreement that governs the collaboration includes a forum selection clause requiring the state law claims be litigated in California.

10.12.  An immediate, real, and justiciable controversy exists between Google and Sonos as to whether Google is infringing or has infringed the Patents-in-Suit.

**INTRADISTRICT ASSIGNMENT**

11.13.  For purposes of intradistrict assignment under This Intellectual Property Action is assigned to Judge William Alsup pursuant to Civil Local Rules 3-2(c) and 3-5(b), this Intellectual Property Action will be assigned on a district-wide basis..

**SONOS' CAMPAIGN AGAINST SONOS'S COLLABORATION WITH GOOGLE**

12.14.  Google was founded in 1998, and has a mission to organize the world's information and make it universally accessible and useful.  Over the past two decades, in service of that mission, Google has become one of the world's most innovative technology companies.

13.15.  Google's revolutionary advances in search, software, mobile computing, wireless networking, content streaming, machine learning, and voice-assisted technologies including speech recognition and advanced audio processing, have changed and improved millions of lives.

14.16.  As part of its commitment to innovation, Google has invested significantly in extensive research and development efforts, including its own research, as well as investments in and acquisitions of other cutting-edge technology companies.  Google is the current assignee of tens of thousands of patents worldwide.

15.17.  Google partners with other companies to bring Google's innovations to millions of shared customers.  In particular, Google has long had a continued partnership with Sonos.  In these collaborationsDuring their partnership, Sonos has repeatedly asked Google for assistance, so that Sonos could employ Google technology to improve Sonos' Sonos's products.

16.18.  In 2013, Sonos asked for Google's assistance to integrate with Google's popular Play Music service.  Google gave Sonos that assistance, and provided significant engineering resources, technical support, and other resources to integrate Sonos' Sonos's products with Google's Play Music service in 2014from 2013- through 2015.

17.19.  In 2016, Sonos again asked for Google's assistance–this time to integrate with Google's innovative Assistant software.  And again, Google was willing to help.  Google gave Sonos significant assistance in designing, implementing, and testing a solution that would bring Google's voice recognition software to Sonos' Sonos's devices.  This effort again involved substantial Google engineering resources, including significant months of employee work time, for the initial launch of Google's Assistant on Sonos' Sonos's products in May 2019.

18.20.  Google is proud of its more than five-year partnership with Sonos, and has worked constructively with Sonos to make the companies' products work seamlessly by building special integrations for Sonos.  For instance, when Google rolled out the ability to set a Sonos speaker as the default option for Google Assistant, it was the first time Google had done that for any partner company.

19.    Sonos has made false claims about the companies' shared work and Google's technology in lawsuits that Sonos filed against Google earlier this year.  The parties are also engaged in an additional litigation here in the Northern District of California, Case No. C 3-20-cv-03845-EMC.

1    **SONOS AND GOOGLE ENTER INTO COLLABORATION AGREEMENTS**

2        21.    Google and Sonos executed several agreements in connection with their

3    collaboration on the integration of Google Play Music.  For example, in January 2013, Google and

4    Sonos entered into a Non-Disclosure Agreement "███████████████████████████████████

5    ████████████████████████████████████████████.]"  Ex. 2.  And in

6    November of 2013, Sonos and Google entered into a Content Integration Agreement under which

7    Sonos asked Google (inter alia) to make resources available to Sonos, ██████████████████

8    ████████████████████████████████████████████████████

9    ███████████████████████████████████████████████████████

10   █████████████████████████████████████████" Ex. 3 at 8.

11   Pursuant to the Content Integration Agreement, Google provided Sonos with substantial

12   assistance, including access to Google's engineers and knowledge of Google's products and

13   technology, including products and technology at issue in this action.

14       22.    The Content Integration Agreement governs the ownership of ██████████

15   ███████████  Specifically, Section 3.4 of the Content Integration Agreement provides that

16   Google owns ███████ intellectual property rights ████████████ to ███████

17   ██████ and that Sonos will not ██████████ any such rights:

18
19
20
21
22
23

24   Ex. 3 § 3.4.  ████████████ are defined as ██████████████████████

25   ██████████████████████████████████████████████

26   ████████████████████████████████████████

27   ███████████████████████████████████████████

28   ██████████████████████  *Id.* § 3.4.  In other words, the parties agreed that Google

would own ██████████████████████████ to ██████████

███████████████████████ an ████████████

23.     The Content Integration Agreement defines ████████████ as

follows:

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████

*Id.* at Recitals.  Cloud queue, the functionality that Sonos accuses of infringing the '615 and '033

patents, arises from or relates to the ██████████████ including the development work

done by Google to create the ██████████████████████

█████████████████████████████████

### SONOS AND GOOGLE COLLABORATE ON CLOUD QUEUE

24.     Pursuant to the parties' agreements, Google and Sonos collaborated closely on

cloud queue for Google Play Music between 2013 and 2015.

25.     At least by December of 2013, Google told Sonos—including Sonos engineer Tad

Coburn, the named inventor of the '615 and '033 patents—that Google was considering using "a

more cloud queue centric model that would help simplify things a bit (moving the interactions

away from the device, quickly)," to which Mr. Coburn responded that "[t]he idea of moving the

playlist to the cloud is very interesting, but will definitely complicate things."  Ex. 4.

26.     In the months that followed, Mr. Coburn continued to express excitement regarding

the cloud queue idea that Google had proposed.

27.     For instance, in May of 2014 Mr. Coburn exchanged multiple emails with Google

seeking an update on the status of "queues in the cloud."  Ex. 5.  Google informed Mr. Coburn that

it was thinking about the details of the design, and listed some of the goals Google had in mind for

"cloud queue," for example that "the cloud queue will be what we call a 'container aware queue' -

you can queue up a playlist, modify the playlist elsewhere, and the e2e experience will quickly

reflect the latest contents," and that "the receiver will be able to get a few songs at a time from the

cloud queue."  *Id.*

28.     By June of 2014, Mr. Coburn stated that he was "itching to start prototyping cloud queue playback on our end" and explained that Google and Sonos had "discussed things enough that" he had a "good idea" of how "your [i.e., Google's] CloudQueue" will work.  Ex. 6.

29.     Throughout the collaboration, Mr. Coburn was personally involved in weekly "Google/Sonos Sync[s]," regular calls to discuss cloud queue development, and multiple day-long in-person meetings with Google's cloud queue team.  Mr. Coburn posed detailed technical questions to Google regarding cloud queue, requested specific features and capabilities, asked Google to share its cloud queue API design before the public release—which Google did—and provided feedback on Google's design.

30.     Thus, pursuant to the Content Integration Agreement, the cloud queue technology was the sole and exclusive property of Google, and Sonos was not permitted to "claim for itself or for any third party any right, title, interest or licenses to the" cloud queue technology.

**SONOS WRONGFULLY CLAIMS RIGHTS IN THE CLOUD QUEUE TECHNOLOGY**

31.     Despite the Content Integration Agreement, Sonos has willfully and wrongfully attempted to claim Google's idea for itself.  For example, Sonos did not introduce the alleged notion of a cloud-based queue into its patents until 2019.  *See, e.g.,* '033 prosecution history (November 1, 2019 amendment adding notion of "remote playback queue").  And Sonos has now referred to the '615 and '033 patents as its "cloud queue patents":  "Two of the patents-in-suit are what we call our cloud queue patents, and they deal with exactly how music streaming on a cloud gets transferred between a device, let's say a cell phone, and a speaker and how do you take a queue that's queued up in the cloud and transfer that queue of music from one device to another."  *See* Dkt. No. 38 (11-23-2020 Hearing Tr.) at 17:3-8.

32.     To the extent Sonos's interpretation of these patents is credited, the technology that Google was developing in 2013 through 2015 (which Sonos was aware of in connection with the parties' collaboration), including this cloud queue technology, is in relevant respects, analogous to technology that Sonos now accuses of infringing its patents.

33.     In fact, many of Sonos's infringement allegations are directed at Google technologies that arise out of or are related to work done by Google as part of the collaboration

For instance, Sonos has alleged that Google Play Music on iOS and Android devices infringes these patents based on its use of cloud queue technology.  Yet the collaboration between Google and Sonos was directed to, inter alia, the integration of cloud queue into the Google Play Music casting experience (including for Google Play Music on iOS and Android devices).

34.   Google conceived of this cloud queue idea, shared it with Sonos, and worked with Sonos to release it on the Google Play Music platform.  Having been involved in the earlier collaborations, Sonos was aware that Google, not Sonos, conceived of the cloud queue technology and that Sonos had no right to draft claims that Sonos contends encompass the cloud-queue technology.

**GOOGLE DOES NOT INFRINGE THE PATENTS-IN-SUIT**

20.35.  The ~~Google~~ Accused Products do not directly or indirectly infringe any claim of the Patents-in-Suit, literally or under the doctrine of equivalents.

21.36.  No third party infringes any claim of the Patents-in-Suit by using a Google product or service.  Google has not caused, directed, requested, or facilitated any such infringement, much less with specific intent to do so.  The ~~Google~~ Accused Products are not designed for use in any combination that infringes any claim of the Patents-in-Suit.  To the contrary, each has substantial uses that do not infringe any claim of the Patents-in-Suit.

**FIRST COUNT**

**(Declaration of Noninfringement of 9,967,615)**

22.37.  Google restates and incorporates by reference the allegations in paragraphs 1 through ~~21~~ 36 of this Complaint as if fully set forth herein.

23.38.  Sonos claims to own all rights, title, and interest in and under the '615 patent.  A true and correct copy of the '615 patent is attached hereto as Exhibit 27.

24.39.  Google does not directly or indirectly infringe the '615 patent, either literally or under the doctrine of equivalents, at least because the ~~Google~~ Accused Products do not comprise a tangible, non-transitory computer-readable storage medium including instructions for execution by a processor, the instructions, when executed, cause a control device to implement a  method comprising: (1) causing a graphical interface to display a control interface including one or more

1    transport controls to control playback by the control device; (2) after connecting to a local area

2    network via a network interface, identifying playback devices connected to the local area network;

3    (3) causing the graphical interface to display a selectable option for transferring playback from the

4    control device; (4) detecting a set of inputs to transfer playback from the control device to a

5    particular playback device, wherein the set of inputs comprises: (i) a selection of the selectable

6    option for transferring playback from the control device and (ii) a selection of the particular

7    playback device from the identified playback devices connected to the local area network: (5) after

8    detecting the set of inputs to transfer playback from the control device to the particular playback

9    device, causing playback to be transferred from the control device to the particular playback

10    device, (6) wherein transferring playback from the control device to the particular playback device

11    comprises: (a) causing one or more first cloud servers to add multimedia content to a local

12    playback queue on the particular playback device, wherein adding the multimedia content to the

13    local playback queue comprises the one or more first cloud servers adding, to the local playback

14    queue, one or more resource locators corresponding to respective locations of the multimedia

15    content at one or more second cloud servers of a streaming content service; (b) causing playback

16    at the control device to be stopped; and (c) modifying the one or more transport controls of the

17    control interface to control playback by the playback device; and (7) causing the particular

18    playback device to play back the multimedia content, wherein the particular playback device

19    playing back the multimedia content comprises the particular playback device retrieving the

20    multimedia content from one or more second cloud servers of a streaming content service and

21    playing back the retrieved multimedia content.

22        ~~25.~~40.   For example, the ~~Chromecast, Chromecast Ultra, Chromecast Audio, Chromecast~~

23    ~~with Google TV,  Home Mini, Nest Mini, Home, Home Max, Home Hub, Nest Hub, Nest Hub~~

24    ~~Max, Nest Audio, Nest Wifi Point, YouTube Music app, Google Play Music app, YouTube app,~~

25    ~~Google Home app, and Google's "Pixel" phones, tablets, and laptops~~ Accused Products do not

26    include the claimed transfer or addition to a "local playback queue on the particular playback

27    device."  All the independent claims of the '615 patent include limitations requiring "transferring

28    playback from the control device to the particular playback device."  '615 patent, Claims 1, 13 and

25.  Transferring playback comprises "causing one or more first cloud servers to add multimedia content to a local playback queue on the particular playback device" *Id*.  This functionality is not included in any of the ~~Google~~ Accused Products, according to Google's understanding of this limitation of the '615 patent.  For example, the ~~Google~~ Accused Products do not include a local queue on an alleged remote playback device for playback of media.  Instead, the alleged playback device (i.e., Chromecast, Chromecast Ultra, Chromecast Audio, Chromecast with Google TV, Home Mini, Nest Mini, Home, Home Max, Home Hub, Nest Hub, Nest Hub Max, Nest Audio, Nest Wifi Point) requests each song one-by-one to play back.  Accordingly, none of the ~~Google~~ Accused Products include the claimed transfer or addition to a "local playback queue on the particular playback device" and consequently also do not perform any of the recited steps in connection with the local playback queue.  Because the terms "causing one or more first cloud servers to add multimedia content to a local playback queue on the particular playback device" are included in every independent claim of the '615 patent, none of the ~~Google~~ Accused Products infringe any claims of the '615 patent.

~~26.~~41.  No third party infringes any claim of the '615 patent by using a Google product or service.  Google has not caused, directed, requested, or facilitated any such infringement, much less with specific intent to do so.  The ~~Google~~ Accused Products are not designed for use in any combination which infringes any claim of the '615 patent.  To the contrary, each has substantial uses that do not infringe any claim of the '615 patent.

~~27.~~42.  A substantial, immediate, and real controversy therefore exists between Google and Sonos regarding whether Google infringes the '615 patent.  A judicial declaration is appropriate and necessary to determine the parties' respective rights regarding the '615 patent.

~~28.~~43.  Google seeks a judgment declaring that Google does not directly or indirectly infringe any claim of the '615 patent.

**SECOND COUNT**

**(Declaration of ~~Noninfringement of 10,779,033~~Invalidity of 9,967,615)**

~~29.~~44.   Google restates and incorporates by reference the allegations in paragraphs 1 through ~~26 of this Complaint as if fully set forth herein.~~43 of this Complaint as if fully set forth herein.

45.     Due to Sonos's filing of the complaint in the Western District of Texas and service of infringement contentions pursuant to Patent Local Rules 3-3 and 3-4, an actual controversy exists between Google and Sonos as to the validity of the '615 Patent.

46.     The claims of the '615 Patent are invalid, in whole or in part, for failure to meet one or more requirements of Title 35 of the United States Code, including but not limited to §§ 101, 102, 103, and/or 112.

47.     By way of example, the asserted claims of the '615 patent are invalid based on one or more of Google's own Nexus Q and YouTube TV prior art, and the prior art references listed on the face of the patents.

48.     Under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., Google requests a judicial determination and declaration that the claims of the '615 Patent are invalid.

**THIRD COUNT**

**(Declaration of Noninfringement of 10,779,033)**

49.     Google restates and incorporates by reference the allegations in paragraphs 1 through 48 of this Complaint as if fully set forth herein.

~~30.~~50.   Sonos claims to own all rights, title, and interest in and under the '033 patent.  A true and correct copy of the '033 patent is attached hereto as Exhibit ~~3~~8.

~~31.~~51.   Google does not directly or indirectly infringe the '033 patent, either literally or under the doctrine of equivalents, at least because the ~~Google~~ Accused Products do not comprise a computing device comprising: (1) at least one processor; (2) a non-transitory computer-readable medium; and (3) program instructions stored on the non-transitory computer-readable medium that, when executed by the at least one processor, cause the computing device to perform functions comprising: (4) operating in a first mode in which the computing device is configured for

1  playback of a remote playback queue provided by a cloud-based computing system associated

2  with a cloud-based media service; (5) while operating in the first mode, displaying a

3  representation of one or more playback devices in a media playback system that are each (i)

4  communicatively coupled to the computing device over a data network and (ii) available to accept

5  playback responsibility for the remote playback queue; (6) while displaying the representation of

6  the one or more playback devices, receiving user input indicating a selection of at least one given

7  playback device from the one or more playback devices; (7) based on receiving the user input,

8  transmitting an instruction for the at least one given playback device to take over responsibility for

9  playback of the remote playback queue from the computing device, wherein the instruction

10 configures the at least one given playback device to (i) communicate with the cloud-based

11 computing system in order to obtain data identifying a next one or more media items that are in

12 the remote playback queue, (ii) use the obtained data to retrieve at least one media item in the

13 remote playback queue from the cloud-based media service; and (iii) play back the retrieved at

14 least one media item; (8) detecting an indication that playback responsibility for the remote

15 playback queue has been successfully transferred from the computing device to the at least one

16 given playback device; and (9) after detecting the indication, transitioning from (i) the first mode

17 in which the computing device is configured for playback of the remote playback queue to (ii) a

18 second mode in which the computing device is configured to control the at least one given

19 playback device's playback of the remote playback queue and the computing device is no longer

20 configured for playback of the remote playback queue.

21     32.52.  For example, the Chromecast, Chromecast Ultra, Chromecast Audio, Chromecast

22 with Google TV,  Home Mini, Nest Mini, Home, Home Max, Home Hub, Nest Hub, Nest Hub

23 Max, Nest Audio, Nest Wifi Point, YouTube Music app, Google Play Music app, YouTube app,

24 Google Home app, and Google's "Pixel" phones, tablets, and laptops Accused Products do not

25 include the claimed instruction "wherein the instruction configures the at least one given playback

26 device to (i) communicate with the cloud-based computing system in order to obtain data

27 identifying a next one or more media items that are in the remote playback queue, (ii) use the

28 obtained data to retrieve at least one media item in the remote playback queue from the cloud-

based media service; and (iii) play back the retrieved at least one media item." (emphasis added). All independent claims of the '033 patent include limitations requiring "operating in a first [playback] mode." '033 patent, Claims 1, 12 and 15. While operating in this first mode, the computing device transmits an instruction to the playback device, "wherein the instruction configures the at least one given playback device to (i) communicate with the cloud-based computing system in order to obtain data identifying a next one or more media items that are in the remote playback queue, (ii) use the obtained data to retrieve at least one media item in the remote playback queue from the cloud-based media service; and (iii) play back the retrieved at least one media item." *Id.* The ~~Google~~ Accused Products do not include a single instruction (i.e., "the instruction") that performs all these functions. While Google does not admit it performs any of these claim limitations, at a minimum, it uses multiple different "instructions" when a user is employing the Cast protocol to play audio on a remote playback device, such as a Google Home Max. Because these terms are included in every independent claim of the '033 patent, none of the ~~Google~~ Accused Products infringe any claims of the '033 patent.

~~33.~~53.  No third party infringes any claim of the '033 patent by using a Google product or service. Google has not caused, directed, requested, or facilitated any such infringement, much less with specific intent to do so. The ~~Google~~ Accused Products are not designed for use in any combination which infringes any claim of the '033 patent. To the contrary, each has substantial uses that do not infringe any claim of the '033 patent.

~~34.~~54.  A substantial, immediate, and real controversy therefore exists between Google and Sonos regarding whether Google infringes the '033 patent. A judicial declaration is appropriate and necessary to determine the parties' respective rights regarding the '033 patent.

~~35.~~55.  Google seeks a judgment declaring that Google does not directly or indirectly infringe any claim of the '033 patent.

### FOURTH COUNT

### (Declaration of Invalidity of 10,779,033)

56.     Google restates and incorporates by reference the allegations in paragraphs 1 through 55 of this Complaint as if fully set forth herein.

57.     Due to Sonos's filing of the complaint in the Western District of Texas and service of infringement contentions pursuant to Patent Local Rules 3-3 and 3-4, an actual controversy exists between Google and Sonos as to the validity of the '033 Patent.

58.     The claims of the '033 Patent are invalid, in whole or in part, for failure to meet one or more requirements of Title 35 of the United States Code, including but not limited to §§ 101, 102, 103, and/or 112.

59.     By way of example, the asserted claims of the '033 patent are invalid based on one or more of Google's own Nexus Q and YouTube TV prior art, and the prior art references listed on the face of the patents.

60.     Under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., Google requests a judicial determination and declaration that the claims of the '033 Patent are invalid.

### ~~THIRD~~ FIFTH COUNT

### (Declaration of Noninfringement of 9,344,206)

~~36.~~61.   Google restates and incorporates by reference the allegations in paragraphs 1 through ~~31~~ 60 of this Complaint as if fully set forth herein.

~~37.~~62.   Sonos claims to own all rights, title, and interest in and under the '206 patent.  A true and correct copy of the '206 patent is attached hereto as Exhibit 4~~9~~.

~~38.~~63.   Google does not directly or indirectly infringe the '206 patent, either literally or under the doctrine of equivalents, at least because the ~~Google~~ Accused Products do not comprise a multimedia controller including a processor, the controller configured to: (1) receive, via a network interface, a zone configuration from a first independent playback device of a plurality of independent playback devices, wherein the zone configuration is configured via the controller and maintained at the first independent playback device, and wherein the zone configuration characterizes one or more zone scenes, each zone scene identifying a group configuration associated with two or more of the plurality of independent playback devices; and (2) cause a selectable indication of the received zone configuration to be displayed, wherein the displayed selectable indication is selectable to cause one or more of the zone scenes to be invoked by two or more of the plurality of independent playback devices.

39.64.   For example, the ~~Chromecast, Chromecast Ultra, Chromecast Audio, Chromecast with Google TV,  Home Mini, Nest Mini, Home, Home Max, Home Hub, Nest Hub, Nest Hub Max, Nest Audio, Nest Wifi Point, YouTube Music app, Google Play Music app, YouTube app, Google Home app, and Google's "Pixel" phones, tablets, and laptops~~ Accused Products do not include the claimed "zone scene[s]," including at the one or more claimed playback devices. "Zone scene" functionality is not included in any of the ~~Google~~ Accused Products~~, according to Google's understanding of the term.  The Google~~.  The Accused Products in some configurations and instances include conventional speaker grouping functionality.~~  For example, Chromecast (1st gen) does not support speaker grouping~~.  But the patent repeatedly distinguishes conventional speaker grouping from the claimed "zone scene" technology.  For example, the '206 patent describes speaker groups as "groups." *E.g.*, '206 patent at 1:56-2:10.  To contrast, the '206 patent describes "one aspect of the present invention" as "a mechanism [] provided to allow a user to group some of the players according to a theme or scene . . . ."  *E.g., id*. 2:30-33.  None of the ~~Google~~ Accused Products provide the "zone scene" functionality as described in the '206 patent, including at the one or more claimed playback devices, but instead only contain conventional speaker grouping in certain configurations or instances.  Some products, such as the Chromecast (1st gen), do not support speaker grouping at all.  Because the term "zone scene" is included in every independent claim of the '206 patent, none of the ~~Google~~ Accused Products infringe any claims of the '206 patent.

40.65.   No third party infringes any claim of the '206 patent by using a Google product or service.  Google has not caused, directed, requested, or facilitated any such infringement, much less with specific intent to do so.  The ~~Google~~ Accused Products are not designed for use in any combination which infringes any claim of the '206 patent.  To the contrary, each has substantial uses that do not infringe any claim of the '206 patent.

41.66.   A substantial, immediate, and real controversy therefore exists between Google and Sonos regarding whether Google infringes the '206 patent.  A judicial declaration is appropriate and necessary to determine the parties' respective rights regarding the '206 patent.

42.67.  Google seeks a judgment declaring that Google does not directly or indirectly infringe any claim of the '206 patent.

<del>FOURTH</del> SIXTH **COUNT**

**(Declaration of Invalidity of 9,344,206)**

68.     Google restates and incorporates by reference the allegations in paragraphs 1 through 67 of this Complaint as if fully set forth herein.

69.     Due to Sonos's filing of the complaint in the Western District of Texas, an actual controversy exists between Google and Sonos as to the validity of the '206 Patent.

70.     The claims of the '206 Patent are invalid, in whole or in part, for failure to meet one or more requirements of Title 35 of the United States Code, including but not limited to §§ 101, 102, 103, and/or 112.

71.     By way of example, the asserted claims of the '206 patent are invalid based on one or more of Sonos's own products and patents, Logitech Squeezebox devices, and the prior art references listed on the face of the patents.

72.     Under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., Google requests a judicial determination and declaration that the claims of the '206 Patent are invalid.

**SEVENTH COUNT**

**(Declaration of Noninfringement of 10,469,966)**

43.73.  Google restates and incorporates by reference the allegations in paragraphs 1 through 36 72 of this Complaint as if fully set forth herein.

44.74.  Sonos claims to own all rights, title, and interest in and under the '966 patent.  A true and correct copy of the '966 patent is attached hereto as Exhibit 510.

45.75.  Google does not directly or indirectly infringe the '966 patent, either literally or under the doctrine of equivalents, at least because the Google Accused Products do not comprise a computing device comprising: (1) one or more processors; (2) a non-transitory computer-readable medium; and (3) program instructions stored on the non-transitory computer-readable medium that, when executed by the one or more processors, cause the computing device to perform functions comprising: (4) while serving as a controller for a networked media playback system

1  comprising a first zone player and at least two other zone players, wherein the first zone player is

2  operating in a standalone mode in which the first zone player is configured to play back media

3  individually: (5) receiving a first request to create a first zone scene comprising a first predefined

4  grouping of zone players including at least the first zone player and a second zone player that are

5  to be configured for synchronous playback of media when the first zone scene is invoked; (6)

6  based on the first request, (i) causing creation of the first zone scene, (ii) causing an indication of

7  the first zone scene to be transmitted to the first zone player, and (iii) causing storage of the first

8  zone scene; (7) receiving a second request to create a second zone scene comprising a second

9  predefined grouping of zone players including at least the first zone player and a third zone player

10 that are to be configured for synchronous playback of media when the second zone scene is

11 invoked, wherein the third zone player is different than the second zone player; (8) based on the

12 second request, (i) causing creation of the second zone scene, (ii) causing an indication of the

13 second zone scene to be transmitted to the first zone player, and (iii) causing storage of the second

14 zone scene; (9) displaying a representation of the first zone scene and a representation of the

15 second zone scene; and (10) while displaying the representation of the first zone scene and the

16 representation of the second zone scene, receiving a third request to invoke the first zone scene;

17 and (11) based on the third request, causing the first zone player to transition from operating in the

18 standalone mode to operating in accordance with the first predefined grouping of zone players

19 such that the first zone player is configured to coordinate with at least the second zone player to

20 output media in synchrony with output of media by at least the second zone player.

21       46.76.  For example, the Chromecast, Chromecast Ultra, Chromecast Audio, Chromecast

22 with Google TV,  Home Mini, Nest Mini, Home, Home Max, Home Hub, Nest Hub, Nest Hub

23 Max, Nest Audio, Nest Wifi Point, YouTube Music app, Google Play Music app, YouTube app,

24 Google Home app, and Google's "Pixel" phones, tablets, and laptops Accused Products do not

25 include  the claimed "zone scene[s]," including at the one or more claimed "zone players."  "Zone

26 scene" functionality is not included in any of the Google Accused Products, according to Google's

27 understanding of the term.  The Google . The Accused Products in certain configurations and

28 instances include conventional speaker grouping functionality. For example, Chromecast (1st

1   gen) does not support speaker grouping.   But the patent repeatedly distinguishes conventional

2   speaker grouping from the claimed "zone scene" technology.  For example, the '966 patent

3   describes speaker groups as "groups." *E.g.*, '966 patent at 1:62-2:17.  To contrast, the '966 patent

4   describes "one aspect of the present invention" as "a mechanism [] provided to allow a user to

5   group some of the players according to a theme or scene . . . ." *E.g., id*. 2:38-41.  None of the

6   Google Accused Products provide the "zone scene" functionality as described in the '966 patent,

7   including at the one ore or more claimed "zone players," but instead only contain conventional

8   speaker grouping in certain configurations or instances.  Some products, such as the Chromecast

9   (1st gen), do not support speaker grouping at all.  Because the term "zone scene" is included in

10  every independent claim of the '966 patent, none of the Google Accused Products infringe any

11  claims of the '966 patent.

12      47.77.  No third party infringes any claim of the '966 patent by using a Google product or

13  service.  Google has not caused, directed, requested, or facilitated any such infringement, much

14  less with specific intent to do so.  The Google Accused Products are not designed for use in any

15  combination which infringes any claim of the '966 patent.  To the contrary, each has substantial

16  uses that do not infringe any claim of the '966 patent.

17      48.78.  A substantial, immediate, and real controversy therefore exists between Google and

18  Sonos regarding whether Google infringes the '966 patent.  A judicial declaration is appropriate

19  and necessary to determine the parties' respective rights regarding the '966 patent.

20      49.79.  Google seeks a judgment declaring that Google does not directly or indirectly

21  infringe any claim of the '966 patent.

22                              **EIGHTH COUNT**

23                    **(Declaration of Invalidity of 10,469,966)**

24      80.     Google restates and incorporates by reference the allegations in paragraphs 1

25  through 79 of this Complaint as if fully set forth herein.

26      81.     Due to Sonos's filing of the complaint in the Western District of Texas and service

27  of infringement contentions pursuant to Patent Local Rules 3-3 and 3-4, an actual controversy

28  exists between Google and Sonos as to the validity of the '966 Patent.

Case No. 3:20-CV-06754-WHA
FIRST AMENDED COMPLAINT

1   82.   The claims of the '966 Patent are invalid, in whole or in part, for failure to meet

2   one or more requirements of Title 35 of the United States Code, including but not limited to §§

3   101, 102, 103, and/or 112.

4   83.   By way of example, the asserted claims of the '966 patent are invalid based on one

5   or more of Sonos's own products and patents, Logitech Squeezebox devices, and the prior art

6   references listed on the face of the patents.

7   84.   Under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., Google

8   requests a judicial determination and declaration that the claims of the '966 Patent are invalid.

9   **FIFTH NINTH COUNT**

10   **(Declaration of Noninfringement of 9,219,460 10,848,885)**

11   50.85.   Google restates and incorporates by reference the allegations in paragraphs 1

12   through 41 84 of this Complaint as if fully set forth herein.

13   51.86.   Sonos claims to own all rights, title, and interest in and under the '460 885 patent.

14   A true and correct copy of the '460 885 patent is attached hereto as Exhibit 6 11.

15   52.   Google does not directly or indirectly infringe the '460 patent, either literally or

16   under the doctrine of equivalents, at least because the Google Accused Products do not comprise:

17   a playback device, comprising: (1) a speaker; (2) a microphone that is physically coupled to the

18   speaker; (3) a processor; (4) a network interface; (5) a data storage; and (6) a program logic stored

19   in the data storage and executable by the processor to: (7) emit a first audio signal from the

20   speaker; (8) detect, via the microphone, a second audio signal, wherein at least a portion of the

21   second audio signal is a reflection of the first audio signal; (9) in response to the detecting,

22   determine a first reflection characteristic based on at least the second audio signal; (10) adjust an

23   equalization setting of the playback device based on at least the first reflection characteristic; and

24   (11) play, via the speaker, an audio track according to the equalization setting.

25   53.   As an initial matter, except for the Google Home Max, none of the Google Accused

26   Products include the relevant Room EQ feature that Sonos has alleged infringes the claims of the

27   '460 patent.  Those products therefore do not infringe on that basis.  For the Google Home Max, it

28   does not include the claimed "first audio signal" or "second audio signal" to determine a

1  "reflection characteristic."   Specifically, the claim language of the '460 patent distinguishes

2  between an "audio signal" and an "audio track," indicating that they are not the same.  *See, e.g.*,

3  '460 patent, Claim 1 ("emitting, by a playback device, a first audio signal… causing an audio

4  track to play according to the adjusted equalization setting.").  The specification also refers to the

5  first audio signal several times as a curated audio signal to enhance detection of "reflection

6  characteristics."  *See, e.g.*, '460 Patent, 12:43-45 ("For instance, the first audio signal may include

7  a pulse. Such a pulse may be a recording of a brief audio pulse that approximates an audio impulse

8  signal.").  The claimed "audio signal" in the '460 patent is thus separate and distinct from the

9  "audio track" that is played according to the equalization settings that are adjusted based on

10  reflection characteristics.  Google Home Max, on the other hand, simply plays back media and

11  does not include a separate "audio signal" as claimed.  It therefore does not include the claimed

12  first or second "audio signal" or determine reflection characteristic that adjust equalization settings

13  based on an audio signal that is separate and distinct from the audio track itself.   Because the

14  terms "first audio signal," "second audio signal," and "reflection characteristic" are included in

15  every independent claim of the '460 patent, none of the Google Accused Products infringe any

16  claims of the '460 patent.

17      87.    Google does not directly or indirectly infringe the '885 patent, either literally or

18  under the doctrine of equivalents, at least because the Accused Products do not comprise a first

19  zone player comprising: (1) a network interface that is configured to communicatively couple the

20  first zone player to at least one data network; (2) one or more processors; (3) a non-transitory

21  computer-readable medium; and (4) program instructions stored on the non-transitory computer-

22  readable medium that, when executed by the one or more processors, cause the first zone player to

23  perform functions comprising: while operating in a standalone mode in which the first zone player

24  is configured to play back media individually in a networked media playback system comprising

25  the first zone player and at least two other zone players: (i) receiving, from a network device over

26  a data network, a first indication that the first zone player has been added to a first zone scene

27  comprising a first predefined grouping of zone players including at least the first zone player and a

28  second zone player that are to be configured for synchronous playback of media when the first

zone scene is invoked; and (ii) receiving, from the network device over the data network, a second indication that the first zone player has been added to a second zone scene comprising a second predefined grouping of zone players including at least the first zone player and a third zone player that are to be configured for synchronous playback of media when the second zone scene is invoked, wherein the second zone player is different than the third zone player; (5) after receiving the first and second indications, continuing to operate in the standalone mode until a given one of the first and second zone scenes has been selected for invocation; (6) after the given one of the first and second zone scenes has been selected for invocation, receiving, from the network device over the data network, an instruction to operate in accordance with a given one of the first and second zone scenes respectively comprising a given one of the first and second predefined groupings of zone players; and (7) based on the instruction, transitioning from operating in the standalone mode to operating in accordance with the given one of the first and second predefined groupings of zone players such that the first zone player is configured to coordinate with at least one other zone player in the given one of the first and second predefined groupings of zone players over a data network in order to output media in synchrony with output of media by the at least one other zone player in the given one of the first and second predefined groupings of zone players.

88.     For example, the Accused Products do not include the claimed "zone scene[s]," including at the one or more claimed "zone players."  "Zone scene" functionality is not included in any of the Accused Products.  The Accused Products in certain configurations and instances include conventional speaker grouping functionality.  But the patent repeatedly distinguishes conventional speaker grouping from the claimed "zone scene" technology.  For example, the '885 patent describes speaker groups as "groups."  *E.g.*, '885 patent at 1:62-2:17.  To contrast, the '966 patent describes "one aspect of the present invention" as "a mechanism [] provided to allow a user to group some of the players according to a theme or scene . . . ."  *E.g., id*. 2:38-41.  None of the Accused Products provide the "zone scene" functionality as described in the '885 patent, including at the one or more claimed "zone players," but instead only contain conventional speaker grouping in certain configurations or instances.  Some products, such as the Chromecast (1st gen), do not

1  support speaker grouping at all.  Because the term "zone scene" is included in every independent

2  claim of the '885 patent, none of the Accused Products infringe any claims of the '885 patent.

3      54.89.  No third party infringes any claim of the '460 885 patent by using a Google product

4  or service.  Google has not caused, directed, requested, or facilitated any such infringement, much

5  less with specific intent to do so.  The Google Accused Products are not designed for use in any

6  combination which infringes any claim of the '460 885 patent.  To the contrary, each has

7  substantial uses that do not infringe any claim of the '460 885 patent.

8      55.90.  A substantial, immediate, and real controversy therefore exists between Google and

9  Sonos regarding whether Google infringes the '460 885 patent.  A judicial declaration is

10  appropriate and necessary to determine the parties' respective rights regarding the '460 885 patent.

11      56.91.  Google seeks a judgment declaring that Google does not directly or indirectly

12  infringe any claim of the '460 885 patent.

13                          **TENTH COUNT**

14              **(Declaration of Invalidity of 10,848,885)**

15      92.    Google restates and incorporates by reference the allegations in paragraphs 1

16  through 91 of this Complaint as if fully set forth herein.

17      93.    Due to Sonos's filing of the complaint in the Western District of Texas and service

18  of infringement contentions pursuant to Patent Local Rules 3-3 and 3-4, an actual controversy

19  exists between Google and Sonos as to the validity of the '885 Patent.

20      94.    The claims of the '885 Patent are invalid, in whole or in part, for failure to meet

21  one or more requirements of Title 35 of the United States Code, including but not limited to §§

22  101, 102, 103, and/or 112.

23      95.    By way of example, the asserted claims of the '885 patent are invalid based on one

24  or more of Sonos's own products and patents, Logitech Squeezebox devices, and the prior art

25  references listed on the face of the patents.

26      96.    Under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., Google

27  requests a judicial determination and declaration that the claims of the '885 Patent are invalid.

## ELEVENTH COUNT

### (Breach of Contract)

97.     Google restates and incorporates by reference the allegations in paragraphs 1 through 94 of this Complaint as if fully set forth herein.

98.     Google and Sonos entered into the Content Integration Agreement in or around November 2013.  Ex. 3.  The Content Integration Agreement is a valid and enforceable contract.

99.     Google did all or substantially all of the things that the Content Integration Agreement required it to do.

100.     Sonos breached the terms of the Content Integration Agreement by, among other things, attempting to "claim for itself or for any third party any right, title, interest or license to" the Provider Developments and/or the Integrated Service Offering.

101.     Sonos's breach was grossly negligent, willful, a breach of confidentiality and/or a willful misappropriation of Google's intellectual property.

102.     Google has suffered economic harm and incurred damages as a direct and proximate result of Sonos's breach in an amount to be proven at trial.

103.     Sonos's conduct was a substantial factor in causing Google harm.

## TWELFTH COUNT

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

104.     Google restates and incorporates by reference the allegations in paragraphs 1 through 103 of this Complaint as if fully set forth herein.

105.     The Content Integration Agreement that Google and Sonos entered into in or around November 2013 incorporates an implied duty of good faith and fair dealing.

106.     Google did all or substantially all of the things that the Content Integration Agreement required it to do.

107.     Implied in the contract is a covenant that Sonos will act in good faith and deal fairly with Google.  Sonos has breached the implied covenant of good faith and fair dealing owed to Google by, inter alia, attempting to use the collaboration information that Google shared with Sonos, including Google's disclosures to Sonos, against Google.  By doing so, Sonos was acting

Case No. 3:20-CV-06754-WHA

FIRST AMENDED COMPLAINT

1   for a purpose contrary to that for which the contract was made, and prevented Google from

2   receiving the benefits of the contract.  Sonos failed to act fairly and in good faith.

3       108.    Google has suffered harm and incurred damages as a direct and proximate result of

4   Sonos's breach in an amount to be proven at trial.

5                          **THIRTEENTH COUNT**

6                              **(Conversion)**

7       109.    Google restates and incorporates by reference the allegations in paragraphs 1

8   through 108 of this Complaint as if fully set forth herein.

9       110.    Google, not Sonos, conceived of the cloud queue idea.  Thus, Google should have

10  been named as an inventor and owner, and has a right to possession of, any patents arising from or

11  related  to the cloud queue technology, including, without limitation, Sonos's alleged "cloud

12  queue" patents.  *See* Dkt. No. 38 (11-23-2020 Hearing Tr.) at 17:3-8.

13      111.    Sonos wrongfully exercised dominion over patents that Sonos contends cover

14  Google's cloud queue idea.  For example, Sonos filed for patents that it contends cover Google's

15  cloud queue technology, including the '615 and '033 patents that Sonos refers to as its "cloud

16  queue patents."  Sonos named itself as the sole owner of these patents.  Sonos was aware that

17  Google, not Sonos, came up with the idea for the cloud queue, and that excluding Google as an

18  owner or inventor on these patents was wrongful.  By filing patents on Google's intellectual

19  property, Sonos has willfully and without lawful justification appropriated Google's property as its

20  own without the consent of Google.

21      112.    Google has suffered non-economic harm and damages, including, but not limited

22  to, reputational harm, as a direct and proximate result of Sonos's unlawful conversion.

23                          **PRAYER FOR RELIEF**

24  WHEREFORE, Google prays for judgment as follows:

25      A.    Declaring that the ~~Google~~ Accused Products do not infringe, directly or

26  indirectly, the Patents-in-Suit, either literally or under the Doctrine of Equivalents;

27      B.    ~~Declaring~~ A declaration that Google does not induce infringement of the

28  Patents-in-Suit;

1    C.    ~~Declaring~~ A declaration that Google does not contributorily infringe on the

2    Patents-in-Suit;

3    D.    ~~Declaring~~ A declaration that judgment be entered in favor of Google and

4    against Sonos on Google's claims;

5    E.    A declaration that  the '615 and '033 patents and any Sonos intellectual

6    property on the cloud queue technology is Google's and/or an order requiring Sonos to

7    assign such intellectual property to Google;

8    ~~E.~~F.    ~~Finding~~ A finding that this is an exceptional case under 35 U.S.C. § 285;

9    G.    A finding that Sonos breached the Content Integration Agreement;

10   ~~F.~~H.    ~~Awarding~~ An award to Google ~~of~~ its costs and attorneys' fees in connection

11   with this action; ~~and~~

12   I.    An award to Google of all remedies provided under law, including

13   monetary damages and/or imposition of a constructive trust over for Sonos's breach of the

14   Content Integration Agreement, including a constructive trust over the '615 and '033

15   patents and any any other intellectual property claimed to be owned by Sonos that covers

16   intellectual property owned by Google; and

17   ~~G.~~J.    Granting Google such further and additional relief as the Court deems just

18   and proper.

19

20   DATED:  ~~December 11~~November 16,          QUINN EMANUEL URQUHART &
                                                   SULLIVAN, LLP
21   ~~2020~~ 2021

22

23

24

25                                        By _____ /s/ Charles K. Verhoeven _____

26                                           Charles K. Verhoeven
                                             Attorneys for GOOGLE LLC
27

~~Case No. 3:20-CV-06754-WHA~~
~~FIRST AMENDED COMPLAINT~~

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Google respectfully

demands a trial by jury on all issues triable by jury.


DATED: ~~December 11~~November 16,        QUINN EMANUEL URQUHART &
~~2020~~ 2021                              SULLIVAN, LLP



By _____/s/ Charles K. Verhoeven_____
   Charles K. Verhoeven
   Attorneys for GOOGLE LLC