Clement S. Roberts (SBN 209203)
*croberts@orrick.com*
ORRICK HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105
Tel: (415) 773-5700 -- Fax: (415) 773-5759

Alyssa Caridis (SBN 260103)
*acaridis@orrick.com*
ORRICK HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Tel: (213) 629-2020 -- Fax: (213) 612-2499

George I. Lee
*lee@ls3ip.com*
Sean M. Sullivan
*sullivan@ls3ip.com*
Rory P. Shea
*shea@ls3ip.com*
J. Dan Smith
*smith@ls3ip.com*
Michael P. Boyea
*boyea@ls3ip.com*
Cole B. Richter
*richter@ls3ip.com*
LEE SULLIVAN SHEA & SMITH LLP
656 W Randolph St, Floor 5W
Chicago, IL 60661
Tel: (312) 754-0002 -- Fax: (312) 754-0003

*Attorneys for Sonos, Inc.*

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOOGLE LLC, | Case No. 3:20-cv-06754-WHA |
| *Plaintiff,* | **SONOS, INC.'S OPPOSITION TO GOOGLE LLC'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT** |
| v. | |
| SONOS, INC., | Date: December 23, 2021 |
| *Defendant.* | Time: 8:00 a.m. |
| | Location: Courtroom 12, 9th Floor |
| | Judge: Hon. William Alsup |
| | Complaint Filed: September 28, 2020 |

# **TABLE OF CONTENTS**

STATEMENT OF THE RELIEF REQUESTED ............................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................... 1

I.      INTRODUCTION ............................................................................................ 1

II.     STATEMENT OF ISSUES ............................................................................. 2

III.    PROCEDURAL BACKGROUND.................................................................... 2

IV.     LEGAL STANDARD ...................................................................................... 4

V.      ARGUMENT ................................................................................................... 6

       A.      Google's Breach and Conversion Claims Are Futile............................. 6

       B.      Google Claims Are Time Barred ......................................................... 11

       C.      Google Unduly Delayed in Bringing These Claims ............................. 13

       D.      Google's Conversion Claim Is Not Legally Proper .............................. 16

VI.     CONCLUSION............................................................................................... 17

1

# TABLE OF AUTHORITIES

2

**CASES**

3

*AmerisourceBergen Corp. v. Dialysist W., Inc.*,
465 F.3d 946 (9th Cir. 2006) ............................................................ 14

4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................ 5

5

6

*Atlas IP LLC v. Pac. Gas & Elec. Co.*,
No. 15-cv-5469, 2016 WL 1719545 (N.D. Cal. Mar. 9, 2016) .......... 5

7

8

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................ 4, 5

9

*Card v. Ralph Lauren Corp.*,
No. 18-cv-02553, 2018 WL 4108082 (N.D. Cal. Aug. 29, 2018) ...... 4

10

11

*CNET Networks, Inc. v. Etilize*, Inc.,
584 F. Supp. 2d 1260 (N.D. Cal. 2008) ............................................ 4

12

13

*Commil USA, LLC v. Cisco Sys., Inc.*,
135 S. Ct. 1920 (2015)....................................................................... 7

14

*Di Wen v. Greenpoint Mortgage Funding, Inc.*,
No. 21-cv-7142, 2021 WL 5449048 (N.D. Cal. Nov. 22, 2021) ...... 12

15

16

*Foman v. Davis*,
371 U.S. 178 (1962)........................................................................... 4

17

18

*Hess v. Advanced Cardiovascular Sys., Inc.*,
106 F.3d 976 (Fed.Cir.1997) .......................................................... 16

19

20

*In re Gilead Sciences Sec. Litig.*,
536 F. 3d 1049 (9th Cir. 2008) ......................................................... 5

21

*In re Google LLC*,
No. 2021-170, 2021 WL 4427899 (Fed. Cir. Sept. 27, 2021) ........... 4

22

23

*In re VerHoef*,
888 F.3d 1362 (Fed. Cir. 2018)....................................................... 16

24

25

*In the Matter of Certain Audio Players & Controllers, Components Thereof, & Prod. Containing Same*,
Initial Determination on Violation of Section 337 & Recommended Determination on Remedy & Bond, USITC Inv. No. 337-TA-1191 (Aug. 13, 2021) ........................................................................................... 3

26

27

28

SONOS'S OPP. TO GOOGLE'S MTN FOR
LEAVE TO FILE SEC AMEND COMPL.
CASE NO. 3:20-CV-06754-WHA

*In the Matter of Certain Audio Players & Controllers, Components Thereof, & Prod.*
    *Containing Same*,
    USITC Inv. No. 337-TA-1191 (Jan. 7, 2020) ................................................................. 3

*Innospan Corp. v. Intuit, Inc.*,
    No. 10-cv-4422-WHA, 2011 WL 856265 (N.D. Cal. Mar. 9, 2011) .............................. 16

*Jackson v. Bank of Hawaii*,
    902 F.2d 1385 (9th Cir. 1990) ................................................................................... 6, 14

*Kyko Glob., Inc. v. Bhongir*,
    No. 20-cv-4136, 2020 WL 7319360 (N.D. Cal. Dec. 11, 2020).................................... 12

*Levitt v. Yelp! Inc.*,
    765 F. 3d 1123 (9th Cir. 2014) ....................................................................................... 5

*Loehr v. Ventura County Cmty. Coll. Dist.*,
    743 F.2d 1310 (9th Cir. 1984) ...................................................................................... 15

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
    521 F.3d 1097 (9th Cir. 2008) ........................................................................................ 5

*Microsoft Corp. v. i4i Ltd. Partnership*,
    131 S. Ct. 2238 (2011)..................................................................................................... 7

*Pannu v. Iolab Corp.*,
    155 F.3d 1344 (Fed. Cir. 1998)..................................................................................... 16

*Prism Techs. LLC v. Sprint Spectrum L.P.*,
    757 F. App'x 980 (Fed. Cir. 2019) ................................................................................. 8

*Sisseton–Wahpeton Sioux Tribe of Lake Traverse Indian Reservation, N. Dakota &*
    *S. Dakota v. United States*,
    90 F.3d 351 (9th Cir. 1996) ............................................................................................ 6

*Sonos Inc. v. Google LLC*,
    2:20-CV-00169-JAK-DAM, 2020 WL 85166 (C.D. Cal. Jan. 7, 2020) .......................... 3

*Tethys Bioscience, Inc. v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C.*,
    No. 09-cv-5115, 2010 WL 2287474 (N.D. Cal. June 4, 2010)........................................ 16

*Texaco, Inc. v. Ponsoldt*,
    939 F.2d 794 (9th Cir. 1991) ........................................................................................ 14

*Viewsonic Corp. v. Electrograph Sys., Inc.*,
    No. 09-cv-4093, 2010 WL 11509169 (C.D. Cal. Mar. 12, 2010)...................................... 6

*Windy City Innovations, LLC v. Microsoft Corp.*,
    193 F. Supp. 3d 1109 (N.D. Cal. 2016) ............................................................................ 6

SONOS'S OPP. TO GOOGLE'S MTN FOR
LEAVE TO FILE SEC AMEND COMPL.
CASE NO. 3:20-CV-06754-WHA

*WiNet Labs LLC v. Apple Inc.*,
    No. 5:19-cv-2248-EJD, 2020 WL 409012 (N.D. Cal. Jan. 24, 2020) ............................... 5

**STATUTES**

35 U.S.C. § 102(f) (pre-AIA).................................................................................................. 16

Cal. Civ. Proc. Code § 337(1).................................................................................................. 12

**RULES**

Fed. R. Civ. P. 8(a)(2)............................................................................................................... 5

SONOS'S OPP. TO GOOGLE'S MTN FOR
LEAVE TO FILE SEC AMEND COMPL.
CASE NO. 3:20-CV-06754-WHA

1

**STATEMENT OF THE RELIEF REQUESTED**

2      Sonos requests that this Court deny Google's motion (Dkt. No. 80) for leave to file a

3    Second Amended Complaint ("SAC"; Dkt. No. 80-2) that includes the Eleventh, Twelfth, and

4    Thirteenth counts (and their supporting allegations), which are directed to claims for breach of

5    contract and implied covenant of good faith and fair dealing (SAC, ¶¶97-108) based on a 2013

6    Content Integration Agreement ("CIA"; Dkt. No. 80-4), as well as for conversion (SAC, ¶¶109-

7    112).

8            **MEMORANDUM OF POINTS AND AUTHORITIES**

9    **I.    INTRODUCTION**

10      Subscribing to the old adage that one should never let the truth get in the way of a good

11    story, Google has fashioned a fantastical tale of how Sonos's 2011 patents are now Google's

12    property because of a later 2013 collaboration agreement.  But Google's new breach and

13    conversion claims against Sonos are both meritless and untimely.  Even a cursory review of the

14    indisputable facts demonstrates the futility of Google's new claims.  All the asserted patents in

15    this case have priority dates going back to either *2006* (for Sonos's zone scene patents) or *2011*

16    (for Sonos's direct control patents).[1]  By Google's own admission, the parties collaborated from

17    *2013-2015*, the CIA was signed in *2013*, and the CIA only purportedly involves "intellectual

18    property rights arising from" work done during the collaboration.  *See* Google's Motion (Dkt.

19    No. 80) at 3 (citing SAC, ¶¶21-23 and Dkt. 80-4 (Ex. 3; CIA)).  Thus, it is impossible for the

20    CIA to give rise to breach or conversion claims based on concepts contained in Sonos's patent

21    applications filed years earlier.

22      Even if there were any merit to Google's breach and conversion claims (there is not),

23

24    _____

[1] Although Google tries to leave open an argument in its motion that the CIA could apply to
25    more than the two asserted direct control patents, the SAC is clear that the CIA and Google's
      claims only apply (if at all) to the two asserted direct control patents, and not the asserted zone
26    scene patents.  *Compare* Google's Motion at 3 ("One such contract provides that Google, not
      Sonos, owns any intellectual property relating to the purported inventions of ***at least two of the***
27    ***patents asserted*** by Sonos.") (emphasis added) *with* SAC, ¶¶21-34 (exclusively referencing only
      the "the '615 and '033 patents").  Thus, this brief will focus on Google's breach and conversion
28    claims with respect to the '615 and '033 patents, which Sonos refers to as "direct control"
      patents.

SONOS'S OPP. TO GOOGLE'S MTN FOR
LEAVE TO FILE SEC AMEND COMPL.
CASE NO. 3:20-CV-06754-WHA

these claims are now barred by the statute of limitations.  There is no relation back to Google's original complaint for these breach and conversion claims.  They are entirely new claims based on entirely new allegations (and, thus, cannot be treated as having been filed at the same time as the original complaint on September 28, 2020).  Moreover, Sonos provided Google with notice of its direct control patents as early as 2016.  Consequently, Google's breach claims needed to be filed within four years of such notice to meet the statute of limitations in California, and Google's conversion claim needed to be filed within three years of such notice to meet the statute of limitations in California.

Even if Google's breach and conversion claims are not time barred by these statutes of limitations, Google's motion for leave should be denied because Google unreasonably delayed in bringing these claims.  Google has no justifiable excuse for not acting sooner.

Lastly, under the facts that Google has alleged in the SAC, conversion is also not a proper legal claim for intangible intellectual property, such as patents.

## II.    STATEMENT OF ISSUES

1) Whether Google's motion for leave to file a second amended complaint with respect to its proposed Eleventh, Twelfth, and Thirteenth counts (and supporting allegations), should be denied because such claims and allegations are futile.

2) Whether Google's proposed Eleventh, Twelfth, and Thirteenth counts are time barred under the statute of limitations for such claims.

3) Whether Google unreasonably delayed in bringing its proposed Eleventh, Twelfth, and Thirteenth counts (and supporting allegations).

4) Whether Google's Thirteenth count for conversion is a proper legal claim.

## III.   PROCEDURAL BACKGROUND

On January 7, 2020, Sonos filed an investigation before the United States International Trade Commission ("ITC") seeking a permanent exclusion order against Google for products that infringe five of Sonos's patents.  *See In the Matter of Certain Audio Players & Controllers,*

*Components Thereof, & Prod. Containing Same*, USITC Inv. No. 337-TA-1191 (Jan. 7, 2020).[2]
The ITC has determined that all five of Sonos's patents are valid and infringed by Google.  *In the*
*Matter of Certain Audio Players & Controllers, Components Thereof, & Prod. Containing Same*,
Initial Determination on Violation of Section 337 & Recommended Determination on Remedy &
Bond, USITC Inv. No. 337-TA-1191 (Aug. 13, 2021).

On September 29, 2020, Sonos filed a complaint in the Western District of Texas alleging
that Google infringed five different Sonos patents.  *See* Dkt. No. 11-1, Ex. F ("Texas Action").[3]
Google tried to pre-empt this second action by filing a declaratory judgment complaint in the
present proceeding the day before.  Dkt. No. 1.  On November 20, 2020, however, the Court
stayed this proceeding in light of the Texas Action.  Dkt. No. 36.  Shortly thereafter, Google filed
its First Amended Complaint ("FAC") on December 11, 2020.  Dkt. No. 41.

In the Texas Action, Google filed a motion to transfer.  In support of its motion, Google
made two arguments: (1) that the public and private interest factors demonstrated that this
District was a clearly more convenient forum, and (2) that the CIA contained a mandatory venue
selection clause that required litigation related to the CIA to take place in this District and that
Sonos's assertion of its direct control patents triggered this venue selection clause.  In denying
Google's motion, Judge Albright analyzed the public and private interest factors and also, as
relevant here, analyzed whether the claims and defenses concerning Sonos's direct control
patents had more than a non-frivolous nexus to the CIA (and thus the venue selection clause).
Dkt. No. 55 (Transfer Order).  Judge Albright determined that the CIA's relation to Sonos's
direct control patents was frivolous and thus could not trigger the CIA's venue selection clause:

---

[2] That same day, Sonos also filed a district court complaint against Google, which was
subsequently stayed.  *See Sonos Inc. v. Google LLC*, No. 2:20-cv-169, 2020 WL 85166 (C.D.
Cal. Jan. 7, 2020).

[3] The patents-in-suit currently include the following four patents: U.S. Patent Nos. 9,967,615
("the '615 patent"), 10,779,033 ("the '033 patent"), 10,469,966 ("the '966 patent"), and
10,848,885 ("the '885 patent").  During the Texas Action, Sonos withdrew U.S. Patent No.
9,219,460 ("the '460 patent") to correct a printing error in that patent through a request for
certificate of correction currently pending before the United States Patent and Trademark Office
("USPTO").  Sonos is no longer asserting infringement of any claims of U.S. Patent No.
9,344,206 ("the '206 patent").

3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> As the Court has already determined, Sonos's claims do not directly implicate nor rely on the CIA, and the CIA does not provide any direct defense to the alleged infringement of the patents at issue.  Furthermore, neither party disputes that the CIA only governs the ownership of intellectual property developed under the collaboration, as opposed to ownership of the patents at issue.  *See* Def.'s Reply at 1; Pl.'s Resp. at 4.  Accordingly, the limited liability provision of ***the CIA – on its face – does not "relate to" the '615 and '033 patents, given that these patents claim priority before the CIA's execution and are therefore pre-existing intellectual property outside the CIA's scope.  The Court therefore does not find a non-frivolous nexus between any of Google's argued defenses and the CIA***.

*Id.* at 11 (emphasis added).  Judge Albright also found that the public and private interest factors did not demonstrate that this District was clearly more convenient and thus denied transfer.

Google filed a petition for writ of mandamus on August 6, 2021 asking the Federal Circuit to order Judge Albright to transfer the case to this District asserting both arguments again (the CIA venue selection clause and the public and private interest factors).  On September 27, 2021, a panel of the Federal Circuit granted Google's petition.  But the Federal Circuit based its decision solely on the ground that Judge Albright had erred in analyzing the public and private interest factors.  The Federal Circuit did not reach the CIA venue selection clause argument and thus left undisturbed Judge Albright's finding that the clause was irrelevant.  *In re Google LLC*, No. 2021-170, 2021 WL 4427899, at *1 (Fed. Cir. Sept. 27, 2021).

The Texas Action has now been transferred to this Court and provided a new case number: *Sonos, Inc. v. Google LLC*, No. 3:21-cv-07559-WHA (N.D. Cal.) ("*Sonos -7559 Case*").  *See* Dkt. Nos. 56 and 64.  On October 8, 2021, this Court granted Sonos's motion to relate the -7559 case to the present case.  Dkt. 64.

## IV.   LEGAL STANDARD

"Despite [a] liberal policy permitting amendment, the court may decline to grant leave where there is any apparent or declared reason for doing so."  *CNET Networks, Inc. v. Etilize, Inc.*, 584 F. Supp. 2d 1260, 1267 (N.D. Cal. 2008).  For example, a court should not grant leave to amend when the amendment is futile, which occurs when the "proposed amendments . . . do not state a claim" upon which relief can be granted.  *Card v. Ralph Lauren Corp.*, No. 18-cv-02553, 2018 WL 4108082, at *3 (N.D. Cal. Aug. 29, 2018); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Such a rule ensures that

1    the non-moving party not be forced to undergo costly discovery unless the pleading contains

2    enough detail to indicate that the moving party has a substantial case.  *See Twombly*, 550 U.S. at

3    558 ("[A] district court must retain the power to insist upon some specificity in pleading before

4    allowing a potentially massive factual controversy to proceed.").

5           The test for futility (or legal sufficiency) in the context of a motion for leave to amend is

6    "identical to the one used when considering the sufficiency of a pleading challenged under Rule

7    12(b)(6)."  *Grant v. City & Cty. of San Francisco*, No. 17-cv-4869-WHA, 2018 WL 2331907, at

8    *1 (N.D. Cal. May 23, 2018) (citing *Miller v. Rycoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir.

9    1988)).  To survive a Rule 12(b)(6) motion to dismiss after *Ashcroft v. Iqbal*, 556 U.S. 662

10   (2009) and *Twombly*, a plaintiff "must…suggest that the claim has at least a plausible chance of

11   success."  *Levitt v. Yelp! Inc.*, 765 F. 3d 1123, 1134-35 (9th Cir. 2014).

12          Under Rule 12(b)(6), "dismissal of a complaint is required if 'the complaint lacks a

13   cognizable legal theory or sufficient facts to support a cognizable legal theory.'"  *WiNet Labs

14   LLC v. Apple Inc.*, No. 5:19-cv-2248, 2020 WL 409012, at *4 (N.D. Cal. Jan. 24, 2020) (quoting

15   *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)).  The rules

16   require a "short and plain statement of the claim showing that the pleader is entitled to relief."

17   Fed. R. Civ. P. 8(a)(2).  In this respect, a complaint must plead "enough facts to state a claim to

18   relief that is plausible on its face" (*Twombly*, 550 U.S. at 570), which is when the plaintiff pleads

19   "factual content that allows the court to draw the reasonable inference that the defendant is liable

20   for the misconduct alleged" (*Iqbal*, 556 U.S. at 678).  When performing this analysis, the Court

21   should set aside Google's legal conclusions, bald assertions, and unwarranted deductions of fact

22   regarding breach and conversion, which are not entitled to an assumption of truth, and then

23   determine whether the remaining factual allegations can plausibly show a breach or conversion.

24   *See, e.g., In re Gilead Sciences Sec. Litig.*, 536 F. 3d 1049, 1055 (9th Cir. 2008); *Atlas IP LLC v.

25   Pac. Gas & Elec. Co.*, No. 15-cv-5469, 2016 WL 1719545, at *5 (N.D. Cal. Mar. 9, 2016) (order

26   granting motion to dismiss for failure to state a plausible claim of infringement) (citing *Iqbal*,

27   556 U.S. at 678-79).  After performing this analysis, "[i]f the facts alleged do not support a

28   reasonable inference of liability, stronger than a mere possibility, the claim must be dismissed."

SONOS'S OPP. TO GOOGLE'S MTN FOR
LEAVE TO FILE SEC AMEND COMPL.
CASE NO. 3:20-CV-06754-WHA

1    *Windy City Innovations, LLC v. Microsoft Corp.*, 193 F. Supp. 3d 1109, 1112 (N.D. Cal. 2016).

2           In addition to analyzing futility, a Court must also determine whether the movant has

3    "unduly delay[ed]" in bringing its amended complaint to the Court.  *Sisseton–Wahpeton Sioux*

4    *Tribe of Lake Traverse Indian Reservation, N. Dakota & S. Dakota v. United States*, 90 F.3d

5    351, 355 (9th Cir. 1996).  "Relevant to evaluating the delay issue is whether the moving party

6    knew or should have known the facts and theories raised by the amendment in the original

7    pleading."  *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990); *see also Viewsonic*

8    *Corp. v. Electrograph Sys., Inc.*, No. 09-cv-4093, 2010 WL 11509169, at *2 (C.D. Cal. Mar. 12,

9    2010) (finding relevant "whether the amendment would greatly change the parties' positions in

10   the action, and require the assertion of new defenses").

11   **V.    ARGUMENT**

12          **A.    Google's Breach and Conversion Claims Are Futile**

13          As Judge Albright has already found, the *2013* CIA cannot have affected patents that

14   claim priority to an application filed in *2011*.  *See* Dkt. No. 55 at 11.  Specifically, the '615 and

15   '033 patents (commonly referred to by Sonos as direct control patents) were both filed as

16   "[c]ontinuation[s] of application No. 13/341,237, filed on Dec. 30, 2011, now Pat. No.

17   9,654,821."  Declaration of Cole B. Richter (Richter Decl.), Exs. A-B.  Thus, these patents share

18   the same specification – a specification that was filed in 2011.

19          The CIA was not signed until November 2013.  Dkt. No. 80-4 at 7.  Moreover, the CIA is

20   explicitly limited to new "intellectual property rights arising from" the parties' collaboration

21   work during 2013-2015.  *See* Google's Motion (Dkt. No. 80) at 3 (citing SAC, ¶¶21-23 and Dkt.

22   80-4 (Ex. 3; CIA)).  As a result, there is simply no way for the 2013 CIA to control the

23   ownership of inventions, like those set forth in the '615 and '033 patents, that date back to 2011

24   and are outside the scope of the parties' collaboration work during 2013-2015.

25          To avoid this dispositive timing problem, Google argues that "Sonos did not introduce

26   the alleged notion of a cloud-based queue into its asserted patents until 2019."  *See* Google's

27   Motion at 4.  In particular, Google argues that Sonos first introduced a cloud-based queue into

28   the asserted patents when it amended the claims of the '033 patent on November 1, 2019 to

6

1   require the limitation of a "remote playback queue." *Id*.  This 2019 amendment and the "remote

2   playback queue" limitation are the crux of Google's breach and conversion claims.  *See, e.g.*,

3   Dkt. No. 80-2 (SAC), ¶31 ("Sonos did not introduce the alleged notion of a cloud-based queue

4   into its patents until 2019.  *See, e.g.*, '033 prosecution history (November 1, 2019 amendment

5   adding notion of 'remote playback queue')").  In fact, the 2019 "remote playback queue"

6   amendment in the '033 patent is the only activity that Google alleges was an attempt by Sonos to

7   "claim for itself or for any third party any right, title, interest or license to the Provider

8   Developments and/or the Integrated Service Offering," and was thus allegedly a breach of the

9   CIA.  Dkt. No. 80-2 (SAC), ¶100.

10          There are several obvious – and, again, dispositive – defects with Google's argument.

11          ***First***, Google's argument runs directly counter to the black letter law that the claims of a

12   patent must be supported by its specification.  35 U.S.C. § 112.  Here, the '615 and '033 patents

13   that Google points to have a specification that dates back to 2011.  These patents would not have

14   been duly issued by the USPTO if their claims were not supported by their 2011 specification.

15   *See* 35 U.S.C. § 282 ("A patent shall be presumed valid.").  In other words, the "remote playback

16   queue" limitation could not have been added to the '033 patent claims unless it was supported by

17   the 2011 specification.  And since the "remote playback queue" limitation is supported by a

18   patent specification filed by Sonos in 2011, it could not have been invented by Google (or

19   anyone else) during the 2013-2015 collaboration period.  Notably, Google's SAC fails to plead –

20   even at a conclusory level – that the 2011 specification patent does not contain written

21   description support for the "remote playback queue" limitation, let alone contain well-pleaded

22   allegations setting out why this is the case with reference to the teachings of the 2011

23   specification.  Yet, it will be Google's burden to demonstrate this by clear and convincing

24   evidence if it seeks to advance this argument sometime in the future.  *E.g., Microsoft Corp. v. i4i*

25   *Ltd. Partnership*, 131 S. Ct. 2238, 2243 (2011); *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct.

26   1920, 1929 (2015).

27          ***Second***, Google's breach and conversion allegations are equally futile even assuming,

28   counter-factually, Google can show that there was insufficient written description support for the

SONOS'S OPP. TO GOOGLE'S MTN FOR
LEAVE TO FILE SEC AMEND COMPL.
CASE NO. 3:20-CV-06754-WHA

"remote playback queue" limitation in the 2011 specification.  In that circumstance, the claims of the '033 patent containing such a limitation would be invalid under 35 U.S.C. § 112.  But if those claims are invalid, Google's breach and conversion claims would be nullified, as there can be no breach or conversion from an invalid patent that holds no rights or legal effect.  *See, e.g., Prism Techs. LLC v. Sprint Spectrum L.P.*, 757 F. App'x 980, 987-88 (Fed. Cir. 2019), *cert. denied*, 139 S. Ct. 2704 (2019) (finding that an invalidity ruling is "an act which, in judgment of law, extinguishes the patent" claims, after which they "can no more be the foundation for the assertion of a right.").  In other words, Google's assertions fail both ways: wiped out either by the 2011 specification's support for the '033 patent claims or, in the counter-factual, by the invalidity of those claims.

*Third*, above and beyond the infirmity of Google's arguments regarding the '033 patent, Google's invocation of the cloud queue concept as the lynchpin for its proposed breach and conversion claims has no legitimacy for the '615 patent.  The claims of the '615 patent do not contain a "remote playback queue" limitation, let alone a "cloud queue" limitation.  In fact, the '615 patent issued May 8, 2018 – more than a year before the 2019 amendment concerning "remote playback queue," which Google alleges is the *first* time that Sonos introduced the notion of a "cloud queue" into its patents.  Accordingly, despite the fact that Google's breach and conversion claims purportedly apply to both the '615 and '033 patents, it is impossible for Google's argument or the CIA to apply to the '615 patent.  Not surprisingly, Google pleads no facts in support of how the '615 patent is implicated by the CIA.  For this reason alone, the Court should not allow Google to proceed with its currently proposed breach and conversion claims.

*Fourth*, in a ham-handed attempt to lump the '033 and '615 patents together under the undifferentiated rubric of "cloud queue patents," Google's cites to an inadvertent reference to that group of patents by counsel during a previous status conference with the Court.  Google's Motion at 4 (citing Dkt. No. 38 at 17:3-8).  This is the only "support" that Google has offered to designate the '615 and '033 patents as "cloud queue patents," and, of course, it is not evidence. The '033 and '615 patents are, and have consistently been, referred to by Sonos as "direct control" patents.  *Sonos -7559 Case*, Dkt. 60 at 2 ("Sonos's '615 and '033 Patents (the "Direct

SONOS'S OPP. TO GOOGLE'S MTN FOR
LEAVE TO FILE SEC AMEND COMPL.
CASE NO. 3:20-CV-06754-WHA

Control Patents") . . ."); *see also* Richter Decl., Ex. C (Sonos IP License Model shared with Google referring separately to both "Cloud Queue" and "Direct Control").  The phrase "cloud queue" does not appear anywhere in the 2011 specification, the claims of the '615 or '033 patents, in Sonos's infringement complaint in the Texas Action, or in Sonos's infringement contentions.  Sonos has other patents, such as U.S. Patent No. 9,363,255, that it refers to as "cloud queue" patents, as evidenced by the use of the term "cloud queue" right in the title of those patents.  Richter Decl., Ex. D.  The mistaken reference by counsel is easily forgivable given that Sonos has over a thousand patents and Google infringes at least a hundred of them, including the direct control patents asserted in this case, as well as some of Sonos's cloud queue patents, which are not asserted in this case.  Richter Decl., Ex. E.

Google is also well aware of what these different patents are directed to, as Sonos has, for years, provided ample prior notice of these patents and Google's infringement of them.  Richter Decl. Exs. C, E, F, I.  As one example, on September 2, 2016 (now over 5 years ago) Sonos provided notice of 24 Sonos patents and four allowed Sonos patent applications, including among them the 2011 specification (which the '615 and '033 patents claim priority to) and U.S. Pat. No. 9,363,255, titled "Cloud Queue Playhead" – which is specifically articulated in the reference to Google.  Richter Decl., Ex. F.  As another example, in July of 2018, Sonos provided Google with an "IP License Model" document that explained and distinguished Sonos's patented "cloud queue" and "direct control" features as follows:

**1.3.2 Cloud Queue.** The playback queue from which a playback device sources media items to play back is stored in and driven from the cloud. When the playback device needs to update its queue, it requests the items from the cloud.

**1.8.3 Direct Control.** Control of a playback device via a third-party's control interface.

Richter Decl., Ex. C at 21-22.  Given the extensive education Google received on the key distinction at issue, it cannot feign ignorance here and transmogrify an off-hand reference to the

1    patents by counsel into an admission regarding their claim scope.[4]

2         **Fifth**, Google tries to argue in its motion that Judge Albright "did not find that the CIA is

3    irrelevant."  However, that is exactly what Judge Albright found.  As quoted by Google, Judge

4    Albright said that "[t]he Court merely finds that the connection between the CIA and Google's

5    defenses (as well as Sonos's Complaint) is not 'non-frivolous' in this context, preventing the

6    application of the forum selection clause."  *See* Google's Motion, at p. 11 (citing Dkt. No. 55

7    (Transfer Order) at 11).  This plainly means that any "connection between the CIA and Google's

8    defenses (as well as Sonos's Complaint)" is frivolous (*i.e.*, "not 'non-frivolous'").  Moreover, as

9    set forth above, the remainder of Judge Albright's decision on this issue could not have been

10   clearer: "the CIA – on its face – does not 'relate to' the '615 and '033 patents, given that these

11   patents claim priority before the CIA's execution and are therefore pre-existing intellectual

12   property outside the CIA's scope.  The Court therefore does not find a non-frivolous nexus

13   between any of Google's argued defenses and the CIA."  Dkt. No. 55 at 11.[5]

14        **Finally**, Google argues that it was the first one to come up with the concept of a "cloud

15   queue" because Google allegedly told a Sonos engineer, Tad Coburn, about the idea in

16   December of 2013.  *See* Google's Motion at 3; Dkt. No. 80-2 (SAC), ¶25 ("At least by

17   December of 2013, Google told Sonos—including Sonos engineer Tad Coburn, the named

18   inventor of the '615 and '033 patents—that Google was considering using 'a more cloud queue

19   centric model that would help simplify things a bit (moving the interactions away from the

20   device, quickly),' to which Mr. Coburn responded that '[t]he idea of moving the playlist to the

21   cloud is very interesting, but will definitely complicate things.'").  On its face, this

---

22   [4] Again, even if the '033 patent could (mistakenly) be considered a "cloud queue patent" because
23   it contains the claim limitation "remote playback queue," such a label would be wholly improper
     for the '615 patent, which does not contain any such limitation.  Google's SAC certainly
24   contains no allegation purporting to advance otherwise.
     [5] Put another way, as Sonos made clear to Judge Albright in the Texas Action, the parties'
25   **collaboration activities** (*e.g.*, Sonos's explanation to Google during the collaboration of how
26   Sonos's technology works) may very well be relevant to this proceeding, but the contract
     provisions of the **CIA** are not.  In other words – the parties' activities taking places during the
27   two-plus year collaboration and the four corners of the CIA document are not the same and will
     have different respective relevancies to the current proceedings.  Thus, they ought not be
28   conflated.

SONOS'S OPP. TO GOOGLE'S MTN FOR
LEAVE TO FILE SEC AMEND COMPL.
CASE NO. 3:20-CV-06754-WHA

communication does not establish that Google was the first to come up with the concept of a "cloud queue."  In fact, the concept of a "cloud queue" was expressly disclosed *by Sonos* well before the Sonos-Google collaboration began and prior to when Google alleges to have told Sonos this "new" idea.  For instance, Sonos's U.S. Pat. No. 9,232,277, filed on July 17, 2013 (four months prior to the CIA), expressly references this "cloud queue" concept.  *See, e.g.*, Richter Decl., Ex. G at col. 15, ll. 47-50 ("In other embodiments, playback *queues*, including the first playback *queue*, are stored *remotely* relative to the playback device.  For example, the first playback *queue* may be stored in a *cloud-based* network or on a second playback device for access by the playback device.") (emphasis added).  As another example, Sonos's U.S. Pat. No. 9,674,587, filed on June 26, 2012 (17 months prior to the CIA), expressly references this concept as well.  *See, e.g.*, Richter Decl. Ex. H at col. 14, ll. 36-41 ("a playback *queue* may be stored *remotely* over the Internet in memory on a 'cloud server' or network storage device. For example, the SONOS™ server 720 in FIG.7 may be used to store one or more playback queues for SONOS™ systems 760 and 770.").  In short, Google cannot claim to have created intellectual property concerning a "cloud-queue" during the parties' collaboration because Sonos had already invented it beforehand.

All told, the SAC and its exhibits clearly demonstrate that Google's breach and conversion claims lack even the patina of plausibility.  They are accordingly futile and Google's motion for leave to add them should be denied.

### B.   Google Claims Are Time Barred

Google's proposed Eleventh, Twelfth, and Thirteenth counts are also futile because they are time barred under the statute of limitations for such claims.  As previously explained, the '033 and '615 patents are continuations of U.S. Patent No. 9,654,821 ("the '821 patent"), which was filed on December 30, 2011.  As shown in the October 2016 presentation slide below, Sonos gave Google notice of this family of direct control patents in October 2016 via application No. 14/520,566 ("the '566 application"), now U.S. Patent 9,860,589, which is another continuation of the '821 patent.

SONOS'S OPP. TO GOOGLE'S MTN FOR
LEAVE TO FILE SEC AMEND COMPL.
CASE NO. 3:20-CV-06754-WHA



Richter Decl., Ex. I at 18.  For the avoidance of doubt, the '566 application contains the same 2011 specification to which the '615 and '033 patents claim priority.

Thus, Google knew about the subject matter of the '033 and '615 patents more than five years ago – well after the statute of limitations period expired for the breach and conversion claims.  *See, e.g.*, *Di Wen v. Greenpoint Mortgage Funding, Inc.*, No. 21-cv-7142, 2021 WL 5449048, at *2 (N.D. Cal. Nov. 22, 2021) ("[The statute of limitations for] [b]reach of written contract and breach of the implied covenant of good faith and fair dealing [is] four years.") (citing Cal. Civ. Proc. Code § 337(1)); *Kyko Glob., Inc. v. Bhongir*, No. 20-cv-4136, 2020 WL 7319360, at *2 (N.D. Cal. Dec. 11, 2020), *aff'd*, No. 20-17526, 2021 WL 4958989 (9th Cir. Oct. 26, 2021) ("Under California law, . . . conversion claims are subject to a three-year statute of limitations, *see* Cal. Civ. Proc. Code § 338(c) . . . .").

As with Sonos's direct control patents, in October 2016, Google was also provided express notice of a Sonos "cloud queue" patent – U.S. Patent No. 9,363,255 ("the '255 patent"), which claims priority to a provisional application filed on June 4, 2014, has the title "Cloud Queue Playhead," and issued on June 7, 2016.  Richter Decl., Ex. I at 36.  The inventor of the '255 patent is none other than Sonos engineer, Tad (Arthur) Coburn, and the claims of the '255 patent expressly recite a "cloud queue."  As shown in the presentation slide below, Sonos even used the phrase "Cloud Queue" to describe this patent to Google back in October 2016.

1
2
3
4
5
6
7
8
9
10



11   *Id.* Thus, Google had clear notice of Sonos's ownership claim to a "cloud queue" over five years

12   ago and has no excuse for failing to raise any claim for breach or conversion before now.[6]

13   In addition to the aforementioned 2016 notice, Sonos made Google aware of three

14   different cloud queue patents on July 12, 2018. Richter Decl., Ex. C. In sum, Google was

15   extremely well informed about Sonos's ownership claim over the technology disclosed in these

16   cloud queue patents. As such, Google's breach and conversion claims should be dismissed as

17   futile under the pertinent statutes of limitations.

18   **C.    Google Unduly Delayed in Bringing These Claims**

19   Google has known about the CIA since 2013 (over eight years ago) when Google

20   executed it. Google has known that it considers the CIA relevant to Sonos's infringement claims

21   here since at least as early as October 2020 (over 12 months ago) when it raised the CIA in this

22   case. And Google has known that Sonos has (according to Google) attempted to "claim for itself

23   . . . any right, title, interest or license to the [purported] Provider Developments," as Google was

24   made aware of the 2011 specification and Sonos's "cloud queue" patents several times since

25   September 2016 (over 5 years ago). Google has thus unreasonably delayed in waiting to bring

26

27   [6] In other words, November of 2019 is ***not*** the ***first*** time that Google learned of Sonos
     purportedly "claim[ing] for itself" a "cloud queue." Thus, breach or conversion claims

28   stemming from this are similarly barred by the statute of limitations.

SONOS'S OPP. TO GOOGLE'S MTN FOR
LEAVE TO FILE SEC AMEND COMPL.
CASE NO. 3:20-CV-06754-WHA

1    these claims until the middle of this expedited patent infringement proceeding.

2    "In assessing timeliness, we do not merely ask whether a motion was filed within the

3    period of time allotted by the district court in a Rule 16 scheduling order.  Rather, in evaluating

4    undue delay, we also inquire whether the moving party knew or should have known the facts and

5    theories raised by the amendment in the original pleading." *AmerisourceBergen Corp. v.*

6    *Dialysist W., Inc.*, 465 F.3d 946, 953 (9th Cir. 2006) (internal quotations omitted).  The Ninth

7    Circuit has held that even "an eight-month delay between the time of obtaining a relevant fact

8    and seeking a leave to amend is unreasonable."  *E.g., id.*; *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794,

9    799 (9th Cir. 1991); *Jackson*, 902 F.2d at 1388.

10   Google's only argument that it timely raised these claims was that the present case was

11   stayed and that "Google had to wait until the stay was recently lifted to add these new causes of

12   action."  Google's Motion at 7-8.  However, this case was stayed specifically so that the Texas

13   Action could go forward.  The Texas Action proceeded from the day after this case was filed

14   (September 29, 2020) until it was transferred to this Court (on September 27, 2021).  At no point

15   during the twelve months of litigation in Texas did Google raise these claims of breach and

16   conversion against Sonos.  Google even filed its own counterclaims to Sonos's related complaint

17   in the Texas Action, but included no breach or conversion claim.

18   Google contends that "[its] claims for breach of contract and the implied covenant of

19   good faith and fair dealing, as well as its claim for conversion, are based on Google's diligent

20   investigation that it performed in the Texas Action in response to Sonos's allegations," yet

21   Google offers no explanation as to what constituted this "diligent investigation" or when it

22   occurred or was completed.  Indeed, it was Google that first raised the CIA (not Sonos) in this

23   case and in the Texas case.  *See* Dkt. 28 at 5 (Google raising the CIA in this case as early as

24   October 2020 in response to Sonos's motion to dismiss Google's complaint); *Sonos, Inc. v.*

25   *Google LLC*, Case No. 20-cv-881, Dkt. 22 (Google raising the CIA in November 2020 in its

26   motion to dismiss Sonos's Texas complaint).  Thus, waiting over 12 months after identifying

27   purportedly relevant facts and agreements to first raise any claim for breach or conversion is an

28   unreasonable delay.  *See AmerisourceBergen*, 465 F.3d at 953.

SONOS'S OPP. TO GOOGLE'S MTN FOR
LEAVE TO FILE SEC AMEND COMPL.
CASE NO. 3:20-CV-06754-WHA

1      Google also argues that the "evidence and agreements that form the basis of these claims

2  were disclosed to Sonos in the Texas Action."  Google's Motion at 7-8.  Google cites no

3  authority supporting that the mere disclosure of purported evidence forming the "basis" for a

4  future claim suffice to actually raise that claim.  If anything, this tends to establish that claims

5  were not timely raised since Google itself had apparently mustered the evidence and agreements

6  but failed to raise any corresponding claims against Sonos.  At no point has Sonos been aware

7  that Google deigned to raise a breach or conversion claim against it.  In fact, Google even led

8  Sonos to believe that Google *did not have a breach claim* against Sonos.  For instance, in a July

9  2021 hearing before Judge Albright on Google's motion to transfer, Sonos's counsel stated,

10  regarding the CIA, that "we don't have a dispute over the agreement, Your Honor.  There's no

11  breach of contract, for instance.  This is a patent infringement dispute."  Richter Decl., Ex. J

12  (7/23/21 Hr'g. Tr. at 24:12-14).  Google did not dispute this, correct the record, or otherwise

13  argue that Google was advancing a breach claim of the CIA.

14      Despite Google having plenty of opportunities to raise its breach and conversion claims

15  in the various litigations between the parties or during any of its negotiations with Sonos over the

16  past five years, Google has never asserted any such claims before.  Google's timing of raising

17  these new claims is more than suspect.  It is only now, after (1) Google succeeded in having the

18  case transferred to the Northern District of California, (2) this Court selected this case for

19  participation in its patent showdown procedure, and (3) the deadline came and went for the

20  parties' selection of the showdown claims (with Google surreptitiously electing a direct control

21  claim for the patent showdown procedure) that Google wants to use these manufactured breach

22  and conversion claims to tell a (baseless) story that somehow Google is the inventor and owner

23  of Sonos's 2011 patents based on an after-the-fact and inapplicable 2013 agreement.  The effect

24  of this belated maneuvering, whether intended or not, will be to undermine the Court's patent

25  showdown with these untimely and transparently unfounded new claims.  Sonos urges the Court

26  to reject this result and deny Google's motion to add these unrelated state-law claims to this

27  patent-showdown case.  *See Loehr v. Ventura County Cmty. Coll. Dist.*, 743 F.2d 1310, 1320

28  (9th Cir. 1984) (upholding district court's denial of motion to amend where claims sought to be

SONOS'S OPP. TO GOOGLE'S MTN FOR
LEAVE TO FILE SEC AMEND COMPL.
CASE NO. 3:20-CV-06754-WHA

added "would have substantially complicated and delayed the case for new discovery, responsive pleadings, and considerations of state law").

**D.    Google's Conversion Claim Is Not Legally Proper**

Conversion is not a proper claim for the facts that Google has alleged.  Conversion does not apply to intangible intellectual property, like patents, that is already covered under federal law.  *See Innospan Corp. v. Intuit, Inc.*, No. 10-cv-4422-WHA, 2011 WL 856265, at *4 (N.D. Cal. Mar. 9, 2011) (Alsup, J.) ("California cases addressing the application of the conversion tort to intangible intellectual property have suggested that this theory should not be expanded to displace other, more suitable law."); *Tethys Bioscience, Inc. v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C.*, No. 09-cv-5115, 2010 WL 2287474, at *8 (N.D. Cal. June 4, 2010) (dismissing claim for conversion of patent applications because such a claim "would implicate federal patent law.").

Google's conversion claim is a veiled attempt at using an ill-defined state-law tort to supplant well-defined federal "improper inventorship" law under 35 U.S.C. § 102(f) and skirt Google's heightened evidentiary burden.  This provision of the United States Code provides that "A person shall be entitled to a patent unless . . . he did not himself invent the subject matter sought to be patented."  35 U.S.C. § 102(f) (pre-AIA); *see also In re VerHoef*, 888 F.3d 1362, 1367–68 (Fed. Cir. 2018), *as amended* (May 7, 2018) ("This provision makes the naming of the correct inventor or inventors a condition of patentability; failure to name them renders a patent invalid."); *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1349 (Fed. Cir. 1998) ("[I]f nonjoinder of an actual inventor is proved by clear and convincing evidence, a patent is rendered invalid.") (cleaned up); *Hess v. Advanced Cardiovascular Sys., Inc.*, 106 F.3d 976, 980 (Fed.Cir.1997) ("the burden of showing misjoinder or nonjoinder of inventors is a heavy one and must be proved by clear and convincing evidence.").

Moreover, as explained above, Google's conversion claim, like its breach claims, is premised on whether there is written description support for the "remote playback queue" limitation in the '033 patent specification.  As an initial matter, the conversion claim must fail because Google does not even allege, let alone plead with factual allegations, that the '033 patent

16

claims lack written description support.  Taking the question head on, however, demonstrates that the claims are futile no matter the outcome.  For instance, if there is written description support, then there can be no conversion because the 2011 specification predates the 2013 CIA, and Google's purported 2013 invention of "cloud queue" (even if credited) cannot supplant Sonos's 2011 invention of it.  If somehow there is not support, then the '033 patent claims containing the "remote playback queue" are invalid under 35 U.S.C. § 112 and there is nothing to convert.  Either way, this issue too is controlled by federal patent law, demonstrating that conversion has no place in this case.

**VI.    CONCLUSION**

As previously explained, Google's breach and conversion claims must be plausible to survive futility and a motion to dismiss.  They are not for any and all of the forgoing reasons.  Accordingly, Sonos respectfully asks the Court to deny Google's motion with respect to the Eleventh, Twelfth, and Thirteenth counts (and their supporting allegations) in the proposed Second Amended Complaint.

Dated:  November 30, 2021

ORRICK HERRINGTON & SUTCLIFFE LLP
*and*
LEE SULLIVAN SHEA & SMITH LLP

By: */s/ Alyssa Caridis*
Alyssa Caridis

*Attorneys for Sonos, Inc.*

SONOS'S OPP. TO GOOGLE'S MTN FOR
LEAVE TO FILE SEC AMEND COMPL.
CASE NO. 3:20-CV-06754-WHA