QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Charles K. Verhoeven (Bar No. 170151)
  charlesverhoeven@quinnemanuel.com
  Melissa Baily (Bar No. 237649)
  melissabaily@quinnemanuel.com
  Lindsay Cooper (Bar No. 287125)
  lindsaycooper@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:    (415) 875-6600
Facsimile:    (415) 875-6700

Attorneys for GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| GOOGLE LLC, <br><br> Plaintiff, <br><br> vs. <br><br> SONOS, INC., <br><br> Defendant. | CASE NO. 3:20-cv-06754-WHA <br><br> **REPLY IN SUPPORT OF GOOGLE LLC'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT** <br><br> Date:     December 23, 2021 <br> Time:     8:00 a.m. <br> Location: Courtroom 12, 9th Floor <br> Judge:    Hon. William Alsup <br><br> Complaint Filed: September 28, 2020 |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................................1

II. ARGUMENT ...............................................................................................................................1

    A. Sonos Has Not Made A "Strong Showing" That Google's Proposed Amendments Are Futile ..........................................................................................2

        1. Google Has Plead Facts That Would Constitute A Valid Claim For Breach And Conversion ................................................................................2

        2. Google's Claims Are Not Barred By The Statute Of Limitations .................7

        3. Intellectual Property Can Be Converted.........................................................9

    B. Sonos Has Not Made A "Strong Showing" That Google Unduly Delayed .............12

III. CONCLUSION ..........................................................................................................................14

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Advanced Micro Devices, Inc. v. Samsung Electronics Co., Ltd.*,
   No. C 08–986 SI, 2009 WL 1396256 (N.D. Cal. May 18, 2009) ............................................... 2

*Ali v. Fasteners for Retail, Inc.*,
   544 F. Supp. 2d 1064 (E.D. Cal. 2008) ................................................................................... 10

*AmerisourceBergen Corp. v. Dialysist W., Inc.*,
   465 F.3d 946 (9th Cir. 2006) .................................................................................................... 13

*Application of Holmen*,
   347 F.2d 852 (C.C.P.A. 1965) .................................................................................................. 4

*Armas v. USAA Casualty Ins. Co.*,
   No. 5:17-cv-06909-EJD, 2019 WL 3323057 (N.D. Cal. July 24, 2019) ..................................... 2

*Baker v. FirstCom Music*,
   No. CV1608931VAPJPRX, 2018 WL 3583237 (C.D. Cal. Mar. 15, 2018) ............................... 9

*Boon Rawd Trading Int'l Co. v. Paleewong Trading Co.*,
   688 F. Supp. 2d 940 (N.D. Cal. 2010) ..................................................................................... 10

*Chadam v. Palo Alto Unified Sch. Dist.*,
   No. C 13-4129 CW, 2014 WL 325323 (N.D. Cal. Jan. 29, 2014) ............................................ 11

*Ctr. for Biological Diversity v. Veneman*,
   394 F.3d 1108 (9th Cir. 2005) ............................................................................................. 2, 3

*Di Wen v. Greenpoint Mortgage Funding, Inc.*,
   No. 21-cv-7142, 2021 WL 5449048 (N.D. Cal. Nov. 22, 2021) ........................................... 7, 8

*Dong Ah Tire & Rubber Co., Ltd. v. Glasforms, Inc.*,
   No. C 06–3359 JF, 2009 WL 667171 (N.D. Cal. Mar. 10, 2009) .............................................. 3

*Downing v. Mun. Court*,
   88 Cal. App. 2d 345 (1948) ..................................................................................................... 10

*Eminence Capital LLC v. Aspeon, Inc.*,
   316 F.3d 1048 (9th Cir. 2003) .............................................................................................. 1, 2

*Environ Prod., Inc. v. Furon Co.*,
   No. CIV.A. 95-7209, 1998 WL 961367 (E.D. Pa. Dec. 15, 1998) ........................................... 11

*Finjan, Inc. v. Juniper Networks, Inc.*,
   No. C 17-05659 WHA, 2018 WL 905909 (N.D. Cal. Feb. 14, 2018) ........................................ 9

*Fox v. Ethicon Endo-Surgery, Inc.*,
   35 Cal. 4th 797 (2005) ............................................................................................................... 8

*Fujifilm Corp. v. Motorola Mobility LLC*,
   No. 12–cv–03587–WHO, 2014 WL 2730724 (N.D. Cal. June 16, 2014) .................................. 2

*Gaby's Bags, LLC v. Mercari, Inc.*,
   No. C 20-00734 WHA, 2020 WL 4464897 (N.D. Cal. Aug. 3, 2020) .................................... 2, 3

*Hynix Semiconductor Inc. v. Toshiba Corp.*,
   No. C–04–04708 VRW, 2006 WL 3093812 (N.D. Cal. Oct. 31, 2006) ..................................... 1

*Infuturia Glob. Ltd. v. Sequus Pharms., Inc.*,
   No. C 08-4871 SBA, 2009 WL 440477 (N.D. Cal. Feb. 23, 2009) .......................................... 10

*Innospan Corp. v. Intuit, Inc.*,
   No. 10-cv-4422-WHA, 2011 WL 856265 (N.D. Cal. Mar. 9, 2011) ........................................ 11

*Kremen v. Cohen*,
   337 F.3d 1024 (9th Cir. 2003) ................................................................................................. 10

*Kyko Glob., Inc. v. Bhongir*,
   No. 20-cv-4136, 2020 WL 7319360 (N.D. Cal. Dec. 11, 2020) ................................................ 8

*MasterObjects, Inc. v. Amazon.com, Inc.*,
   No. C 20-08103 WHA, 2021 WL 4685306 (N.D. Cal. Oct. 7, 2021) ........................................ 9

*Memry Corp. v. Kentucky Oil Tech., N.V.*,
   No. C-04-03843 RMW, 2005 WL 8162558 (N.D. Cal. Apr. 8, 2005) ........................................ 9

*Miller v. Rykoff-Sexton, Inc.*,
   845 F.2d 209, 214 (9th Cir. 1988) ............................................................................................. 2

*Morongo Band of Mission Indians v. Rose*,
   893 F.2d 1074 (9th Cir. 1990) ................................................................................................... 1

*N. Star Media, LLC v. Winogradsky-Sobel*,
   No. CV 11-466 PSG(CWX), 2011 WL 13220157 (C.D. Cal. May 23, 2011) ........................... 9

*Netbula, LLC v. Distinct Corp*,
   212 F.R.D. 534 (N.D. Cal. 2003) .............................................................................................. 2

*Norgart v. Upjohn Co.*,
   21 Cal. 4th 383 (1999) .............................................................................................................. 8

*Oregon Health & Sci. Univ. v. Vertex Pharms., Inc.*,
   233 F. Supp. 2d 1282 (D. Or. 2002) ........................................................................................ 11

*Pernix Ireland Pain DAC v. Alvogen Malta Operations Ltd.*,
   323 F. Supp. 3d 566 (D. Del. Aug. 24, 2018) ........................................................................... 4

*Prism Techs. LLC v. Sprint Spectrum L.P.*,
   757 Fed. App'x 980 (Fed. Cir. 2019) ..................................................................................... 4, 5

*Protego Networks, Inc. v. Daniel Zenchelsky*,
   No. C 05-00464 MJJ, 2005 WL 8177596 (N.D. Cal. Oct. 11, 2005) .............................. 9, 10, 11

*Ross v. AT&T Mobility, LLC*,
  No. 19-cv-06669-JST, 2020 WL 9848733 (N.D. Cal. 2020) ......................................................... 2

*Rustico v. Intuitive Surgical, Inc.*,
  424 F. Supp. 3d 720 (N.D. Cal. 2019) ....................................................................................... 8

*Stark v. Advanced Magnetics, Inc.*,
  119 F.3d 1551 (Fed. Cir. 1997) ................................................................................................ 12

*Terarecon, Inc. v. Fovia, Inc.*,
  No. C 05-4407 CW, 2006 WL 1867734 (N.D. Cal. July 6, 2006) ............................................ 10

*Tethys Bioscience, Inc. v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C.*,
  No. 09-cv-5115, 2010 WL 2287474 (N.D. Cal. June 4, 2010) ................................................. 11

*Valenzuela v. Best-Line Shades, Inc.*,
  No. 19-cv-07293-JSC, 2020 WL 4039134 (N.D. Cal. July 17, 2020) ........................................ 2

**Statutory Authorities**

35 U.S.C. § 102(f) ............................................................................................................................ 11

35 U.S.C. § 112 ............................................................................................................................ 3, 4

35 U.S.C. § 256 ............................................................................................................................... 12

**Rules and Regulations**

Fed. R. Civ. P. 8(a)(3) ....................................................................................................................... 4

Local Rule 5-1 ................................................................................................................................ 16

-iv-   Case No. 3:20-cv-06754-WHA
REPLY IN SUPPORT OF GOOGLE LLC'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT

## I. INTRODUCTION

Google seeks leave to file a Second Amended Complaint ("SAC") adding claims for (1) declaratory judgment of non-infringement of U.S. Patent No. 10,848,885, (2) declaratory judgment of invalidity for all asserted patents, (3) breach of contract and the implied covenant of good faith and fair dealing, and (4) conversion. *See* Dkt. Nos. 80 ("Mot."); 80-2 ("SAC"). Sonos only opposes with respect to the breach and conversion claims.

In opposition, Sonos does not even attempt to argue that it would be prejudiced by Google's proposed amendments. This is a critical concession because this court has ruled that "it is the consideration of prejudice to the opposing party that carries the greatest weight." *Hynix Semiconductor Inc. v. Toshiba Corp.*, No. C–04–04708 VRW, 2006 WL 3093812, at *1 (N.D. Cal. Oct. 31, 2006). Absent prejudice, Sonos must make a "strong showing" on one or more of the other *Foman* factors in order to overcome the presumption that leave to amend is proper. *Eminence Capital LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). But Sonos only argues two of the *Foman* factors—the alleged futility of Google's proposed amendments and undue delay—and its arguments fall far short of the "strong showing" that is required.

## II. ARGUMENT

Both parties agree that leave to amend a pleading "shall be freely given when justice so requires" and that the rule freely granting leave is to be "applied with extreme liberality." *See Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990); Dkt. No. 81 ("Opp.") at 9. Of the four *Foman* factors relevant to a motion for leave to amend (undue delay, prior failures to cure, prejudice, and futility), Sonos does not make any argument at all regarding two of them. Mot. at 10 (listing *Foman* factors). Sonos does not argue that there has not been any prior failure to cure. Sonos also does not argue that it will be prejudiced by Google's proposed amendments. Accordingly, unless Sonos can make a "**strong showing** of . . . the remaining . . . factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Eminence Capital*, F.3d at 1052 (emphasis added); *Hynix Semiconductor*, 2006 WL 3093812, at *1 ("Not all of the [*Foman*] factors merit equal weight. As [the Ninth Circuit] and others have held, it is the

consideration of prejudice to the opposing party that carries the greatest weight.") (citing *Eminence Capital*, 316 F.3d at 1051).

### A. Sonos Has Not Made A "Strong Showing" That Google's Proposed Amendments Are Futile

#### 1. Google Has Plead Facts That Would Constitute A Valid Claim For Breach And Conversion

Sonos contends that Google's proposed amendments would be "futile." Opp. at 11-16. But "a proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Ross v. AT&T Mobility, LLC*, No. 19-cv-06669-JST, 2020 WL 9848733, at *4 (N.D. Cal. 2020) (citing *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988)). In analyzing futility, "the Court must accept the factual allegations in the proposed amended complaint as true and construe them in the light most favorable to Plaintiffs." *Valenzuela v. Best-Line Shades, Inc.*, No. 19-cv-07293-JSC, 2020 WL 4039134, at *2 (N.D. Cal. July 17, 2020); *see also Gaby's Bags, LLC v. Mercari, Inc.*, No. C 20-00734 WHA, 2020 WL 4464897, at *3 (N.D. Cal. Aug. 3, 2020) (Alsup, J.) (same). Further, where, as here, the party opposing leave fails to establish prejudice, courts have concluded that a showing of ***futility alone may not be enough to bar amendment***. *Advanced Micro Devices, Inc. v. Samsung Electronics Co., Ltd.*, No. C 08–986 SI, 2009 WL 1396256, *2 (N.D. Cal. May 18, 2009) ("The Court agrees with Samsung that not all *Foman* factors are equal and that 'it is the consideration of prejudice to the opposing party that carries the greatest weight.' Futility alone therefore might not be sufficient to bar Samsung from amending its pleadings.") (internal citations omitted).

Because of the extremely liberal standard that applies to motions for leave to amend, "'***[d]enial for leave to amend for futility is rare.***'" *Gaby's Bags*, 2020 WL 4464897, at *3 (citing *Netbula, LLC v. Distinct Corp*, 212 F.R.D. 534, 39 (N.D. Cal. 2003)) (Alsup, J.) (emphasis added); *see also Ross*, 2020 WL 9848733, at *4 (same); *Armas v. USAA Casualty Ins. Co.*, No. 5:17-cv-06909-EJD, 2019 WL 3323057, at *3 (N.D. Cal. July 24, 2019) (same); *Fujifilm Corp. v. Motorola Mobility LLC*, No. 12–cv–03587–WHO, 2014 WL 2730724 (N.D. Cal. June 16, 2014) (same). "Moreover, if it is 'not clear beyond doubt that amendment of [a] complaint would be futile,' a court should permit a party to amend its complaint." *Ross*, 2020 WL 9848733, at *4 (citing *Ctr. for*

1  *Biological Diversity v. Veneman*, 394 F.3d 1108, 1114 (9th Cir. 2005)); *see also Gaby's Bags*, 2020
2  WL 4464897, at *3 (Alsup, J.).  As an example of the burden Sonos faces with its futility argument,
3  this Court has declined to find futility even where the theory alleged appeared "both logically
4  strained and factually problematic" and the proposed claim "appears to have a tenuous basis in the
5  record and to be fraught with contradictions." *Dong Ah Tire & Rubber Co., Ltd. v. Glasforms, Inc.*,
6  No. C 06–3359 JF, 2009 WL 667171, at *2 (N.D. Cal. Mar. 10, 2009) (finding no futility but denying
7  leave on the basis of prejudice and undue delay after close of discovery).  Here, Google's theories
8  are logically and factually sound and far from futile.

It is undisputed that: (i) the parties collaborated from 2013 to 2015 to integrate cloud queue functionality into Google Play Music (SAC ¶¶ 11, 18, 24); (ii) as part of the collaboration, Sonos entered into a Content Integration Agreement ("CIA"), agreeing both that Google owns ███████████████████████████████████████████████████████ (*id.* ¶¶ 23, 30, 98); (iii) the development work done by Google in creating the ███████████████ " included "Google provid[ing] Sonos with substantial assistance, including access to Google's engineers and knowledge of Google's products and technology, including products and technology at issue in this action" (*id.* ¶¶17-21); and (iv) Sonos is now accusing "Google technologies that arise out of or are related to work done by Google as part of the collaboration" (*id.* ¶¶ 23-29, 32-34).

Accepting these factual allegations as true and construing them in the light most favorable to Google, Google has clearly set out a plausible claim that Sonos violated the CIA at least by claiming that its patents cover (*i.e.*, "████████████") the accused functionality (*i.e.*, ████████████").  Sonos's arguments to the contrary are without merit.

<u>First,</u> Sonos contends that "Google's argument runs directly counter to the black letter law that the claims of a patent must be supported by its specification." Opp. at 12.  With this argument Sonos assumes that a patentee cannot ever draft claims that cover subject matter not disclosed in the specification.  But if Sonos were correct, then a patent could never be found invalid under 35 U.S.C.

1  § 112 for lack of written description support.  That is incorrect, of course, because patentees
2  routinely claim rights in inventions that are not supported by the written description as Sonos has
3  done here.  *Pernix Ireland Pain DAC v. Alvogen Malta Operations Ltd.*, 323 F. Supp. 3d 566 (D.
4  Del. Aug. 24, 2018) (finding that the invention claimed is "far broader than the disclosures");
5  *Application of Holmen*, 347 F.2d 852, 855 (C.C.P.A. 1965) ("the invention claimed is broader than
6  the invention described in the written description").[1]  While these claims may ultimately be
7  invalidated, it does not change the fact that Sonos has claimed (and is currently claiming) a right in
8  the development work arising from the collaboration.  Nor is there any dispute that Sonos added the
9  concept of a "remote playback queue" *after* the CIA was executed and after Google disclosed the
10 concept to Tad Coburn (the named inventor on the patents).  Mot. at 8.

11        Second, Sonos argues "there can be no breach or conversion from an invalid patent that holds
12 no rights or legal effect."  Opp. at 13.  But Google's breach and invalidity arguments are not
13 mutually exclusive.  Google can succeed on its breach claims if the jury finds that Sonos breached
14 the CIA by claiming ▇▇▇▇ in the development work arising from the collaboration; the CIA
15 does not require that the claimed right be a valid right.  SAC ¶¶ 24-34.  Further, to the extent the
16 Court finds any tension between Google's claims, Google is free to plead its claims in the
17 alternative.  *See* Fed. R. Civ. P. 8(a)(3).

18        The sole case Sonos cites does not support its position.  *Id*. (citing *Prism Techs. LLC v. Sprint*
19 *Spectrum L.P.*, 757 Fed. App'x 980, 987-88 (Fed. Cir. 2019)).  In *Prism*, a jury found that Sprint
20 infringed patents assigned to Prism.  *Id*. at 982.  Less than a week after the verdict, the Federal
21 Circuit invalidated the same patents in a separate case.  *Id*. 982-83.  Sprint then sought to set aside
22 the "unexecuted judgment of patent liability" under Rule 60(b) and the district court granted the
23 relief.  *Id*. at 982, 987.  The Federal Circuit affirmed, explaining that the invalidation of claims

---

[1] Sonos claims that Google's SAC fails to plead that there is a lack of written description support for the "remote playback queue" limitation. Opp. at 12. But Google's SAC clearly states that Sonos's patents were devoid of any notion of a remote playback queue until 2019 when Sonos added it to the claims. SAC ¶ 31 ("Sonos did not introduce the alleged notion of a cloud-based queue into its patents until 2019."). Google has also consistently asserted invalidity based on a lack of written description for the remote playback queue limitation in its Invalidity Contentions, both in the contentions served prior to the transfer of this case, and those served after transfer. *See* Exs. 1, 2.

"'extinguishes the patent's claims, akin for present purposes to a cancellation of those claims, after which they 'can no more be the foundation for the assertion of a right.'" *Id*. at 987.  Thus, *Prism* stands for the simple proposition that once a patent is deemed invalid, it cannot be infringed.  *Prism* does not suggest that the invalidation of a patent can retroactively cure prior actions that give rise to liability or breach.[2]

Third, Sonos argues that Google's claims have "no legitimacy for the '615 patent" because "Google pleads no facts in support of how the '615 patent is implicated by the CIA."  Opp. at 13.  Initially, Sonos's argument, even if accepted, cannot establish futility.  Google can prevail on its claims even if its claims are limited to the '033 patent.  *See* SAC ¶¶ 97-103.  Thus, for purposes of Google's motion for leave, the Court need not address whether Google's claims implicate one or both of the patents because at a minimum Google's claims implicate the '033 patent.

Regardless, Google has pled facts demonstrating that the '615 patent is also implicated by the CIA.  Google's SAC pleads that Google provided Sonos with access to its engineers and technology, and that Sonos breached the CIA by claiming a "right" in that technology by accusing Google Play Music and cloud queue of infringing the '615 patent.  *See* SAC ¶ 21, 23 ("Cloud Queue, the functionality that Sonos accuses of infringing the '615 and '033 patents, arises from or relates to the ▮▮▮▮▮▮▮▮▮▮…'"), ¶¶ 32-33.  To the extent there is any dispute that Sonos is accusing the technology Google developed pursuant to the CIA, Sonos's own copying allegations resolve the issue.  For both the '615 and '033 patents, Sonos accuses Google of (i) seeking to collaborate with Sonos in order to "gain[] access to Sonos's engineers, products, and technology" (Ex. 3 ¶ 11); (ii) leveraging Google's non-public "access" – obtained through the collaboration – to copy Sonos' technology (*id*. ¶¶ 11-12), and (iii) infringing Sonos' patents by leveraging the non-public "knowledge it had gleaned from Sonos" during the collaboration (*id*. ¶ 14).   Sonos's own

---

[2]  Sonos's interpretation of *Prism* makes little sense.  Consider a scenario where Party A enters into an agreement in which it covenants not to sue Party B on Patent X.  When Party A later violates that agreement by suing Party B on Patent X, Sonos's interpretation would preclude the Court from finding a breach of the agreement if Party B were successful in invalidating Patent X or even from proceeding in the alternative with a claim for invalidity of Patent X.

allegations—whether true or not—therefore lay an adequate basis for Google's claims for breach and conversion.

Fourth, faced with its counsel's representation to the Court that the '033 and '615 patents are directed to the "cloud queue" technology, Sonos now claims that representation was "inadvertent" and "mistaken." Opp. at 13-14. According to Sonos, "[t]he '033 and '615 patents are, and have consistently been referred to by Sonos as 'direct control' patents." *Id*. at 13. But in fact, the phrase "direct control" does not appear anywhere in Sonos's original complaint, which instead refers to the '033 and '615 patents as "inventions" directed to "how to stream music from a cloud-based service." Ex. 3 ¶ 10. In reality, Sonos only began referring to these patents as "direct control" patents *after* Google argued that the CIA bars Sonos from claiming rights in the cloud queue technology. Indeed, in support of its assertion that Sonos has "consistently" referred to the '033 and '615 patents as "direct control" patent, Sonos only cites to (1) a 2021 claim construction brief Sonos filed after it learned of Google's CIA defense (*Sonos, Inc. v. Google LLC*, W.D Tex. Case No. 6:20-cv-881 / N.D. Cal. Case No. 3:21-cv-07559-WHA, Dkt. No. 60 at 2 (W.D. Tex. Sept. 29, 2020) (hereinafter, "Texas Action")), and (2) certain pre-suit negotiations that make no mention of the '033 and '615 patents. *Id*. at 13-14. In any event, Sonos's recent decision to change the way it refers to these patents—from "cloud queue" to "direct control"—cannot carry the day. Regardless of how it now refers to these patents, Sonos is using them to claim ownership in cloud queue technology that relates to and arises out of the parties' collaboration. SAC ¶¶ 24-34.

Fifth, Sonos incorrectly claims that Judge Albright found the CIA irrelevant to Google's breach and conversion claims. Opp. at 15. But Google's breach and conversion claims were not even before Judge Albright.[3] Judge Albright stated his belief that ***Sonos's*** infringement claims "are not related to the [CIA] because their resolution does not require[] the application of various provisions of the [CIA]." Texas Action, Dkt. No. 97 at 9.[4] In fact, Judge Albright recognized that

---

[3] As discussed in Section II.B, Google did not assert its breach of contract and conversion claims in Texas because of the mandatory forum selection clause in the CIA.

[4] Needless to say, Google disagrees with Judge Albright's conclusion that Sonos's infringement claims are not related to the CIA.

the CIA "functions as 'one of the many bricks in the evidentiary wall' that Google seeks to build" and "may be used as evidence at trial," even without Google having plead breach and conversion claims. *Id*. at 10. Accordingly, Sonos's reliance on Judge Albright's decision is misplaced, and Sonos's assertion that portions of the decision were "left undisturbed" by the Federal Circuit is factually inaccurate. Opp. at 9. The Federal Circuit held that Judge Albright's decision amounted to an abuse of discretion, and vacated Judge Albright's decision in full. Texas Action, Dkt. No. 116 at 26 ("The district court's order denying Google's motion to transfer is vacated.").

Sixth, citing to a number of unrelated patents, Sonos claims that it came up with the cloud queue idea before Google. Opp. at 8. Sonos's argument, however, misunderstands the standard that applies at this stage of the proceedings. Google has asserted claims for breach of contract and conversion, and the only issue at this stage is whether Google has sufficiently plead those claims. In support of its claims, Google has alleged that, as between Sonos and Google, Google conceived of the cloud queue idea and disclosed it to Sonos during their collaboration. SAC ¶¶ 25, 27, 31-34. The Court must accept these allegations as true. Even if considered, the different patents with different inventors that Sonos points to do not defeat Google's claims because they do not demonstrate that Sonos did not breach the CIA.

Finally, Sonos attempts to lump Google's claim for breach of the implied covenant of good faith and fair dealing together with its other futility arguments. But Sonos fails to show how its arguments even apply to that cause of action. The parties executed the CIA because "Sonos asked for Google's assistance to integrate with Google's popular Play Music Service." *Id.* ¶¶ 17-18, 104-08. Sonos's infringement claims, which accuse the very same technology Google developed, are clearly contrary to the purpose of the CIA, which attempted to ensure that Google would not face arguments that its own developments were infringing. Thus, Google has clearly plead facts sufficient to establish a claim for breach of the implied covenant of good faith and fair dealing—whether or not there is also a breach of the contract or conversion. *Id*.

### 2.   Google's Claims Are Not Barred By The Statute Of Limitations

Sonos is correct that a three-year statute of limitations applies to Google's conversion claim and a four-year statute of limitations applies to Google's claims for breach of contract and breach

of the implied covenant of good faith and fair dealing. Opp. at 17 (citing *Di Wen v. Greenpoint Mortgage Funding, Inc.*, No. 21-cv-7142, 2021 WL 5449048, at *2 (N.D. Cal. Nov. 22, 2021); *Kyko Glob., Inc. v. Bhongir*, No. 20-cv-4136, 2020 WL 7319360, at *2 (N.D. Cal. Dec. 11, 2020)). However, Google's breach and conversion claims are not barred by the statutes of limitations because the statutes did not begin running until September 2020 when Sonos first provided notice of Google's alleged infringement of the '033 and '615 patents.

A statute of limitations begins to run when a cause of action "accrues." *See* Cal. Civ. Proc. § 312. Generally, "a cause of action accrues at 'the time when the cause of action is complete with all of its elements.'" *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 806 (2005) (quoting *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 389 (1999)). However, the "discovery rule modifies this baseline in certain circumstances." *Rustico v. Intuitive Surgical, Inc.*, 424 F. Supp. 3d 720, 737 (N.D. Cal. 2019). The discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Fox*, 35 Cal. 4th at 807.

In this case, Google had no reason to suspect that Sonos was breaching the CIA or converting its cloud queue technology until Sonos provided notice of alleged infringement on September 28, 2020. *See* SAC ¶ 4. Until Sonos provided Google with a draft complaint alleging infringement of the '033 and '615 patents on that date, Google did not know that Sonos would try to read the '033 and '615 patents to cover the cloud queue technology.

Sonos's argument is also logically flawed because Google could not have learned of the claims of the '033 patent until recently. The '033 patent did not issue until September 15, 2020. *See* Dkt. No. 81-1 ("Richter Decl.") at 8 ('033 patent, field 45, "Date of Patent"). Further, the application that issued as the '033 patent was not published until October 31, 2019. *See id.* ('033 patent, field 65, "Prior Publication Data"). In other words, Google could not have learned of the '033 patent until September 15, 2020, and even the application that led to the '033 patent was confidential and thus unavailable to Google and other members of the public until approximately two years ago.

In the alternative, Sonos argues that Google was on notice of ***related*** patents. Opp. at 16-17. But while Sonos purported to provide Google with notice that it was infringing eighty-six

patents in Sonos's portfolio between 2016 and 2018, Sonos never mentioned the '033 and '615 patents in those communications.  *See* Richter Decl. at 11-20, 40-79.  Sonos suggests that Google should have learned of its causes of action based on Sonos's inclusion of U.S. Patent No. 9,860,589 ("the '589 patent"), which Sonos claims is a family member of the '033 and '615 patents.  Opp. at 16-17.  But the '589 patent and the application from which it issued have different claims than the '033 and '615 patents, and are not even within the priority chain of the '033 and '615 patents.  *See* Richter Decl. at 5 ('615 patent, field 63, "Related U.S. Application Data," including no mention of '589 patent), 8 (same for '033 patent).  And as this Court has consistently held, "[a]llegations of general knowledge of a patent family, or a patent portfolio, are insufficient to allege specific knowledge of a particular patent."  *MasterObjects, Inc. v. Amazon.com, Inc.*, No. C 20-08103 WHA, 2021 WL 4685306, at *3 (N.D. Cal. Oct. 7, 2021); *see also Finjan, Inc. v. Juniper Networks, Inc.*, No. C 17-05659 WHA, 2018 WL 905909, at *3 (N.D. Cal. Feb. 14, 2018) ("generally discussing purported infringement of [Patent Owner's] patent portfolio hardly translates to specifically alerting [Alleged Infringer] to infringement of the patents-in-suit").  Accordingly, Google's breach and conversion claims did not and could not have accrued until September 2020.

### 3. <u>Intellectual Property Can Be Converted</u>

Sonos incorrectly asserts that California does not recognize a cause of action for the conversion of intellectual property.  *See* Opp. at 7, 21.  Contrary to Sonos's position, the "argument that intellectual property can never be converted is not supported by case law in California or the Ninth Circuit."  *N. Star Media, LLC v. Winogradsky-Sobel*, No. CV 11-466 PSG (CWX), 2011 WL 13220157, at *7 (C.D. Cal. May 23, 2011).  In fact, it is black letter law that intellectual property can be the subject of a conversion claim in California.  *See, e.g.*, *Baker v. FirstCom Music*, No. CV1608931VAPJPRX, 2018 WL 3583237, at *32 (C.D. Cal. Mar. 15, 2018) ("California recognizes conversion claims for intellectual property"); *Protego Networks, Inc. v. Daniel Zenchelsky*, No. C 05-00464 MJJ, 2005 WL 8177596, at *4 (N.D. Cal. Oct. 11, 2005) ("under California law, intangible property, including intellectual property, may serve as the basis for a conversion claim"); *Memry Corp. v. Kentucky Oil Tech., N.V.*, No. C-04-03843 RMW, 2005 WL

8162558, at *9 n.11 (N.D. Cal. Apr. 8, 2005) ("California recognizes a cause of action for the conversion of intellectual property").

To establish a claim for conversion under California law, a plaintiff must show "(1) ownership or right to possession of personal property; (2) a defendant's wrongful interference with the claimant's possession; and (3) damage to the claimant." *Boon Rawd Trading Int'l Co. v. Paleewong Trading Co.*, 688 F. Supp. 2d 940, 954 (N.D. Cal. 2010). The Ninth Circuit has recognized that "[p]roperty is a broad concept that includes 'every intangible benefit and prerogative susceptible of possession or disposition.'" *Kremen v. Cohen*, 337 F.3d 1024, 1030 (9th Cir. 2003) (quoting *Downing v. Mun. Court*, 88 Cal. App. 2d 345, 350 (1948)). Accordingly, it applies a three-part test to determine whether an actionable property right exists: "First, there must be an interest capable of precise definition; second, it must be capable of exclusive possession or control; and third, the putative owner must have established a legitimate claim to exclusivity." *Id.*

Applying this standard, it is clear that Google has established an actionable property right in the cloud queue patents. The two patents that Sonos alleges cover cloud queue methods and devices are interests capable of precise definition. *See* SAC ¶¶ 110-11; *Infuturia Glob. Ltd. v. Sequus Pharms., Inc.*, No. C 08-4871 SBA, 2009 WL 440477, at *5 (N.D. Cal. Feb. 23, 2009), *aff'd*, 414 F. App'x 61 (9th Cir. 2011) (holding that "patent rights" are "property capable of being converted under California law"); *Ali v. Fasteners for Retail, Inc.*, 544 F. Supp. 2d 1064, 1072 (E.D. Cal. 2008) (finding "source code" patents to be "well defined interests"); *Terarecon, Inc. v. Fovia, Inc.*, No. C 05-4407 CW, 2006 WL 1867734, at *9 (N.D. Cal. July 6, 2006) (concluding "computer code" is a sufficiently definite property interest to support a conversion claim). Sonos's efforts to claim the cloud queue technology as its own also suggest that the technology is capable of exclusive possession. *See* SAC ¶¶ 21, 31, 111; Dkt. No. 80-4 ("CIA") at 5; *see also Protego*, 2005 WL 8177596, at *4-*5 (suggesting that intellectual property used in patent applications is capable of exclusive control); *Ali*, 544 F. Supp. 2d at 1072 ("ownership is exclusive in that Plaintiff controlled access to the information; only shared the information when it was in his economic interest; and required others, when viewing the information, to sign confidentiality agreement"). Finally, the

CIA demonstrates that Google has a legitimate claim to the cloud queue technology. *See* SAC ¶¶ 22, 23, 30, 110.

The viability of Google's conversion claim is further supported by *Protego*. In *Protego*, an executive sued his former company for conversion when he discovered that the company had applied for a patent covering technology he developed. 2005 WL 8177596, at *1-*2. The court held that the executive sufficiently stated a claim because he "alleged that [the company] used his intellectual property in their patent application without his permission, thereby causing him damage." *Id.* at *4. In this case, Google similarly asserts that Sonos used development work arising from and related to the collaboration to secure its patent claims, including by drafting claims in 2019 that purportedly cover a "remote playback queue." SAC ¶¶ 97-112.

In contrast, the cases cited in Sonos's response are distinguishable on their facts. *See* Opp. at 21. The court in *Innospan Corp. v. Intuit, Inc.*, No. 10-cv-4422-WHA, 2011 WL 856265, at *2 (N.D. Cal. Mar. 9, 2011) found that "the conversion tort does not extend to intangible intellectual property rights in trademark," not patents. In that case, the Court reasoned that the plaintiff's claim for trademark infringement under the Lanham Act was "the appropriate legal avenue for trademark infringement, not conversion." Similarly, the court in *Tethys Bioscience, Inc. v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C.*, No. 09-cv-5115, 2010 WL 2287474, at *8 (N.D. Cal. June 4, 2010) did not reject a conversion claim for patented technology. Instead, it found that "Plaintiff d[id] not state a claim of conversion based on its allegations that Defendants copied its ***patent applications***" because "[a] patent, not a patent application, grants an individual exclusivity over the invention claimed." *Id.* at *7-*8 (emphasis added). Here, the cloud queue patents have already issued and therefore *Tethys* is inapplicable.

Sonos also argues that "Google's conversion claim is a veiled attempt at using an ill-defined state-law tort to supplant well-defined federal 'improper inventorship' law under 35 U.S.C. § 102(f)." Opp. at 21. But Sonos cannot dictate Google's choice of claims; "Plaintiffs are the masters of their own complaint and are free to assert whichever claims they choose." *Chadam v. Palo Alto Unified Sch. Dist.*, No. C 13-4129 CW, 2014 WL 325323, at *6 (N.D. Cal. Jan. 29, 2014). Courts also frequently permit conversion claims to proceed in tandem with challenges to inventorship under

§ 102(f). *See Oregon Health & Sci. Univ. v. Vertex Pharms., Inc.*, 233 F. Supp. 2d 1282, 1283 (D. Or. 2002); *Environ Prod., Inc. v. Furon Co.*, No. CIV.A. 95-7209, 1998 WL 961367 (E.D. Pa. Dec. 15, 1998); *see also Stark v. Advanced Magnetics, Inc.*, 119 F.3d 1551, 1556 (Fed. Cir. 1997) (permitting conversion claim and challenge to inventorship under 35 U.S.C. § 256 to proceed in tandem).

*****

Accepting the factual allegations in the SAC as true and construing them in the light most favorable to Google, Google has set out plausible claims for breach and conversion that are not futile. The Court should grant Google's motion for leave to amend.

**B.   Sonos Has Not Made A "Strong Showing" That Google Unduly Delayed**

Sonos claims that Google unduly delayed because it did not assert its breach or conversion claims in its original Complaint, its First Amended Complaint ("FAC"), or the Texas Action. Opp. at 18-21. This argument fails to account for the timing of the original Complaint, the stay in this case, and the forum selection clause in the CIA.

Google filed its original Complaint on September 28, 2020, Sonos moved to transfer the case two weeks later, and the Court stayed the case shortly thereafter. Dkt. Nos. 1, 11, 36. Sonos does not dispute that Google did not have an opportunity to amend its Complaint while the case was stayed. *See* Opp. at 18-21. Nor does Sonos argue that the time between when the stay was lifted to the time Google moved to amend represents undue delay or lack of diligence. *Id.*

Instead, Sonos faults Google for failing to raise its breach and conversion claims "during the twelve months of litigation in Texas." Opp. at 14.[5] But as Sonos is aware, Google was unable to assert its claims in the Texas Action because the CIA includes a mandatory forum selection clause that requires disputes relating to the agreement to be litigated in California. Mot. at 8. Specifically, the CIA incorporates the following mandatory forum selection clause that provides California is the "exclusive venue" for any disputes "relating to" the CIA:

---

[5] At least six of the twelve months in Texas were devoted to venue discovery on Sonos's unsuccessful opposition to Google's motion to transfer.

> Choice of Law. This Agreement is governed by California law, excluding California's choice of law rules. FOR ANY DISPUTE RELATING TO THIS AGREEMENT, THE PARTIES CONSENT TO PERSONAL JURISDICTION IN, AND THE EXCLUSIVE VENUE OF, THE STATE AND FEDERAL COURTS OF CALIFORNIA.

Texas Action, Dkt. No. 97 at 2-3. In the Texas Action, Google consistently argued that California, not Texas, is the appropriate forum for this action in view of the CIA's forum selection clause. *Id*. Thus, Google's decision not to assert affirmative claims relating to the CIA in the Texas Action does not evidence "undue delay" or other improper motives, but rather adherence to the forum selection clause in the CIA.[6]

Sonos claims that "Google . . . led Sonos to believe that Google *did not have a breach claim against Sonos*." Opp. at 15 (emphasis in original). But the statement Sonos cites is from Sonos's counsel, not Google's counsel. *Id.* And Sonos is wrong that Google did not "correct the record, or otherwise argue that Google was advancing a breach claim of the CIA." *Id.* At the very same hearing, contrary to Sonos's counsel's assertion that "we don't have a dispute over the agreement," Google's counsel stated that "this is a dispute about the scope of the contract." Texas Action, Jul. 23, 2021 Hr'g Tr. at 28:2-4.

Sonos also suggests that Google's claims will "undermine the Court's patent showdown" by allowing Google to "tell a (baseless) story that somehow Google is the inventor and owner of Sonos's 2011 patents based on an after-the-fact and inapplicable 2013 agreement." Opp. at 15. But the story of the parties' collaboration and the CIA will almost certainly be part of any patent showdown whether Google's affirmative claims are presented or not, since Google has affirmative

---

[6] This case is distinguishable from *AmerisourceBergen Corp. v. Dialysist W., Inc*., 465 F.3d 946, 951 (9th Cir. 2006). In *Amerisource*, the Ninth Circuit affirmed an order denying plaintiff's motion for leave to amend its reply to defendant's counterclaim because fifteen months passed between the time plaintiff learned of its theory and sought leave to amend to add the theory. *Id*. at 949, 953. Unlike this case, *Amerisource* was never stayed and a forum selection clause did not preclude the plaintiff from asserting its theory. *See id*. at 949, 951-54. *Amerisource* also did not consider a motion for leave to amend a complaint. *Id*. at 951 n.3 ("We need not decide whether the district court also erred in denying AmerisourceBergen leave to amend its complaint."). It is undisputed that Google promptly filed its motion for leave after the stay in this case was lifted, and Sonos does not suggest that the short time between the lifting of the stay in this action and the filing of Google's motion for leave constitutes undue delay.

defenses to Sonos's infringement claims that are based on the CIA, including equitable estoppel, implied license, waiver, and a damages defense based on the CIA's limitation on liability. Ex. 4 at 25-28.

*****

Google did not unduly delay. Google asserted its claims in California promptly after the stay was lifted in October 2021. Google did not assert its claims in the Texas Action because the CIA's forum selection clause required such claims to be litigated in California.

### III. CONCLUSION

For the foregoing reasons, the Court should grant Google's motion for leave to file its SAC.

DATED: December 7, 2021

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  */s/ Charles K. Verhoeven*
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
Melissa Baily (Bar No. 237649)
melissabaily@quinnemanuel.com
50 California Street, 22nd Floor
Lindsay Cooper (Bar No. 287125)
lindsaycooper@quinnemanuel.com
San Francisco, California 94111-4788
Telephone:    (415) 875-6600
Facsimile:    (415) 875-6700

Attorneys for GOOGLE LLC

**CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure and Local Rule 5-1, I hereby certify that, on December 7, 2021, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system and email.

DATED: December 7, 2021

By    */s/ Charles K. Verhoeven*
        Charles K. Verhoeven