UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GOOGLE LLC,

        Plaintiff,

  v.

SONOS, INC.,

        Defendant.

No. C 20-06754 WHA

**ORDER RE GOOGLE'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

**INTRODUCTION**

Alleged infringer in this action for declaratory judgment of patent noninfringement seeks leave to file a second amended complaint. Patent owner opposes the addition of new state-law claims — breach of contract, breach of the implied covenant of good faith and fair dealing, and conversion. To the extent stated, the motion is **GRANTED IN PART AND DENIED IN PART**.

**STATEMENT**

Rekindled after a stay of nearly a year, this action is yet another pitched battle in the multi-jurisdictional war between alleged infringer Google LLC and patent owner Sonos, Inc. regarding speaker technology. With our parties already embroiled in litigation in the ITC, this district, and in Canada, France, Germany, and the Netherlands, at 12:52 p.m. on September 28, 2020, Sonos's counsel sent Google an email alerting them Sonos would be filing an eighty-seven page patent infringement complaint against the search giant, this time in the United

States District Court of the Western District of Texas, Waco Division. In an eleventh-hour bid to keep this case out of Texas, at 11:41 p.m. that same day, Google's counsel filed its own thirteen-page complaint in our district. Early the next day, Sonos filed its action as promised. *Sonos, Inc. v. Google LLC*, No. C 20-00881 ADA (W.D. Tex.) (Judge Alan D. Albright). A previous order herein stayed this case, allowing Judge Albright to rule on Google's motion to transfer, but ordered Google to amend its complaint to avoid delay in case this action wound up going forward (Dkt. No. 36 at 5).

In the Texas action, Judge Albright denied Google's transfer motion, and the parties proceeded toward a *Markman* hearing. However, the Court of Appeals for the Federal Circuit granted Google's petition for a writ of mandamus, vacated the order denying transfer and directed the district court to grant the motion to transfer to our district (Case No. C 21-07559 WHA, "TX Dkt." Nos. 97, 116). An order herein deemed the newly-transferred action related to this one, and it was accordingly assigned to the undersigned (Dkt. No. 64; TX Dkt. Nos. 122, 123). As of now, the cases remain related but not consolidated.

Now, Google moves for leave to amend its declaratory judgment complaint. Google seeks to add claims for: (1) declaratory judgment of non-infringement of U.S. Patent No. 10,848,885; (2) declaratory judgment of invalidity of all the asserted patents; (3) breach of the parties' Content Integration Agreement; (4) breach of the implied covenant of good faith and fair dealing; and (5) conversion. Sonos does not contest Google's revision of its declaratory judgment claims but argues leave to add the latter three state-law claims should be denied. This order follows full briefing and oral argument, held telephonically due to the COVID-19 pandemic.

**ANALYSIS**

Rule 15 states that leave to amend should be freely given when justice so requires. A district court will consider: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) repeated failure to cure deficiencies despite previous amendments. The touchstone of the evaluation is prejudice to the opposing party and, absent prejudice or a strong showing for another factor, a presumption exists under Rule 15 in favor

of granting leave to amend. Delay alone cannot justify denying leave to amend, but futility can. District courts will often omit the fifth factor when inapplicable. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003); *Hurn v. Ret. Fund Tr. of Plumbing, Heating and Piping Indus. of S. Cal.*, 648 F.2d 1252, 1254 (9th Cir. 1981).

On futility, "[a] motion to make an amendment is to be liberally granted where from the underlying facts or circumstances, the plaintiff may be able to state a claim." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (quotation omitted). As in a motion to dismiss, an amended complaint properly states a claim when the factual allegations permit a reasonable inference, not just speculation, that defendants are liable for the misconduct alleged. All factual allegations rate as true, but legal conclusions merely couched as fact may be disregarded. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The three state-law claims in Google's proposed second amended complaint arose from the parties' collaboration on "cloud queue technology" between 2013 and 2015. Pursuant to the parties' Content Integration Agreement ("CIA"), Google retained all ownership rights for any intellectual property arising out of the collaboration. Google alleges that during the collaboration it shared with Sonos the idea (as well as technical details and API designs) for a music queue unfettered from any specific playback device and maintained primarily in the cloud. But Sonos, in contravention of the agreement, allegedly incorporated this technology that rightfully belonged to Google into its U.S. Patents Nos. 9,967,615 and 10,779,033 (Proposed Sec. Amd. Compl. ¶¶ 21–34).

Sonos does not contend that Google added these allegations in bad faith, that amendment would prejudice Sonos, or that Google has repeatedly failed to cure deficiencies in its pleadings (Opp. 1–2). Rather, Sonos focuses on undue delay, including the statute of limitations, and futility, including whether a patent can be the subject of a conversion claim.

### 1. THE STATUTE OF LIMITATIONS AND UNDUE DELAY.

Google contends it brought its motion promptly after the stay on this action was lifted. Sonos, in opposition, argues that the new claims are time-barred and, even if permissible under the relevant statute of limitations, Google improperly delayed in bringing claims regarding an agreement signed in 2013.

We start with whether the new claims are time barred. The parties agree a three-year statute of limitations applies to Google's conversion claim while a four-year cap is placed on its breach of contract and breach of the implied covenant of good faith and fair dealing claims. *See* Cal. Code Civ. Proc. §§ 337(a), 338(c). Generally, the statute of limitations will begin to run after the cause of action accrues, "when the claim is complete with all of its elements." *Slovensky v. Friedman*, 142 Cal. App. 4th 1518, 1528–29 (Cal. Ct. App. 2006), *as modified* (citation omitted); Cal. Code Civ. Proc. § 312. But accrual may be postponed in certain circumstances, such as until the plaintiff discovers, or has reason to discover, the claim. *Slovensky*, 142 Cal. App. 4th at 1529; *see also* 3 Witkin Cal. Proc., Actions § 543 (6th ed., 2021).

Google says that "it had no reason to suspect that Sonos was breaching the CIA or converting its cloud queue technology until Sonos provided notice of alleged infringement on September 28, 2020" (Reply Br. 8). Sonos argues an October 2016 presentation put Google on notice of its state-law claims. The presentation referenced U.S. Patent Application No. 14/520,566, which has the same specification as the '033 and '615 patents. The presentation also included a slide on U.S. Patent No. 9,363,255 and specifically used the phrase "cloud queue" (Opp. 12–13). Upon this record, this order cannot conclude that the October 2016 presentation marked the point where Google discovered, or should have discovered, that Sonos had violated the CIA and converted the cloud queue technology. Generally, knowledge of a patent family or patent portfolio does not equate to knowledge of a specific patent. *See MasterObjects, Inc. v. Amazon.com, Inc.*, No. C 20-08109 WHA, 2021 WL 4685306, at *3 (N.D. Cal. Oct. 7, 2021) (Judge William Alsup). And, a single reference to the (as yet still-ambiguous) term "cloud queue" does not conclusively demonstrate that the statute of

4

limitations began to run. Questions abound that Sonos will have ample opportunity to explore as this action proceeds. The same reasoning applies to the IP License Model document Sonos sent to Google in July 2018 (Richter Decl. Exh. C). Discovery will either sharpen Sonos's point, or it will not.

We next turn to Sonos's broader argument that Google unduly delayed in bringing its state-law claims. Google contends that its state-law claims are timely because they "are based on Google's diligent investigation that it performed in the Texas Action in response to Sonos's allegations" (Br. 7). In opposition, Sonos argues: "At no point during the twelve months of litigation in Texas did Google raise these claims of breach and conversion against Sonos. Google even filed its own counterclaims to Sonos's related complaint in the Texas action, but included no breach or conversion claim" (Opp. 14).

Google dismisses Sonos's argument, explaining that the CIA incorporated a forum-selection clause requiring any litigation arising out of the parties' collaboration to occur in California (Reply Br. 12–13). So the argument goes, Google could not raise its counterclaims in Texas, and could not bring new claims in this action while the matter was stayed. This order, nevertheless, remains skeptical. In this action, Google explicitly cited the CIA in its opposition to Sonos's motion to dismiss or transfer, yet apparently had yet to connect the dots in time to include the claims in its first amended complaint (Dkt. No. 28 at 4–5). The convenient timing of Google's discovery of these claims hence seems a continuation of the gamesmanship it previously exhibited when its counsel burned the midnight oil to file this action before Sonos filed its complaint in Texas. Amendment now serves to raise the stakes and strategically adjust this litigation. Nevertheless, this order finds that while Google conceivably delayed, Sonos has not demonstrated that Google *unduly* delayed. This order also reminds Sonos that Google is not alone in its gamesmanship in these matters.

We thus move on to consider the strength of Sonos's showing that Google's amendments would be futile.

**2.   FUTILITY.**

Sonos makes many futility arguments. We consider each in turn.

5

*First*, Sonos argues that Google could not have invented the technology recited in the '033 patent because, even though the patent *claims* were amended in 2019, the patent *specification* is from 2011, and thus predates the parties' collaboration (Opp. 7). Patent claims, as Sonos reminds us, must be supported by their specification. 35 U.S.C. § 112. Sonos then makes the further argument that, assuming Google *can* show that the 2011 specification for the '033 patents does not adequately describe the inventions per Section 112, the "breach and conversion claims would be nullified, as there can be no breach or conversion from an invalid patent" (Opp. 8). These arguments are non-starters. Nothing precludes Google from pleading in the alternative. FRCP 8(d). In addition, patent owners will often stretch a specification when they amend the patent claims during prosecution.

*Second*, Sonos says that Judge Albright found the '615 and '033 patents had no relation to the CIA (Opp. 10). Sonos's argument on this point fail to persuade. As an initial matter, the Federal Circuit vacated the transfer order when it granted Google's petition for a writ of mandamus (TX Action Dkt. No. 116). Moreover, even considering the transfer order's reasoning, at that point in the Texas action, "Google [did] not argue that the ownership provisions of the CIA provide Google with ownership of or a license to the patented technology" (TX Action Dkt. No. 97 at 8). Now, of course, Google has changed its tune. Moreover, the burden on a motion to amend is different from a motion to transfer, where the moving party "bears a *heavy burden* of demonstrating why the factors [considered in a motion to transfer] clearly favor such a change" (*id.* at 5, cleaned up, emphasis in original).

*Third*, Sonos cites U.S. Patent Nos. 9,232,277 and 9,674,587 for the argument that Sonos expressly disclosed the concept of a cloud queue well before the parties' collaboration (Opp. 10–11). As explained, however, this argument cannot demonstrate at this point in the proceedings that Google's claims are futile. It is for a later day to determine whether the specific cloud queue technology that Google alleges Sonos wrongfully took for itself is the same as the invention Sonos argues is recited in the '277 and '587 patents.

*Fourth,* Sonos argues that Google's cloud queue allegations have no bearing on the '615 patent, which does not contain the "remote playback queue" claim limitation and issued more

6

1  than a year before the 2019 amendment to the '033 patent (Opp. 8).  Google's allegations
2  regarding the '615 patent are indeed limited.   It notes that the integration of Google Play
3  Music with Sonos's ecosystem was the subject of the CIA, and that Sonos's second amended
4  complaint in the Texas action alleges the music service infringes the '615 patent (*see* Proposed
5  Sec. Amd. Compl. ¶ 33).  But Google provides no further factual allegations on this point.
6  Google also cites a single statement by a single lawyer for Sonos describing the '615 patent as
7  a "cloud queue patent" (Proposed Sec. Amd. Compl. ¶ 31, citing Dkt. No. 38 at 17:3–8).
8  Regarding that allegation, Sonos now says that this reference by counsel was inadvertent (Opp.
9  9).  Even crediting counsel's representation, Google has provided insufficient factual matter to
10 state a claim that Sonos impermissibly incorporated Google's cloud queue technology into the
11 '615 patent.  *See Iqbal*, 556 U.S. at 678.  As currently alleged, Google's state-law claims as
12 they relate to the '615 patent are futile.

13  *Fifth*, Sonos argues that the conversion claim is futile because the tort does not apply to
14 intangible intellectual property like a patent.  Under California law, the elements of a
15 conversion claim are:  (1) ownership or right to possession of personal property; (2) a
16 defendant's wrongful interference with the claimant's possession; and (3) damage to the
17 claimant.  *See McCafferty v. Gilbank*, 249 Cal. App. 2d 569, 576 (Cal. Ct. App. 1967).  The
18 rule at common law was that the unauthorized taking of an intangible property interest that is
19 not merged with or reflected in tangible property is not actionable as conversion.  *Thrifty-Tel v.*
20 *Bezenek*, 46 Cal. App. 4th 1559, 1565 (Cal. Ct. App. 1996).  Over the past several decades,
21 however, California law has viewed the tort more expansively:

> In some circumstances, newer economic torts have developed that may better take into account the nature and uses of intangible property, the interests at stake, and the appropriate measure of damages. On the other hand, if the law of conversion can be adapted to particular types of intangible property and will not displace other, more suitable law, it may be appropriate to do so.

26 *Fremont Indem. Co. v. Fremont Gen. Corp.*, 148 Cal. App. 4th 97, 124–26 (Cal. Ct. App.
27 2007); *see also* 5 Witkin Summary of Cal. Law, Torts § 814 (11th ed., 2021).

7

Our court of appeals has broadly construed the types of property — intangible and otherwise — that can properly be the subject of a conversion claim under California law. "Property is a broad concept," and so "[w]e apply a three-part test to determine whether a property right exists: 'First, there must be an interest capable of precise definition; second, it must be capable of exclusive possession or control; and third, the putative owner must have established a legitimate claim to exclusivity.'" *Kremen v. Cohen*, 337 F.3d 1024, 1029–30 (9th Cir. 2003) (quoting *G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 903 (9th Cir.1992)). *Kremen* accordingly reasoned that domain names may be subject to a conversion claim. *Ibid.*

Pursuant to *Kremen*, district courts in our circuit have held that intangible, intellectual property such as trademarks, copyrights, source code, and the right to commercialize a patent can all be subject to a conversion claim under California law. *See Infuturia Global Ltd. v. Sequus Pharmas., Inc.*, No. C 08-04871 SBA, 2009 WL 440477, at *5 (N.D. Cal. Feb. 23, 2009) (Judge Saundra B. Armstrong) (patent rights), *aff'd*, 414 Fed. App'x 61 (9th Cir. 2011); *English & Sons, Inc. v. Straw Hat Restaurants, Inc.*, 176 F. Supp. 3d 904, 921–23 (N.D. Cal. 2016) (Magistrate Judge Laurel Beeler) (trademarks, copyright); *Ali v. Fasteners for Retail, Inc.*, 544 F. Supp. 2d 1064, 1072 (E.D. Cal. 2008) (Judge George P. Schiavelli) (source code).

The intangible invention protected by a patent clearly meets all three elements of protectable property established by *Kremen*. This order accordingly agrees with the analogous decisions of district courts judges in our circuit and finds that patents can properly be the subject of a conversion claim under California law so long as the application of the tort does not "displace other, more suitable law." *Fremont Indem.*, 148 Cal. App. 4th at 124; *see also Tethys Bioscience, Inc. v. Mintz, Levin, Cohn, Glovskey and Popeo, P.C.*, No. C 09–05115 CW, 2010 WL 2287474, at *7 (N.D. Cal. June 4, 2010) (Judge Claudia Wilken); *Innospan Corp. v. Intuit, Inc.*, No. C 10-04422 WHA, 2011 WL 856265, at *4 (N.D. Cal. Mar. 9, 2011) (Judge William Alsup).

In its proposed second amended complaint, Google alleges:

> Google, not Sonos, conceived of the cloud queue idea. Thus,

8

> Google should have been named as an inventor and owner, and has a right to possession of, any patents arising from or related to the cloud queue technology

(Proposed Sec. Amd. Compl. ¶ 110). Google asserts both ownership *and* inventorship as part of its conversion claim. For issues of ownership, state law generally controls, but inventorship is exclusively a matter of federal patent law. *See Jim Arnold Corp. v. Hydrotech Sys., Inc.*, 109 F.3d 1567, 1572 (Fed. Cir. 1997); *see also* 8 Donald S. Chisum, Chisum on Patents § 22.02 (2021).

This order finds Google's conversion claim not futile and permissible as to its allegations regarding ownership of the cloud queue technology and the '033 and '615 patents that allegedly contain that technology. Google plausibly asserts that it conceived of the cloud queue technology around 2013, it shared source code and other information on the technology with Sonos as part of their technical collaboration, and that Sonos converted the technology by not assigning ownership of the '033 and '615 patents to Google as mandated by the CIA. As Google alleges in its proposed second amended complaint, Sonos specifically revised the '033 patent claims during prosecution to include limitations related to a cloud queue in an amendment dated November 1, 2019 (Proposed Sec. Amd. Compl. ¶ 31).

As to inventorship, however, the Patent Act has several provisions more suitable than conversion for determining the proper inventor of the '615 and '033 patents. *See* 35 U.S.C. § 102(f) (pre-AIA); *id.* § 256; *Hess v. Advanced Cardiovascular Sys.*, 106 F.3d 976, 980 (Fed. Cir. 1997). As it stands, Google's conversion claim is futile to the extent it states a claim as to inventorship.

Finally, Google adds in a claim Sonos violated the implied covenant of good faith and fair dealing. That claim, however, is duplicative of plaintiff's breach of contract claim. The undersigned has held that, absent those limited circumstances where a breach of a consensual contract term is not claimed or alleged, the only justification for asserting a separate cause of action for breach of the implied covenant is to obtain a tort recovery. *See Nasseri v. Wells Fargo Bank, N.A.*, 147 F. Supp. 3d 937, 943 (N.D. Cal. 2015) (citation omitted). "If the allegations do not go beyond the statement of a mere contract breach and, relying on the same

alleged acts, simply seeks the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated." *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (Cal. Ct. App. 1990).

So too here. Google's claim for breach of the implied covenant of good faith and fair dealing parrots its breach of contract claim and seeks the same relief. Leave to file a separate claim for breach of the implied covenant of good faith and fair dealing is **DENIED**. The allegations will be treated as part of the contract claim.

## CONCLUSION

For the reasons stated, Google's motion is **GRANTED IN PART AND DENIED IN PART**. Google's new declaratory judgment claims and its breach of contract claim may proceed. A separate claim for breach of the implied covenant of good faith and fair dealing will not be permitted, but the allegations will be treated as part of the breach of contract claim. The restitution claim may proceed as to ownership, but not as to inventorship, and may only proceed as to the '033 patent and not as to the '615 patent. Google must file a second amended complaint in conformity with this order by **FEBRUARY 4 AT NOON**.

**IT IS SO ORDERED.**

Dated: January 21, 2022.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE