Pages 1 - 25

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable William Alsup, Judge

GOOGLE LLC,                      )
                                 )
            Plaintiff,           )
                                 )
   VS.                           )   **NO. C 20-06754-WHA**
                                 )
SONOS, INC.,                     )
                                 )
            Defendant.           )
_____   )

                        San Francisco, California
                        Thursday, January 6, 2022

          **TRANSCRIPT OF REMOTE TELEPHONIC PROCEEDINGS**

**APPEARANCES**: (Appearances via AT&T Teleconference.)

For Plaintiff:
                        QUINN, EMANUEL, URQUHART
                           & SULLIVAN LLP
                        50 California Street - 22nd Floor
                        San Francisco, California 94111
                   BY:  **LINDSAY COOPER, ATTORNEY AT LAW**
                        **JOCELYN MA, ATTORNEY AT LAW**

                        QUINN, EMANUEL, URQUHART
                           & SULLIVAN LLP
                        865 South Figueroa Street - 10th Floor
                        Los Angeles, California 90017
                   BY:  **NIMA HEFAZI, ATTORNEY AT LAW**



          **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**



Reported By:  Ruth Levine Ekhaus, RMR, RDR, FCRR
              Official Reporter, CSR No. 12219

1    **APPEARANCES**:   (CONTINUED)

2    For Defendant:

3                                ORRICK, HERRINGTON & SUTCLIFFE LLP
                                 The Orrick Building
4                                405 Howard Street
                                 San Francisco, California 94105
5                     BY:   **CLEMENT S. ROBERTS, ATTORNEY AT LAW**

6                                LEE SULLIVAN SHEA SMITH LLP
                                 656 W Randolph Street - Floor 5W
7                                Chicago, Illinois 60661
                      BY:   **COLE B.RICHTER, ATTORNEY AT LAW**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

PROCEEDINGS

1    **Thursday - January 6, 2022**                          **11:31 a.m.**

2                        P R O C E E D I N G S

3                            ---o0o---

4         **THE CLERK:**  Please remember to identify yourself each

5    time.

6         Calling Civil Action 20-6754, Google, LLC versus Sonos,

7    Inc.

8         Counsel, please state your appearances for the record

9    beginning with plaintiffs.

10        **MS. COOPER:**  Good morning, Your Honor.  Lindsay

11   Cooper, Quinn Emanuel, for Google.  With me are my colleagues,

12   Jocelyn Ma and Nima Hefazi.  Ms. Ma is a fifth-year associate,

13   and she'll be arguing for Google today.  Also on the line is

14   Patrick Westin, in-house counsel for Google.

15        **THE COURT:**  All right.  Welcome to all of you.

16        And for Sonos?

17        **MR. RICHTER:**  Good morning, Your Honor.  Cole Richter

18   on behalf of Sonos.  And with me today is Clem Roberts from

19   Orrick Herrington, also on behalf of Sonos.

20        **THE COURT:**  All right.

21        So this is not really a discovery dispute at all.  This is

22   a question concerning the adequacy of disclosures.  I could

23   deny the whole thing on that ground.  It's not a discovery

24   dispute.  It's dressed up and masquerading as a discovery

25   dispute, but I'm going to hear you anyway.

**PROCEEDINGS**

1        So on your first request, I'll give you one minute to

2   summarize the request and one minute to hear from the other

3   side, and then I got some questions.

4        So, please, go ahead.

5             **MS. MA:**  Thank you, Your Honor.  This is Jocelyn Ma

6   for Google.

7        The first issue relates to Sonos's contentions for the

8   '615 patent and specifically Claim 13 of that patent.  One of

9   the elements of that claim recites a local playback queue, but

10  as it stands now, Sonos's claim chart doesn't actually identify

11  what it contends is a local playback queue or where it can be

12  found in the accused instrumentalities, as required by Patent

13  Local Rule 3-1(c).

14       When we met and conferred about the issue, Sonos

15  originally refused to provide any more information, so Google

16  had -- Googled filed this letter.  But in its response filed

17  yesterday, Sonos has actually agreed to provide a supplement

18  with further detail.  Obviously, Google will take Sonos up on

19  its offer to supplement within 14 days, and, you know, looks

20  forward to seeing that.

21       But I did want to clarify one point.  In Sonos's response

22  letter, it points to certain code and relating to the local

23  playback queue, but I do want to make clear that's actually

24  code that creates the queue, as even Sonos describes it, not

25  queue for the actual -- it's not code for the actual queue

PROCEEDINGS

1   itself.

2        So Sonos still has yet to tell us exactly what the local

3   playback queue is, or the code that is mapping that limitation.

4        So that is information that we want to clarify that we

5   still do need from Sonos in its supplement.

6        **THE COURT:**  Would you -- you did a very good job of

7   making that succinct, but would you repeat the last part about

8   the local playback queue?  You were making some special point

9   there and I just didn't grasp it.  Say it again, please.

10        **MS. MA:**  Sure.  I apologize, Your Honor.  I was trying

11   to fit everything in one minute.

12        But I did want to clarify one point that Sonos made in its

13   response letter.  Sonos does point to, you know, does identify

14   certain lines of code, but those lines are code don't

15   actually -- they don't map the limitation itself.  They don't

16   make clear what is the local playback queue.  It it's actually

17   code for what creates the queue.  And that's how Sonos

18   describes it.

19        So that didn't actually provide Google with the

20   information it's seeking.  And we understand that Sonos does

21   plan to provide more information, but we do want to clarify,

22   you know, in its supplement that is information Google still

23   needs, despite Sonos's response.

24        **THE COURT:**  Well, I thought you said that they would

25   be beef that up in 14 days.

**PROCEEDINGS**

1          **MS. MA:**  That -- Sonos has agreed to do so.  We just

2     want to make sure that that supplement does have the

3     information Google still needs.

4          **THE COURT:**  All right.  Okay.  Now, let's hear from

5     Sonos.

6          **MR. RICHTER:**  Hi, Your Honor.  Cole Richter on behalf

7     of Sonos.

8          Ms. Ma summarized that -- summarized the dispute

9     accurately.  There doesn't appear to be a dispute that Google's

10    media players have a queue.  The dispute seems to be about

11    whether Sonos has specifically identified the source code that

12    constitutes the queue.  You know, given the extent of the

13    source code at issue, you know, Sonos has identified specific

14    functions and line numbers that it contends is responsible for

15    creating that queue; we agree with Google on that.

16         As we had -- unfortunately, we haven't been afforded the

17    discovery that we think a DJ plaintiff, who is asking this

18    Court for an affirmative ruling that its products do not

19    infringe this limitation, you know, should have provided.

20         So rather than do it in the piecemeal way that Google

21    wants it, which is -- which we have agreed to do, we think the

22    better course is to allow us to question a Google engineer, a

23    deposition, and then move to supplement if that deposition

24    reveals additional information.

25         But, yes, to avoid any issues before this Court and reduce

 1   the number of issues, we would agree to provide more

 2   information by 14 days.

 3          **THE COURT:**  Let me ask this question:  You raise a

 4   point that I worried over some time ago, and maybe it was even

 5   this case.  It seems like Google -- Google was trying to anchor

 6   jurisdiction here, and filed a DJ case, but failed -- utterly

 7   failed to explain why it did not infringe.  And then -- but

 8   then didn't Google amend to explain why it did not infringe?

 9          Help me on that point.  In other words, it amended its

10   complaint to lay out why it did not infringe.

11          Am I right about that?  What am I remembering?  Go ahead.

12   This go ahead this is first --

13          **MR. RICHTER:**  Yes.  Thank you, Your Honor.  This is

14   Cole Richter again on behalf of Sonos.

15          You have that exactly right, Your Honor.  Google filed, at

16   your order, a first amended complaint.  Their original

17   complaint simply said:  We don't infringe.

18          Their first amended complaint said:  Well, we don't

19   infringe because we don't have a list of songs.

20          So they provided that "because" part.  So what's still

21   missing from this whole case, Your Honor, is an explanation

22   from Google as to how their products actually work.

23          So as we detailed in the letter, for instance, five months

24   ago in August, we, Sonos, sent Google an interrogatory -- two

25   interrogatories, among others, but the first one said:  Please

1   explain how the Google products play back a sequence of media

2   items.

3        In response to that, Google said:  Well, why don't you

4   just go look at the entirety of our source code and -- to

5   48,000 pages of documents.

6        And, you know, obviously, we've been doing the best we

7   can.  The second interrogatory I mentioned we said:  Please

8   explain why you contend you don't infringe.

9        And Google provided a bullet list of claim elements that

10  they say are not practiced, but no explanation as to what

11  they're doing instead, or why they say they are not practicing.

12       THE COURT:  Well, but how -- it could be that a list

13  of reasons why they don't infringe -- how detailed is that

14  list?

15       MR. RICHTER:  The list is a recitation of claim

16  elements, quotations of claim elements that they contend are

17  not practiced.

18       THE COURT:  All right.  Is it true that you're willing

19  to supplement within 14 days?

20       MR. RICHTER:  Yes, that's true, Your Honor.  We're --

21  we would be willing to do the best we can to supplement some

22  more information for this claim element.  I would hope that it

23  would be without prejudice to Sonos's ability to move for leave

24  to supplement in the future should discovery reveal additional

25  information.

1          **THE COURT:**  Look.  It is troubling to me that Google

2     is trying to have it both ways, Google wants declaratory relief

3     that it does not infringe, but it doesn't want to explain why

4     it -- that, except to say, "These claim elements are missing,"

5     but it doesn't explain why those claim elements are missing.

6          So before I go down that path too far, let me ask Ms. Ma.

7          Ms. Ma, is that correct, that your explanation for why you

8     don't infringe simply recites missing claim elements but does

9     not explain why they are missing?

10         **MS. MA:**  I don't think that's correct.  I think we

11    do --

12         **THE COURT:**  Well, what is correct?

13         Please, go ahead.

14         **MS. MA:**  Sorry.  I do want to clarify -- I'm sorry.

15    Give me one moment.

16         I do think we provide explanations for why we don't

17    infringe.  I mean, one of reasons we don't infringe is because

18    there is no local playback queue.  That's -- that goes to the

19    heart of the issue that we're discussing today.

20         And I think that's one point I do want to make clear, that

21    I don't think Mr. Richter was correct about.  The parties do

22    disagree as to whether there is a local playback queue.

23    Google's contention is that we don't.

24         And with respect to Sonos's argument that it's essentially

25    Google's fault that its infringement contentions are deficient

**PROCEEDINGS**

1  because we haven't provided discovery, I would say that we

2  provided source code almost a year ago.  Sonos has had

3  reviewers going in and analyzing that code.  And we view the

4  source code as, you know, the source of truth as to how our

5  products operate.

6      So those interrogatories Mr. Richter talked about

7  essentially ask Google to explain to Sonos how its products

8  infringe.  And, you know, that's just -- that's not Google's

9  burden.  And we have pointed them to the source code which we

10  believe has all the information with respect to how our

11  products operate.

12      **THE COURT:**  I'm going to pause there for a second.

13      Let me ask Sonos this:  It seems to me that we're dealing

14  with three specific apps -- a-p-p-s, apps.  And apps are run by

15  source code.  And counsel says you have had the source code for

16  a year, almost a year was your phrase; and so, by now, you

17  should have been able to figure out from the source code

18  whether the apps infringe or not.

19      So what's your answer to that?

20      **MR. RICHTER:**  Yes, Your Honor.  This is Cole Richter

21  on behalf of Sonos again.

22      There is actually more than three apps, but there is three

23  kind of categories of apps.  It is true that, you know, Sonos

24  has been inspecting the source code since, I believe, the end

25  of March or possibly the beginning of April.  And we have cited

1  the source code that Sonos believes is responsible for creating

2  the queue and meeting this claim element, and we put that

3  source code in our response letter.

4      I guess I would respond to Google that, you know,

5  producing the source code is not a substitute for obligations

6  under discovery, particularly where, you know, an entity has

7  come to this Court and asked for a ruling that it doesn't

8  infringe.  And so our interrogatory did not say, "Explain why

9  Google infringes."  It, in fact, said, "Explain how Google's

10  media players play back a sequence of media items," but not --

11  not an admission of infringement or anything like that.  In

12  fact, it's just a request for -- to explain how Google's

13  products work in that regard.

14      We got no response.  Rather, of the response that we got

15  was just, "Please look at the 20,000 pages and you might be

16  able to find that answer in there."  And, in fact, we have not

17  found the answer.  And so again, like we cited the source code,

18  Your Honor, we pointed that out to you in the letter, and we're

19  willing to provide some more supplementation as best we can.

20  But we would really request that we be permitted the

21  opportunity to question the Google engineers responsible for

22  this functionality.

23          MR. ROBERTS:  And, Your Honor, this is Mr. Roberts,

24  also for Sonos.  I apologize for interrupting.

25      I want to point out that there was no discovery in Texas.

**PROCEEDINGS**

1    Under the local rules, you cannot take fact discovery until

2    after claim construction.  This case then ended up getting

3    transferred and brought over here and discovery was stayed.  So

4    really the entirety of the record that we're talking about is

5    really discovery here.

6        And what Google is basically saying is:  Hey, you haven't

7    moved to compel us to force us to give you the discovery.

8        We have been trying to meet and confer with them to work

9    it out with them, which is what we were doing beforehand, and

10   perhaps we should move.  But what we are trying to do is meet

11   them halfway, provide them with the information we currently

12   can provide them with in a supplement.

13       And as Your Honor notes, we think their discovery

14   responses are troubling and, perhaps, the thing that we ought

15   to do is be teeing up a motion to compel with you.

16           **MS. MA:**  Your Honor, this is --

17           **THE COURT:**  Has all of this -- is it true that you've

18   had the source code for almost a year?

19           **MR. ROBERTS:**  We've had the source code for, I believe

20   seven months.

21       I'm sorry.  This is Mr. Roberts.

22           **THE COURT:**  Wait.  Seven months.

23           **MR. ROBERTS:**  Yes, Your Honor.

24           **THE COURT:**  Ms. Ma, you said almost a year.

25           **MS. MA:**  I apologize, Your Honor.  It was

1    seven months.  In March of 2021, Google provided source code to

2    Sonos toes.

3         **THE COURT:**  You should not -- I lose confidence in

4    what you tell me whenever you say "almost a year" but it turns

5    out to be seven months.  Now, 11 months or 10 months might be

6    "almost a year," but seven is barely more than half a year.  So

7    it's a small point, but I got to do these things by trusting

8    the lawyers, and if I can't trust you, you see where -- it's

9    hard.

10        All right.  I have a broad suggestion here:  With respect

11   to Google Request Number 1 and 2, and probably 3, but give

12   14 days for Sonos to beef up its contention interrogatories.

13   That's step 1.  And it's got to do a good job.

14        Number 2, I would then allow two depositions.  One would

15   be a deposition of an engineer at Google to explain why there

16   is no local playback queue.  That would be done in about

17   two weeks -- three or four weeks, max; it would be done this

18   month.

19        And then there would be in the same week -- the very same

20   week, don't try to wiggle out of this -- the Sonos engineer or

21   expert would then have to explain under oath why there is a

22   local playback queue.

23        And then -- then the final from that would be I will give

24   each side a very short time to beef up the contention

25   interrogatory -- not interrogatories, these disclosures.  And

1    then maybe -- I don't know -- maybe there will be a motion for

2    summary judgment.

3        All right.  I'm going to let you try to talk me out of

4    that on the -- first of all, Sonos, you get to try to talk me

5    out of that.

6        **MR. ROBERTS:**  Your Honor, this is Mr. Roberts.

7        The only piece of it I would like to talk you out of is

8    the second deposition, because it's effectively saying that

9    Sonos should produce an expert without an expert report one

10   week after getting the information from Google in the first

11   instance.

12       And I would point out to Your Honor, we always have a

13   shootout procedure going.  There is a very tight set of

14   timelines around that.  If what Your Honor wanted to order was

15   that we take that deposition and then we promptly move to

16   supplement our final infringement contentions with the

17   additional information that we have gained in that, that would

18   be totally fine with me and make sense.

19       And then we could feed everything else that you want to do

20   in terms of, you know, the fast discovery, prompt summary

21   judgment motions --

22       **THE COURT:**  You can't just shake the fleas out of your

23   vest.  That's no good.  You don't get a deposition without

24   putting somebody up for a deposition, so end of that story.

25       All right.  I'm just going to order, you've got to get

1   proper -- you got 14 days in which to amend on Request 1 and 2.

2       All right.  Now, let's go to the Request 3, and I'll give

3   the Google lawyer one minute to explain what the problem there

4   is.

5       **MS. COOPER:**  Your Honor, this is -- I apologize for

6   jumping in.  This is Lindsay Cooper for Google.

7       I just wanted to clarify one thing.  I hear that you

8   ordered Sonos to provide updated infringement contentions

9   within 14 days.  Is the two-week period for the deposition of

10  the Google engineer after those 14 days or is that during the

11  same time?

12      **THE COURT:**  I deleted that because the other side

13  won't meet you halfway and produce an expert.  I'm sorry.  They

14  are not going to get it both ways.

15      So you don't have to produce an engineer unless it's just

16  pursuant to ordinary discovery, and I'm not ordering that right

17  now.  All I'm ordering is that they got to beef up their

18  disclosures within 14 days, and I'm not ordering any

19  depositions because Sonos refuses to do so.

20      I'm sorry.  All right.  Go ahead.  What problem do you

21  have with that?

22      **MS. COOPER:**  No problem with that, Your Honor.  Thank

23  you for clarifying.

24      **THE COURT:**  All right.  Let's go to your third

25  request.  What do you want to do on that?

1          **MS. MA:**  Thank you, Your Honor.  This is Jocelyn Ma

2     again, for Google.

3          The second issue is that Sonos's contentions don't

4     currently identify the accused instrumentalities with enough

5     specificity to satisfy Patent Local Rule 3-1(b), which -- as

6     I'm sure Your Honor knows -- requires identification as

7     specifically as possible, and by name or model number, if

8     known.

9          Sonos currently identifies the products by category and

10    functionality using categories like "cast-enabled apps,"

11    "cast-enabled displays," and, "smartphones, tablets, and

12    computer devices installed with cast-enabled apps."  As a

13    housekeeping matter, Sonos has already agreed to limit the

14    first two categories, so that's "cast-enabled apps" and

15    "cast-enabled displays," by the ones that it named in its

16    contentions, so those two categories are no longer in dispute.

17         But the third one is still at issue, which is that Sonos

18    hasn't agreed to limit smartphones, tablets, and computer

19    devices to the Google Pixel devices its identified as sort of

20    representative examples.

21         So it appears Sonos is basically attempting to hold open

22    this category of accused products so it can include, you know,

23    any hardware device, even ones that aren't made by Google, that

24    may have a cast-enabled application installed on them, but to

25    avoid having to specifically identify what those devices are.

**PROCEEDINGS**

 1   And, in our view, that sort of placeholder is improper and

 2   exactly the kind of categorical identification that's been

 3   interjected in cases like *Oracle versus Google* and *Finjan*

 4   *versus Proofpoint*.

 5        In the Oracle case, the Court rejected, you know, very

 6   similar contentions that identified products as "mobile devices

 7   running Android," because that wasn't sufficiently specific.

 8   And, ultimately, Google was only allowed to proceed on products

 9   that were actually named by model.  So we would ask that

10   the Court, you know, similarly hold here and strike any

11   references to unidentified instrumentalities in Sonos's

12   contentions, and limit Sonos to the Pixel devices that it has

13   name.

14             **MR. ROBERTS:**  Your Honor, this is Mr. Roberts.  If I

15   may respond.

16             **THE COURT:**  Yes, please.

17             **MR. ROBERTS:**  Okay.  Okay.

18        So the allegation of infringement is that the application

19   itself infringes when running on any device.  That is

20   sufficient to identify for them what is being accused.  It is

21   the app when running on any device.

22        We have given the make and model numbers that we have been

23   able to identify from the Internet, that we are able to pull

24   out.  But, Google knows every single one of the devices because

25   it has to approve them.  As soon as they give us a list of the

1  devices that its apps run on, we will take that list, staple it

2  as Exhibit A, and that is the list of make and model numbers.

3  But it is not physically possible for us to find those things

4  that it runs on, and this is why we have asked them for that in

5  discovery.  And as soon as they provide it, we will absolutely

6  provide it by make and model number; but they have that

7  information, not us.

8        And we have given them exactly what our infringement

9  theory is.  There is no confusion or ambiguity about that

10  infringement theory, so they know what is accused; they know

11  the functionality that is accused; they know what product we

12  intend to accuse.  And the only thing they are doing is saying:

13  No.  No.  You have to find all the make and model numbers

14  before you get discovery from us, even though we have a list of

15  all those make and model numbers.

16        **THE COURT:**  Why isn't that correct, Ms. Ma?

17        **MS. MA:**  Thank you, Your Honor.

18        The claims are directed -- these are device claims so,

19  you know, Sonos as the accuser has the burden of identifying

20  all the devices that allegedly infringe, and since Sonos hasn't

21  identified any non-Pixel devices, they should be limited to

22  ones that they have identified.

23        The *Oracle* plaintiffs made this -- the exact same argument

24  where they said, "Google has the information because it knows

25  all the devices that run Android."  But this Court, you know,

1  rejected that argument saying, regardless -- you know, even if

2  Google could come up with some list -- and I'm not saying

3  whether Google could or not -- it's still the burden of the

4  accuser to specifically identify all of the accused products;

5  particularly because these are device claims.

6           **THE COURT:**  All right.  Let me go back to --

7           **MR. RICHTER:**  Your Honor --

8           **THE COURT:**  Wait.  Wait.

9      Now, it's important for me to understand.  I thought these

10  were claims that covered apps, but now I'm hearing they cover

11  devices.  Somebody is not telling me the truth.

12     I want to hear from Sonos on this.  Go ahead.

13          **MR. RICHTER:**  Hi, Your Honor.  Yes.  This is Cole

14  Richter.

15     Some claims asserted cover a computer-readable medium, and

16  so those would be claims where the app is stored on a CD or a

17  thumb drive or server.  Some other claims cover a device with

18  the app installed.  So all of the prescient claim limitations,

19  or all of the claim limitations at issue here are functionality

20  that are provided by the app source code itself.  And so this

21  is a little bit different than all the other cases that Google

22  cited, particularly the *Oracle* one.

23     And all those other cases where parties have been limited

24  to devices that they've named in their contentions are cases

25  where some amount of diligence could have discovered the

1    correct devices.  Here, however, the apps have to be installed

2    by end users.  They have to be downloaded via the app store and

3    installed by end-users for the devices we aren't aware of.

4         So we've named the Google devices that, for instance,

5    Google has pre-installed the apps on, or that we're aware that

6    Google makes.  But the rule only requires -- according to my

7    reading -- an identification of devices that all of each

8    opposing parties -- that would be Google -- that the other

9    parties, Sonos, is aware of and that shall be identified by

10   name and model number if known.

11        So we, you know, without conducting some sort of survey of

12   end-users or having some sort of information like that, we

13   can't -- the best we could do is just guess at what the devices

14   end-users have actually installed these apps onto.  And out of

15   an abundance of caution, I suppose we could list several

16   hundred phones and computers that are made throughout the

17   world, but we aren't sure if any of those have actually been

18   used to download the apps.

19        **THE COURT:**  On this request, I am going to rule as

20   follows:  Sonos is going to have to take a chance.  I don't

21   understand the problem well enough to say whether this is

22   adequate or not; in other words, what you have -- two of the

23   three categories, you have reached a compromise.  I'm only

24   referring now to the third.

25        The third category, Sonos is going to take a risk.  And

1   that is, if I later turn out -- rule that this is an inadequate

2   disclosure, your case goes down the drain.  That's your

3   problem.

4        But I don't understand this well enough -- I understand

5   what you're telling me is that you're not in a position to be

6   more specific, and you have been as specific as you can, and

7   there is nothing more that you could have done to be more

8   specific.  Okay.  Maybe if that's -- all turns out to be true,

9   when we get to trial, then I might forgive you.  On the other

10  hand, if it turns out you're just fooling me, and you really

11  could have done a lot more to figure this out, then that part

12  of your case is going to be dismissed.

13       So I'm not making any ruling beyond that.  You're in a

14  better position than me to figure out whether you're in trouble

15  on that or not.  And if you think you are, I urge you to fix it

16  up now.  But --

17            **MR. ROBERTS:**  Your Honor, this is -- I apologize.

18            **THE COURT:**  All right.  Look.  I'm not going -- you're

19  not going to convince me to do more than that, and give you

20  some kind of lifesaver.

21       All right.  Go ahead.  What do you want to say.

22            **MR. ROBERTS:**  Yes.  This is Mr. Roberts for Sonos.

23       Should we ask the Court to ask Google to produce a list of

24  the products it knows the apps have been downloaded to?  If

25  Google --

1      **THE COURT:**  Why haven't you asked that in an

2  interrogatory way before now?

3      **MR. ROBERTS:**  We have -- so discovery was stayed in

4  the Texas case.  We could not do so.

5      When you get to this case, we believe we have asked for it

6  and it hasn't been provided.  So I can come back here on a

7  motion to compel, if that's Your Honor's preference.

8      **THE COURT:**  I would grand that motion that -- within

9  reason, as a general principle, I would grant that motion.  So

10  then -- but that still begs the question of whether or not

11  you're already in a position to do better than you have.  So

12  see, you're --

13      **MR. ROBERTS:**  I understand, Your Honor.

14      **THE COURT:**  You're trying to pitch it like, "Oh, oh,

15  we've got to get the discovery first," and maybe that's true.

16  But on the other hand it could be that if -- the good lawyers

17  that you are could have done a lot more due diligence before

18  this lawsuit was filed, and I'm not as a position to judge that

19  right now.

20      So I am not -- I am not taking back a word of what I said

21  a moment ago.  You are going to be in trouble if it turns

22  out -- see, what you're trying to do is set up a defense:  Oh,

23  Judge, you said do an interrogatory.  Oh, and you said you

24  would grant it.  And, oh, we waited to see what they would say.

25      No.  You could be in trouble already and stay in trouble,

1  and it's up to you, but -- to decide whether you want to move

2  to compel.

3      See?  This is why patent cases have such a bad name,

4  because of the gamesmanship that goes on here.  You all should

5  be trying to figure out a way, as good lawyers, to get to the

6  heart of the problems, get discovery taken, put up witnesses.

7      And I proposed something practical a while ago, but Sonos,

8  playing games, said:  No.  We're not going to do that.  We're

9  already in some kind of fast-track thing.

10     All right.  So that's the ruling that I make:  14 days on

11  request Number 1 and 2.  And on Number 3, I have given you my

12  caveats, and I'm not making any further orders, and you proceed

13  at your own risk.

14     I have got to go to another case, so you all can now hand

15  up and good luck to both sides.

16     Yes?

17         MR. RICHTER:  Thank you, Your Honor.  This is Cole

18  Richter for Sonos.

19     May I ask a couple of housekeeping questions regarding

20  some upcoming scheduling hearings for next week in these

21  matters, Your Honor?

22         THE COURT:  I don't know a thing about it.  You mean,

23  I got hearings in this case next week?

24         MR. RICHTER:  Yes, actually.  So they were -- there is

25  this case and there's a related case, case 21-cv-7559.  There

**PROCEEDINGS**

1    were some leftover scheduling hearings that were created back

2    in August and back when the case was transferred.  Your Honor,

3    might not know about them, but I am curious about whether you

4    intend to go forward.

5            THE COURT:  I don't remember.  If you think I can deal

6    with this in about one minute, I'll let you try.  But if it's

7    too complicated, I just -- don't even bring it up now.  So,

8    you know, call it "housekeeping," but I got two other important

9    matters to go to and I need to do that.

10       So can you do it in one minute?

11           MR. RICHTER:  Yes, Your Honor.  In fact, the question

12   is just whether Your Honor intendeds to hold those status

13   conferences.  We think they are unnecessary since we're

14   holding -- we held a status conference in October, but the

15   questions is for Your Honor, if he would prefer to go forward

16   with those status conferences.

17           THE COURT:  If you both agree -- do you both agree we

18   don't need it?  If you do, I'll cancel it.

19           MS. COOPER:  Your Honor, this is Lindsay Cooper for

20   Google.

21       I think it would be helpful.  We have a couple of disputes

22   about the scope of discovery that we're working through in our

23   case management statement due today.  In addition, we have a

24   hearing on Google's motion for leave to amend its complaint on

25   the same day.  That hearing is at 8:00 a.m., the case

**PROCEEDINGS**

1  management conferences are currently scheduled for 11:00.

2      So maybe what we could do is just do everything at

3  8:00 a.m. and cancel the 11:00 a.m. hearing.

4      **THE COURT:** All right.  That's what we're going to do.

5  I'm not going to cancel anything, but I'll move it up to

6  8:00 a.m.  All right?

7      **MR. RICHTER:** Okay.  Thank you, Your Honor.

8      I do note that that hearing is in person.  Does Your Honor

9  prefer that we come to San Francisco, or would you prefer a

10 telephone hearing for that one, Your Honor?

11     **THE COURT:** Let me ask my -- how many -- is my -- I

12 got to find out how many more matters I've got.  And be aware

13 there is at least a 50/50 chance I will have to do that by

14 telephone on account of the pandemic.  But --

15     **MR. RICHTER:** Understood, Your Honor.

16     **THE COURT:** One way or the other, we will have it.

17 All right.

18     **MR. RICHTER:** Understood, thank you.

19     **THE COURT:** Good luck to both sides.  You hang up.

20 And now we go to another case.  I'll wait for you to hang up.

21          (Proceedings adjourned at 12:04 p.m.)

22                    ---o0o---

23

24

25

## CERTIFICATE OF REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:   Thursday, January 13, 2021

_____
Ruth Levine Ekhaus, RMR, RDR, FCRR, CSR No. 12219
Official Reporter, U.S. District Court