QUINN EMANUEL URQUHART & SULLIVAN, LLP
    Charles K. Verhoeven (Bar No. 170151)
    charlesverhoeven@quinnemanuel.com
    Melissa Baily (Bar No. 237649)
    melissabaily@quinnemanuel.com
    Lindsay Cooper (Bar No. 287125)
    lindsaycooper@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

*Attorneys for GOOGLE LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOOGLE LLC,<br><br>        Plaintiff,<br><br>     vs.<br><br>SONOS, INC.,<br><br>       Defendant. | CASE NO. 3:20-cv-06754-WHA<br><br>**SECOND AMENDED COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NOS. 9,967,615; 10,779,033; 10,848,885; AND 10,469,966; BREACH OF CONTRACT; AND CONVERSION**<br><br>**DEMAND FOR JURY TRIAL** |

1.     Plaintiff Google LLC ("Google") seeks a declaratory judgment of non-infringement and invalidity of United States Patent Nos. 9,967,615; 10,779,033; 10,469,966; and 10,848,885 as follows:

## NATURE OF THE ACTION

2.     This is an action for a declaratory judgment of non-infringement and invalidity arising under the patent laws of the United States, Title 35 of the United States Code.  Google requests this relief because Defendant Sonos, Inc. ("Sonos") claims that Google infringes United States Patent Nos. 9,967,615 ("the '615 patent"); 10,779,033 ("the '033 patent"); 10,469,966 ("the '966 patent"); and 10,848,885 ("the '885 patent") (collectively, the "Patents-in-Suit") by making, using, selling, offering for sale, and/or importing the following "products" (collectively, "Accused Products"):

- "Smartphone, tablet, and computer devices, including Google's own 'Pixel' smartphone, tablet, and computer devices (e.g., the Pixel, Pixel XL, Pixel 2, Pixel 2 XL, Pixel 3, Pixel 3 XL, Pixel 3a, Pixel 3a XL, Pixel 4, Pixel 4 XL, Pixel 4a, Pixel 4a (5G), Pixel 5, Pixel 5a (5G), Pixel 6, and Pixel 6 Pro phones, the Pixel Slate tablet, and the Pixelbook and Pixelbook Go laptops), as well as third-party smartphone, tablet, and computer devices, that are (i) installed with any of Google's own Cast-enabled Android, iOS, Chrome or browser-based apps that allow a user to transfer playback of streaming media content from the user's smartphone, tablet, or computer devices to a Cast-enabled media player and then control the Cast-enabled media player's playback, including but not limited to the YouTube app, YouTube Kids app, YouTube TV app, YouTube Music app, and Google Play Music app, accessed via either an app store or Chromecast-enabled site URL (including youtube.com, music.youtube.com, tv.youtube.com, and spotify.com) and/or (ii) installed with any third-party Cast-enabled app that allows a user to transfer playback of streaming media content from the user's smartphone, tablet, or computer devices to a Cast-enabled media player and then control the Cast-enabled media player's playback, including but not limited to the Spotify app;"

- "Cast-enabled media players having a display screen and installed with Cast-enabled software (e.g., firmware and/or Cast-enabled apps) that allows a user to transfer playback of streaming media content from the Cast-enabled media player to another Cast-enabled media player and then control the other Cast-enabled media player's playback, including Google's Home Hub, Nest Hub, and Nest Hub Max media players;"
- "Servers that host at least one of the accused Cast-enabled apps for download onto or access by smartphone, tablet, or computer devices;"
- "Cloud-based infrastructure hosting backend software that facilitates the aforementioned Cast functionality for transferring playback of streaming media content to a Cast-enabled media player and/or controlling the Cast-enabled media player's playback;" and
- "'Cast-enabled media players,' including Google's Chromecast, Chromecast Ultra, Chromecast Audio, Chromecast with Google TV, Home Mini, Nest Mini, Home, Home Max, Home Hub, Nest Hub, Nest Hub Max, Nest Audio, and Nest Wifi Point media players."

*See* Sonos's January 20, 2022 Disclosure of Asserted Claims And Infringement Contentions.

3.     Sonos's affirmative allegations of infringement of the Patents-in-Suit by the Accused Products has created a justiciable controversy between Google and Sonos.

4.     As a result of Sonos's communication to Google of its intention to pursue claims of infringement of the Patents-in-Suit against Google, Google was under reasonable apprehension of suit by Sonos no later than September 28, 2020.  Sonos subsequently filed an action for infringement of the Patents-in-Suit against Google on September 29, 2020.

5.     This is also an action for breach of contract and conversion between Sonos and Google.

**THE PARTIES**

6.      Plaintiff Google LLC is a subsidiary of Alphabet Inc. and a Delaware limited liability company with its principal place of business located at 1600 Amphitheatre Parkway, Mountain View, California 94043.

7.      Defendant Sonos, Inc. is a Delaware corporation with its principal place of business at 614 Chapala Street, Santa Barbara, California 93101.

**JURISDICTIONAL STATEMENT**

8.      Google's declaratory judgment claims arise under the Declaratory Judgment Act, 28 U.S.C. § 2201, and under the patent laws of the United States, 35 U.S.C. §§ 1-390.  This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338(a), and 2201(a).

9.      This Court also has supplemental jurisdiction over the state law claims alleged in this Second Amended Complaint pursuant to 28 U.S.C. § 1367.  The claims for breach of contract and conversion are so related to the claims for non-infringement that they form part of the same case or controversy.

10.      This Court has personal jurisdiction over defendant Sonos.  Sonos is registered to do business in the State of California (Registration No. C2465272), has its headquarters in the State of California, and has offices in this District.  Sonos, directly and through agents, regularly does, solicits, and transacts business in this District and elsewhere in the State of California.

11.      Venue is proper in this District under 28 U.S.C. Section 1391.  Sonos has a regular and established place of business in this District—specifically, offices and employees located at 550 Montgomery Street, Suite 750, San Francisco, CA 94111.  Sonos lists this San Francisco office on its website (https://www.sonos.com/en-us/contact, a true and correct copy of which is attached as Exhibit 1), and the Sonos office at this location is advertised by Sonos as a current place of business (including in the building's directory in the public lobby).  Also, a substantial part of the events giving rise to Google's claim occurred in this District, and because Sonos is subject to personal jurisdiction here.  For example, on September 28, 2020, Sonos sent an email to a Google employee who works in this District indicating that Sonos will be initiating a case against Google LLC asserting infringement of the '615, '033, and '966 patents as well as U.S.

Patent Nos. 9,344,206 and 9,219,460 .  Sonos then filed an action for patent infringement against Google on September 29, 2020 in the Western District of Texas, which was transferred to the Northern District of California on September 28, 2021.  *See Sonos, Inc. v. Google LLC*, Case No. 3:21-cv-07559-WHA, Dkt. No. 118 (N.D. Cal.).  Further, a substantial part of the events that give rise to Google's state law claims, including events pertaining to Sonos and Google's collaboration between 2013 to 2015 and the development of the cloud queue technology occurred in this District.  And the Content Integration Agreement that governs the collaboration includes a forum selection clause requiring the state law claims to be litigated in California.

12.     An immediate, real, and justiciable controversy exists between Google and Sonos as to whether Google is infringing or has infringed the Patents-in-Suit.

### INTRADISTRICT ASSIGNMENT

13.     This Intellectual Property Action is assigned to Judge William Alsup pursuant to Civil Local Rules 3-2(c) and 3-5(b).

### SONOS'S COLLABORATION WITH GOOGLE

14.     Google was founded in 1998, and has a mission to organize the world's information and make it universally accessible and useful.  Over the past two decades, in service of that mission, Google has become one of the world's most innovative technology companies.

15.     Google's revolutionary advances in search, software, mobile computing, wireless networking, content streaming, machine learning, and voice-assisted technologies including speech recognition and advanced audio processing, have changed and improved millions of lives.

16.     As part of its commitment to innovation, Google has invested significantly in extensive research and development efforts, including its own research, as well as investments in and acquisitions of other cutting-edge technology companies.  Google is the current assignee of tens of thousands of patents worldwide.

17.     Google partners with other companies to bring Google's innovations to millions of shared customers.  In particular, Google has long had a continued partnership with Sonos.  During their partnership, Sonos has repeatedly asked Google for assistance, so that Sonos could employ Google technology to improve Sonos's products.

18.     In 2013, Sonos asked for Google's assistance to integrate with Google's popular Play Music service.  Google gave Sonos that assistance, and provided significant engineering resources, technical support, and other resources to integrate Sonos's products with Google's Play Music service from 2013 through 2015.

19.     In 2016, Sonos again asked for Google's assistance–this time to integrate with Google's innovative Assistant software.  And again, Google was willing to help.  Google gave Sonos significant assistance in designing, implementing, and testing a solution that would bring Google's voice recognition software to Sonos's devices.  This effort again involved substantial Google engineering resources, including significant months of employee work time, for the initial launch of Google's Assistant on Sonos's products in May 2019.

20.     Google is proud of its more than five-year partnership with Sonos, and has worked constructively with Sonos to make the companies' products work seamlessly by building special integrations for Sonos.  For instance, when Google rolled out the ability to set a Sonos speaker as the default option for Google Assistant, it was the first time Google had done that for any partner company.

**SONOS AND GOOGLE ENTER INTO COLLABORATION AGREEMENTS**

21.     Google and Sonos executed several agreements in connection with their collaboration on the integration of Google Play Music.  For example, in January 2013, Google and Sonos entered into a Non-Disclosure Agreement "██████████████████████████████████ ██████████████████████████████████████████████" Ex. 2.  And in November of 2013, Sonos and Google entered into a Content Integration Agreement under which Sonos asked Google (inter alia) to make resources available to Sonos, "███████████████████ ███████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████████████." Ex. 3 at 8. Pursuant to the Content Integration Agreement, Google provided Sonos with substantial assistance, including access to Google's engineers and knowledge of Google's products and technology, including products and technology at issue in this action.

22.     The Content Integration Agreement governs the ownership of "Provider Developments."  Specifically, Section 3.4 of the Content Integration Agreement provides that Google owns " ███████ " intellectual property rights " ██████████████ " to " █████ ██████████ ," and that Sonos will not " ████████ " any such rights:



Ex. 3 § 3.4.  " ████████████████ " are defined as " ███████████████████ ████████████████████████████ ████████████████████████████ ███████████████████████████████ ████████████████ ."  *Id.* § 3.4.  In other words, the parties agreed that Google would own " ██████████████████████████ ████████████████████████ ."

23.     The Content Integration Agreement defines " ██████████████████ " as follows:

*Id.* at Recitals.  Cloud queue, the functionality that Sonos accuses of infringing the '615 and '033 patents, arises from or relates to the " █████████████ ," including the development work done by Google to create the " ████████████████████████ ████████████████████████████████ ."

-7-

1

## SONOS AND GOOGLE COLLABORATE ON CLOUD QUEUE

2      24.     Pursuant to the parties' agreements, Google and Sonos collaborated closely on

3   cloud queue for Google Play Music between 2013 and 2015.

4      25.     At least by December of 2013, Google told Sonos—including Sonos engineer Tad

5   Coburn, the named inventor of the '615 and '033 patents—that Google was considering using "a

6   more cloud queue centric model that would help simplify things a bit (moving the interactions

7   away from the device, quickly)," to which Mr. Coburn responded that "[t]he idea of moving the

8   playlist to the cloud is very interesting, but will definitely complicate things."  Ex. 4.

9      26.     In the months that followed, Mr. Coburn continued to express excitement regarding

10   the cloud queue idea that Google had proposed.

11      27.     For instance, in May of 2014 Mr. Coburn exchanged multiple emails with Google

12   seeking an update on the status of "queues in the cloud."  Ex. 5.  Google informed Mr. Coburn that

13   it was thinking about the details of the design, and listed some of the goals Google had in mind for

14   "cloud queue," for example that "the cloud queue will be what we call a 'container aware queue' -

15   you can queue up a playlist, modify the playlist elsewhere, and the e2e experience will quickly

16   reflect the latest contents," and that "the receiver will be able to get a few songs at a time from the

17   cloud queue."  *Id*.

18      28.     By June of 2014, Mr. Coburn stated that he was "itching to start prototyping cloud

19   queue playback on our end" and explained that Google and Sonos had "discussed things enough

20   that" he had a "good idea" of how "your [i.e., Google's] CloudQueue" will work.  Ex. 6.

21      29.     Throughout the collaboration, Mr. Coburn was personally involved in weekly

22   "Google/Sonos Sync[s]," regular calls to discuss cloud queue development, and multiple day-long

23   in-person meetings with Google's cloud queue team.  Mr. Coburn posed detailed technical

24   questions to Google regarding cloud queue, requested specific features and capabilities, asked

25   Google to share its cloud queue API design before the public release—which Google did—and

26   provided feedback on Google's design.

27

28

-8-

30.     Thus, pursuant to the Content Integration Agreement, the cloud queue technology was the sole and exclusive property of Google, and Sonos was not permitted to "███████████ ██████████████████████████████████████████" cloud queue technology.

**SONOS WRONGFULLY CLAIMS RIGHTS IN THE CLOUD QUEUE TECHNOLOGY**

31.     Despite the Content Integration Agreement, Sonos has willfully and wrongfully attempted to claim Google's idea for itself.  For example, Sonos did not introduce the alleged notion of a cloud-based queue into its patents until 2019.  *See, e.g.*, '033 prosecution history (November 1, 2019 amendment adding notion of "remote playback queue").  And Sonos has now referred to the '615 and '033 patents as its "cloud queue patents":  "Two of the patents-in-suit are what we call our cloud queue patents, and they deal with exactly how music streaming on a cloud gets transferred between a device, let's say a cell phone, and a speaker and how do you take a queue that's queued up in the cloud and transfer that queue of music from one device to another."  *See* Dkt. No. 38 (11-23-2020 Hearing Tr.) at 17:3-8.

32.     To the extent Sonos's interpretation of these patents is credited, the technology that Google was developing in 2013 through 2015 (which Sonos was aware of in connection with the parties' collaboration), including this cloud queue technology, is in relevant respects, analogous to technology that Sonos now accuses of infringing its patents.

33.     In fact, many of Sonos's infringement allegations are directed at Google technologies that arise out of or are related to work done by Google as part of the collaboration. For instance, Sonos has alleged that Google Play Music on iOS and Android devices infringes these patents based on its use of cloud queue technology.  Yet the collaboration between Google and Sonos was directed to, inter alia, the integration of cloud queue into the Google Play Music casting experience (including for Google Play Music on iOS and Android devices).

34.     Google conceived of this cloud queue idea, shared it with Sonos, and worked with Sonos to release it on the Google Play Music platform.  Having been involved in the earlier collaborations, Sonos was aware that Google, not Sonos, conceived of the cloud queue technology and that Sonos had no right to draft claims that Sonos contends encompass the cloud-queue technology.

1

### GOOGLE DOES NOT INFRINGE THE PATENTS-IN-SUIT

2       35.     The Accused Products do not directly or indirectly infringe any claim of the

3   Patents-in-Suit, literally or under the doctrine of equivalents.

4       36.     No third party infringes any claim of the Patents-in-Suit by using a Google product

5   or service.  Google has not caused, directed, requested, or facilitated any such infringement, much

6   less with specific intent to do so.  The Accused Products are not designed for use in any

7   combination that infringes any claim of the Patents-in-Suit.  To the contrary, each has substantial

8   uses that do not infringe any claim of the Patents-in-Suit.

9                                    ### FIRST COUNT

10                       ### (Declaration of Noninfringement of 9,967,615)

11      37.     Google restates and incorporates by reference the allegations in paragraphs 1

12   through 36 of this Complaint as if fully set forth herein.

13      38.     Sonos claims to own all rights, title, and interest in and under the '615 patent.  A

14   true and correct copy of the '615 patent is attached hereto as Exhibit 7.

15      39.     Google does not directly or indirectly infringe the '615 patent, either literally or

16   under the doctrine of equivalents, at least because the Accused Products do not comprise a

17   tangible, non-transitory computer-readable storage medium including instructions for execution by

18   a processor, the instructions, when executed, cause a control device to implement a  method

19   comprising: (1) causing a graphical interface to display a control interface including one or more

20   transport controls to control playback by the control device; (2) after connecting to a local area

21   network via a network interface, identifying playback devices connected to the local area network;

22   (3) causing the graphical interface to display a selectable option for transferring playback from the

23   control device; (4) detecting a set of inputs to transfer playback from the control device to a

24   particular playback device, wherein the set of inputs comprises: (i) a selection of the selectable

25   option for transferring playback from the control device and (ii) a selection of the particular

26   playback device from the identified playback devices connected to the local area network: (5) after

27   detecting the set of inputs to transfer playback from the control device to the particular playback

28   device, causing playback to be transferred from the control device to the particular playback

device, (6) wherein transferring playback from the control device to the particular playback device comprises: (a) causing one or more first cloud servers to add multimedia content to a local playback queue on the particular playback device, wherein adding the multimedia content to the local playback queue comprises the one or more first cloud servers adding, to the local playback queue, one or more resource locators corresponding to respective locations of the multimedia content at one or more second cloud servers of a streaming content service; (b) causing playback at the control device to be stopped; and (c) modifying the one or more transport controls of the control interface to control playback by the playback device; and (7) causing the particular playback device to play back the multimedia content, wherein the particular playback device playing back the multimedia content comprises the particular playback device retrieving the multimedia content from one or more second cloud servers of a streaming content service and playing back the retrieved multimedia content.

40.     For example, the Accused Products do not include the claimed transfer or addition to a "local playback queue on the particular playback device."  All the independent claims of the '615 patent include limitations requiring "transferring playback from the control device to the particular playback device."  '615 patent, Claims 1, 13 and 25.  Transferring playback comprises "causing one or more first cloud servers to add multimedia content to a local playback queue on the particular playback device" *Id*.  This functionality is not included in any of the Accused Products, according to Google's understanding of this limitation of the '615 patent.  For example, the Accused Products do not include a local queue on an alleged remote playback device for playback of media.  Instead, the alleged playback device (i.e., Chromecast, Chromecast Ultra, Chromecast Audio, Chromecast with Google TV,  Home Mini, Nest Mini, Home, Home Max, Home Hub, Nest Hub, Nest Hub Max, Nest Audio, Nest Wifi Point) requests each song one-by-one to play back.  Accordingly, none of the Accused Products include the claimed transfer or addition to a "local playback queue on the particular playback device" and consequently also do not perform any of the recited steps in connection with the local playback queue.  Because the terms "causing one or more first cloud servers to add multimedia content to a local playback queue

on the particular playback device" are included in every independent claim of the '615 patent, none of the Accused Products infringe any claims of the '615 patent.

41.     No third party infringes any claim of the '615 patent by using a Google product or service.  Google has not caused, directed, requested, or facilitated any such infringement, much less with specific intent to do so.  The Accused Products are not designed for use in any combination which infringes any claim of the '615 patent.  To the contrary, each has substantial uses that do not infringe any claim of the '615 patent.

42.     A substantial, immediate, and real controversy therefore exists between Google and Sonos regarding whether Google infringes the '615 patent.  A judicial declaration is appropriate and necessary to determine the parties' respective rights regarding the '615 patent.

43.     Google seeks a judgment declaring that Google does not directly or indirectly infringe any claim of the '615 patent.

## SECOND COUNT

### (Declaration of Invalidity of 9,967,615)

44.     Google restates and incorporates by reference the allegations in paragraphs 1 through 43 of this Complaint as if fully set forth herein.

45.     Due to Sonos's filing of the complaint in the Western District of Texas and service of infringement contentions pursuant to Patent Local Rules 3-3 and 3-4, an actual controversy exists between Google and Sonos as to the validity of the '615 patent.

46.     The claims of the '615 patent are invalid, in whole or in part, for failure to meet one or more requirements of Title 35 of the United States Code, including but not limited to §§ 101, 102, 103, and/or 112.

47.     By way of example, the asserted claims of the '615 patent are invalid based on one or more of Google's own Nexus Q and YouTube TV prior art, and the prior art references listed on the face of the patents.

48.     Under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., Google requests a judicial determination and declaration that the claims of the '615 patent are invalid.

## THIRD COUNT

### (Declaration of Noninfringement of 10,779,033)

49.     Google restates and incorporates by reference the allegations in paragraphs 1 through 48 of this Complaint as if fully set forth herein.

50.     Sonos claims to own all rights, title, and interest in and under the '033 patent.  A true and correct copy of the '033 patent is attached hereto as Exhibit 8.

51.     Google does not directly or indirectly infringe the '033 patent, either literally or under the doctrine of equivalents, at least because the Accused Products do not comprise a computing device comprising: (1) at least one processor; (2) a non-transitory computer-readable medium; and (3) program instructions stored on the non-transitory computer-readable medium that, when executed by the at least one processor, cause the computing device to perform functions comprising: (4) operating in a first mode in which the computing device is configured for playback of a remote playback queue provided by a cloud-based computing system associated with a cloud-based media service; (5) while operating in the first mode, displaying a representation of one or more playback devices in a media playback system that are each (i) communicatively coupled to the computing device over a data network and (ii) available to accept playback responsibility for the remote playback queue; (6) while displaying the representation of the one or more playback devices, receiving user input indicating a selection of at least one given playback device from the one or more playback devices; (7) based on receiving the user input, transmitting an instruction for the at least one given playback device to take over responsibility for playback of the remote playback queue from the computing device, wherein the instruction configures the at least one given playback device to (i) communicate with the cloud-based computing system in order to obtain data identifying a next one or more media items that are in the remote playback queue, (ii) use the obtained data to retrieve at least one media item in the remote playback queue from the cloud-based media service; and (iii) play back the retrieved at least one media item; (8) detecting an indication that playback responsibility for the remote playback queue has been successfully transferred from the computing device to the at least one given playback device; and (9) after detecting the indication, transitioning from (i) the first mode

1   in which the computing device is configured for playback of the remote playback queue to (ii) a

2   second mode in which the computing device is configured to control the at least one given

3   playback device's playback of the remote playback queue and the computing device is no longer

4   configured for playback of the remote playback queue.

5         52.     For example, the Accused Products do not include the claimed instruction "wherein

6   the instruction configures the at least one given playback device to (i) communicate with the

7   cloud-based computing system in order to obtain data identifying a next one or more media items

8   that are in the remote playback queue, (ii) use the obtained data to retrieve at least one media item

9   in the remote playback queue from the cloud-based media service; and (iii) play back the retrieved

10  at least one media item." (emphasis added).  All independent claims of the '033 patent include

11  limitations requiring "operating in a first [playback] mode."  '033 patent, Claims 1, 12 and 15.

12  While operating in this first mode, the computing device transmits an instruction to the playback

13  device, "wherein the instruction configures the at least one given playback device to (i)

14  communicate with the cloud-based computing system in order to obtain data identifying a next

15  one or more media items that are in the remote playback queue, (ii) use the obtained data to

16  retrieve at least one media item in the remote playback queue from the cloud-based media service;

17  and (iii) play back the retrieved at least one media item."  *Id*.  The Accused Products do not

18  include a single instruction (i.e., "the instruction") that performs all these functions.  While

19  Google does not admit it performs any of these claim limitations, at a minimum, it uses multiple

20  different "instructions" when a user is employing the Cast protocol to play audio on a remote

21  playback device, such as a Google Home Max.  Because these terms are included in every

22  independent claim of the '033 patent, none of the Accused Products infringe any claims of the

23  '033 patent.

24        53.     No third party infringes any claim of the '033 patent by using a Google product or

25  service.  Google has not caused, directed, requested, or facilitated any such infringement, much

26  less with specific intent to do so.  The Accused Products are not designed for use in any

27  combination which infringes any claim of the '033 patent.  To the contrary, each has substantial

28  uses that do not infringe any claim of the '033 patent.

54.     A substantial, immediate, and real controversy therefore exists between Google and Sonos regarding whether Google infringes the '033 patent.  A judicial declaration is appropriate and necessary to determine the parties' respective rights regarding the '033 patent.

55.     Google seeks a judgment declaring that Google does not directly or indirectly infringe any claim of the '033 patent.

**FOURTH COUNT**

**(Declaration of Invalidity of 10,779,033)**

56.     Google restates and incorporates by reference the allegations in paragraphs 1 through 55 of this Complaint as if fully set forth herein.

57.     Due to Sonos's filing of the complaint in the Western District of Texas and service of infringement contentions pursuant to Patent Local Rules 3-3 and 3-4, an actual controversy exists between Google and Sonos as to the validity of the '033 patent.

58.     The claims of the '033 patent are invalid, in whole or in part, for failure to meet one or more requirements of Title 35 of the United States Code, including but not limited to §§ 101, 102, 103, and/or 112.

59.     By way of example, the asserted claims of the '033 patent are invalid based on one or more of Google's own Nexus Q and YouTube TV prior art, and the prior art references listed on the face of the patents.

60.     Under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., Google requests a judicial determination and declaration that the claims of the '033 patent are invalid.

**FIFTH COUNT**

**(Declaration of Noninfringement of 10,469,966)**

61.     Google restates and incorporates by reference the allegations in paragraphs 1 through 72 of this Complaint as if fully set forth herein.

62.     Sonos claims to own all rights, title, and interest in and under the '966 patent.  A true and correct copy of the '966 patent is attached hereto as Exhibit 9.

63.     Google does not directly or indirectly infringe the '966 patent, either literally or under the doctrine of equivalents, at least because the Accused Products do not comprise a

computing device comprising: (1) one or more processors; (2) a non-transitory computer-readable medium; and (3) program instructions stored on the non-transitory computer-readable medium that, when executed by the one or more processors, cause the computing device to perform functions comprising: (4) while serving as a controller for a networked media playback system comprising a first zone player and at least two other zone players, wherein the first zone player is operating in a standalone mode in which the first zone player is configured to play back media individually: (5) receiving a first request to create a first zone scene comprising a first predefined grouping of zone players including at least the first zone player and a second zone player that are to be configured for synchronous playback of media when the first zone scene is invoked; (6) based on the first request, (i) causing creation of the first zone scene, (ii) causing an indication of the first zone scene to be transmitted to the first zone player, and (iii) causing storage of the first zone scene; (7) receiving a second request to create a second zone scene comprising a second predefined grouping of zone players including at least the first zone player and a third zone player that are to be configured for synchronous playback of media when the second zone scene is invoked, wherein the third zone player is different than the second zone player; (8) based on the second request, (i) causing creation of the second zone scene, (ii) causing an indication of the second zone scene to be transmitted to the first zone player, and (iii) causing storage of the second zone scene; (9) displaying a representation of the first zone scene and a representation of the second zone scene; and (10) while displaying the representation of the first zone scene and the representation of the second zone scene, receiving a third request to invoke the first zone scene; and (11) based on the third request, causing the first zone player to transition from operating in the standalone mode to operating in accordance with the first predefined grouping of zone players such that the first zone player is configured to coordinate with at least the second zone player to output media in synchrony with output of media by at least the second zone player.

64.     For example, the Accused Products do not include  the claimed "zone scene[s]," including at the one or more claimed "zone players."  "Zone scene" functionality is not included in any of the Accused Products.  The Accused Products in certain configurations and instances include conventional speaker grouping functionality.    But the patent repeatedly distinguishes

conventional speaker grouping from the claimed "zone scene" technology.  For example, the '966 patent describes speaker groups as "groups."  *E.g.*, '966 patent at 1:62-2:17.  To contrast, the '966 patent describes "one aspect of the present invention" as "a mechanism [] provided to allow a user to group some of the players according to a theme or scene . . . ."  *E.g., id.* 2:38-41.  None of the Accused Products provide the "zone scene" functionality as described in the '966 patent, including at the one or more claimed "zone players," but instead only contain conventional speaker grouping in certain configurations or instances.  Some products, such as the Chromecast (1st gen), do not support speaker grouping at all.  Because the term "zone scene" is included in every independent claim of the '966 patent, none of the Accused Products infringe any claims of the '966 patent.

65.     No third party infringes any claim of the '966 patent by using a Google product or service.  Google has not caused, directed, requested, or facilitated any such infringement, much less with specific intent to do so.  The Accused Products are not designed for use in any combination which infringes any claim of the '966 patent.  To the contrary, each has substantial uses that do not infringe any claim of the '966 patent.

66.     A substantial, immediate, and real controversy therefore exists between Google and Sonos regarding whether Google infringes the '966 patent.  A judicial declaration is appropriate and necessary to determine the parties' respective rights regarding the '966 patent.

67.     Google seeks a judgment declaring that Google does not directly or indirectly infringe any claim of the '966 patent.

## SIXTH COUNT

### (Declaration of Invalidity of 10,469,966)

68.     Google restates and incorporates by reference the allegations in paragraphs 1 through 79 of this Complaint as if fully set forth herein.

69.     Due to Sonos's filing of the complaint in the Western District of Texas and service of infringement contentions pursuant to Patent Local Rules 3-3 and 3-4, an actual controversy exists between Google and Sonos as to the validity of the '966 patent.

70.     The claims of the '966 patent are invalid, in whole or in part, for failure to meet one or more requirements of Title 35 of the United States Code, including but not limited to §§ 101, 102, 103, and/or 112.

71.     By way of example, the asserted claims of the '966 patent are invalid based on one or more of Sonos's own products and patents, Logitech Squeezebox devices, and the prior art references listed on the face of the patents.

72.     Under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., Google requests a judicial determination and declaration that the claims of the '966 patent are invalid.

## SEVENTH COUNT

### (Declaration of Noninfringement of 10,848,885)

73.     Google restates and incorporates by reference the allegations in paragraphs 1 through 84 of this Complaint as if fully set forth herein.

74.     Sonos claims to own all rights, title, and interest in and under the '885 patent.  A true and correct copy of the '885 patent is attached hereto as Exhibit 10.

75.     Google does not directly or indirectly infringe the '885 patent, either literally or under the doctrine of equivalents, at least because the Accused Products do not comprise a first zone player comprising: (1) a network interface that is configured to communicatively couple the first zone player to at least one data network; (2) one or more processors; (3) a non-transitory computer-readable medium; and (4) program instructions stored on the non-transitory computer-readable medium that, when executed by the one or more processors, cause the first zone player to perform functions comprising: while operating in a standalone mode in which the first zone player is configured to play back media individually in a networked media playback system comprising the first zone player and at least two other zone players: (i) receiving, from a network device over a data network, a first indication that the first zone player has been added to a first zone scene comprising a first predefined grouping of zone players including at least the first zone player and a second zone player that are to be configured for synchronous playback of media when the first zone scene is invoked; and (ii) receiving, from the network device over the data network, a second indication that the first zone player has been added to a second zone scene comprising a second

predefined grouping of zone players including at least the first zone player and a third zone player that are to be configured for synchronous playback of media when the second zone scene is invoked, wherein the second zone player is different than the third zone player; (5) after receiving the first and second indications, continuing to operate in the standalone mode until a given one of the first and second zone scenes has been selected for invocation; (6) after the given one of the first and second zone scenes has been selected for invocation, receiving, from the network device over the data network, an instruction to operate in accordance with a given one of the first and second zone scenes respectively comprising a given one of the first and second predefined groupings of zone players; and (7) based on the instruction, transitioning from operating in the standalone mode to operating in accordance with the given one of the first and second predefined groupings of zone players such that the first zone player is configured to coordinate with at least one other zone player in the given one of the first and second predefined groupings of zone players over a data network in order to output media in synchrony with output of media by the at least one other zone player in the given one of the first and second predefined groupings of zone players.

76.    For example, the Accused Products do not include the claimed "zone scene[s]," including at the one or more claimed "zone players."  "Zone scene" functionality is not included in any of the Accused Products.  The Accused Products in certain configurations and instances include conventional speaker grouping functionality.  But the patent repeatedly distinguishes conventional speaker grouping from the claimed "zone scene" technology.  For example, the '885 patent describes speaker groups as "groups."  *E.g.*, '885 patent at 1:62-2:17.  To contrast, the '966 patent describes "one aspect of the present invention" as "a mechanism [] provided to allow a user to group some of the players according to a theme or scene . . . ."  *E.g., id.* 2:38-41.  None of the Accused Products provide the "zone scene" functionality as described in the '885 patent, including at the one or more claimed "zone players," but instead only contain conventional speaker grouping in certain configurations or instances.  Some products, such as the Chromecast (1st gen), do not support speaker grouping at all.  Because the term "zone scene" is included in every independent claim of the '885 patent, none of the Accused Products infringe any claims of the '885 patent.

77.     No third party infringes any claim of the '885 patent by using a Google product or service.  Google has not caused, directed, requested, or facilitated any such infringement, much less with specific intent to do so.  The Accused Products are not designed for use in any combination which infringes any claim of the '885 patent.  To the contrary, each has substantial uses that do not infringe any claim of the '885 patent.

78.     A substantial, immediate, and real controversy therefore exists between Google and Sonos regarding whether Google infringes the '885 patent.  A judicial declaration is appropriate and necessary to determine the parties' respective rights regarding the '885 patent.

79.     Google seeks a judgment declaring that Google does not directly or indirectly infringe any claim of the '885 patent.

## EIGHTH COUNT

### (Declaration of Invalidity of 10,848,885)

80.     Google restates and incorporates by reference the allegations in paragraphs 1 through 91 of this Complaint as if fully set forth herein.

81.     Due to Sonos's filing of the complaint in the Western District of Texas and service of infringement contentions pursuant to Patent Local Rules 3-3 and 3-4, an actual controversy exists between Google and Sonos as to the validity of the '885 patent.

82.     The claims of the '885 patent are invalid, in whole or in part, for failure to meet one or more requirements of Title 35 of the United States Code, including but not limited to §§ 101, 102, 103, and/or 112.

83.     By way of example, the asserted claims of the '885 patent are invalid based on one or more of Sonos's own products and patents, Logitech Squeezebox devices, and the prior art references listed on the face of the patents.

84.     Under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., Google requests a judicial determination and declaration that the claims of the '885 patent are invalid.

1

**NINTH COUNT**

2

**(Breach of Contract)**

3        85.     Google restates and incorporates by reference the allegations in paragraphs 1

4    through 94 of this Complaint as if fully set forth herein.

5        86.     Google and Sonos entered into the Content Integration Agreement in or around

6    November 2013.  Ex. 3.  The Content Integration Agreement is a valid and enforceable contract.

7        87.     The Content Integration Agreement incorporates an implied duty of good faith and

8    fair dealing.

9        88.     Google did all or substantially all of the things that the Content Integration

10   Agreement required it to do.

11       89.     Sonos breached the terms of the Content Integration Agreement by, among other

12   things, attempting to "claim for itself or for any third party any right, title, interest or license to"

13   the Provider Developments and/or the Integrated Service Offering.

14       90.     Sonos has also breached the Content Integration Agreement by breaching the

15   implied covenant of good faith and fair dealing owed to Google by, inter alia, attempting to use

16   the collaboration information that Google shared with Sonos, including Google's disclosures to

17   Sonos, against Google.  By doing so, Sonos was acting for a purpose contrary to that for which the

18   contract was made, and prevented Google from receiving the benefits of the contract.  Sonos failed

19   to act fairly and in good faith.

20       91.     Sonos's breach was grossly negligent, willful, a breach of confidentiality and/or a

21   willful misappropriation of Google's intellectual property.

22       92.     Google has suffered economic harm and incurred damages as a direct and

23   proximate result of Sonos's breach in an amount to be proven at trial.

24       93.     Sonos's conduct was a substantial factor in causing Google harm.

25

**TENTH COUNT**

26

**(Conversion)**

27       94.     Google restates and incorporates by reference the allegations in paragraphs 1

28   through 108 of this Complaint as if fully set forth herein.

95.     Google, not Sonos, conceived of the cloud queue idea.  Thus, Google should have been named as an owner, and has a right to possession of, any patents arising from or related to the cloud queue technology, including, without limitation, Sonos's alleged "cloud queue" patents.  *See* Dkt. No. 38 (11-23-2020 Hearing Tr.) at 17:3-8.

96.     Sonos wrongfully exercised dominion over patents that Sonos contends cover Google's cloud queue idea.  For example, Sonos filed for patents that it contends cover Google's cloud queue technology, including the '033 patent that Sonos refers to as its "cloud queue patents."  Sonos named itself as the sole owner of these patents.  Sonos was aware that Google, not Sonos, came up with the idea for the cloud queue, and that excluding Google as an owner or inventor on these patents was wrongful.  By filing patents on Google's intellectual property, Sonos has willfully and without lawful justification appropriated Google's property as its own without the consent of Google.

97.     Google has suffered non-economic harm and damages, including, but not limited to, reputational harm, as a direct and proximate result of Sonos's unlawful conversion.

**PRAYER FOR RELIEF**

WHEREFORE, Google prays for judgment as follows:

A.     Declaring that the Accused Products do not infringe, directly or indirectly, the Patents-in-Suit, either literally or under the Doctrine of Equivalents;

B.     A declaration that Google does not induce infringement of the Patents-in-Suit;

C.     A declaration that Google does not contributorily infringe on the Patents-in-Suit;

D.     A declaration that judgment be entered in favor of Google and against Sonos on Google's claims;

E.     A declaration that the '033 patent and any Sonos intellectual property on the cloud queue technology is Google's and/or an order requiring Sonos to assign such intellectual property to Google;

F.     A finding that this is an exceptional case under 35 U.S.C. § 285;

1          G.     A finding that Sonos breached the Content Integration Agreement;

2          H.     An award to Google of its costs and attorneys' fees in connection with this

3   action;

4          I.     An award to Google of all remedies provided under law, including

5   monetary damages and/or imposition of a constructive trust over for Sonos's breach of the

6   Content Integration Agreement, including a constructive trust over the '033 patent and any

7   other intellectual property claimed to be owned by Sonos that covers intellectual property

8   owned by Google; and

9          J.     Granting Google such further and additional relief as the Court deems just

10   and proper.

11

12   DATED:  February 4, 2022         QUINN EMANUEL URQUHART &
         SULLIVAN, LLP

13

14

15

16

17            By      */s/ Charles K. Verhoeven*

18            Charles K. Verhoeven
         Attorneys for GOOGLE LLC

19

20

21

22

23

24

25

26

27

28

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Google respectfully demands a trial by jury on all issues triable by jury.


DATED:  February 4, 2022                    QUINN EMANUEL URQUHART &
                                            SULLIVAN, LLP


                                            By   /s/ Charles K. Verhoeven
                                               Charles K. Verhoeven
                                               Attorneys for GOOGLE LLC