# EXHIBIT 6
# (Excerpted)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SONOS, INC.,

    Plaintiff,

v.

D&M HOLDINGS, INC. d/b/a THE D+M
GROUP, D&M HOLDINGS U.S. INC., and
DENON ELECTRONICS (USA), LLC,

    Defendant.

Civil Action No. 1:14-cv-01330-RGA

## MEMORANDUM OPINION

Phillip A. Rovner, Esq., POTTER ANDERSON & CORROON LLP, Wilmington, DE; Jonathan A. Choa, Esq., POTTER ANDERSON & CORROON LLP, Wilmington, DE; George I. Lee, Esq., LEE SULLIVAN SHEA & SMITH, LLP, Chicago, IL; Sean M. Sullivan, Esq., LEE SULLIVAN SHEA & SMITH, LLP, Chicago, IL; Rory P. Shea, Esq. (argued), LEE SULLIVAN SHEA & SMITH, LLP, Chicago, IL; J. Dan Smith, Esq., LEE SULLIVAN SHEA & SMITH, LLP, Chicago, IL; Michael P. Boyea, Esq., LEE SULLIVAN SHEA & SMITH, LLP, Chicago, IL.

    Attorneys for Plaintiff

Jack B. Blumenfeld, Esq., MORRIS NICHOLS ARSHT & TUNNELL LLP, Wilmington, DE; Michael J. Flynn, Esq., MORRIS NICHOLS ARSHT & TUNNELL LLP, Wilmington, DE; John M. Jackson, Esq. (argued), JACKSON WALKER LLP, Dallas, TX; Matthew C. Acosta, Esq. (argued), JACKSON WALKER LLP, Dallas, TX; Blake T. Dietrich, Esq., JACKSON WALKER LLP, Dallas, TX; David Folsom, Esq., JACKSON WALKER LLP, Texarkana, TX.

    Attorneys for Defendants

January 12, 2017

**ANDREWS, U.S. DISTRICT JUDGE:**

Presently before the Court is the issue of claim construction of multiple terms in U.S. Patent Nos. 7,571,014 ("the '014 Patent"), 8,588,949 ("the '949 Patent"), 8,843,224 ("the '224 Patent"), 8,938,312 ("the '312 Patent"), 8,938,637 ("the '637 Patent"), 9,042,556 ("the '556 Patent"), 9,195,258 ("the '258 Patent"), 9,202,509 ("the '509 Patent"), 9,213,357 ("the '357 Patent"), 9,219,959 ("the '959 Patent"), and D559,197 ("the '197 Patent"). The Court has considered the Parties' Joint Claim Construction Brief. (D.I. 201). The Court heard oral argument on December 14, 2016. (D.I. 206) ("Hr'g Tr.").

## I. BACKGROUND

Plaintiff filed these actions on October 21, 2014, alleging infringement of four patents. (D.I. 1). Plaintiff subsequently amended its complaint (D.I. 6, 31, 102) to assert a total of twelve patents. The parties stipulated to dismissal of one asserted patent with prejudice on August 25, 2016. (D.I. 150). The remaining patents-in-suit claim devices and methods for controlling audio devices. One of the asserted patents, the '197 Patent, is a design patent with a single claim for a control strip. The only claim of the '197 patent was rejected after completion of an *ex parte* re-examination on June 29, 2016. (D.I. 208).

## II. LEGAL STANDARD

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (internal quotation marks omitted). "'[T]here is no magic formula or catechism for conducting claim construction.' Instead, the court is free to attach the appropriate weight to appropriate sources 'in light of the statutes and policies that inform patent law.'" *SoftView LLC v. Apple Inc.*, 2013 WL 4758195, at *1 (D. Del. Sept. 4, 2013) (quoting *Phillips*,

*playback devices* remain *independently clocked* during synchronous playback of the *audio information.*

('357 patent, claim 1) (disputed terms italicized).

The '959 patent is directed to a method for grouping, consolidating, and pairing networked playback devices to simulate a multi-channel listening environment. Claim 1 is representative and reads as follows:

> A *playback device* configured to output audio in a multi-channel listening environment, the *playback device* comprising:
> a *network interface* configured to receive *audio data* over a network;
> a plurality of speaker drivers configured to output audio based on the *audio data*;
> one or more processors; and
> tangible, non-transitory, computer readable memory comprising instructions encoded therein, wherein the instructions, when executed by the one or more processors, cause the *playback device* to (i) process the *audio data* before the *playback device* outputs audio from the plurality of speaker drivers, (ii) determine that a type of *pairing* of the playback device comprises one of at least a first type of *pairing* or a second type of *pairing*, (iii) configure the *playback device* to perform a first *equalization* of the audio data before outputting audio based on the *audio data* from the plurality of speaker drivers when the type of *pairing* is determined to comprise the first type of *pairing*, and (iv) configure the *playback device* to perform a second *equalization* of the *audio data* before outputting audio based on the *audio data* from the plurality of speaker drivers when the type of *pairing* is determined to comprise the second type of *pairing*.

('959 patent, claim 1) (disputed terms italicized).

**B.     Disputed Terms**

1.      "zone player"/"playback device"/"player"

   a.      *Plaintiff's proposed construction*: "A data network device configured to process and output audio"

   b.      *Defendants' proposed construction*: "A device configured to output sound waves"

   c.      *Court's construction*: "data network device configured to process and output audio"

8

These three terms appear in asserted claims in nine of the asserted patents, the '014 ("player"), '258 ("zone player"), '357, '312, '637, '959, '949, '509, and '556 ("playback device") patents. The parties agree that the three terms should have the same construction and that the construction should be the same across all of the asserted patents. (D.I. 201 at 13).

As an initial matter, the parties dispute which of these patents may serve as intrinsic evidence to the other patents for the purposes of claim construction. Specifically, Defendants object to Plaintiff's reliance on the '258 patent, which was not filed until February 20, 2014, with respect to the earlier-filed patents, including the '014 patent, the earliest filed of the asserted patents. (D.I. 216-1 at 199). Plaintiff counters that the '258 patent shares a "formal familial relationship as 'sibling'" to the '014 patent and that both claim priority to U.S. Patent No. 8,234,395 (non-asserted) ("the '395 patent).[1] (D.I. 215 at 3). Plaintiff further asserts, and Defendants acknowledge, that the '258 patent and '395 patent share a common specification. (D.I. 215 at 4; D.I. 216-1 at 199). Defendants object in part on the basis that the '258 patent is the only patent that claims a "zone player," while the other patents, including the '395 patent, claim a "playback device" and a "player." (D.I. 216-1 at 199). It seems to me, however, that this objection is irrelevant since the parties agree that these three terms should have the same construction across all the asserted patents. (D.I. 201 at 13). Furthermore, although the claims of the '395 patent refer to a "playback device," the specification describes this device as a zone player. (*See, e.g.*, '395 patent at 3:9-15).

---

[1] The '949 patent is a continuation of the '014 patent which is a continuation-in-part of the '395 patent. The '357 patent is a continuation of U.S. Patent No. 9,187,777 (not asserted) which is a continuation of the '395 patent. The '258 patent is a continuation of U.S. Patent Nos. 9,213,356 (not asserted), which is a continuation of U.S. Patent No. 9,187,777 (not asserted) which is a continuation of the '395 patent. The '637 patent is a continuation of U.S. Patent No. 8,689,036 (not asserted), which is a continuation of U.S. Patent No. 8,370,678 (not asserted), which is a continuation of U.S. Patent No. 8,020,023 (not asserted), which is a continuation-in-part of the '395 patent. The '959 patent is a continuation-in-part of U.S. Patent No. 8,788,080 (not asserted), which is a continuation of the '509 patent. Neither the '959 patent nor the '509 patent bear a familial relationship to the '395 patent. The '312, '556, and '224 patents have no familial relationship to any of the other patents at issue in the construction of these terms.

SONOS-SVG2-00018348

The intrinsic evidence relevant for claim construction includes the prosecution history and prior art cited during prosecution, and this necessarily includes ancestor patents incorporated by reference on the face of the patent. *Phillips*, 415 F.3d at 1317. The children and grandchildren of the '395 patent all incorporate the '395 patent by reference. Therefore, the specification of the '395 patent is intrinsic evidence to all the asserted patents in that family. Furthermore, the '395 patent is listed as prior art on the face of the '509, '959, and '556 patents. Only the '312 and '224 patents lack any connection to the '395 patent. Since the specification of the '258 patent is identical to that of the '395 patent, the '258 patent's specification is intrinsic evidence to all of the patents at issue except the '312 and '224 patents.

The parties first disagree as to whether the zone player outputs "sound waves" as Defendants insist or "audio" as Plaintiff asserts. As an initial matter, I will reject Defendant's construction as unreasonably broad as it is not only divorced from the invention as described in the asserted claims and the specifications, but it would also encompass all devices that have speakers. Furthermore, Defendant's construction would require that the zone player, in all embodiments, have an integrated speaker. I find no support for such a limitation. In fact, notably missing from both the claims and the specifications of all but one of the asserted patents is any mention of an integrated speaker. For example, the '014 patent states, "The zone player 200 includes a network interface 202, a processor 204, a memory module 206, an audio processing circuit 210, a digital signal processing module 212, an audio amplifier 214 and a RF interface 216." ('014 patent at 6:20-24). A speaker or speaker transducer is never mentioned in the descriptions of the device in this patent. In fact, the '395 patent, ancestor through continuation or continuation-in-part to five of the nine patents at issue in this construction, states that the zone player "may also be connected to . . . one or more audio reproduction devices." ('395 patent at

10

SONOS-SVG2-00018349

3:15-18). Furthermore, the zone player as claimed in all but one of the patents does not expressly include integrated speakers.[2] (*See* '258 patent, cl. 17; '312 patent, cl. 1; '357 patent, cl. 9; '959 patent, cl. 1; '637 patent, cl. 1). As to the '312 patent (the only patent for which the '395 patent is not intrinsic evidence), the specification clearly describes speakers as optional. ('312 patent at 7:28-35). The only asserted patent that claims a device that expressly includes a speaker transducer is the '556 patent, which does not share a familial relationship with any of the other asserted patents. ('556 patent, cl. 1). Defendants emphasized in their briefing and at oral argument Figure 1 from the '014 patent, which shows what they characterize as sound waves emanating from the zone player, as well as their understanding of the word "play" as requiring the production of sound waves. (D.I. 201 at 16, 22-23; Hr'g Tr. at 26:6-28:24). Given the intrinsic evidence discussed above, this evidence does not represent an unambiguous requirement that the zone player have an integrated speaker. While an integrated speaker is not excluded based on the claims and specifications of the various patents, it seems clear to me that one is not required and the claims of the patents clearly indicate when an integrated speaker is necessarily included as part of the zone player.

The parties further dispute whether the zone player is a network device that processes audio. The claims and specifications of the asserted patents substantially support Plaintiff's argument that the zone player is a network device that processes audio. The '395 patent describes the zone player in the context of a "network audio system". ('395 patent at 3:12). The same patent also characterizes the zone players as "digital data processing devices." (*Id.* at 2:1). The other patents in the '395 family characterize the zone player in a similar way. (*See, e.g.*, '014 patent at 4:19-20, 6:20-24). The '312 patent both claims and describes a zone player that includes a network

---

[2] The '949 and '509 patents do not include device claims.

11

SONOS-SVG2-00018350

interface and an audio processing circuit. ('312 patent at 7:30-32, cl. 1). Therefore, the intrinsic evidence indicates that the zone player claimed is a network device that processes audio. I will adopt Plaintiff's proposed construction.

2.  "network interface"

    a.  *Plaintiff's proposed construction*: "A physical component of a device that provides an interconnection with a data network"

    b.  *Defendants' proposed construction*: "A system component operable to receive data and provide it to the system"

    c.  *Court's construction*: "physical component of a device that provides an interconnection with a data network"

This term appears in the '258, '357, '014, '959, '312, and '224 patents. As discussed above, the first three of these are part of the '395 patent family. The latter three do not share a familial relationship with any of the other patents that use this term, although the '959 patent lists the '395 patent as prior art on its face. Defendants' primary argument as to the construction of this term is that the network interface need not be a component of the device itself and that including this in the construction would be an improper limitation. (D.I. 201 at 29). As support for their argument, Defendants offer a single claim from the '224 patent. (*Id.*) This claim is a method claim that recites a "method comprising: receiving, by a network interface, a data packet over a network." ('224 patent, claim 1). This method claim, however, does not say anything about which components the device in question may or may not contain. Claim 11 of the same patent, on the other hand, claims an "apparatus comprising: a network interface." (*Id.* at claim 11). In other words, the claim itself unambiguously contemplates that the network interface is a component of the zone player device. The other patents at issue contain similar language in their claims and specifications. (*See* '258 patent, cl. 17; '357 patent, cl. 9; '014 patent at 6:20-21; '959 patent, cl. 1; '312 patent, cl. 1). Furthermore, the specification of the '224 patent provides that "[t]he zone

12

however, does not use the term "multimedia." Nor does it contradict the specification's earlier description of an audio device as a multimedia player. It seems clear to me from the specification that the applicant used the term "multimedia" to include a device that plays only audio and the applicant's understanding of the meaning of the term controls even if it is not consistent with Defendants' preferred dictionary definition. The '637 patent's specification does not contain this same statement, but it does describe the claimed "digital data processing devices" which "receive multimedia information" as "zone players" which are part of a "network audio system." ('637 patent at 2:35-36, cl. 1). Therefore, I will adopt Plaintiff's proposed construction.

5. "audio signal"/"audio data"/"audio content"/"audio data stream"/"audio information"

    a. *Plaintiff's proposed construction*: "plain and ordinary meaning/no construction necessary"

    b. *Defendants' proposed construction*: "encoded sound and not the sound itself"

    c. *Court's construction*: "no construction necessary"

These terms appear in claims in eight of the asserted patents. Defendants propose to limit the meaning of all of the listed terms to exclude sound waves, but they do not propose any actual construction of the individual terms beyond this limitation. Plaintiff argues that the terms are readily understandable by a jury by considering the context in which they are used. (D.I. 201 at 30). Plaintiff further argues that the patents do not support importing Defendants' proposed limitation for all of the terms. (*Id.* at 30-31). I agree with Plaintiff that some of the terms are used in such a way as to include sound waves. For example, in the '556 patent, claim 28 states that "the speaker transducer is to receive and output the audio data stream." Since a transducer outputs sound waves, this term as used necessarily encompasses sound wave. Furthermore, claim 1 of the '357 patent requires "playback of the audio information" by the playback device. I have already determined in construing the term "playback device" that the device may output audio either in the

15

form of an audio signal to an external speaker or as sound waves from an integrated speaker.
Therefore, I read this claim to indicate that "audio information" may take the form of either an electrical signal or sound waves. It seems to me that whether each of the terms encompasses actual sound waves can readily be deduced from the context of the claims and specification. Therefore, I reject Defendants' proposed construction and decline to construe any of these terms.

6.  "independently clocked"

    a.  *Plaintiff's proposed construction*: "The phrases 'wherein the first and second zone players remain independently clocked while playing back audio in synchrony' and 'wherein the zone players in the synchrony group remain independently clocked while playing back audio in synchrony' mean that 'each zone player operates in accordance with its own respective clock during synchronous playback."

    b.  *Defendants' proposed construction*: "Operating autonomously to any external clock"

    c.  *Court's construction*: "operating in accordance with their own respective clocks during synchronous playback"

This term appears in asserted claims in the '258 and '357 patents. As discussed above, both of these patents trace direct lineage through straight continuations to the '395 patent. Both patents also share a common specification with the exception of the Incorporation by Reference section.

Defendants expend considerable effort to distinguish between the device clock and the digital-to-analog converter (DAC) clock, a distinction they consider "critical to the construction of the term." (D.I. 201 at 63). Defendants insist that the clock in the phrase "independently clocked" necessarily refers to the device clock. (*Id.* at 56). Defendants fail to cite to any intrinsic evidence supporting this position, however. I can find nothing in the claims or the specification that would indicate that "independently clocked" refers to the device clock. Rather, it is the DAC clock that is repeatedly referred to as being maintained independently by each device in the

16

In light of the final rejection issued in the *ex parte* reexamination of this patent, I decline to construe the scope of the design patent at this time.

## IV. CONCLUSION

Within five days the parties shall submit a proposed order consistent with this Memorandum Opinion suitable for submission to the jury.

23

SONOS-SVG2-00018362