# EXHIBIT 8
# (Excerpted)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SONOS, INC., § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | |
| § | Civil Action No. 14-1330-WCB |
| D&M HOLDINGS INC. d/b/a THE D+M § | |
| GROUP, D&M HOLDINGS U.S. INC., and § | |
| DENON ELECTRONICS (USA), LLC, § | |
| § | |
| *Defendants*. § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are three motions to preclude expert testimony at trial, one filed by plaintiff Sonos, Inc., and two filed by defendants D&M Holdings Inc. d/b/a The D+M Group, D&M Holdings U.S. Inc., and Denon Electronics (USA), LLC (collectively, "D&M"). Sonos seeks to exclude the testimony of D&M's invalidity expert, Dr. Jay P. Kesan. Dkt. No. 292. D&M seeks to strike all or parts of the expert opinions of (1) Sonos's damages expert, Mr. Michael E. Tate; (2) Sonos's infringement expert, Dr. Kevin C. Almeroth; and (3) Sonos's invalidity expert, Dr. Andrew Wolfe. Dkt. Nos. 299 and 300. On October 30, 2017, the Court held a hearing on the motions, at which the Court ruled on some of the issues and took some under submission. This order addresses all of the issues raised by the parties in the three motions. Sonos's motion is GRANTED in part and DENIED in part. D&M's motions are GRANTED in part and DENIED in part.

## BACKGROUND

Sonos, a seller of wireless audio equipment, has asserted several patents against D&M, one of its competitors. The asserted patents cover five features that are offered in both Sonos's

1

Although D&M challenges Dr. Almeroth's conclusions about whether or not D&M's non-infringing alternatives are commercially acceptable, D&M did not move to strike Dr. Almeroth's analysis on that ground. In any event, resolution of whether the alternatives are commercially acceptable is a question that is properly left for the jury.

Accordingly, D&M's motion to strike Mr. Tate's lost profits analysis is denied.

### IV. D&M's Motion to Strike

#### a. Dr. Almeroth and Mr. Tate's Reliance on Undisclosed Fact Witnesses

In its motion, D&M moves to strike sections of Dr. Almeroth's and Mr. Tate's expert reports that relied on previously undisclosed witnesses. Dkt. No. 300, at 2-9. The parties have since resolved this issue between themselves and have stipulated that those portions of D&M's motion are now moot. Dkt. Nos. 360, 361.

#### b. Dr. Wolfe's Opinions on the "Player" Terms

D&M seeks to strike Dr. Wolfe's opinions regarding the terms "player," "zone player," and "playback device" as being contrary to Judge Andrews' claim construction ruling. Dkt. No. 300, at 9-11. First, D&M takes issue with Dr. Wolfe's opinions that imply that a "player" must be capable of "actually rendering (i.e., playing) audio content." Id. at 10 (quoting Opening Rebuttal Expert Report of Andrew Wolfe ("Wolfe Rebuttal Report"), Dkt. No 315, Ex. E-15 ¶ 215). Second, D&M contends that Dr. Wolfe's analysis improperly excludes playback devices that "transmit[] audio data packets over a network." Id. at 11 (quoting Wolfe Rebuttal Report ¶ 218). The Court finds neither ground persuasive.

In his claim construction order, Judge Andrews ruled that the terms "zone player," "playback device," and "player" should be construed to mean "data network device configured to process and output audio." Dkt. No. 219 at 8. After discussing the extrinsic evidence, Judge

25

Case 1:14-cv-01330-WCB Document 427 Filed 11/01/17 Page 26 of 329 PageID #: 42601

Andrews concluded that a "player" does not need to have an integrated speaker or speaker transducer, but that it must contain an audio processing circuit. Id. at 9-11. Thus, Judge Andrews reasoned, a "playback device" may "output audio either in the form of an audio signal to an external speaker or as sound waves from an integrated speaker." He therefore held that the term "audio information" could "take the form of either an electrical signal or sound waves." Id. at 15-16.

Dr. Wolfe's opinion as to the term "player" is consistent with those claim constructions. First, Dr. Wolfe requires that a "player" be capable of "actually rendering (i.e., playing) audio content." Wolfe Rebuttal Report ¶ 215. Dr. Wolfe's report does not, as D&M argues, imply that a "player" must have an integrated speaker. Instead, it is clear that a playback device must simply "process and output audio," id., which is consistent with the claim construction order. As Dr. Wolfe explained in his deposition, by using the term "render" he meant "process and output," i.e., "taking something from an encoded form . . . and translating it into a sound signal, whether that be electrical or . . . physical." Dkt. No. 349, Ex. A, at 98:20-99:7.

Second, Dr. Wolfe's opinion that a person having ordinary skill in the art would understand that "transmitting audio data packets over a network does not amount to 'process[ing] and output[ting] audio,'" Wolfe Rebuttal Report ¶ 218 (alterations in original), is not inconsistent with Judge Andrews' claim construction order. In his report, Dr. Wolfe cites a number of Sonos's patents that "describe transmitting audio data over a network and playing/outputting audio as distinctly different functions." Id. A device that only sends and receives network data packets would not be processing and outputting audio. Further, a "player" must be able to process audio and output audio "either in the form of an audio signal to an external speaker or as sound waves," Dkt. No. 219, at 15-16, which suggests that a "player" must output audio signal,

26

and not only network packets. Dr. Wolfe's opinion is consistent with the claim construction order.

On this issue, D&M's motion is denied.

c. Sonos's Experts on "Copying"

D&M moves to strike the sections of Sonos's expert reports that state that D&M copied Sonos's patents in creating its HEOS products. D&M asserts three grounds in support of its motion: first, that the opinions are not based on the experts' "scientific, technical, or other specialized knowledge," Fed. R. Evid. 702(a); second, that the opinions will not "help the trier of fact to understand the evidence or to determine a fact in issue," id.; and third, that the opinions are contrary to 35 U.S.C. § 298, which prohibits using the absence of advice of counsel to prove that the accused infringer willfully infringed. The Court concludes that expert testimony on the issue of copying is not likely to be helpful to the jury, which is fully competent to evaluate the evidence and draw its own conclusion about whether D&M copied Sonos's technology and products. The Court therefore grants D&M's motion.[4]

In his opening report, Dr. Almeroth summarized the evidence he viewed as indicating that D&M evaluated and copied Sonos's patented technology. See Almeroth Report ¶¶ 601-51. Dr. Almeroth first reviewed the evidence that D&M was aware of Sonos's patents and that D&M sought to make products with Sonos-like features. Id. ¶¶ 603-08. He then categorized that evidence based on the different groups of patents Sonos is asserting. Id. ¶¶ 610-30. Finally, he analyzed additional evidence of purported copying, such as the naming, branding, marketing, user experience, and industrial design of the HEOS by Denon products, id. ¶¶ 631-51. Dr.

---

[4] While the Court agrees with D&M that Sonos's proffered expert opinions on copying are inadmissible under Rule 702, the Court finds D&M's argument based on section 258 to be without merit.

SONOS-SVG2-00018396

parties could amend their interrogatory responses after the exchange of expert reply reports. Sonos has acted consistently with the parties' agreement and the Court's scheduling order.

Accordingly, the Court denies D&M's motion to strike Dr. Wolfe's opinion regarding the priority date of the '556 patent.

IT IS SO ORDERED.

SIGNED this 1st day of November, 2017.

_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE

SONOS-SVG2-00018401