**Pages 1 - 19**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE DONNA M. RYU, MAGISTRATE JUDGE

| | |
|---|---|
| GOOGLE, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| VS. ) | **NO. 20-cv-6754-WHA (DMR)** |
| ) | |
| Sonos, Inc., ) | |
| ) | |
| Defendant. ) | |
| _____) | |

San Francisco, California
Thursday, March 24, 2022

**TRANSCRIPT OF OFFICIAL ELECTRONIC SOUND RECORDING**

**OF ZOOM WEBINAR PROCEEDINGS**

**TIME:  1:17 p.m.  -  1:42 p.m.**

**APPEARANCES VIA ZOOM:**

For Plaintiff Google, LLC:
> QUINN, EMANUEL, URQUHART & SULLIVAN LLP
> 865 S. Figueroa Street, 10th Floor
> Los Angeles, California 90017
> **BY:  NIMA HEFAZI, ESQ.**

> QUINN, EMANUEL, URQUHART & SULLIVAN LLP
> 191 N. Wacker Drive, Suite 2700
> Chicago, Illinois 60606.
> **BY:  MARC L. KAPLAN, ESQ.**

(Appearances continued on next page)

TRANSCRIBED BY: Katherine Powell Sullivan, CSR #5812, CRR, RMR

**APPEARANCES**: (via Zoom; continued)

For Defendant Sonos, Inc.:
                  LEE SULLIVAN SHEA & SMITH LLP
                  656 W Randolph Street, Floor 5W
                  Chicago, Illinois 60661
        **BY:**  **COLE B. RICHTER, ESQ.**

Also present:      Patrick Weston, Google Representative

```
 1   Thursday - March 24, 2022                              1:17 p.m.
 2                         P R O C E E D I N G S
 3                              ---o0o---
 4          THE CLERK:  Calling Civil case C-20-6754 WHA, Google
 5   LLC versus Sonos, Incorporated.
 6      Counsel, please state your appearances starting with the
 7   plaintiff's attorney.
 8          THE COURT:  Do we have an appearance from Google?
 9          MR. HEFAZI:  Sorry.  Plaintiff's attorney.  So this is
10   Nima Hefazi on behalf of Google, LLC.  With me is my colleague
11   Mark Kaplan.  And, also, we have a client representative,
12   Patrick Weston.
13          THE COURT:  Okay.  Good afternoon to you all.
14          MR. RICHTER:  Hi.  Good afternoon, everyone.  This is
15   Cole Richter on behalf of Sonos, from the firm Lee Sullivan in
16   Chicago.
17          THE COURT:  Okay.  Good afternoon.
18       We are here on Google's motion to compel further responses
19   to two interrogatories.  I've got some questions for
20   Mr. Richter to begin with.
21          MR. RICHTER:  Sure.
22          THE COURT:  So this all starts with Sonos's
23   disclosures under Patent Local Rule 3-1(g).
24       My understanding from the joint letter -- I personally did
25   not see the 3-1(g) disclosure.  It was not filed.  But I think
```

it was quoted, so I'm borrowing from the quote that Google used.

Google says that Sonos answered that by saying that its own products alone don't practice the '615 or the '033 patents, but, quote, Sonos states that a computing device (e.g. Smartphone, tablet, etc.) or other CRM provisioned with certain third-party streaming-media apps that are Sonos 'Direct Control' enabled, such as the Spotify app, practice the claimed inventions of the '615 and the '033 patents.

Mr. Richter, what does that mean, first of all?

**MR. RICHTER:** Yes, so the -- that was half of the sentence, actually that, exists in the 3-1(g) contention.

So the beginning part of that sentence, just for the record, states -- and I'm just reading it off my screen here, states that although Sonos is not aware of any Sonos product that practices the claimed inventions of the '615 and the '033 patents and, thus, no response is required by 3-1(g), Sonos states that computing device, et cetera, and the rest of the quotation is accurate.

And so Sonos provided this response to 3-1(g) to preserve it's right to rely on -- to rely on a Spotify app installed on a phone, for instance, as practicing the inventions of the '615 and '033.

So Sonos's understanding is that the 3-1(g) permits a party to identify or reserve its right to rely on something

1  later in the case.  However, Sonos has since given up that
2  right.  It's since said that we don't -- Sonos does not intend
3  to advance any argument, doesn't intend to argue that Spotify
4  practices the claimed inventions.  And so it doesn't have a
5  contention as to whether it practices, and so asking Sonos then
6  to prove one way or the other whether it does or doesn't
7  practice is no longer relevant to the case.
8          **THE COURT:**  Okay.  So just so I understand the 3-1(g),
9  the original statement, it's that it wasn't that Spotify --
10 well, you correct me.
11     Was your client saying that Spotify potentially practiced
12 the patent or that it was Spotify in conjunction with Sonos?
13 So you know-- well, why don't you explain to me what the
14 original position was.
15         **MR. RICHTER:**  Right.  Certainly, yeah.
16     So I think it actually depends on what the '615 and the
17 '033 patents cover.  So those patents are directed to apps,
18 apps that run on a phone or a tablet or a computer or the like.
19 And so the potential contention was that Spotify's app, when
20 used with a Sonos device, the app itself installed on a phone
21 would potentially practice the claims.  That's what the
22 contention was.
23     So nothing that Sonos makes itself because Sonos doesn't
24 make the Spotify app and Sonos doesn't make the phones.  But
25 that was the potential contention.  And I hope I cleared that

1  up, but happy to answer any further questions.
2          **THE COURT:**  So, in other words, if I've got the
3  Spotify app on my phone and I play Spotify, when I play it
4  through a wireless Sonos speaker, that the contention in 3-1(g)
5  was that -- you wanted to preserve the right to argue that that
6  was practicing the patent; correct?
7          **MR. RICHTER:**  Yes, that is -- that is accurate.
8      And so to be 100 percent accurate, it's the -- it would be
9  the portion of the Spotify app that's capable of doing the
10 functionality with the Sonos device.
11     A Sonos device is not actually presently necessary to meet
12 the claims, but it's -- because the claim is really directed to
13 software instructions that render a computing device installed
14 with an app capable of performing certain functions.  So it
15 would be that portion of the app that we were potentially
16 concerned with.
17         **THE COURT:**  Okay.  Has Sonos amended its 3-1(g)
18 disclosure?
19         **MR. RICHTER:**  No.  Sonos has not sought leave to amend
20 the 3-1(g) disclosure.  Sonos has communicated to Google
21 various ways that it does not intend to advance that argument.
22 But, no, Sonos has not amended that; although, Sonos would be
23 happy to if leave were granted to Sonos to do that.
24         **THE COURT:**  Okay.  Any objection to granting leave to
25 Sonos to unequivocally amend its 3-1(g) to take out that

1 | theory?

2 | I understand -- I think that the practical impact of that
3 | would be the 3-1(g) disclosure would just say that there are
4 | practicing products but for the other two patents, not for the
5 | '615 and '033.

6 | Is that correct, Mr. Richter?

7 | **MR. RICHTER:** That's correct, Your Honor.

8 | **THE COURT:** Mr. Hefazi, any objection to that
9 | amendment?

10 | **MR. HEFAZI:** So, Your Honor, we don't have an
11 | objection to removing that, but we think that the
12 | interrogatory --

13 | **THE COURT:** Stop.  I just wanted to have an answer to
14 | that, okay.

15 | **MR. HEFAZI:** Okay.

16 | **THE COURT:** So given that there's no objection, I am
17 | ordering that the 3-1(g) disclosure be amended by Friday to
18 | unambiguously show that the only things you're relying on are
19 | practicing -- are products that practice the two patents that
20 | are not at issue here today, okay.

21 | There shouldn't be any wiggle room.  You've told me you're
22 | not relying on it and so it should be really clear that you're
23 | not.  Okay.

24 | **MR. RICHTER:** Understood, Your Honor.

25 | **THE COURT:** Okay.  So now we're going to have an

1  unambiguous statement that they're not relying on that, that
2  knocks out most if not all of the relevance.  But I bet,
3  Mr. Hefazi, you're going to tell me it's still relevant for
4  something.  So tell me why I should direct discovery given that
5  that theory is no longer in the case.
6          **MR. HEFAZI:**  Yes, Your Honor.
7      So I think the point is that Sonos cannot cut off relevant
8  discovery by saying it does not intend to rely upon it.  And
9  I'm going to give you some ways that this is relevant, but I
10 think the *Gamevice* case that we cited in our letter brief is
11 directly on point where Magistrate Judge Hixson explained that,
12 "This interrogatory is not limited to asking Nintendo only for
13 information that Nintendo thinks is helpful to its case,
14 leaving out information that Nintendo grudgingly admits is
15 true."
16     So here we have not heard Sonos say that it does not
17 actually contend that the Spotify application that is enabled
18 with what they call Sonos Direct Control does not practice the
19 claims.  And the way that it is relevant to obtain a chart is
20 it's relevant to various things.
21     Let me give you one example, is validity.  We have charted
22 the Spotify application, an earlier version, a prior art
23 version, and have charted them against the '615 and '033
24 patents.
25     Now, we have asked for Sonos's contentions regarding the

1   current Spotify application because that chart will -- and the
2   mapping that Sonos provides in that chart will be highly
3   relevant to whether the same functionality in the prior art
4   Spotify application discloses the invention.
5           There's an age-old maxim that, that which infringes if
6   earlier anticipates.  So if Spotify is pointing to the same
7   features or functionality as the basis for that statement, then
8   Google will be able to show that that same functionality exists
9   in the '033 and '615 patents.
10          And so that is one example of where it's relevant to
11  liability.  I want to also give you an example of where it's
12  relevant to other issues such as damages.
13          There is an issue here with product marking.  We argue
14  that Sonos failed to meet the marking requirements of section
15  287.  And so one of the issues there is whether the Spotify
16  application that they identified is a practicing product that
17  was unmarked.  So knowing whether Sonos does or does not
18  contend a product practices is relevant to marking.  And it's
19  also relevant to damages in other ways, such as noninfringing
20  alternatives, including whether there are -- you know, whether
21  the use of the Spotify technology would be one example of a
22  noninfringing alternative.
23          So I think it cuts across liability and damages.  And the
24  fact that Sonos does not affirmatively believe that it's
25  helpful to its case doesn't mean that it can leave out

1  information that it has identified in its 3-1(g) contentions as
2  being true, which is exactly what Magistrate Judge Hixson found
3  in the *Gamevice* case.
4        **THE COURT:** Didn't they just take damages off the
5  table?
6      If they're not going to be able to rely on that for their
7  damages model, they can't say, oh, well, you know, it practices
8  through Spotify and, therefore, this is -- you know, both for
9  damages and for validity, you know, this was something that has
10 value and meets a need, et cetera, et cetera.
11     They're not going to rely on it for that purpose.  So I'm
12 not sure I understand, at least, how it's relevant on the
13 damages issues that you just identified.  Maybe I'm missing
14 something.
15       **MR. HEFAZI:** Yeah, I think you're right.  It's not
16 relevant for their affirmative case.  But with respect to, for
17 example, marking, knowing whether they contend Spotify is a
18 practicing product is something that is relevant to our marking
19 case.
20     For example, if we -- we have identified the Spotify
21 application as a product that should have been marked.  And
22 knowing whether Sonos contends that that is not a practicing
23 product or is a practicing product defines the kind of
24 boundaries of whether something should be marked or not be
25 marked.

1    **THE COURT:** Well, that's a defense to their damages;
2 right?
3    **MR. HEFAZI:** Correct.
4    **THE COURT:** Yeah. Well, their damages are not going
5 to be able to rely on Spotify because that just came out of the
6 case. So I'm still not understanding.
7    **MR. HEFAZI:** Yeah, so I think the issue becomes one of
8 with respect to marking. So they can't rely on Spotify for
9 their damages case, but in order -- so Section 287 provides
10 that a party that fails to mark a practicing product cannot
11 acquire damages prior to providing notice, actual notice of the
12 patent and of the alleged infringement.
13    So if Sonos believes that the products practice the
14 claims, Google needs to identify.
15    **THE COURT:** Mr. Hefazi, I'm sorry to keep going around
16 in circles, but they just withdrew that theory. They cannot
17 rely on an argument that Spotify practices these patents.
18    **MR. HEFAZI:** Correct. But for purposes of marking, we
19 need to be able to identify a product that does practice;
20 right?
21    So with respect to marking right, if -- they can say that
22 it's not a practicing product, but Google should be allowed to
23 say this is a practicing product that you failed to mark and,
24 therefore, damages are limited. You've identified this as a
25 practicing product and, therefore, damages are limited. Sounds

1  like I'm not persuading you with that point.
2          **THE COURT:**  You're not persuading me so far, but let
3  me hear Mr. Richter on the -- you've identified two ways you
4  believe this information is relevant and discoverable even
5  though Mr. Richter and his client will be taking back any
6  reliance on the 3-1(g) identification of Spotify as practicing
7  those two patents.
8      So, Mr. Richter, let me hear your rebuttal.
9          **MR. RICHTER:**  Yes.  Thank you, Your Honor.
10     So the idea that an alleged infringer would identify a
11 potentially practicing product is a contention of the alleged
12 infringer.  It's not a contention of the patent owner.  And so
13 Mr. Hefazi is articulating, actually, Google's contention that
14 Spotify practices.
15         **THE COURT:**  Right.
16         **MR. RICHTER:**  And Google has issued an interrogatory
17 to Sonos saying if Sonos disagrees with this, please explain
18 how.  And Sonos has answered that interrogatory, so -- so
19 there's nothing left, in Sonos's view, to provide on this.
20     Google seems to be asking the Court to -- to allow Google
21 to come to Sonos and say, How about this product, does it
22 practice?  Okay.  How about this product, does it practice?
23         **THE COURT:**  Mr. Richter, you're not really answering
24 my question.
25         **MR. RICHTER:**  Okay.

1    **THE COURT:**  And your letter didn't either.  I mean,
2  Google identified what they said were -- they told me why they
3  think this is relevant, why this discovery should be permitted
4  because it falls within Rule 26.
5    And so even taking back the 3-1(g), Mr. Hefazi says it's
6  still relevant.  He articulated two theories.  I want to hear
7  your rebuttal on those two theories.  Why is it not relevant to
8  prior art issue on validity and damages on marking?
9    **MR. RICHTER:**  Okay.  So let me start with the prior
10 art.  So what they've actually identified in prior art is
11 something that came before, as prior art has to.
12    Spotify Direct Control with Sonos was not released until
13 five or six years after the patent's priority date, and so
14 that's not what they're contending is prior art.  And if it is,
15 it's certainly not prior.  So that's something completely
16 different.  So it's not relevant to prior art because it's a
17 different part of the Spotify app.
18    And as for damages, again, that's Google's contention that
19 Spotify practices.  Sonos does not have a belief that Spotify
20 currently practices the patent, so asking -- there's no
21 discoverable information there.  There's nothing for Sonos to
22 respond with.
23    **THE COURT:**  Mr. Richter --
24    **MR. RICHTER:**  Yes.
25    **THE COURT:**  -- so let me ask you, if your client were

1  to respond directly to these two interrogatories, would it say
2  that Sonos -- Sonos's position is that Spotify does not
3  practice these patents?
4      **MR. RICHTER:**  No, that would not be accurate because
5  that would actually assume that Sonos has determined or has the
6  necessary information to determine that Spotify does not
7  practice.
8      I'm saying that there's no belief one way or the other.
9  Sonos isn't advancing an argument, one way or the other, that
10 Spotify with Sonos practices, partly because Spotify has that
11 information.  Sonos does not have it.  Sonos does not have
12 information to make an affirmative case one way or the other on
13 that.
14     **MR. HEFAZI:**  Your Honor, may I address that?
15     **THE COURT:**  Yes, briefly.
16     **MR. HEFAZI:**  Yeah, so, Your Honor, I think that
17 argument is misleading.  This is not some random third-party
18 application Spotify that we're referring to.  This is a Spotify
19 application with a Sonos integration.  They call it their
20 Direct Control.  That's the functionality.
21     And I really don't understand Sonos's current position
22 that they don't have the information necessary to make the
23 claim that the Spotify Direct Control-enabled app practices the
24 claim when they included that very statement in their 3-1(g)
25 statement.

1    And, in addition to that, Your Honor, up until recently
2 the Spotify app and its use with the Google products and Google
3 system, Sonos had accused that without having the Spotify
4 source code or the Spotify materials that Mr. Richter is now
5 pointing to.
6    They still served the claim chart and they mapped it.  So
7 what we see is Sonos has the ability to refer to Spotify as a
8 practicing product when it's helpful to its case but wants to
9 foreclose discovery when it's not helpful to its case.
10    And the last point I will make is, Mr. --
11    **THE COURT:**  Why can't Google map it?  If it's your
12 affirmative -- I --
13       (Unreportable simultaneous colloquy.)
14    **MR. HEFAZI:**  -- our mapping.
15    So Sonos disputes our interpretation of the claim.  That's
16 why there's particular dispute.  So Sonos's basis, in its
17 interpretation of the claims and how it maps it, provides
18 insight.
19    And in terms of Mr. Richter's statement that the Spotify
20 application that they're pointing to came out later, that's --
21 that's true, but that doesn't mean that features within it were
22 not in the prior art system.
23    You know, you have various versions of products.  Your
24 Apple iPhone came out in 2008.  That doesn't mean that features
25 that are released in the 2020 model didn't exist in the 2008

1    model.

2    So we need to understand what Sonos is pointing to, what
3    its basis was when it made this statement in the 3-1(g), a
4    statement that Mr. Richter is not willing to say, at this
5    point, is inaccurate so that we can kind of support our
6    affirmative case.  It's not enough that Sonos wants to cut off
7    relevant discovery for its case.

8    **THE COURT:**  Mr. Richter, what I hear Sonos is saying,
9    first of all, we're not going to rely on making the argument
10   that Spotify practices the patents.  So that's clear.  But as
11   to whether it actually does, whether you're going to rely on it
12   or not, right, kind of straddling the fence saying, well, we
13   don't know one way or the other.  We don't know.  We haven't
14   looked into it completely.

15   So what I don't want to see happen is Sonos later deciding
16   whether it practices it or not or making -- coming out one way
17   or the other down the line.

18   Is that going to happen here?

19   **MR. RICHTER:**  Down the line in this case, Your Honor?

20   **THE COURT:**  Yeah.

21   **MR. RICHTER:**  No, that's not going to happen at all.
22   Sonos has disclaimed as -- as far as Sonos understands, Sonos
23   has disclaimed the right to advance any argument in this case
24   that Spotify, with Sonos, practices the claims.

25   **THE COURT:**  So any argument at all, whether it's

1  affirmative or defensive, we're not going to see some claim by
2  Sonos that Spotify actually practices the patents?
3          **MR. RICHTER:**  Yes, that is correct.  In this case,
4  Your Honor, Sonos does not intend to take a position that it
5  does or does not practice, helpful or hurtful to Sonos's case.
6  No argument.
7          **MR. HEFAZI:**  Your Honor, briefly.  This is the exact
8  argument that was made in the *Gamevice* case.  In the *Gamevice*
9  case --
10          **THE COURT:**  It's a little different.  It's a little
11 different.  I understand.  And it's Judge Hixson.  And I'm
12 Judge Ryu.  And we may come out a little differently.  There's
13 nothing wrong with that.  I understand what his ruling says.  I
14 don't know the complete history and context in which he made
15 that decision.  But here is my decision, okay:
16         First of all, Sonos will be held to a couple of things.
17 First of all, by Friday they must unequivocally amend their
18 3-1(g) so it's clear they're not relying on an argument or
19 position that Spotify practices these patents.
20         Number two, they have represented to me, and it's going to
21 be in the minute order today, that Sonos will never, in this
22 litigation, take a position, whether affirmatively or
23 defensively, that Spotify does or does not practice these
24 patents, okay.  So that means that the scope of relevance is --
25 we look to Rule 26(b)(1), which is that discoverable material

1  has to be relevant and proportional.
2       So, Mr. Hefazi, you have articulated some relevance.  You
3  said, well, if we make them chart it out, it will help us infer
4  kind of, you know, and maybe make some arguments on prior art
5  if you make them do that, Judge, but it's not directly on
6  point.
7       And, two, on damages, as I said, they're not making that
8  damage argument on marking.  Maybe Google will, so maybe Google
9  has some incentive to do its own charting of that and
10 explanation to Judge Alsup or to a jury about that.  But that's
11 something Google can do.  It's not something that I think makes
12 sense to force Sonos to do.
13      So under 3-1(g) it has to be relevant and proportional.
14 Proportionality looks at, among other things, the importance of
15 this discovery in resolving the issues.  I don't think it's
16 high importance to the issues in the case.
17      It also looks at the parties' relative access to the
18 information and whether the burden or the expense of the
19 discovery outweighs its likely benefit.  And here we are
20 talking about third party source code.  Even though you said
21 it's sort of a partnership between Spotify and Sonos, at some
22 level we'd still have to look to Spotify to provide some of
23 that information.
24      So when you look at all that together, I find that
25 although there may be some relevance that's been articulated on

```
 1  the record, it's not proportional; and, overall, the burden
 2  outweighs the likely benefit for the reasons that I've just
 3  stated.
 4      So I'm not going to compel Sonos to give further responses
 5  with respect to Spotify and practicing its claims but based on
 6  Mr. Richter's representation as well as the anticipated
 7  amendment.  Okay?
 8          MR. HEFAZI:  Thank you, Your Honor.
 9          THE COURT:  All right.  Thank you, everyone.
10          MR. RICHTER:  Thank you, Your Honor.
11          MR. KAPLAN:  Thank you.
12          THE CLERK:  This Court is now adjourned.
13               (Proceedings adjourned at 1:42 p.m.)
14                          ---o0o---
15
16
17
18
19
20
21
22
23
24
25
```

**CERTIFICATE OF TRANSCRIBER**

I, Katherine Powell Sullivan, CSR NO. 5812, RMR, CRR, certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U.S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.

DATE:  Thursday, March 31, 2022

_____

Katherine Powell Sullivan, Transcriber