1  CLEMENT SETH ROBERTS (STATE BAR NO. 209203)
   croberts@orrick.com
2  BAS DE BLANK (STATE BAR NO. 191487)
   basdeblank@orrick.com
3  ALYSSA CARIDIS (STATE BAR NO. 260103)
   acaridis@orrick.com
4  EVAN D. BREWER (STATE BAR NO. 304411)
   ebrewer@orrick.com
5  ORRICK, HERRINGTON & SUTCLIFFE LLP
   The Orrick Building
6  405 Howard Street
   San Francisco, CA 94105-2669
7  Telephone:    +1 415 773 5700
   Facsimile:    +1 415 773 5759
8
   SEAN M. SULLIVAN (admitted *pro hac vice*)
9  sullivan@ls3ip.com
   COLE RICHTER (admitted *pro hac vice*)
10 richter@ls3ip.com
   LEE SULLIVAN SHEA & SMITH LLP
11 656 W Randolph St., Floor 5W
   Chicago, IL 60661
12 Telephone:    +1 312 754 0002
   Facsimile:    +1 312 754 0003
13
   *Attorneys for Sonos, Inc.*

14

15

16                    UNITED STATES DISTRICT COURT

17                  NORTHERN DISTRICT OF CALIFORNIA

18                     SAN FRANCISCO DIVISION

19 GOOGLE LLC,                          Case No. 3:20-cv-06754-WHA

20        Plaintiff and Counter-defendant,   **SONOS, INC.'S REPLY CLAIM
                                             CONSTRUCTION BRIEF**
21        v.
                                        Judge: Hon. William Alsup
22 SONOS, INC.,                         Complaint Filed: September 28, 2020

23        Defendant and Counter-claimant.

24

25

26

27

28

# TABLE OF CONTENTS

**Page(s)**

I.    THE PRELIMINARY TEXAS *MARKMAN* PROCEEDINGS .................................................. 1

II.   CLAIM CONSTRUCTION DISPUTES ............................................................................. 4

   A.   "ZONE PLAYER" / "PLAYBACK DEVICE" ................................................................ 4

   B.   "PLAYBACK QUEUE" ............................................................................................. 7

   C.   "RESOURCE LOCATOR" ........................................................................................ 11

   D.   "A MEDIA PARTICULAR PLAYBACK SYSTEM" ...................................................... 14

III.  CONCLUSION ........................................................................................................ 15

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

5
*In re Abbott Diabetes Care Inc.*,
    696 F.3d 1142 (Fed. Cir. 2012) ............................................................................................ 4

6
*Apple, Inc. v. Ameranth, Inc.*,
    842 F.3d 1229 (Fed. Cir. 2016) .......................................................................................... 10

7

8
*Christianson v. Colt Indus. Operating Corp.*,
    486 U.S. 800 (1988) ........................................................................................................ 1, 2

9

10
*Eon CorpIP Holdings LLC v. Aruba Networks Inc.*,
    62 F. Supp. 3d 942 (N.D. Cal. 2014) ................................................................................... 4

11
*Galen v. Redfin Corp.*,
    No. 14-cv-5229-TEH, 2015 WL 7734137 (N.D. Cal. Dec. 1, 2015) .............................. 1, 2, 3

12

13
*GPNE Corp. v. Apple Inc.*,
    830 F.3d 1365 (Fed. Cir. 2016) ........................................................................................... 6

14

15
*NeoMagic Corp. v. Trident Microsystems, Inc.*,
    287 F.3d 1062 (Fed.Cir.2002) ............................................................................................ 4

16
*OSRAM Sylvania, Inc. v. Am. Induction Techs., Inc.*,
    701 F.3d 698 (Fed. Cir. 2012) ...................................................................................... 1, 2, 3

17

18
*Profectus Tech. LLC v. Huawei Techs. Co.*,
    823 F.3d 1375 (Fed. Cir. 2016) ........................................................................................ 6, 7

19

20
*Realtime Data LLC v. Reduxio Sys., Inc.*,
    831 F. App'x 492 (Fed. Cir. 2020) ...................................................................................... 2

21
*SmithKline Beecham Corp. v. Apotex Corp.*,
    403 F.3d 1331 (Fed.Cir.2005) ............................................................................................ 4

22

23
*United States v. Alexander*,
    106 F.3d 874 (9th Cir. 1997) .............................................................................................. 3

24

25
*United States v. U.S. Smelting Ref. & Mining Co.*,
    339 U.S. 186 (1950) ........................................................................................................... 1

26
**Other Authorities**

27
37 C.F.R. § 1.181 .................................................................................................................... 14

28
1B J. Moore, J. Lucas, & T. Currier, Moore's Federal Practice P0.404[1] (1984) ...................... 1

SONOS, INC.'S REPLY CLAIM
CONSTRUCTION BRIEF
3:20-cv-06754-WHA

Federal Practice & Procedure § 4478.5 ................................................................................. 1

Patent Local Rule 4-1 ............................................................................................................... 3

Patent Local Rule 4-2 ........................................................................................................... 7, 8

Patent Local Rule 4-3 ............................................................................................................... 5

1   **I.      THE PRELIMINARY TEXAS *MARKMAN* PROCEEDINGS**

2          Google takes two contradictory positions in the first pages of its responsive brief: (1) the

3   Texas Court already conducted *Markman* proceedings; thus, Sonos ought not to advance claim

4   constructions to **this Court** and (2) Google may ask **this Court** to adopt brand-new constructions

5   for a term that was at issue in the Texas *Markman* proceedings.  Neither proposition is correct.

6          As an initial matter, the law of the case doctrine does not apply.  Judge Albright issued no

7   *Markman* opinion and order – let alone an opinion and order containing the kind of reasoned factual

8   and legal analysis which the Federal Circuit could meaningfully examine on appeal.  As a result, if

9   this Court were to adopt Judge Albright's "preliminary constructions" as "law of the case," any

10  future attempt by Sonos (or Google) to appeal these constructions would be remanded pursuant to

11  *OSRAM Sylvania, Inc.*, and result in a massive waste of party and judicial resources.  Google's

12  opposition brief fails to confront this issue.

13         Google's argument that *Christianson* supports Google's position is also wrong in view of

14  the fact that Judge Albright did not issue a final, reasoned order.  Google argues that Judge Albright

15  gave no indication at the Markman hearing that he was likely to change his mind – but as this Court

16  knows, one of the reasons courts issue orders is because, in the process of crafting such an order,

17  ideas and opinions often evolve.  This is why a final *reasoned* decision is essential to the application

18  of the law of the case doctrine.  In quoting Moore's Federal Practice, the Supreme Court stated that

19  the law of the case doctrine "promotes the ***finality*** and efficiency of the judicial process by

20  'protecting against the agitation of ***settled*** issues.'"  *Christianson v. Colt Indus. Operating Corp.*,

21  486 U.S. 800, 816 (1988) (*quoting* 1B J. Moore, J. Lucas, & T. Currier, Moore's Federal Practice

22  P0.404[1], p. 118 (1984)).  Applying the "law of the case" doctrine to preliminary constructions

23  and to a couple of (conclusory) comments in a *Markman* hearing transcript would have exactly the

24  opposite effect.  *See United States v. U.S. Smelting Ref. & Mining Co*., 339 U.S. 186, 199 (1950)

25  ("[I]t requires a final judgment to sustain the application of the rule of the law of the case just as it

26  does for the kindred rule of res judicata."); *Galen v. Redfin Corp*., No. 14-cv-5229-TEH, 2015 WL

27  7734137, at *3 (N.D. Cal. Dec. 1, 2015) ("'[O]nly a final ruling supports law of the case'") (*quoting*

28  Federal Practice & Procedure § 4478.5).

SONOS, INC.'S REPLY CLAIM
CONSTRUCTION BRIEF
3:20-cv-06754-WHA

1    Google's argument that Judge Albright "did provide his reasoning" and therefore, the

2    *Markman* proceedings can support application of "law of the case" is also wrong.   Google cites

3    only two sentences from that hearing where Judge Albright is allegedly providing his reasoning,

4    and all they say is that he does not agree that there was a "scrivner's error" and that he "[did not]

5    believe" he could correct the error.   Google's Responsive Claim Construction Brief ("G.Br.") at 2.

6    This two-sentence passage is hardly a final order, and it does not provide the kind of meaningful

7    analysis which the Federal Circuit could effectively review.   *See OSRAM Sylvania, Inc. v. Am.*

8    *Induction Techs., Inc.*, 701 F.3d 698, 707 (Fed. Cir. 2012) ("[T]his court must be furnished

9    sufficient findings and reasoning to permit meaningful appellate scrutiny. Where, as here, the

10   record is devoid of meaningful analysis, we will not conduct such an analysis in the first instance.")

11   (internal quotation marks and citations omitted).[1]   Google appears to recognize this and

12   immediately backtracks, arguing that, "regardless of whether Judge Albright explained his decision

13   or issued a written order," "law of the case" still applies.  G.Br. 4.  But that is wrong.  Law of the

14   case does not apply where there is no final ***decision*** to apply and because adopting the preliminary

15   constructions and a couple of conclusory sentences from a *Markman* hearing transcript would not

16   permit the Federal Circuit to conduct a meaningful review on appeal.[2]

17   Google also fails to address any of the factors that courts routinely consider when

18   determining whether "law of the case" applies.  When weighing whether to exercise discretion to

19   apply "law of the case," courts consider whether "(1) the first decision was clearly erroneous; (2)

20

21   _____

22   [1] While Google attempts to distinguish Sonos's citation of *Realtime Data LLC v. Reduxio Sys., Inc.*, 831 F. App'x 492, 493 (Fed. Cir. 2020), Google fails to address Sonos's citation of *OSRAM*, 701

23   F.3d at 707.  *OSRAM* explains that to facilitate appeal, the Federal Circuit must be furnished with sufficient factual findings and legal reasoning to permit "meaningful appellate scrutiny" in the first

24   instance.  *Id.*  This is true both for issues of law, like claim construction, and issues of fact, like invalidity.  Judge Albright provided no such findings or reasoning and thus, applying "law of the

25   case" here to hold a claim invalid would work a manifest injustice as it would preclude appellate review.

26   [2] Google mischaracterizes Sonos's argument as oral orders can never serve as the basis for "law of the case."  Sonos does not argue this.  Sonos argues only that applying "law of the case" requires

27   an actual final decision supported by reasoned analysis that would permit a party to take appeal from the adoption of the prior "decision."  *See OSRAM*, 701 F.3d at 707; *Christianson*, 486 U.S. at

28   816.

SONOS, INC.'S REPLY CLAIM
CONSTRUCTION BRIEF
3:20-cv-06754-WHA

an intervening change in the law has occurred; (3) the evidence on remand is substantially different; (4) other changed circumstances exist; or (5) a manifest injustice would otherwise result." *Galen*, 2015 WL 7734137, at *4 (*citing United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997)).  If any one or more of these factors are present, it is "an abuse of discretion to apply the law of the case doctrine …." *Id.*  But, as explained in Sonos's opening brief and below, the claim term "a media particular playback system" can and should be corrected to remove the stray word "particular" and thus, even if Google were correct that Judge Albright had finally decided this issue, it was clearly erroneous.  In addition, changed circumstances exist insofar as the case was transferred (at Google's request) prior to the Texas Court issuing any final claim construction opinion or order and, once here, the parties engaged in *Markman* proceedings under Patent L.R. 4-1 *et seq.*  Google failed to brief certain terms under this Court's local rules, yet asks the Court to rule on those terms.  This is an improper end-run around the Court's limit on the number of terms for briefing.  If Google wanted this Court's affirmative ruling on the construction of certain claim terms, it ought to have presented arguments and evidence in support thereof in its brief in accordance with Patent L.R. 4 and given Sonos a fair chance to respond.  And a manifest injustice would result if this Court were to adopt Judge Albright's preliminary constructions because doing so would create a record which could not meaningfully be reviewed on appeal.  *See OSRAM*, 701 F.3d at 707.

Google also argues that, even though Sonos is supposedly precluded from asking this Court to rule on Sonos's claim construction positions (and that this Court ought to adopt preliminary constructions for terms that Google failed to brief here), Google is not similarly precluded because Google's proposed constructions are allegedly necessary in view of Sonos's amendments to its infringement contentions.  Google has it backward in two respects.

First, the infringement contention amendments to which Google refers were done ***in response to*** Google's belated claim construction proposals, not the other way around.  Sonos sought leave (which was granted) to amend its contentions to provide back-up theories to address new constructions which Google had ***not*** advanced in Texas.  Dkt. 167.  There is nothing in the rules that allows Google to (once again) move the goalposts in response to Sonos's disclosure of those

1  back-up theories.

2          Second, a patentee's infringement contentions are not a valid basis for a party to offer a

3  belated claim construction.  Google's brief admits that it is advancing these new claim construction

4  positions in an effort to create a noninfringement argument – and not because there is some piece

5  of intrinsic or extrinsic evidence that has belatedly come to light and bears on the proper scope of

6  the claims.  G.Br. 5 ("It was through these [infringement contention] amendments that Google

7  determined that a claim construction was necessary .…").  This is improper – and a party's

8  infringement contentions (let alone its back-up contentions) are not evidence of how claims should

9  be construed.  *See Eon Corp IP Holdings LLC v. Aruba Networks Inc*., 62 F. Supp. 3d 942, 953

10  (N.D. Cal. 2014) ("The Court will not, however, use the accused product or the infringement

11  contentions as any kind of evidence in construing the claims.") (relying on *NeoMagic Corp. v.*

12  *Trident Microsystems, Inc*., 287 F.3d 1062 (Fed.Cir.2002); *SmithKline Beecham Corp. v. Apotex*

13  *Corp*., 403 F.3d 1331 (Fed.Cir.2005)).  Yet, Google admits that it is seeking to do exactly that.

14  G.Br. 5 ("Sonos's new infringement theories constitute new evidence.").

15          The Court should not, therefore, apply the law of the case doctrine to Judge Albright's

16  preliminary constructions or to his (brief) comments during the *Markman* proceeding, nor should

17  it allow Google to provide yet another ***new*** claim construction in response to Sonos's disclosure of

18  back-up infringement contentions (which were, in themselves, provided in response to Google

19  offering a new claim construction).

20  **II.     CLAIM CONSTRUCTION DISPUTES**

21          **A.     "ZONE PLAYER" / "PLAYBACK DEVICE"**

22          According to Google, "zone players" in Sonos's patents are merely "audio players within a

23  zone[.]"  G.Br. 7.  While it is true that a "zone player" must be able to output audio, Sonos's patents

24  repeatedly and consistently explain that a "zone player" is more than an audio output device that is

25  located "within a zone."  *See, e.g.*, *In re Abbott Diabetes Care Inc.*, 696 F.3d 1142, 1150 (Fed. Cir.

26  2012) ("[E]ven when guidance is not provided in explicit definitional format, the specification may

27  define claim terms by implication .…").  Instead, as explained in Sonos's Opening Brief, the terms

28  "zone player" and "playback device" in Sonos's patents unequivocally refer to a ***data network***

SONOS, INC.'S REPLY CLAIM
CONSTRUCTION BRIEF
3:20-cv-06754-WHA

1    device that is configured to ***process*** and output audio.

2            In fact, Google previously conceded in the ITC action that these ***exact same*** claim terms

3    should be construed as Sonos has proposed here.  While Google now tries to downplay that

4    concession, analogous (and at times, identical) intrinsic evidence found in the patents at issue in

5    the ITC are found in the patents at issue here, all of which Sonos identified in its Opening Brief.[3]

6            Most notably, the ***same exact*** sentence that Google plucked from the Zone Scene

7    specification to support its position that a "zone player" is merely an "audio player[] within a zone"[4]

8    is also found in three of the five ITC patents for which Google conceded that "zone player" and

9    "playback device" should be construed as Sonos proposes here.  Ex. 20, 4:62-64; Ex. 21, 5:48-50;

10   Ex. 22, 5:37-39.[5]  Thus, this single sentence does not diminish the intrinsic evidence supporting

11   Sonos's construction, or Google's prior concession.

12           To further justify backtracking on its prior concession, Google misrepresents the Texas

13   *Markman* hearing in stating that Judge Albright "rejected" Sonos's construction for "data network."

14   G.Br. 8.  This is not accurate.  Instead, Judge Albright ***deferred*** ruling on that term and explained

15   that Sonos was "absolutely right" that it could advance its construction for "data network" at a later

16   time and he was not "saying that the proposed construction was incorrect ...."  G.Ex. 1, 5:13-6:21.[6]

17           Google also contends that Sonos's construction of "zone player" "adds ambiguity to the

18   term" apparently because ***Google*** does not understand what the phrase "process audio" means.

19   G.Br. 8.[7]  But no ***POSITA*** would have any trouble understanding this aspect of Sonos's proposed

20   construction in the context of Sonos's patents.  In fact, none of Google, countless experts, the Chief

21   ITC ALJ, nor the Commission had any trouble understanding what this phrase meant in the ITC

22   _____

23   [3] Google incorrectly states that the Direct Control Patents from Dec. 2011 were filed "more than six years after the ITC and *D&M* patents." G.Br. 10-11.  For example, USP 9,219,959 (at issue in

24   ITC and *D&M*) was filed Jan. 25, 2011; USP 8,938,312 (*D&M*) was filed Apr. 18, 2011; and USP 9,042,556 (*D&M*) was filed Jul. 19, 2011.

25   [4]"Each of the audio devices may be installed or provided in one particular area or zone and hence referred to as a zone player herein." G.Br. 7 quoting '966 Patent, 4:46-48.

26   [5] Exhibits 20-25 cited herein as "Ex." are submitted with this Reply Brief.

27   [6] Exhibits cited herein as "G.Ex." were submitted with Google's Responsive Brief.

     [7] Google's suggestion that Sonos "waived" its construction of "data network" is misplaced (G.Br.

28   8), as the parties selected only a subset of their disputes to brief. *See* Dkt. 67, ¶22; PLR 4-3(c). Sonos's position on "data network" is preserved in the JCCS. Dkt. 126 at 24.

SONOS, INC.'S REPLY CLAIM
CONSTRUCTION BRIEF
3:20-cv-06754-WHA

1   action, where each one of Google's accused media players (at issue here) were found to be
2   configured to "process audio." *See, e.g.*, Ex. 25 at 2, 13-15, 17, 91-92.

3        Google also argues that the Asserted Patents disclose "non-data networking and audio
4   processing embodiments" that would be excluded by Sonos's proposed construction.  G.Br. 8. But
5   Google is unable to identify any such embodiments in the Asserted Patents, and therefore, the
6   specifications' repeated and uniform description of a "zone player" being a ***data network*** device
7   that is configured to ***process*** and output audio should be applied to the claim term.  *See, e.g.*,
8   *Profectus Tech. LLC v. Huawei Techs. Co.*, 823 F.3d 1375, 1381 (Fed. Cir. 2016) (upholding
9   construction requiring certain features where opposing party "fail[ed] to pinpoint in the intrinsic
10  record where the patent contemplates a situation where" the features did not exist); *GPNE Corp. v.*
11  *Apple Inc.*, 830 F.3d 1365, 1370 (Fed. Cir. 2016) ("[W]hen a patent 'repeatedly and consistently'
12  characterizes a claim term in a particular way, it is proper to construe the claim term in accordance
13  with that characterization.").

14       For instance, Google contorts the teachings of the Asserted Patents in an effort to sow
15  confusion as to the distinctions between Sonos's networked audio system and conventional hard-
16  wired systems.  G.Br. 9.  But the difference is clear.  As explained in Sonos's Opening Brief
17  ("Op.Br."), conventional audio systems involved installing passive speakers in the rooms (or other
18  areas) of a user's home and running speaker wires from each of those passive speakers back to a
19  centralized receiver/amplifier. Op.Br. 7.  In stark contrast, Sonos's networked system did away
20  with the centralized receiver and replaced the passive speakers with intelligent "zone players" that
21  would communicate with one another via a data network that could have some segments of wireless
22  interconnections (e.g., via an IEEE 802.11 protocol) and other segments of wired interconnections
23  (e.g., via Ethernet networking cables).  This is what the '966 Patent is referring to when it states
24  "data network 108" may be a "wired network, a wireless network or a combination of both." '966
25  Patent, 4:62-66, 5:41-48.  And any POSITA would know that a wired data network is different
26  from the analog ***speaker wiring*** of conventional audio systems.  Put differently, Google is trying to
27  (mis)use the fact that data networks ***can*** use physical Ethernet wires to suggest that Sonos's system
28  was intended to encompass a conventional system consisting of passive speakers hooked up to

SONOS, INC.'S REPLY CLAIM
CONSTRUCTION BRIEF
3:20-cv-06754-WHA

analog speaker wires.  But the mere fact that both systems use "wires" should not (and would not to a POSITA) result in such confusion.

Google also presents a red herring in discussing Sonos's ZonePlayer 90 ("ZP90") – a product released several years after the Zone Scene Patents' priority date.  G.Br. 9-10.[8]  The ZP90 was a network-enabled device that allowed a user to incorporate a conventional audio system (e.g., a conventional receiver/amplifier with hard-wired passive speakers) into Sonos's networked system of ZonePlayers such that the ZP90 could, for example, receive over a data network an Internet music stream (perhaps from another ZonePlayer in the system) and then process and output audio to the conventional audio system connected to the ZP90.  *See, e.g.*, '615 Patent, 4:13-25, FIG. 2C. Thus, Sonos's construction of "zone player" does not exclude the ZP90 – which **could** receive information over a data network and process audio **and** could output that information to a conventional audio system.

Lastly, Google half-heartedly asserts that the Asserted Patents' repeated and uniform disclosures that "zone players" are data network devices configured to process and output audio are merely describing "exemplary" or "preferred" embodiments.  G.Br. 10.  But such an assertion is contradicted by the intrinsic evidence as a whole.  Indeed, as noted, Google has not identified (and cannot identify) a single pertinent embodiment in the Asserted Patents where a "zone player" is not a data network device or lacks processing[9] capabilities.  *See, e.g.*, *Profectus*, 823 F.3d at 1381.

Thus, the Court should adopt Sonos's proposed construction because it captures the fundamental features of a "zone player"/"playback device," as set forth in the Asserted Patents.

## B.   "PLAYBACK QUEUE"

In Google's PLR 4-2 disclosure, Google sought construction of "local playback queue on the particular playback device," which is only found in the '615 claims.  Ex. 23, 11.  The day before

---

[8] Google appears to quote a product guide that was not attached to Google's brief or identified in its PLR 4-2 disclosure.

[9] Google suggests that Sonos must recite in every claim that a "zone player" has a "processor" (G.Br. 10), but that is impractical in claims like the '615, '966, and '033 claims that are from the perspective of a "control device" (or "computing device") that is to control a "zone player."

SONOS, INC.'S REPLY CLAIM
CONSTRUCTION BRIEF
3:20-cv-06754-WHA

1    the parties JCCS submission, Google changed course and offered a new construction for "playback

2    queue" that Google applies to both the '615 and '033 claims.  Dkt. 126, 12.  Google's shifting

3    positions on "playback queue" cannot even be followed by its own expert who repeatedly

4    contradicted Google's positions during his deposition.  As a result, Google attempts to reconcile its

5    expert's testimony with its positions, which Google can only do by ignoring the ***literal words*** of its

6    proposed construction, as well as the intrinsic record.

7          The problem is that Google is attempting to limit the term "playback queue" to one specific

8    example of media that can be contained in a "playback queue."  In fact, in taking issue with real-

9    world analogies from Sonos's Opening Brief, Google gives up the game by expressly stating that

10   Google is limiting the term "playback queue" to "the context of a playlist" (G.Br. 16), despite a

11   "playlist" being merely one example of an arrangement of media that can be added to a "playback

12   queue." S.Ex. 9[10], ¶¶46-54; *see also* G.Br. 11 (conflating disclosure regarding a user navigating a

13   "playlist" with what a "playback queue" is).  Google ignores the numerous embodiments found in

14   the Direct Control specification in which something other than "an ordered list of multimedia items

15   that is selected by the user" is queued, all of which would be impermissibly excluded if Google's

16   proposed construction were adopted.  S.Ex. 9, ¶¶48-49.

17         Google therefore resorts to relying on extrinsic evidence to support its narrow construction,

18   starting with the assertions of its expert.  G.Br. 11-13. But while his expert declaration followed

19   Google's party line, his deposition testimony told a different story.  Op.Br. 10, 16.

20         Google's heavy reliance on extrinsic user guides/manuals—written for laypersons rather

21   than POSITAs—is likewise unavailing, and Google's conclusion that "Sonos's opening brief

22   ignores Google's evidence,[11] and does not offer evidence that 'playback queue' has any other

23   meaning" (G.Br. 13) is false.  In fact, Sonos offered ***intrinsic*** (rather than extrinsic) evidence

24   demonstrating why Google's proposed construction is flawed. Op.Br. 10-12, 15.  Moreover,

25   Google's untimely extrinsic evidence contradicts its own construction – for example, by ignoring

26

27   _____

[10] Exhibits cited herein as "S.Ex." were submitted with Sonos's Opening Brief.

28   [11] The majority of "Google's evidence" – G.Ex. 12, G.Ex. 13, G.Ex. 11, ¶23 – was not identified
     by Google in its PLR 4-2 disclosure and should be struck as untimely. *See* Ex. 23, 11-13.

SONOS, INC.'S REPLY CLAIM
CONSTRUCTION BRIEF
3:20-cv-06754-WHA

the fact that the evidence suggests that something *other than the user* can add items to the queue or that the queue can contain only a single item. *See, e.g.*, G.Ex. 12, 4-2 (disclosing example where *music service*, Napster, selects and adds tracks to "music queue"); S.Ex. 10 at 47:11-52:18 (Google's expert admitting that Google's Ex. 13 (Dep. Ex. 8) discloses an empty "music queue" or "music queue" with a single song that can be selected automatically or by a user).

Google also mischaracterizes Dr. Schmidt's opinions and incorrectly posits that "Sonos's proposed construction of a queue [is] merely memory, holding zero or more multimedia items ..." G.Br. 13. *First*, Dr. Schmidt explained a POSITA's general understanding of a "playback queue" (S.Ex. 9, ¶47) and then provided an explanation of how a POSITA would apply that understanding to the specific claim language found in the Direct Control Patents. *Id.*, ¶¶58-59. *Second*, Sonos has not proposed a construction for "queue" or argued it is "merely memory." *Third*, for the term "playback queue," Sonos agrees with Dr. Schmidt's explanation that a POSITA would understand that it is a data construct[12] that can hold one or more references (e.g., "resource locators") corresponding to media for playback. *Id.*, ¶¶47, 58-59.[13]

Google next attempts to fix the fact that its own expert admitted in deposition that a "playback queue" need not have plural multimedia items. G.Br. 14-15. In particular, Google contends that its "construction does not foreclose an empty queue or a queue with a single item" (G.Br. 14), despite it *literally* requiring "an ordered list of multimedia items" *plural*. Google attempts to justify this discrepancy by claiming that "other language in the claims imposes additional restrictions that do require multiple items ...." *Id*.

If Google's damage-control arguments were correct, then adding the limitations "an ordered list of multimedia items" into the claim term "playback queue" would be superfluous. *See, e.g.*,

---

[12] Google used the phrase "data structure" in its original construction for "local playback queue" but explained that it (incorrectly) intended that phrase to exclude a collection of multiple data variables. Under the proper meaning of "data structure," that phrase and "data construct" are effectively synonyms.

[13] Contrary to Google's representation that "Google asked Sonos's expert ... if there were any examples of memory that store multimedia for playback that would not satisfy his definition of 'playback queue,'" (G.Br. 13-14) Google instead confusingly asked him "[w]hat way can a queue not be constructed," to which Dr. Schmidt did in fact answer. S.Ex. 14, 82:21-84:1.

SONOS, INC.'S REPLY CLAIM
CONSTRUCTION BRIEF
3:20-cv-06754-WHA

1   *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1237 (Fed. Cir. 2016) ("Construing a claim term to

2   include features of that term already recited in the claims would make those expressly recited

3   features redundant.").  In truth, Google is attempting to inject these limitations into the claims

4   because the claims *do not otherwise* require "an ordered list of multimedia items."  As explained

5   in Sonos's Opening Brief, neither the '615 nor '033 claims require a multi-item playback queue.

6   Op.Br. 10-11.  In fact, Google provides no argument as to why it would be proper to limit the "local

7   playback queue" of the '615 claims in this way.  Instead, Google points to the '033 claims' use of

8   the word "next."  G.Br. 14.  But, again, whether the '033 claims separately recite (or suggest) that

9   the "remote playback queue" contains multiple items (they do not) is of no import to the question

10   of whether the term "playback queue" standing alone must be construed to require multiple items.

11   Regardless, the '033 claims *do not* require a multi-item playback queue.  The word "next" in the

12   '033 claims merely distinguishes from a current media item that could be playing when the claimed

13   user input is received.  It does not compel plural items to be in the "remote playback queue," much

14   less require plural items to be stored as "an ordered list."  S.Ex. 9, ¶¶59, 78-80.

15       Google next tries to explain away the numerous disclosures in the Direct Control

16   specification that are contrary to its proposed construction. G.Br. 15-17.  For instance, Google

17   downplays the disclosures of queuing a single audio track by contending (with nothing more than

18   attorney argument) that these disclosures do not "purport to describe the complete set of items in

19   the queue or suggest that *only* a single URL or song identifier is in the queue." *Id.*, 15 (emphasis

20   Google's). Yet, this is exactly what these disclosures state or suggest.  S.Ex. 9, ¶¶48, 81.  Google

21   then concludes, "[r]egardless, the ability to create a queue with just a *single* item *is consistent* with

22   Google's proposed construction" (G.Br. 15 (emphasis added)), again, despite the words of that

23   construction *literally* requiring "an ordered list of multimedia items" *plural*.

24       Google is also wrong when it insists that the queue must be in the form of a list.  In

25   particular, Google is wrong when it argues that a list is *required* by the patent's disclosure that

26   "[i]nformation passed over to the local playback device … can also include a *current play position*

27   *within a list*." *Id.* (emphasis Google's).  The fact that the information passed to a playback device

28

SONOS, INC.'S REPLY CLAIM
CONSTRUCTION BRIEF
3:20-cv-06754-WHA

*can* include a current play position within a list does not mean that the queue *must be* in the form of a list.

Google is similarly wrong when it argues that the "ordered list of multimedia items" must be "selected by the user."  In making this argument, Google ignores the teachings of the Direct Control specification identified in Sonos's Opening Brief (Op.Br. 15), asserts that those passages "are consistent with Google's construction" (they are not), and then goes directly to Google's (untimely) extrinsic evidence. G.Br. 16-17.  But not even that evidence supports Google's position.  *See, e.g.*, G.Ex. 12, 4-2 (example where user selects an artist name and "***Napster will select*** 40 similar tracks based on your selection, ***and add*** the tracks to your music queue.").

Lastly, the true intent behind Google's attempt to insert "multimedia item" (*see* Op.Br. 9-10) is shown by Google's April 7, 2022 response to Sonos's interrogatory on Google's non-infringement positions (served ***8 months*** ago).  Specifically, despite its expert's admission to the contrary, Google is using this phrase in order to read-in a limitation that a "playback queue" must contain a media file itself rather than, for example, a "resource locator" corresponding to the file.  Ex. 24 at 34.  But Dr. Schmidt provided a detailed explanation as to why a "playback queue" (including the '615 Patent's "local playback queue") need not contain a media file itself.  S.Ex. 9, ¶¶55-73.  Among other things, in the '615 prosecution history Sonos explained that its "claims recite 'causing one or more first cloud servers to add the multimedia content to a local playback queue on the particular playback device' ***by 'adding***, to the local playback queue, one or more resource locators ….'" S.Ex. 9, App'x B, 151 (original emphasis omitted).  Thus, the Court should reject Google's attempt to read in a requirement that a "playback queue" contain a media file.

In conclusion, Google's proposed construction reads in numerous limitations that are contradicted by the intrinsic record and contains language that Google says we are not to take at face value.  The Court should reject Google's construction.

**C.  "RESOURCE LOCATOR"**

Google's argument is that (i) the claim term "resource locator" is a shorthand for the phrase "universal resource locator" (URL) (ii) a URL must specify "an address of a resource on the

1   Internet," and thus, (iii) the claimed "resource locator" must also provide "an address of a resource

2   on the Internet."  G.Br. 18-19.  Not so.

3       To start, despite stating in his declaration "*in my experience* the term 'resource locator' is

4   *often used* in the art as a shorthand for the phrase 'Uniform Resource Locator'" (G.Ex. 11, ¶57

5   (emphasis added)), Google's expert admitted in his deposition that he was "*unfamiliar* with the

6   term ['resource locator'] on its own without the word 'universal' or 'uniform' ahead of it."  S.Ex.

7   10, 70:13-19 (emphasis added).  The Court should, therefore, disregard Google's proffered expert

8   testimony about his purported experience with the term "resource locator."

9       Next, Google's expert conceded during his deposition that not all URLs specify "an address

10  of a resource," as Google's construction requires.  Op.Br. 20.  In an attempt to reconcile its expert's

11  concession and Google's proposed construction, Google appears to concede that information that

12  "point[s], indirectly, to the location of a resource" amounts to a "resource locator."  G.Br. 21.  This

13  concession, however, cannot be squared with Google's construction, which *literally requires* a

14  "resource locator" to be "*an address of a resource* on the Internet."

15      Google also argues that the Court should adopt its construction because Sonos is attempting

16  to "sweep in anything that could be considered a mere 'identifier.'"  G.Br. 18.  But Google is

17  mistaken.  Sonos's position is that a "resource locator" is not limited to "an address of a resource

18  on the Internet" because there are other mechanisms to locate a resource on the Internet.  Op.Br.

19  17-18; S.Ex. 14, 41:2-42:13, 103:14-104:20, 107:2-109:21.  But the "resource locator" must still

20  *facilitate* locating a resource (even if indirectly) and not merely identifying a resource.

21      Google also argues that the language of the independent claims supports its position.  G.Br.

22  18-19.  Google's argument is premised on rewriting the claim language to "one or more resource

23  locators ~~corresponding to~~ <u>specifying</u> respective locations of the multimedia content."  But both Dr.

24  Schmidt and Google's expert explained that a POSITA would understand "corresponding to"

25  means "associated with" or "related to" and thus, does not require the "resource locator" to *specify*

26  the location of the resource.  S.Ex. 14, 39:4-40:18; S.Ex. 10, 59:5-22.  Accordingly, the claim

27  language does not support Google's restrictive proposal.

28

SONOS, INC.'S REPLY CLAIM
CONSTRUCTION BRIEF
3:20-cv-06754-WHA

1    Google further argues that '615 dependent claim 20 supports its position.  G.Br. 19.  To do

2    so, Google takes a tortured read of claim 20 that makes little sense when read in light of independent

3    claim 13 and which finds no support in the specification.  In particular, Google's read of claim 20

4    requires the function of "adding the multimedia content to the local playback queue" to require

5    both (i) adding "one or more resource locators corresponding to respective locations of the

6    multimedia content" and (ii) adding "an identifier of the multimedia content" that "indicates a

7    particular source of the multimedia content."   Under Google's read and proposed construction,

8    there would be ***no reason*** to further add the "identifier of the multimedia content" called for by

9    claim 20 because the "local playback queue" would already have the "resource locator" specifying

10   the "address of the resource on the Internet."  Instead, as explained in Sonos's Opening Brief, a

11   POSITA would understand that claim 20 is narrowing the independent-claim function of "adding

12   the multimedia content to the local playback queue" by specifying a particular type of "resource

13   locator" that is to be added – namely, "an identifier of the multimedia content" that "indicates a

14   particular source of the multimedia content …."  Op.Br. 18-19.

15   Google also contends that the specification supports its construction. G.Br. 19-20.  But

16   Google ignores the disclosures that are contrary to its position and contradicts itself.  In particular,

17   as explained in Sonos's Opening Brief, the specification is replete with disclosures of information

18   in a form other than "an address of a resource on the Internet" that enables a device to locate a

19   resource (e.g., audio track) on the Internet.  Op.Br. 17-18.  Dr. Schmidt explained that a POSITA

20   would have understood that the claimed "resource locator" is meant to include these types of

21   information.  S.Ex. 9, ¶¶ 103-104.  In fact, Google appears to agree.  In this respect, Google states

22   that "a 'song identifier' … can be used to look up a song but is ***not necessarily*** a 'locator.'" G.Br.

23   20 (emphasis added).  In other words, Google acknowledges that the '615 Patent contemplates at

24   least some implementations where a "song identifier" can serve as a "locator." But this is exactly

25   the type of implementation that Google's proposed construction seeks to exclude.

26   Google similarly contends that the extrinsic evidence supports its construction.  G.Br. 21.

27   Google points to a modern-day, online Merriam-Webster dictionary –rather than one from the

28   invention date in 2011– lacking a definition of "resource locator" separate from the phrase URL to

SONOS, INC.'S REPLY CLAIM
CONSTRUCTION BRIEF
3:20-cv-06754-WHA

1    conclude that the '615 claims' usage of that term must be a shorthand for URL. *Id.*  But consistent

2    with the '615 Patent's teachings (S.Ex. 9, ¶¶102-104), Dr. Schmidt identified extrinsic evidence

3    from the relevant time period showing the term "resource locator" more broadly referring to a

4    reference associated with a resource that facilitates accessing the resource, where some examples

5    included a "doc_id," "name of the resource," or URL. *Id.*, ¶¶ 105-109.

6         In sum, Google's proposed construction is contradicted by the intrinsic record and contains

7    language that Google says we are not to take at face value.  The Court should reject Google's

8    construction.

9                         **D.   "A MEDIA PARTICULAR PLAYBACK SYSTEM"**

10        There is nothing "improper[]" with the Court correcting the clear typographical error in the

11   phrase "a media ***particular*** playback system" such that it reads "a media playback system." G.Br.

12   22.  As explained in Sonos's Opening Brief, a district court applies a different standard when

13   correcting a typographical error than the USPTO applies when issuing a certificate of correction,[14]

14   and the Federal Circuit and this Court have, on numerous occasions, exercised that power to correct

15   errors similar to the one present in claims 3, 15, and 26 of the '615 Patent.  Op.Br. 23-24.

16        As previewed in Sonos's Opening Brief, Google argues that the Court cannot correct the

17   error because "the proposed correction ***is*** subject to reasonable debate" (G.Br. 22 (emphasis

18   Google's)) and then, recycles the same alternative interpretations that it proffered in the Texas

19   proceedings.  *Id.*, 23-24. But as Sonos already explained, none of these alternative interpretations

20   is ***reasonable*** in view of the claims and teachings of the '615 Patent.  Op.Br. 22-23.[15]  Indeed, each

21   one of Google's proposed alternative interpretations would require flipping the recited words

22   "media particular" around to instead read as "particular media," which demonstrates that Google's

23   alternative interpretations are unreasonable and the recited wording "media particular" contains an

24

25   _____

26   [14] As explained above, Judge Albright did not provide a ***holding*** that the claims were "indefinite
     as a matter of law" (G.Br. 22), and on April 1, 2022, Sonos petitioned the USPTO Director under

27   37 C.F.R. § 1.181 to reverse the Examiner's conclusory refusal to grant Sonos's request for a
     certificate of correction.

28   [15] Google purports to cite to its expert's declaration (G.Ex. 11) to support its arguments but that
     declaration does not address this claim term.

SONOS, INC.'S REPLY CLAIM
CONSTRUCTION BRIEF
3:20-cv-06754-WHA

error.  S.Ex. 17, ¶84; *see also id.*, ¶88 (explaining why there is no need to differentiate playback of "multimedia" from "audio" alone in the context of the '615 Patent).

The unreasonableness of Google's proposed alterative interpretations is best demonstrated by its assertion that "media particular" in front of "playback system" could have been included to distinguish a playback system that can playback media from something like "an RF spectrum analyzer" that apparently "plays back RF data, not audio or video media." G.Br. 23.  But no POSITA having read the '615 Patent would ever think the phrase "playback system" in the context of the '615 Patent refers to "an RF spectrum analyzer." S.Ex. 17, ¶¶91-93.  This is a patent about a system for playing media in one's home.  Not for scientific instruments in a laboratory.

Google also asserts that it is reasonable to interpret "media particular playback system" as a system that can only playback particular formats of media because "CD players may play back certain audio formats MP3 or WAV formats."  G.Br. 23.  But again, this is not a reasonable interpretation in light of the '615 Patent.  To the contrary, the "playback system" of the '615 Patent consists of one or more "zone players," which are never described as only being able to playback particular media formats (e.g., MP3 and WAV). S.Ex. 17, ¶85. And the '615 Patent only references a "CD player" and "turntable" as examples of "traditional sources" *from which* a "zone player" can *receive* a music signal.  '615 Patent, 7:1-3.  Against this disclosure, no reasonable POSITA could read this patent and interpret the "zone players" as being a CD player.

In sum, Google cannot provide any convincing argument that any of Google's manufactured alternative interpretations is reasonable.  Thus, the Court should remove the erroneously included word "particular" from the claim term "a media *particular* playback system."

### III.  UNDERLINE CONCLUSION

For the foregoing reasons, the Court should accept Sonos's claim construction positions.

SONOS, INC.'S REPLY CLAIM
CONSTRUCTION BRIEF
3:20-cv-06754-WHA

1

Dated:  April 11, 2022

ORRICK HERRINGTON & SUTCLIFFE LLP
*and*
LEE SULLIVAN SHEA & SMITH LLP

2

3

4

By: */s/ Cole B. Richter*

Cole B. Richter (admitted *pro hac vice*)

5

*Attorneys for Sonos, Inc.*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SONOS, INC.'S REPLY CLAIM
CONSTRUCTION BRIEF
3:20-cv-06754-WHA