# EXHIBIT 25
# (Excerpted)

PUBLIC VERSION

**UNITED STATES INTERNATIONAL TRADE COMMISSION**

Washington, D.C.

| | |
|---|---|
| In the Matter of<br><br>**CERTAIN AUDIO PLAYERS AND CONTROLLERS, COMPONENTS THEREOF, AND PRODUCTS CONTAINING SAME** | Inv. No. 337-TA-1191 |

**INITIAL DETERMINATION ON VIOLATION OF SECTION 337 AND RECOMMENDED DETERMINATION ON REMEDY AND BOND**

Chief Administrative Law Judge Charles E. Bullock

(August 13, 2021)

Pursuant to the Notice of Investigation, this is the final Initial Determination in the Matter of Certain Audio Players and Controllers, Components Thereof, and Products Containing Same, Investigation No. 337-TA-1191.

For the reasons stated herein, the undersigned has determined a violation of section 337 of the Tariff Act of 1930, as amended, has occurred in the importation into the United States, the sale for importation, or the sale within the United States after importation of certain audio players and controllers, components thereof, and products containing same alleged to infringe U.S. Patent Nos. 9,195,258; 10,209,953; 9,219,959; 8,588,949; and 10,439,896.

PUBLIC VERSION

**UNITED STATES INTERNATIONAL TRADE COMMISSION**

Washington, D.C.

| | |
|---|---|
| **In the Matter of**<br><br>**CERTAIN AUDIO PLAYERS AND CONTROLLERS, COMPONENTS THEREOF, AND PRODUCTS CONTAINING SAME** | **Inv. No. 337-TA-1191** |

**INITIAL DETERMINATION ON VIOLATION OF SECTION 337 AND RECOMMENDED DETERMINATION ON REMEDY AND BOND**

Chief Administrative Law Judge Charles E. Bullock

(August 13, 2021)

Pursuant to the Notice of Investigation, this is the final Initial Determination in the Matter of Certain Audio Players and Controllers, Components Thereof, and Products Containing Same, Investigation No. 337-TA-1191.

For the reasons stated herein, the undersigned has determined a violation of section 337 of the Tariff Act of 1930, as amended, has occurred in the importation into the United States, the sale for importation, or the sale within the United States after importation of certain audio players and controllers, components thereof, and products containing same alleged to infringe U.S. Patent Nos. 9,195,258; 10,209,953; 9,219,959; 8,588,949; and 10,439,896.

### 2. Respondent Google LLC

Google LLC is a Delaware limited liability company with its principal place of business and headquarters at 1600 Amphitheatre Parkway, Mountain View, CA 94043. SIB at 6-7; Compl. at ¶ 18; CX-0242C at ¶ 2.

### C.    Overview of the Technology

The technology at issue in this Investigation relates to audio systems built from a network of playback devices (*e.g.*, speakers) and controllers through which users interact with those systems (*e.g.*, mobile phones, tablets, and laptops). CIB at 3; RIB at 10; SIB at 7.

### D.    Products at Issue

The products at issue are "networked speaker devices, and devices (for example, mobile phones and laptops) capable of controlling these devices." 85 Fed. Reg. 7783 (Feb. 11, 2020).

#### 1.    The Accused Products

The Google products accused of infringement include the following:

| Accused Products | Asserted Patents and Claim(s) |
|---|---|
| Home Mini, Nest Mini, Home, Nest Audio, Home Max, Home Hub, Nest Hub, Nest Hub Max, Nest Wifi Point, Chromecast, Chromecast Audio, Chromecast Ultra, and Chromecast with Google TV ("the '258 Accused Products") | '258 patent, claims 17, 21, 24, and 26 |
| Home Mini, Nest Mini, Home, Nest Audio, Home Max, Home Hub, Nest Hub, Nest Hub Max, Nest Wifi Point, Chromecast, Chromecast Audio, Chromecast Ultra, and Chromecast with Google TV ("the '953 Accused Products") | '953 patent, claims 7, 14, and 22-24 |
| Home Max[2] and Nest Audio ("the '959 Accused Products") | '959 patent, claim 10 |

---

[2] Google discontinued the Home Max in the fourth quarter of 2018. *See* RX-1471C at Q/A 11. The device is no longer available for sale through Google's online store. *Id.* Thus, any remedy Sonos is entitled to against the Home Max will be of no consequence.

to show that the products practice any claim of that patent, not necessarily an asserted claim of that patent. *See Certain Male Prophylactic Devices*, Inv. No. 337-TA-546, Comm'n Op. at 38 (Aug. 1, 2007).

## VI. U.S. PATENT 9,195,258

### A. Overview

The '258 patent, entitled "System and Method for Synchronizing Operations Among a Plurality of Independently Clocked Digital Data Processing Devices," issued on November 24, 2015 to Nicholas A. J. Millington. The '258 patent is assigned to Sonos. *See* Compl. Ex. 9. The '258 patent generally relates to "the field of arrangements that synchronize output generated by a number of output generators, including audio output, video output, combinations of audio and video, as well as other types of output . . . provided by a common channel." JX-0001 at 1:44-49.

#### 1. Asserted Claims

Sonos is asserting claims 17, 21, 24, and 26 of the '258 patent against Google. CIB at 2. These claims read as follows[4]:

17. [17.0] A first zone player comprising:

[17.1] a network interface configured to interface the first zone player with at least a local area network (LAN);

[17.2] a device clock configured to generate clock time information for the first zone player;

[17.3] one or more processors; and

[17.4] a tangible, non-transitory computer-readable memory having instructions stored thereon that, when executed by the one or more processors, cause the first zone player to:

[17.5] receive control information from any one of a plurality of controllers over the LAN via the network interface, wherein the received control information comprises a direction for the first zone player to enter into a synchrony group with at least a second zone player;

---

[4] The parties use different numbers/letters to refer to the same claim limitation. The undersigned has adopted Sonos' numbering system for the Asserted Patents. *See* CIB at xviii-xix.

[17.6] in response to the direction, enter into the synchrony group with the second zone player,

[17.7] wherein in the synchrony group, the first and second zone players are configured to playback audio in synchrony based at least in part on (i) audio content, (ii) playback timing information associated with the audio content, wherein the playback timing information is generated by one of the first or second zone players, and (iii) clock time information for the one of the first or second zone players, and wherein the generated playback timing information and the clock time information are transmitted from the one of the first or second zone players to the other of the first or second zone players, wherein the first and second zone players remain independently clocked while playing back audio in synchrony; and

[17.8] transmit status information to at least one of the plurality of controllers over the LAN via the network interface, wherein the status information comprises an indication of a status of the synchrony group.

21. The first zone player of claim 17, wherein the status information further comprises one or both of (a) an identification of a zone player that is operating as a master device of the synchrony group and (b) an identification of at least one zone player that is operating as a slave device of the synchrony group.

24. [24.0] The first zone player of claim 23, wherein the tangible computer-readable memory further has instructions stored thereon that, when executed by the one or more processors, cause the first zone player to:

[24.1] receive audio content via the network interface; and

[24.2] while the first zone player is operating as the master device of the synchrony group, transmit the received audio content, via the network interface, to at least one zone player that is operating as a slave device of the synchrony group.

26. [26.0] The first zone player of claim 17,

[26.1] wherein the first zone player is a master zone player of the synchrony group,

[26.2] wherein the audio content comprises a plurality of frames,

[26.3] wherein the playback timing information associated with the audio content comprises a playback time for each frame of the audio content, and

[26.4] wherein the first zone player is configured to play back audio in synchrony with the second zone player based at least in part on (i) the audio content, (ii) playback timing information associated with the audio content, wherein the playback timing information is generated by the first zone player, and (iii) clock time information for the first zone player,

and wherein the generated playback timing information and the clock time information are transmitted from the first zone player to the second zone player; and

[26.5] wherein the first zone player playing back audio in synchrony comprises, for each frame of the audio content, the first zone player playing back the frame when the device clock of the first zone player is the same as the playback time for the frame.

### 2. Claim Construction

The undersigned construed the following terms from the asserted claims as follows:

| TERM | CLAIM(S) | CLAIM CONSTRUCTION |
|---|---|---|
| "zone player" | 17, 21, 24, 26 | "data network device configured to process and output audio" |
| "network interface" | 17, 24 | "physical component of a device that provides an interconnection with a data network" |
| "playback timing information" | 17, 26 | "information indicating when the audio information [content] is to be played back" |
| "clock time information" | 17, 26 | "information representing a time value indicated by a device's clock" |
| "a synchrony group" | 17, 21, 24, 26 | "a set of two or more zone players that are to play the same audio program synchronously" |
| "independently clocked" | 17 | "operating in accordance with their own respective clocks during synchronous playback" |
| "local area network" | 17 | "a data communications network spanning a limited geographical area, such as an office, an entire building, or industrial park" |

Order No. 20 at 15-20.

### B. Infringement

#### 1. Infringement at Importation

Sonos contends that infringement does not need to take place at the time of importation. CRB at 1. In addition, Sonos argues that Google's Accused Products are capable of infringement (and do infringe) at the time of importation because they have software installed rendering them "functionally capable of carrying out the operations recited in the Asserted Claims." *Id.* Sonos

Google's argument that there is no violation because the '258 Accused Products are not capable of infringing at the time of importation.

### 2. The '258 Accused Products

Sonos asserts that claims 17, 21, 24, and 26 of the '258 patent are infringed by the '258 Accused Products. CIB at 7.

#### a) Claim 17

Sonos asserts that the '258 Accused Products meet every limitation of claim 17 of the '258 patent. CIB at 10. Google contends that the '258 Accused Products do not meet limitations 17.5, 17.6, or 17.7. RLUL at 1-2. Google does not dispute that the '258 Accused Products meet the remaining limitations of claim 17. *Id*. Staff agrees with Sonos that the '258 Accused Products meet every limitation of claim 17. SIB at 1, 13, 17.

#### i) Limitations 17.5 and 17.6

Claim 17 includes the limitations "receive control information from any one of a plurality of controllers over the LAN via the network interface, wherein the received control information comprises a direction for the first zone player to enter into a synchrony group with at least a second zone player" and "in response to the direction, enter into the synchrony group with the second zone player." JX-0001, cl. 17.

Sonos argues that each '258 Accused Product is capable of receiving control messages from any Chromecast-enabled controller connected to a Google audio system that directs and causes the '258 Accused Product to enter into a "multizone group"[5] configured to playback audio in synchrony. CIB at 10. Sonos asserts that the accused control messages each constitute a

---

[5] With respect to the claimed "synchrony group," Sonos' expert, Dr. Almeroth, submits that " ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." CX-0011C at Q/A 81 (citing JX-0019C; CX-0868C; JX-0466C at 18:22-21:14, 34:20-35:8; JX-0473C at 63:4-12).

### 3. Balassanian with Van Hulle

Google asserts that "to the extent the CALJ finds that Balassanian does not render obvious claim 22, the claim is rendered obvious by Balassanian in view of Van Hulle." RIB at 108. Claim 22 depends from claim 7. Because claim 7 is not rendered obvious by Balassanian, Van Hulle cannot cure the deficiencies of Balassanian. Accordingly, the undersigned finds that Google has failed to establish, by clear and convincing evidence, that claim 22, which depends from claim 7, of the '953 patent is rendered obvious by Balassanian in combination with Van Hulle.

### 4. Conclusion

For the reasons set forth above, the undersigned finds that Google has failed to establish, by clear and convincing evidence, that any asserted claim is rendered obvious.

### 5. Secondary Considerations

Secondary considerations of nonobviousness may rebut a *prima facie* case of obviousness. Here, where Google has not made out a *prima facie* case of obviousness, there is no showing to rebut. Accordingly, the undersigned need not consider any secondary considerations of nonobviousness.

## VIII. U.S. PATENT 9,219,959

### A. Overview

The '959 patent, entitled "Multi-Channel Pairing in a Media System," issued on December 22, 2015 to Christopher Kallai; Michael Darrell Andrew Ericson; Robert A. Lambourne; Robert Reimann; and Mark Triplett. JX-0004. The '959 patent is assigned to Sonos. *Id*. An *Ex Parte* Reexamination Certificate issued on April 5, 2017 in response to Reexamination Request No. 90/013,756 (filed May 25, 2016). Compl. at ¶ 78. As a result of the reexamination, original claims 1 and 14 were cancelled, claims 2-13 and 15-22 were determined to be patentable as amended, and

new claims 23-48 were added and determined to be patentable. *Id.*; *see also* Compl. Ex. 7. The '959 patent relates generally to "devices and methods for providing audio in a multi-channel listening environment (*e.g.*, a stereo sound or home theater surround sound environment)." *Id.* at ¶ 81; *see also* JX-0004 at 1:54-63, 3:32-46.

### 1. Asserted Claim

Sonos is only asserting claim 10, which reads as follows:[42]

10.0    [The playback device of claim 1, wherein the playback device is further configured to] *A playback device configured to output audio in a multi-channel listening environment, the playback device comprising:*

10.1    *a network interface configured to receive audio data over a network;*
10.2    *a plurality of speaker drivers configured to output audio based on the audio data;*

10.3    *one or more processors; and*

10.4    *tangible, non-transitory, computer readable memory comprising instructions encoded therein, wherein the instructions, when executed by the one or more processors, cause the playback device to*

10.5    *(i) receive a signal from a controller over the network, wherein the signal comprises an instruction for the playback device to pair with one or more playback devices,*

10.6    *(ii) process the audio data before the playback device outputs audio from the plurality of speaker drivers,*

10.7    *(iii) determine that a type of pairing of the playback device comprises one of at least a first type of pairing or a second type of pairing,*

10.8    *(iv) configure the playback device to perform a first equalization of the audio data before outputting audio based on the audio data from the plurality of speaker drivers when the type of pairing is determined to comprise the first type of pairing, and*

10.9    *(v) configure the playback device to perform a second equalization of the audio data before outputting audio based on the audio data from the plurality of speaker drivers when the type of pairing is determined to comprise the second type of pairing.*

---

[42] The claim language has been copied directly from the reexamination certificate. As such, matter enclosed in brackets [ ] originally appeared in the '959 patent, but has been deleted and matter printed in italics indicates additions made to the '959 patent during reexamination.

PUBLIC VERSION

2. **Claim Construction**

The undersigned has construed the following terms from claim 10 of the '959 patent:

| TERM | CLAIM CONSTRUCTION |
|---|---|
| equalization [of the audio data] | "alteration of the relative strength of certain frequency ranges in the audio data by performing one or more of the following: adjusting one or more parameters related to speaker drivers, such as gain, frequency response, channel output, phase, or time delay; adjusting amplifier gain of the playback device; or using one or more filters" |
| type of pairing / first type of pairing / second type of pairing | Plain and ordinary meaning |
| zone player / playback device / player | "data network device configured to process and output audio" |
| network interface | "physical component of a device that provides an interconnection with a data network" |
| pairing | "configuration involving two or more playback devices that have different playback roles" |

Order No. 20 at 15, 40-50.

B. **Infringement**

Sonos asserts that the '959 Accused Products meet every limitation of claim 10 of the '959 patent. CIB at 105-117. Google disagrees and asserts that these products do not meet the "first equalization" and "second equalization" elements of limitations 10.8 and 10.9. RIB at 115-116. Google does not contest that the '959 Accused Products meet the remaining limitations of claim 10. RLUL at 13-14; *see* RIB at 115-116 ("The Google Home Max and Nest Audio devices do not infringe asserted claim 10 of the '959 Patent because they are not configured to perform a "first equalization" for one pairing configuration and a "second equalization" for another configuration.").

1. **Claim 10**

Sonos asserts that each of the '959 Accused Products is ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

Pursuant to 19 C.F.R. § 210.42(h), this Initial Determination shall become the determination of the Commission unless a party files a petition for review pursuant to 19 C.F.R. § 210.43(a) or the Commission, pursuant to 19 C.F.R. § 210.44, orders on its own motion a review of the Initial Determination or certain issues therein.

Within ten days of the date of this document, the parties must jointly submit a statement to Bullock337@usitc.gov stating whether they seek to have any portion of this document redacted from the public version. The parties shall attach to the statement a copy of a joint proposed public version of this document indicating with red brackets any portion asserted to contain confidential business.[89] To the extent possible, the proposed redacting should be made electronically, in a PDF of the issued order, using the "Redact Tool" within Adobe Acrobat, wherein the proposed redactions are submitted as "marked" but not yet "applied." The parties' submission concerning the public version of this document should not be filed with the Commission Secretary.

**SO ORDERED.**

_____
Charles E. Bullock
Chief Administrative Law Judge

---

[89] If the parties submit excessive redactions, they may be required to provide an additional written statement, supported by declarations from individuals with personal knowledge, justifying each proposed redaction and specifically explaining why the information sought to be redacted meets the definition for confidential business information set forth in Commission Rule 201.6(a). 19 C.F.R. § 201.6(a).