# EXHIBIT 1

Trials@uspto.gov
571-272-7822

Paper 14
Date: April 12, 2022

UNITED STATES PATENT AND TRADEMARK OFFICE

————————————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

————————————

GOOGLE LLC,
Petitioner,

v.

SONOS, INC.,
Patent Owner.

————————————

IPR2021-01563
Patent 9,967,615 B2

————————————

Before MICHAEL R. ZECHER, TERRENCE W. McMILLIN, and
GARTH D. BAER, *Administrative Patent Judges.*

McMILLIN, *Administrative Patent Judge.*

DECISION
Granting Institution of *Inter Partes* Review
*35 U.S.C. § 314*

IPR2021-01563
Patent 9,967,615 B2

## I.      INTRODUCTION

### A.      Background and Summary

On September 28, 2021, Google LLC ("Petitioner")[1] filed a Petition for *inter partes* review of claims 1, 2, 6–14, 18–25, and 27–29 (the "challenged claims") of U.S. Patent No. 9,967,615 B2 (Ex. 1001, "the '615 patent").  Paper 1 ("Pet.").  Sonos, Inc. ("Patent Owner")[2] filed a Preliminary Response.  Paper 6 ("Preliminary Response" or "Prelim. Resp.").  With our authorization, Petitioner thereafter filed a Reply to Patent Owner's Preliminary Response (Paper 8 ("Reply")) and Patent Owner filed a Sur-reply in Support of its Preliminary Response (Paper 12 ("Sur-reply")) to address the issue of discretionary denial under 35 U.S.C. § 314.[3]

We have authority to determine whether to institute an *inter partes* review.  35 U.S.C. § 314 (2018); 37 C.F.R. § 42.4(a) (2020) (permitting the Board to institute trial on behalf of the Director).  The standard for institution is set forth in 35 U.S.C. § 314(a), which provides that *inter partes* review may not be instituted unless "there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition."  After considering the Petition, the Preliminary Response, the Reply, the Sur-reply, and the evidence of record, we institute an *inter*

---

[1] Petitioner identifies itself, Google LLC, as the real party-in-interest to this proceeding.  Pet. 76.

[2] Patent Owner identifies itself, Sonos, Inc., as the real party-in-interest to this proceeding.  Paper 3, 1.

[3] Additionally, with our authorization, Patent Owner filed a Motion to Dismiss Under 35 U.S.C. § 315(a) (Paper 7, "Motion") and Petitioner filed an Opposition to Patent Owner's Motion to Dismiss (Paper 10).  We denied this Motion on April 12, 2022 (Paper 13).

IPR2021-01563
Patent 9,967,615 B2

*partes review* as to the challenged claims of the '615 patent on the grounds
presented.

### B.      Related Proceedings

The parties identify *Google LLC v. Sonos, Inc.*, No. 3:20-cv-06754
(N.D. Cal.) as a related proceeding in which the '615 patent is asserted.  Pet.
76; Paper 3, 1.  The Parties also identify *Sonos, Inc. v. Google LLC*, No.
3:21-cv-07559 (N.D. Cal.), which was transferred from the Western District
of Texas (*Sonos, Inc. v. Google LLC*, No. 6:20-cv-00881 (W.D. Tex.)), as
involving the '615 patent.  Pet. 76; Prelim. Resp. 1; Reply 2.

### C.      The '615 Patent

The '615 patent is titled "Networked Music Playback."  Ex. 1001,
code (54).  The '615 patent relates to "providing music for playback via one
or more devices on a playback data network."  *Id.* at 1:14–15.  In particular,
the '615 patent describes connecting one or more multimedia playback
devices via a network to share music and other multimedia content among
devices.  *Id.* at 1:66–2:9.  The '615 patent also describes facilitating music
streaming from a music-playing application to one or more multimedia
content playback systems and locations.  *Id.* at 2:10–17, 12:8–14.

Figure 7 of the '615 patent, reproduced below, shows an embodiment
using a cloud-based network to distribute content on one or more local
networks of multimedia playback devices.  *Id.* at 12:19–25.

IPR2021-01563
Patent 9,967,615 B2



FIGURE 7

Figure 7 of the '615 patent depicts system 700 including cloud network 710, content providers 720, 730, 740, 750, and local playback networks 760, 770. *Id.* at 12:31–34.  Using cloud 710, content providers 720, 730, 740, 750 provide multimedia content to controllers 762, 772 and local playback devices 762, 770 in local playback networks 760, 770.  *Id.* at 12:34–43.

> For example, a user listens to a third party music application (e.g., Pandora™ Rhapsody™, Spotify™, and so on) on her smart phone while commuting.  She's enjoying the current channel and, as she walks in the door to her home, selects an option to continue playing that channel on her household music playback system (e.g., Sonos™).  The playback system picks up from the same spot on the selected channel that was on her phone and outputs that content (e.g., that song) on speakers and/or other playback devices connected to the household playback system.  A uniform resource indicator (URI) (e.g., a uniform resource locator (URL)) can be passed to a playback device to fetch content from a cloud and/or other networked source, for example. A playback device, such as a zone player, can fetch content on its own without use of a controller, for example.  Once the zone player has a URL

4

IPR2021-01563
Patent 9,967,615 B2

> (or some other identification or address) for a song and/or
> playlist, the zone player can run on its own to fetch the content.
> Songs and/or other multimedia content can be retrieved from
> the Internet rather than a local device (e.g., a compact disc
> (CD)), for example.

*Id.* at 12:44–63.

### D.   Challenged Claims

Petitioner challenges claims 1, 2, 6–14, 18–25, and 27–29 of the '615 patent.  Pet. 1.  Of the challenged claims, claim 1 is an independent method claim, claim 13 is an independent non-transitory computer readable medium claim, and claim 25 is an independent system claim.  Ex. 1001, 17:36–18:12, 19:48–20:27, 22:5–58.  Claim 1 recites:

> 1. A method comprising:
>
> causing, via a control device, a graphical interface to display a control interface including one or more transport controls to control playback by the control device;
>
> after connecting to a local area network via a network interface, identifying, via the control device, playback devices connected to the local area network;
>
> causing, via the control device, the graphical interface to display a selectable option for transferring playback from the control device;
>
> detecting, via the control device, a set of inputs to transfer playback from the control device to a particular playback device, wherein the set of inputs comprises: (i) a selection of the selectable option for transferring playback from the control device and (ii) a selection of the particular playback device from the identified playback devices connected to the local area network;
>
> after detecting the set of inputs to transfer playback from the control device to the particular playback device, causing playback to be transferred from the control device to the particular playback device, wherein transferring playback from the control device to the particular playback device comprises:

IPR2021-01563
Patent 9,967,615 B2

> (a) causing one or more first cloud servers to add multimedia content to a local playback queue on the particular playback device, wherein adding the multimedia content to the local playback queue comprises the one or more first cloud servers adding, to the local playback queue, one or more resource locators corresponding to respective locations of the multimedia content at one or more second cloud servers of a streaming content service;
>
> (b) causing playback at the control device to be stopped; and
>
> (c) modifying the one or more transport controls of the control interface to control playback by the playback device; and
>
> causing the particular playback device to play back the multimedia content, wherein the particular playback device playing back the multimedia content comprises the particular playback device retrieving the multimedia content from one or more second cloud servers of a streaming content service and playing back the retrieved multimedia content.

*Id.* at 17:36–18:12.

### E.   The Asserted Grounds

Petitioner challenges claims 1, 2, 6–14, 18–25, and 27–29 of the '615 patent based on the grounds set forth in the table below.

| Claims Challenged | 35 U.S.C. § | References |
|---|---|---|
| 1, 6–13, 18–25, 27–29 | 103[4] | Al-Shaykh[5], Qureshey[6] |
| 1, 6–13, 18–25, 27–29 | 103 | Al-Shaykh, Qureshey, Phillips[7] |

---

[4] The Leahy-Smith America Invents Act ("AIA"), Pub. L. No. 112-29, 125 Stat. 284, 285–88 (2011), revised 35 U.S.C. § 103 effective March 16, 2013. Because the challenged patent claims priority to applications filed before March 16, 2013, we refer to the pre-AIA version of § 103. Our opinions on the present record would not change if the AIA version of § 103 were to apply.

[5] US 2011/0131520 A1, published June 2, 2011 (Ex. 1007).

[6] US 8,050,652 B2, issued Nov. 1, 2011 (Ex. 1008).

[7] US 8,799,496 B2, issued Aug. 5, 2014 (Ex. 1006).

IPR2021-01563
Patent 9,967,615 B2

| Claims Challenged | 35 U.S.C. § | References |
|---|---|---|
| 2, 14 | 103 | Al-Shaykh, Qureshey, Ramsay[8] |
| 2, 14 | 103 | Al-Shaykh, Qureshey, Phillips, Ramsay |

Pet. 2–3.  Petitioner relies on the Declaration of Dr. Harry Bims (Ex. 1003, "Bims Decl."), which provides evidence in support of the contentions in the Petition.  Patent Owner has not submitted a declaration or other testimonial evidence of an expert so, at least at this stage, there is no testimony contrary to that of Dr. Bims to consider.[9]

## II.   ANALYSIS

### A.   Discretionary Denial Under 35 U.S.C. § 314(a)

As a threshold matter, we consider the arguments and evidence of the parties relating to discretionary denial under 35 U.S.C. § 314(a).  Institution of *inter partes* review is discretionary.  *See Harmonic Inc. v. Avid Tech., Inc.*, 815 F.3d 1356, 1367 (Fed. Cir. 2016) ("[T]he PTO is permitted, but never compelled, to institute an IPR proceeding."); 35 U.S.C. § 314(a).  The Board has held that the advanced state of a parallel district court action is a factor that may weigh in favor of denying a petition under § 314(a).  *See NHK Spring Co. v. Intri-Plex Techs., Inc.*, IPR2018-00752, Paper 8 at 20 (PTAB Sept. 12, 2018) (precedential); Patent Trial and Appeal Board, Consolidated Trial Practice Guide, 58 & n.2 (Nov. 2019) ("Trial Practice Guide"), available at https://www.uspto.gov/sites/default/files/documents/ tpgnov.pdf.  We consider the following factors to assess "whether efficiency,

---

[8] US 8,724,600 B2, issued May 13, 2014 (Ex. 1009).
[9] The Patent Owner's Preliminary Response and Sur-reply are limited to arguing that the Petition should be discretionarily denied under 35 U.S.C. § 314(a).  Thus, at this stage, Petitioner's unpatentability arguments and evidence are not disputed in any regard by Patent Owner.

IPR2021-01563
Patent 9,967,615 B2

fairness, and the merits support the exercise of authority to deny institution
in view of an earlier trial date in the parallel proceeding":

1.   whether the court granted a stay or evidence exists that
     one may be granted if a proceeding is instituted;
2.   proximity of the court's trial date to the Board's
     projected statutory deadline for a final written decision;
3.   investment in the parallel proceeding by the court and the
     parties;
4.   overlap between issues raised in the petition and in the
     parallel proceeding;
5.   whether the petitioner and the defendant in the parallel
     proceeding are the same party; and
6.   other circumstances that impact the Board's exercise of
     discretion, including the merits.

*Apple Inc. v. Fintiv, Inc.*, IPR2020-00019, Paper 11 at 5–6 (PTAB Mar. 20,
2020) (precedential) ("*Fintiv*").  In evaluating these factors, we "take[] a
holistic view of whether efficiency and integrity of the system are best
served by denying or instituting review."  *Id.* at 6.

     Patent Owner argues that "[e]very factor weighs in favor of denial"
and "the Board should deny institution."  Prelim. Resp. 1.  Petitioner argues
"[t]he Board should institute this proceeding because the relevant factors
strongly weigh against discretionary denial under 35 U.S.C. § 314(a)."
Pet. 70.  Based on our review of the arguments and evidence, we determine
not to exercise our discretion to deny institution under 35 U.S.C. § 314(a).

*1.   Whether the court granted a stay or evidence exists that one may be
      granted if a proceeding is instituted*

     *Fintiv* indicated that, in previous Board decisions, the existence of a
stay pending Board resolution of an *inter partes* review has weighed
strongly against denial, while a denial of such a stay request sometimes
weighs in favor of denial.  *Fintiv*, Paper 11 at 6–8.

IPR2021-01563
Patent 9,967,615 B2

No stay exists in either of the pending district court proceedings. Pet. 72; Prelim. Resp. 3. Petitioner told the court that it would not move for a stay. Prelim. Resp. 3. Therefore, this factor weighs in favor of exercising our discretion to deny institution.

2. *Proximity of the court's trial date to the Board's projected statutory deadline for a final written decision*

The proximity factor in *Fintiv*, on its face, asks us to evaluate our discretion in light of a trial date that has been set in a parallel litigation. *See Fintiv*, Paper 11 at 3, 5 ("*NHK* applies to the situation where the district court has set a trial date to occur earlier than the Board's deadline to issue a final written decision in an instituted proceeding."; "When the patent owner raises an argument for discretionary denial under *NHK* due to an earlier trial date, the Board's decisions have balanced the following factors . . . .") (citing *NHK*, Paper 8 (footnote omitted)). As noted above in the discussion of a stay, *Fintiv* has expressed concern regarding "inefficiency and duplication of efforts." *Id.* at 6. In its analysis of the proximity factor, *Fintiv* echoes that concern in its guidance that "[i]f the court's trial date is at or around the same time as the projected statutory deadline or even significantly after the projected statutory deadline, the decision whether to institute will likely implicate other factors discussed herein, such as the resources that have been invested in the parallel proceeding." *Id.* at 9. Similarly, in *NHK*, the Board expressed the concern that a trial before the deadline for a final written decision addressing the same prior art and arguments would have undermined the Board's objectives of providing an effective and efficient alternative to district court litigation. *NHK*, Paper 8 at 20 (citing *Gen. Plastic*, Paper 19 at 16–17).

IPR2021-01563
Patent 9,967,615 B2

The court set a trial date of May 10, 2023.[10]  Ex. 2003, 4.  This is after our projected statutory deadline for a final written decision in April, 2023. *See* Prelim. Resp. 5 ("According to the one-year statutory timeline, if instituted, a final written decision would be expected around April 25, 2023.").  Thus, this proceeding will be concluded before the parallel proceedings in district court.

Patent Owner argues, however, that the court has invoked its "patent showdown procedure" and that trial on one claim of the '615 patent may take place as early as the summer of 2022.[11]  Prelim. Resp. 4–5; *see also* Ex. 2002 (Patent Showdown Scheduling Order).  Petitioner argues "Patent Owner only speculates as to when the court may set the 'showdown' trial, which may not even occur."  Reply 5.  Petitioner further contends that, even if a "showdown" trial is held, it will have a narrow scope and, if this *inter partes* review proceeding is instituted, it will not overlap with this proceeding because it has stipulated that it "will not pursue in the Related Litigations the specific grounds in the Petition or any other ground raised or that could have reasonably been raised in the Petition."  Reply 3, 5–6. Therefore, if we institute, the Board and the court will not be addressing the same prior art and arguments.

To the extent the court's Patent Showdown Scheduling Order is relevant, it sets a briefing schedule and a hearing date for a summary judgment motion on one claim of the '615 patent.  *See* Ex. 2002, 1–2.  But, it

---

[10] Petitioner indicates that both district court cases are proceeding according to the same schedule.  Reply 5.

[11] Petitioner "elected independent claim 13 of the '615 Patent for the patent showdown procedure; whereas [Patent Owner] has elected a claim from a different patent."  Prelim. Resp. 5 (footnote omitted).

IPR2021-01563
Patent 9,967,615 B2

does not indicate whether the issues of non-infringement, invalidity, or both of this one claim will be considered.  *Id.* at 1 (the "alleged infringer [Petitioner] shall . . . select . . . one asserted claim—presumably the . . . strongest case for noninfringement or invalidity").  It further indicates "[i]f summary judgment fails to resolve the parties' dispute over the claim(s) asserted in the showdown, counsel should be prepared for a prompt trial on the remaining issues." *Id.* at 3.  This Order does not indicate when this contingent trial will occur or what issues will be addressed.  Forecasting what issues may remain following summary judgment briefing and hearing and when, or if, trial on these issues may occur would be speculation.  And, whatever issues remain, the scope of the "showdown" trial will be narrow relative to the scope of the Petition.  We, therefore, accord this potential "showdown" trial little weight in our consideration of this factor.

As trial in the parallel district court cases has been set for May 2023, and our final written decision is due before then, this factor weighs against exercising our discretion to deny institution.

3.    *Investment in the parallel proceeding by the court and the parties*

Under this factor, "[t]he Board . . . consider[s] the amount and type of work already completed in the parallel litigation by the court and the parties at the time of the institution decision." *Fintiv*, Paper 11 at 9.  "This investment factor is related to the trial date factor, in that more work completed by the parties and court in the parallel proceeding tends to support the arguments that the parallel proceeding is more advanced, a stay may be less likely, and instituting would lead to duplicative costs." *Id.* at 10.

Patent Owner argues that "[g]iven the substantial amount of work the parties and several courts have already completed, and the fact that Google

IPR2021-01563
Patent 9,967,615 B2

filed its petition on the last possible day despite knowing of the '615 Patent
for over a year before any district court case was initiated, this factor weighs
in favor of denial." Prelim. Resp. 10. Petitioner argues that "[t]his factor
also favors institution because significant discovery and *Markman*-related
deadlines remain in the Related Litigations" and "[m]ost of the substantial
investments Patent Owner notes are irrelevant to the issues presented in the
Petition." Reply 5–6. Petitioner also argues, "while the Petition was filed
on the bar date, Petitioner did not engage in inexcusable delay, because it
filed before Patent Owner responded to Petitioner's invalidity contentions."
*Id.* at 7. Although the court and the parties have completed much work in
the district court cases, it appears that no substantive orders have been
entered and that the completed work does not overlap with the
unpatentability issues in this proceeding. We determine this factor to be
neutral or to weigh slightly in favor of denying institution.

    4.    *Overlap between issues raised in the petition and in the parallel
proceeding*

"[I]f the petition includes the same or substantially the same claims,
grounds, arguments, and evidence as presented in the parallel proceeding,
this fact has favored denial." *Fintiv*, Paper 11 at 12. "Conversely, if the
petition includes materially different grounds, arguments, and/or evidence
than those presented in the district court, this fact has tended to weigh
against exercising discretion to deny institution under *NHK*." *Id.* at 12–13.

Petitioner stipulates "that if the Board institutes its Petition, it will not
pursue in the Related Litigations the specific grounds in the Petition or any
other ground raised or that could have reasonably been raised in the
Petition." Reply 3. We agree with Petitioner that this stipulation will
prevent overlap between the factual and legal issues presented in the Petition

12

IPR2021-01563
Patent 9,967,615 B2

and the factual and legal issues in the district court cases.  We also agree with Petitioner that "[b]ecause the institution decision will precede any potential trial; the district court and the Board will not conduct duplicative review or provide conflicting decisions. Petitioner's *Sotera* stipulation strongly favors institution." *Id.* (citing *Sotera Wireless, Inc. v. Masimo Corp.,* IPR2020- 01019, Paper 12 at 18-19 (PTAB Dec. 1, 2020) (precedential as to § II.A); *Sand Revolution II, LLC v. Cont'l Intermodal Grp.-Trucking LLC*, IPR2019- 01393, Paper 24 at 11-12 (PTAB June 16, 2020) (informative)).

This proceeding also involves substantially more claims of the '615 patent than the district court cases.  Petitioner challenges claims 1, 2, 6–14, 18–25, and 27–29 (22 claims) in this proceeding.  Pet. 1.  "At issue in the district court now for the '615 patent are claims 13, 14, 15, 18, 19, 20, 21, 25, 26" (9 claims).  Prelim. Resp. 14.  There are 15 claims of the '615 patent (claims 1, 2, 6–12, 22–24, 27–29) challenged in the Petition that are not at issue in the district court.

Because the Board will not be considering the same or substantially the same claims, grounds, arguments, and evidence as presented in the district court litigations, we determine that this factor weighs heavily against exercising our discretion to deny institution.

   5.   *Whether the petitioner and the defendant in the parallel proceeding are the same party*

The parties are the same in the district court litigations.  Pet. 74; Prelim. Resp. 16.  However, our final written decision should precede trial in the district court and we are likely to address unpatentability first.  Under these circumstances, estoppel pursuant to 35 U.S.C. §315(e)(2) is likely to apply and bar Petitioner from asserting that any challenged claim is invalid

IPR2021-01563
Patent 9,967,615 B2

on any ground that the Petitioner raised or reasonably could have raised during this proceeding.   We determine, therefore, that this factor weighs against exercising our discretion to deny institution.

### 6.   *Other circumstances that impact the Board's exercise of discretion, including the merits*

We consider the merits of the Petition to be strong.  At least at this stage of this proceeding, Patent Owner does not challenge any aspect of Petitioner's unpatentability showing.  *See generally* Prelim. Resp. Moreover, we are persuaded, based upon the arguments and the evidence presented in the Petition (and analyzed below), that the showing of unpatentability of the challenged claims is well-supported.

We determine that this factor weighs against exercising our discretion to deny institution.

### 7.   *Holistic Assessment of Factors and Conclusion*

Applying a holistic view, we determine that the efficiency and integrity of the system are best served by institution.  Thus, after considering the factors outlined in the precedential order in *Fintiv*, we do not exercise our discretion to deny institution under § 314(a).

### B.   *Claim Construction*

Claim construction in this proceeding is governed by 37 C.F.R. § 42.100(b), which provides:

> In an *inter partes* review proceeding, a claim of a patent, or a claim proposed in a motion to amend under §42.121, shall be construed using the same claim construction standard that would be used to construe the claim in a civil action under 35 U.S.C. 282(b), including construing the claim in accordance with the ordinary and customary meaning of such claim as understood by one of ordinary skill in the art and the prosecution history pertaining to the patent.

IPR2021-01563
Patent 9,967,615 B2

Under the standard set forth in *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–19 (Fed. Cir. 2005) (en banc), claim terms are given their ordinary and customary meaning, as would have been understood by a person of ordinary skill in the art at the time of the invention, in light of the language of the claims, the specification, and the prosecution history of record. *See Thorner v. Sony Comput. Ent. Am. LLC*, 669 F.3d 1362, 1365–66 (Fed. Cir. 2012). There is a "heavy presumption," however, that a claim term carries its ordinary and customary meaning. *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002) (citation omitted). We only construe terms to the extent necessary to determine the dispute between the parties. *See Nidec Motor Corp. v. Zhongshan Broad Ocean Motor Co.*, 868 F.3d 1013, 1017 (Fed. Cir. 2017) ("[W]e need only construe terms 'that are in controversy, and only to the extent necessary to resolve the controversy.'") (quoting *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999)).

Petitioner relies on claim constructions determined by the court and Patent Owner's proposed constructions for a number of terms. Pet. 12. The Petition states:

> In the related litigation, before the case was transferred, the District Court for the Western District of Texas held that the following terms that appear in the '615 patent should be construed to their plain and ordinary meanings: "multimedia," "network interface," "playback device," and "local area network." Exs. 1016-1017. Additionally, although dropped from consideration before argument and ruling, and thus not construed by the Texas district court, [Patent Owner] and the defendants agreed to construe "one or more transport controls to control playback" as "one or more user input elements, each enabling control of a respective playback-related function." Ex.

IPR2021-01563
Patent 9,967,615 B2

> 1012 at 4.  Additionally, [Patent Owner] proposed construing
> "wireless communication interface" as "physical component of
> a device that provides a wireless interconnection with a local
> area network." *Id.* at 3.
>
> [Patent Owner] also asserted the plain and ordinary
> meaning for the following claim terms: "first cloud servers,"
> "second cloud servers of a streaming content service," and
> "playback queue." *Id.* at 4.  For the purposes of this IPR,
> [Petitioner] adopts the constructions of the District Court for the
> Western District of Texas and [Patent Owner] 's proposed
> claim constructions for those terms not presented for
> construction and construed by the district court. *See* Bims
> [Decl.], ¶¶38-40.

*Id.*  Patent Owner does not present any claim construction arguments.  *See*
*generally* Prelim. Resp.  We preliminarily adopt the constructions set forth in
the Petition for the purpose of considering the merits of the Petition.[12]  And,
we determine that it is not necessary to discuss or construe any additional
claim terms to decide whether trial should be instituted.

*C.    Legal Standards*

A patent claim is unpatentable as obvious if the differences between
the claimed subject matter and the prior art are such that the subject matter,
as a whole, would have been obvious at the time the invention was made to a
person having ordinary skill in the art to which said subject matter pertains.
*KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007).  The question of
obviousness is resolved on the basis of underlying factual determinations
including: we (1) the scope and content of the prior art; (2) any differences
between the claimed subject matter and the prior art; (3) the level of ordinary

---

[12] We wish to hear from Patent Owner regarding claim construction and to
have the record more fully developed prior to making any non-preliminary
claim construction determinations.

skill in the art; and (4) objective evidence of non-obviousness.[13]  *Graham v.
John Deere Co.*, 383 U.S. 1, 17–18 (1966).

"In an [*inter partes* review], the petitioner has the burden from the
onset to show with particularity why the patent it challenges is
unpatentable."  *Harmonic Inc. v. Avid Tech., Inc.*, 815 F.3d 1356, 1363 (Fed.
Cir. 2016) (citing 35 U.S.C. § 312(a)(3) (requiring *inter partes* review
petitions to identify "with particularity . . . the evidence that supports the
grounds for the challenge to each claim")).  Petitioners cannot satisfy their
burden of proving obviousness by employing "mere conclusory statements."
*In re Magnum Oil Tools Int'l, Ltd.*, 829 F.3d 1364, 1380 (Fed. Cir. 2016).

### D.      Level of Ordinary Skill in the Art

With regard to the level of ordinary skill in the art, Petitioner
contends:

> A POSITA would have had a bachelor's degree in physics,
> mechanical engineering, electrical engineering, or audio
> engineering (or an equivalent degree), and three years of
> experience designing or implementing networked wireless
> systems related to streaming media over the Internet.  Bims
> [Decl.], ¶¶20–23.  With more education, for example,
> postgraduate degrees and/or study, less experience is needed to
> attain an ordinary level of skill in the art.  Similarly, more
> experience can substitute for formal education.  *Id.*

Pet. 11.  Patent Owner does not address the level of ordinary skill in the art.
*See generally* Prelim. Resp.

Petitioner's proposal is consistent with the technology described in the
Specification and the cited prior art.  In order to determine whether
Petitioner has demonstrated a reasonable likelihood of showing the

---

[13] The parties have not asserted or otherwise directed our attention to any
objective evidence of nonobviousness.

unpatentability of at least one of the challenged claims, we adopt Petitioner's proposed level of skill in the art.

### E.   Cited References

#### 1.   Al-Shaykh (Ex. 1007)

Al-Shaykh is titled "System and Method for Transferring Media Content from a Mobile Device to a Home Network."  Ex. 1007, code (54).  Al-Shaykh "relates to a system and a method which enable a media application on the mobile device to share media content with rendering devices in the home network."  *Id.* ¶ 2.

Figure 1 of Al-Shaykh, reproduced below, "illustrates a system for transferring media content from a mobile device to a home network."  *Id.* ¶ 68.



Figure 1 of Al-Shaykh, reproduced above, depicts system 10 for transferring media content 15 from mobile device 11 to rendering devices 21, 22, 23 on home network 20.  *Id.* ¶ 78.  "[M]obile device 11 may have a display screen capable of displaying user interface elements and/or visual media content."  *Id.*  Rendering devices 21, 22, 23 "may be any rendering device capable of

IPR2021-01563
Patent 9,967,615 B2

rendering the media content received using the home network 20 as known to one skilled in the art." *Id.* ¶ 81. Mobile device 11 uses a media application to access media content 15 stored locally or remotely provided via the Internet. *Id.* ¶¶ 82–83.

Figure 2, reproduced below, "illustrates a user interface of a media application having a set of controls and indications in an embodiment of the present invention." *Id.* ¶ 69.



Figure 2 of Al-Shaykh, reproduced above, depicts user interface 31 for the media application of mobile device 11. *Id.* ¶ 85. User interface 31 includes media controls 42 for controlling media-related tasks (*id.* ¶ 88) and set of controls and indications 35 for enabling the user to transfer media content to rendering devices 21, 22, 23 (*id.* ¶ 89).

> [M]obile device 11 may access and/or obtain the media content from a remote content service using a 3G carrier network for use in a media application on the mobile device 11. Then, the mobile device 11 may relay the media content to the target rendering device using the home network 20. In this case, the media content from the remote content service may flow through the

IPR2021-01563
Patent 9,967,615 B2

> mobile device 11 if the transfer of the media content is enabled
> using the set of controls and indications 35.

*Id.* ¶ 95.

### 2.     *Qureshey (Ex. 1008)*

Qureshey is titled "Method and Device for an Internet Radio Capable of Obtaining Playlist Content From a Content Server."  Ex. 1008, code (54). Qureshey relates to "management and distribution of audio files over a computer network such as the Internet."  *Id.* at 1:22–24.

Figure 11 of Qureshey, reproduced below, "is a perspective view of one embodiment of the computing environment of a network-enabled audio device configuration."  *Id.* at 5:51–53.



*FIG.   11*

Figure 11 of Qureshey, reproduced above, depicts Internet Personal Audio Network (IPAN) 1100 including network 1102 (e.g., Internet), IPAN server 1104, personal computer (PC) IPAN client 1106, network-enabled audio device A 1110 with user controls 1112, and network-enabled audio

20

device B 1108.  *Id.* at 16:56–62.  IPAN server 1104 maintains playlists, which are lists of audio files and associated URLs specifying where the audio files are retrieved from.  *Id.* at 17:4–6, 21:62–65.  Device A 1110 connects to IPAN server 1104, which downloads a playlist to device A 1110. *Id.* at 16:67–17:2.  Using a Playlist Manager audio player window (not shown), a user can assign a playlist to an audio device.  *Id.* at 24:44–53, 28:11–16.

### 3.   *Phillips (Ex. 1006)*

Phillips is titled "System and Method for Video Display Transfer Between Video Playback Devices."  Ex. 1006, code (54).  Phillips "relates to transferring display of video content from one device to another."  *Id.* at 1:14–15.

Figure 1 of Phillips, reproduced below, "illustrates a system for transferring display of video content between a mobile device and a renderer located proximate to the mobile device according to one embodiment of the present disclosure."  *Id.* at 2:8–11.

IPR2021-01563
Patent 9,967,615 B2



*FIG. 1*

Figure 1 of Phillips, reproduced above, depicts system 10 including media
controllers 12, renderers 14, and media broker 16 connected via Local Area
Network (LAN) 18. *Id.* at 2:63–66. Media controllers 12 are sources of
video content that are stored locally or accessed remotely from Internet-
based streaming video services. *Id.* at 3:18–25. Renderers 14 are devices
that provide playback of content from media controllers 12. *Id.* at 3:43–44.
Media broker 16 manages transfer of video between mobile device 20 and
renderers 14. *Id.* at 4:5–9. User 22 may initiate a transfer of video content
using a graphical user interface on mobile device 20. *Id.* at 5:60–66.

### 4.    Ramsay (Ex. 1009)

Ramsay is titled "Systems and Methods for Providing a Media
Playback in a Networked Environment." Ex. 1009, code (54). Ramsay
discloses a wireless web-enabled portable device interfacing with one or
more networked media playback devices without the need for specialized
software on the portable device. *Id.* at 1:9–13.

IPR2021-01563
Patent 9,967,615 B2

Figure 1 of Ramsay, reproduced below, "shows a networked media system according to one embodiment." *Id.* at 3:34–35.



**FIG. 1**

Figure 1 of Ramsay, reproduced above, depicts digital media playback system 100 including wireless speakers 101*a*, 101*b*, which are connected to wireless network 12 via access point 103 and controllable individually or together as speaker set 101*c*. *Id.* at 4:59–66. Wireless web-enabled device 108 (e.g., Apple iPhone) is used to control individual wireless speakers 101*a*, 101*b* or speaker set 101*c*. *Id.* at 5:25–30.

     *F.    Obviousness Based on Al-Shaykh and Qureshey*

We consider the arguments and evidence in the Petition in order to determine if there is a reasonable likelihood that the Petitioner will prevail

IPR2021-01563
Patent 9,967,615 B2

with respect to at least 1 of the claims challenged in the Petition.  Petitioner
contends that claims 1, 6–13, 18–25, and 27–29 of the '615 patent are
unpatentable as obvious over the combined teachings of Al-Shaykh and
Qureshey.  Pet. 13–36, 40–57.  As noted above, Patent Owner does not
present any arguments or evidence regarding the merits of the Petition as to
unpatentability of the challenged claims.  *See generally* Prelim. Resp.
Accordingly, none of the arguments and evidence in the Petition are at this
stage of this proceeding rebutted.

> With regard to the combination of Al-Shaykh and Qureshey, the
Petition states:

> > Al-Shaykh discloses the base media playback system
> > including a mobile control device with a GUI that enables a
> > user to transfer playback to a rendering device and functionality
> > to allow the rendering device to retrieve content for playback
> > from a remote source.  Qureshey discloses media playback
> > systems with servers that provide different functionality
> > including a first set of at least one server that adds information
> > to the playback device that identifies the location of multimedia
> > content to be played back and a second set of at least one server
> > that is associated with a content service and stores the content
> > to be played back.

Pet. 13.  With regard to combining the relevant teachings of Al-Shaykh and
Qureshey, the Petitioner contends that, "[a] POSA [person of skill in the art]
would have been motivated to and would have found it obvious to combine
Al-Shaykh and Qureshey for several reasons."  Pet. 13 (citing Ex. 1003
(Bims Decl.) ¶¶ 71–78).  In this regard, the Petition states:

> > Al-Shaykh and Qureshey are in the same field of
> > endeavor, deal with similar devices, and are directed to solving
> > the same problems in those devices.  Bims, ¶72. . . . [B]oth
> > references enable users to transfer playback to various devices
> > and playback content on those devices from the Internet, which

IPR2021-01563
Patent 9,967,615 B2

provides much greater accessibility to content than traditional systems that were limited to playback of content locally stored on the network. . . .

[B]oth references describe networked media playback systems that include a control device and one or more rendering devices. *See* Bims, ¶73. . . . Thus, Al-Shaykh and Qureshey involve similar media playback systems that are often used in homes or offices and allow users the flexibility of playing content on various device configurations for different scenarios. . . . A POSA would also have been motivated to combine these references to develop an improved GUI for control devices in a multimedia playback network. Bims, ¶73. . . .

Additionally, the references are directed toward solving similar problems. . . .

Based on at least the reasons noted above, Al-Shaykh and Qureshey are analogous art to the '615 patent, and a POSA would have found it obvious to combine them. *In re Clay*, 966 F.2d 656, 659 (Fed. Cir. 1992); Bims, ¶ 78.

Pet. 14–16. Based on this unopposed showing in the Petition, our preliminary, non-binding determination[14] is that a skilled artisan would have been motivated to combine the relevant teachings of Al-Shaykh and Qureshey.

---

[14] Even where we do not explicitly indicate that our determinations at this stage are preliminary and non-binding, any determination, finding, or conclusion set forth within this document is preliminary and non-binding. We wish to have the record further developed before making any non-preliminary and binding determination, finding, or conclusion other than whether to institute trial.

IPR2021-01563
Patent 9,967,615 B2

### 1. *Independent Claim 1[15]*

> *A method comprising:*
> *causing, via a control device, a graphical interface to display a*
>     *control interface including one or more transport controls to*
>     *control playback[16] by the control device;*

Petitioner relies on Al-Shaykh as teaching all the elements of this limitation.  Pet. 17–19 (citing Ex. 1003 (Bims Decl.) ¶¶ 79–80; Ex. 1007 ¶¶ 78, 85–88, 92, Figs. 1, 2, 12).  Petitioner contends that "Al-Shaykh discloses a "mobile device" with a "user interface 31" that includes various components, including a media controls interface area."  *Id.* at 18.  In cited paragraph 78, Al-Shaykh teaches that "[t]he mobile device 11 may have a display screen capable of displaying user interface elements and/or visual media content."  Ex. 1007 ¶ 78.  Petitioner also contends that "the media controls interface area includes 'media controls 42,' which are elements used to 'control rendering of music files on the mobile device 11.'"  Pet. 18 (citing Ex. 1007 ¶¶ 78, 88, 92).  In cited paragraph 88, Al-Shaykh teaches that, "[t]he media controls 42 may enable the user 12 to control media-related tasks, such as, for example, creation, discovery, selection, organization, management, manipulation and/or rendering of the media content 15."  Ex. 1007 ¶ 88.  The Petition includes an annotated version of combined Figures 1 and 2 of Al-Shaykh, reproduced below.  Pet. 19.

---

[15] We adopt Petitioner's parsing of claim 1 in order to follow the presentation of the arguments and evidence in the Petition.  *See* Pet. 17.
[16] As indicated *supra*, Petitioner and Patent Owner agreed in the district court litigation to construe "one or more transport controls to control playback" as "one or more user input elements, each enabling control of a respective playback-related function."  *See* Section II.B. (Claim Construction).



Al-Shaykh, Figure 1 (annotated)    Al-Shaykh, Figure 2 (annotated)

*Id.* Figure 1 depicts "a system for transferring media content from a mobile device to a home network" and Figure 2 depicts "a user interface of a media application having a set of controls and indications." Ex. 1007 ¶¶ 68–69.

The cited passages and figures of Al-Shaykh support Petitioner's argument that all the elements of this limitation are taught by the cited art. Petitioner's undisputed showing as to this limitation is supported and reasonable.

> *after connecting to a local area network via a network interface, identifying, via the control device, playback devices connected to the local area network;*

Petitioner relies on Al-Shaykh as teaching all the elements of this limitation. Pet. 19–22 (citing Ex. 1003 (Bims Decl.) ¶¶ 81–85; Ex. 1007 ¶¶ 4, 5, 34, 77, 78, 80–82, 85, 94, 112, 133, 153, Figs. 1, 6). Petitioner contends:

(1) "Al-Shaykh's mobile device connects to a home network 20, such as a 'residential local area network,' in order to 'communicate with one or more available rendering devices'" (*id.* at 19–20 (citing Ex. 1007 ¶ 78, Fig. 1));

27

(2) "Al-Shaykh discloses communicating using . . . local area network protocols for the home network, so the components of Al-Shaykh's mobile devices providing the interface to those networks are network interfaces" (*id.* at 20 (citing Ex. 1007 ¶¶ 4, 5, 77, 78, 80, 82, 94)); and

(3) "Al-Shaykh's rendering devices include 'televisions[s], … stereo[s], … a gaming console[s], a personal computer[s], a laptop PC[s], [] netbook PC[s], and/or the like,' and, thus, are playback devices because each of these devices are configured to playback content" (*id.* at 21 (citing Ex. 1007, ¶ 81, Fig. 1).

Petitioner provides an annotated Figure 1, reproduced below.



Al-Shaykh, Figure 1 (annotated)

*Id.* According to Petitioner, annotated Figure 1 depicts "[a]fter connecting to the local area network [home network 20], the mobile device [11] communicates with 'rendering devices 21, 22, 23.'" *Id.* And, the Petition

includes an annotated version of combined Figures 1 and 6 of Al-Shaykh,
reproduced below.  *Id.* at 22.



Al-Shaykh, Figure 6 (annotated with elements from Figure 1)

*Id.*  Figure 1 depicts, "a system for transferring media content from a mobile
device to a home network" and Figure 6 depicts, "a renderer menu."
Ex. 1007 ¶¶ 68,71.

The cited passages and figures of Al-Shaykh support Petitioner's
argument that all the elements of this limitation are taught by the cited art.
Petitioner's undisputed showing as to this limitation is supported and
reasonable.

> *causing, via the control device, the graphical interface to
> display a selectable option for transferring playback from the
> control device;*

Petitioner relies on Al-Shaykh as teaching all the elements of this
limitation.  Pet. 22–24 (citing Ex. 1003 (Bims Decl.) ¶¶ 86–88; Ex. 1007
¶¶ 89, 100, 115, 120, Figs. 2–5).  Petitioner contends: "[t]he 'user interface
31' of Al-Shaykh's mobile device displays a 'set of controls and indications

IPR2021-01563
Patent 9,967,615 B2

35 [that] enable the user 12 to enable and/or disable transfer of the media content 15' to a rendering device." *Id.* at 22–23 (citing Ex. 1007 ¶ 89, Fig. 2) (alteration in original).  Petitioner provides annotated Figures 2, 3, and 5, reproduced below.  *Id.* at 24.



Al-Shaykh, Figures 2, 3, and 5 (annotated)

*Id.*  Annotated Figures 2, 3, and 5 depict, "the mobile device displays media transfer control 51 and control/indication element 71 as selectable options for transferring playback from the control device (i.e., the mobile device) to a rendering device." *Id.* at 23 (citing Ex. 1003 (Bims Decl.) ¶¶86-88).[17]

The cited passages and figures of Al-Shaykh support Petitioner's argument that all the elements of this limitation are taught by the cited art. Petitioner's undisputed showing as to this limitation is supported and reasonable.

---

[17] In the Petition, certain text is colored.  *See, e.g.*, Pet. 23 ("media transfer control 51" and "control/indication element 71" colored purple as in annotated Figures 2, 3, and 5).  In quoting the passages in the Petition with colored text, all text coloration outside of the figures in the Petition has been removed.

> *detecting, via the control device, a set of inputs to transfer*
> *playback from the control device to a particular playback*
> *device, wherein the set of inputs comprises: (i) a selection of*
> *the selectable option for transferring playback from the*
> *control device and (ii) a selection of the particular playback*
> *device from the identified playback devices connected to the*
> *local area network;*

Petitioner relies on Al-Shaykh as teaching all the elements of this

limitation.  Pet. 24–26 (citing Ex. 1003 (Bims Decl.) ¶¶ 89–92; Ex. 1007

¶¶ 31, 36, 78, 85, 89, 99, 100, 106, 114, 115, 117, 119–121, 133–139, Figs.

2–6).  Petitioner contends:

(1) Al-Shaykh discloses that "a user selects the selectable option (i.e.,

media transfer control 51 or control/indication element 71) to

'enable and/or disable transfer of the media content 15' to a

rendering device" (*id.* at 25 (citing Ex. 1003 ¶ 90);

(2) "[a]fter the media transfer control 51 or control/indication element

71 is selected, the mobile device can display a renderer menu 75

with 'a list 77 of available rendering devices' for a user to select

from" (*id.* (citing Ex. 1003 ¶ 91; Ex. 1007 ¶¶ 106, 117, 120, 121,

133); and

(3) "[t]he list enables a user to 'select' a particular rendering device

from the list of available rendering devices" (*id.* (citing Ex. 1007 ¶

133).

Petitioner provides annotated Figures 2, 3, 5, and 6, reproduced

below.  *Id.* at 26.



*Id.* Annotated Figures 2, 3, 5, and 6 depict, "in Al-Shaykh's system, a mobile device detects user inputs to transfer playback from the mobile device to a particular rendering device when the user selects the media transfer control 51 or control/indication element 71 followed by a second selection of a particular rendering device from the renderer menu." *Id.* (citing Ex. 1003 ¶ 92).

The cited passages and figures of Al-Shaykh support Petitioner's argument that all the elements of this limitation are taught by the cited art. Petitioner's undisputed showing as to this limitation is supported and reasonable.

> *after detecting the set of inputs to transfer playback from the control device to the particular playback device, causing playback to be transferred from the control device to the*

> *particular playback device, wherein transferring playback from*
> *the control device to the particular playback device comprises:*

Petitioner relies on Al-Shaykh as teaching all the elements of this limitation. Pet. 27 (citing Ex. 1003 (Bims Decl.) ¶¶ 93–94; Ex. 1007 ¶¶ 89, 92, 130). Petitioner contends that Al-Shaykh "discloses that, after detecting the set of inputs, the mobile device causes playback to transfer to the target rendering device." *Id.*

The cited passages and figures of Al-Shaykh support Petitioner's argument that all the elements of this limitation are taught by the cited art. Petitioner's undisputed showing as to this limitation is supported and reasonable.

> *causing one or more first cloud servers to add multimedia*
> *content to a local playback queue on the particular playback*
> *device, wherein adding the multimedia[18] content to the local*
> *playback queue comprises the one or more first cloud servers*
> *adding, to the local playback queue, one or more resource*
> *locators corresponding to respective locations of the*
> *multimedia content at one or more second cloud servers of a*
> *streaming content service;*

Petitioner relies on Qureshey (in combination with Al-Shaykh) as teaching the elements of this limitation. Pet. 27–34 (citing Ex. 1003 (Bims Decl.) ¶¶ 95–103; Ex. 1008, 3:34–39, 3:46–47, 7:55–58, 13:8–27, 14:32–47, 16:29–32, 16:56–60, 21:62–65, 22:48–58, 24:26–30, 28:11–43, 35:33–67, 37:22–26 (claim 43), Figs. 6B, 11, 15. Petitioner provides a colored version of Figure 6B, reproduced below. *Id.* at 30.

---

[18] Petitioner relies on Patent Owner's construction of "multimedia" as "includ[ing] audio only content." Pet. 30–31 n.2. Petitioner also contends, "[e]ven if 'multimedia' required content constituting more than one type of media (e.g., audio and video), Al-Shaykh discloses playback of such type of content." *Id.* at 31 n.2 (citing Ex. 1007 ¶¶ 3, 4, 84, 160–167).

IPR2021-01563
Patent 9,967,615 B2



FIG. 6B

*Id.* Figure 6B depicts the, "relationship between the site 602 and other Web sites that supply streaming audio information, such as a site 630, a site 631, and a site 632." Ex. 1008, 14: 32–34. Petitioner also provides a colored version of Figure 11, reproduced below. *Id.*



FIG. 11

*Id.* Figure 11 depicts, "an IPAN [Internet Personal Audio Network] 1100 includes an IPAN server 1104, a PC IPAN client 1106, a network 1102, a device B 1108, a device A 1110, and user controls 1112. The PC IPAN

client 1106 connects to the IPAN Server 1104 through the network 1102 (such as the Internet)."  Ex. 1008, 16:56–60.  Petitioner further provides a colored version of Figure 15, reproduced below.  *Id.* at 28.



*Id.*  Fig. 15 depicts, "a configuration for assigning playlists and audio sources to a network-enabled audio device 1510 or other devices such as a PC 1508 from a network-enabled audio device 1520 or another device."  Ex. 1008, 21:40–43.

Petitioner contends:

(1) "Qureshey's IPAN server 1104 is a *first cloud server* and Qureshey's audio sources 630-632 constitute *second cloud servers of a streaming content service*.  Both the IPAN server 1104 and audio sources 630-632 constitute cloud servers because they are remote computing systems that are accessed over the Internet" (Pet. 28–29 (citing Ex. 1003 ¶ 97; Ex. 1008, 3:34–39, 13:8–27, 14:32–47, 16:29–31, 16:56–60, Figs. 6B, 11, 15));

(2) "Qureshey discloses a synchronization procedure that causes an IPAN cloud server to add an updated playlist to the storage space

1512 of a network-enabled audio device, wherein the updated playlist includes a list of audio files and Uniform Resource Locators (URLs) corresponding to the location of the audio files in the playlist" (*id.* at 30–31) (citing Ex. 1003 ¶ 98; Ex. 1008, 3:46–47, 7:55–58, 14:32–47, 21:62–65, 22:48–58, 24:26–30, 37:22–26, Figs. 6B, 11, 15) (footnote omitted));

(3) "the network-enabled audio device contains a local playback queue that contains a playlist with URLs and a certain list of media (e.g., list of songs for playback) stored within the storage space 1512. The stored URLs are used for retrieval and playback of the certain list of songs in a particular sequence" (*id.* at 31–32) (citing Ex. 1003 ¶¶ 99, 100; Ex. 1008, 21:43-46, 21:62-67, 28:11-43, 35:33-67));

(4) "a POSA would understand that the storage space 1512 containing a playlist with URLs and a certain list of songs includes a local playback queue with URLs used for both retrieving songs and playing them back in a particular sequence, and the list of songs included in the playlist indicates the particular sequence of playback itself. . . . the playlist can store the songs themselves, additionally indicating that Quershey discloses adding multimedia content to a local playback queue" (*id*. at 32) (citing Ex. 1003 ¶¶ 99, 100));

(5) "in the combined Al-Shaykh-Qureshey system, when a set of inputs to transfer playback from the mobile device to the particular rendering device is detected, as disclosed in Al-Shaykh, then the system would cause a first cloud server (i.e.,

IPR2021-01563
Patent 9,967,615 B2

Qureshey's IPAN server) to add URLs associated with the locations of the audio files to the storage space 1512 (as disclosed in Qureshey) in Al-Shaykh's rendering devices" (*id.* at 33); and

(6) "a POSA would have been motivated to incorporate the back-end server functionality that enables a rendering device to directly retrieve content from the Internet to play back, as taught by Qureshey, into Al-Shaykh's system, to the extent that Al-Shaykh does not disclose this functionality" (*id.* at 33–34 (citing Ex. 1007 ¶¶ 15, 94, 97; Ex. 1008, 3:34–39, 13:8–27, 14:32–47, 16:29–32, 16:56–60, Figs. 6B, 11, 15)).

The cited passages and figures of Qureshey support Petitioner's argument that all the elements of this limitation are taught by the cited art. Petitioner's undisputed showing as to this limitation is supported and reasonable.

*causing playback at the control device to be stopped; and*

Petitioner relies on Al-Shaykh as teaching all the elements of this limitation. Pet. 35–36 (citing Ex. 1003 (Bims Decl.) ¶¶ 121–123; Ex. 1007 ¶¶ 53, 93, 100, 156, 157, 166, 167, 173, 174). The Petition states:

> Al-Shaykh discloses the functionality required to stop playback at the mobile device when playback is transferred to the particular rendering device. Specifically, Al-Shaykh discloses transferring playback from an initial rendering device to a new rendering device. Al-Shaykh, [0156-57], [0166- 67], [0173-74]. When transfer occurs, "rendering of the music content on the initial target rendering device may be stopped, and … the rendering of music content on the new target rendering device may begin." Similarly, when rendering from the mobile device is transferred to the target rendering device, the rendering at the mobile device is stopped. *See id.*, [0174], [0157] (the user may transfer playback back from the rendering

> device to the mobile device by invoking the media transfer
> control 51 or control/indication element 71 a second time).
> Thus, a POSA would find Al-Shaykh renders obvious that a
> mobile device stops playback when playback is transferred to
> the particular rendering device.  Bims, ¶ 106.

*Id.* at 35–36.

The cited passages and figures of Al-Shaykh support Petitioner's argument that all the elements of this limitation are taught by the cited art. Petitioner's undisputed showing as to this limitation is supported and reasonable.

> *modifying the one or more transport controls of the control*
> *interface to control playback by the playback device; and*

Petitioner relies on Al-Shaykh as teaching all the elements of this limitation.  Pet. 40–41 (citing Ex. 1003 (Bims Decl.) ¶¶ 104–106; Ex. 1007 ¶¶ 53, 93, 100, 156, 157, 166, 167, 173, 174).  The Petition states:

> Al-Shaykh further discloses that the same media controls
> 42 that are configured to control playback of the mobile device
> are configured to control playback of the rendering device.  Al-
> Shaykh, [0092], [0172], [0013], [0162] . . . A POSA would
> understand that the media controls on user interface 31 must be
> modified in order for the same media controls to be configured
> to control playback in both modes (i.e., a first mode where
> playback is at the mobile device and a second mode where
> playback is transferred to the rendering device). Bims, ¶ 123.
> Specifically, when playback is transferred from the mobile
> device to the rendering device, the media controls must be
> modified in order to change the command operation such that
> use of one of the media controls the operation of the rendering
> device and not the mobile phone.  *Id.*

*Id.* at 41.

The cited passages and figures of Al-Shaykh support Petitioner's argument that all the elements of this limitation are taught by the cited art.

IPR2021-01563
Patent 9,967,615 B2

Petitioner's undisputed showing as to this limitation is supported and reasonable.

> *causing the particular playback device to play back the*
> *multimedia content, wherein the particular playback device*
> *playing back the multimedia content comprises the particular*
> *playback device retrieving the multimedia content from one*
> *or more second cloud servers of a streaming content service*
> *and playing back the retrieved multimedia content.*

Petitioner contends that both Al-Shaykh and Qureshey teach all the elements of this limitation. Pet. 41–45 (citing Ex. 1003 (Bims Decl.) ¶¶ 124–131; Ex. 1007 ¶¶ 6, 15, 20, 82, 90, 92–95, 97, Fig. 1; Ex. 1008, 2:40–46, 4:62–64, 14:32–47, 21:62–65, 24:17–30, 35:33–36:3, Fig. 6B).

With regard to Al-Shaykh, the Petition states:

(1) "Al-Shaykh discloses 'rendering [] media content on the target rendering device'" (Pet. 42 (citing Ex. 1007 ¶¶ 15, 97) (alteration in original));

(2) "Al-Shaykh discloses a 'remote content service' that provides devices access to stream media content from the internet using, for example, a 'service-specific' or 'media' application. . . . Al-Shaykh further discloses a 'remote content provider' that directly transmits the media content to the devices. . . . Thus, Al-Shaykh's remote content provider transmitting content accessible from a remote content service would constitute a second cloud server of a streaming content service because Al-Shayk's system comprises a remote computing system that is accessed over the Internet" (*id.* at 43 (citing Ex. 1003 ¶ 127; Ex. 1007 ¶¶ 6, 20, 80, 82, 90, 92, 93, 95, Fig. 1)); and

(3) "Al-Shaykh further discloses that the particular rendering device can directly retrieve media content to playback without the media content

IPR2021-01563
Patent 9,967,615 B2

originating from or flowing through the mobile device 11" (*id.* at 44 (citing Ex. 1003 ¶ 129; Ex. 1007 ¶¶ 94, 95)).

With regard to Qureshey, the Petition states:

(1) "Qureshey discloses a networked-enabled audio device (also referred to as an electronic device) that retrieves audio content from a remote source and plays it back" (Pet. 44 (citing Ex. 1003, ¶¶ 129–131; Ex. 1008, 2:40–46, 4:62–64, 14:32–47, 35:33-36:3, Fig. 6B)); and

(2) "the networked-enabled audio device stores a playlist that includes URLs that indicate the location of audio files. . . . the remote source that audio files can be retrieved from are audio sources 630-632 that constitute second cloud servers of a streaming content service" (*id.* at 45 (citing Ex. 1008, 21:62-65, 22:48-58, 24:17-30)).

The cited passages and figures of Al-Shaykh and Qureshey support Petitioner's argument that all the elements of this limitation are taught by the cited art. Petitioner's undisputed showing as to this limitation is supported and reasonable.

Summary as to Claim 1

Petitioner has established a reasonable likelihood of showing that claim 1 of the '615 patent would have been obvious in view of the cited references.[19]

---

[19] Thus, we have determined that there is a reasonable likelihood that the Petitioner will prevail with respect to at least one of the claims challenged in the Petition pursuant to 35 U.S.C. § 314 and that *inter partes* review should be instituted. Accordingly, we institute as to all the challenged claims and all the challenges raised in the Petition. 37 C.F.R. §42.108(a)(" When instituting *inter partes* review, the Board will authorize the review to proceed on all of the challenged claims and on all grounds of unpatentability asserted for each claim.").

IPR2021-01563
Patent 9,967,615 B2

### 2. Claims 6–13, 18–25, and 27–29

Petitioner also provides a detailed showing that 6–13, 18–25, and 27–29 of the '615 patent are unpatentable as obvious over the combined teachings of Al-Shaykh and Qureshey.  Pet. 45–57.  As noted previously, Patent Owner does not address the merits of any portion of the Petitioner's obviousness showing.  *See generally* Prelim. Resp.  Thus, at this stage, Petitioner's obviousness showing as to claims 6–13, 18–25, and 27–29 is not rebutted.

Based on our review of the Petition, we determine that Petitioner has established a reasonable likelihood of showing that claims 6–13, 18–25, and 27–29 of the '615 patent would have been obvious in view of the cited references.

### G. Obviousness Based on Al-Shaykh, Qureshey, and Phillips

Petitioner contends that claims 1, 6–13, 18–25, and 27–29 of the '615 patent are unpatentable as obvious over the combined teachings of Al-Shaykh, Qureshey, and Phillips.  Pet. 36–57.  Petitioner's showing that the challenged claims are unpatentable over these cited references at least at this stage of this proceeding is not rebutted in any aspect.  *See generally* Prelim. Resp.  Based on our review of the Petition, we determine that Petitioner has established a reasonable likelihood of showing that claims 1, 6–13, 18–25, and 27–29 of the '615 patent would have been obvious in view of the cited references.

### H. Obviousness Based on Al-Shaykh, Qureshey, and Ramsay

Petitioner contends that dependent claims 2 and 14 of the '615 patent are unpatentable as obvious over the combined teachings of Al-Shaykh, Qureshey, and Ramsay.  Pet. 57–69.  Petitioner's showing that the

challenged claims are unpatentable over these cited references at least at this stage of this proceeding is not rebutted in any aspect. *See generally* Prelim. Resp. Based on our review of the Petition, we determine that Petitioner has established a reasonable likelihood of showing that claims 2 and 14 of the '615 patent would have been obvious in view of the cited references.

I. *Obviousness Based on Al-Shaykh, Qureshey, Phillips and Ramsay*

Petitioner contends that dependent claims 2 and 14 of the '615 patent are unpatentable as obvious over the combined teachings of Al-Shaykh, Qureshey, Phillips, and Ramsay. Pet. 57–69. Petitioner's showing that the challenged claims are unpatentable over these cited references at least at this stage of this proceeding is not rebutted in any aspect. *See generally* Prelim. Resp. Based on our review of the Petition, we determine that Petitioner has established a reasonable likelihood of showing that claims 2 and 14 of the '615 patent would have been obvious in view of the cited references.

## III. CONCLUSION

For the reasons discussed above, we determine that Petitioner has demonstrated a reasonable likelihood of showing at least one of the claims challenged in the Petition would have been obvious.

## IV. ORDER

In consideration of the foregoing, it is hereby:

ORDERED that, pursuant to 35 U.S.C. § 314(a), an *inter partes* review of the '615 patent is instituted with respect to the challenged claims and the grounds set forth in the Petition; and

FURTHER ORDERED pursuant to 35 U.S.C. § 314(a) and 37 C.F.R. § 42.4(b), *inter partes* review of the '615 patent shall commence on the entry date of this Order, and notice is hereby given of the institution of a trial.

IPR2021-01563
Patent 9,967,615 B2

FOR PETITIONER:

Erika Arner
Cory Bell
Kara Specht
Umber Aggarwal
FINNEGAN, HENDERSON, FARABOW,
  GARRETT, & DUNNER, LLP
erika.arner@finnegan.com
cory.bell@finnegan.com
kara.specht@finnegan.com
umber.aggarwal@finnegan.com


FOR PATENT OWNER:

Cole Richter
Michael Boyea
John Smith
David Grosby
LEE SULLIVAN SHEA & SMITH LLP
richter@ls3ip.com
boyea@ls3ip.com
smith@ls3ip.com
grosby@ls3ip.com

Jeffrey Armstong
AKERMAN LLP
jeffrey.armstrong@akerman.com