# EXHIBIT 15



**UNITED STATES PATENT AND TRADEMARK OFFICE**

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 16/383,561 | 04/12/2019 | Robert A. Lambourne | 07-0901-CON0419A | 5592 |

| 135176          7590          07/05/2019 | EXAMINER |
|---|---|
| LS3 Sonos<br>Lee Sullivan Shea & Smith LLP<br>656 W. Randolph St.<br>Floor 5W<br>Chicago, IL 60661 | MCCORD, PAUL C |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2656 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 07/05/2019 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

ls3_docketing@cardinal-ip.com
york@ls3ip.com

Application/Control Number: 16/383,561  Page 2
Art Unit: 2656

## *Notice of Pre-AIA or AIA Status*

The present application is being examined under the pre-AIA first to invent provisions.

## DETAILED ACTION

### *Claim Rejections - 35 USC § 103*

1. In the event the determination of the status of the application as subject to AIA 35 U.S.C. 102 and 103 (or as subject to pre-AIA 35 U.S.C. 102 and 103) is incorrect, any correction of the statutory basis for the rejection will not be considered a new ground of rejection if the prior art relied upon, and the rationale supporting the rejection, would be the same under either status.

2. The following is a quotation of 35 U.S.C. 103 which forms the basis for all obviousness rejections set forth in this Office action:

> A patent for a claimed invention may not be obtained, notwithstanding that the claimed invention is not identically disclosed as set forth in section 102 of this title, if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains. Patentability shall not be negated by the manner in which the invention was made.

3. The factual inquiries set forth in *Graham v. John Deere Co.*, 383 U.S. 1, 148 USPQ 459 (1966), that are applied for establishing a background for determining obviousness under 35 U.S.C. 103 are summarized as follows:

   1. Determining the scope and contents of the prior art.

   2. Ascertaining the differences between the prior art and the claims at issue.

   3. Resolving the level of ordinary skill in the pertinent art.

   4. Considering objective evidence present in the application indicating obviousness or nonobviousness.

Application/Control Number: 16/383,561 Page 3
Art Unit: 2656

4. Claims 1-20 rejected under 35 U.S.C. 103 as being unpatentable over Yamaha DME Designer (manual provided by Examiner, copyright 2004 and hereinafter DME).

5. Regarding claim 1, 8, 15

DME teaches:

A playback device, method and coded instructions operable of one or more processors; a non-transitory computer-readable medium; and program instructions stored on the non-transitory computer-readable medium that, when executed by the one or more processors, cause the playback device to perform functions (DME: pp 3-9,492-496: plural playback devices in the form of network configurable audio processor systems operative under direction of a controller resident on an attached computer and/or playback device to create, store, recall and operate audio processing and playback configurations upon a network of playback devices) comprising:

while operating in a first zone of a media playback system, receiving, from a network device over a data network, a first indication that the first zone has been added to a first zone scene comprising a first preconfigured grouping of zones including at least the first zone and a second zone that are to be configured for synchronous playback of media when the first zone scene is invoked (DME: pp 47-51, 68-93: a scene or configuration built by a user to optionally include any of a first thru thirty-second device groups each group optionally including any of a first zone player, second, sixteenth, etc. zone player in a particular scene or configuration, said scene or configuration stored, recalled and operated by/upon a controller or any among the first, second, etc. playback devices);

receiving, from the network device over the data network, a second indication that the first zone has been added to a second zone scene comprising a second preconfigured grouping of zones including at least the first zone and a third zone that are to be configured for

synchronous playback of media when the second zone scene is invoked, wherein the second zone is different than the third zone (DME: pp 47-51, 68-93: a scene or configuration built by a user to optionally include any of a first thru thirty-second device groups each group optionally including any of a first zone player, third, sixteenth, etc. zone player in a particular scene or configuration, said scene or configuration stored, recalled and operated by/upon a first device);

after a given one of the first and second zone scenes has been selected for invocation, receiving, from the network device over the data network, an instruction to operate in accordance with the given one of the first and second zone scenes (DME: pp 3-18, 47-51, 68-93, 131-144: an invoked one of plural stored scene or configuration comprising a particular set of zone players in particular channel configurations and user operative control by mapped external MIDI, GPI, DAW, AMX/Crestron, head amp type device control);

based on the instruction, beginning to operate in accordance with the given one of the first and second zone scenes such that the playback device is configured to play back audio in synchrony with one or more other playback devices in the media playback system (DME: pp 3-18: plural audio channels output over a scene or configuration of particular DME devices each operative to synchronously output determined audio channels upon determined audio players).

While DME does not explicitly teach the inclusion, exclusion, etc. of particular enumerated first, second, etc. players of the set of available players to form, create, save, recall etc. a particular first, second, etc. grouping Examiner takes official notice that the grouping and sub-grouping of a constellation of audio players to include or disclude particular players from an operational set was well known in the art before the effective filing date of the instant invention and would have been an obvious inclusion. The DME system enables the practice of the claimed subject matter without undue experimentation and as such grouping of playback device and channels thereon would have been obvious as a matter of routine experimentation over the