# EXHIBIT C

**quinn emanuel** trial lawyers | san francisco

50 California Street, 22nd Floor, San Francisco, California 94111-4788 | TEL (415) 875-6600 FAX (415) 875-6700

WRITER'S DIRECT DIAL NO.
**(213) 443-3879**

WRITER'S EMAIL ADDRESS
**nimahefazi@quinnemanuel.com**

March 2, 2022

**VIA E-MAIL**
Cole Richter
richter@ls3ip.com
656 W. Randolph Street, Floor 5W
Chicago, Illinois 60661

Re:     *Google, LLC v. Sonos, Inc.*; Case No. 3:20-cv-06754-WHA (N.D. Cal.) – Google's Invalidity Contentions

Dear Counsel:

We are writing in response to Cole B. Richter's letter to Nima Hefazi dated February 10, 2022 regarding Google's Invalidity Contentions. Sonos's comments regarding Google's invalidity contentions are both incorrect and untimely.

Sonos's assertion that it has "explained now on several meet and confers" that Google's invalidity contentions are deficient is inaccurate. Sonos has not requested any meet and confer regarding Google's invalidity contentions to date. And while Sonos recently stated that its response to Google Interrogatory No. 3 (seeking Sonos's validity contentions) would be "proportionate" to the disclosure in Google's invalidity contentions, Sonos did not allege that there were any actual deficiencies in Google's contentions during these meet and confers. This is the first time we have heard Sonos raise any alleged issues with Google's invalidity contentions. Sonos did not ask Google to supplement its invalidity contentions or indicate that it would move to strike Google's invalidity contentions prior to Sonos's letter dated February 10, 2022. Nor has Sonos met and conferred with Google regarding its invalidity contentions.

Sonos's new complaints regarding Google's invalidity contentions are untimely. Google first served preliminary invalidity contentions in W.D. Tex. on March 5, 2021, followed by Final Invalidity Contentions in W.D. Tex. on September 10, 2021. Moreover, Google served invalidity contentions pursuant to Patent Local Rules 3-3 and 3-4 on December 6, 2021 in N.D. Cal. For two months after Google's latest invalidity contentions, and almost a year after Google's first preliminary contention, Sonos had no questions or issues with Google's invalidity contentions.

quinn emanuel urquhart & sullivan, llp

LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE | BOSTON | SALT LAKE CITY
LONDON | TOKYO | MANNHEIM | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS | ZURICH | SHANGHAI | PERTH | STUTTGART

Now, just a week after Sonos moved to amend its infringement contentions to add new theories and served deficient validity contentions, Sonos not so coincidentally writes "in the interest of full disclosure and to inquire as to Google's intentions concerning its contentions." Sonos's 2021.02.10 letter at 3. Sonos appears to be looking for a justification for its untimely addition of two new infringement theories, and the deficiencies in its validity contentions, rather than raising legitimate concerns regarding Google's disclosure.

Sonos's letter contends that Google's invalidity contentions must include a "narrative explanation" under Patent Local Rule ("PLR") 3-3(c). But Sonos has not cited to any case holding that PLR 3-3(c) requires a party to provide narratives. Narratives are not a requirement under PLR 3-3(c) and Google has complied with PLR 3-3(c) by providing for each reference "a chart identifying specifically where and how in each alleged item of prior art each limitation of each asserted claim is found" as well as additional information regarding combinations in its cover pleadings. *Avago Technologies General IP PTE Ltd. v. Elan Microelectronics Corp.*, 2007 WL 951818, *2 (N.D. Cal. 2007) (denying motion to compel more specific invalidity contentions, holding that "Courts have found claim charts sufficient where the charts contain written descriptions of each element of each asserted claim found in the particular prior art reference."). Indeed, Sonos' shifting infringement contention theories have prevented Google from further narrowing its invalidity contentions. Nonetheless, Google addresses each of Sonos's questions in turn below.

With respect to Exhibit 885-6 at claim element 1f, Google cites to screenshots from a Sonos user manual showing that multiple zones and zone groups can be created and controlled. For example, "Kitchen and Garden make up a zone group" and more than one room can be joined together. Accordingly, a speaker in the Kitchen and Garden zone group could be added to a different zone group (*e.g.* living room), and those speakers/rooms can also be added to the disclosed "party mode," grouping the speakers together further. . In this way the first zone player may be added to a second zone scene comprising a second predefined grouping of zone players including at least the first zone player and a third zone player that are to be configured for synchronous playback of media when the second zone scene is invoked, wherein the second zone player is different than the third zone player, at least under Sonos's theories of infringement regarding the claimed "zone scenes." The disclosures excerpted by Google disclose synchronous playback of media, multiple forms of speaker grouping that at least meet Sonos's infringement theories for the "zone scene" terms, and the ability to add, remove, and reassign speakers among the claimed "zone scenes"—again, as alleged. It is unclear what functionalities Sonos contends are missing or not disclosed in the excerpted portions of Exhibit 885-6.

With respect to Exhibit 615-9 at claim element 13d, Google cites to Figures 4 and 8 of the Weel patent publication as well as paragraphs of the Weel patent which relate to Figures 4 and 8. For example, [0088] discloses that "[a]ccording to a second way of operation, as shown in FIG. 4 and discussed in detail below, a listener selects a song to be played from a playlist on the first device and the song is then played on another device, e.g., a second device." Similarly, [0106] discloses that "[t]hus, a Second device 14 typically must be Selected as shown in block 45. A particular second device may be selected from a list of Second devices that is displayed on the first device 13." Accordingly, Weel discloses "detecting a set of inputs to transfer playback from the

control device to a particular playback device, wherein the set of inputs comprises: (i) a selection of the selectable option for transferring playback from the control device and (ii) a selection of the particular playback device from the identified playback devices connected to the local area network."

With respect to Exhibit 033-3 at claim element 1b, Google cites to several different documents as well as source code. For example, these documents disclose how a user is able to view and select a playback device from available playback devices using a pairing code, screen id, lounge token, or YT login credentials. For example, [8] at 4:21-57 discloses "[r]emote controls and controlled devices may be paired using any one of several different techniques. As one example, a user may maintain a user account using the network service, and the remote controls and controlled devices may be associated with the user account. For example, upon connecting to a network service, the remote controls and controlled devices may notify the network service that the remote controls and controlled devices are connected to the network." These documents and the cited source code directories also disclose messages used by the control device and the playback device to detect available devices and to communicate with one another. *See e.g.* [7] "loungeScreenConnected()" message by which the server informs the remote that there is at least one screen connected in the session. Accordingly, the YT Remote System discloses "while operating in the first mode, displaying a representation of one or more playback devices in a media playback system that are each i) communicatively coupled to the computing device over a data network and ii) available to accept playback responsibility for the remote playback queue."

Google believes the above addresses Sonos' outstanding questions regarding Google's invalidity contentions, but to the extent any further clarification is needed, please let us know.


Best regards,

*/s/ Nima Hefazi*

Nima Hefazi