**FILED UNDER SEAL**

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Charles K. Verhoeven (Bar No. 170151)
  charlesverhoeven@quinnemanuel.com
  Melissa Baily (Bar No. 237649)
  melissabaily@quinnemanuel.com
  Lindsay Cooper (Bar No. 287125)
  lindsaycooper@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:    (415) 875-6600
Facsimile:    (415) 875-6700

Attorneys for GOOGLE, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| GOOGLE LLC,<br><br>      Plaintiff and Counter-defendant,<br><br>      vs.<br><br>SONOS, INC.,<br><br>      Defendant and Counter-claimant | CASE NO. 3:20-cv-06754-WHA<br>Related to CASE NO. 3:21-cv-07559-WHA<br><br>**GOOGLE LLC'S OPPOSITION TO SONOS, INC.'S MOTION TO STRIKE PORTIONS OF GOOGLE'S MOTION FOR SUMMARY JUDGMENT AND EXPERT DECLARATION**<br><br>Date:      June 9, 2022<br>Time:      8:00 a.m.<br>Location:  Courtroom 12, 9th Floor<br>Judge:     Hon. William Alsup<br><br>Complaint Filed: September 28, 2020 |

# TABLE OF CONTENTS

Page

I.     INTRODUCTION.................................................................................1

II.    STATEMENT OF ISSUES TO BE DECIDED .................................................3

III.   STATEMENT OF FACTS ........................................................................3

       A.    Sonos Has Had Google's Invalidity Contentions And Source Code For The
             YouTube Remote For One Year And Two Months.................................3

       B.    Google Has Consistently Disclosed Its Invalidity Theories And Evidence
             From Its Very First Set of Invalidity Contentions.............................4

       C.    Google Served An Interrogatory Requesting Sonos's Validity Positions On
             The YouTube Remote, And Sonos Refuses To Meaningfully Answer..........5

       D.    After The Case Was Transferred, The Parties Re-Served Their Contentions
             And Google Updated Its Source Code Production In Response To Sonos's
             Changing Priority And Validity Positions ......................................6

       E.    Sonos Makes a Half-Hearted Attempt at Alleging Deficiencies.............7

       F.    Current State of the Litigation ..................................................8

IV.    LEGAL STANDARD .............................................................................8

V.     ARGUMENT.....................................................................................9

       A.    Google Did Not Present Any New Theories For Limitation 13.4............9

             1.    Google Did Not Present A New Anticipation Theory For
                   "Detecting, Via The Control Device A Set Of Inputs To Transfer
                   Playback"........................................................................9

             2.    Google's Reliance on U.S. Patent No. 9,490,998 For Obviousness Is
                   Proper. .........................................................................13

       B.    Google's Reliance On Further Evidence In Support Of Its Previously-
             Disclosed References Is Proper..................................................14

             1.    The July 2010 YouTube Remote API .....................................15

             2.    The February 2012 WayBack Machine Capture .......................17

       C.    Google Is Not Relying on "Undisclosed Versions" of Source Code.......18

       D.    Google Was Not Required to Provide Pinpoint Citations – Nor Did Sonos
             Request Them.....................................................................22

VI.    CONCLUSION....................................................................................25

GOOGLE'S OPPOSITION TO SONOS'S MOTION TO STRIKE PORTIONS OF GOOGLE'S MOTION FOR
SUMMARY JUDGMENT AND EXPERT DECLARATION

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Apple, Inc. v. Samsung Electronics, Co., Ltd.*,
No. 5:12-cv-0630-LHK-PSG, 2014 WL 173409 (N.D. Cal. Jan. 9, 2014) ........................15, 20

*Apple Inc. v. Samsung Elecs. Co.*,
No. 11-cv-1846-PSG, 2012 WL 2499929 (N.D. Cal. June 27, 2012)...................................... 9

*ASUS Computer Int'l v. Round Rock Research, LLC*,
No. 12-cv-02099 JST(NC), 2014 WL 1463609 (N.D. Cal. Apr. 11, 2014).........................16, 17

*Avago Tech. General IP PTE Ltd., v. Elan Microelectronics Corp.*,
Case No. 04-05385-JW(HRL), 2007 WL 2103896 (N.D. Cal. July 20, 2007)....................... 23

*Digital Reg of Texas, LLC v. Adobe Sys., Inc.*,
No. CV 12-01971-CW(KAW), 2014 WL 1653131 (N.D. Cal. April 24, 2014).................... 13

*Fenner Invs., Ltd. v. Hewlett-Packard Co.*,
No. 6:08-cv-273, 2010 WL 786606 (E.D. Tex. Feb. 26, 2010).............................................. 24

*Finjan Inc. v. Check Point Software Tech., Inc.*,
No. 18-cv-02621(WHO), 2019 WL 955000 at *5 (N.D. Cal. Feb. 27, 2019) ........................ 23

*Finjan v. Proofpoint, Inc.*,
Case No. 13-cv-05808-HSG, 2015 WL 9023166 (N.D. Cal. Dec. 16, 2015).......................... 23

*Finjan, Inc. v. Sophos, Inc.*,
No. 14-cv-01197-WHO, 2016 U.S. Dist. LEXIS 68128 (N.D. Cal. May 24, 2016)............... 24

*Fresenius Medical Care Holdings, Inc. v. Baxter Intern., Inc.*,
No. C 03-1431 SBA, 2006 WL 1329997 (N.D. Cal. May 15, 2006)........................................ 8

*Fujifilm Corp. v. Motorola Mobility LLC*,
Case No. 12-cv-03587-WHO, 2015 WL 757575 (N.D. Cal. Feb. 20, 2015)............ 2, 15, 17, 20

*Genentech, Inc. v. Trustees of Univ. of Penn.*,
No. C 10-2037 LHK(PSG), 2012 WL 424985 (N.D. Cal. Feb. 9, 2012) ............................... 13

*Golden Bridge Tech. Inc. v. Apple, Inc.*,
No. 5:12-cv-04882-PSG, 2014 WL 1928977 (N.D. Cal. May 14, 2014)............................... 13

*Good Tech. Corp. v. MobileIron, Inc.*,
No. 5:12-cv-05826-PSG (N.D. Cal. April 23, 2015) .......................................................21, 22

*Huawei Techs., Co. v. Samsung Elecs. Co.*,
340 F. Supp. 3d 934 (N.D. Cal. 2018)................................................................................ 9

*Illumina Inc. v. BGI Genomics Co., Ltd.*,
No. 20-cv-01465-WHO, 2021 WL 3847859 (N.D. Cal. Au. 27, 2021) ............................14, 17

*IXYS Corp. v Adv. Power Tech. Inc.,* No. C 02-03942 MHP, 2004 WL 1368860 (N.D. Cal.
Jun. 16, 2004) ................................................................................................................... 21

GOOGLE'S OPPOSITION TO SONOS'S MOTION TO STRIKE PORTIONS OF GOOGLE'S MOTION FOR
SUMMARY JUDGMENT AND EXPERT DECLARATION

*Largan Precision Co v. Genius Elec. Optical Co.*,
 No. 13-cv-02502-JD, 2014 U.S. Dist. LEXIS 169052 (N.D. Cal. Dec. 5, 2014)..........11, 12, 24

*L.C. Eldridge Sales Co., Ltd. v. Azen Mfg. Pte., Ltd.*,
 No., 6:11-cv-599, 2013 WL 7937026 (E.D. Tex. 2013) ....................................................... 23

*MasterObjects, Inc. v. Amazon.com, Inc.*,
 No. C20-08103(WHA), 2021 WL 5987101 (N.D. Cal. Dec. 17, 2021)................................. 23

*Oracle Am., Inv. v. Google, Inc.*,
 No. C 10-03561 WHA, 2011 WL 4479305 (N.D. Cal. Sept. 26, 2011)......................15, 20, 24

*Slot Speaker Techs., Inc. v. Apple, Inc.*,
 No. 13-cv-01161-HSG(DMR), 2017 WL 235049 (N.D. Cal. Jan. 19, 2017).......................... 8

*SmithKline Beecham Corp. v. Apotex Corp.*,
 403 F.3d 1331 (Fed. Cir. 2005).............................................................................................. 8

*Verinata Health, Inc. v. Sequenom, Inc.*,
 No. C 12-00865 SI, 2014 U.S. Dist. LEXIS 116382 (N.D. Cal. Aug. 20, 2014).................... 24

## Statutory Authorities

35 U.S.C. § 101 ................................................................................................................5, 6

35 U.S.C. § 102................................................................................................................5, 6

35 U.S.C. § 103................................................................................................................... 6

35 U.S.C. § 112................................................................................................................... 6

## Rules and Regulations

Patent Local Rule 3-1 ........................................................................................................ 24

Patent Local Rule 3-3 ......................................................................................... 13, 14, 15, 17

GOOGLE'S OPPOSITION TO SONOS'S MOTION TO STRIKE PORTIONS OF GOOGLE'S MOTION FOR
SUMMARY JUDGMENT AND EXPERT DECLARATION

## I.      INTRODUCTION

Google's invalidity contentions for the YouTube Remote System and YouTube Remote Patent (*i.e.*, U.S. Patent No. 9,490,998) clearly disclose Google's invalidity theories.  The vast majority of the functionality claimed in Claim 13 is disclosed by prior art YouTube videos that Google cited to in its contentions, which show a user operating the YouTube Remote.  To demonstrate certain internal details of how the prior art products function, Google also relies in part on ███████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████ Google also produced ███████████████ ███████████████████████████████████████████████ over a year ago—on March 5, 2020—and updated that source code production to match Sonos's evolving priority date and validity contentions.  Despite having Google's invalidity theories, as well as technical documents and source code for the YouTube Remote for over a year, Sonos never raised any legitimate concerns regarding the sufficiency of Google's YouTube Remote System disclosures until Google filed its patent showdown motion three weeks ago, and the instant Motion to Strike is a clear attempt to sandbag Google's invalidity arguments through a belated procedural attack rather than on the merits.  Given the facts present here, striking the portions of Google's MSJ that Sonos has challenged would be manifestly unfair to Google, especially in view of Sonos having indicated that it is seeking up to $3 billion in damages for its two queue patents (the '615 patent being one).

Sonos raises five alleged deficiencies with Google's disclosure of the YouTube Remote System in its invalidity contentions.  The Court should reject each:

*First*, Sonos moves to strike Google's reliance on a "never-before identified 'menu' button" on the YouTube Remote System.  But even a cursory review of Google's contentions and the evidence cited to therein reveals that the menu button was clearly and adequately disclosed.

*Second*, Sonos moves to strike Google's citation to certain lines of the '998 patent.  But Google clearly cited the '998 patent in its contentions and specifically disclosed that it would have

GOOGLE'S OPPOSITION TO SONOS'S MOTION TO STRIKE PORTIONS OF GOOGLE'S MOTION FOR
SUMMARY JUDGMENT AND EXPERT DECLARATION

1    been obvious to rely upon any one of the techniques for pairing and connecting to a television screen

2    that is disclosed in the '998 patent to satisfy the relevant claim limitations.

3        *Third*, Sonos moves to strike Google's reliance on two documents describing the YouTube

4    Remote System based on the mistaken understanding that Google is advancing these documents as

5    "prior art references."  But Google is not relying upon either document as a "prior art reference."

6    These documents describe the operation of the prior art YouTube Remote System and Google relies

7    upon them as further evidentiary support for Google's argument that the YouTube Remote System

8    invalidates Claim 13.  Google clearly and unambiguously disclosed its reliance on the YouTube

9    Remote System in its invalidity contentions.  Sonos's insistence that Google also should have

10   disclosed every piece of evidence it planned to rely on in support of its invalidity theories is based

11   on the incorrect assumption that the Patent Local Rules mandate disclosure of all invalidity

12   evidence.  But this is not the law: "the patent local rules do not mandate the disclosure of all evidence

13   relevant to an accused infringer's invalidity theories." *Fujifilm Corp. v. Motorola Mobility LLC*,

14   Case No. 12-cv-03587-WHO, 2015 WL 757575, *31-*32 (N.D. Cal. Feb. 20, 2015).

15       *Fourth*, Sonos moves to strike Google's reliance on "undisclosed versions of source code."

16   Characterizing this source code as "undisclosed" is disingenuous at best.  Google produced a

17   December 1, 2011 snapshot of the YouTube Remote System source code with its invalidity

18   contentions.  Then, after Sonos changed its claimed priority date from December 30, 2011 to July

19   15, 2011, Google produced an earlier snapshot from July 12, 2011.  Sonos concedes that these

20   snapshots of the source code were timely because they were produced with Google's invalidity

21   contentions.  It was only after Sonos raised a belated objection to the YouTube Remote System's

22   status as prior art—***eleven months after*** Google initially served its invalidity contentions and ***six***

23   ***months after*** Google served an interrogatory asking for Sonos's validity positions—that Google re-

24   produced the originally-produced code with preserved metadata, as well as an earlier snapshot of

25   the code from November 9, 2010 to show that the same functionality existed long before Sonos's

26   priority date.  ██████████████████████████████████

27   ████████████████████████████████████████████

28   ████████████████

*Fifth*, Sonos moves to strike Google's YouTube Remote System disclosures because they do not include "pinpoint citations" to the source code, as opposed to citations to source code folders. But Sonos itself opposed a motion by Google to compel Sonos to provide pinpoint source code citations for its infringement contentions in this case, and in any event, courts in this district have held that pinpoint source code citations are not required absent a court order compelling them. And to the extent that Sonos believed pinpoint citations were necessary to understand Google's theories, the proper recourse would have been to request that Google supplement its contentions with pinpoint citations—not sit on its hands and wait to file this motion to strike.

## II.   STATEMENT OF ISSUES TO BE DECIDED

1.   Whether Google's invalidity contentions sufficiently disclose that a user selects the "menu and then Connect" buttons on the user interface of the YouTube Remote application to transfer playback;

2.   Whether Google's invalidity contentions sufficiently disclose that Google intended to rely upon the '998 patent for its obviousness arguments regarding Limitation 13.4;

3.   Whether Google is permitted to rely upon further evidentiary support regarding the operation of the YouTube Remote—*i.e.*, Exhibits 10 and 14 (Dkts. 211-10 and 211-14)—for its previously-disclosed invalidity theories;

4.   Whether Google should be allowed to rely upon source code for the YouTube Remote System that it produced and consistently updated to match Sonos's evolving priority date and validity contentions; and

5.   Whether the Patent Local Rules require that Google provide pinpoint citations to source code in its invalidity contentions.

## III.   STATEMENT OF FACTS

### A.   Sonos Has Had Google's Invalidity Contentions And Source Code For The YouTube Remote For One Year And Two Months

On September 29, 2020, Sonos filed a lawsuit in the Western District of Texas ("WDTX") alleging that Google infringed U.S. Patent No. 9,967,615 ("the '615 patent"). The '615 patent was filed on February 23, 2015, and claims priority to an application filed on December 30, 2011.

On December 11, 2020, Sonos served Google with its preliminary infringement contentions. Pursuant to the Western District of Texas court's Order Governing the Proceedings—which required Sonos to "identify the priority date (*i.e.*, the earliest date of invention) for each asserted claim— Sonos claimed a priority date of December 30, 2011 for all the asserted claims. Ex. 1 (12-11-2020 Preliminary Infringement Contentions) at 13.[1]

On March 5, 2021, Google served its preliminary invalidity contentions. For the '615 patent, Google provided a claim chart disclosing its theory that Google YouTube Remote System anticipates or renders obvious the asserted claims of the '615 patent alone, or in combination with, for example, a prior art patent that Google filed on the YouTube Remote System (*see* Dkt 211-9, Ramona Decl., ¶4), namely U.S. Patent No. 9,490,998. Ex. 2 (3-5-2021 YouTube Remote Claim Chart) ("YouTube Remote Claim Chart"). Given Sonos's claim that the '615 patent was entitled to a December 30, 2011 priority date, Google made available for inspection a snapshot of the source code for the YouTube Remote System as it existed on December 1, 2011 and cited to this code in its YouTube Remote Claim Chart. Ex. 2.

**B.      Google Has Consistently Disclosed Its Invalidity Theories And Evidence From Its Very First Set of Invalidity Contentions**

Sonos has been on notice of Google's invalidity theories regarding the YouTube Remote since March 5, 2021. Google's preliminary invalidity contentions identified a "user's phone" running the YouTube Remote application as the claimed "control device" and a "TV screen" running Google's Leanback application as a "playback device." Ex. 2 at 26. Google explained that the YouTube Remote application allowed a user to "queue videos to watch" and transfer playback to one or more playback devices, and pointed to annotated screenshots showing that the graphical interface of the YouTube Remote application included a "control interface" having "one or more transport controls" (*e.g.*, fast forward, pause and rewind controls). Ex. 2 at 7; *see also id.* ("YouTube Remote creates a virtual connection between your phone and YouTube Leanback [television screen]

---

[1]   Unless otherwise stated, all exhibits are to the Declaration of Nima Hefazi in Support of this Opposition.

1  … you can use the rich browse and discovery interface on YouTube Remote to find and queue up

2  videos to watch, and send them all to Leanback with a single tap.").

3       Critically, Sonos has also been on notice of the key evidence Google relies on in its MSJ

4  since March 5, 2021.  Google's preliminary invalidity contentions for the YouTube Remote System

5  cited to a publicly-available YouTube video showing a user operating the YouTube Remote

6  software as it existed publicly on November 14, 2010.  Ex. 2.  Google and its expert rely on this

7  YouTube video extensively in Google's MSJ.  Dkt. No. 211.  Google's preliminary invalidity

8  contentions also highlighted ████████████████████████████████████████

9  ████████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████████

11 ████████████████████████████████████████████████████████

12 ██████████████████████████████████████  Google's preliminary

13 invalidity contentions cited to documents describing these messages, as shown in the following

14 exemplary screenshots from Google's contentions:

15 ████████████████████████████████████████████████████████

16 ████████████████████████████████████████████████████████

17 ████████████████████████████████████████████████████████

18 ████████████████████████████████████████████████████████

19 ████████████████████████████████████████████████████████

20 ██████████  Google also produced a ████████████████████████

21 ████████████████████████████████████████████████████████

22 ████████████████████████████████████████████████████████

23 ████████████████████████████████████

24 **C.      Google Served An Interrogatory Requesting Sonos's Validity Positions On**
   **The YouTube Remote, And Sonos Refuses To Meaningfully Answer**

25

26      On August 7, 2021, Google served an interrogatory on Sonos seeking the "legal and factual

27 bases for [Sonos's] contention that the Asserted Claims are not invalid under 35 U.S.C. §§ 101, 102,

28

1    103, or 112, based on but not limited to Google's invalidity contentions."  Ex. 3 (Google's

2    Interrogatory No. 3).

3         On September 8, 2021—more than six months after Google served its YouTube Remote

4    Claim Chart and source code for the YouTube Remote System—Sonos served a response.  Ex. 4.

5    Sonos's response did not raise any challenge to the YouTube Remote as prior art or dispute any

6    limitations in the YouTube Remote.  Instead, Sonos provided only a boilerplate assertion that its

7    patents are valid: "Sonos's position is that all issued claims of the '966, '885, '615, 'and '033 Patents

8    are valid and are in full compliance with the requirements of 35 U.S.C. § 101, 102, 103, and 112."

9    Ex. 4 at 99.

10        **D.    After The Case Was Transferred, The Parties Re-Served Their Contentions
11              And Google Updated Its Source Code Production In Response To Sonos's
              Changing Priority And Validity Positions**

12        After this case was transferred from WDTX, both parties served updated contentions in

13   accordance with the Patent Local Rules.  Prior to serving its updated invalidity contentions, Google

14   again renewed its request that Sonos supplement its response to Google's interrogatory with Sonos's

15   validity positions.  Ex. 5.  Sonos refused to do so.

16        On December 7, 2021, Google served updated invalidity contentions that once again

17   included its YouTube Remote Claim Chart.  Dkt 220-3.  Google also updated its source code

18   production for the YouTube Remote System since Sonos had changed its claimed priority date from

19   December 30, 2011 to July 15, 2011 in the interim.   Specifically, Google supplemented its

20   production to include a July 12, 2011 snapshot of the YouTube Remote source code, three days

21   before Sonos's new claimed priority date. Dkt 220-3 at 2.

22        On February 4, 2022—six months after Google served its validity contention interrogatory

23   and eleven months after Google served its first YouTube Remote Claim Chart—Sonos served a

24   supplemental response arguing for the first time that the YouTube Remote (1) did not qualify as

25   prior art; and (2) did not satisfy certain limitations of Claim 13.  Ex. 6 (Sonos's Supplement

26   Response to Google Interrogatory No. 3, Ex. A).  Prior to this date, Sonos had not challenged the

27   priority date of the YouTube Remote or its disclosure of any limitations.

28

GOOGLE'S OPPOSITION TO SONOS'S MOTION TO STRIKE PORTIONS OF GOOGLE'S MOTION FOR
SUMMARY JUDGMENT AND EXPERT DECLARATION

In response to Sonos's belated supplement, Google re-collected the July 12, 2011 snapshot of the YouTube Remote System that it had previously produced with its invalidity contentions. On March 24, 2022, Google informed Sonos that it was reproducing the July 12, 2011 snapshot with the original last modified dates of each file preserved,[2] as well as an earlier November 11, 2010 snapshot to show that the YouTube Remote was prior art not just as of July 12, 2011, but also much earlier:

> Google has added to the source code review computer: (1) a reproduction of the YouTube Remote source code from July 12, 2011 that was previously made available for inspection, and (2) a November 11, 2010 YouTube Remote source code capture. This code preserves the last modified dates and is now available for inspection.

Ex. 7 (3-24-2022 E-mail Hefazi to Richter).  The July 12, 2011 and November 11, 2010 snapshots are materially the same.  See e.g., Bhattacharjee Decl., ¶134.  Sonos is well-aware of this fact, as it inspected the source code computer several times since March 24, 2022.[3]  Ex. 12.

**E.     Sonos Makes a Half-Hearted Attempt at Alleging Deficiencies**

Sonos first reached out to Google on February 10, 2022 regarding alleged deficiencies in Google's Invalidity Contentions.  In its letter, Sonos incorrectly stated that it had "explained now on several meet and confers" that Google's invalidity contentions were deficient.  As Google indicated in its March 2, 2022 letter, this assertion was inaccurate.  Ex. 8.  Sonos had never alleged there were actual deficiencies in Google's contentions, had never asked Google to supplement its contentions, and had never indicated it would move to strike Google's invalidity contentions.  Id. Regardless, Google addressed every question regarding the alleged deficiencies Sonos raised and

---

[2]  The parties' Protective Order requires Google to export source code from its internal repositories and load it onto a source code review computer for litigation.  Ex. 13.  Loading the code onto the source code review computer generally overwrites the last modified dates of the files to reflect the date of production.  As a result, the July 12, 2011 capture of the YouTube Remote System source code that Google produced with its December 7, 2021 invalidity contentions did not preserve the metadata for each file.

[3]  Sonos's expert Kevin Almeroth inspected it on March 29, 2022, and other representatives for Sonos (Chris Ozenne and attorney Geoff Moss) inspected it on at least April 4, 2022, April 5, 2022, April 6, 2022 and April 8, 2022, before the parties' motion for summary judgment were due. Sonos's representatives (Ozenne, Herring and Moss) inspected the source code again on April 26, 2022, April 27, 2022, April 29, 2022, May 2nd, 2022 and May 3, 2022.

repeatedly stated that to the extent any further clarification was required, Google would provide it. Ex. 9.   Sonos evidently understood Google's invalidity contentions, as it had already provided responsive validity contentions and did not seek any further clarification before filing this motion. Sonos also never attempted to meet and confer on the five alleged deficiencies it now raises in its Motion.  The timing of Sonos's February 2022 letter—more than eleven months after Google served its March 5, 2021 invalidity contentions—and Sonos's failure to seek clarification or a meet and confer to resolve the issues without Court intervention suggest that Sonos reached out to Google merely to manufacture a record for this Motion.

### F.   Current State of the Litigation

The parties have each served, and answered, multiple sets of requests for production and interrogatories.   However, fact discovery is still in its early stages.  To date, Google has taken the deposition of one Sonos fact witness (Joni Hoadley) as well as Graham Farrar, and Sonos has taken the deposition of six Google fact witnesses: Vincent Mo, Umesh Patil, David Nicholson, Kelly Keniston, Janos Levai and Ramona Bobohalma.

Prior to filing this Motion, Sonos had not taken any depositions relating to the YouTube Remote System.  Just recently, on May 4 and May 5, 2022, Sonos took the deposition of Janos Levai and Ramona Bobohalma, Google's witnesses for the YouTube Remote System.

Opening expert reports are currently due on May 10, 2022.

## IV.   LEGAL STANDARD

"Both [the Federal Circuit] and the Supreme Court have recognized that there is a significant public policy interest in removing invalid patents from the public arena."  *SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331, 1354 (Fed. Cir. 2005) (Gajarsa, J. concurring); *see also Fresenius Medical Care Holdings, Inc. v. Baxter Intern., Inc.*, No. C 03-1431 SBA, 2006 WL 1329997, *7 (N.D. Cal. May 15, 2006) (denying motion to strike invalidity defenses and noting that "district courts are strongly encouraged to decide issues pertaining to invalidity when presented.").

"The patent local rules require disclosure of specific invalidity theories, but do not compel disclosure of all evidence relevant to proof of those theories."  *Slot Speaker Techs., Inc. v. Apple, Inc.*, No. 13-cv-01161-HSG (DMR), 2017 WL 235049, at *2 (N.D. Cal. Jan. 19, 2017).  "District

1  courts have 'wide discretion' in enforcing the patent local rules." *Id.* at *2. "In determining whether

2  to strike some or all of an expert report for failure to comply with the patent local rules, courts []

3  have asked, 'Will striking the report result in not just a trial, but an overall litigation, that is more

4  fair, or less?'" *Huawei Techs., Co. v. Samsung Elecs. Co.*, 340 F. Supp. 3d 934, 946 (N.D. Cal.

5  2018) (quoting *Apple Inc. v. Samsung Elecs. Co.*, No. 11-cv-1846-PSG, 2012 WL 2499929, at *1

6  (N.D. Cal. June 27, 2012)).

7  **V.     ARGUMENT**

8         Sonos's arguments about the YouTube Remote prior art are an attempt to prevail on a weak

9  validity argument through a belated procedural attack on Google's invalidity contentions.  Google

10  has fully complied with its obligations under the Local Patent Rules and Sonos's motion should be

11  denied for the reasons discussed below.

12         **A.     Google Did Not Present Any New Theories For Limitation 13.4**

13         Claim 13 of the '615 patent recites the step of "detecting, via the control device, a set of

14  inputs to transfer playback from the control device to a particular playback device, wherein the set

15  of inputs comprises: (i) a selection of the selectable option for transferring playback from the control

16  device and (ii) a selection of the particular playback device from the identified playback devices

17  connected to the local area network" ("Limitation 13.4").  Sonos now moves to strike portions of

18  Google's MSJ by misconstruing Google's invalidity contentions and ignoring key disclosures.

19
20         **1.     Google Did Not Present A New Anticipation Theory For "Detecting, Via The Control Device A Set Of Inputs To Transfer Playback"**

21         Sonos complains that Google's MSJ "completely changes" Google's theory of how the

22  YouTube Remote System "detects, via the control device [*i.e.*, a mobile phone], a set of inputs to

23  transfer playback." Mot. at 4-6.  Sonos is wrong.  Google's theory in the MSJ and its invalidity

24  contentions has always been that the YouTube Remote anticipates this limitation because a user

25  may transfer playback from their mobile phone to one or more television devices by selecting a

26  "menu" button to bring up a "Connect" icon for transferring playback to one or more televisions.

27  In fact, both the MSJ and Google's contentions point to the same YouTube video for disclosure of

28  this limitation.

1   Sonos's Motion presents the table below comparing certain disclosures in Google's

2   invalidity contentions with Google's MSJ.   Far from supporting Sonos's argument, this table

3   confirms that Google's MSJ relies upon the same theory *and* evidence as Google's contentions.

| Invalidity Contentions | Summary Judgment |
| --- | --- |
| "The YT Remote System implicitly detects a set of inputs once the 'connect' option is selected, based on devices on the same LAN for which user is logged in, e.g. a TV screen logged into the user's YouTube account. *See, e.g.,* [4]<br><br> | "To transfer playback using the YTR application the user may press the menu button (shown in green in the image ...) which brings up a 'Connect' button (shown in red) that the user may further select to transfer playback to a particular playback device. The user's selection of menu and select are a 'set of inputs' to transfer playback that are detected by the Android phone."<br><br> |

19   Mtn. at 5.

20   Sonos claims prejudice because it insists Google is "now pointing to a never-before

21   identified 'menu' button."   Mot. at 4.   But Sonos has been on notice that selection of the Connect

22   icon requires a user to press menu in order to bring up the Connect icon and that the menu button is

23   a part of the set of inputs that are detected "once the connect option is selected."   Google's invalidity

24   contentions explained that the YT Remote "detects a set of inputs once the 'connect' option is

25   selected," as shown in the left column of the table above.   Dkt. No. 220-3 ('615 Chart) at 18.   This

26   statement is then followed by a citation—"*See, e.g.,* [4]"—and screen capture from a November 14,

27   2010 video (the "YTR Video") that illustrates the process by which a user transfers playback from

28   a phone to a television.   Dkt. No. 220-3 (Google's YouTube Remote Claim Chart) at 18 (citing item

1   "[4]," which is the YTR Video cited in Google's MSJ).[4]   The cited YTR Video clearly states that

2   "you press menu and connect" on the mobile phone to transfer playback to a television:

> **So I am going to see if I can control it [*i.e.*, the television] with my [YouTube] Remote [application]**. Make sure you are on the same Wi-Fi, on your Google TV or your youtube.com on the Desktop. **You press menu and connect**….

6   https://www.youtube.com/watch?v=EGdsOslqG2s at 0:53-1:09.   And the screenshot that Google

7   pointed to in its infringement contentions clearly shows both the menu and Connect icons.

8   Google's MSJ presents the same theory as its invalidity contentions and points to the same

9   disclosure in the YTR Video.  Google's MSJ cited to the same portion of the YTR Video that Google

10   cited in its invalidity contentions, and included the same screen capture from the same portion of

11   the YTR Video in which the narrator discusses pressing "menu and connect" to transfer playback.

12   MSJ at 19 (citing   https://www.youtube.com/watch?v=EGdsOslqG2s).   Accordingly, Sonos's

13   assertion that Google has "completely changed" its theory for this limitation is not credible.  Sonos

14   has long been on notice that the menu button is part of the set of inputs detects once the Connect

15   icon is selected.

16   Sonos's citation to *Largan Precision Co., Ltd. v. Genius Elec. Optical Co., Ltd.*, No. 13-cv-

17   02502 (JD), 2014 WL 6882275, at *3-5 (N.D. Cal. Dec. 5, 2014) is inapposite.  In *Largan*,

18   Defendants' expert presented an obviousness theory that the claimed conditions would have been

19   "immediately apparent to one of ordinary skill in the art" based on certain disclosures in the "Park

20   '665" reference.  *Id.*  The disclosures in Park '665 that Defendants' expert attempted to rely upon,

21   however, were not identified in Defendant's invalidity contentions.  *See Largan*, 2014 WL

22   11394510, *4.  Defendants' invalidity contentions also failed to include a theory that the claimed

23   limitation was "obvious based upon the cited portions of the Park '665 alone."  *Id.*  Here, in contrast,

24   Google's MSJ relies upon the same disclosures and theories that Google disclosed in its invalidity

25

26   [4]  On the front page of Google's Claim Chart, Google assigned item numbers to the evidence it was

27   citing in its chart.  Item [4] that is cited here was identified as https://www.youtube.com/watch?v=EGdsOslqG2s, which is the very same YTR video that is relied

28   upon in Google's MJS.  Dkt. No. 220-3, at 1.

GOOGLE'S OPPOSITION TO SONOS'S MOTION TO STRIKE PORTIONS OF GOOGLE'S MOTION FOR SUMMARY JUDGMENT AND EXPERT DECLARATION

1    contentions.  In fact, to the extent *Largan* is relevant, it supports Google's position.  The plaintiff in

2    *Largan* also tried to strike evidence of a properly disclosed obviousness theory, which the court

3    rejected: "[t]o the extent Dr. Barbastathis now presents additional explanation as to why the

4    language cited in the invalidity contentions, in his opinion, renders obvious the claimed TTL range,

5    that is consistent with the fact that expert reports are meant to provide more detail than contentions."

6    *Id*. at *7.  Here too Google's MSJ at most provides additional explanation regarding why the

7    disclosures in the YTR Video teach Limitation 13.4.

8         Sonos's Motion should also be denied because it would strike disclosures far beyond the

9    menu button that Sonos addresses in its brief.  For instance, Sonos asks this Court to strike the

10   entirety of paragraph 136 of Dr. Bhattacharjee's declaration (reproduced below).  But paragraph

11   136 includes only a passing reference to the "menu" button, with the rest of the paragraph describing

12   the image below showing how playback is transferred using the YTR application.  Dkt. No. 210-3

13   (Bhattacharjee Decl.), ¶136.  To the extent the Court is inclined to strike Google's reliance on the



24   menu button, any order on Sonos's motion should be limited to just the portion of the following

25   sentence in paragraph 136 that refers to a "menu" button: "The user thereafter taps the 'menu' button

26   on the Android phone to bring up a 'Connect' button...."  *Id*.

### 2. Google's Reliance on U.S. Patent No. 9,490,998 For Obviousness Is Proper.

Sonos does not dispute that Google mapped the disclosures of the '998 Patent to Limitation 13.4. Mot. at 6-7. Instead, Sonos's argument is just that the pinpoint citation to the '998 Patent at 10:62-11:6 in Google's MSJ is "not cited in Google's invalidity contentions for this claim element." *Id*. Sonos's argument should be rejected. Google's invalidity contentions put Sonos on notice that it was relying upon the '998 patent for Limitation 13.4. Specifically, Google's contentions put Sonos on notice that it was relying on the '998 patent's disclosure that "any one of several different techniques" may be used to pair a "remote control" (*e.g.*, a YouTube Remote application on a user's phone) with one or more "controlled devices" (*e.g.*, a television) for transferring playback ('998 patent at 4:21-25), and the specific disclosure at 10:62-11:6 provides an example of these techniques in the patent.

In analyzing the adequacy of disclosures under Patent Local Rule 3-3 in relation to subsequent expert reports, courts have made clear that "[t]he scope of contentions and expert reports are not [] coextensive." *Digital Reg of Texas, LLC v. Adobe Sys., Inc.*, No. CV 12-01971-CW (KAW), 2014 WL 1653131, *2 (N.D. Cal. April 24, 2014). Invalidity contentions, unlike expert reports, need not disclose "every evidentiary item of proof" showing that a limitation in fact disclosed in the prior art. *Genentech, Inc. v. Trustees of Univ. of Penn.*, No. C 10-2037 LHK (PSG), 2012 WL 424985, at *2 (N.D. Cal. Feb. 9, 2012). Where, as here, the challenged disclosures merely "provide[] an evidentiary example or complementary proof in support" of an infringement theory advanced in the invalidity contentions, they are proper. *Id*. "[T]he question thus becomes has the expert permissibly specified the application of a disclosed theory, or has the expert impermissibly substituted a new theory altogether?" *Golden Bridge Tech. Inc. v. Apple, Inc.*, No. 5:12-cv-04882-PSG, 2014 WL 1928977, at *3 (N.D. Cal. May 14, 2014).

Here, Google's invalidity contentions clearly put Sonos on notice that if the method used by the YouTube Remote Systems to select a particular playback device for transferring playback was insufficient to satisfy Limitation 13.4, it would have been obvious to rely upon any one of the techniques disclosed in the '998 patent. Dkt 220-3 ('615 Claim Chart) at 19-20. For instance,

Google's invalidity contentions cite the '998 patent for the proposition that "[r]emote controls and controlled devices may be paired using any one of several different techniques" so that a "remote control[] may control one or more controlled devices via the networked service." Dkt 220-3 ('615 Claim Chart) at 19-20 (quoting 4:21-57). Google's invalidity contentions also cite the '998 patent for the proposition that a user can configure a remote control so that it is paired to control "any number of controlled devices" or a "subset of the controlled devices" (*id*. at 8:1-10). Dkt 220-3 ('615 Claim Chart) at 19-20.

Google's MSJ cites to these same disclosures, for example the disclosure that remote controls and controlled devices may be paired using "a variety of techniques" to allow the remote control to control one or more controlled devices. MSJ at 19 (citing '998 patent at 8:11-12). As disclosed in Google's invalidity contentions, Google's MSJ points to 10:62-11:6 as an additional exemplary technique that teaches pairing devices by selecting one or more previously paired devices using the remote control interface. *Id.* at 19; *see also* Ex. 10 ('998 patent) at 10:62-11:6. The Court should deny Sonos's motion to strike because the disclosure at 10:62-11:6 is simply further evidentiary support from a disclosed reference for the pairing remote controls and control devices theory that Google previously disclosed. *See Illumina Inc. v. BGI Genomics Co., Ltd.*, No. 20-cv-01465-WHO, 2021 WL 3847859, *3 (N.D. Cal. Au. 27, 2021) (defendant did not violate Patent Local Rule 3-3 by providing "further evidentiary support" for the theory previously disclosed).

**B.    Google's Reliance On Further Evidence In Support Of Its Previously-Disclosed References Is Proper**

Sonos also moves to strike two documents describing the YouTube Remote system: ███
████████████████████████████████████████████████████████████████
██████████████████ (2) a February 2012 WayBack Machine capture showing that Google updated the YouTube Remote System at least as early as January, 2012 to include a screen selection feature that allowed users to select individual playback devices (Dkt. No. 211-14). Mot. at 7-11.

Sonos challenges these documents as "previously undisclosed prior art references," and cites to cases holding that a defendant may not rely upon prior art that was not disclosed in its invalidity contentions. Mot. at 7-8. But Google is not relying upon either document as a "prior art reference."

GOOGLE'S OPPOSITION TO SONOS'S MOTION TO STRIKE PORTIONS OF GOOGLE'S MOTION FOR
SUMMARY JUDGMENT AND EXPERT DECLARATION

1    Rather, Google relies upon these documents as further evidentiary support for Google's argument

2    that the YouTube Remote *System* invalidates Claim 13.  Sonos cannot credibly dispute that Google

3    did not identify the YouTube Remote System as prior art, and it is well-established that Google was

4    not required to disclose all evidence relevant to its invalidity theories under Patent Local Rule 3-

5    3.  *Fujifilm Corp. v. Motorola Mobility LLC*, No. 12-cv-03587-WHO, 2015 WL 757575, *31-*32

6    (N.D. Cal. 2015) ("the patent local rules do not mandate the disclosure of all evidence relevant to

7    an accused infringer's invalidity theories."); *see also Apple*, *Inc. v. Samsung Electronics, Co., Ltd.*,

8    No. 5:12-cv-0630-LHK-PSG, 2014 WL 173409, at *1 (N.D. Cal. Jan. 9, 2014) ("Contentions need

9    not disclose specific evidence."); *Oracle Am., Inv. v. Google, Inc.*, No. C 10-03561 WHA, 2011 WL

10   4479305, at *3 (N.D. Cal. Sept. 26, 2011) ("That a particular document or source code file was not

11   cited in a party's infringement disclosures does not automatically preclude the party from using that

12   document or file to support a theory that was timely disclosed.").

13          **1.     The July 2010 YouTube Remote API**

14          Sonos argues that the YouTube Remote API is a "new prior art reference that Google did

15   not disclose in its invalidity contentions." Mot. at 9-10.  Again, Google is not relying upon ████

16   ████████████████████████████████████████████████████████████████████████████

17   ████████████████████████████████████████████████████████████████████████████

18   ███████████████████████████████████████████████████████In other words, the

19   YouTube Remote API is merely further evidence of the prior art YouTube Remote System's

20   operation.

21          In particular, Google's MSJ showed that the first version of the YouTube Remote System,

22   which was released on November 9, 2010, ███████████████████████████████████████

23   ████████████████████████████████████████████████████████████████████████████

24   ████████████████████████████████████████████████████████████████████████████

25   ████████████████████████████████████████████████████████████████████████████

26   ████████████████████████████████████████████████████████████████████████████

27   ████████████████████████████████████████████████████████████████████████████

28

1

2

3

4

5

6

7

8

9

10

11

12



13      Here, Google's invalidity contentions clearly put Sonos on notice of Google's theory

14 regarding ██████████████████████████████  In addition to producing and

15 citing source code for the YouTube Remote System, Google's contentions cited documents

16 describing the YouTube Remote System ████████████████████████████

17 ████████████████████████████████████████████████

18 ████████████████████████████████████████████████

19 ███████████

20

21

22

23

24

25

26      Sonos's citation to *ASUS Computer Int'l v. Round Rock Research, LLC*, No. 12-cv-02099

27 JST (NC), 2014 WL 1463609, at *8-9 (N.D. Cal. Apr. 11, 2014) is inapposite.  Mot. at 10.  In *Asus*,

28 the patentee sought to strike portions of the accused infringer's expert report because the expert

GOOGLE'S OPPOSITION TO SONOS'S MOTION TO STRIKE PORTIONS OF GOOGLE'S MOTION FOR
SUMMARY JUDGMENT AND EXPERT DECLARATION

relied on entirely new prior art references that were not disclosed in the accused infringer's invalidity contentions. *Id.* at *8-9. In the instant case, however, Google is relying upon the YouTube Remote System as prior art, and ████████████████████████████████████████████████████████

████████████████████████████████████████████████ *See Illumina*, at 2021 WL 3847859, *3 (Patent Local Rule 3-3 permits parties to provide "further evidentiary support" for theories previously disclosed); *Fujifilm*, 2015 WL 757575, at *31-32 (same).

### 2.  The February 2012 WayBack Machine Capture

Likewise, Google's invalidity contentions clearly put Sonos on notice of Google's theory regarding the YouTube screen selection feature. The theory in Google's MSJ is the same one that Google disclosed in its invalidity contentions. Indeed, in relation to element [13d] in the YT Remote System, Google's invalidity contentions explained that "one or more remote controls may control one or more controlled devices via the network service," and that the YT Remote System "detects a set of inputs once the 'connect' option is selected, **based on devices on the same LAN for which user is logged in**." Dkt 220-3 (Google's YouTube Remote Claim Chart) at 18. Google also cited to the website for the YouTube Remote on the WayBack Machine that allowed Sonos to view the captures of the website from before and after the priority date. Ex. 2 at 1 (citing "[9] https://web.archive.org/web/20111014181427/https://market.android.com/details?id=com.google.android.ytremote"). Google's MSJ similarly disclosed displaying "previously paired controlled devices" so that a user may select and control "one or more paired controlled devices," and provided the YouTube screen selection feature as an example of a remote control connected to a controlled or playback device. MSJ at 20. Thus, Google's MSJ and contentions rely upon the same theory *and* evidence that Sonos has long had notice of.

In any event, Google's MSJ does not rely on the WayBack Machine Capture itself as a prior art document. Instead, Google's MSJ demonstrates that the ability to select an individual playback device was a well-known technique that could readily be applied to the YouTube Remote application. Bhattacharjee Decl., ¶¶28-34, 170. Google identified the WayBack Machine Capture in its MSJ as evidence confirming that Limitation 13.4 was at least obvious and straightforward to implement because it shows that this feature was included in YouTube Remote itself by January

2012.  Bhattacharjee Decl., ¶170.  Thus, Sonos's attempt to exclude the WayBack Machine Capture as an improper prior art reference should be denied because it fundamentally misunderstands how Google uses the reference in its MSJ.

### C.   Google Is Not Relying on "Undisclosed Versions" of Source Code

Sonos mischaracterizes the record when it states that Google relies on "Undisclosed Versions of Source Code." *See* Mot. at 10.  In reality, Google produced source code for the YouTube Remote System to Sonos on March 5, 2020 (more than a year ago) and then diligently and consistently updated its productions in response to Sonos's evolving priority date and validity contentions.  While Sonos argues that "all of the code cited by Dr. Bhattacharjee in his invalidity analysis" was disclosed after Google served its invalidity contentions because the code is within a folder on the source code computer titled "2022-03-21," Sonos's argument is misleading, at best, because the "2022-03-22" folder is a reproduction of the July 12, 2011 source code that Google produced many months earlier with its December 7, 2021 invalidity contentions, as well as a capture from November 11, 2010 that shows the same YouTube Remote functionality existed even earlier:

> Google has added to the source code review computer: (1) a **reproduction of the YouTube Remote source code from July 12, 2011 that was previously made available for inspection,** and (2) a November 11, 2010 YouTube Remote source code capture.  **This code preserves the last modified dates and is now available for inspection**.

Ex. 8 (3-24-2022 E-mail Hefazi to Richter) (emphasis added); *see also* Hefazi Decl., ¶5.  As shown below, Sonos has had access to source code for the YouTube Remote for over a year.

***December 1, 2011 Capture.***  Sonos's preliminary infringement contentions identified the priority date for its '615 patent as December 30, 2011. As a result, Google served preliminary invalidity contentions identifying the YouTube Remote System and produced source code for the YouTube Remote System as it existed on December 1, 2011—well before the December 30, 2011 priority date that Sonos was claiming for the '615 patent.  Sonos appears to agree this code was timely produced.

***July 12, 2011 and November 11, 2010 Captures.***  After Google served its preliminary infringement contentions, Sonos moved back its purported priority date for the '615 patent from

December 30, 2011 to July 15, 2011.  In particular, on September 7, 2021, in response to Google's Interrogatory No. 1, Sonos for the first time asserted that "[t]he subject matter claimed in the asserted claims of U.S. Patent No. 9,967,615 was conceived at least as early as July 15, 2011."  Accordingly, when Google served its updated invalidity contentions on December 7, 2021, it also supplemented its source code production with a snapshot of the YouTube Remote System source code as it existed on July 12, 2011.  Hefazi Decl., ¶3.  ███████████████████████████████████████

███████████████████████████████████████████████████████████ Hefazi Decl., ¶3.  Sonos does not dispute that this snapshot of the source code was timely produced.

Later, on February 4, 2022—nearly six months after Google served its Interrogatory No. 3 seeking Sonos's validity contentions for, among other things, the YouTube Remote System which was charted in Google's March 5, 2020 invalidity contentions—Sonos served a supplemental response to Interrogatory No. 3 challenging the prior art status of the YouTube Remote System for the first time.  Ex. 6, Ex. A, at 182.  To address Sonos's newly-raised objection, Google re-collected and reproduced the YouTube Remote source code from July 12, 2011 in a manner that preserved the last modified dates of each file, along with an earlier November 11, 2010 capture showing that the YT Remote system was prior art not only as of July 2011, but also much earlier.  These productions were placed in the following folders, respectively:

███████████████████████████████████████████████████████

██████████████████  Sonos's assertion that these folders contain "Undisclosed Versions of Source Code" is misleading at best.

███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████

1 ███████████████████████████████████████████

2 ██████

3      Moreover, the November 11, 2010 capture is another snapshot in time of the source code for

4 the same YouTube Remote system that just adds additional support that the functionality Google

5 relies on also existed at least as early as November 11, 2010. In his declaration supporting Google's

6 MSJ, Google's expert includes citations to both the July 2011 and November 2010 captures for each

7 feature he relies upon in his analysis and shows that the functionality exists in both versions. Dkt

8 210-3, Bhattacharjee Decl., ¶¶132-145 and 150-184. Moreover, since Google's March 22, 2022

9 reproduction, Sonos has inspected the source code review computer at least 13 times, including on

10 March 23, March 29, April 4, April 5, April 6, April 8, April 15, April 25, April 26, April 27, April

11 29, May 2, and May 3. Ex. 12, Hefazi Decl., ¶6. ████████████████████████████

12 ███████████████████████████████████████████

13 ███████████████████████████████████████████

14 ████████████████████ In other words, Sonos had ample time to review Google's

15 reproduction of code prior to taking depositions related to the YouTube Remote System.

16      These additional snapshots in time of the source code for the same YouTube Remote system

17 do not unfairly prejudice Sonos—particularly since Sonos is the one that moved the alleged priority

18 date of its patent. And Sonos's argument that Google should not be able to rely upon these

19 reproduced versions of source code is again premised on the incorrect assumption that the Patent

20 Local Rules mandate the disclosure of all invalidity evidence. But this is not the law: "the patent

21 local rules do not mandate the disclosure of all evidence relevant to an accused infringer's invalidity

22 theories." *FujiFilm,* 2015 WL 757575, at *32. Nor are they "designed to force parties to produce,

23 far in advance of trial, all evidence they intend to offer in support of their legal theories." *Id.*; *see*

24 *also Apple*, 2014 WL 173409, at *1 ("Contentions need not disclose specific evidence."); *Oracle*,

25 2011 WL 4479305, at *3 ("That a particular document or source code file was not cited in a party's

26 infringement disclosures does not automatically preclude the party from using that document or file

27 to support a theory that was timely disclosed.").

28

GOOGLE'S OPPOSITION TO SONOS'S MOTION TO STRIKE PORTIONS OF GOOGLE'S MOTION FOR
SUMMARY JUDGMENT AND EXPERT DECLARATION

1    Sonos relies on two cases in support of its position, but both are inapposite.  In *IXYS,*

2  defendant produced final invalidity contentions that "mentioned APT's 108 device as relevant prior

3  art."  *IXYS Corp. v Adv. Power Tech. Inc.,*  No. C 02-03942 MHP, 2004 WL 1368860 (N.D. Cal.

4  Jun. 16, 2004) at *2.  However, plaintiff complained that defendant had not provided claims charts

5  for APT's 108 device.  *Id*. ("IXYS argues that the only charts provided for devices APT alleges as

6  prior art are the 208 and 208x."); *see also IXYS*, 2004 WL 5613140 (IXYS Corp.'s Motion to Strike)

7  (stating that defendant provided claim charts only for the "207 or 208x" devices, not the 108 device).

8  On the day after defendant filed a motion for summary judgment" relying upon the 108 device,

9  defendant produced a compact disc that contained information "for a large number of APT devices,

10  including the APT 108." *IXYS Corp.,* 2004 WL 1368860, at *2-3.  The Court struck the defendant's

11  late production because before the production the only information the defendant had disclosed

12  regarding the prior art was its identity.  *Id*.  Unlike the defendants in *IXYS,* Google provided a claim

13  chart for the YouTube Remote System that disclosed its invalidity theories in detail, and ██████████

14  ████████████████████████████████████████████████████████████████████████████████████

15  ████████████      Although Google reproduced the YouTube Remote code in response to Sonos's

16  changing and newly-disclosed theories on March 22 ████████████████████████████████████

17  ████████████████████████████████████████████████████████████████████████████████████

18  ████████████████████████████████████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████████████████████████████████████

20  ███████████████████    Google reproduced the source code discussed above more than six weeks in

21  advance of the deadline for Sonos's summary judgment opposition, and before any depositions

22  relating to the YouTube Remote System took place. Sonos had an adequate opportunity to inspect

23  Google's reproduction and indeed did have multiple attorneys inspect it.  Ex. 12.

24    Sonos also relies on *Good Tech. Corp. v. MobileIron, Inc.*, No. 5:12-cv-05826-PSG, Dkt.

25  No. 278 (N.D. Cal. April 23, 2015) for its argument that the Court should strike Google's

26  reproduction of YouTube Remote code.   But in *MobileIron*, the cross-defendant produced

27  previously-undisclosed source code more than 15 months after its invalidity contentions were due

28  and at the very end of fact discovery, after depositions and after the deadline to propound written

1    discovery. *Id.,* Dkt. 178 (MobileIron's motion to strike) at 6. The cross-defendant also "essentially

2    concealed its 'production' of this source code by not informing MobileIron that it had surreptitiously

3    added code to the source code inspection computer maintained in its counsel's office." *Id.* Unlike

4    the cross-defendant in *MobileIron*, Google's March 22, 2022 reproduction of code was not a ***new***

5    production; it was merely a reproduction or prior version of the same code Google had already

6    produced. In addition, there can be no argument that Google concealed its production; Sonos

7    inspected the source code on March 29, 2022. Ex. 12.

8    **D.     Google Was Not Required to Provide Pinpoint Citations – Nor Did Sonos Request Them**

9

10        Sonos also argues that "Google's invalidity contentions . . . merely cite to directories and

    subdirectories of source code without identifying any specific files or pinpoint citations to specific

11   line numbers that would map those citations onto specific claim elements." Mot. at 12. But while

12   Sonos cites cases holding that a plaintiff's infringement contentions must include pinpoint citations

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GOOGLE'S OPPOSITION TO SONOS'S MOTION TO STRIKE PORTIONS OF GOOGLE'S MOTION FOR
SUMMARY JUDGMENT AND EXPERT DECLARATION

1   (*see* Mot. at 12)[5]—which Sonos previously argued was not required in this case[6]—Sonos does not

2   cite any authority holding that a defendant's invalidity contentions must include pinpoint citations.[7]

3       Even with respect to pinpoint citations in **infringement** contentions, courts in this district

4   have specifically rejected Sonos's argument based on the plain language of the Patent Local Rules.

5   For example, in *Finjan v. Proofpoint, Inc.*, Case No. 13-cv-05808-HSG, 2015 WL 9023166 (N.D.

6

---

7   [5]  The *MasterObjects* and *Checkpoint* cases that Sonos relies on in support of its argument (Mot. at
8   12), both relate to the specificity required for **infringement** contentions rather than invalidity
    contentions.  They are also distinguishable.  In *MasterObjects, Inc. v. Amazon.com, Inc.*, No. C20-
9   08103 (WHA), 2021 WL 5987101, at *2-3 (N.D. Cal. Dec. 17, 2021), the Court explained that
    "pinpoint citations to source code are not *per se* required," but "recognize[]d what is really going
10  on here" is that "[p]atent owners hate to be pinned down to precise meaning of their patent claims
    because it can come back to haunt them in future cases against other accused products."  *Id.* at *2.
11  Moreover, the Court did not preclude MasterObjects from relying upon the source code but instead
    ordered it to serve "revised infringement contentions" with pinpoint citations.  *Id.* at *3.  Similarly,
12  in *Finjan Inc. v. Check Point Software Tech., Inc.*, No. 18-cv-02621 (WHO), 2019 WL 955000, at
    *5 (N.D. Cal. Feb. 27, 2019), the court did not even grant the motion to strike.  Instead, the court
13  explained that "[s]triking a patentee's infringement contentions is a severe sanction that should be
    used sparingly and only for good cause" and permitted the plaintiff to amend its contentions to
14  identify pinpoint citations.  *Id.* at *9.  The *Checkpoint* case also involved a narrowing order that
    required Finjan to "serve its Infringement Contentions with pinpoint source code citations."  *Id.* at
15  *4.  There was no such order in this case.  Indeed, Sonos did not even ask Google to provide pinpoint
    citations, let alone move the Court for an order requiring Google to amend its contentions to add
16  pinpoint citations.  Sonos purposefully sat on its hands and now seeks to improperly use the Patent
    Local Rules as a sword, rather than a shield.
17

18  [6]   In May 2021, after Sonos had access to Google's source code for over a month, Google asked
19  Sonos to update its infringement contentions to provide "pinpoint citations" to Google's source code
    identifying.  Ex. 11.  Sonos refused, arguing that pinpoint citations were not required.  *Id.*
20

21  [7]  Sonos's reliance on *Avago Tech. General IP PTE Ltd., v. Elan Microelectronics Corp.*, Case No.
    04-05385-JW (HRL), 2007 WL 2103896, *2 (N.D. Cal. July 20, 2007) is similarly
22  misplaced.  *Avago* did not hold that the Patent Local Rules mandate a party to include pinpoint
    citations in its invalidity contentions.  Rather, Avago had previously moved to compel more
23  specificity in Elan's claim charts.  *Id.* at *2.  The court found Elan's invalidity contentions sufficient
    because Elan "relie[d] upon the representation made at oral argument by Elan's counsel that it had
24  chosen and specifically cited its best example [of source code] and would not assert unspecified
    others."  *Id.*  Thus, the court held that Elan's subsequent attempt to rely on different pinpoint
25  citations in its expert report was improper, and granted Avago's motion to strike those new
    citations.  *Id.*  Here, unlike in *Avago*, Sonos never moved to compel more specificity in Google's
26  invalidity claim charts, nor did Google make any representations that it would only rely on certain
    pinpoint citations.
27

28

---

GOOGLE'S OPPOSITION TO SONOS'S MOTION TO STRIKE PORTIONS OF GOOGLE'S MOTION FOR
SUMMARY JUDGMENT AND EXPERT DECLARATION

Cal. Dec. 16, 2015), the court concluded that "pinpoint citations are not an inherent requirement of Patent Local Rule 3-1." *Id.* "Having reviewed both the text of Rule 3-1 and the relevant case law, the Court finds that pinpoint citations to source code are not a *per se* requirement in patent cases involving software." *Id.* at *3. As the Court explained, "the rule's purpose is to provide notice of the patentee's theory of infringement, not to provide the evidence supporting that theory." *Id.* (citing *Oracle Am.*, 2011 WL 4479305, at *3).

Finally, to the extent Sonos had any legitimate concerns about Google's source code citations, it was Sonos's responsibility to raise those with Google, informally or through motion practice, to clarify the issue. *See Finjan, Inc. v. Sophos, Inc.*, No. 14-cv-01197-WHO, 2016 U.S. Dist. LEXIS 68128, at *39 (N.D. Cal. May 24, 2016) (internal citations omitted) ("Even more so than the other issues addressed in this Order, this dispute exemplifies the parties' apparent penchant for filing extensive briefing over issues that should have been at a short meet and confer."); *see also Largan Precision Co v. Genius Elec. Optical Co.*, No. 13-cv-02502-JD, 2014 U.S. Dist. LEXIS 169052, at *20-21 (N.D. Cal. Dec. 5, 2014) (finding Largan should have asked Genius for more specificity and if necessary sought Court intervention instead of moving to strike Genius's expert report after the fact); *Verinata Health, Inc. v. Sequenom, Inc.*, No. C 12-00865 SI, 2014 U.S. Dist. LEXIS 116382, at *19-20 (N.D. Cal. Aug. 20, 2014) (to the extent Sequenom's invalidity charts caused Verinata any confusion, the proper recourse would have been to compel Sequenom to amend its invalidity contention, not wait to strike the expert report); *see also L.C. Eldridge Sales Co., Ltd. v. Azen Mfg. Pte., Ltd.*, No., 6:11-cv-599, 2013 WL 7937026, at *6 (E.D. Tex. 2013) (denying motion to strike where defendants first complained about plaintiff's infringement contentions after the close of fact discovery); *Fenner Invs., Ltd. v. Hewlett-Packard Co.*, No. 6:08-cv-273, 2010 WL 786606, at *3 (E.D. Tex. Feb. 26, 2010) ("A defendant cannot lay behind the log until late in the case and then claim it lacks notice as to the scope of the case or the . . . contentions."). The Patent Local Rules' notice requirement is meant as a shield, not a sword. If Sonos was legitimately confused about Google's invalidity contentions, it should have sought clarity or moved for more detail. Because Sonos did neither, sat on its hands, and now belatedly seeks the drastic remedy of moving to strike, the Court should deny the motion.

1

## VI.   CONCLUSION

2        For the foregoing reasons, Google respectfully requests that the Court deny Sonos's Motion

3   to Strike.

4

5    DATED:  May 5, 2022                    QUINN EMANUEL URQUHART & SULLIVAN,
                                            LLP
6
                                    By:    _/s/ Charles K. Verhoeven_____
7                                          Charles K. Verhoeven (Bar No. 170151)
                                           charlesverhoeven@quinnemanuel.com
8                                          Melissa Baily (Bar No. 237649)
                                           melissabaily@quinnemanuel.com
9                                          Lindsay Cooper (Bar No. 287125)
                                           lindsaycooper@quinnemanuel.com
10                                         50 California Street, 22nd Floor
                                           San Francisco, California 94111-4788
11                                         Telephone: (415) 875-6600
                                           Facsimile: (415) 875-6700
12
                                           *Attorneys for GOOGLE LLC*
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure and Local Rule 5-1, I hereby certify that, on May 5, 2022, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system and email.

DATED: May 5, 2022

By: ___*/s/ Charles K. Verhoeven*_____

Charles K. Verhoeven

GOOGLE'S OPPOSITION TO SONOS'S MOTION TO STRIKE PORTIONS OF GOOGLE'S MOTION FOR
SUMMARY JUDGMENT AND EXPERT DECLARATION