# EXHIBIT 8



## Lee Sullivan Shea & Smith LLP

**Cole B. Richter** | Attorney

656 W Randolph St            312.757.4478  *Office*
Floor 5W                     richter@ls3ip.com
Chicago, Illinois 60661

February 10, 2022

**VIA EMAIL (nimahefazi@quinnemanuel.com)**

Nima Hefazi
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017

    *Re:  Google LLC v. Sonos, Inc., Case No. 3:20-cv-6754-WHA [N.D. Cal.]*

Nima,

As we've explained now on several meet and confers and set out in writing in response to Google's interrogatory no. 3, Google's invalidity contentions fail to set forth cognizable theories of invalidity.  At their most basic level, invalidity contentions must offer a contention as to how a reference or combination of references invalidates an asserted claim.  Google's contentions do not do this.

As PLR 3-3(c) requires, Google purports to provide 46 claim charts for the four asserted patents. But in every single chart for every single claim element, Google merely parrots the exact claim language followed by word-for word block quotes from the cited references or screenshots of documents or YouTube videos.  Google provides no narrative explanation as to how these quoted or screenshotted portions disclose the respective claim elements.  This makes it impossible to determine what Google contends constitutes the various elements in the cited references.

To illustrate, in Exhibit 885-6 at claim element 1f, Google cites the following screenshots from a Sonos user manual with no further explanation as to how or why any portion of these screenshots amount to any portion of claim element 1f.



**Lee Sullivan Shea & Smith LLP**

Cole B. Richter | Attorney

656 W Randolph St
Floor 5W
Chicago, Illinois 60661

312.757.4478  Office
richter@ls3ip.com

5. Choose one of the following options:
   - Use the *Desktop Controller* to add the ZonePlayer to your Sonos Digital Music System by selecting **Zones**>**Set Up Zones**>**Add**.

   Or,
   - Use a *Sonos Controller* to add the ZonePlayer to your Sonos Digital Music System by selecting **System Settings**>**Add a ZonePlayer** from the **Music** menu.

   During the setup process, you will be asked to press and release the **Mute** and **Volume Up** buttons simultaneously on the ZonePlayer you are adding to the Sonos Digital Music System.
   - You may release the buttons as soon as the **Mute** indicator (green) and the **ZonePlayer Status indicator** (white) start to blink alternately (this takes approximately 1 second.)
   - When the ZonePlayer has been successfully added to your music system, the Mute indicator will go out and the ZonePlayer Status indicator will change to solid white.

[4] at 17.

**Renaming a ZonePlayer**

If you name a ZonePlayer incorrectly, or if you move your ZonePlayer to another room, you can rename it to suit your preference.

**To rename using Desktop Controller software**
1. From the **Zones** menu, click **Set Up Zones**.
2. Select the ZonePlayer you wish to change, and click **Settings**.
3. From the **Zone Name** tab, select a name from the list, or type a new name for this ZonePlayer in the **Zone Name** field, and then click **OK**.

**To rename using Sonos Controller**
1. From the **Music** menu, select **System Settings**>**ZonePlayer Settings** and press **OK**.
2. Use the scroll wheel to highlight the zone you wish to change, and press **OK**.
3. Select **ZonePlayer Name**, and press **OK**.
4. Choose one of the following options:
   - Use the scroll wheel to select a new name from the list, and then press **OK**.

   Or,
   - Type a different name by selecting **Enter New**.
     - Use the scroll wheel to select each letter, pressing **OK** after each entry.
     - Press **Accept** to accept the new name, or press **Cancel** to leave the screen without making a change.

[4] at 17-18.



Kitchen and Garden make up a zone group

The music queue from the added zone is automatically replaced by the music queue from the zone or zone group it was linked to so that both zones play the same music

[2] at 67.

**Controlling the Volume**

You can control the volume for an individual zone, or for a zone group if you have joined more than one room together. The volume change affects the zone or zone group currently highlighted in the **Zones** pane.

⊖━━━━⊕  **Volume Control.** Click or drag the volume control bar to increase (+) or decrease (−) the volume. If a zone group is highlighted in the Zones pane, the volume applies to all zones in the group. If a single zone is highlighted, the volume applies to that zone only.

[2] at 27.

3. Highlight the zone you want to add, and touch **OK**. If you want to join all the zones in your house to this music queue, select **All Zones-Party Mode**. All of your ZonePlayers will then play the same music in synchrony.



Kitchen and Garden make up a zone group

The music queue from the added zone is automatically replaced by the music queue from the zone or zone group it was linked to so that both zones play the same music.

[2] at 67.

**Music Equalization**

You can change the sound settings (treble, bass, loudness, or balance) for each individual ZonePlayer.

1. From the **Music** menu, select **System Settings**>**ZonePlayer Settings**, and touch **OK**.
2. Use the scroll wheel to select a zone, and touch **OK**.
3. Select **Music Equalization**, and touch **OK**.
4. Select a setting, and then use the scroll wheel to make adjustments to the control slide that appears on the screen, and then touch **OK**.
5. To change the settings for a ZonePlayer back to their original default values, select **Reset All**.

[4] at 98.

Given the lack of narrative explanation as to how or why these screenshots amount to the claim element – which requires, *inter alia*, receiving a second indication that a first zone player has been added to a second zone scene (including the first zone player and a third zone player) where the second zone player (which is a part of a different zone scene) is different than the third zone player – Sonos has no idea what Google's contention is concerning this reference and this claim element, particularly how or why "controlling the volume" or "renaming a zone player" is relevant.

In another example, in Exhibit 615-9 at claim element 13d, Google cites to Figures 4 and 8 of the Weel patent publication, followed by a copy/paste of 30 full paragraphs of the Weel patent

2



**Lee Sullivan Shea & Smith LLP**

**Cole B. Richter** | Attorney

656 W Randolph St
Floor 5W
Chicago, Illinois 60661

312.757.4478  *Office*
richter@ls3ip.com

publication with no further explanation as to how or why any portion of these two figures and 30 paragraphs disclose any portion of this claim element.

And in yet another example, in Exhibit 033-3 at claim element 1b, Google cites to screenshots and block quotes from seven different documents followed by a citation to several top-level folders that contain source code for an alleged product.  However, there is no further explanation as to how or why any of these seven different documents either alone or in combination disclose any portion of this claim element.  Nor is there any explanation as to how the source code in these top-level folders allegedly functioned or an identification of what source code within these top-level folders Google is even relying on.

Every one of Google's other 43 charts suffer from these same problems.  This practice violates at least PLR 3-3(c), which requires:

> A chart identifying specifically where **and how** in each alleged item of prior art each limitation of each asserted claim is found . . .

PLR 3-3(c) (emphasis added).  For the avoidance of doubt, Courts construe this rule to "mandate[] that invalidity contentions set forth that party's **theories of patent invalidity**, including, where relevant, the specific items of prior art and **an explanation of how they invalidate each patent claim**."  *Looksmart Grp., Inc. v. Microsoft Corp.*, 386 F. Supp. 3d 1222, 1226 (N.D. Cal. 2019) (emphasis added).

It is not Sonos's burden to conduct discovery or otherwise move to compel to uncover Google's theories in this case.  *Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*, No. 14-CV-00876-RS(JSC), 2017 WL 5257001, at *6 (N.D. Cal. Nov. 13, 2017) ("It is not KSEA's burden to conduct discovery to clarify Stryker's invalidity contentions.").  The burden of production and persuasion is and remains at all times on Google.  *Microsoft Corp. v. i4i Ltd. Partnership*, 131 S. Ct. 2238, 2243 (2011) ("[T]he burden of proving invalidity [is] on the attacker. That burden is constant and never changes.").

But Sonos writes now in the interest of full disclosure and to inquire as to Google's intentions concerning its contentions.  ***Does Google intend to move for leave to amend its invalidity contentions to provide explanations as to how it contends the cited portions of each charted reference or system meet the elements of the asserted claims and provide identifications of specific source code that Google is relying on?***  If Google intends to so move within 21 days, Sonos would not oppose this motion for leave.  Failing this, Sonos intends to request the Court preclude Google from advancing any invalidity theory, whether through an expert or otherwise, that is not set out in these contentions.[1]

---

[1] To be sure, Sonos does not endeavor in this letter to articulate all the ways Google's invalidity contentions have failed to provide sufficient notice of Google's theories or have otherwise failed to comply with PLR 3-3.  In this respect, and even after any amendment to these invalidity contentions, Sonos reserves the right



Lee Sullivan Shea & Smith LLP

**Cole B. Richter** | Attorney

656 W Randolph St          312.757.4478  *Office*
Floor 5W                   richter@ls3ip.com
Chicago, Illinois 60661

Please let us know you think further conferral on this matter would be productive.

Best regards,

Cole B. Richter
cc: counsel of record

---

to request the Court preclude Google from advancing any invalidity theory, whether through an expert or otherwise, that is not set out in these contentions.