# EXHIBIT 11

**From:** Hannah Santasawatkul <Hannah_Santasawatkul@txwd.uscourts.gov>
**Sent:** Tuesday, June 1, 2021 9:53 AM
**To:** Paige Amstutz <pamstutz@scottdoug.com>
**Cc:** Caridis, Alyssa <acaridis@orrick.com>; bdeblank@orrick.com; Charles K Verhoeven <charlesverhoeven@quinnemanuel.com>; croberts@orrick.com; lee@ls3ip.com; jj@orrick.com; smith@ls3ip.com; Jordan Jaffe <jordanjaffe@quinnemanuel.com>; kmckenna@orrick.com; Lindsay Cooper <lindsaycooper@quinnemanuel.com>; mark waltfairpllc.com <mark@waltfairpllc.com>; sampson@mbhb.com; Melissa Baily <melissabaily@quinnemanuel.com>; shea@ls3ip.com; sullivan@ls3ip.com
**Subject:** RE: 6;20-cv-00881-ADA; Sonos Inc. v. Google LLC--Joint Request for Telephonic Hearing


**EXTERNAL**

Good morning Counsel,

I hope everyone had a restful Memorial Day weekend! I apologize for my delayed response.

1. Inventor depositions – The Court generally allows each individual inventor to be deposed once for the whole case. Defendant may choose whether to depose the inventor prior to Markman, but you will not be allowed to conduct another deposition of the same individual during fact discovery.
2. Pincites for Preliminary Infringement Contentions – The Court will not require Plaintiff to provide pincites at this time. The function of preliminary infringement contentions is to put Defendant on reasonable notice as to Plaintiff's theories of infringement. The Court finds that Plaintiff's Preliminary Infringement Contentions are reasonably detailed to provide notice to Defendant of Plaintiff's infringement theories. The Court also notes that discovery has not yet opened and requiring pincites at this time would be inappropriate.

Best,
Hannah

**From:** Paige Amstutz <pamstutz@scottdoug.com>
**Sent:** Friday, May 28, 2021 4:30 PM
**To:** Hannah Santasawatkul <Hannah_Santasawatkul@txwd.uscourts.gov>
**Cc:** Caridis, Alyssa <acaridis@orrick.com>; bdeblank@orrick.com; Charles K Verhoeven <charlesverhoeven@quinnemanuel.com>; croberts@orrick.com; lee@ls3ip.com; jj@orrick.com; smith@ls3ip.com; Jordan Jaffe <jordanjaffe@quinnemanuel.com>; kmckenna@orrick.com; Lindsay Cooper <lindsaycooper@quinnemanuel.com>; mark waltfairpllc.com <mark@waltfairpllc.com>; sampson@mbhb.com; Melissa

Baily <melissabaily@quinnemanuel.com>; shea@ls3ip.com; sullivan@ls3ip.com
**Subject:** 6;20-cv-00881-ADA; Sonos Inc. v. Google LLC--Joint Request for Telephonic Hearing

**CAUTION - EXTERNAL:**

Good afternoon, Hannah:

The parties submit this email jointly to ask for the Court's assistance in resolving the disputes outlined below with the parties' respective positions. As to each of these issues, counsel has met, conferred but, unfortunately, reached an impasse.

Please let us know if the Court is able to accommodate a telephonic hearing on these issues, or if the Court needs any additional information from us.

In the meantime, we hope you have a great weekend.

All my best,

Paige Arnette Amstutz, Counsel for Google LLC

| Issue | Requested Relief |
|---|---|
| Request for Inventor Depositions relating to Claim Construction and Google's RFP No. 3 Requesting Prior Inventor Testimony<br><br>Sonos objects to providing responsive documents to Google's RFP No. 3, which seeks "[t]estimony of the named inventors or prosecuting attorneys of the Asserted Patents or any Related Patent, whether by way of deposition, trial, affidavit, or otherwise."<br><br>Sonos objects to providing inventors for deposition during claim construction discovery. | **Google's Position**<br><br>Google has requested the depositions of the named inventors of the patents-in-suit relating solely to claim construction. Sonos has refused, stating only that "[w]e won't be making the inventors available until fact discovery opens." Yet, inventor testimony can be relevant to claim construction. *See Bradium Tech. LLC v. Iancu*, 923 F. 3d 1032, 1044 (Fed. Cir. 2019) ("The Board's construction is also consistent with the testimony of the inventor of the '343 and '506 patents. *See Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*, 540 F.3d 1337, 1347 & n.5 (Fed. Cir. 2008); *Voice Techs. Grp., Inc. v. VMC Sys., Inc.*, 164 F.3d 605, 615 (Fed. Cir. 1999) (explaining that although inventor testimony cannot change the scope of the claims from their meaning at the time of invention, '[a]n inventor is a competent witness to explain the invention and what was intended to be conveyed by the specification and covered by the claims'); *see also AbbVie Inc. v. Mathilda & Terence Kennedy Inst. of Rheumatology Tr.*, 764 F.3d 1366, 1377 (Fed. Cir. 2014) (affirming a claim construction that was supported by the intrinsic evidence and the inventor's testimony)"). And, discovery is open for purposes of claim construction under this Court's OGP. ("Except with regard to venue, jurisdictional, and claim construction-related discovery, all other discovery is stayed until after the Markman hearing."). Sonos should be ordered to provide dates for these inventor depositions for purposes of claim construction discovery only. |

Sonos also refuses to produce prior testimony of the named inventors of the Asserted Patents on issues relevant to claim construction. Google primarily seeks the testimony from these individuals in two previous litigations—(1) the ITC proceeding between the same parties here--Google and Sonos; and (2) *Sonos, Inc. v. D&M Holdings Inc.*, Case. No. 14-1330-WCB (D. Del.). Inventor testimony can be relevant to claim construction, as discussed above. Sonos has also admitted that the inventors previously testified about the Sonos development of its technology in the early 2000s, which Sonos itself discusses in its opening claim construction brief. Dkt. 60 at 1-2. In light of the relevance and potential benefit of the testimony and the low burden of its production, this discovery is proportional to the needs of the case. Sonos's relevance objection should be overruled.

Sonos' response argues that Google's request is "ill-defined" because it is allegedly "unclear at this point whether and how any time spent with an inventor during this first deposition would count against the time a party can spend during any second deposition." The parties discussed this during the meet and confer and Google said it was open to Sonos's proposal on this point. Google will agree to Sonos' proposal that the deposition hours count against the 7 hours for each inventor and the 70 overall hours permitted by the OGP. The burden argument rings hollow since Sonos is the one who brought this lawsuit and subjected its inventor employees and former employees to discovery.

The untimeliness arguments in Sonos' response are also without merit. Google's Disclosure of Extrinsic Evidence states that it may rely upon "inventor testimony" to support its construction, and noted that Google "has not yet deposed all of the named inventors." 4-09-21 Disclosure of Extrinsic Evidence. Sonos' claims of prejudice are also not credible because Google's request permitted Sonos to make the inventors available before June 1 (during the window for Google's Response Brief) and Sonos still can make the inventor available during the window for Google's Sur-Reply (approximately one month from now).

The cases that Sonos relies upon do not hold that inventor testimony is irrelevant or forbidden during claim construction. They simply hold that inventor testimony may be given less weight if it contradicts the intrinsic record or attempts to change the invention and the claims, a point Google agrees with. *Red Arrow Prod. Co. LLC v. Res. Transforms Int'l, Ltd.*, No. SA-03-CA-751-H, 2008 WL 5088648, at *3 (W.D. Tex. Oct. 20, 2008) ("inventor's testimony cannot be used to establish a characteristic of a preferred embodiment that is not only absent from the intrinsic record, but contradicts it without explanation."); E-*Pass Techs., Inc. v. 3Com Corp.*, 343 F.3d 1364, n.5 (Fed. Cir. 2003) (inventory testimony was "insufficient to alter the claim term's ordinary meaning"); *Solomon v. Kimberly-Clark Corp.*, 216 F.3d 1372, 1379 (Fed. Cir. 2000) (inventor testimony insufficient to invalidate

|  | patent). In fact, Sonos's own cases confirms that the use of inventor testimony "is not forbidden." *Red Arrow*, 2008 WL 5088648, at *2.<br><br>Finally, Sonos argues that prior deposition transcripts are irrelevant because its prior litigations involved either "(i) Sonos patents that are different from the Asserted Patents here, or (ii) patents of third parties." But Sonos omits the fact that its opening claim construction brief relies heavily upon these "irrelevant" cases to support its construction. *See* Dkt. No. 60 at 3-5, (citing D&M and ITC proceedings). In other words, Sonos argues that cases involving different patents are relevant in its claim construction brief, while at the same time arguing they are irrelevant when opposing discovery. Sonos also fails to identify any burden or prejudice that would prevent it from producing inventor transcripts from prior litigations.<br><br>**Sonos's Position**<br><br>Google's request for inventor depositions during the claim construction discovery phase should be denied for any of several reasons. The Federal Circuit has repeatedly held that inventor testimony in the context of claim construction is "entitled to little, if any, probative value." *Solomon v. Kimberly-Clark Corp.*, 216 F.3d 1372, 1379 (Fed. Cir. 2000) (citations omitted); *E-Pass Techs., Inc. v. 3Com Corp.*, 343 F.3d 1364, n.5 (Fed. Cir. 2003) (same); *see also, e.g., Red Arrow Prod. Co. LLC v. Res. Transforms Int'l, Ltd.*, No. SA-03-CA-751-H, 2008 WL 5088648, at *2 (W.D. Tex. Oct. 20, 2008) ("Inventor testimony is of little value for claim construction analysis because construction of the claims is based on the record established at the time the patent was granted."). Google has identified no aspect of this case that would elevate inventor testimony to relevance.<br><br>Google's request is also ill-defined. For instance, Google asks for these depositions to be limited to "claim construction" but doesn't explain what this does or doesn't entail. Google offers no identification of the scope of any topics, such as the specific claim terms, it intends to ask of each inventor. Moreover, Google has indicated that it plans to depose the inventors again during fact discovery on issues other than "claim construction." Requiring Sonos employees and third parties (one inventor is a third party) to sit for multiple depositions in the same case is overly disruptive to Sonos's business operations and is an especially-undue burden on third parties. Indeed, although Google indicated that it would consider time limits to these depositions and for the later depositions of these inventors, Google offers no concrete proposal at this time. Indeed, the absence of a concrete proposal regarding time limits at this time invites gamesmanship later in the case. For instance, it's unclear at this point whether and how any time spent with an inventor during this first deposition would count against the time a party can spend during any second deposition. To the extent the Court is inclined to permit "claim construction" inventor depositions (and Sonos |

contends the Court should not), Sonos requests that the time spent during such depositions count against the 7-hour per-deponent limit imposed by FRCP Rule 30(d) and the 70-total hour limit imposed by this Court's OGP.

Google's characterization of Sonos's identification of the potential for gamesmanship as a "proposal" is misleading.  To be clear, Sonos is not making a "proposal" regarding claim construction depositions and made no such proposal on any meet and confer.  Since it was Google that asked for these depositions, Sonos requested a proposal from Google on how to handle timing.  Google could offer none, saying merely that it would consider a proposal from Sonos.  Sonos's "proposal," if any, is that it make the inventors available one time, during fact discovery, as is done in every other case around the country.

Further, Google's request for inventor depositions is procedurally untimely and prejudicial.  Google failed to identify inventor testimony on its list of extrinsic evidence served April 9.  Instead, Google waited until after Sonos filed its brief (April 27) and after Google sought Sonos's agreement to extend Google's brief from May 18 to June 1.  In fact, without explanation, Google waited until nearly 8pm on Friday May 21 to first request the inventor's depositions.  That would not have provided Sonos sufficient time to ascertain the inventor's schedules and produce them for deposition prior to June 1, particularly given the Memorial Day holiday weekend.  The parties are still scheduling depositions of the expert declarants in connection with claim construction.  Now, given Google's belated request for inventor depositions, the added scheduling conflicts will prejudice Sonos as these inventor depositions will likely fall during Sonos's window to prepare its reply brief.  Had Google sought inventor testimony in advance of the parties' briefing, such as around April's deadline to disclose all extrinsic evidence, the parties could have perhaps alleviated this prejudice.

Google indicates that its disclosure of extrinsic evidence served April 9 indicated that it "may rely upon 'inventor testimony.'"  This is not accurate – the disclosure stated that Google "reserves the right to update its citations with . . . inventor testimony."  Assuming Google is even permitted to reserve such a right, Google offers no reason why it waited from April 9 to May 21 to first attempt to exercise this reserved right.

Finally, Google's cases are not helpful and in most respects counsel *against* depositions.  In particular, *AbbVie* involved "inventors' testimony *at trial*," not during claim construction.  764 F.3d 1366 at 1377 (emphasis added).  In *Voice Techcs Grp*, the Federal Circuit acknowledged that "the inventor can not by later testimony change the invention and the claim from their meaning at the time the patent was drafted and granted."  *Voice Techs. Grp., Inc. v. VMC Sys., Inc.*, 164 F.3d 605, 615 (Fed. Cir. 1999).  Consistent with this, the

9

| | |
|---|---|
| | Federal Circuit stated in *Solomon* that "what the patentee subjectively intended the claims to mean is largely *irrelevant* to the claim's objective meaning and scope." 216 F.3d at 1379 (emphasis added). In *Bradium*, although the Federal Circuit found that the Board's construction was "consistent with the testimony of the inventor," the Federal Circuit acknowledged that inventor testimony may be pertinent *as a form of expert testimony* – which is not the case here. *See* 923 F.3d 1032 at 1044-45. Indeed, the Federal Circuit in *Howmedica* made clear that while inventor testimony "may be pertinent *as a form of expert testimony*," such testimony would be "still limited by the fact that an inventor . . . may not understand the claims" and cautioned further that "inventor testimony as to the inventor's subjective intent is *irrelevant* to the issue of claim construction." 540 F.3d at 1347, n.5 (emphasis added).<br><br>==In addition to seeking inventor depositions, Google also seeks the production of inventor testimony from prior Sonos litigations. However, all prior Sonos litigations involved either (i) Sonos patents that are different from the Asserted Patents here, or (ii) patents of third parties. As such, this prior testimony is entirely irrelevant to claim construction in this case. Sonos has produced all extrinsic material that it relies on in its brief as well as a host of other dubiously-relevant "claim construction" material requested by Google from other cases (despite that Sonos did not rely on it). Google's further request for inventor deposition transcripts is a clear fishing expedition and should be denied.==<br><br>In light of its irrelevance to claim construction and untimeliness, the Court should deny Google's requests. |
| The OGP provides that "Plaintiff shall serve preliminary infringement contentions in the form of a chart setting forth where in the accused product(s) each element of the asserted claim(s) are found." | **Google's Position**<br><br>Sonos should be required to supplement its infringement contentions with "pinpoint citations" to source code within a reasonable time (such as 30 days) from the date of this correspondence to the Court. Google's request mirrors the request Sonos made—successfully—in the co-pending Northern District of California litigation between the parties, styled *Google LLC v. Sonos, Inc.*, Case No. 3:20-cv-03845-EMC, Dkt. No. 44 at 6-10 (hereinafter "California Case"). That document is also attached for the Court's convenience.<br><br>Sonos is estopped from arguing that pinpoint citations are unnecessary in this case. Under "general principles of judicial estoppel… a party cannot advance one argument and then, for convenience or gamesmanship after that argument has served its purpose, advance a different and inconsistent argument." *Hal v. GE Plastic Pacific PTE Ltd.*, 327 F.3d 391, 396-397 (5ᵗʰ Cir. 2003) (internal quotations omitted). Judicial estoppel applies where (1) "the position of the party to be estopped is clearly inconsistent with its previous one;" and (2) "the party must have convinced the court to accept that previous position." *Id*. In the California Case, Sonos convinced the |

court to order Google to provide pinpoint citations to source code by representing to the court that where, as here, the patents are "rooted in software functionality," pinpoint citations are "*necessary*" and "[t]he only way" to "understand what is actually accused." *California Case*, Dkt. No. 44 at 9-10, Dkt. No. 65 at 29:11-21, 33:5-13 (ordering pinpoint citations 90 days after technical documents and source code are produced). Having succeeded in convincing the judge in California that such "pinpoint citations" are necessary, Sonos cannot be heard to argue otherwise here. It would be manifestly unfair to allow Sonos to successfully leverage this argument as a defendant, but then avoid being held to the same standard when it is a plaintiff.

Sonos also objects to a 30-day deadline for providing pinpoint citations (although Sonos refuses to offer any alternative deadline). Sonos claims that, in the California case, it made source code available on September 28 and Google was given "168 days" to provide its pinpoint citations. But Sonos's calculation is misleading because Sonos's September 28 production of source code was incomplete and did not include core technical documents. *Id*. at Dkt. No. 65 at 31:4-8. Moreover, Sonos represented that it "would be fine with an order that requires … pincites" within "two or three months" after Sonos made its code available, and the California court ultimately set the deadline for pincites at 90 days from the deadline for Sonos' invalidity contentions *and* accompanying technical document production. *Id*. at Dkt. No. 44 at 9, Dkt. No. 65 at 33:5-13. Here, Google made its code, along with its invalidity contentions and technical documents, available on March 5. Thus, Google's request gives Sonos even more time than Google received in the California Case.

While Sonos does not dispute that in the California Case it represented that pinpoint citations are "necessary" and "[t]he only way" to "understand what is actually accused" for the technology at issue, it argues that this case is different because there are Final Infringement Contentions. Sonos' argument is confusing. The existence of Final Infringement Contentions does not eliminate the need for Google to "understand what is actually accused" at this stage of the case. Such an understanding is essential for Markman. Relatedly, none of the cases Sonos cite address a situation in which the plaintiff represented that pinpoint citations were "necessary" and "the only way" to "understand what is actually accused." Sonos should be held to its representation, and Google should be permitted to understand what is actually accused prior to the deadline for Final Infringement Contentions.

Sonos also argues that the California Case is different because fact discovery is not yet open in this case. But Sonos does not identify any fact discovery that prevents it from providing pinpoint citations, let alone show that that such discovery was produced in the California Case. It is undisputed that Sonos has had Google's core technical

documents and source code for nearly 3 months and nothing prevents it from providing pinpoint citations.

Finally, Sonos' assertion that it was not able to review the source code until April 19 is without merit.  Google made its code available to Sonos on March 5.  On March 8, Sonos indicated that it would "provide a list of software for the review computers in advance of any review."  It took Sonos a full month to provide the promised software, and when it finally did on April 8, Sonos did not even provide all the necessary information Google needed to install and activate the software.  Once Sonos provided the necessary information a few days later on April 12, Google completed its installation of the software promptly (within two days).  Sonos then began review the following week.  In short, any delay in reviewing the code is of Sonos' own making.

**Sonos's Position**

Google's request for an arbitrary 30-day deadline to serve updated infringement contentions with source code citations should be denied.  Google bases its request solely on the fact that Sonos purportedly made a similar request in another Sonos/Google case (referred to by Google as the "California case"), which is pending in a different jurisdiction and involves Google patents as opposed to Sonos patents.  Google contends that estoppel prevents Sonos from arguing otherwise.  But Sonos's request in the California case is not similarly-situated to Google's request in this case, and Sonos did not "prevail" on its request in the California Case.

First, this case's schedule has the benefit of a built-in deadline for "Final Infringement Contentions," whereas in the California case there was no such deadline.  That is why the prevailing procedure in that jurisdiction was to require source code supplementation at some point during the case.  *See, e.g., Finjan, Inc. v. Proofpoint, Inc*., No. 13-CV-05808-HSG, 2015 WL 9023166, at *2 (N.D. Cal. Dec. 16, 2015).  Unlike California, however, this Court's OGP and caselaw provide for no such procedure, and in fact this Court has routinely *denied* motions to compel a patentee to supplement its infringement contentions on sufficiency grounds prior to *Markman*.  *E.g., Cameron International Corporation v. Nitro Fluids LLC*, 6-20-cv-00125, Dkt. No. 30 (WDTX June 9, 2020); *Arcimoto, Inc. v. Ayro, Inc.*, 6-20-cv-00176, Dkt. No. 25 (WDTX May 8, 2020); *SVV Technology Innovations Inc. v. Samsung Electronics Co., Ltd. et al.*, 6-20-cv-00139, Dkt. No. 40 (WDTX Oct. 1, 2020).  Indeed, this Court has previously explained that the "purpose in the initial infringement contentions is to give the defendant some basic understanding of what the claim are, but really when [the Court] expect[s] there to be subset of infringement contentions . . . are *after the Markman* and in advance of the expert reports . . . ."  *Cameron International Corporation v. Nitro Fluids LLC*, 6-20-cv-00125, Dkt. No. 34 at p. 11-12 (WDTX June 25, 2020).   Google identifies no portion of Sonos's infringement

12

contentions where it is unable to understand "what is actually accused." In fact, Google appears to understand the contentions well enough to make an argument about what is and isn't accused. Google has taken the position that the "Google Cloud Platform" is not an accused product or service in the contentions and has refused to provide any discovery on Google Cloud Platform's relation to the accused products. Google's feigned ignorance about understanding the contentions is obvious.

Second, the procedural posture in the California case was and is different than this case. In the California case, fact discovery was open, and substantive interrogatories and requests for production were able to propounded. In this case, fact discovery is not open. Although Sonos is inspecting the source code that Google made available, Google has refused any discovery request that purportedly relates to merits issues, and Sonos is not entitled to serve merits-based interrogatories or requests for production. As one example, Google has refused to provide information regarding Google Cloud Platform's relation to the accused products. Google states that it has provided "core technical documents," but as fact discovery is not open, Sonos is not permitted to serve follow up RFPs to request documents it believes are missing, propound interrogatories regarding the source code or the accused functionalities, or take any depositions of the engineers responsible for developing the code. Providing source code pincites at some arbitrary deadline before Sonos has the benefit of traditional fact discovery is prejudicial and not what was ordered in the California Case.

Third, Sonos's request in the California case is not the same as Google's request here. In the California case, Sonos requested that Google provide pincite citations by a date that was "within a reasonable amount of time from when [Sonos] made the code available." *See* California case, Dkt. 44, p. 9. Sonos suggested that *90 days* after Sonos made its source code available to Google would be reasonable. *See* California case, Dkt. 44, p. 9 fn.4 ("Google acknowledges that 'Courts in this District routinely allow parties to review source code … for 90 days and then amend existing infringement contentions.' This is exactly in line with what Sonos proposes here."). Google *opposed* this and requested 90 days from when Sonos would later serve its PLR 3-4 disclosures (which, in that Court, would include technical documentation in addition to source code). *Id.* at 13. In the California case, Sonos made its code available on September 28 in multiple locations and served its PLR 3-4 disclosures on December 14. The Court agreed with Google's proposed timeframe, not Sonos's and thus Google's pincite citations were due on March 15. This amounted to *168 days* from when Sonos first made its source code available.

Here, Google arbitrarily requests 30 days from today to provide pincite code citations. Google's code has not been available to Sonos

13

|  | for a similar time frame as the California case. Google argues that it made its source code available on March 5 – but that is not the whole story. First, Google sent a letter on Friday, March 5 at 10:43pm purporting to make the code available for inspection. On Monday, March 8, Sonos requested that Google make its source code available for inspection at Quinn's Los Angeles and San Francisco offices with two review computers (a similar geographic and logistical request that Sonos accommodated for Google in the California case). Google couldn't resolve this request until *April 6*. Second, when Sonos disclosed its code review experts on March 2, Google waited until March 16 and then objected to their disclosure.  Sonos was only able to begin its review of Google's source code on April 19, 2021 – this was once (i) objections concerning Sonos's source code reviewers were resolved, (ii) the code was made available in a reasonable physical location requested by Sonos, and (iii) Google installed Sonos's requested software review tools.  Thus, Google's request in this case amounts to a request for Sonos to provide pincites within *67 days* from when the source code was reasonably available to Sonos – a shorter time than even Sonos ultimately argued for in the California case and a much shorter time than what Google argued for and the Court ordered.<br><br>Google's request for an arbitrary deadline of 30 days (which prejudicially spans the time the parties are preparing for *Markman*) to provide source code pincites should be denied. |
|---|---|

IMPORTANT - SCOTT DOUGLASS & McCONNICO DISCLAIMER: This message is intended for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination or copying of this communication is strictly prohibited. If you receive this communication in error, please notify us immediately by telephone at (512) 495-6300 and/or email and delete the original message. Thank you.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.