CLEMENT SETH ROBERTS (STATE BAR NO. 209203)
croberts@orrick.com
BAS DE BLANK (STATE BAR NO. 191487)
basdeblank@orrick.com
ALYSSA CARIDIS (STATE BAR NO. 260103)
acaridis@orrick.com
EVAN D. BREWER (STATE BAR NO. 304411)
ebrewer@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:   +1 415 773 5700
Facsimile:   +1 415 773 5759

SEAN M. SULLIVAN (*pro hac vice*)
sullivan@ls3ip.com
MICHAEL P. BOYEA (*pro hac vice*)
boyea@ls3ip.com
COLE RICHTER (*pro hac vice*)
richter@ls3ip.com
LEE SULLIVAN SHEA & SMITH LLP
656 W Randolph St., Floor 5W
Chicago, IL 60661
Telephone:   +1 312 754 0002
Facsimile:   +1 312 754 0003

*Attorneys for Sonos, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| GOOGLE LLC,<br><br>　　　Plaintiff and Counterdefendant,<br><br>　　　v.<br><br>SONOS, INC.,<br><br>　　　Defendant and Counterclaimant. | Case No. 3:20-cv-06754-WHA<br>Related Case No. 3:21-cv-07559-WHA<br><br>**SONOS'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE PORTIONS OF GOOGLE'S MOTION FOR SUMMARY JUDGMENT AND EXPERT DECLARATION**<br><br>Date:  June 9, 2022<br>Time: 8:00 a.m.<br>Place: Courtroom 12, 19th Floor<br>Judge: Hon. William Alsup<br><br>Complaint Filed: September 28, 2020 |

**PUBLIC REDACTED VERSION**

# TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION .................................................................................................................. 1

II. ARGUMENT ......................................................................................................................... 2

    A. Google's Invalidity Contentions Do Not Disclose Its New YouTube Remote Theory. ............................................................................................................ 2

    B. Google's Citations to New Portions of the '998 Patent Are New Disclosures, Not Supplemental Evidence ............................................................................................ 6

    C. Google's Previously Undisclosed Prior Art Exhibits Are Not "Further Evidentiary Support" And Are Untimely ........................................................................................... 7

        1. Google's MSJ Exhibit 14: February 29, 2012 Version of the YouTube Remote System ........................................................................................................ 9

        2. Google's MSJ Exhibit 10: YouTube Remote API ................................................ 10

    D. Google's Reliance On Undisclosed Or Unmapped Source Code Violates Local Rule 3-3 ............................................................................................................... 10

        1. Undisclosed Source Code ..................................................................................... 10

        2. Unmapped Source Code ....................................................................................... 13

III. CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Apple Inc. v. Samsung Elecs., Co., Ltd.*,
No. 5:12-cv-0630-LHK, 2014 WL 173409 (N.D. Cal. Jan. 9, 2014) ...................................... 8

*ASUS Computer Int'l v. Round Rock Research, LLC*,
No. 12-cv-02099 JST, 2014 WL 1463609 (N.D. Cal. Apr. 11, 2014)...................... 8, 9, 10, 12

*Avago Techs. Gen. IP PTE Ltd. v. Elan Microelectronics Corp.*,
No. C04-05385 (JW), 2007 WL 2103896 (N.D. Cal., Jul. 20, 2007) ..................................... 14

*In re Epstein*,
32 F.3d 1559 (Fed. Cir. 1994).............................................................................................. 12

*Ficep Corp. v. Voortman USA Corp.*,
2017 WL 480753 (D. Md. Feb. 6, 2017) ............................................................................. 12

*Fujifilm Corp. v. Motorola Mobility LLC*,
No. 12-cv-03587-WHO, 2015 WL 757575 (N.D. Cal. Feb. 20, 2015) ................................... 8

*Genentech, Inc. v. Trustees of the Univ. of Penn.*,
No. C10-2037-LHK, 2012 WL 424985 (N.D. Cal. Feb. 9, 2012) ........................................... 7

*Good Tech. Corp. v. MobileIron, Inc.*,
No. 5:12-cv-05826-PSG, Dkt. 278 (N.D. Cal. April 23, 2015) ....................................... 12, 13

*Illumina Inc. v. BGI Genomics Co., Ltd.*,
No. 20-cv-01465-WHO, 2021 WL 3847859 (N.D. Cal. Aug. 27, 2021) ............................ 7, 8

*IXYS Corp. v Adv. Power Tech. Inc.*,
No. C 02-03942 MHP, 2004 WL 1368860 (N.D. Cal. Jun. 16, 2004) ....................... 10, 12, 13

*Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*,
No. 14-CV-00876-RS(JSC), 2017 WL 5257001 (N.D. Cal. Nov. 13, 2017) ..................... 3, 14

*Largan Precision Co., Ltd. v. Genius Elec. Optical Co., Ltd.*,
No. 13-cv-02502 (JD), 2014 WL 6882275 (N.D. Cal. Dec. 5, 2014).............................. *passim*

*MediaTek Inc. v. Freescale Semiconductor, Inc.*,
No. 11-cv-5341 (YGR), 2014 WL 690161 (N.D. Cal. Feb. 21, 2014) .................................... 4

*Oracle Am., Inc. v. Google Inc.*,
No. C10-03561-WHA, 2011 WL 4479305 (N.D. Cal. Sept. 26, 2011)................................... 8

*Slot Speaker Techs., Inc. v. Apple, Inc.*,
No. 13-cv-01161 (HSG), 2017 WL 235049 (N.D. Cal. Jan. 19, 2017) .................................. 3

*Verinata Health, Inc. v. Sequenom, Inc.*,
   No. C12-00865 (SI), 2014 WL 4100638 (N.D. Cal. Aug. 20, 2014) .................................. 3, 10

**Other Authorities**

Patent L.R. 3-3 ................................................................................................ 1, 5, 7, 12, 14

Patent L.R. 3-4 ........................................................................................................ 12, 13

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

As Sonos explained in its Motion to Strike ("MTS") (Dkt. 219), Google's patent showdown summary judgment brief and supporting materials included new invalidity arguments and references that Google did not disclose in its invalidity contentions. Patent Local Rule 3-3(c) is clear: invalidity contentions must "identify[] specifically where and how in each alleged item of prior art each limitation of each asserted claim is found." Google cannot hide behind broad, nondescript invalidity contentions as if they disclosed Google's brand-new theories.

Google asserts that it disclosed all its invalidity theories for the YouTube Remote System and U.S. Patent No. 9,490,998 ("the '998 Patent")[1] in its invalidity contentions. Dkt. 253.02 ("Opposition") at 1. To be clear, Sonos never disputed that Google disclosed the YouTube Remote System and the '998 Patent as asserted prior art references in its contentions. But invalidity contentions must do more than simply identify a "system" or a "reference" that allegedly invalidates a patent—parties are required to identify their *theories* of *how* the prior art discloses the limitations of the asserted patents. Ignoring this, Google seems to believe that mere disclosure of a "system" or reference—regardless of what theory it articulated in its contentions—is sufficient to put Sonos on notice of all possible invalidity theories Google might later set forth (including those articulated for the first time in its Motion for Summary Judgment ("Google's MSJ")) Dkt. 210.15. Google further seeks to validate its use of new pieces of prior art and new source code under the guise that these are simply "further evidentiary support" of its shifting YouTube Remote System. Opposition at 2. But the new prior art it seeks to introduce relates to different *features* of the alleged prior art system never disclosed in Google's invalidity contentions. Finally, Google attempts to justify its use of code not cited in its invalidity contentions through questionable *ex post* claims that all produced source code is the same, and it seeks to propose new theories using previously undisclosed citations to its source code.

---

[1] Google submitted a copy of the '998 Patent as Ex. 10 to its Opposition. Dkt. 255.10.

1    Google cannot remedy the inadequacies in its prior invalidity theories by ambushing Sonos
2    with new theories, new prior art, and new explanations offered both at summary judgement and in
3    response to Sonos's motion to strike.  As detailed below, Google's Opposition rebuttals are
4    meritless, and Sonos respectfully requests that the Court strike those theories and materials
5    referenced in its Motion to Strike.

**II.     ARGUMENT**

Google attempts to salvage its new invalidity theories by pointing to broad and contradictory disclosures and sweeping claims that all new prior art is simply "evidentiary support." These arguments fail for the reasons listed below.

### A.     Google's Invalidity Contentions Do Not Disclose Its New YouTube Remote Theory.

Google's invalidity contentions did not disclose Google's current theory of how the YouTube Remote system teaches Limitation 13.4 of claim 13 of U.S. Patent No. 9,967,615 ("the '615 patent").  Specifically, Google's invalidity contentions did not identify a "menu" plus "connect" button of the YouTube Remote as allegedly disclosing Limitation 13.4's "set of inputs" element, but instead disclosed a different theory.  Despite this, Google contends that because it used the same screenshot to illustrate its new theory and that the menu button is shown in videos *cited* within (but not discussed within) Google's invalidity contentions, Google adequately disclosed its new "menu plus connect" theory, on which it relies for summary judgment.  Opposition at 9-12. This argument is flawed for two reasons: 1) Google is not entitled to all theories it could potentially assert from broad, unmapped disclosures in a prior art reference; and 2) Google explicitly provided a different invalidity theory in its contentions than it did in its Motion for Summary Judgment.

Contrary to Google's arguments, Sonos is not required to guess all theories Google may assert from all possible disclosures in a prior art reference. *Largan Precision Co., Ltd. v. Genius Elec. Optical Co., Ltd.*, No. 13-cv-02502 (JD), 2014 WL 6882275, at *4 (N.D. Cal. Dec. 5, 2014) ("But gleaning and guessing are not the rules patent litigants play by. Our Local Rules are designed precisely to eliminate the gamesmanship of hints in favor of open disclosure.").  Nor was Sonos obligated to conduct discovery via letter or meet and confer to query Google on the possibility of

1  undisclosed theories.  *Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*, No. 14-CV-00876-
2  RS(JSC), 2017 WL 5257001, at *6 (N.D. Cal. Nov. 13, 2017) ("It is not KSEA's burden to conduct
3  discovery to clarify Stryker's invalidity contentions."). Rather, Google was required to crystalize
4  its invalidity theories in its invalidity contentions.  *Verinata Health, Inc. v. Sequenom, Inc.*, No.
5  C12-00865 (SI), 2014 WL 4100638, at *1 (N.D. Cal. Aug. 20, 2014) (citations omitted).

6  In its invalidity contentions, Google never once articulated that the "menu" button was any
7  one of the "set of inputs" required by Limitation 13.4. Indeed, Google's Opposition does not point
8  to any narrative discussion or annotations where Google maps the "menu" button to the claim
9  element of a "set of inputs." *See* Opposition at 9-12. Google instead contends that Sonos should
10 somehow have guessed that Google might one day rely on the "menu" button as the claimed "set
11 of inputs" because images of that button are buried within a piece of prior art broadly cited in its
12 contentions. Courts have long held that these overly broad disclosures do not put a party on notice
13 of the other party's invalidity theories. *Slot Speaker Techs., Inc. v. Apple, Inc.*, No. 13-cv-01161
14 (HSG), 2017 WL 235049, at *2-5 (N.D. Cal. Jan. 19, 2017) (recognizing the judicial history that
15 overly broad disclosures in contentions are inadequate to put a party on notice and striking
16 invalidity contentions that broadly cited to the prior art without mapping the claim elements).
17 Sonos had no reason to know and no reason to question whether Google might use some "menu"
18 button to help satisfy the "set of inputs" element simply because that button existed in references
19 cited in Google's invalidity contentions. Consider what it would mean for this Court's local rules
20 if Google's position were adopted: a patent plaintiff need only to provide a general description of
21 the operation of the accused products in its infringement contentions to put a defendant on notice
22 of *any* infringement theory on which the plaintiff may later chose to rely. That is certainly not the
23 law. *See Largan*, 2014 WL 6882275, at *4.

24 Google's Opposition also ignores that Google stated in its invalidity contentions that ***only***
25 the Connect button is needed to allegedly satisfy the "set of inputs" element from Limitation 13.4.
26 Sonos's previous table (which Google does not dispute accurately represents the differences
27 between Google's contentions and its summary judgment motion) makes this explicit theory clear:
28

| Invalidity Contentions | Summary Judgment |
|---|---|
| "*The YT Remote System implicitly detects a set of inputs once the 'connect' option is selected*, based on devices on the same LAN for which user is logged in, e.g. a TV screen logged into the user's YouTube account.<br><br>*See e.g.* [4]<br><br> | "To transfer playback using the YTR application the user may press the *menu* button (shown in green in the image …) which brings up a '*Connect*' button (shown in red) that the user may further select to transfer playback to a particular playback device.  The user's selection of *menu* and *select* [*sic*] are a 'set of inputs' to transfer playback that are detected by the Android phone."<br><br> |
| Ex. A ('615 Chart) at 18 (yellow highlighting in image and emphasis in text added; red box and "Set of Inputs detected" annotation in Google's original). | Google's MSJ at 19 (emphasis in text added; red and green boxes in image in original). |

While the "menu" button appears in the screenshot disclosed in Google's contentions, Google identified in text and a red callout box only the "Connect" button as allegedly disclosing the "set of inputs" being detected. Ex. A[2] (Claim Chart) at 17-18. Google's MSJ *changes* its theory to now argue that the "menu" plus "Connect" button satisfies this limitation. Google's MSJ at 19. Google is bound by its previous invalidity contentions, and cannot ambush Sonos with a new theory at summary judgment. *MediaTek Inc. v. Freescale Semiconductor, Inc.*, No. 11-cv-5341 (YGR), 2014 WL 690161, at *1 (N.D. Cal. Feb. 21, 2014).

---

[2] All lettered exhibits cited in this reply were previously submitted with the Declaration of Alyssa Caridis filed in support of Sonos's Motion to Strike.

Google contends that because other references cited in its contentions disclose pressing both menu and connect, Google was entitled to rely on that theory for teaching Limitation 13.4. Opposition at 11-12. Google's position boils down to an argument that Sonos should have ignored Google's specific claim mapping for a "set of inputs," and instead guessed Google's actual invalidity theory from unmapped and undiscussed prior art disclosures. *Largan* forecloses Google's argument. In *Largan,* the court struck portions of an expert report that relied on new theories generated from previously uncited portions of disclosed prior art. *See* 2014 WL 6882275 at *5-6; MTS to 5-6. That is exactly what happened here. As discussed above, Google merely cited to references where the "menu" button existed; Google did not "identify[] specifically" the menu button for the "limitation of each asserted claim," Local Rule 3-3(c), and therefore cannot rely on that theory now. *See Largan*, 2014 WL 6882275 at *5-6. Pointing to a new portion of a reference is not "additional explanation" of a previously-disclosed theory, Opposition at 12, it is a *new* theory.

Google does not dispute that striking (i) paragraphs 159-60 of Dr. Bhattacharjee's declaration and (ii) page 19, lines 1-7 of Google's motion for summary judgment is the correct result if the Court agrees with Sonos. Google, however, does not agree with Sonos that paragraph 136 of Dr. Bhattacharjee's declaration should also be struck, arguing that only the portions of paragraph 136 that reference the menu button should be struck. Opposition at 12. But striking half-sentences and portions of a paragraph in this way would seemingly allow Google and its expert to retreat to the single "Connect button" theory—in effect reverting back to a theory that Google chose not to present in its motion papers. Google ought not to be rewarded for its attempt at advancing a previously-undisclosed theory with an *ex post* re-write of its expert's declaration. As a policy matter, this type of remedy would do little to deter future litigants from advancing undisclosed theories as there would be little risk in doing so if they can simply fall back to the contentions theory (even if not advanced by the expert). Paragraphs 136, 159 and 160 of Dr. Bhattacharjee's declaration should be struck.

### B. Google's Citations to New Portions of the '998 Patent Are New Disclosures, Not Supplemental Evidence

Sonos explained, and Google does not dispute, that Google's citation to 10:62-11:6 of U.S. Patent No. 9,490,998 ("the '998 Patent") appeared for the first time in Google's motion for summary judgment. MTS at 6-7. Google instead contends that its disclosure of two other citations in the '998 patent "put Sonos on notice that if the method used by the YouTube Remote Systems to select a particular playback device for transferring playback was insufficient to satisfy Limitation 13.4, it would have been obvious to rely upon any one of the [transfer] techniques disclosed in the '998 patent." Opposition at 13. Google is again attempting to broaden the disclosures in its invalidity contentions to use whatever portions of its prior art it wants to fill in gaps in its invalidity theories.

First, Google points to its previous disclosure of 4:21-57 of the '998 patent. That disclosure explains that "any one of several different techniques" may be used to pair a "remote control," and goes on to list several example techniques. None of these techniques are the one disclosed in 10:62-11:6. Google nonetheless argues that this excerpt gives it free reign to use ***any*** method in the '998 Patent, beyond the methods disclosed in that passage. Opposition at 13-14. But Google's invalidity contentions provided no explanation that it was relying on any method besides those disclosed in block quote from 4:21-57, so its validity theory was plainly limited to the "several different techniques" listed in that portion of the '998 patent.[3] None of these cited examples contemplate a user interface for users to individually select and control one or more devices.

Second, Google points to its citation of 8:11-12 of the '998 patent, which also discusses pairing a remote with a device. Opposition at 14. Google's invalidity contentions actually cite

---

[3] In fact, Google's invalidity charts were devoid of any narrative discussion of how the block-quoted portions of the '998 patent meet the elements of the asserted claims. *E.g.*, Ex. A (Claim Chart) at 18-20 (charts containing block quote and screenshots without explanation). This provides additional justification that Google ought not now be permitted to rely on uncited portions of its references. When all Sonos had to go on were quoted portions of a reference, it would be prejudicial to retroactively allow Google to rely on portions of the reference Google specifically chose not to quote.

1  8:1-59, which broadly discloses that devices and remotes can be paired. Ex. A (Claim Chart) at

2  19. Nothing within that disclosure teaches *a user interface that allows a user to select and*

3  *control one or more paired devices*, or points in any way to columns 10-11 of the '998 patent on

4  which Google now relies.

5  Google's Opposition again argues that its citation of passages discussing pairing devices

6  through "any one of several different techniques" allows Google free reign to use the entirety of

7  the '998 Patent as "further evidentiary support" for its invalidity theories. Opposition at 13-14.

8  None of the cases that Google cites support its argument that the new portion of the '998 patent

9  on which Google now relies is merely "further evidentiary support," versus a new theory of

10  invalidity. The two cases that Google cites that discuss invalidity contentions relate to cases

11  where the party used further evidentiary support for existing 35 U.S.C. § 112 theories or as

12  background information. *See Illumina Inc. v. BGI Genomics Co., Ltd.*, No. 20-cv-01465-WHO,

13  2021 WL 3847859, at *3 (N.D. Cal. Aug. 27, 2021); *Genentech, Inc. v. Trustees of the Univ. of*

14  *Penn.*, No. C10-2037-LHK, 2012 WL 424985, at *2 (N.D. Cal. Feb. 9, 2012). Neither of these

15  cases involved a party developing new invalidity theories based on new portions of the prior art

16  that had not been expressly discussed (*or even cited*) in invalidity contentions for obviousness or

17  anticipation arguments. *See Largan*, 2014 WL 6882275 at *5-6 (striking expert testimony that

18  used elements of the prior art not previously disclosed in invalidity contentions).

19  As explained above, nothing in Google's contentions pointed to other portions of the '998

20  patent as disclosing "different techniques" for pairing beyond those cited in the contentions, or

21  put Sonos on notice that Google would rely on any uncited or uncharted techniques. Google

22  made specific disclosures and statements in its invalidity charts that were supposed to set out its

23  invalidity theories. Local Rule 3-3(c). The elements in 10:62-11:6 are distinct from these

24  disclosures, and Google cannot now use these new elements to bolster its invalidity theories. *See*

25  *Largan*, 2014 WL 6882275 at *5-6.

     **C.**    **Google's Previously Undisclosed Prior ArtExhibits Are Not "Further**
26  
27             **Evidentiary Support" And Are Untimely**

28  Google cited two entirely new pieces of prior art in its motion for summary judgment:

1  (1) a copy of the YouTube Remote API that describes the API for the first release of the YouTube
2  Remote System (Dkt. 210-10); and (2) a February 2012 WayBack Machine capture showing that
3  Google updated the YouTube Remote System at least as early as January, 2012 to include a
4  screen selection feature that allowed users to select individual playback devices (Dkt. 211-14).
5  MTS at 7-11.

6  Google does not dispute that neither exhibit was disclosed in its invalidity contentions.
7  Instead, Google argues that it may "rel[y] upon these documents as further evidentiary support for
8  Google's argument that the YouTube Remote System invalidates Claim 13." Opposition at 15
9  (emphasis omitted). The problem for Google is that it uses the two new references as direct
10 evidence that Claim 13 is invalid—not as additional support that the references it previously
11 disclosed render the claim invalid.

12 It is well established that a party cannot add completely new documents as direct evidence
13 that a claim is invalid. *See e.g., ASUS Computer Int'l v. Round Rock Research, LLC*, No. 12-cv-
14 02099 JST, 2014 WL 1463609, at *8-9 (N.D. Cal. Apr. 11, 2014); *Largan*, 2014 WL 6882275, at
15 *6 (finding that a reference is not general background if it is used "in support of a particular claim
16 element being anticipated or obvious"). None of Google's cases suggest otherwise. *See Fujifilm
17 Corp. v. Motorola Mobility LLC*, No. 12-cv-03587-WHO, 2015 WL 757575, at *30-32 (N.D. Cal.
18 Feb. 20, 2015) (holding that additional evidence can be added as **background technology**, but
19 otherwise striking undisclosed references used to prove anticipation or obviousness); *Apple Inc. v.
20 Samsung Elecs., Co., Ltd.*, No. 5:12-cv-0630-LHK, 2014 WL 173409, at *1 (N.D. Cal. Jan. 9,
21 2014) (allowing invalidity references that Samsung **actually disclosed** in its invalidity
22 contentions, but striking systems created by the expert); *Oracle Am., Inc. v. Google Inc.*, No.
23 C10-03561-WHA, 2011 WL 4479305, at *3 (N.D. Cal. Sept. 26, 2011) (allowing additional
24 evidence to be introduced to support existing **infringement** theories); *Illumina*, 2021 WL
25 3847859, at *3 (allowing an expert to provide an example of how a claim **lacked enablement or
26 written description** based on previously disclosed theories).

27 Google is attempting to use its disclosure of the "YouTube Remote" "system" to smuggle
28 in new prior art under the guise that the new prior art is evidence of this "system." Google's logic

would allow it free reign to produce and rely on any number of undisclosed references all throughout the fact discovery period (including now, well more than four months after Google's invalidity contentions were due) so long as Google alleges that the new references relate to some version of its "YouTube Remote" "system." That is not permitted by the Local Rules.

### 1. Google's MSJ Exhibit 14: February 29, 2012 Version of the YouTube Remote System

Google's motion for summary judgment relies on a February 29, 2012 Wayback Machine capture of a website depicting a version of the YouTube Remote System that was allegedly released on January 25, 2012. The 2012 version of the YouTube Remote System is different from the October 14, 2011 version cited in Google's invalidity contentions. Ex. A (Claim Chart) at 1.

As Sonos explained, Exhibit 14 is not mere background. Google relies on Exhibit 14 to show that the prior art allegedly includes a feature that allows a user to "select and control 'one or more paired controlled devices'" that Google did not previously disclose in its invalidity contentions. Google's MSJ at 20. These two different versions of the YouTube Remote System (the "2011 version" cited in its contentions and the "2012 version" disclosed for the first time during summary judgment) support different theories, and are not substitutes for one another. If they were, Google would not have needed this new evidence and would have simply relied on the 2011 version cited in its infringement contentions. In particular, the original 2011 capture and corresponding narrative explanation do not portray a display that allows a user to *select* and control a *particular* paired controlled device. To address this fatal deficiency, Google now improperly relies on newly introduced Exhibit 14 to argue this missing limitation is satisfied. Exhibit 14 should be stricken as new prior art that Google failed to timely disclose. *ASUS Computer*, 2014 WL 1463609 at *8-9.

Google also contends that it is not actually relying on Exhibit 14 as prior art, but is simply using Exhibit 14 to "demonstrate[] that the ability to select an individual playback device was a well-known technique." Opposition at 17-18. That in itself is a new theory not disclosed in the invalidity contentions (made clear by the failure of Google's opposition to cite any place its contentions that alleges this), and thus provides yet another basis to strike the exhibit.

### 2. Google's MSJ Exhibit 10: YouTube Remote API

Google's motion for summary judgment relies on documentation for an Application Programming Interface (API) for the YouTube Remote System as of July 12, 2010, to support Google's invalidity arguments for Limitation 13.5. Google's MSJ Ex. 10; Bhattacharjee MSJ Decl. at ¶180. ███████████████████████████████████████████████████████████████████

Regardless of Google's characterization, Exhibit 10 is used as prior art ████████████████████████████████████████████████████████████████████████████████. Beyond newly-disclosed Exhibit 10, Google points to no other evidence in support of this invalidity theory. Bhattacharjee MSJ Decl. at ¶180. For this reason, Exhibit 10 should be stricken. *See Verinata*, 2014 WL 4100638 at *5 (striking references when the expert "relies on [the reference] as prior art that allegedly renders the asserted claims [invalid]"); *ASUS Computer*, 2014 WL 1463609 at *8-9 (striking prior art references not disclosed in its invalidity contentions).

As with Exhibit 14, Google produced Exhibit 10 for the first time with its MSJ. Google's MSJ Exhibit 10. Google had no reason to withhold this document until this stage in the litigation ████████████████████████████████████████████████████████████████████████████ That makes Google's late disclosure all the more problematic. *IXYS Corp. v Adv. Power Tech. Inc.*, No. C 02-03942 MHP, 2004 WL 1368860, at *2-3 (N.D. Cal. Jun. 16, 2004). Exhibit 10 should be stricken.

### D. Google's Reliance On Undisclosed Or Unmapped Source Code Violates Local Rule 3-3

#### 1. Undisclosed Source Code

Google does not dispute that on the date Google served its invalidity contentions Google had made available for inspection only two versions of source code for its "YouTube Remote"

1  "system" reference: a December 30, 2011 version and a July 12, 2011 version.[4] Opposition at 18-
2  19. Three months later, Google "reproduced" the July 12, 2011 version with no explanation as to
3  how, if at all, this "reproduction" differed from the production Google made with its invalidity
4  contentions. At this time, Google also produced a brand new, never-before-referenced version from
5  November 11, 2010. Sonos moved to strike Google's reliance on these two newly-produced
6  versions because they were not timely disclosed with Google's invalidity contentions and thus
7  amounted to new references.

8  Regarding the "reproduction" of the July 12, 2011 code, Google has now, for the first time,
9  explained what this production is and why Google "reproduced" it: Google asserts that this
10 "reproduction" code is the "same" as the July 12, 2011 code, except that the code was produced in
11 such a way as to preserve the "last modified dates." The last modified dates are necessary metadata
12 that Google needs in order to establish that the code is prior art. That metadata was missing when
13 the contentions were served. Were Google to represent that the "reproduced" source code is
14 identical (save for the last modified dates) to the version it produced with its contentions, Sonos
15 could withdraw its challenge with respect to "reproduced" July 12, 2011 code.



24 In any event, Sonos submits that the proper procedure that would have permitted Google to have

---

[4] Sonos disputes that Google sufficiently articulated in its contentions any theory of invalidity
based on either of these source code versions and on that basis has separately moved strike
Google's reliance on these source code versions. *See* MTS at 11-12, *infra* Section D.2.

1  its expert rely on code not referenced in its contentions would have been for Google to move this
2  Court for leave to amend its contentions, which Google did not do.[5]

3  The November 11, 2010 version is far more troubling and must be stricken. Google offers no explanation as to why this code was not produced with (or even referenced in) its contentions. The best Google can muster is that this code is helpful for its case and evidences even earlier functionality of its ever-shifting YouTube Remote "system." Were this this standard, however, it would completely obliterate Patent L.R. 3-3's requirement to disclose *with the contentions* the references on which Google intends to rely. Parties could then sandbag opponents with belated productions of source code, completely avoiding the obligation to produce that code early in the case and to articulate a theory about how such code invalidates the asserted claims. This is exactly what happened here. Multiple versions of a system are *not* considered the same prior art; each version is treated as its own individual prior art reference. *E.g., In re Epstein*, 32 F.3d 1559, 1563 (Fed. Cir. 1994) (treating different versions of a system as separate prior art references); *Ficep Corp. v. Voortman USA Corp.*, 2017 WL 480753, at *10-11 (D. Md. Feb. 6, 2017) (same). Google cannot add new systems not disclosed in its invalidity contentions, just as it cannot add new prior art. *See ASUS Computer*, 2014 WL 1463609 at *8-9 (striking new prior art not disclosed in invalidity contentions). Accordingly, it is manifestly prejudicial for Google to rely now on a version of its own "YouTube Remote" "system" based on code that is seven months earlier than the code it chose to produce with the contentions.

Sonos explained in its Motion to Strike that it is improper for Google to rely on code that was not produced in its invalidity contentions. MTS at 10; *see also IXYS Corp.*, 2004 WL 1368860, at *2-3; *Good Tech. Corp. v. MobileIron, Inc.*, No. 5:12-cv-05826-PSG, Dkt. 278 (N.D. Cal. April 23, 2015). Google attempts to distinguish these cases by focusing on inconsequential minutiae, Opposition at 21-22, while missing the forest for the trees. Courts have directly stated that if a party, like Google, considers a document "relevant to this action, then Rule 3-4(b) requires

---

[5] Nevertheless, to reduce the issues before the Court, if Google can represent that the content of the files between the "reproduction" of the July 12, 2011 version and the earlier-produced July 12, 2011 version is *identical*, Sonos can withdraw its challenge.

SONOS'S REPLY ISO OF ITS MOTION TO STRIKE
                                      PORTIONS OF GOOGLE'S MSJ AND EXPERT DECL
                                      3:20-CV-06754-WHA

1  [Google] to serve upon [Sonos] a copy of that same document." *IXYS Corp.*, 2004 WL 1368860,
2  at *3. Google also asserts that *MobileIron* is inapposite because the party in *MobileIron* delayed
3  production and concealed production of changes to its source code. Opposition at 21-22. Google
4  ignores that it also produced source code after the Patent Local Rule 3-4 deadline and obfuscated
5  any potential changes to said source code by failing to provide pinpoint citations in its invalidity
6  contentions. Google contends that it merely reproduced previously disclosed code but, as discussed
7  above, such claims are questionable.

### 2. Unmapped Source Code

Regardless of whether some of the source code versions were untimely produced, a different problem permeates Google's contentions: Google's expert relies on theories that were not disclosed in Google's contentions. Google's contentions did not describe how Google believed the source code operated, nor did they even articulate the names of the files that were allegedly responsible for the relevant functionality. The best Google could do in its contentions was to identify top-level folder names in which myriad undescribed source code files resided. From Sonos's perspective, it did not appear that Google was relying on any source code functionality as the contentions did not describe any such functionality. To confirm, Sonos wrote to Google and asked Google to identify the source code it intended to rely on (if it so intended) and to describe the alleged functionality of such source code. Ex. B at 3. Sonos stated that it *would not oppose* a motion by Google for leave to amend its contentions to include this information. *Id.* Google did not identify any code, did not offer any articulation of how this source code allegedly operated, and did not move for leave to amend its contentions.

Now, on summary judgment, by having its expert trace through the source code and articulate theories of how the source code operated and how that operation allegedly maps to the claim elements, Google has presented an invalidity theory that was not set out in its contentions. MTS at 11-12. Google asserts that "pinpoint" citations are unnecessary, but Google's broad disclosures to top-level folders in which myriad source code files reside does not put Sonos on notice as to Google's theories about how that code operated. *Supra*, 3. Surely somewhere between (a) pinpoint citations to code and (b) top-level folder identification sans description, is the level of

1  detail required by the Patent L.R. 3-3.  Wherever this line is, Google's contentions come nowhere
2  close.  On the face of Google's invalidity contentions, citing the name of the folder where source
3  code is stored without any mapping or even a narrative discussion about how Google contends the
4  code within that folder operates ought to serve only to: 1) provide background disclosures; or 2)
5  provide authentication evidence of the images and videos that actually were shown in the
6  contentions.

7  As discussed above, Sonos is not required to guess which invalidity theories Google may
8  pursue beyond what is facially presented in its invalidity contentions.  *Supra*, 2-3.  Nor is Sonos
9  required to serve letter after letter posing interrogatories to Google concerning Google's intention
10  (or not) to rely on source code. *Karl Storz Endoscopy-Am.*, 2017 WL 5257001, at *6 ("It is not
11  KSEA's burden to conduct discovery to clarify Stryker's invalidity contentions.").  Patent Local
12  Rule 3-3(c) requires citation "specifically within the prior art reference, not merely to the entire
13  document or some general element therein." *Avago Techs. Gen. IP PTE Ltd. v. Elan*
14  *Microelectronics Corp.*, No. C04-05385 (JW), 2007 WL 2103896, at *2 (N.D. Cal., Jul. 20, 2007).
15  Dr. Bhattacharjee's reliance on the newly presented mapping between the source code and the claim
16  language thus constitutes an undisclosed theory and ought to be struck.

17  Google's final appeal to cure its deficiencies is to put the onus on Sonos for not proactively
18  fixing Google's mistakes.  Opposition at 24.  Contrary to Google's assertions, Sonos did make
19  multiple attempts to have Google cure its deficient invalidity contentions, including meet and
20  confers.  MTS at 2-3.  Sonos provided examples of how Google's contentions were deficient, and
21  it even offered Google the opportunity to file an unopposed motion to amend its contentions.  *Id.*
22  at 2.  Sonos specifically identified Google's overly broad source code citations as a deficiency that
23  needed to be addressed.  Ex. B at 3; Ex. E at 1.  Sonos also informed Google that it would move to
24  strike any new theories that Google may raise that are not disclosed in the contentions.  Ex. B at 3
25  ("Failing this, Sonos intends to request the Court preclude Google from advancing any invalidity
26  theory, whether through an expert or otherwise, that is not set out in these contentions."); Ex. E
27  ("…we simply asked if Google intended to move for leave to amend and stated our intention to, in
28  the future, request the Court to preclude Google from advancing any theory that is not set out in

these contentions."). Google, in turn, failed to correct its systematic deficiencies and would not agree to amend its contentions. MTS at 2. Failing to make any progress, Sonos accepted Google's invalidity contentions on their face. *Id.* at 3. Sonos made numerous attempts to have Google address its deficient source code citations before turning to this Court for relief in a Motion to Strike.

## III. CONCLUSION

Sonos respectfully requests that the Court exclude the portions of Google's Motion for Summary Judgment and accompanying expert declaration requested in its Motion to Strike.

Dated: May 12, 2022

By: */s/ Alyssa Caridis*

Clement Seth Roberts
Bas de Blank
Alyssa Caridis
Evan D. Brewer

ORRICK, HERRINGTON & SUTCLIFFE LLP

George I. Lee (*pro hac vice*)
Sean M. Sullivan (*pro hac vice*)
Rory P. Shea (*pro hac vice*)
J. Dan Smith III (*pro hac vice*)
Michael P. Boyea (*pro hac vice*)
Cole Richter (*pro hac vice*)
Jae Y. Pak (*pro hac vice*)
Matthew J. Sampson (*pro hac vice*)
David Grosby (*pro hac vice*)

LEE SULLIVAN SHEA & SMITH LLP

*Attorneys for Sonos, Inc.*