CLEMENT SETH ROBERTS (STATE BAR NO. 209203)
croberts@orrick.com
BAS DE BLANK (STATE BAR NO. 191487)
basdeblank@orrick.com
ALYSSA CARIDIS (STATE BAR NO. 260103)
acaridis@orrick.com
EVAN D. BREWER (STATE BAR NO. 304411)
ebrewer@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:   +1 415 773 5700
Facsimile:   +1 415 773 5759

SEAN M. SULLIVAN (admitted *pro hac vice*)
sullivan@ls3ip.com
MICHAEL P. BOYEA (admitted *pro hac vice*)
boyea@ls3ip.com
COLE RICHTER (admitted *pro hac vice*)
richter@ls3ip.com
LEE SULLIVAN SHEA & SMITH LLP
656 W Randolph St., Floor 5W
Chicago, IL 60661
Telephone:   +1 312 754 0002
Facsimile:   +1 312 754 0003

*Attorneys for Defendant Sonos, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| GOOGLE LLC,<br><br>        *Plaintiff*,<br><br>    v.<br><br>SONOS, INC.,<br><br>        *Defendant*. | Case No. 3:20-cv-06754-WHA<br>Related to Case No. 3:21-cv-07559-WHA<br><br>**SONOS, INC.'S MOTION TO REALIGN THE PARTIES**<br><br>Date: September 28, 2022<br>Time: 2:00 p.m.<br>Place: Courtroom 12, 19th Floor<br>Judge: Hon. William Alsup<br><br>Second Amended Complaint Filed:<br>February 4, 2022 |

# TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION .................................................................................................................. 1

II. STATEMENT OF RELEVANT FACTS ............................................................................. 2

III. A MOTION TO REALIGN THE PARTIES IS GOVERNED BY THE PRIMARY PURPOSE TEST AND *PLUMTREE* FACTORS ............................................................. 4

IV. SONOS SHOULD BE DESIGNATED AS PLAINTIFF UNDER *PLUMTREE* ................. 5

   A. Factor 1: Sonos, not Google, first moved to resolve the issues in these cases through litigation. ........................................................................................................................ 7

   B. Factor 2: Sonos is the natural plaintiff. ................................................................... 8

   C. Factor 3: Permitting Sonos to present its case-in-chief first will aid the jury. ...................... 9

   D. Factor 4: Realigning the parties will mitigate the effect of Google's rush to the courthouse. ..................................................................................................................... 10

   E. Factor 5: Google's rationale in bringing the declaratory judgment action could not have involved a fear that Sonos would sit on its rights. ................................................... 11

   F. Factor 6: The Patent Local Rules and Joint Case Management statement favor realignment. ..................................................................................................................... 11

V. CONCLUSION .................................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allegro Ventures, Inc. v. Almquist*,
  No. 11-CV-2009-L WVG, 2013 WL 3864329 (S.D. Cal. July 24, 2013) .................... 5, 6, 7, 8

*City of Indianapolis v. Chase Nat'l Bank of N.Y.*,
  314 U.S. 63 (1941) ............................................................................................................... 4

*Commc'ns Test Design, Inc. v. Contec, LLC*,
  952 F.3d 1356 (Fed. Cir. 2020) ........................................................................................ 1, 7

*Dolch v. United Cal. Bank*,
  702 F.2d 178 (9th Cir. 1983) ............................................................................................... 4

*FCE Benefits Adm'rs, Inc. v. Training, Rehab. & Dev. Inst., Inc.*,
  No. 15-CV-01160-JST, 2016 WL 4426897 (N.D. Cal. Aug. 22, 2016) ................................ 5

*Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*,
  No. C 03-01431 SBA (EDL), 2006 WL 1646110 (N.D. Cal. June 12, 2006) .................. 5, 7

*Hologic, Inc. v. Minerva Surgical, Inc.*,
  325 F. Supp. 3d 507 (D. Del. 2018) ..................................................................................... 8

*Hologic, Inc. v. Minerva Surgical, Inc.*,
  No. 1-15-cv-01031-JFB-SRF, Dkt. 508 (D. Del. Aug. 8, 2018) ........................................... 8

*Idenix Pharms. LLC v. Gilead Sciences, Inc.*,
  No. 1:14-cv-00846-LPS, Dkt. 539 (D. Del. Feb. 27, 2017) .................................................. 8

*Kerr Corp. v. N. Am. Dental Wholesalers, Inc.*,
  No. SACV 11-0313 DOC CWX, 2011 WL 4965111 (C.D. Cal. Oct. 18, 2011) .................. 8

*Minerva Surgical, Inc. v. Hologic, Inc.*,
  141 S. Ct. 2298 (2021) .......................................................................................................... 8

*Plexxikon Inc. v. Novartis Pharms. Corp.*,
  No. 4:17-cv-04405-HSG, Dkt. 488 (N.D. Cal. June 12, 2021) ............................................. 9

*Plumtree Software, Inc. v. Datamize, LLC*,
  No. C 02-5693 VRW, 2003 WL 25841157 (N.D. Cal. Oct. 6, 2003) ........................... *passim*

*Rimini St., Inc. v. Oracle Int'l Corp.*,
  No. 2:14-CV-01699-LRH-DJA, 2021 WL 4037482 (D. Nev. Sept. 2, 2021) ................... 6, 8

*Scotts Co. LLC v. Seeds, Inc.*,
  688 F.3d 1154 (9th Cir. 2012) .......................................................................................... 4, 5

**Other Authorities**

Patent L.R. 3-1 ................................................................................................................................ 11

Patent L.R. 3-3 ................................................................................................................................ 11

Patent L.R 3–5................................................................................................................................. 11

Patent L.R. 3-8 ................................................................................................................................ 11

Patent L.R. 3-9 ................................................................................................................................ 11

Patent L.R. 4-5 ................................................................................................................................ 11

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS: PLEASE TAKE NOTICE that on September 28 at 2:00 p.m., or as soon thereafter as may be heard before the Honorable Judge William Alsup in Courtroom 12 on the 19th Floor of the United States District Court for the Northern District of California, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Sonos, Inc. ("Sonos") will, and hereby does, move this Court to realign the parties in this action. This motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, all documents in the Court's file, and such other written or oral evidence and argument as may be presented at or before the time this motion is heard by the Court.

**STATEMENT OF THE ISSUES TO BE DECIDED AND RELIEF REQUESTED**

Sonos requests that this Court exercise its discretion to realign the parties in this action for purposes of the upcoming showdown trial, designating Sonos, Inc., as "Plaintiff" and Google LLC as "Defendant."

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

There are two actions pending before this Court covering the same Sonos patent claims. The lower numbered case is a declaratory judgment action that Google filed the night before it knew Sonos intended to file for infringement in another district. The Court previously held that this "ramshackle" declaratory judgment complaint was thrown together at the last moment in an improper effort to anticipate and preempt Sonos's complaint. Dkt. 36 at 3-4; *Commc'ns Test Design, Inc. v. Contec, LLC*, 952 F.3d 1356, 1364 (Fed. Cir. 2020).

As a result of that holding, Sonos's affirmative infringement case proceeded in another district while this case remained stayed. In that case, the parties litigated claim construction and exchanged required discovery disclosures, all of which were premised on Sonos being the plaintiff. Sonos's suit was eventually transferred to this Court, at which point the Court unstayed Google's declaratory judgment action, with the cases proceeding in parallel ever since. Dkt. 57. On October 8, 2021, the Court ordered a patent "showdown" trial. Dkt. 68. Because Google's declaratory

1  judgment action is the lower numbered action, and the two cases are consolidated, the showdown
2  order issued only in the declaratory judgment action.

3  Both before and after the transfer, Sonos has acted as plaintiff in both cases. Sonos initiated
4  these cases by drafting an 87-page complaint explaining its infringement theories and providing
5  Google notice of its intent to file. As required under this District's Patent Local Rules, and like
6  every other patent plaintiff, Sonos has gone first in disclosing its infringement and damages
7  contentions and in other pretrial exchanges. At the upcoming showdown trial Sonos will be
8  attempting to prove liability for willful infringement and damages while Google will be trying to
9  prove its invalidity *defenses*. These factors, and the others discussed below, make Sonos the
10 "natural" plaintiff. Indeed, all the factors that courts consider in evaluating realignment favor
11 designating Sonos as the Plaintiff for purposes of the upcoming showdown trial.

12 **II.    STATEMENT OF RELEVANT FACTS**

13 *Sonos Informs Google That It Is Suing Google For Patent Infringement, And Google*
14 *Preempts The Suit With An Anticipatory Declaratory Judgment Action.*

15 Sonos initiated these cases by drafting an 87-page infringement complaint, which it
16 provided to Google in an email noting that Sonos would file the complaint the following day in the
17 Western District of Texas. Dkt. 36 at 1-2. Mere hours later, at 11:41 p.m., Google filed a 13-page
18 complaint for declaratory relief of noninfringement of the exact same patents in the Northern
19 District of California. *Id.* As the Court noted, "the manifest purpose of Google's suit was to beat
20 the clock and defeat the patent owner's choice of venue." *Id.* at 3. The Court also noted that
21 "Google's complaint utterly fails to meet the standard for obtaining declaratory relief,"
22 "stumbl[ing] under this minimal burden" and "offer[ing] *no allegation of fact* in support of the
23 claims of noninfringement." *Id.* It was accordingly "manifest that Google and its attorneys threw
24 this ramshackle complaint together in a matter of hours just to beat the clock and try to 'file first'
25 in its hometown" with the idea that it would later amend the complaint to make up for its
26 deficiencies. *Id.* at 4.

27 While Google's declaratory judgment action remained stayed, Sonos and Google litigated
28 Sonos's affirmative infringement action in the Western District for Texas for approximately one

year, proceeding to claim construction. After the Federal Circuit directed that Sonos's affirmative infringement action be transferred to this District, the Court vacated the stay, Dkt. 57, and related the cases, Dkt. 64. Accordingly, both Sonos's affirmative infringement action and Google's defensive declaratory judgment action are currently pending before the Court. This motion is being filed in Google's declaratory judgment action (20-cv-6754) because in that action Sonos is the nominal defendant. But the parties are litigating and moving both cases toward trial in parallel. *See, e.g.*, Dkt. 102 at 11, 13.

These two cases involve near-perfectly overlapping claims and counterclaims:

| **Affirmative Infringement Action Complaint (Sonos)** | **Declaratory Judgment Action Complaint (Google)** | **Counterclaims to Declaratory Judgment Action (Sonos)** |
|---|---|---|
| 3:21-cv-7559 WHA, Dkt. 211 | 3:20-cv-6754-WHA, Dkt. 125 | 3:20-cv-6754-WHA, Dkt. 170 |
| Claim I: Infringement of '615 Patent | Count I: Declaration of Noninfringement of '615 Patent<br><br>Count II: Declaration of Invalidity of '615 Patent | Counterclaim I: Infringement of '615 Patent |
| Claim II: Infringement of '033 Patent | Count III: Declaration of Noninfringement of '033 Patent<br><br>Count IV: Declaration of Invalidity of '033 Patent | Counterclaim II: Infringement of '033 Patent |
| Claim III: Infringement of '966 Patent | Count V: Declaration of Noninfringement of '966 Patent<br><br>Count VI: Declaration of Invalidity of '966 Patent | Counterclaim III: Infringement of '966 Patent |
| Claim IV: Infringement of '885 Patent | Count VII: Declaration of Noninfringement of '885 Patent<br><br>Count VIII: Declaration of Invalidity of '885 Patent | Counterclaim IV: Infringement of '885 Patent |
|  | Count IX: Breach of Contract |  |
|  | Count X: Conversion |  |

1    All of Sonos's claims and counterclaims seek an affirmative finding of Google's liability for infringement. Google's claims, by contrast, seek to establish Google's defenses to infringement, including non-infringement, invalidity, and claims related to its alleged joint ownership rights over a subset of the patents-in-suit. The Court should note, in this regard, that Google's claims for Breach of Contract and Conversion are *not* at issue in the showdown trial and do not even relate to the patent at issue in that trial.[1]

*Sonos Informs Google And The Court That It Intends To Seek Re-Designation As Plaintiff*

On January 6, 2022, the parties filed the operative Joint Case Management Statement, in which Sonos explained why the declaratory judgment action and affirmative infringement action should be consolidated, with the affirmative infringement action identified as the lead case and Sonos designated as the plaintiff in the consolidated action. Dkt. 102 at 12. Google noted that while it did "not necessarily oppose consolidation," it "disagree[d]" that Sonos is the "true plaintiff" and "believes that the DJ action should remain as the lead case." *Id.* at 13. At the January 13, 2022 Case Management Conference, in response to that dispute, the Court stated that it was "premature" to determine at that time "who gets to go first at trial," and Sonos agreed that "[w]e will brief it later." 3:21-cv-7559 WHA, Dkt. 142 at 28. This is that brief.

The patent showdown trial is scheduled to begin on October 3, 2022. Dkt. 269. On summary judgment, the Court narrowed the issues to be tried at the showdown trial to: (1) Sonos's claim of willful infringement of claim 1 of the '885 patent; (2) Sonos's claim of damages for infringement of claim 1 of the '885 patent; and (3) Google's defense of invalidity of the '885 patent.

### III. A MOTION TO REALIGN THE PARTIES IS GOVERNED BY THE PRIMARY PURPOSE TEST AND *PLUMTREE* FACTORS

"Federal courts have broad authority to 'look beyond the pleadings, and arrange'—or realign—'the parties according to their sides in the dispute.'" *Scotts Co. LLC v. Seeds, Inc.*, 688 F.3d 1154, 1156 (9th Cir. 2012) (quoting *City of Indianapolis v. Chase Nat'l Bank of N.Y.*, 314 U.S.

---

[1] These claims are, in reality, equivalent to affirmative defenses insofar as they seek to establish that Google is not liable for infringement by virtue of its alleged right to the inventions claimed in certain of the asserted patents.

1  63, 69 (1941)). Indeed, "[a] complaint's alignment of the parties 'is not binding on the courts.'"
2  *Id.* at 1157 (quoting *Dolch v. United Cal. Bank*, 702 F.2d 178, 181 (9th Cir. 1983)). Instead, courts
3  "must align for jurisdictional purposes those parties whose interests coincide respecting the
4  'primary matter in dispute.'" *Id.* (citation omitted). The Ninth Circuit has referred to this as the
5  "primary purpose" test. *Id.* at 1157-58.

6  Although *Scotts* involved the standard for party realignment where it would defeat diversity
7  jurisdiction, *see id.* at 1156-57, courts in this District have routinely applied variations of the
8  "primary purpose" test to evaluate motions to realign in other contexts. *See, e.g.*, *FCE Benefits*
9  *Adm'rs, Inc. v. Training, Rehab. & Dev. Inst., Inc.*, No. 15-CV-01160-JST, 2016 WL 4426897, at
10  *2 (N.D. Cal. Aug. 22, 2016) (noting use of the "primary purpose" test by courts in this district
11  where federal subject matter jurisdiction was not at issue).

12  The leading case in this district on realignment for purposes other than jurisdiction is
13  *Plumtree Software, Inc. v. Datamize, LLC*, No. C 02-5693 VRW, 2003 WL 25841157 (N.D. Cal.
14  Oct. 6, 2003). Like *Scotts*, *Plumtree* determined whether realignment was warranted by applying
15  the "primary purpose" test and looking to several key factors. 2003 WL 25841157, at *3. The
16  *Plumtree* factors include "1) 'the first party to sue on the issue'; (2) the 'natural plaintiff' in the
17  case, as defined by who raises 'the affirmative claim' and who bears 'the burden of proof'; (3)
18  whether realignment 'may aid in the logical presentation of the evidence at trial'; … (4) whether
19  realignment 'mitigates the effects of … evident forum-shopping[]'"; (5) "the 'rationale for bringing
20  a declaratory judgment action' and [(6)] consistency with 'the Patent Local Rules and the parties'
21  joint case management statement.'" *FCE Benefits*, 2016 WL 4426897, at *2, *2 n.1 (quoting
22  *Plumtree*, 2003 WL 25841157, at *2-5); *see also Fresenius Med. Care Holdings, Inc. v. Baxter*
23  *Int'l, Inc.*, No. C 03-01431 SBA (EDL), 2006 WL 1646110, at *1-3 (N.D. Cal. June 12, 2006)
24  (distinguishing *Plumtree* but similarly examining first-to-file status, the burden of proof, and
25  whether realigning the parties would make the issues in the case clearer for the jury).

26  **IV.   SONOS SHOULD BE DESIGNATED AS PLAINTIFF UNDER *PLUMTREE***

27  In *Plumtree*, the patent holder sued the alleged infringer in the District of Montana. 2003
28  WL 25841157, at *1. The alleged infringer moved to dismiss for lack of personal jurisdiction or

1    in the alternative to transfer the case to the Northern District of California. *Id.* During the pendency
2    of that motion, the alleged infringer filed an action in the Northern District of California, requesting
3    a declaratory judgment that it did not infringe any valid and enforceable claim of the asserted patent.
4    *Id.* The infringement action filed in the District of Montana was then dismissed for lack of personal
5    jurisdiction, and the patent holder answered the Northern District of California declaratory
6    judgment action and counterclaimed for patent infringement. *Id.* The patent holder then moved to
7    realign the parties, so that the patent holder would be designated as plaintiff and the alleged
8    infringer as defendant. *Id.*

9    The *Plumtree* court granted the patent holder's motion for realignment, concluding—after
10   examining six relevant factors—that "the primary purpose of th[e] litigation is the adjudication of
11   [the patent holder's] infringement claim," and that realignment was therefore warranted. *Id.* at *5.
12   And "[d]espite the fact that [the alleged infringer] may have created a substantial ancillary dispute
13   by filing a declaratory judgment action, the court" concluded that it "must align the parties in
14   keeping with the primary dispute concerning infringement." *Id.* at *3.

15   Other courts within the Ninth Circuit have reached similar results in analogous cases. For
16   example, in a copyright infringement dispute between Oracle as rights-holder and Rimini as
17   accused infringer, the court examined the parties' remaining claims prior to trial and granted
18   realignment after concluding that "the primary dispute is whether Rimini committed copyright
19   infringement when it provided third-party support services for Oracle software," and that "Oracle
20   is the more 'natural' plaintiff in th[e] case." *Rimini St., Inc. v. Oracle Int'l Corp.*, No. 2:14-CV-
21   01699-LRH-DJA, 2021 WL 4037482, at *3 (D. Nev. Sept. 2, 2021). Similarly, in *Allegro Ventures,*
22   *Inc. v. Almquist*, a court granted realignment in a declaratory judgment action brought under
23   maritime law, where the named defendant's counterclaim made clear that his "affirmative
24   positions" seeking to establish liability "make him more suitable to be in the plaintiff position,"
25   while the named "Plaintiff's defensive positions make it more suitable" to be designated as
26   defendant. No. 11-CV-2009-L WVG, 2013 WL 3864329, at *1-2 (S.D. Cal. July 24, 2013).

Because "the primary purpose of this litigation is the adjudication of [Sonos's] infringement claim," *Plumtree*, 2003 WL 25841157, at *5, and because all of the *Plumtree* factors favor realignment, this Court should exercise its discretion and designate Sonos as the plaintiff.

### A. Factor 1: Sonos, not Google, first moved to resolve the issues in these cases through litigation.

Sonos "was the original plaintiff in this dispute," *Plumtree*, 2003 WL 25841157, at *3, in all substantive respects. Google only filed its declaratory judgment action after being put on notice of Sonos's intent to sue Google for patent infringement. As in *Plumtree*, Google "appears" to have "filed its suit against [Sonos] less as a result of its own volition than as a response to the suit" that Sonos planned to "file[] against it in the" Western District of Texas. *Id.* This Court recognized that the same pattern was at issue here when it held that "the manifest purpose of Google's [declaratory judgment] suit was to beat the clock and defeat the patent owner's choice of venue" and that "Google's [original] complaint utterly fail[ed] to meet the standard for obtaining declaratory relief." Dkt. 36 at 3.

It is true that in *Plumtree*, the alleged infringer waited several months after the filing of the infringement complaint to file its declaratory judgment action, 2003 WL 25841157, at *3, while Google here acted more decisively to attempt to "deprive [Sonos] of its choice of forum," *id.* at *5. But that factual distinction should make no difference. Indeed, declining to realign the parties based on the speed with which Google threw together a last-minute (and facially inadequate) pleading in order to preempt Sonos's own filing would tend to undermine this factor's focus on which party *raised* the dispute. Put differently, the reason that courts recognize the "anticipatory suit" exception to the first filed doctrine is precisely to avoid rewarding a party for racing to the courthouse to file a declaratory judgment action. *See Commc'ns Test Design, Inc.*, 952 F.3d at 1364-65. Treating Google as the "first mover" where, as here, it filed suit *in response* to Sonos saying it was about to file suit, would implicate that same principle and ignore the fact that Sonos (in reality) was the first party to take action to bring the infringement dispute into court.

Sonos's notice to Google of its intent to file its affirmative infringement case also distinguishes this case from *Fresenius*. In *Fresenius*, the court noted that the first *Plumtree* factor disfavored realignment because "[a]though it threatened to, [the declaratory judgment defendant] did not choose to file this lawsuit to assert any of its patents," and it was thus only the declaratory judgment plaintiff who had "file[d] this declaratory judgment action to clear the air." 2006 WL 1646110, at *2. But here, Sonos made every effort to file first and resolve Google's infringement, and was only foiled by Google's anticipatory suit. Indeed, the court in *Fresenius* distinguished *Plumtree* in part on the ground that the patentee in *Fresenius* "*had not earlier sought to select a different forum.*" *Id.* at *3 (emphasis added). Here, Sonos first moved to resolve the infringement claims at issue in this case and sought to select a different forum before Google raced to the courthouse to preempt it.

### B. Factor 2: Sonos is the natural plaintiff.

Sonos is "more properly considered the natural plaintiff in this action" because Sonos "is the party asserting the affirmative claim of infringement." *Plumtree*, 2003 WL 25841157, at *3. Just as in *Plumtree*, Google's "declaratory action for noninfringement and invalidity is a defense to [Sonos's] infringement counterclaim[,]" *id.*, and to Sonos's parallel, affirmative infringement claims. *See supra* 3 (chart aligning claims). As the Court in *Plumtree* noted, "noninfringement and invalidity" are defined by statute as "defenses to patent infringement," *id.* (citing 35 U.S.C. § 282 (2003)). For that reason, Sonos's "affirmative position makes the position of plaintiff more appropriate for it, while [Google's] defensive position makes the position of defendant more appropriate for it." *Id.*; *see also Rimini St.*, 2021 WL 4037482, at *3 ("Rimini's declaratory judgment action for noninfringement is essentially a defense to Oracle's copyright infringement claims. Oracle's affirmative position therefore makes it the more appropriate plaintiff while Rimini's defensive position makes it the more appropriate defendant.").

Even cases that have distinguished *Plumtree* recognize that realignment is appropriate where the "parties [] seek judgments that are the mirror opposites of each other." *Kerr Corp. v. N. Am. Dental Wholesalers, Inc.*, No. SACV 11-0313 DOC CWX, 2011 WL 4965111, at *3 (C.D. Cal. Oct. 18, 2011) (discussing *Plumtree*). In the words of the *Kerr* court, *Plumtree* "adopted the

- 8 -

SONOS'S MOTION TO REALIGN THE PARTIES
3:20-CV-06754-WHA

1  common-sense rule that where a plaintiff seeks declaratory relief that it is *not liable* and the
2  defendant counterclaims that plaintiff *is liable*, it is more logical to realign the parties so that the
3  defendant becomes the plaintiff." *Id.*; *see also Allegro Ventures*, 2013 WL 3864329, at *2 (where
4  plaintiff seeks declaratory relief of non-liability and defendant counterclaims that plaintiff is liable
5  on the same question, "[t]hese positions suggest that Defendant's affirmative positions make him
6  more suitable to be in the plaintiff position, and Plaintiff's defensive positions make it more suitable
7  to be in the defendant position").

8  Courts also routinely treat a party asserting patent infringement as the plaintiff even where
9  the issue of infringement is resolved prior to trial.  For example, in *Minerva Surgical, Inc. v.
10 Hologic, Inc.*, the district court granted summary judgment of infringement before proceeding to a
11 trial on damages.  141 S. Ct. 2298, 2304 (2021) (citing *Hologic, Inc. v. Minerva Surgical, Inc.*, 325
12 F. Supp. 3d 507, 524-25, 532 (D. Del. 2018)).  Although infringement had already been determined,
13 the court proceeded with the patentee presenting its case-in-chief first. *See Hologic, Inc. v. Minerva
14 Surgical, Inc.*, No. 1-15-cv-01031-JFB-SRF, Dkt. 508 at 380:12-14 (D. Del. Aug. 8, 2018) ("The
15 plaintiff [patentee] has the burden of proof, so the plaintiff gets to go first.").  Similarly, in *Idenix
16 Pharmaceuticals LLC v. Gilead Sciences, Inc.*, the court also allowed patentee to present evidence
17 first even when infringement was no longer at issue. *See* No. 1:14-cv-00846-LPS, Dkt. 539 at
18 206:14-16 (D. Del. Feb. 27, 2017) ("Idenix will first introduce its evidence that it believes supports
19 its claims for willful infringement and for damages."); *accord Plexxikon Inc. v. Novartis Pharms.
20 Corp.*, No. 4:17-cv-04405-HSG, Dkt. 488 at 9:2-15 (N.D. Cal. June 12, 2021) (denying alleged
21 infringer's request for bifurcation and ordering that patentee would proceed first with "case-in-
22 chief" consisting of "willful infringement and damages," followed by alleged infringer's "case-in-
23 chief on validity").  Cases like *Idenix* and *Plexxikon* are highly analogous to the upcoming
24 showdown trial, at which Sonos will present its affirmative case (and bear the burden of proof) on
25 willful infringement and damages, while Google will present its *defense* of invalidity.

26 **C. Factor 3: Permitting Sonos to present its case-in-chief first will aid the jury.**

27 At the showdown trial, the jury will be asked to determine whether Google willfully
28 infringed claim 1 of the '885 patent, and to determine damages for infringement of claim 1 of the

1    '885 patent—both issues on which Sonos bears the burden of proof. Sonos should, therefore, be
2    the plaintiff and go first. "To require [the patentee] to present second might invite juror confusion
3    on the issue of burden of proof, as [the patentee] essentially would be put in the position of rebutting
4    [the alleged infringer's] defensive claims." *Plumtree,* 2003 WL 25841157, at *5. The same is true
5    here. It makes more sense for Sonos to present its "affirmative case" for liability first, "rather than
6    [Google] presenting the case for" *non*-liability "first." *Id.*; *see supra* 9 (examples of cases where
7    patentee remained plaintiff and presented its case first at trial regardless of a pretrial finding of
8    infringement).

9    Indeed, Google acknowledges in its bifurcation motion that Sonos proceeding first is the
10   natural and conventional order of the showdown trial: "Without bifurcation, conventionally, Sonos
11   would begin its case-in-chief by presenting evidence of willful infringement and damages. Google
12   will then begin its case-in-chief by addressing invalidity and rebutting willful infringement and
13   damages." Dkt. 330 at 8. Sonos agrees.[2]

**D. Factor 4: Realigning the parties will mitigate the effect of Google's rush to the courthouse.**

In this case, as in *Plumtree*, the alleged infringer filed a declaratory judgment action and went "to considerable lengths to deprive [the patentee] of its choice of forum … and to have these issues tried in the Northern District of California." 2003 WL 25841157, at *5. For that reason, the court noted that it was "equitable to allow [the patentee] to retain its status as plaintiff, despite the loss of its choice of forum." *Id.* The same is true here. *See* Dkt. 36 at 3 ("the manifest purpose of Google's [declaratory judgment] suit was to beat the clock and defeat the patent owner's choice of venue"), 5 (finding that Google's filing was a "litigation gimmick, to anchor venue with a bare bones complaint and then fix it up by amendment"). The Court should not reward that "litigation gimmick" by allowing Google to rely upon it to invert the proper roles of the parties.

Finally, this factor favors Sonos *regardless* of the fact that the Federal Circuit found that Sonos's suit should be transferred to this district. If, for example, Google had waited to see if Sonos

---

[2] Sonos will separately oppose Google's bifurcation motion.

filed when it said it would (or had Google taken the time it needed to formulate a proper declaratory judgment complaint), Sonos's Texas complaint would have been the first filed action and—after being transferred to this district—would be the lead case. Put differently, nothing about making Sonos the plaintiff would "reward" Sonos for filing in Texas or losing the venue fight. But declining to make Sonos the plaintiff on the ground that Google managed to front run Sonos's complaint *would* reward Google for that behavior.

### E. Factor 5: Google's rationale in bringing the declaratory judgment action could not have involved a fear that Sonos would sit on its rights.

*Plumtree* also discussed the fact that the "usual rationale for bringing a declaratory judgment action" is to "relieve potential defendants from the Damoclean threat of impending litigation which a harassing adversary might brandish, while initiating suit at his leisure—or never." 2003 WL 25841157, at *4 (citation omitted). But that "basic rationale for declaratory judgment" was "inapposite" where the patent holder "had actually brought suit at the time Plumtree filed the declaratory judgment action." *Id.* Here, while Google filed its declaratory judgment action "a matter of hours" ahead of Sonos's affirmative case, it only did so after Sonos had put Google on notice of Sonos's plan to file an infringement suit the following day. Dkt. 36 at 3. Thus, no "'Damoclean' threats" hung over Google at the time it filed the declaratory judgment action. *Plumtree*, 2003 WL 25841157, at *4.

### F. Factor 6: The Patent Local Rules and Joint Case Management statement favor realignment.

*Plumtree* also explained that realignment was appropriate because the District's "Patent Local Rules and the parties' joint case management statement" both treated the patent holder "as a plaintiff would be treated." 2003 WL 25841157, at *5. The same is true here.

Under this District's Patent Local Rules, "[n]o matter whether the patent holder asserts infringement claims first, or whether he does so in response to a declaratory action, Pat LR 3–5 essentially provides for the same sequence of disclosures." *Id.* For that reason, "[t]he Patent Local Rules seem to treat the patent holder as the putative plaintiff in either situation, for the purposes of disclosures and document production; it therefore is consistent with the spirit of those rules to treat [the patent holder] as the plaintiff in the remainder of the action." *Id.* Accordingly, in this case,

1   the parties have treated Sonos as plaintiff throughout discovery. They have proceeded under the
2   Patent Local Rules with Sonos first disclosing its affirmative infringement and damages
3   contentions, and Google then disclosing its responsive invalidity and damages contentions. *See*
4   Pat. L.R. 3-1, 3-3, 3-8, 3-9. That is also consistent with the Patent Local Rules' provision that claim
5   construction briefing opens and closes with briefs from "the party claiming patent infringement,"
6   Pat. L.R. 4-5, a procedure that applied in this case. *See* Dkts. 184, 200, 202; *cf. Plumtree*, 2003
7   WL 25841157, at *5 (noting that "[t]he joint case management statement … treats [the patent
8   holder] as a plaintiff would be treated" insofar as it "allows [the patent holder] … to present first at
9   the upcoming *Markman* hearing"). There is no reason for the jury to be asked to hear evidence and
10  argument in the *opposite* order at the showdown trial.

11  Similarly, the parties' Joint Case Management Statement positions Sonos as the "natural"
12  plaintiff. The Statement in effect acknowledges that Sonos's affirmative infringement action is the
13  same as the declaratory judgment action. *See, e.g.*, Dkt. 102 at 11 ("Given the overlap of issues,
14  the Parties propose that the same dates and schedules set forth in those Orders also apply to" both
15  cases); 13 (similar). Unsurprisingly, given this focus and the nature of this dispute, the Statement
16  also reflects that the overwhelming majority of damages sought in this case are damages that Sonos
17  seeks from Google. *See id.* at 14.

18  **V.    CONCLUSION**

19  The Court should grant Sonos, Inc.'s Motion to Realign the Parties and make it clear that
20  Sonos will be the plaintiff for purposes of the upcoming showdown trial.

Dated: August 31, 2022

By: */s/ Clement Seth Roberts*

Clement Seth Roberts
Bas de Blank
Alyssa Caridis
Evan D. Brewer

ORRICK, HERRINGTON & SUTCLIFFE LLP

George I. Lee (admitted *pro hac vice*)
Sean M. Sullivan (admitted *pro hac vice*)
Rory P. Shea (admitted *pro hac vice*)
J. Dan Smith III (admitted *pro hac vice*)
Michael P. Boyea (admitted *pro hac vice*)
Cole Richter (admitted *pro hac vice*)
Jae Y. Pak (admitted *pro hac vice*)
Matthew J. Sampson (admitted *pro hac vice*)
David Grosby (admitted *pro hac vice*)

LEE SULLIVAN SHEA & SMITH LLP

*Attorneys for Sonos, Inc.*