CLEMENT SETH ROBERTS (STATE BAR NO. 209203)
croberts@orrick.com
BAS DE BLANK (STATE BAR NO. 191487)
basdeblank@orrick.com
ALYSSA CARIDIS (STATE BAR NO. 260103)
acaridis@orrick.com
EVAN D. BREWER (STATE BAR NO. 304411)
ebrewer@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:     +1 415 773 5700
Facsimile:     +1 415 773 5759

SEAN M. SULLIVAN (admitted *pro hac vice*)
sullivan@ls3ip.com
COLE B. RICHTER (admitted *pro hac vice*)
richter@ls3ip.com
LEE SULLIVAN SHEA & SMITH LLP
656 W Randolph St., Floor 5W
Chicago, IL 60661
Telephone:     +1 312 754 0002
Facsimile:     +1 312 754 0003

*Attorneys for Sonos, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA,

SAN FRANCISCO DIVISION

| | |
|---|---|
| GOOGLE LLC,<br><br>    Plaintiff and Counter-defendant,<br><br>    v.<br><br>SONOS, INC.,<br><br>    Defendant and Counter-claimant. | Case No. 3:20-cv-06754-WHA<br>Related to Case No. 3:21-cv-07559-WHA<br><br>**SONOS, INC.'S OPPOSITION TO GOOGLE LLC'S MOTION FOR LEAVE TO AMEND INVALIDITY CONTENTIONS PURSUANT TO PATENT L.R. 3-6** |

**PUBLIC REDACTED VERSION**

# **TABLE OF CONTENTS**

TABLE OF CONTENTS...................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. ii

I.       INTRODUCTION ................................................................................................. 1

II.      FACTUAL BACKGROUND ............................................................................... 2

         A.       Google's Position on "Playback Queue" Has Been a Moving Target.................. 2

         B.       Sonos Amends in Compliance with CMO While Google Declines to Amend ...... 3

         C.       Google Distinguishes Local Playback Queue from Remote Playback Queue ....... 4

         D.       Google Backtracks on Arguments Court Accepted in Granting Google SJ ........... 6

III.     ARGUMENT ......................................................................................................... 7

         A.       Google Fails to Establish Good Cause................................................................. 7

                  1.       Google Did Not Act Diligently to Invoke Patent L.R. 3-6(a).................... 8

                  2.       Google's Amendment Violates the Court's Case Management Order..... 14

                  3.       Google Fails to Articulate Good Cause for Unrelated Amendments ....... 17

         B.       Sonos Would Suffer Prejudice.............................................................................. 18

SONOS'S OPP. TO GOOGLE'S MOT. TO
AMEND INVALIDITY CONTENTIONS
CASE NO. 3:20-CV-06754-WHA

**TABLE OF AUTHORITIES**

**CASES**

*Acer, Inc. v. Tech. Properties Ltd.*,
    08-cv-00877-JF(HRL), 2011 WL 1838768 (N.D. Cal. May 13, 2011)...................... 18, 21

*Angioscore, Inc. v. TriReme Med., Inc.*,
    12-cv-03393-YGR, 2015 WL 75187 (N.D. Cal. Jan. 6, 2015)........................................ 11

*Aylus Networks, Inc. v. Apple Inc.*,
    13-cv-4700-EMC, 2015 WL 12976113 (N.D. Cal. June 2, 2015).................................. 12

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
    17-cv-05928-YGR(KAW), 2021 WL 4923370 (N.D. Cal. Aug. 10, 2021) .................... 13

*Cisco Sys., Inc. v. Teleconference Sys., LLC.*,
    09-cv-01550-JSW (NC), 2012 WL 9337627 (N.D. Cal. June 11, 2012) ........................ 12

*Fluidigm Corp. v. IONpath, Inc.*,
    19-cv-5639-WHA, 2020 WL 5073938 (N.D. Cal. Aug. 25, 2020) ............................. 9, 15

*Impinj, Inc. v. NXP USA, Inc.*, No.
    19-CV-03161-YGR, 2022 WL 2125135 (N.D. Cal. Jan. 14, 2022) ................................ 13

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
    467 F.3d 1355 (Fed. Cir. 2006)..................................................................................... 7, 11

*Personalweb Techs., LLC v. Github, Inc.*,
    16-cv-01267-EJD(HRL), 2016 WL 3519292 (N.D. Cal. June 28, 2016)........................ 12

*Positive Techs., Inc. v. Sony Elecs., Inc.*,
    11-cv-2226-SI, 2013 WL 322556 (N.D. Cal. Jan. 28, 2013)............................................ 8

*Radware Ltd. v. F5 Networks, Inc.*,
    13-cv-2021-RMW, 2014 WL 3728482 (N.D. Cal. 2014)................................................ 13

*Slot Speaker Techs., Inc. v. Apple, Inc.*,
    No. 13-cv-01161-HSG(DMR), 2017 WL 1278744 (N.D. Cal. Apr. 6, 2017).............. 7, 12

*Tech. Properties Ltd. LLC v. Canon Inc.*,
    14-cv-3643-CW(DMR), 2016 WL 1360756 (N.D. Cal. Apr. 6, 2016) ........................... 13

*Trans Video Electronics, Ltd. v. Sony Electronics, Inc.*,

    278 F.R.D. 505 (N.D. Cal. 2011) ........................................................................ 11

*Verinata Health, Inc. v. Sequenom, Inc.*,

    12-cv-865-SI, 2014 WL 789197 (N.D. Cal. Feb. 26, 2014) ................................. 7

*Yniguez v. State of Ariz.*,

    939 F.2d 727 (9th Cir. 1991) ............................................................................. 18

**RULES**

Patent L.R. 3-6 .................................................................................................... 7, 18

1    **I.**    **INTRODUCTION**

2        Google sold this Court on the premise that its media playback systems use either a local

3    playback queue or a remote playback queue – but not both.  Google argued that its prior YouTube

4    Remote product used a local playback queue, whereas its modern YouTube products use a remote

5    playback queue.  Google argued that it transitioned from a local playback queue architecture to the

6    remote playback queue architecture in 2013 (after the priority date of the asserted patents).  This

7    argument was the foundational underpinning supporting Google's motion for summary judgment

8    that Google's YouTube Remote system invalidated claim 1 of Sonos's '615 patent but Google's

9    current YouTube products do not infringe the same claim.

10        Sonos objected to this premise, arguing that a system could have both types of playback

11    queues at the same time.  But this Court rejected Sonos's contentions and accepted Google's

12    premise, finding that when "the cloud queue runs the show," the "locally-stored information is

13    merely a mirror reflecting a subset of what is happening in the cloud queue."

14        After winning summary judgment that claim 1 of the '615 patent is invalid and not

15    infringed, Google now seeks to discard the very premise on which that judgment was based by

16    amending its invalidity chart for the '033 patent to advance a theory that the YouTube Remote

17    system suddenly now also has a "remote playback queue" in addition to the "local playback

18    queue."  Conspicuously, Google now identifies the ***same functionality*** that it previously argued

19    was evidence of the server populating a "local playback queue" as now constituting evidence of

20    obtaining data identifying items that are in the "remote playback queue."  This would have been

21    highly relevant evidence for Sonos to use to rebut Google's position that shifting to a "remote

22    playback queue" architecture eliminated the "local playback queue" – in fact, this evidence directly

23    contradicts Google's argument and expressly supports Sonos's position that a local playback queue

24    can exist even in systems that (allegedly) utilize a remote playback queue.  But Google strategically

25    hid this theory from Sonos until ***after*** this Court granted summary judgment in Google's favor.

26    This timing is of course highly prejudicial to Sonos and ought to doom Google's motion for leave

27    out of hand.

28        Prejudice aside, Google's motion ought to be denied on grounds that it was not diligent in

SONOS'S OPP. TO GOOGLE'S MOT. TO
AMEND INVALIDITY CONTENTIONS
CASE NO. 3:20-CV-06754-WHA

presenting its amended theory.  Google argues that it was diligent because it moved within just 28 days of the Court's construction of "local playback queue."  But the diligence clock ought to have started when Google itself proposed the construction in the first place.  Google proposed a construction for "playback queue" in February 2022, which the Court adopted nearly word for word in August 2022.  But Google strategically chose not to amend its invalidity contentions to present any theory that addressed its own construction.

Amending only now, some 200 days after Google proposed the construction, does not accord with this Court's Case Management Order, which mandates that back-up contentions must be disclosed prior to the claim construction order, and absent this a party may rest on its own claim construction.  But in no event will a party be permitted to sandbag their adversary and present a new theory so late in the case.  Google made a deliberate choice not to amend its contentions to present a theory that addressed its own construction of "playback queue."  Google must now live with that choice.

The Court's minor variations in the construction of "playback queue" are not the type of "different" construction that prior caselaw (cited by Google) finds as a basis to permit amendment after the claim construction order.  Such cases permit belated amendment when the Court introduces limitations into the claim that neither party proposed – hence a "different" construction.  The Court's construction merely omitted a few words from Google's proposal, broadening it in slight ways that had no apparent effect on the alleged viability of the amended theory. Diligence required an amendment at or around the time the construction was advanced by Google, not a delay of over seven months.  The Court's minor variations in the constructions do not excuse Google's failure to comply with the Court's Case Management Order and cannot invoke Patent L.R. 3-6(a).  This Court ought to deny Google's request for any or all of these reasons.

## II.    FACTUAL BACKGROUND

### A.    Google's Position on "Playback Queue" Has Been a Moving Target

The present case was pending for a time in the Western District of Texas.  While there, the Texas Court received *Markman* briefing and held a *Markman* hearing.  There, Google offered a construction for the term "remote playback queue," but did not offer constructions for the terms

1  "local playback queue" or "playback queue." Dkt. 126.  Although the Texas Court did not issue a

2  claim construction order, it indicated that it was inclined to order that no construction was

3  necessary for "remote playback queue." *Id.*

4       Following transfer to this district, Google served its invalidity contentions on December 6,

5  2022.  Those contentions did not specify any particular construction of "remote playback queue,"

6  "local playback queue," or "playback queue," or make any invalidity arguments that depended on

7  any specific construction of these terms.  On January 10, 2022, Google proposed a construction

8  for "local playback queue" as applied only to the '615 patent. Ex. A (Google's 1/10/22 PLR 4-2

9  disclosure).  However, on the eve that the Joint Claim Construction Statement and Chart were due,

10  Google withdrew its identification of "local playback queue" as a term for construction, proposed

11  that the parties construe the term "playback queue" in both the '615 and '033 patents (despite not

12  identifying that term for construction in accordance with Patent L.R. 4-1 and 4-2), and submitted

13  its proposed construction.

14       **B.      Sonos Amends in Compliance with CMO While Google Declines to Amend**

15       In compliance with this Court's Case Management Order (CMO), within 28 days of

16  receiving Google's proposed constructions for "local playback queue" and then for "playback

17  queue," Sonos moved to amend its infringement contentions to disclose back-up theories to

18  address Google's new construction proposals for these terms.  Dkts. 128 (addressing Google's new

19  proposed construction of "local playback queue"), 150 (addressing Google's new proposed

20  construction of "playback queue").  The Court found that Sonos complied with the CMO and

21  granted leave to amend to present these back-up theories.  Dkt. 167.

22       Google, for its part, never sought to amend its invalidity contentions to address its own

23  proposed constructions of "local playback queue" or "playback queue."  Essentially, Google chose

24  to rely on the original theories presented in its December 6, 2021 invalidity contentions, forfeiting

25  its option to account for the parties' proposed constructions in its contentions.  Sonos understood

26  that these invalidity contentions were directed to Sonos's "plain and ordinary meaning"

27  interpretation of the claim terms, including for "playback queue."  Sonos even wrote to Google on

28  February 10, 2022, asking if Google intended to amend its invalidity contentions to provide source

SONOS'S OPP. TO GOOGLE'S MOT. TO
AMEND INVALIDITY CONTENTIONS
CASE NO. 3:20-CV-06754-WHA

code pincites and further explanation of its block quotes, offering to not oppose any such amendment if Google planned to amend within 21 days.  Dkts. 219-3, 219-5.  Google declined to amend, signaling that Google intended to proceed only on the broader "plain and ordinary meaning" theories.  *Id.*  Sonos proceeded accordingly.

### C.   Google Distinguishes Local Playback Queue from Remote Playback Queue

At summary judgment, Google argued that its YouTube Remote (YTR) system invalidated claim 1 of the '615 patent but that its later YouTube systems did not infringe.  While seemingly contradictory on its face, Google squared this by advancing an argument that its legacy YouTube Remote system used only a local playback queue, whereas its modern systems (like YouTube) used only a remote playback queue (or "cloud queue").

Google vehemently repeated throughout its briefing and at the hearing this central theme that its YouTube Remote system used only a local playback queue, while the currently accused systems use only a cloud queue:

- "[B]y 2013 Google began to transition its applications to a 'cloud queue.' ***Prior to this transition***, however, ***Google's prior art products used a conventional 'local playback queue.'***"  Dkt. 211, 1;

- "████████████████████████████████████████████████████████████. Thus, Google's ***current (remote queue)*** products cannot infringe the patent, but its ***prior art (local queue)*** products invalidate that same patent."  *Id.*, 2;

- "████████████████████████████████████████████████████████████████████████████████████████████████████████."  *Id.*, 5;

- "████████████████████████████████████████████████████████████████████████████████████████."  *Id.*, 17 (citations omitted);

- **MR. VERHOEVEN**: "Yeah. And that just shows, [in the accused products] the phone is not involved in the processing of the queue or maintenance of the queue. The queue is maintained up here, the phone gives the instruction, and the receiver calls for the first item in the queue. But the queue is up here in the Cloud. ***It used to be down here in the [playback] device***, and for a variety of technical reasons, it moved to the Cloud, just like so many other things have moved to the Cloud. And ***so the queue used to be maintained in the remote device or the speaker playback device***. Sonos did it that way. ***Google did it that way***." 7/13/22 Hr'g Tr. at 63-64.

To succeed on both non-infringement and invalidity, Google had to sell the premise that a system (like the YTR system and accused systems) can only have a local playback queue or a remote playback queue (or "cloud queue") but it cannot have both. Dkt. 316, 10 ("Sonos objects that multiple playback queues can exist simultaneously.").  In other words, Google argued that the existence of a local playback queue in a system is mutually exclusive of a remote playback queue and *vice versa*.

- "███████████████████████████████████████████████████████████████████████████████████████████" Dkt. 211, 8;

- "███████████████████████████████████████████████████████████ The 'playback queue'… remains in the Cloud." *Id.*, 15;

- "At best, Sonos has shown that the ████████████████████████████████████████████████████████████████████." Dkt. 278, 2.

- **THE COURT:** All right. So, Mr. Verhoeven, the argument against you here is that -- there are two queues: There is one in the Cloud, and there is another one on the speaker. The local playback queue is on the speaker, and all it needs to know is what is the next one. And so that's good enough for its purposes and just calls the next one.  What do you say to that?

- **MR. VERHOEVEN:** I say that that's unpersuasive in the extreme . . .We're talking about *a* queue. ***Somebody has to own that queue***. Somebody has to *maintain that queue*. Somebody has to be in charge of ***that queue***. Who is it? It's the Cloud. That's why it's called ***the*** Cloud ***queue***. ***The queue*** is maintained in the Cloud. If you want to know -- if you're the speaker and you want to know the next item in ***the queue***, you ask the Cloud because the Cloud maintains ***the queue***. 7/13/22 Hr'g Tr., 59-60.

The Court sided with Google and ordered summary judgment that YouTube Remote

SONOS'S OPP. TO GOOGLE'S MOT. TO
AMEND INVALIDITY CONTENTIONS
CASE NO. 3:20-CV-06754-WHA

invalidated claim 1 of the '615 patent but that YouTube did not infringe claim 1 of the '615 patent. Dkt. 316, 10.  In this regard, the Court accepted Google's argument that a system cannot have both a "local playback queue" and a "cloud queue" because "locally-stored information is merely a mirror reflecting a subset of what is happening in the cloud queue."  *Id.*, 9-10.  According to the Court, groups of three items (such as that stored by the playback device when used with YouTube) did not constitute a "playback queue" because they "merely provide the means to *process* the lists for playback.  In short, the cloud queue runs the show."  *Id.*, 10.

In this summary judgment order, the Court also adopted Google's proposed construction for "playback queue" nearly word-for-word, construing it as "a list of multimedia content selected for playback."  *Id.*, 8.

### D.      Google Backtracks on Arguments Court Accepted in Granting Google SJ

After securing summary judgment in its favor, Google now proposes to amend its YouTube Remote invalidity chart for the '033 patent to advance a theory that directly conflicts with the arguments Google advanced to win summary judgment on the '615 patent.  Ex. 1.  As a reminder, whereas the '615 patent claims the presence of a "local playback queue," the '033 patent instead claims a "remote playback queue."

In its amendment, Google now argues (for the first time) that YouTube Remote actually involved a "remote playback queue," pointing to the ***same functionality***[1] that it previously argued was evidence of the server populating a "local playback queue."  *Id.*  In other words, if Google's new contentions are true, Google's YouTube Remote system involved ***both*** a "local playback queue" and a "remote playback queue."  As presented, this is a direct contradiction to the dichotomy that Google previously argued was central to its invalidity/non-infringement summary judgment position, which this Court accepted.

This reversal in positions undermines Google's argument that locally-stored information in YouTube's current system could not constitute a "local playback queue" when a "cloud queue" is used.  Dkt. 316 (summary judgment order), 9-10 ("In each app, the cloud queue stores the list,

---

[1] *Compare* Dkt. 211, 17, *and* Ex. 1 to Dkt. 211 (Bhattacharjee Decl.), ¶ 179 (citing "███████" message) *with* Ex. 1 at 38 (citing "███████████" message).

SONOS'S OPP. TO GOOGLE'S MOT. TO
AMEND INVALIDITY CONTENTIONS
CASE NO. 3:20-CV-06754-WHA

and the locally-stored information is merely a mirror reflecting a subset of what is happening in the cloud queue."). Google's new concession would have been highly relevant evidence that Sonos could have used to defend Google's motion for summary judgment of non-infringement. But Google hid this theory from Sonos until it was too late.

## III.   ARGUMENT

### A.    Google Fails to Establish Good Cause

"The local rules of the Northern District of California require parties to define their theories of patent infringement and invalidity early on in the course of litigation." *Slot Speaker Techs., Inc. v. Apple, Inc*., No. 13-cv-01161-HSG(DMR), 2017 WL 1278744, at *2 (N.D. Cal. Apr. 6, 2017) (*citing O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc*., 467 F.3d 1355, 1359 (Fed. Cir. 2006)). In contrast to other districts with more liberal amendment policies, this District has opted for a decidedly more conservative approach "designed to prevent the shifting sands approach to claim construction." *Id.*  In this respect, parties may amend their contentions "only by order of the Court upon a timely showing of good cause." *Id.* (*quoting* Patent L.R. 3-6).

Google's argument that good cause exists rests entirely on its desire to amend in response to a "different claim construction" as contemplated by Patent L.R. 3-6(a), which provides:

> Amendment of the Infringement Contentions or the Invalidity Contentions may be made only by order of the Court upon a timely showing of good cause. Non-exhaustive examples of circumstances that may, absent undue prejudice to the non-moving party, support a finding of good cause include:
>
> **(a)  A claim construction by the Court different from that proposed by the party seeking amendment;**
>
> (b)  Recent discovery of material, prior art despite earlier diligent search; and
>
> (c)  Recent discovery of nonpublic information about the Accused Instrumentality which was not discovered, despite diligent efforts, before the service of the Infringement Contentions.

Patent L.R. 3-6 (emphasis added).

However, a differing claim construction in and of itself does not automatically constitute good cause to amend invalidity contentions. *Slot Speaker Techs.*, 2017 WL 1278744 at *2; *Verinata Health, Inc. v. Sequenom, Inc*., 12-cv-865-SI, 2014 WL 789197, at *2 (N.D. Cal. Feb.

SONOS'S OPP. TO GOOGLE'S MOT. TO
AMEND INVALIDITY CONTENTIONS
CASE NO. 3:20-CV-06754-WHA

26, 2014).  To establish the "good cause" required by Patent L.R. 3-6, Google must establish that it acted diligently.  *See id.*  "The diligence required for a showing of good cause has two phases: (1) diligence in discovering the basis for amendment; and (2) diligence in seeking amendment once the basis for amendment has been discovered."  *Positive Techs., Inc. v. Sony Elecs., Inc.*, 11-cv-2226-SI, 2013 WL 322556, at *2 (N.D. Cal. Jan. 28, 2013).

### 1.    Google Did Not Act Diligently to Invoke Patent L.R. 3-6(a)

The facts do not establish that Google acted diligently in discovering the basis for amendment.  Google's brief concedes that it investigated whether the YouTube Remote system would meet the construction ***only after*** the Court issued its construction. Mot., 6 ("After receiving the Court's order, Google promptly reviewed its invalidity contentions and conducted additional review of the documents and source code for its YouTube Remote prior art.").  But investigating whether the YouTube Remote system met the Court's construction only after the Court issued it does not establish diligence for two reasons:  (1) over seven months ago, Google itself advanced substantively the same proposed construction on which the Court's construction is based[2], and (2) the "prior art" system is Google's own product where Google is the custodian of all the evidence and witnesses concerning this product.

Google was the party that advanced a construction for "playback queue" – not Sonos.  Dkt. 126.  In fact, in the months after Google served its invalidity contentions on December 6, 2021, Google offered multiple, changing constructions of "playback queue."   Initially, it offered a construction of "local playback queue" on January 10, 2022.  It then, inexplicably withdrew this construction and offered a new construction for the term "playback queue" on February 3.  Sonos sought leave to amend its infringement contentions within 28 days of learning of each of Google's proposals.[3]  Dkts. 128, 150.  Google chose not to amend its invalidity contentions to account for

---

[2] As explained below, the Court's construction is only slightly broader than Google's proposal in ways that do not affect the alleged viability of the proposed amendment.  Moreover, as explained below, Sonos had put Google on notice that Google's proposed construction was too narrow in exactly the same ways that the Court's construction reflects.

[3] The Court's Case Management Order, Dkt. 67 ("CMO") at ¶ 17, requires parties to move to present back-up contentions within 28 days of learning of a party's claim construction position, on pain of "not be[ing] allowed to assert back-up theories at that later juncture."

SONOS'S OPP. TO GOOGLE'S MOT. TO
AMEND INVALIDITY CONTENTIONS
CASE NO. 3:20-CV-06754-WHA

its new construction.  If Google desired to advance a theory in the event the Court adopted Google's own construction, either whole or in part, it was incumbent on Google to present that theory at or near the time Google advanced its construction.  *Fluidigm Corp. v. IONpath, Inc.*, 19-cv-5639-WHA, 2020 WL 5073938, at *4-5 (N.D. Cal. Aug. 25, 2020) ("Contingent contentions should already have been disclosed per Rules 3-1 and 3-3 . . . The parties exchanged preliminary claim constructions on May 6. The diligence clock started then for any motions to add responsive infringement or invalidity theories."); *id.* at *4 ("Since it may [after claim construction] that a party first learns its claim construction has lost, we may nevertheless proceed briskly ahead, the parties having already stated their backup contentions (or else waived them).").  By not doing so, Sonos understood that Google affirmatively chose not to rely on any theory that the "prior art" met the limitations of "playback queue" that Google itself proposed.

Ultimately, the Court adopted Google's construction for "playback queue" nearly word-for-word except in two places.  But these slight modifications do not provide a basis for Google (i) to have failed to investigate whether its own prior-art product met Google's own proposal and (ii) to have begun that investigation only after the Court adopted a slightly modified version of Google's proposal.

| "playback queue" | |
|---|---|
| Sonos: | *plain and ordinary meaning, no construction necessary* |
| Google: | "an ordered list of multimedia items        that is selected by the user for playback" |
| **Court:** | "an ~~ordered~~ list of multimedia ~~items~~ content ~~that is~~ selected ~~by the user~~ for playback" |

As is evident, the Court's final construction is a slightly modified version of Google's own proposal.  ***First***, the Court declined to insert "ordered" into the construction because it found that the "list does not necessarily require more than one item of content."  Dkt. 316, 8.  In this way, the Court permitted lists of one item to fall within the scope of "playback queue" (along with lists of two or more items, as Google originally proposed).  *Id.*  ***Second***, the Court declined to insert "by the user" because it found that "the content in the queue need not be selected directly by a user."  *Id.*, 7.  In this way, the Court permitted media content to be selected by the application itself (along with perhaps the user, as Google originally proposed) to fall within the scope of the claim.  *Id.*

1    ***Third***, the Court declined to insert "multimedia item" into the claim, instead reverting to

2    "multimedia content" – a phrase already used later in the claim language. This has no discernable

3    change to the claim scope itself and was done merely to avoid introducing to the jury "ambiguity

4    by importing a new term." *Id.*, 8.[4]

5          These slight modifications to Google's proposed construction were exactly the points of

6    contention that Sonos put Google on notice of during the claim construction process. In particular,

7    Sonos's briefing from March 2022 explains exactly why "playback queue" did not require plural

8    media items nor "user-selected" media. Dkt. 184, 10 ("Neither the intrinsic nor extrinsic evidence

9    mandates that a 'playback queue' have plural 'multimedia items,' as Google's construction

10   requires."), *id.*, 14 ("The intrinsic evidence also does not support limiting a 'playback queue' to

11   queues that contain media 'selected by the user for playback.'"). Thus, Google was on notice at

12   least as early as March 2022 as to the specific pieces of Google's proposal that Sonos considered

13   inappropriately narrow and why. Google made no attempt to amend its invalidity contentions in

14   response to this notice as well.

15         In any case, the slight difference between Google's proposal and the Court's construction

16   have no effect on the purported viability of Google's proposed amendment. Tellingly, Google's

17   motion does not allege that any differences in the adopted construction affected the viability of the

18   amended theory. This is not surprising as Google conducted no investigation at the time it offered

19   the proposed construction as to whether its own YouTube Remote product (or any of the other

20   prior art) would have met Google's proposed construction (which in and of itself should doom

21   Google's motion for lack of diligence). And because Google did no investigation, Google fails to

22   (because it cannot) explain why its amended theory was somehow not viable under Google's

23   proposal (or Sonos's plain and ordinary meaning proposal) but is somehow now viable under the

24   Court's construction. Indeed, the Court's minor changes, which simply omit some minor

25   limitations proposed by Google, do not affect the purported viability of the amended invalidity

26   theory. Thus, Google's failure to present its amended theory in conjunction with its own proposed

27   ──────────────

28   [4] The Court also declined to insert "that is" into the construction – but this was merely a superfluous
     conjunction with no effect on the scope of "playback queue."

SONOS'S OPP. TO GOOGLE'S MOT. TO
AMEND INVALIDITY CONTENTIONS
CASE NO. 3:20-CV-06754-WHA

construction (or even after Sonos explained in its briefing exactly why "playback queue" did not require plural media items nor "user-selected" media) demonstrates that Google was not diligent and forecloses Google's ability to now advance the theory. *See Angioscore, Inc. v. TriReme Med., Inc.*, 12-cv-03393-YGR, 2015 WL 75187, at *4 (N.D. Cal. Jan. 6, 2015) ("When the party seeking to amend contends that the Court adopted a different claim construction than was proposed, the party must also demonstrate that (1) the Court's construction was so different that amended [invalidity] contentions were necessary, and must (2) give a reason for why it waited until so late in the litigation to disclose its position on infringement.").

Google's new theory relies on the alleged ability of a user to use the YouTube Remote app to ██████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████. Ex. 1, 13, 38. According to Google, this functionality allegedly meets Google's original proposal for "playback queue" because Google has explicitly alleged that the ███████ is both █████████████████████████████ Ex. 1, 13 ("█████████████████████████"), *id.*, 39 ("████████████████████████████████████ ██████████████████████████████████████████"), *id.* ("█████████████████████ ████████████████████████████████████████.")[5] Thus, no apparent part of the functionality of the YTR system precluded Google from articulating this theory as satisfying Google's own proposal for the term "playback queue" months ago. Either Google made a deliberate choice not to present this theory earlier in the case, or Google made no attempt to determine whether its own YouTube Remote system met its own proposed construction. Either way, Google was not diligent and thus cannot now invoke Patent L.R. 3-6(a) as a basis for presenting its new theory.

Courts deny amendments when a party waits several months to investigate whether it has a basis to amend. *E.g., O2 Micro*, 467 F.3d at 1366 (three-month delay not diligent); *Trans Video Electronics, Ltd. v. Sony Electronics, Inc.*, 278 F.R.D. 505, 508 (N.D. Cal. 2011) *aff'd*, 475 F.

---

[5] Of course, Sonos does not acquiesce in whether the charted functionality is factually accurate or whether Google's interpretation of the functionality is accurate. Sonos merely argues that assuming Google's allegations are accurate and true, then these allegations would allegedly viably meet Google's original proposed construction for "playback queue."

App'x 334 (Fed. Cir. 2012) (four-month delay not diligent); *Cisco Sys., Inc. v. Teleconference Sys., LLC.*, 09-cv-01550-JSW (NC), 2012 WL 9337627, at *3 (N.D. Cal. June 11, 2012) (seven-month delay not diligent); *Aylus Networks, Inc. v. Apple Inc.*, 13-cv-4700-EMC, 2015 WL 12976113, at *1 (N.D. Cal. June 2, 2015) (eight-month delay not diligent).

In *Cisco*, for instance, the Court denied amendment because the moving party "provides no explanation as to why it did not begin its investigation . . . when it received defendants' proposed construction . . . and instead chose to wait until the district court construed that limitation." *Cisco Sys., Inc.*, 2012 WL 9337627, at *3 ("[The] failure to justify this delay is sufficient to deny its motion."). Google's failure to account for its own delay is even less justified than the patentee in *Cisco*. Here, Google was the party that proposed the construction in the first place. And the amendment in question concerns Google's own prior-art product rather than that of a third party or an adverse party; as such, little to no investigation ought to have been required. Thus, Google ought to have presented its amended theory, if it desired to at all, quite early in the case. But even if the Court prefers to measure diligence here as if Sonos were the party that proposed the construction in February and as if the product in question were that of a different party – Google still waited six months to investigate and seven months to move to amend, a time period decidedly not diligent in this context.

Google cites six cases purportedly supporting that good cause exists and that Google was diligent. Each is easily distinguishable.

**First**, *Slot Speaker* supports Sonos's position, not Google's. There, the Court found that Apple did not act diligently in discovering the basis for its amendment after the opposing party proposed a construction that was ultimately adopted. *Slot Speaker Techs.*, 2017 WL 1278744, at *3. Here, Google was the party that proposed the construction, and it waited to investigate whether it could amend until the Court adopted nearly all of the limitations Google proposed.

**Second**, in *Personalweb*, upon transfer to this district, the movant sought to amend contentions that were served in another district due to an opposing claim construction that was adopted by the judge in that different district – and the motion was agreed by both parties. *Personalweb Techs., LLC v. Github, Inc.*, 16-cv-01267-EJD(HRL), 2016 WL 3519292, at *2 (N.D.

SONOS'S OPP. TO GOOGLE'S MOT. TO
AMEND INVALIDITY CONTENTIONS
CASE NO. 3:20-CV-06754-WHA

Cal. June 28, 2016).  Here, the motion is not agreed, and Google is seeking to amend contentions that it served in this district based on a claim construction it proposed.

**Third**, in *Tech. Properties*, the Court permitted amendment of infringement contentions when the Court drastically altered the proposed constructions and introduced a limitation that neither party proposed.  *Tech. Properties Ltd. LLC v. Canon Inc.*, 14-cv-3643-CW(DMR), 2016 WL 1360756, at *4 (N.D. Cal. Apr. 6, 2016) (noting that the Court adopted a "firmly fixed" limitation that "was never proposed by any party to these proceedings.").  Here, the Court only slightly altered the construction that Google proposed, did not add any limitations that neither party proposed, and the amendment concerns Google's own product – not the product of an adverse party.

**Fourth** and **Fifth**, in *Impinj* and *Radware*, the Court allowed amendment where its claim construction order issued constructions that were "new," "materially different," or "differ[ed] substantially" from proposals offered by either party (like in *Tech. Properties*).  *Impinj, Inc. v. NXP USA, Inc.*, No. 19-CV-03161-YGR, 2022 WL 2125135, at *3 (N.D. Cal. Jan. 14, 2022); *see also id.,* Dkt. 102 (claim construction order) at 6 (adding a "provides support" limitation proposed by neither party); *id* at 10 (adding a "made to protect" limitation proposed by neither party); *Radware Ltd. v. F5 Networks, Inc.*, 13-cv-2021-RMW, 2014 WL 3728482, at *3 (N.D. Cal. 2014); *see also id.* at Dkt. 185 (claim construction order) (issuing claim constructions that are wholly different and introduce new limitations completely different than those proffered by either party).  As explained, here the Court's construction did not add any new limitations proposed by neither party; it adopted Google's proposal nearly word-for-word.  Where it simply declined to add two words, Google's motion does not attempt to show that the ultimate construction was "materially different" or "new," and Sonos has demonstrated why this construction was in fact not "materially different" or "new."  *Impinj* does not show Google acted with diligence here.

**Finally**, in *Cellspin*, like in *Impinj*, *Radware*, and *Tech. Properties*, the Court premised amendment on the fact that the Court "adopted its own construction[s]" that were "ultimately different" and used wholly different terms than that proposed by either party.  *Cellspin Soft, Inc. v. Fitbit, Inc.*, 17-cv-05928-YGR(KAW), 2021 WL 4923370, at *2 (N.D. Cal. Aug. 10, 2021); *see*

SONOS'S OPP. TO GOOGLE'S MOT. TO
AMEND INVALIDITY CONTENTIONS
CASE NO. 3:20-CV-06754-WHA

*id.*, Dkt. 186 (claim construction order) at 19-20 (adding a "predetermined basis" limitation and an "indication of the presence" limitation, neither of which were proposed by either party). Again, the construction issued in this case was not the Court's "own" construction, nor did it include limitations not proposed by either party. *Cellspin*, like Google's other cases, does not support diligence or good cause.

### 2.     Google's Amendment Violates the Court's Case Management Order

Google's lack of diligence in disclosing its amended theory also fails to comply with the Court's October 2021 Case Management Order, Dkt. 67 ("CMO"), which in and of itself provides a reason to deny Google's amendment independent of Patent L.R. 3-6. This Court's CMO required that back-up contentions be presented within 28 days of receiving the preliminary claim construction disclosure under Patent L.R. 4-2 and further put the parties on notice that they would be precluded from presenting back-up theories at a later juncture. CMO, ¶ 17.

In particular, this Court's October 2021 Case Management Order states:

> After receiving the other side's preliminary claim construction disclosure under Rule 4-2, each party must move promptly to disclose any back-up contentions it may wish (or eventually wish) to make for its infringement or invalidity case in the event the other side's claim construction is thereafter adopted or else any such back-up contentions will be deemed waived. Promptly means within 28 days at the latest. A party, of course, is not required to have a back-up theory and may rest entirely on its own claim construction, but in the event the other side's claim construction prevails, such party will not be allowed to assert back-up theories at that later juncture.

*Id.*, ¶ 17. In effect, this Court propounded a stricter rule than that of Patent L.R. 3-6. This Court's rule was that parties were to lay out their contentions early in the case without waiting for any claim construction ruling. A party is required to either rest its contentions "entirely on its own claim construction," or to present a back-up theory that addresses a party's proposed construction within 28 days of receiving that party's proposed construction under Patent L.R. 4-2. *Id.* By this Order, this Court was clear that this early procedure was the only opportunity to present alternative theories, ordering "such party will not be allowed to assert back-up theories at that later juncture." *Id.*

This understanding is made clear when considering the immediately-preceding paragraph

in the Court's CMO, which explains:

> For many years, the Court conducted a claim construction hearing about mid-way through the fact-discovery period. While this timing gave some guidance to counsel and experts, it had the distinct disadvantage of requiring abstract rulings without the benefit of a more complete record, thus increasing the risk of a claim construction error and a re-trial (and, for that matter, subsequent second appeal). Instead of a stand-alone claim construction hearing, claim construction will now be done on summary judgment or at trial in settling the jury instructions. In this way, the Court will better understand the as-applied meaning of terms advanced by counsel as claim constructions.

*Id.* at ¶ 16.   In this paragraph, the Court expressly disavowed the usual claim construction procedure followed by other Courts in the Northern District of California, namely one in which those courts would conduct a separate *Markman* hearing and then issue a separate *Markman* order. This is precisely why, in the very next paragraph, the Court sets out a requirement that all contentions and back-up contentions (whether they rest entirely on a party's own construction or the opposing party's proposed construction) be presented *before* any claim construction order. This is because, in the Court's view, the parties' theories of the case ought to be crystalized early and that if a claim construction comes in the context of summary judgment (as it did here), the parties need not scramble and re-do contentions and discovery. *Id.* at ¶ 17.   In effect, this Court overrode the procedure of Patent L.R. 3-6, which otherwise provides that amending contentions *after* a claim construction order may support a finding of good cause absent prejudice. *Fluidigm Corp.*, 2020 WL 5073938, at *4 (holding that the diligence clock starts when the parties exchange claim construction *proposals*, explaining "[t]his holding may go a step further than some judges in this district have gone. Still, however, this is the undersigned's best reading of the rule and the one most consistent with the purpose of our patent contentions. This holding also aligns with the practice of those judges who follow Judge Ronald Whyte, one of the principal architects of our patent local rules, in construing claims at summary judgment (or at trial). Since it may be then that a party first learns its claim construction has lost, we may nevertheless proceed briskly ahead, the parties having already stated their backup contentions (or else waived them).").

Simply put: it was incumbent on Google to align its *own* invalidity contentions with its *own* proposed construction.  Google's December 6, 2021 invalidity contentions did not present a

theory of invalidity for YouTube Remote under Google's proposed construction of "playback queue." These contentions failed to even mention Google's construction of "playback queue." As such, Sonos understood that Google was proceeding with invalidity for YouTube Remote only under Sonos's broader "plain and ordinary" meaning theory. After all, this was Google's own "prior art" system, Google had custody of all the documents describing the features and functionality, it employed all the witnesses who had knowledge of the same, and Google was the party offering the proposed construction of "playback queue." Google was thus in the best position to determine whether and how the system functioned under its own proposed construction. Despite this failure, Sonos would not have opposed Google's request to amend its invalidity contentions to present a theory under its own construction nearer to the time that Google first proffered its construction of "playback queue" (i.e., in February 2022) which would have been consistent with the Court's CMO, and as Sonos did. But Google failed to do that. Waiting to amend its contentions to present a theory that accords with Google's own construction until now, over 200 days later, after the Court has decided claim construction, and after Sonos has already conducted discovery and already deposed Google's witnesses on this system, is inexcusable and far from acting with diligence. It does not accord with this Court's CMO.

Google takes a final stab in futility by attempting to cast Sonos as the dilatory party in view of Sonos's earlier requests to amend its infringement contentions. Of course, Sonos's requests to amend were filed in February and March and have already been granted; they are thus not at issue here.[6] Nevertheless, Google omits important details that establish that Sonos was diligent while Google was not. Sonos sought leave to amend its infringement contentions (concerning Google's products) twice in response to two separate proposed claim constructions offered for the first time by Google pursuant to Patent L.R. 4-2 and 4-3. Sonos moved to amend within 28 days of Google offering each construction. Such amendments were expressly permitted by the CMO, which is

---

[6] Sonos's third motion to amend its contentions was unopposed and filed as a result of Google making new source code available for the first time. Dkt. 157. It presented no new theories and only presented pincites to the newly-produced source code. Google's attempt to cast this third amendment as further evidence of a new theory or evidence of delay is disingenuous and misleading.

why this Court granted each with a brief order.  Dkt. 167.  Google, however, failed to amend its contentions to present theories that accord with ***Google's own construction***.  And the theories it now seeks to amend concern Google's own products, and thus a much lighter burden of discovery exists than with a patentee further investigating an accused product under a new construction or an accused infringer further investigating a third-party's product for invalidity.  Google waited nearly 200 days after its proposed constructions that the Court adopted, nearly in whole, to move to present a new theory of invalidity regarding its own product.  It was not diligent in doing so.

### 3.    Google Fails to Articulate Good Cause for Unrelated Amendments

Google attempts to sneak in various other amendments that have nothing to do with the Court's "playback queue" claim construction.  No matter the diligence or lack thereof concerning Google's investigation subsequent to the Court's construction of "playback queue," Google does not explain what good cause exists for these other proposed amendments.  No such good cause exists for at least the reason that the amendments do not depend one way or the other on the construction of "playback queue" and thus Patent L.R. 3-6(a) provides no basis for amending.

As one example, Google presents an amendment to include a discussion of a "connect" button that is allegedly a "representation of one or more playback devices."  Ex. 1, 21, 24, 53.  Google advances a further amendment in this respect that argues that to the extent the "connect" button does not disclose the "representation" element, a "device-picker" would allegedly have been obvious based either on the code itself, Version 3 of YTR, Google's Tungsten/Nexus Q device, Apple AirPlay, Sonos's own "prior art," or the "Al-Shayk [sic]" patent.  *Id.*  This theory is brand new and has no purported relevance to the construction of "playback queue."  Google's brief argues none.  Google was not diligent in presenting this theory, does not even attempt to claim it was diligent, and thus it ought not be entitled to amend to include this theory.

As another example, Google presents an argument that the YouTube Remote application discloses or renders obvious the "detecting an indication" claim element and cites to its expert's summary judgment discussion of the "loungeScreenConnected" and "Screen Connected" messages.  *Id.* at 42.  This theory is also brand new and has no purported relevance to the construction of "playback queue."  Google was not diligent in presenting this theory, and thus it

SONOS'S OPP. TO GOOGLE'S MOT. TO
AMEND INVALIDITY CONTENTIONS
CASE NO. 3:20-CV-06754-WHA

1    ought not be entitled to amend to include this theory.

2         **B.    Sonos Would Suffer Prejudice**

3         Even if Google were diligent in seeking to amend, prejudice to Sonos precludes

4    amendment here.   Patent L.R. 3-6 ("absent undue prejudice"); *see also Acer, Inc. v. Tech.*

5    *Properties Ltd.*, 08-cv-00877-JF(HRL), 2011 WL 1838768, at *2 n.6 (N.D. Cal. May 13, 2011)

6    (stating that a factor relevant to the Court's determination of whether good cause exists for granting

7    leave to amend infringement contentions is "whether the request to amend is motivated by

8    gamesmanship").

9         Google's new theory is a repudiation of the leading argument Google made to justify how

10   its old YouTube Remote products invalidated claim 1 of Sonos's '615 patent but its new YouTube

11   apps did not infringe the '615 patent.   Sonos is prejudiced (and the judicial process is harmed) by

12   Google's belated advancement of its new theory because the delay robbed Sonos of the ability to

13   use Google's new interpretation and new argument regarding YTR as evidence to oppose Google's

14   motion for summary judgment of non-infringement.   *Yniguez v. State of Ariz.*, 939 F.2d 727, 738

15   (9th Cir. 1991) ("[J]udicial estoppel … is invoked to prevent a party from changing its position

16   over the course of judicial proceedings when such positional changes have an adverse impact on

17   the judicial process" and is "most commonly applied to bar a party from making a factual assertion

18   in a legal proceeding which directly contradicts an earlier assertion made in the same proceeding

19   or a prior one ….") (citation omitted).

20        Throughout this case, Google argued a dichotomy.   According to Google, its products

21   existed in two groups:   its old products that utilized a local playback queue, and its new products

22   that shifted to a cloud queue and abandoned a local playback queue.   This was not a one-off

23   statement; it was a central theme of Google's briefing.   *See supra* Section II.C.

24        Google argued that the transition to a "remote playback queue" occurred in 2013:

25        [B]y 2013 Google began to transition its applications to a 'cloud queue.' Prior to
26        this transition, however, Google's prior art products used a conventional 'local
          playback queue' architecture for managing music playback.

27

28   Dkt. 211, 1.   And Google argued that it was this distinction between the mutually exclusive

functionalities of a "local playback queue" and a "remote playback queue" that enabled Google to straddle the line between invalidity and infringement.

███████████████████████████████████████████████████

\*\*\*

███████████████████████████████████████████████████

\*\*\*

Thus, Google's current (remote queue) products cannot infringe the patent, but its prior art (local queue) products invalidate that same patent.

*Id.*, 2, 5, 17.  Google doubled down on this argument at the summary judgment hearing.  When the Court directly questioned Google's counsel on whether a system could have multiple queues (e.g., a local one and a remote one), Google's counsel aggressively rejected that proposition.

> **THE COURT**: All right. So, Mr. Verhoeven, the argument against you here is that -- there are two queues: There is one in the Cloud, and there is another one on the speaker. The local playback queue is on the speaker, and all it needs to know is what is the next one. And so that's good enough for its purposes and just calls the next one.  What do you say to that?

> **MR. VERHOEVEN**: I say that that's unpersuasive in the extreme . . .We're talking about a queue. Somebody has to own that queue. Somebody has to maintain that queue. Somebody has to be in charge of that queue. Who is it? It's the Cloud. That's why it's called the Cloud queue. The queue is maintained in the Cloud. If you want to know -- if you're the speaker and you want to know the next item in the queue, you ask the Cloud because the Cloud maintains the queue.

7/13/22 Hr'g Tr. at 59-60; *see also id.* at 63-64 ("**MR. VERHOEVEN**: . . . the phone is not involved in the processing of the queue or maintenance of the queue. The queue is maintained up here, the phone gives the instruction, and the receiver calls for the first item in the queue. But the queue is up here in the Cloud. It used to be down here in the device, and for a variety of technical reasons, it moved to the Cloud. . . And so the queue used to be maintained in the remote device or the speaker playback device.").

1   Through these arguments, Google unequivocally advanced the premise that a system could

2   either have a "local playback queue" (stored on the player) or a "remote playback queue" (stored

3   at the cloud server) – but not both.  Google used this premise to successfully argue, *inter alia*, that

4   information (such as ███████ or resource locators) sent to and locally stored by the player could

5   not constitute a playback queue because *the* playback queue was instead stored and kept in the

6   cloud.  It was the presence of a queue kept and maintained by the cloud that prevented any locally-

7   stored information from constituting a "local playback queue."  Dkt. 211, 1, 2, 5, 17.

8   Moreover, Google argued that in its YouTube Remote product, the ██████

9   █████████████████████████████████████████████ "adding

10  multimedia content to a local playback queue."  *Id.* at 17 (table from Google's SJ brief).



19  The Court accepted Google's arguments, rejected Sonos's arguments, and ordered

20  summary judgment as to non-infringement and invalidity in Google's favor.  Dkt. 316, 10 ("Sonos

21  objects that multiple playback queues can exist simultaneously.").  In siding with Google, the Court

22  found that in the accused products "the locally-stored information is merely a mirror reflecting a

23  subset of what is happening in the cloud queue . . . In short, the cloud queue runs the show."

24  Dkt. 316, 9-10.

25  Google now seeks to amend its invalidity chart for the YouTube Remote system to present

26  a contrary argument to that presented in its showdown summary judgment briefing and at the

27  summary judgment hearing.  Google now desires to argue that it actually is possible for a system

28

SONOS'S OPP. TO GOOGLE'S MOT. TO
AMEND INVALIDITY CONTENTIONS
CASE NO. 3:20-CV-06754-WHA

to utilize multiple different queues, including a "local playback queue" and a "remote playback queue." In particular, in Google's amended chart, Google now identifies the ***same functionality*** that it previously argued was evidence of the server populating a "local playback queue" as now constituting evidence of obtaining data identifying items that are in the "remote playback queue." Specifically, the functionality is the ███████████████████████ message. *Compare* Dkt. 211, 17, *and* Ex. 1 to Dkt. 211 (Bhattacharjee Decl.), ¶ 179 (citing "████████" message) *with* Ex. 1 at 38 (citing "████████████" message). As now presented, this is a direct contradiction to the dichotomy that Google previously argued and this Court accepted.

The timing of Google's amendment is thus highly prejudicial to Sonos. Had Google presented this argument when it was supposed to, namely with its invalidity contentions in December 2021 or at least when it advanced its proposed construction for "playback queue" in February 2022, then Sonos could have used Google's YouTube Remote interpretation to demonstrate that a system can have multiple queues at the same time. In particular, Sonos could have used Google's new interpretation and argument to refute the position that locally-stored information cannot constitute a "local playback queue" when the remote server maintains a "remote playback queue." Of course, unless this Court is inclined to reopen the summary judgment proceedings, it is too late for Sonos to present this argument because the Court has already entered summary judgment in Google's favor.

To allow Google to have hidden its interpretation of its own product in violation of this Court's CMO and Patent L.R. 3-6 and then spring it on Sonos only after Sonos is unable to go back and use it as a defense to Google's summary judgment arguments is highly prejudicial to Sonos. It amounts to the exact type of gamesmanship that the local rules and this Court's CMO were designed to preclude. *See Acer, Inc.*, 2011 WL 1838768, at *2 n.6.

Sonos is also prejudiced because it has already conducted discovery on the YouTube Remote system prior to Google's identification of and reliance on this new feature. In particular, Sonos has already deposed multiple engineers knowledgeable on YouTube Remote system but did not have the benefit of Google's new contention and disclosure concerning YouTube Remote. These depositions included a May 4, 2022 deposition of engineer Janos Levai and a May 5, 2022

1   deposition of engineer Ramona Bobohalma – both of which were taken pursuant to Chapter II,

2   Article 17 Of The Hague Convention of 18 March 1970 given that these witnesses were located in

3   Switzerland.  *See* Dkts. 217, 218, 224-227.  Moreover, Google argues that that its amendment does

4   not add any new references.  Mot. at 7.  But this is false.  Google's contentions add a citation to a

5   brand-new patent reference (U.S. Pat. No. 10,469,894) and two new documents.  *See* Ex. 1, 2, 19.

6         For the foregoing reasons, undue prejudice to Sonos would result from this amendment.

7   For this reason, or alternatively the reason that Google was not diligent in presenting its

8   amendment, the Court should deny Google's motion.

Dated:  September 13, 2022

ORRICK HERRINGTON & SUTCLIFFE LLP
*and*
LEE SULLIVAN SHEA & SMITH LLP

By: */s/ Cole B. Richter*
    Cole B. Richter (admitted *pro hac*)

*Attorneys for Sonos, Inc.*

SONOS'S OPP. TO GOOGLE'S MOT. TO
AMEND INVALIDITY CONTENTIONS
CASE NO. 3:20-CV-06754-WHA