CLEMENT SETH ROBERTS (STATE BAR NO. 209203)
croberts@orrick.com
BAS DE BLANK (STATE BAR NO. 191487)
basdeblank@orrick.com
ALYSSA CARIDIS (STATE BAR NO. 260103)
acaridis@orrick.com
EVAN D. BREWER (STATE BAR NO. 304411)
ebrewer@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: +1 415 773 5700
Facsimile: +1 415 773 5759

SEAN M. SULLIVAN (admitted *pro hac vice*)
sullivan@ls3ip.com
COLE RICHTER (admitted *pro hac vice*)
richter@ls3ip.com
LEE SULLIVAN SHEA & SMITH LLP
656 W Randolph St., Floor 5W
Chicago, IL 60661
Telephone: +1 312 754 0002
Facsimile: +1 312 754 0003

*Attorneys for Sonos, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| GOOGLE LLC,<br><br>    Plaintiff and Counter-defendant,<br><br>v.<br><br>SONOS, INC.,<br><br>    Defendant and Counter-claimant. | Case No. 3:20-cv-06754-WHA<br>Related to Case No. 3:21-cv-07559-WHA<br><br>**SONOS, INC.'S BRIEF IN RESPONSE TO COURT'S ORDER RE PATENT SHOWDOWN TRIAL (DKT. 339)**<br><br>Complaint Filed: September 28, 2020 |

**TABLE OF CONTENTS**

**Page(s)**

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ...................................................................................................................... 2

    A. Google Was On Notice That, If It Put Invalidity At Issue, It Had To Support The Claim With All Theories On Which It Wished To Rely At Trial ................................................. 3

    B. Google Had More Than Ample Opportunity To Develop Its Prior Art Arguments, But Has Yet To Develop A Colorable Theory. ................................................................. 7

    C. Had The Showdown Trial Proceeded, Sonos Would Have Moved To Strike Or Exclude Google's Second Wave Of Back-Up Invalidity Theories .................................................. 9

III. CONCLUSION ................................................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Albino v. Baca*,
 747 F.3d 1162 (9th Cir. 2014) ................................................................................................ 2, 6

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
 573 U.S. 208 (2014) ..................................................................................................................3

*Cap Exp., LLC v. Zinus, Inc.*,
 722 F. App'x 1004 (Fed. Cir. 2018) ........................................................................................ 2

*Cassidy v. United States*,
 875 F. Supp. 1438 (E.D. Wash. 1994) ..................................................................................... 3

*Celotex Corp. v. Catrett*,
 477 U.S. 317, 326 (1986) ......................................................................................................... 2

*DC Comics v. Pac. Pictures Corp.*,
 No. 10-cv-3633, 2013 WL 12458031 (C.D. Cal. Feb. 21, 2013) ............................................ 3

*Diversey Lever, Inc. v. Ecolab, Inc.*, *Diversey Lever, Inc. v. Ecolab, Inc.*,
 191 F.3d 1350 (Fed. Cir. 1999) ............................................................................................... 6

*Finjan, Inc. v. Juniper Networks, Inc.*,
 3:17-cv-05659-WHA (N.D. Cal. Sept. 29, 2017) ................................................................ 4, 5

*Gonzales v. CarMax Auto Superstores, LLC*,
 840 F.3d 644 (9th Cir. 2016) ................................................................................................... 2

*Inamed Corp. v. Kuzmak*,
 275 F. Supp. 2d 1100 (C.D. Cal. 2002), *aff'd*, 64 F. App'x 241 (Fed. Cir. 2003) .................... 2

*Pandrol USA, LP v. Airboss Ry. Prods., Inc.*,
 320 F.3d 1354 (Fed. Cir. 2003) ............................................................................................... 6

*Synkloud Technologies, LLC v. Adobe, Inc.*,
 3:20-cv-07760-WHA (N.D. Cal. Nov. 3, 2020) ...................................................................... 5

**Other Authorities**

Fed. R. Civ. P. 1 .............................................................................................................................. 8

Fed. R. Civ. P. 56 ....................................................................................................................... 2, 8

Fed. R. Civ. P. 56(f)(1) .............................................................................................................. 2, 6

**I.   INTRODUCTION**

On October 8, 2021, the Court ordered the parties to engage in a "patent showdown" in which each party would select one asserted claim—"presumably the strongest case" for each party—and "file cross motions for summary judgment on the two claims (one for each party) selected for the patent showdown." Dkt. 68 ¶¶ 1-2 (Showdown Order).  The Court emphasized that "[t]he parties are limited to **ONE MOTION EACH REGARDLESS OF THE NUMBER OF ISSUES RAISED**" and that the showdown procedure was limited to direct infringement for the selected claims.  *Id.* ¶¶ 2 (emphasis in original), 8.  The Court's Showdown Order concluded by explaining that "[i]f summary judgment fails to resolve the parties' dispute over the claim(s) asserted in the showdown, counsel should be prepared for a prompt trial on the remaining issues."  *Id.* ¶ 9.

Consistent with the purpose of the showdown trial, the term "issue" broadly refers to a topic such as "standing, invalidity, noninfringement, etc.," as opposed to a particular theory *supporting* such a topic. *Id.* ¶ 2.  Nowhere does the Court's Showdown Order suggest that parties are permitted to address only selected *theories* in support of whatever "issue" the party chose to raise in the summary judgment briefing, and then silently reserve for later proceedings other theories in support of that same issue.  Making clear that the parties were required to put all their cards on the table, the Court also clarified that there was "no limit concerning [the number of] references for validity or invalidity."  Dkt. 206 at 2.

Pursuant to the Court's Showdown Order, Sonos selected claim 1 of the '885 Patent and submitted its single permitted motion for summary judgment on April 14, 2022, in which Sonos briefed the issue of direct infringement.  Dkt. 208.  On May 5, 2022, Google filed its opposition to Sonos's summary judgment motion addressing the issue of direct infringement of claim 1. Dkt. 249.  In that response brief, Google also put the issue of invalidity of claim 1 of the '885 Patent on the table, briefing theories under §§ 101 and 112.  *Id.* at 11-25.  Accordingly, Google's brief not only opposed Sonos's motion for summary judgment of infringement, but also effectively cross-moved for summary judgment of invalidity.  Google's brief said nothing about reserving for trial

1  other theories supporting its claim of invalidity.[1]  Sonos replied on May 19, 2022, addressing both
2  Google's non-infringement and invalidity arguments.  Dkt. 274.

3        On July 21, 2022, the Court ruled in Sonos's favor on the issues of infringement and validity
4  with respect to claim 1 of the '885 patent.  Dkt. 309.  In view of this ruling, the Court ordered
5  Google to "show cause as to why the Court should not *sua sponte* enter summary judgment in favor
6  of Sonos on the issue of validity of claim 1 of the '885 patent."  Dkt. 339 at 2.

7  **II.   ARGUMENT**

8        Federal Rule of Civil Procedure 56 permits a court to grant summary judgment in favor of
9  a nonmovant after giving notice and a reasonable time to respond.  Fed. R. Civ. P. 56(f)(1).  In this
10 regard, the Ninth Circuit has "long recognized that, where the party moving for summary judgment
11 has had a full and fair opportunity to prove its case, but has not succeeded in doing so, a court may
12 enter summary judgment *sua sponte* for the nonmoving party."  *Albino v. Baca*, 747 F.3d 1162,
13 1176 (9th Cir. 2014).  In fact, the Supreme Court has explained that "district courts are widely
14 acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing
15 party was on notice that she had to come forward with all of her evidence."  *Id.* (quoting *Celotex
16 Corp. v. Catrett*, 477 U.S. 317, 326 (1986)); *see also, e.g.*, *Inamed Corp. v. Kuzmak*, 275 F. Supp.
17 2d 1100, 1135 (C.D. Cal. 2002), *aff'd*, 64 F. App'x 241 (Fed. Cir. 2003); *Cap Exp., LLC v. Zinus,
18 Inc.*, 722 F. App'x 1004, 1007-08 (Fed. Cir. 2018).  In sum, this Court may grant summary
19 judgment *sua sponte* "if, drawing all inferences in favor of the moving party, there are no genuine
20 issues of material fact, the moving party has been given reasonable notice that the sufficiency of
21 his or her claim will be in issue, and the nonmoving party is entitled to summary judgment as a
22 matter of law."  *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 654-55 (9th Cir. 2016)
23 (citation omitted).

---

[1] Indeed, in its *own* motion for summary judgment of non-infringement and invalidity as to claim 13 of the '615 Patent, Google argued at length that that claim was invalid based on prior art.

### A. **Google Was On Notice That, If It Put Invalidity At Issue, It Had To Support The Claim With All Theories On Which It Wished To Rely At Trial.**

The Court should enter summary judgment of validity in favor of Sonos. Google was given more than reasonable notice that, once Google made invalidity an issue in the patent showdown briefing, it had to come forward with its complete defense on that issue. Nothing in the showdown orders in the case, or the Court's past showdown procedures, suggested that a party could brief select theories for an issue, whether it be infringement, non-infringement, or invalidity, and also strategically (and silently) reserve *other* theories in support of that issue for trial. For example, there is no doubt that, had Sonos only briefed a literal infringement theory that the Court rejected as a matter of law, Sonos would not have been permitted to then try an unbriefed, back-up doctrine of equivalents theory at the showdown trial. Indeed, such a practice would frustrate the primary goal of the showdown procedure: to efficiently resolve a subset of the claims and provide key information about the value of those claims for settlement of the larger case.

Here, Google strategically decided to put the issue of invalidity on the table, saddling Sonos with having to not only respond to Google's non-infringement arguments but also address two different theories of invalidity in a 15-page reply brief. In this Court's words, Google "cross move[d] for summary judgment of noninfringement and invalidity" of claim 1 of the '885 Patent. Dkt. 309 at 1 (Order on Summary Judgment). That Google did not expressly label its opposition to Sonos's motion as a cross-motion for summary judgment is irrelevant, as the implications of Google raising the issue of invalidity were clear: Google sought a judgment as a matter of law that claim 1 was invalid. *See, e.g.*, *DC Comics v. Pac. Pictures Corp.*, No. 10-cv-3633, 2013 WL 12458031, at *1 (C.D. Cal. Feb. 21, 2013) (treating paper "not formally noticed as a cross motion" as a cross motion because "its effect was the same"); *Cassidy v. United States*, 875 F. Supp. 1438, 1442 (E.D. Wash. 1994) ("Although the Plaintiffs have not [formally] filed a cross-motion for summary judgment, the substance of their response brief can be reasonably construed as not only opposing the Defendants' motion, but also seeking judgment as a matter of law."); Dkt. 249 at 12 (Google opposition brief) (arguing, as a matter of law, that "Claim 1 of the '885 patent fails to meet either step of the Supreme Court's two-step framework in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,

573 U.S. 208 (2014)"), 25 (asking this Court to "find that the asserted claim lacks an adequate written description").

Now that the Court has rejected Google's leading invalidity theories, Google should not be given a second bite at the apple. Indeed, the Court's past practice in patent showdowns gave Google ample notice that once Google made invalidity an issue in the patent showdown briefing, any theories for that issue that Google did *not* bring forward in its briefing would be considered waived.

For example, in *Finjan, Inc. v. Juniper Networks, Inc.*, the parties engaged in a patent showdown over claim 10 of U.S. Patent No. 8,677,494. Finjan, the patentee, selected claim 10 and limited its affirmative summary judgment briefing to the issue of direct infringement, setting forth both literal and doctrine of equivalents theories. *See* 3:17-cv-05659-WHA (N.D. Cal. Sept. 29, 2017), Dkt. 98. Juniper opposed by not only addressing both theories of infringement but also by putting the issue of invalidity on the table, advancing a subject matter eligibility theory under § 101 and an indefiniteness theory under § 112. *See Finjan*, Dkt. 126. In turn, Finjan's reply addressed both Juniper's non-infringement arguments and the issue of invalidity that Juniper brought into the showdown proceeding. *See Finjan*, Dkt. 154.

In its showdown summary judgment order, the Court rejected Juniper's § 112 theory but declined to rule on the § 101 theory until it had the benefit of a trial record. *Finjan*, Dkt. 189 at 12, 20. Thus, the only invalidity theory that Juniper was allowed to advance at the patent showdown trial was its argument based on § 101. *Id.* at 20-21. In other words, because Juniper put the issue of invalidity in play, but only advanced arguments based on §§ 101 and 112, the Court effectively found that Juniper forfeited any other invalidity theory, including arguments based on §§ 102 and 103 theories.

This is confirmed by the Court's Final Pretrial Order. *Finjan*, Dkt. 301. In the parties' *proposed* joint final pretrial order, Juniper contended that Claim 10 was "invalid under §§ 102 and 103," and that even though it had not raised these theories in response to Finjan's motion for summary judgment of non-infringement, it had not waived them. *Finjan*, Dkt. 262 at 6 n.3. Finjan, by contrast, argued that "Juniper has waived the [§§ 102 and 103] defenses identified in footnote 3 below by not raising them in its opposition to Finjan's motion for summary judgment pursuant to

1   the schedule set by the Court." *Id.* at 6 n.2.  This Court made clear that the showdown trial would

2   not include the invalidity theories that Juniper failed to raise at the showdown summary judgment

3   phase.  *Finjan*, Dkt. 301 (Final Pretrial Order).  The Court also made clear that the "final pretrial

4   order supersedes the complaint and answer with respect to Claim 10 of the United States Patent

5   No. 8,677,494 ("the '494 Patent") except to the extent it does not reach the issues of prosecution

6   laches, inequitable conduct, and unclean hands." *Id.* at 1.  By not reserving the §§ 102 and 103

7   theories, as the Court did with certain of Juniper's equitable defenses, those theories were clearly

8   off the table.

9   As another example, in *Synkloud Technologies, LLC v. Adobe, Inc.*, the parties engaged in

10  a patent showdown over claim 9 of U.S. Patent No. 8,868,690.  The patentee, Synkloud, selected

11  claim 9 and limited its affirmative summary judgment briefing to the issue of direct infringement

12  under a literal infringement theory.  3:20-cv-07760-WHA (N.D. Cal. Nov. 3, 2020), Dkt. 121.

13  Adobe opposed the motion for summary judgment, addressing not only the issue of infringement

14  but also cross-moving for summary judgment of invalidity under § 101.  *Synkloud*, Dkt. 128.  On

15  reply, Synkloud addressed Adobe's non-infringement arguments.  *Synkloud*, Dkt. 135.

16  Importantly, Synkloud did not engage with Adobe's attempt to bring the issue of invalidity

17  into the patent showdown.  *See id.*  Synkloud instead moved to strike Adobe's injection of this issue

18  into the showdown briefing as a violation of the Court's showdown order.  *Synkloud*, Dkt. 136.

19  The Court ultimately granted Synkloud's motion to strike, reasoning that "Adobe's cross-motion

20  is not consistent with the [Court's showdown order]" and that if the Court ruled otherwise, "it would

21  place Synkloud at a distinct disadvantage for *its own summary judgment motion* — requiring it to

22  address Adobe's opposition to its infringement claim *and* defend against invalidity contentions for

23  the first time in just one, 15-page reply." *Synkloud*, Dkt. 146 at 2 (emphasis in original).

24  *Finjan* and *Synkloud* put Sonos and Google on notice as to at least two critical aspects of

25  the Court's showdown procedure.  First, if Sonos or Google were to brief an issue in the showdown

26  proceeding, any theories for that issue that were not briefed would be forfeited.  Second, if a party

27  were to inject an issue into the showdown proceeding as a defense to the other party's motion, the

28

1    other party would decide whether that issue should advance in the showdown given that the party
2    injecting the issue was in violation of the Court's showdown order.

3    This procedure is entirely consistent with the general rule that an "affirmative defense must
4    be raised in response to a summary judgment motion, or it is waived." *Pandrol USA, LP v. Airboss*
5    *Ry. Prods., Inc.*, 320 F.3d 1354, 1366 (Fed. Cir. 2003) (quoting *Diversey Lever, Inc. v. Ecolab,*
6    *Inc.*, 191 F.3d 1350, 1353 (Fed. Cir. 1999)).  Thus, while Google wasn't required to raise *this*
7    affirmative defense in the showdown briefing, it did so, and in so doing it forfeited any parts of the
8    defense that it failed to brief.  *See Albino*, 747 F.3d at 1177 ("As the movants for summary judgment
9    in this case, defendants were on notice of the need to come forward with *all their evidence* in
10   support of this motion, and they had every incentive to do so." (emphasis added)).

11   Here, because Google did not heed the Court's emphasis that each party was allowed ***only***
12   ***one*** motion for summary judgment no matter the number of issues raised, Sonos could have moved
13   to strike Google's opposition brief for raising the issue of invalidity as an improper cross-motion
14   for summary judgment.  If Sonos had done so, the issue of invalidity would not have been in play
15   in the showdown briefing and resolvable by the Court.  But Sonos did not move to strike and the
16   Court ruled in Sonos's favor on the issue of invalidity.

17   In addition to being put on notice by this Court's multiple prior orders and practice in past
18   showdowns, Google was also put on notice by the Court's Order to Show Cause and has been given
19   an opportunity to respond via briefing and supporting exhibits that Google has been permitted to
20   file simultaneously with this one.  No more than that is required.  *See, e.g.*, Fed. R. Civ. P. 56(f)(1);
21   *Albino*, 747 F.3d at 1176-77.  Google cannot complain at this late hour that it is not prepared to
22   make that showing.  Had Google been permitted to try its remaining invalidity theories at the
23   showdown trial—that is, if the Court rejected Sonos's anticipated motions to exclude those theories,
24   *see infra* II.C—the parties were prepared to try this claim in approximately two weeks.  Google
25   should thus be even *more* prepared to make its case than a party ordinarily would be on summary
26   judgment, having presumably already identified the precise exhibits on which it would rely,
27   planned its order of witnesses, and developed the direct examination that it would conduct in its
28   affirmative case to try to carry its burden of proving invalidity by clear and convincing evidence.

1    Google cannot have its cake and eat it too. Google made a strategic decision to make Sonos
2    respond in a 15-page reply brief to multiple theories of invalidity on top of responding to Google's
3    non-infringement arguments. Google also apparently intended to silently reserve its *other*
4    invalidity theories as a back-up defense at trial. Google must live with the results of its strategic
5    decisions, and the Court should enter summary judgment of validity of claim 1 of the '885 Patent.

### B. Google Had More Than Ample Opportunity To Develop Its Prior Art Arguments, But Has Yet To Develop A Colorable Theory.

Google was not just on notice that its invalidity theories were subject to summary judgment, it also had extensive time and opportunity to develop its claims. Despite this, Google has failed to develop a colorable theory of anticipation or obviousness and has instead re-done its prior art theories multiple times. For example, in Google's December 2021 invalidity contentions, Google identified a "Bose Lifestyle 50 System" product purportedly available in 2001 and included an invalidity chart mapping a "Bose Lifestyle 50 System Owner's Guide" dated October 17, 2001 against the '885 Patent. Ex. 1.[2] But the 2001 Bose Lifestyle 50 System clearly did not teach a "zone scene." Recognizing this deficiency, Google's expert, Dr. Schonfeld, served an expert report on June 22, 2022 that added unrelated Bose products from 2004 (i.e., Bose "Lifestyle SA2" and/or "Lifestyle SA3") and an incompatible, undated Bose communication protocol (i.e., "Bose Link") to the 2001 Bose Lifestyle 50 System. *See, e.g.*, Ex. 2, at ¶¶ 650-658. Not only was it improper to include these unrelated Bose products and incompatible communication protocol as part of the Bose Lifestyle 50 System, this new amalgamated "system" still did not teach a "zone scene." *See, e.g.*, Ex. 3, at ¶¶ 756-804, 835-860. After these flaws were identified by Sonos's expert, Dr. Almeroth, in his July 27, 2022 rebuttal expert report, Dr. Schonfeld served a supplemental expert report on August 29, 2022 that relied on yet *another* unrelated and incompatible Bose product from 2006 (i.e., the Bose FreeSpace) as allegedly teaching a "zone scene." Ex. 4, at ¶¶ 43-45, 70. However, even if the Bose FreeSpace qualifies as prior art in view of Sonos's December 21, 2005 invention

---

[2] All numbered exhibits cited in this brief are attached to the Declaration of Alyssa Caridis filed in support of this brief and concurrently herewith.

date and even if it could somehow be combined with the Bose Lifestyle 50 System, the Bose FreeSpace *still* does not teach a "zone scene." *See, e.g.*, Ex. 3, at ¶¶ 246-250, 764-766.

Google did the same thing for its Squeezebox system. Recognizing the deficiencies in Google's invalidity contentions, Dr. Schonfeld relied on new source code and testing to support his invalidity opinion that Squeezebox allegedly teaches a "zone scene." *Compare* Ex. 5, at pp. 17-26 *with* Ex. 2, at ¶¶ 352-380, 383-551. However, after reviewing Dr. Almeroth's rebuttal report, Dr. Schonfeld supplemented his invalidity opinions for Squeezebox in an attempt to address its glaring deficiencies. *See, e.g.*, Ex. 4, at ¶¶ 28-38. Squeezebox clearly does not teach a "zone scene." *See, e.g.*, Ex. 3, at ¶¶ 570-632.[3]

Google's shifting anticipation and obviousness theories make clear that its choice not to brief summary judgment on these theories had another strategic motivation as well, namely Google's knowledge that it had no viable theory to brief on summary judgment in April and May 2022. The Court is not obligated to, nor should it, allow Google to keep iterating new theories on what would have been the eve of trial. It is not hard to see why Google continues, at this late stage, to cast about for a new theory—none of the prior art Google relies on teaches, for example, a "zone scene," let alone two "zone scenes" with an overlapping "zone player." At this point, enough is enough.

Courts are required to apply the rules of civil procedure, including Rule 56, "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Google made a strategic decision to not press these theories on summary judgment, in favor of other invalidity theories. There is no reason to think that Google held back its *stronger* theories for invalidity. The parties should not waste a jury's time with Google's apparently third- and fourth-

---

[3] Google's other primary prior art reference is the 2005 Sonos system. However, Google's invalidity theories with respect to this Sonos system also fail. For example, the grouping process that Google relies on as allegedly teaching a "zone scene" is the very grouping process that the '885 Patent itself distinguishes from the claimed "zone scene" technology. *See, e.g.*, Ex. 6 at 8:30-56; *see also* Ex. 3, at ¶¶ 281-290. Google's multiple attempts to supplement its invalidity theory based on the 2005 Sonos system cannot cure this fundamental flaw in its contentions. *See, e.g.*, Ex. 4, at ¶¶ 12-18.

most compelling invalidity theories after the Court has already soundly rejected the two other invalidity arguments that Google saw fit to prioritize.

There is no valid reason why Google could not have made these arguments in its summary judgment briefing, once it decided to inject invalidity into the briefing.[4]  Google believed it was entitled to brief invalidity as to the '885 Patent, and it did, on two other grounds.  And Google's motion for summary judgment of invalidity as to the '615 Patent focused primarily on prior art invalidity grounds.  It is not plausible that Google was prevented from making these arguments regarding the '885 Patent due to page limitations or any other procedural limit on the showdown motions.[5]  Instead, the only reasonable conclusion is that Google strategically held back its prior art-based invalidity theories because (1) those claims were less meritorious than its now-*rejected* theories of non-infringement and invalidity under §§ 101 and 112 and/or (2) Google needed more time to allow it to try to come up with a colorable prior art invalidity argument.  The Court need not, and should not, reward Google's gamesmanship by giving it yet another bite at the apple.

### C. Had The Showdown Trial Proceeded, Sonos Would Have Moved To Strike Or Exclude Google's Second Wave Of Back-Up Invalidity Theories.

Google's prior art-based invalidity arguments would never have reached the jury.  If the showdown trial had proceeded and Google tried to advance them, Sonos was prepared to fight those issues through motions to strike Google's expert report, motions to exclude Google's expert's opinion, and motions for judgment as a matter of law, among others.

It is irrelevant that the parties continued expert discovery on the validity of the '885 Patent until the Court's Order to Show Cause issued or that draft pretrial filings exchanged by the parties referenced Google's invalidity claims.  Sonos continued to participate in this expert discovery and prepared draft proposed pretrial exchanges based on its understanding that Google intended to try

---

[4] Google's ongoing search for a colorable theory with adequate factual support is not a valid reason for its delay in making these arguments in a case filed almost two years ago.

[5] If that were the case, Google could have asked the Court for additional pages, either in its opening summary judgment brief—which addressed noninfringement of the '885 patent—or in its brief in opposition to Sonos's motion for summary judgment.  But if these arguments were not strong enough to merit asking the Court for additional pages, they do not merit occupying a jury's limited time.

1  to prove invalidity at the showdown trial, but Sonos did so without prejudice to Sonos moving to
2  exclude Google's invalidity arguments.  Had Sonos prevailed in excluding Google's evolving prior
3  art theories, the pretrial materials would have been revised accordingly.  Similarly, while Sonos's
4  now-mooted Motion to Realign the Parties for the showdown trial assumed that Google would
5  "try[] to prove its invalidity defenses," Dkt. 338 at 2 (emphasis omitted), it made clear that Sonos
6  believed that the trial would focus primarily on Sonos's affirmative claims for willful infringement
7  and damages, *e.g.*, *id.* at 9-10.  Sonos's Motion to Realign did not need to assume that Google's
8  invalidity arguments would be excluded, because the ultimate relief sought by that motion would
9  have been the same either way—Sonos presenting its affirmative claims first, followed by any
10 defensive case by Google.  *See id.* at 9-10, 12.

   Regardless, as discussed *supra* II.A-II.B., Google has already had ample notice and
12 opportunity to develop and make its case on invalidity.  Now that the showdown trial will not
13 proceed in October 2022, there is no reason to put this decision off to a future pretrial conference,
14 much less to allow Google to present its ever-evolving prior art theories to a jury.

**III.   CONCLUSION**

   For all the foregoing reasons, the Court should enter summary judgment in favor of Sonos
17 on the issue of validity of claim 1 of the '885 patent.

Dated: September 15, 2022

By: */s/ Clement S. Roberts*

CLEMENT SETH ROBERTS
BAS DE BLANK
ALYSSA CARIDIS
EVAN D. BREWER

ORRICK, HERRINGTON & SUTCLIFFE LLP

SEAN M. SULLIVAN
COLE B. RICHTER

LEE SULLIVAN SHEA & SMITH LLP

*Attorneys for Sonos, Inc.*