QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
Melissa Baily (Bar No. 237649)
melissabaily@quinnemanuel.com
Lindsay Cooper (Bar No. 287125)
lindsaycooper@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:     (415) 875-6600
Facsimile:      (415) 875-6700

Attorneys for GOOGLE, LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| GOOGLE LLC,<br><br>        Plaintiff,<br><br>    vs.<br><br>SONOS, INC.,<br><br>        Defendant. | CASE NO. 3:20-cv-06754-WHA<br>Related to CASE NO. 3:21-cv-07559-WHA<br><br>**GOOGLE LLC'S REPLY IN SUPPORT OF ITS MOTION FOR LEAVE TO AMEND INVALIDITY CONTENTIONS PURSUANT TO PATENT L.R. 3-6**<br><br>Date:      October 13, 2022<br>Time:      8:00 a.m.<br>Location: Courtroom 12, 19th Floor<br>Judge:     Hon. William Alsup |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ...................................................................................................... 1

II. GOOGLE HAS ESTABLISHED GOOD CAUSE FOR ITS AMENDMENT .................... 2

    A. The Court Should Grant Google Leave To Amend Because Google Was Diligent In Moving To Amend .................................................................................. 3

        1. The Law In This District Is Clear: A Party Is Diligent Under Patent Local Rule 3-6(a) Where, As Here, It Moves For Leave To Amend Less Than A Month After Receiving A Modified Claim Construction .................................................................................. 3

        2. Sonos Does Not Cite A Single Case Denying A Motion For Leave To Amend Filed Within Thirty Days Of The Court Adopting A Construction Different From That Proposed By The Parties ....................... 6

    B. Google's Amendments Do Not Violate The Case Management Order .................... 9

    C. The Lack Of Prejudice To Sonos Provides A Second, Independent Ground For Granting Google's Motion To Amend .............................................................. 10

        1. Google's Amendments Do Not Prejudice Sonos ..................................... 10

        2. Google Proposed Amendments Are Not A "Repudiation" Of Its Summary Judgment Arguments .............................................................. 11

III. GOOGLE HAS NOT INCLUDED UNRELATED AMENDMENTS ............................. 14

IV. CONCLUSION ........................................................................................................ 15

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Angioscore, Inc. v. TriReme Medical, Inc.*,
   2015 WL 75187 (N.D. Cal. Jan. 6, 2015) ................................................................................ 7

*Apple, Inc. v. Samsung Electronics Co., Ltd.*,
   2012 WL 5632618 (N.D. Cal. Nov. 15, 2012) ...................................................................... 10

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
   2021 WL 4923370 (N.D. Cal. Aug. 10, 2021) ..................................................................... 4, 5

*Cisco Systems, Inc. v. Teleconference Systems, LLC*,
   2012 WL 9337627 (N.D. Cal. June 11, 2012) ........................................................................ 8

*Fitbit, Inc. v. Aliphcom*,
   2017 WL 11673584 (N.D. Cal. July 21, 2017) ....................................................................... 8

*Fluidigm Corp. v. IONpath, Inc.*,
   2020 WL 5073938 (N.D. Cal. Aug. 25, 2020) ................................................................... 9, 11

*Impinj, Inc. v. NXP USA, Inc.*,
   2022 WL 2125135 (N.D. Cal. Jan. 14, 2022) ...................................................................... 4, 5

*Personalweb Tech., LLC v. Github, Inc.*,
   2016 WL 3519292 (N.D. Cal. June 28, 2016) ..................................................................... 3, 4

*Radware Ltd. v. F5 Networks, Inc.*,
   2014 WL 3728482 (N.D. Cal. Jan. 1, 2014) ........................................................................ 4, 5

*Slot Speaker Tech., Inc. v. Apple, Inc.*,
   2017 WL 1278744 (N.D. Cal. Apr. 6, 2017) .................................................................. 3, 4, 8

*Synchronoss Techs., Inc. v. Dropbox Inc.*,
   2018 WL 5619743 (N.D. Cal. Oct. 29, 2018) ....................................................................... 10

*Tech. Properties Ltd. LLC v. Canon Inc.*,
   2016 WL 1360756 (N.D. Cal. Apr. 6, 2016) ................................................................. 4, 5, 7

## I. INTRODUCTION

Patent Local Rule 3-6(a) provides a clear and simple rule that allows a party to amend its invalidity contentions in response to "[a] claim construction by the Court different from that proposed by the party seeking amendment." Google followed both the letter and spirit of the Rule. Google served invalidity contentions based on the parties' proposed claim construction positions for the term "playback queue." After the Court rejected both parties' proposed constructions—materially broadening Google's construction and materially narrowing Sonos's construction—Google promptly updated and filed its proposed amendments just twenty-eight days later to address the Court's new, modified construction. These facts are dispositive.

Unable to dispute that Google was diligent in moving to amend after receiving the Court's modified claim construction, Sonos argues that the relevant date for assessing diligence should be the date on which the parties submitted their proposed claim constructions. But that is not the law in this District. Google's Motion showed that the law in this District is clear: where the court adopts a construction that differs from that proposed by the parties, a moving party satisfies the diligence requirement by filing its motion for leave to amend within thirty days of the court's ruling. Sonos's Opposition fails to meaningfully distinguish Google's authorities and does not cite to a single authority denying a motion for leave to amend that was filed within thirty days of the court issuing a claim construction that does something other than simply adopt one of the parties' proposed constructions.

Faced with the reality that Patent L.R. 3-6(a) permits Google's amendment, Sonos claims that this Court's Case Management Order (Dkt. No. 67, "CMO") "overrode the procedure of Patent L.R. 3-6." Not so. The CMO merely sets forth a procedure for providing back-up contentions in the event another party's proposed construction is adopted. But here, Sonos's proposed construction was not adopted. Sonos has not cited anything in the CMO that indicates the Court intended to overrule Patent Local Rule 3-6. In fact, Sonos fails to mention that the CMO expressly states that the parties must "follow" the "Patent Local Rules," including "Rules 3-1 to **3-6**."

Finally, Google showed that its Motion should also be granted because there is no prejudice to Sonos. Fact discovery has yet to close and trial is still nearly eight months away. Sonos does not

seriously dispute that it has more than enough time to perform any investigation into Google's amendments that it believes may be needed. Sonos instead bases its prejudice arguments on two incorrect assertions: (i) that Google argued a system could not have both a local playback queue and a cloud queue, and (ii) that Google's proposed amendments point to "the same functionality" Google argued was a "local playback queue" at summary judgment on U.S. Patent No. 9,967,615 ("'615 patent") and now calls that functionality a "remote playback queue." Sonos is wrong on both counts. Google never claimed that a system, such as the YouTube Remote, could not include one mode that uses a local playback queue and another mode that uses a cloud queue. Google simply showed that the allegedly infringing YouTube applications long ago eliminated the local playback queue mode of operation. Google's prior art YouTube Remote is different because it has two separate modes of operation: a non-party mode (which uses a local playback queue) and a party mode (which uses a remote queue). The invalidity issues at summary judgment for the '615 patent only related to the non-party mode. Google's proposed amendments, in contrast, are directed at the "party mode," which allows a user to invite one or more guests to join a "party" and create and edit a "party playlist" that is stored on a cloud server. The party playlist in the cloud dictates playback on playback devices that are connected to the party. Thus, the functionality at issue in the '615 summary judgment briefing and the functionality in Google's proposed amendments are clearly different, and Sonos's attempt to characterize Google's positions as contradictory is simply wrong. The Court should grant Google's Motion.

## II.   GOOGLE HAS ESTABLISHED GOOD CAUSE FOR ITS AMENDMENT

Sonos argues that Google should not be granted leave to amend because, according to Sonos, (1) Google "did not act diligently to invoke Patent Local Rule 3-6(a)" (Dkt. No. 344 ("Opp.") at 7-14); (2) "Google's amendment violates the Court's Case Management Order" (*Id.* at 14-17), and (3) Sonos would suffer prejudice if the amendment were granted (*Id.* at 18-22). None of Sonos's arguments have merit, as discussed in detail below.

A.  **The Court Should Grant Google Leave To Amend Because Google Was Diligent In Moving To Amend**

1.  <u>The Law In This District Is Clear: A Party Is Diligent Under Patent Local Rule 3-6(a) Where, As Here, It Moves For Leave To Amend Less Than A Month After Receiving A Modified Claim Construction</u>

Sonos argues that Google was not diligent in moving to amend its contentions. But this argument depends upon the faulty premise that diligence should be assessed from the date on which the parties submitted their proposed claim constructions for the term "playback queue." Sonos's contention is contrary to the law in this District. When the Court does not adopt either of the parties' proposed constructions, as is the case here, diligence is measured from the date of the Court's claim construction ruling. Dkt. No. 336 ("Mot.") at 5 (citing cases). Indeed, the law in this District is clear: "A moving party is diligent where it moves for leave to amend within thirty days of an order adopting a construction that differs from that proposed by the party seeking amendment." *Id*. Here, it is undisputed that this Court adopted a construction of "playback queue" that differs from the constructions proposed by Google and Sonos on August 2, 2022, and that Google moved for leave to amend to address the Court's modified construction just twenty-eight days later, on August 30, 2022. These facts are dispositive. No further analysis is required.

Tellingly, Sonos is unable to meaningfully distinguish the authorities Google cited in its Motion. For example, the *Personalweb Tech., LLC v. Github, Inc.*, 2016 WL 3519292 (N.D. Cal. June 28, 2016) and *Slot Speaker Tech., Inc. v. Apple, Inc.*, 2017 WL 1278744 (N.D. Cal. Apr. 6, 2017) decisions each surveyed the case law in the District and concluded that where the court does not simply adopt one parties' proposed construction, leave to amend is "timely" under Patent Local Rule 3-6(a) if it is filed within "30 days" of the claim construction ruling. Mot. at 5. Sonos does not attempt to grapple with these courts' conclusions. Sonos instead notes that in *Personalweb*, "the motion was agreed by both parties" and in *Slot Speaker* the court denied leave because it had adopted the non-moving parties' proposed constructions without modification. Opp. at 12. These distinctions are irrelevant because they do not contradict those courts' summaries of the law, and they do not apply to the facts of this case (where the Court did not adopt either parties' proposed construction).

Google also cited numerous other authorities—*Tech. Properties Ltd. LLC v. Canon Inc.*, 2016 WL 1360756 (N.D. Cal. Apr. 6, 2016), *Impinj, Inc. v. NXP USA, Inc.*, 2022 WL 2125135, at *3 (N.D. Cal. Jan. 14, 2022), *Radware Ltd. v. F5 Networks, Inc.*, 2014 WL 3728482, at *3 (N.D. Cal. Jan. 1, 2014), and *Cellspin Soft, Inc. v. Fitbit, Inc.*, 2021 WL 4923370, at *2 (N.D. Cal. Aug. 10, 2021)—that are in accord with the recitation of the law in *SlotSpeaker* and *Personalweb*. Each of these cases granted a motion for leave to amend where, as here, the court did not simply adopt the construction proposed by the parties and the motion was filed within thirty days of the claim construction ruling (and in some cases even later). Mot. at 9. Sonos urges the Court to ignore Google's authorities because, according to Sonos, the courts in these cases "drastically altered the proposed constructions," whereas here the court only "slightly altered the construction that Google proposed." Opp. at 13-14. Sonos's argument is easily dismissed. There is no requirement in Patent Local Rule 3-6(a) that the Court's modified construction constitute a substantive alteration of the parties' proposed construction, and, even if there were, Google has shown that the Court's modified construction would satisfy that requirement.

Sonos's attempt to read an additional requirement into Patent Local Rule 3-6 that the construction adopted by the Court be "drastically" different from the constructions proposed by the parties is unsupported and incorrect. None of the authorities cited by Google or Sonos hold that Patent Local Rule 3-6 includes this additional requirement, as the language of the Local Rule plainly requires only that claim construction by the Court be "different from that proposed by the party seeking amendment." In fact, multiple cases make clear that no such requirement exits.

For example, the court in *Tech Properties* squarely rejected the argument Sonos is attempting to raise. Just as in the instant case, the *Tech Properties* court adopted a "modified version" of the parties' construction and found that good cause existed under Patent Local Rule 3-6(a) to amend plaintiff's infringement contentions because "the district court in this case did not simply adopt[] the constructions proposed by Defendants." 2016 WL 1360756, at *4. The non-movant urged the court to deny the amendment because the court's modified construction was not "so different that amendment infringement contentions were necessary." *Id.* at *4 n.4. The court rejected this argument, finding that there was no requirement in Patent Local Rule 3-6 to show that

the court's modified construction was "so different" from the parties' proposed constructions. *Id*. It was enough that the movant "served proposed amended contentions less than 30 days after the court's order." *Id*. at *3.

Similarly, in *Impinj* the non-movant argued that the relevant date for diligence should be the date when the parties' constructions were proposed because the "Court adopted a 'foreseeable' claim construction 'modifying' the parties' proposal." 2022 WL 2125135, at *4. The *Impinj* court "decline[d] to adopt Impinj's unsupported attempts to inject an 'unforeseeable' claim construction order requirement" because it "misstate[d] the legal framework followed in this district." *Id*. The court explained that courts in the Northern District of California "consider diligence from the date of the claim construction order 'where the moving party's proposed amendments addressed a construction that neither party proposed[].'" *Id*. Since the motion to amend at issue in *Impinj* was filed within a month of the court's adoption of a modified version of the parties' proposals, the court found the motion timely. *Id*.

Likewise, the courts in *Radware* and *Cellspin* granted leave to amend after the adoption of modified constructions, without considering whether the constructions drastically or slightly altered the parties' proposed constructions. *Radware*, 2014 WL 3728482, at *3; *Cellspin*, 2021 WL 4923370, at *2. In fact, these decisions rejected the non-movants' argument that the amendments were not justified by the court's modified constructions and concluded that it was enough that the "presiding judge's constructions were ultimately different from either definition proposed by the parties," *Cellspin*, 2021 WL 4923370, at *2, and that the proposed amendments "relate to the court's claim constructions." *Radware*, 2014 WL 3728482, at *3.

Even if Sonos was right (it is not) that the Court's modified claim construction must constitute a substantive alteration of the parties' proposed construction, that is the case here. Google's Motion showed how the Court's modified construction materially broadened the proposed construction advanced by Google. Mot. at 6. Sonos's assertion that the Court made only "slight modifications" to Google's construction of "playback queue" or adopted it "nearly word-for-word" is factually inaccurate. Opp. at 9-10. Google's Motion explained that the Court's modified construction materially broadened the proposed construction advanced by Google. Mot. at 6.

Indeed, as even Sonos concedes, the Court rejected two of the three limitations that Google included in its construction. Dkt. No. 316 ("Order") at 6-8; Opp. at 9-10. Most notably, Google's construction of "playback queue" required that the content be "selected by the user" of the control device for playback. *Id*. at 5. Google argued that where a playback queue is populated with content selected by entities other than the user of the control device it does not satisfy the "playback queue" limitation. *See, e.g.*, Dkt. No. 210-3 ¶ 78 (arguing that Sonos had not satisfied the playback queue limitation because the upNextVideoID that it relies upon is for a "recommended video" and thus "not 'selected by the user for playback.'"). In its August 2, 2022 Order, the Court rejected this aspect of Google's proposed construction. *See* Mot. at 5. The Court held that the "playback queue" was not restricted to a playlist in which the content was "selected by the user for playback," as Google had proposed, and instead was broad enough to cover playback queues that included content selected by entities other than the user. *Id.* at 6. Google's proposed amendments relate to this modified scope by providing pinpoint citations to source code (and explanation of that source code) showing that the YouTube Remote includes a "party playlist" that is populated with media selected by a group of users (the party members) for playback. *Id*. These amendments provide additional details relating to the theory in Google's initial contentions that the YouTube Remote satisfies the "remote playback queue" limitation because the Lounge server (also called the MDx server) keeps track of the current playlist. Dkt. No. 335-3 ("YTR Amended Claim Chart") at 7 ("remote playback queue" is "provided by . . . MDx server"), 9 ("The server keeps track of the playlist."). Sonos's assertion that the Court made only "slight modifications" to Google's construction of "playback queue" or adopted it "nearly word-for-word" is factually inaccurate. Opp. at 9-10.

        2.      <u>Sonos Does Not Cite A Single Case Denying A Motion For Leave To Amend Filed Within Thirty Days Of The Court Adopting A Construction Different From That Proposed By The Parties</u>

Sonos also fails to cite a single case holding that the relevant date for assessing diligence is the date on which the parties submitted their proposed claim constructions where, as here, the court modified the parties' constructions. Nor does Sonos point to any decision denying a motion for leave to amend contentions that was filed within thirty days of the court adopting a construction different from that proposed by the parties.

Indeed, Sonos relies upon *Angioscore, Inc. v. TriReme Medical, Inc.*, 2015 WL 75187 (N.D. Cal. Jan. 6, 2015) to argue that Patent Local Rule 3-6 requires Google to show the Court's modified construction is drastically different than the constructions proposed by the parties. Opp. at 11. More specifically, Sonos cites to a single sentence in this decision which states "[w]hen the party seeking to amend contends that the Court adopted a different claim construction than was proposed, the party must also demonstrate that [] the Court's construction was 'so different that amended infringement contentions were necessary.'" Opp. at 11. Sonos's reliance on this sentence is misplaced for multiple reasons. <u>First</u>, the sentence is dicta. The court in *Angioscore* did not engage in any analysis of the court's claim construction or whether it was "so different" from the parties' proposed constructions. Rather, the court assessed plaintiff's diligence based on the amount of time that had elapsed since the court issued its claim construction ruling and concluded that plaintiff was not diligent because it waited *five months* after the claim construction ruling in the case, and "mere months before trial," to file its proposed amendments. *Angioscore*, 2015 WL 75187, at *5. Applying the court's analysis here, Google was diligent because it filed its motion to amend less than thirty days after the Court adopted its modified claim construction and more than eight months before the trial in this case. <u>Second</u>, the sentence in the order Sonos relies upon contains quotation marks but does not cite to any supporting authority. Notably, in the more than six years that have passed since the decision was issued, there has not been a single court that has cited this aspect of the opinion. In fact, Judge Ryu—the Magistrate Judge assigned to the instant case—concluded that this aspect of *Angioscore* was not the law in this District. *Tech. Properties*, 2016 WL 1360756, at *4 n.4 ("[T]he court in *Angioscore* did not cite any authority for this additional test. The court notes that it has not found any cases following this portion of *Angioscore*, and the court respectfully declines to follow it here. Further, *Angioscore* is distinguishable, as the court denied a motion for leave to amend infringement contentions as untimely where the moving party waited five months after the claim construction and summary judgment order to seek leave to amend."). <u>Third</u>, as explained above, the Court materially broadened Google's construction of "playback queue" by holding that the playback queue may contain content selected by entities other than the user. Thus, even applying *Angioscore*, Google's Motion should be adopted.

Sonos also cites to *Cisco Systems, Inc. v. Teleconference Systems, LLC*, 2012 WL 9337627 (N.D. Cal. June 11, 2012) to argue that Google was not diligent. Opp. at 12. But *Cisco* is irrelevant because it did ***not*** involve the modification of the parties' proposed constructions—it adopted defendants' proposed construction without modification. 2012 WL 9337627, at *1. In fact, courts in this District have rejected *Cisco*'s application to facts similar to those in the instant case. For example, in *Fitbit, Inc. v. Aliphcom*, 2017 WL 11673584 (N.D. Cal. July 21, 2017), the plaintiff proposed that "server" be construed as "a component in communication, directly or indirectly, with one or more of the device and the client," which the court adopted with one modification—it replaced the term "component" with "physical computing device." *Id*. at *2. When the plaintiff moved to amend its infringement contentions in response to the modified construction of "server," the defendant, like Sonos, cited *Cisco* to argue that the date on which the parties "first proposed their construction was the proper date for determining diligence." *Id*. at *3. The *Fitbit* court disagreed and found "*Cisco* is inapposite to the facts" of its case because (i) "the plaintiff in *Cisco* did not move to amend its contentions until almost four months after the court's claim construction order," whereas the plaintiff in *Fitbit* served its amended contentions "less than one month after the claim construction order"; (ii) the court in *Cisco* simply "adopted the defendants' proposed construction of relevant terms in its claim construction order," whereas the *Fitbit* court modified the parties' construction; and (iii) the amendments in *Cisco* were "motivated by gamesmanship," whereas there is "no indicium of gamesmanship here." *Id*. at *3. *Cisco* is inapplicable to Google's Motion for the same reasons identified by *Fitbit*. *See also Slot Speaker*, 2017 WL 1278744, at *4 (distinguishing cases like *Cisco* in which the court adopts a party's proposed construction, from cases in which the court adopts a claim construction that neither party proposed, and explaining that "[c]ourts generally have granted leave to amend" in the latter situation).

Finally, Sonos string cites to a number of additional cases that are entirely irrelevant. Opp. at 11-12 (citing *O2 Micro*, *Trans Video*, and *Aylus Networks*). As Sonos admits, these cases involve parties that moved to amend three or more months after the event that provided the basis for the amendment. *Id*. Here, Google moved to amend within twenty-eight days.

### B.     Google's Amendments Do Not Violate The Case Management Order

Sonos also argues that Google's amendments violate the CMO. Opp. at 14-17. Not so. The CMO is silent regarding the scenario here: "a claim construction by the Court different from that proposed by the party seeking amendment." *See* CMO. That scenario is addressed instead by Patent Local Rule 3-6, which expressly states that good cause for amendment includes "a claim construction by the Court different from that proposed by the party seeking amendment." Faced with this reality, Sonos argues that the Court's CMO "overrode the procedure of Patent L.R. 3-6." Opp. at 15. But Sonos does not cite any provision in the CMO that indicates an intent to overrule Patent Local Rule 3-6, or the cases interpreting the Rule. In fact, the CMO expressly states that the parties must "follow" the "Patent Local Rules," including "Rules 3-1 to 3-6." CMO ¶ 22. Sonos's argument is thus contradicted by the CMO.

The CMO merely sets forth a specific process for providing back-up contentions that address proposed constructions submitted by the opposing party in its Patent Local Rule 4-2 contentions.[1] Specifically, the CMO provides that a party should disclose back-up theories responsive to the opposing parties' proposed claim constructions within twenty-eight days of receiving them and that "in the event that the other side's claim construction prevails, such party will not be allowed to assert back-up theories at that later juncture." Opp. at 14 (citing CMO ¶ 17). Here, Sonos proposed that the term "playback queue" be construed as having its "plain and ordinary meaning." Sonos did not, at the time, articulate its theory as to what the "plain and ordinary meaning" of "playback queue" was. Nevertheless, Google's invalidity contentions applied Google's understanding of how Sonos was interpreting the term "playback queue" in its infringement contentions. In particular, Sonos interpreted the term so broadly as to encompass any data construct on the Lounge server that caches media items for playback. Thus, Google showed in its original contentions that the YouTube Remote satisfies the "remote playback queue" limitation under Sonos's interpretation because the Lounge server (also called the MDx server) receives and caches playlists from a YouTube Remote

---

[1] The decision in *Fluidigm Corp. v. IONpath, Inc.*, 2020 WL 5073938, at *4 (N.D. Cal. Aug. 25, 2020) similarly addresses the time a party has to submit "theories in response to an opponent's claim construction proposal."

application. YTR Amended Claim Chart at 7 (explaining that "remote playback queue" is "provided by" "the MDx server"), 9 ("The [Lounge] server keeps track of the playlist."). Ultimately, however, Sonos's construction did *not* "prevail." The Court rejected Sonos's contention that any data construct that caches media items is a playback queue. Thus, Google's proposed amendments provide additional details showing how its disclosed theory that the Lounge server keeps track of a playlist (e.g., the "party playlist") satisfies the Court's modified construction.

To the extent the CMO is relevant, it supports Google's proposed amendments. The CMO concludes that a party is diligent where it moves to amend within twenty-eight days of receiving a new claim construction. Applying this rationale to Patent Local Rule 3-6, Google has been diligent because it moved to amend within twenty-eight days of receiving a new claim construction from the Court.

### C. The Lack Of Prejudice To Sonos Provides A Second, Independent Ground For Granting Google's Motion To Amend

Sonos does not dispute that the Court "retains discretion to grant leave to amend even in the absence of diligence so long as there is no prejudice to the opposing party." *Synchronoss Techs., Inc. v. Dropbox Inc.*, 2018 WL 5619743, at *6 (N.D. Cal. Oct. 29, 2018); *see also Apple, Inc. v. Samsung Electronics Co., Ltd.*, 2012 WL 5632618, at *5 (N.D. Cal. Nov. 15, 2012). Here, the lack of prejudice to Sonos is an additional, independent basis for granting Google's Motion.

#### 1. Google's Amendments Do Not Prejudice Sonos

Sonos does not dispute that Google's amendments do not require a change to the case schedule and that plenty of time remains before the close of fact discovery, expert reports, and trial. Indeed, Sonos received Google's proposed amendments more than three months before the close of fact discovery, more than four months before opening expert reports, and more than eight months before trial. Mot. at 7. And the YouTube Remote source code that Google's proposed amendments are based upon has been (and continues to be) available to Sonos. As Google explained in its Motion, Sonos brought three prior motions to amend its infringement contentions, and took the position that "6 weeks" before the start of the showdown would "provide Google sufficient time to respond" to numerous new infringement theories. *Id.* at 8. Sonos cannot now argue that it would

1  be prejudiced where it has eight months before trial to respond to Google's amended invalidity
2  theories. Indeed, in *Fluidigm*, this Court granted leave to amend after the service of expert reports
3  and despite the movant's lack of diligence because "two months" was enough time to respond to
4  new infringement theories. 2020 WL 5073938, at *5. Here, in contrast, Google has been diligent
5  and expert reports and trial are still months away. There is no prejudice.

6  Sonos further argues that it would be prejudiced by the amendment because "it has already
7  conducted discovery on the YouTube Remote system," including depositions of two Google
8  engineers that worked on the YouTube Remote. Opp. at 21-22. But Google's original invalidity
9  contentions included its theory that the YouTube Remote discloses a "remote playback queue" by
10 having the Lounge "server keeps track of the current playlist." YTR Amended Claim Chart at 7, 9.
11 Nothing stopped Sonos from asking those engineers about the Lounge server and the playlists the
12 server keeps track of. In any event, fact discovery remains open in this case. If Sonos believes
13 Google's proposed amendments are good cause for additional deposition time, there is nothing
14 stopping Sonos from making that request.[2]

        2.    <u>Google Proposed Amendments Are Not A "Repudiation" Of Its Summary Judgment Arguments</u>

17 Unable to identify any actual prejudice, Sonos resorts to insinuating gamesmanship, and tries
18 to characterize Google's proposed amendments as "a repudiation of the leading argument Google
19 made to justify how its old YouTube Remote products invalidate claim 13 of Sonos's '615 patent."
20 Opp. at 18. Sonos is wrong and its argument is premised on multiple incorrect assertions.

21 At the previous summary judgment hearing, Google argued that it did not infringe Sonos's
22 '615 patent because the asserted claims require a "local playback queue on the particular playback
23 device." Order at 9. More specifically, Google argued that the "local playback queue" limitation
24 requires storing the *entire* playback queue locally—not just a few individual items from the

---

[2] Finally, Sonos argues that Google's proposed amendments add a citation to a brand-new patent reference (U.S. Patent No. 10,469,894) ("'894 patent"). Opp. at 22. But the '894 patent is merely a continuation of Google's YouTube Remote Patent, and Google merely cites to Claim 1 of the '894 patent as further evidence of the device-picker that the Court has already found is disclosed in Google's contentions. *See* Section III.

playback queue. Dkt. No. 278 at 9. Google showed that when playing back media using the accused Google Play Music and YouTube systems (the "Accused Systems") the playback queue (in its entirety) is stored in a cloud queue, and that a playback device merely processes the cloud queue by temporarily caching the identity of the current and next (and sometime the previous) items that are in the cloud queue. Order at 9-10. At the same time, Google pointed out that its prior art YouTube Remote system was capable of storing a playback queue (in its entirety) on the playback device, and thus anticipated the local playback queue limitation. Dkt. No. 210 ("Google MSJ") at 17-18. The Court agreed with Google on both issues and granted summary judgment.

Sonos argues that Google is now changing positions by characterizing "the same functionality" Google argued was a "local playback queue" during summary judgment as a "remote playback queue" in its proposed amendments. Opp. at 21. This is incorrect. Google's proposed amendments are directed at an additional mode of operating the prior art YouTube Remote that was not at issue for the '615 patent: "party mode." In contrast to the non-party mode that was at issue for the '615 patent, in party mode the playback queue is stored on a cloud server. In particular, a user initiates party mode by inviting one or more other guests to join a "party." YTR Amended Claim Chart at 13-16. When in party mode, guests may create and edit a "party playlist" that is stored (in its entirety) in the cloud server. *Id*. at 38 ("Lounge Server receives the SET_PARTY_PLAYLIST message"). The "party playlist" in the cloud dictates the media set to playback on the playback device. *Id*. Thus, the prior art YouTube Remote had the ability for a playback device to play a playlist that is stored on a cloud server (party playlist) when in party mode; *and* for a playback device to play a playlist that is stored on the playback device when in non-party mode.

Sonos also asserts that "Google unequivocally advanced the premise that a system could either have a 'local playback queue' (stored on the player) or a 'remote playback queue' (stored on the cloud server)—but not both." Opp. at 20. This is also incorrect. Google never suggested that a single system could not include two separate and distinct modes of operation: one mode that uses a "local playback queue" and another mode that uses a "remote playback queue." Not surprisingly,

Sonos does not cite to any statement supporting its assertion. And Sonos knows this statement is incorrect because Google's expert reports expressly stated as much:

> Dr. Schmidt contends that the "core" of my non-infringement opinion "is the faulty premise that a 'local playback queue' and a 'Cloud Queue' are mutually exclusive." Schmidt Rpt., ¶¶276-287. **This is a misunderstanding or misrepresentation of my position regarding the differences between a "cloud queue" and a "local playback queue."** Whether or not some hypothetical system may store the playback queue in a cloud queue and also store a copy of that playback queue locally on the receiver device is irrelevant because [the accused] YouTube does not store the playback queue at both locations.
>
> …
>
> Dr. Schmidt states: "I see nothing in claim 13 that precludes the possibility that some other queue (e.g., a cloud queue) might exist in the system beyond the claimed 'local playback queue.'" Schmidt Rpt., ¶277. **I have not precluded such an architecture. . . . A system might store the playback queue both at the local playback device and remotely. This is not the case with the accused products**.

Ex. 1 ¶¶ 319-20.[3]

The only statements from Google that Sonos quotes explain that (1) by 2013 Google eliminated the local playback queue on the playback device in favor of maintaining it in a cloud queue; and (2) processing a cloud queue by temporarily caching the current and next item in the cloud queue does not disclose a local playback queue. Opp. at 18-19. Google's proposed amendments are not inconsistent with either of these statements—they certainly do not "repudiat[e]" them. Specifically, before 2013, Google's YouTube Remote included a mode that stored the playback queue locally, as well as a party mode that stored the queue in the cloud. Then in 2013, Google eliminated the local playback queue such that the Accused Applications today use a cloud queue in all modes.

In short, the existence of a party mode in which the entire playlist is stored on the cloud server does not in any way contradict Google's argument that merely caching the next item in the cloud queue is not the same as storing a local playback queue. Sonos's attempt to paint these positions as inconsistent should be rejected.

---

[3] Exhibit 1 is attached to the Declaration of Nima Hefazi filed in support of this brief and concurrently herewith.

### III. GOOGLE HAS NOT INCLUDED UNRELATED AMENDMENTS

Sonos argues that Google's proposed amendments "sneak[] in" two new theories: a device-picker theory and a loungeScreenConnected theory. Opp. at 17. Sonos is wrong. The Court has already held that the disclosures in Google's contentions disclose its device-picker theory, and Google's contentions also disclose the loungeScreenConnected theory. Google's proposed amendments merely update the contentions to include citations to a few pieces of additional evidence that were discussed during the prior summary judgment proceedings.

<u>First</u>, Google's proposed amendments add a citation to column 10:62-11:6 of U.S. Patent No. 9,490,998 ("YouTube Remote Patent") which discloses a "device-picker."[4] YTR Amended Claim Chart at 23-24. Sonos argues that Google's device-picker theory is "new." Opp. at 17. But Sonos already tried to strike the device-picker theory (including column 10:62-11:6 of the YouTube Remote Patent) and lost—this is merely another attempt to accomplish the same thing. Specifically, at the prior summary judgment hearing Google showed that the use of a device-picker in the prior art YouTube Remote was obvious based on its disclosure at column 10:62-11:6 of the YouTube Remote Patent, as well as the disclosure of a device-picker in other references Google charted (e.g., Google's Tungsten/Nexus Q, Apple's Airplay, and Sonos's own prior art). Dkt. No. 210-3 ¶¶ 160-74; *see also* Google MSJ at 26-27. Sonos moved to strike Google's device-picker theory on the grounds that Google's claim chart for the '615 patent did not cite to column 10:62-11:6 of the YouTube Remote Patent.[5] The Court denied Sonos's motion to strike. Dkt. No. 315 at 4-5. The Court correctly held that Google's invalidity contentions disclosed its device-picker theory by citing to the YouTube Remote Patent's disclosure at 4:21-57 and 8:1-59–which teaches that mobile phones may use any pairing technique (including a device-picker). *Id*. Here, the '033 patent recites limitations similar to those in the '615 patent, and Google's original claim chart for the '033 patent cited the very disclosures that the Court already found disclosed Google's device-picker theory.

---

[4] Google also included a citation to Claim 1 of the '894 patent, which includes the same device-picker disclosures.
[5] Sonos did not challenge Google's reliance on the device-picker in Google's Tungsten/Nexus Q, Apple's Airplay, and Sonos's own prior art.

*See, e.g.*, YTR Amended Claim Chart at 22-23 (non-redlined portions citing to YouTube Remote Patent at 4:21-57 at 8:1-59). The Court should reject Sonos's attempt to re-litigate this issue.

Second, because Sonos previously complained that Google's claim charts did not include pinpoint citations to source code, Google's proposed amendments add a citation to the portions of Google's summary judgment declaration that identify pinpoint citation to the source code that implements the prior art YouTube Remote's loungeScreenConnected message. *Id.* at 42 (citing Bhatacharjee Decl., ¶¶ 134, 143, 158). Sonos argues that Google's reliance on the loungeScreenConnected message is a "new" theory. Opp. at 17. The theory is not new. Google's original claim chart for the '033 patent identified the "loungeScreenConnected" message and explained that it is used to inform a YouTube Remote application that a playback device (called a lounge screen or leanback screen) is connected. YTR Amended Claim Chart at 18 ("loungeScreenConnected . . . informs the remote that there is at least one screen connected"). Google's original claim chart also pointed to the "Connected to Leanback screen" dialog box that is displayed when the prior art YouTube Remote application detects the loungeScreenConnected message. *Id.* at 40. Thus, Sonos's assertion that Google has presented a new loungeScreenConnect message is simply inaccurate.

**IV.   CONCLUSION**

For at least the foregoing reasons, the Court should grant Google's Motion.

DATED: September 20, 2022

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  */s/ Charles K. Verhoeven*
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
Melissa Baily (Bar No. 237649)
melissabaily@quinnemanuel.com
Lindsay Cooper (Bar No. 287125)
lindsaycooper@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Attorneys for GOOGLE, LLC

**CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure and Local Rule 5-1, I hereby certify that, on September 20, 2022, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system and email.

DATED: September 20, 2022

By  */s/ Charles K. Verhoeven*
Charles K. Verhoeven