October 14, 2022

Hon. Donna M. Ryu, Magistrate Judge (N.D. Cal.)

Re: *Google, LLC v. Sonos, Inc.*; Case No. 3:20-cv-06754-WHA (DMR) (N.D. Cal.)

Dear Judge Ryu:

Google LLC ("Google") and Sonos, Inc. ("Sonos") respectfully submit this joint letter brief per the Court's Standing Order. The parties have conferred over Zoom, most recently on October 13, 2022[1].

    DATED: October 14, 2022     QUINN EMANUEL URQUHART & SULLIVAN, LLP

By /s/ *Charles K. Verhoeven*
Charles K. Verhoeven
Melissa J. Baily
Lindsay Cooper
Marc Kaplan

*Attorneys for Google LLC*


ORRICK, HERRINGTON & SUTCLIFFE LLP

By /s/ *Clement S. Roberts*
Clement S. Roberts

*Attorneys for Sonos, Inc.*

---

[1] The relevant case management deadlines include: the deadline for bringing all discovery motions or extension motions based on discovery violations (October 16, 2022); close of non-expert discovery (November 30, 2022); close of expert discovery (January 4, 2022); deadline to file dispositive motions (January 26, 2023); pretrial conference (May 3, 2023); and trial (May 10, 2023).

Sonos's Statement:

## Sonos's 30(b)(6) Topics

Sonos seeks a corporate designee from Google on several aspects of the technical operation of Google's accused products. For some aspects, Google has yet to designate a witness on Sonos's requested topic. For other aspects, Google produced a designee who wasn't competent to testify on the topic.

**"Speaker Group"**
- Topic No. 1(i)

**"Stream Transfer"**
- Topic No. 1(iii)(a)-(c)

**"Controller Device"**
- Topic No. 1(v)(a)-(d)
- Topic No. 1(vi)(a)-(d)
- Topic No. 1(vii)(a)-(d)

**"Cast-Enabled Player"**
- Topic No. 1(vi)(b), (d)
- Topic No. 1(vii)(b), (d)

Topic 1(i) seeks testimony as to ***both*** (i) creating a "speaker group" using the Google Home app and (ii) playing media from the speaker group from the Google Home app as well as other accused apps. Google unilaterally limited this topic to the Google Home app to the exclusion of any other accused mobile app.[2] This is improper.[3] The functionality of these additional accused mobile apps is clearly articulated in Sonos's infringement contentions for the '966 Patent. Further, despite Google's unilateral limitation above, during the deposition, Google withdrew the Google Home app designation as to playing media from a speaker group and repeatedly objected to questions regarding such Google Home app functionality (and the witness was not prepared on this aspect). *See* Pedro Dep. Tr., 33:2-34:9 ("Mr. Pedro is designated as to the first half of that sentence, which is the functionality to facilitate creating a speaker group using Google Home app."), 33:2-8 ("Q. Are you capable of testifying here today about the source code related to the function of initiating playback on a speaker group using the Google Home app? . . *[A.] I would be cautious and say no*."). Google's averment that the witness testified "at length" on the subject he was designated for says nothing about the remainder of the topic on which he was not designated (playing music from speaker groups via other apps). Google's counsel objected throughout to any question that was not within the specifically designated subject matter. And the witness testified "no" to being capable to testify on the source code.[4] Thus, Sonos requests a witness prepared on these aspects of the Topic.

Google's witnesses on Topic 1(iii) were not competent regarding "Stream Transfer Accused Functionality." Mo Dep. Tr., 23:20-23 ("Q: Are you going to be able to tell me how that feature is actually implemented? ***A: I'm not. I do not know how stream transfer works underneath the . . .***"), 193:12-16, 194:10-14 ("

---

[2] *See* Jocelyn Ma June 10, 2022 email ("Justin Pedro will be Google's designee on Topic 1(i) as it relates to the Google Home app."). Sonos is prepared to submit all referenced documents but has omitted them here to comply with the Court's rules.

[3] *See, e.g.*, *Slot Speaker Techs., Inc. v. Apple, Inc.*, No. 13-CV-01161-HSG(DMR), 2017 WL 386345, at *2 (N.D. Cal. Jan. 27, 2017) ("When a party notices topics for deposition, the corporation must not only produce such number of persons as will satisfy the request, but more importantly, prepare them so that they may give ***complete, knowledgeable***, and binding answers on behalf of the corporation.") (cleaned up with emphasis added); *Avago Techs., Inc. v. IPtronics Inc.*, No. 5:10-CV-02863-EJD, 2015 WL 2395941, at *2 (N.D. Cal. May 19, 2015) (awarding sanctions where designee could not testify to 9 of 24 noticed topics and could address the remainder only in-part).

[4] The Topic specifically seeks testimony on "source code" – Google now admits the witness was not designated on source code. That is why Sonos is seeking a designated witness through this motion to compel.

1

███████

███████ **Q:** Do you think it's a message over the local network or would it be a message going through the cloud? **A:** *I don't know.*") (objections omitted); Goddard Dep. Tr., 82:9-21 (**A:** *I'm not familiar with how stream transfer works at the low level*. ███████ ███████"); *id.*, 142:21-23 ("*I did not make any attempt to learn* how the ███████ works as part of preparation for this deposition."). Google argues the Topic doesn't refer to the "Cast platform" – but the Topic does not exclude the "Cast platform." It seeks testimony on the operation of "stream transfer" and source code that facilitates this functionality. Google cannot hide behind the "Cast platform" as a basis for refusing to provide a designee. Google even offered to provide a designee on the "Cast SDK" if Sonos withdrew its individual deposition notice for Mr. Prieto-Gasco.[5] Sonos agreed and withdrew its notice, but Google never designated a Cast SDK witness and now admits its prior designees were not prepared on this.

Google's witness on the controller device and cast-enabled player topics (including "up next" and "autoplay" functionality) was similarly not competent. *Id.,* 53:2-5 ("Q: Is a local queue stored on the phone in this context? **A:** *I don't know.*"), 65:25-66:2 ("Q: Can you explain to me what ███████ ███████ means? **A:** *I wouldn't be able to tell you.*"), 69:2-6 ("Q: Are you familiar with how a YouTube sender would initiate playback on a long playlist? **A:** *No, I'm not.*"), 24:13-22 ("Q: Are you familiar with the feature that Google refers to as "up next"? And specifically up next suggests additional content based on whatever you're currently watching. Are you familiar with that feature? A: I have seen the feature. Q: You've seen the feature. Are you going to be able to me how the up next feature is implemented in Google's system? **A:** *No, I'm not able to.*"), 27:18-28:4 ("[W]hen YouTube is being run on a phone, for instance, are you familiar with how the autoplay feature is implemented? A: I need more specific context in addition to that. Q: What else, what other context do you need? A: Whether it's related -- whether it's during casting. Q: Yes. So before casting. **A:** *Before casting, I'm not familiar with autoplay.*"), 72:4-9 ("Q: Yes, let's use this document and it's a YouTube Music specific document. In the context of the YouTube Music service, are you familiar with a queue – ███████ ███████ ? *A: No, I'm not familiar with that.*").

Finally, Google argues that Sonos is seeking testimony on "at least 20 different subtopics" within Topic No. 1 and for this reason should be precluded from seeking "additional testimony." Google's argument is incorrect and waived in any event. It's incorrect because Topic 1 is not 20 different subtopics. Topic 1 is the functionality of the accused products. Sonos has gone to the effort of articulating and distinguishing within the topic certain discrete functional aspects to aid Google in designating witnesses and to comply with Judge Alsup's requirement that topics be described with particularity. This effort does not transform the Topic into 20 Topics. Google itself has previously referred to this as a single topic.[6] Sonos is also not seeking "additional testimony" – Sonos is seeking an adequately prepared witness on the Topic for which Google has already designated a witness. Google's argument is waived in any event because Google already designated witnesses to testify on each of these alleged "subtopics." The issue is that the witnesses, though designated, were ill-prepared on some crucial aspects. Google cannot initially designate a witness and, when it turns out the witness was not prepared, then retreat to an objection that it

---

[5] *See* 3/17/22 Cooper email ("If we offer a new witness as our 30(b)(6) witness on the Cast SDK, would Sonos be willing to drop its deposition request for Mr. Prieto-Gasco?").

[6] *See* 4/14/22 Cooper email ("Mr. Mo is designated on a single PMK topic, and not even a full one at that.").

waived half a year ago.

### Interrogatory Nos. 14 & 15

Google's continued failure to designate a 30(b)(6) witness is compounded by Google's failure to adequately respond to Sonos's Interrogatory Nos. 14 and 15.

Interrogatory No. 14 seeks, *inter alia*, an explanation on how each Accused Cast-Enabled App…running on a computing device (e.g., an Accused Cast-Enabled *Display* (e.g., Home/Nest Hub or Nest Hub Max)) casts or otherwise transfers media to another Accused Cast-Enabled Media Player.  Google has not provided an answer as to its accused Displays.  Google argues that the interrogatory is limited to "apps" which according to Google only includes apps that run on mobile devices and excludes the "apps" that run on Google's accused Displays.  The interrogatory is not so limited – it specifically references "displays."  Google cannot unilaterally limit the interrogatory.  Google's footnote on the "only remaining apps are YouTube and YouTube Music" is not correct.  There's been no non-infringement ruling concerning the '033 patent.

Interrogatory No. 15 seeks, *inter alia*, an explanation of how the accused devices receive and then play back a sequence of media items.  Google indicted that it would supplement its deficient response but could not identify a date by which this would happen.  Given the impending close of fact discovery, Sonos seeks an order compelling Google to respond by October 28.

Google's Statement:

**Deposition Topic Nos. 1(i), (iii), (v), (vii), (viii).**[7]  Initially, Sonos seeks to compel testimony on "Topic No. 1" for at least *20* different subtopics – double the number permitted by Judge Alsup's standing order.[8]  Despite Sonos's attempted end run around the Court's rule, Google already designated **four** separate witnesses to testify on the relevant subject matter of Topic No. 1 (and its many sub-topics).  Sonos should be precluded from now asking for additional testimony on even more subtopics.

**Topic No. 1(i):** This topic is directed at "(i) the design and operation of the aforementioned 'speaker group' Accused Functionality and source code that facilitates the same."  The term "'speaker group' Accused Functionality" is defined via footnote as "[a]ny and all functionalities that facilitate creating a 'speaker group' *using the Google Home app* and playing media (e.g., music) from the speaker group[.]"  Definitions ¶ 8(i) (emphasis added).  Sonos complains now that Google's witness, Mr. Pedro, was designated on this topic only as to the Google Home app, but that is *precisely* what the topic called for (and what Mr. Pedro was prepared to, and did, testify about).  Sonos did not object to the scope of Google's designation[9] and concluded the deposition by stating on the record that it had no further questions.  Pedro Tr. at 224:2.  Although Google did object to certain questions as outside the scope of the 30(b)(6) notice, Google did not instruct the witness not to answer any pending questions, and indeed Mr. Pedro did answer those questions.

---

[7] Pursuant to the Court's rules prohibiting submission of additional exhibits, Google has not attached the deposition transcript excerpts referenced herein; however, Google is prepared to provide them at the Court's request.

[8] *See* Supplemental Order to Order Setting Initial Case Management Conference in Civil Cases Before Judge William Alsup ¶ 32a ("Without a prior order increasing the limit, a party may seek FRCP 30(b)(6) depositions from another party on up to a total of ten subject matters (for the entire case) described with 'reasonable particularity.'").

[9] *See, e.g.*, Pedro Tr. at 26:6-22 (Sonos's counsel confirming it was "[his] understanding" that Mr. Pedro was designated for the Google Home App for Topic 1(i)).

3

In any event, Sonos's demand for testimony about other apps is not relevant to its infringement contentions, which accuse speaker group creation on the ***Google Home app*** – and Sonos has not identified any other relevant speaker group creation. As both Google's counsel and witnesses have already explained to Sonos, the other "accused mobile app[s]" for which Sonos seeks testimony (*i.e.*, Google Play Music and YouTube) not only cannot create, but are actually "▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬" and are thus irrelevant.[10]

Nor did Google "withdr[a]w the Google Home app designation as to playing media from a speaker group." To the contrary, Mr. Pedro testified at length (over five hours) regarding the functionality of Google's Home App – including playing media using a speaker group. *E.g.*, *id*. at 33:23-34:8, 40:14-46:23. Tellingly, Sonos has not pointed to any questions Mr. Pedro was unable answer regarding playing media from a speaker group, and the testimony Sonos does cite to relates to something he was ***not*** designated on – source code. The cases Sonos cites are also inapposite because Mr. Pedro ***was*** prepared to give ***complete, knowledgeable***, and binding answers on behalf of Google for the subject matter for which he was designated, and he testified to as much.[11]

**Topic No. 1(iii)(a)-(c)**: Sonos misleadingly cherry-picks certain quotes from the depositions of Google's designees on these subtopics (directed to "the design and operation of the aforementioned 'Stream Transfer' Accused Functionality relating to, and source code that facilitates the same" for the Google Play Music and YouTube app) – but provides no argument whatsoever regarding how their testimony was inadequate.[12] It was not.

First, regarding YouTube applications, Google designated an engineer (Vincent Mo) who provided lengthy testimony on how Stream Transfer is implemented on that app. Sonos quotes three lines (Mo Tr. at 23:20-23) in which Mr. Mo is responding to a broad question regarding implementation of Stream Transfer across *any* application. But Stream Transfer is implemented differently by different Google applications, and Mr. Mo was designated only for the ***accused YouTube applications***. Indeed, Sonos omits that when asked if he was "familiar with the feature called 'stream transfer' ***in the context of any of the YouTube apps***," Mr. Mo responded "***Yes***." *Id.* at 184:17.[13] Sonos also complains about Mr. Mo's response to Sonos's questions regarding specific commands, but a deposition is not a memory test – Sonos could have shown him the source code files to provide context regarding this detailed line of questions, but deliberately opted not to do so. And in any event, Mr. Mo still went on to explain the flow of information. *See id.* at 229:25-230:17. "Simply because [defendant's] witness could not answer every question posed to [him] does not equate to the fact that [defendant] did not satisfy its obligation to prepare its 30(b)(6) witness." *Siyu Dong v. BMW of N. Am., LLC*, 2020 WL 5891525, at *2 (S.D. Cal. 2020).

---

[10] *See, e.g.*, Patil Tr. at 71:14-71:17. Additionally, other 30(b)(6) witnesses Google designated on the casting functionality have already testified about casting from the Google Play Music and YouTube apps to speaker groups.

[11] *Id*. at 26:23-27:2 (Q. "So Mr. Pedro, are you prepared to testify here today on behalf of Google with respect to -- to that topic 1, subbullet (i) as it relates to the Google Home app?" A. "Yes").

[12] The Court should also reject Sonos's request on Topic 1(iii) (c), relating to Google Play Music, because Sonos accused Google Play Music of infringing only the '615 patent but the Court has held that Google Play Music does not infringe. Dkt. 316.

[13] In fact, Mr. Mo confirmed that he is an "owner" of a document that describes the design and operation of Stream Transfer in YouTube, and provided detailed testimony on the feature that Sonos itself acknowledged was "super helpful." *See e.g.*, *id*. at 184, 188-192.[13]

4

Second, regarding Google Play Music (as well as YouTube) applications, Google designated another engineer (James Goddard) who also provided fulsome testimony. Goddard Tr. at 81-155. Sonos complains that Mr. Goddard was unable to explain the "low level" operation of Google's "Cast platform." But Topic No. 1(iii) does not even refer to the Cast platform.[14] Further, Cast's "low level" operation of that platform is irrelevant because, as Mr. Goddard testified, the accused applications ███████████████████, and Mr. Goddard was able to explain their operation. *Id*. at 82-83 ("I'm familiar with how Google Play Music and YouTube Music have implemented stream transfer ███████████████████."). Not surprisingly, Sonos fails to identify any question that Mr. Goddard was unable to answer. Sonos also complains that Google has not provided a witness on the "Cast platform" or "Cast SDK", but Google has already provided witnesses that testified how Cast is used by the accused apps. The testimony that Sonos requests on unaccused "platforms" is unduly burdensome and not called for in the topic.[15]

**Topic No. 1(v), 1(vi) and 1(vii)**: Topic No. 1(v) recites "the design and operation of a computer device . . . , receiving and playing a sequence of media items . . . in connection with, and source code that facilitates the same for: various YouTube applications," and Topics 1(vi) and 1(vii) are broadly directed to automatic playback of a next recommended video (the "UpNext" and "AutoPlay" features). Because YouTube includes many playback modes and scenarios (and millions of lines of source code), Google objected to this topic as overbroad and agreed to offer a witness to testify at a reasonable level of detail. Mr. Mo, Google's designee, did just that for over 200 pages of testimony. Mr. Mo also testified at length regarding how a computer device receives and plays back a sequence of media items, including autoplay recommended videos. *See, e.g.*, Mo. Tr. at 126:3-128:1; 128:20-25; 166:25-167:5; 168:23-169:19. The handful of quotations that Sonos points to were simply Mr. Mo's attempts to respond to poorly worded questions.[16]

**Interrogatory Nos. 14 & 15.** Contrary to Sonos's assertion, Interrogatory No. 14 does not ask Google to describe how "an Accused Cast-Enabled *Display* . . . casts or otherwise transfers media to another Accused Cast-Enabled Media Player." Rather, it requests that "*[f]or each Accused Cast-Enabled App*," Google describe how that app enables casting. Google has provided exactly that – a detailed explanation of how the accused YouTube apps [17] perform casting. Google even supplemented this interrogatory twice (over seven months ago). Similarly, Google has provided a fulsome response to Interrogatory No. 15, describing how the accused Google products receive and then play back a sequence of media items, and has already supplemented that response twice. Nonetheless, Google has already agreed to supplement once again to provide even more details. Accordingly, this issue is moot.

---

[14]   *See* Topic 1(iii) ("[T]he design and operation of the aforementioned "Stream Transfer" Accused Functionality relating to, and source code that facilitates the same for, each of: (a) the YouTube app, (b) the YouTube Music app, (c) the Google Play Music app, (d) the Google Podcasts app, and (e) the Spotify app").

[15]   *See* Topic 1(ii) ("the design and operation of the aforementioned 'Casting' Accused Functionality **relating to** . . . each of [the accused applications].").

[16]   *See id.* at 51-53 (asking where the phone stores a "local queue"—which was a hotly disputed claim term, *see* Dkts. 184, 200, 202 (claim construction); Dkts. 210, 251, 278, 316 (summary judgment); Mo. Tr. at 72:4-9 (seeking speculation about a document he did not author); *id*. at 69:2-6 (seeking speculation about "long playlist," a subject not included in the subtopic); *id*. at 24:13-22 (asking for details about technical implementation of feature without context of the relevant source code); *id*. at 27:18-28:4 (asking for details about technical implementation of feature outside the context of the accused app).

[17]   Sonos has dropped Google Podcasts and Spotify from the case, and Google has been found not to infringe Google Play Music, so the only remaining apps are YouTube and YouTube Music.

5

**FILER'S ATTESTATION**

    I, Clement S. Roberts, pursuant to Civil Local Rule 5-1(h)(3), attest that all other Signatories listed, and on whose behalf the filing is submitted, have concurred in the filing of the document.

Dated: October 14, 2022                                          */s/ Clement S. Roberts*
                                                                                             Clement S. Roberts