***PUBLIC REDACTED VERSION***

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOOGLE LLC,<br><br>    Plaintiff,<br><br>v.<br><br>SONOS, INC.,<br><br>    Defendant. | Case No. 20-cv-06754-WHA (DMR)<br><br>**ORDER ON JOINT DISCOVERY LETTER**<br><br>Re: Dkt. No. 327 |

The parties filed a joint discovery letter brief in which Plaintiff Google, LLC ("Google") moves to compel Defendant Sonos, Inc. ("Sonos") to designate a witness in response to one of its Rule 30(b)(6) deposition topics. [Docket No. 327 (Jt. Letter).] This matter is suitable for determination without oral argument. Civ. L.R. 7-1(b). For the following reasons, the motion is denied.

## I. BACKGROUND AND PROCEDURAL HISTORY

In this patent case, accused infringer Google seeks declaratory judgment of non-infringement and invalidity of four patents owned by Sonos: United States Patent Nos. 9,967,615; 10,779,033; 10,469,966; and 10,848,885. [Docket No. 125 (Second Am. Compl., "SAC") ¶ 1.] The technology relates to wireless multi-room audio systems. The '615 patent is titled "Networked Music Playback." The '033 patent is titled "Systems and Methods for Networked Music Playback." The '966 and '885 patents are both titled "Zone Scene Management." SAC Exs. 7-10.[1]

The operative complaint also states claims for breach of contract and conversion. In relevant part, Google alleges that in November 2013, Google and Sonos entered into a "Content

---

[1] In a related case, No. 1-cv-07559 WHA, *Sonos, Inc. v. Google LLC*, Sonos alleges claims for infringement of four other patents against Google. [*See* Docket No. 211.]

1  Integration Agreement" (the "Agreement") pursuant to which Google would "make resources
2  available to Sonos, "███████████████████████████████████████████████████
3  ███████████████████████████████████████████████████████████████████████
4  ███████████████████████████████████████████████████████████████████████
5  ███████████████████████████." [Docket No. 123-3 (SAC) ¶ 21.] Under the Agreement, Google
6  alleges that it provided Sonos with "substantial assistance, including access to Google's engineers
7  and knowledge of Google's products and technology, including products and technology at issue
8  in this action." *Id*.

   Importantly, the Agreement contains a provision about the ownership of "Provider
10 Developments." Google alleges that section 3.4 of the Agreement "provides that Google owns
11 '████████' intellectual property rights '██████████████' to '██████████████,' and
12 that Sonos will not '██████████' any such rights:

13 ███████████████████████████████████████████████████████████████████████
14 ███████████████████████████████████████████████████████████████████████
15 ███████████████████████████████████████████████████████████████████████
16 ███████████████████████████████████████████████████████████████████████
17 ███████████████████████████████████████████████████████████████████████
18 ███████████████████████████████████████████████████████████████████████
19 ████████████████████████████

20 *Id*. at ¶ 22. The ██████████████████ is defined as follows:

21 ███████████████████████████████████████████████████████████████████████
22 ███████████████████████████████████████████████████████████████████████
23 ███████████████████████████████████████████████████████████████████████

24 *Id*. at ¶ 23. Google alleges that under Section 3.4, "the parties agreed that Google would own '█
25 ███████████████████████████████████████████████████████████████████████
26 ███████████████████████████████████████████████████" by Google and Sonos. *Id*. at
27 ¶ 22.

2

The functionality that Sonos accuses of infringing its '615 and '033 patents is "cloud queue," which Google contends "arises from or relates to the '███████████,'" including work by Google to "create the '████████████████████████████████████████████████████████████████████████████████████████ ███████'" *Id*. at ¶ 23. Google alleges that under the Agreement, the cloud queue technology it developed was its sole and exclusive property and Sonos was not permitted to ███████ ██████████████████████████████. *Id*. at ¶ 30. According to Google, Sonos has wrongfully attempted to claim the cloud queue technology as its own, and many of Sonos's infringement allegations against Google are directed at Google technologies that arise out of the work Google did as part of its collaboration with Sonos. *Id*. at ¶¶ 31, 33.

In addition to its request for a declaration of non-infringement and invalidity of the four patents-in-suit, Google brings a claim for breach of the Agreement based in part on Sonos's alleged attempt to claim ownership over the Provider Developments and/or the Integrated Service Offering. *Id*. at ¶ 89. Google also brings a conversion claim based on the cloud queue idea. *Id*. at ¶ 95.

In August 2022, the Honorable William H. Alsup granted Google's motion for summary judgment of non-infringement and invalidity of claim 13 of the '615 patent. [Docket No. 316.] The '615 patent relates to the act of transferring playback of music or other media content from one device (e.g., a smart phone) to another (e.g., a smart speaker).[2]

Fact discovery closes on November 30, 2022. Dispositive motions are due in late January 2023 and trial is scheduled to begin on May 10, 2023.

## II.   DISCOVERY DISPUTE

At issue is Google's Rule 30(b)(6) Topic No. 6:

> The agreements governing Sonos's collaborations with Google,

---

[2] In July 2022, Judge Alsup granted Sonos's motion for summary judgment of infringement of claim one of the '885 patent and denied Google's cross motion for summary judgment of non-infringement and invalidity. The '885 patent covers technology related to managing groups of smart speakers. [Docket No. 309.] On October 18, 2022, following the issuance of an Order to Show Cause after the July 2022 order on summary judgment, Judge Alsup granted summary judgment in favor of Sonos on the issue of validity of the '885 patent. [Docket No. 382.]

>including but not limited to the Content Integration Agreement, Sonos's understanding of the scope of the "███████████" described in Section 3.4 of the Content Integration Agreement, Sonos's understanding of whether functionality developed or information exchanged as part of the parties' collaboration is covered by the Content Integration Agreement, and an Identification of persons most knowledgeable about this Topic.

Sonos interpreted the term "collaborations" to refer "to the collaboration between the parties to develop an application that would allow Google's music service to play directly to the Sonos music system." It made a number of objections, including that the topic "seeks information that is protected by the attorney client privilege or work product doctrine," and that it is "improper to the extent it seeks legal opinions insofar as contract interpretation is a question of law." Sonos refuses to provide a witness on this topic. Jt. Letter Ex. 1.

Google explains the relevance and basis for this topic as follows: the parties dispute the scope of the Content Integration Agreement. Specifically, the parties dispute "████████ ██████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████" i.e., the Agreement ███████████████████████████████████████████████████ ████████████████████████████████████████████." Google's position is that the Agreement "████████████████████████████████████████████████████████████." Jt. Letter 1 (emphases added).[3]

Sonos drafted the Agreement and its witnesses have characterized it as a "standard" Sonos agreement. Google argues that because Sonos has taken a position on the scope of the Agreement, it is entitled to discovery regarding the factual basis for Sonos's position. *Id*. at 2. Google claims that the scope of the Agreement "will be a key issue at trial," arguing that the Agreement is "fundamental" to Google's breach of contract and conversion claims, as well as defenses of unclean hands, equitable estoppel, waiver, implied license, exhaustion, and limitation on liability. *Id*.

---

[3] Google cites the parties' previous filings in connection with the related case, 21-7559 WHA, in support of its description of the parties' positions on scope. These filings were sealed by the original court, the Western District of Texas, and are not accessible on ECF.

1    As a final proposed compromise, Google offers to revise the topic as follows: "all facts
2    supporting any position Sonos intends to take at trial or in this case with respect to the
3    [Agreement] and the scope of what the Agreement covered or did not cover." *Id*. at 3.
4    Sonos argues that the original topic "improperly asks for Sonos's legal theories, contract
5    interpretations, and its trial strategy." Jt. Letter 3. It notes that it has already agreed to produce a
6    witness to testify about "the fact[s] and circumstances regarding the negotiations and execution of
7    the Content Integration Agreement." Sonos argues that Google should not be permitted to
8    discover (1) which facts Sonos contends support Sonos's legal positions; (2) legal interpretations
9    of the scope of agreements or of terms used therein; or (3) Sonos's trial strategy. *Id*. It also notes
10   that Google's proposed "compromise" actually broadens the scope of the topic and is also
11   objectionable because it asks for "*all* facts supporting *any* position Sonos intends to take at trial"
12   about the Agreement. *Id*. at 4 n.3.
13   The court agrees with Sonos. The 30(b)(6) topic improperly requests deposition testimony
14   about Sonos's legal contentions, theories, and interpretations. It seeks a witness to testify on
15   "Sonos's *understanding of the scope* of the '█████████████' described in Section 3.4
16   of the Content Integration Agreement [and] Sonos's *understanding of* whether functionality
17   developed or information exchanged as part of the parties' collaboration is covered by the Content
18   Integration Agreement," among other things. This dispute is similar to *Lenz v. Universal Music*
19   *Corp.*, No. C 07-03783 JF PVT, 2010 WL 1610074, at *2–3 (N.D. Cal. Apr. 20, 2010), a
20   copyright case in which the plaintiff sought to depose a 30(b)(6) witness on the subject of "the
21   basis for any belief by Universal that Ms. Lenz's video infringes the copyright in 'Let's Go
22   Crazy,' including without limitation the basis for any belief by Universal that Ms. Lenz's video is
23   not a fair use of 'Let's Go Crazy.'" *Id*. at *2. The court held that the topic sought testimony
24   regarding the defendant's legal conclusions and was improper: "Plaintiff is asking for testimony
25   that forms the basis of defendant's 'belief' regarding infringement and fair use. The facts that
26   form those 'beliefs' are legal conclusions and an improper topic for a Rule 30(b)(6) deposition."
27   *Id*. at *3 (citing *3M Co. v. Kanbar*, No. C06-01225 JW HRL, 2007 WL 1794936, at *2 (N.D. Cal.
28   June 19, 2007) (finding that challenged topics "each inquire about support for the allegations that

5

1    Defendant's product infringes [plaintiff's] marks" and holding that "in these circumstances, topics
2    containing the terms 'identical,' 'confusingly similar,' and 'blurring, dilution and tarnishment' are,
3    in effect, seeking legal conclusions that should not form the basis for 30(b)(6) deposition
4    topics.")).

5    Sonos notes that Google advanced a position similar to Sonos's in a recent case in this
6    district. In *In re Google RTB Consumer Priv. Litig.*, No. 21CV02155 YGR (VKD), 2022 WL
7    2068215, at *5–6 (N.D. Cal. June 8, 2022), a privacy case, plaintiffs moved to compel Google to
8    produce a corporate representative to testify about the following statements/promises to users: "we
9    do not sell your personal information to anyone"; "Google will never sell any personal
10   information to third parties"; "Advertisers do not pay us for personal information"; "We don't
11   share information that personally identifies you with advertisers"; "We also never use ... sensitive
12   information like [race], religion, or sexual orientation, to personalize ads to you"; and, "We don't
13   show you personalized ads based on sensitive categories, such as race, religion, sexual orientation,
14   or health." *Id*. at *6. Plaintiffs also requested testimony on "[t]he purpose of policies, disclosures,
15   or language used for each of those six promises, including the basis for proposed changes or
16   modifications and why such changes or modifications were or were not implemented," as well as
17   "Policies, disclosures or statements on which Google claims it obtained consent for the disclosure
18   and sale of Google Account Holder information through [real time bidding]." *Id*.

19   Google objected that the plaintiffs improperly sought testimony "about the legal
20   significance of the statements or about Google's legal contentions," citing *Lenz* and *3M* in support.
21   *Id*. The court "agree[d] with Google that it is improper for plaintiffs to use [the challenged topics]
22   to obtain Google's legal contentions or legal conclusions," but held that it was permissible for the
23   plaintiffs to "obtain testimony about facts concerning the policies, disclosures, and statements at
24   issue," such as when a statement was posted and how it is/was displayed to an account holder. *Id*.
25   The court further held that "a corporate deposition is not the appropriate vehicle for" discovery
26   about "Google's contentions about which statements or disclosures support Google's position that
27   disclosure or use of account holder personal information in the RTB process does not occur
28   without the account holders' consent" in the first instance. *Id*.

6

Here, Google attempts to cast its topic as requesting only the "factual basis" for Sonos's position about the scope of the Agreement. *See* Jt. Letter 2-3 ("Google is seeking the ***factual*** basis for Sonos's position regarding what the Agreement does and does not cover." (emphasis in original)). But that is not how the topic is written—it seeks testimony on Sonos's "understanding of" the Agreement. Even if the topic could somehow be read as seeking the factual bases for Sonos's "understanding" of the meaning of certain provisions in the Agreement, it would still be an improper attempt to discover legal conclusions and/or protected information. *See, e.g., In re Indep. Serv. Organizations Antitrust Litig.*, 168 F.R.D. 651, 654 (D. Kan. 1996) (holding that 30(b)(6) notice "requesting that [defendant] produce a corporate witness to testify about facts supporting numerous paragraphs of [its] denials and affirmative defenses in its Answer and Counterclaims" was "overbroad, inefficient, and unreasonable. It also implicates serious privilege concerns, and potential problems with confidential information under our earlier protective order," and holding that "[e]ven under the present-day liberal discovery rules, [defendant] is not required to have counsel 'marshal all of its factual proof' and prepare a witness to be able to testify on a given defense or counterclaim.").

Google offers one case in support of its position, *JSR Micro, Inc. v. QBE Ins. Corp.*, No. C-09-03044 PJH (EDL), 2010 WL 1338152, at *1–2 (N.D. Cal. Apr. 5, 2010). Jt. Letter 2. It is distinguishable. In *JSR Micro*, an insurance coverage dispute, the plaintiff sought discovery into how the defendant insurer interpreted the term "satisfactory proof of debt" and "what evidence Defendant accepted in the past for that proof." *Id*. at *1. To that end, the plaintiff sought witnesses to testify on three topics: "Topic 7: Any marketing, selling, advertising or other representations made by you with respect to trade credit insurance policies. Topic 10: Any and all claims under trade credit insurance policies other than the policy. Topic 17: Any claims that you did not pay on the basis that the insured did not satisfy all conditions of a policy." *Id*. The defendant objected that the topics were relevant to an issue (bad faith) that was outside the scope of discovery limitations ordered by the judge presiding over the case. The discovery judge held that "evidence of an insurer's representations about or interpretations of a policy term is generally discoverable as relevant to interpretation of the contract language, regardless of any question of

1  bad faith," and that the plaintiff was "entitled to explore through discovery facts relevant to its
2  own non-frivolous theories regarding the meaning of contractual terms, even if Defendant
3  disagrees with Plaintiff's theories on the merits." *Id*. at *1-2.
4      Google argues that *JSR Micro* stands for the proposition that it is appropriate to allow
5  discovery "regarding a party's understanding of" a "critical contractual provision." Jt. Letter 2.
6  As an initial matter, the defendant in *JSR Micro* did not object to the topics as improper because
7  they sought testimony about its legal contentions or legal conclusions. Moreover, none of the
8  topics sought the identification of facts that the defendant claimed supported its interpretation of
9  the agreement at issue; rather, the topics covered historical facts about the insurer's actions from
10  which the plaintiff could make arguments about contract interpretation. Here, Google is asking
11  Sonos to provide corporate testimony on contract interpretation and Sonos's legal conclusions
12  about which facts are relevant to that issue.
13      In sum, Google's Topic No. 6 improperly asks for Sonos's legal theories and conclusions
14  and contract interpretation. Its proposed compromise does not fix this issue because it asks Sonos
15  to disclose its trial strategy. Google's motion to compel is denied.

**IT IS SO ORDERED.**

Dated: October 31, 2022



Donna M. Ryu
United States Magistrate Judge