**CONTAINS CONFIDENTIAL INFORMATION PURSUANT TO PROTECTIVE ORDER**

December 9, 2022

Hon. Donna M. Ryu, Magistrate Judge (N.D. Cal.)

Re: *Google, LLC v. Sonos, Inc.*; Case No. 3:20-cv-06754-WHA (DMR) (N.D. Cal.)

Dear Judge Ryu:

Google LLC ("Google") and Sonos, Inc. ("Sonos") respectfully submit this supplemental joint letter brief per the Court's Order. *See* Dkt. 414.

    QUINN EMANUEL URQUHART & SULLIVAN, LLP

    By  /s/ *Charles K. Verhoeven*
    Charles K. Verhoeven
    Melissa J. Baily
    Lindsay Cooper
    Marc Kaplan

    *Attorneys for Google LLC*

    ORRICK, HERRINGTON & SUTCLIFFE LLP

    By  /s/ *Clement S. Roberts*
    Clement S. Roberts

    *Attorneys for Sonos, Inc.*

**FILER'S ATTESTATION**

    I, Clement S. Roberts, pursuant to Civil Local Rule 5-1(h)(3), attest that all other Signatories listed, and on whose behalf the filing is submitted, have concurred in the filing of the document.

Dated:  December 9, 2022                                                */s/ Clement S. Roberts*
                                                                                               Clement S. Roberts

**CONTAINS CONFIDENTIAL INFORMATION PURSUANT TO PROTECTIVE ORDER**

**Sonos's Statement:**  Sonos seeks a witness knowledgeable on how the accused controller devices (e.g., phones) operate to play back media items (e.g., songs) in a queue via the accused apps (e.g., YouTube, YouTube Music) which includes the operation of Google's features called "Up Next" and "Autoplay."  Sonos also seeks a witness on how the accused players (e.g., smart speakers) engage in the "Up Next" and "Autoplay" features.  The testimony below speaks for itself:  Google's witness could not answer even basic questions concerning this functionality, like how queues are stored, how media items are populated into queues, how media items are retrieved from the cloud server, or how "Up Next" and "Autoplay" features operate to retrieve, load, and play media items.   Google admits that its witness was unable to answer Sonos's questions - but now blames the purported "vague[ness]" of the questions and the complexity of Google's own products.  But the complexity of the accused products does not relieve Google from complying with the rules of discovery or from adequately explaining how its own products work.  Objections to vagueness are waived if not made on the record, which they weren't to many of Sonos's questions.  Finally, Google avers that other witnesses testified – this is not relevant because Google has not designated that other testimony as Rule 30(b)(6) testimony.

**Regarding Controller topic***:  See, e.g.,* Ex. 1, 24:4-22 ("…Are you going to be able to [tell] me how the up next feature is implemented in Google's system? A ***No, I'm not able to.***"); 26:10-28:4 ("…A Before casting, ***I'm not familiar with autoplay***."); 47:16-48:3 ("Q So in the context of the YouTube apps, those allow a user to select a single media item for playback, correct?… [A]: It's hard to say…."); 51:7-51:14 ("…[I]s it possible to play a playlist in YouTube Music? A ***I don't believe so.*** Q And what about YouTube Kids, is it possible to select a playlist for playback? A ***I don't know actually***"); 51:22-53:5 ("…Q Is a local queue stored on the phone in this context?… [A]: ***I don't know***."); 58:1-20; 70:22-71:14 ("████████████████████████████████████████████████████ [A]: ***I don't know***.…"); 59:20-24; 63:24-64:1 ████████████████████████████████████ A No."); 65:25-66:23 ████████████████████████████████████████ A ***I wouldn't be able to tell you***. [Q] ***Are you able to give any testimony on behalf of Google here as to what the autoplay reference*** in this document is referring to? A ***No, I'm not***."); 78:13-78:16 ████████████████████████ A ***I don't know in this case***."); 69:2-6 ████████████████████████████████████████████ *[A]: No, I'm not*."); 71:25-72:10 ████████████████████████████████████████████████████████; 77:18-23 ████████████████████████████████████████████████████████; 39:15-40:19.  **Regarding Player topic:**  *See* 24:4-22 ("…Are you going to be able to [tell] me how the up next feature is implemented in Google's system? A ***No, I'm not able to.***"); 209:8-210:4 ████████████████████████████████████████████████████; 24:4-22 ("…Are you going to be able to [tell] me how the up next feature is implemented in Google's system? A ***No, I'm not able to.***"); 79:15-17 ("Do you have an understanding of where the 'Up Next' information comes from? A ***No, I don't have that knowledge***."); 26:10-28:4 ("… Before casting, ***I'm not familiar with autoplay***."); 75:17-77:2 ████████████████████████████████████████████████████████████████████; 24:4-22; 26:10-28:4; 65:1-10; 72:22-73:9; 211:20-214:1.

**CONTAINS CONFIDENTIAL INFORMATION PURSUANT TO PROTECTIVE ORDER**

**Google's Statement:**  Google's witness provided adequate testimony regarding each subtopic.

Controller Topics:  Sonos complains that Google's witness could not testify to "how queues are stored," "how media items are populated into queues," and "how media items are retrieved from the cloud server," but Topic 1(v) only seeks testimony on the general process of "receiving and playing a sequence of media items," which Google's witness explained at length.  He testified about the ▮▮▮▮▮ which is used to play multiple songs or videos.  Ex. 1, 120:5-14 ▮▮▮▮▮.  He also testified to the source code contents of the ▮▮▮▮▮ Ex. 1, 118:2-7 ▮▮▮▮▮  Google's designee also described different types of playlists, including the use of ▮▮▮▮▮ Ex. 1, 119:5-11 ▮▮▮▮▮.  Because the Autoplay and Up Next topics overlap with the Player topics, they are discussed below.

Player Topics:  Topics 1(vi) and 1(vii) cover media items that are set to "Autoplay," which may be accessed through an "Up Next" window in the YouTube Music app.  Google's witness testified about Autoplay extensively, including describing how the Autoplay feature connects with the aforementioned ▮▮▮▮▮ Ex. 1, 128:20-25 ▮▮▮▮▮.  He explained how different "video IDs," ▮▮▮▮▮ (*id*. at 166:19-167:5), how an Autoplay video would play next after the selected video (*id*. at 126:3-11), how the messages are sent between various servers with ▮▮▮▮▮ (*id*. at 168:23-4), how requests are triggered by an Autoplay video (*id*. at 168:6-171:22), and about ▮▮▮▮▮ and its contents (*id*. at 171:23-172:24).  Finally, Sonos ignores that it asked and received substantial Autoplay testimony from other Google engineers, and therefore has already received the information it demands.  *E.g.,* Mills Tr. 116:14-19 (describing "autoplay"); Nicholson Tr. 69:10-25 (describing ▮▮▮▮▮ including detailed testimony regarding how a ▮▮▮▮▮ generates ▮▮▮▮▮ how ▮▮▮▮▮ and ▮▮▮▮▮).  Google is willing to designate this additional testimony to resolve the dispute.

Sonos's complaints:  Sonos's cherry-picked examples simply show that its counsel asked vague, abstract questions about Autoplay and Up Next that Google's designee was understandably unable to answer given the complexity of the products and the various different types of hardware and software that can run them.  But as shown above, when provided necessary context, he testified substantively to the implementation of those features.  Sonos's complaints about testimony over issues like local and cloud queues are unfair because these were hotly contested claim terms for construction.  Sonos also complains about specific functionality that were not identified in the topics, such as a ▮▮▮▮▮  And Sonos asked numerous technical questions without provision of source code, *id.* 24:13-22, improperly subjecting Google's witness to a memory test regarding specific implementation details.