# EXHIBIT 1

CLEMENT SETH ROBERTS (STATE BAR NO. 209203)
croberts@orrick.com
BAS DE BLANK (STATE BAR NO. 191487)
basdeblank@orrick.com
ALYSSA CARIDIS (STATE BAR NO. 260103)
acaridis@orrick.com
EVAN D. BREWER (STATE BAR NO. 304411)
ebrewer@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:     +1 415 773 5700
Facsimile:     +1 415 773 5759

GEORGE I. LEE (*pro hac vice in process*)
lee@ls3ip.com
SEAN M. SULLIVAN (*pro hac vice in process*)
sullivan@ls3ip.com
RORY P. SHEA (*pro hac vice in process*)
shea@ls3ip.com
J. DAN SMITH (*pro hac vice in process*)
smith@ls3ip.com
Cole B. Richter (*admitted pro hac*)
*richter@ls3ip.com*
LEE SULLIVAN SHEA & SMITH LLP
656 W Randolph St., Floor 5W
Chicago, IL 60661
Telephone:     +1 312 754 0002
Facsimile:     +1 312 754 0003

*Attorneys for Defendant Sonos, Inc.*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOOGLE LLC,<br><br>       *Plaintiff,*<br><br>    v.<br><br>SONOS, INC.,<br><br>       *Defendant.* | Case No. 3:20-cv-6754<br><br>**SONOS, INC.'S CORRECTED SUPPLEMENTAL DISCLOSURE OF ASSERTED CLAIMS AND INFRINGEMENT CONTENTIONS**<br><br>Honorable William Alsup |

1    Pursuant to Patent Local Rules 3-1 and 3-2 and the Court's instructions during the January

2    6, 2022 motion hearing, Plaintiff Sonos, Inc. ("Sonos") hereby submits this Supplemental

3    Disclosure of Asserted Claims and Infringement Contentions for U.S. Patent Nos. 9,967,615 (the

4    "'615 Patent"), 10,779,033 (the "'033 Patent"), 10,469,966 (the "'966 Patent"), and 10,848,885

5    ("the '885 Patent") (collectively, "the Asserted Patents").

6    Sonos bases these contentions on its current knowledge, understanding, and belief as to

7    the facts and information available as of the date of these contentions.  Sonos has not yet

8    completed its investigation, collection of information, discovery, or analysis relating to this

9    action, and additional discovery, including discovery from Google and third parties, may lead

10   Sonos to further amend, revise, and/or supplement these contentions.  Indeed, the accused

11   functionalities of the accused instrumentalities are implemented, at least in part, by proprietary

12   and specialized electronics, firmware, and/or software, and the precise designs, processes, and

13   algorithms used to perform the accused functionalities are held secret, at least in part, and are not

14   publicly available in their entirety.  As such, an analysis of non-publicly-available documentation

15   and source code, including that of Google and/or third-parties, such as Spotify, may be necessary

16   to fully and accurately describe every infringing functionality.

17   However, merits discovery in this action has barely begun and, as of the date of service of

18   these contentions, is not scheduled to close until November 30, 2022.  To date, Google has not

19   produced documents responsive to Sonos's outstanding document requests, no depositions have

20   been taken, and third-party discovery remains outstanding including document and deposition

21   subpoenas to Spotify.

22   Likewise, Google's interrogatory responses are woefully deficient in many respects and

23   completely non-responsive in others.  As a non-limiting example, in response to Sonos's

24   interrogatories asking Google to explain certain discrete aspects of how Google's own products

25   work, Google responded only by referring Sonos to Google's entire source code production

26   (without referring to any particular code modules, functions, methods, line numbers, or even

27   directories) and by block citing over 48,000 pages of Google's document production.  As another

28   non-limiting example, in response to Sonos's interrogatory asking how the Accused Cast-Enabled

SONOS, INC.'S P.L.R. 3-1 & 3-2
SUPPLEMENTAL DISCLOSURES
20-CV-6754

Apps are made available for download, Google refused to respond at all.  Without the benefit of discovery responses from Google, Sonos's inspection of Google's source code is ongoing.  Given that fact discovery is in its infancy and Google served its (deficient) discovery responses on September 7, 2021 and has refused to engage with Sonos about when it will adequately supplement its responses, Sonos has not had an opportunity to confer with Google on these responses or approach the Court for intervention, if necessary.

For at least these reasons, Sonos specifically reserves the right to further amend, revise and/or supplement these contentions and/or accompanying exhibits in accordance with any Orders of record in this matter, Patent L.R. 3-6, and Federal Rule of Civil Procedure 26(e), as additional documents and information become available and as discovery and investigation proceed.  Sonos also reserves the right to supplement, modify or amend these contentions to include additional products or services made, used, sold, or offered for sale in or imported into the United States by Google.

The information in these contentions is not an admission regarding the scope of any claims or the proper construction of those claims or any terms contained therein.  Google has not indicated whether it intends to advance in this case any construction of any claim pursuant to L.R. 4-2.  In the event Google advances any constructions under L.R. 4-2 pursuant to the Court's Case Management Scheduling Order (Dkt. 67), Sonos reserves the right to revise or supplement these contentions to address such a construction.  *See* Dkt. 67, ¶ 17.

## I.  <u>Disclosure of Asserted Claims & Infringement Contentions</u>

### A.  **Identification of Accused Instrumentalities Pursuant to Patent L.R. 3-1(b)**

Based on the information currently in its possession, Sonos contends that the Asserted Patents are infringed by Google via, either individually or in combination, the following products (individually, "**Accused Instrumentality**" or collectively, "**Accused Instrumentalities**"):

*'615 and '033 Patents*: (a) Smartphone, tablet, and computer devices, including Google's own "Pixel" smartphone, tablet, and computer devices (e.g., the Pixel, Pixel XL, Pixel 2, Pixel 2 XL, Pixel 3, Pixel 3 XL, Pixel 3a, Pixel 3a XL, Pixel 4, Pixel 4 XL, Pixel 4a, Pixel 4a (5G), Pixel 5, Pixel 5a (5G), Pixel 6, and Pixel 6 Pro phones, the Pixel Slate tablet, and the Pixelbook and

Pixelbook Go laptops), as well as third-party smartphone, tablet, and computer devices, that are

(i) installed with any of Google's own Cast-enabled Android, iOS, Chrome or browser-based

apps that allow a user to transfer playback of streaming media content from the user's

smartphone, tablet, or computer devices to a Cast-enabled media player and then control the Cast-

enabled media player's playback, including but not limited to the YouTube app, YouTube Kids

app, YouTube TV app, YouTube Music app, and Google Play Music app, accessed via either an

app store or Chromecsat-enabled site URL[1] (including youtube.com, music.youtube.com,

tv.youtube.com, and spotify.com) and/or (ii) installed with any third-party Cast-enabled app that

allows a user to transfer playback of streaming media content from the user's smartphone, tablet,

or computer devices to a Cast-enabled media player and then control the Cast-enabled media

player's playback, including but not limited to the Spotify app[2] (the foregoing, including

Chromecast-enabled websites, are referred to herein either individually or collectively as the

"**accused Cast-enabled apps**")[3]; (b) Cast-enabled media players having a display screen and

installed with Cast-enabled software (e.g., firmware and/or Cast-enabled apps) that allows a user

to transfer playback of streaming media content from the Cast-enabled media player to another

Cast-enabled media player and then control the other Cast-enabled media player's playback,

including Google's Home Hub, Nest Hub, and Nest Hub Max media players (referred to herein as

"**Cast-enabled displays**"); (c) Servers that host at least one of the accused Cast-enabled apps for

download onto or access by smartphone, tablet, or computer devices; and (d) Cloud-based

---

[1] *See, e.g.,* https://support.google.com/chromecast/answer/3265953?hl=en.

[2] *See, e.g.,* https://support.google.com/chromecastbuiltin/answer/6279384?hl=en#zippy=%2Cbefore-you-begin-casting%2Ccast-from-chromecast-enabled-apps-to-your-audio-device%2Cfind-new-content-to-cast; https://www.google.com/chromecast/built-in/apps/.

[3] Although Sonos is not currently aware of which third-party smartphone, tablet, and computer devices were, between May 2018 to present, actually installed with one or more accused Cast-enabled apps, and awaits production of this information from Google, in the spirit of providing as much disclosure as possible given Google's request, and in an effort to address the Court's guidance during the January 6, 2022 hearing, attached hereto as Appendix 1 is a list of possible third-party smartphone, tablet, and computer devices that may have been used to download and install one or more accused Cast-enabled apps between May 2018 to present. Although efforts have been made to compile as accurate and as complete a list as possible, it may be the case that some of the devices listed in Appendix 1 were not used to download and install any accused Cast-enabled apps between May 2018 to present and/or it may be the case that other devices were used to download and install one or more accused Cast-enabled apps between May 2018 to present. Given this, Sonos reserves the right to revise or supplement this as discovery progresses.

SONOS, INC.'S P.L.R. 3-1 & 3-2
SUPPLEMENTAL DISCLOSURES
20-CV-6754

infrastructure hosting backend software that facilitates the aforementioned Cast functionality for transferring playback of streaming media content to a Cast-enabled media player and/or controlling the Cast-enabled media player's playback.

*'966 Patent*: (a) Smartphone, tablet, and computer devices, including Google's own "Pixel" smartphone, tablet, and computer devices (e.g., the Pixel, Pixel XL, Pixel 2, Pixel 2 XL, Pixel 3, Pixel 3XL, Pixel 3a, Pixel 3a XL, Pixel 4, Pixel 4 XL, Pixel 4a, Pixel 4a (5G), Pixel 5, Pixel 5a (5G), Pixel 6, and Pixel 6 Pro phones, the Pixel Slate tablet, and the Pixelbook and Pixelbook Go laptops), as well as third-party smartphone, tablet, or computer devices, that are installed with the Google Home app[4]; and (b) Servers that host the Google Home app for download onto smartphone, tablet, or computer devices.

*'885 Patent*: "**Cast-enabled media players**," including Google's Chromecast, Chromecast Ultra, Chromecast Audio, Chromecast with Google TV, Home Mini, Nest Mini, Home, Home Max, Home Hub, Nest Hub, Nest Hub Max, Nest Audio, and Nest Wifi Point media players.

## B. Identification of Asserted Claims Pursuant to Patent L.R. 3-1(a)

Based on the information currently in its possession, Sonos asserts the following claims (collectively, the "Asserted Claims") literally and/or under the Doctrine of Equivalents.  Sonos expressly reserves the right to amend and/or supplement its identification of Asserted Claims should discovery (including Google's technical documentation, source code, and witnesses) reveal additional, relevant information.

| U.S. Patent No. | Asserted Claims |
|---|---|
| 9,967,615 | 13, 14, 15, 18, 19, 20, 21, 25, 26 |
| 10,779,033 | 1, 2, 4, 9, 11, 12, 13, 16 |
| 10,469,966 | 1, 2, 4, 6, 8, 9, 10, 12, 14, 16 |
| 10,848,885 | 1, 3, 7, 8, 10, 14 |

### i. Direct Infringement Under 35 U.S.C. § 271(a)

*'615 and '033 Patents*: Sonos contends that each smartphone, tablet, and computer device installed with any one or more of the accused Cast-enabled apps (referred to herein as a "**Cast-**

---

[4] *See supra* note 3.  The devices listed in Appendix 1 may have also been used to download and install the Google Home app between November 2019 to present.

SONOS, INC.'S P.L.R. 3-1 & 3-2
SUPPLEMENTAL DISCLOSURES
20-CV-6754

**enabled computing device**”), as well as each Cast-enabled display, infringes the asserted claims of the '615 and '033 Patents. Thus, Google has directly infringed and continues to directly infringe each asserted claim of the '615 and '033 Patents at least by offering to sell, selling, and/or importing into the United States its "Pixel" brand of Cast-enabled computing devices, as well as its Cast-enabled displays, in violation of 35 U.S.C. § 271(a).

Further, on information and belief, Google has directly infringed and continues to directly infringe claims 13-15, 18-21, 23-26, 28-29 of the '615 Patent and claims 1-2, 4, 7-13 of the '033 Patent by virtue of installing one or more of the accused Cast-enabled apps onto Cast-enabled computing devices and installing Cast-enabled software (e.g., firmware updates and/or Cast-enabled apps) onto Cast-enabled displays within the United States, which constitutes "mak[ing]" an infringing device under 35 U.S.C. § 271(a).

Further yet, on information and belief, Google has directly infringed and continues to directly infringe each asserted claim of the '615 and '033 Patents by virtue of testing Cast-enabled computing devices and testing Cast-enabled displays within the United States, which constitutes "us[ing]" an infringing device under 35 U.S.C. § 271(a).

Still further, on information and belief, Google operates servers in the United States that host Cast-enabled apps for download onto Cast-enabled computing devices and/or Cast-enabled software (e.g., firmware and/or Cast-enabled apps) for download onto Cast-enabled displays, and these servers infringe certain asserted claims of the '615 and '033 Patents (e.g., claims 13-15, 18-21, and 23-24 of the '615 Patent and claims 12-13 of the '033 Patent). Thus, Google has also directly infringed and continues to directly infringe certain asserted claims of the '615 and '033 Patents by "mak[ing]" and/or "us[ing]" servers that host this software in violation of 35 U.S.C. § 271(a).

*'966 Patent:* Sonos contends that each computing device installed with at least the Google Home app infringes every asserted claim of the '966 Patent. Thus, Google has directly infringed and continues to directly infringe each asserted claim of the '966 Patent at least by offering to sell, selling, and/or importing into the United States its "Pixel" brand of computing devices that are installed with the Google Home app.

Further, on information and belief, Google has directly infringed and continues to directly infringe claims 1-4, 6-12, 14-16 of the '966 Patent by virtue of installing at least the Google Home app onto computing devices, which constitutes "mak[ing]" an infringing device under 35 U.S.C. § 271(a).

Further yet, on information and belief, Google has directly infringed and continues to directly infringe each asserted claim of the '966 Patent by virtue of testing computing devices installed with at least the Google Home app, which constitutes "us[ing]" an infringing device under 35 U.S.C. § 271(a).

Still further, on information and belief, Google operates servers in the United States that host at least the Google Home app for download onto smartphone, tablet, and computer devices, and these servers infringe certain asserted claims of the '966 Patent (e.g., claims 9-12 and 14-16). Thus, Google has also directly infringed and continues to directly infringe certain asserted claims of the '966 Patent at least by "mak[ing]" and/or "us[ing]" servers that host at least the Google Home app in violation of 35 U.S.C. § 271(a).

*'885 Patent*: Sonos contends that each Cast-enabled media player infringes every asserted claim of the '885 Patent.  Thus, Google has directly infringed and continues to directly infringe each asserted claim of the '885 Patent at least by offering to sell, selling, and/or importing into the United States Cast-enabled media players.

Further, on information and belief, Google has directly infringed and continues to directly infringe claims 1-3, 5-10, 12-14 of the '885 Patent by virtue of installing software (e.g., firmware updates) onto Cast-enabled media players, which constitutes "mak[ing]" an infringing device under 35 U.S.C. § 271(a).

Further yet, on information and belief, Google has directly infringed and continues to directly infringe each asserted claim of the '885 Patent by virtue of using Cast-enabled media players, which constitutes "us[ing]" an infringing device under 35 U.S.C. § 271(a).

### ii.  Induced Infringement Under 35 U.S.C. § 271(b)

Pursuant to 35 U.S.C. § 271(b), Google also actively, knowingly, and intentionally induced (and continues to actively, knowingly, and intentionally induce) others to make, use,

1   offer to sell, sell, and/or import the Accused Instrumentalities into the United States.  As noted in

2   Sonos's Amended Complaint, Google had actual knowledge of the Asserted Patents prior to the

3   filing of the Complaint.  *See also* Google LLC's Objections and Responses to Sonos's Inc.'s First

4   Set of Interrogatories (Nos. 1-20) (dated September 7, 2021) at Google's response to Sonos's

5   Interrogatory No. 1; Sonos, Inc.'s Objections and Responses to Google LLC's First Set of

6   Interrogatories (Nos. 1-20) (dated September 7, 2021) at Sonos's response to Google's

7   Interrogatory No. 14, both of which are herein incorporated by reference.

8        *'615 and '033 Patents*: Sonos contends that each Cast-enabled computing device, as well

9   as each Cast-enabled display, infringes every asserted claim of the '615 and '033 Patents. Despite

10  knowing of the '615 and '033 Patents, Google has actively, knowingly, and intentionally induced

11  (and continues to actively, knowingly, and intentionally induce) others to directly infringe the

12  asserted claims in various ways, in violation of 35 U.S.C. § 271(b).

13       For example, through Google's website, advertising and promotional material, user

14  guides, and/or the Google Play Store, Google has actively, knowingly, and intentionally

15  encouraged and induced (and continues to actively, knowingly, and intentionally encourage and

16  induce) others to install one or more of the accused Cast-enabled apps (including Google's own

17  Cast-enabled apps and third-party Cast-enabled apps, such as Spotify) onto computing devices,

18  and thereby "make[]" an infringing device, which constitutes direct infringement of claims 13-15,

19  18-21, 23-26, 28-29 of the '615 Patent and claims 1-2, 4, 7-13 of the '033 Patent under 35 U.S.C.

20  § 271(a).

21       As another example, through Google's website, advertising and promotional material, user

22  guides, and Cast-enabled apps, Google has actively, knowingly, and intentionally encouraged and

23  induced (and continues to actively, knowingly, and intentionally encourage and induce) others to

24  install Cast-enabled software (e.g., firmware updates and/or Cast-enabled apps) onto the Cast-

25  enabled displays, and thereby "make[]" an infringing device, which constitutes direct

26  infringement of claims 13-15, 18-21, 23-26, 28-29 of the '615 Patent and claims 1-2, 4, 7-13 of

27  the '033 Patent under 35 U.S.C. § 271(a).

28

SONOS, INC.'S P.L.R. 3-1 & 3-2
SUPPLEMENTAL DISCLOSURES
20-CV-6754

1    As yet another example, through Google's website, advertising and promotional material,

2 user guides, and/or the Google Play Store, Google has actively, knowingly, and intentionally

3 encouraged and induced (and continues to actively, knowingly, and intentionally encourage and

4 induce) others to "use" Cast-enabled computing devices installed with one or more of the accused

5 Cast-enabled apps (including Google's own Cast-enabled apps and third-party Cast-enabled apps,

6 such as Spotify) and "use" Cast-enabled displays, which constitutes direct infringement of the

7 asserted claims of the '615 and '033 Patents under 35 U.S.C. § 271(a).

8    As a further example, Google has actively, knowingly, and intentionally encouraged and

9 induced (and continues to actively, knowingly, and intentionally encourage and induce)

10 distributors and retailers to "offer[] to sell" and "sell[]" Cast-enabled computing devices installed

11 with one or more of the accused Cast-enabled apps, as well as Cast-enabled displays, which

12 constitutes direct infringement of the asserted claims of the '615 and '033 Patents under 35

13 U.S.C. § 271(a).

14    As still another example, by making, importing, offering to sell, and selling Cast-enabled

15 media players programmed with software that facilitates the accused Cast functionality in the

16 accused Cast-enabled apps and Cast-enabled software for transferring playback of streaming

17 media content from a Cast-enabled computing device or Cast-enabled display to a Cast-enabled

18 media player and then controlling the Cast-enabled media player's playback via the Cast-enabled

19 computing device or Cast-enabled display, Google has actively, knowingly, and intentionally

20 induced (and continues to actively, knowingly, and intentionally induce) others to "mak[e]" and

21 "use" Cast-enabled computing devices and Cast-enabled displays, which constitutes direct

22 infringement of the asserted claims of the '615 and '033 Patents under 35 U.S.C. § 271(a).

23    As still a further example, for certain of the accused Cast-enabled apps (including

24 Google's own Cast-enabled apps and third-party apps, such as Spotify), the backend software that

25 facilitates the accused Cast functionality for transferring playback of streaming media content

26 from a Cast-enabled computing device or Cast-enabled display to a Cast-enabled media player

27 and then controlling the Cast-enabled media player's playback via the Cast-enabled computing

28 device or Cast-enabled display is hosted by Google on Cloud-based infrastructure that is owned

1    and/or operated by Google (sometimes referred to as Google Cloud Platform or "GCP" for short),

2    and by virtue of hosting this backend software, Google has actively, knowingly, and intentionally

3    induced (and continues to actively, knowingly, and intentionally induce) others to "mak[e]" and

4    "use" Cast-enabled computing devices and Cast-enabled displays, which constitutes direct

5    infringement of the asserted claims of the '615 and '033 Patents under 35 U.S.C. § 271(a).

6    　　　　As another example, through its relationship and collaboration with third parties, such as

7    Spotify, that develop and release third-party Cast-enabled apps having the accused Cast

8    functionality for transferring playback of streaming media content from a Cast-enabled

9    computing device or Cast-enabled display to a Cast-enabled media player and then controlling the

10   Cast-enabled media player's playback via the Cast-enabled computing device or Cast-enabled

11   display, Google has actively, knowingly, and intentionally induced (and continues to actively,

12   knowingly, and intentionally induce) such third parties to "make[]" and "use[]" Cast-enabled

13   computing devices and Cast-enabled displays, which constitutes direct infringement of the

14   asserted claims of the '615 and '033 Patents under 35 U.S.C. § 271(a).

15   　　　　Along with its actual knowledge of the '615 and '033 Patents, Google also knew (or

16   should have known) that its actions would induce others to directly infringe the asserted claims of

17   the '615 and '033 Patents. For example, Google has supplied and continues to supply from the

18   United States its own Cast-enabled apps to users in the United States and abroad and encourages

19   installation and use of such Cast-enabled apps in the United States and abroad while knowing that

20   the installation and use of Google's Cast-enabled apps will infringe the asserted claims of the

21   '615 and '033 Patents. As another example, Google has supplied and continues to supply from the

22   United States its Cast technology for incorporation into third-party Cast-enabled apps (such as

23   Spotify) and encourages installation and use of such third-party Cast-enabled apps while knowing

24   that the installation and use of these third-party Cast-enabled apps will infringe the asserted

25   claims of the '615 and '033 Patents.  As yet another example, Google has supplied and continues

26   to supply Cast-enabled displays (and software for the Cast-enabled displays) to users and

27   encourages installation and use of Cast-enabled software on the Cast-enabled displays while

28   knowing that such installation and use will infringe the asserted claims of the '615 and '033

Patents. As still another example, for certain of the accused Cast-enabled apps (including Google's own Cast-enabled apps and third-party apps, such as Spotify), Google has hosted and continues to host backend software that facilitates the accused Cast functionality on Cloud-based infrastructure that is owned and/or operated by Google while knowing that installation and use of such Cast-enabled apps will infringe the asserted claims of the '615 and '033 Patents.

*'966 Patent*: Sonos contends that each computing device installed with at least the Google Home app infringes every asserted claim of the '966 Patent. Despite knowing of the '966 Patent, Google has actively, knowingly, and intentionally induced (and continues to actively, knowingly, and intentionally induce) others to directly infringe the asserted claims by actively encouraging others to make, use, offer to sell, sell, and/or import the aforementioned devices into the United States in violation of 35 U.S.C. § 271(b).

For example, through Google's website, advertising and promotional material, user guides, and/or the Google Play Store, and via audible or visual instructions emitted from or displayed on the Cast-enabled media players, Cast-enabled computing devices, and/or Cast-enabled displays, Google has actively, knowingly, and intentionally encouraged and induced (and continues to actively, knowingly, and intentionally encourage and induce) others to install the Google Home app onto computing devices, and thereby "make[]" an infringing device, which constitutes direct infringement of claims 1-4, 6-12, 14-16 of the '966 Patent under 35 U.S.C. § 271(a).

As another example, through Google's website, advertising and promotional material, user guides, and/or the Google Play Store, and via audible or visual instructions emitted from or displayed on the Cast-enabled media players, Cast-enabled computing devices, and/or Cast-enabled displays, Google has actively, knowingly, and intentionally encouraged and induced (and continues to actively, knowingly, and intentionally encourage and induce) others to "use" computing devices installed with the Google Home app, which constitutes direct infringement of the asserted claims of the '966 Patent under 35 U.S.C. § 271(a).

As yet another example, Google has actively, knowingly, and intentionally encouraged and (and continues to actively, knowingly, and intentionally encourage and induce) distributors

1  and retailers to "offer[] to sell" and "sell[]" computing devices installed with at least the Google

2  Home app, which constitutes direct infringement of the asserted claims of the '966 Patent under

3  35 U.S.C. § 271(a).

4  As still another example, by making, importing, offering to sell, and selling Cast-enabled

5  media players that require users to install the Google Home app in order to set up and configure

6  the Cast-enabled media players and Cast-enabled displays, Google has actively, knowingly, and

7  intentionally induced (and continues to actively, knowingly, and intentionally induce) others to

8  "mak[e]" and "use" computing devices installed with the Google Home app, which constitutes

9  direct infringement of the asserted claims of the '966 Patent under 35 U.S.C. § 271(a).

10  Along with its actual knowledge of the '966 Patent, Google also knew (or should have

11  known) that its actions would induce others to directly infringe the asserted claims of the '966

12  Patent. For example, Google has supplied and continues to supply from the United States the

13  Google Home app to users in the United States and abroad while knowing that the download and

14  installation of this app will infringe the asserted claims of the '966 Patent.

15  *'885 Patent*: Sonos contends that each Cast-enabled media player infringes every asserted

16  claim of the '885 Patent.  Despite knowing of the '885 Patent, Google has actively, knowingly,

17  and intentionally induced (and continues to actively, knowingly, and intentionally induce) others

18  to directly infringe the asserted claims by actively encouraging others to make, use, offer to sell,

19  sell, and/or import Cast-enabled media players into the United States in violation of 35 U.S.C. §

20  271(b).

21  For example, through Google's website, advertising and promotional material, user

22  guides, the Google Home app (among other apps offered by Google), and/or the Google Play

23  Store, Google has actively, knowingly, and intentionally encouraged and induced (and continues

24  to actively, knowingly, and intentionally encourage and induce) others to install firmware updates

25  onto Cast-enabled media players, and thereby "make[]" an infringing device, which constitutes

26  direct infringement of claims 1-3, 5-10, 12-14 of the '885 Patent under 35 U.S.C. § 271(a).

27  As another example, through Google's website, advertising and promotional material, user

28  guides, the Google Home app (among other apps offered by Google), and/or the Google Play

SONOS, INC.'S P.L.R. 3-1 & 3-2
SUPPLEMENTAL DISCLOSURES
20-CV-6754

1  Store, Google has actively, knowingly, and intentionally encouraged and induced (and continues

2  to actively, knowingly, and intentionally encourage and induce) others to "use" Cast-enabled

3  media players, which constitutes direct infringement of the asserted claims of the '885 Patent

4  under 35 U.S.C. § 271(a).

5       As yet another example, Google has actively, knowingly, and intentionally induced (and

6  continues to actively, knowingly, and intentionally induce) distributors and retailers to "offer[] to

7  sell" and "sell[]" Cast-enabled media players, which constitutes direct infringement of the

8  asserted claims of the '885 Patent under 35 U.S.C. § 271(a).

9       Along with its actual knowledge of the '885 Patent, Google also knew (or should have

10  known) that its actions would induce others to directly infringe the asserted claims of the '885

11  Patent.  For instance, Google has supplied and continues to supply Cast-enabled media players (as

12  well as firmware updates) to users while knowing that the use of Cast-enabled media players will

13  infringe the asserted claims of the '885 Patent.

14           **iii.**       **Contributory Infringement Under 35 U.S.C. § 271(c)**

15       Pursuant to 35 U.S.C. § 271(c), Google has also contributorily infringed (and continues

16  to contributorily infringe) the asserted claims of the Asserted Patents by supplying software

17  components in the United Sates to be installed and/or used by users of the Accused

18  Instrumentalities – each of which is a material component of the Accused Instrumentalities that

19  has no substantial noninfringing use – with knowledge that the software components were

20  especially made or adapted for use in an Accused Instrumentality such that the installation and/or

21  use of the software components would result in direct infringement.  As noted in Sonos's

22  Amended Complaint, Google had actual knowledge of the Asserted Patents prior to the filing of

23  the Complaint.  *See also* Google LLC's Objections and Responses to Sonos's Inc.'s First Set of

24  Interrogatories (Nos. 1-20) (dated September 7, 2021) at Google's response to Sonos's

25  Interrogatory No. 1; Sonos, Inc.'s Objections and Responses to Google LLC's First Set of

26  Interrogatories (Nos. 1-20) (dated September 7, 2021) at Sonos's response to Google's

27  Interrogatory No. 14, both of which are herein incorporated by reference.

28

SONOS, INC.'S P.L.R. 3-1 & 3-2
SUPPLEMENTAL DISCLOSURES
20-CV-6754

1     *'615 and '033 Patents*: Google has contributorily infringed (and continues to

2 contributorily infringe) the asserted claims of the '615 and '033 Patents by virtue of the fact that

3 (i) in addition to importing and selling certain Cast-enabled computing devices that come pre-

4 installed with one or more of the accused Cast-enabled apps, Google supplies software

5 components for performing the accused Cast functionality as part of Google's own Cast-enabled

6 apps for installation onto Cast-enabled computing devices in the United States and also as part of

7 Google's own Cast-enabled software (e.g., firmware and/or Cast-enabled apps) for installation

8 onto Cast-enabled displays in the United States, and each time a user installs these software

9 components, the user "makes" an infringing device and thereby directly infringes the asserted

10 claims of the '615 and '033 Patents under 35 U.S.C. § 271(a), and (ii) on information and belief,

11 Google additionally supplies software components for performing the accused Cast functionality

12 to third parties (such as Spotify) that incorporate such software code into third-party Cast-enabled

13 apps for installation onto Cast-enabled computing devices and/or Cast-enabled displays in the

14 United States, and each time a user installs these software components, the user "makes" an

15 infringing device.

16     The software components for performing the accused Cast functionality are material

17 components of infringing devices that are not staple articles or commodities of commerce suitable

18 for substantial noninfringing use because the only possible use for these software components is

19 to be installed and run on infringing Cast-enabled computing devices and Cast-enabled displays.

20     Along with its actual knowledge of the '615 and '033 Patents, Google knew (or should

21 have known) that the software components for performing the accused Cast functionality were

22 especially made or adapted for installation on infringing devices, and that installation of these

23 software components by others resulted in (and continues to result in) direct infringement of the

24 '615 and '033 Patents under 35 U.S.C. § 271(a) because each such installation "makes" a device

25 that meets every element of claims 13-15, 18-21, 23-26, 28-29 of the '615 Patent and claims 1-2,

26 4, 7-13 of the '033 Patent .

27     Moreover, as a result of Google's contributory conduct, others have directly infringed the

28 asserted claims of the '615 and '033 Patents. For example, users have installed the supplied

1   software components for performing the accused Cast functionality (which are included in

2   Google's own Cast-enabled apps, as well as third-party apps, such as Spotify) onto Cast-enabled

3   computing devices in the United States, thereby "making" infringing devices.  As another

4   example, users have installed the supplied software components for performing the accused Cast

5   functionality (which are included in firmware, as well as Cast-enabled apps) onto Cast-enabled

6   displays in the United States, thereby "making" updated Cast-enabled displays that are infringing

7   devices.  As yet another example, after installing the supplied software components for

8   performing the accused Cast functionality onto Cast-enabled computing devices and Cast-enabled

9   displays, users have used these infringing devices, which also constitutes direct infringement.

10      *'966 Patent*: Google has contributorily infringed (and continues to contributorily infringe)

11   the asserted claims of the '966 Patent by virtue of the fact that it supplies software components

12   for performing the accused functionality as part of the Google Home app in the United States, and

13   each time a user installs the Google Home app onto a computing device, the user "makes" an

14   infringing device and thereby directly infringes the asserted claims of the '966 Patent under 35

15   U.S.C. § 271(a). The software components included in the Google Home app are material

16   components of infringing devices that are not staple articles or commodities of commerce suitable

17   for substantial noninfringing use because the only possible use for these software components is

18   to be installed and run on infringing computing devices.

19      Along with its actual knowledge of the '966 Patent, Google knew (or should have known)

20   that the software components included in the Google Home app were especially made or adapted

21   for installation on infringing devices, and that installation of these software components by others

22   resulted in (and continues to result in) direct infringement of the '966 Patent under 35 U.S.C. §

23   271(a) because each such installation "makes" a device that meets every element of claims 1-4, 6-

24   12, 14-16 of the '966 Patent .

25      Moreover, as a result of Google's contributory conduct, others have directly infringed the

26   asserted claims of the '966 Patent. For example, users have installed the supplied software

27   components included as part of the Google Home app onto computing devices in the United

28   States, thereby "making" infringing computing devices. As another example, after installing the

software components included as part of the Google Home app onto computing devices, users have used these infringing devices, which also constitutes direct infringement of the asserted claims.

*'885 Patent*: Google has contributorily infringed (and continues to contributorily infringe) the asserted claims of the '885 Patent by virtue of the fact that, in addition to importing and selling Cast-enabled media players that come pre-installed with firmware, Google supplies software components for performing the accused functionality as part of firmware updates for Cast-enabled media players in the United States, and each time a user installs such a firmware update, the user "makes" an infringing device and thereby directly infringes claims 1-3, 5-10, 12-14 of the '885 Patent under 35 U.S.C. § 271(a).  The software components included in the firmware updates are material components of Cast-enabled media players that are not staple articles or commodities of commerce suitable for substantial noninfringing use because the only possible use for these software components is to be installed and run on Cast-enabled media players.

Along with its actual knowledge of the '885 Patent, Google knew (or should have known) that the software components included in the firmware updates were especially made or adapted for installation on Cast-enabled media players, and that installation of these software components by others resulted in (and continues to result in) direct infringement of the '885 Patent under 35 U.S.C. § 271(a) because each such installation "makes" an updated player that meets every element claims 1-3, 5-10, 12-14 of the '885 Patent.

Moreover, as a result of Google's contributory conduct, others have directly infringed the asserted claims of the '885 Patent.  For example, users have installed the supplied software components included as part of the firmware updates onto Cast-enabled media players in the United States, thereby "making" updated Cast-enabled media players, which constitutes direct infringement.  As another example, after installing the software components included as part of the firmware updates onto Cast-enabled media players, users have used Cast-enabled media players, which also constitutes direct infringement of the asserted claims.

### iv.      Infringement Under 35 U.S.C. § 271(f)(1)

Pursuant to 35 U.S.C. § 271(f)(1), Google has also infringed by supplying in or from the United States software and/or firmware components, which constitute substantial portions of the components of Sonos's patented inventions, and actively, knowingly, and intentionally induced (and continues to actively, knowingly, and intentionally induce) others outside of the United States to combine these software and/or firmware components in a manner that, if such combination would have occurred in the United States (as it does pursuant to the theories set forth in § I.B.iii), infringes the asserted claims of the Asserted Patents.  And these combinations by those outside of the United States do in fact occur.  Accordingly, by supplying such software and/or firmware components from the United States, Google is liable for infringement under 35 U.S.C. § 271(f)(1).

*'615 and '033 Patents*: Sonos contends that each Cast-enabled computing device, as well as each Cast-enabled display, infringes every asserted claim of the '615 and '033 Patents. Despite knowing of the '615 and '033 Patents, Google supplies software components for performing the accused Cast functionality as part of Google's own Cast-enabled apps for installation onto Cast-enabled computing devices and also as part of Google's own Cast-enabled software (e.g., firmware and/or Cast-enabled apps) for installation onto Cast-enabled displays.  These software and/or firmware components are at least substantial portions of the components of the patented inventions of the '615 and '033 Patents.  Google supplies these software and/or firmware components from the United States to various entities outside the United States.  Google then induces those entities to combine the supplied components in a manner that would, if combined within the United States, constitute infringement.  Google has actively, knowingly, and intentionally induced (and continues to actively, knowingly, and intentionally induce) these entities to make such combinations outside the United States in various ways, in violation of 35 U.S.C. § 271(f)(1).

For example, through Google's website, advertising and promotional material, user guides, and/or the Google Play Store, Google has actively, knowingly, and intentionally encouraged and induced (and continues to actively, knowingly, and intentionally encourage and

induce) others outside the United States to install one or more of the accused Cast-enabled apps (including Google's own Cast-enabled apps and third-party Cast-enabled apps, such as Spotify) onto computing devices outside of the United States.  If this combination were done within the United States, that act would constitute "mak[ing]" an infringing device, which constitutes direct infringement of claims 13-15, 18-21, 23-26, 28-29 of the '615 Patent and claims 1-2, 4, 7-13 of the '033 Patent under 35 U.S.C. § 271(a).

As another example, through Google's website, advertising and promotional material, user guides, and Cast-enabled apps, Google has actively, knowingly, and intentionally encouraged and induced (and continues to actively, knowingly, and intentionally encourage and induce) others outside the United States to install Cast-enabled software (e.g., firmware updates and/or Cast-enabled apps) onto the Cast-enabled displays outside of the United States.  If this combination were done within the United States, that act would constitute "mak[ing]" an infringing device, which constitutes direct infringement of claims 13-15, 18-21, 23-26, 28-29 of the '615 Patent and claims 1-2, 4, 7-13 of the '033 Patent under 35 U.S.C. § 271(a).

As another example, through Google's relationship with third-party manufacturers, third-party distributers, or via an otherwise affiliated entity that acts in a manufacturer or distributor role, Google actively, knowingly, and intentionally encourages and induces or instructs such parties to install one or more of the accused Cast-enabled apps (including Google's own Cast-enabled apps and third-party Cast-enabled apps, such as Spotify) onto computing devices outside of the United States.  If this combination were done within the United States, that act would constitute "mak[ing]" an infringing device, which constitutes direct infringement of claims 13-15, 18-21, 23-26, 28-29 of the '615 Patent and claims 1-2, 4, 7-13 of the '033 Patent under 35 U.S.C. § 271(a).

As another example, through Google's relationship with third-party manufacturers, third-party distributers, or via an otherwise affiliated entity that acts in a manufacturer or distributor role, Google actively, knowingly, and intentionally encourages and induces or instructs such parties to install Cast-enabled software (e.g., firmware updates and/or Cast-enabled apps) onto the Cast-enabled displays outside of the United States.  If this combination were done within the

1   United States, that act would constitute "mak[ing]" an infringing device, which constitutes direct

2   infringement of claims 13-15, 18-21, 23-26, 28-29 of the '615 Patent and claims 1-2, 4, 7-13 of

3   the '033 Patent under 35 U.S.C. § 271(a).

4        As still another example, through Google's relationship with entities (including affiliated

5   entities) that operate servers outside of the United States that host Cast-enabled apps for

6   download onto Cast-enabled computing devices and/or Cast-enabled software (e.g., firmware

7   and/or Cast-enabled apps) for download onto Cast-enabled displays, Google actively, knowingly,

8   and intentionally encourages and induces or instructs these entities to load, store, or otherwise

9   provide the Cast-enabled apps and/or Cast-enabled software onto these servers.  If this

10  combination were done within the United States, that act would constitute direct infringement of

11  certain asserted claims of the '615 and '033 Patents (e.g., claims 13-15, 18-21, and 23-24 of the

12  '615 Patent and claims 12-13 of the '033 Patent) by "mak[ing]" and/or "us[ing]" servers that host

13  such software in violation of 35 U.S.C. § 271(a).

14       As still another example, through its relationship and collaboration with third parties

15  outside the United States, such as Spotify, that develop and release third-party Cast-enabled apps

16  having the accused Cast functionality for transferring playback of streaming media content from a

17  Cast-enabled computing device or Cast-enabled display to a Cast-enabled media player and then

18  controlling the Cast-enabled media player's playback via the Cast-enabled computing device or

19  Cast-enabled display, Google has provided software components to these third parties and then

20  actively, knowingly, and intentionally induced (and continues to actively, knowingly, and

21  intentionally induce) such third parties to incorporate these software components into apps and

22  products in a manner that if done within the United States, would constitute direct infringement of

23  certain asserted claims of the '615 and '033 Patents (e.g., claims 13-15, 18-21, 23-26, 28-29 of

24  the '615 Patent and claims 1-2, 4, 7-13 of the '033 Patent) by "mak[ing]" or "us[ing]" an

25  infringing device under 35 U.S.C. § 271(a).

26       *'966 Patent*: Sonos contends that each computing device installed with at least the Google

27  Home app infringes every asserted claim of the '966 Patent. Despite knowing of the '966 Patent,

28  Google supplies the Google Home app from the United States to various entities outside the

SONOS, INC.'S P.L.R. 3-1 & 3-2
SUPPLEMENTAL DISCLOSURES
20-CV-6754

United States.  Google then induces those entities to combine the Google Home app in a manner that would, if combined within the United States, constitute infringement.  Google has actively, knowingly, and intentionally induced (and continues to actively, knowingly, and intentionally induce) these entities to make such combinations outside the United States in various ways, in violation of 35 U.S.C. § 271(b).

For example, through Google's website, advertising and promotional material, user guides, and/or the Google Play Store, and via audible or visual instructions emitted from or displayed on the Cast-enabled media players and Cast-enabled displays, Google has actively, knowingly, and intentionally encouraged and induced (and continues to actively, knowingly, and intentionally encourage and induce) others outside the United States to install the Google Home app onto computing devices outside the United States.  If this combination were done within the United States, that act would constitute "mak[ing]" an infringing device, which constitutes direct infringement of claims 1-4, 6-12, 14-16 of the '966 Patent under 35 U.S.C. § 271(a).

As another example, through Google's relationship with entities (including affiliated entities) that operate servers outside of the United States that host the Google Home app for download onto smartphone, tablet, and computer devices, Google actively, knowingly, and intentionally encourages and induces or instructs these entities to load, store, or otherwise provide the Google Home app onto these servers.  If this combination were done within the United States, that act would constitute direct infringement of certain asserted claims of the '966 Patent (e.g., claims 9-12 and 14-16) by "mak[ing]" and/or "us[ing]" servers that host such software in violation of 35 U.S.C. § 271(a).

*'885 Patent*: Sonos contends that each Cast-enabled media player infringes every asserted claim of the '885 Patent.  Despite knowing of the '885 Patent, Google supplies from the United States software components for performing the accused functionality as part of firmware updates for Cast-enabled media players.  Google then through Google's website, advertising and promotional material, user guides, the Google Home app (among other apps offered by Google), and/or the Google Play Store, Google has actively, knowingly, and intentionally encouraged and induced (and continues to actively, knowingly, and intentionally encourage and induce) others

SONOS, INC.'S P.L.R. 3-1 & 3-2
SUPPLEMENTAL DISCLOSURES
20-CV-6754

outside the United States to install firmware updates onto Cast-enabled media players outside the United States.  If this combination were done within the United States, that act would constitute "mak[ing]" or "us[ing]" an infringing device, which constitutes direct infringement of the asserted claims of the '885 Patent under 35 U.S.C. § 271(a).

As another example, through Google's relationship with third-party manufacturers, third-party distributors, or via an otherwise affiliated entity that acts in a manufacturer or distributor role, Google actively, knowingly, and intentionally encourages and induces or instructs such parties to, outside of the United States, install or load firmware onto Cast-enabled media players. If this combination were done within the United States, that act would constitute "mak[ing]" an infringing device, which constitutes direct infringement of claims 1-3, 5-10, 12-14 of the '885 Patent under 35 U.S.C. § 271(a).

### v.    Infringement Under 35 U.S.C. § 271(f)(2)

Pursuant to 35 U.S.C. § 271(f)(2), Google has also infringed by supplying software components in or from the United Sates to be combined, installed, loaded, and/or used by others outside of the United States, where these software components are components of the patented inventions that have no substantial noninfringing use and are not staple articles or commodities of commerce – with knowledge that these software components were especially made or adapted for use and an intent that these software components would be combined, installed, loaded, and/or used outside the United States such that, if such combination, installation, load, and/or use occurred within the United States (as it does pursuant to the theories set forth in § I.B.iii), it would infringe the asserted claims of the Asserted Patents.  And these combinations by those outside of the United States do in fact occur.  Accordingly, by supplying such software components in or from the United States, Google is liable for infringement under 35 U.S.C. § 271(f)(2).

*'615 and '033 Patents*: Sonos contends that each Cast-enabled computing device, as well as each Cast-enabled display, infringes every asserted claim of the '615 and '033 Patents. Despite knowing of the '615 and '033 Patents, Google supplies software components for performing the accused Cast functionality as part of Google's own Cast-enabled apps for

SONOS, INC.'S P.L.R. 3-1 & 3-2
SUPPLEMENTAL DISCLOSURES
20-CV-6754

installation onto Cast-enabled computing devices outside the United States and also as part of Google's own Cast-enabled software (e.g., firmware and/or Cast-enabled apps) for installation onto Cast-enabled displays outside the United States.  Google intends that others outside the United States, including users, install these software components onto computing devices and Cast-enabled displays and knows that such installation does in fact occur and that such installation, if occurring in the United States, would constitute "mak[ing]" an infringing device thereby directly infringing claims 13-15, 18-21, 23-26, 28-29 of the '615 Patent and claims 1-2, 4, 7-13 of the '033 Patent under 35 U.S.C. § 271(a).

Despite knowing of the '615 and '033 Patents, Google additionally supplies software components for performing the accused Cast functionality to third parties (such as Spotify) that incorporate such software code into third-party Cast-enabled apps for installation onto Cast-enabled computing devices and/or Cast-enabled displays outside of the United States.  Google intends that these third parties (such as Spotify) incorporate such software code into third-party Cast-enabled apps for installation onto Cast-enabled computing devices and/or Cast-enabled displays outside of the United States and knows that such incorporation does in fact occur and that such incorporation, if occurring in the United States, would constitute "mak[ing]" an infringing device thereby directly infringing claims 13-15, 18-21, 23-26, 28-29 of the '615 Patent and claims 1-2, 4, 7-13 of the '033 Patent under 35 U.S.C. § 271(a).

As another example, Google supplies software components for performing the accused Cast functionality to third-party manufacturers, third-party distributers, or to an otherwise affiliated entity that acts in a manufacturer or distributor role, who then, outside of the United States installs these software components onto computing devices outside of the United States. Google intends that these parties install these software components onto computing devices outside of the United States.  If this combination were done within the United States, that act would constitute "mak[ing]" an infringing device, which constitutes direct infringement of claims 13-15, 18-21, 23-26, 28-29 of the '615 Patent and claims 1-2, 4, 7-13 of the '033 Patent under 35 U.S.C. § 271(a).

SONOS, INC.'S P.L.R. 3-1 & 3-2
SUPPLEMENTAL DISCLOSURES
20-CV-6754

As another example, Google supplies software components for performing the accused Cast functionality to entities (including affiliated entities) that operate servers outside of the United States that host Cast-enabled apps for download onto Cast-enabled computing devices and/or Cast-enabled software (e.g., firmware and/or Cast-enabled apps) for download onto Cast-enabled displays.  Google intends that these entities load, store, or otherwise provide the Cast-enabled apps and/or Cast-enabled software onto these servers.  If this combination were done within the United States, that act would constitute direct infringement of certain asserted claims of the '615 and '033 Patents (e.g., claims 13-15, 18-21, and 23-24 of the '615 Patent and claims 12-13 of the '033 Patent) by "mak[ing]" and/or "us[ing]" servers that host such software in violation of 35 U.S.C. § 271(a).

Google knows the foregoing software components for performing the accused Cast functionality are material components of infringing devices and the patented inventions that are not staple articles or commodities of commerce suitable for substantial noninfringing use because the only possible use for these software components is to be loaded, installed, and/or run on infringing Cast-enabled computing devices and Cast-enabled displays.

*'966 Patent*: Sonos contends that each computing device installed with at least the Google Home app infringes every asserted claim of the '966 Patent.  Despite knowing of the '966 Patent, Google supplies software components for performing the accused functionality as part of the Google Home app in or from the United States to various entities outside the United States. Google knows and intends for those entities to combine the software components in a manner that would, if combined within the United States, constitute infringement because each combination or installation of the Google Home app onto a computing device would constitute "mak[ing]" an infringing device and thus directly infringe claims 1-4, 6-12, 14-16 of the '966 Patent under 35 U.S.C. § 271(a).

Google knows that the software components included in the Google Home app are material components of infringing devices that are not staple articles or commodities of commerce suitable for substantial noninfringing use because the only possible use for these software components is to be installed and run on infringing computing devices.

SONOS, INC.'S P.L.R. 3-1 & 3-2
SUPPLEMENTAL DISCLOSURES
20-CV-6754

1    Along with its actual knowledge of the '966 Patent, Google knew (or should have known)

2  that the software components included in the Google Home app were especially made or adapted

3  for installation on infringing devices, and that installation of these software components by others

4  outside of the United States would, if done within the United States, constitute (and continues to

5  result in) direct infringement of the '966 Patent under 35 U.S.C. § 271(a) because each such

6  installation "makes" a device that meets every element of every asserted claims.

7    Moreover, as a result of Google providing software components of the Google Home app,

8  others have outside of the United States combined the Google Home app in a manner that, if done

9  within the United States, would constitute direct infringement of the asserted claims of the '966

10  Patent.  For example, others outside the United States have installed the Google Home app onto

11  computing devices outside the United States.  If this combination were done within the United

12  States, that act would constitute "mak[ing]" an infringing device, which constitutes direct

13  infringement of claims 1-4, 6-12, 14-16 of the '966 Patent under 35 U.S.C. § 271(a).

14    As another example, Google supplies software components of the Google Home app to

15  entities (including affiliated entities) that operate servers outside of the United States that host the

16  Google Home app for download onto smartphone, tablet, and computer devices.  Google intends

17  that these entities load, store, or otherwise provide the Google Home app onto these servers.  If

18  this combination were done within the United States, that act would constitute direct infringement

19  of certain asserted claims of the '966 Patent (e.g., claims 9-12 and 14-16) by "mak[ing]" and/or

20  "us[ing]" servers that host such software in violation of 35 U.S.C. § 271(a).

21    *'885 Patent*: Sonos contends that each Cast-enabled media player infringes every asserted

22  claim of the '885 Patent.  Despite knowing of the '885 Patent, Google supplies in or from the

23  United States software components for performing the accused functionality as part of firmware

24  updates for Cast-enabled media players, and users install such a firmware update outside of the

25  United States in a manner that, if done within the United States, would constitute "mak[ing]" an

26  infringing device and thereby directly infringe claims 1-3, 5-10, 12-14 of the '885 Patent under 35

27  U.S.C. § 271(a).  The software components included in the firmware updates are material

28  components of the patented invention that are not staple articles or commodities of commerce

SONOS, INC.'S P.L.R. 3-1 & 3-2
SUPPLEMENTAL DISCLOSURES
20-CV-6754

1    Dated:  February 21, 2022                LEE SULLIVAN SHEA & SMITH LLP

2                                             By: /s/ Cole B. Richter

3                                                 Cole B. Richter (admitted pro hac)

4

5                                                 Clement Seth Roberts
                                                  California Bar No. 209203
6                                                 ORRICK, HERRINGTON & SUTCLIFFE LLP
                                                  405 Howard St.
7                                                 San Francisco, CA 94105
                                                  Telephone:  415.773.5484
8                                                 Facsimile:  415.773.5759
                                                  croberts@orrick.com
9

10                                                Bas de Blank
                                                  California Bar No. 191487
11                                                ORRICK, HERRINGTON & SUTCLIFFE LLP
                                                  1000 Marsh Blvd.
12                                                Menlo Park, CA 94205
                                                  Telephone:  650.614.7343
13                                                Facsimile:  650.614.7401
                                                  bdeblank@orrick.com
14

15                                                Alyssa Caridis
                                                  California Bar No. 260103
16                                                ORRICK, HERRINGTON & SUTCLIFFE LLP
                                                  777 South Figueroa St., Suite 3200
17                                                Los Angeles, CA 90017
                                                  Telephone:  213.612.2372
18                                                Facsimile:  213.612.2499
                                                  acaridis@orrick.com
19

20                                                George I. Lee (pro hac pending)
                                                  Sean M. Sullivan (pro hac pending)
21                                                Rory P. Shea (pro hac pending)
                                                  J. Dan Smith (pro hac pending)
22                                                Michael P. Boyea (pro hac pending)
                                                  Cole B. Richter (pro hac pending)
23                                                LEE SULLIVAN SHEA & SMITH LLP
                                                  656 W. Randolph St., Floor 5W
24                                                Chicago, IL 60661
                                                  Telephone:  312.754.9602
25                                                Facsimile:  312.754.9603
                                                  lee@ls3ip.com
26                                                sullivan@ls3ip.com
                                                  shea@ls3ip.com
27                                                smith@ls3ip.com

28                                                          SONOS, INC.'S P.L.R. 3-1 & 3-2

boyea@ls3ip.com
richter@ls3ip.com

*Attorney for Sonos, Inc.*