# EXHIBIT 3

# FILED UNDER SEAL

Contains Highly Confidential AEO and Source Code Materials

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| GOOGLE LLC, | | CASE NO. 3:20-cv-06754-WHA |
| | Plaintiff | Related to CASE NO. 3:21-cv-07559-WHA |
| v. | | |
| SONOS, INC., | | |
| | Defendant. | |

**OPENING EXPERT REPORT OF DR. DAN SCHONFELD REGARDING CLAIM 1 OF U.S. PATENT NO. 10,848,885**

置

置

Contains Highly Confidential AEO and Source Code Materials

in standalone mode after being added to a new zone scene, but Sonos cites no direct evidence of this, and instead makes this conclusion from a set of incorrect interpretations of irrelevant portions of the specification.  Fourth, Sonos argues that "invoking" a zone scene causes the zone scene to become configured to play audio in synchrony, but this does not disclose that a zone player continues in standalone mode after being added to a group either.  Rather, the zone player may have been stopped and then later invoked to play back the different audio in synchrony.

## XII.   NON-INFRINGING ALTERNATIVES

723.    As I will explain (in what I expect will be my forthcoming report on non-infringement), Google's products do not infringe the '885 patent.  It is thus my opinion that the accused Google products are themselves non-infringing alternatives to Claim 1 of the '885 patent.

724.    Additionally, I understand that Sonos contends that for Claim 1 of the '885 patent, the date of first infringement in this case is November 24, 2020, the date on which the '885 patent issued.  Based on my current understanding of Sonos's infringement contentions and my review of the evidence in this case, including documents, deposition testimony and source code, it is my opinion that additional non-infringing alternatives were available at the time of the alleged first infringement (and are still available today).

725.    I discuss one of these non-infringing alternatives below.  I reserve the right to update, amend, or supplement my opinions based on further evidence offered by the parties or located based on my investigation, opinions proffered by Sonos's experts, or arguments raised by counsel.

726.    ███████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████   The Alternative is a non-infringing alternative for the Accused Instrumentalities to the alleged invention claimed in Claim 1 of the '885 patent.

Contains Highly Confidential AEO and Source Code Materials

727.     Claim 1 includes limitations that require the zone player to be added to two different zone scenes: "(i) receiving, from a network device over a data network, a first indication that the first zone player has been added to a first zone scene comprising a first predefined grouping of zone players including at least the first zone player and a second zone player that are to be configured for synchronous playback of media when the first zone scene is invoked" and "(ii) receiving, from the network device over the data network, a second indication that the first zone player has been added to a second zone scene comprising a second predefined grouping of zone players including at least the first zone player and a third zone player that are to be configured for synchronous playback of media when the second zone scene is invoked, wherein the second zone player is different than the third zone player".   The claim then requires that "after receiving the first and second indications, continuing to operate in the standalone mode until a given one of the first and second zone scenes has been selected for invocation."   In other words, the claim requires the a zone player that was playing back music individually to be added to two different zone scenes, but to continue to operate in a "standalone mode" until one of the two zone scenes is "invoked."

728.

729.

Contains Highly Confidential AEO and Source Code Materials

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████

730.    ██████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████

## XIII.   UNPATENTABLE SUBJECT MATTER

731.    As an initial matter, I understand that claim 1 of the '885 patent is directed to the abstract idea of grouping and controlling speakers through "zone scenes" that are created using subjective mental processes of human users.  At base, the apparent invention according to the patent itself is grouping speakers for simultaneous playback of the same media. '885 Patent at 2:36-37 ("[T]he present invention pertains to controlling a plurality of multimedia 23 players, or simply players, in groups."). As the patent recognizes, "conventional multi-zone audio system[ s] that usually include[] a number of audio players" were already known art and could "play[] different audio sources in different audio players" by being "either hard-wired or controlled by a pre-configured and pre-programmed controller."  Dkt. 208-2 at 1:62-65.  In fact, the specification

Contains Highly Confidential AEO and Source Code Materials

experience the time-synchronized delivery of media content. *See*, *e.g.*, '694 patent at Abstract, 10:21-29. Both patents also reference similar hardware such as playback devices and processors as well. *See*, *e.g.*, '885 patent at 5:21-39, 6:28-48, and '694 patent at 4:31-65, Fig. 1.

## XVI.   RESERVATION OF RIGHTS

755.    In the event I am called upon to testify as an expert witness in this case, I may also discuss my own work, teaching, and publications in the field, and knowledge of the state of the art in the relevant time period. I may rely on handbooks, textbooks, technical literature, my own personal experience in the field, and other relevant materials or information to demonstrate the state of the art in the relevant period and the evolution of relevant technologies. I also reserve the right to rely on demonstrative exhibits to help explain the opinions set forth in this report.

756.    I reserve the right to modify or supplement my opinions, as well as the basis for my opinions, in light of new positions set forth by Sonos, to the extent Sonos is permitted to advance those positions. This includes positions concerning the scope and interpretation of the asserted claim, infringement allegations, conception, diligence, and reduction to practice, and secondary considerations. It is also my understanding that Sonos may submit an expert report corresponding to this Report. I reserve the right to rebut any positions taken in that report.

I, Dan Schonfeld, declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

DATED:  June 22, 2022

Dan Schonfeld, Ph.D