January 23, 2023

Hon. Donna M. Ryu, Magistrate Judge (N.D. Cal.)

Re: <u>*Google, LLC v. Sonos, Inc.*</u>; Case No. 3:20-cv-06754-WHA (DMR) (N.D. Cal.)

Dear Judge Ryu:

Google LLC ("Google") and Sonos, Inc. ("Sonos") respectfully submit this joint letter brief per the Court's Standing Order.  The parties have conferred over Zoom, most recently on January 20, 2023[1].

---

[1] The relevant case management deadlines include: the deadline for bringing all discovery motions or extension motions based on discovery violations (October 14, 2022); close of non-expert discovery (November 30, 2022); close of expert discovery (January 31, 2023); deadline to file dispositive motions (February 6, 2023); pretrial conference (May 3, 2023); and trial (May 8, 2023).

**Sonos's Statement:**

This case was filed in September 2020.  On the day fact discovery opened (August 7, 2021), Sonos propounded its first set of fact discovery interrogatories on Google, including Interrogatories Nos. 19 and 20.  On the last day of fact discovery—November 30, 2022—Google served extensive supplemental responses.  Sonos seeks to strike two sets of previously undisclosed theories in two discovery responses served on that day.  By serving new theories on the last day of discovery, Google improperly ensured that Sonos would be unable to take any necessary fact discovery on the eleventh-hour disclosures.[2]

***Interrogatory No. 19*** asked Google (in principal part) to "[d]escribe in detail the complete legal and factual basis for each defense plead in Google's Answer and Counterclaims (Dkt. 32)."  Ex. 1 at 63.  Google's initial response simply incorporated by reference Google's pleadings, initial disclosures, and one set of legal briefs, while referring Sonos to Google's source code *generally* as well as two BATES ranges consisting of approximately 70,000 pages of productions.  *Id.* at 63-64.  But on the last day of discovery, Google responded substantively for the first time, with over 20 new pages of narrative response and citations.  *See id.* at 64-86.

***Interrogatory No. 20*** asked Google (in principal part) to "describe in detail the complete legal and factual basis for any contention by Google that the secondary considerations of nonobviousness … do not support the nonobviousness of each such claim" as to each Asserted Patent Claim.  Ex. 1 at 86.  In its initial response, Google declined to respond substantively, contending that the interrogatory was "premature."  *Id.* at 87-88.  On the last day of discovery, Google responded substantively for the first time, with three full pages of narrative response.  *See id.* at 88-90.

Sonos does not challenge the vast majority of Google's supplemental responses.  For example, portions of Google's supplemental responses are verbatim quotes from Google's operative Answer, which Sonos does not seek to strike.  Rather, Sonos seeks to strike two specific portions of the responses in which Google disclosed entirely new theories for the first time on the last day of fact discovery.  First, in its supplemental response to Interrogatory No. 19, Google disclosed for the first time that its unclean hands defense extends to allegations that Sonos improperly used what it developed with Google to partner with *other* companies.  *See, e.g.*, Ex. 1 at 75-77.  *Compare* Dkt. 197-3 at 24-26 (making no mention of Sonos's alleged conduct with third-party companies).  Second, in its supplemental response to Interrogatory No. 20, Google for the first time provided three full pages of substantive responses regarding its claimed legal and factual bases for its contentions that the secondary considerations of nonobviousness do not support the nonobviousness of the asserted patent claims.  *See* Ex. 1 at 88-90.

Extensive authority from this Court and others makes clear that a party does not abide by its discovery obligations where it discloses new theories for the first time at a stage in the case in which further fact discovery is no longer possible.  For example, in *Innogenetics v. Abbott*, the Federal Circuit noted that an alleged infringer's "disclosure of [a] patent as an anticipatory prior

---

[2] Sonos acknowledges that this discovery letter is submitted after the Court's deadline for bringing all discovery motions—which was October 14, 2022.  However, this motion is based on Google's conduct *after* that deadline.  Sonos could not have predicted prior to the deadline that Google would supplement with new theories *after* that deadline and on the last day of fact discovery.

1

art reference on the very last day of discovery meant [the patentee] was stripped of any meaningful opportunity to prepare an adequate cross-examination of the reference." *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1376 (Fed. Cir. 2008). As the Court noted, "[t]he purpose of … the Federal Rules[] is to prevent unfair and prejudicial surprise, not to facilitate last-minute production of evidence." *Id.* (quoting *ATD Corp. v. Lydall, Inc.*, 159 F.3d 534, 551 (Fed. Cir. 1998)). And the fact that the patentee had the opportunity to conduct *expert* discovery did not cure the prejudice, making preclusion of the reference appropriate. *Id.* Similarly, in *Finjan v. Symantec*, this Court granted the patentee leave to amend its infringement contentions to add a new doctrine of equivalents supplement where the alleged infringer waited "[t]wo years" after its initial, one-paragraph response to an interrogatory contention, and then supplemented that response with 72 pages of new information and noninfringement theories, served "one hour before the close of fact discovery." *Finjan, Inc. v. Symantec Corp.*, No. 14-cv-02998-HSG(JSC), 2017 WL 4025219, at *2 (N.D. Cal. Sept. 13, 2017). While Sonos currently seeks to strike Google's improper responses, and not to amend, *Finjan* demonstrates that a defendant cannot simply supplement its response on the last day of discovery to disclose new theories for the first time, without some appropriate remedy to the prejudiced party. *See also, e.g.*, Huawei Techs., Co, Ltd v. Samsung Elecs. Co, Ltd.*, 340 F. Supp. 3d 934, 996-98 (N.D. Cal. 2018) (denying Samsung's motion to strike Huawei's expert reports because, *inter alia*, those reports' discussion of undisclosed invalidity contentions came in response to *Samsung*'s interrogatory response served on the last day of fact discovery).

Courts agree that it is not proper to simply wait until the very last day of discovery to respond to contention interrogatories. *See, e.g.*, *Bal Seal Eng'g, Inc. v. Nelson Prods., Inc.*, No. 8:13-cv-01880-JLS-KESx, 2018 WL 6258877, at *2-3 (C.D. Cal. Feb. 12, 2018) (noting that a party's "refusal to respond to [contention interrogatories] until the day that discovery closed—thereby preventing Bal Seal from following up on NPI's responses—was improper" and granting sanctions for motion to compel); *Choudhuri v. Wells Fargo Bank, N.A.*, No. 15-cv-03608-VC (KAW), 2017 WL 4004872, at *2-3 (N.D. Cal. Sept. 12, 2017) (where defendant sought documents supporting plaintiff's contentions, plaintiff was not entitled to withhold production until the last day of discovery); *id.* at *3-6 (ordering same response deadline as to interrogatories, including interrogatories requesting statement of "all facts concerning" each of plaintiff's claims). As the Court in *Choudhuri* noted, "[s]imply because the discovery deadline has not yet passed does not mean Plaintiff is entitled to withhold all document production until the very last day of discovery." *Id.* And as another court concluded, "[a] large supplemental response made on the last day of the discovery period [is] inherently suspicious in terms of whether it is seasonable." *Paxar Americas, Inc. v. Zebra Techs. Corp.*, No. 3:03-cv-142, 2005 WL 6493791, at *2 (S.D. Ohio Aug. 31, 2005). Indeed, "[a] party's obligation under Fed. R. Civ. P. 33 [and 26(e)]" is to supplement timely, not merely to "supplement[] 'within the fact discovery period.'" Moreover, "answers to interrogatories delivered on the last day of the discovery period are not 'within' the discovery period for any useful purpose of the propounder of the interrogatories, at least as to follow up discovery. The fact that it is five months before trial is meaningless if the propounder is prevented by a pretrial order from exploring the answers further." *Id.*

With respect to Interrogatory No. 19, Google does not and cannot point to any earlier disclosure of this theory, and instead only cites the text of an agreement between the parties that long predates this litigation. The question is not whether Sonos was *on notice* of the text of a 2013 agreement but whether Google, prior to the last day of fact discovery, disclosed that its unclean hands defense extends to allegations that Sonos improperly used what it developed with Google to partner with

2

other companies.  *Cf.* Dkt. 197-3 at 24-26.  Google's response makes clear that it did not do so.  *Cf. also id.*  Similarly, it makes little sense to say, as Google does, that Sonos failed to seek discovery on this affirmative defense.  The very subject of this motion is Google's failure to timely respond to this interrogatory asking Google to "[d]escribe in detail the complete legal and factual basis for each" of Google's affirmative defenses.  Ex. 1 at 63.  And had Sonos been on notice of Google's theory, Sonos would have sought additional discovery on Google's knowledge of and acquiescence to this alleged conduct by Sonos.  Depending on the results of that discovery, Sonos might similarly have sought related discovery from third parties.  Google's failure is therefore not substantially justified or harmless.  *See* Fed. R. Civ. P. 37(c)(1).  Google also contends that it could not supplement until it received all of the discovery it sought from Sonos on this issue, but offers no excuse for failing to disclose this theory *at all* until the final day of discovery.  Moreover, the supplementation actually appears to rely on deposition testimony taken during the *summer* of 2022.  *See* Ex. 1 at 75-76 (citing Coburn, Elliot, and Schmerder depositions).

With respect to Interrogatory No. 20, Google argues that it previously disclosed these theories in June 2022 expert reports limited to the showdown patents, one of which is no longer even in the case.  But Google's three pages of eleventh-hour supplementation go far beyond the few conclusory paragraphs in those reports.  And if Google knew about these theories in June 2022, then there is no reason that it could not supplement this response then, instead of waiting for the last day of discovery to explain the bases for its theories.  Accordingly, Sonos requests that the Court strike Google's new theories disclosed on the last day of fact discovery.

**Google's Statement:** As an initial matter, Sonos's motion is untimely.  The deadline to bring motions based on purported discovery violations was October 14, yet Sonos did not move on these interrogatories (or even raise them with Google) at that time despite the purported incompleteness of Google's responses.  Instead, Sonos elected to wait over three months until the eve of dispositive motions.  Allowing this belated motion would defeat the purposes of the Court's deadlines.

*Interrogatory No. 19*:  Sonos has long been on notice that the parties' agreement prohibiting Sonos from ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ was the basis for Google's unclean hands defense, and accordingly it could not pass off Google's work during the collaboration as its own when it working with other partners.  *See* Dkt. 221-3 at 25.

Even if Google's response was untimely, any such failure to disclose was harmless.  Sonos's contention that it would have sought additional discovery is specious.  During the discovery period, Sonos sought ***no*** discovery at all regarding ***any*** theory of Google's unclean hands defense—even those that were apparently properly disclosed.  Indeed, there is ***no*** discovery relevant to Sonos's improper use of Google's work in Google's possession—***Sonos*** was and is ***in sole possession*** of any information showing that ***Sonos*** improperly shared and utilized the results of the parties' collaboration with ***Sonos's*** other partners.  *See IGT v. All. Gaming Corp.*, No. 2:04-CV-1676-RCJ-RJJ, 2008 WL 11451135, at *3 (D. Nev. Oct. 21, 2008) (newly disclosed prior art found harmless because plaintiff "presumably possesses all the documents on its own machine" and "controls the witnesses with relevant knowledge").  Google's response merely summarizing Sonos's own testimony and documents could not have unfairly surprised or prejudiced Sonos such that preclusion is unwarranted.  *Guy v. Toys R US*, No. 16-CV-2224-AJB-JMA, 2017 WL 2230146, at *2 (S.D. Cal. May 22, 2017) ("'Exclusionary sanctions based on discovery violations are generally improper absent undue prejudice to the opposing side.'")

3

Nor does Sonos identify any legitimate additional necessary discovery. Sonos vaguely references "third parties" but does not indicate what it would have sought when the defense is based on *Sonos's* own inequitable conduct. With respect to Google's "knowledge of and acquiescence to" Sonos's improper use, any such information would have been included in the parties' extensive deposition testimony and document production regarding communications during their years-long collaboration. *See, e.g.*, 

. *See Thissel v. Murphy*, No. 15-CV-05937-RS, 2017 WL 2462316, at *2 (N.D. Cal. June 7, 2017) ("Rule 26(e), however, requires supplemental or corrective disclosures or responses only for 'information [that] has not otherwise been made known to the other parties during the discovery process or in writing.'").

Moreover, Sonos's interrogatory sought a description "in detail" of "the *complete* legal and factual basis for each defense plead." Google did not have the "complete" picture of the facts regarding Sonos's use of Google's information with other partners until the end of fact discovery (and arguably even later). Sonos produced documents and its witnesses provided testimony on this issue well into the discovery period; in fact, depositions of relevant witnesses were still taking place in November 2022. Discovery on the issue was also ongoing, as Google was at that time still attempting to obtain documents from Sonos showing it used Google's cloud queue API as a foundation for its own for its (non-Google) partnerships. Indeed, Sonos did not complete production of relevant documents until after the fact discovery period closed. Thus, the "harsh remedy" of exclusion is not warranted because any alleged failure to timely disclose this information was substantially justified. *See* Fed. R. Civ. P. 37(c)(1). *Lennane v. Am. Zurich Ins. Co.*, No. 2:13-CV-02311-JAM-AC, 2015 WL 882372, at *7 (E.D. Cal. Mar. 2, 2015). To the extent any remedy is warranted, a short deposition on Google's "knowledge of and acquiescence to" Sonos's conduct is sufficient. As depositions remain ongoing and additional depositions may occur in light of pending discovery disputes, this would not cause a disruption to the schedule.

***Interrogatory No. 20***: Sonos's assertion that Google revealed "new theories" regarding secondary considerations of non-obviousness in its supplemental interrogatory response on the last day of fact discovery is inaccurate. Google objected that this interrogatory prematurely called for expert opinions, then disclosed those opinions in its technical expert reports in ***June 2022—five months*** before the November 30 fact discovery deadline. In fact, Google's experts specifically addressed Sonos's response to Google's Interrogatory No. 4, which sought Sonos's contentions on secondary considerations. For example, Google's technical expert for the zone scene patents opined:

> 737. I understand that in response to Google's Interrogatory No. 4, asking Sonos to provide its contentions regarding secondary considerations, Sonos alleged that there was evidence of industry praise. I understand that to show "praise by others" there must be a nexus between the industry praise and the patented technology. Sonos points only to statements about GPM and YouTube Music; these products do not embody the patents. Moreover, the comments Sonos points to do not praise the claimed approach and only discuss music playback at a high-level. They do not track nor identify the claimed "standalone mode," "transition," "zone scene," joining speakers to multiple groups, or any of the other specific claimed features. As such, there is no nexus between any secondary consideration regarding praise and the claimed invention.

4

Opening Expert Report of Dr. Dan Schonfeld at 486-87.  As another example, Google's technical expert for the '033 patent includes a nearly identical discussion of this indication in his *June 2022* expert report:

> 664. Indeed, I understand that evidence of "simultaneous invention" can be a secondary indicia tending to show obviousness. As set forth above, there were many individuals and companies who were working the same space as Sonos during the time frame of the purported invention. *See supra*, Section VIII (State of Art). To the extent that Sonos claims to have "invented" anything or solved any purported problem, these companies and individuals (among others) invented the same thing and solved the same problem in the same way at around the same time (or earlier).

Expert Report of Samrat Bhattacharjee at 313-314.  Given that the patent owner "bear[s] the burden of proving [] evidence of secondary considerations," the sections of Google's experts' reports addressing Sonos's contentions were sufficient to put Sonos on notice of Google's positions in June 2022.  *Fox Factory, Inc. v. SRAM, LLC*, 944 F.3d 1366, 1378 (Fed. Cir. 2019).  Contrary to Sonos's contention, Google's supplement largely tracks and does not go beyond the expert reports—in fact, the reports actually contained *more* fulsome information regarding the issue.  For example, Mr. Bhattacharjee's report explained in detail how "Apple Airplay . . . allowed a user to transfer playback of music from a phone to television or speaker" in the addressing the state of the art at the time of the alleged invention date.  *Id.* at 44-45.

Sonos does not even attempt to (and cannot) identify any prejudice it would suffer if the Court denied its requested relief.  Sonos "did not move for leave to reopen discovery" or "identif[y] any discovery they would have conducted had [Google] supplemented its responses sooner."  *S.E.C. v. Luna*, No. 2:10-CV-2166-PMP-CWH, 2014 WL 794202, at *9 (D. Nev. Feb. 26, 2014) (denying preclusion of theory that was disclosed in supplemental responses served on the last day of discovery).  Indeed, Sonos never sought discovery or testimony on the issue even after receiving Google's technical expert reports in June, and will have the opportunity to depose Google's experts on the topic in the upcoming week.  Thus, to the extent that the Court finds Google's response was untimely, any such failure to disclose was harmless.  *See* Fed. R. Civ. P. 37(c)(1).

Sonos's cited cases are inapposite and/or out-of-Circuit.  Unlike the non-moving parties in *Innogenetics*, 512 F.3d 1363 and *Finjan,* 2017 WL 4025219, Google did not fail to disclose an entirely new doctrine of equivalents theory or prior art reference until the last day of discovery.  As noted above, Google provided Sonos with its theories well before November 30, 2022, and any evidence on the "new" theories has been and would be in the possession of Sonos.  In addition, unlike the defendant in *Bal Seal Eng'g, Inc. v. Nelson Prod., Inc.*, No. 813CV01880JLSKESX, 2018 WL 6258877, at *3 (C.D. Cal. Feb. 12, 2018), Google did not object and "refuse[] to serve responses until the day of the discovery cut-off" such that Sonos had to seek assistance from the Court.  Similarly, in *Choudhuri v. Wells Fargo Bank, N.A.*, No. 15-CV-03608-VC (KAW), 2017 WL 4004872, at (N.D. Cal. Sept. 12, 2017), the movant had repeatedly attempted to meet and confer with (and brought multiple discovery motions against) the plaintiff, who refused to provide additional information.  Here, Sonos instead chose to stay silent and move to strike after the deadline for discovery motions had passed without ever having raised the issue with Google.

5

| | |
|---|---|
| DATED: January 23, 2023 | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| | |
| | By */s/ Charles K. Verhoeven* |
| | Charles K. Verhoeven |
| | Melissa J. Baily |
| | Lindsay Cooper |
| | Marc Kaplan |
| | |
| | *Attorneys for Google LLC* |
| | |
| | |
| | ORRICK, HERRINGTON & SUTCLIFFE LLP |
| | |
| | By */s/ Clement S. Roberts* |
| | Clement S. Roberts |
| | |
| | *Attorneys for Sonos, Inc.* |

**FILER'S ATTESTATION**

I, Clement S. Roberts, pursuant to Civil Local Rule 5-1(h)(3), attest that all other Signatories listed, and on whose behalf the filing is submitted, have concurred in the filing of the document.

| | |
|---|---|
| Dated: January 23, 2023 | */s/ Clement S. Roberts* |
| | Clement S. Roberts |

6