# EXHIBIT 1

**PUBLIC - REDACTED**

HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Charles K. Verhoeven (Bar No. 170151)
  charlesverhoeven@quinnemanuel.com
  Melissa Baily (Bar No. 237649)
  melissabaily@quinnemanuel.com
  James Judah (Bar No. 257112)
  jamesjudah@quinnemanuel.com
  Lindsay Cooper (Bar No. 287125)
  lindsaycooper@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

  Marc Kaplan (*pro hac vice*)
  marckaplan@quinnemanuel.com
191 N. Wacker Drive, Ste 2700
Chicago, Illinois 60606
Telephone:     (312) 705-7400
Facsimile:     (312) 705-7401

*Attorneys for Google LLC*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

|  |  |
|---|---|
| GOOGLE LLC, | |
| Plaintiff | |
| v. | Case No. 3:20-cv-06754-WHA |
| SONOS, INC., | |
| Defendant. | |

## GOOGLE LLC'S TENTH SUPPLEMENTAL OBJECTIONS AND RESPONSES TO PLAINTIFF SONOS, INC.'S FIRST SET OF FACT DISCOVERY INTERROGATORIES (NO. 5, 9, 17, 21)

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant Google LLC ("Google") hereby objects and responds to Plaintiff Sonos, Inc.'s ("Sonos") First Set of Fact

GOOG-SONOSNDCA-00070785, GOOG-SONOSNDCA-00070790, GOOG-SONOSNDCA-00070792, GOOG-SONOSNDCA-00070794, GOOG-SONOSNDCA-00070795, GOOG-SONOSNDCA-00070797.

**Additional Accused Chromecast Products**: GOOG-SONOSNDCA-00073263, GOOG-SONOSNDCA-00073163, GOOG-SONOSNDCA-00073294, GOOG-SONOSNDCA-00073259.

**Additional Accused Nest Products**: GOOG-SONOSNDCA-00073183, GOOG-SONOSNDCA-00073113, GOOG-SONOSNDCA-00073113, GOOG-SONOSNDCA-00073240, GOOG-SONOSNDCA-00073277.

**Additional Accused Pixel Products:** GOOG-SONOSNDCA-00070921, GOOG-SONOSNDCA-00070967, GOOG-SONOSNDCA-00071002, GOOG-SONOSNDCA-00071065, GOOG-SONOSNDCA-00071079, GOOG-SONOSNDCA-00071111, GOOG-SONOSNDCA-00071208, GOOG-SONOSNDCA-00071274.

**INTERROGATORY NO. 19:**

Describe in detail the complete legal and factual basis for each defense plead in Google's Answer and Counterclaims (Dkt. 32), including but not limited to: an identification of all facts supporting or refuting Google's defenses, all persons knowledgeable of these facts (including every person whose knowledge or opinion is or was relied upon as a basis for Google's defenses, the opinion or substance of such person's or persons' knowledge, and the entire basis of that knowledge or opinion), and all documents and things, including the Bates number(s) of such documents and things, concerning, including the Bates number(s) of such documents and things, concerning Google's defenses.

**OBJECTIONS:** Google incorporates by reference all of its General Objections as if fully set forth herein. Google objects to this interrogatory on the grounds that it is vague, ambiguous, unclear as to information sought, and lacking sufficient particularity to permit Google to reasonably prepare a response with respect to the undefined terms "opinion" "is or was relied upon as a basis," "opinion or substance," and "entire basis." Google further objects to this interrogatory on the grounds that it assumes the existence of hypothetical facts that are incorrect or unknown to Google. Google also objects to this interrogatory as overbroad, burdensome, and not proportional to the

needs of the case, including to the extent it (i) seeks identification of "all persons knowledgeable" of certain facts,' and (ii) seeks "all documents and things" concerning Google's defenses. Google further objects to this interrogatory to the extent it seeks information that is not reasonably accessible or that is not within Google's possession, custody, or control, such as information that is within Sonos's or a third party's possession, custody or control and has not yet been produced in this case. Google further objects to this interrogatory as overbroad and unduly burdensome to the extent that it seeks information that is publicly available, not uniquely within the control of Google, or is equally available to Sonos. Google additionally objects to this interrogatory to the extent it seeks communications and information protected from disclosure by the attorney-client privilege and/or attorney work product doctrine. Google further objects to this interrogatory to the extent it seeks confidential and/or proprietary business information. Google also objects to this interrogatory to the extent that it premature seeks expert discovery, opinion, and/or testimony. Google also objects to this interrogatory on the grounds that it seeks information that is obtainable through less burdensome and more convenient forms of discovery.

Google further objects to this interrogatory to the extent that it purports to seek ESI before Sonos has shown good cause for such ESI and before the parties have agreed on a procedure for doing so in accordance with the Court's OGP.

**RESPONSE:**  Subject to and without waiving the foregoing General and Specific objections, Google responds, as follows:

Google incorporates by reference Google's Answer and Counterclaims (Dkt. 32), Google's briefing in connection with its Motion to Transfer (Dkt. 34), and Google's Fed. R. Civ. P. 26 initial disclosures.

Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Google further refers Sonos to the source code that Google has made available and the following documents containing information responsive to this interrogatory:  GOOG-SONOS-WDTX-INV-00000001-16306, GOOG-SONOSWDTX-00000001-00053957.

**SUPPLEMENTAL OBJECTIONS & RESPONSE**: Google further objects to this interrogatory because Sonos bears the burden of proving infringement, and this interrogatory

1  attempts to shift the burden of proof to Google for non-infringement.  Google maintains the General

2  and Specific objections set forth above.  Subject to and without waiving the foregoing General and

3  Specific objections, Google responds, as follows:

*Non-Infringement*

5       Google does not infringe and has not infringed, either literally or under the doctrine of

6  equivalents, and is not liable for infringement of, any valid and enforceable claim of the '615, '033,

7  '966, and '885 patents ("Asserted Patents"), including under the doctrine of equivalents or reverse

8  doctrine of equivalents.  Google understands that the Court has ruled on certain issues for claim 13

9  of the '615 patent and claim 1 of the '885 patent.  Google reserves its rights to appeal any adverse

10  judgment, but through this disclosure does not intend to offer any opinions contrary to any Court

11  order.  Google incorporates by reference its response to Interrogatory No. 12 and the supplements

12  thereto, as well as the expert reports of Dr. Samrat Bhattacharjee and Dr. Dan Schonfeld, Google's

13  Motion for Summary Judgment Pursuant to the Court's Patent Showdown, Google's Opposition to

14  Sonos's Motion for Summary Judgment Pursuant to the Court's Patent Showdown Procedure,

15  Google's Answer and Counterclaims to Sonos, Inc.'s Third Amended Complaint (Dkt. 223), and

16  testimony from its witnesses regarding the accused products and services.

17       In addition, with respect to the '615 Patent, the Court has already ruled in its order on

18  Google's summary judgment motion that accused apps do not infringe the '615 patent because they

19  do not employ a "local playback queue" as required by claim 13, given that the groups of items

20  stored by the YouTube apps and Google Play Music app do not qualify as a "playback queue."  Dkt.

21  316 at 9-11.  Because asserted claims 14, 15, 18, 19, 20, and 21 further limit claim 13, the Court's

22  non-infringement determination applies equally to those dependent claims.  Sonos's contentions

23  argue that Claim 25, the only other independent claim asserted by Sonos, has substantially similar

24  limitations to those of claim 13; thus, Sonos's infringement allegations for claim 25 and its asserted

25  dependent claim 26 also must fail under its contentions.

26       Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Google further refers Sonos

27  to the following non-exhaustive list of additional documents containing information responsive to

28  this interrogatory:  GOOG-SONOSNDCA-00072571,  GOOG-SONOSNDCA-00073341-73409,

1   GOOG-SONOSNDCA-00116432-116633,                GOOG-SONOSNDCA-000117096-117795,

2   documents cited in the expert reports and materials considered of Dr. Samrat Bhattacharjee and Dr.

3   Dan Schonfeld.

4                                      *Invalidity*

5          The claims of the Asserted Patents are invalid and unenforceable for failure to comply with

6   the conditions for patentability under the patent laws of the United States, 35 U.S.C. §§ 1 et seq.,

7   including 35 U.S.C. §§ 101, 102, 103, and/or 112.  Google incorporates by reference Google's

8   Invalidity Contentions and any supplements or amendments thereto, the expert reports of Dr. Samrat

9   Bhattacharjee and Dr. Dan Schonfeld, Google's Opposition to Sonos's Motion for Summary

10  Judgment Pursuant to the Court's Patent Showdown Procedure, Google's invalidity contentions,

11  and the prior art cited and referenced therein.

12         In addition, with respect to the '615 Patent, theCourt has already ruled in its order on

13  Google's summary judgment motion that claim 13 of the 615 Patent is invalid pursuant to 35 U.S.C.

14  §§ 103, given that it would have been obvious to combine Google's prior YouTube Remote app

15  system with disclosures in United States Patent No. 9,490,998.  Dkt. 316 at 11-17.  Because asserted

16  claims 14, 15, 18, 19, 20, and 21 further limit claim 13, the Court's invalidity determination applies

17  equally to the same limitations in those dependent claims.   Sonos's contentions argue that Claim

18  25, the only other independent claim asserted by Sonos, has substantially similar limitations to those

19  of claim 13; thus, the Court's ruling regarding elements of the claim found in the prior art also apply

20  to Claim 25 and its asserted dependent claim 26.

21         Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Google further refers Sonos

22  to the following non-exhaustive list of additional documents containing information responsive to

23  this  interrogatory:  GOOG-SONOSNDCA-00056778-56801,  GOOG-SONOSNDCA-00056802-

24  56918,      GOOG-SONOSNDCA-00056802-56943,      GOOG-SONOSNDCA-00056944-56954,

25  GOOG-SONOSNDCA-00069852-70056,   GOOG-SONOSNDCA-00070057-00070103,   GOOG-

26  SONOSNDCA-00070852-70920.       GOOG-SONOSNDCA-00071317-71320,       GOOG-

27  SONOSNDCA-00072571,   GOOG-SONOSNDCA-00073341-73409,   GOOG-SONOSNDCA-

28  00075527-75564,      GOOG-SONOSNDCA-00000075574-00075633,      GOOG-SONOSNDCA-

1   00116432-116633,       GOOG-SONOSNDCA-000116634-116707,       GOOG-SONOSNDCA-

2   000116708-117088, GOOG-SONOSNDCA-000117096-117795.

3   ***Prosecution History Estoppel***

4   By reason of statements, representations, concessions, admissions, arguments, and/or

5   amendments, whether explicit or implicit, made by or on behalf of the applicant during the

6   prosecution of the patent applications that led to the issuance of the Asserted Patents, Sonos's claims

7   of patent infringement are barred, in whole or in part, by the doctrine of prosecution history estoppel.

8   Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Google further refers Sonos

9   to the following non-exhaustive list of additional documents containing information responsive to

10   this interrogatory:   the prosecution history statements cited in the expert reports of Dr. Samrat

11   Bhattacharjee and Dr. Dan Schonfeld; and the prosecution history of each asserted patent including

12   counterparts and foreign counterparts, specifically including the Australian prosecution history for

13   Australian Patent Application No. 2020239784.

14   ***Unclean Hands, Equitable Estoppel, Waiver, and Implied License***

15   Sonos's infringement claims for the '615 and '033 Patents are barred by the doctrines of

16   unclean hands, equitable estoppel and waiver.

17   Sonos itself has characterized the '615 and '033 Patents as its "cloud queue patents" that

18   "deal with exactly how music streaming on a cloud gets transferred between a device, let's say a cell

19   phone, and a speaker and how do you take a queue that's queued up in the cloud and transfer that queue

20   of music from one device to another."  *See* Nov. 11, 2020 Hr'g Tr. 17:3-8.  Sonos asserts that both

21   patents claim priority through a series of continuation applications to U.S. Application No.

22   13/341,237, filed on December 30, 2011, and name Mr. Tad Coburn as an inventor.   However,

23   Sonos did not introduce the alleged notion of a cloud-based queue into these patents until eight years

24   later in 2019—***after*** it already finished a collaboration with Google wherein ***Google*** developed cloud

25   queue technology in connection with integrating its Google Play Music service onto Sonos speakers.

26   *See, e.g.*, '033 prosecution history (November 1, 2019 amendment adding notion of "remote

27   playback queue").

28

Google and Sonos began a collaboration in 2013 and entered into several related agreements,

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

█████████████████████

██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
████████████████████████

See GOOG-SONOSNDCA-00055243 at Recitals & § 3.4.  ████████████████

██████████████████████████████████████████████████████

█████████████████

Despite signing this agreement, Sonos filed a complaint alleging infringement of the '615 and '033 Patent, directing accusations at Google technologies that arise out of or relate to the very development work Google did as part of these collaborations.  For example, at the same time that the CIA was signed in November 2013, Google told Sonos that it was considering "a more cloud queue centric model" for certain aspects of development related to the collaborations.  GOOG-SONOSWDTX-00053825.  "Tad" Coburn, then a Principal Software Engineer at Sonos and the named inventor of the '615 and '033 Patents, acknowledged Google's idea as "very interesting," while noting that it "will definitely complicate things."  *Id.* ████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████  *See* GOOG-SONOSWDTX-00053828; GOOG-SONOSWDTX-00053819.

1   Google went on to develop its technology at the encouragement of Sonos. ███████

2   ██████████████████████████████████████████████████████████████████

3   ██████████████████████████████████████████████████████████████████

4   ██████████████████████████████████████████████████████████████████

5   ██████████████████████████████████████████████████████████████████

6   ██████████████████████████████████████████████████████████████████

7   ██████████████████████████████████████████████████████████████████

8   ██████████████████████████████████████████████████████████████████

9   ██████████████████████████████████████████████████████████████████

10  ████████████   The details of Google's development work were known to Sonos at the time in

11  connection with the parties' collaborations. ██████████████████████████████████

12  ██████████████████████████████████████████████████████████████████

13  ██████████████████████████████████████████████████████████████████

14  ██████████████████████████████████████████████████████████████████

15  ██████████████████████████████████████████████████████████████████

16  ██████████

17       By the time of the parties' collaboration, the Google Play Music app already included the

18  accused Cast features, including a Cast 🔲 icon that could be selected to display Cast-enabled

19  receivers. The Cast functionality is illustrated and/or described in at least the following videos:

20       1)   https://www.youtube.com/watch?v=J2V0ITFzon4 (Chromecast: How to cast using

21            Google Play Music, uploaded November 27, 2013).

22       1)   https://web.archive.org/web/20140429051044/https://support.google.com/chromec

23            ast/answer/2998481?hl=en

24  ██████████████████████████████████████████████████████████████████

25  ██████████████████████████████████████████████████████████████████

26  ██████████████████████████████████████████████████████████████████

27  ██████████████████████████████████████████████████████████████████

28  ██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████.

Additionally, the cloud queue technology that Google was developing in 2013 and 2014, is in relevant respects, analogous to technology that Sonos has accused of infringing its patents.  For example, for the '615 patent Sonos's infringement contentions pointed to the below document as allegedly showing the accused Cloud Queue API functionality:



2-24-2022 Infringement Contentions, Ex. A ('615 Chart) at 94 (citing GOOG-SONOSWDTX-00043627).

This Cloud Queue API functionality that Sonos accused is the same functionality described in the Cloud Queue API documents from the parties' collaboration.

1    For instance, just as shown in the image above of the accused Cloud Queue API █████

2    ████████████████████████████████████████████████████████████████████

3    ████████████████████████████████████████████████████████████████████

4    ███████████████████████   (GOOG-SONOSWDTX-00040342)   at   GOOG-

5    SONOSWDTX-00040360-62 █████████████████████████████████████████

6    ████████████████████████████████████████████████████████████████████

7    ████



24   ██████████████████████████████(GOOG-SONOSWDTX-00051100) at 1102.

25   Further, Sonos accused the ability of the Cloud Queue API in the accused GPM application

26   to add ItemIDs and track URL (the alleged "resource locators") ███████████████████

27   █████████████████(the alleged "local playback queue").  *Id*. at 70-71. █████████████

28   ████████████████████████████████████████████████████████████████████

1 ████████████████████████████████████████████████████

2 ████████████████████   *See*   MSJ   Decl.,   ¶¶__.   ███████████████████

3 ████████████████████████████████████████████████████

4 ████████████████████████████████████████████████████

5 ████████████████████████████████████████████████████

6 ██████████████████████. *Id.*

7      This same functionality is described in the Cloud Queue API documents exchanged during

8 the collaboration. ████████████████████████████████████

9 ████████████████████████████████████████████████████

10 ████████████████████████████████████



27 ██████████████████████████ (GOOG-SONOSWDTX-00051100) at 1102.

1    Like the accused Cloud Queue API, █████████████████████████████

2    ████████████████████████████████████████████████████████████

3    ████████████████████████████████████████████████████████████

4    ████████████████████████████████████████████████████████████

5    ████████████████████████████████████████████████████████████

6    ████████████████████████████████████████████████████████████

7    ████████████████████████████████████████████████████

8

9

10   

11

12

13

14

15   ██████████████████████████ (GOOG-SONOSWDTX-00036998); *see also* ████████

16   ███████████████████████ (GOOG-SONOSWDTX-00037355) at 356-357.

17       Further, Sonos accused the ability of the Cloud Queue API in the accused GPM application

18   ████████████████████████████████████████████████████████████

19   ████████████████████ *Id.* at 93.  Again, this same functionality is described in the Cloud Queue

20   API  documents  exchanged  during  the  collaboration.  ████████████████████████

21   ████████████████████████████████████████████████████████████

22   ████████████████████████████████████████████████████████████

23   ████████████████████

24

25

26

27

28

Music Cloud Queue Sequence Diagrams" (GOOG-SONOSWDTX-00051100) at 1102

Sonos is also accusing substantially the same cloud queue functionality in the accused YouTube applications.  For instance, Sonos alleges that the accused YouTube application ███████ ███████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ █████████████████████████████████ to receive a videoId for a window of the previous, current and next media items in the Cloud Queue.  In other words, Sonos alleges that the accused YouTube applications operate in materially the same way as the Cloud Queue API's ██████ ███████████████████ Further, Sonos accused the accused YouTube application of ████████████████████████████████████████████████████████████████████ ███████████████████ Again, this functionality is substantially the same as that in the Cloud Queue API.

1    Sonos also understood—and acknowledged at the time—that Google would be using its

2  technology not just in connection with Sonos devices but also in connection with other devices.

3  This included Google's own products— ███████████████████████████████████████████

4  ████████████████████████████████████████████████████████████████████████████████

5  ████████████████████████████████████████████████████████████████████████████████

6  ████████████████████████████████████████████████████████████████████████████████

7  ████████████████████████████████████████████████████████

8    At no time during the parties' collaborations did Sonos indicate to Google that Google's

9  development work was improper in any respect. ████████████████████████████████████

10 ████████████████████████████████████████████████████████████████████████████████

11 ███████████████████████████ Additionally, Sonos witnesses all concede that Sonos never notified

12 or indicated to Google that it was infringing any of Sonos's intellectual property rights. ████████

13 ████████████████████████████████████████████████████████████████████████████████

14 ████████████████████████████████████████████████████████████████████████████████

15 ████████████████████████████████████████████████████████████████████████████████

16 ████████████████████████████████████████████████████████████████████████████████

17 ████████████████████████████████████████████████████████████████████████████████

18 ████████████████████████████████████████████████████████████████████████████████

19 ████████████████████████████████████████████████████████████████████████████████

20 █████████████████████████████ To the contrary, Sonos— █████████████████████████████

21 ████████████████████████████████████████████████████████████████████████████—

22 encouraged Google to continue that work as the parties' collaboration went on through 2015, when

23 the Google Play Music and Sonos integration with cloud queue technology was launched.

24    Not only did Sonos breach the CIA by █████████████████████████████████

25 ██████████████████████████ but Sonos actually capitalized on Google's work by utilizing it to

26 establish Sonos's own cloud queue API in order to engage in implementations with other partners.

27 ████████████████████████████████████████████████████████████████████████████████

28 ████████████████████████████████████████████████████████████████████████████████

1 ███████████████████████████████████████████████████

2 ███████████████████████████████████████████████████

3 ███████████████████████████████████████████████████

4 ███████████████████████████████████████████████████

5 ███████████████████████████████████████████████████

6 ██████████████████████████

7 ████████████████████████████████████████████████

8 ███████████████████████████████████████████████████

9 ███████████████████████████████████████████████████

10 ███████████████████████████████████████████████████

11 ███████████████████████████████████████████████████

12 ███████████████████████████████████████████████████

13 ███████████████████████████████████████████████████

14 ███████████████████████████████████████████████████

15 ███████████████████████████████████████████████████

16 ███████████████████████████████████████████████████

17 ███████████████████████████████████████████████████

18 ██████████████

19    Around the same time that the parties were collaborating on the Google Play Music

20 integration, ██████████████████████████████████████████████

21 ███████████████████████████████████████████████████

22 ███████████████████████████████████████████████████

23 ███████████████████████████████████████████████████

24 ███████████████████████████████████████████████████

25 ███████████████████████████████████████████████████

26 ███████████████████████████████████████████████████

27 ██████████████████████████████████████ Given these detailed

28 discussions regarding technical implementation and strategy, Sonos was aware that ████████

1 ████████████████████████████████████████████████

2 ████████

3     Sonos's claims against Google are barred by the doctrine of unclean hands because Sonos

4 engaged in negligent, willful, improper, other wrongful conduct in connection with the matters

5 alleged in the Third Amended Complaint.

6     '615 & '033 Patents.  To the extent Sonos contends that Google infringes the '615 and '033

7 patents, and to the extent Sonos contends that it conceived of the alleged invention of the '615 and

8 '033 patents prior to the parties' collaborations, Sonos wrongfully encouraged Google to develop

9 the now-accused technology during the parties' collaborations, including in the context of an

10 agreement providing that ██████████████████████████████████████

11 ████████████████████████ Sonos also wrongfully used information it

12 learned from Google's development work to introduce amendments to the claims of the '615 and

13 '033 patents after the parties' collaborations and despite Sonos's agreement that ██████████

14 ████████████████████████████████████████████████

15 █ Further, Sonos also wrongfully utilized the documentation and technology developed by Google

16 from the collaboration on other partnerships and shared such information with third-parties.  In any

17 of these circumstances, Sonos's conduct was willful, wrongful, and egregious, and the doctrine of

18 unclean hands applies.

19     '885 & '966 Patents.  To the extent Sonos contends that Google infringes the '885 and '966

20 patents, and to the extent Sonos contends that it conceived of the alleged invention of the '885 and

21 '966 patents prior to the parties' collaborations on this functionality, Sonos wrongfully encouraged

22 Google to develop the now-accused technology.  In the alternative, to the extent Sonos contends

23 that Google infringes the '885 and '966 patents, on information and belief, Sonos wrongfully used

24 information it learned from Google's development work to introduce amendments to the claims of

25 the '885 and '966 patents after the parties' discussions.  In either circumstance, Sonos's conduct

26 was willful, wrongful, and egregious, and the doctrine of unclean hands applies.

27     Sonos's infringement claims are also barred by the doctrine of the equitable estoppel.

28 Google relied on Sonos's conduct by, for example, proceeding with the development and

commercialization of its technology.  Google would be materially harmed if Sonos were permitted to assert that Google infringes the asserted patents, given that Sonos's assertion would be inconsistent with Sonos's earlier conduct.   Google has invested in the development and commercialization of now-accused technology and, had Sonos notified Google of its alleged rights and brought its claims without delay, Google could have taken action to avoid any purported claim of infringement and thereby moot those claims.

'615 & '033 Patents.  To the extent Sonos contends that Google infringes the '615 and '033 patents, and to the extent Sonos purportedly conceived of the alleged invention of the '615 and '033 patents prior to the parties' collaborations, Sonos wrongfully encouraged Google to develop the now-accused technology during the parties' collaborations, including in the context of an agreement providing that ███████████████████████████████████████████████████████████████. Not once during the parties' years-long collaborations did Sonos notify or suggest to Google that Google's development work infringed on Sonos's intellectual property rights or was otherwise improper, nor did Sonos indicate that it was improper for Google to use the technology it developed in its own products or in collaborations with other partners was prohibited despite knowing that Google was be doing so.  Sonos's conduct led Google to reasonably infer that Google owned any intellectual property stemming from the development of now-accused technology and/or that Sonos did not intend to enforce its purported intellectual property rights with respect to that technology.

'885 & '966 Patents.  To the extent Sonos contends that Google infringes the '885 and '966 patents, and to the extent Sonos purportedly conceived of the alleged invention of the '885 and '966 patents prior to the parties' collaborations, Sonos wrongfully encouraged Google to develop the now-accused technology during the parties' collaborations. Not once during the parties' years-long collaborations did Sonos notify or suggest to Google that Google's development work infringed on Sonos's intellectual property rights or was otherwise improper, nor did Sonos indicate that it was improper for Google to use the technology it developed in its own products or in collaborations with other partners was prohibited despite knowing that Google was be doing so.  Sonos's conduct led Google to reasonably infer that Google owned any intellectual property stemming from the

1  development of now-accused technology and/or that Sonos did not intend to enforce its purported

2  intellectual property rights with respect to that technology.

3        Sonos's infringement claims are further barred by the doctrine of waiver.

4        '615 & '033 Patents.  To the extent Sonos contends that Google infringes the '615 and '033

5  patents, and to the extent Sonos purportedly conceived of the alleged invention of the '615 and '033

6  patents prior to the parties' collaborations, Sonos wrongfully encouraged Google to develop the

7  now-accused technology during the parties' collaborations, including in the context of an agreement

8  providing that ███████████████████████████████████████████

9  ██████████████████████████████████████ Not once during

10 the parties' years-long collaborations did Sonos notify or suggest to Google that Google's

11 development work infringed on Sonos's intellectual property rights or was otherwise improper, nor

12 did Sonos indicate that it was improper for Google to use the technology it developed in its own

13 products or in collaborations with other partners was prohibited despite knowing that Google was

14 be doing so.  Sonos thereby, and with full knowledge of the material facts, intentionally relinquished

15 its right to bring an action based on the '615 and '033 patents, or intentionally acted inconsistently

16 with claiming such rights.

17       '885 & '966 Patents.  To the extent Sonos contends that Google infringes the '885 and '966

18 patents, and to the extent Sonos purportedly conceived of the alleged invention of the '885 and '966

19 patents prior to the parties' collaborations, Sonos wrongfully encouraged Google to develop the

20 now-accused technology during the parties' collaborations.  Not once during the parties' years-long

21 collaborations did Sonos notify or suggest to Google that Google's development work infringed on

22 Sonos's intellectual property rights or was otherwise improper, nor did Sonos indicate that it was

23 improper for Google to use the technology it developed in its own products or in collaborations with

24 other partners was prohibited despite knowing that Google was be doing so.  Sonos thereby, and

25 with full knowledge of the material facts, intentionally relinquished its right to bring an action based

26 on the '885 and '966 patents, or intentionally acted inconsistently with claiming such rights.

27       Sonos's infringement claims are additionally barred by the doctrine of implied waiver.

28

1    <u>'615 & '033 Patents</u>.  To the extent Sonos contends that Google infringes the '615 and '033

2    patents, and to the extent Sonos purportedly conceived of the alleged invention of the '615 and '033

3    patents prior to the parties' collaborations, Sonos wrongfully encouraged Google to develop the

4    now-accused technology during the parties' collaborations, including in the context of an agreement

5    providing that █████████████████████████████████████████████████████

6    ████████████████████████████████████████████ Not once during

7    the parties' years-long collaborations did Sonos notify or suggest to Google that Google's

8    development work infringed on Sonos's intellectual property rights or was otherwise improper, nor

9    did Sonos indicate that it was improper for Google to use the technology it developed in its own

10   products or in collaborations with other partners was prohibited despite knowing that Google was

11   be doing so.  Sonos thereby, and with full knowledge of the material facts, intentionally relinquished

12   its right to bring an action based on the '615 and '033 patents, or intentionally acted inconsistently

13   with claiming such rights.  As a result of Sonos's conduct, Google reasonably inferred that Sonos

14   consented to any alleged use by Google of the now-accused technology.

15       <u>'885 & '966 Patents</u>.  To the extent Sonos contends that Google infringes the '885 and '966

16   patents, and to the extent Sonos purportedly conceived of the alleged invention of the '885 and '966

17   patents prior to the parties' collaborations, Sonos wrongfully encouraged Google to develop the

18   now-accused technology during the parties' collaborations.  Not once during the parties' years-long

19   collaborations did Sonos notify or suggest to Google that Google's development work infringed on

20   Sonos's intellectual property rights or was otherwise improper, nor did Sonos indicate that it was

21   improper for Google to use the technology it developed in its own products or in collaborations with

22   other partners was prohibited despite knowing that Google was be doing so.  Sonos thereby, and

23   with full knowledge of the material facts, intentionally relinquished its right to bring an action based

24   on the '885 and '966 patents, or intentionally acted inconsistently with claiming such rights.  As a

25   result of Sonos's conduct, Google reasonably inferred that Sonos consented to any alleged use by

26   Google of the now-accused technology.

27       Google further incorporates by reference Google's Answer and Counterclaims to Sonos,

28   Inc.'s Third Amended Complaint (Dkt. 223) and the expert report of Thomas Varner.  Pursuant to

1  Rule 33(d) of the Federal Rules of Civil Procedure, in addition to the documents cited above, Google

2  further refers Sonos to the following non-exhaustive list of additional documents containing

3  information responsive to this interrogatory: GOOG-SONOSWDTX-00053819-53956, GOOG-

4  SONOSNDCA-00070533-71314, GOOG-SONOSNDCA-00073410-00075526, GOOG-SONOS-

5  NDCA-00075636-92754,   GOOG-SONOS-NDCA-00113698-115224,   GOOG-SONOSNDCA-

6  00116343-00116429,   GOOG-SONOSWDTX-00051100;   GOOG-SONOSWDTX-00036998;

7  GOOG-SONOSWDTX-00040342;  GOOG-SONOSWDTX-00037355;  GOOG-SONOSWDTX-

8  00036998-37003,  GOOG-SONOSWDTX-00053833-53836,  GOOG-SONOSWDTX-00053866-

9  53870,   GOOG-SONOSNDCA-00055243-55252,   GOOG-SONOS-NDCA-00075709-75711,

10  GOOG-SONOS-NDCA-00092627,  GOOG-SONOS-NDCA-00092766-92769,  GOOG-SONOS-

11  NDCA-00110855-110857,  GOOG-SONOS-NDCA-00112655-112656,  GOOG-SONOSNDCA-

12  00117800,   SONOS-SVG2-00027011,   SONOS-SVG2-00040234-40235,   SONOS-SVG2-

13  00059330-59331,  SONOS-SVG2-00067651-67652,  SONOS-SVG2-00067724-67730,  SONOS-

14  SVG2-00067866-67867,  SONOS-SVG2-00068003,  SONOS-SVG2-00068295-68297,  SONOS-

15  SVG2-00068912-68913,   SONOS-SVG2-00068896-68900,   SONOS-SVG2-00068935-68938,

16  SONOS-SVG2-00070566-70567,  SONOS-SVG2-00070620,  SONOS-SVG2-00070766-70768,

17  SONOS-SVG2-00071590-71591,  SONOS-SVG2-00071942-71948,  SONOS-SVG2-00072177,

18  SONOS-SVG2-00072471, SONOS-SVG2-00072649-72650, SONOS-SVG2-00072699, SONOS-

19  SVG2-00073496-73497,   SONOS-SVG2-00073943-73949,   SONOS-SVG2-00075157-75159,

20  SONOS-SVG2-00075441-75444,   SONOS-SVG2-00078409-78412,   SONOS-SVG2-00078510-

21  78511,  SONOS-SVG2-00078871,  SONOS-SVG2-00079425-79426,  SONOS-SVG2-00079492,

22  SONOS-SVG2-00079605-79619,  SONOS-SVG2-00079035-79036,  SONOS-SVG2-00079183,

23  SONOS-SVG2-00079725-79726,  SONOS-SVG2-00080113-80115,  SONOS-SVG2-00080143-

24  80148,  SONOS-SVG2-00080156,  SONOS-SVG2-00080191-80192,  SONOS-SVG2-00080264,

25  SONOS-SVG2-00080320,   SONOS-SVG2-00080376-80386,   SONOS-SVG2-00080452-80453,

26  SONOS-SVG2-00080493, SONOS-SVG2-00080510-80519, SONOS-SVG2-00080666, SONOS-

27  SVG2-00081097-81100,   SONOS-SVG2-00081105-81108,   SONOS-SVG2-00081179-81180,

28  SONOS-SVG2-00081509,   SONOS-SVG2-00081307-81309,   SONOS-SVG2-00081529-81536,

SONOS-SVG2-00081636-81637,    SONOS-SVG2-00082145-82152,    SONOS-SVG2-00083491, SONOS-SVG2-00083508-83509,    SONOS-SVG2-00083592-83593,    SONOS-SVG2-00083800, SONOS-SVG2-00083870-83872,    SONOS-SVG2-00083877-83879,    SONOS-SVG2-00083924-83928,   SONOS-SVG2-00084036-84038,   SONOS-SVG2-00084143-00084149,   SONOS-SVG2-00084194-84195,   SONOS-SVG2-00084394-84396,   SONOS-SVG2-00085723-85732,   SONOS-SVG2-00086826-86843,   SONOS-SVG2-00086987,   SONOS-SVG2-00091209-91210,   SONOS-SVG2-00098288-98295,     SONOS-SVG2-00095792-95797,     SONOS-SVG2-00097413-97414, SVG2-00098566-98568,      SONOS-SVG2-00099470-99472,   SONOS-SVG2-00101794-101797, SONOS-SVG2-00112159,   SONOS-SVG2-0014005-140015,   SONOS-SVG2-00156957-156958, SONOS-SVG2-00158178-158181, SONOS-SVG2-00163410-163411, SONOS-SVG2-00178447, SONOS-SVG2-00181873-181876, SONOS-SVG2-00184930-184932, SONOS-SVG2-00185059-185089,   SONOS-SVG2-00185464-185468,   SONOS-SVG2-00185494-185496,   SONOS-SVG2-00185747-185749, SONOS-SVG2-00185966-185968, SONOS-SVG2-00186211, SONOS-SVG2-00187279-187281,       SONOS-SVG2-00188768-188770,       SONOS-SVG2-00189095-189098, SONOS-SVG2-00189383, SONOS-SVG2-00189392, SONOS-SVG2-00189474-189475, SONOS-SVG2-00190442-190443, SONOS-SVG2-00191790-191792, SONOS-SVG2-00193866, SONOS-SVG2-00194279-194281,   SONOS-SVG2-00201056-201058,   SONOS-SVG2-00206304-206305, SONOS-SVG2-00211742-211747, SONOS-SVG2-00215742-215750; SONOS-SVG2-00215912-215915, SONOS-SVG2-00220121, SONOS-SVG2-00220144.

### *Patent Exhaustion*

Sonos's infringement claims are barred by the doctrine of patent exhaustion.  Under the doctrine of patent exhaustion, Sonos's claims are barred to the extent any of the allegedly infringing conduct is premised on or related to products made, sold, used, imported, or provided by any licensed entity (whether express or implied) to the Asserted Patents or related patents.

### *Limitation on Liability*

Sonos's infringement claims, and the damages sought by Sonos therefor, are limited and/or barred by the parties' 2013 Content Integration Agreement.  The 2013 Content Integration Agreement contains the following provision regarding limitation of liability:

1 ████████████████████████████████████████████

2 ████████████████████████████████████████████

3 ████████████████████████████████████████████

4 ████████████████████████████████████████████

5 ████████████████████████████████████████████

6 ████████████████████████████████████████████

7 ████████████████████████████████████████████

8 ████████████████████████████████████████████

9 ████████

10 GOOG-SONOSNDCA-00055243 at § 8.1.  Sonos's allegations with respect to the '615 and

11 '033 patents are "arising from or relating to this agreement or the subject matter" thereof, including

12 because, pursuant to that agreement, ████████████████████████████

13 ████████████████████████ Especially in light of the fact that Sonos

14 wrongfully encouraged Google to develop the now-accused technology during the parties'

15 collaborations, yet during the parties' years-long collaborations never notified Google that Google's

16 development work infringed on Sonos's intellectual property rights or was otherwise improper, or

17 indicated that it was improper for Google to use the technology it developed in its own products or

18 in collaborations with other partners was prohibited despite knowing that Google was be doing so ,

19 there was no gross negligence, willful misconduct, breach of confidentiality, or willful

20 misappropriation on behalf of Google. ████████████████████████████

21 ████████████████████, given that Sonos's allegations relate to the subject matter of

22 the 2013 Content Integration Agreement.

23 Google further incorporates by reference Google's Answer and Counterclaims to Sonos,

24 Inc.'s Third Amended Complaint (Dkt. 223), Google's *Artic Cat* Notice and any supplements and/or

25 amendments thereto, the expert reports of Christopher Bakewell.

### *Limitation on Damages*

27 Sonos's claims for relief are limited or barred, in whole or in part, by 35 U.S.C. §§ 286, 287

28 and/or 288.  Because Sonos and its licensees of the Asserted Patents failed to properly mark relevant

1   products or materials as required by 35 U.S.C. § 287, Sonos's damages are barred, in whole or in

2   part.

3                                  *Prosecution Laches*

4           One or more of the Asserted Patents are unenforceable, in whole or in part, against Google

5   under the doctrine of prosecution laches.

6           For example, Sonos's '033 patent was filed on April 19, 2019 and issued on September 15,

7   2020. The application that issued as the '033 patent is a continuation of U.S. Application No.

8   15/872,500, filed on January 16, 2018, which is a continuation of U.S. Application No. 14/520,578,

9   filed on October 22, 2014, which is a continuation of U.S. Application No. 13/341,237, filed on

10  December 30, 2011.  For example, Sonos's '033 patent was filed on April 19, 2019 and issued on

11  September 15, 2020. The application that issued as the '033 patent is a continuation of U.S.

12  Application No. 15/872,500, filed on January 16, 2018, which is a continuation of U.S. Application

13  No. 14/520,578, filed on October 22, 2014, which is a continuation of U.S. Application No.

14  13/341,237, filed on December 30, 2011.

15          Sonos unreasonably delayed pursuing the claims of the '033 patent for approximately eight

16  years. Indeed, Sonos did not pursue claims directed at a "remote playback queue" until it filed the

17  '033 patent. Specifically, approximately eight years after the written description of the '033 patent

18  was filed as the '237 application and after collaborating with Google on the direct playback

19  integration using cloud queue technology, Sonos amended its claims to introduce the alleged notion

20  of a "remote playback queue." See, e.g., '033 prosecution history (November 1, 2019 amendment

21  adding notion of "remote playback queue"). The claims of the '033 patent issued with claims

22  reciting a "remote playback queue" on September 15, 2020, approximately two weeks prior to the

23  filing of this lawsuit.  While Google contends that Sonos's '033 patent does not provide written

24  description support for the "remoted playback queue" amendment, to the extent Sonos disagrees

25  Sonos has not identified any reason why it could not have presented the claims earlier. The

26  specification and figures of the '033 patent are the same as those filed in the continuation

27  applications that the '033 patent claims priority to, and Sonos pursued over one overlapping claims

28  in the nearly eight years before it pursued the "remote playback queue" claims.

As another example, Sonos's '966 patent was filed on April 12, 2019 and issued on November 5, 2019. The patent is a continuation of U.S. patent application Ser. No. 15/130,919, filed on April 15, 2016, entitled "ZONE SCENE ACTIVATION," which is a continuation of U.S. patent application Ser. No. 14/465,457, filed on August 21, 2014, entitled "METHOD AND APPARATUS FOR UPDATING ZONE CONFIGURATIONS IN A MULTI-ZONE SYSTEM," which is a continuation of U.S. patent application Ser. No. 13/896,829, filed on May 17, 2013, entitled "METHOD AND APPARATUS FOR UPDATING ZONE CONFIGURATIONS IN A MULTI-ZONE SYSTEM," which is a continuation of U.S. patent application Ser. No. 11/853,790, filed September 11, 2007, entitled "CONTROLLING AND MANIPULATING GROUPINGS IN A MULTI-ZONE MEDIA SYSTEM," which claims priority to U.S. Provisional Application No. 60/825,407 filed on September 12, 2006.

As a result of Sonos's unexplained and unreasonable delay, Google has been prejudiced. For example, Google invested time and resources in the development of the accused cloud queue technology and its collaborations with Sonos based on its understanding that ▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ given that Sonos was aware Google planned to utilize that technology with its own products and with other partners.  Sonos's silence and years of delay in ultimately pursuing claims that it now contends to cover this technology is highly prejudicial to Google.

Google further incorporates by reference Google's Answer and Counterclaims to Sonos, Inc.'s Third Amended Complaint (Dkt. 223), Google's Invalidity Contentions and any supplements thereto, and the expert reports of Samrat Bhattacharjee and Dr. Dan Schonfeld.  Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, in addition to the documents cited above, Google further refers Sonos to the following non-exhaustive list of additional documents containing information responsive to this interrogatory: Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, in addition to the documents cited above, Google further refers Sonos to the following non-exhaustive list of additional documents containing information responsive to this interrogatory: GOOG-SONOSWDTX-00053819-53956,    GOOG-SONOSNDCA-00070533-71314,    GOOG-SONOSNDCA-00073410-00075526, GOOG-SONOS-NDCA-00075636-92754, GOOG-SONOS-

NDCA-00113698-115224,  GOOG-SONOSNDCA-00116343-00116429,  GOOG-SONOSNDCA-00117800, and any other document cited in this supplemental response.

**INTERROGATORY NO. 20:**

Separately for each Asserted Claim of each Patent-In-Suit, describe in detail the complete legal and factual basis for any contention by Google that the secondary considerations of nonobviousness (including, but not limited to commercial success, long-felt need, failure of others, unexpected results, initial skepticism, copying, industry recognition, or widespread adoption) do not support the nonobviousness of each such claim, including but not limited to: a detailed description of whether Google denies that products embodying the Asserted Claims of the Patents-In-Suit, including, inter alia, the Sonos Products, have been a commercial success or contends that there is no nexus between such commercial success and the Asserted Claims of the Patents-In-Suit; and a detailed description of whether Google denies that there was any long-felt need, failure of others, unexpected results, initial skepticism, copying, industry recognition, or widespread adoption for the subject matter covered by the Asserted Claims of the Patents-in-Suit; and an identification of all facts supporting or refuting any such contentions, all persons knowledgeable of these facts (including every person whose knowledge or opinion is relied upon as a basis for Google's obviousness assertions, the opinion or substance of his/her knowledge, and the entire basis of that knowledge or opinion), and all documents and things, including the Bates number(s) of such documents and things, concerning Google's position on secondary considerations of nonobviousness.

**OBJECTIONS:**

Google incorporates by reference all of its General Objections as if fully set forth herein. Google objects to this interrogatory on the grounds that it is vague, ambiguous, unclear as to information sought, and lacking sufficient particularity to permit Google to reasonably prepare a response with respect to the undefined terms "commercial success, long-felt need, failure of others, unexpected results, initial skepticism, copying, industry recognition, or widespread adoption," "nexus," "knowledgeable," "knowledge or opinion", "is relied upon," "opinion or substance," and

"entire basis of that knowledge or opinion." Google further objects to this interrogatory to the extent that it assumes the existence of hypothetical facts that are incorrect or unknown to Google.

Google also objects to this interrogatory as overbroad, burdensome, and not proportional to the needs of the case, including to the extent it (i) seeks information "[s]eparately for each Asserted Claim of each Patent-In-Suit," (ii) seeks identification of "all persons knowledgeable" of certain facts," and (ii) seeks "all documents and things" concerning Google's position on secondary considerations of nonobviousness. Google further objects to this interrogatory to the extent it seeks information that is not reasonably accessible or that is not within Google's possession, custody, or control. Google further objects to this interrogatory as overbroad and unduly burdensome to the extent that it seeks information that is publicly available, not uniquely within the control of Google, or is equally available to Sonos. Google additionally objects to this interrogatory to the extent it seeks communications and information protected from disclosure by the attorney-client privilege and/or attorney work product doctrine. Google further objects to this interrogatory to the extent it seeks confidential and/or proprietary business information. Google also objects to this interrogatory to the extent that it premature seeks expert discovery, opinion, and/or testimony. Google also objects to this interrogatory on the grounds that it seeks information that is obtainable through less burdensome and more convenient forms of discovery. Google further objects to this interrogatory to the extent it seeks information that is unnecessarily cumulative or duplicative of information sought by other discovery, including Request for Production No. 41.

Google further objects to this interrogatory to the extent that it purports to seek ESI before Sonos has shown good cause for such ESI and before the parties have agreed on a procedure for doing so in accordance with the Court's OGP.

**RESPONSE:**  Subject to and without waiving the foregoing General and Specific objections, Google responds, as follows:

Google objects to this interrogatory on the grounds that it is premature. Sonos has failed to meet its burden of demonstrating that it practices the patents-in-suit. Google will supplement its response when Sonos has adequately alleged secondary considerations of non-obviousness tied to a specific product or products that embody the claimed features.

1      **SUPPLEMENTAL RESPONSE**: Google maintains the General and Specific objections

2  set forth above. Subject to and without waiving the foregoing General and Specific objections,

3  Google responds, as follows:  None of the supposed indicia or evidence that Sonos has identified

4  with respect to secondary considerations of non-obviousness in its supplemental response to

5  Google's Interrogatory No. 4 support a finding that the claimed inventions are non-obvious.

6  <center>***'615 and '033 patents***</center>

7      Sonos alleges that there is industry praise for the invention claimed by the '615 and '033

8  patents, identifying certain supposed "praise for the Google Play Music app embodying Sonos's

9  technology that is the subject of the '615 and '033 Patents."  Preliminarily, the Court has already

10  found that the '615 patent is invalid in light of the prior art, thus confirming the obviousness of that

11  patent and evincing the obviousness of the related '033 patent.

12      Moreover, to show "praise by others," there must be a nexus between the industry praise and

13  the patented technology.  Sonos's response is thus forced to point to comments regarding Google

14  Play Music and YouTube Music given that it has asserted that none of its products practice the '033

15  patent—yet neither of those Google products embody the infringing technology.  Notwithstanding

16  that such praise therefore fails to demonstrate any secondary indicia of non-obviousness. The

17  comments Sonos identifies do not praise the *claimed invention* of the '033 patent and instead merely

18  discuss direct playback streaming and/or casting of music at a high-level.  *See, e.g.*, SONOS-SVG2-

19  00062302-62305 at 302 (comment that Google Play Music will be able to "stream songs" to

20  speakers); SONOS-SVG2-00062306-62312 at 307 (noting that Google Play Music can now "bypass

21  the Sonos app completely" and "beam" tunes right to a speaker).  None of these comments praise,

22  for example, media playback using "a remote playback queue" from a "cloud-based media

23  service"—as required by claim 1 of the '033 patent.  Similarly, the comments expressing apparent

24  "frustration" over the missing casting function for the YouTube Music app merely mentions the

25  direct playback generally, which it is indisputably *not* the claimed invention of the '033 patent. *See,*

26  *e.g.*, SONOS-SVG2-00062113-0062251 at 118 (complaining about the lack of ability to "cast[]

27  directly from YT music app to Sonos").

28

1   Sonos alleges that there was "skepticism within Sonos around the time of the claimed

2   inventions of the '615 and '033 Patents, such as skepticism regarding the likely success or adequacy

3   of Sonos's claimed invention."  First, the document Sonos cites was created by its own employee

4   and inventor of two of the Asserted Patents, Robert Lambourne, regarding the "Play-To"

5   functionality.  See SONOS-SVG2-00026286.  Preliminarily, reliance on an internal, non-public email

6   from the patent's inventor himself—who is clearly not an unbiased observer—cannot form the basis for

7   evidence of "skepticism by experts;" indeed, this would allow every inventor to create a self-serving

8   record to refer back to in the future.  Moreover, the "Play-To" functionality was not a specific protocol

9   or solution, it was merely a theoretical way that multiple implementations could deliver playback to

10  Sonos devices. ███████████████████████████████████████

11  ████████████████████████████████████████████████

12  ████████████████████████████████████████ Second, the commentary

13  in the document does not demonstrate "skepticism of experts" regarding the viability of the

14  invention—███████████████████████████████████████████

15  ████████████████████████████████████████████████

16  ███████████████████████████████████████

17  Finally, evidence of "simultaneous invention" may also be a secondary indicia tending to

18  show obviousness, and there were many individuals and companies who were working in the same

19  space as Sonos during the time frame of the purported invention. ████████████████

20  ████████████████████████████████████████████████

21  ████████████████████████████████████████████████

22  ████████████████████████████████████████████████

23  ████████████████████████████████████████████████

24  ██████████████████████████

25  ***'885 and '966 Patents***

26  Sonos also alleges that there was evidence of industry praise for "the Sonos S2 app

27  embodying Sonos's technology that is the subject of the '885 Patent."  But to show "praise by

28  others," there must be a nexus between the industry praise and the patented technology.  The

1   statements Sonos points to regarding the Sonos S2 app merely discuss the ability to group speakers

2   generally—they do not praise invention or mention the claimed "standalone mode," "transition,"

3   "zone scene," joining speakers to multiple groups, or any of the other specific claimed features.  *See,*

4   *e.g.*, SONOS-SVG2-00062361-62364 at 363 (noting the Sonos S2 apps "ability to save a group of

5   speakers as a preset); SONOS-SVG2-00062279-62291 at 285 (expressing excitement "about the

6   ability to save 'room groups'").  Sonos's statements regarding Google's products "embodying

7   Sonos's technology that is the subject of the '885 and '966" suffer from the same fatal flaw.  *See,*

8   *e.g.*, SONOS-SVG2-00062338-62341 at 338 (touting Google's "speaker group" functionality";

9   SONOS-SVG2-00062266-62275 at 266 (same).  Moreover, the accused products do not embody

10  the '885 and '966 patents.  As such, there is no nexus between any secondary consideration

11  regarding praise and the claimed invention.

12      Sonos also identifies what it considers "skepticism" of the alleged invention in the '885

13  patent. Once again, Sonos does not identify any evidence that tracks or identifies the claimed

14  "standalone mode," "transition," "zone scene," joining speakers to multiple groups, or any of the

15  other specific claimed features. As such, there is no nexus between any secondary consideration

16  regarding skepticism and the claimed invention. Further, the alleged "skepticism" Sonos identifies

17  is only from a discussion between employees at Sonos (SONOS-SVG2-00026888-26889 at 889),

18  and therefore is not industry or expert skepticism—or even third-party skepticism. Nor does the

19  evidence Sonos cite include a showing of technical infeasibility or manufacturing uncertainty.

20  Merely recognizing that █████████████████████████████

21  ██████ do not suffice to show skepticism, particularly given that Sonos has admitted that its own

22  products do not practice the claimed inventions. *Id.*  As a result, any discussion of Sonos's own

23  products cannot support the finding of a nexus to the invention.

24      Google further incorporates by reference Google's Answer and Counterclaims to Sonos,

25  Inc.'s Third Amended Complaint (Dkt. 223), Google's Invalidity Contentions and any supplements

26  thereto, and the expert reports of Samrat Bhattacharjee and Dr. Dan Schonfeld.

27      **INTERROGATORY NO. 21:**

28