# EXHIBIT H

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **SONOS, INC.,** | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | **CIVIL ACTION 6:20-cv-00881-ADA** |
| **v.** | § | |
| | § | |
| | § | |
| **GOOGLE LLC** | § | |
| *Defendant.* | § | |

**PLAINTIFF'S FIRST SET OF FACT DISCOVERY INTERROGATORIES TO**
**DEFENDANTS**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Order Governing Proceedings - Patent Case, Plaintiff Sonos, Inc. ("Sonos") requests that Defendant Google LLC ("Google") answer the following interrogatories, separately and fully in writing and under oath, within thirty days. This is a continuing request for information as it becomes available to you.

**DEFINITIONS AND INSTRUCTIONS**

For purposes of responding to these Interrogatories, the following definitions and instructions shall apply:

1. The Definitions and Instructions set forth in Sonos's First Set of Fact Discovery Requests for the Production of Documents and Things to Defendant are incorporated by reference and apply to these discovery requests, in addition to those stated below.

2. The terms "Plaintiff" and "Sonos" shall mean Sonos, Inc., any predecessor, successor, parent, subsidiary, or affiliate, and where applicable, Sonos's officers, directors, employees, partners, agents, attorneys, or any other person or business entity acting or purporting

to act on Sonos's behalf.

3.      The terms "Defendant," "Google," "You," and "Your" shall mean Google LLC, and any other name under which Defendant is doing or has done business, any predecessor, successor, parent, subsidiary, or affiliate, and where applicable, Defendant's officers, directors, employees, partners, agents, attorneys, or any other person or business entity acting or purporting to act on Defendant's behalf.

4.      The terms "document," "documents," and "information" each incorporates all documents, electronically stored information (ESI), and things as broadly defined in Rule 34 of the Federal Rules of Civil Procedure and related case law.

5.      The terms "communication" and "communications" shall mean all exchanges or transmittals, whether in paper, electronic, oral or any other form or medium, of information (including but not limited to transmittals of facts, ideas, inquiries, analyses, assertions, concerns, instructions, opinions, reservations, thoughts or otherwise) by any mode of transmission, including e-mail, facsimile, telex, courier, U.S. mail, in person, telephone, cell phone and other internet-based, wireless-based, and satellite-based modes of transmission, between or among two or more persons and includes all documents and things constituting, relating to, incorporating, including, summarizing, describing or identifying the contents, subject matter, date, place and time of or participants in an exchange or transmittal.

6.      The terms "person" and "persons" shall mean any natural person.

7.      The terms "entity" and "entities" shall mean any business, legal or governmental entity or association.

8.      The terms "and," "or," and "and/or" shall be construed disjunctively or conjunctively as necessary to bring within the scope of the request all responses that otherwise

might be construed to be outside its scope.

9.     The terms "all," "any," "each," and "every" shall be construed as encompassing any and all.

10.     The terms "including" and "include" shall be construed in such a way as to suggest or provide an example or examples.  The terms "including" and "include" shall not be construed in such a way as to limit or confine the broader term or concept for which a suggestion or example is being given.

11.     Each of "relating to," "relate to," "referring to," "refer to," "regarding," "with regard to,"  "concern," "concerning" and derivatives thereof shall be construed broadly so as to encompass the liberal scope of discovery set forth in Rule 26(b) of the Federal Rules of Civil Procedure and shall mean directly or indirectly affecting, alluding to, analyzing, bearing upon, commenting on, comparing, complementing, comprising, concerning, constituting, containing, contemplating, contradicting, criticizing, critiquing, dealing with, depicting, describing, discussing, embodying, evaluating, evidencing, identifying, incorporating, involving, mentioning, negating, noting, pertaining to, providing a basis for, referencing, referring to, reflecting, refuting, regarding, relating to, respecting, responding to, reviewing, stating, summarizing, supporting, with respect to or otherwise in any manner pertaining to or being connected to, whether logically, circumstantially, factually, legally, directly or indirectly, the document, thing, information, matter, topic, issue, fact, assertion, allegation or circumstance being stated, discussed or referenced.

12.     The use of the singular form of any word includes the plural and *vice versa* to bring within the scope of the request all responses that otherwise might be construed to be outside its scope.

13.     The term "how" shall be construed as how, what, why, when, who, and/or where

as necessary to bring within the scope of the request all responses that otherwise might be construed to be outside its scope.

14.     The term "date" shall mean the exact day, month, and year (to the degree ascertainable) or if not ascertainable, the best approximation (including relationship to other events).

15.     The term "the '206 Patent" shall mean U.S. Patent No. 9,344,206, as well as its application and any publications thereof.

16.     The term "the '615 Patent" shall mean U.S. Patent No. 9,967,615, as well as its application and any publications thereof.

17.     The term "the '966 Patent" shall mean U.S. Patent No. 10,469,966, as well as its application and any publications thereof.

18.     The term "the '033 Patent" shall mean U.S. Patent No. 10,779,033, as well as its application and any publications thereof.

19.     The term "the '885 Patent" shall mean U.S. Patent No. 10,848,885, as well as its application and any publications thereof.

20.     The term "Patent(s)-in-Suit" shall mean the '206 Patent, the '615 Patent, the '966 Patent, the '033 Patent, and the '885 Patent, either collectively or individually.

21.     The "Asserted Claims" means any or all of (i) claims 1-5, 7, 10-19 of the '206 Patent, (ii) claims 1-4, 6-12, 14-20 of the '966 Patent, (iii) claims 1-3, 5-10, 12-17, and 19-20 of the '885 Patent, (iv) claims 1-3, 6-9, 11-15, 18-21, 23-26, 28-29 of the '615 Patent, (v) claims 1-2, 4, 7-13, 15-16 of the '033 Patent and (vi) any additional claims at issue in this case.

22.     The term "customer(s)" shall mean any purchaser, reseller, distributor, dealer, retailor, wholesaler, user, and/or recipient.

23.    The term "knowledge" shall include firsthand information and information derived from any source, including hearsay knowledge.

24.    The term "Sonos Product(s)" shall mean any product made, offered, or sold by Sonos, including but not limited to any Sonos app (including but not limited to the Sonos S1 and S2 apps), any Sonos player (including but not limited to the PLAY:1, ONE, ONE SL, PLAY:3, PLAY:5, FIVE, MOVE, ROAM, PLAYBAR, PLAYBASE, BEAM, ARC, SUB, CONNECT, PORT, CONNECT:AMP, AMP, and any predecessor product thereof), any Sonos controller device (including but not limited to the CR100 and CR200), and any Sonos networking device (including but not limited to the BRIDGE and the BOOST), either collectively or individually.

25.    The term "Accused Cast-Enabled Media Player(s)" shall mean the following products, including any and all versions thereof, either collectively or individually: CHROMECAST, CHROMECAST ULTRA, CHROMECAST AUDIO, CHROMECAST WITH GOOGLE TV, HOME MINI, NEST MINI, HOME, HOME MAX, NEST AUDIO, HOME HUB, NEST HUB, NEST HUB MAX, and NEST WIFI POINT.

26.    The term "Accused Cast-Enabled Display(s)" shall mean the following products, including any and all versions thereof, either collectively or individually: HOME HUB, NEST HUB, and NEST HUB MAX.

27.    The term "Accused Pixel Device(s)" shall mean the following products, including any and all versions thereof, either collectively or individually: PIXEL, PIXEL XL, PIXEL 2, PIXEL 2 XL, PIXEL 3, PIXEL 3 XL, PIXEL 3A, PIXEL 3A XL, PIXEL 4, PIXEL 4 XL, PIXEL 4A, PIXEL 4A (5G), PIXEL 5, PIXEL SLATE, PIXELBOOK, PIXELBOOK GO.

28.    The term "Accused Cast-Enabled App(s)" shall mean the Google Home app, any of Google's own Cast-enabled Android, iOS, or Chrome apps (including but not limited to the

YouTube Music app, Google Play Music app, YouTube app, Google Podcasts app, and YouTube TV app), any third-party Cast-enabled app that allows a user to "cast"[1] to an Accused Cast-Enabled Media Player (including but not limited to the Spotify app), and any Cast-enabled software (e.g., firmware and/or Cast-enabled apps) executable on an Accused Cast-Enabled Display that enables a user to "[m]ove media from one cast device to another,"[2] either collectively or individually.

29.     The term "Accused Google Product(s)" shall mean any Accused Cast-Enabled Media Player(s), Accused Pixel Device(s), and/or Accused Cast-Enabled App(s), either collectively or individually.

30.     The term "Accused Google Server(s)" shall mean any server that hosts at least one of the Accused Cast-Enabled App(s) for download, any server that facilitates "[c]asting from Chromecast-enabled apps to [Accused Cast-Enabled Media Player(s)],"[3] any server that facilitates "[m]ov[ing] media from one cast device to another,"[4] and any server that, in response to user input at any Accused Cast-Enabled App, facilitates delivering media to an Accused Cast-Enabled Media Player (including but not limited to any Cloud Content Delivery Network (CDN) server), either collectively or individually.

31.     The terms "Accused Instrumentality" and "Accused Instrumentalities" refer to the instrumentalities identified in Sonos's Complaint (as may be amended), as well as any infringement contentions, including but not limited to the Accused Google Product(s) and Accused Google Server(s), either collectively or individually.

32.     When objecting to any interrogatory, please state with specificity the grounds for each objection.  Any interrogatory to which an objection is made should be responded to insofar

---

[1] *See, e.g.*, https://support.google.com/googlenest/answer/7181830.
[2] *See, e.g.*, https://support.google.com/chromecast/answer/9563059?co=GENIE.Platform%3DAndroid&hl=en.
[3] *See, e.g.*, https://support.google.com/googlenest/answer/7181830.
[4] *See, e.g.*, https://support.google.com/chromecast/answer/9563059?co=GENIE.Platform%3DAndroid&hl=en

as it is not deemed objectionable.

33.     When providing a response to any interrogatory upon information and belief, please state so and identify all sources of information and belief.

34.     If Google is unable to answer any interrogatory or a portion thereof by actual knowledge or upon information and belief, please state so and describe in detail the reason such knowledge or information is not available and the efforts made to obtain such knowledge or information.

35.     If Google is unable to provide a complete answer to any interrogatory, please answer the interrogatory to the extent possible and indicate which portions of the interrogatory Google is unable to answer.

36.     If Google identifies a person having knowledge of information relevant to only a portion of an interrogatory, please specify the portion of the interrogatory for which that person has knowledge of information.

37.     If, in answering any interrogatory, Google avails itself of the option to produce business records under Federal Rule of Civil Procedure 33(d), identify by production number the document or documents and the specific citation within the document(s) from which the answer may be derived or ascertained in order to permit a determination as to whether the burden to derive or ascertain the answer is substantially the same for Google as for Sonos.

38.     When asked to "identify" or to specify the "identity" of a person, provide to the extent known, the person's:

    a.  full name;
    b.  present or last known home address, business and e-mail addresses, and respective phone numbers;
    c.  present or last known place of employment and position; and
    d.  if applicable, his or her connection to the subject matter of the interrogatory.

39.     When asked to "identify," to "describe," or to specify the "identity" of a person who is a past or present director, officer, employee, agent, or representative of Google, further specify all positions or employments held by that person with Google, and the dates between which each such position or employment was held.

40.     When asked to "identify," to "describe," or to specify the "identity" of an entity, specify:

    a.  its full name;
    b.  its place of incorporation or other business organization (where appropriate);
    c.  its principal place of business;
    d.  its present or last known mailing and physical address(es) and e-mail and website addresses;
    e.  its present or last known phone number;
    f.  the type of entity or organization (e.g., corporation, partnership, joint venture, trust, etc.);
    g.  its date and place (e.g., country, province, and/or state) of formation and any place(s) in which it is registered to conduct business;
    h.  its registered agent; and
    i.  the identity of all individuals employed by or acting for it at any time who have knowledge of the matter with respect to which the entity is identified.

41.     When asked to "identify," to "describe," or to specify the "identity" of a document, produce the document for inspection and copying or specify the Bates number(s) of the produced document, and specify:

    a.  the date it was authored, sent, and/or received;
    b.  the identity of the author of the document;
    c.  the identity of any recipient of the document; and
    d.  the identity of the custodian of the document.

42.     When asked to "identify," to "describe," or to specify the "identity" of a communication, if the communication was not in written form, specify:

    a.  the manner in which that communication was made (telephone, personal, conversation, etc.);
    b.  the identity of each person who participated in or witnessed the communication;
    c.  the subject matter and content of the communication;
    d.  the date of the communication; and

e.  if attorney-client privilege, work product immunity, or any other exemption from discovery is claimed, each basis for such claim, including whether any documents exist, and/or whether any oral communications took place.

43.     When asked to "identify," to "describe," or to specify the "identity" of a thing, produce the thing for inspection or specify:

a.  its general description;
b.  its physical particulars (size, shape, color, weight, etc.);
c.  the date on which it was made;
d.  the identity of the persons who made it;
e.  the identity of the persons who asked that it be made;
f.  its present condition; and
g.  its present location.

44.     When asked to "state all facts," provide a full and complete statement of all facts relating to the subject matter of the Interrogatory, including the identity of any person or entity having knowledge of any such fact, including the last known address and phone number and the identity of any document, communication, or thing that refers, relates, or evidences any such fact.

45.     These interrogatories are continuing in character so as to require Google to furnish supplemental answers whenever Google acquires, obtains, locates, or identifies different or additional knowledge, information, documents, things, or beliefs related to these interrogatories, in accordance with the duty to supplement and correct under Rule 26(e) of the Federal Rules of Civil Procedure.

## INTERROGATORIES

## INTERROGATORY NO. 1

Describe in detail when and how Google first became aware of each Patent-In-Suit and the steps, if any, taken by Google as a result of such awareness, including, but not limited to: an explanation of the circumstances surrounding Google's acquisition of such awareness; an identification of the person(s) who first became aware of each Patent-In-Suit and the source of such awareness (person, document, or otherwise); and an identification of the Google employees, officers, or directors that were aware of each Patent-In-Suit prior to the filing of the above-captioned litigation.

## INTERROGATORY NO. 2

Describe in detail any analysis, consideration, study, review, communication, discussion, or opinion concerning a Sonos patent or patent application (e.g., infringement, non-infringement, validity, invalidity, enforceability, unenforceability, claim construction, scope, interpretation, propensity or inclination (or lack thereof) of Sonos to assert a patent against Google, etc.) conducted by Google, conducted on behalf of Google, or otherwise known to Google, including, but not limited to: an identification of all persons involved in any such analysis, consideration, study, review, communication, discussion, or opinion, including an identification of which Google entity, if any, employed and/or employs any such person(s); the circumstances surrounding any such analysis, consideration, study, review, communication, discussion, or opinion (e.g., the circumstances that prompted the analysis, consideration, study, review, communication, discussion, or opinion of each Patent-In-Suit); and the substance of any such analysis, consideration, study, review, communication, discussion, or opinion of each Patent-In-Suit; the date and location of any such analysis, consideration, study, review, communication, discussion,

or opinion of each Patent-In-Suit.

## INTERROGATORY NO. 3

For each Accused Instrumentality, describe in detail how the instrumentality was conceived, researched, designed, developed, engineered, and/or tested, including, but not limited to: a detailed description of the time period over which such activities took place; a detailed description of where such activities took place; a detailed description of Google's decision for selecting the design configuration of the Accused Instrumentality, including the circumstances surrounding and the reasoning for any such decision; a detailed description of Google's decision to implement and/or to not implement any feature of the Accused Instrumentality, including the circumstances surrounding and the reasoning for any such decision; and a detailed description of any attempts to design around any claim of any Patent-In-Suit.

## INTERROGATORY NO. 4

Describe in detail any analysis, consideration, study, review, communication, discussion, tear-down, competitive analysis investigation or study, or opinion concerning or addressing any Sonos Product, including but not limited to any comparison between any Sonos Product and any Accused Google Product.  For each such analysis, consideration, study, review, communication, discussion, or opinion, identify when, why, and by whom any such analysis, consideration, study, review, communication, discussion, or opinion was made.

## INTERROGATORY NO. 5

For each of the Accused Instrumentalities, identify and correlate (i) all codenames, internal names, and/or project names associated with the Accused Instrumentality, and (ii) every software version, firmware version, or operating system released for the Accused Instrumentality, including identifying the version number, date of release, codenames or internal names associated with the

version, and an indication of whether the version was produced for inspection in this case.

**<u>INTERROGATORY NO. 6</u>**

Separately, for each Accused Instrumentality (unless noted otherwise), identify the three people most knowledgeable about each of the following:

    i.    The engineering, research, and development that resulted in that Accused Instrumentality;

    ii.    Its design, structure, components, and function;

    iii.    Its use and operation;

    iv.    Marketing, advertising, instructions or suggestions provided to customers concerning the intended or possible uses and operations;

    v.    The basis for Your contention that it does not infringe the Asserted Claims;

    vi.    Any change, modification, or redesign as a result of You learning of the Asserted Patents or their patent applications or to avoid infringing any Asserted Claim;

    vii.    the ability of the YouTube Music app to allow a user to transfer playback of streaming media content from a smartphone, tablet, or computer devices to an Accused Cast-Enabled Media Player and then control the Accused Cast-Enabled Media Player's playback;

    viii.    the ability of the Google Play Music app to allow a user to transfer playback of streaming media content from a smartphone, tablet, or computer devices to an Accused Cast-Enabled Media Player and then control the Accused Cast-Enabled Media Player's playback;

    ix.    the ability of the YouTube app to allow a user to transfer playback of streaming media content from a smartphone, tablet, or computer devices to an Accused Cast-

Enabled Media Player and then control the Accused Cast-Enabled Media Player's playback;

x. the ability of the Google Podcasts app to allow a user to transfer playback of streaming media content from a smartphone, tablet, or computer devices to an Accused Cast-Enabled Media Player and then control the Accused Cast-Enabled Media Player's playback;

xi. the ability of the YouTube TV app to allow a user to transfer playback of streaming media content from a smartphone, tablet, or computer devices to an Accused Cast-Enabled Media Player and then control the Accused Cast-Enabled Media Player's playback;

xii. the ability of the Spotify app to allow a user to transfer playback of streaming media content from a smartphone, tablet, or computer devices to an Accused Cast-Enabled Media Player and then control the Accused Cast-Enabled Media Player's playback;

xiii. the ability of an Accused Cast-Enabled Display to allow a user to transfer playback of streaming media content from the Accused Cast-Enabled Display to another Accused Cast-Enabled Media Player (or speaker group of Accused Cast-Enabled Media Players) and then control the other Accused Cast-Enabled Media Player's (or Players') playback.

## INTERROGATORY NO. 7

Identify all instances where Google has made or used (e.g., by testing or demonstrating) any Accused Instrumentality in the United States, and describe in detail the manner of such activity, including the approximate date(s) such activity took place and who conducted or was present during such activity.

**INTERROGATORY NO. 8**

Identify and describe in detail each patent license and/or other intellectual property license relating to the Accused Instrumentalities, including, but not limited to: an identification of the parties to the license; the subject matter of the license; the product(s) covered by the license; the patent(s) covered by the license; and the royalty rate or other compensation (monetary or otherwise) to be paid under the license.

**INTERROGATORY NO. 9**

For each Accused Instrumentality, identify the actual and projected sales, prices, costs, revenues, downloads, installs, and profits associated with unit sales, unit downloads, or unit installs of such Instrumentality from September 2014 to present, including but not limited to an identification of (i) the date of first sale or offer for sale; (ii) Google's monthly unit sales volume (or if monthly information is not available, whatever other periodic reporting period is available); (iii) Google's total sales by unit volume and total sales dollars; (iv) the standard unit sales price(s); (v) the cost of goods sold (with an allocation of all fixed and variable costs, including but not limited to all manufacturing, administrative, overhead and marketing costs per unit); (vi) Google's revenues and gross and net profits associated with such sales.

**INTERROGATORY NO. 10**

To the extent not provided in response to Interrogatory No. 9, for each Google revenue stream connected to and/or promoted by the Accused Instrumentalities, identify the actual and projected sales, prices, costs, revenues, and profits associated with such revenue stream from September 2014 to present, including but not limited to, Google revenue associated with Google's own subscription-based streaming media services (e.g., Google revenue associated with Google Play Music, YouTube Music Premium, and/or YouTube TV subscriptions) provided via the

14

Accused Cast-Enabled Apps; Google revenue associated with third-party subscription-based streaming media services (e.g., Google revenue share associated with Spotify Premium, Pandora Plus, and/or Pandora Premium subscriptions purchased through the Google Play store) provided via the Accused Cast-Enabled Apps; Google revenue associated with advertisements provided via the Accused Cast-Enabled Media Players, the Accused Cast-Enabled Displays, and/or the Accused Cast-Enabled Apps; Google revenue associated with searches initiated via the Accused Cast-Enabled Media Players, the Accused Cast-Enabled Displays, and/or the Accused Cast-Enabled Apps; Google revenue associated with in-app purchases made within the Accused Cast-Enabled Apps; Google revenue associated with ecommerce transactions initiated via the Accused Cast-Enabled Media Players, the Accused Cast-Enabled Displays, and/or the Accused Cast-Enabled Apps; and any Google revenue associated with consumer data collected via the Accused Cast-Enabled Media Players, the Accused Cast-Enabled Displays, the Accused Cast-Enabled Apps, and/or the Accused Google Servers (e.g., Google revenue associated with the sale of such consumer data and/or Google revenue associated with advertisements that target consumers based at least in part on such consumer data).

**INTERROGATORY NO. 11**

For each Accused Cast-Enabled App, identify the actual and projected sales, prices, costs, revenues, and profits associated with such Accused Cast-Enabled App's use of the Google Cloud Platform (e.g., revenue associated with hosting such Accused Cast-Enabled Apps and/or related streaming media services and functionality on an Accused Google Server, revenue associated with storing media associated with streaming media services provided via the such Accused Cast-Enabled App, and/or revenue associated with storing user profiles associated with such Accused Cast-Enabled App).

**INTERROGATORY NO. 12**

Separately for each Asserted Claim of each Patent-In-Suit, set forth in detail the complete legal and factual basis for any assertion by Google that the Accused Instrumentalities have not infringed each such claim, including, but not limited to: an identification of each Asserted Claim of each Patent-In-Suit that Google believes is not infringed; an identification of which elements of each such Asserted Claim are allegedly not present in the Accused Instrumentalities; and for each claim element that is allegedly not present in the Accused Instrumentalities, an identification and detailed explanation of the basis for Google's assertion that the claim element is allegedly not present in the Accused Instrumentalities, including the basis for any assertion by Google that any differences between the claim element and the corresponding structure in the Accused Instrumentalities are not insubstantial and/or that the claim element and the corresponding structure in the Accused Instrumentalities do not perform substantially the same function in substantially the same way to achieve substantially the same result; and an identification of all facts supporting or refuting Google's non-infringement allegations, all persons knowledgeable of these facts (including every person whose knowledge or opinion is relied upon as a basis for Google's non-infringement assertions, the opinion or substance of his/her knowledge, and the entire basis of that knowledge or opinion), and all documents and things, including the Bates number(s) of such documents and things, concerning Google's assertion of non-infringement.

**INTERROGATORY NO. 13**

Describe in detail how the Google Home app running on a computing device (e.g., an Accused Pixel Device, an Accused Cast-Enabled Display, or a third-party mobile phone or tablet), independently or working with other software on the computing device, enables a user to

"manually,"[5] as opposed to "dynamically," create a "speaker group"[6] of two or more Accused Cast-Enabled Media Players and then play media from such a manually created "speaker group" including, but not limited to, (i) describing in detail any information that is exchanged between the computing device and the Accused Cast-Enabled Media Players to facilitate the aforementioned functionality and how such exchange takes place, (ii) describing in detail any information that is stored at the Accused Cast-Enabled Media Players to facilitate the aforementioned functionality and how such storage takes place, and (iii) identifying by filename and method/function name the specific source code related to the functionality described in (i)-(ii).

## INTERROGATORY NO. 14

For each Accused Cast-Enabled App, describe in detail how the given Accused Cast-Enabled App (e.g., YouTube Music, YouTube, Google Play Music, Google Podcasts, Spotify) running on a computing device (e.g., an Accused Pixel Device, an Accused Cast-Enabled Display, or a third-party mobile phone or tablet), independently or working with other software on the computing device, enables a user to "cast,"[7] or otherwise move or transfer media,[8] to an Accused Cast-Enabled Media Player including, but not limited to, (i) describing in detail any information that is exchanged between the computing device, the Accused Cast-Enabled Media Player, and/or any Accused Google Server to facilitate the aforementioned functionality and how such exchange takes place, (ii) describing in detail any creation, existence, modification, or deletion of any "queue"[9] of one or more media items to facilitate the aforementioned functionality and how such

---

[5] *See, e.g.*, https://blog.google/products/google-nest/new-multi-room-audio-control-nest/.
[6] *See, e.g.*, https://support.google.com/googlenest/answer/7174267?co=GENIE.Platform%3DAndroid&hl=en.
[7] *See, e.g.*, https://support.google.com/googlenest/answer/7181830.
[8] *See, e.g.*, https://support.google.com/chromecast/answer/9563059?co=GENIE.Platform%3DAndroid&hl=en.
[9] *See, e.g.*, https://developers.google.com/cast/docs/ios_sender/queueing.

creation, existence, modification, or deletion takes place, and (iii) identifying by filename and method/function name the specific source code related to the functionality described in (i)-(ii).

## INTERROGATORY NO. 15

For each of the YouTube, YouTube Music, YouTube TV, Google Play Music, Google Podcasts, and Spotify media services, describe in detail how an Accused Google Product (e.g., an Accused Cast-Enabled Media Player or Accused Pixel Device) receives and then plays back a sequence of media items (e.g., songs, podcast episodes, etc.) in connection with a given one of the aforementioned media services including, but not limited to, (i) describing in detail any communications between the Accused Google Product and any web server (e.g., Accused Google Server or third-party server) and how such communications take place, (ii) describing in detail how any Accused Google Server generates, maintains, and/or updates a set of one or more media-item "recommendations"[10] that are sent to the Accused Google Product and how those "recommendations" are sent to the Accused Google Product, and (iii) describing in detail how any Accused Google Server facilitates Google's "Autoplay feature"[11] for playback at the Accused Google Product and how the "Autoplay feature" is utilized at the Accused Google Product.

## INTERROGATORY NO. 16

For each Accused Cast-Enabled App, describe in detail how a given Accused Cast-Enabled App (and updates thereto) is made available for download onto computing devices (e.g., an Accused Pixel Device, an Accused Cast-Enabled Display, or a third-party mobile phone or tablet) including, but not limited to, (i) describing in detail where and/or how any web server (e.g.,

---

[10] *See, e.g.*, https://www.youtube.com/howyoutubeworks/product-features/recommendations/;
https://support.google.com/youtubemusic/answer/6313542?hl=en;
https://support.google.com/websearch/answer/10017274?hl=en&co=GENIE.Platform%3DAndroid#zippy=.
[11] *See, e.g.*, https://support.google.com/youtube/answer/6327615?hl=en&co=GENIE.Platform%3DAndroid;
https://support.google.com/websearch/answer/10017274?hl=en&co=GENIE.Platform%3DAndroid#zippy=.

Accused Google Server) stores, maintains, or otherwise hosts the given Accused Cast-Enabled App for download, (ii) describing in detail where and/or how any web server (e.g., Accused Google Server) stores, maintains, or otherwise hosts different versions of the given Accused Cast-Enabled App (e.g., past or future public versions of the given Accused Cast-Enabled App), and (iii) describing in detail the process by which the given Accused Cast-Enabled App is provided by any web server (e.g., Accused Google Server) to computing devices (e.g., an Accused Pixel Device, an Accused Cast-Enabled Display, or a third-party mobile phone or tablet).

## INTERROGATORY NO. 17

For each Accused Cast-Enabled App and Accused Cast-Enabled Media Player, identify any marketing material, advertisement, instruction or suggestion by Google to users concerning downloading any Accused Cast-Enabled App, subscribing to a paid or premium version of the Accused Cast-Enabled App, using a computing device installed with any Accused Cast-Enabled App, or using or purchasing any Accused Cast-Enabled Media Player.

## INTERROGATORY NO. 18

If any Accused Instrumentality has been or will be designed, redesigned, altered, modified or changed in an effort to avoid infringement of any Asserted Claim, describe in detail the nature of that design, redesign, alteration, modification or change, explain in detail how such design, redesign, alteration, modification or change results in non-infringement of each Asserted Claim, including but not limited to identifying the specific claim limitation or limitations not practiced because of the change and state when the change was implemented in terms of both the date of the change and the version of the Accused Instrumentality that includes the change, identify all documents concerning that design, redesign, alteration, modification or change, and identify the

person or persons most knowledgeable about the design, redesign, alteration, modification or change.

## INTERROGATORY NO. 19

Describe in detail the complete legal and factual basis for each defense plead in Google's Answer and Counterclaims (Dkt. 32), including but not limited to: an identification of all facts supporting or refuting Google's defenses, all persons knowledgeable of these facts (including every person whose knowledge or opinion is or was relied upon as a basis for Google's defenses, the opinion or substance of such person's or persons' knowledge, and the entire basis of that knowledge or opinion), and all documents and things, including the Bates number(s) of such documents and things, concerning Google's defenses.

## INTERROGATORY NO. 20

Separately for each Asserted Claim of each Patent-In-Suit, describe in detail the complete legal and factual basis for any contention by Google that the secondary considerations of nonobviousness (including, but not limited to commercial success, long-felt need, failure of others, unexpected results, initial skepticism, copying, industry recognition, or widespread adoption) do not support the nonobviousness of each such claim, including but not limited to: a detailed description of whether Google denies that products embodying the Asserted Claims of the Patents-In-Suit, including, *inter alia,* the Sonos Products, have been a commercial success or contends that there is no nexus between such commercial success and the Asserted Claims of the Patents-In-Suit; and a detailed description of whether Google denies that there was any long-felt need, failure of others, unexpected results, initial skepticism, copying, industry recognition, or widespread adoption for the subject matter covered by the Asserted Claims of the Patents-in-Suit; and an identification of all facts supporting or refuting any such contentions, all persons knowledgeable

of these facts (including every person whose knowledge or opinion is relied upon as a basis for Google's obviousness assertions, the opinion or substance of his/her knowledge, and the entire basis of that knowledge or opinion), and all documents and things, including the Bates number(s) of such documents and things, concerning Google's position on secondary considerations of nonobviousness.

Dated: August 7, 2021                    Respectfully submitted,

By:___*/s/ Cole B. Richter*_____

Cole B. Richter (admitted *pro hac vice*)
Illinois Bar No. 6315686
LEE SULLIVAN SHEA & SMITH LLP
656 W. Randolph St., Floor 5W
Chicago, IL 60661
Telephone:  312.754.9602
Facsimile:  312.754.9603
richter@ls3ip.com

Alyssa Caridis (admitted *pro hac vice*)
California Bar No. 260103
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa St., Suite 3200
Los Angeles, CA 90017
Telephone:  213.612.2372
Facsimile:  213.612.2499
acaridis@orrick.com

Clement Seth Roberts (admitted *pro hac vice*)
California Bar No. 209203
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard St.
San Francisco, CA 94105
Telephone:  415.773.5484
Facsimile:  415.773.5759
croberts@orrick.com

Bas de Blank (admitted *pro hac vice*)
California Bar No. 191487
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Blvd.
Menlo Park, CA 94205
Telephone:  650.614.7343
Facsimile:  650.614.7401
bdeblank@orrick.com

George I. Lee (admitted *pro hac vice*)
Illinois Bar No. 6225430
Sean M. Sullivan (admitted *pro hac vice*)
Illinois Bar No. 6230605
Rory P. Shea (admitted *pro hac vice*)
Illinois Bar No. 6290745
J. Dan Smith (admitted *pro hac vice*)

Illinois Bar No. 6300912
Cole B. Richter (admitted pro hac vice)
Illinois Bar No. 6315686
LEE SULLIVAN SHEA & SMITH LLP
656 W. Randolph St., Floor 5W
Chicago, IL 60661
Telephone:  312.754.9602
Facsimile:  312.754.9603
lee@ls3ip.com
sullivan@ls3ip.com
shea@ls3ip.com
smith@ls3ip.com
richter@ls3ip.com

Mark D. Siegmund
State Bar No. 24117055
mark@waltfairpllc.com
Law Firm of Walt, Fair PLLC.
1508 North Valley Mills Drive
Waco, Texas 76710
Telephone: (254) 772-6400
Facsimile: (254) 772-6432

*Counsel for Plaintiff Sonos, Inc.*