# EXHIBIT I

# FILED UNDER SEAL

HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Charles K. Verhoeven (Bar No. 170151)
  charlesverhoeven@quinnemanuel.com
  Melissa Baily (Bar No. 237649)
  melissabaily@quinnemanuel.com
  James Judah (Bar No. 257112)
  jamesjudah@quinnemanuel.com
  Lindsay Cooper (Bar No. 287125)
  lindsaycooper@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

  Marc Kaplan (*pro hac vice*)
  marckaplan@quinnemanuel.com
191 N. Wacker Drive, Ste 2700
Chicago, Illinois 60606
Telephone:     (312) 705-7400
Facsimile:     (312) 705-7401

*Attorneys for GOOGLE LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| GOOGLE LLC,<br><br>                Plaintiff<br><br>        v.<br><br>SONOS, INC.,<br><br>                Defendant. | Case No. 3:20-cv-06754-WHA |

**GOOGLE LLC'S EIGHTH SUPPLEMENTAL OBJECTIONS AND RESPONSES TO PLAINTIFF SONOS, INC.'S FIRST SET OF FACT DISCOVERY INTERROGATORIES (NO. 18)**

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant Google LLC ("Google") hereby objects and responds to Plaintiff Sonos, Inc.'s ("Sonos") First Set of Fact Discovery Interrogatories to Defendant ("Interrogatories"). Google responds to these

**HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY**

Interrogatories based on its current understanding and the information reasonably available to Google at the present time. Google reserves the right to supplement these responses if and when additional information becomes available.

**GENERAL OBJECTIONS AND RESPONSES**

1. These responses are made only for the purposes of discovery in this action. Each response is subject to all appropriate objections as to competence, relevance, materiality, and any and all other objections and grounds that would require the exclusion of any information, documents, or statements contained in the responses if such information, documents, or statements were offered in court. Google expressly reserves all such objections and may interpose them at the time of trial or at any other time.

2. Google reserves all objections as to the admissibility at trial of any information or documents identified in its responses to these Interrogatories. By identifying any document or supplying any information, Google does not admit that such information or document is relevant to or admissible in this litigation. Google reserves the right to object to further inquiry with respect to any subject matter.

3. Google objects to the interrogatories, and to the definitions, to the extent that they purport to impose any obligations upon Google beyond the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Northern District of California.

4. Google objects to the definition of "Defendant," "Google," "You," or "Your" on the grounds that the definitions are overly broad, unduly burdensome, and vague, including but not limited to the extent that they include: any Google parent, subsidiary, division, or related company; any business entity controlled by or operated on behalf thereof; any predecessors thereof; and any and all agents, directors, owners, officers, attorneys, employees, representatives, subcontracts, and/or any person acting on its behalf.

5. Google objects to the definition of "Accused Cast-Enabled App(s)" on the grounds that the definition is overly broad, unduly burdensome, and vague, including but not limited to the extent that it includes: any Google Cast-enabled app other than the YouTube Music app, Google Play Music app, YouTube app, Google Podcasts app, and YouTube TV app, and any third-party

HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY

Cast-enabled app that allows a user to "cast" to an Accused Cast-Enabled Media Player (including but not limited to the Spotify app), and any Cast-enabled software (e.g., firmware and/or Cast-enabled apps) executable on an Accused Cast-Enabled Display that enables a user to "[m]ove media from one cast device to another," either collectively or individually. Google will respond with respect to the YouTube Music app, Google Play Music app, YouTube app, Google Podcasts app, and YouTube TV app.

6. Google objects to the definition of "Accused Google Product(s)" to the extent it includes Sonos's definition of the term "Accused Cast-Enabled App(s)."

7. Google objects to the definition of "Accused Google Server[s]" on the grounds that the definition is overly broad, unduly burdensome, and vague, including but not limited to the extent that it purports to include: any server that hosts at least one of the Accused Cast-Enabled App(s) for download, any server that facilitates casting from Chromecast-enabled apps to Accused Cast-Enabled Media Player(s), any server that facilitates moving media from one cast device to another," and any server that, in response to user input at any Accused Cast-Enabled App, facilitates delivering media to an Accused Cast-Enabled Media Player (including but not limited to any Cloud Content Delivery Network (CDN) server), either collectively or individually. Google will respond with respect to the servers specifically accused in Sonos's infringement contentions.

8. Google objects to the instructions regarding "identify," "describe," or "identity" in the context of a person on the grounds that the instructions are overly broad, unduly burdensome, and vague, including but not limited to the extent that they require inclusion of: the person's present or last known home address, business and e-mail addresses, and respective phone numbers; present or last known place of employment and position; and his or her connection to the subject matter of the interrogatory.

9. Google objects to the instructions to "identify," "describe," or specify the "identity" in the context of a person who is a past or present director, officer, employee, agent, or representative of Google on the grounds that the instructions are overly broad, unduly burdensome, and vague, including but not limited to the extent that they require specification of: all positions or employments

HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY

held by that person with Google, and the dates between which each such position or employment was held.

10.     Google objects to the instructions to "identify," "describe," or specify the "identity" in the context of an entity on the grounds that the instructions are overly broad, unduly burdensome, and vague, including but not limited to the extent that they require specification of: the entity's place of incorporation or other business organization; it's principal places of business; its present or last known mailing and physical address(es) and e-mail and website addresses; its present or last known phone number; the type of entity or organization, its date and place of formation and any place(s) in which it is registered to conduct business; its registered agent; and the identity of all individuals employed by or acting for it at any time who have knowledge of the matter with respect to which the entity is identified.

11.     Google objects to the instructions to "identify," "describe," or specify the "identity" in the context of a document on the grounds that the instructions are overly broad, unduly burdensome, and vague, including but not limited to the extent that they require specification of: the date it was authored, sent, and/or received; the identity of the author of the document; the identity of any recipient of the document; and the identity of the custodian of the document.

12.     Google objects to the instructions to "identify," "describe," or specify the "identity" in the context of a communication on the grounds that the instructions are overly broad, unduly burdensome, and vague, including but not limited to the extent that they require specification of: the date it was authored, sent, and/or received; the identity of the author of the document; the identity of any recipient of the document; and the identity of the custodian of the document.  Google further objects to the instructions regarding "identify," "describe," or "identity" in the context of a communication to the extent that they suggest Google is required to search and produce electronically stored information (ESI) before Sonos has shown good cause for ESI discovery, and the parties have agreed on a procedure for doing so in accordance with the Court's Standing Order.

13.     Google objects to the instructions to "identify," "describe," or specify the "identity" in the context of a thing on the grounds that the instructions are overly broad, unduly burdensome, and vague, including but not limited to the extent that they require specification of: its physical

particulars; the day on which it was made; the identity of the persons who made it; the identity of the persons who asked that it be made; its present condition; and its present location.

14. Google objects to the instructions to "state all facts" on the grounds that the instructions are is overly broad, unduly burdensome, and vague, including but not limited to the extent that it requires specification of: the identification of any person or entity having knowledge of any such fact, including the last known address and phone number and the identity of any document, communication, or thing that refers, relates, or evidences any such fact.

15. Google objects to each interrogatory to the extent it seeks information protected by the attorney-client privilege or the work product doctrine or that is otherwise privileged or protected from discovery.

16. Google objects to each interrogatory to the extent that it seeks information that is not relevant to any claim or defense of any party or to the subject matter of this action, and is thus not proportional to the needs of the case.

17. Google objects to each interrogatory to the extent it is compound and contains multiple subparts.

18. Google objects to each interrogatory to the extent it is overbroad, unduly burdensome, vague, and/or ambiguous.

19. Google objects to each interrogatory to the extent it seeks information that does not already exist or that is not in Google's possession, custody, or control.

20. Google objects to each interrogatory to the extent it requires Google to provide information beyond what is available to Google at present from a reasonable search of its own files likely to contain relevant or responsive documents and from a reasonable inquiry of its present employees.

21. Google objects to each interrogatory to the extent it seeks confidential or proprietary information, including without limitation, confidential business information, proprietary and/or competitively sensitive information, or trade secrets. Subject to its other General Objections, and to any specific objections set forth below, Google will only provide relevant information in a manner consistent with a Protective Order entered by the Court in this matter.

22. Google objects to each interrogatory to the extent it is unlimited in time or otherwise not limited to a timeframe relevant to this litigation, and is therefore burdensome, oppressive, overly broad, and not proportional to the needs of the case.

23. Google objects to each interrogatory to the extent it seeks a legal conclusion or expert testimony.

24. Google objects to each interrogatory to the extent it seeks information that is publicly available and therefore as accessible to Sonos as to Google.

25. Google objects to each interrogatory to the extent that it is premature. Discovery is ongoing, and Google has not yet completed its investigation of the matters at issue in this action. Google reserves the right to modify, supplement, change or amend its responses after the Court has issued its claim construction order, and once Google has conducted the necessary discovery and investigation.

26. Google's responses are not to be construed as an admission that any of the requested information exists, that any information is admissible, relevant or proportional to the needs of the case, or that any contention or assumption contained in the interrogatories, whether implicit or explicit, is correct.

**OBJECTIONS AND RESPONSES TO FACT DISCOVERY INTERROGATORIES**

**INTERROGATORY NO. 18:**

If any Accused Instrumentality has been or will be designed, redesigned, altered, modified or changed in an effort to avoid infringement of any Asserted Claim, describe in detail the nature of that design, redesign, alteration, modification or change, explain in detail how such design, redesign, alteration, modification or change results in non-infringement of each Asserted Claim, including but not limited to identifying the specific claim limitation or limitations not practiced because of the change and state when the change was implemented in terms of both the date of the change and the version of the Accused Instrumentality that includes the change, identify all documents concerning that design, redesign, alteration, modification or change, and identify the person or persons most knowledgeable about the design, redesign, alteration, modification or change.

**OBJECTIONS:** Google incorporates by reference all of its General Objections as if fully set forth herein. Google objects to the characterization of this interrogatory as a single interrogatory given that it contains multiple discrete subparts under Fed. R. Civ. P. 33(a)(1). Google objects to this interrogatory on the grounds that it is vague, ambiguous, unclear as to information sought, and lacking sufficient particularity to permit Google to reasonably prepare a response with respect to the undefined terms "designed, redesigned, altered, modified or changed," implemented," "version," "design, redesign, alteration, modification or change," and "most knowledgeable." Google further objects to this interrogatory to the extent that it assumes the existence of hypothetical facts that are incorrect or unknown to Google. Google also objects to this interrogatory as overbroad, burdensome, and not proportional to the needs of the case, including to the extent it seeks "all documents" concerning any "design, redesign, alteration, modification or change." Google additionally objects to this interrogatory to the extent it seeks communications and information protected from disclosure by the attorney client privilege and/or attorney work product doctrine. Google further objects to this interrogatory to the extent it seeks confidential and/or proprietary business information. Google also objects to this interrogatory on the grounds that it seeks information that is obtainable through less burdensome and more convenient forms of discovery. Google also objects to this interrogatory to the extent that it premature seeks expert discovery, opinion, and/or testimony.

Google further objects to this interrogatory to the extent that it purports to seek ESI before Sonos has shown good cause for such ESI and before the parties have agreed on a procedure for doing so in accordance with the Court's OGP.

**RESPONSE:** Subject to and without waiving the foregoing General and Specific objections, Google responds, as follows:

Google objects to this interrogatory on the grounds that it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine.

**FIRST SUPPLEMENTAL RESPONSE:**

HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY

Subject to and without waiving the foregoing General and Specific objections, Google responds, as follows:[1]

### '885 Patent & '966 Patent

Google incorporates by reference the opinions disclosed in Dr. Schonfeld's Opening Expert Report, Dr. Schonfeld's Rebuttal Report, and Dr. Schonfeld's deposition testimony regarding non-infringing alternatives.

### *Non-Infringing Alternative #1 – Google's products*

Google's products do not infringe the asserted claims of the '885 and '966 patents. Accordingly, the accused Google products are themselves non-infringing alternatives to the asserted claims.

### *Non-Infringing Alternative #2 – no standalone mode*

A non-infringing alternative is an implementation in which when the accused "standalone" speaker is added to a target group, and it matches the music (or silence) of the target group. Pursuant to FRCP 33(d), Google also refers Sonos to the source code files made available on the Quinn Emanuel LA Office source code review computer, and for which excerpts were provided to counsel for Sonos on September 1, 2022.  See, e.g., SC-GOOG-SONOSNDCA-001598 - SC-GOOG-SONOSNDCA-001682.

Claim 1 of the '885 patent is exemplary.  Claim 1 includes limitations that require the zone player to be added to two different zone scenes: "(i) receiving, from a network device over a data network, a first indication that the first zone player has been added to a first zone scene comprising a first predefined grouping of zone players including at least the first zone player and a second zone player that are to be configured for synchronous playback of media when the first zone scene is invoked" and "(ii) receiving, from the network device over the data network, a second indication that the first zone player has been added to a second zone scene comprising a second predefined grouping of zone players including at least the first zone player and a third zone player that are to

---

[1] While Google provides estimates for implementing the non-infringing alternatives, these approximate time frames may be shorter based on the number of engineers involved.

-8-

HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY

1 be configured for synchronous playback of media when the second zone scene is invoked, wherein
2 the second zone player is different than the third zone player." The claim then requires that "after
3 receiving the first and second indications, continuing to operate in the standalone mode until a given
4 one of the first and second zone scenes has been selected for invocation."  In other words, the claim
5 requires the zone player that was playing back music individually to be added to two different zone
6 scenes, but to continue to operate in a "standalone mode" until one of the two zone scenes is
7 "invoked."

8       With this non-infringing alternative, infringement is avoided by having the "standalone"
9 speaker that is added to two zone scenes not continue to operate in "standalone" mode after it has
10 been added to those zone scenes. Instead, the accused "standalone" speaker after being added to a
11 zone scene may match the music (or silence) of the target zone scene. Indeed, currently, when a
12 single speaker is playing music and a group is playing music and the single speaker is added to the
13 group, the speaker will begin playing the music that the group was playing. Having this same
14 behavior for the situation where a speaker is playing music and joined to a group that is not playing
15 music would harmonize the behavior in these two situations.

16       In this alternative, the accused zone player would never "continue to operate in standalone
17 mode" after receiving the indication that it "has been added to a first zone scene." Rather, the
18 accused zone player would immediately adopt the behavior of the accused "zone scene" to which it
19 was added. Therefore, the accused zone player would no longer be "configured to play back media
20 individually" or, equivalently, remain in the accused "standalone mode."

21       All asserted claims of the '885 and '966 patents require the "standalone mode" functionality
22 discussed above, and therefore this non-infringing alternative applies to all asserted claims.  For
23 example, in claim 1 of the '966 patent, that claim requires that a "first zone player is operating in a
24 standalone mode," and that after a "first request," a "second request," and a "third request," that
25 "based on the third request, causing the first zone player to transition from operating in the
26 standalone mode to operating in accordance with the first predefined grouping of zone players."
27 Accordingly, the '966 patent claims, which each require these same steps, are subject to the
28 alternative.  This alternative would have been straightforward and taken minimal time, which

-9-

HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY

1   reflects its ready availability. Google estimates that it would need one Level-6 software engineer
2   working for one day to implement this alternative.
3   ████████████████████████████████████████████████████████████████████████
4   ████████████████████████████████████████████████████████████████████████
5   ███████████████████████████████████████████.  Google reserves the right to supplement
6   this interrogatory response, including when and if it publicly releases a new version of source code
7   relevant to this non-infringing alternative.

*Non-Infringing Alternative #3 - no overlapping groups*

9          A non-infringing alternative is an implementation in which a speaker that is already a
10  member of one group will be forced out of this (first) group when a user attempts to add the speaker
11  to a new (second) group.  In other words, with this non-infringing alternative, no speaker can be a
12  member of more than one group at the same time.
13          This is a requirement of the asserted claims.  For example, claim 1 of the '885 patent requires
14  that the zone player "receiv[es], from a network device over a data network, a first indication that
15  the first zone player has been added to a first zone scene" and that the zone player "receiv[es], from
16  the network device over the data network, a second indication that the first zone player has been
17  added to a second zone scene."  "[A]fter receiving the first and second indications, [the zone player]
18  continu[es] to operate in the standalone mode until a given one of the first and second zone scenes
19  has been selected for invocation."  Similarly, claim 1 of the '966 patent requires a "first request to
20  create a first zone scene comprising a first predefined grouping of zone players including at least
21  the first zone player" and a "second request to create a second zone scene comprising a second
22  predefined grouping of zone players including at least the first zone player."  Claim 1 of the '966
23  patent also requires "while displaying the representation of the first zone scene and the
24  representation of the second zone scene, receiving a third request to invoke the first zone scene."
25  These representative claims (for this limited purpose) show that the asserted claims require the
26  overlapping groups described above.
27          Sonos's expert Dr. Almeroth has opined that this is the case.  For example, Dr. Almeroth
28  opined that exemplary claim 1 of the '885 Patent recites that the "first zone player" has the capability

-10-

HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY

1   to be added to both a "first zone scene" and a "second zone scene" that are then both available to be
2   "selected for invocation."  See e.g., Almeroth Rebuttal Report at ¶299.  Dr. Almeroth repeatedly
3   opined that the claimed zone scenes have "overlapping" members.  E.g., Almeroth Op. Rep. ¶304
4   ("As explained above, the claimed 'zone scene' technology enables users of the Accused Google
5   Players to create and save predefined groups (referred to by Google as 'speaker groups' or 'static
6   groups') of Accused Google Players, including groups that have one or more overlapping Accused
7   Google Players, where each such group can later be launched at any time to cause the Accused
8   Google Players in the previously-saved, predefined group to become configured to play back audio
9   in synchrony."); ¶¶75, 86, 184, 304, 306, 315, 317, 334; Almeroth Reb. Rep. ¶336 ("Turning to
10  claim 1's additional requirement that the 'first zone player' be programmed with the capability to
11  be a member of two different 'zone scenes' comprising overlapping 'predefined' groups that are
12  both in existence at the same time such that they are both available to be 'selected for invocation,' .
13  . ."); ¶337 ("this scenario also does not meet the additional requirement that there be two overlapping
14  groups that are both in existence and available for selection at the same time"); ¶403 ("However,
15  limitation 1.7 requires much more than just 'overlapping groups' – it requires the capability to
16  receive 'indications' that the 'first zone player' 'has been added' to two different 'zone scenes'
17  comprising customized, pre-saved groups of 'zone players' that are then both in existence at the
18  same time and available to be 'selected for invocation' by a user so that one of the 'zone scenes'
19  can later be 'invoked' on demand.").  The Court has also recognized this requirement.  Dkt. 309 at
20  12 (the Court finding that "claim 1 recites a specific kind of device — a 'zone player' — that can
21  be readily placed in pre-saved groups with other zone players to allow synchronous playback on
22  demand," and "[t]he claimed ability to customize and save overlapping speaker groups and easily
23  control group playback represents a clear technological improvement over the 'conventional multi-
24  zone audio system,' which, as the specification explained, presents significant technological and
25  physical obstacles to forming speaker groups").
26          This claim language is consistent with the Asserted Patents' disclosure that a "zone player"
27  can simultaneously be a member of multiple different groups that are predefined and pre-saved as
28  part of multiple different "zones scenes" in existence at the same time, and provides yet another

point of distinction between the claimed "zone scene" technology and prior art grouping technology, which only permitted a "zone player" or "conventional" audio player to be a member of one single group at any given time. See id. (Almeroth reports quoting patent disclosure).

This alternative would have been straightforward and taken minimal time, which reflects its ready availability. Google estimates that it would need one Level-6 software engineer working for one day to implement this alternative.

### '033 Patent

*Non-Infringing Alternative #1 – Google's products*

Google's products do not infringe the '033 patent. Accordingly, the accused Google products are themselves non-infringing alternatives to the asserted claims of the '033 patent.

*Non-Infringing Alternative #2 – Playback Of A Local Queue On The Sender Device*

All asserted claims of the '033 patent recite a computing device that is "configured for playback of a remote playback queue provided by a cloud-based computing system associated with a cloud-based media service." Sonos's infringement contentions are vague and do not adequately disclose its theory of how Sonos contends Google satisfies this limitation. Google also disagrees with Sonos that its accused products satisfy this limitation.

Nevertheless, to the extent Google's accused products are found not to already do so, a non-infringing alternative is to have the sender device maintain the queue locally on the sender device and configure the sender device to playback the local queue. In this non-infringing alternative, the sender device can include a queue data structure that stores the list of videos selected for playback and the sender device would play videos directly from that local queue. In other words, with this non-infringing alternative, the accused sender devices would not satisfy the above limitation because the sender devices would not be configured to playback "a remote playback queue provided by a cloud-based computing system associated with a cloud-based media service."

This alternative would have been straightforward and taken minimal time, which reflects its ready availability. Google estimates that it would need three Level-4 to Level-5 software engineers working for approximately less than three months to implement this alternative.

HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY

*Non-Infringing Alternative #3 – Cloud Service, Not Playback Device, Communicates With Cloud Servers To Identify the Next One Or More Media Items In The Remote Playback Queue*

All asserted claims of the '033 patent recite a computing device that transmits "an instruction for the at least one given playback device to take over responsibility for playback of the remote playback queue from the computing device, wherein the instruction configures the at least one given playback device to (i) communicate with the cloud-based computing system in order to obtain data identifying a next one or more media items that are in the remote playback queue, (ii) use the obtained data to retrieve at least one media item in the remote playback queue from the cloud-based media service; and (iii) play back the retrieved at least one media item."

Sonos's infringement contentions are vague and do not adequately disclose its theory of how any instruction from the sender device configures a playback device to perform items (i)-(iii) of this limitation.  Sonos appears to allege that this limitation is met because a receiver device may receive a ███████████████████████████████████████ that, according to Sonos, returns a ███████████████████████████████████████ ███████████████████████ and (ii) ███████████████████████████████████████ ███████████████████████████████████████████████████████████████. '033 Infringement Contentions at Limitation 1.7.  Google does not admit that this functionality satisfies the claimed limitation or that it fully and accurately describes the functionality of the accused products.

Nevertheless, a non-infringing alternative is for the receiver device to not send a ███████████████████████████████████. Instead, in Alternative 32 the receiver device would ███████████████████████████. ███████████████████████████████████████████████████████████. In other words, in Alternative #3 the receiver device does not "obtain data identifying a next one or more media items that are in the remote playback queue," and does not "use the obtained data to retrieve at least one media item in the remote playback queue from the cloud-based media service." ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████

▮▮▮▮▮▮▮  See, e.g., GOOG-SONOSNDCA-00071671; GOOG-SONOSNDCA-00070863; GOOG-SONOSNDCA-00073429; GOOG-SONOSNDCA-00073577.  ▮▮▮▮▮▮▮▮▮▮▮ are discussed in further detail in the opening and rebuttal reports of Dr. Bhattacharjee, which are incorporated herein by reference.

*Non-Infringing Alternative #4 – Continue Playback*

All of the asserted claims require "transitioning from i) the first mode in which the computing device is configured for playback of the remote playback queue to ii) a second mode in which the computing device is configured to control the at least one given playback device's playback of the remote playback queue and the computing device is no longer configured for playback of the remote playback queue."

To the extent Google's accused products are found not to already do so, a non-infringing alternative that Google would have had at the time of the alleged first infringement is continuing playback at the control device after playback has been transferred to the playback device.  The playback can be continued with only the video alone (and the audio muted).  After transfer occurs, a "set and forget" operation could turn the receiver into a playback device without direct control from the YT app on the phone or tablet.  Video and audio would be playing back on the screen, and video would be playing on the phone/tablet. The user could retain control of the receiver through other means such as Google Assistant or Google Home.  Because the playback would not be stopped on the control device as part of the transfer step, this alternative does not infringe the Asserted Claims.

End users would have found this alternative to be an acceptable alternative.  This would thus provide additional functionality that the user may choose to take advantage of or may choose to ignore if they prefer.  In fact, users may prefer this method.  For instance, if the playback of a video continues on the control device after transferring playback is complete, the user would have the benefit of viewing the video both on their phone and on the television.

This alternative would have been straightforward and taken minimal time, which reflects its ready availability.  Google estimates that the modification to all the relevant accused products after

they were launched would have required at most 2-3 engineers working full time for a few weeks, either a Level 4 or Level 5.

### Non-Infringing Alternative #5 – The YouTube Remote Prior Art

Sonos has yet to articulate the reasons why it contends the YouTube Remote prior art does not satisfy the claims of the '033 patent. To the extent Sonos argues that the YouTube Remote prior art does not satisfy the claims of the '033 patent, the YouTube Remote prior art would also be a non-infringing alternative for at least those reasons. The Court also found that the YouTube Remote prior art in combination with the YouTube Remote patent rendered claim 13 of the '615 patent invalid. Dkt. 316. That prior art combination is also prior art to the '033 patent and is therefore an available non-infringing alternative.

### '615 Patent

All of the asserted claims of the '615 patent require a "local playback queue" on the particular playback device. The accused Google products are themselves non-infringing alternatives to the Asserted Claims because the Court's Order Granting Partial Summary Judgment as to the '615 patent, Dkt. No. 316, expressly found that the accused products do not include a "local playback queue." Thus, none of the accused products practice the claims of the '615 patent.

As noted above, the Court also found that the combination of the YouTube Remote prior art with the YouTube Remote patent, see id., invalidated claim 13 of the '615 patent. As such, that prior art combination is an available non-infringing alternative.

Google also incorporates by reference the non-infringing alternatives identified and discussed in the opening and rebuttal reports of Dr. Bhattacharjee.

DATED:  November 21, 2022

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: ___/s/ Charles K. Verhoeven___
Charles K. Verhoeven (*pro hac vice*)
charlesverhoeven@quinnemanuel.com
Melissa Baily (*pro hac vice*)
melissabaily@quinnemanuel.com
Lindsay Cooper (*pro hac vice*)
lindsaycooper@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:     (415) 875 6600
Facsimile:     (415) 875 6700

*Counsel for Defendant Google LLC*

**HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY**

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who have consented to electronic service are being served with a copy of this document via email on November 21, 2022.

/s/ *Jocelyn Ma*
Jocelyn Ma