1   CLEMENT SETH ROBERTS (STATE BAR NO. 209203)
    croberts@orrick.com
2   BAS DE BLANK (STATE BAR NO. 191487)
    basdeblank@orrick.com
3   ALYSSA CARIDIS (STATE BAR NO. 260103)
    acaridis@orrick.com
4   ORRICK, HERRINGTON & SUTCLIFFE LLP
    The Orrick Building
5   405 Howard Street
    San Francisco, CA 94105-2669
6   Telephone:    +1 415 773 5700
    Facsimile:    +1 415 773 5759
7
    SEAN M. SULLIVAN (admitted *pro hac vice*)
8   sullivan@ls3ip.com
    MICHAEL P. BOYEA (admitted *pro hac vice*)
9   boyea@ls3ip.com
    COLE RICHTER (admitted *pro hac vice*)
10  richter@ls3ip.com
    LEE SULLIVAN SHEA & SMITH LLP
11  656 W Randolph St., Floor 5W
    Chicago, IL 60661
12  Telephone:    +1 312 754 0002
    Facsimile:    +1 312 754 0003
13
    *Attorneys for Sonos, Inc.*
14

15

16                   UNITED STATES DISTRICT COURT

17                  NORTHERN DISTRICT OF CALIFORNIA

18                     SAN FRANCISCO DIVISION

| | |
|---|---|
| 19  GOOGLE LLC, | Case No. 3:20-cv-06754-WHA |
| | Related to Case No. 3:21-cv-07559-WHA |
| 20        Plaintiff and Counter-defendant, | |
| | **SONOS, INC.'S MOTION TO STRIKE** |
| 21  v. | **PORTIONS OF GOOGLE'S EXPERT** |
| | **INVALIDITY AND** |
| 22  SONOS, INC., | **NONINFRINGEMENT REPORTS** |
| 23        Defendant and Counter-claimant. | Date: March 9, 2023 |
| 24 | Time: 8:00 a.m. |
| | Place: Courtroom 12, 19th Floor |
| 25 | Judge: Hon. William Alsup |
| 26 | Complaint Filed: September 28, 2020 |

27

28                   <mark>FILED UNDER SEAL</mark>

1

## **NOTICE OF MOTION**

2  TO ALL PARTIES AND THEIR ATTORNEYS:

3          PLEASE TAKE NOTICE that on March 9, 2023 at 8:00 a.m., or as soon thereafter as may

4  be heard before the Honorable Judge William Alsup in Courtroom 12 on the 19th Floor of the

5  United States District Court for the Northern District of California, San Francisco Courthouse,

6  450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Sonos, Inc. ("Sonos") will, and

7  hereby does, move this Court for an Order striking untimely and improper arguments in Plaintiff

8  Google LLC's ("Google") expert reports that were not disclosed in Google's required disclosures

9  under the Patent Local Rules or in Google's responses to Sonos's interrogatories asking Google

10 to disclose its non-infringement positions and bases therefor.  This motion is based on this Notice

11 of Motion, the accompanying Memorandum of Points and Authorities and exhibits thereto, all

12 documents in the Court's file, and such other written or oral evidence and argument as may be

13 presented.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>**TABLE OF CONTENTS**</u>

2

**Page(s)**

3

4

I.    INTRODUCTION ........................................................................................................... 1

5

II.   BACKGROUND ............................................................................................................ 3

6

III.  LEGAL STANDARD .................................................................................................... 4

7

IV.   ARGUMENT ................................................................................................................. 6

8
    A.    Google Improperly Introduced New Invalidity Theories Via Expert Report. ................. 6

9
        1.    Dr. Bhattacharjee Improperly Introduced A New Anticipation Theory. .................... 6

10
        2.    Dr. Schonfeld's Previously Undisclosed Prior Art References Must Be Stricken ..... 9

    B.    Google Improperly Introduced New Noninfringement Theories Via Expert Report...... 11

11
        1.    Dr. Bhattacharjee's Previously Undisclosed Noninfringement Theories Must Be Stricken .................................................................................................................... 11

12
        2.    Dr. Schonfeld's Previously Undisclosed Noninfringement Theories Must Be Stricken .................................................................................................................... 13

13
    C.    Google Improperly Introduced New Noninfringing Alternatives Via Expert Report..... 14

14
        1.    Dr. Bhattacharjee's Previously Undisclosed Noninfringement Alternatives Must Be Stricken ............................................................................................................... 15

15
        2.    Dr. Schonfeld's Previously Undisclosed Noninfringement Alternative Must Be Stricken .................................................................................................................... 17

16

17
V.    CONCLUSION ............................................................................................................. 18

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Apple, Inc. v. Samsung Elecs. Co.*,
   No. 11-cv-01846-LHK, 2012 WL 3155574 (N.D. Cal. Aug. 2, 2012)............................ *passim*

5

*Asia Vital Components Co. v. Asetek Danmark A/S*,
   377 F. Supp. 3d 990 (N.D. Cal. 2019) ................................................................. 11

6

7

*ASUS Computer Int'l v. Round Rock Research, LLC*,
   No. 12-cv-02099 JST, 2014 WL 1463609 (N.D. Cal. Apr. 11, 2014).................................... 10

8

9

*Droplets, Inc. v. Yahoo! Inc.*,
   No. 12-cv-03733-JST, 2021 WL 9038509 (N.D. Cal. Apr. 27, 2021) ............................ 16, 17

10

*Finjan, Inc. v. Sophos, Inc.*,
   No. 14-cv-01197 (WHO), 2016 WL 2988834 (N.D. Cal. May 24, 2016).............................. 5

11

12

*Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*,
   No. C03-1431 (SBA), 2006 WL 1329997 (N.D. Cal. May 15, 2006) ..................................... 5

13

*Godo Kaisha IP Bridge 1 v. Broadcom Ltd.*,
   No. 16-cv-134-JRG, 2017 WL 2869344 (E.D. Tex. April 19, 2017) ..................................... 16

14

15

*Goodman v. Staples The Office Superstore, LLC*,
   644 F.3d 817 (9th Cir. 2011)................................................................................ 4

16

17

*Heidelberg Harris, Inc. v. Mitsubishi Heavy Indus., Ltd*,
   No. 95 C 0673, 1996 WL 680243 (N.D. Ill. Nov. 21, 1996) ................................................. 13

18

19

*IXYS Corp. v Adv. Power Tech. Inc.*,
   No. C 02-03942 MHP, 2004 WL 1368860 (N.D. Cal. Jun. 16, 2004) ..................................... 5

20

*Largan Precision Co. v. Genius Elec. Optical Co.*,
   No. 13-cv-02502 (JD), 2014 WL 6882275 (N.D. Cal. Dec. 5, 2014)........................... 5, 8, 10

21

22

*MediaTek Inc. v. Freescale Semiconductor, Inc.*,
   No. 11-cv-5341 (YGR), 2014 WL 690161 (N.D. Cal. Feb. 21, 2014) ............................. 5, 8

23

24

*MLC Intell. Prop., LLC v. Micron Tech., Inc.*,
   No. 14-cv-03657-SI, 2018 WL 6046465 (N.D. Cal. Nov. 19, 2018) ..................................... 13

25

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*,
   523 F.3d 1051 (9th Cir. 2008)................................................................................ 4

26

27

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
   467 F.3d 1355 (Fed. Cir. 2006).............................................................................. 5

28

*Torres v. City of Los Angeles*,
    548 F.3d 1197 (9th Cir. 2008)..................................................................................... 4

*Verinata Health, Inc. v. Sequenom, Inc.*,
    No. C12-00865 (SI), 2014 WL 4100638 (N.D. Cal. Aug. 20, 2014) ..................................... 10

*Woods v. DeAngelo Marine Exhaust, Inc.*,
    692 F.3d 1272 (Fed. Cir. 2012)................................................................................... 14

**Other Authorities**

Court's *Guidelines for Trial and Final Pretrial Conference in Civil Jury Cases
    before the Honorable William Alsup*........................................................................... 5

Fed. R. Civ. P. 26 ...................................................................................... 1, 2, 4, 11, 13, 14

Fed. R. Civ. P. 37 ...................................................................................................... *passim*

Patent L.R. 3-3 .................................................................................................. 2, 3, 4, 5, 8

Patent L.R. 3-4 ....................................................................................................... 2, 4, 5

Patent L.R. 3-8 ............................................................................................................... 14

Patent L.R. 3-9 ........................................................................................................ 14, 17

1

**STATEMENT OF THE RELIEF REQUESTED**

2      Pursuant to Patent Local Rules 3-3 and 3-4 and Federal Rules of Civil Procedure 26 and

3 37, Sonos seeks an order striking the following portions of the following expert reports that

4 include previously undisclosed arguments:

5      1.  Dr. Samrat Bhattacharjee's opening report concerning the invalidity of United States

6          Patents No. 10,779,033 ("the '033 Patent") and No. 9,967,615 ("the '615 Patent").

7          *See* Ex. A[1] ("Bhattacharjee Opening Report"), ¶¶ 218-20, 228, 236, 264, 498-99, 509,

8          514-15, 524, 533, and 545.

9      2.  Dr. Samrat Bhattacharjee's rebuttal report and reply report concerning the

10         noninfringement of the '033 Patent.  *See* Ex. B ("Bhattacharjee Rebuttal Report"), ¶¶

11         82-86, 95, 106-108, 162-63, 187, 189-93, 195-96, 199, 202-10, 213-15, 222-25, 228,

12         235, 239-41, 245-46, and 278-86, 288-89, and 295-98; Ex. C ("Bhattacharjee Reply

13         Report"), ¶¶ 45, 79-81, 120, 123-24, 126, 128, 130, 132, and 138.

14     3.  Dr. Dan Schonfeld's opening report concerning the invalidity of United States Patents

15         No. 10,848,885 ("the '885 Patent") and No. 10,469,966 ("the '966 Patent").  *See* Ex.

16         D ("Schonfeld Opening Report"), pages 548, 557, 565, 572-82, 585, 593, 595-96, 598,

17         602, 605-14, 621-29, and 642-44 (or, as discussed *infra*, pages 219-645).

18     4.  Dr. Dan Schonfeld's rebuttal report and reply report concerning the noninfringement

19         of the '885 Patent and the '966 Patent.  *See* Ex. E ("Schonfeld Rebuttal Report"), ¶¶

20         116-18, 178-81; Ex. F ("Schonfeld Reply Report") ¶¶ 67-68.

21

**MEMORANDUM OF POINTS AND AUTHORITIES**

22  **I.  INTRODUCTION**

23     Google's expert reports contain hallmark examples of trial by ambush.  Despite sixteen

24 months of fact discovery in this case, Google's invalidity and noninfringement expert reports inject

25 new invalidity and noninfringement arguments and prior art references not previously disclosed.

26 Those arguments and evidence should be struck.

27 _____

28 [1] All lettered exhibits cited in this motion are attached to the Declaration of Geoffrey Moss filed
in support of this motion and concurrently herewith.

SONOS'S MOTION TO STRIKE EXPERT
REPORTS
3:20-CV-06754-WHA

1         Patent Local Rule 3-3 obligated Google to both identify (i) every prior art reference upon

2    which it may rely and (ii) "specifically where and how in each alleged item of prior art each

3    limitation of each asserted claim is found."  Separately, Sonos served interrogatories asking Google

4    to describe its non-infringement positions, its noninfringing alternatives, and the bases for these

5    opinions—interrogatories which Google had a responsibility to supplement as its theories shifted,

6    as they apparently did.  But despite these discovery obligations and procedural rules designed to

7    promote disclosure and efficiency, Google waited until serving its expert reports to disclose a broad

8    array of new invalidity and noninfringement theories, thus ensuring that Sonos would have no

9    opportunity to take discovery on the *factual* bases for those expert opinions.

10         For example, Google's expert, Dr. Bhattacharjee, opined in his reports that a previously

11    undisclosed feature of a prior art system invalidates the '033 Patent, and also set forth completely

12    novel *noninfringement* theories with respect to the '033 Patent, including alleged noninfringing

13    alternatives that Google never before identified.  Dr. Schonfeld, another Google expert, included

14    in his report a brand new invalidity theory involving product prior art that was previously not

15    identified in Google's invalidity contentions,[2]  and similarly set forth previously undisclosed

16    noninfringement theories with respect to the '885 and '966 Patents.  Google simply hid the ball

17    until fact discovery had closed, failing to move to amend its invalidity contentions (and show good

18    cause) and failing to disclose these noninfringement theories to Sonos in response to Sonos's

19    interrogatories—even in Google's eleventh-hour responses served in the very last week of fact

20    discovery.  Nor did Google timely supplement to include these theories under Rule 26(e)(1).

21    Allowing Google to hide key arguments and prior art until *after* fact discovery closed would defeat

22    the notice function of the Patent Local Rules and Rule 26.  As detailed below, Sonos respectfully

23    requests that the Court strike these new theories and the corresponding materials referenced in

24    Google's expert reports.

25

26

---

27    [2] Patent Local Rule 3-4 obligated Google to "produce or make available for inspection … [a]

28    copy or sample of the prior art identified pursuant to Patent L.R. 3-3(a) which does not appear in the file history of the patent(s) at issue."

1    **II.     BACKGROUND**

2            Google served its Patent Local Rule 3-3 invalidity contentions on December 6, 2021.

3    Sonos identified several systemic deficiencies with Google's contentions and attempted to work

4    with Google to resolve these issues throughout March 2022, until it became clear that Google did

5    not intend to provide cognizable invalidity theories.  *See, e.g.*, Ex. G (March 3 and March 11,

6    2022 emails).

7            Separately, on August 7, 2021, Sonos served interrogatories asking Google to describe its

8    non-infringement positions and its noninfringing alternatives.  *See* Ex. H at 16 (Interrogatory No.

9    12), 19-20 (Interrogatory No. 18).  But Google waited until the final week of fact discovery—in

10   November 2022—to serve its final supplemental responses to those interrogatories.  Specifically,

11   on November 21, 2022, Google served its eighth supplemental response, responding *inter alia* to

12   Sonos's Interrogatory No. 18 asking Google to describe its noninfringing alternatives.  *See* Ex. I.

13   And on November 29, 2022, Google served its ninth supplemental response, responding to

14   Sonos's Interrogatory No. 12 asking Google to describe its non-infringement positions and the

15   bases therefor.  *See* Ex. J.

16           Only one day later—on November 30, 2022, the last day of fact discovery—Google

17   served the Bhattacharjee and Schonfeld opening expert reports, both addressing invalidity and

18   alleged non-infringing alternatives, *inter alia*.  On January 13, 2023, Google served the

19   Bhattacharjee and Schonfeld rebuttal reports, focusing as relevant here on non-infringement and

20   alleged non-infringing alternatives.  And on January 23, 2023, Google served each expert's reply

21   report.

22           But despite having served eleventh-hour supplemental interrogatory responses in the 9

23   days preceding service of the opening reports, Google's expert reports—as detailed below—

24   innovated once again.  Along with their accompanying expert declarations and cited materials, the

25   reports included multiple new invalidity theories, new prior art references, new noninfringement

26   theories, and new purported noninfringing alternatives that had never been disclosed as required

27   in Google's contentions or as part of fact discovery.

28

1    **III.    LEGAL STANDARD**

2          Federal Rule of Civil Procedure 26(a)(2)(B) requires a witness who is "retained or specially

3    employed to provide expert testimony in the case" to provide a written report containing, among

4    other things, "(i) a complete statement of all opinions the witness will express and the basis and

5    reasons for them," and "(ii) the facts or data considered by the witness in forming them." Fed. R.

6    Civ. P. 26(a)(2)(B).

7          Any information contained in an expert report that is responsive to discovery requests must

8    be disclosed in a timely manner to be used at trial.  Rule 26(e)(1) imposes an obligation on a party

9    "who has responded to an interrogatory" to "supplement or correct its disclosure or response (A)

10   in a timely manner if the party learns that in some material respect the disclosure or response is

11   incomplete or incorrect, and if the additional or corrective information has not otherwise been made

12   known to the other parties during the discovery process or in writing."  Fed. R. Civ. P. 26(e)(1).

13   Rule 37 "forbid[s] the use at trial of any information that is not properly disclosed." *Goodman v.*

14   *Staples The Office Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011).  Rule 37(c)(1) thus requires

15   exclusion unless the offending party carries its burden "to demonstrate that the failure to comply

16   with Rule 26(a) is substantially justified or harmless."  *Torres v. City of Los Angeles*, 548 F.3d

17   1197, 1213 (9th Cir. 2008).  For instance, where an expert fails to provide a theory in the report, a

18   court may "preclud[e] him from testifying on this issue."  *Nationwide Transp. Fin. v. Cass Info.*

19   *Sys., Inc.*, 523 F.3d 1051, 1062 (9th Cir. 2008); *see also Apple, Inc. v. Samsung Elecs. Co.*, No. 11-

20   cv-01846-LHK, 2012 WL 3155574, at *5 (N.D. Cal. Aug. 2, 2012) (striking portions of Samsung's

21   expert reports that included invalidity and non-infringement theories that were not timely provided

22   to Apple in response to contention interrogatories).

23          Information in an expert report that was not disclosed in invalidity contentions may not be

24   used at trial either.  Patent Local Rule 3-3(c) required Google to serve invalidity contentions

25   "identifying specifically where and how in each alleged item of prior art each limitation of each

26   asserted claim is found."  In turn, Patent Local Rule 3-4(b) required Google to "produce or make

27   available for inspection … [a] copy or sample of the prior art identified pursuant to Patent L.R. 3-

28   3(a) which does not appear in the file history of the patent(s) at issue."  These disclosure

- 4 -

1    requirements exist "to further the goal of full and timely discovery and provide all parties with

2    adequate notice and information with which to litigate their cases." *Fresenius Med. Care Holdings,*

3    *Inc. v. Baxter Int'l, Inc.*, No. C03-1431 (SBA), 2006 WL 1329997, at *4 (N.D. Cal. May 15, 2006);

4    *see also O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006)

5    ("The rules ... seek to balance the right to develop new information in discovery with the need for

6    certainty as to the legal theories."). "Any invalidity theories not disclosed pursuant to Local Rule

7    3-3 are barred, accordingly, from presentation at trial (whether through expert opinion testimony

8    or otherwise)." *MediaTek Inc. v. Freescale Semiconductor, Inc.*, No. 11-cv-5341 (YGR), 2014 WL

9    690161, at *1-2 (N.D. Cal. Feb. 21, 2014) (citing *Avago Techs. Gen. IP PTE Ltd. v. Elan*

10   *Microelectronics Corp.*, No. C04-05385 (JW), 2007 WL 2103896 (N.D. Cal. July 20, 2007), *aff'd*,

11   2007 WL 2433386, at *1 (N.D. Cal. Aug. 22, 2007)).  Courts can choose to strike new theories and

12   references under Patent Local Rule 3-3 when a party fails to meet its disclosure obligations, even

13   absent a showing of prejudice caused by nondisclosure.  *Finjan, Inc. v. Sophos, Inc.*, No. 14-cv-

14   01197 (WHO), 2016 WL 2988834, at *9 (N.D. Cal. May 24, 2016); *Largan Precision Co. v. Genius*

15   *Elec. Optical Co.*, No. 13-cv-02502 (JD), 2014 WL 6882275, at *3-5 (N.D. Cal. Dec. 5, 2014).

16   Likewise, material allegedly relevant to a party's prior art that is not produced pursuant to Local

17   Rule 3-4 will be precluded.  *See, e.g.*, *IXYS Corp. v Adv. Power Tech. Inc.*, No. C 02-03942 MHP,

18   2004 WL 1368860, at *2-3 (N.D. Cal. Jun. 16, 2004).

19           Determining the proper scope of an expert's report allows the Court to determine both the

20   record on summary judgment and what testimony a jury will be allowed to hear at trial.  Under this

21   Court's *Guidelines for Trial and Final Pretrial Conference in Civil Jury Cases before the*

22   *Honorable William Alsup*, the Court warns that it "regularly enforces" the procedural rules

23   requiring expert witnesses to limit their direct examination testimony to the scope of their expert

24   reports.  *See Guidelines* ¶ 15.  "[A]t trial, the direct testimony of experts will be limited to the

25   matters disclosed in their reports."  *Id.*  And "[m]aterial in a 'reply' report must ordinarily be

26   presented in a party's rebuttal (or sur-rebuttal) case *after* the other side's expert has appeared and

27   testified."  *Id.*

28

# IV.   ARGUMENT

Google's experts, Dr. Bhattacharjee and Dr. Schonfeld, improperly advance new invalidity theories, new noninfringement theories, and new noninfringing alternative theories that should be stricken from their expert reports for the reasons outlined below.

### A.   Google Improperly Introduced New Invalidity Theories Via Expert Report.

Both of Google's experts, Dr. Bhattacharjee and Dr. Schonfeld, improperly introduced previously undisclosed invalidity theories in their expert reports.

#### 1.   Dr. Bhattacharjee Improperly Introduced A New Anticipation Theory.

In his opening and reply expert reports, Dr. Bhattacharjee improperly asserted for the first time that the ███████████ feature of the Tungsten/Nexus Q system anticipated Claim 1 of the '033 Patent.  Specifically, Dr. Bhattacharjee contends that "[i]n addition to allowing users to play user-created playlists, the prior art Tungsten/Nexus Q was also able to playback playlists that were generated and stored in the cloud, for example album playlists (e.g., AC/DC Back in Black) or *a MagicPlaylist containing a list of recommended songs generated by a server.*"  Ex. A, ¶ 218 (emphasis added).  Dr. Bhattacharjee argues that "[t]he prior art Tungsten/NexusQ also allowed users to request that the cloud servers generate and provide playlist of songs that were related to, for instance, specific tracks or albums, which was called a ███████████ and that ███████████ ███████████████████████████████████████████████████████████████████████████ ███████████" *Id.* ¶ 220.  The ███████████ feature appears to be the entire basis of Dr. Bhattacharjee's argument that "Tungsten/Nexus Q was also able to playback playlists that were generated and stored in the cloud."  *See id.* ¶¶ 218-220; *see also* ¶¶ 228, 236, 264, 498-99, 509, 514-15, 524, 533, 545; Ex. C ¶¶ 45, 120, 123-24, 126, 128, 130, 132, 138.

This theory, and this feature, appear nowhere in Google's invalidity contentions.  While Google did disclose the Tungsten/Nexus Q *system* as alleged prior art in its invalidity contentions, the theory on which Dr. Bhattacharjee is now relying based on the ███████████ feature is brand new.  *Compare* Ex. K ('033 patent, Tungsten claim chart) (nowhere referencing ███████████ feature).  In other words, Google never previously disclosed this theory or provided any notice that it would rely on the ███████████ feature in its invalidity case.  Now, Dr. Bhattacharjee

SONOS'S MOTION TO STRIKE EXPERT
REPORTS
3:20-CV-06754-WHA

1   completely changes Google's theory by pointing to the never-before-identified ██████

2   feature, claiming that it is the "remote playback queue" required by this claim element, which is

3   referred to as "Limitation 1.4."[3]

4          In his reply report, Dr. Bhattacharjee disclosed *yet another* new invalidity theory in arguing

5   that the YouTube Remote System anticipated Claim 1 of the '033 Patent.  Ex. C ¶¶ 79-81; *see* Ex.

6   L ('033 patent, YouTube Remote System claim chart).  Dr. Bhattacharjee newly contends that the

7   YouTube Remote System allowed for *automatic* playback of a "remote playback queue" of

8   Limitation 1.4, which he distinguished from the *manually-driven* playback that Sonos's expert had

9   argued did not evince existence of a "remote playback queue," but rather a "local playback queue."

10  Ex. C ¶ 79 ("Although the "+"icon can be used to add a recommended video to the user's queue,

11  the list of recommended videos can also be played back without adding them to the user's queue.").

12  In contrast, while the YouTube Remote System was disclosed in Google's invalidity contentions

13  as alleged prior art, Google's invalidity contentions identified as the "remote playback queue" of

14  Limitation 1.4 only a purported ██████████████████ from which a user would *manually*

15  select videos to add to the user's local queue, and did not mention any automatic playback of the

16  user's local queue at all:

17  

18

19

20

21

22

23

24

25

26  [3] As set forth in Dr. Bhattacharjee's reports, Limitation 1.4 corresponds to "operating in a first
    mode in which the computing device is configured for playback of a remote playback queue
27  provided by a cloud-based computing system associated with a cloud-based media service."
    Google referred to this limitation as Limitation 1a in its contentions.  *See* Ex. L ('033 patent,
28  YouTube Remote System claim chart).

SONOS'S MOTION TO STRIKE EXPERT
REPORTS
3:20-CV-06754-WHA

1

2    Ex. L at 5-6 (annotated).  While Google's contentions had no description for the above image, Dr.

3    Bhattacharjee newly annotated that image in his reply report, contending that the image "shows the

4    YouTube Remote prior art playing back a list of videos provided by the YouTube cloud servers in

5    the 'Search' workspace—in other words, without using the '+' icon to add the videos to the user's

6    queue."  Ex. C ¶ 79.  This theory is not present in Google's invalidity contentions and has never

7    been previously disclosed.

8            Google's experts are barred from raising invalidity arguments and prior art that were not

9    previously disclosed in its invalidity contentions, even if such arguments are based on the same

10   reference(s) that Google identified in its contentions.  *MediaTek*, 2014 WL 690161, at *1-2.  Courts

11   are clear that alleged infringers cannot introduce new teachings of a previously disclosed reference

12   to create new invalidity theories.  *See Largan*, 2014 WL 6882275, at *5-6.  Instead, the invalidity

13   contentions must disclose the "specific [teaching of the prior art] with respect to this specific

14   claim," as well as the infringer's "theory for why the reference discloses this element."  *Id.*  For

15   example, the court in *Largan* struck, under Patent Local Rule 3-3, all portions of the defendant's

16   expert report that used new teachings of a reference to satisfy any claim element.  *Id.*  Similar to

17   the defendant in *Largan*, Google is attempting to use *different* teachings from the Tungsten/Nexus

18   Q system and Youtube Remote System to fill gaps in its invalidity contentions with respect to the

19   '033 patent.  *Id.*  By not even attempting to amend its invalidity contentions to disclose these new

20   theories, Google attempts to completely side-step the "good cause" requirement necessary for any

21   such amendment.  The good cause requirement is particularly problematic for Google for these new

22   theories because they relate to *Google's own* alleged prior art.  Google did not present the ▮▮▮▮

23   ▮▮▮▮▮ feature of the Tungsten System and the alleged automation of the user queue of the

24   Youtube Remote System in its invalidity contentions, and it should not be permitted to do so now.

25   On this basis, the Court should strike paragraphs 218-220, 228, 236, 264, 498-99, 509, 514-15, 524,

26   533, and 545 of Dr. Bhattacharjee's opening report and paragraphs 45, 79-81, 120, 123-24, 126,

27   128, 130, 132, and 138 of Dr. Bhattacharjee's reply report.

28

SONOS'S MOTION TO STRIKE EXPERT
REPORTS
3:20-CV-06754-WHA

2.      **Dr. Schonfeld's Previously Undisclosed Prior Art References Must Be Stricken**

Dr. Schonfeld utilizes, as a primary reference, the Bose Lifestyle 50 System, which he calls the "Bose Lifestyle" system.  However, in addition to relying on the Bose Lifestyle 50 System itself, Dr. Schonfeld also relies on a number of other ***different*** Bose products including the "Bose Link communication protocol" and the "Lifestyle SA-2 and SA-3 Stereo Amplifiers."  *See* Ex. D (Dr. Schonfeld Opening Expert Report)[4] at pp. 548, 557, 565, 572-82, 585, 593, 595, 596, 598, 602, 605-614, 621-629, 642-644; Ex. F (Dr. Schonfeld Reply Expert Report) ¶¶ 67-68.  But these Bose *products* were never disclosed in Google's invalidity contentions.  *Compare* Exs. M, N (nowhere mentioning "Bose Link communication protocol" or "Lifestyle SA-2 and SA-3 Stereo Amplifiers").  Indeed, Dr. Schonfeld's primary reference—the Bose Lifestyle 50 System—does not include those products.  *See, e.g.*, Ex. M at 72; Ex. O at 7 (BOSE_SUB-0000001) (identifying devices and components of system, but not identifying Bose Link communication protocol, or Lifestyle SA-2 and SA-3 Stereo Amplifiers).    Similarly, the documents, *see* Exs. P, Q (BOSE_SUB-0000450, BOSE_SUB-0000594-601), that Dr. Schonfeld relies on to show that the "Bose Link communication protocol" and the "Lifestyle SA-2 and SA-3 Stereo Amplifiers" are products in his purported "Bose Lifestyle" system do not mention that these products were part of the previously disclosed Bose Lifestyle 50 System at all.[5]   The Owner's Guide for the Bose Lifestyle 50 System doesn't mention these previously undisclosed products at all either.  *See* Ex. O at 7 (BOSE_SUB-0000001).

In fact, it would be impossible for Dr. Schonfeld show that the "Bose Link communication protocol" and the "Lifestyle SA-2 and SA-3 Stereo Amplifiers" were part of the previously disclosed Bose Lifestyle 50 system.  The Bose Lifestyle 50 system was likely discontinued before the Lifestyle SA-2 and SA-3 Stereo Amplifiers were even released, given that the earliest dated

---

[4] Because Dr. Schonfeld's opening report uses inconsistent paragraph numbering, we cite to the page rather than the paragraph.
[5] This document does mention "Lifestyle," but that is a term Bose has used for years in naming various devices and systems.  *See, e.g.*, Ex. T ¶ 374.

SONOS'S MOTION TO STRIKE EXPERT
REPORTS
3:20-CV-06754-WHA

Owner's Guide for the Lifestyle SA-2 and SA-3 Stereo Amplifiers, *see* Ex. R (BOSE_SUB-0000361-448), is 2004, and the Bose Lifestyle 50 system was discontinued in 2003.  See Ex. S ((https://www.bose.com/en_us/support/products/bose_home_theater_support/bose_5_speaker_home_theater_support/ls50.html); *see also* Ex. T, Almeroth Rebuttal Report ¶¶ 334-389 (explaining why the Bose Link communication protocol, or Lifestyle SA-2 and SA-3 Stereo Amplifiers do not appear to even be compatible with the Bose Lifestyle 50 System).  At bottom, there is little discernable connection between the previously disclosed Bose Lifestyle 50 System, and the newly disclosed communication protocol and amplifiers (other than a common manufacturer).

A party cannot rely on a prior art reference that it did not disclose in its invalidity contentions.  *ASUS Computer Int'l v. Round Rock Research, LLC*, No. 12-cv-02099 JST, 2014 WL 1463609, at *8-9 (N.D. Cal. Apr. 11, 2014); *Largan*, 2014 WL 6882275, at *6.  While new references may be used by an expert as general background material, such references cannot be relied on "as prior art that allegedly renders the asserted claims of the … patent[] obvious." *Verinata Health, Inc. v. Sequenom, Inc.*, No. C12-00865 (SI), 2014 WL 4100638, at *5 (N.D. Cal. Aug. 20, 2014); *Largan*, 2014 WL 6882275, at *6 (finding that a reference is not general background if it is used "in support of a particular claim element being anticipated or obvious").

Google had an obligation to disclose all of the products it intended to rely on in its invalidity contentions rather than allow Dr. Schonfeld to use the "Bose Lifestyle" brand name to create a previously undisclosed "Bose Lifestyle" system with previously undisclosed products. *Largan*, 2014 WL 6882275 at *4 ("Our Local Rules are designed precisely to eliminate the gamesmanship of hints in favor of open disclosure.").  Because these products were not and cannot be part of the Bose Lifestyle 50 system presented in Google's invalidity contentions, the Court should strike all of Google's "Bose Lifestyle" system arguments related to the "Bose Link communication protocol" and the "Lifestyle SA-2 and SA-3 Stereo Amplifiers."  For all of these reasons, the Court should strike pages 548, 557, 565, 572-82, 585, 593, 595-96, 598, 602, 605-614, 621-29, and 642-44 of Dr. Schonfeld's opening report and paragraphs 67-68 of Dr.

1    Schonfeld's reply report.[6]

2         **B.    Google Improperly Introduced New Noninfringement Theories Via Expert**
               **Report.**
3

4         Google was obligated to inform Sonos of Google's noninfringement positions prior to the

5    close of fact discovery in its responses to Sonos's contention interrogatories.  Google's disclosure

6    of new noninfringement theories in its expert reports does not constitute proper supplementation

7    under Rule 26(e)(1).  *See Asia Vital Components Co. v. Asetek Danmark A/S*, 377 F. Supp. 3d

8    990, 1003 (N.D. Cal. 2019) ("A rule that an accused infringer may wait until its expert rebuttal

9    report to set forth theories of non-infringement for the first time would forfeit the benefits of

10   contention interrogatories."); *Apple*, 2012 WL 3155574, at *5 (amendment of contention

11   interrogatories after the close of fact discovery but before the close of expert discovery

12   nevertheless violated Rule 26(e)(1) because it deprived Apple "the opportunity to conduct

13   additional fact discovery regarding Samsung's new theories").  Accordingly, under Rule 37(c)(1),

14   the portions of Google's expert reports containing newly disclosed noninfringement theories must

15   be stricken.

16        **1.    Dr. Bhattacharjee's Previously Undisclosed Noninfringement Theories**
               **Must Be Stricken**
17

18        Dr. Bhattacharjee's rebuttal report improperly introduces *five* new noninfringement

19   theories that were not disclosed during fact discovery.  They should be stricken.

20        First, Dr. Bhattacharjee contends for the first time that limitation 1.7 of the '033 Patent is

21   not infringed because ████████████████████████████████████████████

22   ████████████████████████████████████████████.  *See* Ex. B ¶¶ 82-86,

23   213-15, 245-46.  During discovery, Sonos asked Google for its noninfringement theories and the

24   bases therefor.  But Google's responses—even those served on November 29, 2022—never

25

26   _____

27   [6] Separately, unless the Court on reconsideration reverses its grant of summary judgment of
     validity of the '885 Patent, *see* Dkt. 382, the Court should strike Dr. Schonfeld's over 400 pages
     of report concerning "invalidity of the '885 Patent."  *See* Ex. D (Schonfeld opening) at ii-vi (table
28   of contents showing '885 invalidity section from pages 219-645 of the report).

SONOS'S MOTION TO STRIKE EXPERT
REPORTS
3:20-CV-06754-WHA

1  disclosed this theory.  *See generally* Ex. J (Google's Ninth Suppl. Rog Responses).

2        Second, Dr. Bhattacharjee contends for the first time that limitation 1.7 of the '033 Patent

3  is not infringed because a videoID ██████████████████████████████████████

4  ████████████████████████████████████████████████████ a videoId

5  and ████████████████████████████████████████████.

6  *See* Ex. B ¶¶ 106-108, 222-225, 296-297.  Once again, Google's responses never disclosed this

7  theory.  *See generally* Ex. J (Google's Ninth Suppl. Rog Responses).

8        Third, Dr. Bhattacharjee contends for the first time that limitations 1.4 and 1.7 of the '033

9  Patent are not infringed because ████████████████████████████████████

10 ████████████████████████████████████████████████████

11 ███████████████████   *See* Ex. B ¶¶ 162-63, 202-203.  Relatedly, Dr.

12 Bhattacharjee further argues ████████████████████████████████████████

13 ██████████████████████████████.  *See* Ex. B ¶¶ 199, 203-210.  Once

14 again, Google's responses never disclosed these theories.  *See generally* Ex. J (Google's Ninth

15 Suppl. Rog Responses); *see also, e.g.*, *id.* at 30-31 (discussing ███████████  in connection with

16 related '615 Patent but making no mention of this theory).[7]

17        Fourth, Dr. Bhattacharjee contends for the first time that a Google Hub device is not a

18 "computing device" as claimed by claim 1 of the '033 Patent.  *See* Ex. B ¶¶ 187, 189-93, 228,

19 235.  Once again, Google's responses never disclosed this theory.  *See generally* Ex. J (Google's

20 Ninth Suppl. Rog Responses).

21        Fifth, Dr. Bhattacharjee contends for the first time that a Hub device running YT Main

22 app does not satisfy limitations 1.5-1.6 of the '033 Patent because it pauses playback when the

23 Cast icon is selected.  *See* Ex. B ¶¶ 95, 195-96, 239-41.  Once again, Google's responses never

24 disclosed this theory.  *See generally* Ex. J (Google's Ninth Suppl. Rog Responses).

25        By disclosing these theories for the first time in expert reports, Google effectively locked

26

27  ───────────────────

[7] To the extent that the Court does not strike this, and Google's other undisclosed theories, Sonos
28  intends to move to amend its infringement contentions to set forth doctrine of equivalents
    positions.

SONOS'S MOTION TO STRIKE EXPERT
REPORTS
3:20-CV-06754-WHA

1    Sonos's experts into the factual record as of the time fact discovery closed, preventing them from

2    "test[ing] the factual basis for the newly amended contentions by conducting additional

3    discovery."  *Apple*, 2012 WL 3155574, at *5; *see also Heidelberg Harris, Inc. v. Mitsubishi*

4    *Heavy Indus., Ltd*, No. 95 C 0673, 1996 WL 680243, at *8 (N.D. Ill. Nov. 21, 1996) ("[i]f a party

5    is allowed to withhold the supplementation of its discovery responses until after fact discovery is

6    closed, the purpose of the Rule is effectively frustrated because the opposing party is denied the

7    opportunity to conduct discovery on the supplemented responses").  Rule 26 was "designed to

8    require parties to crystallize their theories of the case early in the litigation and to adhere to those

9    theories once they have been disclosed"—not defer the disclosure of those theories.  *MLC Intell.*

10   *Prop., LLC v. Micron Tech., Inc.*, No. 14-cv-03657-SI, 2018 WL 6046465, at *2 (N.D. Cal. Nov.

11   19, 2018) (quoting *O2 Micro*, 467 F.3d at 1366 n.12).

12        Google had an obligation to supplement its responses to Sonos's contention

13   interrogatories.  This would have provided Sonos the means by which to test these theories during

14   fact discovery.  Google failed to do so.  Accordingly, the Court should strike paragraphs 82-86,

15   95, 106-108, 162-63, 187, 189-93, 195-96, 199, 202-210, 213-15, 222-25, 228, 235, 239-41, 245-

16   46, and 296-297 of Dr. Bhattacharjee's rebuttal report.

17              **2.    Dr. Schonfeld's Previously Undisclosed Noninfringement Theories**
                       **Must Be Stricken**
18

19        In his rebuttal report, Dr. Schonfeld argued for the first time that the Accused Google

20   Controllers do not "cause storage" of zone scenes and therefore do not infringe asserted

21   *independent claims 1 and 9* of the '966 patent.  *See* Ex. E ¶¶ 116-118.  Google never

22   substantively disclosed this theory, not even in its supplemental interrogatory responses sent in

23   the final hours of fact discovery.  *See* Ex. J at 63.  Indeed, in those responses, Google only argues

24   lack of storage with respect to dependent claim 3, from which asserted claim 4 depends—citing

25   no claim language from claims 1 or 9.  *See id.*  While Google's *initial* response, *see id.* at 9-21,

26   identifies dozens of claim limitations that Google believed were not met—including the relevant

27   limitations of claims 1 and 9—the response does so without any indication of the *basis* for

28   Google's noninfringement position, or any indication of what is missing from those elements.

SONOS'S MOTION TO STRIKE EXPERT
REPORTS
3:20-cv-06754-WHA

The first time that Google provided *any* specific noninfringement argument regarding "causing storage" came on November 29, 2022, and was limited to claim language from dependent claim *3. See id.* at 63-64.

Rule 37(c)(1) provides that a party's failure to supplement answers to interrogatories in a timely fashion is grounds for exclusion of the undisclosed information. The "district court has discretion, when circumstances warrant, to exclude evidence not produced in compliance with a proper discovery request." *Woods v. DeAngelo Marine Exhaust, Inc.*, 692 F.3d 1272, 1279 (Fed. Cir. 2012) (affirming the district court's grant of a motion to strike prior art drawings that were not disclosed in response to interrogatory and not adequately supplemented). Sonos's contention interrogatory seeking noninfringement theories specifically asked Google to "set forth … the complete legal and factual basis for any assertion by Google that the Accused Instrumentalities have not infringed each such claim" on a claim-by-claim and element-by-element basis. *See* Ex. J at 7. Because Google failed to disclose this theory at any point during fact discovery, Sonos was prevented from seeking any discovery on the alleged factual bases for this new position. Here, Google's failure to disclose its noninfringement position with respect to two *independent* claims that do not, by definition, depend on dependent claim 3, is grounds for exclusion of this theory under Rule 37.

Accordingly, the Court should strike paragraphs 116-118 of Dr. Schonfeld's rebuttal report.

**C.    Google Improperly Introduced New Noninfringing Alternatives Via Expert Report.**

Google was also obligated to inform Sonos of Google's noninfringing alternatives prior to the close of fact discovery in its responses to Sonos's interrogatory requesting that information and in its response under Patent L.R. 3-9 to Sonos's damages contentions pursuant to Patent L.R. 3-8. Google's disclosure of new noninfringing alternatives in its expert reports does not constitute proper supplementation under Rule 26(e)(1) or this District's Patent Local Rules, and, under Rule 37(c)(1), the portions of Google's expert reports containing those newly disclosed noninfringing alternative theories must be stricken. *See Apple*, 2012 WL 3155574, at *5.

1

**1.    Dr. Bhattacharjee's Previously Undisclosed Noninfringement Alternatives Must Be Stricken**

2

3    In his rebuttal report, Dr. Bhattacharjee contended that a non-infringing alternative existed

4    at the time of infringement, consisting of ███████████████████████████████

5    getWatchNext ██████████████████████████████████████████████████████████████

6    ████████████████   *See* Ex. B ¶¶ 288-89, 295-98.  But Dr. Bhattacharjee's articulation of this

7    alleged NIA differs significantly from his explanation in his patent showdown report, which

8    Google's interrogatory response has made clear is controlling.  *See* Ex. I at 13-14 ("██████████

9    ████████████████ are discussed in further detail in the opening and rebuttal [showdown] reports of

10    Dr. Bhattacharjee, which are incorporated herein by reference.").[8]  *Cf.* Ex. U (Dr. Bhattacharjee

11    Opening Showdown Report), ¶¶ 586-92 (describing original theory); Ex. V (Rebuttal Showdown

12    Report), ¶¶ 361-64.  For example, in his January 2023 rebuttal report, Dr. Bhattarcharjee says that

13    a *single* request containing a "playlistId" ████████████████ would result in the Receiver

14    obtaining *all* media items in a playlist and corresponding WatchNextResponses (WNRs) at once,

15    Ex. B ¶ 298.  But that's completely inconsistent with Google's theory disclosed during discovery

16    that involved a Receiver sending, *item-by-item* for each media item in a playlist, a request

17    containing a given "videoId" and a "playlistId" to the Onesie agent and obtaining the *single*

18    media item and a WNR with a next videoId.  *See* Ex. U (Opening Showdown Report) ¶ 592; Ex.

19    V (Rebuttal Showdown Report), ¶¶ 361-64; *see also generally* Ex. W ¶¶ 259-77 (delineating

20    Google's shifting theory with respect to this alleged NIA); *see also* Ex. X (Supp. Responsive

21    Damages Contentions) at 36-38 (failing to disclose "single request" theory).

22    Separately, Google asserted in its interrogatory response that what it labels as NIA #4 —

23    "continuing playback at the control device after playback has been transferred to the playback

24    device"—involves continuing playback "with only the video alone (and the audio muted)" and "a

25    'set and forget' operation [that] could turn the receiver into a playback device without direct

26

27    ──────────────
[8] At the time this interrogatory response was served, "the opening and rebuttal reports of Dr.
Bhattacharjee" could only have referred to patent showdown reports, served earlier in 2022,
because the instant, non-showdown opening and rebuttal reports had not yet been served.

28

SONOS'S MOTION TO STRIKE EXPERT
REPORTS
3:20-CV-06754-WHA

1    control from the *YT app* on the phone or tablet."   *See* Ex. I at 14.  However, in his rebuttal report,

2    Dr. Bhattacharjee stated that what he labels "Alternative #3"—which appears to correspond to

3    Google's NIA #4—would itself contain *three additional* alternatives to infringement:  namely

4    that, (i) this alternative would apply to "*all* of the YouTube applications," including the YouTube

5    Music, such that "music-only playback of the remote playback queue would be non-infringing

6    (even where the audio was muted)," (ii) "the alterative could be implemented so that all of the

7    YouTube applications default to *pausing* playback of the media (whether audio or video) on the

8    computing device upon transfer," (iii) "this non-infringing alternative could also be implemented

9    so that the video *and* audio would continue to playback on the mobile device after transferring

10   playback, giving the user the option to continue the playback on the mobile device or pause it at a

11   later time."   *See* Ex. B ¶ 280 (emphases added).  Google did not disclose any of *those* alternatives

12   previously.  *Cf.* Ex. A ¶ 764, Ex. I at 14.

13          These portions of Google's expert reports discussing noninfringing alternatives that

14   Google failed to disclose in response to Sonos's interrogatories should be stricken.  Google's

15   failure to timely disclose this information about noninfringing alternatives prevented Sonos from

16   conducting fact discovery on these alleged NIAs and hampered Sonos's ability to address them in

17   Sonos's opening expert report.  Rule 37 requires their "automatic and mandatory" exclusion.  *See*

18   *Droplets, Inc. v. Yahoo! Inc.*, No. 12-cv-03733-JST, 2021 WL 9038509, at *9 (N.D. Cal. Apr. 27,

19   2021) (striking expert's opinions regarding non-infringing alternatives where defendant's

20   disclosed noninfringing alternatives lacked particular claim limitations and plaintiff was deprived

21   of the opportunity to meaningfully respond); *see also Godo Kaisha IP Bridge 1 v. Broadcom Ltd.*,

22   No. 16-cv-134-JRG, 2017 WL 2869344, at *2-3 (E.D. Tex. April 19, 2017) ("IP Bridge")

23   (striking expert's opinions regarding non-infringing alternatives that were not previously

24   disclosed in response to interrogatories and disclosed for the first time in an expert report).

25          Accordingly, the Court should strike paragraphs 278-86, 288-89, and 295-98 of Dr.

26   Bhattacharjee's rebuttal report.

27

28

1

2
## 2. Dr. Schonfeld's Previously Undisclosed Noninfringement Alternative Must Be Stricken

3          In his rebuttal report, Dr. Schonfeld for the first time identified a new alleged

4   noninfringing alternative, called "No Identification of Groups as Zone Scenes." *See* Ex. E

5   ¶¶ 178-81.  As Dr. Schonfeld acknowledges, he did not disclose this alleged NIA in his opening

6   report. *See id.* ¶ 178.  But that's just the tip of the iceberg.  Google never disclosed this alleged

7   NIA in the course of fact discovery—not even in its supplemental responses served in the final

8   days of fact discovery or its responsive damages contentions under Patent L.R. 3-9 that Google

9   supplemented mere hours before fact discovery closed. *See, e.g.*, Ex. I at 6-7 (requesting the

10  details of any actual or potential alleged NIA), 8-12 (identifying three different alleged NIAs, but

11  making no mention of "No Identification of Groups as Zone Scenes"); *see also* Ex. X (Supp.

12  Responsive Damages Contentions), at 36-38 (failing to disclose theory).

13         According to Dr. Schonfeld, the new alleged NIA would require only "minor changes" to

14  Google's "grouping feature to avoid meeting the 'zone scene' element." Ex. E ¶ 178.  But Dr.

15  Schonfeld offers no explanation as why such an allegedly minimal NIA, involving only "minor

16  changes," could not have been disclosed during fact discovery.  Moreover, as Google's expert

17  witness, Dr. Schonfeld had all the information necessary to assess Google's own accused

18  products and alleged non-infringing alternatives months before his submission of his rebuttal

19  report. *See Droplets, Inc.*, 2021 WL 9038509, at *9 (striking noninfringing alternatives from

20  expert report where defendant's expert generated his opinions long before the expert report was

21  due but those opinions were not disclosed in response to plaintiff's interrogatories).  This alleged

22  noninfringing alternative should have been disclosed in response to Sonos's interrogatory, and

23  Google's failure to disclose warrants striking the portions of Google's expert report discussing it

24  from these reports under Rule 37.

25         Accordingly, the Court should strike paragraphs 178-181 of Dr. Schonfeld's rebuttal

26  report.

27                                              ***

28         For all of the foregoing reasons, Google's disclosure of new theories for the first time

1    during expert discovery was neither justified nor harmless.  Google hampered Sonos's ability to

2    address Google's new theories in Sonos's opening expert reports in the same level of detail with

3    which Sonos addressed Google's disclosed theories.  And Google prevented Sonos from taking

4    the fact discovery that it would have taken—and which it did indeed take, as to Google's

5    *disclosed* theories—prejudice that cannot be cured as this case heads rapidly towards a trial date

6    that will not, and should not, be moved.  The Court should strike the portions of Google's expert

7    reports containing these undisclosed theories.

8    **V.    <u>CONCLUSION</u>**

9            Accordingly, Sonos respectfully requests that this Court strike (1) paragraphs 218-220,

10   228, 236, 264, 498-99, 509, 514-15, 524, 533, and 545 from Dr. Bhattacharjee's Opening Report,

11   (2) paragraphs 82-86, 95, 106-108, 162-63, 187, 189-93, 195-96, 199, 202-10, 213-15, 222-25,

12   228, 235, 239-41, 245-46, and 278-86, 288-89, and 295-98 from Dr. Bhattacharjee's Rebuttal

13   Report, (3) paragraphs 45, 79-81, 120, 123-24, 126, 128, 130, 132, and 138 from Dr.

14   Bhattacharjee's Reply Report, (4) pages[9] 548, 557, 565, 572-82, 585, 593, 595-96, 598, 602, 605-

15   14, 621-29, and 642-44 from Dr. Schonfeld's Opening Report (or, as discussed *supra* note 6,

16   pages 219-645), (5) paragraphs 116-18, 178-81 from Dr. Schonfeld's Rebuttal Report, and (6)

17   paragraphs 67-68 from Dr. Schonfeld's Reply Report.

18

19   Dated: January 27, 2023

                                             By:  */s/ Clement S. Roberts*
20                                                 _____

                                                   CLEMENT SETH ROBERTS
21                                                 BAS DE BLANK
                                                   ALYSSA CARIDIS
22
                                                   ORRICK, HERRINGTON & SUTCLIFFE LLP
23
                                                   SEAN M. SULLIVAN
24                                                 COLE B. RICHTER

25                                                 LEE SULLIVAN SHEA & SMITH LLP

26                                                 *Attorneys for Sonos, Inc.*

27   _____

28   [9] *See supra*, note 4.

SONOS'S MOTION TO STRIKE EXPERT
REPORTS
3:20-CV-06754-WHA