***PUBLIC REDACTED VERSION***

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOOGLE LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>SONOS, INC.,<br><br>    Defendant. | Case No. 20-cv-06754-WHA (DMR)<br><br>**ORDER ON JOINT DISCOVERY LETTERS**<br><br>Re: Dkt. No. 378, 420 |

The parties filed a joint discovery letter in which Defendant Sonos, Inc. ("Sonos") moves to compel Plaintiff Google LLC ("Google") to (1) designate a Rule 30(b)(6) witness to testify about aspects of the technical operation of Google's accused products, and (2) respond to an interrogatory. [Docket No. 377.] This matter is suitable for resolution without a hearing. Civ. L.R. 7-1(b). For the following reasons, the motion is granted in part and denied in part.

**I.     BACKGROUND**

Google seeks declaratory judgment of non-infringement and invalidity of four patents owned by Sonos: United States Patent Nos. 9,967,615; 10,779,033; 10,469,966; and 10,848,885. [Docket No. 125 (Second Am. Compl., "SAC") ¶ 1.] The technology relates to wireless multi-room audio systems. The '615 patent is titled "Networked Music Playback." The '033 patent is titled "Systems and Methods for Networked Music Playback." The '966 and '885 patents are both titled "Zone Scene Management." SAC Exs. 7-10.[1]

Fact discovery closed on November 30, 2022. Dispositive motions are due by February 6, 2023 and trial is scheduled to begin on May 8, 2023.

The parties filed a joint discovery letter in which Sonos moves to compel Google to

---

[1] In a related case, No. 1-cv-07559 WHA, *Sonos, Inc. v. Google LLC*, Sonos asserts claims for infringement of four other patents against Google. [*See* Docket No. 211.]

designate a witness or witnesses to testify on certain parts of Topic No. 1 in its Rule 30(b)(6) notice, and to provide further responses to Interrogatory Nos. 14 and 15. [Docket No. 378 (Jt. Letter). The parties later notified the court that they had resolved their disputes as to Interrogatory No. 15 and Topic 1(iii)(a)-(c) ("stream transfer" accused functionality). [Docket Nos. 394, 413.]

The outstanding disputes are:

1. Whether the subtopics under Sonos's Rule 30(b)(6) Topic No. 1 amount to multiple separate subject matters in excess of the number allowed by the Honorable William H. Alsup's Supplemental Order to Order Setting Initial Case Management Conference in Civil Cases (dispute one);

2. Whether Google must provide an additional designee on Topic 1(i) (dispute two);

3. Whether Google must provide an additional designee on Topic No. 1(v)(a)-(d), (vi)(a)-(d), (vii)(a)-(d) ("controller device" topic) (dispute three);

4. Whether Google must provide an additional designee on Topic No. 1(vi)(b)/(d), (vii)(b)/(d) ("cast-enabled player" topic) (dispute four); and

5. Whether Sonos is entitled to a supplemental response to its Interrogatory No. 14 (dispute five).

The court ordered the parties to file a supplemental joint letter addressing disputes three and four, along with relevant portions of a deposition transcript. The parties timely filed the supplemental joint letter and transcript. [Docket Nos. 414, 420 (Supp. Jt. Letter).] The court also ordered Google to identify docket cites for its claim that "Google has been found not to infringe Google Play Music." [Docket No. 472.] Google cited 1) the court's August 2, 2022 Order granting Google's motion for partial summary judgment as to the '615 patent; and 2) Sonos's November 2022 infringement chart for the '033 patent, which accuses various YouTube apps of infringing the '033 patent but does not include Google Play Music (Docket No. 406-2 at 1). [Docket No. 476.]

## II. DISCOVERY DISPUTE

### A. Sonos's Rule 30(b)(6) Deposition Notice

Sonos's Rule 30(b)(6) Topic No. 1 is "[t]he design and operation of the Accused

2

Functionalities." The 30(b)(6) notice defines four "Accused Functionalities" (discussed below where relevant) and Topic No. 1 contains the following seven subtopics:

> (i) the design and operation of the aforementioned "speaker group" Accused Functionality and source code that facilitates the same;
>
> (ii) the design and operation of the aforementioned "Casting" Accused Functionality relating to, and source code that facilitates the same for, each of: (a) the YouTube app, (b) the YouTube Kids app, (c) the YouTube Music app, (d) the YouTube TV app, (e) the Google Play Music app, (f) the Google Podcasts app, and (g) the Spotify app;
>
> (iii) the design and operation of the aforementioned "Stream Transfer" Accused Functionality relating to, and source code that facilitates the same for, each of: (a) the YouTube app, (b) the YouTube Music app, (c) the Google Play Music app, (d) the Google Podcasts app, and (e) the Spotify app;
>
> (iv) the design and operation of a Cast-Enabled Media Player receiving and playing a sequence of media items (e.g., songs, videos, podcast episodes, etc.), individually and collectively with one or more other Cast-Enabled Media Players, in connection with, and source code that facilitates the same for, each of: (a) the YouTube media service, (b) the YouTube Kids media service, (c) the YouTube Music media service, (d) the YouTube TV media service, (e) the Google Play Music media service, (f) the Google Podcasts media service, and (g) the Spotify media service;
>
> (v) the design and operation of a computer device, such as a Pixel device, receiving and playing a sequence of media items (e.g., songs, videos, podcast episodes, etc.) in connection with, and source code that facilitates the same for, each of: (a) the YouTube media service, (b) the YouTube Kids media service, (c) the YouTube Music media service, (d) the YouTube TV media service, (e) the Google Play Music media service, (f) the Google Podcasts media service, and (g) the Spotify media service;
>
> (vi) the design and operation of the aforementioned "Up Next" Accused Functionality relating to, and source code that facilitates the same for, each of: (a) the YouTube app, (b) the YouTube Kids app, (c) the YouTube Music app, (d) the YouTube TV app, (e) the Google Play Music app, and (f) the Google Podcasts app; and
>
> (vii) the design and operation of the aforementioned "Autoplay" Accused Functionality relating to, and source code that facilitates the same for, each of: (a) the YouTube app, (b) the YouTube Kids app, (c) the YouTube Music app, (d) the YouTube TV app, (e) the Google Play Music app, and (f) the Google Podcasts app.

Sonos argues that Google failed to designate a witness for some portions of Topic No. 1. It also contends that Google produced a witness who was not competent to testify on certain topics. In addition to responding to these arguments, Google asserts that Topic No. 1 contains excessive

subtopics that amount to separate subject matters in violation of Judge Alsup's order. The court addresses this argument first before turning to the remaining disputes.

### 1. Dispute One: Whether Topic No. 1 Subtopics Violate Limits Set By Judge Alsup

Google objects that Sonos seeks to compel testimony on Topic No. 1 for at least 20 different subject matters in violation of the court's order. Jt. Letter 3. Pursuant to Judge Alsup's Supplemental Order to Order Setting Initial Case Management Conference in Civil Cases, parties may seek Rule 30(b)(6) depositions "on up to a total of ten subject matters (for the entire case) described with 'reasonable particularity'" absent a prior order. Supplemental Order ¶ 32(a). Google argues that Sonos's motion is an "attempted end run around the Court's rule" and that it has already designated four separate witnesses to testify "on the relevant subject matter of Topic No. 1 (and its many sub-topics)." Google asks the court to preclude Sonos from asking for additional testimony "on even more subtopics." Jt. Letter 3.

In response, Sonos disputes that the Topic No. 1 subparts amount to 20 separate subject matters because Topic No. 1 covers "the functionality of the accused products." Sonos argues that it used the subtopics to "articulate and distinguish within the topic certain discrete functional aspects to aid Google in designating witnesses" and to comply with the requirement that topics be described with "reasonable particularity." *Id*. at 2. Sonos also contends that Google has waived this argument because it referred to Topic No. 1 as a single subject in the parties' meet and confer process and designated witnesses to testify on each of the subparts without raising this concern. *Id*. at 2-3, n.6.

Google does not flesh out its objection in any detail or cite any supporting authority. It also fails to respond to Sonos's contention that it waived this objection by previously designating witnesses in response to the Topic No. 1 subparts. The court finds that Google has waived any objection based on the existence of subtopics. In any event, the subparts fall under the subject matter of Topic No. 1, namely, the design and operation of the accused functionalities, and help to define the scope of that subject matter with reasonable particularity.

4

### 2. Dispute Two: Topic No. 1(i)

Topic No. 1(i) is "the design and operation of the . . . 'speaker group' Accused Functionality and source code that facilitates the same." The notice defines the relevant functionality as "[a]ny and all functionalities that facilitate creating a 'speaker group' using the Google Home app and playing media (e.g., music) from the speaker group, where the term 'speaker group' has the meaning used by Google."

Sonos raises three issues with Google's production of a witness to testify on this subject. First, it argues that this topic seeks testimony on two separate points: 1) creating a "speaker group" using the Google Home app and 2) playing media from the speaker group from the Google Home app "as well as other accused apps." Jt. Letter 1. According to Sonos, Google improperly limited this topic to the Google Home app, and witness Justin Pedro did not testify on the issue of "playing music from speaker groups *via other apps*." *Id*. (emphasis added). Sonos argues that the functionality of other accused mobile apps is articulated in its infringement contentions for the '966 patent.

In response, Google contends that the topic and definition of the relevant functionality only identifies the Google Home app. It argues that Pedro was prepared to, and did testify, about the topic as written. Jt. Letter 3-4, n.9.

Google has the better argument. Sonos asserts Topic No. 1(i) includes "playing media from the speaker group from the Google Home app *as well as other accused apps*." Jt. Letter 1 (emphasis added). Not so. The topic identifies the "'speaker group' Accused Functionality"; the corresponding definition of that functionality includes only the Google Home app.[2] Sonos may not re-write the topic and its corresponding definition. This portion of the motion to compel is denied.

Second, Sonos contends that during Pedro's deposition, "Google withdrew the Google Home app designation as to playing media from a speaker group and repeatedly objected to questions regarding such Google Home app functionality." Jt. Letter 1. Sonos complains that

---

[2] Notably, subsection (i) of Topic No. 1 is different from subsections (ii) through (vii) which cite multiple apps, not just the Google Home app.

Pedro was not prepared "on this aspect." Jt. Letter 1. Google denies that it "withdrew the Google Home app designation as to playing media from a speaker group" and contends that Pedro testified for over five hours regarding the functionality of the Google Home app, including playing media using a speaker group. Google argues that Pedro was prepared to give complete, knowledgeable, and binding answers on the subject matter for which he was designated. *Id*. at 4.

Sonos does not identify any particular questions to which Google objected. It also does not cite deposition testimony illustrating Pedro's lack of preparation. *See id.* at 1. Accordingly, Sonos has failed to establish that Pedro was not adequately prepared for questioning about the Google Home app functionality. The motion to compel is denied on this point.

Finally, Sonos contends that Pedro was not prepared to testify about the source code. *Id*. at 1 n.4. Source code is clearly part of Topic No. 1(i) ("and source code that facilitates the same"). Google does not respond to this argument and thus concedes it. Accordingly, Sonos's motion to compel Google to designate and produce a Rule 30(b)(6) witness to testify on the subject of "source code that facilitates" the "design and operation of the . . . 'speaker group' Accused Functionality," as that term is defined in the Rule 30(b)(6) deposition notice, is granted.

### 3. Disputes Three and Four: Controller Device and Cast-Enabled Player Topics

Sonos challenges the sufficiency of the designated witness's testimony with respect to the "controller device" and "cast-enabled player" topics pertaining to the "Up Next" and "Autoplay" functionalities. Jt. Letter 2. These are topics 1(v)(a)-(d); 1(vi)(a)-(d); 1(vii)(a)-(d); 1(vi)(b), (d); and 1(vii)(b), (d), as follows:

> (v) the design and operation of a computer device, such as a Pixel device, receiving and playing a sequence of media items (e.g., songs, videos, podcast episodes, etc.) in connection with, and source code that facilitates the same for, each of: (a) the YouTube media service, (b) the YouTube Kids media service, (c) the YouTube Music media service, [and] (d) the YouTube TV media service . . .
>
> (vi) the design and operation of the aforementioned "Up Next" Accused Functionality relating to, and source code that facilitates the same for, each of: (a) the YouTube app, (b) the YouTube Kids app, (c) the YouTube Music app, [and] (d) the YouTube TV app . . .
>
> (vii) the design and operation of the aforementioned "Autoplay" Accused Functionality relating to, and source code that facilitates the

6

same for, each of: (a) the YouTube app, (b) the YouTube Kids app,
(c) the YouTube Music app, [and] (d) the YouTube TV app . . . .

Sonos argues that the designated witness on the "controller device and cast-enabled player topics (including 'up next' and 'autoplay' functionality)" was not competent to testify. Jt. Letter 2. Google responds that the topics were overbroad and that its designee, Mr. Mo, testified "at a reasonable level of detail." *Id*. at 5. The parties provided very little analysis of this issue in the joint letter. Accordingly, the court ordered the parties to file a supplemental joint letter addressing each of the two topics separately. It ordered Google to "explain why its designee's testimony was 'at a reasonable level of detail'" and Sonos to explain why the testimony was insufficient. The court also instructed the parties to jointly file one exhibit with all relevant portions of the transcript. [Docket No. 414.]

In the supplemental joint letter, Sonos describes the two topics as: 1) how the accused controller devices—e.g., phones—operate to play back media items such as songs in a queue via the accused apps (YouTube, YouTube Music), including the operation of Google's features called "Up Next" and "Autoplay"; and 2) how the accused players—e.g., smart speakers—engage in the "Up Next" and "Autoplay" features. Supp. Jt. Letter 1. Google does not dispute the accuracy of these descriptions.

Sonos highlights a significant number of basic questions to which Mo responded "I don't know" or words to that effect. *See id*. at Ex. 1 (Tr.). Mo was not adequately prepared to answer many questions that appear related to Up Next and Autoplay features on the controller devices and players. For example, he testified that he was not able to testify about how the "up next feature is implemented in Google's system" (Tr. 24); that he was not familiar with how the Autoplay feature is implemented on the YouTube app on a phone before casting (Tr. 26-28); that he does not know whether a local queue of media items is stored on a device (Tr. 52-53); that he was not familiar with ███████████████████████████████████" (Tr. 69); and that he was not familiar with "█████████████████████" for YouTube music (Tr. 72). Additionally, Mo could not explain references to the Up Next and Autoplay features in Google's own documents (Tr. 65-66, 76, 79). At times, Mo became actively resistant to Sonos's questioning. For example, he repeatedly asked for clarification and context for questions that appeared fairly straightforward,

including "have you heard the phrase 'local queue' before?" in the "context of the YouTube sender" device. Tr. 51-52. In another instance, when asked, "[a] user [of the YouTube app running on sender] could select a single video to watch; correct?" he answered, "I don't know what a user could do." Tr. 47-48.

In response, Google highlights portions of the transcript where Mo provided substantive testimony on these topics. *Id*. at 2; *see* e.g., Tr. 126-28, 144-45, 166-72, 174-76. While it appears that Mo offered some level of knowledgeable testimony about playlists and shared queues, Google does not address how this testimony was "at a reasonable level of detail." Specifically, Google does not explain how the highlighted testimony adequately covered all the topics for which Mo was designated. Google also argues that Sonos offered "cherry-picked examples" that show that its counsel "asked vague, abstract questions about Autoplay and Up Next" that Mo had difficulty answering. Google did not make vagueness objections to all of the questions that the designee was unable to answer, thereby waiving any objection to those questions on that ground. Having reviewed the transcript, the court concludes that the questions generally were appropriate and concrete. Google further contends that "Sonos's complaints about testimony over issues like local and cloud queues are unfair because these were hotly contested claim terms for construction." Supp. Jt. Letter 2. This argument is not persuasive because Google did not object to questions about local and cloud queues based on disputes about construction, nor does it illustrate this objection with reference to particular questions and testimony.

Ultimately, having reviewed the excerpts of the transcript that the parties jointly submitted, the court finds that there were clear gaps in Mo's ability to provide 30(b)6 testimony on Google's behalf with respect to the noticed topics and that he was adequately prepared to testify. Google has not shown that there were obvious deficiencies in the form or substance of Sonos's questions. Google offered to designate additional testimony by Google engineers "Mills" and "Nicholson" on the subject of Autoplay as 30(b)(6) "to resolve the dispute." Supp. Jt. Letter 2. The parties shall immediately meet and confer regarding Google's designation of additional testimony by these witnesses on Autoplay. To the extent that there are remaining portions of the controller devices and cast-enabled player topics for which Google has not offered adequate 30(b)(6) testimony, it

8

1    must promptly produce a witness on those topics.

2        **B.     Dispute Five: Interrogatory No. 14**

3    Sonos moves to compel Google to provide a complete response to Interrogatory No. 14,

4    which states in relevant part:

> For each Accused Cast-Enabled App, describe in detail how the given Accused Cast-Enabled App (e.g., YouTube Music, YouTube, Google Play Music, Google Podcasts, Spotify) running on a computing device (e.g., *an Accused Pixel Device, an Accused Cast-Enabled Display, or a third party mobile phone or tablet*), independently or working with other software on the computing device, enables a user to "cast," or otherwise move or transfer media, to an Accused Cast-Enabled Media Player . . .

Interrogatory No. 14 (emphasis added). Sonos argues that Google's response does not provide an answer as to its accused *displays*, and that Google has improperly limited its response to apps that run on mobile devices even though the interrogatory is not so limited. Jt. Letter 3.

Google contends that the interrogatory "does not ask Google to describe how 'an Accused Cast-Enabled Display . . . casts or otherwise transfers media to another Accused Cast-Enabled Media Player.'" *Id*. at 5. Instead, it argues, the interrogatory asks Google to describe how "each Accused Cast-Enabled App" enables casting. Google contends that it has provided "a detailed explanation of how the YouTube apps perform casting." *Id*.

Sonos challenges two aspects of the response. It correctly asserts that Google fails to answer the interrogatory as to its accused displays. Google's response is entirely silent as to Cast-Enabled Apps running on "an Accused Cast-Enabled Display," and addresses only Cast-Enabled Apps running on a phone. Google argues that it "has provided . . . a detailed explanation of how the accused YouTube apps perform casting," which is "exactly" what the interrogatory asks, *see* Jt. Letter 5, but this reads out a portion of the interrogatory. As written, the interrogatory asks Google to describe how each Accused Cast-Enabled App running on computing devices, which include mobile phones and "*an Accused Cast-Enabled Display*," enables casting. A complete response calls for Google to explain how each Accused Cast-Enabled App performs casting, going accused app-by-app and accused computing device-by-computing device. Google offers no explanation or argument to support a different interpretation of the interrogatory. Its response is

9

incomplete.

Sonos also challenges Google's response on the ground that it is improperly limited to the YouTube and YouTube Music apps. The interrogatory lists five "Accused Cast-Enabled Apps": YouTube Music, YouTube, Google Play Music, Google Podcasts, and Spotify. Google objected to the inclusion of Google Podcasts and Spotify on the ground that "Sonos has dropped Google Podcasts and Spotify from the case." Jt. Letter 5 n.17; 3d Supp. Responses at 14. Its response addresses only YouTube Music and YouTube. Google states that it "has been found not to infringe Google Play Music, so the only remaining apps are YouTube and YouTube Music." Jt. Letter 5 n.17. Sonos does not actually dispute that YouTube and YouTube Music are "the only remaining apps" at issue but asserts that "[t]here's been no noninfringement ruling concerning the '033 patent." *Id*. at 3. Its assertion about the '033 patent is not germane to the dispute because Sonos's November 2022 infringement chart for the '033 patent does not accuse Google Play Music of infringing the '033 patent. [*See* Docket No. 406-2 at 1.] Further, on August 2, 2022, the court granted Google's motion for partial summary judgment as to the '615 patent and held that "Google's products" do not infringe claim 13 of the '615 patent. [Docket No. 316 at 10-11.] Thus, Google Play Music is no longer at issue with respect to the '033 or '615 patents, and Sonos does not explain how the requested information as to Google Play Music is relevant to any other patent-in-suit. Nor does it explain why Google should supplement its response as to Google Podcasts and Spotify. Accordingly, Sonos has failed to demonstrate how the information sought in Interrogatory No. 14 as to Google Play Music, Google Podcasts, and Spotify is relevant to the claims and defenses in this case.

In sum, Google's response to Interrogatory No. 14 is incomplete in that it does not address accused cast-enabled apps YouTube Music and YouTube running on any "Accused Cast-Enabled Display." Sonos's motion to compel a further response to Interrogatory No. 14 is granted in part, consistent with the discussion above.

### III. CONCLUSION

For the foregoing reasons, Sonos's motion to compel is granted in part and denied in part. Google must designate and promptly produce Rule 30(b)(6) witness(es) to testify about:

10

- "source code that facilitates" the "design and operation of the . . . 'speaker group' Accused Functionality" (Topic 1(i)), as that term is defined in the Rule 30(b)(6) deposition notice; and

- the controller device and cast-enabled player topics pertaining to the Up Next and Autoplay functionalities. The parties shall immediately meet and confer with respect to Google's designation of additional Rule 30(b)(6) testimony and/or witnesses on the controller device and cast-enabled player topics.

The motion is also granted in part as to Interrogatory No. 14. Within seven days of the date of this order, Google shall serve a third supplemental response that addresses how YouTube Music and YouTube running on any "Accused Cast-Enabled Display" each enable casting, going accused app-by-app and accused computing device-by-computing device.

**IT IS SO ORDERED.**

Dated: February 14, 2023



Donna M. Ryu
United States Magistrate Judge