CLEMENT SETH ROBERTS (STATE BAR NO. 209203)
croberts@orrick.com
BAS DE BLANK (STATE BAR NO. 191487)
basdeblank@orrick.com
ALYSSA CARIDIS (STATE BAR NO. 260103)
acaridis@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:   +1 415 773 5700
Facsimile:   +1 415 773 5759

SEAN M. SULLIVAN (admitted *pro hac vice*)
sullivan@ls3ip.com
MICHAEL P. BOYEA (admitted *pro hac vice*)
boyea@ls3ip.com
COLE RICHTER (admitted *pro hac vice*)
richter@ls3ip.com
LEE SULLIVAN SHEA & SMITH LLP
656 W Randolph St., Floor 5W
Chicago, IL 60661
Telephone:   +1 312 754 0002
Facsimile:   +1 312 754 0003

*Attorneys for Sonos, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| GOOGLE LLC,<br><br>    Plaintiff and Counter-defendant,<br><br>v.<br><br>SONOS, INC.,<br><br>    Defendant and Counter-claimant. | Case No. 3:20-cv-06754-WHA<br>Related to Case No. 3:21-cv-07559-WHA<br><br>**SONOS, INC.'S REPLY IN SUPPORT OF MOTION TO STRIKE PORTIONS OF GOOGLE'S EXPERT INVALIDITY AND NONINFRINGEMENT REPORTS**<br><br>Date: March 9, 2023<br>Time: 8:00 a.m.<br>Place: Courtroom 12, 19th Floor<br>Judge: Hon. William Alsup<br><br>Complaint Filed: September 28, 2020 |

PUBLIC VERSION

**TABLE OF CONTENTS**

Page(s)

I.   INTRODUCTION ................................................................................................................. 1

II.  ARGUMENT ....................................................................................................................... 1

   A.   Google Improperly Introduced New Invalidity Theories Via Expert Report. .................. 1

      1.   Google Admits That It Never Disclosed The ███████████ Feature .................... 1

      2.   Google Cannot Identify Any Proper Disclosure Of Its New YouTube Remote
           Anticipation Theory ........................................................................................... 3

      3.   Google Admits That Its Contentions Do Not Directly Disclose The New Alleged
           Bose Prior Art Products ..................................................................................... 4

   B.   Google's Experts Improperly Introduced New Noninfringement Theories. ..................... 6

      1.   Dr. Bhattacharjee's Previously Undisclosed Noninfringement Theories Must Be
           Stricken. .............................................................................................................. 7

      2.   Google Does Not Dispute That It Never Substantively Disclosed Dr. Schonfeld's
           New Noninfringement Theories ....................................................................... 10

   C.   Google Improperly Introduced New Noninfringing Alternatives Via Expert Report..... 12

      1.   Dr. Bhattacharjee's Reliance On Previously Undisclosed NIAs. ............................ 12

      2.   Google Never Previously Disclosed Dr. Schonfeld's New Alleged NIA. ............... 15

III. CONCLUSION ................................................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)
**Cases**

*Apple, Inc. v. Samsung Elecs. Co.*,
   2012 WL 3155574 (N.D. Cal. Aug. 2, 2012) .................................................................. 6, 12

*Asia Vital Components Co. v. Asetek Danmark A/S*,
   377 F. Supp. 3d 990 (N.D. Cal. 2019) ............................................................................ 6

*Bal Seal Eng'g, Inc. v. Nelson Prods., Inc.*,
   2018 WL 6258877 (C.D. Cal. Feb. 12, 2018) .................................................................. 9

*Droplets, Inc. v. Yahoo! Inc.*,
   2021 WL 9038509 (N.D. Cal. Apr. 27, 2021) ............................................................ 12, 15

*Finjan, Inc. v. Symantec Corp.*,
   2017 WL 4025219 (N.D. Cal. Sept. 13, 2017) ................................................................ 8

*Godo Kaisha IP Bridge 1 v. Broadcom Ltd.*,
   2017 WL 2869344 (E.D. Tex. April 19, 2017) ................................................................ 12

*MediaTek Inc. v. Freescale Semiconductor, Inc.*,
   2014 WL 690161 (N.D. Cal. Feb. 21, 2014) .................................................................... 3

*MLC Intell. Prop., LLC v. Micron Tech., Inc.*,
   2018 WL 6046465 (N.D. Cal. Nov. 19, 2018) ................................................................. 6

*Woods v. DeAngelo Marine Exhaust, Inc.*,
   692 F.3d 1272 (Fed. Cir. 2012) ..................................................................................... 11

**Other Authorities**

P.L.R. 3-3(a)-(c) .................................................................................................................. 4

P.L.R. 3-6(b)-(c) .................................................................................................................. 4

Rule 26(e)(1) .................................................................................................................. 6, 12

Rule 37(c)(1) ................................................................................................................. 11, 12

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Expert discovery should be a forum for the parties to marshal their previously disclosed theories and evidence to help narrow and focus the issues before trial. Instead, Google treated expert discovery as "last call" for any new ideas it might have, disclosing a range of invalidity, noninfringement, and alleged noninfringing alternative theories that it had never disclosed, in violation of the Patent Local Rules and Google's obligations to respond to Sonos's discovery requests. Caught with no valid defense, Google adopts the strategy of a strong *offense*, arguing that its flouting of discovery obligations was actually Sonos's fault—either because Sonos committed similar sins, or because Sonos didn't police Google's own violations aggressively enough. Neither argument holds water, and neither argument is even relevant. As explained below, Google identifies no nexus between its inaccurate complaints regarding Sonos's conduct and Google's uncontroverted failures to disclose the theories on which it now relies. As explained below, in most cases Google does not even *contest* that it did not disclose the new theories on which it now relies. Instead, Google asks the Court to rule that Sonos should have divined Google's intent. Google offers no support for that premise—textual, contextual, legal, or otherwise—and the Court should grant Sonos's motion to strike.

## II. ARGUMENT

### A. Google Improperly Introduced New Invalidity Theories Via Expert Report.

#### 1. Google Admits That It Never Disclosed The ▊▊▊▊▊ Feature

To win on *both* non-infringement and invalidity of the '615 Patent in the Showdown, Google argued that a system can only have a "local playback queue" or a "remote playback queue" (or "cloud queue") but it cannot have both. *See, e.g.,* Dkt. 211, 1 ("[B]y 2013 Google began to transition its applications to a 'cloud queue.' ***Prior to this transition***, however, ***Google's prior art products used a conventional 'local playback queue.'***" (emphasis added)); Dkt. 316, 10 ("Sonos objects that multiple playback queues can exist simultaneously."). In other words, Google argued that the existence of a local playback queue in a system is mutually exclusive of a remote playback queue and *vice versa*. Dkt. 211, 8; 7/13/22 Hr'g Tr., 59-60. In line with Google's argument, Dr.

Bhattacharjee opined in his Showdown reports that the Tungsten/Nexus Q system involved a "local playback queue" to the exclusion of a "remote playback queue." *See, e.g.,* Ex. Y, ¶ 387; *see also id.*, ¶¶114, 297. The Court sided with Google, accepting its argument. Dkt. 316, 4, 9-10.

*After* Google secured summary judgment, Dr. Bhattacharjee argued for the first time in expert discovery that ████████████████████████████████████████ ████████████████████ based on a never-before-disclosed feature called the ████████████ *See* Ex. A[1] ¶¶ 218-20 (emphasis added); Mot. 6-7. Google does not contest that it never previously disclosed the ████████████ feature in its invalidity contentions. Instead, Google contends it need not have disclosed this *basis* for its invalidity claim because "[a] '████████████' is simply the name" of one such "cloud-hosted playlist in the Tungsten/NexusQ." Opp. 5. But Google is rewriting its contentions in a way that directly contradicts the arguments Google advanced to win summary judgment on the '615 Patent. *See, e.g.,* Dkt. 211, 1. Google's contentions do not disclose *any* "████████████████████████████████████"—"████████████" or otherwise. Because Google never disclosed the feature it now relies entirely upon for one key argument—*see, e.g.,* Ex. A ¶¶ 218-20, 228, 236, 264, 498-99, 509, 514-15, 524, 533, 545; Ex. C ¶¶ 45, 120, 123-24, 126, 128, 130, 132, 138—that should end the matter. Google's arguments to the contrary fall flat. For example, Google argues that this "theory … is clearly articulated" because "Google disclosed that the Tungsten/NexusQ system 'anticipate[s]' the asserted claims 'of the '033 patent under at least the interpretation that [Sonos] appears to rely upon for its infringement theories.'" Opp. 5. But that argument disclosed neither the ████████████ feature, nor a "████████████████████████████████."

Similarly, Google argues that because its claim charts "explain that the Tungsten/NexusQ system allowed users to '*pull the music directly from the music library in the cloud*,'" the ████████████ feature was disclosed in all but name. *Id.* But simply citing to "users" being able to "pull the music directly from the music library in the cloud" is not the same as a "████████████████████████████████." For example, pulling a single media file from a music library

---

[1] Exhibits A-X were filed with Sonos's opening brief; Exhibits Y-AA are filed with this brief.

in the cloud would not require a "playlist" at all, much less one ■■■■■■. Nor does a screenshot of a user selecting a podcast episode and selecting to make it "available offline" provide notice of a ■■■■■■. *Cf.* Opp. 5.

Had Google disclosed this theory in its contentions, Sonos could have rebutted Google's representations to the Court that the existence of a "local playback queue" in a system is mutually exclusive of a "remote playback queue," which Google used to secure summary judgment. Or, had Google even attempted to amend its contentions once it decided to rely upon this new theory, Sonos would have had an opportunity to challenge Google's good cause for amending so late. Because Google failed to do either, Sonos now faces defending against Google's invalidity claims at trial on the basis of an apparently key feature that was never properly disclosed *at all*.

Because Google's discussion of *MediaTek* and *Largan* is premised on Google's unsupported—and incorrect—argument that it disclosed the "■■■■■■" Google's reading of those cases sheds little light. Google's "invalidity contentions did not contain 'this theory, nor anything like it.'" Opp. 8 (quoting *Largan* motion). And as in *MediaTek*, Google's experts should be barred from raising invalidity arguments and prior art that were not previously disclosed in its contentions, even if such arguments are based on the same reference(s) that Google identified in its contentions. *MediaTek Inc. v. Freescale Semiconductor, Inc.*, 2014 WL 690161, at *1-2 (N.D. Cal. Feb. 21, 2014)). The Court should strike references to the ■■■■■■ from Dr. Bhattacharjee's reports. Mot. 8.

**2. Google Cannot Identify Any Proper Disclosure Of Its New YouTube Remote Anticipation Theory**

In his reply report, Dr. Bhattacharjee contended for the first time that the alleged prior art YouTube Remote System allowed for ■■■■■■ Ex. C ¶¶ 79-81. Relying on an image that had been previously disclosed for different purposes, Dr. Bhattacharjee argued for the first time that this image ■■■■■■

1
2 ████████ Mot. 7-8.[2] Google does not appear to contest that it never before articulated this
3 theory in this manner. Instead, Google argues that its "contentions disclosed" this theory based on
4 the bare, unannotated image itself. Opp. 5-6. Google's explanation makes little sense. Google's
5 contentions cite this image for a number of propositions, *see* Ex. L. 4-5, none of which say anything
6 about ████████████████████████████ And a screenshot showing *one* video
7 being played back from a "recommended" tab is not the same as the new theory regarding ████
8 ██ of *all* recommended videos. The very passage from the website that Google cites to that
9 apparently is the source of that screenshot notes that the *user* has to "add more videos to the queue."
10 Mot. 7; Ex. L 5-6. Dr. Bhattacharjee's reply report thus focuses on new functionality not disclosed
11 in Google's contentions; neither this screenshot nor any other put Sonos on notice of this particular
12 feature.
13 Next, Google argues that its contentions didn't *rule out* this theory. *See* Opp. 6. The Patent
14 Local Rules require more than that. *See* P.L.R. 3-3(a)-(c); 3-6(b)-(c). Google also suggests that it
15 disclosed this theory because a *different* image in "Google's invalidity contentions … shows a YTR
16 application playing back a video … from the 'Recommended' tab." Opp. 6. Once again, the
17 surrounding text of Google's contentions make no mention of Google's late-breaking interpretation
18 of these images on which it has relied up to this point for entirely different propositions. *Cf.* Ex. L.
19 6-7. Similarly, Google's argument regarding Dr. Schmidt's "technically inaccurate opinions,"
20 Opp. 6-7, proves too much—Dr. Schmidt's *rebuttal* report responded only to Google's *original*
21 theory, which is why he could not anticipate Dr. Bhattacharjee's novel theory on reply. The Court
22 should strike paragraphs 79-81 of Dr. Bhattacharjee's reply report.

23       **3.**    **Google Admits That Its Contentions Do Not Directly Disclose The New Alleged Bose Prior Art Products**

24

---

25
26 [2] Google appears to have misread Sonos's motion, purporting to correct Sonos that "the image from Dr. Bhattacharjee's report that Sonos takes issue within its Motion … is in Google's invalidity contentions." Opp. 6 (citations omitted). But Sonos cited to the original, *unannotated*
27 image *in Google's invalidity contentions*. *See* Mot. 7-9 (citing Ex. L 5-6). As Sonos explained, "Dr. Bhattacharjee newly annotated that image in his reply report," disclosing his theory
28 regarding what the image shows for the first time. *See id.* (citing Ex. C ¶ 79).

- 4 -

SONOS'S REPLY ISO MOTION TO STRIKE
EXPERT REPORTS
3:20-CV-06754-WHA

1      Dr. Schonfeld relied for the first time in his expert reports on three Bose products that Google never disclosed in its invalidity contentions—the "Bose Link communication protocol" and the "Lifestyle SA-2 and SA-3 Stereo Amplifiers." Mot. 9-11. Sonos challenges Google's failure to disclose these products "*in Google's invalidity contentions*." Mot. 9 (emphasis added). But Google characterizes Sonos's objection as "complain[ing] that certain Bose products were not adequately disclosed *during discovery*." Opp. 8 (citing, but not quoting, Mot. 9 (emphasis added)). With that re-characterization, Google then argues that Sonos's claim is "incorrect" because Dr. Schonfeld disclosed these products in *earlier*, showdown expert reports. Opp. 8. But as Google effectively concedes, Google has never disclosed these three products in its invalidity contentions. That failure is inherently prejudicial to Sonos.

Google also argues that these "theories merely expanded on the theories disclosed in Google's contentions" because the "contentions cited to documents showing that the Lifestyle 50 system may be '*connected via an SA-1 indoor amplifier*,'" which Google asserts is "the direct predecessor amplifier product to the SA-2 and SA-3 amplifier products." Opp. 8-9. Google's argument is revealing for two reasons. First, Google does not even *claim* that it disclosed the "Bose Link communication protocol" in this manner. So the Court should *at least* strike all references to that product. Second, the citation on which Google relies is apparently the best example that Google was able to find of its contentions disclosing the "Lifestyle SA-2 and SA-3 Stereo Amplifiers." But the citation does not even disclose the SA-2 or SA-3, but instead what Google characterizes as the *predecessor* to the SA-2—the SA-1. Even this claim is tenuous. In the 148 page '885 Bose claim chart and 118 page '996 Bose claim chart, the only "disclosure" of even the *SA-1* is in a user review on one third-party website cited only once on the first page of the claim charts.

Having been caught inserting new prior art into expert reports that was never disclosed in invalidity contentions, Google faults *Sonos* for amending its infringement contentions too many times. *See* Opp. 9. Google neglects to mention that each of Sonos's amendments was either stipulated to by Google, or granted over Google's objection for good cause shown. That record shows that Sonos's amendments were *proper*. Google's focus on Sonos's amendments is also a

red herring—Google does not identify any actual connection between its failure to amend its invalidity contentions and Sonos's history of properly amending its infringement contentions. That's because there is none. None of Sonos's amendments changed Sonos's theories in ways that could explain why Google failed to disclose these products.

Google ends by mischaracterizing Sonos's motion. Sonos explained that one reason Google's contentions failed to disclose these three products is that "Dr. Schonfeld's primary reference—the Bose Lifestyle 50 System—does not include those products." Mot. 9. Google paints this as a "substantive argument" that seeks to litigate whether "a [POSITA] would have combined these references." Opp. 10. But Sonos's motion says nothing about combining references. *Cf.* Mot. 9-11. Rather, as Sonos explained, there is no apparent connection between the Bose *products* on which Dr. Schonfeld now relies, and the primary reference *system*—which *was* disclosed in Google's contentions. *See id.* at 9-10. So Google's disclosure of the *system* in its contentions did not give Sonos proper notice of Google's plan to rely on *separate* products. The Court should strike these sections, Mot. 10, of Dr. Schonfeld's opening and reply reports.[3]

### B. Google's Experts Improperly Introduced New Noninfringement Theories.

Google was obligated to inform Sonos of Google's noninfringement positions prior to the close of fact discovery in its responses to Sonos's contention interrogatories. Mot. 11 (citing *Asia Vital Components Co. v. Asetek Danmark A/S*, 377 F. Supp. 3d 990, 1003 (N.D. Cal. 2019); *Apple, Inc. v. Samsung Elecs. Co.*, 2012 WL 3155574, at *5 (N.D. Cal. Aug. 2, 2012)). For that reason, Google's disclosure of new noninfringement theories in its expert reports is not proper supplementation under Rule 26(e)(1), and the newly disclosed noninfringement theories should be stricken. *Id.*; *see also MLC Intell. Prop., LLC v. Micron Tech., Inc.*, 2018 WL 6046465, at *2 (N.D. Cal. Nov. 19, 2018). Google has two overarching responses. ***First***, Google argues that Sonos never took issue with Google's interrogatory responses. That makes little sense. If Google's response says "ABC" and Google's expert says "D", Sonos could hardly have predicted

---

[3] Google does not dispute that unless the Court on reconsideration reverses its grant of summary judgment of validity of the '885 Patent, *see* Dkt. 382, the Court should also strike Dr. Schonfeld's over 400 pages of report concerning "invalidity of the '885 Patent." *See* Mot. 11 n.6.

1  that the "ABC" response was deficient until seeing that the expert is saying something new. That

2  is exactly what happened here. Mot. 11-14. **Second**, Google tries to change the subject, arguing

3  that the level of disclosure in its responses was more fulsome than what *Sonos* provided. But the

4  sufficiency of Sonos's responses is not at issue in this motion, and if Google believed there was

5  any deficiency, Google could have moved to compel. Moreover, Sonos does not challenge the

6  level of detail of the disclosure in some abstract, platonic sense. Sonos's complaint is simple:

7  Google's experts went far beyond the disclosures. These new theories should be stricken.

### 1. Dr. Bhattacharjee's Previously Undisclosed Noninfringement Theories Must Be Stricken.

Dr. Bhattacharjee's rebuttal report improperly introduces *five* noninfringement theories that were never disclosed during fact discovery. Mot. 11-13. Sonos addresses Google's response to each. First, Dr. Bhattacharjee *now* contends that limitation 1.7 of the '033 Patent is not infringed because ███████████████████████████████████████████████████████████████████ *See* Ex. B ¶¶ 82-86, 213-15, 245-46; Mot. 11-12. During discovery, Sonos asked Google for its noninfringement theories and the bases therefor. But Google's responses—even those served on November 29, 2022—never disclosed this theory. *See generally* Ex. J; Mot. 11-12. Google argues that it disclosed this noninfringement theory in two responses. Opp. 13-14. But while Google discussed the message, Google never pointed to its new theory as a basis for non-infringement of limitation 1.7.

Second, Dr. Bhattacharjee now contends that limitation 1.7 is not infringed because ███████████████████████████████████████████████████████████████████ *See* Ex. B ¶¶ 106-08, 222-25, 296-97; Mot. 12. Once again, Google's responses never disclosed these theories. Mot. 12. Google argues that it disclosed this noninfringement theory in its response to Sonos's Interrogatory No. 12. Opp. 14. But the part of the response that Google cites to makes no mention of these theories. For example, there is no discussion of the ███ at all. *Cf.* Ex. J at 48. And more generally, Google never previously argued that the accused "data identifying a next one or more media items" (i.e., a

1  ▇▇▇) is not subsequently ▇▇▇
2  *Cf.* Ex. J.  Next, Google argues that Dr. Bhattacharjee's description of this theory at ¶¶ 222-225 of
3  his rebuttal report was disclosed in a separate response.  Opp. 14-15.  But disclosing a technical
4  explanation of how a ▇▇ results in ▇▇▇ is not the same as arguing that a
5  ▇▇ is *not* ▇▇▇.  Google's related
6  arguments, Opp. 15, also fail.  These citations, at most, establish that Sonos is not unaware that a
7  ▇▇ is not the only thing ▇▇▇.  But the parties have never disputed
8  *that* issue.  What is new here is Google now saying that despite a ▇▇ being a but-for cause of
9  the playback device ▇▇▇, a ▇▇ is apparently not ▇▇▇
10 ▇▇.  Google does not point to any timely disclosure of that theory.[4]
11         Third, Dr. Bhattacharjee contends for the first time that limitations 1.4 and 1.7 of the '033
12 Patent are not infringed because (1) ▇▇▇
13 ▇▇▇
14 ▇▇▇ Ex. B ¶¶ 162-63, 202-203; Mot. 12, and (2) ▇▇▇
15 ▇▇▇
16 ▇▇ Ex. B ¶¶ 199, 203-210; Mot. 12.  Once again, Google's responses never disclosed
17 these theories.  *See, e.g.*, Ex. J at 30-31; Mot. 12.[5]  Google argues that the first theory (1) is not
18 new, but its lead support for this argument is *Google's* Interrogatory No. 12.  Opp. 16.  Asking a
19 question is not the same thing as disclosing an answer, and nothing in the question discloses Dr.
20 Bhattacharjee's new theory.  Next, Google points to its response to Sonos's Interrogatory No. 15.
21 Opp. 16.  But Google only incorporated that response into its *noninfringement* response on the day
22 before the close of fact discovery, Ex. J. at 60, 64, which is not sufficient.  *See Finjan, Inc. v.*

---

[4] Google also contends that "paragraphs 296-297 of Dr. Bhattacharjee's rebuttal report" "relate to one of Google's [NIAs]: ▇▇" and that its response to Sonos's Interrogatory No. 12 need not have disclosed this alleged NIA.  But Google's response to Sonos's Interrogatory No. 18 *also* does not disclose Google's theory that there is a ▇▇▇ that results in obtaining all media and metadata for all items in a playlist—Dr. Bhattarcharjee's new reply theory regarding what the redesign does—and Google did not properly disclose this theory as an NIA either.  *Infra* 12-13.

[5] To the extent that the Court does not strike this, and Google's other undisclosed theories, Sonos intends to move to amend its infringement contentions to set forth DOE positions.  Mot. 12 n.7.

1  *Symantec Corp.*, 2017 WL 4025219, at *2 (N.D. Cal. Sept. 13, 2017); *Bal Seal Eng'g, Inc. v. Nelson
2  Prods., Inc.*, 2018 WL 6258877, at *2-3 (C.D. Cal. Feb. 12, 2018).  Google further argues that "Dr.
3  Bhattacharjee's interpretation of the claim language" regarding "remote playback queue" (2) is "not
4  a new opinion" but "a well-settled aspect of interpreting claim language."  Opp. 16.  But if this
5  interpretation were as obvious as Google suggests, there is no reason Google could not have
6  disclosed this theory during fact discovery.  But *even assuming* that Google's opinion stems from
7  a "well-settled aspect of interpreting claim language," and *even if* Google were excused on that
8  basis for not disclosing a non-infringement position based on "the remote playback queue" in
9  limitation 1.7, Dr. Bhattacharjee advanced two new non-infringement theories premised on never-
10 before-identified requirements of the claimed "remote playback queue": (1) that the contents of
11 "remote playback queue" cannot change and (2) the location of the "remote playback queue" within
12 the "cloud-based computing system" must be fixed.  Ex. B ¶¶ 204-209.  At a minimum, those parts
13 of Dr. Bhattacharjee's new theories should be stricken.[6]

14 Fourth, Dr. Bhattacharjee contends for the first time that ███████████████████
15 ███████████ as claimed by claim 1 of the '033 Patent.  *See* Ex. B ¶¶ 187, 189-93, 228, 235;
16 Mot. 12.  Once again, Google's responses never disclosed this theory.  *See* Ex. J; Mot. 12.  And
17 once again, Google blames Sonos.  Opp. 17-18.  Google's blame-shifting is without foundation.
18 *See* Dkt. 487.  In any event, Google cannot credibly blame *Sonos* for Google's failure to previously
19 disclose its theory that ████████████████████████  A device either amounts
20 to a claimed "computing device" or it does not, and Google is more than capable of making such a
21 technical assessment of its own products without any guidance from Sonos.  Moreover, there is no
22 nexus between Sonos's disclosures and Google's untimely theory—how active playback begins at
23 a device does not change whether the device is a claimed "computing device" or not.

24 Fifth, Dr. Bhattacharjee contends for the first time that █████████████████
25 ████████████████████████████████████████████████████████████████

---

[6] Google's suggestion that Sonos's "identification of the alleged 'remote playback queue' has been a moving target" is baseless, for the reasons explained in Sonos's opposition to Google's motion to strike.  See Dkt. 487 at 8-13.

- 9 -   SONOS'S REPLY ISO MOTION TO STRIKE
EXPERT REPORTS
3:20-CV-06754-WHA

. *See* Ex. B ¶¶ 95, 195-96, 239-41[7]; Mot. 12. Once again, Google's responses never disclosed this theory. *See* Ex. J; Mot. 12. Here too, Google pivots to blaming Sonos, arguing that "Sonos's theories with respect to these elements were not sufficiently disclosed in Sonos's infringement contentions" and that "[n]ot until Sonos's opening expert report did Sonos disclose its theory on what the term 'configured' means in the context of the '033 claims." Opp. 18. But in its *own* motion to strike, Google admits that Sonos put Google on notice of beginning playback at the Hub via user inputs at the Hub. Dkt. 469 at 10. Moreover, Limitation 1.5 is agnostic as to how active playback is triggered—that limitation does not require active playback at all. Finally, Google cannot dispute that YT Main causing the Hub to temporarily pause when the user attempts to do a stream transfer is the same whether the Hub started active playback via user inputs at the Hub's touchscreen or via some other means. Once again, Google cannot justify its new theories now based on purported deficiencies in Sonos's contentions to which Google never objected. The Court should strike these paragraphs, Mot. 13, from Dr. Bhattacharjee's rebuttal report.

### 2.    Google Does Not Dispute That It Never Substantively Disclosed Dr. Schonfeld's New Noninfringement Theories

In his rebuttal report, Dr. Schonfeld argued for the first time that the Accused Controllers do not infringe asserted independent claims 1 and 9 of the '966 patent because they            *See* Ex. E ¶¶ 116-118; Mot. 13-14. Google did not disclose this theory even in its supplemental interrogatory responses sent in the final hours of fact discovery, which discuss            ut only with respect to dependent claim 3. *Id.* Google does not dispute that these supplemental responses were limited to claim 3, but contends that it nonetheless disclosed this theory with respect to the independent claims in its *initial* response. Opp. 19. That boilerplate response identified dozens of claim limitations without any indication of the basis for Google's noninfringement position, or any indication of what was missing from those elements. Mot. 13. Google does not substantively dispute any of this. Instead, Google contends (1) that "responses to non-infringement contention interrogatories" do not "require[] more detail," and (2) that Sonos is

---

[7] Google made the same new argument with respect to limitations 1.8-1.9 as it did with respect to limitations 1.5-1.6.

1   guilty of the same sins.  Both arguments fail.

2        Google does not contest that Sonos's contention interrogatory seeking noninfringement
3   theories specifically asked Google to "set forth … the complete legal and factual basis for any
4   assertion by Google that the Accused Instrumentalities have not infringed each such claim" on a
5   claim-by-claim and element-by-element basis.  Mot. 14.  *Cf.* Opp. 19-20.  And Google does not
6   point to *any* answer to this question in its interrogatory responses with respect to its new "caus[ing]
7   storage" theory under the independent claims of the '966 patent.  So this is not a dispute about the
8   proper level of detail.  The question is whether Google is permitted to decline to respond entirely
9   with respect to a particular theory, only to spring the theory in expert discovery.  It is not.

10       Nor does Google contest that Rule 37(c)(1) provides that a party's failure to supplement
11  answers to interrogatories in a timely fashion is grounds for exclusion of the undisclosed
12  information.  *See Woods v. DeAngelo Marine Exhaust, Inc.*, 692 F.3d 1272, 1279 (Fed. Cir. 2012).
13  Instead, Google seeks to leverage *its own* discovery failures to turn the blame on Sonos.  *See, e.g.*,
14  Opp. 19 ("Sonos never moved to compel more detail.").  Google argues, in other words, that
15  because Sonos did not move to compel a response regarding a theory that Google never
16  substantively disclosed it was pursuing, Sonos cannot take issue with Google disclosing the theory
17  substantively for the first time in expert discovery.  This argument flips the parties' responsibilities
18  on their heads.  If Google intended to pursue this theory, it had an obligation to respond fully to the
19  interrogatory; Google cannot spring new facts and theories *now*.  A motion to compel is not a
20  prerequisite to Google complying with its discovery obligations—and any such motion would have
21  been challenged as speculative, had Sonos moved to compel, e.g., "any undisclosed responses that
22  Google intends to rely upon in expert discovery."[8]

23       Accordingly, Sonos had no notice that Google actually intended to pursue a
24  noninfringement theory regarding " ▓▓▓▓▓ " generally.  And when Google finally did

---

[8] Google's argument also ignores that Sonos *did* tell Google that Google's responses were deficient.  *See* Ex. AA (email).  As a result, Google supplemented and provided additional detail regarding numerous claim limitations, but did *not* mention anything about the "caus[ing] storage" theory that Google now advances.  *See* Ex. J at 21-59.

- 11 -      SONOS'S REPLY ISO MOTION TO STRIKE
EXPERT REPORTS
3:20-CV-06754-WHA

1  supplement regarding "███████"—in the final days of discovery, Ex. J at 59-65, that
2  supplementation was limited to *dependent* claim 3, as Google admits.

3      Google also complains that "Sonos's motion is completely devoid of any specificity as to
4  the 'discovery' Sonos would have propounded." Opp. 20. But the discovery that Sonos would
5  have sought is self-explanatory—Sonos would have sought "discovery on the alleged factual bases
6  for this new position." Mot. 14. For example, had Google disclosed *any* basis for this position in
7  a supplemental interrogatory response, Sonos could have probed the accuracy of that alleged factual
8  basis when deposing Google's engineers, as Sonos did—extensively—with respect to Google's
9  *properly* disclosed noninfringement theories. Nor does Google's argument that Sonos committed
10 the same sin hold any water—Google did not even move to compel supplemental responses.
11 Because Google does not contest that its only "disclosure" of this theory came in an incomplete
12 initial interrogatory response, which it gave all appearances of having abandoned until expert
13 discovery, the Court should strike paragraphs 116-118 of Dr. Schonfeld's rebuttal report.

14     **C.**     **Google Improperly Introduced New Noninfringing Alternatives Via Expert Report.**
15

16     Google was obligated to inform Sonos of Google's noninfringing alternatives (NIAs) prior
17 to the close of fact discovery in its responses to Sonos's interrogatory requesting that information
18 and under Patent L.R. 3-9. Google's disclosure of new NIAs in its expert reports does not
19 constitute proper supplementation under Rule 26(e)(1) or the Patent Local Rules, and, under Rule
20 37(c)(1), the portions of Google's expert reports containing those newly disclosed noninfringing
21 alternative theories must be stricken. *See Apple*, 2012 WL 3155574, at *5; *Droplets, Inc. v.
22 Yahoo! Inc.*, 2021 WL 9038509, at *9 (N.D. Cal. Apr. 27, 2021); *Godo Kaisha IP Bridge 1 v.
23 Broadcom Ltd.*, 2017 WL 2869344, at *2-3 (E.D. Tex. April 19, 2017).

24     **1.**     **Dr. Bhattacharjee's Reliance On Previously Undisclosed NIAs.**

25     In his rebuttal report, Dr. Bhattacharjee contended that an NIA for the '033 patent existed
26 at the time of infringement, consisting of ███████
27 ███████
28 ███████ *See* Ex. B ¶¶ 288-89, 295-98; Mot. 15. But Dr. Bhattacharjee's articulation of

- 12 -

SONOS'S REPLY ISO MOTION TO STRIKE
EXPERT REPORTS
3:20-CV-06754-WHA

1  this alleged NIA differs significantly from his patent showdown report, which Google's
2  interrogatory response incorporated by reference. *See* Mot. 15.  Google contends now that despite
3  its response incorporating Dr. Bhattacharjee's showdown reports, Google only *intended* to
4  incorporate those reports for *other purposes*, Opp. 21, which Sonos should have divined.  In
5  Google's telling, that incorporation of the showdown reports cannot override the other statements
6  Google made in its response. Opp. 21.  That argument might have some purchase had Google
7  actually disclosed the new theory upon which it now relies.  But nothing of the sort appears in
8  Google's response.  Google's response does *not* say that there is a ▮▮▮▮▮▮ that results in
9  obtaining all media and metadata for all items in a playlist—which is what Dr. Bhattacharjee's
10 rebuttal report now argues this redesign does, *see, e.g.*, Ex. B ¶ 298; Mot. 15.

11        Google's assertion that its interrogatory response explained retrieval for "media items,"
12 plural, is also inaccurate.  Instead, consistent with Dr. Bhattacharjee's showdown reports, Google's
13 response only discusses sending a request for one item at a time. *Cf.* Opp. 20-21 (characterizing
14 various citations as involving media *items*, but never quoting this phrase).  Google also points to
15 its own document purportedly "describing Google's implementation of this" alleged NIA, but the
16 document only discusses using a "▮▮▮▮▮▮" to "determine the *starting video*." Opp. 21 (emphasis
17 added).  That quote says nothing about the *subsequent* video, much less all videos in a playlist.

18        Separately, in his rebuttal report, Dr. Bhattacharjee stated that "Alternative #3"—which
19 corresponds with Google's NIA #4—would itself contain *three additional* alternatives to
20 infringement beyond those disclosed in NIA #4:



*See* Ex. B ¶ 280 (emphases added); Mot. 15-16.

28 Google did not disclose any of *those* alternatives previously.  *Cf.* Ex. A ¶ 764, Ex. I at 14.

1    First, with respect to (i), Google contends that its "response disclosed that this alternative applied to 'Google's accused products'; it was not limited to a particular application." Opp. 22. That is inaccurate. Google's arguments regarding the purported feasibility and/or commercial acceptability of this alleged alternative were in the context of *video* playback (*e.g.*, "playback can be continued with only the video alone (and the audio muted)") and did not account for YouTube Music's *music*-only playback. Google Ex. 24 at 14; *see id.* (discussing "*YT app*" (emphasis added)). It makes little sense that a redesign to play video while muting audio would naturally extend to an app where the user can *only* play audio. Google's alleged NIA clearly did not apply to all of the accused products in the version of the NIA that was timely disclosed.

Second, with respect to (ii), *supra*, Google contends that "Dr. Bhattacharjee is merely explaining how the [NIA] Google previously disclosed (i.e. that the computing device would continue to be configured for playback after transferring playback to a playback device) was further bolstered by Sonos's expert opinions." Opp. 22-23. But this assertion is belied by the fact that Dr. Bhattacharjee expressly opined in his rebuttal report that "*[e]ven setting aside* Dr. Schmidt's interpretation, this [NIA] could also be implemented so that the video and audio would continue to playback on the mobile device after transferring playback, giving the user the option to continue the playback on the mobile device or pause it at a later time." Ex. B ¶ 280.

Third, with respect to (iii), *supra*, Google argues that "Google's interrogatory response explains that the [NIA] being proposed includes 'continuing playback at the control device after playback has been transferred to the playback device.'" Opp. 23. According to Google, when it "provided an example in which the playback continued with 'only the video alone (and the audio muted),' that was but one example of the disclosed NIA . . . ." *Id.* But Google's argument that its interrogatory response encompassed *both* video and audio continuing to play back after transfer is misleading. Google's NIA was specifically limited to playing video while muting audio after transfer. Ex. I at 14-15. Dr. Bhattacharjee's rebuttal report broadened this NIA to apply to playback video and audio regardless of whether audio is muted or not. Ex. B ¶ 280. The Court should strike paragraphs 278-86, 288-89, and 295-98 of Dr. Bhattacharjee's rebuttal report.

### 2. Google Never Previously Disclosed Dr. Schonfeld's New Alleged NIA.

In his rebuttal report, Dr. Schonfeld identified a *new* alleged NIA for the '885 and '966 patents, called "No Identification of Groups as Zone Scenes," Mot. 17, which Google does not contest that it never previously disclosed, *cf.* Opp. 23-24. Instead, Google argues that Sonos was "on notice of this theory" because it "follows directly from" the Court's claim construction ruling. Opp. 24. But if that were true, then there is no reason that Google could not have disclosed this alleged NIA shortly after that ruling. Google did not do so. The Court issued that ruling on July 21, 2022. Dkt. 309. Dr. Schonfeld issued a "supplemental expert report" on August 29, 2022, purportedly in response to that ruling. *See* Ex. Z at 1. But he made no mention of this alleged NIA. *See e.g.*, *id* at i (Table of Contents). Fact discovery closed on November 30, 2022. Dkt. 67. And Dr. Schonfeld disclosed this alleged NIA for the first time on January 13, 2023 in his *rebuttal* report. Disclosure for the first time in his opening report would been improper too, but it was not disclosed even then. Nor did Google at any point disclose this alleged NIA in its Damages Contentions, Mot. 17, a failure Google does not even attempt to justify. And if Google *did* possess this theory prior to disclosing it, that too would be improper. *See Droplets, Inc.*, 2021 WL 9038509, at *9. Disclosure of a new theory during expert discovery is inherently prejudicial. Either Google invented this theory after fact discovery closed, or Google knew about this theory for the almost *six months* that elapsed between the Showdown ruling and its disclosure. Either way, the Court should strike paragraphs 178-181 of Dr. Schonfeld's rebuttal report.

### III. CONCLUSION

Sonos respectfully requests that the Court strike (1) ¶¶ 218-220, 228, 236, 264, 498-99, 509, 514-15, 524, 533, and 545 from Dr. Bhattacharjee's Opening Report, (2) ¶¶ 82-86, 95, 106-108, 162-63, 187, 189-93, 195-96, 199, 202-10, 213-15, 222-25, 228, 235, 239-41, 245-46, and 278-86, 288-89, and 295-98 from Dr. Bhattacharjee's Rebuttal Report, (3) ¶¶ 45, 79-81, 120, 123-24, 126, 128, 130, 132, and 138 from Dr. Bhattacharjee's Reply Report, (4) pages 548, 557, 565, 572-82, 585, 593, 595-96, 598, 602, 605-14, 621-29, and 642-44 from Dr. Schonfeld's Opening Report (or, pages 219-645, *see supra* note 3), (5) ¶¶ 116-18, 178-81 from Dr. Schonfeld's Rebuttal Report, and (6) ¶¶ 67-68 from Dr. Schonfeld's Reply Report.

Dated: February 17, 2023

By: */s/ Clement S. Roberts*

CLEMENT SETH ROBERTS
BAS DE BLANK
ALYSSA CARIDIS

ORRICK, HERRINGTON & SUTCLIFFE LLP

SEAN M. SULLIVAN
COLE B. RICHTER

LEE SULLIVAN SHEA & SMITH LLP

*Attorneys for Sonos, Inc.*