QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Charles K. Verhoeven (Bar No. 170151)
  charlesverhoeven@quinnemanuel.com
  Melissa Baily (Bar No. 237649)
  melissabaily@quinnemanuel.com
  James Judah (Bar No. 257112)
  jamesjudah@quinnemanuel.com
  Lindsay Cooper (Bar No. 287125)
  lindsaycooper@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:    (415) 875-6600
Facsimile:    (415) 875-6700

  Marc Kaplan (*pro hac vice*)
  marckaplan@quinnemanuel.com
191 N. Wacker Drive, Ste 2700
Chicago, Illinois 60606
Telephone:    (312) 705-7400
Facsimile:    (312) 705-7401

*Attorneys for GOOGLE, LLC*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| GOOGLE LLC,<br><br>                          Plaintiff,<br><br>        vs.<br><br>SONOS, INC.,<br><br>                          Defendant. | Case No. 3:20-cv-06754-WHA<br>Related to Case No. 3:21-cv-07559-WHA<br><br>**GOOGLE LLC'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE PORTIONS OF THE EXPERT REPORTS OF DOUGLAS SCHMIDT**<br><br>Date:      March 9, 2023<br>Time:      8:00 a.m.<br>Location:  Courtroom 12, 19th Floor<br>Judge:     Hon. William Alsup |

# TABLE OF CONTENTS

Page

I.     ARGUMENT ............................................................................................................1

    A.     Purported Claim Constructions First Introduced In Sonos's Rebuttal
        Validity Report Should Be Struck...............................................................1

        1.     Dr. Schmidt's New Requirements For A Playback Queue Were Not
              Present In His Opening Report On Infringement............................1

        2.     The Specific Paragraphs Of Dr. Schmidt's Rebuttal And Reply
              Reports Identified By Google Should Be Struck ............................4

    B.     Sonos's New Infringement Theories Based on ███████████
        ███████     Should be Struck ...............................................................5

        1.     Sonos's Contentions Did Not Disclose Its New Infringement Theory
              That the Remote Playback Queue is Stored in the Cloud Rather
              Than Transmitted to the YouTube Application ................................6

        2.     Sonos's Contentions Did Not Disclose Its New Infringement Theory
              That the Remote Playback Queue is Stored By the ███████████
              ████████ .................................................................................6

        3.     Google Was Not Put On Notice of Sonos's New Infringement
              Theories ...........................................................................................7

        4.     Sonos's Remaining Arguments Are Unavailing ............................9

    C.     Sonos's Undisclosed Infringement Theory for Hub Devices Should be
        Struck .........................................................................................................11

        1.     Sonos's Failure to Disclose the Two Playback Paths Is Inexcusable
              and Cannot Be Attributed to Google's Discovery Responses.....................11

        2.     The Identified Paragraphs Of Dr. Schmidt's Reports Should Be
              Struck .............................................................................................13

    D.     Sonos's New Doctrine of Equivalents Arguments Could and Should Have
        Been Disclosed Prior to Dr. Schmidt's Rebuttal Report...........................14

II.    CONCLUSION ....................................................................................................15

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page**

3

### Cases

4

*Fresenius Medical Care Holdings, Inc. v. Baxter Intern., Inc.*,
   2006 WL 1329997 (N.D. Cal., May 15, 2006) .......................................................................... 11

*HSU v. Thorsen Tool Co.*,
   2014 WL 12570922 (C.D. Cal. Oct. 17, 2014) ........................................................................ 15

*MasterObjects, Inc. v. Meta Platforms, Inc.*,
   No. C 21-05428 WHA, 2022 WL 4856269 (N.D. Cal. Oct. 3, 2022) ........................................ 4

*Oracle Am., Inc. v. Google Inc.*,
   2011 WL 4479305 (N.D. Cal. Sept. 26, 2011) .......................................................................... 10

*Sensor Elec. Tech., Inc. v. Bolb, Inc.*,
   2019 WL 4645338 (N.D. Cal. Sept. 24, 2019) .......................................................................... 15

*Smart Wearable Techs. Inc. v. Fitbit Inc.*,
   2018 WL 659013 (N.D. Cal. Feb. 1, 2018) ............................................................................... 13

### Rules and Regulations

Local Rule 5-1 ...................................................................................................................................... 17

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    Heavy on rhetoric but light on substance, Sonos's opposition fails to meaningfully address

2  the arguments in Google's motion to strike.  Forced to admit that every theory to which Google

3  objected was in fact new and undisclosed, Sonos instead attempts to blame Google's experts' and

4  interrogatory responses for its belated infringement disclosures.  But Sonos cannot blame Google's

5  discovery conduct for a failure to disclose infringement contentions that *Sonos* did not disclose until

6  its expert reports.  Sonos should not be permitted to introduce new infringement theories that do not

7  comply with this District's local rules.  Google's motion to strike should be granted.

8  **I.    ARGUMENT**

9     **A.    Purported Claim Constructions First Introduced In Sonos's Rebuttal Validity
             Report Should Be Struck**

10     Dr. Schmidt opined in his opening infringement report that "the Watch Next queue amounts

11  to 'a remote playback queue provided by a cloud-based computing system associated with a cloud-

12  based media service' because (i) it constitutes a list of one or more media items selected for

13  playback, (ii) it is not local to the YouTube Sender (or the Receiver that ultimately takes over

14  playback responsibility), and (iii) it is provided by the YouTube cloud infrastructure that comprises

15  a plurality of cloud servers."  Ex. 1 (Schmidt Op. Rpt.) ¶ 241.  After viewing Google's opening

16  report on invalidity, Dr. Schmidt introduced four new requirements that a playback queue must

17  satisfy for the first time in his rebuttal report:  that it "is the list of media items that is used for

18  playback"; "contains the entire list of media items selected for playback"; "is not being used merely

19  to process the list of media items for playback"; and "is the queue that 'runs the show.'"  Ex. 2

20  (Schmidt Reb. Rpt.) ¶ 107.  Sonos does not dispute that it never (i) proposed a construction of

21  "playback queue" that includes the purported limitations, (ii) identified these purported limitations

22  in its infringement contentions, or (iii) identified these purported limitations in its validity

23  contentions.  *See* Opp. at 3-7.  In fact, Sonos admits that Dr. Schmidt did not "expressly articulate"

24  the four new limitations from Dr. Schmidt's rebuttal report in his opening report.  *See* Opp. at 3.  On

25  this basis alone, Dr. Schmidt's constructions offered for the first time in his rebuttal report regarding

26  "playback queue" should be struck.  Sonos's arguments to the contrary are unavailing.

27       1.    Dr. Schmidt's New Requirements For A Playback Queue Were Not Present
              In His Opening Report On Infringement

28

-1-                          Case No. 3:20-cv-06754-WHA

1    Although Sonos concedes that Dr. Schmidt did not "expressly articulate" his four added

2    requirements of the playback queue in his opening expert report, Sonos argues that these

3    requirements were inherently present in that report.  Opp. at 4-6.  But the passages that Sonos points

4    to in support of its argument are not even within the "Infringement Analysis" section of the

5    report.  And regardless, those passages simply do not disclose the four added requirements.

6    First, Dr. Schmidt's opening infringement report does not address his new requirement that

7    the playback queue is "the list of media items that is used for playback."  Sonos introduced this

8    purported requirement in his rebuttal report, explaining that it required analyzing "which queue" an

9    accused application uses for playback (its local playback queue or remote playback queue).  Ex. 2

10   (Schmidt Reb. Rpt.) ¶ 103.  Although Sonos points to two paragraphs of Dr. Schmidt's opening

11   report for some sort of inherent disclosure of this requirement (Opp. at 5 (citing Opp., Ex. 1 ¶¶ 125-

12   126)), they do not describe the requirement or explain how it is met.  There is no mention of any

13   "queue" in these paragraphs, much less an analysis of whether a computing device in the accused

14   YouTube applications uses its local, as opposed to, remote queue for playback.  Rather, those

15   paragraphs include generic statements regarding the accused "YouTube cloud infrastructure."  Opp.,

16   Ex. 1 ¶¶ 125-126.  This is in sharp contrast to Dr. Schmidt's application of his new purported

17   requirement in his invalidity rebuttal report, where he discussed the operation of the "remote" and

18   "local" playback queue in the prior art and argued why only the "local" playback queue is "used for

19   playback."  *Cf.* Ex. 2 (Schmidt Reb. Rpt.) ¶¶ 202, 208-211.

20   Second, Dr. Schmidt's opening report on infringement does not address his second new

21   additional requirement that the playback queue "contains the entire list of media items selected for

22   playback."  The sole paragraph from Dr. Schmidt's opening report that Sonos cites for some implicit

23   disclosure of this requirement (Opp. at 5 (citing Opp., Ex. 1 ¶ 127)) does not state that a playback

24   queue must "contain the entire list of media items selected for playback" let alone show how the

25   purported requirement is met in the accused YouTube systems.  To the contrary, the paragraph states

26   that when a "client" (*e.g.*, a mobile phone) plays back a "long playlist," it receives messages

27   containing a "portion" of the "playlist" followed by messages containing a portion of the "autoplay"

28   list.  Opp., Ex. 1 ¶ 127.  Showing that messages are used to send a "portion" of the list is clearly not

1   a disclosure of Dr. Schmidt's new  requirement that the *entire* list of media items is stored.

2           Further, Dr. Schmidt's opening report on infringement suggests that there is ***not*** an "entire

3   list" requirement, despite Dr. Schmidt's later adoption of such a requirement in his rebuttal report

4   on validity.  Dr. Schmidt's opening report accuses the YouTube applications of infringing when a

5   user selects an auto-generated playlist containing an "infinite" number of media items for

6   playback.  *See* Ex. 1 (Schmidt Op. Rpt.) ¶ 492.  But Dr. Schmidt never explains in his opening report

7   (or elsewhere) how an "infinite" playback queue could include the "entire list of media

8   items."  Indeed, as a practical matter, this would be impossible.

9           <u>Third</u>, Dr. Schmidt's opening report does not address his additional requirement that the

10  playback queue is "not being used merely to process the list of media items for playback."  Sonos

11  points to two paragraphs that discuss the accused YouTube applications (Opp. at 6 (citing Opp., Ex.

12  1 ¶¶ 128-129)), but those simply state that a "Sender" device (*e.g.*, a mobile phone) maintains a

13  "local queue" in the accused YouTube systems.  *Id.*  This does not disclose in any way the notion

14  that a mobile device is not configured for playback if it has a local playback queue that is "used

15  merely to process the list of media items for playback."  The only other paragraph Sonos points to

16  (*id.* (citing Opp., Ex. 1 ¶ 484)) pertains to non-infringing alternatives (not the accused YouTube

17  applications), and includes a conclusory statement hypothesizing that the "alternative could be

18  nothing more than a Sender having the means to process the list of media items."  But Sonos did not

19  analyze this purported issue at all when discussing the *accused* YouTube applications; that analysis

20  appears only in Dr. Schmidt's reply report.  Ex. 3 (Schmidt Reply Rpt.) ¶¶ 59, 135, 137-138.

21          <u>Fourth</u>, the only paragraphs that Sonos points to in Dr. Schmidt's opening report that

22  purportedly disclose his additional requirement that the playback queue is the "queue that 'runs the

23  show'" (Opp. at 6 (citing Opp., Ex. 1 ¶¶ 480, 484)) merely discuss non-infringing alternatives, and

24  neither mentions the phrase "runs the show" or states that this is a requirement of a playback

25  queue.  It is only in Dr. Schmidt's reply report that he discusses this purported requirement.  Ex. 3

26  (Schmidt Reply Rpt.) ¶¶ 38, 46, 60-63, 132, 136-142, 177.

27          <u>Finally</u>, conceding what is shown above–that none of the cited paragraphs in Dr. Schmidt's

28  opening report "expressly articulate" Dr. Schmidt's four new purported requirements for a playback

queue–Sonos argues that its late disclosure should be excused because those new requirements are responsive to opinions from Google's expert Dr. Bhattacharjee.  Opp. at 4.  But that is nonsensical– it is Dr. Schmidt who expressly added requirements to the Court's claim construction of playback queue, not Dr. Bhattacharjee.  Indeed, Sonos has not identified any specific opinion of Dr. Bhattacharjee that it contends is inconsistent with the Court's Orders in this case.  And Sonos's citation to *MasterObjects, Inc. v. Meta Platforms, Inc.*, No. C 21-05428 WHA, 2022 WL 4856269, at *4 (N.D. Cal. Oct. 3, 2022), Opp. at 4, does not help its cause.  In *MasterObjects*,  this Court refused to strike certain portions of a plaintiff's reply expert report where (i) it contained technical opinions directly responsive to the rebuttal expert report of defendant's expert and (ii) the Court could not conclude that the reply report included "new theories."  *Id.* at *4.  But neither circumstance is present here:  Sonos has not identified or explained how Dr. Schmidt's new requirements are responsive to any particular opinion of Dr. Bhattacharjee, and Sonos concedes that Dr. Schmidt's additional requirements were not expressed in his previous report.  The new claim construction opinions should be struck.

> 2. <u>The Specific Paragraphs Of Dr. Schmidt's Rebuttal And Reply Reports Identified By Google Should Be Struck</u>

Silent on paragraphs 17, 59, 136-138, and 142 of Dr. Schmidt's reply report on infringement, Sonos's opposition appears to concede that they contain the problematic claim construction opinions regarding the "playback queue" at issue here.  *See* Ex. 3 (Schmidt Reply Rpt.) (highlighted in green).  Although Sonos resists Google's request to strike additional paragraphs in Dr. Schmidt's reports (Opp. at 7-8), all of those paragraphs expressly refer to Dr. Schmidt's new purported requirements for the "playback queue."

More specifically, the paragraphs in Dr. Schmidt's invalidity rebuttal report  that deploy his new requirements for the "playback queue" in an attempt to distinguish invalidating prior art while maintaining purported infringement of the accused products should be struck.  *See, e.g.*, Ex. 2, (Schmidt Reb. Rpt.) (highlighted in blue) ¶ 132 (opining that Google's YouTube cloud infrastructure infringes because "the Watch Next queue 'runs the show' for the Sender and Receiver"), ¶ 329 (opining that the remote "party queue" in the prior art YTR is not a "playback

queue" because a  "local" copy is allegedly the queue that is used for playback); ¶ 1005 (opining that infringement cannot be avoided by the presence of a local queue if there is also a "'remote playback queue *provided by* a cloud-based computing system . . . that 'runs the show'") (emphasis in original);

The paragraphs identified by Google in Dr. Schmidt's infringement reply report should also be struck because they purportedly respond to Dr. Bhattacharjee's non-infringement positions but do so using the new requirements introduced in Dr. Schmidt's rebuttal report that the "playback queue" cannot  be used "merely to process the list of media items for playback" and is the queue that "runs the show."  Ex. 3 (Schmidt Reply Rpt.) (highlighted in blue) ¶¶ 38, 39, 46, 60, 62, 63, 65, 68, 128-130, 177, 184, 188.  Similarly, paragraphs 139, 140, 141, 177, and 184 of his infringement reply report should also be struck because they improperly inject the requirement that the "playback queue" be "the list of media items that is used for playback."  *Id.* (highlighted in blue).[1]

   **B.**       **Sonos's New Infringement Theories Based on ▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉ Should be Struck**

Attempting to identify what Sonos contends is the "remote playback queue" in the claims of the '033 patent has essentially been a game of whack-a-mole, with Sonos's theories continuing to change from its infringement contentions, to Dr. Schmidt's opening infringement report, to his rebuttal validity report and reply infringement report, and then finally to Dr. Schmidt's deposition.  This problem is compounded by the fact that each of Sonos's new theories is internally inconsistent with the other disclosed theories.  Google is addressing that issue in its summary judgment papers, where it has shown that Sonos's infringement theories *must* read on the prior art, regardless of Sonos's attempt to twist the claims back and forth.  For purposes of this motion, however, the new theories should be stricken from Sonos's expert reports because Sonos failed to disclose them in its contentions, as was required under the local rules.

---

[1]   Google withdraws its request to strike paragraphs 109-112 of Dr. Schmidt's rebuttal report and paragraph 18 of his reply report.  In those paragraphs, Dr. Schmidt introduced a modification to the Court's construction that this Court previously rejected, but this modification was included in Dr. Schmidt's opening report, and thus the issue of whether Dr. Schmidt has applied a construction different than that provided by the Court is more appropriate for *Daubert*, as Google explained in its opening motion on these issues.  Mot. at 7.

1.   <u>Sonos's Contentions Did Not Disclose Its New Infringement Theory That the Remote Playback Queue is Stored in the Cloud Rather Than Transmitted to the YouTube Application</u>

Sonos's infringement contentions did not disclose that the accused remote playback queue is **_stored_** at a cloud server.  Sonos concedes that the narrative portion of its infringement contentions identified the "remote playback queue" as "a 'Watch Next' queue[] **_provided by_** one or more cloud servers (*e.g.*, a 'Watch Next,' 'InnerTube,' or 'MDx' server) associated with the [YouTube services]." Mot. Ex., 1 at 10 (emphasis added); Opp. at 8-9.  Indeed, for this aspect of the claims, Sonos's contentions point to a Watch Next response *message–i.e.* a message sent from accused "cloud servers" to the accused "computing device." Mot., Ex. 1 at 17-25.  Sonos's contentions thus identified the Watch Next queue as the list of media item identifiers contained in a Watch Next message that is sent to a YouTube application, not a queue that is stored in the cloud.  *Id.* at 7.

Sonos argues in its opposition that it did not intend to take the position it disclosed in its contentions—that the remote playback queue was something "provided by" (*e.g.*, sent) from the identified servers.  Rather, Sonos now argues that what it meant by a remote playback queue being "provided by" a cloud server was that the remote playback queue merely needs to be "resident on one or more Google servers."  Opp. at 9.  But Sonos's contentions did not disclose this—the evidence cited in the contentions for this aspect of the claims discloses only a theory based on the Watch Next response message, not any storage location on a cloud server.

2.   <u>Sonos's Contentions Did Not Disclose Its New Infringement Theory That the Remote Playback Queue is Stored By the</u> ████████████████.

Dr. Schmidt's opening and reply reports also constitute the first time that Sonos disclosed where and how the "Watch Next queue" is allegedly stored—namely, by the ████████████ within a distributed storage system called ████████.  Mot. at 8.  In its opposition, Sonos simply ignores its new reliance on the ████████████████, offering no justification for failing to include this theory in its contentions.  Sonos cannot and does not meaningfully dispute this failure; indeed, Sonos concedes that it did not cite any source code for the ████████████ that would put Google on notice of its storage theory.  Opp. at 12 ("While it is true that Sonos's contentions did not include a specific source code trace for the ██████████ . . . .").  Furthermore, Sonos's contentions only pointed to

1  three specific cloud servers in the context of the remote playback queue:  the "Watch Next,"

2  "InnerTube," and "MDx" servers.  Opp. at 8-9.  None of those is the ███████████████

3  accused for the first time in Dr. Schmidt's reports.

4       Sonos's argument that it intended to accuse something stored on a ██████████████  is

5  further contradicted by the fact that Sonos's infringement contentions coined the term "Watch Next

6  queue" to refer to the "remote playback queue," and the fact that Sonos's contentions only identified

7  specific servers that send a "*Watch Next*" message to the accused computing device.  In contrast,

8  the belatedly-identified ██████████████ do *not* send "Watch Next" messages.  And Sonos's

9  expert, Dr. Schmidt, acknowledges that the ██████████ is distinct from the Watch Next and MDx

10 servers.  Ex. 3 (Schmidt Reply Rpt.) ¶¶ 60, 69.  It is simply not credible for Sonos to argue that the

11 term "Watch Next queue" as coined in its infringement contentions should now be interpreted to

12 accuse something stored on non-"Watch Next" servers that do not send "Watch Next" messages.

13         3.    Google Was Not Put On Notice of Sonos's New Infringement Theories

14      Sonos argues that Google "has long understood that Sonos accuses a playback queue in the

15 cloud" rather than a message providing the media item identifiers from the cloud.  Opp. at 9.  But

16 the statements Sonos relies upon relate to Sonos's claim construction opinions regarding the term

17 "remote playback queue"—they say nothing about Sonos's infringement contentions, much less that

18 those contentions disclose a theory in which a playback queue is stored by the ██████████.

19 Specifically, Sonos points to a statement by Google that it does not infringe because the plain

20 meaning of "remote playback queue" requires a "third-party playback queue," and the "CloudQueue

21 server or MDx" server in the accused YouTube applications are "not supplied by third parties."  *Id*.

22 (citing Opp., Ex. 6 at 48).  Sonos also points to statements in which Google explains Sonos's

23 contention that the plain meaning of "remote playback queue" encompasses any playback queue

24 that is "geographically distant from the computing and playback devices," regardless of whether it

25 is provided by a third-party application.  *Id*. (citing Dkt. 375 at 2; Dkt. 483 at 6; and Opp., Ex. 7 ¶

26 87).  The reality is that Sonos has provided shifting (and inconsistent) infringement theories

27 regarding the term "remote playback queue" throughout this litigation, including at the recent

28 deposition of its expert who seemingly disclaimed his theories that the Watch Next queue is stored

1   in the ████████████   Dkt. 491-12 at 201:4-17 ("████████████████████████

2   ████████████████████████████████████████████████████████████████████

3   ██████████████████████████████████████████████████████████, 212:20-

4   213:6 (███████████████████████████████████████  But these

5   subsequent inconsistent positions do not change Sonos's contentions, which only accuse a Watch

6   Next response message provided by "a 'Watch Next,' 'InnerTube,' or 'MDx' server."

7          Sonos next argues that Google was on notice that Sonos was accusing a Watch Next queue

8   stored on the ██████████  based on certain "excerpts of Google's internal documentation" that

9   Sonos included in its infringement contentions.  Opp. at 11-12 (citing Opp., Ex. 5 at 15).  But the

10  citations Sonos points to only confirm that its infringement contentions accuse a Watch Next

11  message provided by a Watch Next server containing the Watch Next queue—not any structure

12  stored by a ██████████.  The first relevant page of the contentions discusses the "WatchNext"

13  servers.  Opp., Ex. 5 at 14.  The next page—cited by Sonos in its opposition—quoted from two

14  documents that state: "████████████████████████████████████████████████

15  █████████████████████████████████████████  *Id.* at 15 (GOOG-

16  SONOSWDTX-00039673 and GOOG-SONOSWDTX-00039778).  The last excerpt on this page

17  then discusses how the Watch Next response message sent to a client (*e.g.*, a YouTube application

18  on a mobile device) is constructed—namely, a ██████████████████████



19  ██████████████████████████

20  ██████████████████████████

21  ████ ██ ███ █ █ ██ ████ ██ ██

22  ███████████████████  *Id.* at 15

23  (GOOG-SONOSWDTX-00039785).  On the next page,

24  Sonos includes [1] an image (reproduced on the right)

25  ████████████████████████████████████████████████████████████████

26  ████████████████████████████████████████████████████████████████

27  ████████████████████████████████████████████████████████████████

28  ███████████████████████████████  *Id.* at 16.  Sonos' contentions thus consistently

point to the Watch Next messages provided by the Watch Next servers for the "playback queue." That information for inclusion in the Watch Next messages is fetched from the ████████ is clearly **not** a disclosure of some unidentified queue stored by a ████████ server that Sonos contends is the accused remote playback queue. Indeed, the only queue identified in its contentions is the queue in the WatchNext response message.

Despite the fact that its contentions are devoid of any source code for the ████████, Sonos argues that, because it cited to Watch Next source code that communicates with the ████████, Google was on notice of Sonos's theory that the ████████ stores the Watch Next queue. Opp. at 11 (citing ████████████); Opp., Ex. 1 (Schmidt Op. Rpt.) ¶ 248 (identifying the files in Sonos's contentions under the heading "Watch Next service" source code). But the code that Sonos points to simply relates to how the Watch Next response message–the remote playback queue identified by the contentions–is constructed. It does not relate to the storage of any purported remote playback queue by the ████████. Indeed, Sonos's expert testified at his deposition that he is now relying on source code for the ████████ that was first disclosed in his opening report, **not** the source code for the Watch Next service that was previously disclosed. Dkt. 491-12 at 212:210:13-214:25. Sonos has had access to the ████████ for nearly a year. If it had truly intended to accuse the new ████████ theory disclosed in its expert report, it should have included some reference that code in its contentions (or in response to Google's Interrogatory No. 16, which asked Sonos to identify the "source code it was relying upon to show infringement"). Ex. 4. Because no such disclosure was made, the Court should strike Sonos's new ████████ storage theories.

4.    Sonos's Remaining Arguments Are Unavailing

Sonos makes a number of scattershot arguments to attempt to deflect from its clear failure to disclose its new theories. First, Sonos argues that its expert cited some of the same documents in his report as Sonos cited in its infringement contentions. Opp. at 12-13. For example, in Exhibit 10 to its opposition, Sonos showed that GOOG-SONOSWDTX-00039785, which ████████████, was cited in both the contentions and Dr. Schmidt's report. *Id.* at 12; Ex. 10. This is true, but it is irrelevant. Google is not arguing that Sonos disclosed

1   ***nothing*** in its infringement contentions, just that it failed to disclose Dr. Schmidt's new infringement

2   theories regarding the remote playback queue with respect to █████████████████. The

3   critical point here is that Dr. Schmidt also cites to documents and source code that are ***not*** in the

4   contentions, including the new source code and documents for the ████████ that Dr. Schmidt

5   relied on to construct his new █████████████ storage theories. Ex. 1 (Schmidt Op. Rpt.)

6   ¶ 248 (citing source code for the ████████████████████████

7          Second, Sonos attempts to pin the blame for Sonos's inadequate contentions on

8   Google. Sonos argues that it moved to compel discovery regarding claim limitation 1.4 (Opp. at

9   16), and therefore it was somehow deprived of discovery related to the remote playback queue. This

10  is wrong. Sonos's motion to compel relates to the Autoplay and UpNext feature of the accused

11  YouTube applications (Dkt. 377), not the ████████████████, which are the aspects of the

12  products relevant to this motion. In fact, Sonos's claim that it did not receive discovery on the

13  ████████████████████████ is undermined by the fact that its expert, Dr. Schmidt, cites testimony

14  from Google witnesses discussing these features. *See, e.g.*, Ex. 3 (Schmidt Reply Rpt.) ¶¶ 50, 51.

15         Sonos also argues that Google should have affirmatively identified the ████████ in its

16  interrogatory responses, but does not explain why Google would have known of its relevance given

17  that Sonos's contentions do not rely on it in connection with setting out the infringement theories at

18  issue. Opp. at 16. If Sonos wished to accuse the ████████████████, it had access to the

19  relevant source code for over a year. It charted many different aspects and features of the source

20  code, but simply did not identify the ████████████████ until its expert reports.

21         Finally, Sonos's citation to *Oracle Am., Inc. v. Google Inc.*, 2011 WL 4479305, *3-4 (N.D.

22  Cal. Sept. 26, 2011) is inapposite. The *Oracle* Court found that the plaintiff's expert report did not

23  "invoke a new infringement theory" and that its infringement contentions identified the specific

24  source code functions the expert relied upon. *Id*. at *2. In contrast, Sonos has invoked an entirely

25  new theory that the ████████ stores the "a remote playback queue," and its contentions do not

26  cite to *any* source code for the ████████████. And unlike in *Oracle*, Google served an

27  interrogatory requesting that Sonos identify the accused source code, yet Sonos did not identify the

28  source code it now relies on for its ████████████████ storage infringement theory. Ex. 4

GOOGLE'S REPLY IN SUPPORT OF MOTION TO STRIKE
PORTIONS OF THE EXPERT REPORTS OF DOUGLAS SCHMIDT

1   (Sonos Resp. to Interrogatory No. 16).

2   **C.      Sonos's Undisclosed Infringement Theory for Hub Devices Should be Struck**

3   Sonos tacitly concedes that two highly specific playback paths that Dr. Schmidt newly

4   accuses of infringing the asserted claims were not disclosed in its infringement contentions.  *See*

5   Mot. at 9-10.[2]  Instead of arguing that it disclosed these theories (which it cannot), Sonos first

6   provides a laundry list of meritless excuses for its failure to disclose, then contends Google should

7   have been able to deduce at least the voice command pathway theory from its contentions,

8   and  finally nonsensically blames Google for not responding to Sonos's admittedly undisclosed

9   theories.  Opp. at 17-21.  Sonos's assertion that Google should have engaged in a mind-reading

10  exercise to discover Sonos's undisclosed Hub device infringement arguments is illogical.

11          1.     Sonos's Failure to Disclose the Two Playback Paths Is Inexcusable and
                   Cannot Be Attributed to Google's Discovery Responses

12  First, Sonos contends that it was not required to identify *any* particular playback paths as

13  infringing because under the claims, it is only the "***programmed capability*** that was relevant rather

14  than any specific 'playback path.'"  Opp. at 17-18 (emphasis in original).  According to Sonos, the

15  "identified examples of initiating playback at the Hub device" in its contentions were meant "***to***

16  ***demonstrate***"—but not limit—the claimed programmed capabilities "given that the asserted claims

17  are directed to capability."  *Id.* at 18 (emphasis in original).  In other words, because the asserted

18  claim is a system claim, Sonos argues that it did not actually need to identify the specific ways in

19  which the Hub Device is "configured for playback of a remote playback queue."  Unsurprisingly,

20  Sonos cites no authority for this baseless position.  As the party with the burden of proving

21  infringement, Sonos was required to "crystallize its infringement theories early on" to prevent a

22  shifting sands approach to litigation.  *Fresenius Medical Care Holdings, Inc. v. Baxter Intern., Inc.*,

23  2006 WL 1329997, at *4 (N.D. Cal., May 15, 2006) (citations omitted); *see* P.L.R. 3-1(c).  Sonos's

24  position would essentially eviscerate the notice function of the local rules; Sonos cannot broadly

25

26  [2]   More specifically, the new infringement theories are: (1) in a first playback path, a user casting
     could cast content to the Hub from her mobile device and then using the Hub device to *again* cast
27  that same content on to a second Hub device and (2) in a second playback path, a user could orally
     commanding the Hub device to begin playback and then using that same Hub device to cast the
28  same content to a second Hub device.  Mot at 9-11.

1  point to the accused product generally during fact discovery so that it can later argue that every

2  unmentioned "programmed capability" of that product was accused.

3      <u>Second</u>, Sonos next argues that Google should have somehow *gleaned* that Sonos was

4  accusing at least the new voice command playback path from a statement regarding voice commands

5  found in a Google support page cited within Sonos's contentions.  Opp. at 18.  But the statement

6  itself was not even mentioned in Sonos's infringement contentions, and it is clear that Sonos cited

7  this generic support page merely to show a Hub device can run the YouTube application.  Opp., Ex.

8  5 at 8.  Indeed, the quotation Sonos includes from that webpage makes no mention of oral commands

9  and simply conveys the ability to use YouTube with a Hub device.  *Id.*  The associated diagrams

10  show a user *physically* operating a Hub device with his or her finger, not using any voice commands:

https://support.google.com/googlenest/answer/9165738?hl=en ("With YouTube built-in to your Google Nest
display, you can watch YouTube Originals, how-to videos and much more, seamlessly on your screen.").

12  Cast-enabled displays installed with various of Google's own Cast-enabled apps are programmed to perform
this functionality, including but not limited to the YouTube and YouTube Music apps, as illustrated by the
following photos:



17  Opp., Ex. 5 at 8 (annotated with highlighting).  And Sonos's contentions do not cite to any source

18  code relevant to the activation of voice commands.  This generic support page—combined with the

19  lack of any other relevant contention—simply does not disclose the newly accused theory.

20      Relatedly, the Court should also reject Sonos's argument that its failure to identify voice

21  commands is excusable because it is akin to Google's citation to a video about the prior art YouTube

22  Remote in Google's invalidity contentions.  Opp. at 18.  Sonos is comparing apples and

23  oranges.  Google's invalidity contentions did not merely cite to a YouTube Remote video but rather

24  specifically identified the relevant features and functionality that it was relying on in its invalidity

25  contentions, including by providing screenshots of the video that identified the relevant YouTube

26  Remote functionality and excerpting documents that identified the relevant messages.  *See* Dkt. 255

27  at 10-11.  Sonos's contentions do no such thing—instead, those contentions make clear that Sonos

28  accused only a single playback path:  initiating playback on the Hub Device using the display.

1  <u>Third</u>, Sonos closes with number of arguments that improperly attempt to shift Sonos's

2  burden of proving infringement onto Google.  Sonos asserts is that Google should have described

3  the newly accused playback paths it contends are "substantially different" in its response to an

4  interrogatory seeking a description of how the accused hardware devices receive and play back

5  media from the accused software applications.  Opp. at 19-21.  But Google was not obligated to

6  discern the instrumentalities relevant to Sonos's undisclosed infringement theories, search for

7  evidence regarding those theories, and then explain how those un-accused instrumentalities worked,

8  as Sonos argues.  *Smart Wearable Techs. Inc. v. Fitbit Inc.*, 2018 WL 659013, at *1 (N.D. Cal. Feb.

9  1, 2018) ("[T]he purpose of infringement contentions is to put the defendant on notice of the

10  plaintiff's theory of liability and to shape the scope of discovery and litigation.").  And to the extent

11  Sonos claims that this dispute turns on the completeness of interrogatory responses, all of Sonos's

12  new infringement theories should be struck because Sonos never identified ***any*** of the source code

13  for these newly accused playback paths in its response to an interrogatory requesting identification

14  of all source code that Sonos relied upon for infringement.  Ex. 4.

15  2.    <u>The Identified Paragraphs Of Dr. Schmidt's Reports Should Be Struck</u>

16  The Court should also disregard Sonos's assertions that Google "mischaracterizes" certain

17  paragraphs of Dr. Schmidt's reports.  Opp. at 19.  First, Sonos argues that portions of paragraphs

18  178 and 247 of his opening report relate to theories other than the two at issue.  But these paragraphs

19  are almost exclusively directed to his new theories (initiating playback on a Hub device using casting

20  or using voice activation).  Mot., Ex. 2 ¶¶ 178, 247. For example, paragraph 247 of Dr. Schmidt's

21  opening report points to source code for his new theory of initiating playback on a Hub device using

22  casting, and paragraph 178 refers to initiating playback using "a voice input."   *See* Mot., Ex. 4

23  (Bhattacharjee Reb. Rpt.) ¶ 189, Ex. 2 ¶ 178.  For avoidance of doubt, Google does not move to

24  strike any *de minimis* disclosure related to physical usage of the Hub device.[3]

25  Second, Sonos argues that paragraphs 146-149 and 152-155 of Dr. Schmidt's reply report

26

27  [3]  Specifically, Sonos ***appears*** to be referring to the following quotes from paragraph 178:  "Enjoy

28  videos on YouTube…. And listen to music with YouTube Music …." and "[Y]ou can . . . use the
touchscreen display to do the same."  Google withdraws its request to strike these disclosures.

should not be stricken because they "rebut arguments" made by Google's expert (Opp. at 19), but they clearly relate to Dr. Schmidt's new Hub device infringement theories. Mot., Ex. 5. For instance, in paragraphs 146-149, Dr. Schmidt argues that his newly accused voice input theory satisfies the claims. In paragraphs 152-155, Dr. Schmidt argues that a Hub Device is a "computing device" in his newly accused theory where playback on the Hub Device is initiated via a Cast session. *Id.* These theories were not disclosed in Sonos's contentions and thus should be struck.

**D.** **Sonos's New Doctrine of Equivalents Arguments Could and Should Have Been Disclosed Prior to Dr. Schmidt's Rebuttal Report**

Sonos does not dispute that Dr. Schmidt's new doctrine of equivalents arguments addressing the "remote playback queue" element of Limitations 1.4, 1.7, and 12.1 of the '033 patent were never disclosed in Sonos's opening expert report or infringement contentions as required by the Patent Local Rules. *See* Opp. at 21. Instead, Sonos attempts to shift the blame to Google by asserting that these untimely DoE theories merely respond to allegedly "late-breaking" noninfringement theories of Google's expert, Dr. Bhattacharjee. *Id.* Specifically, Sonos references Dr. Bhattacharjee's opinion that Dr. Schmidt has failed to show that a "computing device" (*e.g.*, a mobile phone) in the accused YouTube systems is configured for playback of a "remote playback queue provided by a cloud-based computing system" (Limitation 1.4), let alone that playback responsibility of this same "remote playback queue" is transferred to a playback device (Limitation 1.7).[4] *Id.* at 22.

As explained in Google's opposition to Sonos's motion to strike, Sonos's assertion that Google "first advanced these new non-infringement arguments" in Dr. Bhattacharjee's rebuttal report is incorrect. *Id.* at 22; *see* Dkt. 492 at 15-17. Google's responses to Sonos's Interrogatory Nos. 12 and 15 each (i) explained how Sonos failed to show that the accused computing devices (*e.g.*, phones running the accused YouTube applications) are configured to play back a "***remote playback queue***" (Limitation 1.4) and (ii) provided a detailed example describing how computing devices are instead configured for playback of a ***local*** queue. Opp. at 16-17. Sonos had obviously failed to identify "**the** [same] remote playback queue" for which playback responsibility is

---

[4]  The '033 patent requires that the computing device be configured for playback of "**a** remote playback queue provided by a cloud-based computing system" and that playback responsibility for "**the** remote playback queue" then be transferred to the playback device (Limitations 1.4 & 1.7).

1   transferred to the playback device (Limitation 1.7) given that it never identified "**a** remote playback

2   queue provided by a cloud-based computing system" (Limitation 1.4) in the first place.  *Id.*

3          But even if Google had not put Sonos on clear notice of its noninfringement positions, Sonos

4   cannot plausibly contend it was unaware that the "remote playback queue" in Limitations 1.4 and

5   1.7 must be one in the same until it received Dr. Bhattacharjee's rebuttal report.  It is a well-

6   established principle that "claim terms based on an antecedent relationship . . . carry the same

7   meaning throughout the claims." *Sensor Elec. Tech., Inc. v. Bolb, Inc*., 2019 WL 4645338, at *17

8   (N.D. Cal. Sept. 24, 2019) (internal citations omitted)).  As the party with the "burden of proving

9   infringement . . . either literally or under the doctrine of equivalents," Sonos should have considered

10  this fundamental tenet of claim language interpretation and proffered all of its potential theories at

11  the outset.  *HSU v. Thorsen Tool Co.*, 2014 WL 12570922, at *2 (C.D. Cal. Oct. 17, 2014).

12         Perhaps recognizing this, Sonos pivots to mischaracterizing Dr. Bhattacharjee's opinions in

13  order to cast them as "new."  To be clear, Dr. Bhattacharjee and Google are *not* now asserting that

14  the "contents" or the "location" of the accused "remote playback queue" cannot change.  Opp. at

15  22.  Google's position since the very beginning, as articulated in its interrogatory responses, has

16  been that Sonos has failed to identify ***any*** "remote playback queue" ***at all*** that a computing device

17  (*e.g.*, a phone) is configured to play back—let alone one that is played back both before and after

18  playback responsibility has been transferred to the playback device.  *See* Dkt. 492 at 16 (citing Dkt.

19  463-8 at 60 and Dkt. 491-10 at 14).  Sonos's attempt to link Dr. Schmidt's new DoE theories to Dr.

20  Bhattacharjee's rebuttal report is a transparent effort to make an end-run around its disclosure

21  obligations after failing to prove literal infringement.  Accordingly, these theories should be struck.[5]

22  **II.    CONCLUSION**

23         For the foregoing reasons, Google requests that the Court grant Google's motion to strike.

24

25  _____

26  [5]  Google maintains that the discovery violations are too severe to grant any relief other than striking
    the identified portions of Dr. Schmidt's reports.  However, to the extent that the Court is inclined
27  not to strike Dr. Schmidt's previously undisclosed theories, Google respectfully requests that it be
    permitted to serve a supplemental expert report addressing the new DoE theory and to take an
28  additional deposition of Dr. Schmidt.  Sonos's DoE theory is directed at claims the applicant
    narrowed during prosecution, and Sonos should not be permitted to recapture this surrendered scope.

1

2  DATED:  February 17, 2023          QUINN EMANUEL URQUHART & SULLIVAN,
                                      LLP
3
                                      By:    /s/ Charles K. Verhoeven
4                                          Charles K. Verhoeven (Bar No. 170151)
                                           charlesverhoeven@quinnemanuel.com
5                                          Melissa Baily (Bar No. 237649)
                                           melissabaily@quinnemanuel.com
6                                          James Judah (Bar No. 257112)
                                           jamesjudah@quinnemanuel.com
7                                          Lindsay Cooper (Bar No. 287125)
                                           lindsaycooper@quinnemanuel.com
8                                      50 California Street, 22nd Floor
                                       San Francisco, California 94111-4788
9                                      Telephone: (415) 875-6600
                                       Facsimile: (415) 875-6700
10

11                                         Marc Kaplan (pro hac vice)
                                           marckaplan@quinnemanuel.com
12                                     191 N. Wacker Drive, Ste 2700
                                       Chicago, Illinois 60606
13                                     Telephone:    (312) 705-7400
                                       Facsimile:    (312) 705-7401
14

15                                     Attorneys for GOOGLE LLC

16

17

18

19

20

21

22

23

24

25

26

27

28

GOOGLE'S REPLY IN SUPPORT OF MOTION TO STRIKE
PORTIONS OF THE EXPERT REPORTS OF DOUGLAS SCHMIDT

1

**CERTIFICATE OF SERVICE**

2

 Pursuant to the Federal Rules of Civil Procedure and Local Rule 5-1, I hereby certify that,

3

on February 17, 2023, all counsel of record who have appeared in this case are being served with a

4

copy of the foregoing via the Court's CM/ECF system and email.

5

6

 DATED:  February 17, 2023

7

8

 By:   _/s/ Charles K. Verhoeven_
 Charles K. Verhoeven

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28