# EXHIBIT I

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

PUBLIC - REDACTED

**HIGHLY CONFIDENTIAL - SOURCE CODE - ATTORNEYS' EYES ONLY**

CLEMENT SETH ROBERTS (STATE BAR NO. 209203)
croberts@orrick.com
BAS DE BLANK (STATE BAR NO. 191487)
basdeblank@orrick.com
ALYSSA CARIDIS (STATE BAR NO. 260103)
acaridis@orrick.com
EVAN D. BREWER (STATE BAR NO. 304411)
ebrewer@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:     +1 415 773 5700
Facsimile:      +1 415 773 5759

SEAN M. SULLIVAN (*pro hac vice*)
sullivan@ls3ip.com
COLE RICHTER (*pro hac vice*)
richter@ls3ip.com
LEE SULLIVAN SHEA & SMITH LLP
656 W Randolph St., Floor 5W
Chicago, IL 60661
Telephone:     +1 312 754 0002
Facsimile:      +1 312 754 0003

*Attorneys for Defendant Sonos, Inc.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| GOOGLE LLC,<br><br>　　　　Plaintiff and Counter-defendant,<br><br>　　v.<br><br>SONOS, INC.,<br><br>　　　　Defendant and Counter-claimant. | Case No. 3:20-cv-06754-WHA<br>Related to Case No. 3:21-cv-07559-WHA<br><br>**REBUTTAL EXPERT REPORT OF DR. KEVIN C. ALMEROTH FOR "PATENT SHOWDOWN"** |

194. Second, the Sonos Forums reference, as a whole, does not qualify as prior art under §102(b). Specifically, I understand that the "Macro / presets" thread does not qualify as prior art under §102(b) because it was not published more than one year before the claimed priority date of September 12, 2006. As acknowledged by Dr. Schonfeld, the earliest post from the "Macro / presets" thread is dated September 22, 2005, which is not more than one year before the claimed priority date. Schonfeld Op. Report at ¶ 122; GOOG-SONOS-WDTX-INV-00015877 at 877.

195. Similarly, Dr. Schonfeld has relied on several posts from the "virtual zones and zone grouping" thread that do not qualify as prior art under §102(b) because they were not published more than one year before the claimed priority date. In fact, there are only 5 posts from the "virtual zones and zone grouping" thread (reproduced above) that could qualify as prior art under §102(b), since every other post from that thread is dated no earlier than April 18, 2006. *See* GOOG-SONOS-WDTX-INV-00015870.

196. Moreover, I understand that a claimed invention cannot be anticipated or rendered obvious by a prior art reference if the disclosures of that reference that are cited as alleged prior art are not enabled. Although some aspects of the idea behind a "zone scene" may be disclosed in these threads, I do not find these threads enabling. Indeed, these threads are nothing more than a wish list – they do not enable a POSITA as to how a "virtual zone" or saved "Zone links as favorites" could be implemented. *Id;* GOOG-SONOS-WDTX-INV-00015877 at 877. Without such enablement, the Sonos Forums reference does not qualify as prior art to claim 1 of the '885 Patent.

197. Third, it is my opinion that the Sonos Forums reference does not qualify as prior art under §102(f). In this regard, it is my opinion that Dr. Schonfeld has failed to establish both (1) prior conception of the invention by another from the Sonos Forums, which must be a complete conception of the claimed invention, and (2) communication of that prior conception to the named inventor that is sufficient to enable him to construct and successfully operate the claimed invention, which I understand are required under §102(f).

198. In particular, Dr. Schonfeld has failed to establish prior conception of the invention by another from the Sonos Forums. Notably, Dr. Schonfeld is only relying on the Sonos Forums

1  of creating the "zone group." However, this "All Zones-Party Mode" option also did not meet the requirements of a "zone scene," for several reasons.

312. First, because the "All Zones-Party Mode" option was hard-coded into the Desktop Controller and Sonos Controller software, it was not a user-created, customized group that was "predefined" and "previously-saved" at a user's request as part of an initial "setup" phase, which is a required aspect of a "zone scene." Case No. 20-6754, D.I. 309 at 4 (the Court finding that "the '885 Patent allows a *user to customize* and save multiple groups of smart speakers or other players . . . and then later 'activate a customized group, called a 'zone scene,' on demand), 8 (the Court noting that the "basic purpose of the invention . . . is to allow *users to pre-save customized speaker groups* and later 'invoke' the named group on demand"), 12 (the Court finding that *"[t]he claimed ability to customize and save overlapping speaker groups* and easily control group playback represents a clear technological improvement over the 'conventional multi-zone audio system,' which, as the specification explained, presents significant technological and physical obstacles to forming speaker groups").

313. Second, because the "All Zones-Party Mode" option was hard-coded into the Desktop Controller and Sonos Controller software, the ZonePlayers in a Sonos system were also never "added" to the "All Zones-Party Mode" option by a user via a "network device" in advance of that "All Zones-Party Mode" option being selected, which is another required aspect of a "zone scene." ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[9] Thus, a "zone group" that was created using the "All Zones-Party Mode" option was no different than a temporary "zone group" using the other ad-hoc grouping process. Indeed, in both cases, a ZonePlayer that was added to the "zone group" by the user would ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[9] For this same reason, and as explained further below, a ZonePlayer in Sonos's 2005 system would have never received any "indication" that it "has been added" to the "All Zones-Party Mode" option, as required by limitations 1.6-1.7.

151

**HIGHLY CONFIDENTIAL - SOURCE CODE - ATTORNEYS' EYES ONLY**

1　▮▮▮▮▮▮▮▮▮▮▮▮ and would then automatically configure itself for synchronous playback as part of that "zone group" during the limited period of time that the "zone group" was activated, after which time the "zone group" would be destroyed.

314.　Thus, for at least these reasons, it is my opinion that the "All Zones-Party Mode" option provided by Sonos's 2005 system was merely just a different way to create a "zone group," and also does not constitute a "zone scene." *See also* SONOS-SVG2-00026839-58 at SONOS-SVG2-00026840 (explaining that the "Zone Scene feature" is "similar to the current Party Mode setting that is available" but that "*the Zone Scenes feature is much more flexible and powerful*").

315.　I further note that the Sonos 2005 User Guide never uses the term "zone scenes" or otherwise describes any technology that would have enabled a user to (i) first create a group of ZonePlayers that was "predefined" and "previously-saved" in advance of being activated and then (ii) later select that group for "invocation" in order to activate it, which further confirms that the ZonePlayers in Sonos's 2005 system did not have the capability to be added to a "zone scene."[10]

316.　I have also seen various other Sonos documents confirming that the ZonePlayers in Sonos's 2005 system did not have the capability to be added to a "zone scene." ▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

317.　As another example, entries in Mr. Lambourne's notebook dated October-

---

[10] The evidence I have reviewed also confirms that there was no ability for a user to creating a "zone group" in Sonos's 2005 system that was "according to a common theme," such as by assigning it a name, which fails to meet the requirements of Google's proposed construction of a "zone scene."

### 3. Sonos's 2005 System Did Not Meet Limitations 1.5 / 1.6

341. Limitation 1.5 / 1.6 of the '885 Patent require the "first zone player" to be programmed with the capability for, "while operating in a standalone mode in which the first zone player is configured to play back media individually in a networked media playback system comprising the first zone player and at least two other zone players," "(i) receiving, from a network device over a data network, a first indication that the first zone player has been added to a first zone scene comprising a first predefined grouping of zone players including at least the first zone player and a second zone player that are to be configured for synchronous playback of media when the first zone scene is invoked."

342. In my opinion, Sonos's 2005 system did not meet this requirement.

343. As explained above, the evidence I have reviewed establishes that the ZonePlayers in Sonos's 2005 system did not have any capability to be added to a "zone scene" comprising a "predefined grouping of zone players . . . that are to be configured for synchronous playback of media when the . . . zone scene is invoked," and for this reason alone, a ZonePlayer in Sonos's 2005 system did not have the capability to "receiv[e], from a network device over a data network, a first indication that the [ZonePlayer] has been added to a first zone scene comprising a first predefined grouping of [ZonePlayers] including at least the [recipient ZonePlayer] and a second [ZonePlayer] that are to be configured for synchronous playback of media when the first zone scene is invoked."

344. Additionally, with respect to the hard-coded "All Zones-Party Mode" option identified by Dr. Schonfeld above, in addition to the fact that it was not a "zone scene" as explained above, a ZonePlayer would have never received any "indication" that it "has been added" to "All Zones-Party Mode" option, as required by limitation 1.6.

345. Despite the clear absence of any "zone scenes" capability from Sonos's 2005 system, Dr. Schonfeld opines at paragraph 214 that Sonos's 2005 system discloses limitation 1.6, and while not entirely clear, this opinion appears to be based on a theory that a ZonePlayer in Sonos's 2005 system would have received "a first indication that the [ZonePlayer] has been added to a first zone scene . . ." from a Sonos controller when a user added the ZonePlayer to a new "zone

359. First, as I explained above, the evidence I have reviewed establishes that the ZonePlayers in Sonos's 2005 system did not have any "zone scenes" capability at all, let alone any capability to receive the claimed "first indication that the first zone player has been added to a first zone scene" or the claimed "second indication that the first zone player has been added to a second zone scene." For these same reasons, the ZonePlayers in Sonos's 2005 system fail to meet either the "*after receiving the first and second indications*, continuing to operate in the standalone mode . . ." aspect of limitation 1.8 or the "continuing to operate in the standalone mode *until a given one of the first and second zone scenes has been selected for invocation*" aspect of limitation 1.8.

360. Second, even setting aside the other fundamental differences between a "zone group" and a "zone scene," the evidence I have reviewed shows that a ZonePlayer in Sonos's 2005 system did not have the capability to "continu[e] to operate in the standalone mode" after receiving an indication that it has been added to a "zone group." Instead, a ZonePlayer in Sonos's 2005 system was programmed such that, ▓▓▓▓▓▓▓▓▓▓▓▓ the ZonePlayer would automatically transition from operating in "standalone mode" to operating in accordance with the "zone group" by automatically configuring itself for synchronous audio playback as part of the "zone group," which would disable the ZonePlayer's capability to engage in individual audio playback until the ZonePlayer was subsequently removed from the "zone group." This functionality is confirmed by the Sonos 2005 User Guide, the source code for Sonos's 2005 system, and my discussions with Mr. Millington.

361. Despite the clear absence of this functional capability from Sonos's 2005 system, Dr. Schonfeld opines in paragraph 263 of his Opening Report that Sonos's 2005 system discloses claim limitation 1.8 and then sets forth various theories in an attempt to support this opinion. *See* Schonfeld Op. Report at ¶¶ 263-273. However, nothing in Dr. Schonfeld's Opening Report alters my opinion that the ZonePlayers in Sonos's 2005 system did not have the functional capability required by limitation 1.8.

362. For instance, at paragraphs 266-267 of his Opening Report, Dr. Schonfeld says that "Sonos argues that having a 'zone scene' that is not automatically activated discloses the limitation [1.8]" and that "under Sonos's understanding of the claims," the "All Zones-Party Mode" option

discloses limitation 1.8 under the theory that it "exists at all times because it is a default 'zone scene' and therefore it exists prior to it being 'invoked' as claimed." Schonfeld Op. Report at ¶¶ 266-267. However, this theory is flawed for several reasons.

363.   First, as I explained above, the "All Zones-Party Mode" option is not a "zone scene" as described and claimed in the '885 Patent. Thus, whether or not the "All Zones-Party Mode" option is "automatically activated" is not relevant to limitation 1.8, which requires the "first zone player" to "continu[e] to operate in the standalone mode" after receiving two different "indications" that it has been added to two different "*zone scenes*."

364.   Second, even setting aside the other fundamental differences between the "All Zones-Party Mode" option and a "zone scene," Dr. Schonfeld fails to identify any message received by a ZonePlayer in Sonos's 2005 system that could possibly qualify as a "first indication that the [ZonePlayer] has been added to" the "All Zones-Party Mode" option prior to the time when the "All Zones-Party Mode" option was "selected for invocation," as required by claim 1 of the '885 Patent. This failure by Dr. Schonfeld is not surprising because, as explained above, there is no such "indication" that would have ever been received by a ZonePlayer for the "All Zones-Party Mode" option, which was hard-coded into the Desktop Controller and Sonos Controller software.

365.   Third, in addition to these flaws with Dr. Schonfeld's reliance on the "All Zones-Party Mode" option, Dr. Schonfeld fails to identify any "*second* zone scene" to which a ZonePlayer could have been added or any "*second* indication that the [ZonePlayer] has been added to a second zone scene" that would have been received by the ZonePlayer prior to the time when one of the "zone scenes" was "selected for invocation," as required by claim 1 of the '885 Patent.

366.   Turning to paragraph 268-269 of his Opening Report, Dr. Schonfeld states that "the figures that Sonos relies upon to show this claim limitation was disclosed in the '885 Patent are very similar to the same user interface used in the Sonos System" and "[t]he user interface of the Sonos System allows Zones to be grouped together (or unground) in nearly the same manner." Schonfeld Op. Report at ¶¶ 268-269.

367.   However, as an initial matter, I fail to this how statement regarding the alleged

sources" in Sonos's 2005 system. Moreover, even if one were to have recognized a desire for "greater flexibility in assigning and updating group coordinators and channel sources," I fail to see how that would have motivated a POSITA in 2005-06 to modify Sonos's 2005 system in the many ways that would have actually been required to achieve the claimed invention.

418. Finally, because there is no evidence that a POSITA in 2005-06 would have been motivated to modify Sonos's 2005 system in the many ways proposed by Dr. Schonfeld, it appears that Dr. Schonfeld has used the asserted claims as a roadmap to reach his conclusion that a POSITA would have found the claimed invention obvious based on Sonos's 2005 system, which I understand to be improper.

419. Thus, for these reasons, it is my opinion that claim 1 of the '885 Patent is not rendered obvious by Sonos's 2005 system alone.

### 9. Sonos's 2005 System Combined with Sonos Forums

420. In his Opening Report, Dr. Schonfeld opines that claim 1 of the '885 Patent is rendered obvious by Sonos's 2005 system in combination with the Sonos Forums. *See* Schonfeld Op. Report at ¶¶ 6, 230. I disagree – in my opinion, claim 1 of the '885 Patent is not rendered obvious by Sonos's 2005 system in combination with the Sonos Forums, and Dr. Schonfeld's opinion to the contrary is flawed for several reasons.

421. First, as discussed above, the Sonos Forums reference, as a whole, does not qualify as prior art under §102 (a), (b), or (f). *Supra* Section XI.B.

422. Second, Dr. Schonfeld is only relying on the Sonos Forums to make up for the deficiencies of Sonos's 2005 system with respect to limitation 1.6, but as explained above, Sonos's 2005 system did not meet several other limitations of claim 1, including limitations 1.7-1.10. Thus, even if one were to accept Dr. Schonfeld's opinions regarding the combination of Sonos's 2005 system with the Sonos Forums, claim 1 still would not be rendered obvious by that combination.

423. Third, the Sonos Forums reference fails to disclose or suggest a "first zone player" that is programmed with the functional capability required by limitation 1.6 for various reasons. For instance, Dr. Schonfeld relies solely on the following two posts from the Sonos Forums for limitation 1.6:





Schonfeld Op. Report ¶ 230 (citing Farrar Dep. Exs. 6, 8). Dr. Schonfeld never goes on to explain how the foregoing posts from the Sonos Forums purportedly satisfy limitation 1.6, but regardless, I disagree that the foregoing posts disclose or suggest the claimed "zone scenes" functionality required by limitation 1.6 and the other surrounding language.

424. As explained above, a claimed "zone scene" requires a group of "zone players" that (i) is "predefined" and "previously-saved" at a user's request in advance of the group being activated for synchronous playback as part of an initial "setup" phase during which the group members are "added" to the "zone scene" by a user using a "network device" (*i.e.*, a controller device) and (ii) initially exists in an inactive state such that the "zone players" added to the "zone scene" are "to be configured for synchronous [media] playback" at a future time when the group is invoked, but do not change their operating mode for audio playback at the time of creation and

can thereafter be used for individual audio playback while the "predefined," "previously-saved" group remains in existence and is available to be "selected for invocation" in the future. The foregoing posts' high-level discussion of a "mode" or a "virtual zone" fails to meet all of these requirements. For instance, the foregoing posts do not mention a group being "predefined" and "previously-saved" at a user's request *in advance of the group being activated for synchronous playback* as part of an initial "setup" phase, nor does it mention a group that *initially exists in an inactive state* such that the "zone players" added to the "zone scene" are "to be configured for synchronous [media] playback" at a future time when the group is invoked, but do not change their operating mode for audio playback at the time of creation.

425. Further, the foregoing posts do not disclose or suggest the claimed capability of the "first zone player" to be added to multiple different "zone scenes" that are then both in existence and available to be "selected for invocation" at a later time.

426. Further yet, the foregoing posts do not disclose or suggest any particular functionality for creating a "mode" or a "virtual zone," let alone the claimed functionality whereby a "zone player" is programmed with the capability to, "while operating in a standalone mode," (i) "receiv[e], from a network device over a data network, a first indication that the first zone player has been added to a first zone scene comprising a first predefined grouping of zone players including at least the first zone player and a second zone player that are to be configured for synchronous playback of media when the first zone scene is invoked," (ii) "receiv[e], from the network device over the data network, a second indication that the first zone player has been added to a second zone scene comprising a second predefined grouping of zone players including at least the first zone player and a third zone player that are to be configured for synchronous playback of media when the second zone scene is invoked, wherein the second zone player is different than the third zone player," and (iii) "after receiving the first and second indications, continu[e] to operate in the standalone mode until a given one of the first and second zone scenes has been selected for invocation."

427. Still further, the foregoing posts do not disclose or suggest any particular functionality for invoking a "mode" or a "virtual zone," let alone the claimed functionality whereby

a "zone player" is programmed with the capability to (i) "after the given one of the first and second zone scenes has been selected for invocation, receiving, from the network device over the data network, an instruction to operate in accordance with a given one of the first and second zone scenes respectively comprising a given one of the first and second predefined groupings of zone players" and (ii) "based on the instruction, transitioning from operating in the standalone mode to operating in accordance with the given one of the first and second predefined groupings of zone players such that the first zone player is configured to coordinate with at least one other zone player in the given one of the first and second predefined groupings of zone players over a data network in order to output media in synchrony with output of media by the at least one other zone player in the given one of the first and second predefined groupings of zone players."

428. In this way, the foregoing posts appear to express nothing more than mere hope that Sonos would someday invent a "zone scene" functionality that had not been achieved before. *See, e.g.*, GOOG-SONOS-WDTX-INV-00015877 at 877 ("I would like to setup say Morning mode …."); GOOG-SONOS-WDTX-INV-00015870 at 870 ("Why can't I have a virtual zone …. PLEASE!").

429. Dr. Schonfeld also attempts to rely on Mr. Lambourne's testimony to conclude that "the users requesting 'virtual zones' and 'macro' or 'preset' groups disclosed the 'zone scene' concept." Schonfeld Op. Report at ¶ 231. However, Mr. Lambourne testified that his claimed "zone scene" functionality addressed the need of the foregoing users; not that the foregoing users disclosed the claimed "zone scene" functionality. Lambourne Dep. Tr. at 131:3-7 (" "). In fact, as discussed above, Mr. Lambourne already memorialized his thoughts on his "zone scene" concept at least 4 months before the foregoing post by user "JeffT." *Supra* ¶¶ X-X.

430. Because the Sonos Forums reference fails to disclose or suggest a "first zone player" that is programmed with the functional capability required by limitation 1.6, even if a POSITA in 2005-06 were to modify Sonos's 2005 system to incorporate the discussion in the identified user posts from Sonos Forums, it is my opinion that the ZonePlayers in such a modified Sonos system

186

still would not have the capability required by limitation 1.6 – let alone other capability that was absent from the ZonePlayers in Sonos's 2005 system.

431. Fourth, Dr. Schonfeld has failed to provide any explanation as to how Sonos's 2005 system would have actually been modified to combine it with the subject matter discussed in the identified user posts from Sonos Forums – let alone how that alleged combination would have achieved the claimed invention.

432. Fifth, Dr. Schonfeld fails to provide any explanation or evidence as to how or why these two user posts from the Sonos Forums would have motivated a POSITA in 2005-2006 to modify Sonos's 2005 system in any way – let alone would have motivated a POSITA in 2005-2006 to modify Sonos's 2005 system in the specific ways that would have been required in order to achieve the claimed invention (which go well beyond what is discussed in the Sonos Forums posts). *See* Schonfeld Op. Report at ¶ 230.

433. I have also seen evidence of affirmative reasons why a POSITA would not have been motivated to modify Sonos's 2005 system in view of the identified user posts from the Sonos Forums. For instance, as explained above, I have seen other user posts from the Sonos Forums casting doubt as to how overlapping "zone scenes" would have worked in Sonos's system. For example, even after the claimed conception date, a post from "Majik" on April 18, 2006 suggests that there were concerns about potential "side-effects" if "zones [can] be allowed to be in more than one group." GOOG-SONOS-WDTX-INV-00015870 at 871. I have also seen evidence from other Sonos threads suggesting that, even in 2016, users thought overlapping "zone scenes" would have been "logically impossible" to implement in Sonos's system. SONOS-SVG2-00226916 at 916. Given this skepticism, it is my opinion that a POSITA would have been dissuaded from modifying Sonos's 2005 system in view of the identified user posts from the Sonos Forums.

434. Finally, because there is no evidence that a POSITA in 2005-06 would have been motivated to modify Sonos's 2005 system in view of the identified user posts from the Sonos Forums, it appears that Dr. Schonfeld has used the asserted claims as a roadmap to reach his conclusion that a POSITA would have found the claimed invention obvious based on Sonos's 2005 system in combination with the Sonos Forums, which I understand to be improper.

435. Thus, for these reasons, it is my opinion that claim 1 of the '885 Patent is not rendered obvious by Sonos's 2005 system in combination with the Sonos Forums.

### 10. Sonos's 2005 System Combined with Nourse

436. In his Opening Report, Dr. Schonfeld opines that claim 1 of the '885 Patent is rendered obvious by Sonos's 2005 system in combination with Nourse. *See* Schonfeld Op. Report at ¶¶ 6, 184, 243. I disagree – in my opinion, claim 1 of the '885 Patent is not rendered obvious by Sonos's 2005 system in combination with Nourse, and Dr. Schonfeld's opinion to the contrary is flawed for several reasons.

437. First, I understand that Nourse was cited on the face of the '885 Patent. '885 Patent at 4. As such, I understand that Nourse was considered by the USPTO during prosecution of the '885 Patent, and the USPTO allowed the '885 Patent (including claim 1) to issue over Nourse. Since the USPTO already considered Nourse, I understand that Dr. Schonfeld and Google have the added burden of overcoming the deference that is due to a qualified government agency, such as the USPTO, that is presumed to have properly done its job based on its expertise in interpreting references, its understanding of the level of ordinary skill in the art, and its duty to issue only valid patents. However, it is my opinion that Dr. Schonfeld failed to satisfy this added burden.

438. Second, Dr. Schonfeld is only relying on Nourse to make up for the deficiencies of Sonos's 2005 system with respect to limitation 1.7, but as explained above, Sonos's 2005 system did not meet several other limitations of claim 1, including limitations 1.6, 1.8, 1.9, and 1.10. Thus, even if one were to accept Dr. Schonfeld's opinions regarding the combination of Sonos's 2005 system with Nourse, claim 1 still would not be rendered obvious by that combination.

439. Third, Nourse fails to disclose or suggest a "first zone player" that is programmed with the functional capability required by limitation 1.7 for various reasons.

440. As discussed above, Nourse discloses a conventional "*centralized* speaker system that allows multiple speakers connected to a centralized amplifier speaker line to be monitored and controlled from a central location via a master/slave protocol." Nourse at Abstract; *see also, e.g., id.* at 2:18-20 ("In accordance with the present invention, a speaker system is provided having distributed speakers and amplifiers and centralized speaker monitoring and command control."),