1   QUINN EMANUEL URQUHART & SULLIVAN, LLP
      Charles K. Verhoeven (Bar No. 170151)
2     charlesverhoeven@quinnemanuel.com
      Melissa Baily (Bar No. 237649)
3     melissabaily@quinnemanuel.com
      James Judah (Bar No. 257112)
4     jamesjudah@quinnemanuel.com
      Lindsay Cooper (Bar No. 287125)
5     lindsaycooper@quinnemanuel.com
    50 California Street, 22nd Floor
6   San Francisco, California 94111-4788
    Telephone:    (415) 875-6600
7   Facsimile:    (415) 875-6700

8     Marc Kaplan (pro hac vice)
      marckaplan@quinnemanuel.com
9   191 N. Wacker Drive, Ste 2700
    Chicago, Illinois 60606
10  Telephone:    (312) 705-7400
    Facsimile:    (312) 705-7401

11

12  Attorneys for GOOGLE LLC

13                    UNITED STATES DISTRICT COURT

14                  NORTHERN DISTRICT OF CALIFORNIA

15                      SAN FRANCISCO DIVISION

16  SONOS, INC.,                          CASE NO. 3:20-cv-06754-WHA

17              Plaintiff,                 Related to CASE NO. 3:21-cv-07559-WHA

18       vs.                              **GOOGLE LLC'S OPPOSITION TO
                                          SONOS, INC.'S MOTION TO REALIGN
19  GOOGLE LLC,                           THE PARTIES**

20              Defendant.                The Hon. William H. Alsup
                                          Date: April 13, 2023
21                                        Time: 8:00 a.m.
                                          Location: Courtroom 12, 19th Floor
22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ............................................................................................................1

II.    STATEMENT OF ISSUES TO BE DECIDED ...........................................................2

III.   STATEMENT OF FACTS ............................................................................................2

    A.     The Collaborative Efforts ................................................................................2

    B.     The Two Related Patent Cases .........................................................................3

        1.     Transfer of Sonos's Patent Infringement Case ..................................3

        2.     The Remaining Patent Claims To Be Tried .......................................4

    C.     Google's Breach of Contract and Conversion Claims .....................................5

IV.    LEGAL STANDARD ...................................................................................................5

V.     ARGUMENT ................................................................................................................6

    A.     *Plumtree* Should Be Rejected and Realignment Should Be Denied Because Both Parties Bear Burdens of Proof At Trial .....................................6

    B.     To the Extent They Should Be Considered, the *Plumtree* Factors Weigh in Favor of Denying Realignment .......................................................8

        1.     "What Alignment Is Most Equitable" (First to File, Circumstances of the Declaratory Judgment Action, Forum-Shopping) ...........................8

        2.     "What Alignment Makes the Most Sense" (The Natural Plaintiff, Logical Presentation of Evidence at Trial, Consistency with Local Rules) ...............................................................................13

VI.    CONCLUSION ...........................................................................................................17

1

# <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

## <u>CASES</u>

4

5
*Allegro Ventures, Inc. v. Almquist*,
No. 11-CV-2009-L WVG, 2013 WL 3864329 (S.D. Cal. July 24, 2013) .................... 6, 14

6
*Animal Care Sys., Inc. v. Hydropac/Lab Prod., Inc.*,
No. 13-CV-00143-MSK-BNB, 2014 WL 103812 (D. Colo. Jan. 10, 2014) ................. 8, 14

7

8
*City of Indianapolis v. Chase Nat. Bank of City of New York*,
314 U.S. 63 (1941) ........................................................................................................... 5

9
*Cloanto Corp. v. Hyperion Ent. C.V.B.A.*,
No. C18-0535JLR, 2018 WL 3619635 (W.D. Wash. July 30, 2018) ............................... 13

10

11
*Dolch v. United California Bank*,
702 F.2d 178 (9th Cir. 1983) ........................................................................................... 5

12
*FCE Benefits Administrators, Inc. v. Training, Rehab. & Dev. Inst., Inc.*,
No. 15-CV-01160-JST, 2016 WL 4426897 (N.D. Cal. Aug. 22, 2016) ........................... 14

13

14
*Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*,
No. C 03-01431 SBA(EDL), 2006 WL 1646110 (N.D. Cal. June 12, 2006) . 5, 6, 8, 13, 14, 15, 16

15

16
*Great W. Air, LLC v. Cirrus Design Corp.*,
No. 2:16-CV-02656JADEJY, 2022 WL 943027 (D. Nev. Feb. 1, 2022) .............. 10, 11, 12

17
*Kerr Corp. v. N. Am. Dental Wholesalers, Inc.*,
No. SACV 11-0313 DOC CWX, 2011 WL 4965111 (C.D. Cal. Oct. 18, 2011) ........ 5, 8, 9

18

19
*Kopets v. Kajajian*,
No. CV197990DSFGJSX, 2020 WL 11613849 (C.D. Cal. May 4, 2020) ............ 5, 6, 8, 13

20
*Plumtree Software, Inc. v. Datamize, LLC*,
No. C 02-5693 VRW, 2003 WL 25841157 (N.D. Cal. Oct. 6, 2003) ........ 6, 7, 8, 10, 13, 14

21

22
*Scotts Co. LLC v. Seeds, Inc.*,
688 F.3d 1154 (9th Cir. 2012) ........................................................................................... 5

23
*Sportspower Ltd. v. Crowntec Fitness Mfg. Ltd.*,
No. 817CV02032JLSKES, 2020 WL 7347860 (C.D. Cal. Nov. 18, 2020) ........... 5, 7, 8, 13

24

25
*Texchem Advanced Prod., Incorporated Sdn. Bhd. v. E.Pak Int'l Inc.*,
No. ED-CV-1201341-JGB-SPX, 2013 WL 12114017 (C.D. Cal. Aug. 19, 2013) ............ 15

26
*Therasense, Inc. v. Becton, Dickinson & Co.*,
565 F. Supp. 2d 1088 (N.D. Cal. 2008) ........................................................................... 15

27

28
*WiAV Networks, LLC v. Hewlett-Packard Co.*,
No. C 10-03448 WHA, 2010 WL 11484493 (N.D. Cal. Dec. 17, 2010) .......................... 15

**RULES AND REGULATIONS**

Local Rule 5-1 ................................................................................................................... 18

## I.  **INTRODUCTION**

At the outset of this case, Sonos decided it did not want to be a plaintiff in this Court.  Sonos chose to serve Google with a "courtesy" copy of a patent infringement complaint venued in the Western District of Texas.  Attempting to venue its patent infringement case—which is between two California companies, over patents conceived in California by named inventors in California, regarding products developed in California by engineers in California—in *Texas* was always a nonstarter and was clearly an attempt to manipulate venue.  Further, it seems the only reason Sonos served Google with a copy of its complaint prior to filing was to manufacture a willfulness claim against Google, given that it had never previously mentioned the patents remaining in this case to Google, despite years of patent licensing negotiations between the parties.  In the end, the Federal Circuit found that "the center of gravity of this action is clearly in the [Northern District of California], not in the Western District of Texas," and, even under the demanding *mandamus* standard, directed the Western Texas district court to transfer Sonos's action to this District.  It was not until after Sonos was forced by the Federal Circuit to litigate in this Court that Sonos belatedly petitioned to be plaintiff.

Whereas Sonos attempted to flee this district, Google filed first here as the plaintiff, and brings its own affirmative claims based in contract and common law that are distinct from Sonos's patent infringement claims.  These are claims upon which Google bears the burden of proof and that do not turn on any patent infringement or validity issues.  In 2013, Google and Sonos began collaborating on a project to allow users of Sonos's speakers to seamlessly play back music from Google's Play Music application.  To protect its intellectual property and facilitate the technical discussions during this collaboration, Google entered into a non-disclosure agreement with Sonos that should have prevented Sonos from disclosing any of Google's proprietary information to third parties.  Google and Sonos also entered into a "content integration agreement," under which Google's technical personnel performed development work ███ ██ ██ █ ██████.  As a condition of Google developing this functionality for an integration with Sonos, however, Sonos agreed that ██████████████████████.  Unfortunately Sonos did just that.  Accordingly, as set forth in Google's claims, Sonos has breached its contractual

1   agreements with Google and converted Google's property.

2       Sonos argues that this Court should apply the Ninth Circuit's "primary purpose" test to

3   reassign Sonos as the plaintiff based on the "primary matter in dispute"—but even assuming this is

4   the proper test, the "primary matter in dispute" here is whether Sonos misappropriated Google's

5   technology and breached its contracts with Google.  Google's claims not only stand on their own

6   but set the stage for the entire dispute because they also go to the conception of purported inventions

7   at issue, the development of the accused products, and the development of Sonos's own related

8   products.  Google's claims are not a "defense" to infringement; they are affirmative claims regarding

9   the ownership of the technology at issue in this case.  Accordingly, it is Google that is the true

10   plaintiff in this action.

11       Furthermore, it is not clear that the "primary purpose" test even applies in this

12   situation.  Sonos provided no controlling authority that this test applies outside a situation where the

13   realignment may prevent manufactured diversity jurisdiction.  Instead, courts in this Circuit have

14   held that it is proper to deny a motion for realignment in a declaratory judgment case where both

15   parties bear burdens of proof.  That is the situation here.  Because Google shoulders the burden of

16   proof for its breach of contract and conversion claims, damages associated with those claims, as

17   well as its invalidity claims, the Court should deny Sonos' Motion.

18   **II.**    **<u>STATEMENT OF ISSUES TO BE DECIDED</u>**

19       Whether the Court should realign the parties such that Sonos is designated as "Plaintiff" and

20   Google is designated as "Defendant," despite the fact that Google filed this lower-numbered lead

21   case first, is the current Plaintiff, and bears the burden of proof for its declaratory judgment claim

22   of invalidity and its affirmative claims for breach of contract and conversion.

23   **III.**    **<u>STATEMENT OF FACTS</u>**

24       **A.**    **The Collaborative Efforts**

25       Despite the parties' current litigious relationship, Google and Sonos previously collaborated

26   to bring innovative technology to their customers.  Beginning in the early 2010s, teams at Google

27   and Sonos worked together to integrate Google's music application, Play Music, with Sonos's

28   speaker hardware.  Eventually, the parties launched an integration where listeners with Sonos

1 speakers could play back and control their music directly from a third-party music application

2 (Google Play Music) using cloud queue technology developed by Google—a feat that Sonos had

3 not accomplished with any other music partner.  Indeed, after this success, the parties continued

4 exploring and engaging in other collaborations.

5 But the parties' relationship later began to sour, and Sonos began asserting that Google

6 should take a license to Sonos's patents.  Dkt. 170 ¶¶ 17-29.  Multiple years of negotiations

7 followed, which included various meetings, correspondence, and ███████████████████

8 ████████████████████████████████████████.  *See* Ex. 1 (GOOG-SONOSNDCA-

9 00116067).  At the same time, Google and Sonos continued to work together on technology projects,

10 even after Sonos initiated the legal battles between the two companies in January 2020.  Dkt. 170 ¶

11 37.

12 **B.      The Two Related Patent Cases**

13 1.      Transfer of Sonos's Patent Infringement Case

14 On September 28, 2020, Sonos sent Google a draft complaint asserting infringement of five

15 patents and indicated that it would be initiating a lawsuit in the Western District of Texas.  Dkt. 170

16 ¶ 84; Transferred Action Dkt. 138 at 2; Ex. 2 (Sonos's Draft Complaint).  Even a cursory review of

17 the infringement claims revealed that the dispute had no genuine linkage to the Western District of

18 Texas.  Both Sonos and Google are based in California, the accused products were primarily

19 developed in California, and nearly every relevant witness on both sides appeared to be located in

20 California.   *See* Dkt. 116 at 2-3, 7-8.  Based on Google and its counsel's understanding of the

21 accused products from earlier litigations and the parties' history of licensing discussions,[1] Google

22 determined that it had good faith noninfringement positions and sought protection under the

23 Declaratory Judgment Act by filing this action for declaratory judgment of non-infringement in the

24 Northern District of California.  This action was captioned *Google LLC v. Sonos, Inc.*, No. 3:20-cv-

25 6754.  The following day, on September 29, 2020, Sonos filed its complaint in Texas.  *Sonos, Inc.*

26 *v. Google LLC*, No. 6:20-cv-00881 (W.D. Tex).

27

28 [1]  Sonos concedes that it did not give Google notice of the specific patents remaining in this action.

1    Because the Western District of Texas was clearly the wrong forum for this dispute, Google

2    filed a motion to transfer Sonos's action here in January 2021.  *See* Transferred Action, Dkt.

3    34.  Pursuant to Judge Albright's standing order at the time, the parties then engaged in six months

4    of venue discovery and briefing.  *See* Transferred Action, Dkt. 63.  When the Western District of

5    Texas court denied Google's motion, Google requested that the Federal Circuit order that the case

6    be transferred to this District.  Nearly a year after Sonos had filed its lawsuit, the appellate court

7    concluded that "the gravity of this action is clearly in the transferee district, not in the Western

8    District of Texas'" and "direct[ed] the court to transfer this case to the Northern District of

9    California."  Transferred Action, Dkt. 116 at 5.  Upon transfer to this District on September 28,

10   2021, Sonos's lawsuit was assigned case number "3:21-cv-7559" and related to the lower-numbered

11   lead case (3:20-cv-6754).  *Id.* at 2; Dkt. 122.

12   After the cases were related in this Court, Google amended its complaint in the first-filed

13   action to add declaratory judgment claims for invalidity of the asserted patents.  *See* Dkt. 125.  In

14   response, Sonos filed an answer and counterclaims for infringement of the asserted patents.  *See*

15   Dkt. 135.

16                    2.        The Remaining Patent Claims To Be Tried

17   The patent claims at issue have changed considerably since the cases were initiated over two

18   years ago in light of various procedural events and court orders.  First, Sonos voluntarily dropped

19   two patents included in its original complaint (the '460 and '206 patents) and added another, the

20   '885 patent.  *See* Transferred Action, Dkts. 150, 211.  Then, in August 2022, the Court granted

21   summary judgment in favor of Google for the '615 patent as a result of the patent showdown

22   procedure—finding both that Google did not infringe and that the patent was invalid.  *See* Dkt.

23   316.  In a separate order, the Court also held that Google infringed the '885 patent and rejected the

24   two invalidity arguments Google raised in its opposition to Sonos' summary judgment motion—

25   unpatentable subject-matter and lack of written description support.  *See* Dkt. 309.

26   The Court also thereafter granted summary judgment with respect to the other invalidity

27   arguments that Google had not asserted during the summary judgment phase.  *See* Dkts. 382,

28   350.  Google thereafter sought—and the Court granted—leave to file a motion for reconsideration

1   of the Court's order.  *See* Dkts. 397, 443.  Google's motion is fully briefed and awaiting

2   resolution.  *See* Dkts. 445, 448, 457.

3       **C.**    **Google's Breach of Contract and Conversion Claims**

4       In early 2022, Google brought two independent causes of action against Sonos—namely,

5   state law claims for breach of contract and conversion.  Dkt. 125, at 21-22.  The breach of contract

6   claim seeks remedies for Sonos's violation of the Content Integration Agreement ("CIA"), which

7   governed the parties' Play Music integration collaboration.  *Id.*  Google's conversion claim seeks

8   remedies for Sonos's misappropriation of the technological developments that Google conceived

9   and implemented during that collaboration.  *Id.* at 21-23.

10  **IV.**    <u>**LEGAL STANDARD**</u>

11      No federal rule or statute exists regarding the realignment of parties.  The doctrine of

12  realignment instead stems from the Supreme Court case *City of Indianapolis v. Chase Nat. Bank of*

13  *City of New York*, 314 U.S. 63, 69 (1941), which discussed a court's duty to "'look beyond the

14  pleadings, and arrange the parties according to their sides in the dispute'" in the context of

15  determining whether diversity jurisdiction exists.  *Id.* at 69.  Accordingly, courts—including the

16  Ninth Circuit—have traditionally addressed motions to realign parties for standing or jurisdictional

17  purposes under the "primary purpose" test, which considers the "primary matter in dispute."  *See,*

18  *e.g.*, *Scotts Co. LLC v. Seeds, Inc.*, 688 F.3d 1154, 1157 (9th Cir. 2012); *Dolch v. United California*

19  *Bank*, 702 F.2d 178 (9th Cir. 1983); *see also Kopets v. Kajajian*, No. CV197990DSFGJSX, 2020

20  WL 11613849, at *1 (C.D. Cal. May 4, 2020) ("'[R]ealignment' of the parties is generally relevant

21  in determining whether a court has subject matter jurisdiction.").

22      Neither the Supreme Court nor the Ninth Circuit has confronted the issue of whether the

23  doctrine applies outside of a diversity jurisdiction inquiry.  Where there is no jurisdictional question

24  at issue—as is the case here—district courts have denied realignment when "both parties bear

25  burdens of proof at trial."  *See, e.g.*, *Sportspower Ltd. v. Crowntec Fitness Mfg. Ltd.*, No.

26  817CV02032JLSKES, 2020 WL 7347860, at *5 (C.D. Cal. Nov. 18, 2020); *Fresenius Med. Care*

27  *Holdings, Inc. v. Baxter Int'l, Inc.*, No. C 03-01431 SBA(EDL), 2006 WL 1646110, at *2 (N.D.

28  Cal. June 12, 2006) (declining motion to realign declaratory judgment plaintiff as defendant); *Kerr*

*Corp. v. N. Am. Dental Wholesalers, Inc.*, No. SACV 11-0313 DOC CWX, 2011 WL 4965111, at *3 (C.D. Cal. Oct. 18, 2011) (rejecting the "primary purpose" test because it "traditionally applied in a different context, namely to determine whether a party is improperly designated as a defendant or plaintiff as part of an effort to establish sham diversity jurisdiction").  Where a moving party "give[s] the Court no reason to align the parties . . . and change the standard order of proof where the party that filed suit is given the right to go first," the Court has discretion to deny realignment.  *Fresenius*, 2006 WL 1646110, at *1.

However, some district courts have extended realignment beyond the jurisdictional context based on a court's "inherent power to manage its own cases and courtroom."  *Allegro Ventures, Inc. v. Almquist*, No. 11-CV-2009-L WVG, 2013 WL 3864329, at *2 (S.D. Cal. July 24, 2013).  These courts appear to follow the framework established in the unpublished case *Plumtree Software, Inc. v. Datamize, LLC*, No. C 02-5693 VRW, 2003 WL 25841157 (N.D. Cal. Oct. 6, 2003), wherein the district court applied the "primary purpose" test for determining jurisdictional issues to a non-jurisdictional context.  In determining the "primary matter in dispute," the *Plumtree* court considered six factors: (1) the first party to file, (2) the natural plaintiff, (3) the circumstances of the declaratory judgment action, (4) the logical presentation of evidence at trial, (5) consistency with the local rules and case management order, and (6) forum-shopping.

## V.   ARGUMENT

### A.   *Plumtree* Should Be Rejected and Realignment Should Be Denied Because Both Parties Bear Burdens of Proof At Trial

Sonos relies heavily on *Plumtree* and the "primary purpose" test to argue that realignment is proper outside of the jurisdictional context, but fails to show that the factors from this  unpublished case should govern here.  Critically, *Plumtree* involved a declaratory relief action and infringement action (which was dismissed) that were "mirror images" of each other, which even Sonos admits is not the case here.  *Kopets*, SX, 2020 WL 11613849, at *2 (noting that "the original action in *Plumtree* was for patent infringement and the declaratory judgment was simply for non-infringement of the same patent"); *see* Mot. at 7 (conceding the two cases here only involve "***near-*** perfectly" overlapping claims and counterclaims) (emphasis added).  In fact, the declaratory

judgment plaintiff in *Plumtree* never filed an affirmative invalidity claim and merely sought a judgment that it "does not infringe any valid claim of the Patent In Suit."  *Plumtree Software, Inc. v. Datamize, LLC*, No. C 02-5693 VRW, Dkt. 1 (N.D. Cal. Dec. 4, 2002).  Here, Google has not only asserted declaratory claims for invalidity of the patents, but it has also asserted affirmative breach of contract and conversion claims.

Thus, unlike *Plumtree* and its progeny, this is not a situation where a plaintiff merely "'seeks declaratory relief that it is *not liable* and the defendant counterclaims that plaintiff *is liable*.'"  *Sportswear*, 2020 WL 7347860, at *5 (internal citation omitted).  The asymmetry of the remaining claims in the two actions is shown in the chart below (with claims in which Google bears the burden of proof in red):

| First-Filed Lead Case (***Google LLC v. Sonos, Inc.***, No. 3:20-cv-6754-WHA) | Second-Filed Transferred Case (***Sonos, Inc. v. Google LLC***, No. 3:21-cv-7559-WHA) |
|---|---|
| Google's Count III - Declaration of Noninfringement of 033 Patent<br><br>Sonos's Counterclaim II - Infringement of the 033 Patent | Sonos's Claim II - Infringement of 033 Patent |
| <span style="color:red">Google's Count IV - Declaration of Invalidity of 033 Patent</span> | |
| Google's Count V - Declaration of Noninfringement of 966 Patent<br><br>Sonos's Counterclaim III - Infringement of the 966 Patent | Sonos's Claim III - Infringement 966 Patent |
| <span style="color:red">Google's Count VI - Declaration of Invalidity of 966 Patent</span> | |
| Google's Count VII - Declaration of Noninfringement of 885 Patent<br><br>Sonos's Counterclaim IV - Infringement of the 885 Patent | Sonos's Claim IV - Infringement of 885 Patent |
| <span style="color:red">Google's Count IX - Breach of Contract</span> | |
| <span style="color:red">Google's Count X - Conversion</span> | |

The Court should thus follow the numerous cases that have rejected the applicability of *Plumtree* and denied realignment "[w]here both parties in a declaratory judgment case bear burdens of proof." *Fresenius*, 2006 WL 1646110, at *2; *Kopets*, 2020 WL 11613849, at *1 (declining to apply *Plumtree* because the claims in the two actions were not "mirror images").  Because Google bears the burden of proof for its breach of contract claim and conversion claim, as well as all of its affirmative invalidity claims (*see infra* § V.B.2), *Plumtree* is inapposite.  Indeed, in *Sportspower*, 2020 WL 7347860, at *5, the district court declined to realign declaratory judgment parties because the plaintiff had sought declaratory relief not only for noninfringement but also for joint ownership.  Because the plaintiff would "bear[] the burden of proving joint ownership" such that "both parties bear burdens of proof at trial," the court denied the motion without any further analysis. *Id.; see also Animal Care Sys., Inc. v. Hydropac/Lab Prod., Inc.,* No. 13-CV-00143-MSK-BNB, 2014 WL 103812, at *1-2 (D. Colo. Jan. 10, 2014) (finding *Plumtree* inapplicable and denying motion to realign because "both parties have proof obligations");  *Kerr*, 2011 WL 4965111, at *4 (rejecting *Plumtree* and analyzing realignment under Rule 13).  The Court should do the same here.

### B.   To the Extent They Should Be Considered, the *Plumtree* Factors Weigh in Favor of Denying Realignment

Even if the Court decides *Plumtree*'s "primary purpose" analysis is applicable, Sonos's request for realignment should still be denied.  The six *Plumtree* factors "can be distilled into two primary considerations": "what alignment is most equitable" (the first to file, circumstances of the declaratory judgment action, and forum-shopping factors) and "what alignment makes the most sense" (the natural plaintiff, logical presentation of evidence at trial, and consistency with local rules factors).  *Kopets*, 2020 WL 11613849, at *1, n.2.  On balance, these considerations weigh against realignment.

### 1.   "What Alignment Is Most Equitable" (First to File, Circumstances of the Declaratory Judgment Action, Forum-Shopping)

Sonos points to a singular event in support of its assertions regarding all three of these "equitable" factors: Google's filing of a declaratory judgment action shortly after receiving Sonos's draft complaint. Mot. at 7-9, 11-12.  But Sonos is the party that decided it did not want to be a plaintiff here.  Google filed its case in the proper venue—where the controversy should have

proceeded in the first instance—whereas Sonos attempted to improperly litigate what is clearly a California dispute in Texas.  Google's decision to file its case in the appropriate district (as the Federal Circuit agreed) does not warrant realignment of the parties.

**First To File**.  Sonos's characterization of itself as "the original plaintiff" is erroneous, as it is undisputed that Google was the first party to sue and is the current plaintiff of the lower-numbered lead case.  Sonos contends that the Court should disregard this and apply an exception to the first-to-file rule because Google's declaratory judgment action was an "anticipatory suit" filed to forum-shop.  Mot. at 8.  But, in the context of this dispute, Google is the ***only*** party that brought suit in an appropriate forum.  Sonos elected to bring its claims in Texas, which the Federal Circuit agreed is a venue that has no connection to the parties or the issues in this case.   Google's decision to file first in the correct venue does not provide any equitable reason to realign the parties.

Although Sonos accuses Google of gamesmanship in filing first in the correct venue, it is Sonos's own conduct that warrants scrutiny.  As explained further below, *infra*, Sonos never mentioned the patents remaining in this case during the parties' licensing negotiations, and therefore Sonos had no basis to assert willfulness.  Despite this, Sonos's "courtesy" draft complaint already contained willfulness allegations, and was thus no generous act to notify Google of an incoming patent complaint, but rather a ploy to fabricate pre-suit notice to justify its willfulness claim.  *See* Ex. 2 (Sonos's Draft Complaint).  Sonos's tactics, as well its decision to file suit in a forum that was clearly inappropriate, militate against applying any exception to the file-to-file rule.  Indeed, in light of the Federal Circuit's agreement that the Northern District is the appropriate venue, any "advantage" that Google purportedly sought by filing its declaratory relief action was neutralized by the fact that Sonos should have brought suit in this District at the outset (as Sonos obviously knew at the time).  Thus, even if the Court agrees with Sonos's allegation that Google engaged in gamesmanship, it should still apply the first-to-file rule such that Google remains the plaintiff.  *See Kerr*, 2011 WL 4965111, at *5 (applying first-to-file rule to realign defendant as plaintiff because defendant had filed first, noting that  courts may apply the rule even where the first-filed action is a product of forum-shopping" because "the exceptions to the first-to-file rule are grounded in the principles of equity").

1    Indeed, another court in this Circuit declined to find "bad faith, forum-shopping or

2   misbehavior meriting realignment" in a factually analogous case.  *See Great W. Air, LLC v. Cirrus*

3   *Design Corp.*, No. 2:16-CV-02656JADEJY, 2022 WL 943027, at *3 (D. Nev. Feb. 1, 2022).  In

4   *Great W. Air, LLC v. Cirrus Design Corp.*, the declaratory judgment defendant sent a draft

5   complaint and letter to plaintiff advising of its plan to file in the District of Minnesota on November

6   21, 2016.  The plaintiff thereafter filed a declaratory judgment action on November 18, 2016 in the

7   District of Nevada.  After the defendant filed its complaint as planned, the District of Minnesota

8   transferred the case based on the first to file rule, and the defendant moved for realignment in the

9   declaratory judgment action.  *Id.* at *1-2.  Acknowledging that "there [was] no indication that [the]

10  . . . letter threatening litigation on November 21[] was an empty threat," the court held that the

11  plaintiff "was entitled to file a declaratory relief action to create an 'actual controversy' for

12  adjudication,'" and denied the motion to realign.  *Id.* at *4.

13      ***Circumstances of the Declaratory Judgment Action.***  Google's declaratory judgment action

14  responded to Sonos's threat of litigation and its attempt to improperly manufacture a willfulness

15  claim.  The *Plumtree* court found that "the basic rationale for declaratory judgment"—to "relieve

16  potential defendants from the . . . threat of impending litigation which a harassing adversary might

17  brandish"—was inapposite because the patent owner had already brought suit.  *Plumtree*, 2003 WL

18  25841157, at *4.  But unlike *Plumtree*, Google sought declaratory relief ***before Sonos filed suit***.

19  When Sonos threatened to file another patent infringement suit in its ongoing campaign against

20  Google, and claimed that Google was *willfully* infringing its patents—despite Sonos never

21  previously presenting Google with infringement claims for the patents currently in suit— it was

22  entirely proper for Google to seek to clear away the clouds of Sonos's latest threats.

23      As discussed above, Sonos's September 28, 2020 notice of its intention to initiate a lawsuit

24  was far from Google's first encounter with Sonos's accusations of infringement.  *See supra* §§ III.A,

25  III. B.  Sonos had approached Google years earlier regarding licensing its patents, and the parties

26  had engaged in extensive discussions regarding their respective intellectual property portfolios.  *See*

27  *id.*  During these discussions, Sonos identified two patents that were previously asserted in this

28  action—the '206 and '615 patents.  *See* Transferred Action, Dkt. 51 ¶¶ 20, 22.  Google concluded

at the time that it did not infringe these two patents, a determination that has now been confirmed by the proceedings. *See* Dkt. 316 (summary judgment order that the '615 patent is invalid and not infringed); Dkt. 122 (stipulated dismissal of the '206 patent). Given that the other two patents at issue in Google's declaratory action (the '966 and '033 patents) were related and contained similar limitations to the ones Sonos had previously identified, Google was able to quickly determine that its products did not satisfy those limitations without needing to start the analysis completely anew. *Compare* Transferred Action, Dkts. 1-1 and 1-3 *with* Dkts. 1-2 and 1-4.

In a factually similar case where the plaintiff filed a declaratory action shortly after receiving a draft complaint, the court found it important that "[t]he negotiations of the parties leading up to the filing of the [declaratory judgment] action . . . tend[ed] to demonstrate that the filing of the [declaratory judgment] action was not done in bad faith." *Great W. Air*, 2022 WL 943027, at *3. Likewise, Google and Sonos had been engaged in licensing discussions regarding some of the same accused products for four years prior to Google receiving Sonos's draft complaint. The draft complaint also came at a time when Google and its counsel had been engaged in another litigation with Sonos before the International Trade Commission regarding similar technology and the exact same products that are accused in this case. *See* Transferred Action, Dkt. 84 at 5; Dkt. 34 at 7, n.3. There was thus nothing "inherently suspect" in the circumstances surrounding "[Google's] pursuit of declaratory relief in this case." *Great W. Air, LLC*, 2022 WL 943027, at *3.

***Forum Shopping.*** Given that Google filed its action in the proper venue, this factor is neutral at best, as it was *Sonos* who actually sought to gain an advantage by selecting what the Federal Circuit agreed was the wrong forum. Indeed, this Court acutely this issue, noting that it was "certainly possible that Sonos is ***just as guilty*** of forum shopping here[.]" Dkt. 36 at 4 (emphasis added). This prediction proved to be true. During venue discovery, Sonos fabricated the relevance of unaccused products simply to manufacture a connection to Texas. For example, neither Sonos's complaint nor its initial infringement contentions even mentioned the "Google Cloud Platform"— yet Sonos served amended contentions the day before venue discovery closed to include that product solely in an attempt to manufacture an argument that some Google employees who worked on that product were located in Texas. Transferred Action, Dkts. 38, 84. Unsurprisingly, Sonos never

sought any discovery on Google Cloud Platform post-transfer, and it has disappeared altogether from the case. Transferred Action, Dkt. 77 at 3. In another attempt to grasp at any straws that could remotely link the facts of the case to Sonos's favored forum, Sonos used LinkedIn to locate arbitrary Google employees in Texas whose job titles sounded like they *may* have relevant information. *Id.* at 10. As the Federal Circuit noted, the relevance of these individuals was "highly speculative" as "Sonos's only support for the potential relevance of Mr. Greene's testimony is what appears to be [his] 'LinkedIn' page, which states that he was 'Head of Partnerships & Alliances Google Cloud . . . between 2016 and 2019." Transferred Action, Dkt. 116 at 14. Sonos engaged in these tactics despite knowing full well from the parties' previous litigation regarding related patents and the same accused products that the relevant witnesses were in California.[2] *See* Transferred Action, Dkt. 84 at 5.

Discovery has revealed that Google's representations regarding venue were accurate. The vast majority of the Google witnesses that were deposed reside in the Northern District of California—including nearly every one of its corporate designees. Declaration of Jocelyn Ma ("Ma Decl.") ¶ 4. As the Federal Circuit determined, the "center of gravity of this action is clearly in" the Northern District of California. Transferred Action, Dkt. 116 at 15. And just as Google had indicated during the transfer motion briefing, the Content Integration Agreement—which contains a forum selection clause requiring that related suits be brought in California—continues to play a significant role in this action. *See* Dkts. 211; Transferred Action, Dkt. 223. Thus, the rationale behind realignment to "mitigate[] the effects of . . . evident forum-shopping" is inapplicable here because Sonos should have filed suit in the Northern District at the outset. *Great W. Air*, 2022 WL 943027, at *1 (denying request for realignment where it would not merited "for the sake of equity"). Nor does Sonos provide any basis for its speculation that its Texas complaint would automatically have been the lead case after being transferred to this District if Google had waited to file its declaratory judgment action after Sonos filed first in the Western District. Google's case,

---

[2] Sonos went so far as to assert disingenuously that Google had "a repair facility located in" the Western District, referencing "uBreakiFix," a third-party business offering services such as repairing cracked phone screens for any brand of device.

1   filed in this District first, would *still* be the low-numbered case in that scenario and Google would

2   *still* be the plaintiff. *See* Mot. at 11-12. At the very least, the Court would need to undergo an

3   analysis to determine whether this factor would weigh in favor of realignment. *Cloanto Corp. v.*

4   *Hyperion Ent. C.V.B.A.*, No. C18-0535JLR, 2018 WL 3619635, at *2 (W.D. Wash. July 30, 2018)

5   (consolidating first-filed transferred case with second-filed case but declining to designate first-field

6   transferred case as lead because "[t]he first-to-file rule is not absolute or mechanically-applied").

7           2.   "What Alignment Makes the Most Sense" (The Natural Plaintiff, Logical Presentation of Evidence at Trial, Consistency with Local Rules)

8       Maintaining the status quo with Google as the plaintiff also "makes the most sense" with

9   respect to the presentation of evidence. *Kopets*, 2020 WL 11613849, at *1, n.2. Sonos "has given

10  the Court no reason to . . . change the standard order of proof where the party that filed suit is given

11  the right to go first[.]" *Fresenius*, 2006 WL 1646110, at *1.

12       ***Natural Plaintiff.*** Google is the natural plaintiff because it brings, in the lower numbered

13  lead case, two state law claims for breach of contract and conversion. Mot. at 9. Google alone bears

14  the burden of proof for these causes of action, and Sonos does not have any "mirror image" claims

15  against Google related to either of Google's affirmative claims. Google's affirmative claims turn

16  on a different (albeit related) set of facts regarding Google's collaboration efforts with

17  Sonos. Indeed, the facts related to Google's breach of contract and conversion claims are

18  foundational to many other aspects of this case because they (1) shed light on Google's efforts to

19  develop the "cloud queue" technology that Sonos argues is central to the '033 patent; (2) introduce

20  the working relationship between Google and Sonos and the state of technology in 2011, which is

21  Sonos's claimed priority date; and (3) introduce the primary engineers responsible for development

22  of the technology at issue, including the named inventors on Sonos's patents as well as Google's

23  software engineers.

24       Accordingly, this is not a scenario in which the parties "simply dispute whether one of them

25  is liable" for patent infringement. *See Sportspower*, 2020 WL 7347860, at *5. In *Sportspower*, the

26  court distinguished *Plumtree* and declined realignment because the plaintiff had sought declaratory

27  relief on the issue of joint ownership, which it would bear the burden of proving at trial. *Id.* This

28

case is thus directly on point, as Sonos itself describes Google's affirmative claims as a question of "Google's alleged ownership of the . . . patent." Mot. at 9. Sonos's attempt to downplay the affirmative claims by casting them as mere extensions of non-infringement defenses is not accurate; whether Sonos breached the CIA or converted Google's property ████████████████ ████████████ is an entirely separate inquiry that does *not* depend whatsoever on either infringement or invalidity. Indeed, Sonos itself previously represented to the Western District of Texas court in its transfer briefing that "the CIA and its . . . clauses **have no bearing** on whether Google infringes Sonos's asserted patents and the agreement has no nexus to this [patent infringement] lawsuit." Transferred Action, Dkt. 77 at 5 (emphasis in original).

Thus, contrary to Sonos's assertion, Sonos is not "more properly considered the natural plaintiff" simply because it asserts affirmative claims of patent infringement. Mot. at 9. Sonos argues that realignment is appropriate based on the erroneous characterization that the two cases are "mirror opposites of each other." Mot at 9-10. But unlike the cases cited by Sonos, as explained above, this is *not* a scenario in which Google simply seeks a judgment that it is not liable and Sonos has counterclaimed that Google is liable on the same claims. *Id.* (citing *Plumtree*, 2003 WL 25841157, at *4 (only issues were infringement and validity of the same patents in both cases) and *Allegro Ventures, Inc. v. Almquist*, No. 11-CV-2009-L WVG, 2013 WL 3864329 (S.D. Cal. July 24, 2013) ("To summarize, Plaintiff seeks declaratory relief that it is not liable for Defendant's maintenance and cure, and Defendant counterclaims that Plaintiff's liable for Defendant's maintenance and cure.").

Even as to the patent claims, it is undisputed that "these actions include claims as to which *both* parties have burdens of proof"—Sonos "must prove its claims that [Google] infringed its patents," and Google "must prove its claims that [Sonos's] patents are invalid." *Animal Care Sys. Inc. v. HydropacLab Prods. Inc.*, 2014 WL 103812, at *2 (D. Colo. Jan. 10, 2014). Accordingly, "there is no particular logic that places one in a more 'natural' position as plaintiff." *Id.* Indeed, courts in this district have held in patent cases that "it is proper for a court to deny a motion for realignment" when, as is the case here, "both parties in a declaratory judgment case bear burdens of proof." *Fresenius*, 2006 WL 1646110, at *1; *cf. FCE Benefits Administrators, Inc. v. Training,*

1    *Rehab. & Dev. Inst.*, Inc., No. 15-CV-01160-JST, 2016 WL 4426897, at *2 (N.D. Cal. Aug. 22,

2    2016) (realigning parties where the original plaintiff was longer presenting any affirmative claims).

3          ***Presentation of Evidence at Trial***.  "It is axiomatic that one cannot infringe an invalid

4    patent."  *Texchem Advanced Prod., Incorporated Sdn. Bhd. v. E.Pak Int'l Inc*., No. ED-CV-

5    1201341-JGB-SPX, 2013 WL 12114017, at *15 (C.D. Cal. Aug. 19, 2013) (internal quotations and

6    citation omitted).  Accordingly, Google would not present its case for noninfringement (or "non-

7    liability") first, as Sonos suggests.  Mot. at 11.  Instead, trial should begin with Google's case for

8    invalidity and the state law claims for which Google bears the burden of proof, followed by Sonos's

9    presentation for validity, infringement, willfulness (if still at issue), damages, and defenses to the

10   state law claims, and conclude with Google's rebuttal on non-infringement, willfulness, and

11   damages.  As the *Fresenius* court determined, "[t]his is the logical way to proceed, as it allows the

12   party that filed suit to present first and allows each party to be the first to present evidence on issues

13   on which that party bears the burden of proof."[3]  *Fresenius*, 2006 WL 1646110, at *3; *cf.*

14   *Therasense, Inc. v. Becton, Dickinson & Co.,* 565 F. Supp. 2d 1088, 1091 (N.D. Cal. 2008) *aff'd in*

15   *part, vacated in part*, 649 F.3d 1276 (Fed. Cir. 2011) (noting that trial "would be broken up into

16   three separate phases: (i) invalidity and unenforceability; (ii) infringement (if needed); and (iii)

17   willfulness and damages (if needed)") (Alsup, J.); *WiAV Networks, LLC v. Hewlett-Packard Co.*,

18   No. C 10-03448 WHA, 2010 WL 11484493, at *6 (N.D. Cal. Dec. 17, 2010) ("Consideration will

19   be given to the possibility of bifurcating the trial to separate the invalidity and inequitable conduct

20   portions and try those first.") (Alsup, J.).  This order is also more logical given that the jury will first

21   hear about the relationship between the parties and the development of the accused products through

22   Google's state law claims.  That background will provide helpful context to the jury for the

23   remainder of the case.

24          Contrary to Sonos's assertion, Sonos does not need to present its case of infringement first

25   to avoid juror confusion.  *Id.* ("[T]here is no need for the jury to hear evidence on the issue of

26

27   _____

28   [3]   Nor does the fact that Google added the invalidity claims to its declaratory judgment complaint
     through amendment change the calculus.  Google still bears the burden of proof.

liability first, as the Court has already made a partial determination on that issue."). In fact, permitting Sonos to proceed first on infringement would actually serve to confuse the jury *more*, particularly with respect to the '885 patent. If the jury were instructed that the '885 patent has been found infringed for certain Google products, that could be construed as contradicting the requirement that only a *valid* patent may be found infringed, and therefore it could confuse and preempt the jury's decision on the issue of invalidity. To avoid this risk, invalidity of the '885 patent should be heard prior to Sonos's damages case, which depends on the jury finding that Google is liable for infringement of a valid and enforceable patent. Nor is there is a risk that the jury would be "confused as to the inventions and the general technology at issue" if Google were to present its invalidity case first, as "[Google's] expert witnesses are fully capable of explaining the invention, the general technology, and the key issue[s]" to the jury. *Fresenius*, 2006 WL 1646110, at *3. This is particularly true in light of the circumstances of this case, where Google was actually involved in the development of the purported inventions that Sonos now claims are covered by the asserted patents. *See supra* § III.A.

Likewise, Google's state law claims should be heard prior to Sonos's infringement theories because Google has argued that *it* is entitled to any patent rights stemming from its development of the cloud queue technology. It would not make sense for the jury to hear that Google has infringed Sonos's cloud queue patents when the gating issue of whether Sonos does in fact own those patents has not been addressed.

***Consistency with Local Rules and Joint Case Management***. Sonos reads too much into the Patent Local Rules and the parties' Joint Case Management Statement. While they may have indicated a convenient way for discovery to proceed, neither address the appropriate order of proof as it should be presented to the jury at trial. Moreover, the parties' Joint Case Management Statement was filed prior to Google's amended complaint adding the two affirmative contract-related claims. *Compare* Dkt. 102 (dated January 6, 2022) *with* Dkt. 124 (dated February 4, 2022).

Sonos's assertion that "the parties have treated Sonos as plaintiff throughout discovery," because the patent local rules provide that infringement contentions are followed by invalidity contentions, is also unpersuasive. Mot. at 12-13. First, by the time the Federal Circuit directed that

these actions proceed in this District, the parties had *already* served infringement and invalidity contentions in the Texas case—wherein Sonos was in fact the plaintiff—such that the order of the disclosures in this District was inconsequential. Second, Sonos ignores instances in which the parties have engaged in parallel disclosures for issues on which they bear the burden of proof.  For example, Google served opening expert reports addressing invalidity on the same day that Sonos served its expert reports regarding infringement.  Ma Decl. ¶ 5.  Google also provided detailed information regarding the damages computation for its affirmative contract and conversion claims in its initial disclosures.  Finally, the fact that this District's local rules *always* require that the party claiming infringement serves infringement contentions before the party opposing infringement serves invalidity contentions—regardless of which party asserted its positions or claims first—suggests that this analysis should have little bearing on who the "true" plaintiff is.

In light of the other factors, consistency with the local rules and case management statement does not tip the balance in favor of realignment.[4]

## VI.   <u>CONCLUSION</u>

For the foregoing reasons, Google respectfully requests that the Court deny Sonos's motion to realign the parties.

DATED:  February 21, 2023

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By:   <u>/s/ Charles K. Verhoeven</u>
 Charles K. Verhoeven (Bar No. 170151)
 charlesverhoeven@quinnemanuel.com
 Melissa Baily (Bar No. 237649)
 melissabaily@quinnemanuel.com
 James Judah (Bar No. 257112)
 jamesjudah@quinnemanuel.com
 Lindsay Cooper (Bar No. 287125)
 lindsaycooper@quinnemanuel.com
 50 California Street, 22nd Floor
 San Francisco, California 94111-4788
 Telephone:   (415) 875-6600
 Facsimile:   (415) 875-6700

---

[4]  Sonos's commentary regarding the amount of damages sought by each party in this case is also misguided.  *See* Mot. at 13.  Of course, in a declaratory judgment action, the plaintiff does not seek damages (separate from attorneys' fees) but rather a judgment of non-infringement and invalidity.  Further, Sonos' damages demands are excessive and untethered to the value of the purported inventions.

Marc Kaplan *(pro hac vice)*
marckaplan@quinnemanuel.com
191 N. Wacker Drive, Ste 2700
Chicago, Illinois 60606
Telephone:     (312) 705-7400
Facsimile:      (312) 705-7401

*Attorneys for GOOGLE LLC*

GOOGLE LLC'S OPPOSITION TO SONOS, INC.'S MOTION TO REALIGN THE PARTIES

# CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure and Local Rule 5-1, I hereby certify that, on February 21, 2023, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system and email.

/s/ *Charles K. Verhoeven*
Charles K. Verhoeven