# EXHIBIT AA

# FILED UNDER SEAL

**From:** Jocelyn Ma <jocelynma@quinnemanuel.com>
**Sent:** Friday, February 11, 2022 2:44 PM
**To:** Cole Richter <richter@ls3ip.com>; Lindsay Cooper <lindsaycooper@quinnemanuel.com>
**Cc:** Lana Robins <lanarobins@quinnemanuel.com>; David Grosby <grosby@ls3ip.com>; Nima Hefazi <nimahefazi@quinnemanuel.com>; QE-Sonos3 <qe-sonos3@quinnemanuel.com>; Sonos-NDCA06754-service <Sonos-NDCA06754-service@orrick.com>; Caridis, Alyssa <acaridis@orrick.com>; Roberts, Clement <croberts@orrick.com>
**Subject:** RE: Sonos v. Google - Meet & Confer

Cole,

We write in response to your email below.

**Interrogatory No. 5**
Google has continued to provide supplemental responses to Sonos's multi-part Interrogatory No. 5.  As Nima noted in his February 1, 2022 email, the versions of the accused app source code that Google produced can be determined from the filenames on the review computer.  With respect to the remainder of Sonos's interrogatory, we disagree with your characterization of the burden of locating and providing the information requested, particularly given that Sonos has never articulated what the relevance of a list of every single "software/firmware version" for the various accused hardware and software apps and their corresponding release dates would be with respect to the claims and defenses of this case.  Nevertheless, Google is continuing to investigate Sonos's inquiries and will provide a supplemental response within the next few weeks if such information exists and is reasonably within Google's possession.

**Interrogatory No. 9**
With respect to your first inquiry, the financial information we produced does not contain information regarding the Pixel 6 because the Pixel 6 was only released in Q4 2021.  We are investigating whether Google maintains information regarding revenues, as opposed to "net revenues," in the ordinary course of business and will follow up.

With respect to your second inquiry, Google has already produced P&Ls for the accused apps, which contain revenue information on a worldwide basis.  Given that Sonos's infringement theories under § 271(f) appear to be limited to the accused apps, we do not understand what else Sonos is seeking.  *See* October 21, 2021 Infringement Contentions at 15 and 20 (alleging that Google infringes "by supplying in or from the United States *software and/or firmware components*, which constitute substantial portions of the components of Sonos's patented inventions") (emphasis added); *see also* Dkt. 95-6 at 3 alleging that the specific type or model of computer device on which the app is installed has . . . no bearing on the accused functionality because *that functionality is defined by the accused apps*") (emphasis added).

As for your third inquiry, we can confirm that the documents produced reflect revenue Google earns from sales through all channels, including third-party retailers.

With respect to your fourth inquiry, we are planning to provide information regarding installations of the accused apps.  We are still investigating whether Google maintains information regarding the "number of firmware updates or installs onto the accused media players," and will follow up.

Moreover, your fifth inquiry appears to be a non-issue given that the interrogatory itself notes that "if monthly information is not available," information can be provided for "whatever other periodic reporting period is available."  Google is only required to provide such information as kept in the usual course of business and has done so.

**Interrogatory Nos. 10 & 11**

Your email mischaracterizes both the parties' discussion regarding these interrogatories and the information Google has provided.  Google did not "commit[] to determining whether the 'P&Ls' Google ultimately produced included" the types of revenue streams that these interrogatories seek, but rather maintained its relevance and proportionality objections to every single one of the subcategories listed.  As a compromise, Google offered to consider a more limited and less burdensome set of subcategories, but Sonos refused to narrow its requests.  Additionally, Google has not limited its production to "initial purchase prices" of the accused apps (indeed, that would be nonsensical given that they are available to download for free)—we provided full P&L statements for the accused apps that include worldwide revenue, as well as information regarding sales of the accused hardware products.  Sonos appears to have the information it needs given that it served damages contentions alleging ▮▮▮▮▮ in lost profits and a reasonable royalty award of ▮▮▮▮▮, but to the extent Sonos needs assistance "untangling" these financial documents, Sonos can pose its questions to the witness(es) that Google designates for Topic No. 2 of Sonos's 30(b)(6) deposition notice.

**Interrogatory No. 12**
Your complaints regarding the alleged deficiency of Google's response to Interrogatory No. 12 were neither discussed in your September 23, 2021 letter nor during the parties' meet and confers in November.  Despite this, Google agrees to provide a supplemental response in the spirit of compromise.  Given that Sonos only raised its concern for the first time on January 28, 2022,  we are unable to provide a date certain by which we can provide a supplemental response but will endeavor to do so in the next few weeks.

**Interrogatory No. 16**
Again, your summary inaccurately reflects the parties' discussions on this interrogatory.  Google did not agree to supplement its response to Interrogatory No. 16 on November 23, but rather agreed to consider the request in light of Sonos's position regarding the purported relevance of the information.  Although we disagree that *GREE, Inc. v. Supercell Oy*, No. 19-cv-0070, 2020 WL 4931398, at *3 (E.D. Tex. July 18, 2020) supports Sonos's position with respect to its *Beauregard* claim, Google is willing to investigate Sonos's inquiries and provide a response regarding the location of servers that host the accused apps that are made available for download.  We will endeavor to provide this response in the next few weeks.

**Interrogatory No. 17**
Google produced additional documents that are responsive to Sonos's inquiries regarding marketing and instructional material earlier this week, and will follow up with a supplemental FRCP 33(d) response in the next few weeks.

**YouTube TV and YouTube Kids Source Code (and corresponding document production)**
Per Nima's February 1, 2022 email, additional source code for the YouTube TV and YouTube Kids applications have been loaded onto the review computer.

Best,
Jocelyn

**Jocelyn Ma**
*Associate,*
Quinn Emanuel Urquhart & Sullivan, LLP


jocelynma@quinnemanuel.com
www.quinnemanuel.com

**From:** Cole Richter <richter@ls3ip.com>
**Sent:** Wednesday, February 9, 2022 5:06 PM
**To:** Lindsay Cooper <lindsaycooper@quinnemanuel.com>
**Cc:** Jocelyn Ma <jocelynma@quinnemanuel.com>; Lana Robins <lanarobins@quinnemanuel.com>; David Grosby <grosby@ls3ip.com>; Nima Hefazi <nimahefazi@quinnemanuel.com>; QE-Sonos3 <qe-sonos3@quinnemanuel.com>; Sonos-NDCA06754-service <Sonos-NDCA06754-service@orrick.com>; Caridis, Alyssa <acaridis@orrick.com>; Roberts, Clement <croberts@orrick.com>
**Subject:** RE: Sonos v. Google - Meet & Confer

**[EXTERNAL EMAIL from richter@ls3ip.com]**

Counsel,

Following up on the below.

Best,
Cole

**From:** Cole Richter
**Sent:** Friday, January 28, 2022 5:54 PM
**To:** 'Lindsay Cooper' <lindsaycooper@quinnemanuel.com>
**Cc:** Jocelyn Ma <jocelynma@quinnemanuel.com>; Lana Robins <lanarobins@quinnemanuel.com>; David Grosby <grosby@ls3ip.com>; Nima Hefazi <nimahefazi@quinnemanuel.com>; QE-Sonos3 <qe-sonos3@quinnemanuel.com>; Sonos-NDCA06754-service <Sonos-NDCA06754-service@orrick.com>; Caridis, Alyssa <acaridis@orrick.com>; Roberts, Clement <croberts@orrick.com>
**Subject:** RE: Sonos v. Google - Meet & Confer

Lindsay:

I write again to address Google's deficient interrogatory responses (and corresponding document production). As I explained in my recent email of January 13, 2021, Judge Alsup expects the parties to move discovery forward. This means Google must supplement its deficient discovery responses.

Although we have separately resolved some issues with Google's responses, many remain unremedied. Please refer to my September 23, 2021 letter for further detail.[1]

**Interrogatory No. 5 (and corresponding document production)**

Interrogatory No. 5 seeks, among other things, an identification of all software/firmware version numbers and release dates for the accused instrumentalities. Google's supplemented responses provide only the "the version for the system software that was originally installed on the accused speaker products." In Google's responsive letter of November 1, 2021, Google claimed that to do more would be "unduly burdensome," without an explanation of why pulling subsequent software and hardware versions and release dates for the accused instrumentalities for the relevant time period in this case (2018 to present) would be so onerous. Such information should not be difficult to find and produce. Recognizing this, Google agreed, during the parties' November 8, 2021 meet and confer, to investigate amending its response with a listing of software or firmware updates for the apps and media players by date when the updates were released. Google further agreed to identify the version of software that was produced for inspection this case. Google

3

has yet to supplement to deliver on these commitments, and must do so without further delay. Please provide a date certain by which Google will do so.

**Interrogatory No. 9 (and corresponding document production)**

This interrogatory seeks actual and projected "sales, prices, costs, revenues, downloads, installs, and profits" for the accused instrumentalities. Google's initial response cited a single document that purportedly lists "net revenue" and U.S. "unit sales" in the United States from Q4 2018 through Q4 2020 for certain accused products (GOOG-SONOSWDTX-00053613). Google's supplemental response cites an additional document purportedly listing "net revenue" and U.S. "unit sales" in the United States from Q1 2018 through Q3 2021 for certain accused products (GOOG-SONOSWDTX-00055305).

As explained, these documents fall far short of responding to this interrogatory. First, the documents do not provide any information concerning the Pixel 6 nor any information concerning revenues (not "net revenues") for the hardware products. Second, the documents appear to be limited to U.S. sales of hardware products only, despite Sonos's infringement theories under § 271(f)(1) and § 271(f)(2) plainly rendering foreign sales relevant. *See, e.g., Union Carbide Chemicals & Plastics Technology Corp. v. Shell Oil Co.*, 425 F.3d 1366, 1380 (Fed. Cir. 2005). Third, as explained previously, Sonos cannot tell if the documents reflect sales through all channels (including, for instance, to or through third-party retailers) or whether it is limited to Google's online storefront, or the like. Fourth, the documents do not reflect the number of downloads of each accused app or the number of firmware updates or installs onto the accused media players. Fifth, these documents do not provide the requested information on a monthly basis.

At our November 8, 2021 meet and confer, Google agreed to look into each of these issues. As of now, more than two months later, this information remains outstanding. Please provide a date certain by which Google will supplement.

**Interrogatory Nos. 10 and 11 (and corresponding document production)**

These two interrogatories seek an identification of sales and revenue data for (1) subscriptions for the accused apps, (2) for ads served via accused devices or apps, (3) searches initiated via accused devices or apps, (4) in-app purchases via the accused apps, (5) e-commerce transactions initiated via the accused devices or apps, (6) consumer data collected via the accused devices and apps, and (7) the accused apps' use of the Google Cloud Platform. Google has not responded to this interrogatory. Sonos explained the relevance of the interrogatory in its September 23, 2021 letter, and again at the parties' November 8, 2021 meet and confer. In short, Google's production of high-level financial spreadsheets does not provide the information sought through these interrogatories. Sonos should not bear the burden of untangling Google's finances. The total revenue Google collects from and through the accused instrumentalities is not limited to initial purchase prices. To fairly apportion, Sonos is entitled to know all the different ways Google collects money from and through the infringing products, regardless of how Google itself ultimately allocates that revenue for its own accounting purposes. These interrogatories are narrowly tailored to seek this information.

At the parties' November 8, 2021 meet and confer, Google had committed to determining whether the "P&Ls" Google ultimately produced included these types of revenue streams. Google has yet to provide this information. Please provide a date certain by which Google will supplement.

**Interrogatory No. 12 (and corresponding document production)**

Interrogatory No. 12 requests an explanation of Google's contention that it allegedly does not infringe the asserted patents. Rather than responding to the request as propounded, Google provided a bulleted list of claim elements that Google allegedly does not practice. This is woefully deficient, particularly in light of the demands Google has reciprocally made on Sonos regarding Sonos's rebuttals to Google's invalidity contentions.  Google does not seriously dispute that it must explain why it believes it does not infringe Sonos's patents. Please provide a date certain by which Google will supplement.

**Interrogatory No. 16 (and corresponding document production)**

Interrogatory No. 16 seeks a description of how the accused apps are made available for download onto computing devices in the United States and abroad. Google has yet to respond to this interrogatory, objecting that it is overbroad and unduly burdensome, but without providing any explanation of how or why. In its responsive letter of November 1, 2021, Google argued that "how a given accused app is made available for download onto computing devices" is not an accused instrumentality. It remains unclear to Sonos the relevance of this complaint, particularly in light of Sonos's subsequent explanations of this theory both in writing and during conferrals.

To be sure, "how a given accused app is made available for download onto computing devices" is not itself "an accused instrumentality," but the universe of information on which Google is required to draw in responding to interrogatories is not coextensive with the list of accused instrumentalities. "How a given accused app is made available for download onto computing devices" unquestionably concerns how the accused instrumentalities function and how Google provides them to users. This is highly relevant to Sonos's infringement theories concerning Google servers that host and serve the accused apps for download in the U.S. and abroad. There is no public visibility into Google's server infrastructure and Sonos cannot otherwise determine what servers host and serve the relevant apps, where these servers are located, how the servers are loaded with the accused apps, how users connect to such servers, and so on.  At the parties' last meet and confer, Google agreed to supplement its (non)response to this request but has not yet done so. The information called for is relevant, within Google's possession, and must be provided without any further delay. Please provide a date certain by which Google will supplement.

**Interrogatory No. 17 (and corresponding document production)**

Interrogatory No. 17 seeks an identification of instructions (etc.) from Google to users concerning downloading and subscribing to the accused apps, using a computing device installed with an accused app(s), or using or purchasing an accused media player. Google did not respond, at all.  In its responsive letter of November 1, 2021, Google complained that this interrogatory was overbroad and unduly burdensome. At the parties' November 8, 2021 meet and confer, Sonos explained that it needed no more than a description of what documents exist that might be responsive to this interrogatory. For example, are there documents that show packaging information included with accused devices telling users to download Google Home to activate and use their device? Such documents are not publicly available. Please provide a date certain Google will supplement its response to describe documents responsive to this interrogatory.

**YouTube TV and YouTube Kids Source Code (and corresponding document production)**

On January 7, Google agreed to make the YouTube TV and YouTube Kids source code and corresponding document productions available.  Please provide a date certain by which this code and document production will be made available.

By February 3, please provide a date certain by which Google will supplement to address the foregoing. We have been waiting on this information for months now. Although no further meet and confer should be required at this point, please let us know when you are available prior to February 3 if you think further conferral would be productive.

Best regards,
Cole

[1] For the avoidance of doubt, the focus in this letter on only a subset of the issues raised in our previous letter, and is not a waiver of Sonos's right to raise other deficiencies at a later time, nor an excuse for Google's continued failure to remedy its responses.

**From:** Lindsay Cooper <lindsaycooper@quinnemanuel.com>
**Sent:** Friday, December 17, 2021 2:03 PM
**To:** Cole Richter <richter@ls3ip.com>
**Cc:** Jocelyn Ma <jocelynma@quinnemanuel.com>; Lana Robins <lanarobins@quinnemanuel.com>; David Grosby <grosby@ls3ip.com>; Nima Hefazi <nimahefazi@quinnemanuel.com>; QE-Sonos3 <qe-sonos3@quinnemanuel.com>; Sonos-NDCA06754-service <Sonos-NDCA06754-service@orrick.com>; Caridis, Alyssa <acaridis@orrick.com>; Roberts, Clement <croberts@orrick.com>
**Subject:** RE: Sonos v. Google - Meet & Confer

Cole,

We write in response to your email below.

Infringement Contentions. We maintain our position that the accused YouTube TV and Spotify apps have not been sufficiently charted and disagree that Sonos's highlighted claim charts cure the deficiencies in its infringement contentions. Nevertheless, Google agrees to collect source code and technical documentation for YouTube TV and will let you know when the code is available for inspection. The Spotify app, however, is developed by Spotify. Based on our current understanding of this request, Google does not have the source code for the Spotify app in its possession, custody or control. To the extent Sonos is seeking information regarding casting, Spotify, like every other app developer, has access to the publicly available materials and APIs at developers.google.com/cast which they can incorporate as they see fit.

Sonos's Interrogatories. The following clarifies some inaccuracies in your summary of our discussions regarding Sonos's interrogatories on November 8 and November 23. Google agreed to provide supplemental responses to Interrogatory Nos. 1, 2, 3, 4, 5, 9, 13, 14, and 15 (and the corresponding document productions, if any) and intends to do so on a rolling basis starting next week. Google is also considering providing supplemental responses to Interrogatory Nos. 7 and 17 in light of Sonos's agreement to strike the word "all" from both requests. However, Google expressly noted its relevance, overbreadth, and burden objections to every subpart of Interrogatory Nos. 10 and 11 given the highly tenuous link between the requested sales and revenue information and the accused functionalities. As we stated on the parties' November 8 meet and confer, if Sonos provides narrowed requests, we would be willing to consider them.

Cross-Use. Google proposes cross-use of deposition transcripts, hearing transcripts, and written discovery from the Sonos-Google ITC case. We do not believe that cross use of documents is necessary given that the ITC case involved different patents, accused functionalities, and rules with respect to the scope of permitted discovery.

ESI Protocol. Sonos has requested information regarding availability of email data for certain individuals. Google made a similar request for ten current and former Sonos employees over a month ago in its November 2 letter. Google is willing to provide information regarding the availability of email data for the requested individuals if Sonos provides the same information on a reciprocal basis. We propose that the parties be prepared to exchange information regarding the calendar years for which they have at least some email data for each custodian. Please let us know if this proposal is acceptable to Sonos, and if so when Sonos will be ready to exchange this information.

Lindsay

**From:** Cole Richter <richter@ls3ip.com>
**Sent:** Friday, December 3, 2021 4:43 PM
**To:** Lindsay Cooper <lindsaycooper@quinnemanuel.com>
**Cc:** Jocelyn Ma <jocelynma@quinnemanuel.com>; Lana Robins <lanarobins@quinnemanuel.com>; David Grosby <grosby@ls3ip.com>; Nima Hefazi <nimahefazi@quinnemanuel.com>; QE-Sonos3 <qe-sonos3@quinnemanuel.com>; Sonos-NDCA06754-service <Sonos-NDCA06754-service@orrick.com>; Caridis, Alyssa <acaridis@orrick.com>; Roberts, Clement <croberts@orrick.com>
**Subject:** RE: Sonos v. Google - Meet & Confer

[EXTERNAL EMAIL from richter@ls3ip.com]

Lindsay,

This is a follow-up to our November 23 meet and confer.

*First*, we requested that Google produce (i) source code and related technical documentation for the YouTube TV app and (ii) Google source code that was provided by Google to Spotify for use by the Spotify app or Google source code that is otherwise utilized by the Spotify app, and related technical documentation. These are products that have been identified by name as "Accused Products" at least as early as June 4, 2021 (in Sonos's Second Supplemental Preliminary Infringement Contentions).

Google has refused on grounds that these products are not "properly" part of this case because they were not "separately charted" and Google has been unable to determine which portions of Sonos's infringement contentions charts apply to YouTube TV and which apply to Spotify. We disagree that there is any need or requirement to supply a "separate chart" for each individual accused app. Indeed, in the case you cite, Judge Gilliam prefaces his opinion by explaining "As an initial matter, a separate claim chart for each accused product is not mandatory under Patent Local Rule 3–1(c)." *Finjan, Inc. v. Proofpoint, Inc*., No. 13-CV-05808-HSG, 2015 WL 1517920, at *3 (N.D. Cal. Apr. 2, 2015).

However, to arrest any confusion, we have prepared the attached (https://www.dropbox.com/t/3l9kLyTcOQRi0yAB) annotated claim charts, which highlight the portions of Sonos's charts that are relevant to the YouTube TV and Spotify accused apps. For the avoidance of doubt, the highlighted material would constitute the "separate chart" for these accused apps and thus the effort of preparing "separate charts" here would be an exercise in form over substance. With this, please confirm that Google will make available for inspection or otherwise produce the requested material. Otherwise, please confirm that we are at an impasse so that we can promptly seek relief.

*Second*, you alleged that Sonos's indirect infringement allegations don't comply with L.R. 3-1(d) because they include only "boilerplate" allegations that merely recite the elements of the applicable statutes. We disagree. In over 18 pages, the infringement contentions set out the myriad specific activities alleged to have occurred by Google and the specific activities alleged to have occurred by third-party direct infringers giving rise to Google's liability for indirect infringement. We understand the specific detail you are currently requesting to more appropriately constitute the evidentiary support, or proof, of the specific activities set out, the documentary support for which, we remind you, we have asked Google to produce to no avail. *See, e.g.*, Sonos RFP Nos. 6, 24, 25, 26 and Sonos Interrogatory No. 17. We do not believe such evidentiary support is required by L.R. 3-1. *See AntiCancer, Inc. v. Pfizer, Inc*., 769 F.3d 1323, 1331 (Fed. Cir. 2014) (construing L.R. 3-1 and collecting cases). Nevertheless, as a compromise, we can agree to supplement Sonos's response to Google's interrogatory no. 15 to provide specific documentary examples of the conduct set out (despite that Sonos has already incorporated by reference Google's responses to the above Sonos discovery requests seeking this same information).

*Third*, you raised some confusion surrounding Sonos's contention that Google directly infringes as a result of, *inter alia*, operating servers that host accused software applications for download.  In case it provides further clarification, please see the attached case rejecting an argument that the patent owner's infringement theories fail when directed to a back-end server hosting software that meets the elements of a *Beauregard* claim.  *See GREE, Inc. v. Supercell Oy*, No. 19-cv-0070, 2020 WL 4931398, at *3 (E.D. Tex. July 18, 2020), *report and recommendation adopted*, No. 19-cv-0070, 2020 WL 4922154 (E.D. Tex. Aug. 21, 2020).

*Fourth*, although we indicated that supplementation of Sonos's response to Google's interrogatory no. 18 might be possible, we have considered the issue further and do not believe that any further supplementation is warranted or even possible in advance of the deadline for L.R. 3-8 disclosures in view of the fact that Google has yet to produce any of the outstanding financial and usage information that Sonos has been requesting since the day fact discovery opened.

*Fifth*, on our November 8 meet and confer, Google agreed to supplement its responses to Sonos's interrogatory nos. 1, 2, 3, 4, 5, 7, 9, 10, 11 (and corresponding document production).  Please let us know when you expect this supplementation will occur.

*Sixth*, on our November 23 meet and confer, Google agreed to supplement its responses to Sonos's interrogatory nos. 13, 14, 15, 16, and 17 (and corresponding document production).  Please let us know when you expect this supplementation will occur.

*Seventh*, on our November 8 and November 23 meet and confers, Google indicated that it is still considering whether the parties may use the documents produced in the ITC matter for purposes of this case.  Do you have an update on this?

*Eighth*, on our November 15 and November 23 meet and confers, Google refused to withdraw its DJ allegations regarding the '206 patent, despite that Sonos did not present final infringement contentions concerning the '206 patent in the Texas Action and despite that Sonos withdrew the '206 patent claims on October 28 pursuant to the Patent Showdown Scheduling Order, ¶ 1.  We understand that Google is still considering whether a "withdrawal with prejudice" of all claims of the '206 patent against Google will suffice for Google to withdraw its DJ allegations concerning the '206 patent.  If it does not, please let us know Google's basis for asserting there remains a live and continuing case or controversy concerning the '206 patent in view of *Streck, Inc. v. Rsch. & Diagnostic Sys., Inc.*, 665 F.3d 1269, 1284 (Fed. Cir. 2012).

*Ninth*, on our November 23 meet and confer, Google indicated it is still considering when it will respond to Sonos's complaint in the -7559 case.  Do you have an update on this?

*Tenth*, in consideration of negotiating an ESI protocol, please let us know if Google has email for the following individuals from 1/1/2010 to present.  If, for a given individual, Google does not have email for the entire time period or if there are gaps in the time period, please let us know a rough estimate of time period(s) for which Google does have email.
- Ramona Bobohalma
- Joe Britt
- Chris Chan
- Dmitry Dolinsky
- John Grossman
- Rodrigo Haragutchi
- Kelly Keniston
- Eugene Koh
- Cyrus Master
- Ali Mills
- Owen Otto
- Neel Parekh
- Umesh Patil

- Manual Roman
- Tomer Shekel
- Jason Simmons

Please let us know if you think further conferral on any matter would be productive.

Best,

**Cole B. Richter**



Lee Sullivan Shea & Smith LLP
656 W Randolph St, Ste. 5W, Chicago, IL 60661
312.754.9602 *Main* | 312.757.4478 *Direct*
richter@ls3ip.com | www.ls3ip.com

---

[1] For the avoidance of doubt, the focus in this letter on only a subset of the issues raised in our previous letter, and is not a waiver of Sonos's right to raise other deficiencies at a later time, nor an excuse for Google's continued failure to remedy its responses.

9