```
                                                          Pages 1-17

 1                 UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF CALIFORNIA
 2                    SAN FRANCISCO DIVISION

 3

 4   GOOGLE LLC,                          )  Case No.  20-cv-06754-WHA
                                          )
 5            Plaintiff,                  )  Oakland, California
                                          )  Thursday, February 23, 2023
 6       v.                               )
                                          )  ZOOM VIDEOCONFERENCE
 7   SONOS, INC.,                         )
                                          )
 8            Defendant.                  )
                                          )
 9   _____)

10
                     TRANSCRIPT OF MOTION HEARING
11              BEFORE THE HONORABLE DONNA M. RYU
                  UNITED STATES MAGISTRATE JUDGE
12

13   APPEARANCES:  (via Zoom)

14   For Plaintiff:                   JAMES D. JUDAH, ESQ.
                                      Quinn Emanuel, Urquhart &
15                                    Sullivan, LLP
                                      50 California Street, 22nd, Floor
16                                    San Francisco, California 94111
                                      (415) 875-6600
17
                                      NIMA HEFAZI, ESQ.
18                                    Quinn Emanuel, Urquhart &
                                      Sullivan, LLP
19                                    865 S. Figueroa Street, 10th Floor
                                      Los Angeles, California 90017
20                                    (213) 443-3879

21   For Defendant:                   COLE B. RICHTER, ESQ.
                                      Lee Sullivan Shea & Smith LLP
22                                    656 W. Randolph Street, Floor 5W
                                      Chicago, Illinois 60661
23                                    (312) 754-0002

24

25   Proceedings recorded by electronic sound recording; transcript
     produced by transcription service.
```

2

1 APPEARANCES: (Cont'd.)

2 Transcription Service:  Peggy Schuerger
                          Ad Hoc Reporting
3                         2220 Otay Lakes Road, Suite 502-85
                          Chula Vista, California 91915
4                         (619) 236-9325

<u>OAKLAND, CALIFORNIA   THURSDAY, FEBRUARY 23, 2023   1:45 P.M.</u>

--oOo--

THE CLERK: Calling Civil Case C-22-6754-WHA, Google LLC v. Sonos, Inc. Counsel, please state your appearances, starting with the Plaintiff's attorneys first.

MR. JUDAH: Good afternoon, Your Honor. James Judah from Quinn Emanuel on behalf of Plaintiff Google LLC.

THE COURT: Good afternoon.

MR. JUDAH: And with me is my colleague Nima Hefazi.

THE COURT: Good afternoon to you both.

MR. HEFAZI: Good afternoon, Your Honor.

MR. RICHTER: Good afternoon, Your Honor. Cole Richter on behalf of Sonos, Inc.

THE COURT: Good afternoon. Who will be arguing this joint discovery letter on behalf of Google?

MR. JUDAH: Your Honor, if it's all right, we'd like to split -- split it between the two issues. I'll be arguing about Interrogatory No. 19, and Mr. Hefazi No. 20.

THE COURT: Okay. Mr. Judah, for some reason, your volume is really low. I'm wondering if we bump up the -- go ahead. Say something.

MR. JUDAH: Oh, is that -- is that better?

THE COURT: That's a lot better. Thank you.

MR. JUDAH: Great. Great.

THE COURT: Okay. So this is Sonos's motion to strike

1   two new theories or at least to get additional discovery because
2   Sonos argues that new information was disclosed on the very last
3   day of discovery and they weren't able to take steps to further
4   investigate those new -- that new information.
5   　　　　　So Google first argues that the joint discovery letter
6   was filed too late because Judge Alsup entered an order that all
7   discovery motions had to be filed by October 14th of 2022.  Fact
8   discovery closed on November 30th of 2022.  And then the joint
9   letter was filed after that.
10  　　　　　So I -- I am inclined to go ahead and hear the dispute
11  because what Sonos is saying is that the challenged conduct didn't
12  happen until after the October 14th discovery motion deadline
13  because it's this -- what happened was Google supplemented these
14  two interrogatories on the very last day of discovery, on November
15  30th, 2022, and they're saying that -- that precluded them from
16  bringing a timely motion and also precluded them from doing the
17  follow-up discovery.  So under those circumstances, I think it's
18  appropriate to hear the dispute.
19  　　　　　Let's start with the first one.  The first one has to
20  do with Interrogatory No. 19.  Mr. Judah, is that going to be you?
21  　　　　　MR. JUDAH:  That's right.
22  　　　　　THE COURT:  Okay.  So here's my understanding of what
23  happened -- is an interrogatory was propounded back in August of
24  2021.  It had asked for factual newer contentions regarding the
25  unclean hands defense.


And in response, Google gave I'm going to say kind of a very broad somewhat of a non-response, right? It was early on, but what Google did was pointed to pleadings, to initial disclosures, it pointed generally to source code, it pointed to documents that were 70,000 pages' worth of information. So not a very synthesized answer.

There's no supplement until the last day of discovery, November 30th, 2022. On that day, Google gives 20 pages of a narrative response, and for the first time -- and I don't think this is disputed -- but for the first time, Google discloses a theory of unclean hands that Sonos has improperly used what it developed with Google with other parties so that, you know, with-other-parties piece of the theory is new as of the last day of discovery.

So Google has a few arguments here in the letter. The first one is -- Google says, Well, Sonos was on notice of this because there's this agreement between Sonos and Google that talks about use with third parties and so they should have known, but that's not really an answer. I mean, the fact that there's something in an agreement doesn't get at this issue, doesn't put them on notice of the unclean hands defense with respect to the third party use.

Google also says that Sonos didn't take any unclean hands discovery, so why should they get to now? And I think that that's a meaningful point -- and I don't think they'll get to

1  generally take unclean hands discovery now -- but there is a new
2  theory here and that's undisputed.  We're now talking about third
3  parties.
4              And what's important here is that Sonos has pointed
5  out that they'd be entitled to ask questions about whether Google
6  had knowledge and acquiescence in those third party uses.  And
7  they'd be prejudiced if they didn't get that chance, and I tend to
8  agree.
9              So I would not strike your theory because I think
10 there's a remedy for it, but I do think that Google's behavior in
11 giving the supplementation on the very last day precluded Sonos
12 unfairly from some basic follow-up on this.  And that should be
13 remedied.
14             So -- you know, Google says, Well, we couldn't give
15 a full response until November 30th, but there's pieces in the
16 response that points to information that was available sooner than
17 that.  So, you know, by waiting until the very last minute, Google
18 is buying part of this problem.
19             So Mr. Judah, I think you hear where I'm headed on the
20 merits on this.  We'll talk about the remedy in a moment.  But
21 I'll let you argue on the merits if you want to.
22             MR. JUDAH:  Just a couple points to clarify, Your
23 Honor.  The first is that Interrogatory No. 19 is not -- doesn't
24 use the word "unclean hands," right.  It's a catchall tell us
25 everything about all your affirmative defenses.

7

1  THE COURT: Right.

2  MR. JUDAH: The second thing is, I mean, it's a little
3 bit maybe of arguing over words, but I wouldn't necessarily call
4 this -- I wouldn't agree that it's a new theory. I think it's new
5 facts relevant to an existing theory that we did plead and is in
6 the initial response, which is -- and this is something that we
7 laid out in the pleadings themselves, right, that, you know, the
8 unclean hands defense is based on allegations that Sonos had
9 "wrongfully used information it learned from Google's development
10 work," despite Sonos's agreement that Sonos "would not claim any
11 right in it."

12  And so while we didn't -- we didn't identify the
13 specific facts that part of that -- that relate to that theory
14 that include, in part, Sonos's misuse of that information with the
15 other user providers -- that was added during discovery the last
16 day of fact discovery. And that information -- but I would
17 consider that facts relevant to an existing theory, not a new
18 theory.

19  Relating -

20  THE COURT: Fair enough. Fair enough.

21  MR. JUDAH: And relating --

22  THE COURT: I think that is a little bit of semantics,
23 but I -- I hear your point and, as I said, I think the remedy is
24 not to reopen discovery on unclean hands defense. It's about this
25 new piece of it. Whether we're going to call it law or facts or

1  theories, it's this new part of it that's emerged.
2             MR. JUDAH:  Fair enough, Your Honor.  And the only --
3  the only other thing I'll point out on this issue and then we can
4  talk about the rest is that, you know, what we supplemented with
5  the information that we got from discovery all came obviously from
6  Sonos.  All the information that we identify of these facts, right
7  -- that Sonos is seeking to strike or now say that they need --
8  they would have taken more discovery on, all -- is all documents
9  that Sonos produced that they designated "highly confidential,"
10 "attorneys' eyes only" that obviously Google never saw until the
11 lawyers saw it during discovery.  It comes from emails that Sonos
12 produced also designated "highly confidential," "attorneys' eyes
13 only," and it comes from depositions of Sonos employees or former
14 employees that, you know, our lawyers took during discovery that
15 again Sonos has designated as "highly confidential," "attorneys'
16 eyes only."
17            So all we did is identify facts that came from Sonos,
18 right.  I mean, whose unclean hands are we talking about -- Sonos
19 or Google?
20            THE COURT:  Well, except that you had those documents
21 Nobody's saying that you didn't -- you only got them on  November
22 30th, right?  You had them.  So didn't let Sonos know about this
23 new theory -- this new information that you discovered until the
24 last day and, as Sonos has pointed out, they therefore did not
25 have the opportunity to do discovery on something like knowledge

1   and acquiescence which is not in their possession.  That's in
2   Google's possession.
3               MR. JUDAH:  I -- again, I don't want to kind of
4   wordsmith on little things.  The only thing I'll disagree with in
5   what you said -- and I agree with most of it -- is that the only
6   way Google would know anything about the conduct that -- the facts
7   that we identify in support of this unclean hands theory would
8   have come from Sonos; right?  And Sonos would have had to tell
9   Google.  I don't know how else Google would have gotten the
10  information considering that even today, I can't even talk about
11  the specific facts that Sonos is seeking to strike in the
12  supplemental rog. response because they're all designated "highly
13  confidential," "attorneys' eyes only," and it's a public courtroom
14  and I believe a client from Google is on the line.
15              So it's -- Sonos already knows.  They told someone
16  from Google and they haven't identified any evidence of that which
17  is I think why this is a fishing expedition, but that gets to the
18  second point not to the first one.
19              THE COURT:  Okay.
20              MR. JUDAH:  So --
21              THE COURT:  I think under this factual situation, what
22  happened, Sonos gets -- should have an opportunity to ask
23  questions about this, including questions about what Google knew
24  about and what they did to either object or not object.  Those are
25  -- those are pieces of facts that we can't say are in Sonos's

1  possession.  They would want to nail those down.  And by giving
2  them information on the very last day that you had before, they
3  did not get that opportunity so I'm going to give them a bit of an
4  opportunity.
5         But, Mr. Richter, I don't think this the broad
6  discovery that you're asking for in the letter.  First of all,
7  tell me who are Evans and Joyce?
8         MR. RICHTER:  Yes.  Thank you, Your Honor.  Cole
9  Richter on behalf of Sonos.  Mr. Evans and Mr. Joyce are Google
10 employees or were Google employees during the relevant time
11 period; that there are documents and emails in the production that
12 tend to show that those individuals, along with other individuals
13 who Sonos had already deposed, were discussing and knew about
14 Sonos -- that Sonos was going to use these documents with third
15 parties.  So they -- those individuals had direct knowledge of
16 Sonos's partnership goals and broader goals of expanding Sonos's
17 partnership and using certain technology with other parties.
18         So those are two individuals.  They're certainly not
19 the only two individuals at Google.  There are other individuals
20 who had knowledge of these facts, Your Honor.
21         THE COURT:  Here's what I'm inclined to allow.  I
22 would allow a two-hour 30(b)(6) deposition on this I'm going to
23 call it theory of unclean hands, okay, that has to do with use of
24 the joint information with third parties, okay?  Plus a two-hour
25 deposition of either Evans or Joyce.  It's the Plaintiff's choice.

```
 1  But it's only one of them, it's only two hours, and it's only on
 2  this topic.  Okay?
 3              MR. RICHTER:  Okay.  By -- I'm sorry, Your Honor, by
 4  "Plaintiff's choice," do you mean Google's or Sonos's?
 5              THE COURT:  I'm sorry -- Sonos's choice.
 6              MR. RICHTER:  Okay.  Understood.
 7              THE COURT:  Sonos's choice.  Okay.  So let's move on
 8  to Interrogatory No. 20.  Mr. Hefazi, that's you; correct?
 9              MR. JUDAH:  It is, and I apologize, Your Honor.  I
10  just have one clarification question.  When you say this topic of
11  the theory, is that of Google's knowledge of it or is this the
12  underlying conduct --
13              THE COURT:  It can be -- I don't want to parse things
14  too much here because I don't think that would be fair.  I think
15  it's about  -- well, I'm ordering that it's about the unclean
16  hands defense with respect to the theory that Sonos had unclean
17  hands because it used the jointly-developed information with third
18  parties.  Okay?
19              MR. JUDAH:  Understood, Your Honor.
20              THE COURT:  But it can't -- but the depositions can't
21  be more broadly about unclean hands because Sonos didn't try to
22  take discovery during the discovery period.  Okay?
23              MR. JUDAH:  Understood.  Thank you.
24              THE COURT:  All right.  Interrogatory 20.  This asked
25  for contentions about Google's claim that any secondary
```

considerations of non-obviousness do not support the non-obviousness of each asserted claim.

So Google originally declined to answer this because they said it was premature, and that's back -- and I'm not sure when that happened, but that's not completely unusual given that it's a contention interrogatory. But then on the very last day of discovery, there's a three-page narrative that lays out the contentions.

So this is my understanding of the parties' positions. Google says Sonos shouldn't get more discovery on this because Sonos was on notice of these facts and theories because Google's experts specifically addressed these contentions on secondary considerations as part of their expert reports. And that's Schonfeld and Bhattacharjee. Their reports came out in June of 2022. So I think that Google's position is, Our interrogatory response on November 30th, 2022 might have been more detailed than was in the expert reports, but certainly there was enough there for Sonos to follow up on if they wanted to, so there's no sandbagging. I think that's what Google is saying.

Sonos says, Their response in the interrogatory goes way beyond what the experts said and the experts didn't really give any detail or explanation. And specifically in this more recent joint letter, Sonos points out that there's a simultaneous invention theory that was raised in June 2022 by Google but in connection with the '615 patent, so -- just the '615, which is no

1  longer really at issue, but that the supplemental interrogatory
2  response for the first time raises that simultaneous invention
3  theory with respect to the '033 patent.  So Sonos says, We didn't
4  know that that was going -- that that was part of their
5  contention.
6              Did I get that right, Mr. Richter?
7              MR. RICHTER:  Yes, Your Honor.
8              THE COURT:  Okay.  So here's my question to you, Mr.
9  Richter.  There's this first joint discovery letter that happens
10 after the November 30th, 2022 supplemental response.  And then
11 there's expert depositions, including Bhattacharjee on the '033
12 patent.  Did you ask him about this?
13             MR. RICHTER:  We did not ask him about the
14 simultaneous invention theory.  I believe we did ask him about
15 Airplay which is involved in the simultaneous invention theory.
16             THE COURT:  Why didn't you ask him?  Why didn't you
17 ask him?  I mean, you got the supplemental response, so you were
18 fully aware by the time you talked to Bhattacharjee about the '033
19 patent.  So what prevented you from asking those questions?
20             MR. RICHTER:  Well, we asked him questions concerning
21 the state of the art and the Airplay that -- that we thought that
22 he would have the answers to.  The information we were looking for
23 in connection with the simultaneous invention theory, though, was
24 admissions on documents that Google cited in the interrogatory
25 response that Google witnesses would have and admissions that

1   Google witnesses would know about the functionality of Airplay and
2   that it did not practice the elements in order to provide factual
3   testimony concerning the simultaneous invention theory.
4               THE COURT:  Are you saying that Bhattacharjee didn't
5   give expert testimony on the secondary considerations of non-
6   obviousness?
7               MR. RICHTER:  I believe -- yes, I believe he did.  I
8   don't recall whether we had asked him specifically about the other
9   secondary considerations theories, but I believe we did ask him
10  about the Airplay which is included and involved in the
11  simultaneous invention theory, Your Honor.
12              THE COURT:  Why didn't you ask him more than that?
13              MR. RICHTER:  Well, I think it was a seven-hour
14  deposition and there were many issues to cover.  But I believe we
15  did ask him about the Airplay functionality.  I think what we're
16  looking for in terms of additional discovery is a Google witness
17  to testify about the Google documents and admissions concerning
18  the actual Google documents at issue, and only a fact witness --
19  a Google witness about that document could answer a question about
20  why they created that document or what that document says.
21              THE COURT:  Okay.  Mr. Hefazi, let me hear from you.
22              MR. HEFAZI:  Yeah.  If I could make a couple of points
23  here.  So first of all, the documents that they cite are not even
24  cited in our interrogatory response.
25              Number two, the liar (ph) argument that it's

simultaneous invention based on Apple Airplay was not known to them is just not credible, and I think part of the problem is the timeline and chronology that they presented is misleading.  So I want to start there real quickly.

On March 5th, 2021, we served invalidity contentions.  As part of those invalidity contentions for both the '615 and the '033 patents, we identified Apple Airplay as, you know, invalidating both those patents.  We also served on the same day that Sonos served its request for secondary -- our positions on secondary considerations, we served an interrogatory asking Sonos for its positions on secondary considerations.  It didn't give us a response until March 21.  And, you know, that was right before the showdown.  So what we did was immediately responded in the showdown in our showdown expert reports and we provided our secondary considerations, including that to the extent Airplay is not invalidating prior art, it's simultaneous -- it shows evidence of simultaneous invention.

And so this theory and the notion that Airplay was at issue for both the '615 and the '033 patents was known to them all along -- during fact discovery as well as, you know, during the expert discovery period and they just didn't ask any questions on it.

THE COURT:  Okay. Mr. Richter, I -- I don't think that Sonos has made its showing here.  If -- only because, in addition to what Mr. Hefazi said -- which I'm not sure I totally

1  followed because there's information about the timing and the
2  showdown and who -- who provided what information, that's honestly
3  I think too much in the weeds for me to really understand.  But I
4  think your basic point was that Sonos has known about this
5  contention a long time.
6          MR. HEFAZI:  Since March of 2021, Your Honor.
7          THE COURT:  But what I do know is in this more recent
8  joint letter, Sonos seems to be focusing on these documents  Sonos
9  didn't even mention it in the original letter, okay, and those
10 documents are not in the interrogatory response.  And you've had
11 the Bhattacharjee deposition after the November 30th, 2022
12 response, so you had an opportunity to follow up on this.  So I
13 don't think that Sonos was prejudiced by the information provided
14 on November 30th, so I'm going to deny relief on Interrogatory 20.
15         Okay?  So those are my rulings.  I think we are
16 concluded.
17         MR. RICHTER:  Thank you, Your Honor.
18         MR. JUDAH:  Thank you, Your Honor.
19         THE CLERK:  This Court is now adjourned.
20 //
21 //
22 //
23 //
24 //
25 //

17

(Proceedings adjourned at 2:07 p.m.)


I, Peggy Schuerger, certify that the foregoing is a correct transcript from the official electronic sound recording provided to me of the proceedings in the above-entitled matter.

*Peggy Schuerger*                           February 25, 2023
Signature of Approved Transcriber           Date

Peggy Schuerger
*Ad Hoc Reporting*
Approved Transcription Provider
for the U.S. District Court,
Northern District of California