CLEMENT SETH ROBERTS (SBN 209203)
croberts@orrick.com
BAS DE BLANK (SBN 191487)
basdeblank@orrick.com
ALYSSA CARIDIS (SBN 260103)
acaridis@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:     +1 415 773 5700
Facsimile:     +1 415 773 5759

SEAN M. SULLIVAN (*pro hac vice*)
sullivan@ls3ip.com
MICHAEL P. BOYEA (*pro hac vice*)
boyea@ls3ip.com
COLE RICHTER (*pro hac vice*)
richter@ls3ip.com
LEE SULLIVAN SHEA & SMITH LLP
656 W Randolph St., Floor 5W
Chicago, IL 60661
Telephone:     +1 312 754 0002
Facsimile:     +1 312 754 0003

*Attorneys for Sonos, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| GOOGLE LLC,<br><br>        *Plaintiff*,<br><br>        v.<br><br>SONOS, INC.,<br><br>        *Defendant*. | Case No. 3:20-cv-06754-WHA<br>Related to Case No. 3:21-cv-07559-WHA<br><br>**SONOS, INC.'S REPLY IN SUPPORT OF RENEWED MOTION TO REALIGN THE PARTIES**<br><br>Date: March 30, 2023<br>Time: 8:00 a.m.<br>Place: Courtroom 12, 19th Floor<br>Judge: Hon. William Alsup<br><br>Second Amended Complaint Filed:<br>February 4, 2022 |

**TABLE OF CONTENTS**

**Page(s)**

I.  INTRODUCTION ............................................................................................................... 1

II. A MOTION TO REALIGN THE PARTIES IS GOVERNED BY THE PRIMARY PURPOSE TEST AND *PLUMTREE* FACTORS ............................................................... 2

III. SONOS SHOULD BE DESIGNATED AS PLAINTIFF UNDER *PLUMTREE* ................. 3

  A. Factor 1: Sonos, not Google, first moved to resolve the issues in these cases through litigation. .................................................................................................................. 6

  B. Factor 2: Sonos is the natural plaintiff. ................................................................... 8

  C. Factor 3: Permitting Sonos to present its case-in-chief first will aid the jury. .................. 11

  D. Factor 4: Realigning the parties will mitigate the effect of Google's rush to the courthouse. .................................................................................................................. 12

  E. Factor 5: Google's rationale in bringing the declaratory judgment action could not have involved a fear that Sonos would sit on its rights. .................................................... 14

  F. Factor 6: The Patent Local Rules and Joint Case Management statement favor realignment. ................................................................................................................. 15

IV. CONCLUSION ................................................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allegro Ventures, Inc. v. Almquist*,
   No. 11-CV-2009-L WVG, 2013 WL 3864329 (S.D. Cal. July 24, 2013) ............................ 3, 4

*Animal Care Sys., Inc. v. Hydropac/Lab Prods., Inc.*,
   No. 13-CV-00143-MSK-BNB, 2014 WL 103812 (D. Colo. Jan. 10, 2014) .................. 5, 6, 10

*City of Indianapolis v. Chase Nat'l Bank of N.Y.*,
   314 U.S. 63 (1941) ........................................................................................................... 2

*Commc'ns Test Design, Inc. v. Contec, LLC*,
   952 F.3d 1356 (Fed. Cir. 2020) ........................................................................................ 6

*Dolch v. United Cal. Bank*,
   702 F.2d 178 (9th Cir. 1983) ............................................................................................ 2

*Falana v. Kent State Univ.*,
   669 F.3d 1349 (Fed. Cir. 2012) ...................................................................................... 10

*FCE Benefits Adm'rs, Inc. v. Training, Rehab. & Dev. Inst., Inc.*,
   No. 15-CV-01160-JST, 2016 WL 4426897 (N.D. Cal. Aug. 22, 2016) ................................. 2

*Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*,
   No. C 03-01431 SBA (EDL), 2006 WL 1646110 (N.D. Cal. June 12, 2006) .................... 2, 10

*Great W. Air, LLC v. Cirrus Design Corp.*,
   No. 2:16-CV-02656JADEJY, 2022 WL 943027 (D. Nev. Feb. 1, 2022) ............................ 7, 8

*Kerr Corp. v. N. Am. Dental Wholesalers, Inc.*,
   No. SACV 11-0313 DOC (CWx), 2011 WL 4965111 (C.D. Cal. Oct. 18,
   2011) ............................................................................................................................... 6

*Minerva Surgical, Inc. v. Hologic, Inc.*,
   141 S. Ct. 2298 (2021) ................................................................................................... 10

*Plumtree Software, Inc. v. Datamize, LLC*,
   No. C 02-5693 VRW, 2003 WL 25841157 (N.D. Cal. Oct. 6, 2003) ........................... *passim*

*Rimini St., Inc. v. Oracle Int'l Corp.*,
   No. 2:14-CV-01699-LRH-DJA, 2021 WL 4037482 (D. Nev. Sept. 2, 2021) ................ 4, 9, 10

*Scotts Co. LLC v. Seeds, Inc.*,
   688 F.3d 1154 (9th Cir. 2012) .......................................................................................... 2

*Sportspower Ltd. v. Crowntec Fitness Mfg. Ltd.*,
   No. 817CV02032JLSKES, 2020 WL 7347860 (C.D. Cal. Nov. 18, 2020) ............................ 10

*Texchem Advanced Prod., Incorporated Sdn. Bhd. v. E.Pak Int'l Inc.*,
   No. ED-CV-1201341-JGB-SPX, 2013 WL 12114017 (C.D. Cal. Aug. 19,
   2013) ...................................................................................................................................... 11

**Statutes**

35 U.S.C. § 282 (2003) ...................................................................................................................... 8

**STATEMENT OF THE ISSUES TO BE DECIDED AND RELIEF REQUESTED**

Sonos requests that this Court realign the parties in this action for purposes of the upcoming trial, designating Sonos, Inc., as "Plaintiff" and Google LLC as "Defendant."

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

This is a simple case. Sonos is the patentee alleging infringement. Google asserts that it is not liable for infringement, based on noninfringement, as well as its claims for invalidity of all three asserted patents and alleged contractually assigned rights over one asserted patent. The core of the parties' dispute is whether or not Google is liable for infringement of the three asserted patents, and the rest is commentary. Sonos is the natural plaintiff by any definition, and should be permitted to proceed as such at trial.

The Court is familiar with the procedural history of how we got here. Sonos intended to be the first to sue, and told Google that it would file a patent infringement suit in the Western District of Texas. There is no dispute that venue in the Western District of Texas was proper. Google, however, preempted Sonos by filing a "ramshackle" declaratory judgment complaint in this District. Dkt. 36 (Order Staying Case) at 3-4. That declaratory judgment complaint said nothing about invalidity claims or Google's purported contractual rights—it merely alleged that Google did not infringe. After Sonos's complaint was transferred (for convenience) to this District, the cases were related. Google then amended its complaint to add invalidity claims, and again to add Google's contract-related claims.

Despite Google's declaratory judgment action having a lower case number, Sonos's complaint and allegations of infringement drove this litigation from the very beginning. Indeed, Google does not directly dispute that the Patent Local Rules have treated Sonos, the patentee, as the presumptive plaintiff in this case. Mot. at 12-13.

Google nonetheless contends that it should proceed as plaintiff *at trial* for two primary reasons. First, Google argues that this case revolves entirely around the contract-related claims that Google added in 2022 by amendment to its complaint—even though those claims relate to just one of the three remaining asserted patents. Second, Google argues that it should be designated as

1  plaintiff because it succeeded in frustrating Sonos's choice of venue.  Because Sonos's case was
2  transferred to this District, Google asserts, Sonos should be punished for having filed in Texas—
3  where venue was indisputably proper.  Google's arguments are not persuasive and the Court should
4  grant realignment.

## II. A MOTION TO REALIGN THE PARTIES IS GOVERNED BY THE PRIMARY PURPOSE TEST AND *PLUMTREE* FACTORS

Courts in this District routinely apply the Ninth Circuit's "primary purpose" test in order to evaluate motions to realign the parties. *See, e.g.*, *FCE Benefits Adm'rs, Inc. v. Training, Rehab. & Dev. Inst., Inc.*, No. 15-CV-01160-JST, 2016 WL 4426897, at *2 (N.D. Cal. Aug. 22, 2016).  As the Ninth Circuit has noted, "[f]ederal courts have broad authority to 'look beyond the pleadings, and arrange'—or realign—'the parties according to their sides in the dispute.'"  *Scotts Co. LLC v. Seeds, Inc.*, 688 F.3d 1154, 1156 (9th Cir. 2012) (quoting *City of Indianapolis v. Chase Nat'l Bank of N.Y.*, 314 U.S. 63, 69 (1941)).  Given that broad authority, "[a] complaint's alignment of the parties 'is not binding on the courts.'"  *Id.* at 1157 (quoting *Dolch v. United Cal. Bank*, 702 F.2d 178, 181 (9th Cir. 1983)).

The leading case in this district on realignment for purposes *other* than jurisdiction is *Plumtree Software, Inc. v. Datamize, LLC*, No. C 02-5693 VRW, 2003 WL 25841157 (N.D. Cal. Oct. 6, 2003).  Like *Scotts*, *Plumtree* determined whether realignment was warranted by applying the "primary purpose" test and looking to several key factors.  2003 WL 25841157, at *3.  The *Plumtree* factors include "1) 'the first party to sue on the issue'; (2) the 'natural plaintiff' in the case, as defined by who raises 'the affirmative claim' and who bears 'the burden of proof'; (3) whether realignment 'may aid in the logical presentation of the evidence at trial'; … (4) whether realignment 'mitigates the effects of … evident forum-shopping[]'"; (5) "the 'rationale for bringing a declaratory judgment action' and [(6)] consistency with 'the Patent Local Rules and the parties' joint case management statement.'"  *FCE Benefits*, 2016 WL 4426897, at *2, *2 n.1 (quoting *Plumtree*, 2003 WL 25841157, at *2-5); *see also Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, No. C 03-01431 SBA (EDL), 2006 WL 1646110, at *1-3 (N.D. Cal. June 12, 2006)

1  (examining first-to-file status, the burden of proof, and whether realigning the parties would make the issues in the case clearer for the jury).

Because this case does not involve jurisdictional realignment, Google questions whether this Court even has the authority to realign the parties. *See* Opp. at 5-6. It does. As Google acknowledges, district courts have the "inherent power to manage [their] own cases and courtroom[s]," which courts have relied on in considering motions to realign outside of the jurisdictional context. Opp. at 6 (quoting *Allegro Ventures, Inc. v. Almquist*, No. 11-CV-2009-L WVG, 2013 WL 3864329, at *2 (S.D. Cal. July 24, 2013)). Google also questions the persuasive authority of *Plumtree*, which it describes as an "unpublished case," Opp. at 6, but identifies no other test that might apply instead and provides no persuasive reason why *Plumtree* should not apply here. *Plumtree* applies here because (1) *Plumtree* derives its factors—and the ultimate "primary purpose" test that it applies—from binding Ninth Circuit authority in the related context of jurisdictional realignment, thus appropriately drawing from the most closely analogous source of binding law and (2) courts in the Ninth Circuit analyzing non-jurisdictional realignment therefore routinely treat *Plumtree* as persuasive authority. As other courts confronted with this issue have done, the Court should analyze Sonos's motion to realign under *Plumtree*.

### III.   SONOS SHOULD BE DESIGNATED AS PLAINTIFF UNDER *PLUMTREE*

As Sonos explained in its motion, all of the *Plumtree* factors favor realignment. Google does not directly dispute (1) that Sonos substantively initiated this litigation, (2) that Sonos is the patentee with the burden of proof on its claims of infringement, willfulness, and damages, (3) that this Court described Google's rush to the Courthouse as an effort to "beat the clock and defeat the patent owner's choice of venue" by filing a complaint that "utterly fail[ed] to meet the standard for obtaining declaratory relief," Dkt. 36 at 3, or (4) that the Patent Local Rules have treated Sonos, as the patentee, as the presumptive plaintiff in this case.

Google nonetheless argues that even if *Plumtree* and its progeny apply, the Court should simply "reject[]" *Plumtree* "because both parties bear burdens of proof at trial." Opp. at 6 (capitalization omitted); *see also, e.g.*, *id.* at 5 ("Where there is no jurisdictional question at issue—as is the case here—district courts have denied realignment when 'both parties bear burdens of

1   proof at trial.'" (citations omitted)); 8 ("The Court should thus follow the numerous cases that have
2   rejected the applicability of *Plumtree* and denied realignment '[w]here both parties in a declaratory
3   judgment case bear burdens of proof.'" (citations omitted)).  Under Google's proposal, realignment
4   would *never* be permitted in any case in which a declaratory judgment plaintiff pled *some* claim in
5   which that party bore a burden of proof.  That can't be right.  Not all affirmative claims are the
6   same, as this case demonstrates.  Under Google's proposed rule, if a slip-and-fall plaintiff provided
7   notice of her claim against the property owner, and the property owner then filed a preemptive suit
8   against the plaintiff for damaging the floor when she fell, courts would have to treat the property
9   owner as the plaintiff.

10  Here, as in *Plumtree*, "the primary purpose of th[e] litigation is the adjudication of [Sonos's]
11  infringement claim," and realignment is therefore warranted.  2003 WL 25841157 at *5.  And
12  "[d]espite the fact [that Google] may have created a substantial ancillary dispute by filing a
13  declaratory judgment action," this Court should "align the parties in keeping with the primary
14  dispute concerning infringement." *Id.* at *3.

15  As Sonos explained, other courts within the Ninth Circuit have reached similar results in
16  cases analogous to this one.  For example, in a copyright infringement dispute between Oracle as
17  rights-holder and Rimini as accused infringer, the court examined the parties' remaining claims
18  prior to trial and granted realignment after concluding that "the primary dispute is whether Rimini
19  committed copyright infringement when it provided third-party support services for Oracle
20  software," and that "Oracle is the more 'natural' plaintiff in th[e] case." *Rimini St., Inc. v. Oracle
21  Int'l Corp.*, No. 2:14-CV-01699-LRH-DJA, 2021 WL 4037482, at *3 (D. Nev. Sept. 2, 2021).
22  Sonos cited this authority in its motion, but Google ignores it.

23  Similarly, in *Allegro Ventures, Inc. v. Almquist*, a court granted realignment in a declaratory
24  judgment action brought under maritime law, where the named defendant's counterclaim made
25  clear that his "affirmative positions" seeking to establish liability "make him more suitable to be in
26  the plaintiff position," while the named "Plaintiff's defensive positions make it more suitable" to
27  be designated as defendant.  No. 11-CV-2009-L WVG, 2013 WL 3864329, at *1-2 (S.D. Cal. July
28  24, 2013).  The same is true here.

- 4 -

SONOS'S REPLY ISO RENEWED MOTION TO
REALIGN THE PARTIES
3:20-CV-06754-WHA

1   Google contends that this case is different from *Plumtree* and its progeny, relying on a chart
2   that it contends shows that "this is not a situation where a plaintiff merely 'seeks declaratory relief
3   that it is not liable and the defendant counterclaims that plaintiff is liable.'"  Opp. at 7 (citation
4   omitted).  But it is hard to see why Google thinks this chart supports that proposition.  The four
5   "claims in which Google bears the burden of proof" are the following: (1) "Google's Count IV -
6   Declaration of Invalidity of 033 Patent"; (2) "Google's Count VI - Declaration of Invalidity of 966
7   Patent"; (3) "Google's Count IX - Breach of Contract"; (4) "Google's Count X – Conversion." *Id.*

Google's invalidity claims—which were only added later to this case—are bases on which it seeks to prove that it is not liable for infringement of the '033 and '966 patents. *See, e.g.*, Opp. at 15 ("It is axiomatic that one cannot infringe an invalid patent.").  And Google's *contract*-based claims of breach of contract and conversion—which Google injected even later still—center entirely on Google's alleged infringement of the '033 patent, and Google's retort that it cannot infringe something that Sonos allegedly had no right to patent. *See, e.g.*, Opp. at 13 ("the facts related to Google's breach of contract and conversion claims are foundational to many other aspects of this case because they (1) shed light on Google's efforts to develop the "cloud queue" technology *that Sonos argues is central to the '033 patent*; (2) introduce the working relationship between Google and Sonos and the state of technology in 2011, which is *Sonos's claimed priority date*; and (3) introduce the primary engineers responsible for development of the technology at issue, including the *named inventors on Sonos's patents* as well as Google's software engineers." (emphases added)).  At core, Google alleges that "Sonos has breached its contractual agreements with Google and converted Google's property," Opp. at 1-2, by, among other things, seeking patent protection for the asserted claims of the '033 patent and asserting those claims against Google. *See* Dkt. 517 (Google's MSJ Opp.) at 2 ("Third, Sonos has attempted to exercise dominion over Google's right to commercialize the cloud queue API by *filing this lawsuit* and accusing the API of infringement." (emphasis added)).

Google's cited authority does not weigh against realignment here.  For example, Google relies throughout its brief on an out-of-district decision that concluded that *neither* party is a more "natural" plaintiff where one party brings patent infringement claims and the other asserts invalidity

1  claims. *See Animal Care Sys., Inc. v. Hydropac/Lab Prods., Inc.*, No. 13-CV-00143-MSK-BNB,
2  2014 WL 103812, at *1–2 (D. Colo. Jan. 10, 2014).  But that court paid little heed to the extensive
3  body of intra-Circuit decisions analyzing realignment claims, and dismissed *Plumtree* as
4  "unpersuasive" while noting the court's fundamental doubts that "realignment for non-
5  jurisdictional purposes is appropriate" or permissible *at all*. *See id.*; *id.* at *1 n.1.  Similarly, *Kerr*
6  distinguished *Plumtree* and analyzed the realignment motion under Rule 13(a)—a standard that
7  even Google does not propose here. *See Kerr Corp. v. N. Am. Dental Wholesalers, Inc.*, No. SACV
8  11-0313 DOC (CWx), 2011 WL 4965111, at *4 (C.D. Cal. Oct. 18, 2011) ("Because more
9  persuasive authority supports NADW's position than Kerr's, the Court chooses to analyze the
10 realignment of the parties under Federal Rule of Civil Procedure 13(a).").

Because "the primary purpose of this litigation is the adjudication of [Sonos's] infringement claim," *Plumtree*, 2003 WL 25841157, at *5, and because all of the *Plumtree* factors favor realignment, this Court should exercise its discretion and designate Sonos as the plaintiff.

### A. Factor 1: Sonos, not Google, first moved to resolve the issues in these cases through litigation.

Sonos "was the original plaintiff in this dispute," *Plumtree*, 2003 WL 25841157, at *3, in all substantive respects.  Google only filed its declaratory judgment action after being put on notice of Sonos's intent to sue Google for patent infringement.  As in *Plumtree*, Google "appears" to have "filed its suit against [Sonos] less as a result of its own volition than as a response to the suit" that Sonos planned to "file[] against it in the" Western District of Texas.  *Id.*  This Court recognized that the same pattern was at issue here when it held that "the manifest purpose of Google's [declaratory judgment] suit was to beat the clock and defeat the patent owner's choice of venue" and that "Google's [original] complaint utterly fail[ed] to meet the standard for obtaining declaratory relief."  Dkt. 36 at 3.  For this reason, the Court should analyze this factor under the "anticipatory suit" exception to the first-filed doctrine, in order to avoid rewarding Google for racing to the courthouse to file a defective declaratory judgment action. *See Commc'ns Test Design, Inc. v. Contec, LLC*, 952 F.3d 1356, 1364-65 (Fed. Cir. 2020).

In response, Google does not dispute that it was Sonos that substantively initiated this case. Instead, Google argues that it was *literally* "the first party to sue" and therefore "is the current plaintiff of the lower-numbered lead case." Opp. at 9. Google contends further that the "anticipatory suit" exception to the first-filed doctrine should not apply because "Google is the *only* party that brought suit in an appropriate forum," and "Google's decision to file first in the correct venue does not provide any equitable reason to realign the parties." *Id.* Google's characterization is factually incorrect. While the Federal Circuit agreed with Google that litigating this case would be more *convenient* in this District, no one has *ever* contended that venue was improper in the Western District of Texas. The venue statutes permit plaintiffs to file wherever venue is proper, which is exactly what Sonos did. Because there is no actual dispute that Sonos filed in a forum where venue was proper, before a court that had personal and subject matter jurisdiction, Google is simply wrong here. And while there is no judicial finding that Sonos did anything *impermissible* by filing in Texas, *this* Court has already found that Google's rush to the courthouse to preempt Sonos's suit was improper. *See* Dkt. 36 at 3. And in contrast to Google's filing of a complaint that "utterly fail[ed] to meet the standard for obtaining declaratory relief," Dkt. 36 at 3, it was Sonos—as plaintiff—that filed the first legally sufficient complaint in this litigation.

Google also suggests that Sonos's "own conduct … warrants scrutiny" because Sonos's "draft complaint" was merely "a ploy to fabricate pre-suit notice to justify its willfulness claim." Opp. at 9. Google raised a number of objections at the pleadings stage to Sonos's willfulness allegations, and after ruling partially in Google's favor, the Court permitted Sonos to amend over Google's objection. *See* 3:21-cv-07559-WHA, Dkts. 156, 210. Sonos has since developed evidence that Google was, at a minimum, willfully blind to infringement. *See, e.g.*, Dkt. 508 (Sonos's MSJ Opp.) at 24-25.[1]

Google relies on *Great Western Air*—in this factor and others—for the proposition that it did nothing wrong here. *See* Opp. at 10 (citing *Great W. Air, LLC v. Cirrus Design Corp.*, No.

---

[1] To the extent that Google seeks to raise some *new* defense to willfulness now, the Court should reject Google's efforts as untimely and forfeited. The Court should disregard Google's efforts to inject a substantive consideration of the merits of Sonos's willfulness claim into this routine procedural motion.

2:16-CV-02656JADEJY, 2022 WL 943027, at *3 (D. Nev. Feb. 1, 2022)). For example, Google contends that "another court in this Circuit declined to find 'bad faith, forum-shopping or misbehavior meriting realignment' in a factually analogous case." Opp. at 10 (citing *id.*). But that ignores what *this* Court has already found in *this* case. *See generally* Dkt. 36. Here, Sonos first moved to resolve the infringement claims at issue in this case and sought to select a different forum before Google raced to the courthouse to preempt it. This Court has already held that Google's actions were an effort to "beat the clock and defeat the patent owner's choice of venue," Dkt. 36 at 3, and the Federal Circuit's convenience-based order regarding transfer does not change that.

### B. Factor 2: Sonos is the natural plaintiff.

Just as in *Plumtree*, Sonos is "more properly considered the natural plaintiff in this action" because Sonos "is the party asserting the affirmative claim of infringement." 2003 WL 25841157, at *3. Similarly, Google's "declaratory action for noninfringement and invalidity is a defense to [Sonos's] infringement counterclaim[,]" *id.*, and to Sonos's parallel, affirmative infringement claims. *See* Mot. 3-4 (chart aligning claims). After all, "noninfringement and invalidity" are defined by statute as "defenses to patent infringement." *Plumtree*, WL 25841157, at *3 (citing 35 U.S.C. § 282 (2003)). For that reason, Sonos's "affirmative position makes the position of plaintiff more appropriate for it, while [Google's] defensive position makes the position of defendant more appropriate for it." *Id.*

In response, Google contends that it "is the natural plaintiff because it brings, in the lower numbered lead case, two state law claims for breach of contract and conversion." Opp. at 13. Google's repeated references to the "lower numbered lead case" are a non-sequitur, and demonstrate how Google is attempting to conflate the *natural* plaintiff concept with its status as *de facto* plaintiff. Google's reliance on its two contract-related claims also lacks merit. As explained above, these contract-based claims, which were only added to the case in 2022, center entirely on Google's alleged infringement of the '033 patent, and Google's retort that it cannot infringe something that Sonos allegedly had no right to patent. *See supra* 5; *see, also e.g.*, Dkt. 125 (Google's Second Am. Compl.) ¶ 31 (alleging that "[d]espite the [contract allegedly at issue], Sonos has willfully and wrongfully attempted to claim Google's idea for itself" and citing in support the

- 8 -

SONOS'S REPLY ISO RENEWED MOTION TO
REALIGN THE PARTIES
3:20-CV-06754-WHA

prosecution history of the '033 patent), ¶ 34 (alleging that "Sonos had no right to draft claims" encompassing "cloud queue technology"), ¶ 89 (alleging that Sonos breached the contract allegedly at issue by claiming the right to technology that Google claims it developed), ¶ 96 (alleging that Sonos "wrongfully exercised dominion over patents" by filing the "'033 patent"); Opp. at 16 (arguing that there is no risk of juror confusion "if Google were to present its invalidity case first" because "Google was actually involved in the development of the purported inventions that Sonos now claims are covered by the asserted patents"); *id.* ("Google has argued that it is entitled to any patent rights stemming from its development of the cloud queue technology.  It would not make sense for the jury to hear that Google has infringed Sonos's cloud queue patents when the gating issue of whether Sonos does in fact own those patents has not been addressed.").

Google attempts to further confuse the issue by arguing that "Sonos does not have any 'mirror image' claims against Google related to either of Google's affirmative claims," Opp. at 13, but fails to substantively address Sonos's argument that these two claims—the most recent claims added in the entire case—are merely Google's attempt to defend against Sonos's claim that Google infringes the '033 patent. Google similarly argues that these claims do not "depend whatsoever on either infringement or invalidity," Opp. at 14, but that is a red herring.  First, even if these claims do not *depend* on infringement, the claims directly *challenge* Sonos's infringement claim with respect to the '033 patent, so this is a distinction without a difference.[2]  Second, these claims do depend on Google's invalidity case because, as Sonos has explained, Google's claims rely on a written description challenge to the '033 patent.  *See* Dkt. 478 (Sonos's MSJ) at 11-15.

Once again, Google does not even attempt to distinguish *Rimini*, a case also involving state law claims along with the federal intellectual property claims.  In *Rimini*, the court noted that notwithstanding Rimini's pending claim for "injunctive relief under the California Business and

---

[2] Google argues that the contract-based claims are "entirely separate" because "Sonos itself previously represented" that "the CIA and its . . . clauses have no bearing on whether Google infringes Sonos's asserted patents." Opp. at 14.  But that just takes Sonos's statement out of context.  The reason that the clauses have no bearing on infringement is because Google is blatantly misreading the document on which it bases its contract-related claims.  *See generally* Dkt. 478 (Sonos's MSJ).

Professions Code," it was "clear to the Court that the primary dispute is whether Rimini committed copyright infringement when it provided third-party support services for Oracle software." 2021 WL 4037482, at *3. That court found that "[t]he present case is, at its base, an extension of the previous case before the Court when Oracle first sued Rimini for copyright infringement in 2010," that the action "only arose after the Court granted summary judgment in part to Oracle on these original claims of copyright infringement and Rimini allegedly changed its support services to comply with the Court's ruling," and that "the additional statutory and common law claims all arise out of the process by which Rimini provides these support services." *Id.* Here too, Google's claims for breach of contract and conversion only arose as a result of—and in response to—Sonos's infringement case against Google.

Nor does Google address the authority showing that courts routinely treat a party asserting infringement as the plaintiff *even where* the issue of infringement is resolved prior to trial—which is only the case for one of three patents at issue here. *See* Mot. at 10 (discussing *Minerva Surgical, Inc. v. Hologic, Inc.*, 141 S. Ct. 2298, 2304 (2021); *Idenix Pharmaceuticals LLC v. Gilead Sciences, Inc.*, No. 1:14-cv-00846-LPS (D. Del. Feb. 27, 2017), Dkt. 539 at 206:14-16; *Plexxikon Inc. v. Novartis Pharms. Corp.*, No. 4:17-cv-04405-HSG (N.D. Cal. June 12, 2021), Dkt. 488 at 9:2-15).

Google's cited authority is also inapt. Google relies, for example, on *Sportspower* for the proposition that realignment is improper where "the plaintiff had sought declaratory relief on the issue of joint ownership," Opp. at 13-14. But *Sportspower*'s cursory discussion of that issue provides little guidance, especially because the claim at issue in that case was *inventorship*, *see Sportspower Ltd. v. Crowntec Fitness Mfg. Ltd.*, No. 817CV02032JLSKES, 2020 WL 7347860, at *5 (C.D. Cal. Nov. 18, 2020) (quoting *Falana v. Kent State Univ.*, 669 F.3d 1349, 1356 (Fed. Cir. 2012)), and the Court *denied* Google leave to amend in an inventorship claim in this case, *see* Dkt. 111, 9-10. Google once again relies on *Animal Care Systems*, but as discussed above, that case questions whether non-jurisdictional realignment is even *permissible*, so it sheds little light on this factor. *See supra* 5-6. And while Google relies on *Fresenius* for the proposition that realignment is never proper in patent cases where both parties bear burdens of proof, Opp. at 14 (citing *Fresenius*, 2006 WL 1646110, at *1), the Court should reject that extreme proposed rule.

- 10 -

**C. Factor 3: Permitting Sonos to present its case-in-chief first will aid the jury.**

At the trial, the jury will be asked to determine (1) whether Google's infringement of claim 1 of the '885 patent was willful, and to determine damages for infringement of claim 1 of the '885 patent; (2) whether Google willfully infringed the '966 patent, and to determine damages for infringement of the '966 patent; and (3) whether Google willfully infringed the '033 patent, and to determine damages for infringement of the '033 patent—all issues on which Sonos bears the burden of proof. Sonos should, therefore, be the plaintiff and go first. "To require [the patentee] to present second might invite juror confusion on the issue of burden of proof, as [the patentee] essentially would be put in the position of rebutting [the alleged infringer's] defensive claims." *Plumtree,* 2003 WL 25841157, at *5. The same is true here. It makes more sense for Sonos to present its "affirmative case" for liability first, "rather than [Google] presenting the case for" *non*-liability "first." *Id.*

Instead of that common-sense approach, Google suggests that "trial should begin with Google's case for invalidity and the state law claims for which Google bears the burden of proof, followed by Sonos's presentation for validity, infringement, willfulness (if still at issue), damages, and defenses to the state law claims, and conclude with Google's rebuttal on non-infringement, willfulness, and damages." Opp. at 15. But this unnecessarily complicates things, and appears to assume that the Court would have bifurcated or even trifurcated the case—relief that Google has not even sought for this trial. In support of this complicated proposal, Google argues that invalidity should come before infringement because "[i]t is axiomatic that one cannot infringe an invalid patent." Opp. at 15 (quoting *Texchem Advanced Prod., Incorporated Sdn. Bhd. v. E.Pak Int'l Inc.*, No. ED-CV-1201341-JGB-SPX, 2013 WL 12114017, at *15 (C.D. Cal. Aug. 19, 2013)). But that's true in every patent infringement case with any claim of invalidity. Under Google's logic, alleged infringers would *always* present their defensive invalidity case prior to patentees presenting their infringement case. In reality, that is the exception, not the norm. And Google did not even attempt to address the authority showing that courts routinely treat a party asserting patent infringement as the plaintiff *even where* infringement is resolved prior to trial. *See supra* 10; Mot at 10.

1 Google also argues that its bifurcation or trifurcation model—it is unclear what Google envisions[3]—is "more logical given that the jury will first hear about the relationship between the parties and the development of the accused products through Google's state law claims." Opp. at 15. But even *if* the contract-related claims are tried, *cf.* Dkt. 478 (Sonos's MSJ), Sonos's presentation of evidence will obviously include background on the accused products. If anything, Google's contract claims should be tried *last*, and only if the jury finds the '033 patent lacks written description. *See id.*

Google suggests, finally, that "permitting Sonos to proceed first on infringement would actually serve to confuse the jury *more*, particularly with respect to the '885 patent" because the fact that infringement has already been determined "could confuse and preempt the jury's decision on the issue of invalidity." Opp. at 16. This argument assumes that the Court will grant Google's motion for reconsideration of summary judgment of validity of the '885 patent and is speculative at best. The Court will instruct the jury appropriately, and juries are presumed to follow proper instructions. Google's unfounded and unsupported argument should therefore be rejected.

**D. Factor 4: Realigning the parties will mitigate the effect of Google's rush to the courthouse.**

In this case, as in *Plumtree*, the alleged infringer filed a declaratory judgment action and went "to considerable lengths to deprive [the patentee] of its choice of forum … and to have these issues tried in the Northern District of California." 2003 WL 25841157, at *5. For that reason, the court noted that it was "equitable to allow [the patentee] to retain its status as plaintiff, despite the loss of its choice of forum." *Id.*; *see* Dkt. 36 at 3 ("the manifest purpose of Google's [declaratory judgment] suit was to beat the clock and defeat the patent owner's choice of venue"), 5 (finding that Google's filing was a "litigation gimmick, to anchor venue with a bare bones complaint and then fix it up by amendment"). The Court should not reward that "litigation gimmick" by allowing Google to rely upon it to invert the proper roles of the parties.

---

[3] Because Google has not filed a motion to bifurcate or trifurcate this case, its reliance on authority that it says supports bifurcation is inapt. *See* Opp. at 15.

- 12 -

SONOS'S REPLY ISO RENEWED MOTION TO
REALIGN THE PARTIES
3:20-CV-06754-WHA

1    Google's response is to point fingers, arguing that "this factor is neutral at best, as it was
2    *Sonos* who actually sought to gain an advantage by selecting what the Federal Circuit agreed was
3    the wrong forum." Opp. at 11. That mischaracterizes the Federal Circuit's ruling, which did not
4    even remotely suggest that Sonos had filed in a forum in which venue was improper. *See* 3:21-cv-
5    07559-WHA, Dkt. 116. Google's related aspersions, discussed below, also lack any basis.

6    Google argues, for example, that Sonos "fabricated the relevance of unaccused products
7    simply to manufacture a connection to Texas," pointing—paradoxically—to Sonos's service of
8    infringement contentions discussing the "Google Cloud Platform." Opp. at 11. Google complains
9    that "Google Cloud Platform" has since "disappeared altogether from the case." Opp. at 11-12.
10   But this is no surprise to Google. Google Cloud Platform had particular relevance when Spotify
11   was still in the case, as Spotify is one of Google Cloud Platform's biggest customers. Sonos agreed
12   with Google to drop Spotify from the case as a compromise and in order to streamline Sonos's
13   infringement and damages assertions, and similarly dropped Google Cloud Platform in order to
14   streamline those assertions. Google's suggestion that this claim was manufactured beggars belief.

15   Google also argues that its "representations regarding venue were accurate" because "[t]he
16   vast majority of the Google witnesses that were deposed reside in the Northern District of
17   California—including nearly every one of its corporate designees." Opp. at 12. This proves very
18   little. Google was able to choose who its own 30(b)(6) witnesses were, and thus controlled the
19   location of those witnesses; Google's strategic litigation choices do not mean that the most
20   knowledgeable witnesses were located in this District. Moreover, there were a multitude of Google
21   witnesses literally around the globe, including witnesses in London, Switzerland, Israel,
22   Massachusetts, Canada, and New York, and all Sonos witnesses were outside this District. *See*
23   Declaration of Joseph R. Kolker ¶ 3. In fact, the majority of fact witnesses in this case were located
24   outside of this District. Google's efforts to disparage Sonos's choice of venue, in a forum in which
25   venue was indisputably proper, lack foundation.

26   Finally, this factor favors Sonos *regardless* of the fact that the Federal Circuit found that
27   Sonos's suit should be transferred to this district. If, for example, Google had waited to see if Sonos
28   filed when it said it would (or had Google taken the time it needed to formulate a proper declaratory

- 13 -

SONOS'S REPLY ISO RENEWED MOTION TO
REALIGN THE PARTIES
3:20-cv-06754-WHA

1  judgment complaint), Sonos's Texas complaint would have been the first filed action and—after
2  being transferred to this district—would be the lead case.  Put differently, nothing about making
3  Sonos the plaintiff would "reward" Sonos for filing in Texas or losing the venue fight.  In
4  opposition, Google contends that because its case would still have been the lower-numbered case
5  in that scenario, Google would still be the plaintiff.  But Google identifies no "lower-numbered
6  case" exception to the first-filed rule, so the basis for Google's assertion is unclear.  This Court
7  should decline to reward Google for its conduct in front running Sonos's complaint.

### E. Factor 5: Google's rationale in bringing the declaratory judgment action could not have involved a fear that Sonos would sit on its rights.

*Plumtree* also discussed the fact that the "usual rationale for bringing a declaratory judgment action" is to "relieve potential defendants from the Damoclean threat of impending litigation which a harassing adversary might brandish, while initiating suit at his leisure—or never." 2003 WL 25841157, at *4 (citation omitted).  But that "basic rationale for declaratory judgment" was "inapposite" where the patent holder "had actually brought suit at the time Plumtree filed the declaratory judgment action." *Id.*  Here, while Google filed its declaratory judgment action "a matter of hours" ahead of Sonos's affirmative case, it only did so after Sonos had put Google on notice of Sonos's plan to file an infringement suit the following day.  Dkt. 36 at 3.  Thus, no "'Damoclean' threats" hung over Google at the time it filed the declaratory judgment action. *Plumtree*, 2003 WL 25841157, at *4.  Google's suit was not an effort to resolve uncertainty; it was an effort to defeat Sonos's choice of forum.

Google's arguments in opposition that it beat Sonos to the Courthouse, Opp. at 10, are merely an argument that the Court was wrong when it concluded that Google acted improperly in doing so. *See* Dkt. 36.  They should be rejected.  Google also suggests that in the few hours between when Sonos provided notice and when Google filed its declaratory judgment action, "Google was able to quickly determine that its products did not satisfy those limitations without needing to start the analysis completely anew."  Opp. at 11.  But this narrative is a bit too convenient.  As Sonos has explained, in Google's telling, it had exactly as much knowledge as it needed to determine that

it was not infringing, but lacked any reason to know that it was or could be infringing. Dkt. 508 (Sonos's MSJ Opp.) at 24-25. That kind of pretzel logic *supports* Sonos's willfulness claim.

### F. Factor 6: The Patent Local Rules and Joint Case Management statement favor realignment.

*Plumtree* also explained that realignment was appropriate because the District's "Patent Local Rules and the parties' joint case management statement" both treated the patent holder "as a plaintiff would be treated." 2003 WL 25841157, at *5. The same is true here. Similarly, the parties' Joint Case Management Statement positions Sonos as the "natural" plaintiff. The Statement in effect acknowledges that Sonos's affirmative infringement action is the same as the declaratory judgment action. *See, e.g.*, Dkt. 102 (Joint CM Statement) at 11 ("Given the overlap of issues, the Parties propose that the same dates and schedules set forth in those Orders also apply to" both cases); 13 (similar). In response, Google contends that "Sonos reads too much into the Patent Local Rules and the parties' Joint Case Management Statement." Opp. at 16. Google argues that "[w]hile they may have indicated a convenient way for discovery to proceed, neither address the appropriate order of proof as it should be presented to the jury at trial." *Id.* But the reason they were convenient for discovery is because, given the claims at issue in this case, it simply makes more sense for Sonos—the patent holder—to be treated "as a plaintiff would be treated." *Plumtree*, 2003 WL 25841157, at *5. While Google identifies one instance in which the parties engaged in parallel disclosures, Opp. at 17, Google identifies no instance in discovery in which *Google*, rather than Sonos, has been treated "as a plaintiff would be treated." Once again, Google's only defense against realignment is to cite its contract-related claims challenging Sonos's claiming of the '033 patent.[4] For the reasons discussed above, these arguments lack merit.

### IV.   CONCLUSION

The Court should grant Sonos, Inc.'s Motion to Realign the Parties and make it clear that Sonos will be the plaintiff for purposes of the upcoming trial.

---

[4] Google takes issue with Sonos's uncontroverted observation that the overwhelming majority of damages sought in this case are damages that Sonos seeks from Google. *Cf.* Mot. at 13; Opp. at 17 n.4. But the Court has recognized the same point. *See* Dkt. 425, 32:18-19 ("You're the defendant. You're the one that would have to pay money if you lose.").

| | |
|---|---|
| Dated: February 28, 2023 | By: */s/ Clement S. Roberts* |
| | Clement Seth Roberts |
| | Bas de Blank |
| | Alyssa Caridis |
| | Evan D. Brewer |
| | |
| | ORRICK, HERRINGTON & SUTCLIFFE LLP |
| | |
| | George I. Lee (admitted *pro hac vice*) |
| | Sean M. Sullivan (admitted *pro hac vice*) |
| | Rory P. Shea (admitted *pro hac vice*) |
| | J. Dan Smith III (admitted *pro hac vice*) |
| | Michael P. Boyea (admitted *pro hac vice*) |
| | Cole Richter (admitted *pro hac vice*) |
| | Jae Y. Pak (admitted *pro hac vice*) |
| | Matthew J. Sampson (admitted *pro hac vice*) |
| | David Grosby (admitted *pro hac vice*) |
| | |
| | LEE SULLIVAN SHEA & SMITH LLP |
| | |
| | *Attorneys for Sonos, Inc.* |