# EXHIBIT 13

CLEMENT SETH ROBERTS (STATE BAR NO. 209203)
croberts@orrick.com
BAS DE BLANK (STATE BAR NO. 191487)
basdeblank@orrick.com
ALYSSA CARIDIS (STATE BAR NO. 260103)
acaridis@orrick.com
EVAN D. BREWER (STATE BAR NO. 304411)
ebrewer@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:    +1 415 773 5700
Facsimile:    +1 415 773 5759

SEAN M. SULLIVAN (*pro hac* vice)
sullivan@ls3ip.com
MICHAEL P. BOYEA (*pro hac* vice)
boyea@ls3ip.com
COLE B. RICHTER (*pro hac* vice)
richter@ls3ip.com
LEE SULLIVAN SHEA & SMITH LLP
656 W Randolph St., Floor 5W
Chicago, IL 60661
Telephone:    +1 312 754 0002
Facsimile:    +1 312 754 0003

*Attorneys for Sonos, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| GOOGLE LLC,<br><br>    Plaintiff and Counter-defendant,<br><br>v.<br><br>SONOS, INC.,<br><br>    Defendant and Counter-claimant. | Case No. 3:20-cv-06754-WHA<br>Related to Case No. 3:21-cv-07559-WHA<br><br>**REBUTTAL EXPERT REPORT OF DOUGLAS C. SCHMIDT** |

1  after Google started working with Sonos in 2013.

2  961.  Further, Dr. Bhattacharjee's reliance on Sonos's commercial efforts around the time of the invention of the '033 Patent to limit the '033 claims to involve a "third-party" application is misplaced. *See id.*, ¶702. I understand that, at the time of invention, Sonos sold hardware products and provided a "controller" application that had no media-playback capabilities, but Sonos did not offer a streaming online service or media-playing application. Thus, it makes sense that Sonos internally referred to some examples involving its "Play to Sonos" (or "Direct Control") initiative in terms of a "third-party" media-playing application that could transfer playback to a Sonos hardware product. However, as I explained, the teachings of the '033 Patent are not limited to a "third-party" application and the '033 Claims themselves do not recite an "application," much less one "provided by a third-party."

**D.   Limitation 1.7**

962.  Dr. Bhattacharjee opines "[n]ot only does the '033 patent fail to disclose a 'remote playback queue,' … but there is also no description of the playback device receiving an instruction that configures it to (i) 'communicat[e] with the cloud-based computing system in order to obtain data identifying a next one or more media items that are in the remote playback queue,' and (ii) 'use the obtained data to retrieve at least one media item in the remote playback queue from the cloud-based media service.'" Bhatta. Op. Report, ¶712. I disagree.

963.  As an initial matter, as I explained in my Opening Report, the '033 Patent describes control devices (e.g., "network-enabled portable devices," such as smartphones) that connect to the same local "data network" as the "playback devices" and are capable of controlling the operation of the "local playback system" (such a control device is sometimes referred to as a "controller" in the specification, while the '033 Patent claims refer to a "computing device"). *See, e.g.*, '033 Patent, 3:39-41 ("A controller 130 … provides control to the system configuration 100."), 4:61-5:19 ("The controller 300 can correspond to the controlling device 130 of FIG. 1. The controller 300 is provided with a touch screen 304 that allows a user to interact with the controller 300, for example, to retrieve and navigate a playlist of audio items, **control operations** of one or more zone players, and **provide overall control** of the system configuration 100…."), 12:16-27 ("FIG. 7 shows

a system including a plurality of networks including a cloud-based network and at least one local playback network…. *Control* and content retrieval can be distributed or centralized, for example. *Input* can include streaming content provider input, third party application input, mobile device input, user input, and/or other playback network input into the cloud for local distribution and playback."), 16:5-15:

> In certain embodiments, *information is provided* from a third party application to a local playback system without being routed through or by a controller application. Here, the third party application is *communicating* with the multimedia playback device (e.g., a Sonos ZonePlayer™). Information can be passed locally, rather than through the Internet, for example. The local playback device accesses the Internet to find content to stream, and the third party application takes the place of the controller application (e.g., throw it over the wall—the application passes information and the local playback system runs it).

964. In my opinion, a POSITA would understand that, in view of the '033 Patent's teachings as a whole, a control device performs such controlling by communications via a data network with a "playback device" and more specifically, by virtue of sending control messages via a data network to the "playback device." *See, e.g.*, *id.* In networked systems like that disclosed in the '033 Patent, it was very common at the time of the invention for network control messages to take the form of "instructions" or "commands." *See, e.g.*, *id.*, 9:54-62 ("The controller 500 includes a network interface 508 that facilitates wireless communication with a zone player. In some embodiments, *the commands* such as volume control and audio playback synchronization are *sent via the network interface 508*…. The controller 500 can control one or more zone players, such as 102-124 of FIG. 1."), 16:36-38 ("The third party application can *instruct* the local playback system to skip a song, go to a certain location, and so on."); *see also, e.g.*, *id.*, 9:14-10:5, 17:1-16.

965. Next, the '033 Patent discusses a computing device (e.g., smartphone) communicating with a given playback device to cause the playback device to take over responsibility for media playback from the computing device. As a **first** example, the '033 Patent discloses:

> For example, a user listens to a third party music application (e.g., Pandora™ Rhapsody™, Spotify™, and so on) on her smart phone while commuting. She's enjoying the current channel and, as she walks in the door to her home, *selects an option to continue playing* that channel on her household music playback system (e.g., Sonos™). The *playback system picks up from the same spot on the selected*

**HIGHLY CONFIDENTIAL - SOURCE CODE - ATTORNEYS' EYES ONLY**

> *channel that was on her phone* and outputs that content (e.g., that song) on speakers and/or other playback devices connected to the household playback system. A uniform resource indicator (URI) (e.g., a uniform resource locator (URL)) can be passed to a playback device to *fetch content* from a cloud and/or other networked source, for example. Once the zone player has a *URL (or some other identification or address)* for a song and/or playlist, the zone player can run on its own to fetch the content. *Songs* and/or other multimedia content can be retrieved from the Internet rather than a local device (e.g., a compact disc (CD)), for example. A third party application can open or *utilize an application programming interface (API)* to pass music to the household playback system without tight coupling to that household playback system.

'033 Patent, 12:41-64; *see also, e.g.*, 15:54-63 (describing communication from control device to playback device "enabl[ing] near-seamless 'handoff' of music").

966. In my opinion, a POSITA would understand from this discussion –e.g., of user input at the smartphone resulting in a playback system (consisting of one or more "playback devices"/"zone players") continuing to play the same music at the same spot that the smartphone left off, along with the discussion of utilizing an API—that an "instruction" from the smartphone would be involved for at least one "playback device" to take over responsibility for playback from the smartphone of media items provided by a Pandora, Rhapsody, or Spotify cloud service. Moreover, a POSITA would understand from the references to the "playback device" thereafter obtaining "a URL (or some other identification or address) for a song and/or playlist," "fetch[ing] content from a cloud" on its own, and "retriev[ing]" *songs* (plural) from the cloud-based service that the aforementioned "instruction" would configure the "playback device" to "(i) communicate with the cloud-based computing system in order to obtain data identifying a next one or more media items that are in the remote playback queue" and "(ii) use the obtained data to retrieve at least one media item in the remote playback queue from the cloud-based media service."

967. In fact, Dr. Bhattacharjee concedes that the '033 Patent teaches that a "playback device" obtains data in the form of a "URI (e.g., a URL or song-identifier)" that the "playback device" then uses to "retrieve [] media content from the cloud." *See, e.g.*, Bhatta. Op. Report, ¶692; '033 Patent, 11:46-12:4, 12:50-64, 15:43-16:15.

968. As a **second** example, the '033 Patent discloses:

> In another example of an application determining a playlist and/or other content for playback, a user enjoys listening to music on an online music service (e.g.,

> turntable.fm or other virtual room that a user can enter to choose from a plurality of online disc jockeys (DJs) ***deciding what to play next***) using his Mac Book Pro™ at home. He likes the unique user experience the service offers, and he frequently hops from room to room discovering new music. To maximize sound quality, he plays the music on his household playback system (e.g., Sonos™). ***A button or other indicator*** can be added to the turntable.fm Web application ***to switch the content being played to the playback system for output*** (e.g., to the Sonos™ system rather than or in addition to the Mac Book™). While Web-based applications typically do not have access to items on a local network, certain embodiments enable a third-party Web-based application (e.g., Turntable.fm) to ***talk to a playback system*** (e.g., Sonos™) ***in a certain way*** (e.g., may have to log in with a username and password), and the identified user has the website send audio or audio and video down to a playback device (e.g., a zone player) on the playback system local network to play music there (or some other media).

'033 Patent, 12:65-13:19.

969.   In my opinion, a POSITA would understand from the discussion here –e.g., of user input at the MacBook Pro resulting in a playback system (consisting of one or more "playback devices") continuing to play the same music previously being played by the MacBook Pro along with the discussion of "talk[ing] to a playback system … in a certain way"—that an "instruction" from the MacBook Pro would be involved for at least one "playback device" to take over responsibility for playback of a remote playback queue (e.g., provided by the "online music service (e.g., turntable.fm or other virtual room)") from the MacBook Pro.  Moreover, a POSITA would understand from the reference to the "online music service (e.g., turntable.fm or other virtual room) … deciding ***what to play next***" —and the '033 Patent's teachings about a "playback device" obtaining data in the form of a resource locator (e.g., a URI, URL, song-identifier, or some other reference) that it uses to retrieve media content from the cloud—that the aforementioned "instruction" would configure the "playback device" to "(i) communicate with the cloud-based computing system in order to obtain data identifying a next one or more media items that are in the remote playback queue" and "(ii) use the obtained data to retrieve at least one media item in the remote playback queue from the cloud-based media service."

970.   As yet a **third** example, the '033 Patent discloses:

> Certain embodiments allow a third party application to override a local playback queue with its own application-specific queue. The local playback system periodically ***fetches a short list of tracks to play next***. The list of tracks to play is determined by the third-party application, ***for example***. ***In certain embodiments, a shared queue is provided between*** the local playback system and the third party

application to keep the local system and application synchronized.
'033 Patent, 16:59-67.

971. In my opinion, a POSITA would understand from the discussion here that a "playback device" "fetches a short list of tracks to play next" either from an "application-specific queue" of a "third-party application" or from the "shared queue," which, as I explained before, a POSITA would understand in view of the '033 Patent's teachings as a whole is provided by a cloud-based computing system. Here, a POSITA would understand that "fetch[ing] a short list of tracks to play next" would involve the "playback device fetching data in the form of a resource locator (e.g., a URI, URL, song-identifier, or some other reference) for each track in the short list. A POSITA would appreciate that, for the "playback device" to "fetch[] a short list of tracks to play next" from the "shared queue" provided by the cloud-based computing system, the "playback device" would communicate with that cloud-based computing system. In view of nothing in the '033 Patent suggesting that this disclosed functionality is incompatible with, or mutually exclusive of, the examples that I discussed above, it is my opinion that the foregoing disclosure demonstrates to a POSITA a "playback device" being configured to "(i) communicate with the cloud-based computing system in order to obtain data identifying a next one or more media items that are in the remote playback queue" and "(ii) use the obtained data to retrieve at least one media item in the remote playback queue from the cloud-based media service."

972. Despite the aforementioned disclosures, Dr. Bhattacharjee's opines that the '033 Patent does not provide support for the entirety of claim limitation 1.7. Regardless, it is my opinion that the disclosures that I discussed above demonstrate to a POSITA that the '033 Patent supports a "playback device" being configured to "communicate with the cloud-based computing system in order to obtain data identifying a next one or more media items that are in the remote playback queue." I therefore disagree with Dr. Bhattacharjee's assertion that, "[w]hile the proxy server is in the cloud, there is no disclosure in the patent that the local playback system is configured to communicate with the cloud-based computing system after receiving the claimed instruction" (Bhatta. Op. Report, ¶714). *Supra* ¶¶96-100; *see also, e.g.*, '033 Patent, FIG. 11, 15:43-53 (disclosing "playback device" first "access[ing] a source of the content" on "the network (e.g., the