CLEMENT SETH ROBERTS (STATE BAR NO. 209203)
croberts@orrick.com
BAS DE BLANK (STATE BAR NO. 191487)
basdeblank@orrick.com
ALYSSA CARIDIS (STATE BAR NO. 260103)
acaridis@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:  +1 415 773 5700
Facsimile:  +1 415 773 5759

SEAN M. SULLIVAN (admitted *pro hac vice*)
sullivan@ls3ip.com
COLE RICHTER (admitted *pro hac vice*)
richter@ls3ip.com
LEE SULLIVAN SHEA & SMITH LLP
656 W Randolph St., Floor 5W
Chicago, IL 60661
Telephone:  +1 312 754 0002
Facsimile:  +1 312 754 0003

*Attorneys for Sonos, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SONOS, INC.,<br><br>　　　　Plaintiff and Counter-defendant,<br><br>v.<br><br>GOOGLE LLC,<br><br>　　　　Defendant and Counter-claimant. | Case No. 3:20-cv-06754-WHA<br>Related to Case No. 3:21-cv-07559-WHA<br><br>**SONOS'S RESPONSE TO SECOND REQUEST FOR INFORMATION**<br><br>Date: March 31, 2023 |

The Court has already provided extensive guidance on the meaning of "playback queue." Applying these rulings, a "remote playback queue" is a playback queue (as that term has been construed by the Court) that is stored in the cloud.

## I.    CONSTRUCTION OF THE CLAIM TERM "PLAYBACK QUEUE"

Although Sonos previously argued that plain and ordinary meaning should apply, *see* Dkt. 184, 9-16, the Court construed "playback queue" to mean "a list of multimedia content selected for playback."[1] Dkt. 316, 8. In *applying* its construction for purposes of infringement of the '615 patent, the Court found that (i) "a list of one is still a list," (ii) there was no dispute about the fact that the accused devices had a structure that stored at least three media items selected for playback and (iii) that was not sufficient to make the data structure a "playback queue." Dkt 316, 7, 9 ("neither side appears to dispute that Google's products operate by "retrieving" information from the cloud queue about the current, next, and previous media item … The focus of the dispute is instead on whether this information stored locally in the playback device is a playback queue at all.").

Specifically, in finding that the accused structure of previous, current, and next media items was not a "list …selected for playback," the Court found that this was "merely a mirror reflecting a subset of what is happening in the cloud queue" and was not itself used for playback. *Id.*, 9-10. The Court indicated that a data structure was not a "playback queue" if it "merely provide[d] the means to *process* the list[] for playback." *Id.*, 10. Instead, the Court concluded that the "playback queue" is the "queue [that] runs the show." *Id*.

Thus, according to the Court's Order, the claim term "playback queue" refers to a "list of multimedia content selected for playback" that (i) is used for playback, (ii) contains the entire list of media items selected for playback (*id.*, 10), and (iii) is not being used merely to process the list of media items for playback but instead "runs the show" (*id.*, 9-10). Sonos submits that the term "playback queue" should be treated consistently between the '615 and '033 patents, which share a specification.[2]

---

[1] Because of small context differences in the claim language of the '033 Patent this would translate to "a list of one or more media items selected for playback."
[2] Even if the Court decides to now adopt a broader construction for "playback queue," such that YouTube remote could meet limitation 1.7(a) of the '033 Patent, YouTube remote still fails to teach limitation 1.7(b). *See* Dkt. 509.02, 8-10.

## II.   CONSTRUCTION OF THE CLAIM TERM "REMOTE"

In the context of the '033 claims, the term "remote" refers to a location different from (*i.e.*, not local to) the "computing device" or the "playback device." The claim language then goes on to further specify that the remote queue is "provided by a cloud-based computing system." Thus, the claim requires the "remote playback queue" to be provided by the cloud, rather than stored locally on the "computing device" or the "playback device." *See, e.g.*, Dkt. 389.

The specification further supports this interpretation. For example, the '033 Patent describes an embodiment in which a user listens to media on a MacBook Pro from "an online music service." The online music service provides "a plurality of online disc jockeys (DJs) deciding what to play next," thereby providing lists of media items for playback. The user selects one of these lists to play on the user's computing device (*e.g.*, MacBook Pro) and then presses "[a] button or other indicator" that "switch[es] the content being played to the [user's household] playback system for output (e.g., to the Sonos™ system rather than … the Mac Book™)." '033 Patent, 12:65-13:11. In this example, the "playback queue" is located in the cloud and is remote to both the "computing device" (the MacBook Pro) and the "playback device" (the "Sonos™ system").

Google has repeatedly attempted to limit a "remote" playback queue to a queue that is provided by a third-party, despite the lack of support for such a restriction. However, after advancing this interpretation in the Western District of Texas, Google abandoned this interpretation when the case was transferred to this Court, failed to advance it when submitting its Patent L.R. 4 papers, and failed to include it in the claim construction briefing. Dkts. 126, 184, 200, 202. Google then attempted to resurrect it by arguing that a statement Sonos made during an Australian patent prosecution was new evidence. But the Court rejected this attempt. Dkt. 432, 3-4. To the extent Google advances this interpretation yet again, the Court should reject it.

## III.   PUTTING IT TOGETHER

Under the Court's existing construction, the structure that Google called the "party queue" and on which it relied at the hearing is not a "remote playback queue." While that structure *is* remote from the relevant devices, the devices do not look to it to "run the show." In particular, there is *no* evidence that the YTR devices are even *aware* of the existence of the "party queue," much less *ask*

1    it for information about what songs to play. To the contrary, the evidence shows that, in the prior-
2    art YTR system, each playback device (i) looks exclusively to a locally stored, *complete* list of
3    media items to understand what should be played back and, (ii) when that local queue runs dry, the
4    device *stops* and does not ask for further instructions from the cloud. Dkt. 509.04, ¶¶174-79, 203-
5    216. This is why the YTR devices will continue to play the *entire* list of selected media even when
6    they are disconnected from the server. *Id.*, ¶177, 210-11; Dkt. 210.03, ¶74.  All the "party queue"
7    does is relay information (about which media items have been selected) to the playback devices'
8    local queues. Dkt. 509.04, ¶200-202. But that is just a form of *processing* the selected media items
9    – the queue that runs the show for each playback device is the local one.

10          Indeed, from the playback devices' perspective, the *only* thing they know about the cloud
11   is that they occasionally receive a message telling them to update their local, authoritative queue.
12   *Id.*, ¶177, 213-14   But the devices do not know about the so-called "party queue," *ask* it for
13   information, or (as limitation 1.7 requires) take responsibility for playing media items *from* the
14   "party queue." Instead, the devices look only to their *local* list of media items, take responsibility
15   for playing everything in *that* queue, and then *stop*. Thus, the local queue, not the party queue "runs
16   the show" and is the "playback queue" in the prior art YTR system.

17          Google also cannot use the party queue to show anticipation because the party queue doesn't
18   even *exist* when the user's phone is playing back music. At the start of the process, a user creates a
19   list of songs on their local device. *Id.*, ¶¶171-72, 204-206. The user's phone draws *from that list*
20   while playing the songs. *Id.*, ¶173, 204-206. When the user switches to party mode, the phone *stops*
21   playing music and the user-created list is *sent* to the cloud for distribution to the "leanback screens"
22   (*i.e.*, the TVs). Thus, while the user's phone is playing back media items, the "party queue" hasn't
23   been created, and thus cannot be the "remote playback queue" for purposes of limitation 1.4. This
24   is why Google has pointed to the "recommended media items" in an effort to satisfy the "remote
25   playback queue" limitation in limitation 1.4. But that also doesn't work as explained in response to
26   the Court's prior request for information. Dkt. 550, 5.

27          Sonos submits that there is a material dispute over whether the "party queue" runs the show
28   or the local queue runs the show. That is a dispute of *fact* which should go to the jury.

Dated: March 31, 2023

By: */s/ Clement S. Roberts*

CLEMENT SETH ROBERTS
BAS DE BLANK
ALYSSA CARIDIS

ORRICK, HERRINGTON & SUTCLIFFE LLP

SEAN M. SULLIVAN
COLE B. RICHTER

LEE SULLIVAN SHEA & SMITH LLP

*Attorneys for Sonos, Inc.*