Pages 1-29

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable William Alsup,
United States Senior District Judge

GOOGLE, LLC,                    )
                                )
          Plaintiff,            )
                                )
     vs.                        )     **Case No. 20-CV-06754-WHA**
                                )
SONOS, INC.,                    )
                                )
          Defendant.            )
_____)

San Francisco, California
Thursday, April 20, 2023

**<u>TRANSCRIPT OF TELEPHONIC STATUS CONFERENCE</u>**

APPEARANCES ON NEXT PAGE.

TRANSCRIPTION SERVICE BY:
                    Dipti Patel, CET-997
                    Liberty Transcripts
                    7306 Danwood Drive
                    Austin, Texas 78759
                    (847) 848-4907

2

**TELEPHONIC APPEARANCES:**

For the Plaintiff:

                      ORRICK, HERRINGTON & SUTCLIFFE
                      355 South Grand Avenue, Suite 2700
                      Los Angeles, California 90071
           BY: **CLEMENT ROBERTS, ATTORNEY AT LAW**
               **ALYSSA CARIDIS, ATTORNEY AT LAW**

                      LEE SULLIVAN SHEA & SMITH LLP
                      656 W Randolph Street, Floor 5W
                      Chicago, Illinois 60661
           BY: **SEAN M. SULLIVAN, ATTORNEY AT LAW**

For the Defendant:

                      QUINN EMANUEL URQUIHART & SULLIVAN, LLP
                      50 California Street, 22nd Floor
                      San Francisco, California 94111
           BY: **MELISSA BAILY, ATTORNEY AT LAW**
               **LINDSAY COOPER, ATTORNEY AT LAW**
               **JAMES D. JUDAH, ATTORNEY AT LAW**
               **IMAN LORDGOOEI, ATTORNEY AT LAW**

3

| | |
|---|---|
| 1 | **<u>Thursday - April 20, 2023</u>**                                    <u>10:57 a.m.</u> |
| 2 | **P R O C E E D I N G S** |
| 3 | ---oOo--- |
| 4 | **THE CLERK:**  Court is now in session.  The Honorable |
| 5 | William Alsup is presiding. |
| 6 | Calling Civil Action 20-6754 related to Civil Action 21- |
| 7 | 7559, Sonos versus Google. |
| 8 | Counsel, please state your appearances for the record |
| 9 | beginning with counsel for Sonos. |
| 10 | **MR. SULLIVAN:**  Your Honor, this is Sean Sullivan from |
| 11 | Lee Sullivan Shea & Smith on behalf of Sonos. |
| 12 | **MR. ROBERTS:**  Good afternoon, Your Honor.  This is Clem |
| 13 | Roberts from the Orrick firm.  Mr. Sullivan will be presenting |
| 14 | today, but I am also here and joined by my partner Alyssa |
| 15 | Caridis. |
| 16 | **MS. BAILY:**  This is Melissa Baily for Google.  And with |
| 17 | me is Iman Lordgooei, Lindsay Cooper, and James Judah.  And |
| 18 | also from Google, Patrick Weston is on the line. |
| 19 | **THE COURT:**  Anyone else, please? |
| 20 | (No audible response) |
| 21 | **THE COURT:**  Okay.  Thank you, and good morning. |
| 22 | I hope this will be a short conference.  If anyone cannot |
| 23 | hear me well, speak up now so let me know. |
| 24 | Okay.  I guess you can all hear me. |
| 25 | The reason I wanted to talk with you concerns the damages |

4

1    issue on the '885 Patent particularly and what the measure of

2    damages is that Sonos will be presenting to the jury.

3        And the reason I ask is what is the cutoff time period

4    and is there a per-use measure of infringement that's going to

5    be pursued as opposed to a one-time paid-up license.

6        So let me turn it over to someone at Sonos.  And be sure

7    to identify yourselves.

8        **MR. SULLIVAN:**  Yes, Your Honor.  This is Sean Sullivan on

9    behalf of Sonos.  And I can answer those questions for you,

10   Your Honor.

11       We've established a royalty rate for both the '885 and

12   the '966.  And I mention the '966 only because the damages are

13   different.  If you remember, the '885 is from the perspective

14   of the playback device, the speaker if you will, while the

15   '966 is from the perspective of the controller device, like a

16   Pixel phone that has the Google Home app installed on it.

17       So the rates that we have for those from Sonos for the

18   '966 Patent is 82 cents per infringing unit there on the

19   controller.  And it's 87 cents on the speaker side.

20       **THE COURT:**  Now is that -- when you say per-unit, is that

21   a one-time paid up forever or is it each time it's used it

22   rings up 82 cents?

23       **MR. SULLIVAN:**  Well, it's one time for the speaker.  But

24   obviously, they continue to sell the speaker.  And same thing

25   with the phones, people continue to download the apps on to

5

1    their phones.  So it's an ongoing royalty rate, but we're not

2    charging a per-use if that makes sense.

3         **THE COURT:**  It's ongoing in what sense?

4         **MR. SULLIVAN:**  Well, they continue to sell infringing

5    products into the future.

6         **THE COURT:**  All right.  Well, let's take an example.

7         **MR. SULLIVAN:**  Our damages go through last November.

8         **THE COURT:**  Let's take -- all right.

9         **MR. SULLIVAN:**  Yeah.

10        **THE COURT:**  Let's take an example.  Let's say that your

11   proof shows the jury agrees with you on 82 cents and 87 cents

12   but that if there's a thousand customers who are infringing,

13   I'm sure there are more than that, but if there are a

14   thousand, then the damages would be 82 cents times a thousand

15   plus 87 cents times a thousand.

16        But that would not extent into the future.  It would be a

17   one-time paid-up license as to that one customer.  Is that

18   correct or not?

19        **MR. SULLIVAN:**  Yes, that's correct if infringement stops.

20   So if they were enjoined, for instance, at the trial and

21   you're looking at the past damages.  We're only charging the

22   unit -- the royalty rate per phone and per speaker.  We're not

23   charging every time a user uses that speaker over and over and

24   over again.  We're not charging multiple times for the use of

25   that speaker --

6

1      **THE COURT:**  Well, but what you're saying doesn't make

2  sense to me.  You're saying two different things.  Let's say

3  that a particular customer continues to infringe for the life

4  of the patent.  But what I thought you were saying is, well,

5  since they paid the 82 cents, they're entitled to do that

6  until the end of the license.

7      So, yes, infringement is continuing as to new customers

8  but as to that customer, they paid the 82 and the 87 and so

9  that entitles them to go all the way to the end of the

10  patents.  I'm not saying that.  As a ruling, I'm asking you is

11  that what your damages theory is.

12      **MR. SULLIVAN:**  Yeah.  I think it's easier if you talk

13  about it or look at it from the perspective of the device

14  rather than the user.  That may be where some of this

15  confusion is coming in, Your Honor.

16      We only charge the royalty rate --

17      **THE COURT:**  All right.  Look at --

18      **MR. SULLIVAN:**  -- per device.

19      **THE COURT:**  All right.  Do it from the point of view of a

20  device --

21      **MR. SULLIVAN:**  Yeah, so we --

22      **THE COURT:**  -- and a particular speaker and a particular

23  -- each speaker and each device, they pay 87 or 82 cents and

24  they're done and they can continue with their infringement all

25  the way to the end of the patents.

7

1      **MR. SULLIVAN:**  That's correct, Your Honor.

2          Once that device is paid, the 82 cents or the 87 cents if

3      it's a phone, it's covered.

4      **THE COURT:**  All right.  So it's a -- all right, so here's

5      the problem.  What if infringement stops because the design-

6      around is valid?  How do you adjust these numbers?

7      **MR. SULLIVAN:**  The numbers stay the same, Your Honor.  It

8      would just be for past damages at that point.

9      **THE COURT:**  Well, I question whether that --

10     **MR. SULLIVAN:**  There would be no future damages.

11     **THE COURT:**  I question whether or not -- you know, just

12     take a simpler case in an ordinary patent case, not one like

13     this, but the ordinary case.

14         Let's say there's infringement for six months, then

15     there's a successful design-around, the patent has 20 years to

16     run, and you're trying to collect for 20 years' worth of

17     infringement even though there's only six months of

18     infringement by saying it's a one-tome paid-up license.

19         I question whether or not that's valid.  Explain to me

20     why that would be valid.

21     **MR. SULLIVAN:**  Well, Your Honor, just so it's clear,

22     we've only done calculations in this case based on past

23     damages.  We haven't calculated anything for the future.  We

24     don't know how many products they're going to sell, if any.

25     We don't know if they changed their design if that will be

8

1    infringing.

2        So in our case, they've been infringing since November of

3    2019.  We've only looked at financial information from them

4    November 2019 through November of 2022.  So we've only

5    examined past damages.

6        **THE COURT:**  Well, when you say past damages --

7        **MR. SULLIVAN:**  If they change their design to a non-

8    infringing way --

9        **THE COURT:**  -- you're --

10        **MR. SULLIVAN:**  Go ahead, Your Honor.

11        **THE COURT:**  Let's say that -- well, let me ask a more

12    practical question.  Let me ask this question to Google for a

13    moment.

14        Does your design-around affect units that have already

15    been sold, speakers that -- or, in other words, is there some

16    way for you to swoop in to the units and the phones and to

17    update the software so that your design-around becomes

18    effective and is no longer infringing, assuming it's --

19        **MS. BAILY:**  Yes, Your Honor.

20        **THE COURT:**  -- a (indiscernible) design-around.  Go

21    ahead.

22        **MS. BAILY:**  Sure.  This is Melissa Baily for Google.

23        Yes, Your Honor.  We can push the design-around to the

24    existing products, and we have.

25        **THE COURT:**  Now do you have a corresponding damages

9

1    expert with a corresponding damages theory?

2         **MS. BAILY:**  We have a damages rebuttal expert who

3    critiques Sonos' theory and offers his own theory, but it is

4    not -- it's a lump-sum theory.

5         **THE COURT:**  What is your theory or is there a theory?

6         **MS. BAILY:**  The theory is based on a comparable license

7    agreement that the parties agree is technically comparable, as

8    well as costs associated with designing around the patent.

9         **THE COURT:**  What is the -- can you give me a number?

10        **MS. BAILY:**  So around a million dollars.

11        **THE COURT:**  For -- and would that extend into the future

12   or would that extend and how does it tie into the design-

13   around?

14        **MS. BAILY:**  So --

15        **THE COURT:**  Explain your theory.

16        **MS. BAILY:**  Sure.  The lump sum would be the lump sum for

17   taking a license to the patents.  And Lindsay Cooper is on the

18   line for us, as well.

19        Lindsay, could you address Your Honor's question about

20   whether the number would change in view of the design-around?

21        **MS. COOPER:**  It wouldn't, Your Honor.  It would stay the

22   same.

23        **THE COURT:**  Well, all right.  So both of you are

24   presenting to the jury damages theories that will not change

25   depending on the answer to the design-around.  Is that

1    correct?  Let me start with Google first.

2        **MS. BAILY:**  That is correct from Google's perspective

3    with our affirmative damages assessment.

4        **THE COURT:**  All right.  And then, Sonos, is that true

5    from your perspective?

6        **MR. SULLIVAN:**  Your Honor, this is Sean Sullivan on

7    behalf of Sonos.

8        It is true, but I think just to avoid confusion on what I

9    think Ms. Baily said, the design-around that they've

10   implemented, that doesn't erase any of the past infringement.

11   It just stops it from going forward, the reason being you can

12   infringe by making, using, or selling.

13       So Google, for instance, with the speakers on the '885

14   Patent, they have already infringed by selling in the past,

15   right, those infringing speakers.  So we want a royalty for

16   each of those sales, okay.  So the redesign just stops -- it

17   stops the bleeding.

18       It just means that they're not going to infringe if that

19   redesign, of course, is found to be non-infringing.  If it's

20   infringing, then we're going to need damages for the future or

21   an injunction to stop it.

22       **THE COURT:**  When you say it's in the future --

23       **MR. SULLIVAN:**  But redesign doesn't impact --

24       **THE COURT:**  Wait, wait, wait.  When you say for the

25   future, this is where it's a fast glider within ice for me and

1    I need to understand it.  You mean for future units, new units

2    that come on using the product in the future.

3         **MR. SULLIVAN:**  Yes.

4         **THE COURT:**  New speakers, new phones; not old phones and

5    not old speakers that they've already paid for with the

6    license that the expert's going to testify to?

7         **MR. SULLIVAN:**  That is correct, Your Honor.

8         **THE COURT:**  All right.  Okay, all right.

9         **MR. SULLIVAN:**  That is correct.

10        **THE COURT:**  So if the design-around is successful and

11   implemented then up to the date of implementation, you would

12   continue to collect for sales of the app and speakers up to

13   that point of the implementation, but thereafter, further

14   sales if the design-around works would be immune from suit.

15        Is that correct?

16        **MR. SULLIVAN:**  That is --

17        **THE COURT:**  I think it is.

18        **MR. SULLIVAN:**  That is correct, Your Honor.  That is

19   correct.

20        **THE COURT:**  Okay.

21        **MR. SULLIVAN:**  You got it right.

22        **THE COURT:**  All right.  Well, then here's the reason I

23   asked this.  It sounds like from both sides' perspective --

24   what I'm trying to do, here's what I'm trying to do.  I'm

25   playing out in my mind how the trial is going to work.

1          Do we -- is there a cutoff -- before I get there.  Is

2     there a cutoff on your -- what is the cutoff date for damages?

3     There's got to be some practical cutoff date.  What is the

4     plaintiff here, Sonos, what are you proposing as your cutoff

5     date?  And this is without prejudice to collecting in a

6     supplemental complaint damages in the future if the design-

7     around doesn't work.

8          **MR. SULLIVAN:**  Yeah, understood, Your Honor.

9          This is Sean Sullivan again.  So we only have financial

10    data from Google on the speaker side going through the third

11    quarter of 2022, so that would be September 30th of last year.

12    We only have financial information related to the '966 Patent

13    and the downloads onto the phone of the Google Home app I

14    think through November of last year.

15         So, again, we can't offer -- without updated financials

16    from Google, we can't offer any damages beyond those points at

17    this point in time.  Does that make sense?

18         **THE COURT:**  No, I understand what you're saying.  Let me

19    make sure Google agrees that those dates are correct.

20         Ms. Baily, is that correct?

21         **MS. BAILY:**  My understanding is that what was just said

22    was -- is correct with respect to the financial information

23    that's available to Sonos from which they calculated damages.

24         **THE COURT:**  All right.  So one way to deal with the

25    problem of future damages would be to ask the jury to set a

1    per -- you know, set a number, either 82 cents or they may say

2    no, no, that's ridiculous, 10 cents, '885 12 cents.  Whatever

3    they want to set as a per.  And then we could just

4    mechanically apply that to future sales once the financial

5    information is made available.

6        This is assuming that the plaintiff wins on everything

7    and Google loses on everything here so that what I'm trying to

8    avoid is a second trial on supplemental damages.  So what is

9    the best way to get a number that we can mechanically apply to

10   future sales?

11       Sonos, you go first.

12       **MR. SULLIVAN:**  Yeah, Your Honor.  Sean Sullivan again.

13       I'm very much in favor of the plan you laid out.  In my

14   experience, that's traditionally how we do it.  You get a

15   royalty rate, per-unit royalty rate.

16       Obviously, the jury can only look at and consider what

17   damages we have up until that point.  They can't consider the

18   future.  But that's something that if an injunction is not

19   issued, that the Court can consider as part of future damages.

20       **THE COURT:**  All right.  Ms. Baily, you said your position

21   is that you want the jury not to do a per-unit but to do a

22   one-time paid-up license forever.  Is that correct?

23       **MS. BAILY:**  That's exactly right.  And so our view is it

24   would be prejudicial to ask the jury to set a number per-unit

25   rate on the verdict form when we're going to be presenting a

1    lump-sum number that accounts for any number --

2        **THE COURT:**  Well, we can let the jury -- I mean couldn't

3    the jury decide what the -- I've forgotten what do we call

4    this negotiation but this hypothetical negotiation.  Each side

5    gets to make their pitch as to what people would really do in

6    these circumstances.

7        And if the jury decides Google is right, a one-time paid-

8    up license is the way to go, then that's what they would say.

9    On the other hand, they may agree with plaintiff and say, no,

10   no, they would do a per-unit basis.  And then I would say on

11   the verdict form if you decide Sonos is right, tell us what

12   the dollar amount would be or the cents amount would be per

13   unit.

14       Now that way both of you would be happy and both of you

15   could win, but we would avoid having another trial for

16   supplemental damages.  Wouldn't that be the way to go?

17       Let me hear from Sonos first.

18       **MR. SULLIVAN:**  Yes. Sean Sullivan again, Your Honor.

19       That would be fine with us.

20       **THE COURT:**  And how about Google?

21       **MS. BAILY:**  Melissa Baily for Google.

22       Generally, that's fine.  I just want to flag for Your

23   Honor that our damages expert does also critique Sonos'

24   running royalty.  I just want you to be aware of that.  His --

25       **THE COURT:**  So his critique goes -- what are the numbers

1    his critique comes up with on the running royalty?  I'm just

2    curious.  Do you know?

3        **MS. BAILY:**  No problem, Your Honor.  I wasn't sure

4    exactly what questions would come up today.

5        Lindsay, do you have that critique adjustment that we do

6    on hand?

7        **MS. COOPER:**  Yes.  This is Lindsay Cooper for Google.

8        Critiquing Sonos' expert's numbers, our expert comes up

9    with a range of 1.2 million for one of the patents and 7.4

10   million for the other patent.

11       **THE COURT:**  Well --

12       **MS. BAILY:**  But what's the running -- do the running

13   royalty --

14       **THE COURT:**  Is there a running number like 82 cents?

15       **MS. COOPER:**  I don't have that number handy.

16       **THE COURT:**  But is there one?  You don't have to tell me

17   what it is.

18       **MS. COOPER:**  I'm not positive offhand.  I apologize.

19       **THE COURT:**  Okay.  All right.

20       Okay.  This has been very useful to me, so I'm going to

21   change the subject now unless there's something one side or

22   the other feels you should add or subtract from what you've

23   said so far.  Plaintiff goes first.

24       **MR. SULLIVAN:**  Your Honor, this is Sean Sullivan for

25   Sonos.

1          The only other issue I can think of related to these --

2     well, there's two things I wanted to mention.  One, on the

3     damages, the redesign, Google is using that redesign as part

4     of its damages analysis.

5          So whether that redesign is infringing or not infringing

6     and whether it's commercially acceptable, that is an issue

7     that Google wants to -- I believe, unless Google tells me

8     differently now but that's an issue that their expert has used

9     to say, oh, well, because we could have designed around and

10    here's the design-around which would be non-infringing and

11    commercially acceptable -- we disagree with that, of course.

12         But they have this redesign so therefore the damages are

13    a lot lower than what Sonos is asking for.  So if we defer the

14    redesign issue to a bench trial like your order seemed to

15    indicate, we might have trouble with that argument happening

16    in front of the jury if we can't try the whole redesign issue

17    whether that's infringing or not to the jury.

18         Does that make any sense?

19         **THE COURT:**  Well, so you prefer that the jury decide the

20    redesign issue?

21         **MR. SULLIVAN:**  Correct.

22         **THE COURT:**  All right.  Let me hear what Google says on

23    this point.

24         **MS. BAILY:**  This is Melissa Baily for Google.

25         It is a key part of our damages expert's analysis that

1    Google could have and in our view in fact did, but that can be

2    a separate question, design-around the patents and the amount

3    of work and resources that it would take to do the redesign.

4    We think that is a critical part of the hypothetical

5    negotiation and of the analysis of damages.

6         And typically, an expert is permitted to talk about at

7    least hypothetical non-infringing alternatives regardless of

8    whether they've been implemented.  And so we do want to

9    present our non-infringing alternatives to the jury in the

10   context of at least our damages analysis.

11        **THE COURT:**  And so in your view, that would be --

12        **MS. BAILY:**  In addition, Your Honor -- I apologize, Your

13   Honor.  If I could just make one more point.

14        **THE COURT:**  Sure.

15        **MS. BAILY:**  Our preference would also be to tell the jury

16   that we did in fact implement it because otherwise, the jury

17   will be wondering why we didn't if it was so simple to do.

18        And so our preference would be to inform the jury that we

19   had these hypothetical design-arounds available to us at the

20   time in the hypothetical negotiation and that we actually did

21   implement one and this is how much it cost.

22        **THE COURT:**  Well, so in our -- well, it seems to me then

23   that you're going to be presenting -- and I guess are both

24   sides going to be presenting evidence on whether or not the

25   design-around is effective?

1    **MS. BAILY:** So, Your Honor, this is Melissa Baily from

2    Google.

3    We would -- we're aware of Your Honor's ruling with

4    respect to the redesign, but we do think especially because

5    they have these implications for damages that it would make

6    sense to try it if Your Honor permitted that.

7    **THE COURT:** Well, it's a Georgia-Pacific consideration,

8    the ease with which a design-around could be done.  Now if I

9    thought the evidence was clear enough under Rule 50, I could

10   take that issue away from the jury and just say I've listened

11   to the evidence and either it is a valid design-around or it's

12   not.

13   I don't know.  I have no idea.  I haven't looked at this.

14   I mean you lawyers have kept us so busy, there hasn't been

15   time for me to -- I haven't got a clue what the design-around

16   is.

17   But I could -- under a Rule 50 standard, I could just

18   instruct the jury at the end, well, you've heard Ms. Baily

19   talk about the design-around, but in the judge's opinion, it's

20   not a valid design-around, still infringes.  Or I could say

21   the other.  I could say, yes, it is a valid design-around and

22   -- or I could say it's not Rule 50, it doesn't meet the

23   standard and the jury will have to decide.

24   So to me, that's the normal way this ought to play out is

25   that the jury decides if it's a design-around subject to Rule

1   50 possibilities.  It might go either way against plaintiff or

2   against defendant.

3       Now let me hear what the lawyers say on that.  Plaintiff,

4   you get to go first.

5       **MR. SULLIVAN:**  Yeah, Your Honor.  Sean Sullivan on behalf

6   of Sonos.

7       I think that would be great, Your Honor.  I like that

8   procedure.  It will give you a chance to see it all laid out,

9   to give the jury a chance to hear it, as well.  I think doing

10  it that way through Rule 50 rather than through a deferred

11  bench trial would be preferable, it sounds like, to both

12  parties.  So I -- yeah, I'm on board with that approach.

13      **THE COURT:**  What do you say, Ms. Baily?

14      **MS. BAILY:**  Your Honor, to be honest, you know, I haven't

15  consulted with my client about it.  But I think, you know,

16  generally that was how we were planning to try the case before

17  we got Your Honor's ruling.

18      **THE COURT:**  All right.  I'm still glad we had this

19  conversation even though it's not as clear-cut as I had hoped.

20      All right.  Let me change the subject a minute.

21      **MR. SULLIVAN:**  Wait, Your Honor.  It's Sean Sullivan on

22  behalf of Sonos.  If I could just raise one more damages-

23  related thing and it's more of a housekeeping matter.

24      But our expert James Malkowski is currently scheduled to

25  be at trial in front of Judge Andrews the same week, May 8th,

1    in Delaware.  I'm not asking you to change the schedule with

2    Your Honor or this case.  But given the overlap, I may need

3    some flexibility.  We're still trying to work out the details

4    where he could appear and testify in both cases that week.

5        But I may need to ask for some flexibility from Your

6    Honor and from opposing counsel to make sure I can get him up

7    on the stand in this case --

8        **THE COURT:**  Well, I'm not going to agree anything yet.

9        **MR. SULLIVAN:**  Okay.

10       **THE COURT:**  I'm sorry these experts make so much money

11   that they book themselves for two separate places and I'm not

12   sympathetic to this at all.  So right now I'm going to say

13   when you rest your case, you rest your case.  And but I'm not

14   going to say no to some small degree of flexibility.  But --

15       **MR. SULLIVAN:**  Thank you, Your Honor.  Thank you.

16       **THE COURT:**  -- anything major, I don't know.  I would

17   have trouble with that.  Now that goes for both sides.  This

18   case, we're going to get it over with in a two-week period.

19   That amounts to about 14 hours of evidence per side plus

20   openings, plus closings.

21       And I know you can do it.  And you're good lawyers, and

22   you'll be able to do it.  I'll probably give them one day off

23   around Mother's Day, probably the Monday so they can travel to

24   see their mothers.  So we would have nine, five days the first

25   week, four days the second week.

1          Out of an abundance of caution, I'll try to clear the

2     jury to have a couple of days in the third week in case they

3     need it for deliberations or whatever.  But that's all the

4     time I got to give you, and I'm positive you can get it done

5     in that length of time.

6          So start keeping that in mind and be efficient instead of

7     the way patent lawyers tend to be is to drone on and on.  And

8     you're going to have to get right to the point.

9          Okay.  I've forgotten what the -- if my law clerk is on,

10    there was another issue I wanted to raise and now I'm talking

11    on the phone where my (indiscernible) are so I can't --

12         **MS. BAILY:**  Your Honor, this is --

13         **LAW CLERK:**  Hi, Judge.  The letter brief.

14         **MS. BAILY:**  Your Honor, this is Melissa Baily for --

15         **THE COURT:**  Okay.

16         **MS. BAILY:**  -- Google.  I just wonder if I could just be

17    heard one more moment on damages?  I understand you want to

18    move on.

19         **THE COURT:**  All right.  Go ahead, please.

20         **MS. BAILY:**  I apologize.  Just to sort of make clear for

21    Your Honor, we had moved for summary judgment on the redesign

22    and I do -- our view is that there really is not any fact in

23    dispute with respect to the redesign.  And so, if Your Honor

24    didn't consider that motion for summary judgment at all but --

25         **THE COURT:**  I'm going to deny it again.

22

1          **MS. BAILY:**  Now we're thinking about --

2          **THE COURT:**  No, no, Ms. Bailey, please be realistic and

3     reasonable.  How many other cases do you think I have with one

4     law clerk?

5          **MS. BAILY:**  Apologies.  That's fine, Your Honor.  I just

6     didn't know if you --

7          **THE COURT:**  Yeah, I'm not going to -- I'm denying your

8     motion then if you feel that it's got to be decided on the

9     ground that they're fact issues and I'm going to let it go to

10    the jury and I'll at least wait and see what the evidence is

11    at trial.

12         But do you know how many thousands of pages you and your

13    -- you know, your client is a big-time user of our court, not

14    just me but I mean a big -- and you should be more respectful

15    of the burden that you and your litigation, Google's

16    litigation imposes on the Court.  Sonos, too, but Google even

17    more so.

18         And the idea that you could think that we would be

19    burning the midnight oil night and day to get your redesign

20    admitted is just wrong.  So I'm -- don't get me started here.

21    I'm not going to have that ruled on before trial.  It's

22    conceivable I could rule on it during trial, but I'm not

23    promising that.  I would like to --

24         **MS. BAILY:**  Understood, Your Honor.

25         **THE COURT:**  -- see the evidence.

1      **MS. BAILY:**  I apologize.

2      **THE COURT:**  All right.  So --

3      **MS. BAILY:**  Thank you, Your Honor.

4      **THE COURT:**  Don't apologize.  This is what you've chosen

5      to do for a living is patent litigation, but it's a huge --

6      it's a hundred times more burdensome than the ordinary civil

7      rights case.  And it's because of the way the lawyers do this.

8      I don't know why, but it's just burdensome as can be.

9          Okay.  My law clerk, you were in there somewhere and you

10     mentioned something.  And what was it again, letter briefs?

11     What was the other thing?

12     **LAW CLERK:**  That's up next.

13     **THE COURT:**  All right.  Well, let me say to you I can't

14     say never, but letter briefs are not formal motions.  And I

15     would prefer that in the future, you stick to formal motions

16     instead of sending me letters or even worse having your

17     paralegals call my courtroom deputy to ask questions.

18         If you have a formal motion to make, I want you to make

19     it with a brief, a noticed motion and in that formality as

20     opposed to letter briefs.  It gets out of hand and pretty soon

21     I just become a pen pal.  So I don't want to go down that path

22     again.

23         All right.  I think we've covered everything I needed to

24     cover.

25     **LAW CLERK:**  Your Honor?

24

1      **THE COURT:**  Yes.

2      **LAW CLERK:**  Pardon for the interruption, but just a quick

3      reminder about jury selection date change.

4      **THE COURT:**  Didn't I already mention that?  We're going

5      to -- Angie asked can the jury office give us the venire on

6      the Thursday after the pretrial conference?

7      **LAW CLERK:**  Yes.

8      **THE COURT:**  Okay.  We're going to try to pick the jury --

9      just plan to pick the jury on the day after the pretrial

10     conference, which is on a Wednesday.  And then we'll devote

11     Thursday to picking the jury.  And then we will -- that will

12     give us a little more time so that on Monday we can start with

13     the opening statements on Monday I believe it's the 8th.

14         So our jury would be what day, Angie?

15     **LAW CLERK:**  May 4th.

16     **THE COURT:**  Jury selection.  What?

17     **LAW CLERK:**  May 4th.

18     **THE COURT:**  May 4th.  And we will most likely have a

19     total of eight jurors.  And in that pretrial conference, we'll

20     go over the procedure.  I'll give each side some time to ask

21     questions, too.  I'll ask the main questions for voir dire,

22     and then each side gets to ask them.

23         We will not have a questionnaire, so -- Angie, do we have

24     one on hardship?

25     **LAW CLERK:**  I believe we do, Your Honor.

1    **THE COURT:**  Okay.  So there's a very abbreviated one that

2    we may have, but it won't have questions like have you ever

3    invented anything, have you ever been sued, have you ever been

4    cheated on.  I have a good idea, any of those things that the

5    patent lawyers like to know.  Those things we may cover it

6    during the real voir dire, but we're not going to have a

7    questionnaire.

8        So be prepared to do the voir dire on that Thursday.

9        Let me ask one last question.  What did we ever do in

10   this case about ADR?  Did I assign you to a magistrate judge

11   for mediation?  I can't remember.  Plaintiff first, please.

12   **MR. SULLIVAN:**  Yeah, Your Honor.  We've had so many

13   skirmishes with Google with mediation, I can't remember if we

14   did one in connection with this case or not.  It wouldn't

15   surprise me if we did, but I just don't know off the top of my

16   head, Your Honor.

17   **THE COURT:**  How about Ms. Baily, do you remember?

18   **MR. SULLIVAN:**  (Indiscernible) in mediation before.

19   **THE COURT:**  Well, yeah, but that --

20   **MS. BAILY:**  This is Melissa Baily for --

21   **THE COURT:**  Go ahead.

22   **MS. BAILY:**  Melissa Baily for Google.

23       I believe we did do a mediation in the context of this

24   case that attempted to address more global issues.

25   **THE COURT:**  Well, that's not a very satisfactory answer.

1    I think you should do a mediation on this case instead of

2    trying to -- think about how this looks to the outside world

3    that you're too big respectable companies arguing over these

4    patents that may or may not have or should or should not have

5    been issued in the first place.

6        And maybe the design-arounds are easy, I don't know, but

7    why is it that you can't size up who's going to win or lose

8    and just agree to mediate this case on the merits and then

9    move on to the rest of your worldwide litigation somewhere

10   else?

11       I want you to think about the burden you're placing on

12   jurors.  I want you to really think about that for a second.

13   The jurors will be driving from places like Santa Rosa getting

14   up extra early in the morning, getting home, well, I'd let

15   them go at one, but they still have to -- then they go home,

16   they got to pick up their children, they got to maybe go to

17   work for a couple of hours, they have to do the -- in

18   California, people get killed on the highway.  The gangs shoot

19   them from other cars.

20       They got to come all the way to San Francisco, deal with

21   the tenderloin, that's what you're asking these people to do.

22   And is your litigation worth it?  I don't know, maybe.  But

23   that's what -- I get paid to do it, but the jurors, I see

24   their problem.  And I feel you're imposing a big burden on

25   them and you should make a good-faith effort to mediate your

1    case instead of just carrying on the worldwide vendetta.

2         So think about it, please.  All right, enough of my

3    speech.  Okay, I feel like I've run out of things to bring up

4    with you.  And --

5         MR. SULLIVAN:  Your Honor?

6         THE COURT:  Yes.

7         MR. SULLIVAN:  Your Honor, this is Sean Sullivan.

8         I just have one question for you about the letter brief

9    and doing it as a motion.  As you know, the letter brief is

10   about whether or not we're going to try issues related to the

11   '615 Patent which is direct control which we believe you've

12   already dealt with.  We submitted a consent judgment order to

13   help with that.

14        But I don't know how to get that motion noticed with Your

15   Honor in time to have any meaningful impact on our pretrial

16   order --

17        THE COURT:  Oh, I'm going to go ahead and deal with it --

18        MR. SULLIVAN:  -- pretrial conference --

19        THE COURT:  Listen, I'm going to --

20        MR. SULLIVAN:  Okay.

21        THE COURT:  -- I hope the Federal Circuit reads this

22   transcript someday and -- but those issues, the '615, if I

23   understand it correctly, those miscellaneous claims are out of

24   the case.  O-U-T.  And you're not going to get to reserve

25   anything.  You don't get to reserve and have a string to pull

1    it back in the event of A, B, and C.  No, they're just out. \

2        On both sides, you're not going to waste the jury's time

3    to try to find out if those things are invalid or not.  That

4    is so ridiculous.  They've been held invalid by the PTAB and

5    one invalid by me and I just cannot fathom the idea that

6    either side would want to continue to litigate that.

7        So I don't even like your consent judgment because you

8    want to have a string A, string B, and string C to bring it

9    back to life.  No, it is dead in the water for both sides.

10    End of story.  And we're not going to present that to the

11    jury, and it's gone with prejudice.  So you can take that

12    issue up with the Federal Circuit if you don't like the

13    ruling.

14        All right.  Now you don't have to file a formal motion on

15    that.

16        **MR. SULLIVAN:**  Okay, thank you, Your Honor.

17        **THE COURT:**  You're welcome.

18        All right.  I'm going to hang up now, and thank you for

19    reminding me.  I knew there was something else that I wanted

20    to bring up.  But I need to run here, and I thank you for your

21    time.  And I'll see you on the pretrial conference.  Good luck

22    to both sides.

23        **MS. BAILY:**  Thank you, Your Honor.

24        **THE CLERK:**  Court is adjourned.

25        (Proceedings adjourned at 11:37 a.m.)

29

1                              ---oOo---

2

3                 **CERTIFICATE OF TRANSCRIBER**

4        I, DIPTI PATEL, certify that the foregoing is a true and

5   correct transcript, to the best of my ability, of the above

6   pages of the official electronic sound recording provided to

7   me by the U.S. District Court for the Northern District of

8   California of the proceedings take on the date and time

9   previously stated in the above-entitled matter.

10       I further certify that I am neither counsel for, related

11  to, nor employed by any of the parties to the action in which

12  this hearing was taken.

13       I further certify that I am not financially nor otherwise

14  interested in the outcome of the action.

15

16  _Dipti Patel_

17  _____

18  DIPTI PATEL, CET-997

19  LIBERTY TRANSCRIPTS                    Date: April 25, 2023

20

21

22

23

24

25