CLEMENT SETH ROBERTS (STATE BAR NO. 209203)
croberts@orrick.com
BAS DE BLANK (STATE BAR NO. 191487)
basdeblank@orrick.com
ALYSSA CARIDIS (STATE BAR NO. 260103)
acaridis@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:   +1 415 773 5700
Facsimile:   +1 415 773 5759

SEAN M. SULLIVAN (*pro hac vice*)
sullivan@ls3ip.com
J. DAN SMITH (*pro hac vice*)
smith@ ls3ip.com
MICHAEL P. BOYEA (*pro hac vice*)
boyea@ ls3ip.com
COLE B. RICHTER (*pro hac vice*)
richter@ls3ip.com
LEE SULLIVAN SHEA & SMITH LLP
656 W Randolph St., Floor 5W
Chicago, IL 60661
Telephone:   +1 312 754 0002
Facsimile:   +1 312 754 0003

*Attorneys for Sonos, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA,

SAN FRANCISCO DIVISION

| | |
|---|---|
| SONOS, INC.,<br><br>　　　　Plaintiff and Counter-defendant,<br><br>　　v.<br><br>GOOGLE LLC,<br><br>　　　　Defendant and Counter-claimant. | Case No. 3:20-cv-06754-WHA<br>Related to Case No. 3:21-cv-07559-WHA<br><br>**SONOS, INC.'S MOTION *IN LIMINE* NO. 1 TO LIMIT THE TESTIMONY OF GOOGLE'S DAMAGES EXPERT W. CHRISTOPHER BAKEWELL**<br><br>Judge:  Hon. William Alsup<br>Pretrial Conf.:  May 3, 2023<br>Time:  12:00 p.m.<br>Courtroom:  12, 19th Floor<br>Trial Date: May 8, 2023 |

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS:

PLEASE TAKE NOTICE that on May 3, 2023 at 12:00 p.m., or as soon thereafter as may be heard before the Honorable Judge William H. Alsup, in Courtroom 12 on the 19th Floor of the United States District Court for the Northern District of California, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Sonos, Inc. ("Sonos") will, and hereby does, move this Court to limit the testimony of Google's damages expert W. Christopher Bakewell and exclude corresponding portions of the opinions set forth in his rebuttal reports. This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Joseph R. Kolker ("Kolker Decl."), all exhibits filed herewith, all documents in the Court's file, and such other written or oral evidence and argument as may be presented at or before the time this motion is heard by the Court.

**STATEMENT OF THE RELIEF REQUESTED**

Sonos requests that this Court limit the testimony of Google's damages expert W. Christopher Bakewell to exclude (1) any opinion that the cost of redesign operates as a cap on reasonable royalty damages; (2) any opinion relying on Google's December 2022 redesign as a noninfringing alternative; (3) any opinion about or discussion of noncomparable license and patent purchase agreements; and (4) any opinion regarding Sonos's lost profits.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Google will offer W. Christopher Bakewell as its damages expert at the upcoming trial. The Court should exclude (1) any opinion that the cost of redesign operates as a cap on reasonable royalty damages; (2) any opinion relying on Google's December 2022 redesign as a noninfringing alternative; (3) any opinion about or discussion of noncomparable license and patent purchase agreements; and (4) any opinion regarding Sonos's lost profits.

## II.  STATEMENT OF RELEVANT FACTS

Google's damages expert, Mr. Bakewell, opines that a reasonable royalty for infringement of the '885 and '966 patents would be "[l]ess than $200,000" for each. Kolker Decl. Ex. A 68:7-18. Mr. Bakewell bases these opinions on what he believes to be the cost of implementing alleged commercially acceptable non-infringing alternatives. *Id.* at 70:23-71:3. As a back-up position—assuming that there were no commercially acceptable non-infringing alternatives—Mr. Bakewell contends that the next best measure of damages in this case comes from a Google patent purchase agreement that Mr. Bakewell deems to be comparable to the hypothetical negotiation in this case. *Id.* at 71:4-72:10. The agreement in question is a patent purchase agreement between Google and a non-practicing entity, rather than a patent license agreement between market competitors. Kolker Decl. Ex. B ¶¶ 565-67. Mr. Bakewell made just one adjustment to the amount of the purchase agreement, to account for the different timescales for the asserted patents in this case, arriving at "scaled lump-sum amounts" of ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ *Id.*

## III.  ARGUMENT

In evaluating a challenge to an expert witness's testimony, "the district court must exercise its 'gatekeeper' function in ensuring that [expert] testimony is relevant and reliable." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1306 (Fed. Cir. 2011) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 137 (1999)). Courts exercise this function by applying the "analytical framework" established in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) "for determining the admissibility of expert testimony under Rule 702." *Micro*

*Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391 (Fed. Cir. 2003). District courts are charged with "exclud[ing] expert testimony that is irrelevant or does not result from the application of reliable methodologies or theories to the facts of the case." *Id.* The "*Daubert* inquiry is 'a flexible one' and [] the analysis will depend on the nature of the issue, the witness's expertise, and the subject of the testimony." *Id.* (quoting *Kumho Tire*, 526 U.S. at 150).

A. **Mr. Bakewell May Not Offer Any Opinion Suggesting That The Cost Of A Redesign Is A Cap On Damages.**

Reasonable royalty damages are not capped at the cost of implementing the cheapest available non-infringing alternative. *See, e.g.*, *Looksmart Grp., Inc. v. Microsoft Corp.*, No. 17-CV-04709-JST, 2019 WL 4009263, at *4 (N.D. Cal. Aug. 5, 2019) (noting that Federal Circuit "rejected [an] infringer's argument" that "the costs of avoiding infringement operated as an independent cap on a royalty theory based on sales revenue" (citing *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1373 (Fed. Cir. 2008), *mandate recalled and modified on other grounds by* 557 F.3d 1377 (Fed. Cir. 2009)). Google, "whether through [Mr. Bakewell's] testimony or any other channel, is barred from taking that position before the jury." *Open Text S.A. v. Box, Inc.*, No. 13-cv-04910-JD, 2015 WL 393858, at *3 (N.D. Cal. Jan. 29, 2015). Notwithstanding that legal principle, Mr. Bakewell opined that the cost of a redesign is a "valid measure[] of damages," Ex. B ¶ 35, and that a reasonable royalty for infringement of the '885 and '966 patents would be "[l]ess than $200,000" for each, because that is the "cost of implementing commercially acceptable non-infringing alternatives." *See* Ex. A at 14:17-15:7; 68:7-18; 70:23-71:3. Indeed, when asked if a hypothetical non-infringing alternative cost $0 to implement, Mr. Bakewell testified that while there was no evidence of such a non-infringing alternative in this case, he believed that the existence of such a non-infringing alternative could reduce the reasonable royalty to zero or something close to zero. *See id.* at 16:8-19. Such testimony—whether in the context of a hypothetical non-infringing alternative or in the context of Mr. Bakewell's opinions regarding the purported non-infringing alternatives available to Google—misstates the law, and risks confusing the jury and prejudicing Sonos. Accordingly, Mr. Bakewell should be precluded from offering any opinion or suggestion that the cost of implementing an alleged non-infringing

alternative operates as a cap on damages.

### B. Mr. Bakewell may not offer opinion relying on Google's December 2022 redesign as a noninfringing alternative

Mr. Bakewell's opinion relies in part on Google's December 2022 redesign as a commercially acceptable, noninfringing alternative. Ex. B at ¶¶ 450-479. This is the first of two purported redesigns that Mr. Bakewell believes limit the damages for the zone scenes patents. *Id.* The Court has excluded the redesign from the trial, Dkt. 566 at 32-33, so Mr. Bakewell cannot opine that the December 2022 redesign serves as a noninfringing alternative.

### C. Mr. Bakewell May Not Offer An Opinion On Non-Comparable Licenses.

Parties may not "rely on license agreements that [a]re 'radically different from the hypothetical agreement under consideration' to determine a reasonable royalty." *Uniloc USA*, 632 F.3d at 1316 (quoting *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1327 (Fed. Cir. 2009)). "[L]icenses relied on" must be "sufficiently comparable to the hypothetical license at issue in suit," both technologically and economically. *Lucent Techs*, 580 F.3d at 1325. For example, parties cannot rely on "license agreements" where "it is doubtful that the technology of those license agreements is in any way similar to the technology being litigated." *Id.* at 1329. The requirement of comparability extends with equal force to economic comparability: As the Federal Circuit has "stressed," "comparisons of past patent licenses to the infringement must account for 'the technological *and* economic differences' between them." *Wordtech Sys., Inc v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1319-20 (Fed. Cir. 2010) (quoting *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 873 (Fed. Cir. 2010) (emphasis added)). These same principles apply to term sheets, patent purchase agreements, settlements, and other contracts purporting to value patents. Under these controlling precedents, Mr. Bakewell should be precluded from offering any opinions regarding a reasonable royalty based on licenses that are non-comparable either technologically or economically.

#### 1. Mr. Bakewell May Not Offer An Opinion On Non-Comparable Patent Purchase Agreements.

Mr. Bakewell discusses four patent purchase agreements in the context of his back-up royalty rates. But none of the agreements are not economically comparable, and Mr. Bakewell

1  should be precluded from testifying regarding these non-comparable agreements.

2  First, with respect to three sets of patent purchase agreements— ▓▓▓▓

3  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

4  ▓▓▓▓—Mr. Bakewell acknowledges that the agreements are not comparable, conceding first

5  that the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ should be "set … aside." Ex. B

6  ¶¶ 547, 549. With respect to the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, Mr. Bakewell "accept[s]

7  Mr. Malackowski's position that this agreement does not provide an amount that would inform

8  the hypothetical negotiation(s)." *Id.* ¶ 585. And with respect to the ▓▓▓▓▓▓▓▓▓▓▓

9  ▓▓▓▓, Mr. Bakewell offers no response to Mr. Malackowski at all. Because Mr. Bakewell

10 has no opinion that these agreements are economically comparable, he should be precluded from

11 testifying regarding these agreements.

12 Second, with respect to one patent purchase agreement between Google and a non-

13 practicing entity, Mr. Bakewell failed to account for the lack of economic comparability of a

14 license between competitors in a market versus a patent purchase agreement between a market

15 participant and a non-practicing entity. His related opinions are therefore unreliable and should

16 be excluded. *See, e.g.*, *Apple, Inc. v. Samsung Elecs. Co.*, No. 12-CV-00630-LHK, 2014 WL

17 794328, at *8 (N.D. Cal. Feb. 25, 2014) (holding that Samsung's expert's failure to "account[] for

18 the different economic circumstances at play here" "render[ed] her opinions related to the HTC

19 Agreement insufficiently reliable to allow Samsung to present such testimony at trial").

20 Mr. Bakewell does not dispute that Sonos and Google both sell smart speakers, or that the

21 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

22 ▓▓▓▓▓▓▓▓▓. He nonetheless contends that no adjustments were necessary to account for

23 the economic differences between the hypothetical negotiation—in which Sonos would give up

24 exclusivity to its smart speaker technology—and the purchase agreement—in which an NPE

25 offloaded part of its portfolio.

26 For the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, Mr. Bakewell opines that "[i]n the

27 end, Google obtained the comparable patent rights, and freedom to operate under these patents,

28 among other patent rights, for a price that is readily observed." Ex. B ¶ 561. Mr. Bakewell offers

1  repeated incantations of this point.  *See also*, *e.g.*, *id.* ¶ 554 ("Also, in the end, Google obtained
2  the comparable patent rights for a price that is readily observed and was accepted by a third
3  party"); *id.* ¶ 560 ("In terms of economic comparability, the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
4  ▮▮▮▮▮▮ represents a real-world, arms-length transaction for patents that cover similar
5  functionality to the '885 and '966 Patents").  But that "observation" offers no analysis beyond the
6  bare fact that Google obtained these patent rights—something that should merely be the starting
7  point of the analysis, not the end point.

8       Moreover, Mr. Bakewell's analysis fails to consider what *Sonos* would have agreed to in
9  the hypothetical negotiation, focusing only on *Google*'s interests.  That is flatly contrary to the
10 governing legal test.  *See*, *e.g.*, *Lucent Techs.*, 580 F.3d at 1324 ("[T]he hypothetical negotiation
11 … approach, attempts to ascertain the royalty upon which the *parties* would have agreed had they
12 successfully negotiated an agreement just before infringement began."); *Asetek Danmark A/S v.*
13 *CMI USA Inc.*, 852 F.3d 1352, 1363 (Fed. Cir. 2017) ("A hypothetical-negotiation analysis for a
14 royalty considers not only the patent owner's interests, but also the other side of the negotiation
15 table.").  More broadly, Mr. Bakewell fails to account for the different economic circumstances at
16 play in a hypothetical negotiation between Sonos and Google—the two makers of competing
17 media players—and between Google and a non-practicing entity.  *See*, *e.g.*, Ex. B ¶ 554
18 (contending that "in the end, Google obtained the comparable patent rights for a price that is
19 readily observed and was accepted by *a third party*" without accounting for relevant differences
20 between the third party and Sonos (emphasis added)).  Accordingly, Mr. Bakewell fails to
21 "account for differences in the …. economic circumstances of the contracting parties" and his
22 opinion should be excluded.  *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1211 (Fed.
23 Cir. 2010).

24      Mr. Bakewell argues that the '885 and '996 patents "provided" no "competitive benefit to
25 Sonos," Ex. B ¶¶ 561 & n.1021, 554, but that argument (1) fails to account for significant
26 evidence otherwise, including the extensive industry praise for Sonos's zone scene technology
27 (*see, e.g.*, Dkt. 566 at 29), and (2) also fails to account for the fundamentally different economic
28 interests of an NPE versus an innovator that sells products that practice its patents.  Rather than

1  account for any of these economic differences, and rather than attempt to take into consideration
2  what *Sonos* would have agreed to, Mr. Bakewell extrapolates the outcome of the hypothetical
3  negotiations based on this purchase agreement by making only one type of adjustment, for *timing*.
4  *See id.* ¶¶ 564-67 ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"). This failure
7  renders Mr. Bakewell's opinions related to this agreement insufficiently reliable to allow Google
8  to present this testimony at trial.[1]

### 2. Mr. Bakewell May Not Offer An Opinion On Non-Relevant Licensing Negotiations Between The Parties.

Mr. Bakewell opines that a 2017 licensing proposal between the parties was merely "a proposal," was "neither finalized nor executed," and involved a potential amount that was "not specific to the patents-in-suit," which "is not relevant to the hypothetical negotiation(s)." *Id.* ¶ 501 & n.897. Because Mr. Bakewell opines this proposal is not relevant to the hypothetical negotiation(s), he should be precluded from testifying regarding this proposal. Moreover, the term sheet, listed as Google's exhibit TX2109 should be excluded under F.R.E. 408.

### 3. Mr. Bakewell May Not Offer An Opinion On Concededly Non-Comparable Licenses.

Mr. Bakewell admits that several licenses are either not technologically or economically comparable, including the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. B ¶¶ 509-11, 516, 523, 531, 539. Moreover, Mr. Bakewell contends that his report only discusses these licenses in order to "respond to" Mr. Malackowski's analysis regarding these licenses. *Id.* ¶ 509. Because Mr. Malackowski will not testify regarding these non-comparable licenses at

---

[1] Mr. Bakewell's opinion regarding the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ suffers similar flaws, *see id.* ¶¶ 578-80, 584, but because it was only discussed in the context of the '033 patent, Sonos believes that any dispute regarding this agreement is now moot in light of the Court's summary judgment ruling. Sonos may object to any reference to that agreement at trial.

1   trial, and Mr. Bakewell's report only discusses these licenses in order to address Mr.
2   Malackowski's analysis, any testimony that Mr. Bakewell might offer at trial regarding these
3   licenses would be either irrelevant, or outside the scope of his report.[2] Accordingly, he may not
4   testify about any of those licenses at trial.

### D. Mr. Bakewell May Not Offer Any Opinion On Sonos's Lost Profits.

Mr. Bakewell's report contains no opinion on lost profits. For that reason alone, he should be precluded from offering an opinion regarding Sonos's lost profits. "An expert witness may not testify to subject matter beyond the scope of the witness's expert report unless the failure to include that information in the report was 'substantially justified or harmless.'" *Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*, 725 F.3d 1377, 1381 (Fed. Cir. 2013) (quoting Fed. R. Civ. P. 37(c)(1)).

Moreover, Sonos seeks a reasonable royalty, which is compensation "not for lost sales caused by the infringement, but for its lost opportunity to obtain a reasonable royalty that the infringer would have been willing to pay if it had been barred from infringing." *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1334 (Fed. Cir. 2015). In other words, the patentee's lost profits are not determinative of a reasonable royalty, and have no relevance here. Thus, Mr. Bakewell may not offer any opinion suggesting that Sonos's lost profits are a ceiling by which a reasonable royalty is capped. *See, e.g.*, *Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1238-39 (Fed. Cir. 2011) ("While either the infringer's or the patentee's profit expectation may be considered in the overall reasonable royalty analysis …, neither is an absolute limit to the amount of the reasonable royalty that may be awarded upon a reasoned hypothetical negotiation analysis under the Georgia–Pacific factors."); *Glaukos Corp. v. Ivantis, Inc.*, No. SACV18620JVSJDEX, 2020 WL 10501851, at *5 (C.D. Cal. July 23, 2020) (quoting *Powell*).

### IV. CONCLUSION

For the foregoing reasons, the Court should grant Sonos, Inc.'s Motion *in Limine*.

---

[2] Should Google nonetheless attempt to introduce or reference these licenses at trial, Sonos reserves all rights, including but not limited to objections that the licenses are only technologically comparable to the '033 and '615 patents, which will not be tried.

Dated:  April 13, 2023

ORRICK HERRINGTON & SUTCLIFFE LLP
*and*
LEE SULLIVAN SHEA & SMITH LLP

By: */s/ Clement Seth Roberts*
    Clement Seth Roberts

*Attorneys for Sonos, Inc.*