# EXHIBIT 5

```
 1              UNITED STATES DISTRICT COURT
 2         FOR THE NORTHERN DISTRICT OF CALIFORNIA
 3    --------------------------------------------------x
      SONOS, INC.,
 4
                   Plaintiff,
 5    vs.                         Case No. 3:21-CV-07559-WHA
 6    GOOGLE LLC,
                   Defendant.
 7    --------------------------------------------------x
 8    -AND-
 9    --------------------------------------------------
10              UNITED STATES DISTRICT COURT
11         FOR THE NORTHERN DISTRICT OF CALIFORNIA
12    --------------------------------------------------x
13    GOOGLE LLC,
14                 Plaintiff,
15    vs.                         Case No. 3:20-CV-06754-WHA
16    SONOS, INC.,
                   Defendant.
17    --------------------------------------------------x
18        **HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY**
19                      **SOURCE CODE**
20
21      REMOTE VIDEOTAPED DEPOSITION BY VIRTUAL ZOOM OF
22                  DAN SCHONFELD, PH.D.
23                Friday, February 3, 2023
24    Reported By: Lynne Ledanois, CSR 6811
25    Job No. 5698162
```

Page 1

Page 10

1  I don't recall.                                6:25AM
2     Q  Was it more than $100,000?
3     A  I'm pretty sure the answer is yes, but I
4  really have no clear idea of the actual amount.
5     Q  Do you know if it's more than $500,000?   6:26AM
6     A  It's not more than 500.
7     Q  So somewhere in between 100,000 and
8  500,000?
9     A  No.
10    Q  No, not between there?                    6:26AM
11    A  Not in that range.  It's somewhere probably
12 higher than 100,00, but I would venture to say most
13 likely much closer to 100,00 than to anything close to
14 500,000.
15       As I said, I have really no recollection. 6:26AM
16 I didn't go back and double check that at this
17 point.  And we're talking about a range of over two
18 years, so I really don't have any clear idea.
19    Q  Now, if you can look in the shared exhibit
20 folder, do you see the three exhibits that I have  6:27AM
21 added there?
22    A  I do.
23    Q  Okay.  So let's start with Exhibit 1350.
24       (Whereupon, Exhibit 1350 was marked for
25 identification.)                                6:27AM

Page 11

1  BY MR. SMITH:                                   6:27AM
2     Q  If you could just open that up and let me
3  know once you have it open.
4     A  I do have it open.
5     Q  Okay.  And does this appear to be a       6:27AM
6  complete and accurate copy of your opening expert
7  report dated November 30th, 2022?
8     A  What date did you say?
9     Q  November 30th, 2022.
10    A  It's the body of the report.  I don't think  6:28AM
11 it's everything in the report including the appendices
12 and exhibits and demonstratives.  But it's the body of
13 the report.
14    Q  And are you aware of any errors in your
15 opening expert report?                           6:28AM
16    A  I'm unaware of any specific errors at the
17 moment.
18    Q  If you could open up the next exhibit,
19 which is Exhibit 1351.
20       (Whereupon, Exhibit 1351 was marked for    6:28AM
21 identification.)
22 BY MR. SMITH:
23    Q  Let me know when you have that open.
24    A  I do.
25    Q  Does this appear to be a complete and      6:29AM

Page 12

1  accurate copy of your rebuttal expert report dated  6:29AM
2  January 13, 2023?
3     A  With the same understanding that it refers
4  to the body of the report, not to the entire reports
5  with the same caveats that I mentioned for the  6:29AM
6  previous report.
7     Q  Are you aware of any errors in your
8  rebuttal expert report?
9     A  It's the same response I just gave for the
10 previous one.  I'm not aware of any specific errors at  6:29AM
11 the moment.
12    Q  If you could open up the next exhibit,
13 which is Exhibit 1352.
14       (Whereupon, Exhibit 1352 was marked for
15 identification.)                                 6:29AM
16 BY MR. SMITH:
17    Q  Let me know when you have that open.
18    A  I do have that open.
19    Q  Does this appear to be a complete and
20 accurate copy of your reply expert report dated  6:30AM
21 January 23rd, 2023?
22    A  With the same caveat that I mentioned for
23 the previous report, that it includes the body of my
24 report but not the exhibits and demonstratives, et
25 cetera.                                          6:30AM

Page 13

1        But otherwise, it is the body of the      6:30AM
2  report.
3     Q  Are you aware of any errors in your reply
4  expert report?
5     A  I'm not aware of any specific errors at the  6:30AM
6  moment.
7     Q  Just to be clear, with respect to all of
8  these reports, are you aware of any errors in the
9  appendices or exhibits to the reports?
10       MR. KAPLAN:  Object to form.              6:30AM
11       THE WITNESS:  I'm not aware of any
12 specific errors in any of the documents that were
13 served as part of my -- of my report.
14 BY MR. SMITH:
15    Q  If we can turn to your opening report.     6:31AM
16 Feel free to look at the paper copy or electronic,
17 whatever is easier.
18       I want to turn to Paragraph 6 and that's
19 on Page 4.
20    A  Yes.                                       6:31AM
21    Q  This provides a summary of your opinions;
22 is that correct?
23    A  It does provide a summary of my opinions,
24 yes.
25    Q  And it's your opinion that the asserted    6:31AM

**Page 14**

1 claims of both the '885 patent and the '966 patent    6:32AM
2 are invalid over the prior art based on three
3 primary prior art systems; is that correct?
4     MR. KAPLAN: Object to form.
5 BY MR. SMITH:    6:32AM
6   Q  I'm referring to the 2005 Sonos system,
7 the Squeezebox system and the Bose system.
8   A  There are various combinations that in my
9 opinion either anticipate or render obvious the
10 asserted claims. And any of them involved at least    6:33AM
11 one of what I refer to as the primary systems, which
12 would be the Sonos system, the Squeezebox system and
13 the Bose system.
14   Q  With respect to the Sonos system, your
15 opinion is based on obviousness; correct?    6:33AM
16   A  That is correct.
17   Q  And so you agree that the Sonos system
18 does not anticipate the asserted claims of the '885
19 patent or the '966 patent; correct?
20   A  The Sonos 2005 system does not anticipate    6:34AM
21 the asserted claim of the two patents.
22   Q  So the Sonos 2005 system does not meet all
23 of the elements of the asserted claims; is that
24 correct?
25     MR. KAPLAN: Object to form.    6:34AM

**Page 15**

1     THE WITNESS: I mean, we can go through it    6:34AM
2 on a claim-by-claim basis. But my recollection is
3 that at the very minimum, the general knowledge of a
4 POSITA would be required based on the suggestion of
5 the Sonos 2005 system for at least one limitation of    6:34AM
6 the asserted claims.
7 BY MR. SMITH:
8   Q  So just focusing on the Sonos 2005 system,
9 it's missing at least one element of the asserted
10 claims; is that correct?    6:35AM
11   A  I wouldn't phrase it this way. I would say
12 that the Sonos 2005 system does not completely satisfy
13 at least one limitation even if it may suggest it.
14   Q  Turning to the Squeezebox system, your
15 opinion is based on both anticipation and    6:35AM
16 obviousness; is that correct?
17   A  That's correct.
18   Q  With respect to the Bose system, your
19 opinion is based only on obviousness; is that
20 correct?    6:35AM
21   A  That's correct.
22   Q  So you agree that the Bose system does not
23 anticipate the asserted claims of the '885 patent or
24 the '966 patent; is that correct?
25   A  That's my recollection. We can take it on a    6:36AM

**Page 16**

1 claim-by-claim basis to be certain, but that's my    6:36AM
2 recollection.
3   Q  And so the Bose system, like the Sonos
4 system, does not meet all elements of the asserted
5 claims; is that correct?    6:36AM
6     MR. KAPLAN: Object to form.
7     THE WITNESS: As I said, I would have
8 phrased it the way I did before. So I would say
9 there is at least one limitation that's not
10 completely satisfied by the disclosure in the Bose    6:36AM
11 system for the asserted claim.
12 BY MR. SMITH:
13   Q  And in this report, Dr. Schonfeld, you
14 didn't provide an opinion based on invalidity under
15 Section 101; is that correct?    6:36AM
16   A  The answer is correct. But let me just
17 double check before I answer.
18     I do not believe I included an argument
19 based on Section 101 in this report.
20   Q  And you're also not challenging the    6:38AM
21 asserted claims of the '885 patent or the '966
22 patent under Section 112 for lacking written
23 description; is that correct?
24   A  I'm going to say the same answer. I believe
25 it's correct, but let me just as a matter of caution    6:38AM

**Page 17**

1 just go through and double check it.    6:38AM
2     I do not challenge the 112 written
3 description argument.
4     I do point out, however, for example, in
5 Paragraph 109 the ramifications of the court's    6:40AM
6 finding with respect to written description on my
7 invalidity analysis.
8   Q  But you're not challenging written
9 description; is that correct?
10   A  No, I'm just simply pointing out the fact    6:40AM
11 that the written description ruling under the court's
12 order allows me to interpret the prior art under that
13 understanding and that's what I did.
14   Q  Dr. Schonfeld, you understand that Sonos
15 has asserted that the '885 and '966 patents are    6:41AM
16 entitled to a priority date of September 12th, 2006;
17 is that correct?
18   A  I don't remember the exact date, but it
19 sounds right.
20   Q  And you're not challenging that Sonos is    6:41AM
21 entitled to that priority date; is that correct?
22   A  Again, I'm going to say that the answer is
23 correct, but let me just double check it out of an
24 abundance of caution just to be sure.
25   Q  While you're checking that, can you also    6:41AM

**Page 38**

1  they are not operating in standalone mode.  7:31AM
2      Q   So it's your position that when a Sonos
3  player or any player is not playing audio, it's not
4  operating in standalone mode; is that your position?
5          MR. KAPLAN:  Object to form, compound.  7:32AM
6          THE WITNESS:  So in my opinion, when, for
7  example, it's -- to be specific, if we take the '966
8  patent, Claim 1, it states in Limitation -- I think
9  it's IV is how everybody referred to it, it says,
10  "wherein the first zone player is operating in  7:33AM
11  standalone mode in which the first zone player is
12  configured to play back media individually."
13          So there is a requirement -- there is a
14  requirement to operating in standalone mode and this
15  happens -- and the requirement for it is that the  7:33AM
16  zone -- the first zone player is configured to play
17  back media individually.
18          So if there is no operation of that
19  particular zone player, it cannot in my view operate
20  in a standalone mode.  7:33AM
21          Moreover, it would -- according to the use
22  of the claim language "configured to play back media
23  individually," it would also not be configured to
24  play back media individually because the way that
25  phrase is used is to be configured in the context of  7:34AM

**Page 39**

1  the claim language, you actually have to be  7:34AM
2  performing or operating in that mode.
3          For example, if you look at Claim 2, it
4  says that when you cease operation, you're no longer
5  configured.  In that case it's about the  7:34AM
6  coordination for synchrony, but given the use of the
7  word "configured" and the fact -- and how we see
8  this continues throughout the claims, and the fact
9  that this is only a requirement for operating in
10  standalone mode, then it would be my view to  7:34AM
11  determine -- to operate in standalone mode, you
12  actually have to actively play.
13  BY MR. SMITH:
14      Q   Okay.  So to be operating in standalone
15  mode in which a first zone player is configured to  7:35AM
16  play back media individually, it's your opinion that
17  the player has to actively be playing audio; is that
18  correct?
19          MR. KAPLAN:  Object to form.
20          THE WITNESS:  It is my view that if the  7:35AM
21  player is actively playing audio, then it is
22  operating in standalone mode.  And in that case,
23  whatever the limitations are that follow from that
24  in Claim 1 have to be satisfied while it's operating
25  in standalone mode.  7:35AM

**Page 40**

1  BY MR. SMITH:  7:35AM
2      Q   If it's not actively playing audio, is it
3  operating in standalone mode?
4          MR. KAPLAN:  Object to form.
5          THE WITNESS:  If it's not actively playing  7:36AM
6  audio, then in my opinion it's not configured to
7  play media individually consistent with the use of
8  the claim language throughout, for example, Claim 2.
9          And moreover, it's not operating and
10  therefore cannot be viewed as operating in  7:36AM
11  standalone mode.
12  BY MR. SMITH:
13      Q   So if a player is not playing audio, your
14  opinion is that it's not operating at all?
15          MR. KAPLAN:  Object to form,  7:36AM
16  mischaracterizes testimony.
17          (Reporter clarification.)
18          THE WITNESS:  If it is not playing audio,
19  it might be operating in a sense that it's on, but
20  it's not operating in standalone mode.  7:37AM
21  BY MR. SMITH:
22      Q   And so if a speaker is powered off, is it
23  your opinion that that speaker is not operating in
24  standalone mode?
25      A   If it's turned off?  7:37AM

**Page 41**

1      Q   Yes.  7:37AM
2      A   Yes, if a speaker is turned off, it's not
3  operating in standalone mode because if it's turned
4  off, it's not operating.
5          Moreover, it is not configured at that  7:37AM
6  moment to play back media individually because, as I
7  said, configured to play back media individually
8  requires actually playing.
9          So, for example, if you look at the last
10  phrase of the abstract as an example, it states --  7:38AM
11  I'm just going to go directly to the end, causes the
12  first zone scene to be invoked such that the first
13  zone and the second zone become configured for
14  synchronous playback of media.
15          And this is echoed in the claim language  7:38AM
16  itself as I pointed to earlier.
17      Q   Is this the interpretation of standalone
18  mode that you applied in your invalidity analysis?
19          MR. KAPLAN:  Object to form, vague.
20          THE WITNESS:  That is the interpretation  7:39AM
21  of the claims that I applied in my invalidity
22  analysis.
23          At times I may have made comments under my
24  understanding of Sonos's interpretation.  I believe,
25  for example -- and I'm doing this -- we can talk  7:39AM