# EXHIBIT 3

CLEMENT SETH ROBERTS (STATE BAR NO. 209203)
croberts@orrick.com
BAS DE BLANK (STATE BAR NO. 191487)
basdeblank@orrick.com
ALYSSA CARIDIS (STATE BAR NO. 260103)
acaridis@orrick.com
EVAN D. BREWER (STATE BAR NO. 304411)
ebrewer@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:     +1 415 773 5700
Facsimile:     +1 415 773 5759

SEAN M. SULLIVAN (*pro hac vice*)
sullivan@ls3ip.com
COLE RICHTER (*pro hac vice*)
richter@ls3ip.com
LEE SULLIVAN SHEA & SMITH LLP
656 W Randolph St., Floor 5W
Chicago, IL 60661
Telephone:     +1 312 754 0002
Facsimile:     +1 312 754 0003

*Attorneys for Defendant Sonos, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| GOOGLE LLC,<br><br>    Plaintiff and Counter-defendant,<br><br>    v.<br><br>SONOS, INC.,<br><br>    Defendant and Counter-claimant. | Case No. 3:20-cv-06754-WHA<br>Related to Case No. 3:21-cv-07559-WHA<br><br>**OPENING EXPERT REPORT OF**<br>**DR. KEVIN C. ALMEROTH** |

with an overlapping Accused Google Player, Mr. Shekel stated that "obviously [Google] wouldn't want the user to be prevented from this scenario, especially since it is fully supported." *See* GOOG-SONOS-NDCA-00114286-301 at 286.

773.  As another example, take, for instance, a user who is enjoying and wants to continue listening to synchronous audio on a first "speaker group" that has previously been launched at the time the user decides to set up a second "speaker group" for use at some later time, where the second "speaker group" includes one or more of the Accused Google Players in the first "speaker group." Although not clear from Google's limited description of its third purported non-infringing alternative, in this example, it appears that upon setting up the second "speaker group" either (i) the one or more overlapping Accused Google Players would stop playing the audio they were playing in accordance with the first "speaker group" and the remaining Accused Google Speakers in the first "speaker group" would continue playing the audio they were playing in accordance with the first "speaker group" or (ii) all of the Accused Google Speakers in the first "speaker group" would stop playing audio. In my opinion, neither of these results is commercially acceptable because they each result in one or more of the Accused Google Speakers in the first "speaker group" stopping playback despite the fact that the user wanted to continue listing to synchronous audio on the first "speaker group."

774.  Notably, Mr. Shekel also confirmed that Google's third purported non-infringing alternative would not be commercially acceptable in this regard as well. Specifically, Mr. Shekel testified that "if by setting a group you'll now be stopping the music a person played [on an Accused Google Player then] that would *not be a great experience* for that user." *See* 11/23/2022 T. Shekel Dep. Tr. at 99:9-16 (Q: "Would you say that it's an important feature for the music playback [on Accused Google Players] to not be disturbed while you set up new groups?" A: In my opinion, if by setting a group you'll now be stopping the music a person played that would not be a great experience for that user.").

775.  Further, I understand that Google has been providing users with the ability to listen to synchronous audio on a first "speaker group" that has previously been launched at the time the user decides to create and save a second "speaker group" that includes one or more of the Accused

Google Players in the first "speaker group," and to continue listening to the synchronous audio on the first "speaker group" after the second "speaker group" has been created and saved since at least as early as December 2015. *See, e.g.,* SONOS-SVG2-00040246-49; 5/10/2022 K. MacKay Dep. Tr. at 260:21-263:20 (testifying that Google began developing its "static" speaker group functionality in "March of 2015"). Thus, at the time Google would have allegedly implemented its third purported non-infringing alternative some four to five years later in November 2019 and/or November 2020 (when the '966 Patent and '885 Patent issued, respectively), Google's customers would have been accustomed to being able to create and save a new "speaker group" that includes one or more Accused Google Players that are already members of a previously created and launched "speaker group" without interrupting the synchronous playback on the previously created and launched "speaker group." In my opinion, this further confirms that Google's third purported non-infringing alternative would not have been commercially acceptable.

776. Further yet, during a discussion with Mr. Nick Millington, who is Sonos's Chief Innovation Officer, I asked Mr. Millington for his thoughts regarding a hypothetical change to the design of Sonos's "saved groups" feature whereby it would no longer be possible to have multiple saved groups that included the same Sonos player. In response, Mr. Millington indicated that he did not believe Sonos's customers would consider this to be an acceptable change to Sonos's "saved groups" feature for similar reasons to those summarized above. Mr. Millington also pointed out that removing the ability to have multiple saved groups that included the same Sonos player would eliminate one of the key benefits of Sonos's "saved groups" feature relative to Sonos's ad-hoc grouping feature that allows groups of Sonos players to be created and invoked on the fly.

777. Lastly, Google also has not established that this third purported non-infringing alternative, which was not on the market during the timeframe of infringement, would have been available to Google – particularly in view of the fact that Sonos has many other patents directed to technology for grouping "zone players" together for synchronous playback.

XVII. **SONOS'S USE OF THE PATENTED TECHNOLOGY**

778. I have been asked to evaluate and provide my opinions regarding whether any of

817. To help assist in my testimony at trial, I have prepared a number of demonstratives that are attached hereto as **Exhibit Q**. These demonstratives are exemplary and I reserve the right to create additional demonstratives and/or to modify the demonstratives in **Exhibit Q** based on the material in this report. For example, I reserve the right to create additional demonstratives and/or to modify the demonstratives in **Exhibit Q** based on the testing screenshots I included in this report as well as the evidence cited in this report. I also reserve the right to rely on the demonstratives that were attached as Exhibit H to my Opening report regarding Asserted Claim 1 of the '885 Patent dated June 22, 2022.

818. I have also reviewed Sonos's Technology Tutorial that provides an overview of the '885 Patent, which I understand was submitted to the court in February 2022. I incorporate by reference herein Sonos's Technology Tutorial and expressly reserve the right to use the Technology Tutorial in whole or in part as a demonstrative to assist in my testimony.

## XX.  RESERVATION OF RIGHT

819. I reserve the right to further expound on my opinions set forth herein in subsequent declarations, reports, and/or at trial.


Dated: November 30, 2022          By: _/s/ Kevin C. Almeroth_
                                         Kevin C. Almeroth