QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Sean Pak (Bar No. 219032)
  seanpak@quinnemanuel.com
  Melissa Baily (Bar No. 237649)
  melissabaily@quinnemanuel.com
  James Judah (Bar No. 257112)
  jamesjudah@quinnemanuel.com
  Lindsay Cooper (Bar No. 287125)
  lindsaycooper@quinnemanuel.com
  Iman Lordgooei (Bar No. 251320)
  imanlordgooei@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:    (415) 875-6600
Facsimile:    (415) 875-6700

  Marc Kaplan *(pro hac vice)*
  marckaplan@quinnemanuel.com
191 N. Wacker Drive, Ste 2700
Chicago, Illinois 60606
Telephone:    (312) 705-7400
Facsimile:    (312) 705-7401

*Attorneys for GOOGLE, LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SONOS, INC.,<br><br>    Plaintiff and Counter-Defendant,<br><br>    vs.<br><br>GOOGLE LLC,<br><br>    Defendant and Counter-Claimant. | Case No. 3:20-cv-06754-WHA<br>Related to Case No. 3:21-cv-07559-WHA<br><br>**GOOGLE LLC'S MOTION *IN LIMINE* NO. 1 TO EXCLUDE THE EXPERT REPORT AND TESTIMONY OF MR. JAMES MALACKOWSKI REGARDING DAMAGES, AS WELL AS RELATED OPINIONS AND TESTIMONY OF DR. KEVIN ALMEROTH**<br><br>Date:     May 3, 2022<br>Time:    12:00 p.m.<br>Location: Courtroom 12, 9th Floor<br>Judge:   Hon. William Alsup |

The Court should exclude the expert report and testimony of Sonos's damages expert Mr. James Malackowski and Sonos's technical expert Dr. Kevin Almeroth related to Sonos's claimed damages for U.S. Patent Nos. 10,848,885 (the "'885 patent") and 10,469,966 (the "'966 patent"). This motion *in limine* addresses the unreliability of Sonos's damages theory in view of the far-from-comparable mobile application that is the sole foundation for that theory. Google also moves to exclude Sonos's damages theory for separate, additional reasons in its Motion *in Limine* No. 2.

## I. INTRODUCTION

Using what he calls a "Market Approach," Malackowski improperly assumes that Sonos and Google would have used the monthly subscription price of a third-party generic scripting app, If This Then That ("IFTTT"), as a technologically-comparable starting point for the hypothetical negotiation. But IFTTT has nothing to do with Google or Sonos; it was not designed to be used for speaker grouping; it is not a music app. Malackowski and Sonos's technical expert Dr. Kevin Almeroth opine that IFTTT is capable of being used in a way that is purportedly comparable to the '885 and '966 patents, but there is no evidence that anyone had used the app in such a way before Sonos's experts did so for this case. Indeed, IFTTT is wholly unconnected to the purported invention of the asserted patents or to the accused functionality. Accordingly, Malackowski's damages opinions related to the '885 and '966 patents—which are all premised on IFTTT—must be excluded. And Almeroth's opinions regarding IFTTT should be excluded as well.

## II. STATEMENT OF THE ISSUES TO BE DECIDED

Should Malackowski's and Almeroth's opinions regarding IFTTT be excluded because the app is not comparable to the technology claimed in the '885 and '966 patents, and because Malackowski fails to isolate the incremental value of the '885 and '966 patents?

## III. STATEMENT OF RELEVANT FACTS

Malackowski's IFTTT theory is the sole theory he offers to calculate damages for the '885 and '966 patents. Under this theory, Malackowski looks to IFTTT as a starting point to calculate a per-unit royalty rate.

IFTTT is a generic scripting app that allows users to create "applets," comprising sequential chains of conditional "if" and "then" statements. Ex. 1 at 80. For example, if a user is interested in

outer space, they could use IFTTT to program an applet to send a notification every time the International Space Station passes over their house. Ex. 2 at 1-2. If they are an avid user of social media, they could program an applet to automatically tweet their Instagram photos to Twitter. According to IFTTT's website, the value of the app is that it "can do anything!" Ex. 3 at 1. IFTTT advertises that a user may "[e]ither create [applets] yourself or choose from the millions of published Applets that have already been made." Ex. 4 (emphasis added). IFTTT is not a Google app, is not a music app, and is not designed or marketed to be used for speaker grouping. In fact, there is no evidence that anyone has ever used IFTTT to group speakers—in a way that is comparable to the '885 and '966 patents or otherwise—beyond Sonos attempting to do so in the context of this case. Ex. 5 at 219:6-219:1.

Malackowski's reliance on IFTTT is based on Almeroth's flawed opinion that it is technically comparable to the '885 and '966 patents. Ex. 1 at 80-81; Ex. 6 ¶ 815. But both Malackowski and Almeroth admit that, while IFTTT has the ability to perform innumerable non-patented functions, it cannot perform the very functions that Sonos claims is the patented invention—such as the ability to facilitate synchronous audio playback on speakers. Ex. 7 at 130:10-18; 131:20-25; Ex. 1 at 80-81, 83-84; Ex. 6 ¶ 815.

Moreover, although the hypothetical negotiation would have taken place in November 2019 for the '966 patent and November 2020 for the '885 patent, Malackowski uses IFTTT's monthly subscription fee in September 2020 as a starting point—presumably because the app was *free* prior to that point. Ex. 1 at 87. Malackowski then makes a series of flawed and unreliable adjustments (all of which are based on publicly-available information as discussed in Google's Motion in *Limine* No. 2), and then multiplies the resulting rate by the number of accused products sold during the damages period. Ex. *Id.* at 119-120.

IV.  **ARGUMENT**

An expert may offer opinions at trial only if "(1) [his] scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (2) the testimony is based on sufficient facts or data; (3) the testimony is the product of reliable principles and methods; and (4) [he] has reliably applied the principles and methods to the facts of

the case." FRE 702. The party seeking to admit expert testimony bears the burden of proving its admissibility. *Lust By & Through Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996). To be admissible, opinions regarding a reasonable royalty rate must "carefully tie proof of damages to the claimed invention's footprint in the market place." *Uniloc*, 632 F.3d at 1317.

While a patentee may rely on comparable technology to support a proposed royalty, it has the "burden to prove that the [technology is] sufficiently comparable" to the technology and value of the asserted patent. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1329 (Fed. Cir. 2009). "[A]lleging a loose or vague comparability between different technologies . . . does not suffice." *LaserDynamics, Inc. v. Quanta Computer, Inc*., 694 F.3d 51, 79 (Fed. Cir. 2012); *see* also *Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC*, 927 F.3d 1292, at 1300 (Fed. Cir. 2019) (quoting *VirnetX*, 767 F.3d 1308, at 1330); *MLC Intellectual Property, LLC v. Micron Technology, Inc.,* 10 F.4th 1358 (Fed. Cir. 2021).

### A. Malackowski's And Almeroth's Opinions Regarding IFTTT Are Unreliable And Should Be Excluded

Malackowski and Almeroth both admit that IFTTT does not practice the '885 and '966 patents but can do millions of other different things—therefore, the price users are willing to pay for IFTTT has no credible relation to Sonos's specific claimed speaker grouping technology. Ex. 3 at 1; Ex. 7 (Mal. Tr.) at 134:19-135:16. Indeed, IFTTT is not a music app, and it is not designed or marketed to be used for speaker grouping. According to IFTTT's website, there are **millions** of published IFTTT applets that can do all sorts of things. Ex. 4. But despite the seemingly limitless number of other functionalities IFTTT is capable of, it critically **cannot** perform one of the very functionalities that Sonos claims its invention covers—facilitating synchronous audio playback on speakers as required by the claims. Ex. 7  at 130:10-18; 131:20-25; Ex. 1 (at 80-81; Ex. 6 (Alm. Rep.) ¶ 815. Because IFTTT is so far afield from the patents asserted in this case, Sonos's experts' use of it as a foundation for a damages analysis unreliable. *Digital Reg of Tex., LLC v. Adobe Sys., Inc.*, 2014 WL 4090550, at *1 (N.D. Cal. Aug. 19, 2014) (damages expert's reliance on products not shown to use infringing technology was "inherently unreliable").

Further, despite there being millions of published applets for the IFTTT app, there is no

evidence that anyone had ever used the app to group speakers in a way that is comparable to the '885 or '966 patents before Sonos's experts began using the app for this case. Ex. 7 at 132:7-133:11. That the IFTTT app may be *capable* of grouping speakers in a way that is allegedly comparable to the '885 and '966 patents does not make the app itself technologically comparable. Otherwise, IFTTT could be used as a starting point for damages in nearly every patent case involving software features. As Almeroth admitted, any programming language or app that allowed one to program software could—in his view—be technically comparable to Sonos's purported inventions. *Id.* at 140:11-20; Ex. 8 at 137:3-140-10 (That "there have been billions of enabled and created applets . . . th[at] have nothing to do with speaker grouping . . . would not change [his] conclusion with respect to the app being technically comparable.").

Sonos may suggest that technical comparability goes to evidentiary weight rather than admissibility. But that is true only if the patentee makes a threshold showing of comparability, which Sonos has not done. *See e.g.*, *Apple Inc. v. Wi-LAN Inc.*, 25 F.4th 960, 971 (Fed. Cir. 2022) ("A reasonable or scientifically valid methodology is nonetheless unreliable where the data used is not sufficiently tied to the facts of the case. Likewise, ideal input data cannot save a methodology that is plagued by logical deficiencies or is otherwise unreasonable.") (cleaned up); *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015) (similar).

Because Sonos has not established the comparability of IFTTT to the asserted patents, and because IFTTT is the predicate for all of Malackowski's damages opinions for the '885 and '966 patents, Almeroth's opinions regarding IFTTT and all of Malackowski's damages opinions must be excluded.

### B. Malackowski's Opinion Should Be Excluded Because He Fails To Isolate The Incremental Value Of The Claimed Inventions

Malackowski's theory also suffers from an apportionment problem because Malackowski fails to account for non-accused functionality in the app. IFTTT claims that it "can do anything!" Ex. 3 at 1 Ex. 7 (Mal. Tr.) at 134:19-135:16. For example, it can notify users about the location of the International Space Station or automatically tweet Instagram photos to Twitter. *Supra* § II. The IFTTT app's ability to "do anything" must have value, but Malackowski fails to adequately account

for it.

In addition, Malackowski fails to apportion out (or even acknowledge) the additional value that one would receive from an app beyond just a bare license to practice the patents. For example, the subscription fee one pays for IFTTT would provide fully developed functioning software. Ex. 9 (Bakewell Rep.) ¶ 340. But the parties' hypothetical license would be limited to the rights to the '885 and '966 patents, for which Malackowski fails to adjust his rate.[1] *See Opticurrent, LLC v. Power Integrations, Inc.*, 2019 WL 2389150, at *9 (N.D. Cal. June 5, 2019) (noting a plaintiff must "account[] for differences in the technologies and economic circumstances of the contracting parties" under the market approach). In contrast, IFTTT includes prior art, copyrighted code, trade secrets, branding, and user experience related to the app. Even IFTTT could be used to perform a function comparable to the claimed technology (it cannot), Malackowski does not reliably isolate its ability to perform *that* function from all the other millions of functions IFTTT could be used to perform. There is also no evidence that any consumers bought IFTTT for the accused functionality, and Malackowski makes no attempt to measure this demand. *See, e.g., Crystal Semiconductor Corp. v. Tri-Tech Microelectronics. Int'l, Inc.*, 246 F.3d 1336, 1359-1360 (Fed. Cir. 2001).

It is well-established that apportionment requires "calculat[ing] the value of those features that infringe, and cut[ing] out the value of all the rest." *Syneron Med. Ltd. v. Invasix, Inc.*, No. 8:16-CV-00143, 2018 WL 4696969, at *6 (C.D. Cal. Aug. 27, 2018). Because Malackowski's Market Approach fails to do this, his opinions should be excluded.

## V. CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court exclude any opinion from Malackowski regarding damages for the '885 and '966, as well as any opinion from Almeroth regarding IFTTT.

---

[1] Malackowski also uses IFTTT's subscription rate on September 2020 as the starting point for both the '885 and '966 patents despite the fact that the '966 patent was issued in November 2019—during which point IFTTT "offered services to its users for free, with no limitations in terms of speed, applet count, or access." Ex. 1 at 84. This underscores the unreliability of Malackowski's methodology, as the functionality he contends was technologically comparable was free at the time of the parties' hypothetical negotiation for the '966 patent.

| | | |
|---|---|---|
| 1 | | |
| 2 | DATED: April 13, 2023 | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| 3 | | |
| 4 | | By  /s/ Sean Pak  |
| 5 | | Sean Pak<br>Melissa Baily |
| 6 | | James D. Judah<br>Lindsay Cooper |
| 7 | | Marc Kaplan<br>Iman Lordgooei |
| 8 | | |
| 9 | | *Attorneys for GOOGLE, LLC* |

# CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure and Local Rule 5-1, I hereby certify that, on April 13, 2023, all counsel of record who have appeared in this case are being served with a copy of the foregoing via email.

       /s/ Sean Pak
       Sean Pak