# Sonos, Inc.'s Opp'n to Google LLC's Motion *In Limine* No. 1

# EXHIBIT B

ATTORNEYS' EYES ONLY – SOURCE CODE

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| GOOGLE LLC,<br><br>　　　　　Plaintiff<br><br>　v.<br><br>SONOS, INC.,<br><br>　　　　　Defendant. | CASE NO. 3:20-cv-06754-WHA<br>Related to CASE NO. 3:21-cv-07559-WHA |

**REBUTTAL EXPERT REPORT OF DAN SCHONFELD, Ph.D.**

19. I also understand that there are several restrictions on the application of the doctrine of equivalents. First, if an accused product or process wholly lacks even a single limitation of a claim, it cannot infringe the claim under the DOE. Second, the range of equivalents cannot be so broad as to encompass that which was already known in the prior art. Third, the doctrine of prosecution history estoppel precludes a patentee from reclaiming through equivalents subject matter that was relinquished based on statements or amendments made during prosecution.

20. I further understand that if a patentee narrowed a claim limitation by amendment during prosecution for reasons pertaining to patentability over the prior art, that limitation is not entitled to any range of equivalents unless: (a) the equivalent was unforeseeable at the time of the application; (b) the rationale underlying the amendment bears no more than a tangential relation to the equivalent; or (c) the patentee could not reasonably have been expected to have described the equivalent in question.

### C. Comparable License Analysis

21. I understand that a party's licenses may be relevant to the assessment of a reasonable royalty rate or other damages measure if the party relying on the licenses demonstrates that they are sufficiently comparable to a hypothetical license at issue in the suit. I have been informed that, under the law, when relying on licenses to prove a reasonable royalty, alleging a loose or vague comparability between different technologies or licenses does not suffice. Instead, comparison of past licenses to the infringement must account for the technological and economic differences between them. On the other hand, I understand that identity of circumstances is not required for comparability and, generally, the degree of comparability is a factual issue. The law contemplates that the evaluation of comparability, like any reasonable royalty analysis, necessarily involves an element of approximation and uncertainty.



174. Almeroth Op. Rep. ¶806. Dr. Almeroth opined that these different widgets allowed a user to play back music to "overlapping speakers between the applets." *Id.* ¶812. But at most Dr. Almeroth describes independently adding the same song to the playback queue of *each of the Sonos speakers* in each applet, and sending independent commands to resume playback on multiple Sonos speakers—playback on those speakers is not synchronized.

175. As a result, Dr. Almeroth concluded that "[i]n this regard, the IFTTT Applets are technologically comparable to the "zone scene" technology claimed in the '885 and '966 patents." *Id.* ¶814. I disagree. Dr. Almeroth showed no evidence that "IFTTT Applets" generally are technologically comparable to the asserted claims. Accepting, for the sake of argument, that all of his analysis and conclusions are accurate, Dr. Almeroth only argued that one particular set of IFTTT applets (that he specifically created for this litigation) when combined with the Sonos and Spotify applications are technologically comparable. But as I explained in my original rebuttal Report, IFTTT generally has no relationship to audio playback, speaker grouping, or any of the claimed functionalities. Instead, IFTTT was designed to be a generalized scripting language that allowed a user to automate *anything*:



176. https://ifttt.com/explore/new_to_ifttt (last accessed 12/23/2022). Dr. Almeroth has not shown that the capabilities of IFTTT, which consist of allowing a user to create what are essentially scripts executing different functionality, has any relationship to the accused technology. He has only argued that a single set of applets that he created are comparable. Nor has he shown any evidence that any user has created applets like the ones that he created, and therefore his opinions of comparability are hypothetical and lack a factual basis.

177. I also disagree with Dr. Almeroth's conclusion that "these Applets can be used to create and save a predefined group of playback devices, such as speakers, that can later be invoked to cause such devices to playback the same song." The applets do not create speaker groups as claimed. Indeed, Dr. Almeroth admitted that "these Applets do not enable the creation of groups of speakers that are 'configured for synchronous playback of media.'" *Id.* ¶815. That is because the applet cannot create a speaker group with synchronous playback. This calls into question whether a user would (or has ever) created an applet like Dr. Almeroth shows in his Report. Dr.

87

ATTORNEYS' EYES ONLY – SOURCE CODE

DATED:  January 13, 2023

                                          ____

                                          *Dan Schonfeld* (signature)

                                          _____

                                          Dan Schonfeld, Ph.D.