# Sonos, Inc.'s Opp'n to Google LLC's Motion *In Limine* No. 1

# EXHIBIT E



**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

CIVIL ACTION NO. 3:20-CV-06754

# GOOGLE LLC,
## V.
# SONOS, INC.

**REPLY EXPERT REPORT OF JAMES E. MALACKOWSKI**

**January 23, 2023**



INTELLECTUAL CAPITAL EQUITY

Bakewell implies that, in the event Google is found liable for infringement of both Zone Scene Patents, Sonos should be entitled to royalties for both patents; this potential issues could also be addressed by removing the '885 Patent reasonable royalty in favor of the '966 Patent reasonable royalty.  And again, to the extent that Mr. Bakewell implies that I am overinclusive in calculating royalties for the '885 Patent, the simple response is found directly within the quote he cites: "asserted claim 1 of the '885 Patent is directed to and infringed by a single 'zone player' with functional capability."[47]

Lastly, with respect to Mr. Bakewell's issues with the apportionment metric applied to the IFTTT price, he again appears to have not tested or understood the proposed comparable application.  First, I and my team have attempted to use the free version of the IFTTT app and were unable to create the multi-step applet outlined in the Malackowski Supplemental Report.[48]  Mr. Bakewell fails to appreciate the fact that: 1) IFTTT's free promotional pricing is not an infinitely-sustainable business model and 2) the IFTTT free version does not provide the necessary capability to mimic the Zone Scene Patents.  His arguments concerning the IFTTT free version are not applicable to the comparable technological app Sonos brings to the hypothetical negotiation table.  Second, if Mr. Bakewell would like to remove the twenty applet limitation in the denominator, which represents the comparable functionality and cost of the Zone Scene Patents, Sonos would argue to remove this apportionment step altogether, thereby significantly increasing the royalty.[49]  In other words, the alternative would be to eliminate this apportionment step completely and instead use the entire cost of the IFTTT app, which is the price of entry, to get the functionality.  I have also been conservative in my royalty measure insofar as an IFTTT user would only need to utilize two applets to create multiple speaker groups within their home; the Zone Scene Patents are not limited to a single Zone Scene and I have excluded such scenarios, much to the benefit of Google's negotiating position.[50]

**4.4    IFTTT & Comparable Applications**

Mr. Bakewell's issues with IFTTT and the comparable applications are based in the same misconceptions that bring him to rely on consumer awareness statistics, usage data, and consumer survey results in concluding the Asserted Patents provide little to no incremental value to Google's customers.  Again, my bottom-up analysis begins with identifying a comparable technological and business metric – the price paid for either comparable apps or IFTTT – to provide similar functionality as the Asserted Patents.  I understand that IFTTT has immense capabilities, as noted by Mr. Bakewell, but regardless of the almost infinite number of apps and action combinations one can create with IFTTT or whether IFTTT's customers actually created the specific action sequence identified as the comparable technology, it only bears that to provide the Zone Scene technology, a consumer would have to purchase an IFTTT Pro subscription with multi-action applets.[51]  Thus, Mr. Bakewell's argument that "infinite" apps would be used as the denominator in apportioning to the Asserted Patents is wrong; although more than 20 apps have been created by IFTTT users, this has no

---

[47] Bakewell Rebuttal Report, p. 130.

[48] Malackowski Supplemental Report, Section 12.2.4.1; Malackowski Deposition, p. 125.

[49] Malackowski Deposition, p. 146.

[50] Malackowski Deposition, pp. 146, 165.

[51] Malackowski Deposition, pp. 132, 140-141.

 INTELLECTUAL CAPITAL EQUITY

relationship to the number of apps a paying Pro subscriber would be limited to in creating the multi-action applet with similar Zone Scene capabilities.[52]

And even though IFTTT, for a time surrounding the hypothetical negotiation, provided the necessary Pro subscription at no cost, this does not imply that the royalty Google would pay for this technology is *de minimis*. As stated in my deposition, the hypothetical negotiation is forward-looking, and there would be little to no consideration for promotional pricing and that, as a rational actor, IFTTT would only sustain this pricing structure for a short period of time and need to then generate revenue, which is exactly what happened.[53]

Mr. Bakewell also suggests, and calculates, the removal of "prior art value" from my damages scenarios based in comparable app technology. To the extent that such "prior art" embodied a commercially-acceptable alternative, Google would have adopted this as a design-around to the Asserted Patents. However, no such design-around was adopted and I understand from Sonos's technical experts, as noted in the section below, have found that none of the non-infringing alternatives proffered by Google are actually both non-infringing and commercially acceptable.

### 4.5    Non-Infringing Alternatives

I understand from the Bakewell Rebuttal Report that Google claims to have, or is in the process of, implementing its alleged non-infringing alternatives. His review and reliance on non-infringing alternatives are based on the cost-saving implications of the Asserted Patents. As noted in my deposition, there are not large cost repercussions from implementing or removing the features which "support the notion that we should be looking at a revenue allocation."[54]

With respect to the Direct Control Patent, Mr. Bakewell discussed two proposed non-infringing alternatives.[55] Mr. Bakewell notes that Google "expects to release [the Streaming Watch] change in cast devices in 2023" and calculates the cost "to design, test and implement…is approximately ▉▉▉▉."[56] Mr. Bakewell's second non-infringing alternative would cost approximately ▉▉▉▉.[57]

With respect to the Zone Scene Patents, Mr. Bakewell claims Google had "rolled out this change to all currently sold smart speakers and smart displays by the end of December 2022."[58] Mr. Bakewell calculates the cost of this change to be between ▉▉▉▉ and ▉▉▉▉.[59] Mr. Bakewell's other non-infringing alternative would cost approximately ▉▉▉▉ to implement.[60]

---

[52] Bakewell Rebuttal Report, pp. 141-142.
[53] Malackowski Deposition, pp. 140-141; Malackowski Supplemental Report, Section 12.2.4.2.
[54] Malackowski Deposition, p. 121.
[55] Bakewell Rebuttal Report, p. 153.
[56] Bakewell Rebuttal Report, pp. 153, 155.
[57] Bakewell Rebuttal Report, pp. 156, 160.
[58] Bakewell Rebuttal Report, p. 161.
[59] Bakewell Rebuttal Report, pp. 163-164.
[60] Bakewell Rebuttal Report, pp. 165, 168.

  INTELLECTUAL CAPITAL EQUITY

**8.   CONCLUSION**

Based on the totality of the circumstances in this case and the information available to me at this time, I have concluded that the appropriate form of compensation in this case, for Sonos's Asserted Patent claims, is an award of reasonable royalty damages.  The Bakewell Rebuttal Report has not caused me to amend or change my opinions regarding the apportionment steps, negotiation split, or *Georgia-Pacific* analysis which are detailed in the Malackowski Supplemental Report.

However, to provide a conservative outcome to the hypothetical negotiation, I implement two quantitative adjustments espoused in the Bakewell Rebuttal Report.  While I disagree with Mr. Bakewell's adjustments as they generally lack evidentiary support, I find that if these claims are correct, the reasonable royalty figures should be decreased to $179.6 million and $77.5 million for the '033 Patent, and '966 Patent, respectively.[109]

**9.   SIGNATURE**

Respectfully submitted,

_____                        January 23, 2023
James E. Malackowski                                   Date

---

[109] Appendices 3.1-R and 3.3-R.