QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Sean Pak (Bar No. 219032)
  seanpak@quinnemanuel.com
  Melissa Baily (Bar No. 237649)
  melissabaily@quinnemanuel.com
  James Judah (Bar No. 257112)
  jamesjudah@quinnemanuel.com
  Lindsay Cooper (Bar No. 287125)
  lindsaycooper@quinnemanuel.com
  Iman Lordgooei (Bar No. 251320)
  imanlordgooei@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:    (415) 875-6600
Facsimile:    (415) 875-6700

  Marc Kaplan *(pro hac vice)*
  marckaplan@quinnemanuel.com
191 N. Wacker Drive, Ste 2700
Chicago, Illinois 60606
Telephone:    (312) 705-7400
Facsimile:    (312) 705-7401

*Attorneys for GOOGLE, LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SONOS, INC.,<br><br>Plaintiff and Counter-Defendant,<br><br>vs.<br><br>GOOGLE LLC,<br><br>Defendant and Counter-Claimant. | Case No. 3:20-cv-06754-WHA<br>Related to Case No. 3:21-cv-07559-WHA<br><br>**GOOGLE LLC'S MOTION *IN LIMINE* NO. 2 TO EXCLUDE PORTIONS OF THE EXPERT REPORT AND CERTAIN TESTIMONY OF MR. JAMES MALACKOWSKI REGARDING DAMAGES**<br><br>Date:     May 3, 2023<br>Time:     12:00 p.m.<br>Location: Courtroom 12, 9th Floor<br>Judge:    Hon. William Alsup |

This motion *in limine* addresses certain aspects of Mr. James Malackowski's Market Approach damages theory for U.S. Patent Nos. 10,848,885 (the "'885 patent") 10,469,966 (the "'966 patent").

## I.   INTRODUCTION

*First*, Mr. Malackowski assumes that Sonos would adopt the role of an "app developer" during the hypothetical negotiation, and that the parties would agree to a "70%/30% revenue sharing split" based on the service fee that Google charges app developers whose apps are made available for download on the Google Play Store.  But there is no basis for this approach, as a hypothetical negotiation between an app store and an app developer is fundamentally different than one between a patent licensor and licensee.  Nor is there evidence that Sonos has ever assumed the role of an app developer during a patent license negotiation, or that either party has ever looked to Google's Play Store fee structure as a comparable data point for any patent license.  Mr. Malackowski's revenue split is insufficiently tied to the facts of the case and just as arbitrary as the "25 percent rule of thumb" that the Federal Circuit rejected in *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011).

*Second*, Mr. Malackowski's damages calculations should be excluded because they are not proper expert opinion.  For the '885 and '966 patents, Mr. Malackowski uses the subscription price of IFTTT as a starting point and makes four adjustments.  But the inputs for Mr. Malackowski's calculations are based on evidence in the case that can speak for itself, or publicly-available data that Mr. Malackowski neither derived nor calculated himself.  Mr. Malackowski's opinions do not offer anything that a lay juror cannot understand.

## II.   STATEMENT OF THE ISSUES TO BE DECIDED

Should Mr. Malackowski's opinions regarding the '885 and '966 patents be excluded because (1) his arbitrary 70/30 revenue split is not sufficiently connected to the facts of the case and/or because (2) they are not proper expert opinion?

## III.   STATEMENT OF RELEVANT FACTS

First, in connection with his damages theory for the '885 and '966 patents, Mr. Malackowski assumes Sonos would position itself as an "app developer who wishes to provide its technology for

a fee." Ex. 1 (Mal Rep.) at 119-120. Based on this, Mr. Malackowski opines that the parties would look to Google's Play Store fee structure as a comparable data point and agree to share revenues on a 70/30 basis, as Google does with developers who place apps for download and/or purchase in the Google Play Store (which operates for Android devices much as Apple's App Store operates for iOS devices). *Id.*[1] Mr. Malackowski is not aware of Sonos ever assuming the role of an app developer in a patent license negotiation (Ex. 2 at 258:11-259:4), nor is he aware of either side looking to Google's Play Store developer agreement as a comparable data point in a patent licensing negotiation. Ex. 3 at 156:25-157:19; Ex. 2 at 270:11-20. Mr. Malackowski also does not offer any support for the notion Sonos would assume the role of an app developer in a patent license negotiation, or that Google would assume the role of an app store provider. Needless to say, Mr. Malackowski has no evidence of Google ever agreeing to a 70/30 split in a patent license negotiation—or indeed any kind of revenue split at all. Ex. 2 at 259:7-16; 260:11-20.

Second, Mr. Malackowski's damages calculations for the two patents are straightforward and based on publicly-available information or evidence in the case that can otherwise speak for itself. For the '885 and '966 patents, Mr. Malackowski (1) multiplies the IFTTT subscription fees by 10% to account for his opinion that only two of 20 applets available are necessary to group speakers (Ex. 1 at 86-88); (2) multiplies the discounted subscription fees by 7.4% and 8.8%, Google's weighted average cost of capital ("WACC") at the time of the hypothetical negotiations for the '885 and '966 patents (*id.* at 88-89); (3) multiplies that present value of the subscription fees by 29% to account for the percentage of households with more than one speaker in their home (*id.* at 89-90); and (4) reduces the resulting number by 30% to account for the 70/30 revenue split described above (*id.* at 119-121).

These adjustments are based on publicly-available information that Mr. Malackowski neither derived nor calculated himself. Information regarding IFTTT's subscription fees and the number of applets one needs to group speakers is publicly available via IFTTT's website. Ex. 1 at 84-86. Mr. Malackowski obtained data on the average lifetime of a smartphone user, Google's

---

[1] Google's Play Store is the Android equivalent of Apple's App Store. It is a marketplace where users can download applications for use on their device.

WACC, and the percentage of households with more than one speaker from publicly-available industry publications and news sites like Bloomberg and NPR. *Id.* at 88, n.522, 89-90, n.528. Information regarding Google's practice of charging developers on a service fee basis is publicly available via Google's website. *Id.* at 120.

## IV. LEGAL STANDARD

An expert may offer opinions at trial only if "(1) [his] scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (2) the testimony is based on sufficient facts or data; (3) the testimony is the product of reliable principles and methods; and (4) [he] has reliably applied the principles and methods to the facts of the case." FRE 702. The party seeking to admit expert testimony bears the burden of proving its admissibility. *Lust By & Through Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996). To be admissible, opinions regarding a reasonable royalty rate must "carefully tie proof of damages to the claimed invention's footprint in the market place." *Uniloc*, 632 F.3d at 1317.

## V. ARGUMENT

### A. Mr. Malackowski's 70/30 Revenue Split Is Not Tied To The Facts Of The Case.

In *Uniloc,* the Federal Circuit found the "25 percent rule" to be inadmissible because it "fails to tie a reasonable royalty base to the facts of the case." *Uniloc*, 632 F.3d at 1315. Specifically, the 25 percent rule is problematic because it "does not say anything about a particular hypothetical negotiation" and "would predict [] the same 25%/75% royalty split" every time, regardless of the parties or technology involved. *Id.* at 1317. Since *Uniloc*, a long line of cases has excluded similarly crude and unsubstantiated revenue and/or profit splits. *See e.g., Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1334 (Fed. Cir. 2014) (rejecting damages opinion that split profits on a 50/50 basis as "insufficiently tied to the facts of the case"); *Bayer HealthCare LLC v. Baxalta Inc.*, No. 16-cv-1122-RGA, 2019 WL 330149, at *8 (D. Del. Jan. 25, 2019) (rejecting damages opinion that split incremental value associated with the patent on a 50/50 basis because the expert's analysis was "insufficient to tie the 50/50 split to the facts of the case"); *Good Tech. Corp. v. Mobileiron, Inc.*, No. 5:12–cv–05826–PSG, 2015 WL 4090431, at *7 (N.D. Cal. July 5, 2015) (excluding expert

testimony that "fails to tie the 50/50 split to the specifics of the case").

Like the splits at issue in *Uniloc* and cases that have followed, Mr. Malackowski's 70/30 revenue split is not sufficiently tied to the facts of the case. There is no basis to assume Sonos would position itself as an "app developer who wishes to provide its technology for a fee" during the hypothetical negotiation. Ex. 1 at 119-120. For starters, Sonos did not develop, and would not be providing Google with, any app for download and/or sale on the Google Play Store. In the hypothetical negotiation, Sonos would be providing Google with only a bare patent license—the software to actually practice the licensed invention would have to be developed by Google itself. But there is also no connection between Google's Play Store agreement and the facts of this case; the agreement is not specific to Sonos, nor to the technology claimed by the '885 or '966 patents. Ex. 3 at 152:23-153:13; 154:2-9. There is no evidence that either party has ever used Google's Play Store agreement in a patent license negotiation. There is no evidence that Sonos has ever positioned itself as an app developer in any patent licensing negotiation before. Ex. 2 (2023 Mal Tr.) at 258:11-259:4. There is no evidence that Google has ever discussed anything resembling a 70/30 revenue split with Sonos or another licensor. Ex. 3 at 259:7-16, 260:11-20. Finally, neither side charges a fee for the speaker grouping functionality at issue in this case, which further underscores the inapplicability of the Google Play Store's revenue split. Ex. 3 at 122:24-123:4, 197:12-17. A negotiation between an app developer and app store is fundamentally different than the hypothetical negotiation between a patent licensor and licensee, and Mr. Malackowski does not provide any justification for his use of such a non-comparable data point in case.[2]

---

[2] Mr. Malackowski briefly references a "revenue sharing agreement" that Google entered into with Apple in which it supposedly "paid $1 billion to keep search bar on the iPhone" and gave Apple 34% of the revenue Google generates through each Apple device. Ex. 1 at 120. This agreement was not produced in discovery, nor does Mr. Malackowski provide a copy with his expert report. Instead Mr. Malackowski cites an article from "The Columbus Dispatch," which apparently obtained information regarding the agreement from a hearing transcript in an unrelated copyright case. Ex. 4. Given that this is inadmissible hearsay, Mr. Malackowski should also be precluded from testifying about either the agreement or the article as they are irrelevant, prejudicial, and would only serve to confuse the jury. In fact, the article states that "[i]t wasn't clear from the transcript whether that [34%] is the amount of revenue kept by Google or paid to Apple." *Id.* at 2. *See Samuels v. Holland American Line-USA Inc.*, 656 F.3d 948, 952 (9th Cir. 2011) (expert testimony

As in *Uniloc*, Mr. Malackowski's 70/30 revenue split would predict the same royalty split in every case involving a patent negotiation between Google and a software patentee regardless of the parties, technology involved, or scope of the license (i.e., a bare patent or one that includes the actual software).  Demonstrating this point, Mr. Malackowski opined that Google and Sonos would have agreed to the same 70/30 split in the hypothetical negotiations for the casting patents Sonos asserted in this case, although those patents indisputably relate to different technologies.  Ex. 1 at 119-120, 122-123.  That Mr. Malackowski built on his 70/30 analysis using other data points that purportedly relate to the '885 and '966 patents does not redeem his analysis.  As the Federal Circuit held in *Uniloc*, "[i]t is of no moment that the 25 percent rule of thumb is offered merely as a starting point to which the *Georgia–Pacific* factors are then applied to bring the rate up or down." *Uniloc*, 632 F.3d at 1317.  This is because "[b]eginning from a fundamentally flawed premise and adjusting it based on legitimate considerations specific to the facts of the case nevertheless results in a fundamentally flawed conclusion." *Id.*

### B.     Mr. Malackowski's Analysis Is Not Proper Expert Opinion

Mr. Malackowski's opinion should also be excluded because it is not proper expert opinion under FRE 702.  For both the '885 and '966 patents, Mr. Malackowski's calculations are straightforward, and based on evidence in the case that can speak for itself, or publicly-available data that Mr. Malackowski neither derived nor calculated himself.  *Supra* § II.  Because Mr. Malackowski's analysis is nothing more than "grade-school arithmetic" based on "arguments that the lawyers can make based on other evidence in the case that can speak for itself," his testimony is not the proper subject of expert opinion.  *Waymo LLC v. Uber Techs., Inc.*, 2017 WL 6887043, at *2 (N.D. Cal. Nov. 14, 2017) (excluding damages opinion where "the evidence [the expert] relied on can speak for itself, and his only contribution would be to pile on a misleading façade of expertise]; *see also DZ Rsrv. v. Meta Platforms, Inc.*, No. 18-04978-JD, 2022 WL 912890, at *9 (N.D. Cal. Mar. 29, 2022) (excluding damages opinion that did "not offer any specialized or

---

based on "unsupported speculation" or that is not sufficiently fact-based should be excluded as unreliable). Moreover, the article suggests that this information is highly confidential and should not have been disclosed.  *Id.*

scientific expertise, or anything beyond the typical knowledge and experience of a jury" and merely interpreted documents that "are reasonably intelligible to a jury without special assistance"); *Kim v. Benihana, Inc.*, 2022 WL 1601393 (C.D. Cal. Mar. 25, 2022) (excluding expert opinion that merely relied on "simple arithmetic" that was "not beyond the skill or knowledge of the common layperson").

## VI. CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court exclude the expert report and testimony of Sonos's expert James Malackowski as described herein.

DATED: April 13, 2023

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  /s/ Sean Pak
Sean Pak
Melissa Baily
James D. Judah
Lindsay Cooper
Marc Kaplan
Iman Lordgooei

*Attorneys for GOOGLE, LLC*

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure and Local Rule 5-1, I hereby certify that, on April 13, 2023, all counsel of record who have appeared in this case are being served with a copy of the foregoing via email.

                               */s/ Sean Pak*
                               Sean Pak