CLEMENT SETH ROBERTS (SBN 209203
croberts@orrick.com
BAS DE BLANK (SBN 191487)
basdeblank@orrick.com
ALYSSA CARIDIS (SBN 260103)
acaridis@orrick.com
EVAN D. BREWER (SBN 304411)
ebrewer@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:     +1 415 773 5700
Facsimile:     +1 415 773 5759

SEAN M. SULLIVAN (*pro hac vice*)
sullivan@ls3ip.com
J. DAN SMITH (*pro hac vice*)
smith@ ls3ip.com
MICHAEL P. BOYEA (*pro hac vice*)
boyea@ ls3ip.com
COLE B. RICHTER (*pro hac vice*)
richter@ls3ip.com
LEE SULLIVAN SHEA & SMITH LLP
656 W Randolph St., Floor 5W
Chicago, IL 60661
Telephone:     +1 312 754 0002
Facsimile:     +1 312 754 0003

*Attorneys for Sonos, Inc.*

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
  Sean Pak (Bar No. 219032)
  seanpak@quinnemanuel.com
  Melissa Baily (Bar No. 237649)
  melissabaily@quinnemanuel.com
  James Judah (Bar No. 257112)
  jamesjudah@quinnemanuel.com
  Lindsay Cooper (Bar No. 287125)
  lindsaycooper@quinnemanuel.com
  Iman Lordgooei (Bar No. 251320)
  imanlordgooei@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

  Marc Kaplan (*pro hac vice*)
  marckaplan@quinnemanuel.com
191 N. Wacker Drive, Ste 2700
Chicago, Illinois 60606
Telephone:     (312) 705-7400
Facsimile:     (312) 705-7401

*Attorneys for GOOGLE, LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA,

SAN FRANCISCO DIVISION

| | |
|---|---|
| SONOS, INC.,<br><br>    Plaintiff and Counter-defendant,<br><br>v.<br><br>GOOGLE LLC,<br><br>    Defendant and Counter-claimant. | Case No. 3:20-cv-06754-WHA<br>Related to Case No. 3:21-cv-07559-WHA<br><br>**JOINT [PROPOSED] JURY INSTRUCTIONS**<br><br>Judge:  Hon. William Alsup<br>Pretrial Conf.:  May 3, 2023<br>Time:  12:00 p.m.<br>Courtroom:  12, 19th Floor<br>Trial Date: May 8, 2023 |

Yellow Highlight indicates changed or added language to a model instruction.
Strikethrough indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

1

2

## JOINT [PROPOSED] JURY INSTRUCTIONS

3

4

5

6

Sonos, Inc. ("Sonos") and Google LLC ("Google") hereby submit the following Joint [Proposed] Jury Instructions for the trial in this matter. The titles for each instruction identify whether that particular instruction is submitted as a "Stipulated" or "Disputed" instruction. If an instruction is "Disputed," then there is an additional designation specifying whether its "Sonos's Instruction" or "Google's Instruction."

7

8

9

10

11

Sonos and Google reserve all rights to supplement, amend, or otherwise modify these proposed instructions as appropriate, including but not limited to the right to revise their positions on the proposed instructions in response to future rulings by the Court or the evidence as it is admitted at trial. Sonos and Google submit these proposed jury instructions without waiver of their position that the opposing party has not presented sufficient evidence to submit some or all of its affirmative claims, damages theories, or affirmative defenses to the jury, and without waiver of arguments presented in motions *in limine* or during claim construction.  Sonos and Google also submit these instructions subject to the preservation of positions taken during claim construction, *Daubert* proceedings, summary judgment, and other pretrial proceedings.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

**PRELIMINARY JURY INSTRUCTIONS**

**STIPULATED INSTRUCTION NO. 1 RE OVERVIEW OF PATENTS**

As you may have learned, this is a patent case. I will now play a short video for you to give you an overview of patents and the patent system in the United States. [Play Federal Judicial Center Patent Video.]

Authority:

*Finjan, Inc. v. Juniper Networks, Inc.*, 3:17-cv-05659-WHA, Dkt. 335 at 154-55 (N.D. Cal. Dec. 17, 2018).

==Yellow Highlight== indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

1

**DISPUTED INSTRUCTION NO. 2 RE SUMMARY OF CONTENTIONS**

2

**OFFERED BY SONOS**

3    To help you follow the evidence, I will now give you a summary of the positions of the

4    parties. The parties in this case are Sonos, Inc. and Google LLC.

5    The case involves two Sonos patents: U.S. Patent No. 10,848,885; and U.S. Patent No.

6    10,469,966.  For convenience, we refer to patents by the last three numbers of the patent number,

7    so the "'885 patent," and the "'966 patent."

8    ==The '885 patent and '966 patent relate to grouping wireless audio playback devices==

9    ==together and playing back audio as a group.==

10    Sonos filed suit in ~~this~~[1] ==federal== court seeking money damages from Google for allegedly

11    infringing the '885 and '966 patents ~~by [making], [importing], [using], [selling], [offering for~~

12    ~~sale], [supplying or causing to be supplied in or from the United States all or a substantial portion~~

13    ~~of the components of a patented invention] [in/into/within] the United States [products] [methods]~~

14    ~~[products which are made by a process patented in the United States] that [patent holder] argues~~

15    ~~are covered by claims [ ] of the [ ] patent. [[Patent holder] also argues that [alleged infringer] has~~

16    ~~[actively induced infringement of these claims of the [ ] patent by others] [and/or] [contributed to~~

17    ~~the infringement of claims [ ] of the [ ] patent by others].]~~. The products that are alleged to

18    infringe the '885 patent are Google media players including Google's Chromecast, Chromecast

19    Ultra, Chromecast with Google TV, Home, Home Mini, Home Max, Nest Audio, Nest Mini, Nest

20    Hub (a/k/a Home Hub), Nest Hub Max, and Nest Wifi Point. The products that are alleged to

21    infringe the '966 patent are computing devices, such as phones, tablets, and laptops, running

22    Android, ChromeOS, or iOS, that have or had one or more of Google's Cast-enabled apps

23    installed—including the Google Home app.

24    ~~Google denies that it has infringed claim 1 of the '885 patent.~~ ==I have already determined==

25    ==that prior versions of Google's accused media players infringe the '885 patent.==[2]  ==I have not==

26    ==decided whether any products infringe the '966 patent.  Sonos contends that they do, and Google==

27    _____

[1] *See, e.g.*, Dkt. 36 (Order Staying Case).

28    [2] Dkt. 309 at 11 (granting Sonos's motion for summary judgment of infringement).

JOINT PROPOSED JURY INSTRUCTIONS
                                                          3:20-cv-06754-WHA

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

1    disputes this.  Sonos also argues that Google's infringement of the '966 patent is willful.  I will

2    instruct you later as to the ways in which a patent may be infringed and how to determine

3    infringement.

4          Google ~~also~~ argues that the '885 and '966 patents are invalid. I will instruct you later as to

5    the ways in which a patent may be invalid. In general, however, a patent is invalid if it is not new

6    or is obvious in view of the state of the art at the relevant time~~, or if the description in the patent~~

7    ~~does not meet certain requirements~~.

8          So, with respect to the '885 patent, your job will be to decide ~~whether or not claims [ ] of~~

9    ~~the [ ] patent have been infringed and~~ whether or not that ~~claim~~ patent is invalid. You may need to

10   decide if newer versions of Google's products infringe the '885 patent; I will instruct you on that

11   later in the case. If you decide the '885 patent ~~has been infringed and~~ is not invalid, you will then

12   need to decide any money damages to be awarded to Sonos to compensate it for the infringement.

13   I am not asking you to decide whether Google's infringement of claim 1 of the '885 patent was

14   willful.  ~~You will also need to make a finding as to whether the infringement was willful. If you~~

15   ~~decide that any infringement was willful, that decision should not affect any damage award you~~

16   ~~give. I will take willfulness into account later.~~

17         With respect to the '966 patent, your job will be to decide whether ~~claims [ ] of~~ that patent

18   has been infringed, whether any infringement is willful, and whether or not that patent is invalid.

19   If you decide that any infringement was willful, that decision should not affect any damage award

20   you give. I will take willfulness into account later.  If you decide that the '966 patent has been

21   infringed and is not invalid, then you will also need to decide any money damages to be awarded

22   to Sonos to compensate it for the infringement.

23

24

25   Authority:

26         *Fed. Cir. Bar Association Model Patent Jury Instructions A.2, Rev. May 2020* (Summary

27   of Contentions)

28

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

1

2

**DISPUTED INSTRUCTION NO. 3 RE SUMMARY OF CONTENTIONS**

**OFFERED BY GOOGLE**

3      To help you follow the evidence, I will now give you a summary of the positions of the

4   parties. The parties in this case are Sonos, Inc. and Google LLC.

5      The case previously involved six Sonos patents assigned to Sonos: U.S. Patent No.

6   9,344,206; U.S. Patent No. 10,848,885; U.S. Patent No. 10,469,966; U.S. Patent No. 9,968,615;

7   U.S. Patent No. 10,779,033; and U.S. Patent No. 9,219,460.  For convenience, we refer to patents

8   by the last three numbers of the patent number, so for example, the "'885 patent," the "'966

9   patent," and the "'615 patent."

10      Sonos initially ~~filed suit in this court seeking~~ sought money damages from Google for

11   allegedly infringing the '206, '885, '966, '615, '033, and '460 patents ~~by [making], [importing],~~

12   ~~[using], [selling], [offering for sale], [supplying or causing to be supplied in or from the United~~

13   ~~States all or a substantial portion of the components of a patented invention] [in/into/within] the~~

14   ~~United States [products] [methods] [products which are made by a process patented in the United~~

15   ~~States] that [patent holder] argues are covered by claims [ ] of the [ ] patent. [[Patent holder] also~~

16   ~~argues that [alleged infringer] has [actively induced infringement of these claims of the [ ] patent~~

17   ~~by others] [and/or] [contributed to the infringement of claims [ ] of the [ ] patent by others].].~~  But

18   some of these patents are no longer part of the case.  For the '206 patent and '460 patent, Sonos

19   withdrew its claims of infringement against Google.[3]  For the '615 patent, I have already

20   determined that Google's products do not infringe and that the patent is invalid.  For the '033

21   patent, I have also already determined that it is invalid.  The remaining patents in this case are the

22   '885 patent and the '966 patent.

23      The '885 patent and '966 patent relate to grouping media playback devices together and

24   playing back media to a group.

25      The products that are alleged to infringe the '885 patent are Google media players

26   including Google's Chromecast, Chromecast Ultra, Chromecast with Google TV, Home, Home

27   Mini, Home Max, Nest Audio, Nest Mini, Nest Hub (a/k/a Home Hub), Nest Hub Max, and Nest

28   _____
[3]   Dkt. 132 at 2;

JOINT PROPOSED JURY INSTRUCTIONS
3:20-cv-06754-WHA

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

1  Wifi Point.  I will refer to these as the '885 Accused Products.   I have already determined that

2  prior versions of the '885 Accused Products meet the limitations of Claim 1 of the '885 patent,

3  but as I will discuss next, invalidity has not yet been decided.[4]  Google contends that its

4  redesigned products were changed such that they do not infringe Claim 1 of the '885 patent,

5  which Sonos disputes.  I have already determined that any infringement by Google was not

6  willful.[5] ~~Google denies that it has infringed claim 1 of the '885 patent.~~

7       Google ~~also~~ argues that the '885 patent is invalid.  Invalidity is a defense to infringement

8  because there can be no infringement of an invalid patent.[6]  I will instruct you later as to the ways

9  in which a patent may be invalid. In general, however, a patent is invalid if it is not new or is

10 obvious in view of the state of the art at the relevant time, or if the description in the patent does

11 not meet certain requirements.

12      So, with respect to the '885 patent, your job will be to decide whether or not ~~claims [ ]~~

13 Google's redesigned '885 Accused Products infringe Claim 1, and whether or not that claim is

14 invalid. If you decide the '885 patent ~~has been infringed and~~ is not invalid, you will then need to

15 decide any money damages to be awarded to Sonos to compensate it for the infringement.

16      The products that are alleged to infringe the '966 patent are computing devices, such as

17 smartphones, tablets, and laptops, running Android, ChromeOS, or iOS, that have or had the

18 Google Home app installed.  I will refer to these as the '966 Accused Products.  I have not

19 decided whether any of the '966 Accused Products infringe the '966 patent.  Sonos contends that

20 they do, and Google denies this.  Sonos also argues that Google's alleged infringement is willful,

21 which Google also disputes.  I will instruct you later as to the ways in which a patent may be

22 infringed and how to determine infringement.

23      Google ~~also~~ argues that the '966 patent is invalid.  Again, I will instruct you later as to the

24 ways in which a patent may be invalid.

---

[4] Dkt. 309 at 11 (granting Sonos's motion for summary judgment of infringement).

[5] Dkt. 566 at 30-31

[6] This sentence is drawn from *N.D. Cal. Model Patent Jury Instructions A.3, Rev. Aug. 2017 (updated Oct. 2019)*.

==Yellow Highlight== indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

1    ==With respect to the '966 patent,== your job will be to decide whether or not ~~claims [ ] of~~ that

2    patent has been infringed, and whether or not the asserted claims of that patent is invalid.  If you

3    decide that the '966 patent has been infringed and is not invalid, then you will also need to decide

4    any money damages to be awarded to Sonos to compensate it for the infringement.  You will also

5    need to make a finding as to whether the infringement was willful.  If you decide that any

6    infringement was willful, that decision should not affect any damage award you give. I will take

7    willfulness into account later.

8    Authority:

9        *Fed. Cir. Bar Association Model Patent Jury Instructions A.3, Rev. May 2020* (Summary

10   of Contentions); *N.D. Cal. Model Patent Jury Instructions* A.3., Aug. 2017 (updated Oct. 2019).

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

1  **STIPULATED INSTRUCTION NO. 4 RE BURDEN OF PROOF**

2  ~~The trial will now begin. First, each side may make an opening statement. An opening~~

3  ~~statement is not evidence. It is simply an opportunity for the lawyers to explain what they expect~~

4  ~~the evidence will show.~~

5  There are two standards of proof that you will apply to the evidence, depending on the

6  issue you are deciding.  On some issues, you must decide whether certain facts have been proven

7  by a preponderance of the evidence. A preponderance of the evidence means that the fact that is

8  to be proven is more likely true than not, that is, that the evidence in favor of that fact being true

9  is sufficient to tip the scale, even if slightly, in its favor. On other issues that I will identify for

10  you, you must use a higher standard and decide whether the fact has been proven by clear and

11  convincing evidence, that is, that you have been left with a clear conviction that the fact has been

12  proven.

13  These standards are different from what you may have heard about in criminal

14  proceedings where a fact must be proven beyond a reasonable doubt. On a scale of these various

15  standards of proof, as you move from preponderance of the evidence, where the proof need only

16  be sufficient to tip the scale in favor of the party proving the fact, to beyond a reasonable doubt,

17  where the fact must be proven to a very high degree of certainty, you may think of clear and

18  convincing evidence as being between the two standards.

19

20  Authorities:

21  *Fed. Cir. Bar Association Model Patent Jury Instructions A.5, Rev. May 2020* (outline of trial)

22  (citations omitted).

23

24

25

26

27

28

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

## DISPUTED INSTRUCTION NO. 5 RE OUTLINE OF TRIAL

## OFFERED BY SONOS

The trial will now begin. First, each side may make an opening statement. An opening statement is not evidence. It is simply an outline to help you understand what that party expects the evidence will show.

The presentation of evidence will then begin. Witnesses will take the witness stand and the documents will be offered and admitted into evidence. ~~There are two standards of proof that you will apply to the evidence, depending on the issue you are deciding. On some issues, you must decide whether something is more likely true than not. On other issues you must use a higher standard and decide whether it is highly probable that something is true.~~

These witnesses will be questioned by Sonos's counsel in what is called direct examination. After the direct examination of a witness is completed, the opposing side has an opportunity to cross-examine the witness. Finally, Sonos's counsel has the opportunity to question the witness one more time in what is called redirect examination.

Sonos will present its evidence on its contention that ~~[some] [the] claims of~~ the '966 patent has been and continues to be infringed by the '966 Accused Products, its contention ~~and~~ that ~~the~~ Google's alleged infringement of the '966 patent has been and continues to be willful, Sonos's contention that that the '885 patent is infringed by the newer version of the '885 Accused Products, and the amount of damages Sonos is entitled to for Google's infringement of the '885 patent and alleged infringement of the '966 patent.

To prove infringement of any claim, Sonos must persuade you that it is more likely than not that Google has infringed that claim. To persuade you that any infringement was willful, Sonos must prove that it is ~~highly probable~~ more likely than not that the infringement was willful. Sonos must also prove, by a preponderance of the evidence, the amount of damages that it suffered.

After Sonos has presented its witnesses, Google will call its witnesses, who will also be examined and subject to cross-examination and redirect. Google will present its evidence that the ~~claims of the~~ '885 and '966 patents are invalid. To prove invalidity of any patent claim, Google

JOINT PROPOSED JURY INSTRUCTIONS
3:20-cv-06754-WHA

==Yellow Highlight== indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

1   must persuade you ~~that it is highly probable~~ ==by clear and convincing evidence== that the claim is

2   invalid. In addition to presenting its evidence of invalidity, Google will put on evidence

3   responding to Sonos's infringement, ~~and~~ willfulness, ==and damages== contentions.

4      Sonos will then return and will put on evidence responding to Google's contention that the

5   '885 and '966 patents are invalid. Sonos will also have the option to put on what is referred to as

6   "rebuttal" evidence to any evidence offered by Google of non-infringement, ==damages,== or lack of

7   willfulness.

8      Google will then have the option to put on "rebuttal" evidence to any evidence offered by

9   Sonos on the validity of the '885 and '966 patents.

10      Because the evidence is introduced piecemeal, you need to keep an open mind as the

11   evidence comes in and wait for all the evidence before you make any decisions. In other words,

12   you should keep an open mind throughout the entire trial.

13      The parties may present the testimony of a witness by reading from his or her deposition

14   transcript or playing a videotape of the witness's deposition testimony.  A deposition is the sworn

15   testimony of a witness taken before trial and is entitled to the same consideration as if the witness

16   had testified at trial.  After the evidence has been presented, the attorneys will make closing

17   arguments and I will give you final instructions on the law that applies to the case.  Closing

18   arguments are not evidence.  After the closing arguments and instructions, you will then decide

19   the case.

20

21

22   *N.D. Cal. Model Patent Jury Instructions A.5., Rev. Aug. 2017 (updated Oct. 2019)*

23

24

25

26

27

28

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

## DISPUTED INSTRUCTION NO. 6 RE OUTLINE OF TRIAL

## OFFERED BY GOOGLE

The trial will now begin. First, each side may make an opening statement. An opening statement is not evidence. It is simply an outline to help you understand what that party expects the evidence will show.

The presentation of evidence will then begin. Witnesses will take the witness stand and the documents will be offered and admitted into evidence.  These witnesses will be questioned by Sonos's counsel in what is called direct examination. After the direct examination of a witness is completed, the opposing side has an opportunity to cross-examine the witness.  Finally, Sonos's counsel has the opportunity to question the witness one more time in what is called redirect examination.

~~There are two standards of proof that you will apply to the evidence, depending on the issue you are deciding. On some issues, you must decide whether something is more likely true than not. On other issues you must use a higher standard and decide whether it is highly probable that something is true.~~

Sonos will present its evidence on its contentions that ~~[some] [the] claims of~~ the '885 patent ~~has been and~~ is infringed by the redesigned '885 Accused Products, that the '966 patent has been and continues to be infringed by the '966 Accused Products,  ~~and~~ that ~~the~~ Google's alleged infringement of the '966 patent has been and continues to be willful, and the amount of damages Sonos is entitled to for Google's alleged infringement of the '885 and '966 patents.

To prove infringement of any claim, Sonos must persuade you that it is more likely than not that Google has infringed that claim. To persuade you that any infringement was willful, Sonos must prove that it is ~~highly probable~~ more likely than not that the infringement was willful. Sonos must also prove, by a preponderance of the evidence, the amount of damages that it suffered.

After Sonos has presented its witnesses, Google will call its witnesses, who will also be examined and subject to cross-examination and redirect. Google will present its evidence that ~~claims of the~~ '885 and '966 patents are invalid. To prove invalidity of any patent claim, Google

JOINT PROPOSED JURY INSTRUCTIONS
3:20-cv-06754-WHA

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

1   must persuade you ~~that it is highly probable~~ by clear and convincing evidence that the claims are

2   invalid. In addition to presenting its evidence of invalidity, Google will put on evidence

3   responding to Sonos's infringement, ~~and~~ willfulness, and damages contentions.

4          Sonos will then return and will put on evidence responding to Google's contention that the

5   ~~claims [ ] of the~~ '885 and '966 patents are invalid. Sonos will also have the option to put on what

6   is referred to as "rebuttal" evidence to any evidence offered by Google of non-infringement or

7   lack of willfulness.

8          ~~Finally,~~ Google will have the option to put on "rebuttal" evidence to any evidence offered

9   by Sonos on the validity of the ~~claims of the~~ '885 and '966 patents.

10         Because the evidence is introduced piecemeal, you need to keep an open mind as the

11   evidence comes in and wait for all the evidence before you make any decisions.  In other words,

12   you should keep an open mind throughout the entire trial.

13         The parties may present the testimony of a witness by reading from his or her deposition

14   transcript or playing a videotape of the witness's deposition testimony.  A deposition is the sworn

15   testimony of a witness taken before trial and is entitled to the same consideration as if the witness

16   had testified at trial.  After the evidence has been presented, the attorneys will make closing

17   arguments and I will give you final instructions on the law that applies to the case.  Closing

18   arguments are not evidence.  After the closing arguments and instructions, you will then decide

19   the case.

20         *N.D. Cal. Model Patent Jury Instructions* A.*5.*, *Rev. Aug. 2017 (updated Oct. 2019)*

21

22

23

24

25

26

27

28

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

1

**STIPULATED INSTRUCTION NO. 7 RE JUROR NOTEBOOKS**

2

3          To assist in your deliberations, I have provided you with a notebook that contains the

4  following:

5          • Paper if you wish to take notes

6          • A copy of the '885 and '966 patents

7          • My claim constructions

8          • The stipulated facts—facts that the parties have agreed to

9          • Photographs of the witnesses who will appear live.

10          These materials have been jointly submitted by the parties. Please refer to these materials

11  to assist you during trial.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT PROPOSED JURY INSTRUCTIONS
3:20-cv-06754-WHA

<span style="background-color: yellow">Yellow Highlight</span> indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

**FINAL JURY INSTRUCTIONS**

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

1          **DISPUTED INSTRUCTION NO. 8 RE SUMMARY OF CONTENTIONS**

2                                  **OFFERED BY SONOS**

3                  I will first give you a summary of each side's contentions in this case. I will then tell you

4      what each side must prove to win on each of its contentions. As I previously told you, Sonos

5      seeks money damages from Google for infringing[7] the '885 patent and allegedly infringing the

6      '966 patent ~~by [making,] [importing,] [using,] [selling] and [offering for sale] [products]~~

7      ~~[methods] that [patent holder] argues are covered by claims [ ] of the patent. These are the~~

8      ~~asserted claims of the '885, '966, and '033  patents.~~ Sonos also argues that Google has actively

9      induced infringement of ~~these claims of~~ the '966 patent and contributed to the infringement of

10     ~~these claims of~~ the '966 patent by others. The products that infringe the '885 patent are Google's

11     media players, including Google's Chromecast, Chromecast Ultra, Chromecast with Google TV,

12     Home, Home Mini, Home Max, Nest Audio, Nest Mini, Nest Hub (a/k/a Home Hub), Nest Hub

13     Max, and Nest Wifi Point.  The products that are alleged to infringe the '966 patent are

14     computing devices, such as phones, tablets, and laptops, running Android, ChromeOS, or iOS,

15     that have or had one or more of Google's Cast-enabled apps installed—including the Google

16     Home app.

17                 ~~[Alleged infringer] denies that it has infringed the asserted claims of the [ ] patent [and~~

18     ~~argues that, in addition, claims [ ] are invalid.]~~ I have already determined that prior versions of

19     Google's accused media players infringe claim 1 of the '885 patent. I have not decided whether

20     any products infringe the '966 patent. Sonos contends that they do, and Google disputes this.

21     Sonos also argues that Google's infringement of the '966 patent is willful. I will instruct you later

22     as to the ways in which a patent may be infringed and how to determine infringement.

23                 Google also argues that the '885 and '966 patents are invalid. I will instruct you later as to

24     the ways in which a patent may be invalid. In general, however, a patent is invalid if it is not new

25     or is obvious in view of the state of the art at the relevant time.

26     _____

27     [7] As a global matter throughout these joint proposed jury instructions, with respect to the final
       instructions, Sonos has proposed instructions that assume the jury will be asked to
       determine whether Google's newer products infringe the '885 patent. Should the Court decide
28     that the jury will not be asked to determine this question, then Sonos will propose alternate
       language.

Joint Proposed Jury Instructions
                                                                               3:20-cv-06754-WHA

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

1    So, with respect to claim 1 of the '885 patent, your job will be to decide whether Google's

2    newer products infringe the claim ~~the asserted claims of the [ ] patent have been infringed~~ and

3    whether or not that claim is invalid. If you decide the '885 patent ~~has been infringed and~~ is not

4    invalid, you will then need to decide any money damages to be awarded to Sonos to compensate

5    it for the infringement. ~~You will also need to make a finding as to whether the infringement was~~

6    ~~willful. If you decide that any infringement was willful, that decision should not affect any~~

7    ~~damage award you give. I will take willfulness into account later.~~  I am not asking you to decide

8    whether Google's infringement of claim 1 of the '885 patent was willful.

9    With respect to the '966 patent, your job will be to decide whether the asserted claims of

10   the patent have been infringed, whether any infringement is willful, and whether or not the

11   asserted claims of the patents are invalid.  If you decide that the '966 patent has been infringed

12   and is not invalid, then you will also need to decide any money damages to be awarded to Sonos

13   to compensate it for the infringement. If you decide that any infringement was willful, that

14   decision should not affect any damage award you ~~make~~ give. I will take willfulness into account

15   later.

16

17

18   *N.D. Cal. Model Patent Jury Instructions B.1., Rev. Aug. 2017 (updated Oct. 2019)*

19

20

21

22

23

24

25

26

27

28

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

1          **DISPUTED INSTRUCTION NO. 9 RE SUMMARY OF CONTENTIONS**

2                                **OFFERED BY GOOGLE**

3          I will first give you a summary of each side's contentions in this case. I will then tell you

4  what each side must prove to win on each of its contentions. As I previously told you, Sonos

5  previously brought claims against Google for allegedly infringing the '206, '885, '966, '615,

6  '033, and '460 patents.  For the '206 patent and '460 patent, Sonos withdrew its claims of

7  infringement against Google.   For claim 13 of the '615 patent, I have already determined that

8  Google's products do not infringe and that the patent is invalid.  For the '033 patent, I have also

9  already determined that it is invalid.

10         Sonos now seeks money damages from Google for allegedly infringing the remaining

11  '885 and '966 patents ~~by [making,] [importing,] [using,] [selling] and [offering for sale]~~

12  ~~[products] [methods] that [patent holder] argues are covered by claims [ ] of the patent.  These are~~

13  ~~the asserted claims of the '885, '966, and '033  patents.~~

14         The products that are alleged to infringe the '885 patent are Google media players,

15  including Google's Chromecast, Chromecast Ultra, Chromecast with Google TV, Home, Home

16  Mini, Home Max, Nest Audio, Nest Mini, Nest Hub (a/k/a Home Hub), Nest Hub Max, and Nest

17  Wifi Point.  I will refer to these as the '885 Accused Products.   I have already determined that

18  prior versions of the '885 Accused Products meet the limitations of Claim 1 of the '885 patent,

19  but as I will discuss next, you will need to decide whether that claim is invalid.[8]  Google contends

20  that the redesigned '885 Accused products were changed such that they do not infringe Claim 1

21  of the '885 patent, which Sonos disputes.  I have already determined that any infringement by

22  Google was not willful.[9]

23         Google ~~denies that it has infringed the asserted claims of the patent and~~ argues that~~, in~~

24  ~~addition,~~ the '885 patent is invalid.  Invalidity is a defense to infringement because there can be

25  no infringement of an invalid patent.[10]  I will instruct you later as to the ways in which a patent

26  _____
   [8] Dkt. 309 at 11 (granting Sonos's motion for summary judgment of infringement).

27  [9] Dkt. 566 at 30-31

28  [10]  This sentence is drawn from *N.D. Cal. Model Patent Jury Instructions A.3, Rev. Aug. 2017 (updated Oct. 2019).*

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

1    may be invalid. In general, however, a patent is invalid if it is not new or is obvious in view of the

2    state of the art at the relevant time, or if the description in the patent does not meet certain

3    requirements.

4            So, with respect to claim 1 of the '885 patent, your job will be to decide ~~whether any of~~

5    ~~the asserted claims of the [ ] patent are invalid~~ Google's redesigned products infringe Claim 1,

6    and whether ~~any of the asserted claims of the [ ] patent have been infringed~~ that claim is invalid.

7    If you decide the claim ~~has been infringed and~~ is not invalid, you will then need to decide any

8    money damages to be awarded to Sonos to compensate it for the infringement.

9            The products that are alleged to infringe the '966 patent are computing devices, such as

10   smartphones, tablets, and laptops, running Android, ChromeOS, or iOS, that have the Google

11   Home app installed.  I will refer to these as the '966 Accused Products.  I have not decided

12   whether any of the '966 Accused Products infringe the '966 patent.  Sonos contends that they do,

13   and Google denies this.  Sonos also argues that Google's alleged infringement is willful, which

14   Google also disputes.   I will instruct you later as to the ways in which a patent may be infringed

15   and how to determine infringement.

16           Google ~~denies that it has infringed the asserted claims of the patent and~~ argues that~~, in~~

17   ~~addition, claims [ ]~~ the '966 patent is invalid.  I will instruct you later on that defense.

18           With respect to the '966 patent, your job will be to decide whether the asserted claims of

19   that patent has been infringed, and whether the asserted claims are invalid.  If you decide that the

20   '966 patent has been infringed and is not invalid, then you will also need to decide any money

21   damages to be awarded to Sonos to compensate it for the infringement.  You will also need to

22   make a finding as to whether the infringement was willful.  If you decide that any infringement

23   was willful, that decision should not affect any damage award you give. I will take willfulness

24   into account later.

25

26   *N.D. Cal. Model Patent Jury Instructions B.1., Rev. Aug. 2017 (updated Oct. 2019)*

27

28

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

**STIPULATED INSTRUCTION NO. 10 RE INTERPRETATION OF CLAIMS**

Before you decide whether Google has infringed any claims of the patents or whether the claims are invalid, you will need to understand the patent claims. As ~~I mentioned at the beginning of the case~~ you heard throughout the case, the patent claims are numbered sentences at the end of the patent that describe the boundaries of the patent's protection. It is my job as judge to explain to you the meaning of any language in the claims that needs interpretation.

I have interpreted the meaning of some of the language in the patent claims involved in this case. You must accept those interpretations as correct. My interpretation of the language should not be taken as an indication that I have a view regarding the issues of infringement and invalidity. The decisions regarding infringement and invalidity are yours to make.

| Patent Claim | Claim Term | Construction |
|---|---|---|
| '885 Patent Claim 1 | "indication that the first zone player has been added to a … zone scene" | "indication from the network device that the zone player has been added by the user to a zone scene" |
| '885 Patent Claim 1; '966 Patent Claims 1, 2, 4, 6, 8 | "zone scene" | "a previously-saved grouping of zone players according to a common theme" |

*N.D. Cal. Model Patent Jury Instructions* B.2.1., Rev. Aug. 2017 (updated Oct. 2019).

Authorities:

*Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384-391 (1996); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1324 (Fed. Cir. 2005); *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1304-13 (Fed. Cir. 1999); *Cybor Corp. v. FAS Techs.*, 138 F.3d 1448, 1458-59 (Fed. Cir. 1998) (en banc); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977 (Fed. Cir. 1995) (en banc); Dkt. 309 at 5, 9.

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

**DISPUTED INSTRUCTION NO. 11 RE INFRINGEMENT—BURDEN OF PROOF**

**OFFERED BY SONOS**

I will now instruct you on the rules you must follow in deciding whether Sonos has proven that the newer versions of the '885 Accused Products infringe Claim 1 of the '885 patent and that Google has infringed one or more of the asserted claims of the '966 patent. To prove infringement of any claim, Sonos must persuade you that it is more likely than not that Google has infringed that claim.

*N.D. Cal. Model Patent Jury Instructions B.3.1., Rev. Aug. 2017 (updated Oct. 2019)*

Authorities:

*Warner-Lambert Co. v. Teva Pharm. USA, Inc.*, 418 F.3d 1326, 1341 n.15 (Fed. Cir. 2005);

*SealFlex, Inc. v. Athletic Track and Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999); *Morton Int'l, Inc. v. Cardinal Chem. Co.*, 5 F.3d 1464, 1468-69 (Fed. Cir. 1993).

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

**DISPUTED INSTRUCTION NO. 12 RE INFRINGEMENT—BURDEN OF PROOF**

**OFFERED BY GOOGLE**

I will now instruct you on the rules you must follow in deciding whether Sonos has proven that the redesigned '885 Accused Products infringe Claim 1 of the '885 patent and that Google has infringed one or more of the asserted claims of the '966 patent. To prove infringement of any claim, Sonos must persuade you that it is more likely than not that Google has infringed that claim.

*N.D. Cal. Model Patent Jury Instructions B.3.1., Rev. Aug. 2017 (updated Oct. 2019)*

<u>Authorities</u>:

*Warner-Lambert Co. v. Teva Pharm. USA, Inc.*, 418 F.3d 1326, 1341 n.15 (Fed. Cir. 2005);
*SealFlex, Inc. v. Athletic Track and Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999); *Morton Int'l, Inc. v. Cardinal Chem. Co.*, 5 F.3d 1464, 1468-69 (Fed. Cir. 1993).

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

1      **DISPUTED INSTRUCTION NO. 13 RE DIRECT INFRINGEMENT OFFERED BY**

2                                    **SONOS**

3          A patent's claims define what is covered by the patent. A product directly infringes a

4      patent if it is covered by at least one claim of the patent.

5          Deciding whether a claim has been directly infringed is a two-step process. The first step

6      is to decide the meaning of the patent claim. I have already made this decision, and I have already

7      instructed you as to the meaning of the asserted patent claims. The second step is to decide

8      whether Google has made, used, sold, offered for sale or imported within the United States a

9      product covered by Claim 1 of the '885 patent or Claims 1, 2, 4, 6, or 8 of the '966 patent. If it

10     has, it infringes. You, the jury, make this decision.

11         With one exception, you must consider each of the asserted claims of the patent

12     individually, and decide whether the accused products infringe that claim. The one exception to

13     considering claims individually concerns dependent claims. A dependent claim includes all of the

14     requirements of a particular independent claim, plus additional requirements of its own. As a

15     result, if you find that an independent claim is not infringed, you must also find that its dependent

16     claims are not infringed. On the other hand, if you find that an independent claim has been

17     infringed, you must still separately decide whether the additional requirements of its dependent

18     claims have also been infringed.

19         Sonos asserts Claim 1 of the '885 patent as to the newer versions of the '885 Accused

20     Products.

21         Sonos asserts Claims 1, 2, 4, 6, and 8 of the '966 patent. Claim 4 depends from Claim 3,

22     and Claims 2, 3, 6 and 8 depend from Claim 1.

23         You have heard evidence about both Sonos's commercial products and Google's accused

24     products. However, in deciding the issue of infringement you may not compare Google's accused

25     products to Sonos's commercial products. Rather, you must compare the Google accused

26     products to Claim 1 of the '885 patent and the claims of the '966 patent when making your

27     decision regarding infringement.

28         Whether Google knew its products infringed or even knew of the patent does not matter in

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

1    determining direct infringement.

2           Sonos claims that Google directly infringed by "literal" infringement. The following

3    instruction will provide more detail on how a claim may be "literally" infringed.

4

5           *Federal Circuit Bar Association Model Patent Jury Instructions* § 3.1 (May 2020); *AIPLA*

6    *Model Patent Jury Instructions* § 3.0 (2019); *N.D. Cal. Model Patent Jury Instructions B.3.2.,*

7    *Rev. Aug. 2017 (updated Oct. 2019).*

8    Authorities:

9    35 U.S.C. § 271; *Warner-Lambert Co. v. Teva Pharm. USA, Inc.*, 418 F.3d 1326, 1341 n.15 (Fed.

10   2005); *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997); *Cross Med.*

11   *Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310-11 (Fed. Cir. 2005);

12   *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1330-34 (Fed. Cir. 2001); *Seal-Flex, Inc. v.*

13   *Athletic Track and Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999); *Carroll Touch, Inc. v.*

14   *Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1576 (Fed. Cir. 1993).

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

1  **DISPUTED INSTRUCTION NO. 14 RE DIRECT INFRINGEMENT OFFERED BY**

2  **GOOGLE**

3      A patent's claims define what is covered by the patent. A product directly infringes a

4  patent if it is covered by at least one claim of the patent.

5      Deciding whether a claim has been directly infringed is a two-step process. The first step

6  is to decide the meaning of the patent claim. I have already made this decision, and I have already

7  instructed you as to the meaning of the asserted patent claims. The second step is to decide

8  whether Google has made, used, sold, offered for sale or imported within the United States a

9  product covered by Claim 1 of the '885 patent or Claims 1, 2, 4, 6, or 8 of the '966 patent. If it

10  has, it infringes. You, the jury, make this decision.

11      With one exception, you must consider each of the asserted claims of the patent

12  individually, and decide whether the accused products infringe that claim. The one exception to

13  considering claims individually concerns dependent claims. A dependent claim includes all of the

14  requirements of a particular independent claim, plus additional requirements of its own. As a

15  result, if you find that an independent claim is not infringed, you must also find that its dependent

16  claims are not infringed. On the other hand, if you find that an independent claim has been

17  infringed, you must still separately decide whether the additional requirements of its dependent

18  claims have also been infringed.

19      Sonos asserts Claim 1 of the '885 patent as to the redesigned '885 Accused Products.

20      Sonos asserts Claims 1, 2, 4, 6, and 8 of the '966 patent. Claim 4 depends from Claim 3,

21  and Claims 2, 3, 6 and 8 depend from Claim 1.

22      You have heard evidence about both Sonos's commercial products and Google's accused

23  products. However, in deciding the issue of infringement you may not compare Google's accused

24  products to Sonos's commercial products. Rather, you must compare the Google accused

25  products to Claim 1 of the '885 patent and the claims of the '966 patent when making your

26  decision regarding infringement.

27      Whether Google knew its products infringed or even knew of the patent does not matter in

28  determining direct infringement.

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

1    ~~There are two ways in which a patent claim may be directly infringed. A claim may be~~

2    ~~"literally" infringed, or it may be infringed under the "doctrine of equivalents."~~  Sonos claims that

3    Google directly infringed by "literal" infringement.  The following instructions will provide more

4    detail on ~~these two types of direct infringement~~ how a claim may be "literally" infringed.

5

6    *N.D. Cal. Model Patent Jury Instructions B.3.2., Rev. Aug. 2017 (updated Oct. 2019);*

7    *Federal Circuit Bar Association Model Patent Jury Instructions § 3.1 (May 2020); AIPLA Model*

8    *Patent Jury Instructions § 3.0 (2019).*

9    Authorities:

10   35 U.S.C. § 271; *Warner-Lambert Co. v. Teva Pharm. USA, Inc.*, 418 F.3d 1326, 1341 n.15 (Fed.

11   2005); *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997); *Cross Med.*

12   *Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310-11 (Fed. Cir. 2005);

13   *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1330-34 (Fed. Cir. 2001); *Seal-Flex, Inc. v.*

14   *Athletic Track and Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999); *Carroll Touch, Inc. v.*

15   *Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1576 (Fed. Cir. 1993).

16

17

18

19

20

21

22

23

24

25

26

27

28

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

1

**DISPUTED INSTRUCTION NO. 15 RE LITERAL INFRINGEMENT**

2

**OFFERED BY SONOS**

3       To decide whether an accused product literally infringes a claim of the asserted patents,

4  you must compare that product with the patent claim and determine whether every requirement of

5  the claim is included in that product. If so, the accused product literally infringes that claim. If,

6  however, the accused product does not have every requirement in the patent claim, the accused

7  product does not literally infringe that claim. You must decide literal infringement for each

8  asserted claim separately.

9       If the patent claim uses the term "comprising," that patent claim is to be understood as an

10  open claim.  An open claim is infringed as long as every requirement in the claim is present in the

11  accused product.  The fact that an accused product also includes other parts or performs other

12  functions will not avoid infringement, as long as it has every requirement in the patent claim.

13       An accused system or product directly infringes a claim if it is reasonably capable of

14  satisfying the claim elements even though it may also be capable of non-infringing modes of

15  operation. If a claim requires only that the system or product have the capacity to perform a

16  function, one who makes a system or product with that capability is a direct infringer even though

17  they do not use that capability.

18

19       *N.D. Cal. Model Patent Jury Instructions B.3.3., Rev. Aug. 2017 (updated Oct. 2019)*.

20  Authorities:

21       *MicroStrategy Inc. v. Business Objects, S.A.*, 429 F.3d 1344, 1352-53 (Fed. Cir. 2005);

22  *Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1353 (Fed. Cir. 2001); *Cole v. Kimberly-Clark

23  Corp.*, 102 F.3d 524, 532 (Fed. Cir. 1996); *Ecolab, Inc. v. FMC Corp.*, 535 F.3d 1369 (Fed. Cir.

24  2009); *Cross Med. Prods. v. Medtronic Sofamor Danek*, 424 F.3d 1293 (Fed. Cir. 2005); *BMC

25  Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373 (Fed. Cir. 2007); *Finjan, Inc. v. Secure Computing

26  Corp.*, 626 F.3d 1197, 1204 (Fed. Cir. 2010); *Hilgraeve Corp. v. Symantec Corp.*, 265 F.3d 1336,

27  1343 (Fed. Cir. 2001); *ParkerVision, Inc. v. Qualcomm Inc.*, 903 F.3d 1354, 1361; *Ericsson, Inc.

28  v. D-Link Sys., Inc.*, 773 F.3d 1201, 1217 (Fed. Cir. 2014).

Yellow Highlight indicates changed or added language to a model instruction.
Strikethrough indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

**DISPUTED INSTRUCTION NO. 16 RE LITERAL INFRINGEMENT**

**OFFERED BY GOOGLE**

To decide whether an accused product literally infringes a claim of the asserted patents, you must compare that product with the patent claim and determine whether every requirement of the claim is included in that product. If so, the accused product literally infringes that claim. If, however, the accused product does not have every requirement in the patent claim, the accused product does not literally infringe that claim. You must decide literal infringement for each asserted claim separately.

If the patent claim uses the term "comprising," that patent claim is to be understood as an open claim.  An open claim is infringed as long as every requirement in the claim is present in the accused product.  The fact that an accused product also includes other parts or performs other functions will not avoid infringement, as long as it has every requirement in the patent claim.

*N.D. Cal. Model Patent Jury Instructions B.3.3., Rev. Aug. 2017 (updated Oct. 2019).*

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

## DISPUTED INSTRUCTION NO. 171 RE INDUCING PATENT INFRINGEMENT

## OFFERED BY SONOS

Sonos argues that Google has actively induced another to infringe the '966 patent by inducing other people to install the Google Home App, YouTube Music app, and Google Play Music app, on their Internet-connected computing devices. In order for Google to have induced infringement, Google must have induced another to directly infringe a claim of the '966 patent; if there is no direct infringement by anyone, there can be no induced infringement. As with direct infringement, you must determine induced infringement on a claim-by-claim basis.

In order to be liable for inducing infringement, Google must:

(1) have intentionally taken action that actually induced direct infringement;

(2) have been aware of the '966 patent; and

(3) have known that the acts it was causing would infringe the patent.

Google may be considered to have known that the acts it was causing would infringe the asserted patents if it subjectively believed there was a high probability that the directly infring~~er's~~ing product was patented by Sonos and nevertheless deliberately took steps to avoid learning that fact, in other words, willfully blinded itself to the infringing nature of the direct infringer's acts.

*N.D. Cal. Model Patent Jury Instructions B.3.7., Rev. Aug. 2017 (updated Oct. 2019)*.

Authorities:

35 U.S.C. § 271(b); *Commil USA, LLC v. Cisco Systems, Inc.*, 575 U.S. 632, 642-46  (2015); *Global-Tech Appliances, Inc. et. al. v. SEB S.A.*, 563 U.S. 754, 768-70 (2011); *Dynamic Data Techs., LLC v. Amlogic Holdings Ltd.*, No. 1:19-cv-1239-CFC, 2020 WL 4365809, at *5 (D. Del. July 30, 2020).

Yellow Highlight indicates changed or added language to a model instruction.
Strikethrough indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

**DISPUTED INSTRUCTION NO. 181 RE INDUCING PATENT INFRINGEMENT**

**OFFERED BY GOOGLE**

Sonos argues that Google has actively induced another to infringe the '966 patent. In order for Google to have induced infringement, Google must have induced another to directly infringe a claim of the '966 patent; if there is no direct infringement by anyone, there can be no induced infringement. As with direct infringement, you must determine induced infringement on a claim-by-claim basis.

In order to be liable for inducing infringement, Google must:

(1) have intentionally taken action that actually induced direct infringement;

(2) have been aware of the '966 patent; and

(3) have known that the acts it was causing would infringe the patent.

~~Google may be considered to have known that the acts it was causing would infringe the '966 patent if it subjectively believed there was a high probability that the direct infringer's product or method was patented and nevertheless deliberately took steps to avoid learning that fact, in other words, willfully blinded itself to the infringing nature of the direct infringer's acts.~~

*N.D. Cal. Model Patent Jury Instructions B.3.7., Rev. Aug. 2017 (updated Oct. 2019).*

<u>Authorities:</u>

35 U.S.C. § 271(b); *Commil USA, LLC v. Cisco Systems, Inc.*, 575 U.S. 632, 642-46  (2015); *Global-Tech Appliances, Inc. et. al. v. SEB S.A.*, 563 U.S. 754, 768-70 (2011); *Dynamic Data Techs., LLC v. Amlogic Holdings Ltd.*, No. 1:19-cv-1239-CFC, 2020 WL 4365809, at *5 (D. Del. July 30, 2020).

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

1          **DISPUTED INSTRUCTION NO. 12 RE CONTRIBUTORY INFRINGEMENT**

2                              **OFFERED BY SONOS**

3          Sonos also argues that Google has contributed to infringement by another by offering the

4    Google Home app, YouTube Music app, and Google Play Music app for installation on an

5    Internet-connected computing device. Contributory infringement may arise when someone

6    supplies something that is used to infringe one or more of the patent claims. As with direct

7    infringement, you must determine contributory infringement on a claim-by-claim basis.

8          In order for there to be contributory infringement by Google, someone other than Google

9    must directly infringe a claim of the '966 patent; if there is no direct infringement by anyone,

10   there can be no contributory infringement.

11         If you find someone has directly infringed the '966 patent, then contributory infringement

12   exists if:

13         Google supplied an important component of the infringing part of the product;

14         The component is not a common component suitable for non-infringing use; and

15         Google supplied the component with the knowledge of the '966 patent and knowledge that

16         the component was especially made or adapted for use in an infringing manner.

17         A "common component suitable for non-infringing use" is a component that has uses

18   other than as a component of the patented product, and those other uses are not occasional,

19   farfetched, impractical, experimental, or hypothetical.

20         Google may be considered to have known that the acts it was causing would infringe the

21   asserted patents if it subjectively believed there was a high probability that the asserted patents

22   existed and that the accused apps were especially made or adapted for use in an infringing manner

23   and nevertheless deliberately took steps to avoid learning those facts, in other words, willfully

24   blinded itself to the infringing nature of the direct infringer's acts.

25         *N.D. Cal. Model Patent Jury Instructions B.3.6., Rev. Aug. 2017 (updated Oct. 2019)*.

26   Authorities:

27   35 U.S.C. § 271(c); *PharmaStem Therapeutics, Inc. v. ViaCell, Inc. et. al.*, 491 F.3d 1342, 1356-

28   58 (Fed. Cir. 2007); *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476 (1964);

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

1   *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1303 (Fed. Cir. 2006); *Mentor H/S, Inc. v. Med.*

2   *Device Alliance, Inc.*, 244 F.3d 1365 (Fed. Cir. 2001); *Hewlett-Packard Co. v. Bausch & Lomb,*

3   *Inc.*, 909 F.2d 1464, 1469 (Fed. Cir. 1990); *Preemption Devices, Inc. v. Minn. Mining & Mfr. Co.*,

4   803 F.2d 1170, 1174 (Fed. Cir. 1986); *Commil USA, LLC v. Cisco Systems, Inc.*, 575 U.S. 632,

5   642-46  (2015); *Global-Tech Appliances, Inc. et. al. v. SEB S.A.*, 563 U.S. 754, 768-70 (2011);

6   *Dynamic Data Techs., LLC v. Amlogic Holdings Ltd.*, No. 1:19-cv-1239-CFC, 2020 WL

7   4365809, at *5 (D. Del. July 30, 2020).

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Joint Proposed Jury Instructions
3:20-cv-06754-WHA

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

### DISPUTED INSTRUCTION NO. 12 RE CONTRIBUTORY INFRINGEMENT

### OFFERED BY GOOGLE

Sonos also argues that Google has contributed to infringement by another. Contributory infringement may arise when someone supplies something that is used to infringe one or more of the patent claims. As with direct infringement, you must determine contributory infringement on a claim-by-claim basis.

In order for there to be contributory infringement by Google, someone other than Google must directly infringe a claim of the '966 patent; if there is no direct infringement by anyone, there can be no contributory infringement.

If you find someone has directly infringed the '966 patent, then contributory infringement exists if:

Google supplied an important component of the infringing part of the product;

The component is not a common component suitable for non-infringing use; and

Google supplied the component with the knowledge of the '966 patent and knowledge that the component was especially made or adapted for use in an infringing manner.

A "common component suitable for non-infringing use" is a component that has uses other than as a component of the patented product, and those other uses are not occasional, farfetched, impractical, experimental, or hypothetical.

*N.D. Cal. Model Patent Jury Instructions B.3.6., Rev. Aug. 2017 (updated Oct. 2019)*.

Authorities:

35 U.S.C. § 271(c); *PharmaStem Therapeutics, Inc. v. ViaCell, Inc. et. al.*, 491 F.3d 1342, 1356-58 (Fed. Cir. 2007); *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476 (1964); *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1303 (Fed. Cir. 2006); *Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 244 F.3d 1365 (Fed. Cir. 2001); *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 909 F.2d 1464, 1469 (Fed. Cir. 1990); *Preemption Devices, Inc. v. Minn. Mining & Mfr. Co.*, 803 F.2d 1170, 1174 (Fed. Cir. 1986); *Commil USA, LLC v. Cisco Systems, Inc.*, 575 U.S. 632,

Yellow Highlight indicates changed or added language to a model instruction.
Strikethrough indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

1  642-46  (2015); *Global-Tech Appliances, Inc. et. al. v. SEB S.A.*, 563 U.S. 754, 768-70 (2011);

2  *Dynamic Data Techs., LLC v. Amlogic Holdings Ltd.*, No. 1:19-cv-1239-CFC, 2020 WL

3  4365809, at *5 (D. Del. July 30, 2020).

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

1    **DISPUTED INSTRUCTION NO. 13 RE WILLFUL INFRINGEMENT**

2    **OFFERED BY SONOS**

3    In this case, Sonos argues that Google willfully infringed the '966 patent.

4    To prove willful infringement, Sonos must persuade you that Google infringed a valid

5    claim of Sonos's patents.  The requirements for proving such infringement were discussed in my

6    prior instructions.

7    If you decide that Google has infringed any of the asserted claims of the '966 patent, you

8    must go on and address the additional issue of whether the infringement of those claims was

9    willful.  I am not asking you to decide whether Google's infringement of claim 1 of the '885

10   patent was willful.

11   Willfulness requires you to determine whether Sonos proved that it is more likely than not

12   that Google knew of the '966 patent and that the infringement by Google was intentional or

13   deliberate.  You must base your decision on Google's knowledge and actions at the time of

14   infringement.

15   You may not determine that the infringement was willful just because Google was aware

16   of the '966 patent and infringed it.  Instead, you must also find that Google deliberately infringed

17   the '966 patent or recklessly disregarded Sonos's patent rights.

18   To determine whether Google acted willfully, consider all facts and assess Google's

19   knowledge at the time of the challenged conduct.  Knowledge of a fact may be inferred where a

20   defendant intentionally blinds itself to that fact, because a person who knows enough to do so

21   effectively has knowledge of that fact.

22   Facts that may be considered include, but are not limited, to:

23   (1) Whether or not Google acted consistently with the standards of behavior for its

24   industry;

25   ~~(2) Whether Google intentionally copied a product of Sonos's that is covered by the []~~

26   ~~patent;~~

27   (2) Whether or not Google reasonably believed its products did not infringe or that the

28   patent was invalid at the time of the infringement; and

Yellow Highlight indicates changed or added language to a model instruction.
Strikethrough indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

1    (3) Whether or not Google made a good-faith effort to avoid infringing the Asserted

2    Patents, for example, whether Google attempted to design around the Asserted Patents.

3    (4) Whether or not Google tried to cover up its infringement.

4

5    *Fed. Cir. Bar Association Model Patent Jury Instructions B.3.10, Rev. May 2020*; *N.D.*

6    *Cal. Model Patent Jury Instructions* B.3.6., Rev. Aug. 2017 (updated Oct. 2019).

7    <u>Authorities</u>:

8    35 U.S.C. § 284; *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 103-06 (2016); *SRI Int'l, Inc.*

9    *v. Cisco Sys.*, 14 F.4th 1323, 1330 (Fed. Cir. 2021), *cert. denied*, 142 S. Ct. 2732 (2022); *Eko*

10   *Brands, LLC v. Adrian Rivera Maynez Enterprises, Inc.*, 946 F.3d 1367, 1378 (Fed. Cir. 2020);

11   *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011); *Intel Corp. Inv. Pol'y Comm.*

12   *v. Sulyma*, 140 S. Ct. 768, 779 (2020); *Unicolors, Inc. v. H&M Hennes & Mauritz, L. P.*, 142 S.

13   Ct. 941, 948 (2022); *Corephotonics, Ltd. v. Apple, Inc.*, No. 5:17-cv-06457-LHK, 2018 WL

14   4772340, at *9 (N.D. Cal. Oct. 1, 2018); *Dynamic Data Techs., LLC v. Amlogic Holdings Ltd.*,

15   No. 1:19-cv-1239-CFC, 2020 WL 4365809, at *5 (D. Del. July 30, 2020).

16

17

18

19

20

21

22

23

24

25

26

27

28

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

1    **DISPUTED INSTRUCTION NO. 13 RE WILLFUL INFRINGEMENT**

2    **OFFERED BY GOOGLE**

3    In this case, Sonos argues that Google willfully infringed the '966 patent.

4    To prove willful infringement, Sonos must first persuade you that Google infringed a

5    valid claim of ~~Sonos's~~ the '966 patents.  The requirements for proving such infringement were

6    discussed in my prior instructions.

7    I have already found that any infringement of Claim 1 of the '885 patent by Google was

8    not willful.  However, if you decide that Google's products infringe any of the asserted claims of

9    the '966 patent, you must go on and address the additional issue of whether the infringement of

10   those claims was willful.

11   Willfulness requires you to determine whether Sonos proved that it is more likely than not

12   that Google knew of the '966 patent and that the infringement by Google was intentional.  You

13   must base your decision on Google's knowledge and actions at the time of infringement.[11]

14   You may not determine that the infringement was willful just because Google was aware

15   of and infringed the '966 patent.  Instead, you must also find that Google deliberately infringed

16   the '966 patent.

17   To determine whether Google acted willfully, consider all facts and assess Google's

18   knowledge at the time of the challenged conduct.

19   Facts that may be considered include, but are not limited, to:

20   (1) Whether or not Google acted consistently with the standards of behavior for its

21   industry;

22   (2) Whether or not Google intentionally copied a product of Sonos that is covered by the

23   Asserted Patents;

24   (3) Whether or not Google reasonably believed its products did not infringe or that the

25   patent was invalid at the time of the infringement; and

26   (4) Whether or not Google made a good-faith effort to avoid infringing the Asserted

27

28   [11]   This sentence is drawn from *N.D. Cal. Model Patent Jury Instructions A.3, Rev. Aug. 2017 (updated Oct. 2019).*

==Yellow Highlight== indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

Patents, for example, whether Google attempted to design around the Asserted Patents; and

(5) Whether or not Google tried to cover up its infringement.


*Fed. Cir. Bar Association Model Patent Jury Instructions B.3.10, Rev. May 2020*; *N.D. Cal. Model Patent Jury Instructions* B.3.6., Rev. Aug. 2017 (updated Oct. 2019).

Authorities:

35 U.S.C. § 284; *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 103-06 (2016); *SRI Int'l, Inc. v. Cisco Sys.*, 14 F.4th 1323, 1330 (Fed. Cir. 2021), *cert. denied*, 142 S. Ct. 2732 (2022); *Eko Brands, LLC v. Adrian Rivera Maynez Enterprises, Inc.*, 946 F.3d 1367, 1378 (Fed. Cir. 2020); *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011); *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 140 S. Ct. 768, 779 (2020); *Unicolors, Inc. v. H&M Hennes & Mauritz, L. P.*, 142 S. Ct. 941, 948 (2022); *Corephotonics, Ltd. v. Apple, Inc.*, No. 5:17-cv-06457-LHK, 2018 WL 4772340, at *9 (N.D. Cal. Oct. 1, 2018); *Dynamic Data Techs., LLC v. Amlogic Holdings Ltd.*, No. 1:19-cv-1239-CFC, 2020 WL 4365809, at *5 (D. Del. July 30, 2020).

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

**DISPUTED INSTRUCTION NO. 14 RE INVALIDITY—BURDEN OF PROOF**

**OFFERED BY SONOS**

I will now instruct you on the rules you must follow in deciding whether or not Google has proven that any claim of the Asserted Patents is invalid. To prove that any claim of a patent is invalid, Google must persuade you by clear and convincing evidence, that is, you must be left with a clear conviction that the claim is invalid.

*Fed. Cir. Bar Association Model Patent Jury Instructions B.4.1, Rev. May 2020*

<u>Authorities</u>:

35 U.S.C. § 282; *Microsoft Corp. v. i4i Limited Partnership*, 564 U.S. 91, 110-11 (2011); *Schumer v. Lab. Computer Sys., Inc.*, 308 F.3d 1304, 1315 (Fed. Cir. 2002); *Buildex, Inc. v. Kason Indus., Inc.*, 849 F.2d 1461, 1463 (Fed. Cir. 1988); *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1375 (Fed. Cir. 1986).

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

## DISPUTED INSTRUCTION NO. 14 RE INVALIDITY—BURDEN OF PROOF

## OFFERED BY GOOGLE

I will now instruct you on the rules you must follow in deciding whether Google has proven that claims 1, 2, 4, 6, and 8 of the '966 patent or claim 1 of the '885 patent are invalid. ~~Before discussing the specific rules, I want to remind you about the standard of proof that applies to this defense. To prove invalidity of any patent claim, Google must persuade you that it is highly probable that the claim is invalid.~~ Patent invalidity is a defense to patent infringement. The issuance of a patent by the Patent Office provides a presumption that the patent is valid.

But the Patent Office sometimes issues invalid patent claims, and issued claims can be found invalid in court. In this case, you have the ultimate responsibility for deciding whether the claims of the patent are valid or invalid. In making your determination, you must consider the claims individually, as you did when you considered whether each claim was infringed. If clear and convincing evidence demonstrates that a claim of the patent fails to meet any requirement of the patent laws, then that claim is invalid.

During the course of this trial, Google has presented you with several prior art references. In general, prior art includes patents, publications, or items that were publicly used, offered for sale, or publicly known, that disclosed the alleged invention or elements of the alleged invention. To be prior art, the item or reference must have been on sale, used, published, patented, or otherwise made available to the public before the filing date of the patent.

The fact that any particular reference was or was not considered by the Patent Office does not change Google's burden of proof. However, in making your decision whether Google has demonstrated that a claim is invalid by clear and convincing evidence, you may consider whether Google has presented any materially new prior art references that the Patent Office had no opportunity to evaluate. Prior art that differs from the prior art considered by the PTO may carry more weight than the prior art that was considered ~~and may make the [alleged infringer's] burden of showing that it is highly probable that a patent claim is invalid easier to sustain.~~,[12] and

_____

[12]  *N.D. Cal. Model Patent Jury Instructions B.4.1a, Rev. Aug. 2017 (updated Oct. 2019)*

Yellow Highlight indicates changed or added language to a model instruction.
Strikethrough indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

1  Google's burden may be easier to meet if all material facts were not before the Patent Office

2  when it issued a patent.

3         I will now instruct you on the invalidity issues you should consider.

4         *Fed. Cir. Bar Association Model Patent Jury Instructions B.4.1, Rev. May 2020*; *N.D. Cal.*

5  *Model Patent Jury Instructions* B.4.1a, Rev. Aug. 2017 (updated Oct. 2019).

6  Authorities:

7  35 U.S.C. § 282; *Helsinn Healthcare S.A. v. Teva Pharms. USA, Inc.*, 139 S. Ct. 628 (2019);

8  *Microsoft Corp. v. i4i Limited Partnership*, 564 U.S. 91, 110-11 (2011); *Mendenhall v.*

9  *Cedarapids, Inc.*, 5 F.3d 1557, 1563–64 (Fed. Cir. 1993); *Schumer v. Lab. Computer Sys., Inc.*,

10  308 F.3d 1304, 1315 (Fed. Cir. 2002); *Buildex, Inc. v. Kason Indus., Inc.*, 849 F.2d 1461, 1463

11  (Fed. Cir. 1988); *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1375 (Fed. Cir.

12  1986).

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

1   **DISPUTED INSTRUCTION NO. 15 RE INVALIDITY—PERSPECTIVE OF ONE OF**

2   **ORDINARY SKILL IN THE ART**

3   **OFFERED BY SONOS**

4   The question of invalidity of a patent claim is determined from the perspective of a person

5   of ordinary skill in the art in the field of the invention ~~as of [the effective filing date of the~~

6   ~~patent(s)]~~ in the relevant timeframe. For the '885 and '966 patents, that timeframe is 2005. In

7   deciding the level of ordinary skill, you should consider all the evidence introduced at trial,

8   including:

9   (1) the levels of education and experience of persons working in the field;

10   (2) the types of problems encountered in the field; and

11   (3) the sophistication of the technology.

12   Sonos contends that the level of ordinary skill in the field was a person having the

13   equivalent of a four-year degree from an accredited institution (typically denoted as a B.S.

14   degree) in computer science, computer engineering, electrical engineering, or an equivalent

15   thereof, and approximately 2-4 years of professional experience in the fields of networking and

16   network-based systems or applications, such as consumer audio systems, or an equivalent level of

17   skill, knowledge, and experience.

18   Google contends that the level of ordinary skill in the field was a person having at least (a)

19   a bachelor's degree in computer science, computer engineering, electrical engineering, or an

20   equivalent thereof, and (b) at least 2-4 years of professional experience in the field of multimedia

21   playback systems, such as consumer audio systems, or an equivalent level of skill, knowledge,

22   and experience. Google further contends that additional education could substitute for work

23   experience and significant work experience could substitute for formal education.

24

25   *N.D. Cal. Model Patent Jury Instructions B.4.1b, Rev. Aug. 2017 (updated Oct. 2019)*.

26   Authorities:

27   35 U.S.C. § 103; *KSR Intern. Co. v. Teleflex, Inc.*, 550 U.S. 398, 421 (2007); *Graham v. John*

28   *Deere Co.*, 383 U.S. 1, 3 (1966).

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

1  **DISPUTED INSTRUCTION NO. 15 RE INVALIDITY—PERSPECTIVE OF ONE OF**

2  **ORDINARY SKILL IN THE ART**

3  **OFFERED BY GOOGLE**

4      The question of invalidity of a patent claim is determined from the perspective of a person

5  of ordinary skill in the art in the field of the alleged invention ~~as of [the effective filing date of the~~

6  ~~patent(s)]~~ in the relevant timeframe. For the '885 and '966 patents, that timeframe is between

7  December 2005 and September 2006.  In deciding the level of ordinary skill, you should consider

8  all the evidence introduced at trial, including:

9      (1) the levels of education and experience of persons working in the field;

10      (2) the types of problems encountered in the field; and

11      (3) the sophistication of the technology.

12      Sonos contends that the level of ordinary skill in the field was a person having the

13  equivalent of a four-year degree from an accredited institution (typically denoted as a B.S.

14  degree) in computer science, computer engineering, electrical engineering, or an equivalent

15  thereof, and approximately 2-4 years of professional experience in the fields of networking and

16  network-based systems or applications, such as consumer audio systems, or an equivalent level of

17  skill, knowledge, and experience.

18      Google contends that the level of ordinary skill in the field was a person having at least (a)

19  a bachelor's degree in computer science, computer engineering, electrical engineering, or an

20  equivalent thereof, and (b) at least 2-4 years of professional experience in the field of multimedia

21  playback systems, such as consumer audio systems, or an equivalent level of skill, knowledge,

22  and experience. Google further contends that additional education could substitute for work

23  experience and significant work experience could substitute for formal education.

24      *N.D. Cal. Model Patent Jury Instructions B.4.1b, Rev. Aug. 2017 (updated Oct. 2019)*

25  Authorities:

26  35 U.S.C. § 103; *KSR Intern. Co. v. Teleflex, Inc.*, 550 U.S. 398, 421 (2007); *Graham v. John*

27  *Deere Co.*, 383 U.S. 1, 3 (1966).

28

JOINT PROPOSED JURY INSTRUCTIONS
3:20-cv-06754-WHA

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

1  **DISPUTED INSTRUCTION NO. 16 RE INVALIDITY—PRIOR ART**

2  **OFFERED BY SONOS**

3  Google contends that the following is prior art to the '885 and '966 patents:

4  (i)  Sonos's own 2005 system ("Sonos 2005 System"), which is a system of Sonos

5  products available before September 12, 2005, and including at least one CR100

6  controller device and multiple ZP100 zone players;

7  (ii)  Sonos Forum posts (referred to as "Sonos Forums") which included posts publicly

8  available at least as of September 2005 on Sonos online forums;

9  (iii)  the Logitech / Squeezebox system ("Squeezebox System") represented by physical

10  Squeezebox players and documentation related to the operation of the Squeezebox

11  System available prior to November 14, 2005, and including source code dated

12  prior to September 12, 2005, as well as a system of virtual machines used to

13  emulate Squeezebox devices, also dated prior to November 14, 2005;

14  (iv)  the Bose Lifestyle 50 System (referred to as the "Bose System") available in 2003;

15  (v)  Canadian Patent No. 2 533 852 to Millington (referred to as "Millington")

16  published on February 10, 2005;

17  (vi)  U.S. Patent No. 7,571,014 to Lambourne et al. ("Lambourne");

18  (vii)  U.S. Patent No. 7,197,148 to Nourse et al. ("Nourse");

19  (viii)  the Crestron Adagio AES system available in 2005 ("Crestron System"); and

20  (ix)  the Yamaha DME system ("Yamaha System") available in 2004.[13]

21  You must determine whether the systems, patents, and publications discussed above are

22  prior art that can be considered in determining whether the asserted claims are anticipated or

23  obvious—concepts that I will explain shortly. There are different types of prior art, and I will

24  instruct you on the relevant types that you need to consider.

25  With respect to the '885 and '966 patents, Google contends that that the Sonos 2005

26  System, Sonos Forums, Squeezebox System, Bose System, Crestron System and Yamaha System

27  are prior art because it was known to or used by others in the United States or patented or

28

---

[13] Sonos reserves the right to amend this list according to the evidence presented at trial.

Yellow Highlight indicates changed or added language to a model instruction.
Strikethrough indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

1 described in a printed publication anywhere in the world before December 21, 2005. An invention

2 is known when the information about it was reasonably accessible to the public on that date. A

3 description is a "printed publication" only if it was publicly accessible.

4       In this case, you must determine the date of invention for claim 1 of the '885 patent and

5 the asserted claims of the '966 patent.  The date of invention is either when the invention was

6 reduced to practice or when conceived, provided the inventor(s) were diligent in reducing the

7 invention to practice. Diligence means working continuously, though not necessarily every day.

8 Conception is the mental part of an inventive act, i.e., the formation in the mind of the inventor of

9 a definite and permanent idea of the complete and operative invention as it is thereafter to be

10 applied in practice, even if the inventor did not know at the time that the invention would work.

11 Conception of an invention is complete when the idea is so clearly defined in the inventor's mind

12 that, if the idea were communicated to a person having ordinary skill in the field of the

13 technology, he or she would be able to reduce the invention to practice without undue research or

14 experimentation. This requirement does not mean that the inventor has to have a prototype built,

15 or actually explained her or his invention to another person. But, there must be some evidence

16 beyond the inventor's own testimony that confirms the date on which the inventor had the

17 complete idea. Conception may be proven when the invention is shown in its complete form by

18 drawings, disclosure to another person, or other forms of evidence presented at trial. A claimed

19 invention is "reduced to practice" when it has been constructed, used, or tested sufficiently to

20 show that it will work for its intended purpose or when the inventor files a patent application that

21 fully describes the invention.

22       Google must prove by clear and convincing evidence that the systems and publications

23 alleged as prior art are prior art.

24

25

26      *Fed. Cir. Bar Association Model Patent Jury Instructions B.4.3a-2, Rev. May 2020*

27 Authorities:

28      Pre-AIA 35 U.S.C. § 102(a)-(g); Pre-AIA 35 U.S.C. § 103(c); *Helsinn Healthcare S.A. v.*

Yellow Highlight indicates changed or added language to a model instruction.
Strikethrough indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

1  *Teva Pharm. USA, Inc.*, 139 S. Ct. 628, 634 (2019); *Teva Pharm. Indus. V. AstraZeneca Pharms.*,

2  661 F.3d 1378, 1383 (Fed. Cir. 2011); *Solvay S.A. v. Honeywell Int'l Inc.*, 622 F.3d 1367, 1376

3  (Fed. Cir. 2010); *In re Giacomini*, 612 F.3d 1380, 1383-84 (Fed. Cir. 2010); *Clock Spring, L.P. v.*

4  *Wrapmaster, Inc.*, 560 F.3d 1317, 1325 (Fed. Cir. 2009); *Finisar Corp. v. DirectTV Grp., Inc.*,

5  523 F.3d 1323, 1334 (Fed. Cir. 2008); *SRI Int'l, Inc. v. Internet Sec. Sys., Inc.*, 511 F.3d 1186,

6  1192 (Fed. Cir. 2008); *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1379-82 (Fed. Cir.

7  2005); *In re Klopfenstein*, 380 F.3d 1345, 1348-51 (Fed. Cir. 2004); *Toro Co. v. Deere & Co.*,

8  355 F.3d 1313, 1320-21 (Fed. Cir. 2004); *Schering Corp. v. Geneva Pharms., Inc.*, 339 F.3d

9  1373, 1377-80 (Fed. Cir. 2003); *Apotex U.S.A., Inc. v. Merck & Co.*, 254 F.3d 1031, 1035 (Fed.

10  Cir. 2001); *Mycogen Plant Sci., Inc. v. Monsanto Co.*, 243 F.3d 1316, 1330-31 (Fed. Cir. 2001);

11  *Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1367-70 (Fed. Cir. 2000); *Singh v. Brake*,

12  222 F.3d 1362, 1366-70 (Fed. Cir. 2000); *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1349 (Fed. Cir.

13  1998); *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1576-78 (Fed. Cir. 1997);

14  *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 78 F.3d 540, 545 (Fed. Cir. 1996); *In re Bartfeld*, 925

15  F.2d 1450, 1452-53 (Fed. Cir. 1991); *Ralston Purina Co. v. Far-Mar-Co, Inc.*, 772 F.2d 1570,

16  1574 (Fed. Cir. 1985); *Am. Stock Exch., LLC v. Mopex, Inc.*, 250 F. Supp. 2d 323, 328-32

17  (S.D.N.Y. 2003); *In re Wyer*, 655 F.2d 221, 226 (C.C.P.A. 1981); *Pfaff v. Wells Elecs. Inc.*, 525

18  U.S. 55, 67-68 (1998); *Helifix Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1346 (Fed. Cir. 2000);

19  *Abbott Labs. v. Geneva Pharms., Inc.*, 182 F.3d 1315, 1318 (Fed. Cir. 1999); *Finnigan Corp. v.*

20  *ITC*, 180 F.3d 1354, 1365 (Fed. Cir. 1999); *J.A. LaPorte, Inc. v. Norfolk Dredging Co.*, 787 F.2d

21  1577, 1581 (Fed. Cir. 1986); *In re Hall*, 781 F.2d 897, 898-99 (Fed. Cir. 1986); *D.L. Auld Co. v.*

22  *Chroma Graphics Corp.*, 714 F.2d 1144, 1147-50 (Fed. Cir. 1983).

23

24

25

26

27

28

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

## DISPUTED INSTRUCTION NO. 16 RE INVALIDITY—PRIOR ART

## OFFERED BY GOOGLE

In order for someone to be entitled to a patent, the alleged invention must actually be "new" and not obvious over what came before, which is referred to as the prior art. Prior art is considered in determining whether claims ~~[ ]~~ of ~~the [ ]~~ a patent were ~~are~~ anticipated or obvious. Prior art may include items that were publicly known or that have been used or offered for sale, or references, such as publications or patents, that disclose the claimed invention or elements of the claimed invention.

Google contends that the following is prior art to the '885 and '966 patents:

(i)     Sonos's own 2005 system ("Sonos 2005 System"), which is a system of Sonos products available before September 12, 2005, and including at least one CR100 controller device and multiple ZP100 zone players;

(ii)    Sonos Forum posts (referred to as "Sonos Forums") which included posts publicly available at least as of September 2005 on Sonos online forums;

(iii)   the Logitech / Squeezebox system ("Squeezebox System") represented by physical Squeezebox players and documentation related to the operation of the Squeezebox System available prior to November 14, 2005, and including source code dated prior to September 12, 2005, as well as a system of virtual machines used to emulate Squeezebox devices, also dated prior to November 14, 2005;

(iv)    the Bose Lifestyle 50 System (referred to as the "Bose System") available in 2003;

(v)     Canadian Patent No. 2 533 852 to Millington (referred to as "Millington") published on February 10, 2005;

(vi)    U.S. Patent No. 7,571,014 to Lambourne et al. ("Lambourne");

(vii)   U.S. Patent No. 7,197,148 to Nourse et al. ("Nourse");

(viii)  the Crestron Adagio AES system available in 2005 ("Crestron System"); and

(ix)    the Yamaha DME system ("Yamaha System") available in 2004.

You must determine whether the systems, patents, and publications discussed above are prior art that can be considered in determining whether the asserted claims are anticipated or

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

1  obvious—concepts that I will explain shortly. There are different types of prior art, and I will

2  instruct you on the relevant types that you need to consider.

3      Google contends that that the Sonos 2005 System, Sonos Forums, Squeezebox System,

4  Bose System, Crestron System and Yamaha System are prior art because they were known to or

5  used by others in the United States or patented or described in a printed publication anywhere in

6  the world before the priority date. An invention is known when the information about it was

7  reasonably accessible to the public on that date. A description is a "printed publication" only if it

8  was publicly accessible.

9      In this case, you must determine the date of invention for claim 1 of the '885 patent and

10  the asserted claims of the '966 patent.  The date of invention is either when the invention was

11  reduced to practice or when conceived, provided the inventor(s) were diligent in reducing the

12  invention to practice. Diligence means working continuously, though not necessarily every day.

13  Conception is the mental part of an inventive act, i.e., the formation in the mind of the inventor of

14  a definite and permanent idea of the complete and operative invention as it is thereafter to be

15  applied in practice, even if the inventor did not know at the time that the invention would work.

16  Conception of an invention is complete when the idea is so clearly defined in the inventor's mind

17  that, if the idea were communicated to a person having ordinary skill in the field of the

18  technology, he or she would be able to reduce the invention to practice without undue research or

19  experimentation. This requirement does not mean that the inventor has to have a prototype built,

20  or actually explained her or his invention to another person. But, there must be some evidence

21  beyond the inventor's own testimony that confirms the date on which the inventor had the

22  complete idea. Conception may be proven when the invention is shown in its complete form by

23  drawings, disclosure to another person, or other forms of evidence presented at trial. A claimed

24  invention is "reduced to practice" when it has been constructed, used, or tested sufficiently to

25  show that it will work for its intended purpose or when the inventor files a patent application that

26  fully describes the invention.

27      Google must prove by clear and convincing evidence that the systems and publications

28  alleged as prior art are prior art.

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

1

2      *Fed. Cir. Bar Association Model Patent Jury Instructions B.4.3a-1, B.4.3a-2, Rev. May*

3 *2020*

4 Authorities:

5 Pre-AIA 35 U.S.C. § 102(a)-(g); Pre-AIA 35 U.S.C. § 103(c); *Helsinn Healthcare S.A. v. Teva*

6 *Pharm. USA, Inc.*, 139 S. Ct. 628, 634 (2019); *Teva Pharm. Indus. V. AstraZeneca Pharms.*, 661

7 F.3d 1378, 1383 (Fed. Cir. 2011); *Solvay S.A. v. Honeywell Int'l Inc.*, 622 F.3d 1367, 1376 (Fed.

8 Cir. 2010); *In re Giacomini*, 612 F.3d 1380, 1383-84 (Fed. Cir. 2010); *Clock Spring, L.P. v.*

9 *Wrapmaster, Inc.*, 560 F.3d 1317, 1325 (Fed. Cir. 2009); *Finisar Corp. v. DirectTV Grp., Inc.*,

10 523 F.3d 1323, 1334 (Fed. Cir. 2008); *SRI Int'l, Inc. v. Internet Sec. Sys., Inc.*, 511 F.3d 1186,

11 1192 (Fed. Cir. 2008); *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1379-82 (Fed. Cir.

12 2005); *In re Klopfenstein*, 380 F.3d 1345, 1348-51 (Fed. Cir. 2004); *Toro Co. v. Deere & Co.*,

13 355 F.3d 1313, 1320-21 (Fed. Cir. 2004); *Schering Corp. v. Geneva Pharms., Inc.*, 339 F.3d

14 1373, 1377-80 (Fed. Cir. 2003); *Apotex U.S.A., Inc. v. Merck & Co.*, 254 F.3d 1031, 1035 (Fed.

15 Cir. 2001); *Mycogen Plant Sci., Inc. v. Monsanto Co.*, 243 F.3d 1316, 1330-31 (Fed. Cir. 2001);

16 *Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1367-70 (Fed. Cir. 2000); *Singh v. Brake*,

17 222 F.3d 1362, 1366-70 (Fed. Cir. 2000); *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1349 (Fed. Cir.

18 1998); *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1576-78 (Fed. Cir. 1997);

19 *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 78 F.3d 540, 545 (Fed. Cir. 1996); *In re Bartfeld*, 925

20 F.2d 1450, 1452-53 (Fed. Cir. 1991); *Ralston Purina Co. v. Far-Mar-Co, Inc.*, 772 F.2d 1570,

21 1574 (Fed. Cir. 1985); *Am. Stock Exch., LLC v. Mopex, Inc.*, 250 F. Supp. 2d 323, 328-32

22 (S.D.N.Y. 2003); *In re Wyer*, 655 F.2d 221, 226 (C.C.P.A. 1981); *Pfaff v. Wells Elecs. Inc.*, 525

23 U.S. 55, 67-68 (1998); *Helifix Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1346 (Fed. Cir. 2000);

24 *Abbott Labs. V. Geneva Pharms., Inc.*, 182 F.3d 1315, 1318 (Fed. Cir. 1999); *Finnigan Corp. v.*

25 *ITC*, 180 F.3d 1354, 1365 (Fed. Cir. 1999); *J.A. LaPorte, Inc. v. Norfolk Dredging Co.*, 787 F.2d

26 1577, 1581 (Fed. Cir. 1986); *In re Hall*, 781 F.2d 897, 898-99 (Fed. Cir. 1986); *D.L. Auld Co. v.*

27 *Chroma Graphics Corp.*, 714 F.2d 1144, 1147-50 (Fed. Cir. 1983).

28

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

1    **DISPUTED INSTRUCTION NO. 17 RE INVALIDITY—STATUTORY BAR[14]**

2    **OFFERED BY SONOS**

---

[14] Sonos objects to any instruction and separately objects to Google's insertion of "alleged" prior to invention, for the reasons explained in Sonos's Memorandum of Law Regarding Disputed Jury Instructions.

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

## DISPUTED INSTRUCTION NO. 17 RE INVALIDITY—STATUTORY BAR

## OFFERED BY GOOGLE

A patent claim is invalid if the patent application was not filed within the time required by law. This is called a "statutory bar." For a patent claim to be invalid by a statutory bar, all of its requirements must have been present in one prior art reference dated more than one year before the patent application was filed. Google asserts that the foregoing references and systems qualify as prior art under the law. Here is a list of ways Google can show that the patentee lost the right to patent the claims of the '885 and '966 patents:

– if the alleged invention was already patented or described in a printed publication anywhere in the world before September 12, 2005. A reference is a "printed publication" if it is accessible to those interested in the field, even if it is difficult to find;

– if the alleged invention was already being used in the United States before September 12, 2005, and that use was not primarily an experimental use (a) controlled by the inventor, and (b) to test whether the invention worked for its intended purpose;

– if the alleged invention was already being commercially used by the inventor in the United States before September 12, 2005;

– if a device or method using the alleged invention was sold or offered for sale in the United States, and that alleged invention was ready for patenting, before September 12, 2005. The alleged invention is ready for patenting if it was actually built, or if the inventor had prepared drawings or other descriptions of the alleged invention that were sufficiently detailed to enable a person of ordinary skill in the field to make and use the alleged invention based on them;

For a claim to be invalid because of a statutory bar, all of the claimed requirements must have been either (1) disclosed in a single prior art reference, (2) implicitly disclosed in a reference to one skilled in the field, or (3) must have been present in the reference, whether that was understood at the time. The disclosure in a reference does not have to be in the same words as the claim, but all the requirements must be there, either described in enough detail or necessarily implied, to enable someone of ordinary skill in the field of multimedia playback systems, such as consumer audio systems, looking at the reference to make and use the alleged invention.

==Yellow Highlight== indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

*N.D. Cal. Model Patent Jury Instructions. B.4.3a2, Rev. Aug. 2017 (updated Oct. 2019)*

<u>Authorities</u>:  35 U.S.C. § 102(b) and (d); *Pfaff v. Wells Elec. Inc.*, 525 U.S. 55 (1998); *Schering Corp. v. Geneva Pharms*., 339 F.2d 1273 (Fed Cir. 2003); *Helifix Ltd. v. Blok-Lok, Ltd.,* 208 F.3d 1339, 1346 (Fed. Cir. 2000); *Abbot Labs. V. Geneva Pharms., Inc*., 182 F.3d 1315, 1318 (Fed. Cir. 1999); Finnigan Corp. v. Int'l Trade Comm'n, 180 F.3d 1354 (Fed. Cir. 1999); J.*A. LaPorte, Inc. v. Norfolk Dredging Co.*, 787 F.2d 1577, 1581 (Fed. Cir. 1986); *In re Hall*, 781 F.2d 897, 898-99 (Fed. Cir. 1986); *D.L. Auld Co. v. Chroma Graphics Corp.*, 714 F.2d 1144, 1150 (Fed. Cir. 1983); *Metallizing Eng'g Co. v. Kenyon Bearing & Auto Parts Co.*, 153 F.2d 516 (2d Cir. 1946*); Invitrogen Corp. v. Biocrest Mfg., L.P.,* 424 F.3d 1374, 1382-83 (Fed. Cir. 2005).

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

**DISPUTED INSTRUCTION NO. 18 RE INVALIDITY—ANTICIPATION**

**OFFERED BY SONOS**

In order for someone to be entitled to a patent, the invention must actually be "new." Google contends that the claim 1 of the '885 patent is invalid because the claimed invention is anticipated.  Google must convince you of this by clear and convincing evidence ~~i.e., that the evidence highly probably~~ to prove that the claim is invalid.

Specifically, Google contends that the following piece of prior art anticipates claim 1 of the '885 patent: the Squeezebox System.

Anticipation must be determined on a claim-by-claim basis.  Google must prove by clear and convincing evidence that all of the requirements of a claim are present in a single piece of prior art. To anticipate the invention, the prior art does not have to use the same words as the claim, but all of the requirements of the claim must have been disclosed and arranged as in the claim.  The claim requirements may either be disclosed expressly or inherently—that is, necessarily implied—such that a person having ordinary skill in the art in the technology of the invention, looking at that one reference, could make and use the claimed invention.

Where Google is relying on prior art that was not considered by the PTO during examination, you may consider whether that prior art is significantly different and more relevant than the prior art that the PTO did consider. If you decide it is different and more relevant, you may weigh that prior art more heavily when considering whether the challenger has carried its clear-and-convincing burden of proving invalidity.[15]

*Fed. Cir. Bar Association Model Patent Jury Instructions B.4.3b-1, Rev. May 2020*

Authorities:

*Fed. Cir. Bar Association Model Patent Jury Instructions B.4.1, Rev. May 2020* (citations omitted); Pre-AIA 35 U.S.C. § 102(a)-(g); *Monsanto Tech. LLC v. E.I. DuPont de Nemours & Co.*, 878 F.3d 1336, 1343 (Fed. Cir. 2018); *Finisar Corp. v. DirectTV Grp., Inc.*, 523 F.3d 1323, 1334 (Fed. Cir. 2008); *Net MoneyIN, Inc. v. Verisign, Inc.*, 545 F.3d 1359, 1369-70 (Fed. Cir.

---

[15] Sonos objects to this paragraph if and only if the Court also gives Google's proposed parallel instruction as part of Disputed Instruction No. 14.

Yellow Highlight indicates changed or added language to a model instruction.
Strikethrough indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

2008).

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

## DISPUTED INSTRUCTION NO. 18 RE INVALIDITY—ANTICIPATION

## OFFERED BY GOOGLE

In order for someone to be entitled to a patent, the invention must actually be "new." Google contends that the asserted claim 1 of the '885 patent is invalid because the claimed invention is anticipated ~~or because [patent holder] lost the right to obtain a patent~~.  Google must convince you of this by clear and convincing evidence. ~~i.e., that the evidence highly probably that the claims are invalid~~.

Specifically, Google contends that the following piece of prior art anticipate claim 1 of the '885 patent: the Squeezebox System.

Anticipation must be determined on a claim-by-claim basis.  Google must prove by clear and convincing evidence that all of the requirements of a claim are present in a single piece of prior art. To anticipate the invention, the prior art does not have to use the same words as the claim, but all of the requirements of the claim must have been disclosed and arranged as in the claim.  The claim requirements may either be disclosed expressly or inherently—that is, necessarily implied—such that a person having ordinary skill in the art in the technology of the invention, looking at that one reference, could make and use the claimed invention.

Where Google is relying on prior art that was not considered by the PTO during examination, you may consider whether that prior art is significantly different and more relevant than the prior art that the PTO did consider. If you decide it is different and more relevant, you may weigh that prior art more heavily when considering whether the challenger has carried its clear-and-convincing burden of proving invalidity.

*Fed. Cir. Bar Association Model Patent Jury Instructions B.4.3b-1, Rev. May 2020*

<u>Authorities</u>:

*Fed. Cir. Bar Association Model Patent Jury Instructions B.4.1, Rev. May 2020* (citations omitted);  Pre-AIA 35 U.S.C. § 102(a)-(g); *Monsanto Tech. LLC v. E.I. DuPont de Nemours & Co.*, 878 F.3d 1336, 1343 (Fed. Cir. 2018); *Finisar Corp. v. DirectV Grp., Inc.*, 523 F.3d 1323, 1334 (Fed. Cir. 2008); *Net MoneyIN, Inc. v. Verisign, Inc.*, 545 F.3d 1359, 1369-70 (Fed. Cir. 2008).

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

1
### DISPUTED INSTRUCTION NO. 19 RE INVALIDITY—OBVIOUSNESS

2
### OFFERED BY SONOS

3   Google also contends that the asserted claims of the asserted patents are invalid because

4   the alleged inventions are obvious.  Not all innovations are patentable. A patent claim is invalid if

5   the claimed invention would have been obvious to a person of ordinary skill in the field at the

6   time the claimed invention was made. With respect to the '885 and the '966 patents, Sonos

7   contends that it conceived of the alleged invention on December 21, 2005, but Google contends

8   that Sonos is not entitled to an invention date before September 12, 2006.

9        This means that even if all of the requirements of the claim cannot be found in a single

10   prior art reference that would anticipate the claim or constitute a statutory bar to that claim, a

11   person of ordinary skill in the field who knew about all this prior art would have come up with the

12   invention.

13        The ultimate conclusion of whether a claim is obvious should be based upon your

14   determination of several factual decisions.

15        First, you must decide the level of ordinary skill in the field that someone would have had

16   at the time the claimed invention was made.  I instructed you earlier about the level of ordinary

17   skill.  ~~In deciding the level of ordinary skill, you should consider all the evidence introduced at~~

18   ~~trial, including:~~

19        ~~(1) the levels of education and experience of persons working in the field;~~

20        ~~(2) the types of problems encountered in the field; and~~

21        ~~(3) the sophistication of the technology.~~

22        Second, you must decide the scope and content of the prior art. Sonos and Google

23   disagree as to whether the Sonos 2005 System, Sonos Forums, Squeezebox System, Bose System,

24   Crestron System, and Yamaha System should be included in the prior art you use to decide the

25   validity of claim 1 of the '885 patent and the asserted claims of the '966 patent.  In order to be

26   considered as prior art to the asserted patents, references must be reasonably related to the

27   claimed invention of that patent. A reference is reasonably related if it is in the same field as the

28   claimed invention or is from another field to which a person of ordinary skill in the field would

Yellow Highlight indicates changed or added language to a model instruction.
Strikethrough indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

1    look to solve a known problem.

2          Third, you must decide what difference, if any, existed between the claimed invention and

3    the prior art.

4          Finally, you should consider any of the following factors that you find have been shown

5    by the evidence:

6          (1) commercial success of a product due to the merits of the claimed invention;

7          (2) a long felt need for the solution provided by the claimed invention;

8          (3) unsuccessful attempts by others to find the solution provided by the claimed invention;

9          (4) copying of the claimed invention by others;

10         (4) unexpected and superior results from the claimed invention;

11         (5) acceptance by others of the claimed invention as shown by praise from others in the

12   field or from the licensing of the claimed invention;

13         (6) other evidence tending to show nonobviousness;

14         (7) independent invention of the claimed invention by others before or at about the same

15   time as the named inventor thought of it; and;

16         (8) other evidence tending to show obviousness.

17         In order for you to determine that a particular patent claim is proved obvious, Google

18   must show, by clear and convincing evidence, that at the time of invention a person skilled in the

19   art could have actually made and used the claimed invention, without undue experimentation.

20   This is referred to as "enabling" the claimed invention.

21         A patent claim composed of several elements is not proved obvious merely by

22   demonstrating that each of its elements was independently known in the prior art. In evaluating

23   whether such a claim would have been obvious, you may consider whether Google has identified

24   a reason that would have prompted a person of ordinary skill in the field to combine the elements

25   or concepts from the prior art in the same way as in the claimed invention. There is no single way

26   to define the line between true inventiveness on the one hand (which is patentable) and the

27   application of common sense and ordinary skill to solve a problem on the other hand (which is

28   not patentable). For example, market forces or other design incentives may be what produced a

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

1   change, rather than true inventiveness. You may consider whether an inventor would look to the

2   prior art to help solve the particular problem at hand. You may consider whether the change was

3   merely the predictable result of using prior art elements according to their known functions, or

4   whether it was the result of true inventiveness. You may also consider whether there is some

5   teaching or suggestion in the prior art to make the modification or combination of elements

6   claimed in the patent. Also, you may consider whether the innovation applies a known technique

7   that had been used to improve a similar device or method in a similar way. You may also consider

8   whether the claimed invention would have been obvious to try, meaning that the claimed

9   innovation was one of a relatively small number of possible approaches to the problem with a

10   reasonable expectation of success by those skilled in the art. However, you must be careful not to

11   determine obviousness using the benefit of hindsight; many true inventions might seem obvious

12   after the fact. You should put yourself in the position of a person of ordinary skill in the field at

13   the time the claimed invention was made and you should not consider what is known today or

14   what is learned from the teaching of the patent.

15

16

17       *N.D. Cal. Model Patent Jury Instructions B.4.3b—Alternative 2, Rev. Aug. 2017 (updated*

18   *Oct. 2019)*

19   Authorities:

20   35 U.S.C. § 103; *Graham v. John Deere Co.*, 383 U.S. 1 (1966); *KSR Intern. Co. v. Teleflex, Inc.*,

21   550 U.S. 398, 407 (2007); *Circuit Check v. QXQ Inc.*, 795 F.3d 1331, 1335 (Fed. Cir. 2015); *Ruiz*

22   *v. A.B. Chance Co.*, 234 F.3d 654 (Fed. Cir. 2000); *Arkie Lures, Inc. v. Gene Larew Tackle, Inc.*,

23   119 F.3d 953, 957 (Fed. Cir. 1997); *Specialty Composites v. Cabot Corp.*, 845 F.2d 981, 991

24   (Fed. Cir. 1988); *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1000 (Fed. Cir. 1986);

25   *Pentec. Inc. v. Graphic Controls Corp.*, 776 F.2d 309, 313 (Fed. Cir. 1985). *See Novo Nordisk*

26   *A/S v. Becton Dickinson & Co.*, 304 F.3d 1216, 1219-20 (Fed. Cir. 2002); *Wang Labs. v. Toshiba*

27   *Corp.*, 993 F.2d 858, 864 (Fed. Cir. 1993); *Daiichi Sankyo Co. v. Apotex, Inc.*, 501 F.3d. 1254,

28   1256 (Fed. Cir. 2007); *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120,

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

1125 (Fed. Cir. 2000); *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1355 (Fed. Cir. 2000); *Ryko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 718-19 (Fed. Cir. 1991); *Raytheon Techs. Corp. v. Gen. Elec. Co.*, 993 F.3d 1374, 1376-77, 1379-82 (Fed. Cir. 2021); *Geo. M. Martin Co. v. All. Mach. Sys. Int'l LLC*, 618 F.3d 1294, 1303 (Fed. Cir. 2010); *Minnesota Min. & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1306 (Fed. Cir. 2002).

==Yellow Highlight== indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

1
## DISPUTED INSTRUCTION NO. 19 RE INVALIDITY—OBVIOUSNESS

2
## OFFERED BY GOOGLE

3
Google also contends that the asserted claims of the asserted patents are invalid because

4
the alleged inventions are obvious. Not all innovations are patentable. A patent claim is invalid if

5
the claimed invention would have been obvious to a person of ordinary skill in the field at the

6
time the claimed invention was made. This means that even if all of the requirements of the claim

7
cannot be found in a single prior art reference that would anticipate the claim or constitute a

8
statutory bar to that claim, a person of ordinary skill in the field who knew about all this prior art

9
would have come up with the alleged invention. With respect to the '885 and the '966 patents,

10
Sonos contends that it conceived of the alleged invention on December 21, 2005, but Google

11
contends that Sonos is not entitled to an invention date before September 12, 2006.

12
The ultimate conclusion of whether a claim is obvious should be based upon your

13
determination of several factual decisions.

14
First, you must decide the level of ordinary skill in the field that someone would have had

15
at the time the alleged invention was made. I instructed you earlier about the level of ordinary

16
skill. ~~In deciding the level of ordinary skill, you should consider all the evidence introduced at~~

17
~~trial, including:~~

18
~~(1) the levels of education and experience of persons working in the field;~~

19
~~(2) the types of problems encountered in the field; and~~

20
~~(3) the sophistication of the technology.~~

21
Second, you must decide the scope and content of the prior art. Sonos and Google

22
disagree as to whether the Sonos 2005 System, Sonos Forums, Squeezebox System, Bose System,

23
Crestron System, and Yamaha System should be included in the prior art you use to decide the

24
validity of claim 1 of the '885 patent and the asserted claims of the '966 patent. In order to be

25
considered as prior art to the asserted patents, these references must be reasonably related to the

26
alleged invention of that patent. A reference is reasonably related if it is in the same field as the

27
alleged invention or is from another field to which a person of ordinary skill in the field would

28
look to solve a known problem.

Yellow Highlight indicates changed or added language to a model instruction.
Strikethrough indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

1  Third, you must decide what difference, if any, existed between the alleged invention and

2  the prior art.

3  Finally, you should consider any of the following factors that you find have been shown

4  by the evidence:

5  (1) commercial success of a product due to the merits of the alleged invention;

6  (2) a long felt need for the solution provided by the alleged invention;

7  (3) unsuccessful attempts by others to find the solution provided by the alleged invention;

8  (4) copying of the claimed invention by others;

9  (4) unexpected and superior results from the alleged invention;

10  (5) acceptance by others of the alleged invention as shown by praise from others in the

11  field or from the licensing of the claimed invention;

12  (6) other evidence tending to show nonobviousness;

13  (7) independent invention of the alleged invention by others before or at about the same

14  time as the named inventor thought of it; and

15  (8) other evidence tending to show obviousness.

16  A patent claim composed of several elements is not proved obvious merely by

17  demonstrating that each of its elements was independently known in the prior art. In evaluating

18  whether such a claim would have been obvious, you may consider whether Google has identified

19  a reason that would have prompted a person of ordinary skill in the field to combine the elements

20  or concepts from the prior art in the same way as in the alleged invention. There is no single way

21  to define the line between true inventiveness on the one hand (which is patentable) and the

22  application of common sense and ordinary skill to solve a problem on the other hand (which is

23  not patentable). For example, market forces or other design incentives may be what produced a

24  change, rather than true inventiveness. You may consider whether an inventor would look to the

25  prior art to help solve the particular problem at hand. You may consider whether the change was

26  merely the predictable result of using prior art elements according to their known functions, or

27  whether it was the result of true inventiveness. You may also consider whether there is some

28  teaching or suggestion in the prior art to make the modification or combination of elements

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

claimed in the patent. Also, you may consider whether the innovation applies a known technique

that had been used to improve a similar device or method in a similar way. You may also consider

whether the alleged invention would have been obvious to try, meaning that the alleged

innovation was one of a relatively small number of possible approaches to the problem with a

reasonable expectation of success by those skilled in the art. However, you must be careful not to

determine obviousness using the benefit of hindsight; many true inventions might seem obvious

after the fact. You should put yourself in the position of a person of ordinary skill in the field at

the time the alleged invention was made and you should not consider what is known today or

what is learned from the teaching of the patent.

*N.D. Cal. Model Patent Jury Instructions B.4.3b—Alternative 2, Rev. Aug. 2017 (updated Oct. 2019)*

Authorities:

35 U.S.C. § 103; *Graham v. John Deere Co.*, 383 U.S. 1 (1966); *KSR Intern. Co. v. Teleflex, Inc.*, 550 U.S. 398, 407 (2007); *Circuit Check v. QXQ Inc.*, 795 F.3d 1331, 1335 (Fed. Cir. 2015); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654 (Fed. Cir. 2000); *Arkie Lures, Inc. v. Gene Larew Tackle, Inc.*, 119 F.3d 953, 957 (Fed. Cir. 1997); *Specialty Composites v. Cabot Corp.*, 845 F.2d 981, 991 (Fed. Cir. 1988); *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1000 (Fed. Cir. 1986); *Pentec. Inc. v. Graphic Controls Corp.*, 776 F.2d 309, 313 (Fed. Cir. 1985). *See Novo Nordisk A/S v. Becton Dickinson & Co.*, 304 F.3d 1216, 1219-20 (Fed. Cir. 2002); *Wang Labs. v. Toshiba Corp.*, 993 F.2d 858, 864 (Fed. Cir. 1993); *Daiichi Sankyo Co. v. Apotex, Inc.*, 501 F.3d. 1254, 1256 (Fed. Cir. 2007); *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1125 (Fed. Cir. 2000); *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1355 (Fed. Cir. 2000); *Ryko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 718-19 (Fed. Cir. 1991); *Raytheon Techs. Corp. v. Gen. Elec. Co.*, 993 F.3d 1374, 1376-77, 1379-82 (Fed. Cir. 2021); *Geo. M. Martin Co. v. All. Mach. Sys. Int'l LLC*, 618 F.3d 1294, 1303 (Fed. Cir. 2010); *Minnesota Min. & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1306 (Fed. Cir. 2002).

Yellow Highlight indicates changed or added language to a model instruction.
Strikethrough indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

1

**DISPUTED INSTRUCTION NO. 20 RE INVALIDITY—DERIVATION[16]**

2

**OFFERED BY SONOS**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[16] Sonos objects to any instruction and separately objects to Google's insertion of "alleged" prior
to invention for the reasons explained in Sonos's Memorandum of Law Regarding Disputed
Jury Instructions.

Yellow Highlight indicates changed or added language to a model instruction.
Strikethrough indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

**DISPUTED INSTRUCTION NO. 20 RE INVALIDITY—DERIVATION**

**OFFERED BY GOOGLE**

Google contends that the claim 1 of the '885 patent and the asserted claims of the '966 patent are invalid for derivation.  A patent claim is invalid if the named inventors on the patent did not themselves invent the subject matter of the claim, but rather derived it from another.

Google alleges that the asserted claims of the '885 and '966 patents are invalid because the named inventors of those patents did not invent the subject matter of those claims, but rather derived it from Sonos's users' suggestions on the Sonos Forums. In order to prevail, Google must prove, by clear and convincing evidence, that: (1) an individual other than the named inventors conceived of the subject matter of the alleged invention before the named inventors; and (2) an individual communicated the entire conception of the alleged invention to the named inventors before the named inventors invented it in such detail that it would enable one of ordinary skill in the art to make the invention. Conception is the formation, in the mind of the inventor, of a definite and permanent idea of a complete and operative invention. Conception is not complete until the idea is so clearly defined that only ordinary skill would be necessary to reduce the invention to practice, without extensive research or experimentation.

Authorities:

*Intellectual Ventures LLC v. Canon Inc.*, No. 1:11-cv-00792-SLR, Dkt. 289 at 29 (D. Del. May 2, 2014); 35 U.S.C. § 102(f) (2006).

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

1
2

**DISPUTED INSTRUCTION NO. 21 RE DAMAGES—BURDEN OF PROOF**

**OFFERED BY SONOS**

3    I will now instruct you about the measure of damages. By instructing you on damages, I

4    am not suggesting which party should win on any issue. ~~If you find~~ Since I have already found

5    that prior versions of Google's accused media players infringe Claim 1 of the '885 patent, if you

6    find that Google failed to prove by clear and convincing evidence that claim 1 of the '885 patent

7    is invalid, you must then determine the amount of money damages to be awarded to Sonos to

8    compensate it for the infringement. Similarly, if you find that any asserted claim of the '966

9    patent is both infringed and not invalid, you must then determine the amount of money damages

10   to be awarded to Sonos to compensate it for the infringement.

11   The amount of those damages must be adequate to compensate Sonos for the

12   infringement. A damages award should put the patent holder in approximately the financial

13   position it would have been in had the infringement not occurred, but in no event may the

14   damages award be less than a reasonable royalty. You should keep in mind that the damages you

15   award are meant to compensate the patent holder and not to punish an infringer.

16   Sonos has the burden to persuade you of the amount of its damages. You should award

17   only those damages that Sonos more likely than not suffered. While Sonos is not required to

18   prove its damages with mathematical precision, it must prove them with reasonable certainty.

19   Sonos is not entitled to damages that are remote or speculative.

20

21   *N.D. Cal. Model Patent Jury Instructions B.5.1, Rev. Aug. 2017 (updated Oct. 2019)*

22   Authorities:

23   35 U.S.C. § 284; *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381-82 (Fed. Cir. 2003);

24   *Grain Processing Corp. v. American Maize-Prod. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999);

25   *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-09 (Fed. Cir. 1996); *Lucent Techs., Inc. v.*

26   *Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009); *Ericsson v. D-Link Sys., Inc.*, 773 F.3d

27   1201, 1230-32 (Fed. Cir. 2014).

28

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

## DISPUTED INSTRUCTION NO. 21 RE DAMAGES—BURDEN OF PROOF

## OFFERED BY GOOGLE

I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win on any issue. ~~If you find Google infringed any valid claim of the [  ] patent,~~ Since I have already found that prior versions of the '885 Accused Products meet the limitations of claim 1 of the '885 patent, if you also find that claim 1 of the '885 patent is not invalid, you must then determine the amount of money damages to be awarded to Sonos to compensate it for the infringement. Similarly, if you find that any asserted claim of the '966 patent is both infringed and not invalid, you must then determine the amount of money damages to be awarded to Sonos to compensate it for the infringement.

The amount of those damages must be adequate to compensate Sonos for the infringement. A damages award should put the patent holder in approximately the financial position it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty. You should keep in mind that the damages you award are meant to compensate the patent holder and not to punish an infringer.

Sonos has the burden to persuade you of the amount of its damages. You should award only those damages that Sonos more likely than not suffered. While Sonos is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty. Sonos is not entitled to damages that are remote or speculative.


*N.D. Cal. Model Patent Jury Instructions B.5.1, Rev. Aug. 2017 (updated Oct. 2019)*

<u>Authorities</u>:

35 U.S.C. § 284; *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381-82 (Fed. Cir. 2003); *Grain Processing Corp. v. American Maize-Prod. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-09 (Fed. Cir. 1996); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009); *Ericsson v. D-Link Sys., Inc.*, 773 F.3d 1201, 1230-32 (Fed. Cir. 2014).

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

1

**STIPULATED INSTRUCTION NO. 22 RE**

2

**DATE OF COMMENCEMENT OF DAMAGES**

3

~~Damages that [patent holder] may be awarded by you commence on the date that [alleged~~

4

~~infringer] has both infringed and been notified of the [ ] patent.~~ Sonos and Google agree that any

5

damages for infringement of the '885 patent begin on November 24, 2020 and any damages for

6

infringement of the '966 patent begin on November 5, 2019.

7

8

*N.D. Cal. Model Patent Jury Instructions B.5.9, Rev. Aug. 2017 (updated Oct. 2019)*

9

Authorities:

10

35 U.S.C. § 287; *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d

11

1336 (Fed. Cir. 2001); *Nike Inc. v. Wal-Mart Stores*, 138 F.3d 1437, 1443-44 (Fed. Cir. 1998);

12

*Maxwell v. Baker, Inc.*, 86 F.3d 1098, 1111-12 (Fed. Cir. 1996); *American Med. Sys. v. Medical*

13

*Eng'g Corp.*, 6 F.3d 1523, 1534 (Fed. Cir. 1993); *Devices for Med., Inc. v. Boehl*, 822 F.2d 1062,

14

1066 (Fed. Cir. 1987).

15

16

17

18

19

20

21

22

23

24

25

26

27

28

66

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

1    **DISPUTED INSTRUCTION NO. 23 RE REASONABLE ROYALTY—DEFINITION**

2    **OFFERED BY SONOS**

3    If you find that claim 1 of the '885 patent is not invalid, Sonos is entitled to a reasonable

4    royalty to compensate it for Google's infringement of claim 1.  If you find that any asserted claim

5    of the '966 patent is both infringed and not invalid, Sonos is entitled to a reasonable royalty to

6    compensate it for Google's infringement of that patent claim.

7    A royalty is a payment made to a patent holder in exchange for the right to make, use, or

8    sell the claimed invention. This right is called a "license." A reasonable royalty is the payment for

9    the license that would have resulted from a hypothetical negotiation between Sonos and Google

10    taking place at the time when the infringing activity first began. In considering the nature of this

11    negotiation, you must assume that both parties would have acted reasonably and would have

12    entered into a license agreement. You must also assume that both parties believed the patent was

13    valid and infringed. Your role is to determine what the result of that negotiation would have been.

14    The test for damages is what royalty would have resulted from the hypothetical negotiation and

15    not simply what either party would have preferred.

16    A royalty can be calculated in several different ways and it is for you to determine which

17    way is the most appropriate based on the evidence you have heard. You should consider all the

18    facts known and available to the parties at the time the infringement began.[17]

19    In determining the amount of a reasonable royalty, you may consider evidence on any of

20    the following factors, in addition to any other evidence presented by the parties on the economic

21    value of the patent.[18] It will be up to you to determine which factors may or may not be relevant

22    to this case. These factors are:[19]

23       • The royalties received by Sonos for the licensing of the patent in suit, proving or tending
           to prove an established royalty.

24

---

25  [17] This paragraph and the preceding paragraph are drawn from *N.D. Cal. Model Patent Jury Instructions B.5.7, Rev. Aug. 2017 (updated Oct. 2019)*.

26

27  [18] *American Intellectual Property Law Association Model Patent Jury Instructions 10.2.5.3, Rev. 2019*.

28  [19] Description of *Georgia-Pacific* factors drawn from Committee Comments and Authorities, *Fed. Cir. Bar Association Model Patent Jury Instructions B.5.8, Rev. May 2020*.

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

- The rates paid by Google for the use of other patents comparable to the patent in suit.

- The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

- Sonos's established policy and marketing program to maintain its patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

- The commercial relationship between Sonos and Google, such as whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter.

- The effect of selling the patented specialty in promoting sales of other products of Google; the existing value of the invention to Sonos as a generator of sales of its non-patented items; and the extent of such derivative or convoyed sales.

- The duration of the patent and the term of the license.

- The established profitability of the product made under the patent; its commercial success; and its current popularity.

- The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

- The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by Sonos; and the benefits to those who have used the invention.

- The extent to which Google has made use of the invention; and any evidence probative of the value of that use.

- The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

- The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by Google.

- The opinion testimony of qualified experts.

- The amount that a licensor (such as Sonos) and a licensee (such as Google) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee— who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention— would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty Google would have been

JOINT PROPOSED JURY INSTRUCTIONS
3:20-cv-06754-WHA

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

1  willing to pay and Sonos would have been willing to accept, acting as normally prudent business

2  people.[20]

3      One way to calculate a royalty is to determine what is called a̶n̶ "~~ongoing~~ per-unit

4  royalty."[21] To calculate a̶n̶ ~~ongoing~~ per-unit royalty, you must first determine the "base," that is,

5  the product on which Google is to pay. You then need to multiply the revenue the defendant

6  obtained from that base by the "rate" or percentage that you find would have resulted from the

7  hypothetical negotiation. For example, if the patent covers a nail, and the nail sells for $1, and the

8  licensee sold 200 nails, the base revenue would be $200. If the rate you find would have resulted

9  from the hypothetical negotiation is 1%, then the royalty would be $2, or the rate of 0.01 times

10  the base revenue of $200. By contrast, if you find the rate to be 5%, the royalty would be $10, or

11  the rate of 0.05 times the base revenue of $200. These numbers are only examples, and are not

12  intended to suggest the appropriate royalty rate.

13      Instead of a percentage royalty, you may decide that the appropriate royalty that would

14  have resulted from a hypothetical negotiation is a fixed number of dollars per unit sold. If you do,

15  the royalty would be that fixed number of dollars times the number of units sold.

16      ~~If the patent covers only part of the product that Google sells, then the base would~~

17  ~~normally be only that feature or component. For example, if you find that for a $100 car, the~~

18  ~~patented feature is the tires which sell for $5, the base revenue would be $5.~~

19      ~~[In this case the [ ] patent covers only one component of the product that [alleged~~

20  ~~infringer] uses or sells. It is [patent holder]'s burden to demonstrate what value that component~~

21  ~~has added to the desirability of the product as a whole and to separate the value of the patented~~

22  ~~contribution from the value of other parts of the product that are not attributable to the patented~~

23  ~~invention.]~~

24      ~~[In this case, [patent holder] [accused infringer] has introduced evidence of licenses~~

25  ~~between [licensees] and [licensors]. The royalty rate in one or more of those licenses may be~~

26  _____

27  [20] This paragraph drawn from *Fed. Cir. Bar Association Model Patent Jury Instructions B.5.8,
    Rev. May 2020.*

28  [21] The remainder of this instruction drawn from *N.D. Cal. Model Patent Jury Instructions B.5.7,
    Rev. Aug. 2017 (updated Oct. 2019).*

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

1  ~~considered if it helps to establish the value that is attributable to the patented invention as distinct~~

2  ~~from the value of other features of [alleged infringer's] product.]~~

3          The ultimate combination of royalty base and royalty rate must reflect the value

4  attributable to the infringing features of the product, and no more. When the accused infringing

5  products have both patented and unpatented features, measuring this value requires you to

6  identify and award only the value of the patented features.

7          Another way to calculate a royalty is to determine a one-time lump sum payment that

8  Google would have paid at the time of the hypothetical negotiation for a license covering all sales

9  of the licensed product, both past and future. This differs from payment of ~~an ongoing~~ per-unit

10 royalty because, with ~~an ongoing~~ per-unit royalty, Google pays based on the revenue of actual

11 licensed products it sells. When a one-time lump sum is paid, Google pays a single price for a

12 license covering both past and future infringing sales.

13         It is up to you, based on the evidence, to decide what type of royalty is appropriate in this

14 case ~~for the life of the patent~~.

15

16         *N.D. Cal. Model Patent Jury Instructions B.5.7, Rev. Aug. 2017 (updated Oct. 2019); Fed.*

17 *Cir. Bar Association Model Patent Jury Instructions B.5.8, Rev. May 2020; American Intellectual*

   *Property Law Association Model Patent Jury Instructions 10.2.5.3, Rev. 2019*

18

19

20 Authorities:

21 *Garretson v. Clark*, 111 U.S. 120, 121 (1884); *Ericsson v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226

22 (Fed. Cir. 2014); *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326-34 (Fed. Cir. 2014);

23 *Golight, Inc., v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1338 (Fed. Cir. 2004); *Maxwell v. Baker,*

24 *Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579-

25 81 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc);

26 *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120-21 (S.D.N.Y.

27 1970); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010).

28

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

1    **STIPULATED INSTRUCTION NO. 23 RE REASONABLE ROYALTY—DEFINITION**

2    **OFFERED BY GOOGLE**

3         If you find that claim 1 of the '885 patent is not invalid, Sonos is entitled to a reasonable

4    royalty to compensate it for Google's infringement of claim 1.  If you find that any asserted claim

5    of the '966 patent is both infringed and not invalid, Sonos is entitled to a reasonable royalty to

6    compensate it for Google's infringement of that patent claim.

7         A royalty is a payment made to a patent holder in exchange for the right to make, use, or

8    sell the alleged invention. This right is called a "license." A reasonable royalty is the payment for

9    the license that would have resulted from a hypothetical negotiation between Sonos and Google

10   taking place at the time when the infringing activity first began. In considering the nature of this

11   negotiation, you must assume that both parties would have acted reasonably and would have

12   entered into a license agreement. You must also assume that both parties believed the patent was

13   valid and infringed. Your role is to determine what the result of that negotiation would have been.

14   The test for damages is what royalty would have resulted from the hypothetical negotiation and

15   not simply what either party would have preferred.

16        A royalty can be calculated in several different ways and it is for you to determine which

17   way is the most appropriate based on the evidence you have heard. You should consider all the

18   facts known and available to the parties at the time the infringement began.[22]

19        In determining the amount of a reasonable royalty, you may consider evidence on any of

20   the following factors, in addition to any other evidence presented by the parties on the economic

21   value of the patent.[23] It will be up to you to determine which factors may or may not be relevant

22   to this case. These factors are:[24]

23        • The royalties received by Sonos for the licensing of the patent in suit, proving or tending
             to prove an established royalty.

24

---

25   [22] This paragraph and the preceding paragraph are drawn from *N.D. Cal. Model Patent Jury
        Instructions B.5.7, Rev. Aug. 2017 (updated Oct. 2019)*.

26

27   [23] *American Intellectual Property Law Association Model Patent Jury Instructions 10.2.5.3, Rev.
        2019*.

[24] Description of *Georgia-Pacific* factors drawn from Committee Comments and Authorities,
        *Fed. Cir. Bar Association Model Patent Jury Instructions B.5.8, Rev. May 2020*.

28

==Yellow Highlight== indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

- The rates paid by Google for the use of other patents comparable to the patent in suit.

- The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

- Sonos's established policy and marketing program to maintain its patent monopoly by not licensing others to use the alleged invention or by granting licenses under special conditions designed to preserve that monopoly.

- The commercial relationship between Sonos and Google, such as whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter.

- The effect of selling the patented specialty in promoting sales of other products of Google; the existing value of the alleged invention to Sonos as a generator of sales of its non-patented items; and the extent of such derivative or convoyed sales.

- The duration of the patent and the term of the license.

- The established profitability of the product made under the patent; its commercial success; and its current popularity.

- The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

- The nature of the alleged patented invention; the character of the commercial embodiment of it as owned and produced by Sonos; and the benefits to those who have used the alleged invention.

- The extent to which Google has made use of the alleged invention; and any evidence probative of the value of that use.

- The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the alleged invention or analogous inventions.

- The portion of the realizable profit that should be credited to the alleged invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by Google.

- The opinion testimony of qualified experts.

- The amount that a licensor (such as Sonos) and a licensee (such as Google) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the alleged patented invention— would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors

Yellow Highlight indicates changed or added language to a model instruction.
Strikethrough indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

1   which in your mind would have increased or decreased the royalty Google would have been

2   willing to pay and Sonos would have been willing to accept, acting as normally prudent business

3   people.[25]

4       Comparable ~~license~~ agreements are ~~one~~ another factor that may inform your decision as to

5   the proper amount and form of the reasonable royalty award, similar to the way in which the

6   value of a house is determined relative to comparable houses sold in the same neighborhood.

7       Whether an ~~license~~ agreement is comparable to the license under the hypothetical license

8   scenario depends on many factors, such as whether they involve comparable technologies,

9   comparable economic circumstances, comparable structure, and comparable scope. If there are

10  differences between an ~~license~~ agreement and the hypothetical license, you must take those into

11  account when you make your reasonable royalty determination.[26]

12  ~~The hypothetical license is deemed to be a voluntary agreement. When determining if a~~

13  ~~license agreement is comparable to the hypothetical license, you may consider whether the~~

14  ~~license agreement is between parties to a lawsuit and whether the license agreement was a~~

15  ~~settlement influenced by a desire to avoid further litigation~~

16      A reasonable royalty can be paid either in the form of a one-time lump sum payment or as

17  a "running royalty." Either method is designed to compensate the patent holder based on the

18  infringer's use of the patented technology. It is up to you, based on the evidence, to decide what

19  type of royalty, if any, is appropriate in this case.

20      Reasonable royalty awards can take the form of a lump sum payment. A lump sum

21  payment is equal to an amount that the alleged infringer would have paid at the time of a

22  hypothetical negotiation for a license covering all sales of the licensed product, both past and

23  future. When a lump sum is paid, the infringer pays a single price for a license covering both past

24  and future infringing sales.

25      Reasonable royalty awards may also take the form of a running royalty based on the

---

[25] This paragraph drawn from *Fed. Cir. Bar Association Model Patent Jury Instructions B.5.8, Rev. May 2020*.

[26] This paragraph and the preceding paragraphs are drawn from *Fed. Cir. Bar Association Model Patent Jury Instructions B.5.9, Rev. May 2020*.

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

1  revenue from or the volume of sales of licensed products. A running royalty can be calculated~~, for~~

2  ~~example, by multiplying a royalty base by a royalty rate, or~~ by multiplying the number of

3  infringing products or product units sold by a royalty amount per unit.[27]

4       If the patent covers only part of the product that Google sells, then the base would

5  normally be only that feature or component. For example, if you find that for a $100 car, the

6  patented feature is the tires which sell for $5, the base revenue would be $5.[28]

7       In this case the '885 and '966 patents cover only one component of the product that

8  Google uses or sells. It is Sonos's burden to demonstrate what value that component has added to

9  the desirability of the product as a whole and to separate the value of the patented contribution

10  from the value of other parts of the product that are not attributable to the alleged invention.

11       The ultimate combination of royalty base and royalty rate must reflect the value

12  attributable to the infringing features of the product, and no more. When the accused infringing

13  products have both patented and unpatented features, measuring this value requires you to

14  identify and award only the value of the patented features.

15       ~~Another way to calculate a royalty is to determine a one-time lump sum payment that the~~

16  ~~alleged infringer would have paid at the time of the hypothetical negotiation for a license~~

17  ~~covering all sales of the licensed product, both past and future. This differs from payment of an~~

18  ~~ongoing royalty because, with an ongoing royalty, the licensee pays based on the revenue of~~

19  ~~actual licensed products it sells. When a one-time lump sum is paid, the alleged infringer pays a~~

20  ~~single price for a license covering both past and future infringing sales.~~

21       It is up to you, based on the evidence, to decide what type of royalty is appropriate in this

22  case ~~for the life of the patent~~.

23

24       *N.D. Cal. Model Patent Jury Instructions B.5.7, Rev. Aug. 2017 (updated Oct. 2019); Fed.*

25  *Cir. Bar Association Model Patent Jury Instructions B.5.8, Rev. May 2020; American Intellectual*

---

[27] This paragraph and the two preceding paragraphs are drawn from *Fed. Cir. Bar Association Model Patent Jury Instructions B.5.7, Rev. May 2020*.

[28] This remaining paragraphs are drawn from *N.D. Cal. Model Patent Jury Instructions B.5.7, Rev. Aug. 2017 (updated Oct. 2019)*.

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

1  *Property Law Association Model Patent Jury Instructions 10.2.5.3, Rev. 2019*; *Fed. Cir. Bar*

2  *Association Model Patent Jury Instructions B.5.8, Rev. May 2020.*

3

4

   Authorities:

5

6  *Garretson v. Clark*, 111 U.S. 120, 121 (1884); *Ericsson v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226

   (Fed. Cir. 2014); *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326-34 (Fed. Cir. 2014);

7
8  *Golight, Inc., v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1338 (Fed. Cir. 2004); *Maxwell v. Baker,*

   *Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579-
9
10 81 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc);

   *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120-21 (S.D.N.Y.
11
12 1970); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010).

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

### DISPUTED INSTRUCTION NO. 24 RE DAMAGES—

### DOUBTS RESOLVED AGAINST INFRINGER

### OFFERED BY SONOS

Any doubts that you may have on the issue of damages due to Google's failure to keep proper records should be decided in favor of Sonos. In that circumstance, you are allowed to act on probable and inferential proof, as well as upon direct and positive proof. Any confusion or difficulties caused by Google's records also should be held against Google, not Sonos.

*American Intellectual Property Law Association Model Patent Jury Instructions 10.3, Rev. 2019*

Authorities:

*Bigelow v. R.K.O. Pictures, Inc.*, 327 U.S. 251, 264-65 (1946); *Story Parchment Co. v. Patterson Parchment Paper Co.*, 282 U.S. 555, 563 (1931); *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1118 (Fed. Cir. 1996); *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1572-73 (Fed. Cir. 1996); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983).

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

1

2

3

**DISPUTED INSTRUCTION NO. 24 RE DAMAGES—**

4

**DOUBTS RESOLVED AGAINST INFRINGER**

5

**OFFERED BY GOOGLE**[29]

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[29] Google's position is that this instruction should not be included for the reasons stated in Google's Memorandum in support of its proposed jury instructions.

Yellow Highlight indicates changed or added language to a model instruction.
Strikethrough indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party names are not indicated.

Dated:  April 26, 2023

ORRICK HERRINGTON & SUTCLIFFE LLP
*and*
LEE SULLIVAN SHEA & SMITH LLP


By: */s/ Clement Seth Roberts*
    Clement Seth Roberts

*Attorneys for Sonos, Inc.*


QUINN EMANUEL URQUHART & SULLIVAN, LLP


By  */s/ Sean Pak*
    Sean Pak
    Melissa Baily
    James D. Judah
    Lindsay Cooper
    Marc Kaplan
    Iman Lordgooei


*Attorneys for GOOGLE, LLC*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## ECF ATTESTATION

I, Clement S. Roberts, am the ECF User whose ID and password are being used to file this Joint Proposed Jury Instructions. In compliance with Civil Local Rule 5-1, I hereby attest that Sean Pak, counsel for Google, has concurred in this filing.

Dated: April 26, 2023

By: /s/ Clement S. Roberts
Clement S. Roberts