1   CLEMENT SETH ROBERTS (SBN 209203)
    croberts@orrick.com
2   BAS DE BLANK (SBN 191487)
    basdeblank@orrick.com
3   ALYSSA CARIDIS (SBN 260103)
    acaridis@orrick.com
4   ORRICK, HERRINGTON & SUTCLIFFE LLP
    The Orrick Building
5   405 Howard Street
    San Francisco, CA 94105-2669
6   Telephone:    +1 415 773 5700
    Facsimile:    +1 415 773 5759
7
    SEAN M. SULLIVAN (*pro hac vice*)
8   sullivan@ls3ip.com
    J. DAN SMITH (*pro hac vice*)
9   smith@ ls3ip.com
    MICHAEL P. BOYEA (*pro hac vice*)
10  boyea@ ls3ip.com
    COLE B. RICHTER (*pro hac vice*)
11  richter@ls3ip.com
    LEE SULLIVAN SHEA & SMITH LLP
12  656 W Randolph St., Floor 5W
    Chicago, IL 60661
13  Telephone:    +1 312 754 0002
    Facsimile:    +1 312 754 0003
14
    *Attorneys for Sonos, Inc.*
15

16                      UNITED STATES DISTRICT COURT

17                 NORTHERN DISTRICT OF CALIFORNIA,

18                       SAN FRANCISCO DIVISION

19

20  SONOS, INC.,                          Case No. 3:20-cv-06754-WHA
                                          Consolidated with Case No. 3:21-cv-07559-
21        Plaintiff and Counter-Defendant,  WHA

22        v.                              **SONOS, INC.'S MEMORANDUM OF
                                          LAW REGARDING DISPUTED JURY
23  GOOGLE LLC,                           INSTRUCTIONS**

24        Defendant and Counter-Claimant.  Judge:  Hon. William Alsup
                                          Pretrial Conf.:  May 3, 2023
25                                        Time:  12:00 p.m.
                                          Courtroom:  12, 19th Floor
26                                        Trial Date:  May 8, 2023

27

28

# TABLE OF CONTENTS

**Page(s)**

I.      DISPUTED INSTRUCTION NO. 2 RE SUMMARY OF CONTENTIONS ..................... 1

II.     DISPUTED INSTRUCTION NO. 4 RE OUTLINE OF TRIAL......................................... 8

III.    DISPUTED INSTRUCTION NO. 6 RE SUMMARY OF CONTENTIONS ..................... 8

IV.     DISPUTED INSTRUCTION NO. 10 RE LITERAL INFRINGEMENT ........................... 9

V.      DISPUTED INSTRUCTION NO. 11 RE INDUCING PATENT INFRINGEMENT...... 11

VI.     DISPUTED INSTRUCTION NO. 12 RE CONTRIBUTORY INFRINGEMENT.......... 13

VII.    DISPUTED INSTRUCTION NO. 13 RE WILLFUL INFRINGEMENT ....................... 15

VIII.   DISPUTED INSTRUCTION NO. 14 RE INVALIDITY – BURDEN OF PROOF ......... 19

IX.     DISPUTED INSTRUCTION NO. 15 RE INVALIDITY—PERSPECTIVE OF
        ONE OF ORDINARY SKILL IN THE ART .................................................................. 21

X.      DISPUTED INSTRUCTION NO. 16 RE INVALIDITY—PRIOR ART........................ 22

XI.     DISPUTED INSTRUCTION NO. 17 RE INVALIDITY—STATUTORY BAR............. 23

XII.    DISPUTED INSTRUCTION NO. 18 RE INVALIDITY—ANTICIPATION ................. 24

XIII.   DISPUTED INSTRUCTION NO. 19 RE INVALIDITY—OBVIOUSNESS................. 25

XIV.    DISPUTED INSTRUCTION NO. 20 RE INVALIDITY—DERIVATION ..................... 28

XV.     DISPUTED INSTRUCTION NO. 21 RE DAMAGES—BURDEN OF PROOF............ 30

XVI.    DISPUTED INSTRUCTION NO. 23 RE REASONABLE ROYALTY—
        DEFINITION ................................................................................................................. 31

XVII.   DISPUTED INSTRUCTION NO. 24 RE DAMAGES—DOUBTS RESOLVED
        AGAINST INFRINGER ................................................................................................ 33

1    TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:

2         Plaintiff and Counter-Defendant Sonos, Inc. ("Sonos") hereby submits this memorandum

3    of law regarding disputed jury instructions in accordance with the Guidelines for Trial and Final

4    Pretrial Conference in Civil Jury Cases Before the Honorable William Alsup ¶ 2(c).

5    **I.**      **DISPUTED INSTRUCTION NO. 2 RE SUMMARY OF CONTENTIONS**

6         Both parties propose an instruction for Disputed Instruction No. 2.  Google's proposed

7    instruction injects multiple irrelevant issues into the Northern District's Model Instruction.

8    Sonos's instruction closely tracks the model and avoids confusing and distracting the jury with

9    irrelevant issues.

10        *First*, Google proposes inserting numerous references to previously asserted patents,

11   including details regarding patents that were withdrawn or are otherwise no longer in the case.

12   Sonos incorporates by reference its Motion *in Limine* No. 4 at 1-4.  Instructing the jury on patents

13   that are no longer asserted risks juror confusion and will not assist the jury in resolving the

14   dispute between the parties in any way.  For example, informing the jury that Sonos "withdrew its

15   claims against Google" for the '206 and '460 patents will not help the jury decide infringement of

16   the '966 patent.  Nor is there any remaining relevance of the '033 or '615 patents to the jury, and

17   the Court has made clear that no issues regarding the '615 patent will be tried at this trial.

18        Google has two responses, contending (1) that jury instructions often reference previously

19   asserted claims when they are relevant to a remaining claim, and (2) that the previously asserted

20   claims here are relevant to Google's claim that its infringement was not willful.  Google is wrong

21   on both counts.  Courts do *not* typically instruct on withdrawn patent claims.  And even if Google

22   could show that withdrawn patent claims are *relevant* to willfulness, which Sonos disputes, that

23   does not support including the withdrawn claims in the jury instructions.  Jury instructions are not

24   the place for making attorney argument.

25        The only example Google provides of *this* Court including instruction on withdrawn

26   claims bears no relation to this case.  In *Applera v. Illumina*, among other differences, the two

27   withdrawn patents were removed from the jury's consideration *midway through* the trial.  *See,*

28   *e.g.*, Case No. 3:07-cv-02845-WHA at Dkt. 388 (transcript of proceedings including jury

1    selection, in which counsel repeatedly referenced "the three patents that are at issue in this case"

2    and similar); Dkt. 389 at 394:3-13 (Court and counsel referring repeatedly to "the three patents at

3    issue in this case" during witness testimony); Dkt. 400 at 2226:21-25 ("The Court: All right. So

4    '341 doctrine of equivalence is out of the case. What that really means is '341 for the jury is out

5    of the case."); Dkt. 401 at 2375:6-16 (counsel noting that "both the '341 and the '597 claims are

6    out"), *id.* at 2381:10 ("The Court: We're knocking out half the case here.").  Obviously, the jury

7    had to be told something about what happened to the claims that were resolved during the trial.

8    So the Court instructed the jury that "[t]o simplify matters for your consideration, the case has

9    been reduced to one patent, the '119 patent. The '341 and '597 patents have been withdrawn from

10    your consideration."  Dkt. 386 at 5.  That instruction was neutral to the parties, and the Court

11    specifically noted that it was using neutral language because "I don't think there is any point in

12    trying to frame it in a way that casts dispersions on anyone's prior arguments."  Dkt. 400 at

13    2227:1-21.  Here, Google does not just want the jury to know certain claims are no longer

14    asserted, but wants the Court to tell the jury that certain asserted patents were invalid and/or non-

15    infringed.  If not for Google's self-fulfilling instruction, the jury would have had no reason to

16    know these patents were previously asserted and no reason to know they were withdrawn from

17    the case.  Thus, there is no reason for the "curative" type of instruction Google proposes.

18         Google nonetheless contends that these other patents are somehow relevant to Google's

19    willfulness.  They are not.  For starters, the '033, '615, and '460 patents do not claim Sonos's

20    zone scene technology.  Arguments concerning other patents claiming other technology are not

21    relevant to Google's non-infringement and invalidity positions for the asserted zone scene

22    patents.  *See, e.g., Paone v. Microsoft Corp.*, No. 07-CV-2973 ADS, 2013 WL 4048503, at *7

23    (E.D.N.Y. Aug. 9, 2013) ("[T]he Court has held that prior assertions of infringement against

24    BitLocker, and any evidence of unasserted, dismissed, or cancelled claims is not relevant to the

25    remaining claims. The Court's grant of summary judgment with respect to claims 2 and 33 does

26    not bear on the reasonableness of Microsoft's defenses with respect to the different and unrelated

27    TKIP technology that remains in this suit. Accordingly, the Court adheres to its prior

28    determination that the aforementioned evidence be excluded under Federal Rule of Evidence

SONOS, INC.'S MEMORANDUM REGARDING
DISPUTED JURY INSTRUCTIONS
3:20-cv-06754-WHA

1   402.").

2          Even the '206 patent, the parent to the '885 and '966 patents, is irrelevant to Google's

3   arguments that Google had a reasonable belief in invalidity or noninfringement of the '885 and

4   '996 patents.  The '206 patent claims different aspects of zone scene technology, whereas (in

5   Google's own words) the '885 and '966 patents cover "essentially the same subject matter" or are

6   "two sides of the same coin."  *See* Google's Opp. to Sonos's MIL No. 2 at 4-5.  Google cannot

7   show that its beliefs about the '206 patent's claim limitations insulate Google from willful

8   infringement of the '966 patent.

9          Nor does Google's cited caselaw provide otherwise.  Google's cases involve withdrawn or

10  unasserted patents that were actually relevant to the disputed issues the jury needs to decide.  For

11  example, in *Greatbatch Limited*, Judge Stark held that "prior art" that "was later used … to

12  invalidate multiple claims of the '627 patent, including claim 11" was relevant to non-willfulness

13  of infringement of claim 12—which *depends from* claim 11—of the '627 patent.  *Greatbatch Ltd.*

14  *v. AVX Corp.*, No. CV 13-723-LPS, 2016 WL 7217625, at *4 (D. Del. Dec. 13, 2016), *aff'd*, 813

15  F. App'x 609 (Fed. Cir. 2020).[1]  In this case, no zone scene patent has even been held invalid,

16  much less any claim from which the asserted claims of the '885 or '966 patent depends.  (While

17  Google contends the '206 patent was held invalid for indefiniteness, that is both wrong and

18  irrelevant.  The Texas Court never issued a ruling on indefiniteness, *see, e.g.,* Dkt. 184, 1-3; Dkt.

19  202, 1-4; and Google has no indefiniteness arguments against the '885 and '966 patents

20  anyways.)

21         Similarly, Google cites *Move, Inc.* as an example of a court granting summary judgment

22  of no willfulness because the alleged infringer "had several reasonable arguments as to why its

23  conduct was non-infringing."  *See Move, Inc. v. Real Est. All. Ltd.*, 221 F. Supp. 3d 1149, 1173

24  (C.D. Cal. 2016), *aff'd in part*, 721 F. App'x 950 (Fed. Cir. 2018).  But there the patentee

25  _____

26  [1] In the draft memorandum served by Google in advance of the party's April 26, 2023 filing of
these memoranda as part of a mutual exchange, Google cited *Greatbatch Ltd. v. AVX*

27  *Corporation*, No. CV 13-723-LPS, 2015 WL 9171042, *4 (D. Del. Sept. 11, 2015). However,
because the language Google quoted does not appear in that decision but does appear in the

28  December 2016 decision addressed above, Sonos addresses the case in which Google's quoted
language appears.

SONOS, INC.'S MEMORANDUM REGARDING
DISPUTED JURY INSTRUCTIONS
3:20-cv-06754-WHA

1   stipulated to no infringement in light of the Court's claim construction ruling.  The Federal

2   Circuit reversed the claim construction and on remand, the trial court agreed that it was

3   "reasonable" to rely on the stipulated judgment of no infringement based on the "reasonable, but

4   erroneous, construction."  *Id.* at n14.  *Dorman Products* similarly does not support instructing the

5   jury on the resolution of patents that are unrelated to the issues the jury will need to decide.  *See*

6   *Dorman Prod., Inc. v. Paccar, Inc.*, 201 F. Supp. 3d 663, 681 (E.D. Pa. 2016), *as amended* (Oct.

7   17, 2016).

8        Google also cites *Carnegie Mellon* for the proposition that "evidence of dropped or

9   changed claims or products shows the reasonableness of [the alleged infringer's] infringement

10  'defenses.'"  *See Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, No. CIV.A. 09-290, 2012

11  WL 5463669, at *2 (W.D. Pa. Nov. 7, 2012).  In *Carnegie*, the Court permitted the alleged

12  infringer to argue that the fact that the patentee changed the accused products and changed the

13  asserted claims from the two patents at issue *in the middle of the case* was relevant to the

14  infringer's willfulness defenses.  But even if the Court found that reasoning persuasive, the

15  situation here is different.  Google does not seek to instruct the jury on "dropped or changed

16  *claims* or [accused] products" but instead on entirely separate *patents* covering entirely different

17  (direct control) technology that will not be at issue in this case.

18       Finally, Google relies on *Samsung v. Quanta* for the proposition that voluntarily dismissed

19  patents "may be relevant to [patentee's] claim for willfulness."  *Samsung Elecs. Co. v. Quanta*

20  *Computer, Inc.*, No. C-00-4524 VRW, 2006 WL 2850028, at *3 (N.D. Cal. Oct. 4, 2006).  The

21  court's denial of a motion in *limine* provides little support for having the judge instruct the jury

22  about unasserted and unrelated patents, and that decision cites no legal or other authority for this

23  holding.  Moreover, adopting such a rule would disincentivize future parties alleging patent

24  infringement from *ever* voluntarily dismissing and narrowing their asserted patents and claims, an

25  outcome that would be at odds with Rule 1:  "These rules … should be construed, administered,

26  and employed by the court and the parties to secure the just, speedy, and inexpensive

27  determination of every action and proceeding."  Fed. R. Civ. P. 1.

28       Lacking any apposite authority in its favor, Google pivots to a fairness argument.

SONOS, INC.'S MEMORANDUM REGARDING
DISPUTED JURY INSTRUCTIONS
3:20-cv-06754-WHA

Namely, Google contends that it is *unfair* that the jury should be told that Google infringed the '885 patent while not being told that *unrelated patents* were either invalid or invalid and non-infringed.  But that is not a fairness issue.  The jury must be instructed that Google infringed the '885 patent because that is a necessary predicate to Sonos's claim for damages.  Conversely, the jury should not be instructed regarding the outcome of *unrelated* patents when that information is not necessary to any claim that the jury must decide.  Google's goose/gander rule thus has no applicability here.  Besides, if the goose/gander rule did apply, and Google gets to tell the jury about withdrawn patents, then Sonos should be allowed to tell the jury that Google infringes five other unasserted valid Sonos patents.  *See* Case No. 337-ITC-1191.

Google also claims prejudice because—according to Google—disclosing the Court's finding of infringement of the '885 patent to the jury without the context of the other patents Sonos previously asserted in this case creates a risk that the jury will perceive Google as a bad actor without regard for patent rights.  But the parties agree that the jury will be instructed that a finding of infringement is not enough to prove willfulness.  Nothing more is required.

Finally, Google's "opening the door" theory lacks any limiting principle.  Google's theory seems to be that *any* reference by Sonos to its patent portfolio opens the door to Google introducing evidence of withdrawn claims.  That is an unworkable proposition.  Among other things, if Google were permitted to argue non-willfulness based on patents that are no longer in this case, Sonos would seek to rebut that evidence with responsive evidence showing that Google's infringement of five other Sonos patents has led to Google's products being banned from the United States.  *See* Case No. 337-ITC-1191.[2]

*Second*, Google includes a reference to written description: "Google also argues that the '885 patent is invalid.  Invalidity is a defense to infringement.  I will instruct you later as to the ways in which a patent may be invalid. In general, however, a patent is invalid if it is not new or is obvious in view of the state of the art at the relevant time, **or if the description in the patent**

---

[2] Sonos does not want to engage in these tit-for-tat discussions of patents that are not related to the issues the jury needs to decide, and accordingly agreed not to raise other litigations with Google.  However, if Google is permitted to open the door to discuss the outcomes of other patents, Sonos should be able to as well.

1    **does not meet certain requirements.**" (emphasis added).

2         As Sonos explains in its Motion in Limine No. 3, which Sonos hereby incorporates by

3    reference, the Court has already rejected Google's written description challenge to the '885 patent

4    at the showdown summary judgment stage, and Google did not provide any expert opinion that

5    the '966 patent—which has the same specification as the '885 patent and the same relevant claim

6    language—is invalid for lack of written description.  Google since confirmed that "Google does

7    not plan to argue to the jury that either the '885 or the '966 patents lack an adequate written

8    description or are not properly enabled."  Google's Opp. to Sonos's MIL No. 3 at 1, 3.  The Court

9    should not give this irrelevant instruction.

10        *Third,* Google also asks the Court to instruct the jury, for the '885 patent, that "Invalidity

11   is a defense to infringement because there can be no infringement of an invalid patent."  This

12   instruction is unnecessary and confusing to the jury, who will already be told multiple times that

13   they should not award damages if a patent claim is invalid.

14        *Fourth,* Google asks the Court to instruct the jury that "I have already found that any

15   infringement of claim 1 of the '885 patent by Google was not willful."  Sonos requests instead—

16   here and globally—that the Court instruct the jury that "I am not asking you to decide whether

17   Google's infringement of claim 1 of the '885 patent was willful."

18        Google's instruction simultaneously suggests that it *may not* have infringed ("any

19   infringement") in direct contradiction of this Court's finding of infringement, while

20   inappropriately suggesting to the jury that the Court *affirmatively found* that Google's

21   infringement was neither deliberate nor intentional, which is not true.

22        The Court's decision on willfulness turned exclusively on the question of whether Google

23   had adequate pre-suit knowledge, and the Court's legal conclusion that a complaint cannot

24   provide knowledge for post-suit willfulness.  Google's proposed instruction invites the jury to

25   compare Google's behavior with respect to the '885 and '966 patents, and invites the jury to

26   speculate that because the Court found no willfulness for the '885, that finding is somehow

27   relevant to the jury's determination on the '966 patent.  But the Court did not rule on questions

28   such as whether Google had a reasonable belief in noninfringement or invalidity, or whether

Google acted reasonably under the circumstances.  So there is no relevant comparison for the jury as between willfulness of the '966 patent and no willfulness of the '885 patent.

On the other hand, it is important to instruct the jury that the Court *found* infringement of the '885 patent, versus simply telling the jury that they do not need to decide whether there was any infringement.  The jury has to know that the '885 patent is infringed because they will award damages for that infringement (absent a finding of invalidity).  The Court's finding that Google did not willfully infringe claim 1 of the '885 patent does not similarly affect any other issues in the case, so the jury only needs to know that it is not an issue for them to decide.

Google argues that Sonos's instruction is somehow misleading or an unfair attempt to hide the finding of no willfulness.  *See* Google Br. re Instruction No. 13.  Just the opposite; if Sonos was attempting the "hide" the finding of no willfulness, Sonos would simply ask the Court not to instruct on willfulness of the '885 patent at all.  The jury could simply be instructed to decide whether Google's infringement of the '996 patent was willful and the Court need not say anything about willful infringement of the '885 patent.  Instead, Sonos is offering a neutral and accurate statement of the Court's finding that allows the jury to focus on the issues in dispute, rather than be distracted by irrelevant instructions.  Because the Court's ruling on willfulness of the '885 patent is not relevant to willfulness of the '966 patent, it is Google who is attempting to insinuate that the Court made a finding on willfulness that is informative of the '966 patent.  But any insinuation would be incorrect, so the Court should give Sonos's instruction or none at all.

*Fifth*, as a global matter throughout these instructions, the parties agree that Google's older accused products should be referred to as "prior versions."  Sonos requests that the Court globally refer to Google's newer products as "new versions" or "newer versions," while Google requests "redesigned products."  Sonos's "prior" and "newer" labels are neutral and accurately convey that there are two versions of the accused products.  By contrast, Google's "prior vs. redesigned" labels suggest that Google made material changes in its "redesign," which Sonos disputes.  Google's language is not neutral but is biased in favor of Google.  The Court should use Sonos's neutral labels instead.

## II.      DISPUTED INSTRUCTION NO. 4 RE OUTLINE OF TRIAL

Both parties propose an instruction for Disputed Instruction No. 4.  Sonos objects to Google's proposed instruction regarding "Google's alleged infringement of the '885 and '966 patents."  The jury may not be asked to determine any infringement question with respect to the '885 patent, depending on the Court's ruling on the parties' 50(a) motions, and will at a minimum be instructed that the Court determined that prior versions of Google's accused products infringed the '885 patent and that the jury must determine damages if the patent is not invalid.  Accordingly, Sonos requests that the Court instead in this instruction refer to "Google's infringement of the '885 patent and alleged infringement of the '966 patent."

## III.     DISPUTED INSTRUCTION NO. 6 RE SUMMARY OF CONTENTIONS

Both parties propose an instruction for Disputed Instruction No. 6.  The disputes here are duplicative of the disputes in the preliminary instructions.  Sonos objects to including any instruction on:

- Patents that are no longer asserted, including the '206 patent, the '460 patent, the '615 patent, and the '033 patent.

- Written description.  Google's proposed instruction states the following, apparently in the context of the '885 patent:  "In general, however, a patent is invalid if it is not new or is obvious in view of the state of the art at the relevant time**, or if the description in the patent does not meet certain requirements.**"

- Google's proposed instruction that "Invalidity is a defense to infringement because there can be no infringement of an invalid patent."  As noted above, this instruction is unnecessary and confusing to the jury, who will already be told multiple times that they should not award damages if a patent claim is invalid.

- Google's proposed instruction that "I have already determined that any infringement [of claim 1 of the '885 patent] by Google was not willful."  Sonos requests instead that the Court instruct the jury that "I am not asking you to decide whether Google's infringement of claim 1 of the '885 patent was willful."

1

**IV.**     **DISPUTED INSTRUCTION NO. 10 RE LITERAL INFRINGEMENT**

2

Both parties propose an instruction for Disputed Instruction No. 10.  Sonos asks the Court

3

to instruct the jury on how to determine infringement of a "capability" claim:

4

> An accused system or product directly infringes a claim if it is reasonably capable
> of satisfying the claim elements even though it may also be capable of non-
> infringing modes of operation. If a claim requires only that the system or product
> have the capacity to perform a function, one who makes a system or product with
> that capability is a direct infringer even though they do not use that capability.

5

6

7

Google objects to both sentences of this instruction.  On the first sentence, Google says

8

that "reasonable capability" requires evidence "that the accused product performs the claimed

9

function when placed in operation."  *INVT SPE LLC v. Int'l Trade Comm'n*, 46 F.4th 1361, 1376

10

(Fed. Cir. 2022).  Nothing in Sonos's instruction is inconsistent with that law, and the remainder

11

of the instruction tells the jury that Sonos must prove infringement of every element of the claims.

12

Besides, evidence that the accused product performs the claimed functions obviously exists; the

13

Court granted summary judgment based on it.  Dkt. 309.  Sonos will present additional evidence

14

for the '966 patent and for Google's new versions of its infringing products at trial.

15

For the second sentence, Google claims this instruction is not appropriate because the

16

claims here are not drawn to capability.  Google is wrong and raises an entirely new argument

17

about the scope of the claims.  Specifically, Claim 1 of the '885 patent claims a "first zone

18

player," *e.g.*, a smart speaker, with a network interface, processor, and "***program instructions***

19

stored on the non-transitory computer readable medium ***that, when executed*** by the one or more

20

processors, ***cause*** the first zone player to perform functions comprising…"  '885 patent, claim 1;

21

*see also* Dkt. 309 at 5.  This is a system claim which requires a zone player with various

22

capabilities.  Similarly, the '996 patent claims "a computing device comprising" processors "and

23

program instructions stored on the non-transitory computer-readable medium that, when executed

24

by the one or more processors, cause the computing device to perform functions comprising…"

25

'966 patent, claim 1.

26

Both the '885 and '966 asserted claims are capability claims.  As the Federal Circuit

27

recently explained in *INVT*, "computer and software claims typically use functional language to

28

define the invention," and the Court "frequently construed such functional language as not

requiring actual performance of those operative steps for infringement purposes.  Moreover, we have not required claims to adhere to a specific grammatical form to find that the claim is drawn to capability."  *INVT SPE LLC*, 46 F.4th at 1372-73.  When claims are drawn to functionality, "the presence of that [claimed] programming in the accused products [is] all that was necessary for establishing infringement."  *Id.* at 1373.  *See also Texas Advanced Optoelectronic Solutions, Inc. v. Renesas Elec. Am., Inc.*, 895 F.3d 1304, 1327 (Fed. Cir. 2018).

Google nonetheless contends that these claims require more than programming that carries out the claimed functions.  Google Br. re Instruction No. 10.  Google does not identify *any case* with analogous claim language where the Federal Circuit (or any court) found the claims recited more than capability.  Just the opposite.  Here, the claims require "***program instructions*** … ***that, when executed***" perform certain functions.  That is exactly the same capability formulation the Federal Circuit recognized in *VirnetX Inc. v. Apple Inc*., 792 F. App'x 796, 808 (Fed. Cir. 2019) and similar cases.  Specifically, the Court held that the claim language "when executed" means capability:

> Claim 13 is the only asserted claim of the '151 patent:
>
> 13. A computer readable medium storing a domain name server (DNS) module comprised of ***computer readable instructions that, when executed***, cause a data processing device to perform the steps of:
> (i) determining whether a DNS request sent by a client corresponds to a secure server;
> (ii) when the DNS request does not correspond to a secure server, forwarding the DNS request to a DNS function that returns an IP address of a nonsecure computer; and
> (iii) when the intercepted DNS request corresponds to a secure server, automatically creating a secure channel between the client and the secure server.

*VirnetX*, 792 F. App'x at 799.  The Court held:

> Claim 13 requires a computer readable medium, not the underlying process itself, so infringement "do[es] not require the performance of any method steps." *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1204 (Fed. Cir. 2010). When it is "undisputed that software for performing the claimed functions existed in the products when sold," infringement occurs when the party sells those products. *Id.* at 1205. Accordingly, VirnetX was not required to prove that Apple or its customers actually executed VPN on Demand, just that Apple sold devices with VPN on Demand installed. There is no dispute that Apple did so.

*Id.* at 808.  There is no reasonable dispute that the claims here are also capability claims.  To the

extent Google is trying to rewrite Sonos's system claims as method claims, the Court should reject that effort.  *See Finjan*, 626 F.3d at 1204-05 ("non-method claims describe capabilities without requiring that any software components be 'active' or 'enabled'").  Google also now asserts that all claims require three "Zone Players" and that the '885 patent requires a "network device," yet another argument Google *never* raised during the showdown proceeding or in any of its expert reports.  Google points to nothing in the claims requiring three zone players, nor is there any such claim language.  The '885 patent requires a single zone player.  The '996 patent doesn't require any zone player; it requires a controller (*e.g.*, a smart phone).  The claims discuss programming that allows one zone player to be added to two different speaker groups, and the claims are infringed when that programming is provided on the zone player or controller, not when the programming is actually used.  Google's new noninfringement theories have no basis in the record or the claim language and are no basis to reject Sonos's correct and applicable instruction.  Indeed, Google's new "noninfringement" arguments necessitate Sonos's instruction so that the jury is not mislead into believing that more than capability is required for infringement.

## V.   DISPUTED INSTRUCTION NO. 11 RE INDUCING PATENT INFRINGEMENT

Both parties propose an instruction for Disputed Instruction No. 11.  There are two disputed issues.

The first disputed issue is Google's objection to Sonos's inclusion of the standard model instruction regarding willful blindness.  Sonos requests that the Court include the following standard instruction from the Model, with only minor modifications for the facts of this case:

> The [alleged infringer] may be considered to have known that the acts it was causing would infringe the [ ] patent if it subjectively believed there was a high probability that the directly infringer's product or method was patented and nevertheless deliberately took steps to avoid learning that fact, in other words, willfully blinded itself to the infringing nature of the direct infringer's acts.

*N.D. Cal. Model Patent Jury Instructions B.3.7., Rev. Aug. 2017 (updated Oct. 2019)*.

In this case, Sonos intends to prove Google's knowledge of infringement in part by establishing Google's willful blindness, an issue that the Court has already ruled will go to the

1    jury.  Google moved for summary judgment of no indirect infringement.  Dkt. 482-14 at 24-25.

2    Sonos opposed, arguing among other things that "the evidence raises material disputes of fact that

3    Google was, at a minimum, willfully blind to its infringement of the asserted patents," Dkt. 509-

4    02 at 24, *see also id.* at 25 (citing *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766

5    (2011)).  On reply, Google attempted to take on Sonos's willful blindness argument, arguing that

6    "[t]his secondary argument also fails because none of the purported 'evidence' cited

7    demonstrates—as would be required for Sonos utilize willful blindness as an alternative to actual

8    knowledge of the patents—that Google 'subjectively believed there was a high probability' that

9    its products infringed the '033 and '966 patents or that Google deliberately avoided learning

10   about that infringement."  Dkt. 536-03 at 14-15.  Indeed, Google spent almost an entire page of its

11   15-page reply addressing Sonos's willful blindness theory specifically.

12       In its order on summary judgment, the Court noted "Sonos argues that there remains a

13   genuine dispute of material fact as to whether Google was at least willfully blind to its

14   infringement" and ruled that "[u]pon review, this order agrees with Sonos with respect to the '966

15   patent, which was asserted in Sonos's original complaint," and that "[k]nowledge of

16   infringement and specific intent may be inferred from circumstantial evidence."  Dkt. 566 at 30

17   (citing *Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 824 F.3d 1344, 1347 (Fed. Cir. 2016)).

18   Because the Court has already rejected Google's effort to take this question away from the jury,

19   the Court should also reject Google's attempt to do so here.

20       Second, Sonos included a neutral explanation of its inducement allegation:  that Google

21   induced infringement "by inducing other people to install the Google Home App, YouTube

22   Music app, and Google Play Music app, on their Internet-connected computing devices."  This

23   neutral statement should be included to help the jury understand which acts are directly infringing

24   versus indirectly infringing.

25       Google contends that this instruction is incorrect because Google Play Music and the

26   YouTube Music app are not used to *create* speaker groups.  Sonos points to Google Play Music

27   and the YouTube Music apps because they can be used to invoke speaker groups for synchronous

28   playback.  *See* Dkt. 309 at 6 (Order Granting Summary Judgment on the '885 Patent) ("Sonos

SONOS, INC.'S MEMORANDUM REGARDING
DISPUTED JURY INSTRUCTIONS
3:20-cv-06754-WHA

1   contends that Google's products that employ cast technology infringe claim 1 [of the '885 patent]

2   because they allow users to "create, save, and name as many speaker groups as desired" (Br. 6).

3   Accused products include Google's "Cast-enabled apps" such as the Google Home app, Google

4   Play Music app, and YouTube Music app (Br. 3–7).").  Sonos's instruction thus accurately

5   reflects the accused products in this case.

6   **VI.      DISPUTED INSTRUCTION NO. 12 RE CONTRIBUTORY INFRINGEMENT**

7          Both parties propose an instruction for Disputed Instruction No. 12.  There are two

8   disputed issues.

9          First, consistent with binding law, this Court's order on summary judgment, and with

10  Sonos's claims in this case, Sonos requests that the Court include an instruction regarding willful

11  blindness.  Sonos explained above that this Court has already rejected Google's effort to take

12  Sonos's willful blindness theory away from the jury.  For substantially the same reasons noted

13  above, the Court should reject this effort here too.

14         Because this District's Model Patent Jury Instructions do not specifically include a willful

15  blindness instruction for contributory infringement, Sonos further explains why binding law

16  supports this request here.

17         Sonos requests the following instruction:

18      Google may be considered to have known that the acts it was causing would infringe
        the asserted patents if it **subjectively believed there was a high probability that**
19      **the asserted patents existed** and that the accused apps were especially made or
        adapted for use in an infringing manner and **nevertheless deliberately took steps**
20      **to avoid learning those facts,** in other words, **willfully blinded itself to the**
        **infringing nature of the direct infringer's acts**.
21

22      The core, bolded part of this proposed instruction comes directly from the Supreme

23  Court's decision in *Global-Tech Appliances* on the elements of willful blindness:

24      While the Courts of Appeals articulate the doctrine of willful blindness in slightly
        different ways, all appear to agree on two basic requirements: (1) The defendant
25      must **subjectively believe that there is a high probability that a fact exists** and
        (2) the defendant must **take deliberate actions to avoid learning of that** fact. We
26      think these requirements give willful blindness an appropriately limited scope that
        surpasses recklessness and negligence. Under this formulation, a willfully blind
27      defendant is one who takes deliberate actions to avoid confirming a high probability
        of wrongdoing and who can almost be said to have actually known the critical facts.
28      See G. Williams, Criminal Law § 57, p. 159 (2d ed. 1961) ("A court can properly

find wilful blindness only where it can almost be said that the defendant actually knew"). By contrast, a reckless defendant is one who merely knows of a substantial and unjustified risk of such wrongdoing, see ALI, Model Penal Code § 2.02(2)(c) (1985), and a negligent defendant is one who should have known of a similar risk but, in fact, did not, see § 2.02(2)(d).

*Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769-70 (2011) (emphases added for purposes of comparison). *See also, e.g., id.* at 771 ("Taken together, this evidence was more than sufficient for a jury to find that Pentalpha subjectively believed there was a high probability that SEB's fryer was patented, that Pentalpha took deliberate steps to avoid knowing that fact, and that it therefore **willfully blinded itself to the infringing nature of Sunbeam's sales**." (emphasis added for purposes of comparison)).

Moreover, as the Federal Circuit has held, applying this and other Supreme Court precedent, there is no question that willful blindness can satisfy the knowledge requirement for contributory infringement:

> The Supreme Court's decision in *Commil* reaffirmed and clarified the Court's earlier decision in *Global–Tech* on the standard for inducement under § 271(b) but did not change the law. *See Commil*, 135 S.Ct. at 1927-28. *Commil*, like *Global–Tech*, held that proof of induced infringement requires not "only knowledge of the patent" but also "proof the defendant knew the [induced] acts were infringing." *Id.* at 1926, 1928. *Commil*, in reaffirming *Global-Tech*, also necessarily reaffirmed that willful blindness can satisfy the knowledge requirement for active inducement under § 271(b) (**and for contributory infringement under § 271(c)**), even in the absence of actual knowledge. *Global–Tech*, 131 S.Ct. at 2070.

*Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 824 F.3d 1344, 1347 (Fed. Cir. 2016) (emphasis added).

Because the Court has already rejected Google's challenge to the jury hearing Sonos's willful blindness claim for indirect infringement of the '966 patent, and because Sonos's proposed willful blindness instruction is drawn directly from binding precedent, the Court should include Sonos's requested instruction on willful blindness.

Second, Sonos included a neutral explanation of its contributory infringement allegation: that Google contributed to infringement "by offering the Google Home app, YouTube Music app, and Google Play Music app." This neutral statement should be included to help the jury understand which acts are directly infringing versus indirectly infringing. As explained above,

1    this instruction accurately captures the accused products in this case.

2    **VII.    DISPUTED INSTRUCTION NO. 13 RE WILLFUL INFRINGEMENT**

3            Both parties propose an instruction for Disputed Instruction No. 13.  There are six

4    disputed issues.

5            *First*, Google asks the Court to instruct the jury that "I have already found that any

6    infringement of claim 1 of the '885 patent by Google was not willful."  Sonos requests instead—

7    here and globally—that the Court instruct the jury that "I am not asking you to decide whether

8    Google's infringement of claim 1 of the '885 patent was willful."  Sonos discusses that request

9    above, in Section I.  Additionally, Google contends in the context of this instruction that Sonos's

10   language is an attempt to mislead the jury.  But Sonos proposes an accurate, neutral instruction

11   that tells the jury exactly what they need to know—that they are not being asked to decide the

12   issue.  As discussed above, the jury needs—as Google cannot dispute—to know that Google has

13   already been found to infringe the '885 patent via its prior versions of the accused products, in

14   order to determine Sonos's claim for damages.  But there is no reason the jury needs to be

15   instructed regarding the outcome of the Court's '885 willfulness ruling—it has literally no

16   bearing on any claim or defense at issue in trial.  Google argues that Sonos is attempting to

17   emphasize the Court's favorable rulings for Sonos and shielding the jury from ones that are

18   unfavorable to Sonos, but identifies *no* relevance to the Court's willfulness ruling.  Google's

19   misguided request for parity thus compares apples to oranges.  The more relevant comparison

20   here would be that the Court should not instruct the jury on the disposition of '885 willfulness *or*

21   on the disposition of Google's losing challenges to '885 validity.  Because the latter is not

22   information that the jury needs, Sonos does not seek instruction on it.  The same logic should

23   apply here.  The Court should follow its practice in *Applera v. Illumina*, where the Court noted "I

24   don't think there is any point in trying to frame it in a way that casts dispersions on anyone's prior

25   arguments."  Case No. 3:07-cv-02845-WHA, Dkt. 400 at 2227:1-21.

26           *Second*, consistent with binding caselaw, Sonos requests the following instruction:

27   "Willfulness requires you to determine whether Sonos proved that it is more likely than not that

28   Google knew of Sonos's patents and that the infringement by Google was intentional **or**

**deliberate**."  Google opposes the inclusion of "or deliberate."  But the jury should be instructed consistent with binding law, which provides, for example:

> Finally, we address the district court's statement in *SRI III* that the Federal Circuit "made clear that the standard for willfulness" applicable on remand is "whether 'Cisco's conduct rose to the level of wanton, malicious, and bad-faith behavior required for willful infringement.'" *SRI III*, 2020 WL 1285915, at \*1 (quoting *SRI II*, 930 F.3d at 1309). The district court also noted that "the Court of Appeals is not entirely consistent in its use of adjectives to describe what is required for willfulness." *SRI III*, 2020 WL 1285915, at \*1 n.1. To eliminate the confusion created by our reference to the language "wanton, malicious, and bad-faith" in *Halo*, we clarify that it was not our intent to create a heightened requirement for willful infringement. Indeed, that sentence from *Halo* refers to "conduct warranting enhanced damages," not conduct warranting a finding of willfulness. *Halo*, 136 S. Ct. at 1932 ("The sort of conduct warranting enhanced damages has been variously described in our cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate.") As we said in *Eko Brands*, "[u]nder *Halo*, **the concept of 'willfulness' requires a jury to find no more than deliberate or intentional infringement**." *Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1378 (Fed. Cir. 2020) (citing *Halo*, 136 S. Ct. at 1933).

*SRI Int'l, Inc. v. Cisco Sys., Inc.*, 14 F.4th 1323, 1329-30 (Fed. Cir. 2021), *cert. denied*, 142 S. Ct. 2732 (2022) (emphasis added).

*Third*, Google strikes through a portion of the model instruction's that the jury "must also find that Google deliberately infringed the '966 patent *or recklessly disregarded Sonos's patent rights*."  Reckless disregard is a valid standard for determining willfulness.  *See Ironburg Inventions Ltd. v. Valve Corp.*, 64 F.4th 1274 (Fed. Cir. 2023) ("All of this provided the jury with substantial evidence to support a finding that Valve 'recklessly' disregarded Ironburg's patent rights and, therefore, willfully infringed."; jury was instructed "that it needed to determine whether Valve acted with 'deliberate or reckless disregard of plaintiff's patent rights[.]'").

*Fourth,* Sonos objects to Google's requested instruction that the jury should consider "[w]hether or not Google intentionally copied a product of Sonos that is covered by the Asserted Patents."  The parties have stipulated in this case that "[n]either party will reference or argue any alleged 'copying' of its technology by the other party."  Because the parties have agreed to exclude any such argument or evidence from this case, this instruction will only confuse the jury.

*Fifth*, Sonos objects to Google's implicit request to limit the willfulness instruction to infringement based solely on Google's direct infringement.

Sonos requests that the Court instruct the jury: "However, if you decide that **Google has**

**infringed** any of the asserted claims of the '966 patent, you must go on and address the additional issue of whether the infringement of those claims was willful." Referring to Google's infringement encompasses both direct and indirect infringement.

Google requests that the Court instruct the jury: "However, if you decide that **Google's products infringe** any of the asserted claims of the '966 patent, you must go on and address the additional issue of whether the infringement of those claims was willful." This suggests that willfulness only applies to infringement by Google products, when in fact Sonos accuses non-Google hardware (e.g., iPhones) when combined with Google software (e.g., the Google Home App) of indirect infringement.

The Court's order on Google's motion for summary judgment rejected Google's efforts to take Sonos's claims for indirect infringement of the '966 patent away from the jury. Sonos's claims for indirect infringement of the '966 patent thus remain live and will be tried. The Court should reject Google's back-door efforts to limit this trial or Sonos's willfulness claims to direct infringement via Google-only products.

*Sixth*, Sonos requests that the Court instruct the jury that Google's "knowledge" under the willfulness standard may be shown by proof of willful blindness, which Google opposes.

Once again, the Court has already addressed this issue, ruling that for purposes of proving "willful and indirect infringement of the '966 patent," Dkt. 566 at 31, "[k]nowledge of infringement and specific intent may be inferred from circumstantial evidence," *id.* at 30. And once again, extensive binding law supports Sonos's requested instruction.

In the context of a model instruction that states "[t]o determine whether Google acted willfully, consider all facts and assess Google's knowledge at the time of the challenged conduct," Sonos requests that the Court add a single sentence: "Knowledge of a fact may be inferred where a defendant intentionally blinds itself to that fact, because a person who knows enough to do so effectively has knowledge of that fact."

Sonos's request comes directly from the Supreme Court's holding that "actual knowledge can be proved through 'inference from circumstantial evidence.'" *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 140 S. Ct. 768, 779 (2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)).

1   *See id.* ("On top of that, actual knowledge can be proved through 'inference from circumstantial

2   evidence.'").  It is similarly well-established that willful blindness is one such theory on which

3   parties may argue that an opposing party had knowledge.  *See id.* ("Today's opinion also does not

4   preclude defendants from contending that evidence of 'willful blindness' supports a finding of

5   'actual knowledge.'" (citing *Global-Tech Appliances, Inc. v. SEB S. A.*, 563 U.S. 754, 769

6   (2011)); *Unicolors, Inc. v. H&M Hennes & Mauritz, L. P.*, 142 S. Ct. 941, 948 (2022) ("We have

7   recognized in civil cases that willful blindness may support a finding of actual knowledge."

8   (citing *Intel Corp*)).

9          Moreover, in one of the leading cases on willful blindness in the context of induced

10  infringement, the Supreme Court has cited with approval the formulation that Sonos requests in

11  the second half of the requested sentence, that "a person who knows enough to [blind itself to that

12  fact] effectively has knowledge of that fact."

> The doctrine of willful blindness is well established in criminal law. Many criminal
> statutes require proof that a defendant acted knowingly or willfully, and courts
> applying the doctrine of willful blindness hold that defendants cannot escape the
> reach of these statutes by deliberately shielding themselves from clear evidence of
> critical facts that are strongly suggested by the circumstances. The traditional
> rationale for this doctrine is that defendants who behave in this manner are just as
> culpable as those who have actual knowledge. Edwards, The Criminal Degrees of
> Knowledge, 17 Mod. L.Rev. 294, 302 (1954) (hereinafter Edwards) (observing on
> the basis of English authorities that "up to the present day, no real doubt has been
> cast on the proposition that [willful blindness] is as culpable as actual knowledge").
> **It is also said that persons who know enough to blind themselves to direct proof
> of critical facts in effect have actual knowledge of those facts.** *See United States
> v. Jewell*, 532 F.2d 697, 700 (C.A.9 1976) (en banc).

20  *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011) (emphasis added for purposes

21  of comparison).  *See also*, *e.g.*, *id.* at 769 ("While the Courts of Appeals articulate the doctrine of

22  willful blindness in slightly different ways, all appear to agree on two basic requirements: (1) The

23  defendant must subjectively believe that there is a high probability that a fact exists and (2) the

24  defendant must take deliberate actions to avoid learning of that fact. We think these requirements

25  give willful blindness an appropriately limited scope that surpasses recklessness and negligence.

26  Under this formulation, a willfully blind defendant is one who takes deliberate actions to avoid

27  confirming a high probability of wrongdoing and who can almost be said to have actually known

28

1    the critical facts.").[3]

2           Unsurprisingly, in light of this binding caselaw, other courts in this District have rejected

3    arguments by alleged infringers that willful blindness theories cannot satisfy the knowledge

4    element required for willful infringement—providing additional support for this Court's earlier

5    ruling that for purposes of proving "willful … infringement of the '966 patent," Dkt. 566 at 31,

6    "[k]nowledge of infringement and specific intent may be inferred from circumstantial evidence,"

7    *id.* at 30.  For example:

8           Apple contends that allowing willful infringement claims based on a defendant's
             willful blindness contradicts the Federal Circuit's statement that "[k]nowledge of
9           the patent alleged to be willfully infringed continues to be a prerequisite for
             enhanced damages." *WBIP*, 829 F.3d at 1341. Reply at 4; Second Mot. at 6.
10          However, the United States Supreme Court made clear in *Global-Tech* that a finding
             of willful blindness is, in effect, a finding of knowledge. 563 U.S. at 770 (discussing
11          how the willful blindness doctrine "permits a finding of knowledge"). Post-*Halo*,
             courts have recognized that allegations of willful blindness can satisfy the
12          knowledge requirement for willful infringement. *See Straight Path IP Grp., Inc. v.
             Apple Inc.*, 2017 WL 3967864, at *4 (N.D. Cal. Sept. 9, 2017) (denying motion for
13          judgment on the pleadings on an enhanced damages claim predicated on plaintiff's
             willful blindness allegation). The Court therefore considers Corephotonics' willful
14          blindness claims.

15   *Corephotonics, Ltd. v. Apple, Inc.*, No. 17-CV-06457-LHK, 2018 WL 4772340, at *9 (N.D. Cal.

16   Oct. 1, 2018).

17          Because the Court has already rejected Google's challenge to the jury hearing Sonos's

18   willful blindness claim for willful infringement of the '966 patent, and because Sonos's proposed

19   willful blindness instruction is drawn directly from binding precedent, the Court should include

20   Sonos's requested instruction on willful blindness.

21   **VIII.   DISPUTED INSTRUCTION NO. 14 RE INVALIDITY – BURDEN OF PROOF**

22          Both parties propose an instruction for Disputed Instruction No. 14.  Sonos objects to

23

24   _____
     [3] Google notes that while it objects to any willful blindness instruction, it requests in the
25   alternative an instruction based on the "two basic requirements" discussed in *Glob-Tech*.  But
     Sonos's proposal better ties the legal rule discussed in *Glob-Tech* to the "knowledge" standard
26   required under willfulness.  As noted above, in the context of a model instruction that states "[t]o
     determine whether Google acted willfully, consider all facts and assess Google's knowledge at
27   the time of the challenged conduct," Sonos requests that the Court add a single sentence:
     "Knowledge of a fact may be inferred where a defendant intentionally blinds itself to that fact,
28   because a person who knows enough to do so effectively has knowledge of that fact."  Google
     offers no alternate proposal that ties the willful blindness standard to the willfulness standard in a
     manner that is easy for the jury to understand.

1   Google's proposed instruction as a whole as unnecessarily lengthy and complex, repetitive of

2   other instructions, and untethered to any identified model patent instruction.  To avoid these

3   issues, Sonos proposes that the Court instruct the jury with the Federal Circuit Bar Association's

4   Model Instruction:

5   > I will now instruct you on the rules you must follow in deciding whether or not
    > [alleged infringer] has proven that claims [ ] of the [ ] patent are invalid. To prove
6   > that any claim of a patent is invalid, [alleged infringer] must persuade you by clear
    > and convincing evidence, that is, you must be left with a clear conviction that the
7   > claim is invalid.

8   *Fed. Cir. Bar Association Model Patent Jury Instructions B.4.1, Rev. May 2020.*

9   Sonos's proposed instruction is materially identical:

10  > I will now instruct you on the rules you must follow in deciding whether or not
    > Google has proven that any claim of the Asserted Patents is invalid. To prove that
11  > any claim of a patent is invalid, Google must persuade you by clear and convincing
    > evidence, that is, you must be left with a clear conviction that the claim is invalid.

12  Google's proposed instruction, by contrast, dives into a range of other issues, including lengthy

13  disquisitions on prior art, which are already the subject of multiple other instructions.  While

14  Google accuses Sonos of cherry-picking a different model instruction, Sonos proposes a neutral,

15  simple model that accounts for the other instructions that the jury will already receive.  And

16  Google's proposal seems drawn from no model.  Google cites to this District's model, but only

17  one sentence clause of Google's five-paragraph instruction appears drawn from that model.  *See*

18  Google's Proposed Instruction ("Prior art that differs from the prior art considered by the PTO

19  may carry more weight than the prior art that was considered ….").

20          Google includes that sentence as part of its request that the Court instruct the jury on prior

21  art not considered by the Patent Office:

22  > The fact that any particular reference was or was not considered by the Patent Office
    > does not change Google's burden of proof. However, in making your decision
23  > whether Google has demonstrated that a claim is invalid by clear and convincing
    > evidence, you may consider whether Google has presented any materially new prior
24  > art references that the Patent Office had no opportunity to evaluate. Prior art that
    > differs from the prior art considered by the PTO may carry more weight than the
25  > prior art that was considered, and Google's burden may be easier to meet if all
    > material facts were not before the Patent Office when it issued a patent.

26  But this paragraph-length proposed instruction both lacks basis in a model instruction (except for

27  the final sentence) and duplicates another instruction that Google has requested regarding the

28

weight to be given to prior art depending on whether the PTO considered the art.  Specifically, Google requests a duplicative instruction be given as part of Disputed Instruction No. 18, regarding anticipation:

> Where Google is relying on prior art that was not considered by the PTO during examination, you may consider whether that prior art is significantly different and more relevant than the prior art that the PTO did consider. If you decide it is different and more relevant, you may weigh that prior art more heavily when considering whether the challenger has carried its clear-and-convincing burden of proving invalidity.

Sonos objects to Google's first instruction on prior art not considered by the Patent Office as both duplicative of the second instruction and as not based on any identified model.  The Court should give the version of the "prior art not considered by the Patent Office" instruction contained within Disputed Instruction No. 18, which is based directly on this District Court's model jury instructions and more clearly expresses the law to a lay jury.  For example, Google's instruction refers only to "materially new evidence," while the model gives color to what "materially new" means by expressing it as "significantly different and more relevant" evidence.  A lay jury will more easily understand what "significantly different and more relevant" is than they will understand "materially new."  Similarly, the District's model instruction on how to evaluate the burden of proof is more easily understood by a lay jury, who will be instructed on "weighing the evidence" earlier in the case: "you may weigh that prior art more heavily when considering whether the challenger has carried its clear-and-convincing burden of proving invalidity."

Google confuses the issue by contending that its Disputed Instruction No. 14 is supported by this District's Model Instruction.  It is not.  Google's duplicative Disputed Instruction No. 18, by contrast, *is* based on a different model, from the Federal Circuit Bar Association.  And Sonos has no objection to *that* instruction being given *once* in this case.

## IX.   DISPUTED INSTRUCTION NO. 15 RE INVALIDITY—PERSPECTIVE OF ONE OF ORDINARY SKILL IN THE ART

Both parties propose an instruction for Disputed Instruction No. 15.  There are two issues in dispute.  First, the parties have an ongoing factual dispute regarding the date of invention, which Sonos contends was in 2005.  Sonos objects to Google's request to instruct the jury that the relevant timeframe was "between December 2005 and September 2006."  Sonos's position is that

1  the invention was made in December 2005, not sometime "between December 2005 and

2  September 2006."

3      Google may dispute Sonos's conception date at trial, and as the party challenging patent

4  validity, Google has the burden to prove by clear and convincing evidence that an invalidating

5  reference is prior art. *Allergan, Inc. v. Apotex Inc.*, 754 F.3d 952, 967 (Fed. Cir. 2014)

6  (discussing burden of production and persuasion and clarifying that party seeking invalidate the

7  patent always bears the burden of proof); *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316,

8  1327 (Fed. Cir. 2008) (same); *Plexxikon Inc. v. Novartis Pharm. Corp.*, No. 17-cv-4405-HSG,

9  ECF No. 560 at 27 (Final Jury Instructions) (instructing the jury that "Novartis has the burden of

10 proving, by clear and convincing evidence, that Plexxikon is not entitled to an earlier invention

11 date.").

12     Second, Sonos objects to Google's proposal to insert "alleged" prior to invention.

13 (Google repeats this insertion throughout the invalidity and damages instructions.)  This District's

14 Model, on which both parties rely, does not include a standard *or* optional instruction to this

15 effect.  Google's proposal inappropriately seeks to cast doubt on Sonos's invention not through

16 evidence but through the jury instructions.  Google's request to depart from the Model in favor of

17 language that casts more doubt on Sonos's invention should be rejected.

18 **X.    DISPUTED INSTRUCTION NO. 16 RE INVALIDITY—PRIOR ART**

19     Both parties propose an instruction for Disputed Instruction No. 16.  Sonos objects to

20 Google's addition of the following paragraph, which is not part of the model instruction on which

21 the parties rely, and which is duplicative and repetitive of later agreed-upon parts of Disputed

22 Instruction No. 16, as well as agreed-upon parts of Disputed Instructions No. 18 (Anticipation)

23 and No. 19 (Obviousness):

24     In order for someone to be entitled to a patent, the alleged invention must actually
       be "new" and not obvious over what came before, which is referred to as the prior
25     art.  Prior art is considered in determining whether claim(s) [ ] of the [ ] patent are
       anticipated or obvious.  Prior art may include items that were publicly known or that
26     have been used or offered for sale, or references, such as publications or patents,
       that disclose the claimed invention or elements of the claimed invention.

27

28 Every part of this instruction is already covered by other agreed-upon parts of the Disputed

1   Instructions noted above.

2        Google contends that the Court has given similar instructions in the past, but Sonos's

3   objection is that in the context of *these* instructions, Google's requested paragraph is duplicative.

4   Giving Google's requested duplicative instruction is unnecessary.

5   **XI.**    **DISPUTED INSTRUCTION NO. 17 RE INVALIDITY—STATUTORY BAR**

6        Sonos objects to any instruction for Disputed Instruction No. 17.  As the Model

7   Instruction notes, "[f]or a patent claim to be invalid by a statutory bar, all of its requirements must

8   have been present in one prior art reference dated more than one year before the patent

9   application was filed."  But Google has not identified *any* single prior art reference dated more

10  than one year before the patent application was filed that it even *contends* meets all of the

11  requirements of the '885 or '966 patents.  Moreover, this instruction is entirely duplicative of the

12  anticipation instruction.  Google contends that it is necessary to include this instruction because

13  its prior art references prove that Sonos lost the right to patent the claims of the '885 and '966

14  patents, but in addition to failing to identify any applicable prior art reference, Google also does

15  not point to any part of this "statutory bar" instruction that is not already covered by the

16  anticipation instruction.  This instruction will simply confuse the jury without adding anything of

17  substance.

18       With respect to the '966 patent, Google's relevant expert reports do not contend that any

19  single prior art reference meets all of the limitations of the asserted claims.  The opening expert

20  report of Google's technical expert Dr. Schonfeld, served on November 30, 2022, is illustrative.

21  While some of the section headers in the report suggest that the report will address the "invalidity

22  of the '966 patent based on anticipation and obviousness" (capitalization removed), every single

23  sub-section focuses on obviousness *combinations*.  Each argument regarding the alleged prior art

24  Sonos Products or System takes the form "Claim X Is Obvious Based on Prior Art Sonos

25  System."  And each argument regarding the Squeezebox reference takes the form "Claim X Is

26  Invalid Based On Squeezebox *in view of* General knowledge of a POSITA, the Sonos System, the

27  Sonos Forums, the Bose Lifestyle, or Millington." (emphasis added).  Google does not even claim

28  that it has identified any single prior art reference that meets all of the asserted claim limitations.

1    Indeed, Google no longer seeks to instruct the jury on anticipation for the '966 patent.

2        With respect to the '885 patent, by contrast, Google (briefly) contends that claim 1 is both

3    anticipated over and obvious in view of Squeezebox, and identifies no other prior art reference for

4    purposes of anticipation—*i.e.*, no other single prior art reference that allegedly meets all of the

5    asserted claim limitations.  But even according to Google's own priority date theory, Squeezebox

6    was not dated to more than a year prior to the patent application was filed.

7        Google must show that Squeezebox is dated no later than September 12, 2005.  But

8    according to Google's Disputed Instruction No. 16, only Squeezebox's *source code* is dated prior

9    to that date, with all Squeezebox players, documentation, and virtual machine emulation dated

10   only prior to November 14, 2005.

11       But even if Google could prove that Squeezebox alone met every limitation of the '885

12   patent (or the '966 patent, which it has not argued), *and* that Squeezebox came at least a year

13   earlier, all of that just amounts to an anticipation claim.  The Court should simply instruct the jury

14   on anticipation—which Sonos does not oppose doing for the '885 patent.  There is no benefit to

15   instructing the jury twice on the same issue, which will only result in confusion over the

16   difference between the two instructions.

17       Sonos also objects to Google's proposal to insert "alleged" prior to invention.  This

18   District's Model, on which both parties rely, does not include a standard *or* optional instruction to

19   this effect.  Google's proposal inappropriately seeks to cast doubt on Sonos's invention not

20   through evidence but through the jury instructions.  Google's request to depart from the Model in

21   favor of language that casts more doubt on Sonos's invention should be rejected.  Google

22   suggests that this is a special case because Google disputes that there is any invention in the

23   asserted claims.  But that claim is hardly unique to this case.  The Court should reject Google's

24   request.

25   **XII.   DISPUTED INSTRUCTION NO. 18 RE INVALIDITY—ANTICIPATION**

26       Both parties propose an instruction for Disputed Instruction No. 18.  There is one issue in

27   dispute.  As explained above, Sonos maintains that the Court should only instruct the jury once

28   regarding prior art that was not before the patent office.  As also explained above, Sonos

1    separately objects to Google's duplicative proposed instruction as part of Disputed Instruction

2    No. 14 as inaccurate and confusing.  The Court should use the Federal Circuit Bar Association's

3    Model Instruction on this topic, which is more accurate and less confusing, which Google

4    proposes as part of this Disputed Instruction No. 18.  Sonos objects to the inclusion of this

5    instruction here if the Court grants Google's request to include the less accurate and duplicative

6    instruction described above.  If the Court denies Google's request to include the less accurate and

7    duplicative instruction described above, then Sonos has no objection to Google's proposed

8    Disputed Instruction No. 18.

9    **XIII.   DISPUTED INSTRUCTION NO. 19 RE INVALIDITY—OBVIOUSNESS**

10          Both parties propose an instruction for Disputed Instruction No. 19.  There are two

11   disputed issues.  First, Sonos objects to Google's proposal to change each instance of "the

12   claimed invention"—which is used more than a dozen times in this District's Model Instruction,

13   on which both parties rely, with "the alleged invention."  Google provides no support for this

14   change and its proposal inappropriately seeks to cast doubt on Sonos's invention not through

15   evidence but through the jury instructions.  Google's request to depart from the Model in favor of

16   language that casts doubt on Sonos's invention should be rejected.  The Model appropriately uses

17   "claimed invention" to focus the jury on the language of the claims, which is the proper focus for

18   invalidity.

19          Second, consistent with binding case law and the issues in this case, Sonos requests a

20   neutral instruction that the claimed prior art must be enabling:

21          In order for you to determine that a particular patent claim is proved obvious, Google
             must show, by clear and convincing evidence, that at the time of invention a person
22          skilled in the art could have actually made and used the claimed invention, without
             undue experimentation. This is referred to as "enabling" the claimed invention.
23

24          Each component of this instruction comes directly from binding statutory law and

25   caselaw.  "A patent shall be presumed valid," and the "[t]he burden of establishing invalidity of a

26   patent or any claim thereof shall rest on the party asserting such invalidity."  35 U.S.C. § 282

27   (pre-AIA version); *see also* § 282(a) (current version).

28          A patent shall be presumed valid. Each claim of a patent (whether in independent,

1
2
3
4

dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims; dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim. Notwithstanding the preceding sentence, if a claim to a composition of matter is held invalid and that claim was the basis of a determination of nonobviousness under section 103(b)(1), the process shall no longer be considered nonobvious solely on the basis of section 103(b)(1). The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity.

5

35 U.S.C. § 282 (pre-AIA version, effective November 2, 2002 to September 15, 2011).

6

7

And "[t]o render a claim obvious, the prior art, taken as a whole, must enable a skilled artisan to make and use the claimed invention."  *Raytheon Techs. Corp. v. Gen. Elec. Co.*, 993

8

9

F.3d 1374, 1380 (Fed. Cir. 2021) (citing *In re Kumar*, 418 F.3d 1361, 1368 (Fed. Cir. 2005)).

Moreover, "if an obviousness case is based on a non-self-enabled reference, and no other prior art

10

reference or evidence would have enabled a skilled artisan to make the claimed invention, then

11

the invention cannot be said to have been obvious." *Id.* at 1376-77.  As the Federal Circuit

12

explained in one leading case:

13

14

15

Second, the jury instruction complained of is a correct statement of the law. In order to render a claimed apparatus or method obvious, the prior art must enable one skilled in the art to make and use the apparatus or method. *In re Payne*, 606 F.2d 303, 314, 203 USPQ 245, 255 (CCPA 1979). Therefore, LKB has no grounds for complaining that the jury instruction was wrong.

16

*Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1551 (Fed. Cir. 1989).

17

Similarly, "it is well established that enablement requires that the specification teach those in the

18

art to make and use the invention without undue experimentation." *In re Wands*, 858 F.2d 731,

19

737 (Fed. Cir. 1988).

20

Whether the prior art enables the claimed invention is an active dispute between the

21

parties and the jury should be instructed on it.  Google moved for summary judgment of invalidity

22

of the '885 and '966 patents, which this Court denied.  *See* Dkt. 566 at 21-29.  In opposing that

23

motion, Sonos explained among other things that the alleged prior art—the Sonos 2005 system,

24

and certain Sonos Forum posts—does not enable the claims.  Dkt. 509-02 at 17-18.  Nothing in

25

either prior art reference teaches a person of ordinary skill in the art how to actually implement

26

the claimed "zone scene" technology, and the Sonos Forum posts express a mere hope that Sonos

27

would one day invent technology that allowed users to have "virtual zones," without providing

28

1    any direction, guidance, or working examples of how to carry out the invention.  *Id.* (citing Ex. I

2    (Almeroth Showdown Reb.), ¶¶196, 428; Ex. K (Almeroth Reb.), ¶¶277, 680).

3        If the jury is not instructed that it must find the prior art is enabling, Google's arguments

4    invite the jury to decide obviousness without making a necessary threshold inquiry that a person

5    of ordinary skill in the art must be able to make and use the claimed invention.  That inquiry has

6    nothing to with the patents' specification, and should instead based on the disclosures in the prior

7    art.  Google's opposition to Sonos's MIL No. 3 lays out Google's arguments as to how the prior

8    art teaches saving a speaker group, and Google may present that argument to the jury (subject to

9    objections about the scope of Google's expert report and the like).  Opp. at 5.  Google can make

10   that argument without any improper comparisons to the patents' specification.

11       But Google apparently plans to avoid its obligation to show that the prior art enables the

12   claims by making an improper comparison between the prior art and *the specification*—which is

13   *not* prior art.  For example, Google's opposition to Sonos's MIL No. 3 states that "Google intends

14   to show that the prior art contains the same disclosure of various claim limitations as the asserted

15   patents themselves."  Opp. at 1.  Google's argument improperly invites the jury to compare the

16   specification to the prior art, when the jury should be comparing the *claims* to the prior art.  That

17   argument is also extremely misleading because Google has never challenged the adequacy of the

18   patent's disclosure of "saving" groups.  Instead, Google challenged whether the specification

19   disclosed overlapping groups, Dkt. 309 at 14-15, and whether the specification disclosed certain

20   aspects of standalone mode, *id.* at 15-17.

21       Regardless of whether or not Google attempts to improperly compare the specification to

22   the prior art, Google's objection to Sonos's instruction is not well taken.  Google says that

23   Sonos's instruction requires that every obviousness reference must be enabled. Google Memo Re:

24   Instruction 19.  But Sonos's instruction *does not* require that any single reference be "self-

25   enabling" and is therefore entirely consistent with Google's objection.  Instead, Sonos's

26   instruction is clear that the prior art as a whole must enable the invention.  That is precisely what

27   *Raytheon* requires.  Given that this is an active dispute between the parties, Sonos has proposed a

28   neutral and legally correct instruction covering the dispute, and Google has offered no

1   counterproposal, the Court should give Sonos's instruction. *Clem v. Lomeli*, 566 F.3d 1177, 1181

2   (9th Cir. 2009) ("[e]ach party is . . . ' "entitled to an instruction about his or her theory of the case

3   if it is supported by law and has foundation in the evidence," ' and "[a] district court . . . commits

4   error when it rejects proposed jury instructions that are properly supported by the law and the

5   evidence.").

6   **XIV.   DISPUTED INSTRUCTION NO. 20 RE INVALIDITY—DERIVATION**

7          Sonos objects to any instruction for Disputed Instruction No. 20.  Google never disclosed

8   a derivation claim for the '885 and '966 patents—not in its invalidity contentions, not in any of

9   the thousands of pages of expert reports it produced in this case, and not in the responses to

10  Sonos's contention interrogatories that Google served in the final days of fact discovery.  Indeed,

11  Google had apparently not even come up with the idea for this claim by *April 12, 2023*, the date

12  on which it served its proposed jury instruction redlines, *see* Dkt. 457, only signaling its intent to

13  pursue this claim days later.

14         Google claims this theory was disclosed in its expert report.  The cited portions of

15  Google's expert report discuss the Sonos Forums but do not contain any opinion as to how the

16  Sonos Forums support a derivation argument.  Indeed, there is no mapping of Sonos Forums onto

17  the claim limitations nor any opinion that the Forums show conception of the complete invention.

18         Google cites two additional disclosures in Google's Opposition to Sonos's motion in

19  *limine* No. 5.  The first is Google's invalidity contentions, which say that "should discovery

20  reveal additional evidence," Google might someday disclose a derivation theory.  *See* Ex. 1 to

21  Google Opp. to MIL No. 5.  The second is the following paragraph of Dr. Schonfeld's opening

22  report:

23         175. I understand that the Sonos Forums were publicly available at least as of September

24         2005, making them prior art under 35 U.S.C. 102(a), 102(b), and 102(f).

25  *See* Ex. 2. to Google Opp. to MIL No. 5.  Google's failure to provide any disclosure or expert

26  testimony on this claim sandbags Sonos and is fatal to any half-baked claim that Google would

27  test for the very first time on the jury.  That failing is particularly acute on a claim such as this

28  one, where the asserted patents are statutorily presumed valid, and where Google bears a heavy

1   burden under the clear and convincing evidence standard.

2       Google's derivation argument—entirely lacking any expert support—fails.  "To show

3   derivation, the party asserting invalidity must prove both prior conception of the invention by

4   another and communication of that conception to the patentee."  *Gambro Lundia AB v. Baxter*

5   *Healthcare Corp.*, 110 F.3d 1573, 1576 (Fed. Cir. 1997).  Google cannot show either.

6       For conception, Google's evidence is a few sentences in the Sonos Forums prior art.

7   Conception is typically shown by inventor testimony and corroborating evidence.  *See, e.g.*,

8   *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1228, 1232 (Fed. Cir. 1994).  Because

9   Google has no "inventor" testimony from the authors of the Forum posts, the post themselves are

10  the full extent of Google's conception evidence.  That means Google would have to show, by

11  clear and convincing evidence, that the post "Why can't I have a virtual zone – ie a zone called

12  'Downstairs' – and I can group all my downstairs zones into this. Then I dont have to keep

13  manually linking/unlinking multiple zones everytime.  PLEASE !" or the post "I would save Zone

14  links as favorites. . . . Another example I would have 2 party modes, Summer and Winter.  The

15  Summer mode would include the deck speakers and the Winter mode would not" demonstrates

16  "the formation in the mind of the inventor of a definite and permanent idea of the complete and

17  operative invention."[4]  *E.I. du Pont De Nemours & Co. v. Unifrax I LLC*, 921 F.3d 1060, 1075

18  (Fed. Cir. 2019).

19      The aspirational hopes expressed in the forum posts fail *as a matter of law* to support a

20  derivation claim, as the Federal Circuit has explained:

21      Mylan argues that the request for data to support the inclusion of EDTA required
        Cumberland to undertake research that would have inevitably led it to the invention.
22      That is not enough for derivation. We have held that **derivation is not proved by
        showing conception and communication of an idea different from the claimed
23      invention even where that idea would make the claimed idea obvious**. *Gambro
        Lundia*, 110 F.3d at 1577–78. We also have made clear that a **"general goal or
24      research plan" does not constitute the "definite and permanent idea" required
        for conception**, *Burroughs Wellcome*, 40 F.3d at 1228, and that **a "bare hope" of
25      a result "never before ... achieved"** (here, the claimed "stable" compound) **is not
        sufficient for conception**, *Hitzeman v. Rutter*, 243 F.3d 1345, 1356-57 (Fed. Cir.
26      2001). *See Cumberland*, 137 F.Supp.3d at 1121. The kind of general research

27

28  ---
    [4] *See* Dkt. 483, Google's Mot. Summ. J., at 16-17.

SONOS, INC.'S MEMORANDUM REGARDING
DISPUTED JURY INSTRUCTIONS
3:20-cv-06754-WHA

suggestion at issue here, whatever its role in an obviousness analysis, does not establish the conception required for derivation.

*Cumberland Pharms. Inc. v. Mylan Institutional LLC*, 846 F.3d 1213, 1219 (Fed. Cir. 2017) (emphases added).  There is no way that the statement "Why can't I have a virtual zone – ie a zone called 'Downstairs' – and I can group all my downstairs zones into this" demonstrates conception of, for example, Claim 1 of the '885 patent's requirement that a zone player receive (i) "indications" that the zone player "has been added" to two newly-created "zone scene[s]" and (ii) an "instruction to operate in accordance with" a "zone scene" that has been selected for invocation after its creation. *See* '885 Patent claim 1.  Perhaps that is why Google offered no expert opinion regarding derivation.

Moreover, Google has no evidence of communication of any conception between the authors of the Sonos forum posts to Robert Lambourne, the inventor of the '885 and '966 patents.

To the extent Google is asking for this instruction simply to bolster its obviousness arguments, that is improper.  The jury should not be instructed on this late-disclosed and baseless derivation theory.

## XV.   DISPUTED INSTRUCTION NO. 21 RE DAMAGES—BURDEN OF PROOF

Both parties propose an instruction for Disputed Instruction No. 21.  The parties dispute one sentence in this instruction.

Sonos requests that the Court instruct the jury as follows:  "Since I have already found that prior versions of the '885 Accused Products infringe Claim 1 of the '885 patent, if you find that Google failed to prove by clear and convincing evidence that Claim 1 of the '885 patent is invalid, you must then determine the amount of money damages to be awarded to Sonos to compensate it for the infringement."  Google requests that the Court instruct the jury as follows: "Since I have already found that prior version[s] of the '885 Accused Products *meet the limitations of Claim 1* of the '885 patent, if you also find that Claim 1 of the '885 patent is *not invalid*, you must then determine the amount of money damages to be awarded to Sonos to compensate it for the infringement." (emphases added).

First, Google improperly seeks to shield the jury from the fact that the Court determined

that Google *infringed.*  Google's proposal seeks to sanitize that reality by replacing "infringed"

with the more abstract "meet the claim limitations of."  That language obscures a simple and

undisputed fact under a layer of abstraction for no valid reason, and it should be rejected.

Second, because the burdens of proof for invalidity and damages are different and borne

by different parties, Sonos requests that the Court include Sonos's proposed language, reflecting

Google's burden for establishing invalidity of the '885 patent.  To avoid further objections, Sonos

does not itself request that the Court repeat that identical language for the '966 patent as well,

because Sonos believes that one such reference in this instruction will suffice, but Sonos has no

objection to the Court doing so.

## XVI.   DISPUTED INSTRUCTION NO. 23 RE REASONABLE ROYALTY— DEFINITION

Both parties propose an instruction for Disputed Instruction No. 23.  First, Sonos objects

to Google's proposal to insert "alleged" prior to invention.  As explained above, Google's

proposal inappropriately seeks to cast doubt on Sonos's invention not through evidence but

through the jury instructions.  The injection of "alleged" is especially inappropriate in the

damages instructions because the jury must have found the patents are valid and infringed to

award damages in the first place.

Second, the parties dispute whether the damages award should be in the form of a per-unit

royalty or a one-time lump sum payment.  The jury will need to resolve that dispute.  In order to

resolve it, the jury needs to be instructed on both forms of damages.  Google's instruction is

biased in favor of a lump sum.  Sonos's instruction more neutrally explains both types of damages

and should be used here.

In particular, Sonos requests that the Court instruct the jury, consistent with this District's

Model Instruction, on how to calculate a per-unit royalty (sometimes referred to as an ongoing

royalty).  Sonos requests a materially identical instruction to this from that Model:

> One way to calculate a royalty is to determine what is called an "ongoing royalty."
> To calculate an ongoing royalty, you must first determine the "base," that is, the
> product on which the alleged infringer is to pay. You then need to multiply the
> revenue the defendant obtained from that base by the "rate" or percentage that you
> find would have resulted from the hypothetical negotiation. For example, if the
> patent covers a nail, and the nail sells for $1, and the licensee sold 200 nails, the
> base revenue would be $200. If the rate you find would have resulted from the

hypothetical negotiation is 1%, then the royalty would be $2, or the rate of 0.01 times the base revenue of $200. By contrast, if you find the rate to be 5%, the royalty would be $10, or the rate of 0.05 times the base revenue of $200. These numbers are only examples, and are not intended to suggest the appropriate royalty rate.

Instead of a percentage royalty, you may decide that the appropriate royalty that would have resulted from a hypothetical negotiation is a fixed number of dollars per unit sold. If you do, the royalty would be that fixed number of dollars times the number of units sold.

*N.D. Cal. Model Patent Jury Instructions B.5.7, Rev. Aug. 2017 (updated Oct. 2019)*.  Sonos agreed to change "ongoing" to "per-unit" because Google was concerned that the jury would be confused about "ongoing" given the redesign issues.  Sonos otherwise uses the model verbatim.

Google offers no comparable instruction, yet complains that Sonos's instruction is partially overinclusive.  Sonos's instruction succinctly and comprehensively introduces the jury to the concept of a per-unit royalty, royalty base, and how to determine both.  Stripping out large swaths of the model instruction would leave the jury without a complete understanding of the law.  This is especially true given the jury will be unfamiliar with patent damages or how to calculate "royalties."  Providing the model's step-by-step instruction with example calculations will not be confusing; it will be helpful.

Next, Google wants to include a paragraph on selecting the correct royalty base when there are separate *components* of the accused products, including an example of a car with separately sold tires.  The accused products do not have separate components.  And Google is not contending that Sonos used the wrong royalty base in any of Sonos's damages calculations.  So this instruction is irrelevant and likely to be confusing.  Sonos does agree with the inclusion of an apportionment instruction, namely that:

The ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product, and no more. When the accused infringing products have both patented and unpatented features, measuring this value requires you to identify and award only the value of the patented features.

Last, Sonos objects to Google's proposed instruction regarding comparable patent licenses.  For the reasons explained in Sonos's Motion in Limine No. 1, which Sonos incorporates by reference, at 3-7, Google has not identified any patent licenses that are both technologically

and economically comparable, as required to present these licenses to the jury.  Moreover,

Google's instruction is inaccurate.  It says that comparable licenses are "another" factor for

determining damages.  The jury will already be instructed to consider the *Georgia-Pacific* factors,

including "The rates paid by Google for the use of other patents comparable to the patent in suit."

There is no reason to highlight comparable licenses as a factor outside of the list of *Georgia-*

*Pacific* factors.  That is likely to cause the jury to give this factor undue weight.

**XVII.  DISPUTED INSTRUCTION NO. 24 RE DAMAGES—DOUBTS RESOLVED AGAINST INFRINGER**

   Sonos proposes an instruction for Disputed Instruction No. 24; Google does not and

objects.  Sonos requests that Court give a standard instruction, with minor modification,

providing generally that doubts caused by Google's failure to keep proper records should be

decided in favor of Sonos.

   The AIPLA Model Instruction provides:

> Any doubts that you may have on the issue of damages due to [the Defendant]'s failure to keep proper records should be decided in favor of [the Plaintiff]. Any confusion or difficulties caused by [the Defendant]'s records also should be held against [the Defendant], not [the Plaintiff].

*American Intellectual Property Law Association Model Patent Jury Instructions 10.3, Rev. 2019.*

   Sonos's requested instruction provides:

> Any doubts that you may have on the issue of damages due to Google's failure to keep proper records should be decided in favor of Sonos. In that circumstance, you are allowed to act on probable and inferential proof, as well as upon direct and positive proof. Any confusion or difficulties caused by Google's records also should be held against Google, not Sonos.

   The AIPLA Model Instruction is supported by extensive binding caselaw.  Google

protests that the cases cited in support of the model are all lost profits cases.  But none of these

cases expressly limit themselves to lost profits, and there is no reason to limit the instruction to

that scenario. Moreover, some relate to poor recording keeping as to the number of infringing

units sold, which would apply to Sonos's per-unit royalty theory here.  *See, e.g.*, *Sensonics, Inc. v.*

*Aerosonic Corp.*, 81 F.3d 1566, 1572 (Fed. Cir. 1996) (addressing lack of information on the

"number of infringing devices made by [infringer]" and holding that "if actual damages can not

be ascertained with precision because the evidence available from the infringer is inadequate,

1   damages may be estimated on the best available evidence, taking cognizance of the reason for the

2   inadequacy of proof and resolving doubt against the infringer." (citations omitted)); *Lam, Inc. v.*

3   *Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983) ("Moreover, when the amount of the

4   damages cannot be ascertained with precision, any doubts regarding the amount must be resolved

5   against the infringer."); *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1118 (Fed. Cir.

6   1996) ("Once a patentee shows causation, however, the trial court may resolve doubts underlying

7   the precise measurement of damages against the infringer."); *Bigelow v. RKO Radio Pictures*, 327

8   U.S. 251, 264 (1946) ("In such a case, even where the defendant by his own wrong has prevented

9   a more precise computation, the jury may not render a verdict based on speculation or guesswork.

10  But the jury may make a just and reasonable estimate of the damage based on relevant data, and

11  render its verdict accordingly. In such circumstances 'juries are allowed to act on probable and

12  inferential as well as (upon) direct and positive proof.'" (citations omitted)).

13       The only difference between the Model Instruction and Sonos's proposal is Sonos's

14  addition of one sentence explaining that *if* the jury finds that it has doubts on the issue of damages

15  due to Google's failure to keep proper records, *then* the jury is permitted to act on "probable and

16  inferential proof" in addition to direct proof.  That proposition too is uncontroversial as a matter

17  of law, and is taken verbatim from binding authority.  *See, e.g.*, *Bigelow*, 327 U.S. at 264.

18       At trial, Sonos's damages expert may need to explain on direct or cross examination—or

19  both—that he was unable to make certain calculations as a result of Google's recordkeeping.  The

20  jury should be properly instructed that any failures on Google's part to properly keep such records

21  should be resolved against Google.  If Google's objection is that it disputes on the merits the idea

22  that it failed to properly keep such records, it may present argument and evidence to the jury

23  accordingly, but the jury must be instructed on the law.

24       To the extent the Court does not agree to give Sonos's modification to the model

25  instruction, Sonos requests the Court give the model instruction unmodified.

26

27

28

SONOS, INC.'S MEMORANDUM REGARDING
DISPUTED JURY INSTRUCTIONS
3:20-CV-06754-WHA

Dated:  April 26, 2023

ORRICK HERRINGTON & SUTCLIFFE LLP
*and*
LEE SULLIVAN SHEA & SMITH LLP

By: */s/ Clement Seth Roberts*
    Clement Seth Roberts

*Attorneys for Sonos, Inc.*