# Sonos, Inc.'s Opp'n to Google LLC's Motion *In Limine* No. 4

# EXHIBIT D
# (FILED UNDER SEAL)

HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| GOOGLE LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>SONOS, INC.,<br><br>*Defendant.* | Case No. 3:20-cv-06754-WHA<br>Related to Case No. 3:21-cv-07559-WHA |

**REBUTTAL EXPERT REPORT
REGARDING DAMAGES**

**January 13, 2023**

Respectfully Submitted,

*[signature: WCBakewell]*

_____
W. Christopher Bakewell

HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY

# TABLE OF CONTENTS

1 Introduction ........................................................................................................... 1
   1.1 Qualifications And Experience ..................................................................... 1
   1.2 Overview Of Assignment .............................................................................. 2
   1.3 Summary Of Opinions ................................................................................... 6
   1.4 Facts, Data And Information Considered .................................................... 13
2 Background ......................................................................................................... 15
   2.1 Overview Of The Patents-in-Suit ................................................................ 15
         Overview Of The '033 Patent ............................................................. 16
         Overview Of The '885 Patent And '966 Patent .................................. 18
   2.2 Overview Of Sonos ..................................................................................... 21
   2.3 Overview Of Google ................................................................................... 22
   2.4 Overview Of Accused Products And Accused Functionalities .................. 23
         '033 Patent: Overview Of The Accused Functionality ...................... 23
         '885 Patent: Overview Of The Accused Functionality (Directed To Speaker Groups) ............................................................................... 31
         '966 Patent: Overview Of The Accused Functionality (Directed To "Computing Devices") .................................................................... 36
         Google Internal Code Names ............................................................. 38
   2.5 Overview Of The Competitive Environment ............................................. 39
3 Overall Framework For Determining Patent Infringement Damages ................ 52
   3.1 Overall Framework ..................................................................................... 52
   3.2 The Hypothetical Negotiation(s) ................................................................. 55
         '033 Patent: Hypothetical Negotiation Date ...................................... 56
         '885 And '966 Patents: Hypothetical Negotiation Dates ................... 56
   3.3 Form Of Royalties ....................................................................................... 57
4 Introduction To Rebuttal Analysis ...................................................................... 60
   4.1 Recap Of Mr. Malackowski's Theories, Including Basic Errors Contained Therein ...................................................................................... 60
         '033 Patent: Summary Of Mr. Malackowski's Theories ................... 60
         '885 And '966 Patents: Summary Of Mr. Malackowski's Theories .. 68
         Overview Of Mr. Malackowski's "Revenue Splits" .......................... 75

4.2 '033 Patent: Mr. Malackowski's Damages Theories Are Conceptually Unsound And Unreliable ....................................................................................... 77

4.3 '885 And '966 Patents: Mr. Malackowski's Damages Theories Are Conceptually Unsound And Unreliable ........................................................... 92

5  Income Approach: Mr. Malackowski's Damages Theories Are Speculative, Flawed And Unreliable ...................................................................................................... 104

5.1 '033 Patent: Mr. Malackowski's "Primary" Theory (YouTube Advertising And Subscription Revenue) Is Unreliable And Yields Inflated Results ............... 106

Mr. Malackowski's Starting Point Is Unreasonably Broad ...................... 107

Mr. Malackowski's "MDx Playback Time Share" Is Flawed And Unreliable ........................................................................................................ 110

Mr. Malackowski's 70:30 "Revenue Split" Is Unfounded, Unreliable And Not Substitute For Apportionment ........................................................... 111

Mr. Malackowski's Implied Royalty Rate Is Speculative, Overstated And Unreliable ................................................................................................ 111

5.2 '033 Patent: Mr. Malackowski's "Informatory" Theory (YouTube Advertising And Subscription Gross Profits) Is Unreliable And Yields Inflated Results 114

5.3 '885 And '966 Patents: Mr. Malackowski's Royalty Theory Is Unreasonable And Yields Inflated Results ....................................................................... 118

Mr. Malackowski Disregarded Other Evidence Of Limited Incremental Benefits ...................................................................................................... 123

Mr. Malackowski's Royalty Base For The '885 Patent Is Flawed And Unreliable ................................................................................................ 130

Mr. Malackowski's Royalty Base For The '966 Patent Is Flawed And Unreliable ................................................................................................ 131

Mr. Malackowski's Starting Point Is Too Broad Which Causes Him To Make A Series Of Unreliable "Apportionments" ..................................... 134

Mr. Malackowski's 10% "Apportionment Metric" Is Flawed And Unreliable ................................................................................................................ 140

Mr. Malackowski's "Lifetime Value" Estimate Is Speculative, Flawed And Unreliable ................................................................................................ 142

Mr. Malackowski's Feature Based "Apportionment Metric" Of Three Or More Smart Speakers Is Flawed And Unreliable .................................... 144

Mr. Malackowski's 70:30 "Revenue Split" Is Speculative, Flawed And Unreliable ................................................................................................ 146

6  Cost Approach: Mr. Malackowski Disregarded Commercially Acceptable NIAs And

*Highly Confidential-Attorneys' Eyes Only*

The Principle Of Substitution ................................................................................................. 146

    6.1   '033 Patent: Analysis Of Commercially Acceptable, Non-Infringing Alternatives ................................................................................................................ 151

        Commercially Acceptable NIA Category A1: Cloud Service, Not Playback Device, Communicates With Cloud Servers To Identify Next One Or More Media Items In The Remote Playback Queue ........................................... 152

        Commercially Acceptable NIA Category A2: Continue Playback On The Computing Device After Playback Is Transferred ("Fire And Forget") .. 156

    6.2   '885 'And 966 Patents: Analysis Of Commercially Acceptable, Non-Infringing Alternatives ................................................................................................................ 160

        Commercially Acceptable NIA Category B1: When An Accused "Standalone" Speaker Is Added To A Target Group, It Matches The Music (Or Silence) Of The Target Group ............................................................. 160

        Commercially Acceptable NIA Category B2: No Overlapping Groups .. 165

7   Market Approach: Mr. Malackowski's Analysis Is Flawed And Unreliable .......... 169

    7.1   Mr. Malackowski Mistreated Sonos Licensing Evidence ............................. 170

        Mr. Malackowski Mistreated The ██████████████████ ....... 171

        Mr. Malackowski Mistreated The ██████████████████ ... 172

        Mr. Malackowski Mistreated The ██████████████████ ..... 174

    7.2   Mr. Malackowski Mistreated Sonos Licensing Negotiations With Google .. 177

    7.3   Mr. Malackowski's Treatment Of Google Patent Licenses Is Flawed .......... 180

        Mr. Malackowski Mistreated The ██████████████████ ................................................................................................................ 181

        Mr. Malackowski Mistreated The ██████████████████ ..... 182

        Mr. Malackowski Mistreated The ██████████████████ ................................................................................................................ 184

        Mr. Malackowski Mistreated The ██████████████████ ................................................................................................................ 187

        Mr. Malackowski Mistreated The ██████████████████ ................................................................................................................ 190

    7.4   Mr. Malackowski's Rationale For Dismissing Google Patent Purchase Agreements Is Unsound ............................................................................... 192

        Mr. Malackowski And ██████████████████ ................................................................................................................ 193

        Mr. Malackowski Mistreated The ██████████████████ ████ ................................................................................................................ 194

Mr. Malackowski Mistreated The ███████████████████████.....199

Mr. Malackowski And The ███████████████████████..........204

7.5 '033 Patent: Mr. Malackowski's "Alternative" Theory (Third-Party Casting Apps) Is Flawed And Unreliable....................................................................204

Mr. Malackowski's Royalty Base Is Flawed And Unreliable ..................207

Mr. Malackowski's Royalty Rate Based On Subscription Fees Of Third-Party Casting Apps Is Flawed And Unreliable........................................208

Mr. Malackowski's 70:30 "Revenue Split" Is Speculative, Flawed And Unreliable...............................................................................................213

8   Potential Baseline Measures Of Reasonable Royalties (Mr. Malackowski's "Quantitative Indicators")................................................................................213

9   Mr. Malackowski's Assessment Of The Georgia-Pacific Factors Is Unsound .......221

G-P Factor 1: Royalties Received By The Patentee...............................................222

G-P Factor 2: Royalties Paid By The Licensee For The Use Of Other Patents Comparable To The Patents-In-Suit...............................................................223

G-P Factor 3: Nature and Scope Of The License....................................................223

G-P Factor 4: Licensor's Established Policy And Marketing Program .................224

G-P Factor 5: Commercial Relationship Between The Licensor And The Licensee ........................................................................................................................225

G-P Factor 6: Convoyed, "Tag-Along," And Collateral Sales...............................234

G-P Factor 7: Duration Of The Patent And Term Of The License .......................239

G-P Factor 8: Established Profitability Of The Patented Product, Its Commercial Success, And Its Current Popularity..............................................................240

G-P Factor 9: Utility And Advantages Over Old Modes Or Devices; And ...........244

GP Factor 10: Nature Of Intellectual Property, Character Of The Commercial Embodiment, And Benefits Of Use................................................................244

G-P Factor 11: Extent Of Use And Evidence Probative Of The Value Of The Use ........................................................................................................................247

Mr. Malackowski Did Not Measure Usage For '033 Patent ....................248

Mr. Malackowski Did Not Measure Usage For '885 And '966 Patents...252

Summary Of G-P Factor 11 ....................................................................254

G-P Factor 12: Profitability And Industry Royalty Rates ......................................255

G-P Factor 13: Apportionment ................................................................................. 255

G-P Factor 14: Opinion Of Qualified Experts ......................................................... 262

G-P Factor 15: Outcome Of The Hypothetical Negotiation(s) ............................... 262

**10  Other Issues In The Malackowski Report ............................................................ 268**

**11  Reservation of Rights .............................................................................................. 271**

which include wireless, portable, and home theater speakers, components and accessories.[98] Sonos's "target audience is primarily audiophiles and wealthier households."[99]

67. Sonos describes itself on its website as a "pioneer of wireless audio."[100] Sonos has a network of partners including Amazon, IKEA, Sonance and Audi, among others.[101]

68. According to the Complaint, Sonos is a leading company in terms of granted U.S. patents, having more than 940 patents, including the patents-in-suit, with hundreds more patents in other countries.[102] Sonos also states that its patent portfolio is highly valuable.[103]

## 2.3 Overview Of Google

69. Headquartered in Mountain View, California and incorporated in September 1998, Google originated as an internet search engine; the company has grown to be a global enterprise cloud computing provider.[104]

70. Google's mission is to "to organize the world's information and make it universally accessible and useful."[105] Google operates a product and service ecosystem that includes operating

---

[98] "Sonos: Lost The Battle Before It Started," SeekingAlpha.com, March 21, 2019 (accessed: https://seekingalpha.com/article/4250335-sonos-lost-battle-started).
[99] Sonos, Inc.'s 10-Q for quarter ended April 2, 2022, p. 8; "Sonos, Inc. (NASDAQ: SONO)," USIT, June 21, 2020, p. 1; SONOS-SVG2-00055769, at 777, 785. Sonos products are sold through "third-party physical retailers, including custom installers of home audio systems, select e-commerce retailers, and its website, sonos.com."
[100] "About Sonos," Sonos website (accessed: https://www.sonos.com/en-us/our-company).
[101] SONOS-SVG2-00226112-209, at 118-119, 146, 148, 158; Sonos's Form 10-K for fiscal year ended December 31, 2021, pp. 5-6, 7, 31-32, 33.
[102] Malackowski Supplemental Report, p. 13, citing Sonos, Inc.'s Third Amended Complaint, *Sonos, Inc., v. Google, LLC*, 3:21-c-07559, March 30, 2022, p. 2. As of December 2022, Google held over 31,000 active U.S. patents, and over 16,000 active foreign patents. Innography Patent Search, (accessed: https://patentscout.innography.com/); Alphabet Inc. Form 10-K for the fiscal year ended December 31, 2019, p. 9.
[103] Sonos, Inc.'s Third Amended Complaint, *Sonos, Inc., v. Google, LLC*, 3:21-c-07559, March 30, 2022, p. 2, citing Exhibits E and F. I note that neither Sonos nor Mr. Malackowski have claimed that the patents-in-suit are among its most valuable patents.
[104] Google held an initial public offering in August 2004. In 2015, through corporate restructuring, Google Inc. became a subsidiary of Alphabet Inc. ("Alphabet"). In 2017, Google Inc. was converted to the limited liability company, Google LLC, which became a subsidiary of XXVI Holdings Inc., which was a subsidiary of Alphabet. Google Inc., Form 10-K for the fiscal year ended December 31, 2015, p. 18; Alphabet Inc., Form 10-K for the fiscal year ended December 31, 2021, p. 25.
[105] Google, Inc. Form 10-K for the period ending December 31, 2021, p. 4.

systems, streaming services and mobile devices.[106] Over the years, Google has continued to improve "the discovery and creation of digital content" though platforms such as YouTube and Google Play.[107]

71. Google has made significant advances in search, mobile computing, artificial intelligence, natural language processing, machine learning, voice-assisted technologies and analytics.[108] Google technologies are included in household products such as smart home speakers (*e.g.*, Google Home), smart displays (*e.g.*, Nest Hub), smart mesh router systems (*e.g.*, Nest Wifi Point), smart dongles (*e.g.*, Chromecast), smartphones (*e.g.*, Google Pixel), tablets (*e.g.*, Google Pixel Slate), and laptops ((*e.g.*, Google Pixelbook), among other products.[109]

### 2.4 Overview Of Accused Products And Accused Functionalities

72. I provide a brief overview of the accused functionalities and products for the patents-in-suit in the following paragraphs.

*'033 Patent: Overview Of The Accused Functionality*

73. At a high level, I understand that Sonos alleges the accused products for the '033 patent include: (i) Pixel devices pre-installed with the YouTube Main and/or YouTube Music apps that allegedly directly infringe the asserted claims of the '033 patent; (ii) smartphones, tablets or laptops (including Android, iOS and ChromeOS devices) "provisioned" with the YouTube Main, YouTube Music, YouTube Kids or YouTube TV apps that allegedly indirectly infringe

---

[106] "Google Products," Google (accessed: https://about.google/products/#all-products); "Google Products," Google Store (accessed: https://store.google.com/?hl=en-US); "Google LLC," Capital IQ (accessed: https://www.capitaliq.com/CIQDotNet/company.aspx?companyId=312932093&fromSearchProfiles=True); "The Ecosystem of Google Technologies," CIO Review (accessed: https://google.cioreview.com/cxoinsight/the-ecosystem-of-google-technologies-nid-5859-cid-82.html).
[107] Google, Inc. Form 10-K for the period ending December 31, 2021, p. 4.
[108] Alphabet Inc. Form 10-K for the fiscal year ended December 31, 2021, pp. 4-6 (accessed: https://www.sec.gov/Archives/edgar/data/1652044/000165204422000019/goog-20211231.htm); "Stairway to Heaven," BNP Paribas, April 21, 2021, p. 7; "Google CEO Still Insists AI Revolution Bigger Than Invention Of Fire," Gizmodo, July 14, 2021 (accessed: https://gizmodo.com/google-ceo-still-insists-ai-revolution-bigger-than-inve-1847288454); "Overcoming The Innovation Readiness Gap," BCG Consulting, April 2021 (accessed: https://web-assets.bcg.com/d5/ef/ea7099b64b89860fd1aa3ec4ff34/bcg-most-innovative-companies-2021-apr-2021-r.pdf).
[109] GOOG-SONOSNDCA-00057035; GOOG-SONOSNDCA-00056973; SONOS-SVG2-00055681-768, at 738-739; Alphabet Inc. Form 10-K for the fiscal year ended December 31, 2020, p. 6; "Stairway to Heaven," Exane BNP Paribas, April 21, 2021, p. 7.