# Sonos, Inc.'s Opp'n to Google LLC's Motion *In Limine* No. 4

# EXHIBIT E



**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

CIVIL ACTION NO. 3:20-CV-06754

# GOOGLE LLC,
# V.
# SONOS, INC.

**REPLY EXPERT REPORT OF JAMES E. MALACKOWSKI**

**January 23, 2023**


INTELLECTUAL CAPITAL EQUITY

| | | |
|---|---|---:|
| 1. | **Background and Qualifications** ................................................................................................ | 3 |
| 2. | **Assignment** ................................................................................................................................ | 3 |
| 3. | **Summary of Opinions** .............................................................................................................. | 5 |
| 4. | **Critiques of the Bakewell Rebuttal Report** ............................................................................. | 8 |
| | 4.1   Awareness, Usage, & Demand ........................................................................................ | 8 |
| | 4.2   Competition ..................................................................................................................... | 10 |
| | 4.3   Apportionment & Royalty Base ..................................................................................... | 11 |
| | 4.4   IFTTT & Comparable Applications ............................................................................... | 13 |
| | 4.5   Non-Infringing Alternatives ........................................................................................... | 14 |
| 5. | **Adjustments to Reasonable Royalty Compensation** .............................................................. | 15 |
| | 5.1   MDx Adjustments .......................................................................................................... | 15 |
| | 5.2   Google Home Application Installations ........................................................................ | 20 |
| 6. | **Google – S.M.R. Innovations Ltd. Patent License** .................................................................. | 22 |
| 7. | *Georgia-Pacific* **Factor Analysis** ............................................................................................. | 23 |
| 8. | **Conclusion** ................................................................................................................................ | 24 |
| 9. | **Signature** .................................................................................................................................. | 24 |

  INTELLECTUAL CAPITAL EQUITY

2) There are numerous produced surveys, public data points, and statistics which indicate low usage and awareness of the infringing features; and
3) My methodology "accumulates value" when the infringing features are not in use.

While I have addressed many of these points, either in the Supplemental Malackowski Report or my deposition, Mr. Bakewell seems to ignore these arguments, the supporting evidence, and underlying logic.

For example, and as stated in my deposition, I am unable to quantify the *exact* amount of advertising revenue Google has made as a result of practicing the '885 Patent.[22]  Under the assumption that Google is a rational actor that expects to make a return on its product development and investment efforts, and the substantial evidence that Google sells many of the Accused Instrumentalities at a loss, it is only rational that Google also expects to recoup this investment through their larger ecosystem model, which substantially relies on the subscription and advertising revenues.[23]  Again, there is no definitive claim by Mr. Bakewell as to what the relationship should be other than 1:1 as he only provides evidence that it may not be the exact ratio I utilize. And, again, as evidenced in my deposition, Google, along with other large technology companies, provide an economic sharing model based upon revenue contributions, and as such there is no need to either deduct costs and it is reasonable to assume a 1:1 nexus.[24]  This economic model is also described at length in the Malackowski Supplemental Report.[25]  Without the benefit of better information from Google, I believe my assumption is reasonable in light of Google's business considerations and actions.

Next, Mr. Bakewell relies on repeated reference to usage data, frequency statistics, and survey results to indicate the low awareness and consumer demand for the features enabled by the Asserted Patents.  Mr. Bakewell, while missing the forest for the trees as these references do not bear on the value of the apps brought to the table by Sonos in the hypothetical negotiation as a technological and business comparables, also misconstrues the documents themselves.  Importantly, with respect to my burden of apportioning my analysis to the economic footprint of the invention, I believe that I have limited and addressed usage through the numerous apportionment steps in my analysis, such as limiting to multi-speaker households and the multi-app share of IFTTT.[26]  My use of these apportionment metrics accurately "reflect[s] customers who conceivably…would get additional benefits from the invention."[27]

Also, as indicated in my deposition, I did not find it useful or necessary to conduct a survey of my own regarding Sonos or Google customer's awareness or desire for the technology in the Asserted Patents.[28]  The survey results produced by Sonos and Google in the regular course of business, unsurprisingly, do not note specific patent numbers or "survey by patent claim," but rather by consumer "use experience."[29]  However, such surveys indicate that the technologies underlying many of the features listed are related to the benefits

---

[22] Malackowski Deposition, pp. 109-111.

[23] Malackowski Deposition, pp. 109-111.

[24] Malackowski Deposition, pp. 159-160.

[25] Malackowski Supplemental Report, Section 14.13.

[26] Malackowski Supplemental Report, Section 12.2.4.2.

[27] Malackowski Deposition, p. 73.

[28] Malackowski Deposition, p. 83.

[29] Malackowski Deposition, pp. 83, 86-87.

 INTELLECTUAL CAPITAL EQUITY

**8.   CONCLUSION**

Based on the totality of the circumstances in this case and the information available to me at this time, I have concluded that the appropriate form of compensation in this case, for Sonos's Asserted Patent claims, is an award of reasonable royalty damages.  The Bakewell Rebuttal Report has not caused me to amend or change my opinions regarding the apportionment steps, negotiation split, or *Georgia-Pacific* analysis which are detailed in the Malackowski Supplemental Report.

However, to provide a conservative outcome to the hypothetical negotiation, I implement two quantitative adjustments espoused in the Bakewell Rebuttal Report.  While I disagree with Mr. Bakewell's adjustments as they generally lack evidentiary support, I find that if these claims are correct, the reasonable royalty figures should be decreased to $179.6 million and $77.5 million for the '033 Patent, and '966 Patent, respectively.[109]

**9.   SIGNATURE**

Respectfully submitted,

_____          January 23, 2023
James E. Malackowski                        Date

---

[109] Appendices 3.1-R and 3.3-R.