1    QUINN EMANUEL URQUHART & SULLIVAN, LLP
     Sean Pak (Bar No. 219032)
2    seanpak@quinnemanuel.com
     Melissa Baily (Bar No. 237649)
3    melissabaily@quinnemanuel.com
     James Judah (Bar No. 257112)
4    jamesjudah@quinnemanuel.com
     Lindsay Cooper (Bar No. 287125)
5    lindsaycooper@quinnemanuel.com
     Iman Lordgooei (Bar No. 251320)
6    imanlordgooei@quinnemanuel.com
     50 California Street, 22nd Floor
7    San Francisco, California 94111-4788
     Telephone:    (415) 875-6600
8    Facsimile:    (415) 875-6700

9    Marc Kaplan (*pro hac vice*)
     marckaplan@quinnemanuel.com
10   191 N. Wacker Drive, Ste 2700
     Chicago, Illinois 60606
11   Telephone:    (312) 705-7400
     Facsimile:    (312) 705-7401

12

13   *Attorneys for GOOGLE LLC*

14

UNITED STATES DISTRICT COURT

15

NORTHERN DISTRICT OF CALIFORNIA

16

SAN FRANCISCO DIVISION

17

| | |
|---|---|
| SONOS, INC., | Case No. 3:20-cv-06754-WHA |
| Plaintiff, | Related to Case No. 3:21-cv-07559-WHA |
| vs. | **GOOGLE LLC'S MEMORANDUM IN SUPPORT OF ITS PROPOSED DISPUTED JURY INSTRUCTIONS** |
| GOOGLE LLC, | |
| Defendant. | Date:     May 3, 2023 |
| | Time:     12:00 p.m. |
| | Location: Courtroom 12, 9th Floor |
| | Judge:    Hon. William Alsup |

## <u>**TABLE OF CONTENTS**</u>

I.      DISPUTED INSTRUCTION NOS. 2 AND 6: SUMMARY OF CONTENTIONS ............. 1

II.     DISPUTED INSTRUCTION NO. 4: OUTLINE OF TRIAL ................................................. 4

III.    DISPUTED INSTRUCTION NOS. 8 AND 9: INFRINGEMENT—BURDEN OF PROOF
AND DIRECT INFRINGEMENT ................................................................................................. 4

IV.     DISPUTED INSTRUCTION NO. 10: LITERAL INFRINGEMENT ................................. 5

V.      DISPUTED INSTRUCTION NO. 11: INDUCING PATENT INFRINGEMENT .............. 6

VI.     DISPUTED INSTRUCTION NO. 12: CONTRIBUTORY INFRINGEMENT .................... 8

VII.    DISPUTED INSTRUCTION NO. 13: WILLFUL INFRINGEMENT ................................. 8

VIII.   DISPUTED INSTRUCTION NO. 14: INVALIDITY—BURDEN OF PROOF ............... 10

IX.     DISPUTED INSTRUCTION NO. 15: INVALIDITY—PERSPECTIVE OF ONE OF
ORDINARY SKILL IN THE ART ........................................................................................... 12

X.      DISPUTED INSTRUCTION  NO. 16: INVALIDITY—PRIOR ART .............................. 12

XI.     DISPUTED INSTRUCTION NO. 17: INVALIDITY—STATUTORY BAR.................... 13

XII.    DISPUTED INSTRUCTION NO. 18: INVALIDITY—ANTICIPATION ........................ 14

XIII.   DISPUTED INSTRUCTION NO. 19: INVALIDITY—OBVIOUSNESS ........................ 14

XIV.   DISPUTED INSTRUCTION NO. 20: INVALIDITY—DERIVATION ............................ 15

XV.    DISPUTED INSTRUCTION NO. 21: DAMAGES—BURDEN OF PROOF.................... 16

XVI.   DISPUTED INSTRUCTION NO. 23: REASONABLE ROYALTY—DEFINITION ....... 17

XVII.  DISPUTED INSTRUCTION NO. 24: DAMAGES—DOUBTS RESOLVED AGAINST
INFRINGER.............................................................................................................................. 20

1    I.      **DISPUTED INSTRUCTION NOS. 2 AND 6: SUMMARY OF CONTENTIONS**

2           With respect to the summary of contentions for both the preliminary and final jury

3    instructions, there are five disputed issues.

4           *First*, the parties dispute the extent to which previously asserted patent infringement claims

5    should be incorporated into the preliminary and final summary of contentions instructions.  While

6    Sonos's proposed instruction only discusses the Court's finding of infringement of the '885 patent,

7    Google's proposed instruction informs the jury of the disposition of all patent claims that were

8    asserted in Sonos' draft complaint and Google's declaratory judgment complaint.  As explained in

9    Google's opposition to Sonos' Motion *in Limine* No. 4, and incorporated herein by reference, this

10   this information is highly relevant to Sonos's willful infringement allegation, which is based on

11   Sonos' service of the draft complaint and Google's DJ complaint (as well as a "willful blindness"

12   theory based entirely on patents other than the '966 patent, including the '206 patent and '615 patent

13   referenced in Google's proposed instruction). Moreover, Google would be unfairly prejudiced if the

14   jury instructions tell the jury that the Court had previously ruled that Google had infringed one of

15   Sonos' patents, without also telling them that it had also previously ruled that two of Sonos' patents

16   are invalid and/or not infringed.

17          Jury instructions often reference previously asserted claims when they are relevant to

18   remaining claims.  *See, e.g.*, *Skyline Steel, L.L.C. v. Pilepro, L.L.C.*, No. 1:13-cv-08171-JMF, Dkt.

19   655 at 14-15 (S.D.N.Y. Oct. 10, 2018) ("I have already determined, as a matter of law, that the HZM

20   system does not infringe PilePro's patent."); *Uniloc USA, Inc. v. Microsoft Corp.*, No. 1:03-cv-

21   00440-WY-DLM, Dkt. 390 at 144:11-145:2 (D.R.I. June, 9, 2009) ("Microsoft was awarded

22   summary judgment of non-infringement wherein I determined as a matter of law that no aspect of

23   Product Activation infringed any claim of the '216 patent even though that decision was later

24   partially overturned by the Court of Appeals."); *Applera Corp. v. Illumina, Inc.*, No. 3:07-cv-02845-

25   WHA, Dkt. 386 at 6 (N.D. Cal. Jan. 23, 2009) ("To simplify matters for your consideration, the case

26   has been reduced to one patent, the '119 patent.  The '341 and '597 patents have been withdrawn

27   from your consideration.") (Alsup, J.).

28

Courts also routinely find dismissed or dropped claims indicative of non-willful infringement. *See, e.g.*, *Greatbatch Ltd. v. AVX Corporation*, No. CV 13-723-LPS, 2015 WL 9171042, *4 (D. Del. Sept. 11, 2015) (evidence supporting non-willfulness included the fact that "prior art identified [by defendant] was later used during inter partes review proceedings to invalidate multiple claims of the '627 patent") (Stark, J.); *Move, Inc. v. Real Estate Alliance Ltd.*, 221 F. Supp. 3d 1149, 1173 (C.D. Cal. Dec. 1, 2016) (granting summary judgment of no willfulness because alleged infringer "had several reasonable arguments as to why its conduct was non-infringing"); *Dorman Products, Inc. v. Paccar, Inc.*, 201 F. Supp. 3d 663, 680 (finding evidence of reasonable non-infringement and invalidity defenses relevant to willfulness); *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, No. CIV.A. 09-290, 2012 WL 5463669, at *1 (W.D. Pa. Nov. 7, 2012) ("the Court agrees with Marvell that evidence of dropped or changed claims or products shows the reasonableness of its infringement 'defenses'"); *Samsung Elecs. Co. v. Quanta Computer, Inc.*, No. C-00-4524 VRW, 2006 WL 2850028, at *2 (N.D. Cal. Oct. 4, 2006) (denying motion *in limine* to preclude alleged infringer "from referencing the five patent infringement claims previously asserted by [patent owner] in this action that were voluntarily dismissed by stipulation of the parties" because "the withdrawn patents may be relevant to Samsung's claim for willfulness").

Further, disclosing the Court's finding of infringement of the '885 patent to the jury without the context of the other claims Sonos previously asserted in this case creates a risk that the jury will perceive Google as a bad actor without regard for patent rights. In addition, telling the jury that the Court found infringement creates a risk that the jury will assume that the Court bestowed its imprimatur on the '885 patent and thus perceive the '885 patent as valid. Informing the jury that the Court has found certain Sonos patents invalid and/or uninfringed by Google would significantly minimize these risks.

*Second*, the parties disagree whether the introductory invalidity instructions should include the Northern District of California Model Patent Jury Instruction ("N.D. Cal. Model Instructions") providing that "[i]nvalidity is a defense to infringement." Sonos contends that the model instruction is "confusing," whereas Google maintains that the instruction is necessary to avoid juror confusion

1    - particularly given that infringement of a claim has already been found, and the jury will need to

2    decide whether invalidity precludes a verdict in Sonos's favor.

3      *Third*, Sonos opposes Google's proposed instruction of "[i]n general, however, a patent is

4    invalid if it is not new or is obvious in view of the state of the art at the relevant time, or if the

5    description in the patent does not meet certain requirements."  Although Google does not plan to

6    argue that the '885 and '966 patents lack adequate written description, jurors need to understand

7    that patents can be invalid for multiple reasons to dispel the misconception that a patent is always

8    valid because it is granted by the government.

9      *Fourth*, Google proposes that the jury be instructed that the Court has already found that any

10   infringement of claim 1 of the '885 patent by Google was not willful.  This is an appropriate

11   instruction to avoid juror confusion, particularly since the Court will be instructing the jury that it

12   has already found that prior versions of Google's products infringe the '885 patent.  Sonos' proposal,

13   to keep the jury in the dark on that issue by telling them only that "I am not asking you to decide

14   whether Google's infringement of claim 1 of the '885 patent was willful," would almost certainly

15   lead jurors to assume that the reason they didn't need to decide was that the Court had already found

16   that the infringement ***was*** willful.  That is presumably why Sonos is proposing it.  Further, contrary

17   to Sonos' arguments, the Court's ruling that Sonos' willfulness allegations for the '885 patent fail

18   as a matter of law is relevant to the issue of whether Google had a specific intent to infringe the '966

19   patent at the time of the challenged conduct.  The two patents share a specification and the software

20   instructions in both accomplish substantially the same functions (with the '885 patent drafted from

21   the perspective of the speaker, and the '966 patent drafted from the perspective of the controller

22   device such as a smartphone).

23     *Fifth*, Sonos and Google globally disagree whether Google's redesigned products should be

24   referred to as the "new version" or "newer version" (Sonos's position) or "redesigned products"

25   (Google's position).  It is Google's position that the redesigned products should be identified as

26   what they are (redesigned products) to ensure that the jury differentiates the products that were

27   previously held to infringe and those that operate in the new and non-infringing manner.

28

## II.   <u>DISPUTED INSTRUCTION NO. 4: OUTLINE OF TRIAL</u>

The parties' proposed instructions are nearly in agreement except for the paragraph describing Sonos's presentation of its case-in-chief.

*First*, Sonos's proposal states it will present evidence "that the '885 patent is infringed by the newer version of the '885 Accused Products," whereas Google's proposal states that Sonos will present evidence on Sonos's contentions that "the '885 patent is infringed by the redesigned '885 Accused Products."  Google's proposal also clarifies Sonos's contention at trial "that the '966 patent has been and continues to be infringed by the '966 Accused Products."  Google's proposal is therefore more precise because it makes clear that the infringement dispute for the '885 patent involves only the redesigned products, whereas each of the accused products are in dispute with respect to alleged infringement of the '966 patent.

*Second*, Sonos insists on stating that it will present the amount of damages it is entitled to for Google's "infringement" of the '885 patent, rather Google's "alleged infringement of the '885 and '966 patents" as Google proposes.  However, the jury may find that the redesigned products do not infringe the '885 patent, such that "alleged" infringement is more accurate.  Sonos suggests that the jury "may not be asked to determine any infringement question with respect to the '885 patent, depending on the Court's rulings on the parties' 50(a) motions," but this argument is pure speculation.  That the Court may determine whether Google's redesign infringes the asserted patents down the line does not warrant an instruction that *assumes* the Court will find in Sonos's favor on the issue. The Court could similarly find that the redesigned products could not infringe as a matter of law, which would moot a portion of Sonos's damages claims, or that the asserted patents are invalid, mooting all of Sonos's damages claims.   None of these speculative instructions are appropriate for the jury.

## III.   <u>DISPUTED INSTRUCTION NOS. 8 AND 9: INFRINGEMENT—BURDEN OF PROOF AND DIRECT INFRINGEMENT</u>

The parties dispute here the same global issue regarding whether Google's redesign should be referred to as "redesigned products" (Google's proposal) or "newer" products (Sonos' proposal). *See supra* § I.

## IV.   **DISPUTED INSTRUCTION NO. 10: LITERAL INFRINGEMENT**

As an initial matter, Sonos's proposed instruction adds "reasonably capable" language that departs from this District's Model Instructions, as well as many other model patent jury instructions. *See, e.g.*, AIPLA Model Instructions, 3.2 (literal infringement instruction not including any language referring to reasonable capability of infringing); Federal Circuit Bar Association Model Instructions, B.3.1a (same).   The model instructions do not include such language for good reason.   It risks confusing the jury and misleading them into finding infringement even where an accused product does not literally contain every single claim limitation, because the jury may believe that an accused product is nevertheless "reasonably capable" of including a missing limitation.   This is a concrete concern and risk here, where Sonos intends to argue to the jury that devices and systems that do not include each and every element of the claims—for example, those that do not include three "Zone Players" and those that do not include at least one "network device"—still infringe the asserted claims because they are "reasonably capable" of being used in an infringing system.   But that is not the law.   Sonos must prove that each and every element is met by the accused system.   Indeed, even in the context of claims "directed to capability," the Federal Circuit has made clear that the patentee is still required to prove infringement in the ordinary manner, which involves 'compar[ing] the claims to the accused products.'" *INVT SPE LLC v. Int'l Trade Comm'n*, 46 F.4th 1361, 1380 (Fed. Cir. 2022).   "Reasonable capability" does not change that fundamental principle, and Sonos's additional instruction on this issue would confuse the jury to believe the contrary.   *Id.*; *see also Ottah v. Bracewell LLP*, No. 2022-1876, 2022 WL 16754378, at *2 (Fed. Cir. Nov. 8, 2022) ("A finding of literal patent infringement 'requires that each and every limitation set forth in a claim appear in an accused product.'").

Moreover, while Sonos's proposed instruction suggests that an accused product can infringe any claim "if it is reasonably capable of satisfying the claim elements," the "Federal Circuit has stated that the reasonably capable case law is relevant only to claim language that specifies that the claim is drawn to capability." *Plantronics, Inc. v. Aliph, Inc.*, No. C 09-01714 WHA, 2014 WL 789115, at *3 (N.D. Cal. Feb. 26, 2014) (internal marks and citation omitted); *see also INVT SPE LLC v. Int'l Trade Comm'n*, 46 F.4th 1361, 1371 (Fed. Cir. 2022) ("Our cases have held that

sometimes a device only needs to be "capable of operating" according to a claimed limitation, for a finding of infringement.  Other times, a device does not infringe unless it actually operates as claimed.  Whether infringement requires actual performance of the recited functions by the accused device depends on the claim language.") (internal marks and citation omitted); *Ball Aerosol & Specialty Container, Inc. v. Ltd. Brands, Inc.*, 555 F.3d 984, 994 (Fed. Cir. 2009).  Sonos's proposed instruction thus improperly misleads the jury to believe that an accused product can infringe any claim "if it is reasonably capable of satisfying the claim elements" even if the claim is not drawn to capability.

Sonos's proposed instruction also misrepresents the standard for establishing reasonable capability.  Sonos contends that "one who makes a system or product with that capability is a direct infringer even though they do not use that capability."  But the Federal Circuit has "never suggested that reasonable capability can be established without any evidence or undisputed knowledge of an instance that the accused product performs the claimed function when placed in operation."  *INVT SPE LLC*, 46 F.4th at 1375.  In fact, the Federal Circuit has explicitly required "proof that an accused product—when put into operation—in fact executes all of the claimed functions at least some of the time or at least once in the claim-required environment."  *Id.* at 1377.  Accordingly, the Court should reject Sonos's proposed "reasonably capable" language as misleading and improper.

## V.   DISPUTED INSTRUCTION NO. 11: INDUCING PATENT INFRINGEMENT

The parties dispute two aspects of the instruction on inducing patent infringement.

*First*, Sonos's insistence on including a "willful blindness" instruction is improper.  "[W]illful blindness can satisfy the knowledge requirement for active inducement under § 271(b) (and for contributory infringement under § 271(c)), even in the absence of actual knowledge."  *Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 824 F.3d 1344, 1347 (Fed. Cir. 2016).  But Sonos has failed to offer any evidence that could support such a willful blindness theory.  In its summary judgment opposition brief, Sonos merely asserted in a conclusory manner that "Google was, at a minimum, willfully blind" without actually proffering any evidence in support thereof.  *See* Dkt. 508 at 24; *Largan Precision Co, Ltd v. Genius Elec. Optical Co.*, 86 F. Supp. 3d 1105, 1120 (N.D. Cal. 2015), *aff'd sub nom. Largan Precision Co. v. Genius Elec. Optical Co.*, 646 F. App'x 946

1   (Fed. Cir. 2016) (rejecting willful blindness argument because it "requires not just a failure to ask

2   whether any sales infringed, but an affirmative act to remain ignorant of infringing sales").

3        To the extent Sonos's "willful blindness" theory is based on the draft complaint it sent to

4   Google on September 29, 2020, Sonos admittedly has not developed "a more complete record" as

5   the Court's order previously required.  *See* Dkt. 538 at 13-14.  To the extent Sonos's "willful

6   blindness" theory is based on the parties' licensing negotiations, those negotiations took place prior

7   to the issuance of the asserted patents.  Moreover, the Court already determined at the pleading stage

8   that those discussions, which did not involve the '966 or '885 patents, were "insufficient" to

9   demonstrate knowledge of the patent.  *Sonos, Inc. v. Google LLC*, 591 F. Supp. 3d 638, 647 (N.D.

10   Cal. 2022) ("The operative complaint references various correspondence Sonos sent to Google in

11   October 2016, February 2019, and January 2020 regarding Sonos's patents [].  But for all of that

12   documentation, Sonos acknowledges "this correspondence did not specifically identify the '033,

13   '966, and '855 Patents [*sic*].").  Therefore, this additional paragraph in Sonos's instruction is

14   irrelevant, would mislead and confuse the jury, and cause unfair prejudice.

15        *Second*, the following language from Sonos's proposed instruction should be omitted

16   because it is misleading and contrary to the N.D. Cal. Model Instruction: "by inducing other people

17   to install the Google Home App, YouTube Music app, and Google Play Music app, on their Internet-

18   connected computing devices."  But Sonos has not accused the YouTube Music or Google Play

19   Music apps of infringing either of the patents-in-suit.  Ex. 3 (Sonos's Infringement Contentions).

20   Further, neither the Google Play Music app (which is now discontinued) nor the YouTube Music

21   app allow users to create speaker groups, and therefore neither can infringe any asserted claims

22   either directly or indirectly.  Sonos claims this is a "neutral explanation of its inducement

23   allegation[.]"  Sonos's instruction is not neutral because it does not even accurately represent

24   Sonos's positions in this litigation.  Its own experts have opined that the only application that can

25   create speaker groups is the Google Home App.  Instead, Sonos's proposal is misleading,

26   inconsistent with the model rule, and technically and factually inaccurate.  Google has moved *in*

27   *limine* to exclude evidence or argument regarding unaccused product revenues.  *See* Google's

28   *Motion in Lmine* No. 4.  YouTube Music is one of those unaccused products (now that the '033

1   patent has been found invalid) and Google incorporates that MIL by reference.  Presumably Sonos

2   has proposed this language in attempts to create the impression that YouTube Music (and

3   advertising and subscription revenue associated with it) is relevant to the issue of damages for the

4   '885 or '966 patents.  It is not.

5   **VI.      DISPUTED INSTRUCTION NO. 12: CONTRIBUTORY INFRINGEMENT**

6          The parties dispute the same two aspects at issue for the instruction on inducing patent

7   infringement as they do for the instruction on contributory infringement.  To the extent any

8   instruction is given on contributory infringement, Google's proposed instruction should be used for

9   the same reasons discussed above.  *See supra* § V.

10  **VII.     DISPUTED INSTRUCTION NO. 13: WILLFUL INFRINGEMENT**

11         Although both parties base their proposed willful infringement instructions on N.D. Cal.

12  Model Instruction No. B.3.8, the Court should reject Sonos's additional and prejudicial language.

13         *First*, the parties dispute how this instruction should characterize the Court's previous ruling

14  that Google did not willfully infringe the '885 patent.  Google proposes "I have already found that

15  any infringement of claim 1 of the '885 patent by Google was not willful," whereas Sonos proposes

16  "I am not asking you to decide whether Google's infringement of claim of the '885 patent was

17  willful."  Sonos's language is a plain attempt to mislead the jury into assuming that the Court already

18  determined willfulness with respect to the '885 patent.  Sonos wants to prevent the jury from hearing

19  that the Court has already found that Google was not willful, yet in other instructions Sonos insists

20  on telling the jury that the Court has "already determined that certain versions of Google's accused

21  media players infringe the '885 patent."  Sonos's Proposed Disputed Instruction No. 2 (Summary

22  of Contentions).  Sonos cannot have it both ways.  This is a transparent attempt to improperly

23  emphasize the Court's favorable rulings for Sonos while attempting to shield the jury from ones that

24  are unfavorable to Sonos.  *See Fluidigm*, No. 3:19-cv-05639, Dkt. 145 at 1 (N.D. Cal. Oct. 14, 2020)

25  (Alsup, J.) ("[W]hat is sauce for the goose is normally sauce for the gander.").

26         *Second*, Sonos proposes the following additional language regarding willful blindness:

27  "Knowledge of a fact may be inferred where a defendant intentionally blinds itself to that fact,

28  because a person who knows enough to do so effectively has knowledge of that fact."  As an initial

matter, as discussed previously, Sonos has not offered any evidence that could support a willful blindness theory.  *See supra* § V.  Moreover, Sonos's proposed language is extremely confusing, does not appear to be based on any model jury instruction, and is seemingly of Sonos's own fabrication – nor do any of the cases that Sonos apparently cites for this concocted language support such an addition.  Google maintains that no instruction on "willful blindness" is necessary or appropriate, but if the Court disagrees, the instruction regarding willful blindness should be based on the "two basic requirements" as articulated by the Supreme Court in *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766, 769 (2011): (1) the defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact.  Indeed, Sonos's own proposed instructions for its indirect infringement instructions are based on this same standard.  *See* Sonos's Proposed Instruction Nos. 11 (Contributory Infringement) and 12 (Inducing Infringement).

*Third*, Google's proposal includes all five factors that a jury may consider when determining willfulness from the Federal Circuit Bar Association Model Instructions, whereas Sonos's proposal only includes four.  Given that Google has offered evidence regarding whether it "intentionally copied a product of Sonos that is covered by the Asserted Patents" (it did not – Google implemented the accused functionality in 2015, years before Sonos first implemented the claimed invention in 2020), this factor is relevant and should be included in the instruction on willfulness.  Sonos argues that it should be excluded because the parties have stipulated that neither party will reference or argue any alleged copying of its technology by the other party, but that only confirms that this factor is undisputed and favorable to Google.  The fact that Google undisputedly did *not* copy Sonos (and indeed could not, as Google implemented the accused functionality in 2015, years before Sonos added "Zone Scenes" functionality to its own products in 2020)is a factor that the jury should be permitted to consider, consistent with the model instructions.

*Fourth*, Google's proposal does not include the instruction that willful infringement may be found it Google "recklessly disregarded Sonos's patent rights," which is not part of the Federal Circuit Bar Association's Model Instruction B.3.10, upon which the parties' proposals are based.

VIII.   <u>**DISPUTED INSTRUCTION NO. 14: INVALIDITY—BURDEN OF PROOF**</u>

Sonos and Google both offer proposed instructions on the burden of proving invalidity. Sonos's proposed instruction is purportedly based on Federal Circuit Bar Association Model Instruction B.4.1, whereas Google's proposed instruction is taken from N.D. Cal. Model Instruction B.4.1a.  As an initial matter, Sonos does not justify its decision to cherry-pick a different model instruction.

But Sonos fails to even follow the Federal Circuit Bar Association Model Instruction and identify each individual claim of each asserted patent that the jury should consider for invalidity. Instead, Sonos's proposed instruction attempts to lump "any claim of the Asserted Patents" together. *See* Federal Circuit Bar Association Model Instruction B.4 – Validity ("I will now instruct you on the rules you must follow in deciding whether or not [alleged infringer] has proven that claims [ ] of the [ ] patent are invalid.").

Sonos also fails to offer any explanation to the jury about the presumption of validity and about prior art references that were not before the Patent Office, which is included in the model instruction for fairness and balance.  Google's proposed instruction is also balanced as it explains to the jury that "[t]he issuance of a patent by the Patent Office provides a presumption that the patent is valid."  This follows directly from 35 U.S.C. § 282, which states "[a] patent shall be presumed valid."

Google's proposed instruction includes language explaining to the jury that sometimes the United States Patent Office does not always consider all the prior art submitted by the alleged infringer during the case ("during the course of this trial, Google has presented you with several prior art references" … "[b]ut the Patent Office sometimes issues invalid, patent claims, and issued claims can be found invalid in court") and that the jury, therefore, has the ultimate responsibility for determining validity ("[i]n this case, you have the ultimate responsibility for deciding whether the claims of the patent are valid or invalid.  In making your determination, you must consider the claims individually, as you did when you considered whether each claim was infringed.").  This language follows N.D. Cal. Model Instruction B.4.1a, which states:

[During this case, the [alleged infringer] has submitted prior art that was not

considered by the United States Patent and Trademark Office (PTO) during the prosecution of the [ ] patent. The [alleged infringer] contends that such prior art invalidates certain claims of the [ ] patent. In deciding the issue of invalidity, you may take into account the fact that the prior art was not considered by the PTO when it issued the [ ] patent. Prior art that differs from the prior art considered by the PTO may carry more weight than the prior art that was considered and may make the [alleged infringer's] burden of showing that it is highly probable that a patent claim is invalid easier to sustain.

*Id.* Google's instruction follows the N.D. Cal. Model Instruction on this point:

The fact that any particular reference was or was not considered by the Patent Office does not change Google's burden of proof. However, in making your decision whether Google has demonstrated that a claim is invalid by clear and convincing evidence, you may consider whether Google has presented any materially new prior art references that the Patent Office had no opportunity to evaluate. Prior art that differs from the prior art considered by the PTO may carry more weight than the prior art that was considered, and Google's burden may be easier to meet if all material facts were not before the Patent Office when it issued a patent.

Google's proposed instruction also provides the burden of proof required for invalidity: "If clear and convincing evidence demonstrates that a claim of the patent fails to meet any requirement of the patent laws, then that claim is invalid."  This portion of Google's proposed instruction is supported by the Supreme Court's decision in *Microsoft v. i4i*, which held that "the jury may be instructed to evaluate whether the evidence before it is materially new, and if so, to consider that fact when determining whether an invalidity defense has been proved by clear and convincing evidence."  564 U.S. 91, 111 (2011); *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1375 (Fed. Cir. 1986) ("Notwithstanding that the introduction of prior art not before the examiner may facilitate the challenger's meeting the burden of proof on invalidity, the presumption remains intact and on the challenger throughout the litigation, and the clear and convincing standard does not change.").

Google's proposed instruction further provides guidance to the jury regarding the scope of the relevant prior art:

In general, prior art includes patents, publications, or items that were publicly used, offered for sale, or publicly known, that disclosed the alleged invention or elements of the alleged invention. To be prior art, the item or reference must have been on sale, used, published, patented, or otherwise made available to the public before the filing date of the patent.

This definition is consistent with pre-AIA 35 U.S.C. § 102(a) and (b), which state "(a) the invention was known or used by others in this country, or patented or described in a printed

1   publication in this or a foreign country, before the invention thereof by the applicant for patent; and

2   "(b) the invention was patented or described in a printed publication in this or a foreign country or

3   in public use or on sale in this country, more than one year prior to the date of the application for

4   patent in the United States."

5       All of Google's additions are well-supported by the law and helpful to the jury.  Specifically,

6   while the presumption of validity should be addressed, it is equally necessary to include the law on

7   references that were not before the Patent Office for balance.

8   **IX.     DISPUTED INSTRUCTION NO. 15: INVALIDITY—PERSPECTIVE OF ONE OF
            ORDINARY SKILL IN THE ART**

9

10      Sonos's proposed instruction fails to account for the parties' dispute over the priority date

11  for the '885 and '966 patents.  With respect to the '885 and the '966 patents, Sonos contends that it

12  conceived of the alleged invention on December 21, 2005 while Google contends that Sonos is not

13  entitled to an invention date before September 12, 2006, which is the earliest effective filing date.

14  Sonos bears the burden of showing that it is entitled to an earlier priority date—in this case, its

15  claimed conception date—and it cannot meet its burden of proof by inserting its preferred facts into

16  a jury instruction.  *Allergan, Inc. v. Apotex Inc.*, 754 F.3d 952, 967 (Fed. Cir. 2014) ("[T]he patentee

17  nevertheless must meet its burden of production to demonstrate an earlier conception date.").  Unless

18  and until Sonos proves it is entitled to a December 21, 2005 conception date, the instruction should

19  identify the September 12, 2006 effective filing date.

20  **X.     DISPUTED INSTRUCTION  NO. 16: INVALIDITY—PRIOR ART**

21      While both parties' proposed instructions are based on the Federal Circuit Bar Association

22  Model Instruction, they dispute whether Instruction B.4.3a-1 (Prior Art (If Not in Dispute)) should

23  be included.   Since prior art is an unfamiliar concept to many jurors, Google contends that

24  Instruction B.4.3a-1 is necessary to orient jurors to the definition, purpose, and function of prior art.

25  Instruction B.4.3a-1 is consistent with instructions previously given by this Court.  *See Conceptus,*

26  *Inc. v. Hologic, Inc.*, No. 3:09-cv-02280-WHA, Dkt. 475 at 12 (N.D. Cal. Oct. 14, 2011) ("Patents

27  are supposed to be limited to new revelations, among other requirements.  A patent claim is invalid

28  if the claimed invention was not new at the time of the patent application, which was September 24,

1   1997, for purposes of anticipation and obviousness.  For a claim to be invalid because it is not new,

2   all of its elements must have already existed in a single procedure before the claimed invention or

3   must have been described in a previous publication or patent before the claimed invention. In patent

4   law, previous publications or patents are called 'prior art' or 'prior-art references.'"); *Applera Corp.*

5   *v. Illumina, Inc.*, No. 3:07-cv-02845-WHA, Dkt. 386 at 9 (N.D. Cal. Jan. 23, 2009) ("Patents are

6   supposed to be limited to new revelations, among other requirements.  A patent claim is invalid if

7   the claimed invention was not new at the time of the patent application.  For a claim to be invalid

8   on this ground, it must be shown that all of its elements were described in a single publication or

9   patent before the claimed invention.  In patent law, previous publications or patents are called 'prior

10   art' or 'prior-art references.'").

11   **XI.      DISPUTED INSTRUCTION NO. 17: INVALIDITY—STATUTORY BAR**

12          Sonos failed to offer a proposed instruction on the statutory bar for invalidity.  Google's

13   proposed instruction is based on N.D. Cal. Model Instruction B.4.3a2 and should be included in the

14   jury instructions.  The addition of this instruction is helpful to the jury in understanding a specific

15   category of prior art.  Specifically, while prior art is addressed in Instruction No. 15, it is equally

16   necessary to include the law on references that were dated more than one year before the patent

17   application was filed because these references indicate the patentee lost the right to patent the claims

18   of the '885 and '966 patents.  Such an instruction is supported by pre-AIA 35 U.S.C. § 102(b) which

19   indicates that a person shall be entitled to a patent unless "the invention was patented or described

20   in a printed publication in this or a foreign country or in public use or on sale in this country, more

21   than one year prior to the date of application for patent in the United States."

22          Such an instruction is also supported by *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d

23   1374, 1379 (Fed. Cir. 2005) ("A bar under § 102(b) arises where, before the critical date, the

24   invention is in public use and ready for patenting.").  This instruction further explains that the

25   disclosure in a reference does not have to be in the same words as the claim, but all the requirements

26   must be there, either described in enough detail or necessarily implied, to enable someone of

27   ordinary skill in the field.  This is supported for example by *Helifix, Ltd. v. Blok-Lok, Ltd.*, 208 F.3d

28   1339, 1347 (Fed. Cir. 2000) (explaining that "[t]he '93 brochure does not expressly disclose in

words elements (8)-(10) of claim 1 of the '801 patent.  The brochure might nevertheless be anticipating if a person of ordinary skill in the art would understand the brochure as disclosing elements (8)-(10) and if such a person could have combined the brochure's description of the invention with his own knowledge to make the claimed invention.")

Google proposed only two minor modifications to N.D. Cal. Model Instruction B.4.3a2.  The first proposed modification is to refer to the "alleged" invention rather than the "claimed" invention, because Google disputes that there is any invention in the asserted claims and "claimed" is likely to create confusion for the jury.  The second proposed modification is to delete the portion of the model instruction referring to "patents on the claimed invention in a foreign country" because Sonos had not obtained any patents on the claimed invention in a foreign country before filing the original U.S. application.  This modification simplifies the issues and will accordingly be helpful to the jury.

## XII.   DISPUTED INSTRUCTION NO. 18: INVALIDITY—ANTICIPATION

Sonos's proposed instruction regarding anticipation is based on Federal Circuit Bar Association Model Instruction B.4.3b-1, but Sonos has proposed deleting the following paragraph from the model instructions:

> Where [Google] is relying on prior art that was not considered by the PTO during examination, you may consider whether that prior art is significantly different and more relevant than the prior art that the PTO did consider. If you decide it is different and more relevant, you may weigh that prior art more heavily when considering whether the challenger has carried its clear-and-convincing burden of proving invalidity.

Sonos has not offered any reason to deviate from the model instructions, nor has it offered any evidence that Google is only relying on prior art considered by the PTO during examination. For the reasons discussed in Section VIII, it is necessary to include the law on references that were not before the Patent Office.  Therefore, inclusion of this paragraph is warranted and relevant, and its deletion would mislead and confuse the jury.

## XIII.   DISPUTED INSTRUCTION NO. 19: INVALIDITY—OBVIOUSNESS

Sonos's proposed obviousness instruction improperly deviates from the N.D. Cal. Model Instruction by adding a paragraph on enablement.  The modification removes the balance from that instruction, but more importantly it is directly contrary to existing law.  As a matter of settled law,

"there is no absolute requirement for a relied-upon reference to be self-enabling in the § 103 context, so long as the overall evidence of what was known at the time of invention establishes that a skilled artisan could have made and used the claimed invention." *Raytheon Techs. Corp. v. GE*, 993 F.3d 1374, 1376-77 (Fed. Cir. 2021).  Thus, "[a] non-enabling reference may qualify as prior art for the purpose of determining obviousness." *ABT Sys., LLC v. Emerson Elec. Co.*, 797 F.3d 1350, 1360 n.2 (Fed. Cir. 2015) (quoting *Symbol Tech., Inc. v. Opticon, Inc.*, 935 F.2d 1569, 1578 (Fed. Cir. 1991)); *see also I/P Engine, Inc. v. AOL Inc.*, 576 F. App'x 982, 988-89 (Fed. Cir. 2014) ("a nonenabling reference can potentially qualify as prior art for the purpose of determining obviousness").  Sonos's instruction, which requires that every obviousness reference must be "enabled," is contrary to the law.

Although different than the N.D. Cal. Model Instruction, Google proposes that the instruction use the phrase "alleged invention" instead of "claimed invention" to minimize juror confusion.  While the term "claim" is a cornerstone of a patent attorney's vocabulary, it is a term of art for many jurors with little exposure to the patent system.  Using a non-term of art such as "alleged" still conveys the concept but avoids any potential confusion.

## XIV.   **DISPUTED INSTRUCTION NO. 20: INVALIDITY—DERIVATION**

Although the N.D. Cal. Model Instructions do not contain a model instruction for derivation, Google's proposed derivation instruction is based on the Final Jury Instructions in *Intellectual Ventures LLC v. Canon Inc.*, No. 1:11-cv-00792-SLR, Dkt. 289 at 29 (D. Del. May 2, 2014).  Google's proposed instruction also accurately reflects the law and is consistent with 35 U.S.C. § 102(f) (pre-AIA), which specifies that a patent is invalid if the inventor "did not himself invent the subject matter to be patented" and "requires a showing of both (1) prior conception of the invention by another and (2) communication of that conception to the patentee that is sufficient to enable [him] to construct and successfully operate the invention." *Int'l Rectifier Corp. v. IXYS Corp.*, 361 F.3d 1363, 1376 (Fed. Cir. 2004) (cleaned up).  Google's proposed derivation instruction also explains Google's contention that the asserted claims of the '885 and '966 patents are invalid because the named inventors of those patents did not invent the subject matter of those claims, but rather derived it from Sonos's users' suggestions on the Sonos Forums website.  *See, e.g.*, Ex. 1 (11.30.2022

1  Schonfeld Op. Rep.) at 93-130.   This contention was properly disclosed in Dr. Schonfeld's

2  November 30, 2022 opening expert report, *id*., as well as early in this case through Google's

3  invalidity contentions.

4  **XV.    DISPUTED INSTRUCTION NO. 21: DAMAGES—BURDEN OF PROOF**

5         The parties are nearly in agreement on this instruction, with the exception of the phrasing

6  regarding the Court's previous summary judgment ruling regarding Claim 1 of the '885 patent:

7  (1) Sonos proposes that the instruction state the Court has "already found that ***certain versions of***

8  ***Google's accused media players infringe*** Claim 1 of the '885 patent," whereas Google proposes

9  that the Court has "already found that ***prior versions of the '885 Accused Products meet the***

10  ***limitations*** of Claim 1 of the '885 patent"; and (2) Sonos proposes that the instruction state the jury

11  must consider damages "if you find that ***Google failed to prove by clear and convincing evidence***

12  that claim 1 of the '885 patent is not invalid," whereas Google proposes "if you also find ***that Claim***

13  ***1 of the '885 patent is not invalid***."  Given that this case involves the unique circumstance wherein

14  the Court has already found infringement of the '885 patent for the accused products, and the jury

15  will be tasked with determining whether Google's redesigned products infringe, none of the model

16  jury instructions are instructive on these points.

17         With respect to the first issue, Google's reference to "prior versions of the '885 Accused

18  Products" is more accurate and easy to understand given that the jury will be deciding whether

19  Google's *redesigned* products infringe the '885 patent.  Google's proposal specifically makes clear

20  that the instruction refers to the products that Sonos accused of infringing the '885 patent[1] without

21  that redesign.   Google's proposal also states that the Court found those products "meet the

22  limitations" of Claim 1 of '885 patent, whereas Sonos's proposal characterizes the summary

23  judgment order as having found that those products "infringe" that claim.  Since Google cannot be

24  liable for infringing a valid patent, and the jury will be tasked with determining whether the '885

25  patent is invalid, Google's proposal is both more accurate and less likely to prejudice the jury into

26  thinking it is required to award damages due to the Court's prior ruling.

27  _____

28  [1]  Google defines "'885 Accused Products" in its proposals for Instruction Nos. 2 and 6 (Summary
of Contentions) ("I will refer to these as the '885 Accused Products").

1    With respect to the second issue, Sonos's proposal is unnecessarily convoluted as "failed to

2    prove" and "is not invalid" essentially requires the jury to decipher a double negative.  And the clear

3    and convincing standard for invalidity is already explained in numerous other instructions and need

4    not be repeated in the instruction explaining the burden of proof for damages.  *See* Stipulated

5    Instruction No. 4 (Outline of Trial); Disputed Instruction No. 14 (Invalidity—Burden of Proof).

6    **XVI.   DISPUTED INSTRUCTION NO. 23: REASONABLE ROYALTY—DEFINITION**

7    Three disputes remain regarding the parties' proposed instructions on the definition of

8    reasonable royalty: (1) the types of reasonable royalty available, (2) the language describing

9    apportionment, and (3) inclusion of an explanation about comparable licenses.[2]

10    **A.   Types of Reasonable Royalty**

11    The parties offer competing language describing the types of reasonable royalty that the

12    juries should consider.  This section of Google's proposed instruction is taken directly from the N.D.

13    Cal. Model Instruction and appropriately explains that the reasonable royalty can be calculated

14    either in the form of a per-unit running royalty or a lump sum royalty—the only two types that the

15    parties' experts proffer.  *See* N.D. Cal. Model Instruction B.5.7 ("Include [this instruction] if both

16    lump sum and running royalty damages theories are to be presented to the jury.").  In contrast,

17    Sonos's proposed instruction uses the instruction regarding "ongoing royalty" from the model

18    instruction and replaces the word "ongoing" with "per-unit."  But Sonos's proposal includes an

19    explanation on how to perform the calculation by "multiply[ing] the revenue the defendant obtained

20    from th[e] 'base'"—or the "product on which Google is to pay"—"by the 'rate' or percentage that

21    you find would have resulted from the hypothetical negotiation."  This instruction would be

22    nonsensical to the jury when Sonos's damages expert's only theory involves neither a royalty base

23    of any "revenue [Google] obtained from" the accused products, nor a "percentage" royalty rate.

24    Instead, he uses the subscription fee of an allegedly comparable app to calculate a per-unit rate that

25    he multiplies by the number of Google Home app installs or unit sales of Google's media players.

26

27    [2]  The same dispute regarding the use of the term "alleged" invention also applies here.  As discussed

28    previously, Google disputes that there is any invention in the asserted claims such that "claimed invention" is likely to create confusion for the jury. *See supra* § X and XII.

1   Including language on how to perform an irrelevant calculation will again only serve to confuse the

2   jury. *See Ericsson*, 773 F.3d at 1231 (holding that "the district court erred by instructing the jury"

3   regarding damages on multiple factors that were "not relevant, or are misleading, on the record

4   before it").

5       **B.     Apportionment**

6       Sonos's proposed instruction for the definition of reasonable royalty is based on the N.D.

7   Cal. Model Instruction, yet Sonos inexplicably eliminates the following paragraph regarding

8   apportionment:

> In this case the '885 and '966 patents cover only one component of the product that
> Google uses or sells. It is Sonos's burden to demonstrate what value that component
> has added to the desirability of the product as a whole and to separate the value of
> the patented contribution from the value of other parts of the product that are not
> attributable to the alleged invention.

12      Sonos's damages expert concedes that the accused products contain other non-patented

13  technology that should not be included in the royalty.  Ex. 2 (2023 Mal. Dep.) at 182:16-25 ("Q. So

14  you believe that consumers are buying, for example, the Nest Wi-Fi Point because of the accused

15  grouping functionality?  A. I believe that one of the reasons is the feature set that would include

16  that, and that is, in part, why that feature set is promoted by Google. ***I don't believe that it's***

17  ***sufficient basis for demand for lost profits or to invoke the entire market rule***, for example, and

18  expand greatly the royalty base.") (emphasis added).  The paragraph Sonos seeks to delete is

19  consistent with the well-established rule that "the ultimate reasonable royalty award must be based

20  on the incremental value that the patented invention adds to the end product." *Finjan, Inc. v. Blue*

21  *Coat Sys., Inc.*, 879 F.3d 1299, 1311 (Fed. Cir. 2018).  Excluding this language would lead to

22  confusion and risk misapplication of the law by the jury.  Sonos also should not be permitted to

23  cherry pick the portions of the model instruction that it likes and exclude other relevant portions.

24      **C.     Comparable Agreements**

25      The parties' competing instructions disagree on whether to include language regarding

26  comparable agreements.  Google's proposed instruction incorporates language directly from the

27  Federal Circuit's model instruction (except for the inapplicable paragraph regarding "litigation-

28  related" agreements), whereas Sonos's proposed instruction *removes* the language on comparable

1   licenses from the Northern District's model instruction.  Google's instruction also strikes the word

2   "license" from the phrase "comparable license agreements" to more accurately reflect the facts of

3   this case and avoid jury confusion.

4   *First*, the jury will hear evidence about an agreement that Sonos does not dispute is

5   technically comparable to the '885 and '966 patents from Google's damages expert, such that

6   inclusion of additional language regarding comparable agreements is warranted.  *See Prism Techs.*

7   *LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 1370 (Fed. Cir. 2017) (that a "party may use the royalty

8   rate from sufficiently comparable licenses" in calculating damages is a "long-accepted

9   proposition"); *Apple Inc. v. Wi-LAN Inc.*, 25 F.4th 960, 971 (Fed. Cir. 2022) ("In determining a

10  reasonable royalty, parties frequently rely on comparable license agreements.") (internal citation

11  and quotations omitted).  As Google explained in its response to Sonos's Motion *in Limine* No. 1,

12  Sonos's arguments regarding the comparable agreement that Google's damages expert relies on

13  have no merit.  Google's damages expert adequately analyzed the agreement from an economic

14  perspective and made the appropriate adjustments for any differences between the agreement and

15  the hypothetical license.

16  *Second*, the Federal Circuit's model instruction should be used because it contains additional

17  detail and context that will be helpful to the jury.  *See, e.g.*, Federal Circuit Bar Association Model

18  Instruction B.5.9 – Comparable Agreements ("Whether a license agreement is comparable to the

19  license under the hypothetical license scenario depends on many factors, such as whether they

20  involve comparable technologies, comparable economic circumstances, comparable structure, and

21  comparable scope.").  On the contrary, using the Northern District's model instruction would

22  confuse the jury because it refers to the "*royalty rate* in one or more of th[e] *licenses*" when the

23  comparable agreement is a purchase agreement containing a lump-sum payment.  N.D. Cal. Model

24  Patent Jury Instruction No. B.5.7, Aug. 2017 (updated Oct. 2019).  The only change Google made

25  is striking the word "license" where the instruction discusses "comparable license agreements" or

26  "license agreements" in light of case law agreeing that patent acquisition agreements can serve as a

27  comparable data point.  *See Parthenon Unified Memory Architecture LLC v. Apple Inc.*, No. 2:15-

28  CV-621-JRG-RSP, 2016 WL 7670833, at *1 (E.D. Tex. Sept. 21, 2016) (rejecting argument that a

1   damages expert cannot consider a patent purchase agreement under the *Georgia-Pacific* framework

2   and holding that it should be left "up to the jury to determine the evidentiary value of such

3   agreements and [an expert's] reliance on the agreements at trial").

4   **XVII.   DISPUTED INSTRUCTION NO. 24: DAMAGES—DOUBTS RESOLVED**
         **AGAINST INFRINGER**

5

6          Sonos's proposed instruction regarding "Doubts Resolved Against Infringer" is unnecessary

7   and should not be included.  Sonos bases its instruction on the American Intellectual Property Law

8   Association Model Patent Instruction 10.3, which states, "Any doubts that you may have on the

9   issue of damages due to [the Defendant]'s failure to keep proper records should be decided in favor

10  of [the Plaintiff]. Any confusion or difficulties caused by [the Defendant]'s records also should be

11  held against [the Defendant], not [the Plaintiff]."  AIPLA Model Instruction 10.3.  Sonos then adds

12  to that AIPLA instruction the following self-serving statement: "In that circumstance, you are

13  allowed to act on probable and inferential proof, as well as upon direct and positive proof."

14         *First*, the proposed instruction appears to apply in the context of a *lost profits* theory of

15  infringement, which is inapplicable here as Sonos concedes it does not proffer such a damages

16  theory.  *See* Google's Opposition to Sonos's MIL No. 1 at 7; *see Bigelow v. R.K.O. Pictures, Inc.*,

17  327 U.S. 251, 264–65 (1946) ("this Court has sustained recovery of the full amount of defendant's

18  profits where his own wrongful action has made it impossible for the plaintiff to show in what

19  proportions he and the defendant have contributed to the profits."); *Lam, Inc. v. Johns-Manville*

20  *Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983) (discussing inability to ascertain lost profits is due to

21  the infringer's failure to keep accurate or complete records);  *Sensonics, Inc. v. Aerosonic Corp.*, 81

22  F.3d 1566, 1572–73 (Fed. Cir. 1996) (same); *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109,

23  1118 (Fed. Cir. 1996) (same).

24         *Second,* Sonos's proposed instruction is inappropriate because Sonos has not previously

25  contended, offered any evidence, or obtained any ruling from the Court that Google "failed to keep

26  proper records" that it was under an obligation to maintain.  *See Sensonics*, 81 F.3d at 1572 (finding

27  that an adverse inference was warranted because defendant "fail[ed] to retain production records

28  during the litigation period"); *Lam,* 718 F.2d at 1065 (resolving doubts against defendant "since it

-20-                                        Case No. 3:21-cv-07559-WHA

1   failed to keep accurate records" and "advanced different numbers at different stages of this

2   litigation").  Unlike *Sensonics* and *Lam*, Google has provided detailed records regarding unit sales

3   of Google's media players and the number of installs for the Google Home app on both Android

4   and iOS devices.  Indeed, Sonos's expert uses these records to calculate damages, and he has never

5   suggested that they are inaccurate or incomplete in any way.  This instruction is a transparent attempt

6   to unfairly prejudice Google and circumvent Sonos's burden of proving damages that are not

7   "remote or speculative."  N.D. Cal. Model Jury Instruction No. B.5.1.  Sonos's reference to the fact

8   that Sonos damages expert may "need to explain . . . that he was unable to make certain calculations

9   as a result of Google's recordkeeping" demonstrates that Sonos improperly seeks to include this

10   instruction to compensate for its damages' experts' flawed and unreliable theories. Sonos' proposal

11   is particularly improper because its damages expert completely ignored most of the relevant records

12   produced by Google, such as the user metrics that show that on any given day less than one half of

13   one percent of users have set up even a single speaker group (let alone multiple, overlapping speaker

14   groups).

15       *Third*, this instruction is not found in either the Northern District's or the Federal Circuit Bar

16   Association's model instructions on reasonable royalty damages, and Sonos does not provide any

17   legitimate basis for its inclusion.

18       *Fourth*, Sonos's proposal deviates from the model instruction, yet Sonos does not provide

19   any reason why an addition that "[the jury is] allowed to act on probable and inferential proof, as

20   well as upon direct and positive proof" would be appropriate or necessary.  As discussed previously,

21   this language is taken from a case that relates to lost profits damages, not reasonable royalty

22   damages.  *See Bigelow*, 327 U.S. at 264–65 (1946).  Moreover, the case involved a situation where

23   "the defendant by his own wrong has prevented a more precise computation"—a situation that does

24   *not* exist here.  *Id.* at 264.  Sonos has not identified any "wrong" committed by Google or any records

25   that Google had been obligated to keep during this litigation but did not.  Furthermore, Sonos injects

26   concepts such as "probable and inferential proof" and "direct and positive proof" without any

27   explanation, which will only serve to confuse the jury.

28

DATED:  April 26, 2023

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By _____*Sean Pak*_____
Sean Pak
Melissa Baily
James D. Judah
Lindsay Cooper
Marc Kaplan
Iman Lordgooei

*Attorneys for GOOGLE, LLC*

GOOGLE'S MEMORANDUM IN SUPPORT OF ITS PROPOSED DISPUTED JURY INSTRUCTIONS

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure and Local Rule 5-1, I hereby certify that, on April 26, 2023, all counsel of record who have appeared in this case are being served with a copy of the foregoing via ECF and email.


<u>  /s/ Sean Pak   </u>
Sean Pak

GOOGLE'S MEMORANDUM IN SUPPORT OF ITS PROPOSED DISPUTED JURY INSTRUCTIONS