# EXHIBIT 5
# (Redacted)

**HIGHLY CONFIDENTIAL - SOURCE CODE - ATTORNEYS' EYES ONLY**

CLEMENT SETH ROBERTS (STATE BAR NO. 209203)
croberts@orrick.com
BAS DE BLANK (STATE BAR NO. 191487)
basdeblank@orrick.com
ALYSSA CARIDIS (STATE BAR NO. 260103)
acaridis@orrick.com
EVAN D. BREWER (STATE BAR NO. 304411)
ebrewer@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:   +1 415 773 5700
Facsimile:    +1 415 773 5759

SEAN M. SULLIVAN (*pro hac vice*)
sullivan@ls3ip.com
COLE RICHTER (*pro hac vice*)
richter@ls3ip.com
LEE SULLIVAN SHEA & SMITH LLP
656 W Randolph St., Floor 5W
Chicago, IL 60661
Telephone:   +1 312 754 0002
Facsimile:    +1 312 754 0003

*Attorneys for Defendant Sonos, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| GOOGLE LLC,<br><br>　　　Plaintiff and Counter-defendant,<br><br>　　　v.<br><br>SONOS, INC.,<br><br>　　　Defendant and Counter-claimant. | Case No. 3:20-cv-06754-WHA<br>Related to Case No. 3:21-cv-07559-WHA<br><br>**REBUTTAL EXPERT REPORT OF DR. KEVIN C. ALMEROTH FOR "PATENT SHOWDOWN"** |

**HIGHLY CONFIDENTIAL - SOURCE CODE - ATTORNEYS' EYES ONLY**

### 5. Sonos's 2005 System Did Not Meet Limitation 1.8

357. Limitation 1.8 of the '885 Patent requires the "first zone player" to be programmed with the capability for "after receiving the first and second indications, continuing to operate in the standalone mode until a given one of the first and second zone scenes has been selected for invocation."

358. In my opinion, Sonos's 2005 system did not meet this requirement for multiple reasons.

359. First, as I explained above, the evidence I have reviewed establishes that the ZonePlayers in Sonos's 2005 system did not have any "zone scenes" capability at all, let alone any capability to receive the claimed "first indication that the first zone player has been added to a first zone scene" or the claimed "second indication that the first zone player has been added to a second zone scene." For these same reasons, the ZonePlayers in Sonos's 2005 system fail to meet either the "*after receiving the first and second indications*, continuing to operate in the standalone mode . . ." aspect of limitation 1.8 or the "continuing to operate in the standalone mode *until a given one of the first and second zone scenes has been selected for invocation*" aspect of limitation 1.8.

360. Second, even setting aside the other fundamental differences between a "zone group" and a "zone scene," the evidence I have reviewed shows that a ZonePlayer in Sonos's 2005 system did not have the capability to "continu[e] to operate in the standalone mode" after receiving an indication that it has been added to a "zone group." Instead, a ZonePlayer in Sonos's 2005 system was programmed such that, after receiving an ▮▮▮▮▮▮ message for a "zone group," the ZonePlayer would automatically transition from operating in "standalone mode" to operating in accordance with the "zone group" by automatically configuring itself for synchronous audio playback as part of the "zone group," which would disable the ZonePlayer's capability to engage in individual audio playback until the ZonePlayer was subsequently removed from the "zone group." This functionality is confirmed by the Sonos 2005 User Guide, the source code for Sonos's 2005 system, and my discussions with Mr. Millington.

361. Despite the clear absence of this functional capability from Sonos's 2005 system, Dr. Schonfeld opines in paragraph 263 of his Opening Report that Sonos's 2005 system discloses claim limitation 1.8 and then sets forth various theories in an attempt to support this opinion. *See* Schonfeld Op. Report at ¶¶ 263-273. However, nothing in Dr. Schonfeld's Opening Report alters my opinion that the ZonePlayers in Sonos's 2005 system did not have the functional capability required by limitation 1.8.

362. For instance, at paragraphs 266-267 of his Opening Report, Dr. Schonfeld says that "Sonos argues that having a 'zone scene' that is not automatically activated discloses the limitation [1.8]" and that "under Sonos's understanding of the claims," the "All Zones-Party Mode" option

discloses limitation 1.8 under the theory that it "exists at all times because it is a default 'zone scene' and therefore it exists prior to it being 'invoked' as claimed." Schonfeld Op. Report at ¶¶ 266-267. However, this theory is flawed for several reasons.

363. First, as I explained above, the "All Zones-Party Mode" option is not a "zone scene" as described and claimed in the '885 Patent. Thus, whether or not the "All Zones-Party Mode" option is "automatically activated" is not relevant to limitation 1.8, which requires the "first zone player" to "continu[e] to operate in the standalone mode" after receiving two different "indications" that it has been added to two different "*zone scenes*."

364. Second, even setting aside the other fundamental differences between the "All Zones-Party Mode" option and a "zone scene," Dr. Schonfeld fails to identify any message received by a ZonePlayer in Sonos's 2005 system that could possibly qualify as a "first indication that the [ZonePlayer] has been added to" the "All Zones-Party Mode" option prior to the time when the "All Zones-Party Mode" option was "selected for invocation," as required by claim 1 of the '885 Patent. This failure by Dr. Schonfeld is not surprising because, as explained above, there is no such "indication" that would have ever been received by a ZonePlayer for the "All Zones-Party Mode" option, which was hard-coded into the Desktop Controller and Sonos Controller software.

365. Third, in addition to these flaws with Dr. Schonfeld's reliance on the "All Zones-Party Mode" option, Dr. Schonfeld fails to identify any "*second* zone scene" to which a ZonePlayer could have been added or any "*second* indication that the [ZonePlayer] has been added to a second zone scene" that would have been received by the ZonePlayer prior to the time when one of the "zone scenes" was "selected for invocation," as required by claim 1 of the '885 Patent.

366. Turning to paragraph 268-269 of his Opening Report, Dr. Schonfeld states that "the figures that Sonos relies upon to show this claim limitation was disclosed in the '885 Patent are very similar to the same user interface used in the Sonos System" and "[t]he user interface of the Sonos System allows Zones to be grouped together (or unground) in nearly the same manner." Schonfeld Op. Report at ¶¶ 268-269.

367. However, as an initial matter, I fail to this how statement regarding the alleged

similarities between the "user interface" for creating a "zone scene" that is disclosed in the '885 Patent and the "user interface" for creating a "zone group" in Sonos's 2005 system has any relevance to whether a ZonePlayer in Sonos's 2005 system had the functional capability required by limitation 1.8. Regardless of the user interfaces involved, the relevant inquiry is whether the claimed "first zone player" is programmed to receive "indications" that it has been added to "zone scenes" but then "continu[es] to operate in the standalone mode" thereafter until one of the "zone scenes" is "selected for invocation." As I have explained elsewhere, the '885 Patent clearly discloses this functional capability, which is consistent with one of the fundamental characteristics of a "zone scene" – namely, that it comprises a "predefined" group of "zone players" that exists in an inactive state until the "zone scene" is "invoked" at a user's request. On the other hand, the evidence shows that, even setting aside the fundamental differences between a "zone group" and a "zone scene," a ZonePlayer in Sonos's 2005 system did not have this functionality capability. Instead, a ZonePlayer in Sonos's 2005 system was programmed such that, after receiving an ███████████ message for a "zone group" as a result of a user creating the "zone group" using the "user interface" of Sonos's 2005 system (which is the only thing Dr. Schonfeld has identified as the claimed "indication"), the ZonePlayer would automatically transition from operating in "standalone mode" to operating in accordance with the "zone group" by automatically configuring itself for synchronous audio playback as part of the "zone group," which would disable the ZonePlayer's capability to engage in individual audio playback until the ZonePlayer was subsequently removed from the "zone group."

368. I also disagree with Dr. Schonfeld's statement that the "user interface[s]" are "very similar" or that they allow "Zones to be grouped together (or ungrouped) in nearly the same manner." These two "user interfaces" are used to facilitate grouping of "zone players" in two distinctly different manners. In particular, the "user interface" of the '885 Patent is designed to allow a user to create a "zone scene" comprising a customized group that is "predefined" and "previously saved" in advance of being activated so that it is available to be activated at some later time at a user's request, whereas the "user interface" of Sonos's 2005 system was designed to allow a user to create a "zone group" that is automatically activated at the same time that it was

created such that the ZonePlayers in the "zone group" automatically configure themselves for synchronous audio playback as part of the "zone group."

369. Turning next to paragraph 270 of his Opening Report, Dr. Schonfeld states as follows:

> Further, as discussed above, Sonos has taken the position that "standalone mode" includes having a zone player not playback any media. *Supra*. In the normal course of using the Sonos System, "any zones you link will automatically drop their current music queue and begin to play the music queue from the highlighted zone." However, "if you select link zone from a zone where there is no music playing, any zone you link to it will also be silent." Accordingly, silent zones may remain in standalone mode even when added to different groups if the groups that they are added to are silent and depending on the order in which they are added to that group.

Schonfeld Op. Report at ¶ 270. However, this theory is premised on a misleading and inaccurate characterization of the "standalone mode" limitation of claim 1 of the '885 Patent.

370. Contrary to Dr. Schonfeld's suggestion, the "standalone mode" limitation does not simply refer to a "zone player" that is "silent." Rather, the "standalone mode" limitation requires to a particular "mode" of operation a "zone player" in which the "zone player" is "*configured to play back media individually*" as opposed to being configured to play back media as part of a group. In other words, the "standalone mode" limitation requires the "zone player" to be operating in a "mode" in which the "zone player" is currently configured to play back media by itself, as opposed to being currently configured for synchronous playback as part of an activated group, such that the "zone player" is currently available to be used for individual audio playback without first modifying its grouping status. When applying this proper interpretation of the "standalone mode" limitation, there is no dispute that the ZonePlayers in Sonos's 2005 system did <u>not</u> "continu[e] to operate in the standalone mode" after being added to a "zone group." To the contrary, a ZonePlayer in Sonos's 2005 system was programmed such that, after receiving an ██████████████ message for a "zone group" as a result of a user creating the "zone group," the ZonePlayer would automatically transition from operating in "standalone mode" to operating in accordance with the "zone group" by automatically configuring itself for synchronous audio playback as part of the "zone group," which would disable the ZonePlayer's capability to engage in individual audio playback until the ZonePlayer was subsequently removed from the "zone

group."

371. Turning lastly to paragraphs 271-273 of his Opening Report, Dr. Schonfeld sets forth a theory that limitation 1.8 could be met in a scenario where a ZonePlayer in Sonos's 2005 system (i) was first added to and then dropped from a first "zone group," (ii) was next added to and then dropped from a second "zone group," which caused the ZonePlayer to be in "standalone mode," and (iii) was thereafter add to a new "zone group" having the same group membership as either the first "zone group" or the second "zone group." Schonfeld Op. Report at ¶ 271-273. However, this theory likewise fails for several reasons.

372. First, because "zone groups" are not "zone scenes" for all of the reasons explained above, this scenario fails to meet either the "*after receiving the first and second indications*, continuing to operate in the standalone mode . . ." or the ". . . continuing to operate in the standalone mode *until a given one of the first and second zone scenes has been selected for invocation*" aspects of limitation 1.8.

373. Second, this theory is premised on an incorrect interpretation of limitation 1.8's requirement that "after receiving the first and second indications," the "first zone player" "*continu[es] to operate in the standalone mode* until a given one of the first and second zone scenes has been selected for invocation." In particular, in the context of the surrounding claim language and the '885 Patent's specification, a POSITA would understand this claim limitation to require functionality whereby the "first zone player" does <u>not</u> automatically transition out of "standalone mode" in response to receiving either the "first indication" or the "second indication." In other words, a POSITA would understand this claim limitation to require functionality whereby neither "first indication" nor the "second indication" serves a trigger that causes the "first zone player" to transition out of "standalone mode." And under this proper interpretation, a POSITA would not consider limitation 1.8 to be met by a scenario where a ZonePlayer in Sonos's 2005 system <u>does</u> automatically transition out of "standalone mode" in response to receiving a ██████████ message for a "zone group" and is then subsequently placed back into "standalone mode" at some later time by virtue of a user removing the ZonePlayer from the "zone group" and thereby destroying the "zone group." Rather, the ZonePlayer in such a scenario *stops*

operating in the standalone mode after receiving the ▮▮▮▮▮ message (which is the only thing Dr. Schonfeld has identified as the claimed "indication") then begins operating in the standalone mode again at a later time, which is distinctly different from "*continu[ing]* to operate in the standalone mode."

374. Thus, nothing in Dr. Schonfeld's Opening Report alters my opinion that a ZonePlayer in Sonos's 2005 system did not have the functional capability required by limitation 1.8.

my opening report.

1086.   I have also reviewed Sonos's Technology Tutorial that provides an overview of the '885 Patent, which I understand was submitted to the court in February 2022.  I incorporate by reference herein Sonos's Technology Tutorial and expressly reserve the right to use the Technology Tutorial in whole or in part as a demonstrative to assist in my testimony.

**XVIII. <u>RESERVATION OF RIGHT</u>**

1087.   I reserve the right to further expound on my opinions regarding the validity of claim 1 of the '885 Patent in subsequent declarations, reports, and/or at trial.

Dated: July 27, 2022                     By: _____
                                             Kevin C. Almeroth