# EXHIBIT B

~~Le~~
CLEMENT SETH ROBERTS (STATE BAR NO. 209203)
croberts@orrick.com
BAS DE BLANK (STATE BAR NO. 191487)
basdeblank@orrick.com
ALYSSA CARIDIS (STATE BAR NO. 260103)
acaridis@orrick.com
EVAN D. BREWER (STATE BAR NO. 304411)
ebrewer@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:    +1 415 773 5700
Facsimile:     +1 415 773 5759

SEAN M. SULLIVAN (*pro hac vice*)
sullivan@ls3ip.com
J. DAN SMITH (*pro hac vice*)
smith@ ls3ip.com
MICHAEL P. BOYEA (*pro hac vice*)
boyea@ ls3ip.com
COLE B. RICHTER (*pro hac vice*)
richter@ls3ip.com
LEE SULLIVAN SHEA & SMITH LLP
656 W Randolph St., Floor 5W
Chicago, IL 60661
Telephone:    +1 312 754 0002
Facsimile:     +1 312 754 0003

*Attorneys for Sonos, Inc.*

~~t~~QUINN EMANUEL URQUHART & SULLIVAN, LLP
 Sean Pak (Bar No. 219032)
 seanpak@quinnemanuel.com
 Melissa Baily (Bar No. 237649)
 melissabaily@quinnemanuel.com
 James Judah (Bar No. 257112)
 jamesjudah@quinnemanuel.com
 Lindsay Cooper (Bar No. 287125)
 lindsaycooper@quinnemanuel.com
 Iman Lordgooei (Bar No. 251320)
 imanlordgooei@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:    (415) 875-6600
Facsimile:     (415) 875-6700

 Marc Kaplan (*pro hac vice*)
 marckaplan@quinnemanuel.com
191 N. Wacker Drive, Ste 2700
Chicago, Illinois 60606
Telephone:    (312) 705-7400
Facsimile:     (312) 705-7401

*Attorneys for* GOOGLE~~,~~ LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA,

### SAN FRANCISCO DIVISION

SONOS, INC.,

    Plaintiff and Counter-defendant,

    v.

GOOGLE LLC,

    Defendant and Counter-claimant.

Case No. 3:20-cv-06754-WHA
Related to Case No. 3:21-cv-07559-WHA

**JOINT [PROPOSED] JURY INSTRUCTIONS**

Judge: Hon. William Alsup
Pretrial Conf.: May 3, 2023
Time: ~~2~~12:00 p.m.
Courtroom: 12, 19th Floor
Trial Date: May 8, 2023

<mark>Yellow Highlight</mark> indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party name is not indicated.

### JOINT [PROPOSED] JURY INSTRUCTIONS

Sonos, Inc. ("Sonos") and Google LLC ("Google") hereby submit the following Joint [Proposed] Jury Instructions for the trial in this matter. The titles for each instruction identify whether that particular instruction is submitted as a "Stipulated" or "Disputed" instruction. If an instruction is "Disputed," then there is an additional designation specifying whether its "Sonos's Instruction" or "Google's Instruction."

Sonos and Google reserve all rights to supplement, amend, or otherwise modify these proposed instructions as appropriate, including but not limited to the right to revise their positions on the proposed instructions in response to future rulings by the Court or the evidence as it is admitted at trial. Sonos and Google submit these proposed jury instructions without waiver of their position that the opposing party has not presented sufficient evidence to submit some or all of its affirmative claims, damages theories, or affirmative defenses to the jury, and without waiver of arguments presented in motions *in limine* or during claim construction.  Sonos and Google also submit these instructions subject to the preservation of positions taken during claim construction, *Daubert* proceedings, summary judgment, and other pretrial proceedings.

==Yellow Highlight== indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party name is not indicated.

**PRELIMINARY JURY INSTRUCTIONS**

**STIPULATED INSTRUCTION NO. 1 RE OVERVIEW OF PATENTS**

As you may have learned, this ~~is a~~case includes patent ~~case~~infringement claims. I will now play a short video for you to give you an overview of patents and the patent system in the United States. [Play Federal Judicial Center Patent Video.]

This case also includes claims for breach of contract and conversion.  I will instruct you regarding these claims after I discuss the patent infringement claims.

Authority:

*Finjan, Inc. v. Juniper Networks, Inc.*, 3:17-cv-05659-WHA, Dkt. 335 at 154-55 (N.D. Cal. Dec. 17, 2018).

**STIPULATED INSTRUCTION NO. 2 RE SUMMARY OF CONTENTIONS**

To help you follow the evidence, I will now give you a summary of the positions of the parties~~.~~ related to the patent infringement claims. The parties in this case are Sonos, Inc. and Google LLC.

The case involves ~~three Sonos~~four patents assigned to Sonos: U.S. Patent No. 10,848,885; U.S. Patent No. 10,469,966; U.S. Patent No. 9,968,615; and U.S. Patent No. 10,779,033.  For convenience, we refer to patents by the last three numbers of the patent number, so the "'885 patent," the "'966 patent," the "'615 patent," and the "'033 patent."

The '885 patent and '966 patent relate to grouping ~~wireless~~ audio playback devices together and playing back audio to a group~~.~~.

The '615 and ~~the~~ '033 ~~patent relates~~patents relate to transferring playback of ~~audio~~media in a remote playback queue from a user's ~~smart phone~~smartphone to a ~~smart speaker.~~playback device.

Sonos filed suit in ~~this~~[1] federal court seeking money damages from Google for allegedly infringing the '885, '966, '615, and '033 patents ~~by [making], [importing], [using], [selling],~~

---

[1] *See, e.g.*, Dkt. 36 (Order Staying Case).

==Yellow Highlight== indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party name is not indicated.

~~[offering for sale], [supplying or causing to be supplied in or from the United States all or a substantial portion of the components of a patented invention] [in/into/within] the United States [products] [methods] [products which are made by a process patented in the United States] that [patent holder] argues are covered by claims [ ] of the [ ] patent. [[Patent holder] also argues that [alleged infringer] has [actively induced infringement of these claims of the [ ] patent by others] [and/or] [contributed to the infringement of claims [ ] of the [ ] patent by others].]~~

The products that are alleged to infringe the '885 patent are Google media players including Google's Chromecast, Chromecast Ultra, Chromecast with Google TV, Home, Home Mini, Home Max, Nest Audio, Nest Mini, Nest Hub (a/k/a Home Hub), Nest Hub Max, and Nest Wifi Point. ~~Google denies that it has infringed claim 1 of the '885 patent.~~ ==I have already determined that prior versions of Google's media players infringe Claim 1 of the '885 patent.[2] Google contends its current media players were changed such that they do not infringe Claim 1 of the '885 patent. Sonos disputes this and argues that the current versions of Google's media players infringe the '885 patent.  Sonos also argues that Google's alleged infringement is willful, which Google also disputes.  I will instruct you later as to the ways in which a patent may be infringed and how to determine infringement.==

~~Google denies that it has infringed claim 1 of the '885 patent. I have already determined that certain versions of Google's media players infringe the '885 patent.[3]  Google contends that newer versions of its media players do not infringe.  Sonos disputes this and argues that the newer versions still infringe the '885 patent.  I have not decided whether any products infringe the '966 or '033 patents.  Sonos contends that they do, and Google disputes this.  Sonos also argues that Google's infringement is willful.  I will instruct you later as to the ways in which a patent may be infringed and how to determine infringement.~~

~~Google also argues that the '885, '966 and '033 patents are invalid.~~==Google== ~~also~~ ==argues that the '885 patent is invalid.  Invalidity is a defense to infringement.== I will instruct you later as to the ways in which a patent may be invalid. In general, however, a patent is invalid if it is not

[2] Dkt. 309 at 11 (granting Sonos's motion for summary judgment of infringement).
[3] Dkt. 309 at 11 (granting Sonos's motion for summary judgment of infringement).

JOINT PROPOSED JURY INSTRUCTIONS
3:20-cv-06754-WHA

Yellow Highlight indicates changed or added language to a model instruction.
Strikethrough indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party name is not indicated.

new or is obvious in view of the state of the art at the relevant time, or if the description in the

patent does not meet certain requirements.

So, with respect to the '885 patent, your job will be to decide whether the newer versions of Google's current products continue to infringe Claim 1 or not, whether Google's infringement of the '885 patent is willful, has been infringed and whether or not that claim is invalid. If you decide the '885 patent has been infringed and is not invalid, you will then need to decide any money damages to be awarded to Sonos to compensate it for the infringement. You will also need to make a finding as to whether the infringement was willful.  If you decide that any infringement was willful, that decision should not affect any damage award you give. I will take willfulness into account later.

The products that were alleged to infringe the '615 patent are computing devices, such as smartphones, tablets, and laptops, that have or had the YouTube Main, YouTube Kids, YouTube TV, or YouTube Music apps installed.  I have also already determined that the products that Sonos alleged to infringe the '615 patent do not infringe.[4]  You will not be asked to decide whether Google infringes this patent.

I have also already determined that Claim 13 of the '615 patent is invalid.[5]  Sonos contends that claims 18-19 and 25 of the '615 patent are not invalid.  Google disputes this and contends that those claims are also invalid.

With respect to the '966 and '033 patents '615 patent, your job will be to decide whether claims [ ] of those patents have been infringed, whetheror not claims 18, 19, and 25 are invalid. You do not need to decide any money damages for infringement of the '615 patent because I have already decided that Google does not infringe the '615 patent.

The products that are alleged to infringe the '966 patent are computing devices, such as smartphones, tablets, and laptops, running Android, ChromeOS, or iOS, that have or had the

---

[4]  Dkt. 316 at 17 (granting Google's motion for summary judgment of invalidity and noninfringement).

[5]  Dkt. 316 at 17 (granting Google's motion for summary judgment of invalidity and noninfringement).

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party name is not indicated.

Google Home app installed. I have not decided whether any products infringe the '966 patent. Sonos contends that they do, and Google denies this. Sonos also argues that Google's alleged infringement is willful, which Google also disputes. I will instruct you later as to the ways in which a patent may be infringed and how to determine infringement.

Google ~~also~~ argues that the '966 patent is invalid. Invalidity is a defense to infringement. I will instruct you later as to the ways in which a patent may be invalid. In general, however, a patent is invalid if it is not new or is obvious in view of the state of the art at the relevant time, or if the description in the patent does not meet certain requirements.

With respect to the '966 patent, your job will be to decide whether ~~or not those patents are~~ ~~claims [ ] of~~ that patent has been infringed, and whether or not that patent is invalid. If you decide that ~~either of both of~~ the '966 ~~or '033 patents~~patent has been infringed and is not invalid, then you will also need to decide any money damages to be awarded to Sonos to compensate it for the infringement. You will also need to make a finding as to whether the infringement was willful. If you decide that any infringement was willful, that decision should not affect any damage award you give. I will take willfulness into account later.

The products that were alleged to infringe the '033 patent are computing devices, such as smartphones, tablets, and laptops, that have or had the YouTube Main, YouTube Kids, YouTube TV, or YouTube Music apps installed. I have not decided whether any products infringe the '033 patent. Sonos contends that they do, and Google denies this. Sonos also argues that Google's alleged infringement is willful, which Google also disputes. I will instruct you later as to the ways in which a patent may be infringed and how to determine infringement.

Google argues that the '033 patent is invalid. Invalidity is a defense to infringement. I will instruct you later as to the ways in which a patent may be invalid. In general, however, a patent is invalid if it is not new or is obvious in view of the state of the art at the relevant time, or if the description in the patent does not meet certain requirements.

With respect to the '033 patent, your job will be to decide whether ~~claims [ ] of~~ the patent has been infringed, and whether or not that patent is invalid. If you decide that the '033 patent has been infringed and is not invalid, then you will also need to decide any money damages to be

5

<mark>Yellow Highlight</mark> indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party name is not indicated.

awarded to Sonos to compensate it for the infringement.  You will also need to make a finding as to whether the infringement was willful.  If you decide that any infringement was willful, that decision should not affect any damage award you give. I will take willfulness into account later.

Authority:

     *Fed. Cir. Bar Association Model Patent Jury Instructions A.2, Rev. May 2020* (Summary of Contentions); *N.D. Cal. Model Patent Jury Instructions* A.3., Aug. 2017 (updated Oct. 2019).

==Yellow Highlight== indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party name is not indicated.

### STIPULATED INSTRUCTION NO. 3 RE BURDEN OF PROOF

~~The trial will now begin. First, each side may make an opening statement. An opening statement is not evidence. It is simply an opportunity for the lawyers to explain what they expect the evidence will show.~~

There are two standards of proof that you will apply to the evidence, depending on the issue you are deciding.  On some issues, you must decide whether certain facts have been proven by a preponderance of the evidence. A preponderance of the evidence means that the fact that is to be proven is more likely true than not, that is, that the evidence in favor of that fact being true is sufficient to tip the scale, even if slightly, in its favor. On other issues that I will identify for you, you must use a higher standard and decide whether the fact has been proven by clear and convincing evidence, that is, that you have been left with a clear conviction that the fact has been proven.

These standards are different from what you may have heard about in criminal proceedings where a fact must be proven beyond a reasonable doubt. On a scale of these various standards of proof, as you move from preponderance of the evidence, where the proof need only be sufficient to tip the scale in favor of the party proving the fact, to beyond a reasonable doubt, where the fact must be proven to a very high degree of certainty, you may think of clear and convincing evidence as being between the two standards.


Authorities:

*Fed.* Cir. *Bar Association Model Patent Jury Instructions A.5, Rev. May 2020* (outline of trial) (citations omitted).


### STIPULATED INSTRUCTION NO. 4 RE OUTLINE OF TRIAL

The trial will now begin. First, each side may make an opening statement. An opening statement is not evidence. It is simply an outline to help you understand what that party expects the evidence will show.

JOINT PROPOSED JURY INSTRUCTIONS
3:20-cv-06754-WHA

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party name is not indicated.

The presentation of evidence will then begin. Witnesses will take the witness stand and the documents will be offered and admitted into evidence. There are two standards of proof that you will apply to the evidence, depending on the issue you are deciding. On some issues, you must decide whether something is more likely true than not. On other issues you must use a higher standard and decide whether it is highly probable that something is true. ~~There are two standards of proof that you will apply to the evidence, depending on the issue you are deciding. On some issues, you must decide whether something is more likely true than not. On other issues you must use a higher standard and decide whether it is highly probable that something is true.~~

Sonos will present its evidence on its contention that ~~[some] [the] claims of~~ the '885 patent ~~has been and~~ is infringed by Google's current speaker and hub device products, that the '966 patent has been and continues to be infringed by Google's ~~newer versions of its~~ current speaker and hub device products~~,~~ that ~~the '966 and '033 patents~~ have ~~been and continue to be infringed by~~ the Google Home app installed, ~~and~~ that the Google's infringement of the '885 and '966 patents has been and continues to be willful, and the amount of damages Sonos is entitled to for Google's infringement.

Sonos will also present evidence on its contention that the '033 patent is infringed by smartphones, tablets, and laptops that have or had the YouTube Main, YouTube Kids, YouTube TV, or YouTube Music apps installed, that Google's infringement of the '033 patent has been and continues to be willful, and the amount of damages Sonos is entitled to for Google's infringement.  These witnesses will be questioned by Sonos's counsel in what is called direct examination. After the direct examination of a witness is completed, the opposing side has an opportunity to cross-examine the witness.  Finally, Sonos's counsel has the opportunity to question the witness one more time in what is called redirect examination.

To prove infringement of any claim, Sonos must persuade you that it is more likely than not that Google has infringed that claim. To persuade you that any infringement was willful, Sonos must prove that it is highly probable ~~more likely than not~~ that the infringement was willful. Sonos must also prove, by a preponderance of the evidence, the amount of damages that it suffered.

JOINT PROPOSED JURY INSTRUCTIONS
3:20-cv-06754-WHA

==Yellow Highlight== indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party name is not indicated.

      After Sonos has presented its witnesses, Google will call its witnesses, who will also be examined and subject to cross-examination and redirect. Google will present its evidence that the ~~claims of the~~ '885, '966, '615, and '033 patents are invalid. To prove invalidity of any claim ~~of any claim~~, Google must persuade you that it is highly probable that ~~claims [ ] of~~ the '885, '966, '615, and '033 patent ~~is~~are invalid. In addition to presenting its evidence of invalidity, Google will put on evidence responding to Sonos's infringement, ~~and~~ willfulness ~~and damages contentions.~~, and damages contentions.  Google will also then present evidence of its claim against Sonos for breach of the Contention Integration Agreement and the amount of damages Google is entitled to for Sonos's breach. Google will also present evidence of its claim against Sonos for conversion of Google's cloud queue technology and the amount of damages Google is entitled to for Sonos's conversion. It is Google's contention that Sonos wrongfully exercised dominion over patents that Sonos contends cover Google's cloud queue idea.  Google will call its witnesses, who will also be examined and subject to cross-examination and redirect.

      Sonos will then return and will put on evidence responding to Google's contention that ~~the '885~~the '885, '966, '615, and '033 patents are invalid, that Sonos breached the Content Integration Agreement, and that Sonos is liable for conversion of Google's cloud queue technology. Sonos will also have the option to put on what is referred to as "rebuttal" evidence to any evidence offered by Google of non-infringement or lack of willfulness.

      ~~Finally,~~ Google will have the option to put on "rebuttal" evidence to any evidence offered by Sonos on the validity of ~~[some] [the] claims of the asserted patents~~some of the claims of the '885, '966, '615, or '033 patents.  Google will also have the option to put on "rebuttal" evidence to any evidence Sonos offered as to the breach of the Content Integration Agreement and conversion.

      ~~During the presentation of the evidence, the attorneys will be allowed brief opportunities to explain what they believe the evidence has shown or what they believe upcoming evidence will show. Such comments are not evidence and are being allowed solely for the purpose of helping you understand the evidence.~~

==Yellow Highlight== indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party name is not indicated.

Because the evidence is introduced piecemeal, you need to keep an open mind as the evidence comes in and wait for all the evidence before you make any decisions. In other words, you should keep an open mind throughout the entire trial.

The parties may present the testimony of a witness by reading from his or her deposition transcript or playing a videotape of the witness's deposition testimony.  A deposition is the sworn testimony of a witness taken before trial and is entitled to the same consideration as if the witness had testified at trial.  After the evidence has been presented, the attorneys will make closing arguments and I will give you final instructions on the law that applies to the case.  Closing arguments are not evidence.  After the closing arguments and instructions, you will then decide the case.

*N.D. Cal. Model Patent Jury Instructions A.5., Rev. Aug. 2017 (updated Oct. 2019)*

**STIPULATED INSTRUCTION NO. 5 RE JUROR NOTEBOOKS**

To assist in your deliberations, I have provided you with a notebook that contains the following:

- Paper if you wish to take notes
- A copy of the '885, '966, '615, and '033 patents
- My claim constructions
- The stipulated facts—facts that the parties have agreed to
- Photographs of the witnesses who will appear live.

These materials have been jointly submitted by the parties. Please refer to these materials to assist you during trial.

<mark>Yellow Highlight</mark> indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party name is not indicated.

## FINAL JURY INSTRUCTIONS

11

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party name is not indicated.

**STIPULATED INSTRUCTION NO. 6 RE SUMMARY OF CONTENTIONS**

I will first give you a summary of each side's contentions in this case. I will then tell you what each side must prove to win on each of its contentions. As I previously told you, Sonos seeks money damages from Google for allegedly infringing the '885, '966, and '033 patents ~~by [making,] [importing,] [using,] [selling] and [offering for sale] [products] [methods] that [patent holder] argues are covered by claims [ ] of the patent. These are the asserted claims of the '885, '966, and '033  patents.~~

~~Sonos also argues that Google has actively induced infringement of these claims of the '885, and '966, and '033 patents and contributed to the infringement of these claims of the '885, '966, and '033 patents by others.~~ The products that are alleged to infringe the '885 patent are ~~Google's~~Google media players, including Google's Chromecast, Chromecast Ultra, Chromecast with Google TV, Home, Home Mini, Home Max, Nest Audio, Nest Mini, Nest Hub (a/k/a Home Hub), Nest Hub Max, and Nest Wifi Point. ~~The products that are alleged to infringe the '966 patent are computing devices, such as phones, tablets, and laptops, running Android, ChromeOS, or iOS, that have or had one or more of Google's Cast-enabled apps installed—including the Google Home app. And the products that are alleged to infringe the '033 patent are computing devices that have or had the YouTube Main, YouTube Kids, YouTube TV, or YouTube Music apps installed—including, for example, Google's Pixel smartphones, tablets, and computers.~~I have already determined that prior versions of these media players infringe claim 1 of the '885 patent. Google contends that its current media players were changed such that they do not infringe Claim 1 of the '885 patent. Sonos disputes this and argues that the current versions of Google's media players infringe the '885 patent.  Sonos also argues that Google's alleged infringement is willful, which Google also disputes.  I will instruct you later as to the ways in which a patent may be infringed and how to determine infringement.

~~I have already determined that certain versions of Google's media players infringe claim 1 of the '885 patent.~~ Google ~~contends that newer versions of its products do not infringe. Sonos disputes this and~~ argues that the ~~new versions still infringe the '885 patent. I have not decided whether any products infringe the '966 or '033 patents. Sonos contends that they do, and Google~~

12

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party name is not indicated.

~~disputes this. Sonos also argues that Google's infringement~~ '885 patent is ~~willful. I will instruct you later as to the ways in which a patent may be infringed and how to determine infringement.~~

~~Google also argues that the '885, '966 and '033 patents are~~ invalid.  Invalidity is a defense to infringement.  I will instruct you later as to the ways in which a patent may be invalid. ~~In general, however, a patent is invalid if it is not new or is obvious in view of the state of the art at the relevant time, or if the description in the patent does not meet certain requirements.~~ In general, however, a patent is invalid if it is not new or is obvious in view of the state of the art at the relevant time, or if the description in the patent does not meet certain requirements.

So, with respect to claim 1 of the '885 patent, your job will be to decide whether ~~the asserted claims of the [ ] patent have been infringed~~ ~~the newer versions of~~ Google's current products ~~continue to~~ infringe or not, ~~whether Google's infringement of the '885 patent is willful,~~ and whether or not that claim is invalid.  If you decide the '885 patent ~~has been infringed and~~ is not invalid, you will then need to decide any money damages to be awarded to Sonos to compensate it for the infringement. You will also need to make a finding as to whether the infringement was willful.  If you decide that any infringement was willful, that decision should not affect any damage award you give.  I will take willfulness into account later.

The products that were alleged to infringe the '615 patent are computing devices, such as smartphones, tablets, and laptops, that have or had the YouTube Main, YouTube Kids, YouTube TV, or YouTube Music apps installed.  I have already determined that Google does not infringe the '615 patent.  You will not be asked to decide whether Google infringes this patent.

I have also already determined that Claim 13 of the '615 patent is invalid.[6]  Sonos contends that claims 18-19 and 25 of the '615 patent are not invalid.  Google disputes this and contends that those claims are also invalid.

With respect to the '615 patent, your job will be to decide whether or not claims 18, 19, and 25 are invalid.  You do not need to decide any money damages for infringement of the '615 patent because I have already decided that Google does not infringe the '615 patent.

---

[6]  Dkt. 316 at 17 (granting Google's motion for summary judgment of invalidity and noninfringement).

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party name is not indicated.

The products that are alleged to infringe the '966 ~~and '033 patents~~patent are computing devices, such as smartphones, tablets, and laptops, running Android, ChromeOS, or iOS, that have the Google Home app installed.  I have not decided whether any products infringe the '966 patent.  Sonos contends that they do, and Google denies this.  Sonos also argues that Google's alleged infringement is willful, which Google also disputes.   I will instruct you later as to the ways in which a patent may be infringed and how to determine infringement.

Google also argues that the '966 patent is invalid.  Invalidity is a defense to infringement. I will instruct you later as to the ways in which a patent may be invalid. In general, however, a patent is invalid if it is not new or is obvious in view of the state of the art at the relevant time, or if the description in the patent does not meet certain requirements.

With respect to the '966 patent, your job will be to decide whether the asserted claims of ~~those patents have~~that patent has been infringed, ~~whether any infringement is willful,~~ and whether or not the asserted claims ~~of those patents~~ are invalid.  If you decide that ~~either or both of~~ the '966 ~~or '033 patents~~patent has been infringed and is not invalid, then you will also need to decide any money damages to be awarded to Sonos to compensate it for the infringement.  You will also need to make a finding as to whether the infringement was willful.  If you decide that any infringement was willful, that decision should not affect any damage award you give. I will take willfulness into account later.

The products that were alleged to infringe the '033 patent are computing devices, such as smartphones, tablets, and laptops, that have or had the YouTube Main, YouTube Kids, YouTube TV, or YouTube Music apps installed.  I have not decided whether any products infringe the '033 patent.  Sonos contends that they do, and Google denies this.  Sonos also argues that Google's alleged infringement is willful, which Google also disputes.  I will instruct you later as to the ways in which a patent may be infringed and how to determine infringement.

Google argues that the '033 patent is invalid. Invalidity is a defense to infringement.  I will instruct you later as to the ways in which a patent may be invalid. In general, however, a patent is invalid if it is not new or is obvious in view of the state of the art at the relevant time, or

14

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party name is not indicated.

if the description in the patent does not meet certain requirements.

With respect to the '033 patent, your job will be to decide whether ~~claims [ ] of~~ the patent
has been infringed, and whether or not that patent is invalid.  If you decide that the '033 patent
has been infringed and is not invalid, then you will also need to decide any money damages to be
awarded to Sonos to compensate it for the infringement.  You will also need to make a finding as
to whether the infringement was willful.  If you decide that any infringement was willful, that
decision should not affect any damage award you give. I will take willfulness into account later.


*N.D. Cal. Model Patent Jury Instructions B.1., Rev. Aug. 2017 (updated Oct. 2019)*


**STIPULATED INSTRUCTION NO. 7 RE INTERPRETATION OF CLAIMS**

~~Before you decide whether Google has infringed the claim[s] of the patent or whether the claim[s] [is][are] invalid, you will need to understand the patent claims.~~ Before you decide whether Google has infringed any claims of the patents or whether the claims are invalid, you will need to understand the patent claims. As ~~I mentioned at the beginning of the case~~ you heard throughout the case, the patent claims are numbered sentences at the end of the patent that describe the boundaries of the patent's protection. It is my job as judge to explain to you the meaning of any language in the ~~claim~~claims that needs interpretation.

I have interpreted the meaning of some of the language in the patent claims involved in this case. You must accept those interpretations as correct. My interpretation of the language should not be taken as an indication that I have a view~~of any of~~ regarding the issues ~~in this case~~of infringement and invalidity. The decisions regarding infringement and invalidity are yours to make.

| Patent Claim | Claim Term | Construction |
|---|---|---|
| '885 Patent Claim 1 | "indication that the first zone player has been added to a … zone scene" | "indication from the network device that the zone player has been added by the user to a zone scene" |

<mark>Yellow Highlight</mark> indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party name is not indicated.

| '885 Patent Claim 1; '966 Patent Claims 1, 2, 4, 6, 8, 9, 10, 12, 14, 16 | "zone scene" | "a previously-saved grouping of zone players according to a common theme" |
|---|---|---|
| '033 Patent Claims 1, 2, 5, 9, 11, 12, 13, 16 _'615 Patent Claims  18-19, 25_ | "playback queue" | "A list of multimedia content selected for playback" |

*N.D. Cal. Model Patent Jury Instructions* B.2.1., Rev. Aug. 2017 (updated Oct. 2019).

Authorities:

*Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384-391 (1996); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1324 (Fed. Cir. 2005); *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1304-13 (Fed. Cir. 1999); *Cybor Corp. v. FAS Techs.*, 138 F.3d 1448, 1458-59 (Fed. Cir. 1998) (en banc); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977 (Fed. Cir. 1995) (en banc); Dkt. 309 at 5, 9.


**STIPULATED INSTRUCTION NO. 8 RE INFRINGEMENT—BURDEN OF PROOF**

I will now instruct you on the rules you must follow in deciding whether Sonos has proven that Google has infringed one or more of the asserted claims of the ~~asserted~~'033, '966, or the '885 patents. To prove infringement of any claim, Sonos must persuade you that it is more likely than not that Google has infringed that claim.


*N.D. Cal. Model Patent Jury Instructions B.3.1., Rev. Aug. 2017 (updated Oct. 2019)*

Authorities:

*Warner-Lambert Co. v. Teva Pharm. USA, Inc.*, 418 F.3d 1326, 1341 n.15 (Fed. Cir. 2005); *SealFlex, Inc. v. Athletic Track and Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999); *Morton Int'l, Inc. v. Cardinal Chem. Co.*, 5 F.3d 1464, 1468-69 (Fed. Cir. 1993).

<mark>Yellow Highlight</mark> indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party name is not indicated.

### STIPULATED INSTRUCTION NO. 9 RE DIRECT INFRINGEMENT

A patent's claims define what is covered by the patent. A product directly infringes a patent if it is covered by at least one claim of the patent.

Deciding whether a claim has been directly infringed is a two-step process. The first step is to decide the meaning of the patent claim. I have already made this decision, and I have already instructed you as to the meaning of the asserted patent claims. The second step is to decide whether Google has made, used, sold, offered for sale or imported within the United States a product covered by a claim of the ~~asserted~~ <mark>'033, '966, or the '885</mark> patents. If it has, it infringes. You, the jury, make this decision.

With one exception, you must consider each of the asserted claims of the patent individually, and decide whether ~~Google's~~<mark>the accused</mark> products infringe that claim. The one exception to considering claims individually concerns dependent claims. A dependent claim includes all of the requirements of a particular independent claim, plus additional requirements of its own. As a result, if you find that an independent claim is not infringed, you must also find that its dependent claims are not infringed. On the other hand, if you find that an independent claim has been infringed, you must still separately decide whether the additional requirements of its dependent claims have also been infringed.

<mark>Sonos asserts Claims 1, 2, 4, 6, 8, 9, 10, 12, 14, and 16 of the '966 patent. Claim 4 depends from Claim 3, and Claims 6 and 8 depend from Claim 1. Claims 10, 14, and 16 depend from Claim 9, and Claim 12 depends from Claim 11.</mark>

<mark>Sonos asserts Claim 1 of the '885 patent.</mark>

<mark>Sonos asserts Claims 1, 2, 4, 9, 11, 12, 13, and 16 of the '033 patent. Claims 2, 4, 11, and 16 depend from Claim 1, Claim 9 depends from Claim 8, and Claim 13 depends from Claim 12.</mark>

<mark>Because I have determined that Google does not infringe the '615 patent, you will not need to decide infringement for the '615 patent.</mark>

You have heard evidence about both Sonos's commercial products and Google's accused products. However, in deciding the issue of infringement you may not compare Google's accused products to Sonos's commercial products. Rather, you must compare the Google accused

<mark>Yellow Highlight</mark> indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party name is not indicated.

products to the claims of the ~~asserted~~ '033, '966, or the '885 patents when making your decision regarding infringement.

Whether or not Google knew its products infringed or even knew of the patent does not matter in determining direct infringement.

There are two ways in which a patent claim may be directly infringed. A claim may be "literally" infringed, or it may be infringed under the "doctrine of equivalents." The following instructions will provide more detail on these two types of direct infringement.

*Federal Circuit Bar Association Model Patent Jury Instructions* § 3.1 (May 2020); *AIPLA Model Patent Jury Instructions* § 3.0 (2019); *N.D. Cal. Model Patent Jury Instructions B.3.2., Rev. Aug. 2017 (updated Oct. 2019).*

Authorities:

35 U.S.C. § 271; *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 921 (2014); *Warner-Lambert Co. v. Teva Pharm. USA, Inc.*, 418 F.3d 1326, 1341 n.15 (Fed. ~~35 U.S.C. § 271;~~2005); *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997); *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310-11 (Fed. Cir. 2005); *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1330-34 (Fed. Cir. 2001); *Seal-Flex, Inc. v. Athletic Track and Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999); *Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1576 (Fed. Cir. 1993).

**STIPULATED INSTRUCTION NO. 10 RE LITERAL INFRINGEMENT**

To decide whether ~~a Google~~an accused product literally infringes a claim of the asserted patents, you must compare that product with the patent claim and determine whether every requirement of the claim is included in that product. If so, ~~Google's~~the accused product literally infringes that claim. If, however, ~~Google's~~the accused product does not have every requirement in the patent claim, ~~Google's~~the accused product does not literally infringe that claim. You must decide literal infringement for each asserted claim separately.

==Yellow Highlight== indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party name is not indicated.

If the patent claim uses the term "comprising," that patent claim is to be understood as an open claim. An open claim is infringed as long as every requirement in the claim is present in ~~Google's~~the accused product. The fact that ~~Google's~~an accused product also includes other parts or performs other functions will not avoid infringement, as long as it has every requirement in the patent claim.

If an accused product does not itself include every requirement in the patent claim, Google cannot be liable for infringement merely because other parties supplied the missing elements, unless Google directed or controlled the acts by those parties. Google does not direct or control someone else's action merely because Google entered into a business relationship with that person. Instead, Google must specifically instruct or cause that other person to perform each step in an infringing manner, so that every step is attributable to Google as controlling party.

*N.D. Cal. Model Patent Jury Instructions B.3.3., Rev. Aug. 2017 (updated Oct. 2019).*

Authorities:

*MicroStrategy Inc. v. Business Objects, S.A.*, 429 F.3d 1344, 1352-53 (Fed. Cir. 2005); *Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1353 (Fed. Cir. 2001); *Cole v. Kimberly-Clark Corp.*, 102 F.3d 524, 532 (Fed. Cir. 1996); *Ecolab, Inc. v. FMC Corp.*, 535 F.3d 1369 (Fed. Cir. 2009); *Cross Med. Prods. v. Medtronic Sofamor Danek*, 424 F.3d 1293 (Fed. Cir. 2005); *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373 (Fed. Cir. 2007).

## STIPULATED INSTRUCTION NO. 11 RE INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS

If you decide that one of ~~Google's~~the accused products does not literally infringe ~~an asserted~~claims 1 and 12 of the '033 patent ~~claim~~, you must then decide whether that product infringes the asserted claim under what is called the "doctrine of equivalents."

==Sonos contends that even if Google's products do not literally infringe limitations 1.4 and 1.7 of the '033 patent, a user device with a YouTube app installed would still satisfy limitations==

19

Yellow Highlight indicates changed or added language to a model instruction.
Strikethrough indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party name is not indicated.
1.4 and 1.7's claimed "remote playback queue" under the doctrine of equivalents.

Under the doctrine of equivalents, the product infringes an asserted patent claim if it includes parts that are identical or equivalent to the requirements of the claim. If the product is missing an identical or equivalent part to even one requirement of the asserted patent claim, the product cannot infringe the claim under the doctrine of equivalents. Thus, in making your decision under the doctrine of equivalents, you must look at each individual requirement of the asserted patent claim and decide whether the product has either an identical or equivalent part to that individual claim requirement.

A part of a product is equivalent to a requirement of an asserted claim if a person of ordinary skill in the field would think that the differences between the part and the requirement were not substantial as of the time of the alleged infringement.

Changes in technique or improvements made possible by technology developed after the patent application is filed may still be equivalent for the purposes of the doctrine of equivalents if it still meets the other requirements of the doctrine of equivalents set forth in this instruction.

One way to decide whether any difference between a requirement of an asserted claim and a part of the product is not substantial is to consider whether, as of the time of the alleged infringement, the part of the product performed substantially the same function, in substantially the same way, to achieve substantially the same result as the requirement in the patent claim.

In deciding whether any difference between a claim requirement and the product is not substantial, you may consider whether, at the time of the alleged infringement, persons of ordinary skill in the field would have known of the interchangeability of the part with the claimed requirement. The known interchangeability between the claim requirement and the part of the product is not necessary to find infringement under the doctrine of equivalents. However, known interchangeability may support a conclusion that the difference between the part in the product and the claim requirement is not substantial. The fact that a part of the product performs the same function as the claim requirement is not, by itself, sufficient to show known interchangeability.

You may not use the doctrine of equivalents to find infringement if you find that the accused product is the same as what was in the prior art before the application for the `033 patent

<mark>Yellow Highlight</mark> indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party name is not indicated.

or what would have been obvious to persons of ordinary skill in the field in light of what was in the prior art.  A patent holder may not obtain, under the doctrine of equivalents, protection that it could not have lawfully obtained from the Patent and Trademark Office.  If Google has offered evidence sufficient to show that the accused product is in the prior art, the burden shifts to Sonos to prove that what it attempts to cover under the doctrine of equivalents is not in the prior art or would not have been obvious from the prior art.

You may not use the doctrine of equivalents to find infringement if you find that the subject matter alleged to be equivalent to a requirement of the patent claim was described in the '033 patent but not covered by any of its claims. The subject matter described but not claimed must be specific enough that one of ordinary skill in the art would understand that it was present in the patent.

You may not use the doctrine of equivalents to find infringement of any other patent other than the '033 patent.

*N.D. Cal. Model Patent Jury Instructions B.3.4., Rev. Aug. 2017 (updated Oct. 2019)*; *Fed. Cir. Bar Association Model Patent Jury Instructions B.3.1c, Rev. May 2020* (Direct Infringement Under the Doctrine of Equivalents).

<u>Authorities</u>:

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722 (2002); *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997); *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950); *Abraxis Bioscience, Inc. v. Mayne Pharma (USA) Inc.*, 467 F.3d 1370, 1379-82 (Fed. Cir. 2006); *Pfizer, Inc. v. Teva Pharms., USA, Inc.*, 429 F.3d 1364, 1378 (Fed. Cir. 2005); *Johnston & Johnston Assoc. v. R.E. Service Co.*, 285 F.3d 1046 (Fed. Cir. 2002) (en banc); *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1480 (Fed. Cir. 1998); *Dolly, Inc. v. Spalding & Evenflo Cos.*, 16 F.3d 394, 397 (Fed. Cir. 1994).

<mark>Yellow Highlight</mark> indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party name is not indicated.

### STIPULATED INSTRUCTION NO. 12 RE LIMITATIONS ON THE DOCTRINE OF EQUIVALENTS

Because Sonos made certain claim changes or statements during the patent application process for the '033 patent, the doctrine of equivalents analysis cannot be applied to the following requirements of the asserted claims:

- "the computing device is configured for playback of a remote playback queue provided by a cloud-based computing system associated with a cloud-based media service"

- "at least one given playback device to take over responsibility for playback of the remote playback queue from the computing device, wherein the instruction configures the at least one given playback device to (i) communicate with the cloud-based computing system in order to obtain data identifying a next one or more media items that are in the remote playback queue, (ii) use the obtained data to retrieve at least one media item in the remote playback queue from the cloud-based media service; and (iii) play back the retrieved at least one media item"

Unless each of these requirements is literally present within an accused product, there can be no infringement of the claim.

*N.D. Cal. Model Patent Jury Instructions* B.3.5, Rev. Aug. 2017 (updated Oct. 2019).

*Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131 (Fed. Cir. 2004) (en banc);

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, Ltd., 344 F.3d (Fed. Cir. 2003) (en banc).

### STIPULATED INSTRUCTION NO. ~~12~~13 RE INDUCING PATENT INFRINGEMENT [REMOVED][7]

Sonos argues that Google has actively induced another to infringe the '966 ~~patent by inducing other people to install the Google Home App, YouTube Music app, and Google Play Music app, on their Internet-connected computing devices; the~~. '885 ~~patent by inducing other people to make, use, offer to sell, sell,~~ and ~~or import Google's accused media players; and the '033 patent, by inducing other people to install the YouTube Apps (YouTube Main, YouTube Music, YouTube TV, and YouTube Kids) on their Internet-connected computing devices.~~ '033

---

[7]   Google's position is that this instruction should be removed.  However, to the extent that it is included in the jury instructions, Google has provided edits.

JOINT PROPOSED JURY INSTRUCTIONS
3:20-cv-06754-WHA

==Yellow Highlight== indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party name is not indicated.

patents. In order for Google to have induced infringement, Google must have induced another to directly infringe a claim of the ~~asserted~~'966, '885, and '033 patents; if there is no direct infringement by anyone, there can be no induced infringement. As with direct infringement, you must determine induced infringement on a claim-by-claim basis.

In order to be liable for inducing infringement, Google must:

(1) have intentionally taken action that actually induced direct infringement;

(2) have been aware of the ~~asserted~~'966, '885, and '033 patents; and

(3) have known that the acts it was causing would infringe the patent.

~~Google may be considered to have known that the acts it was causing would infringe the asserted patents if it subjectively believed there was a high probability that the directly infringer's==ing product was patented by Sonos== and nevertheless deliberately took steps to avoid learning that fact, in other words, willfully blinded itself to the infringing nature of the direct infringer's acts.~~

*N.D. Cal. Model Patent Jury Instructions B.3.7., Rev. Aug. 2017 (updated Oct. 2019).*

Authorities:

35 U.S.C. § 271(b); *Commil USA, LLC v. Cisco Systems, Inc.*, 575 U.S. 632, 642-46 (2015); *Global-Tech Appliances, Inc. et. al. v. SEB S.A.*, 563 U.S. 754, 768-70 (2011); *Dynamic Data Techs., LLC v. Amlogic Holdings Ltd.*, No. 1:19-cv-1239-CFC, 2020 WL 4365809, at *5 (D. Del. July 30, 2020).

**STIPULATED INSTRUCTION NO. 14~~13~~ RE CONTRIBUTORY INFRINGEMENT [REMOVED][82]**

Sonos also argues that Google has contributed to infringement by another ~~by offering the==

---

~~Google's position is that this instruction should be removed. However, to the extent that it is included in the jury instructions, Google has included its edits.~~

Google's position is that this instruction should be removed. However, to the extent that it is included in the jury instructions, Google has provided edits.

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party name is not indicated.

~~Google Home app, YouTube Music app, and Google Play Music app, for the '966 patent, by supplying users with updates to the firmware of the accused Google media players, for the '885 patent, and by offering the YouTube Apps (YouTube Main, YouTube Music, YouTube TV, and YouTube Kids), for the '033 patent.~~ Contributory infringement may arise when someone supplies something that is used to infringe one or more of the patent claims. As with direct infringement, you must determine contributory infringement on a claim-by-claim basis.

In order for there to be contributory infringement by Google, someone other than Google must directly infringe a claim of the ~~asserted~~ '966, '885, and '033 patents; if there is no direct infringement by anyone, there can be no contributory infringement.

If you find someone has directly infringed the asserted patents, then contributory infringement exists if:

Google supplied an important component of the infringing part of the product;

The component is not a common component suitable for non-infringing use; and

Google supplied the component with the knowledge of the ~~asserted~~ '966, '885, and '033 patents and knowledge that the component was especially made or adapted for use in an infringing manner.

A "common component suitable for non-infringing use" is a component that has uses other than as a component of the patented product, and those other uses are not occasional, farfetched, impractical, experimental, or hypothetical.

~~Google may be considered to have known that the acts it was causing would infringe the asserted patents if it subjectively believed there was a high probability that the asserted patents existed and that the accused apps were especially made or adapted for use in an infringing manner and nevertheless deliberately took steps to avoid learning those facts, in other words, willfully blinded itself to the infringing nature of the direct infringer's acts.~~

*N.D. Cal. Model Patent Jury Instructions B.3.6., Rev. Aug. 2017 (updated Oct. 2019).*

Authorities:

==Yellow Highlight== indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party name is not indicated.

35 U.S.C. § 271(c); *PharmaStem Therapeutics, Inc. v. ViaCell, Inc. et. al.*, 491 F.3d 1342, 1356-58 (Fed. Cir. 2007); *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476 (1964); *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1303 (Fed. Cir. 2006); *Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 244 F.3d 1365 (Fed. Cir. 2001); *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 909 F.2d 1464, 1469 (Fed. Cir. 1990); *Preemption Devices, Inc. v. Minn. Mining & Mfr. Co.*, 803 F.2d 1170, 1174 (Fed. Cir. 1986); *Commil USA, LLC v. Cisco Systems, Inc.*, 575 U.S. 632, 642-46 (2015); *Global-Tech Appliances, Inc. et. al. v. SEB S.A.*, 563 U.S. 754, 768-70 (2011); *Dynamic Data Techs., LLC v. Amlogic Holdings Ltd.*, No. 1:19-cv-1239-CFC, 2020 WL 4365809, at *5 (D. Del. July 30, 2020).

**STIPULATED INSTRUCTION NO. 15~~14~~ RE WILLFUL INFRINGEMENT**

In this case, Sonos argues that Google willfully infringed Sonos's patents.

==To prove willful infringement, Sonos must persuade you that Google infringed a valid claim of Sonos's patents.  The requirements for proving such infringement were discussed in my prior instructions.==

==I== have already found that ~~Google did~~==certain versions of Google's media players== infringe claim 1 of the '885 patent.  You therefore must decide whether Google's infringement of claim 1 of the '885 patent was willful.  In addition, if you have decided that ~~Google has infringed== ==Google's current media players infringe claim 1 of the '885 patent, or that Google's products infringe== any ~~other~~ of ~~Sonos's==the asserted== claims ==of the '966 or '033 patents==, you must go on and address the additional issue of whether or not the infringement ==of those other claims== was willful.

Willfulness requires you to determine whether Sonos proved that it is more likely than not that Google knew of Sonos's patents and that the infringement by Google was intentional ~~or deliberate.==  You must base your decision on Google's knowledge and actions at the time of infringement.==

You may not determine that the infringement was willful just because Google was aware

==Yellow Highlight== indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party name is not indicated.

of the Asserted Patents and infringed them.  Instead, you must also find that Google deliberately

infringed the Asserted Patents ~~or recklessly disregarded Sonos's patent rights.~~

To determine whether Google acted willfully, consider all facts and assess Google's

knowledge at the time of the challenged conduct. ==Knowledge of a fact may be inferred where a==

==defendant intentionally blinds itself to that fact, because a person who knows enough to do so==

==effectively has knowledge of that fact.==

Facts that may be considered include, but are not limited, to:

(1) Whether or not Google acted consistently with the standards of behavior for its

industry;

(2) Whether or not Google ~~intentionally copied a product of Sonos that is covered by the~~

~~Asserted Patents;~~ reasonably believed its products did not infringe or that the patent was invalid at

the time of the infringement; and

~~(3) Whether or not Google reasonably believed it did not infringe or that the patent was~~

~~invalid;~~

~~(4~~(3) Whether or not Google made a good-faith effort to avoid infringing the Asserted

Patents, for example, whether Google attempted to design around the Asserted Patents~~; and.~~

~~(5) Whether or not Google tried to cover up its infringement.~~

*Fed. Cir. Bar Association Model Patent Jury Instructions B.3.10, Rev. May 2020; N.D.*

*Cal. Model Patent Jury Instructions B.3.6., Rev. Aug. 2017 (updated Oct. 2019).*

Authorities:

35 U.S.C. § 284; *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 103-06 (2016); *SRI Int'l, Inc.*

*v. Cisco Sys.*, 14 F.4th 1323, 1330 (Fed. Cir. 2021), *cert. denied*, 142 S. Ct. 2732 (2022); *Eko*

*Brands, LLC v. Adrian Rivera Maynez Enterprises, Inc.*, 946 F.3d 1367, 1378 (Fed. Cir. 2020);

*Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011); *Intel Corp. Inv. Pol'y Comm.*

*v. Sulyma*, 140 S. Ct. 768, 779 (2020); *Unicolors, Inc. v. H&M Hennes & Mauritz, L. P.*, 142 S.

Ct. 941, 948 (2022); *Corephotonics, Ltd. v. Apple, Inc.*, No. 5:17-cv-06457-LHK, 2018 WL

4772340, at *9 (N.D. Cal. Oct. 1, 2018); *Dynamic Data Techs., LLC v. Amlogic Holdings Ltd.*,

<mark>Yellow Highlight</mark> indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party name is not indicated.

No. 1:19-cv-1239-CFC, 2020 WL 4365809, at *5 (D. Del. July 30, 2020).


**STIPULATED INSTRUCTION NO. 16~~15~~ RE INVALIDITY—BURDEN OF PROOF**

I will now instruct you on the rules you must follow in deciding whether or not Google

has proven that ~~any claim of the Asserted Patents is invalid. To prove that any claim of a patent is~~

~~invalid, Google must persuade you by clear and convincing evidence, that is, you must be left~~

~~with a clear conviction that the claim is invalid.~~claims 1, 2, 4, 6, 8, 9, 10, 12, 14, or 16 of the '966

patent, claims 1, 2, 4, 9, 11, 12, 13, and 16 of '033 patent, claims 18, 19, or 25 of the '615 patent,

or claim 1 of the '885 patent are invalid.  Patent invalidity is a defense to patent infringement.

The issuance of a patent by the Patent Office provides a presumption that the patent is valid.

But the Patent Office sometimes issues invalid patent claims, and issued claims can be

found invalid in court.  In this case, you have the ultimate responsibility for deciding whether the

claims of the patent are valid or invalid.  In making your determination, you must consider the

claims individually, as you did when you considered whether each claim was infringed or not.  If

clear and convincing evidence demonstrates that a claim of the patent fails to meet any

requirement of the patent laws, then that claim is invalid.

During the course of this trial, Google has presented you with several prior art references.

In general, prior art includes patents, publications, or items that were publicly used, offered for

sale, or publicly known, that disclosed the claimed invention or elements of the claimed

invention. To be prior art, the item or reference must have been on sale, used, published, patented,

or otherwise made available to the public before the filing date of the patent.

The fact that any particular reference was or was not considered by the Patent Office does

not change Google's burden of proof. However, in making your decision whether Google has

demonstrated that a claim is invalid by clear and convincing evidence, you may consider whether

Google has presented any materially new prior art references that the Patent Office had no

opportunity to evaluate. Prior art that differs from the prior art considered by the PTO may carry

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party name is not indicated.

more weight than the prior art that was considered,[10] and Google's burden may be easier to meet
if all material facts were not before the Patent Office when it issued a patent.

I will now instruct you on the invalidity issues you should consider.

*Fed. Cir. Bar Association Model Patent Jury Instructions B.4.1, Rev. May 2020; N.D. Cal.*
*Model Patent Jury Instructions B.4.1a, Rev. Aug. 2017 (updated Oct. 2019).*

Authorities:

35 U.S.C. § 282; *Helsinn Healthcare S.A. v. Teva Pharms. USA, Inc.*, 139 S. Ct. 628 (2019);
*Microsoft Corp. v. i4i Limited Partnership*, 564 U.S. 91, 110-11 (2011); *Mendenhall v.*
*Cedarapids, Inc.*, 5 F.3d 1557, 1563–64 (Fed. Cir. 1993);~~;~~ *Schumer v. Lab. Computer Sys., Inc.*,
308 F.3d 1304, 1315 (Fed. Cir. 2002); *Buildex, Inc. v. Kason Indus., Inc.*, 849 F.2d 1461, 1463
(Fed. Cir. 1988); *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1375 (Fed. Cir.
1986).

**STIPULATED INSTRUCTION NO. 17~~16~~ RE INVALIDITY—PERSPECTIVE OF ONE**
**OF ORDINARY SKILL IN THE ART**

The question of invalidity of a patent claim is determined from the perspective of a person
of ordinary skill in the art in the field of the invention ~~as of [the effective filing date of the~~
~~patent(s)]~~ in the relevant timeframe. For the '885 and '966 patents, that timeframe is ~~late~~
~~2005~~2006. For the '615 and '033 ~~patent~~patents, that timeframe is ~~mid~~ 2011.  In deciding the level
of ordinary skill, you should consider all the evidence introduced at trial, including:

(1) the levels of education and experience of persons working in the field;

(2) the types of problems encountered in the field; and

(3) the sophistication of the technology.

Sonos contends that the level of ordinary skill in the field was a person having the
equivalent of a four-year degree from an accredited institution (typically denoted as a B.S.

---

[10]   *N.D. Cal. Model Patent Jury Instructions B.4.1a, Rev. Aug. 2017 (updated Oct. 2019)*

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party name is not indicated.

degree) in computer science, computer engineering, electrical engineering, or an equivalent thereof, and approximately 2-4 years of professional experience in the fields of networking and network-based systems or applications, such as consumer audio systems, or an equivalent level of skill, knowledge, and experience.

Google contends that the level of ordinary skill in the field was a person having at least (a) a bachelor's degree in computer science, computer engineering, electrical engineering, or an equivalent thereof, and (b) at least 2-4 years of professional experience in the field of multimedia playback systems, such as consumer audio systems, or an equivalent level of skill, knowledge, and experience. Google further contends that additional education could substitute for work experience and significant work experience could substitute for formal education.

You should consider evidence introduced at trial, including the levels of education and experience of people working in the field, the types of problems encountered in the field, and the sophistication of the technology

*N.D. Cal. Model Patent Jury Instructions B.4.1b, Rev. Aug. 2017 (updated Oct. 2019); National Jury Instruction Project, Model Patent Jury Instruction § 5.10.*

Authorities:

35 U.S.C. § 103; *KSR Intern. Co. v. Teleflex, Inc.*, 550 U.S. 398, 421 (2007); *Graham v. John Deere Co.*, 383 U.S. 1, 3 (1966).

### STIPULATED INSTRUCTION NO. 18~~17~~ RE INVALIDITY—PRIOR ART

In order for someone to be entitled to a patent, the invention must actually be "new" and not obvious over what came before, which is referred to as the prior art. Prior art is considered in determining whether claim(s) [ ] of the [ ] patent are anticipated or obvious.  Prior art may include items that were publicly known or that have been used or offered for sale, or references, such as publications or patents, that disclose the claimed invention or elements of the claimed invention.

Google contends that the following is prior art to the '885 and '966 patents: ~~[describe art]~~.

(i)    Sonos's own 2005 system ("Sonos 2005 System"), which is a system of Sonos products available before September 12, 2005, and including at least one CR100

29

==Yellow Highlight== indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party name is not indicated.

controller device and multiple ZP100 zone players;

(ii)     Sonos forum posts (referred to as "Sonos forums") which included posts publicly available at least as of September 2005 on Sonos online forums;

(iii)    the Logitech / Squeezebox system ("Squeezebox System") represented by physical Squeezebox players and documentation related to the operation of the Squeezebox System prior to September 12, 2005, and including source code dated prior to September 12, 2005, as well as a system of virtual machines used to emulate Squeezebox devices, also dated prior to September 12, 2005;

(iv)    the Bose Lifestyle 50 System (referred to as the "Bose System") available in 2003;

(v)     Canadian Patent No. 2 533 852 to Millington (referred to as "Millington") published on February 10, 2005;

(vi)    U.S. Patent No. 7,571,014 to Lambourne et al. ("Lambourne");

(vii)   U.S. Patent No. 7,197,148 to Nourse et al. ("Nourse");

(viii)  the Crestron Adagio AES system available in 2005 ("Crestron System"); and

(ix)    the Yamaha DME system ("Yamaha System") available in 2004. .

Google contends that the following is prior art to the '615 and '033 ~~patent: [describe art]~~ patents:

(i)     Version 1.0 of Google's YouTube Remote system released on November 9, 2010 (referred to as "YouTube Remote v1")

(ii)    Version 2.0 of Google's YouTube Remote system, including version 2.03 released on July 29, 2011 and Version 2.07 released on August 10, 2011 (referred to as "YouTube Remote v2")

(iii)   Version 3.0 of Google's YouTube Remote system, including Version 3.0.1 released on January 13, 2012 and Version 3.1.0 released on January 26, 2012 (referred to as "YouTube Remote v3");

(iv)    U.S. Patent No. 9,490,998 (also referred to as the "YouTube Remote Patent");

(v)     Google's Tungsten system as demonstrated at the May 10, 2011 Google I/O Conference (referred to as the "May 2011 Tungsten");

30

==Yellow Highlight== indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party name is not indicated.

(vi)     Google's Tungsten system as it existed on December 29, 2011 and as
          demonstrated at the 2012 Google I/O Conference (referred to as the "December
          2011 Tungsten");

(vii)    U.S. Patent No. 9,846,767, U.S. Patent No. 9,141,616 and Prov. Patent App No.
          61/483,557 (collectively referred to as "the Tungsten Patents");

(viii)   the Apple Airplay System;

(ix)     U.S. Patent Pub. No. 2011/0131520 (referred to as "Al-Shaykh"); and

~~(i)~~(x)     U.S. Patent No. 8,724,600 (referred to as "Ramsay").

You must determine whether [~~disputed alleged prior art~~] ~~is~~the Sonos forums, Squeezebox
System, Bose System, Crestron System, Yamaha System, YouTube Remote v1, YouTube
Remote v2, YouTube Remote v3, May 2011 Tungsten and December 2011 Tungsten are prior art
that can be considered in determining whether the asserted claims are anticipated or obvious==—
concepts that I will explain shortly==. There are different types of prior art, and I will instruct you
on the relevant types that you need to consider.

With respect to the '885 and '966 patents, Google contends that [~~describe alleged prior
art~~] ~~is~~that the Sonos forums, Squeezebox System, Bose System, Crestron System and Yamaha
System are prior art because it was known to or used by others in the United States or patented or
described in a printed publication anywhere in the world before December 21, 2005. An invention
is known when the information about it was reasonably accessible to the public on that date. A
description is a "printed publication" only if it was publicly accessible.

With respect to the '033 patent, Google contends that [~~describe alleged prior art~~] ~~is~~the
YouTube Remote v1, YouTube Remote v2 and the May 2011 Tungsten are prior art because ~~it
was~~they were known to or used by others in the United States or patented or described in a
printed publication anywhere in the world before July 15, 2011.  Google also contends that
YouTube Remote v3 and the December 2011 Tungsten are prior art because Google conceived of
these systems prior to the effective filing date (December 30, 2011), and then diligently reduced
them to practice.   An invention is known when the information about it was reasonably
accessible to the public on that date. A description is a "printed publication" only if it was

Yellow Highlight indicates changed or added language to a model instruction.
Strikethrough indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party name is not indicated.

publicly accessible.

In this case, you must determine the date of invention for claim 1 of the '885 patent and the asserted claims of the '966 and '033 patents.

patent.  The date of invention is either when the invention was reduced to practice or when conceived, provided the inventor(s) were diligent in reducing the invention to practice. Diligence means working continuously, though not necessarily every day. Conception is the mental part of an inventive act, i.e., the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention as it is thereafter to be applied in practice, even if the inventor did not know at the time that the invention would work. Conception of an invention is complete when the idea is so clearly defined in the inventor's mind that, if the idea were communicated to a person having ordinary skill in the field of the technology, he or she would be able to reduce the invention to practice without undue research or experimentation. This requirement does not mean that the inventor has to have a prototype built, or actually explained her or his invention to another person. But, there must be some evidence beyond the inventor's own testimony that confirms the date on which the inventor had the complete idea. Conception may be proven when the invention is shown in its complete form by drawings, disclosure to another person, or other forms of evidence presented at trial. A claimed invention is "reduced to practice" when it has been constructed, used, or tested sufficiently to show that it will work for its intended purpose or when the inventor files a patent application that fully describes the invention.

Google must prove by clear and convincing evidence that [alleged prior art] is, i.e., that the evidence highly probably demonstrates, that the Sonos forums, Squeezebox System, Bose System, Crestron System, Yamaha System, YouTube Remote v2, YouTube Remote v3, May 2011 Tungsten and December 2011 Tungsten are prior art.

*Fed. Cir. Bar Association Model Patent Jury Instructions B.4.3a-2, Rev. May 2020*

Authorities:

Pre-AIA 35 U.S.C. § 102(a)-(g); Pre-AIA 35 U.S.C. § 103(c); *Helsinn Healthcare S.A. v. Teva Pharm. USA, Inc.*, 139 S. Ct. 628, 634 (2019); *Teva Pharm. Indus. v. AstraZeneca Pharms.*, 661

<mark>Yellow Highlight</mark> indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party name is not indicated.

F.3d 1378, 1383 (Fed. Cir. 2011); *Solvay S.A. v. Honeywell Int'l Inc.*, 622 F.3d 1367, 1376 (Fed. Cir. 2010); *In re Giacomini*, 612 F.3d 1380, 1383-84 (Fed. Cir. 2010); *Clock Spring, L.P. v. Wrapmaster, Inc.*, 560 F.3d 1317, 1325 (Fed. Cir. 2009); *Finisar Corp. v. DirectTV Grp., Inc.*, 523 F.3d 1323, 1334 (Fed. Cir. 2008); *SRI Int'l, Inc. v. Internet Sec. Sys., Inc.*, 511 F.3d 1186, 1192 (Fed. Cir. 2008); *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1379-82 (Fed. Cir. 2005); *In re Klopfenstein*, 380 F.3d 1345, 1348-51 (Fed. Cir. 2004); *Toro Co. v. Deere & Co.*, 355 F.3d 1313, 1320-21 (Fed. Cir. 2004); *Schering Corp. v. Geneva Pharms., Inc.*, 339 F.3d 1373, 1377-80 (Fed. Cir. 2003); *Apotex U.S.A., Inc. v. Merck & Co.*, 254 F.3d 1031, 1035 (Fed. Cir. 2001); *Mycogen Plant Sci., Inc. v. Monsanto Co.*, 243 F.3d 1316, 1330-31 (Fed. Cir. 2001); *Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1367-70 (Fed. Cir. 2000); *Singh v. Brake*, 222 F.3d 1362, 1366-70 (Fed. Cir. 2000); *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1349 (Fed. Cir. 1998); *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1576-78 (Fed. Cir. 1997); *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 78 F.3d 540, 545 (Fed. Cir. 1996); *In re Bartfeld*, 925 F.2d 1450, 1452-53 (Fed. Cir. 1991); *Ralston Purina Co. v. Far-Mar-Co, Inc.*, 772 F.2d 1570, 1574 (Fed. Cir. 1985); *Am. Stock Exch., LLC v. Mopex, Inc.*, 250 F. Supp. 2d 323, 328-32 (S.D.N.Y. 2003); *In re Wyer*, 655 F.2d 221, 226 (C.C.P.A. 1981); *Pfaff v. Wells Elecs. Inc.*, 525 U.S. 55, 67-68 (1998); *Helifix Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1346 (Fed. Cir. 2000); *Abbott Labs. v. Geneva Pharms., Inc.*, 182 F.3d 1315, 1318 (Fed. Cir. 1999); *Finnigan Corp. v. ITC*, 180 F.3d 1354, 1365 (Fed. Cir. 1999); *J.A. LaPorte, Inc. v. Norfolk Dredging Co.*, 787 F.2d 1577, 1581 (Fed. Cir. 1986); *In re Hall*, 781 F.2d 897, 898-99 (Fed. Cir. 1986); *D.L. Auld Co. v. Chroma Graphics Corp.*, 714 F.2d 1144, 1147-50 (Fed. Cir. 1983).

==Yellow Highlight== indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party name is not indicated.

### STIPULATED INSTRUCTION NO. ==19==~~18~~ RE INVALIDITY—ANTICIPATION

In order for someone to be entitled to a patent, the invention must actually be "new." Google contends that the asserted claims of the '885 patent and '033 patent are invalid because the claimed inventions are anticipated.  Google must convince you of this by clear and convincing evidence, i.e., that the evidence highly probably demonstrates ~~i.e., that~~ ==is, you must be left with a clear conviction~~the evidence highly probably~~== that the claims are invalid.

Specifically, Google contends that the following piece==[s]== of prior art anticipate claim 1 of the '885 patent: ~~[describe art ]~~==the Squeezebox System.==  Google contends that the following piece==s of prior art anticipate the asserted claims of the '615 patent: YouTube Remote v1, YouTube Remote v2, and YouTube Remote v3.  Google contends that the following piece== of prior art anticipate the asserted claims of the '033 patent: ~~[describe art ]~~==YouTube Remote v3.==

Anticipation must be determined on a claim-by-claim basis.  Google must prove by clear and convincing evidence that all of the requirements of a claim are present in a single piece of prior art. To anticipate the invention, the prior art does not have to use the same words as the claim, but all of the requirements of the claim must have been disclosed and arranged as in the claim.  The claim requirements may either be disclosed expressly or inherently—that is, necessarily implied—such that a person having ordinary skill in the art in the technology of the invention, looking at that one reference, could make and use the claimed invention.

~~Where [alleged infringer] is relying on prior art that was not considered by the PTO during examination, you may consider whether that prior art is significantly different and more relevant than the prior art that the PTO did consider. If you decide it is different and more relevant, you may weigh that prior art more heavily when considering whether the challenger has carried its clear-convincing burden of proving invalidity.~~

==Where [alleged infringer] is relying on prior art that was not considered by the PTO during examination, you may consider whether that prior art is significantly different and more relevant than the prior art that the PTO did consider. If you decide it is different and more relevant, you may weigh that prior art more heavily when considering whether the challenger has carried its clear-and-convincing burden of proving invalidity.==

34

<mark>Yellow Highlight</mark> indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party name is not indicated.

If a dependent claim is anticipated by the prior art, then the claims from which it depends are necessarily anticipated as well.

*Fed. Cir. Bar Association Model Patent Jury Instructions B.4.3b-1, Rev. May 2020*

<u>Authorities</u>:

*Fed. Cir. Bar Association Model Patent Jury Instructions B.4.1, Rev. May 2020* (citations omitted);  Pre-AIA 35 U.S.C. § 102(a)-(g); *Monsanto Tech. LLC v. E.I. DuPont de Nemours & Co.*, 878 F.3d 1336, 1343 (Fed. Cir. 2018); *Finisar Corp. v. DirectTV Grp., Inc.*, 523 F.3d 1323, 1334 (Fed. Cir. 2008); *Net MoneyIN, Inc. v. Verisign, Inc.*, 545 F.3d 1359, 1369-70 (Fed. Cir. 2008).

**STIPULATED INSTRUCTION NO. 20~~19~~ RE INVALIDITY—OBVIOUSNESS**

<u>Google also contends that the asserted claims of the asserted patents are invalid because the claimed inventions are obvious.</u>  Not all innovations are patentable. A patent claim is invalid if the claimed invention would have been obvious to a person of ordinary skill in the field at the time the claimed invention was made. <u>With respect to the '885 patent, Sonos contends that it conceived of the alleged invention on December 21, 2005, but Google contends that Sonos is not entitled to an invention date before September 12, 2006.  With respect to the '615 and '033 patents, Sonos does not contend that it is entitled to an invention date before December 30, 2011.</u>

This means that even if all of the requirements of the claim cannot be found in a single prior art reference that would anticipate the claim or constitute a statutory bar to that claim, a person of ordinary skill in the field ~~of wireless networking and/or consumer audio~~ who knew about all this prior art would have come up with the claimed invention.

The ultimate conclusion of whether a claim is obvious should be based upon your determination of several factual decisions.

First, you must decide the level of ordinary skill in the field that someone would have had at the time the claimed invention was made. <mark>I instructed you earlier about the level of ordinary skill.</mark> ~~In deciding the level of ordinary skill, you should consider all the evidence introduced at trial, including:~~

==Yellow Highlight== indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party name is not indicated.

> ~~(1) the levels of education and experience of persons working in the field;~~

> ~~(2) the types of problems encountered in the field; and~~

> ~~(3) the sophistication of the technology.~~

Second, you must decide the scope and content of the prior art. Sonos and Google disagree as to (1) whether ~~[identify prior art reference(s)]~~ the Sonos forums, Squeezebox System, Bose System, Crestron System, and Yamaha System should be included in the prior art you use to decide the validity of claim 1 of the '885 patent~~, (2) whether [identify prior art reference(s)]~~ ~~should be included in the prior art you use to decide the validity of the asserted claims of~~ and the '966 patent; and ~~(3) whether [~~identify prior art reference(s)~~]~~ (2) whether YouTube Remote v2, YouTube Remote v3, May 2011 Tungsten and December 2011 Tungsten systems should be included in the prior art you use to decide the validity of the asserted claims of the '033 patent.  I have already determined YouTube Remote v1 should be included in the prior art you use to decide the validity of the claims of the '615 and '033 patents.  In order to be considered as prior art to the asserted patents, ~~these~~ references must be reasonably related to the claimed invention of that patent. A reference is reasonably related if it is in the same field as the claimed invention or is from another field to which a person of ordinary skill in the field would look to solve a known problem.

Third, you must decide what difference, if any, existed between the claimed invention and the prior art.

Finally, you should consider any of the following factors that you find have been shown by the evidence:

> (1) commercial success of a product due to the merits of the claimed invention;

> (2) a long felt need for the solution provided by the claimed invention;

> (3) unsuccessful attempts by others to find the solution provided by the claimed invention;

> ~~(4) copying of the claimed invention by others;~~

> ~~(5~~

> (4) unexpected and superior results from the claimed invention;

> (6̶5) acceptance by others of the claimed invention as shown by praise from others in the

==Yellow Highlight== indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party name is not indicated.

field or from the licensing of the claimed invention;

(~~7~~6) other evidence tending to show nonobviousness;

(~~8~~7) independent invention of the claimed invention by others before or at about the same time as the named inventor thought of it; and;

(~~9~~8) other evidence tending to show obviousness.

~~In order for you to determine that a particular patent claim is proved obvious, Google must show, by clear and convincing evidence, that a person skilled in the art could have actually made and used the claimed invention at the time of invention based on the prior art. This is referred to as "enabling" the claimed invention. To find that the prior art is enabling, you must find that the prior art itself would have allowed a person skilled in the art to actually make and use the subject matter of the claimed invention.~~A patent claim composed of several elements is not proved obvious merely by demonstrating that each of its elements was independently known in the prior art. In evaluating whether such a claim would have been obvious, you may consider whether Google has identified a reason that would have prompted a person of ordinary skill in the field to combine the elements or concepts from the prior art in the same way as in the claimed invention. There is no single way to define the line between true inventiveness on the one hand (which is patentable) and the application of common sense and ordinary skill to solve a problem on the other hand (which is not patentable). For example, market forces or other design incentives may be what produced a change, rather than true inventiveness. You may consider whether an inventor would look to the prior art to help solve the particular problem at hand. You may consider whether the change was merely the predictable result of using prior art elements according to their known functions, or whether it was the result of true inventiveness. You may also consider whether there is some teaching or suggestion in the prior art to make the modification or combination of elements claimed in the patent. Also, you may consider whether the innovation applies a known technique that had been used to improve a similar device or method in a similar way. You may also consider whether the claimed invention would have been obvious to try, meaning that the claimed innovation was one of a relatively small number of possible approaches to the problem with a reasonable expectation of success by those skilled in

<mark>Yellow Highlight</mark> indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party name is not indicated.

the art. However, you must be careful not to determine obviousness using the benefit of hindsight;

many true inventions might seem obvious after the fact. You should put yourself in the position of

a person of ordinary skill in the field at the time the claimed invention was made and you should

not consider what is known today or what is learned from the teaching of the patent.

*N.D. Cal. Model Patent Jury Instructions B.4.3b—Alternative 2, Rev. Aug. 2017 (updated Oct. 2019)*

Authorities:

35 U.S.C. § 103; *Graham v. John Deere Co.*, 383 U.S. 1 (1966); *KSR Intern. Co. v. Teleflex, Inc.*, 550 U.S. 398, 407 (2007); *Circuit Check v. QXQ Inc.*, 795 F.3d 1331, 1335 (Fed. Cir. 2015); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654 (Fed. Cir. 2000); *Arkie Lures, Inc. v. Gene Larew Tackle, Inc.*, 119 F.3d 953, 957 (Fed. Cir. 1997); *Specialty Composites v. Cabot Corp.*, 845 F.2d 981, 991 (Fed. Cir. 1988); *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1000 (Fed. Cir. 1986); *Pentec. Inc. v. Graphic Controls Corp.*, 776 F.2d 309, 313 (Fed. Cir. 1985). *See Novo Nordisk A/S v. Becton Dickinson & Co.*, 304 F.3d 1216, 1219-20 (Fed. Cir. 2002); *Wang Labs. v. Toshiba Corp.*, 993 F.2d 858, 864 (Fed. Cir. 1993); *Daiichi Sankyo Co. v. Apotex, Inc.*, 501 F.3d. 1254, 1256 (Fed. Cir. 2007); *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1125 (Fed. Cir. 2000); *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1355 (Fed. Cir. 2000); *Ryko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 718-19 (Fed. Cir. 1991); *Raytheon Techs. Corp. v. Gen. Elec. Co.*, 993 F.3d 1374, 1376-77, 1379-82 (Fed. Cir. 2021); *Geo. M. Martin Co. v. All. Mach. Sys. Int'l LLC*, 618 F.3d 1294, 1303 (Fed. Cir. 2010); *Minnesota Min. & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1306 (Fed. Cir. 2002).

**STIPULATED INSTRUCTION NO. <mark>21</mark>~~20~~ RE INVALIDITY—WRITTEN DESCRIPTION REQUIREMENT**

<mark>A patent's specification must describe in full, clear, and exact terms the nature and extent of the claimed invention.  In the patent application process, the applicant may keep the originally filed claims, amend the claims, or add new claims.  These changes may narrow or broaden the</mark>

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party name is not indicated.

scope of the claims.

A patent claim is invalid if the patent does not contain an adequate written description of the claimed invention. The ~~purpose of this~~ written description requirement ~~is to demonstrate~~helps ensure that the ~~inventor was in possession of~~patent applicant actually invented the ~~invention at the time the application for the patent was filed,~~claimed subject matter., even though the claims may have been changed or new claims added since that time. ~~The~~ To satisfy the ~~written~~ description requirement ~~is satisfied if~~, the patent specification must describe each and every limitation of a ~~person of ordinary skill in the field reading the original patent application at the time it was filed would have recognized that the~~ patent ~~application described the invention as claimed, even though the description may not use~~claim, in sufficient detail, although the exact words found in the claim need not be used. A requirement in a claim need not be specifically disclosed in the patent application as originally filed if a person of ordinary skill would understand that the missing requirement is necessarily implied in the patent application as originally filed. But merely showing invention is not sufficient; the ultimate question is whether the specification describes in full, clear, and exact terms the nature and extent of the claimed invention. Sonos cannot show written description support by picking and choosing claim elements from different embodiments that are never linked together in the specification.

When determining whether the specification discloses the invention, the claim must be viewed as a whole. The specification must describe the full scope of the claimed invention, including each element thereof, either expressly or inherently.

Google contends that the asserted claims of the '033 patent lack written description support for the ~~"remote playback queue" terms.~~asserted claims. In order to invalidate the claims, Google must convince you of this by clear and convincing evidence, ~~that is, you must be left with a clear conviction that the claims are invalid.~~

*N.D. Cal. Model Patent Jury Instructions* B.4.2a, Rev. Aug. 2017 *(updated Oct. 2019)*;

*AIPLA Model Patent Jury Instructions* § 9 (2019).

Authorities:
~~35 U.S.C. § 112(1) and (2)~~35 U.S.C. § 112(1) and (2)~~;~~. *Juno Therapeutics, Inc. v. Kite Pharma, Inc.*, 10 F.4th 1330, 1336 (Fed. Cir. 2021); *Flash-Control, LLC v. Intel Corp.*, No. 2020-2141,

JOINT PROPOSED JURY INSTRUCTIONS
3:20-cv-06754-WHA

==Yellow Highlight== indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party name is not indicated.

*2021 WL 2944592, at \*4 (Fed. Cir. July 14, 2021); In Re Skvorecz*, 580 F.3d 1262, 1269 (Fed. Cir. 2009); *Kao Corp. v. Unilever U.S., Inc.*, 441 F.3d 963, 968 (Fed. Cir. 2006); *Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247 (Fed. Cir. 2004); *Purdue Pharma L.P. v. Faulding, Inc.*, 230 F.3d 1320, 1323 (Fed. Cir. 2000); *Lampi Corp. v. Am. Power Prods., Inc.*, 228 F.3d 1365, 1377-78 (Fed. Cir. 2000); *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1478-80 (Fed. Cir. 1998); *In re Alton*, 76 F.3d 1168, 1172 (Fed. Cir. 1996); *University of Rochester v. G.D. Searle & Co.*, 358 F.3d 916, 926-928 (Fed. Cir. ~~2004~~*2004*); *Lipocine Inc. v. Clarus Therapeutics, Inc.*, 541 F. Supp. 3d 435, 463 (D. Del. 2021).

**STIPULATED INSTRUCTION NO. 22~~1~~ RE DAMAGES—BURDEN OF PROOF**

I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win on any issue. ~~If you find~~ ==Since I have already found== that Google infringed ~~any valid~~ ~~C~~==c==laim 1 of the '885 patent, ==if you also find that~~ ~~Google failed to prove by clear and convincing evidence that~~ ~~C~~==c==laim 1 of the '885 patent is ==not== invalid,== you must then determine the amount of money damages to be awarded to Sonos to compensate it for the infringement. ==Similarly, if you find that any asserted claim of the '966 patent or '033 patent is both infringed and not invalid, you must then determine the amount of money damages to be awarded to Sonos to compensate it for the infringement.==

The amount of those damages must be adequate to compensate Sonos for the infringement. A damages award should put the patent holder in approximately the financial position it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty. You should keep in mind that the damages you award are meant to compensate the patent holder and not to punish an infringer.

Sonos has the burden to persuade you of the amount of its damages. You should award only those damages that Sonos more likely than not suffered. While Sonos is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty. Sonos is not entitled to damages that are remote or speculative.

*N.D. Cal. Model Patent Jury Instructions B.5.1, Rev. Aug. 2017 (updated Oct. 2019)*

Authorities:

35 U.S.C. § 284; *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381-82 (Fed. Cir. 2003);

<mark>Yellow Highlight</mark> indicates changed or added language to a model instruction.

~~Strikethrough~~ indicates deleted language from model instruction.

Optional instructions and basic changes such as inserting party name is not indicated.

*Grain Processing Corp. v. American Maize-Prod. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999);

*Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-09 (Fed. Cir. 1996); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009); *Ericsson v. D-Link Sys., Inc.*, 773 F.3d 1201, 1230-32 (Fed. Cir. 2014).


**STIPULATED INSTRUCTION NO. ~~22~~ 23 RE DATE OF COMMENCEMENT OF DAMAGES**

~~Damages that [patent holder] may be awarded by you commence on the date that [alleged infringer] has both infringed and been notified of the [ ] patent.~~ Sonos and Google agree that any damages for infringement of the '885 patent begin on November 24, 2020; any damages for infringement of the '966 patent begin on November 5, 2019; and any damages for infringement of the '033 patent begin on September 15, 2020.


*N.D. Cal. Model Patent Jury Instructions B.5.9, Rev. Aug. 2017 (updated Oct. 2019)*

<u>Authorities</u>:

35 U.S.C. § 287; *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir. 2001); *Nike Inc. v. Wal-Mart Stores*, 138 F.3d 1437, 1443-44 (Fed. Cir. 1998); *Maxwell v. Baker, Inc.*, 86 F.3d 1098, 1111-12 (Fed. Cir. 1996); *American Med. Sys. v. Medical Eng'g Corp.*, 6 F.3d 1523, 1534 (Fed. Cir. 1993); *Devices for Med., Inc. v. Boehl*, 822 F.2d 1062, 1066 (Fed. Cir. 1987).


**STIPULATED INSTRUCTION NO. <mark>~~24~~</mark>~~23~~ RE REASONABLE ROYALTY—DEFINITION**

<mark>If you find that claim 1 of the '885 patent is not invalid, Sonos is entitled to a reasonable royalty to compensate it for Google's infringement of claim 1.  If you find that any other asserted claim of the '966 or '033 patent is both infringed and not invalid, Sonos is entitled to a reasonable royalty to compensate it for Google's infringement of that patent claim.</mark>

A royalty is a payment made to a patent holder in exchange for the right to make, use or

<mark>Yellow Highlight</mark> indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party name is not indicated.

sell the claimed invention. This right is called a "license." A reasonable royalty is the payment for the license that would have resulted from a hypothetical negotiation between Sonos and Google taking place at the time when the infringing activity first began. In considering the nature of this negotiation, you must assume that both parties would have acted reasonably and would have entered into a license agreement. You must also assume that both parties believed the patent was valid and infringed. Your role is to determine what the result of that negotiation would have been. The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

A royalty can be calculated in several different ways and it is for you to determine which way is the most appropriate based on the evidence you have heard. You should consider all the facts known and available to the parties at the time the infringement began.[11]

In determining the amount of a reasonable royalty, you may consider evidence on any of the following factors, in addition to any other evidence presented by the parties on the economic value of the patent.[12] <mark>It will be up to you to determine which factors may or may not be relevant to this case. These factors are:[13]</mark>

- The royalties received by Sonos for the licensing of the patent in suit, proving or tending to prove an established royalty.

- The rates paid by Google for the use of other patents comparable to the patent in suit.

- The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

- Sonos's established policy and marketing program to maintain its patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

- The commercial relationship between Sonos and Google, such as whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter.

---

[11] This paragraph and the preceding paragraph are drawn from *N.D. Cal. Model Patent Jury Instructions B.5.7, Rev. Aug. 2017 (updated Oct. 2019)*.

[12] *American Intellectual Property Law Association Model Patent Jury Instructions 10.2.5.3, Rev. 2019.*

[13] Description of *Georgia-Pacific* factors drawn from Committee Comments and Authorities, *Fed. Cir. Bar Association Model Patent Jury Instructions B.5.8, Rev. May 2020.*

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party name is not indicated.

- The effect of selling the patented specialty in promoting sales of other products of Google; the existing value of the invention to Sonos as a generator of sales of its non-patented items; and the extent of such derivative or convoyed sales.

- The duration of the patent and the term of the license.

- The established profitability of the product made under the patent; its commercial success; and its current popularity.

- The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

- The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by Sonos; and the benefits to those who have used the invention.

- The extent to which Google has made use of the invention; and any evidence probative of the value of that use.

- The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

- The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by Google.

- The opinion testimony of qualified experts.

- The amount that a licensor (such as Sonos) and a licensee (such as Google) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee— who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention— would have been willing to pay as a royalty and yet able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty Google would have been willing to pay and Sonos would have been willing to accept, acting as normally prudent business people.[14]

---

[14] This paragraph drawn from *Fed. Cir. Bar Association Model Patent Jury Instructions B.5.8, Rev. May 2020.*

JOINT PROPOSED JURY INSTRUCTIONS
3:20-cv-06754-WHA

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party name is not indicated.

~~One way to calculate a royalty is to determine what is called an "ongoing royalty."[15] To calculate an ongoing royalty, you must first determine the "base," that is, the product on which Google is to pay. You then need to multiply the revenue the defendant obtained from that base by the "rate" or percentage that you find would have resulted from the hypothetical negotiation. For example, if the patent covers a nail, and the nail sells for $1, and the licensee sold 200 nails, the base revenue would be $200. If the rate you find would have resulted from the hypothetical negotiation is 1%, then the royalty would be $2, or the rate of 0.01 times the base revenue of $200. By contrast, if you find the rate to be 5%, the royalty would be $10, or the rate of 0.05 times the base revenue of $200. These numbers are only examples, and are not intended to suggest the appropriate royalty rate.~~

~~Instead of a percentage royalty, you may decide that the appropriate royalty that would have resulted from a hypothetical negotiation is a fixed number of dollars per unit sold. If you do, the royalty would be that fixed number of dollars times the number of units sold.~~

A reasonable royalty can be paid either in the form of a one-time lump sum payment or as a "running royalty." Either method is designed to compensate the patent holder based on the infringer's use of the patented technology. It is up to you, based on the evidence, to decide what type of royalty, if any, is appropriate in this case.[16]

Reasonable royalty awards can take the form of a lump sum payment. A lump sum payment is equal to an amount that the alleged infringer would have paid at the time of a hypothetical negotiation for a license covering all sales of the licensed product, both past and future. When a lump sum is paid, the infringer pays a single price for a license covering both past

---

[15] The remainder of this instruction drawn from *N.D. Cal. Model Patent Jury Instructions B.5.7, Rev. Aug. 2017 (updated Oct. 2019).*

[16] This paragraph is drawn from *Fed. Cir. Bar Association Model Patent Jury Instructions B.5.8, Rev. May 2020.*

<mark>Yellow Highlight</mark> indicates changed or added language to a model instruction.

~~Strikethrough~~ indicates deleted language from model instruction.

Optional instructions and basic changes such as inserting party name is not indicated.

and future infringing sales.[17]

    Reasonable royalty awards may also take the form of a running royalty based on the revenue from or the volume of sales of licensed products. A running royalty can be calculated, for example, by multiplying a royalty base by a royalty rate, or by multiplying the number of infringing products or product units sold by a royalty amount per unit.[18]

~~If the patent covers only part of the product that Google sells, then the base would normally be only that feature or component. For example, if you find that for a $100 car, the patented feature is the tires which sell for $5, the base revenue would be $5.~~

~~[In this case the [ ] patent covers only one component of the product that [alleged infringer] uses or sells. It is [patent holder]'s burden to demonstrate what value that component has added to the desirability of the product as a whole and to separate the value of the patented contribution from the value of other parts of the product that are not attributable to the patented invention.]~~

~~[In this case, [patent holder] [accused infringer] has introduced evidence of licenses between [licensees] and [licensors]. The royalty rate in one or more of those licenses may be considered if it helps to establish the value that is attributable to the patented invention as distinct from the value of other features of [alleged infringer's] product.]~~

    If the patent covers only part of the product that Google sells, then the base would normally be only that feature or component. For example, if you find that for a $100 car, the patented feature is the tires which sell for $5, the base revenue would be $5.[19]

    In this case the '885, '966, and '033 patents cover only one component of the product that Google uses or sells. It is Sonos's burden to demonstrate what value that component has added to the desirability of the product as a whole and to separate the value of the patented contribution from the value of other parts of the product that are not attributable to the patented invention.

---

[17]  This paragraph is drawn from *Fed. Cir. Bar Association Model Patent Jury Instructions B.5.8, Rev. May 2020.*

[18]  This paragraph is drawn from *Fed. Cir. Bar Association Model Patent Jury Instructions B.5.8, Rev. May 2020.*

[19]  This remaining paragraphs are drawn from *N.D. Cal. Model Patent Jury Instructions B.5.7, Rev. Aug. 2017 (updated Oct. 2019).*

==Yellow Highlight== indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party name is not indicated.

The ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product, and no more. When the accused infringing products have both patented and unpatented features, measuring this value requires you to identify and award only the value of the patented features.

~~Another way to calculate a royalty is to determine a one-time lump sum payment that Google would have paid at the time of the hypothetical negotiation for a license covering all sales of the licensed product, both past and future. This differs from payment of an ongoing royalty because, with an ongoing royalty, Google pays based on the revenue of actual licensed products it sells. When a one-time lump sum is paid, Google pays a single price for a license covering both past and future infringing sales.~~

It is up to you, based on the evidence, to decide what type of royalty is appropriate in this case ~~for the life of the patent.~~ for the life of the patent.

*N.D. Cal. Model Patent Jury Instructions B.5.7, Rev. Aug. 2017 (updated Oct. 2019); Fed. Cir. Bar Association Model Patent Jury Instructions B.5.8, Rev. May 2020; American Intellectual Property Law Association Model Patent Jury Instructions 10.2.5.3, Rev. 2019; Fed. Cir. Bar Association Model Patent Jury Instructions B.5.8, Rev. May 2020.;*

Authorities:

*Garretson v. Clark*, 111 U.S. 120, 121 (1884); *Ericsson v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014); *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326-34 (Fed. Cir. 2014); *Golight, Inc., v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1338 (Fed. Cir. 2004); *Maxwell v. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120-21 (S.D.N.Y. 1970); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010).

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party name is not indicated.

## STIPULATED INSTRUCTION NO. 25 RE ~~DAMAGES—DOUBTS RESOLVED~~

## ~~AGAINST INFRINGER~~BREACH OF CONTRACT

~~Any doubts that you may have on the issue of damages due to Google's failure to keep~~
~~proper records should be decided in favor of Sonos. In that circumstance, you are allowed to act~~
~~on probable and inferential proof, as well as upon direct and positive proof. Any confusion or~~
~~difficulties caused by Google's records also should be held against Google, not Sonos.~~

~~American Intellectual Property Law Association Model Patent Jury Instructions 10.3,~~
~~Rev. 2019~~

~~Google claims that~~ Google and Sonos entered into a contract for the integration of
Google's Google Play Music Service with Sonos's speaker products, which included provisions
regarding intellectual property rights.  This contract is sometimes referred to by the parties as the
2013 Content Integration Agreement or the "CIA."

Google claims that Sonos breached this contract by (1) obtaining patents purporting to
cover Google's cloud queue API and suing Google for infringement of those patents in this case,
(2) amending the claims of the '033 patent to introduce limitations related to a "remote playback
queue," and (3) using the cloud queue API to partner with third-party music services.

Google also claims that Sonos's breach of this contract caused harm to Google for which
Sonos should pay.

Sonos denies that it breached the 2013 Content Integration Agreement.  Sonos also claims
[insert affirmative defenses].

To recover damages from Sonos for breach of contract, Google must prove all of the
following:

1. That Google and Sonos entered into a contract;

2. That Google did all, or substantially all, of the significant things that the contract
   required it to do;

3. That Sonos failed to do something that the contract required it to do;

Yellow Highlight indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party name is not indicated.

     4.  That Google was harmed; and

     5.  That Sonos's breach of contract was a substantial factor in causing Google's harm.

Authorities:

    *Judicial Council of California Civil Jury Instructions* (2023 edition) (CACI Nos. 300, 303); *Verinata Health, Inc. v. Ariosa Diagnostics, Inc*, No. 3:12-cv-05501-SI, Dkt. 625 at 20-21 (N.D. Cal. Jan. 23, 2018).

**STIPULATED INSTRUCTION NO. ~~25~~ 26 RE BREACH OF CONTRACT DAMAGES**

    If you decide that Google has proved its claim against Sonos for breach of contract, you also must decide how much money will reasonably compensate Google for the harm caused by the breach. ~~This compensation is called "damages."~~ The purpose of such damages is to put Google in as good a position as it would have been if Sonos had performed as promised.

    To recover damages for any harm, Google must prove that when the contract was made, both parties knew or could reasonably have foreseen that the harm was likely to occur in the ordinary course of events as result of the breach of the contract.

    Google also must prove the amount of its damages according to the following instructions. It does not have to prove the exact amount of damages. You must not speculate or guess in awarding damages.

    Google claims damages for (1) the attorneys' fees and litigation costs it has incurred to defend against Sonos's claims of infringement with respect to the '615 and '033 patents, and (2) the costs that it incurred in developing the cloud queue technology.

Authorities:

    *Judicial Council of California Civil Jury Instructions* (2023 edition) (CACI No. 350); *Verinata Health, Inc. v. Ariosa Diagnostics, Inc*, No. 3:12-cv-05501-SI, Dkt. 625 at 20-21 (N.D. Cal. Jan. 23, 2018).

==Yellow Highlight== indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party name is not indicated.

### STIPULATED INSTRUCTION NO. ~~26~~ 27 RE CONVERSION

Google claims that Sonos wrongfully exercised control over its cloud queue technology and the associated cloud queue API.  To establish this claim, Google must prove all of the following:

1.  That Google owned its cloud queue technology and the associated cloud queue API;

2.  That Sonos substantially interfered with Google's property by knowingly or intentionally taking possession of Google's cloud queue technology and the associated cloud queue API;

3.  That Google did not consent;

4.  That Google was harmed; and

5.  That Sonos's conduct was a substantial factor in causing Google's harm.

Authorities:

*Judicial Council of California Civil Jury Instructions (2023 edition)* (CACI No. 2100); *The Regents of the University of California v. California Berry Cultivars, LLC*, No. 3:16-cv-02477-JCS, Dkt. 328 at 19 (N.D. Cal. May 24, 2017).

### STIPULATED INSTRUCTION NO. ~~27~~ 28 RE CONVERSION DAMAGES

If you decide that Google has proved its claim against Sonos, you also must decide how much money will reasonably compensate Google for the harm.  ~~This compensation is called "damages."~~

Google must prove the amount of its damages. However, Google does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. You must not speculate or guess in awarding damages.

Google claims the fair market value of its cloud queue technology and the associated cloud queue API at the time Sonos wrongfully exercised control over it.

"Fair market value" is the highest price that a willing buyer would have paid to a willing seller, assuming:

==Yellow Highlight== indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party name is not indicated.

1.  That there is no pressure on either one to buy or sell; and

2.  That the buyer and seller know all the uses and purposes for which ==Google's cloud queue technology and the associated cloud queue API are== reasonably capable of being used.

Authorities:

   *Judicial Council of California Civil Jury Instructions* (2023 edition) (CACI No. 2102). ~~*Bigelow v. R.K.O. Pictures, Inc.*, 327 U.S. 251, 264-65 (1946); *Story Parchment Co. v. Patterson Parchment Paper Co.*, 282 U.S. 555, 563 (1931); *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1118 (1996); *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1572-73 (Fed. 1996); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. 1983).~~

<span style="background-color: yellow">Yellow Highlight</span> indicates changed or added language to a model instruction.
~~Strikethrough~~ indicates deleted language from model instruction.
Optional instructions and basic changes such as inserting party name is not indicated.

Dated:  May <span style="background-color: yellow">XXX</span>, 2023

ORRICK HERRINGTON & SUTCLIFFE LLP
*and*
LEE SULLIVAN SHEA & SMITH LLP

By: <span style="background-color: yellow">*/s/ DRAFT*</span> _____
    Clement Seth Roberts

*Attorneys for Sonos, Inc.*

<span style="background-color: #7CFC00">[GOOGLE]</span>

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By _____<span style="background-color: yellow">*/s/ DRAFT*</span>_____
    Sean Pak
    Melissa Baily
    James D. Judah
    Lindsay Cooper
    Marc Kaplan
    Iman Lordgooei

*Attorneys for GOOGLE, LLC*

JOINT PROPOSED JURY INSTRUCTIONS
3:20-CV-06754-WHA