QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Sean Pak (Bar No. 219032)
  seanpak@quinnemanuel.com
  Melissa Baily (Bar No. 237649)
  melissabaily@quinnemanuel.com
  James Judah (Bar No. 257112)
  jamesjudah@quinnemanuel.com
  Lindsay Cooper (Bar No. 287125)
  lindsaycooper@quinnemanuel.com
  Iman Lordgooei (Bar No. 251320)
  imanlordgooei@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

  Marc Kaplan (*pro hac vice*)
  marckaplan@quinnemanuel.com
191 N. Wacker Drive, Ste 2700
Chicago, Illinois 60606
Telephone:     (312) 705-7400
Facsimile:     (312) 705-7401

*Attorneys for GOOGLE LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SONOS, INC.,<br><br>          Plaintiff,<br><br>     v.<br><br>GOOGLE LLC,<br><br>          Defendant. | Case No. 3:20-cv-06754-WHA<br>Related to Case No. 3:21-cv-07559-WHA<br><br>**GOOGLE LLC'S BRIEF REGARDING DR. SCHONFELD'S SUPPLEMENTAL REPLY REPORT** |

Contrary to Sonos's allegations, Google did not "strategically wait[] until after the motion *in limine* deadline and until the Court issue its summary judgment order" to serve Dr. Schonfeld's supplemental reply report as a vehicle for new opinions.  Dkt 663 at 3.  Each of the supposedly "new" opinions in Dr. Schonfeld's supplemental reply report are merely cumulative of opinions he already presented in his prior reports regarding the motivation to combine certain references as well as the reasons for and expectations of success of such combinations from the perspective of a POSITA.  Indeed, Dr. Schonfeld has already opined at length regarding the motivations to combine the cited prior art references and/or the knowledge of a person of ordinary skill in the art, including why there would have been a reasonable expectation of success and no technical challenges.  *See, e.g.*, Nov. 30, 2022 Schonfeld Opening Invalidity Rpt.[1] ¶¶ 327, 328, 358 (providing opinions regarding obviousness of the alleged invention in view of Sonos 2005 and the knowledge of a POSITA, including, *inter alia*, that "a POSITA using Sonos's system would have been motivated to find an alternative to this time consuming grouping process, including pre-defined or saved groups (the claimed 'zone scenes'). Indeed, Sonos users indicated as much on Sonos forums . . . ."), ¶ 382 (same, including that "the Sonos System already disclosed having groups and also having a 'Party Mode' / 'All Zones' group, which would necessarily encompass any groups already created and therefore disclose overlapping groups. A person of skill in the art would have been motivated to add overlapping groups because Sonos's own marketing materials touted the benefits of playing any song, in any room, from anywhere, including the ability to 'simultaneously play the same song or different songs in as many rooms as you'd like.'"), ¶ 383 (explaining that a POSITA had limited design choices, in that "by allowing a user to create speaker groups, those groups may either (1) allow overlapping group membership or (2) not allow  overlapping group membership" and explaining the reasons for a POSITA to select one of the other: "[g]iven that allowing overlapping group membership may be attractive to certain users because there was a recognized 'need for dynamic control of the audio players as a group,' it would have been obvious to select allowing

---

[1]  To avoid burdening the Court with unnecessary paper, Google has not attached a copy of Dr. Schonfeld's 698-page Opening Invalidity Report with this submission.  However, should the Court find it helpful, Google is prepared to lodge or submit the report at the Court's request.

overlapping group membership when implementing speaker groups"), ¶¶ 418-419 (opining "it would have been obvious to a person of skill in the art to allow the Zone Players [in the Sonos 2005 System] to remain in standalone mode as claimed" given, among other things, the limited design choices noted by the inventor himself who "wrote that there were only three possibilities for the behavior when a speaker is added to a group"), ¶ 444 (opining that a POSITA would have had a reasonable expectation of success of using their own knowledge to modify the Sonos 2005 system because they "would have found it straightforward to use multiple messages to implement different actions and/or user requests" and "[d]oing so would have allowed a POSITA greater flexibility in assigning and updating group coordinators and channel sources"); *see also id*. ¶¶ 330, 360-366, 404, 435, 446, 455 (providing opinions regarding obviousness of combining Sonos 2005 with the teachings of the Sonos Forums posts, which are directed to the very same system, including that "a person of ordinary skill in the art familiar with the Sonos System would have also been familiar with the Sonos Forums" and explaining that even Sonos's own engineers looked to the Sonos Forums for suggestions and improvements to the Sonos 2005 system); ¶¶ 331, 367-369 (same with respect to the Nourse prior art patent, including that a POSITA "working with the Sonos 2005 System would have found it obvious to look to other 'centralized speaker system[s],' where zone scenes (as described by the Court) could be created to improve the Sonos 2005 System" because, for example, Nourse actually disclosed how a POSITA could implement such an improvement "for example in relation to Figure 4, reproduced below, where at step 406 'the field programming device communicates the Speaker Group A configured command to the remote unit 130' and later, while remote unit 130 is still in Group 1, 'at step 422, the field programming device communicates a Speaker Page configure command to the remote unit 130'"), ¶¶ 384, 437 (explaining that Nourse "is in the same field of endeavor" and teaches "a plurality of speakers" that can be placed in multiple overlapping groups and remain in standalone mode, and provides the technical details on how to implement such a feature); *see also id*. ¶¶ 566, 567 (same for Squeezebox with Sonos Forums); *id*. ¶¶ 740-741, 780-781 (same for Squeezebox with knowledge of a POSITA); *id*. ¶¶ 568-570, 742, 798-799 (same for Squeezebox with Nourse); *id*. ¶¶ 908-909, 934-936 (same for Bose with

knowledge of a POSITA); *id.* ¶¶ 910 (same for Bose with Nourse)—to list just a few of the opinions on this point.

The opinions are also responsive to Dr. Almeroth's supplemental rebuttal opinions regarding the alleged validity of the asserted patents. For example, paragraphs 19-20 and 22-23 of Dr. Schonfeld's report are directly responsive to Dr. Almeroth's opinions regarding Sonos 2005 indicating, for example, that he had "also reviewed Dr. Schonfeld's 1/23/2023 Reply Report, and I disagree with Dr. Schonfeld's additional analyses and opinions regarding Sonos's 2005 system and his obviousness combinations based thereon . . . ." Almeroth Supp. Reb. ¶ 46. Dr. Schonfeld responded to this assertion in his report. Paragraphs 30-31, 34, 37, 46, 48, 53 and 56 of Dr. Schonfeld's supplemental reply report are also directly responsive to Dr. Almeroth's opinions regarding Sonos 2005.[2] For example, Dr. Schonfeld is responding directly to Dr. Almeroth's new opinions on the combination of Sonos 2005 with Crestron, and the combination of Sonos 2005 with Yamaha. *See, e.g.*, Almeroth Supp. Reb. ¶¶ 76-96 (Crestron), 101-117 (Yamaha). Again, Dr. Schonfeld's opinions respond directly to Dr. Almeroth.

Nevertheless, in an effort to narrow the parties' disputes and minimize the burden to the Court, Google hereby withdraws the portions of Dr. Schonfeld's April 14, 2023 Supplemental Reply Report that were identified in Sonos's submission. Dkt. 663-2. Google's withdrawal is without prejudice to its and Dr. Schonfeld's ability to provide testimony, evidence, and opinions regarding obviousness of the asserted patents and claims at trial, including with respect to obviousness. There will be substantial clear and convincing facts and evidence adduced at trial (including Dr. Schonfeld's opinions as well as factual evidence) to show that the alleged inventions would have been obvious to those of ordinary skill in the art, who are presumed to have full knowledge of all prior art in the relevant field. *See, e.g.*, *Illumina Inc. v. Complete Genomics Inc.*, No. C -10-05542(EDL), 2013 U.S. Dist. LEXIS 46419, at *69 (N.D. Cal. 2013); *id.*, at *60 (explaining that

---

[2] Sonos concedes that "Dr. Almeroth's March 21, 2023 supplemental report now addressed the Creston, Yamaha DME, and '645 patent references against Sonos's '885 patent." Dkt 663 at 3-4.

"even in the absence of expert testimony about motivation to combine references, courts can make a common-sense determination to combine the prior art to find patent claims obvious," which "is in line with the Supreme Court's directive in *KSR Int'l Co. v. Teleflex, Inc.* to take a more 'expansive and flexible approach' in determining obviousness"); *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1239-40 (Fed. Cir. 2010) (finding no expert opinion required to support the obviousness determination because the technology was easily understandable); *Transtex Inc. v. Vidal*, No. 2020-1140, 2023 U.S. App. LEXIS 2717, at *13 (Fed. Cir. Feb. 3, 2023) (finding "it was reasonable for the Board to look to" the "same evidence" of motivation to combine that was reviewed by the expert to "conclude that a POSA would have reasonably expected the resiliency benefit that motivated him to combine the references in the first instance"); *NPF Ltd. v. Smart Parts, Inc.*, 187 F. App 'x 973, 978-79, 980 (Fed. Cir. 2006) (finding evidence that multiple developers of the products used reprogrammable processors showed that it was within the knowledge of one of ordinary skill in the art to use reprogrammable processors during development of the products); *Centricut, LLC v. ESAB Grp., Inc.,* 390 F.3d 1361, 1369 (Fed. Cir. 2004) (noting that in many patent cases the technology will be "easily understandable without the need for expert explanatory testimony" and citing cases).

   Accordingly, the issue raised in Sonos's submission is moot.

DATED: May 6, 2023

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By   /s/ Iman Lordgooei
Sean Pak
Melissa Baily
James D. Judah
Lindsay Cooper
Marc Kaplan
Iman Lordgooei

*Attorneys for Google LLC*

## CERTIFICATE OF SERVICE

The undersigned certifies that on May 6, 2023, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system.

DATED: May 6, 2023

   /s/ Iman Lordgooei
Iman Lordgooei