# EXHIBIT 5

```
TRANSCRIPT
----------------------------------------

07:07:18 01    This is Guinevere suses Sonos or Sonos versus Google           Page 1

07:07:55 01        This is Google Sonos or Sonos versus Google trial day 1   Page 1

07:08:15 02    (mr. Sullivan is doing opening argument for the Plaintiff
07:08:20 03    Sonos).
07:15:03 04            MR. PAK:  Is going to be Mr. Pak and.
07:15:07 05            MR. SULLIVAN:  Is going to be Mr. Sullivan '966 is
07:17:27 06    patent 966 '966 or nine is patent 966 '885.
07:18:13 07            THE CLERK:  All rise.
07:27:23 08            THE CLERK:  Calling civil action 20-6754, Sonos, Inc.
07:27:34 09    versus Google, LLC, and related action.
07:27:37 10        Counsel, please approach the podium and state your
07:27:39 11    appearances for the record, beginning with counsel for Sonos.
07:27:42 12            MR. SULLIVAN:  Good morning, Your Honor; Shawn
07:27:51 13    Sullivan on behalf of Sonos.
07:27:52 14            MR. SULLIVAN:  Would you like me to introduce the rest
07:27:52 14        Would you like me to introduce the rest of the table?
07:27:55 15        Libby Molton, Dan Smith, David goes go, Alisha aleash
07:27:55 15        Libby Molton, Dan Smith, David goes go, Alisha card legal
07:28:01 16    Roberts and Elaina  a chassis zoom is our corporate
07:28:04 17    representative, Your Honor.
07:28:05 17            THE COURT:  Okay.  Thank you.
07:28:06 19            MR. PAK:  Good morning, Your Honor, Sean Pak on behalf
07:28:09 20    of Google and with me is Melissa Baley, Lindsey Cooper, James
07:28:13 21    Juda, our corporate representative Ken McKay and Eman Lordgooei
07:28:18 22        Thank you, Your Honor.
07:28:19 24        When the jury returns and -- in 30 minutes or so we will
07:28:27 25    have you introduce everyone again so they can start learning
07:28:36 01    the names.                                                    Page 2

07:28:36 02        Okay let's start with our first -- we have a -- we ran out
07:28:36 02        Okay.  Let's start with our first -- we have a -- we ran
07:28:45 03    out of potential jurors last week, and I made a decision to go
07:28:51 04    with seven rather than eight, which leads to the question
07:28:55 05    whether we should stipulate to a five-person jury, if need be.
07:29:01 06    I have no inside information, I should tell you that, as to
07:29:06 07    anything that has -- you know, whether somebody has -- is going
07:29:11 08    to drop out or not.
07:29:15 09        Now, during the trial we can't have what just happened
07:29:20 10    here.  We can't have distractions like that, so we have to
07:29:24 10    be -- nothing that would distract the jury anyway.
07:29:30 12        Let me ask Sonos first would you stipulate to a five
07:29:30 12        Let me ask Sonos first, would you stipulate to a
07:29:34 13    five-person jury if need be?
07:29:35 12            MR. SULLIVAN:  No, Your Honor.
07:29:36 13            THE COURT:  How about Google.
```

```
07:38:17 05            All right.  So that's the ruling.
07:38:18 04                MR. PAK:  Thank you, Your Honor.
07:38:19 07                THE COURT:  I'm not allowing -- it's okay for her to
07:38:21 08    testify, but on cross-examination Mr. Pak can blow her out of
07:38:25 08    the water with all of these other patents and what happened to
07:38:28 10    them.  I look forward to that cross-examination.  All right.
07:38:32 11                THE COURT:  Next problem.  What's the next problem.
07:38:32 11            Next problem.  What's the next problem.
07:38:33 12                MR. RICHTER:  Your Honor, I think there's one other
07:38:36 13    issue in that motion for clarification, actually, if I may and
07:38:39 14    what makes this.
07:38:39 13                THE COURT:  What else is there.
07:38:42 16                MR. RICHTER:  -- a unique case was, there was a
07:38:44 17    history of patents that Sonos --
07:38:45 18                THE COURT:  The family thing, no.  The family is out.
07:38:48 19    A family is never enough.  The family is never enough to say
07:38:53 20    that patent hadn't even issued yet when they were studying
07:38:56 21    those patents, so no family.  I have already ruled that the
07:39:00 22    family is not enough.  You cannot use the family to justify
07:39:04 23    that they were on notice of the actual patent itself when it's
07:39:08 24    a complete falsehood.  They were not, end of story, so don't
07:39:12 25    even go there.  That's the ruling.
07:39:14 01                MR. RICHTER:  I think.                                    Page 9

07:39:14 25                THE COURT:  That's the ruling.
07:39:16 03                MR. RICHTER:  Can I make one objection for.
07:39:18 04                THE COURT:  No, you cannot.  You can put it in writing
07:39:22 05    later.
07:39:22 06                MR. RICHTER:  Okay.  Thank you.
07:39:24 07                MR. RICHTER:  What's the next thing I can help you
07:39:24 07                THE COURT:  What's the next thing I can help you with?
07:39:26 08                MS. BALEY:  Melissa Baley for Google.
07:39:32 09                MS. BALEY:  Google has an objection to Sonos' opening
07:39:32 09            Google has an objection to Sonos' opening slides that
07:39:35 10    reference certain Sonos licensing agreements, and I would like
07:39:39 11    to --
07:39:39 12                THE COURT:  Well, what's wrong with those licensing
07:39:42 13    agreements?  Are you objecting to the -- to the ITFF, or
07:39:48 14    whatever it's called, and now you don't even want them to put
07:39:51 15    in a real licensing agreement?
07:39:54 16                MS. BALEY:  I would like to explain why they are
07:39:57 18                THE COURT:  Please, go ahead.
07:39:58 19                MS. BALEY:  Just to set the stage with respect to each
07:40:01 20    of those three agreements, Mr. Malison, the expert, has stated
07:40:05 21    they are not comparable to the hypothetical license, and I do
07:40:08 22    want to read those statements into the record just for a
07:40:10 23    moment, if Your Honor would permit me.  With respect to the
07:40:12 24    ^lead  licensing agreement, Sonos' expert says, Mr. Bakewell
07:40:18 25    and I -- Mr. Bakewell is Google's expert.  Mr. Bakewell and I
07:40:21 01    both agree that that license is not comparable to the           Page
```

```
                                    10
07:40:25 02  hypothetical license that would be granted in this matter.
07:40:26 03       With respect -- that's at page 45 of Mr. Malison's report.
07:40:32 04       With respect to the ^Lembrook license, Mr. Malison says
07:40:38 05  Mr. Bakewell -- and I agree -- that the Sonos' Lembrook license
07:40:42 06  is not probative of the outcome of the hypothetical negotiation
07:40:45 08       With respect to the ^Dennon license agreement, I find the
07:40:50 09  Sonos-Dennon agreement to not be probative of the outcome of
07:40:54 09  the hypothetical negotiation in this case.  That's at pages 48
07:40:57 11  and 50.
07:40:58 12       And I just want to tell, Your Honor, why, why the experts
07:40:58 12       And I just want to tell Your Honor why, why the experts
07:41:03 13  agreed these -- that these licensing agreements are not
07:41:07 15       The first reason, the licenses are for Sonos' entire
07:41:13 16  patent portfolio.  So both experts, for that reason, consider
07:41:19 17  them economically not comparable.
07:41:21 18       Sonos' expert doesn't apportion down from these rates that
07:41:27 18  are for an entire license.  A rate -- sorry, that are for an
07:41:30 20  entire portfolio.
07:41:31 21       And rates for an entire portfolio are going to skew what
07:41:36 22  the jury is thinking is a reasonable royalty in this case,
07:41:39 23  which, of course, is limited to the patents.
07:41:41 24           THE COURT:  Why can't they control for -- they say
07:41:44 25  this is for 25 patents and then here is the particular value of
07:41:49 01  this '966 patent and so you -- you reduce it down to, I don't      Page
                                                                                11
07:41:54 01  know, 5 percent of the big number.                                  Page
                                                                                11
07:41:58 03           MS. BALEY:  There's a few reasons.
07:42:00 04           MS. BALEY:  First of all they are cross licenses so it
07:42:00 04       First of all, they are cross-licenses, so it makes it a
07:42:03 05  lot more complicated.  And we are going to spend a lot of time
07:42:06 06  on that.
07:42:06 07           THE COURT:  You have to have an adjustment for the
07:42:08 08  cross-license.
07:42:09 09           MS. BALEY:  Also, the counter-parties in those
07:42:11 10  agreements, they were -- leaving the speaker business and
07:42:16 11  aside, in reality they didn't actually pay those rates for very
07:42:20 12  long at all.  And so we are going to be litigating that issue
07:42:23 13  as well, to explain to the jury why both experts said the rates
07:42:28 14  in these licenses were not comparable.  It is going to take a
07:42:31 15  lot of time.
07:42:32 16           THE COURT:  If we knock these out and we knock out
07:42:35 17  ITFF or IFTTT, if we knock that out, too, then they have zero.
07:42:40 18  They have no damages theory.
07:42:43 19           MS. BALEY:  I don't know if that's the case.
07:42:45 14           THE COURT:  How is that going to look?
07:42:48 15           MS. BALEY:  Well, it's Sonos' burden, so I think
07:42:51 16  that's a separate issue about whether these licenses can come
07:42:54 17  in.
```

Case 3:20-cv-06754-WHA   Document 690-6   Filed 05/08/23   Page 5 of 7

```
07:42:54 18              MS. BALEY:  And the other issue that I just want to
07:42:54 18         And the other issue that I just want to raise is if the
07:42:57 19    only relevance -- the only relevance that Sonos says these
07:43:01 20    licenses have to this case is not for the rates.  Their expert
07:43:05 21    said those rates were not comparable, can't rely on them.
07:43:09 22         The only relevance that Sonos says these agreements have
07:43:09 22         The only relevance that Sonos says these agreements have
07:43:12 23    is to the form of the license that Sonos prefers a running
07:43:16 24    royalty.  That's the only relevance even now Sonos says that
07:43:22 25    these agreements have to the case, so they are going to put
07:43:24 01    them in to show running royalty.                                Page 12
07:43:27 02         Google has 11 agreements non-economically comparable very
07:43:27 02         Google has 11 agreements non-economically comparable, very
07:43:31 03    low rates that show we prefer a lump sum, so we are going to
07:43:34 03    have a trial where there's going to be now 15 license
07:43:38 05    agreements that come into evidence.  Witnesses are going to
07:43:40 06    testify about them.  Both experts agree they are not comparable
07:43:44 07    to the hypothetical negotiation.
07:43:45 08         And there are going to be rates all over the place.  We
07:43:48 08    are going to put in 11 agreements with low rates because we
07:43:52 10    like a lump sum.  They are going to put in their three
07:43:54 11    agreements to say that they want a running royalty.  One of the
07:43:57 12    three agreements isn't even a running royalty.  It is a
07:44:01 13    sideshow.  It is the -- what's the expression? -- the tail
07:44:06 14    wagging the dog.
07:44:08 15         The issue that the jury needs to decide is how much these
07:44:08 15         The issue that the jury needs to decide is how much these
07:44:11 16    two patents are worth in a hypothetical negotiation between
07:44:15 17    Google and Sonos.  Everyone agrees nothing about the rates of
07:44:19 18    these three agreements is relevant to that at all again.  The
07:44:24 19    only relevance Sonos says these agreements have is to the form
07:44:28 20    of the royalty.
07:44:28 12              THE COURT:  All right.  What do you say in response.
07:44:31 15              MR. RICHTER:  First, Your Honor, this is a motion in
07:44:33 16    limine that they didn't raise.  It is not fair to be bringing
07:44:36 17    it to Your Honor ten minutes before we are going to make
07:44:39 18    opening arguments.
07:44:40 19              MR. RICHTER:  She told you an incomplete picture.
07:44:40 19         She told you an incomplete picture.  Mr. Malison does rely
07:44:43 20    on the licenses for the form and ^demonstrate Georgia pass
07:44:47 21    factor number 4, which is Sonos' past desire to enforce its
07:44:52 22    patent monopoly.
07:44:54 23         They can't come in with eight comparable licenses and hold
07:44:57 24    our argument hostage and say:  If you bring these three in, I'm
07:45:01 25    going to bring in eight.  And see, Your Honor, it's too much
07:45:04 01    for the jury.  That's not fair.  We only want to tell the jury   Page 13
07:45:06 02    that we have entered into two royalty licenses.
07:45:09 03              THE COURT:  But if your own guy says it's not
```

```
07:45:13 04  comparable, how do you get around that.
07:45:15 18           MR. RICHTER:  He doesn't use it to factor into the
07:45:18 19  calculation of the royalty rate.  ^He does rely on it that
07:45:21 20  Sonos prefers a running royalty.  That's a fair use of these
07:45:24 21  licensing agreements.  It's in his report, Your Honor.  It's
07:45:27 22  just too late to be arguing this in is a motion in limine.
07:45:31 23           MS. BALEY:  Your Honor, first of all, this is
07:45:32 24  objections to evidence, it is not a motion in limine.  This is
07:45:36 25  what this morning is about.
07:45:37 01           MS. BALEY:  Second of all, so you just heard that      Page 14
07:45:37 01       Second of all, so you just heard that Sonos agrees or is   Page 14
07:45:42 02  not disputing that the rates are not relevant.  If they want to
07:45:47 02  say they have two licensing agreements that are running
07:45:51 04  royalty, fine, but to put the rates even when Sonos is saying
07:45:56 05  they are not relevant, to skew what the jury is thinking in
07:45:57 05  terms of valuation of two patents as ^opposed to thousands in
07:46:02 07  their portfolio, that would be wrong when Sonos isn't even
07:46:06 08  telling you here today that those rates are relevant to
07:46:08 09  anything they are saying.  These agreements are only relevant
07:46:13 10  to the form of a license so someone can say, yeah, we have
07:46:16 11  entered into three agreements at running royalties.  Google can
07:46:19 12  say we have entered into 11 that are lump sums, but to get into
07:46:23 13  the ins and outs of 15 licenses on both sides that are not
07:46:28 14  comparable that the experts both agree are not comparable is
07:46:32 15  403.
07:46:33 23           THE COURT:  All right.  Do you want to use any of this
07:46:38 17  during your opening statement?
07:46:39 17           MR. RICHTER:  We have a slide, Your Honor, yes,
07:46:42 18  concerning three licenses that Sonos entered into.  We are not
07:46:45 19  going to talk about the royalty rates in the license, just we
07:46:48 19  are going to say ^Ms. mystics is here to testify that Sonos has
07:46:54 21  entered into licenses with other parties.
07:46:55 22           THE COURT:  That much you can say.  However, I'm not
07:46:58 23  going to make a ruling on whether or not they come in.
07:47:01 24  Ultimately, if you want to gamble and double down in your
07:47:05 25  opening statement and say that these are coming into evidence,
07:47:07 01  you may wind up being wrong, because I don't know enough, on    Page 15
07:47:12 02  the spur of the moment, to say whether these should or should
07:47:15 03  not come into evidence and, if so, to what extent.  But I don't
07:47:19 03  see there being any harm in you -- this is not like a bloody
07:47:24 05  picture of a traffic accident.  This is patent stuff and
07:47:28 06  licensing stuff.  It is boring.  The jury will forget it in 25
07:47:33 07  minutes, and so it's not going to be harmful, at least the part
07:47:37 08  that you plan to use.
07:47:38 09       Now, it could be -- I wanted to say to you lawyers don't
07:47:43 10  say to me later, "Oh, Judge, you let us use it in the opening
07:47:47 11  and, therefore, it has to come in."  No way.  You make the
```

```
07:47:50 12   choice.  Whenever the time comes and you want to mention it
07:47:53 13   with a real witness, I may say Rule 403.  I may say Rule 403.
07:47:59 14   So, please, you are taking a chance.  Maybe you shouldn't take
07:48:05 15   that chance.  It's -- that will be up to you.
07:48:09 16        I don't understand enough about these particular license
07:48:14 17   agreements to make that call at this point, and I don't
07:48:17 18   understand enough about the rest of the case to make the call
07:48:21 20        It is okay for Google to raise this point now.  It's in
07:48:26 21   the nature of a motion in limine, but that's the whole point of
07:48:29 22   this 30 minutes is to bring up stuff like that.  So they could
07:48:34 22   have made the motion and objection at the time Malison
07:48:39 24   testifies.
07:48:39 25        So -- that procedurally is not a correct statement.
07:48:44 01        Okay.  So, that's my ruling.                           Page
16
07:48:47 02        All right.  What else can I help you with today.
07:48:49 03           MR. RICHTER:  Thank you.
07:48:50 04           MR. PAK:  Your Honor, I think we have a few
07:48:57 05   evidentiary objections, Your Honor, that.
07:48:58 06           THE COURT:  Well, here is one that's called -- this
07:49:01 07   one right here -- prior art.  I'm ready to make a ruling on
07:49:04 08   this one.
07:49:04 09           MR. PAK:  We resolved that issue.  We fixed the title
07:49:08 10   on that.
07:49:08 11           THE COURT:  You fixed it?  So I wasted time this
07:49:11 12   morning going over that.
07:49:11 13           MR. RICHTER:  I'm not sure what the fix is,
07:49:15 14   Your Honor.  Can you let us know what the fix is.
07:49:17 15           MR. PAK:  We are going to say "prior art obviousness,"
07:49:21 16   which is.
07:49:21 17           MR. RICHTER:  I'm not sure that resolves it,
07:49:24 18   Your Honor.  The issue is that there is.
07:49:25 19           THE COURT:  Who did you make your agreement with,
07:49:30 20   Mr. Pak?  I believe I have.
07:49:32 20           MR. PAK:  Your Honor, we had another similar slide
07:49:42 21   with the same title where the issue is they didn't want us to
07:49:45 22   say it was prior art 2005 system.
07:49:52 23           THE COURT:  This is not prior art.  This is not prior
07:49:54 24   art.  This -- this internal e-mail from ^Rob Lambrown, that's
07:50:01 25   not prior art.  It's an e-mail that may help you in some way.
07:50:04 01   It's not prior art.                                         Page
17
07:50:05 02           MR. PAK:  We can take out the title, Your Honor.
07:50:06 03           THE COURT:  I think what you should say -- don't even
07:50:08 04   say Sonos 2005 system.  Say 2005 e-mail, that's the title, and
07:50:15 05   otherwise you can use it.
07:50:16 06           MR. PAK:  Thank you, Your Honor.
07:50:16 07           THE COURT:  That's the answer.  See, instead of
07:50:20 08   getting into a swearing contest over whether or not you had --
07:50:24 09           THE COURT:  all right.  That's the answer to that one.
```