# EXHIBIT 1

**Volume 2**

**Pages 169 - 370**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable William H. Alsup, Judge

| | |
|---|---|
| SONOS, INC., ) | |
| ) | |
| Plaintiff and ) | |
| Counter-Defendant, ) | |
| ) | |
| VS. ) | **NO. C 20-6754 WHA** |
| ) | Related Case No. **C 21-07559 WHA** |
| GOOGLE, LLC, ) | |
| ) | |
| Defendant and ) | |
| Counter-Claimant. ) | |
| ) | |

San Francisco, California
Monday, May 8, 2023

**TRANSCRIPT OF JURY TRIAL PROCEEDINGS**

**APPEARANCES**:

For Plaintiff/Counter-Defendant:

        ORRICK, HERRINGTON & SUTCLIFFE LLP
        The Orrick Building
        405 Howard Street
        San Francisco, California  94105
**BY: CLEMENT S. ROBERTS, ATTORNEY AT LAW**
     **ELIZABETH R. MOULTON, ATTORNEY AT LAW**

        ORRICK, HERRINGTON & SUTCLIFFE LLP
        777 South Figueroa Street, Suite 3200
        Los Angeles, California 90017
**BY: ALYSSA M. CARIDIS, ATTORNEY AT LAW**

**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

REPORTED BY:  Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
             United States District Court - Official Reporter

1   Okay. Let's start with our first -- we have a -- we ran
2 out of potential jurors last week, and I made a decision to go
3 with seven rather than eight, which leads to the question
4 whether we should stipulate to a five-person jury, if need be.
5 I have no inside information, I should tell you that, as to
6 anything that has -- you know, whether somebody has -- is going
7 to drop out or not.
8   Now, during the trial we can't have what just happened
9 here. We can't have distractions like that, so we have to
10 be -- nothing that would distract the jury anyway.
11   Let me ask Sonos first, would you stipulate to a
12 five-person jury if need be?
13       **MR. SULLIVAN:** No, Your Honor.
14       **THE COURT:** How about Google?
15       **MR. PAK:** Same, Your Honor.
16       **THE COURT:** Well, you both may live to regret it if we
17 have to have a mistrial.
18   At least in my lifetime we probably won't re-try this
19 case. It will be another judge.
20   Okay. Number two, Sonos' motion for clarification.
21   I think I understand the issue. Tell me, summarize what
22 you would like for me to clarify.
23       **MR. RICHTER:** Good morning, Your Honor, this is Cole
24 Richter on behalf of Sonos.
25   So there are two issues we would like clarification from

```
1    Your Honor.  So at the pretrial conference we understood,
2    Your Honor's ruling was that if Sonos attempted to introduce an
3    e-mail into evidence that contained the other patent numbers
4    that were asserted in this case, that Google would therefore be
5    able to tell the jury what happened with those patents.
6         And so, in an attempt to compromise and comply with
7    Your Honor's rulings, we would like our corporate
8    representative Ms. Kwasizur, to orally testify that she
9    provided notice of a '966 patent to Google and orally testify
10   that she provided a complaint to Google that provided
11   allegations of infringement of the '966 patent.
12        So the jury will hear nothing about --
13            THE COURT:  Is that the one that was a few hours
14   before it was actually filed?
15            MR. RICHTER:  It was on September 28, yes.  Google
16   then, a few hours later, filed a DJ complaint, correct.
17            THE COURT:  Well, then a few hours later you also
18   filed your complaint.
19            MR. RICHTER:  The following day, Your Honor, correct.
20            THE COURT:  Within 24 hours of that, quote, notice,
21   the lawsuit was underway.
22            MR. RICHTER:  Correct.
23            THE COURT:  All right.  So you want to have a
24   verbalized statement that notice was given as to the '966?
25            MR. RICHTER:  Correct.  We think the verbal statement
```

1  would avoid injury or confusion.  There would be no previously
2  asserted patents in this case, so there would be no need to
3  explain to the jury what happened to those patents.
4           **THE COURT:**  What's your view, Mr. Pak?
5           **MR. PAK:**  Your Honor, it's the same issue that we
6  litigated last week.  We -- there was no written notice prior
7  to the licensing or the draft complaint.  The draft complaint,
8  itself, contained references to four other patents.
9       As Your Honor well knows, those four patents were either
10 dismissed or withdrawn from the case.  We should be able to put
11 the whole story in.
12      If they don't want to mention the complaints or the notice
13 as part of that complaint, then that's one thing, but they are
14 opening the door.  We should be able to tell the full story.
15      They suggested last time, Your Honor, that they redact the
16 complaint and only focus on the -- on the '966 patent.
17 Your Honor noted that that would not be permissible.
18      They do rely on this DJ complaint and oral testimony or
19 redacted form in any way, and we should be allowed to talk
20 about what happened afterwards.  We still have a wolf in this
21 allegation, in this case, and we should be able to tell the
22 full story to the jury.
23          **THE COURT:**  All right.  What's your response to that?
24          **MR. RICHTER:**  We are trying not to open the door,
25 Your Honor.  We offered the redaction and we understand,

1   Your Honor's ruling.  That's not acceptable, so we are trying
2   to just tell the jury that we provided notice of the '966
3   patent, which is not in dispute.  They have admitted they have
4   had knowledge of the '966 patent on September 28.
5       And we think they would be the ones introducing the other
6   patents that were previously asserted in this case, and it's
7   extremely prejudicial to tell the jury that unrelated to
8   patents directed to different technology were held in violate
9   and, frankly, they also want to.
10          **MR. PAK:**  Judge Albright's ruling in Texas to try to
11  tell the jury that this patent, the '206 patent, was held
12  invalid, that is factually incorrect.  Your Honor has ruled
13  that's not the law of the case.  It was not held invalid.
14  That's just too prejudicial.  And coupling those two things we
15  think is unfairly prejudicial.
16          **THE COURT:**  Here is the ruling:  If the testimony is
17  given by Alaina -- is that who it is?
18          **MR. RICHTER:**  Ms. Kwasizur, Your Honor, correct.
19          **THE COURT:**  Then that would open the door to what the
20  content of the notice was, and you are trying to sanitize it in
21  a way that is grossly unfair to Google.  Here is what really
22  happened.
23      I won't -- I don't know if there are any members of the
24  press out there, but -- it looks like there probably is not --
25  but here is what really happened.  A few hours before Sonos

1  filed its lawsuit, Sonos sent a copy of the complaint with a
2  cover letter to the other side, to Google, saying we are about
3  to sue you.  Here is your notice that you infringe.
4      And I have forgotten how many patents were listed, but it
5  was more than one.  It was several.  And -- and then they did
6  file their lawsuit.  Sonos filed their lawsuit in Texas.
7      Now, let's put to one side for a second the declaratory
8  relief action.  I'm going to come back to that.
9      The idea that a big company like Google, even a big
10 company, could find those patents, dig into them look at its
11 accused products and see whether or not it made an infringement
12 in a matter of hours is ridiculous.  I will spell that if you
13 want, but it is ridiculous and it was a Sonos patent lawyer
14 gimmick.
15     Now, it is fair for the other side to come back and say
16 look how many patents they accused us of.  How many was it?  I
17 have forgotten.
18         **MR. PAK:**  Five, Your Honor.
19         **THE COURT:**  Five.  They accused us of five patents and
20 within a few hours they actually sued us and is it really fair
21 for Sonos to think that we could have done our homework in that
22 period of time and come up with a conclusion whether we
23 infringe or not?  Absolutely not.
24     And there was a -- it's even worse than that, because it
25 is a forest-through-the-trees problem of those patents.

1   Several of them got withdrawn or were held invalid.

2   So Sonos served a notice that required Google to wade
3   through not only possibly invalid patents, we don't know
4   that -- or -- and/or patents that we know for sure were
5   invalid, at least according to the judge.

6   That is grossly unfair to Google. That is a gimmick. It
7   was just a gimmick. Sonos is a gimmick. So if your gimmick is
8   going to come into evidence, the whole gimmick is going to come
9   in, and then Google gets to explain what happened to every one
10  of those patents and how unfair it was for Sonos to pull that
11  gimmick. And you can call it a gimmick if you want through
12  your testimony.

13  **MR. PAK:** Thank you, Your Honor.

14  **THE COURT:** Don't say that I called it a gimmick,
15  that's not allowed, but now I'm coming though to where Google
16  shot itself in the foot. Google ran off and filed a
17  declaratory relief case under Rule 11. It could not do that
18  unless it had studied the patents. No, no. In my book that's
19  enough to go to the jury, just that alone, the declaratory
20  relief case. You don't even have to mention there's this other
21  case. So Sonos there can take advantage of the Google gimmick.
22  Both of you are gimmick officers.

23  Gimmick. Gimmick. And so Sonos can take advantage of the
24  gimmick that Google tried to pull, which is, within a matter of
25  hours, filing that declaratory relief case. And under the

1  rules you should have known.  You should know that -- you
2  should have done enough homework in good faith to say we don't
3  infringe and we don't -- and it's invalid.  So, in my view,
4  both sides deserve what they are going to get here.
5       All right.  So that's the ruling.
6           **MR. PAK:**  Thank you, Your Honor.
7           **THE COURT:**  I'm not allowing -- it's okay for her to
8  testify, but on cross-examination Mr. Pak can blow her out of
9  the water with all of these other patents and what happened to
10 them.  I look forward to that cross-examination.  All right.
11      Next problem.  What's the next problem?
12          **MR. RICHTER:**  Your Honor, I think there's one other
13 issue in that motion for clarification, actually, if I may and
14 what makes this --
15          **THE COURT:**  What else is there.
16          **MR. RICHTER:**  -- a unique case was, there was a
17 history of patents that Sonos --
18          **THE COURT:**  The family thing, no.  The family is out.
19 A family is never enough.  The family is never enough to say
20 that patent hadn't even issued yet when they were studying
21 those patents, so no family.  I have already ruled that the
22 family is not enough.  You cannot use the family to justify
23 that they were on notice of the actual patent itself when it's
24 a complete falsehood.  They were not, end of story, so don't
25 even go there.  That's the ruling.

1	say it was prior art 2005 system.
2	          **THE COURT:**  This is not prior art.  This is not prior
3	art.  This -- this internal e-mail from Rob Lambourne, that's
4	not prior art.  It's an e-mail that may help you in some way.
5	It's not prior art.
6	          **MR. PAK:**  We can take out the title, Your Honor.
7	          **THE COURT:**  I think what you should say -- don't even
8	say Sonos 2005 system.  Say 2005 e-mail, that's the title, and
9	otherwise you can use it.
10	          **MR. PAK:**  Thank you, Your Honor.
11	          **THE COURT:**  That's the answer.  See, instead of
12	getting into a swearing contest over whether or not you had --
13	     All right.  That's the answer to that one.
14	     Okay.  What is the next one?
15	          **MR. PAK:**  Your Honor, the next issue is
16	Mr. Millington, who I believe will be the first witness on the
17	Sonos side after the openings.  He has a number of exhibits
18	they disclosed to us that will be used in the direct
19	examination.  Those exhibits relate to a series of meetings
20	between Google and Sonos that took place in 2013 and '14.
21	     Those all relate to something called Cast for Audio, which
22	is not the accused technology in this case.
23	     If Your Honor recalls, we had the other two patents
24	relating to the Cloud Q collaboration between the companies.
25	We had withdrawn our counterclaims relating to those issues.

1    This series of meetings has nothing to do with the
2 overlapping speaker group technology at issue in this case from
3 the perspective of Sonos.
4    So it's our contention that we are now getting into a -- a
5 series of documents and meetings that have no relevance to the
6 issues in this case, number one;
7    Number two, we are not sure -- there's no copying
8 allegation, Your Honor, in this case, nor could there be
9 because Sonos has admitted that in 2020 they first released the
10 feature that practices the claimed inventions of these two
11 patents, so we think that this is confusing to the jury,
12 prejudicial, inconsistent with their view that there is no
13 copying allegation.
14    **THE COURT:** All right. What's -- there was nothing
15 filed on this, so I have no prior knowledge of this issue, but
16 let's hear from counsel.
17    **MR. RICHTER:** Let me take the prejudice -- thank you,
18 Your Honor. Let me take the prejudice first.
19    These are business e-mails between Sonos and Google. They
20 demonstrate the history of the company's relationship. They
21 are not prejudicial in any respect.
22    **THE COURT:** Were these part of the 408?
23    **MR. RICHTER:** No licensing or patents were discussed
24 in these e-mails.
25    **THE COURT:** What was the point of these

1  communications?

2  **MR. RICHTER:** They show the parties had a relationship
3  at or around the time Google was developing the technology that
4  was involved in this case. They go to several damages issues,
5  one of which is the competitive relationship between the
6  parties. That's Georgia Pacific factor.

7  The other relevant issue is that Google, itself, has
8  raised a defense of independent development of the technology.
9  They are going to tell the jury that they developed the
10 technology before Sonos filed its continuation patents and
11 without reference to Sonos' products or anything. And I think
12 Sonos is entitled to put into evidence, hey, Sonos and Google
13 actually were talking pretty closely about this very subject,
14 multi-room audio and it was --

15 **THE COURT:** Multi what?

16 **MR. RICHTER:** Multi-room audio.

17 **THE COURT:** Counsel said that was not in these
18 communications.

19 **MR. RICHTER:** Multi-room audio is the technology at
20 issue in this case, Your Honor.

21 **THE COURT:** I know what you say, but he said that that
22 technology was not in those communications.

23 **MR. RICHTER:** The communications were concerning Cast
24 for Audio, which is the genesis for the accused products. They
25 are going to put into evidence that this was the beginning

```
 1   of --
 2           THE COURT:  No, no, no.  Casting has almost nothing to
 3   do with the multi-room thing.  Where did you get that out of?
 4           MR. RICHTER:  That's the name of their audio program.
 5   The accused products are called the Chromecast and the
 6   Chromecast Audio.  They are -- the very first accused product
 7   is the Chromecast Audio product.  These communications are
 8   synching and grouping speakers together.
 9           THE COURT:  If you get into cast, they are going to be
10   allowed to say the Judge has already -- don't say the Judge --
11   that those have already been determined to be invalid.  Haven't
12   I done that?
13           MR. PAK:  Yes, Your Honor.
14           THE COURT:  Yes or no?
15           MR. PAK:  Yes.
16           THE COURT:  Two of them.
17           MR. PAK:  Two.
18           THE COURT:  You get to say that if Mr. Witness --
19   don't you know what those are?  So I'm going to allow you to
20   open that door.  So Mr. Pak can bring that to the attention of
21   the jury.
22           MR. RICHTER:  That's the accused products in this
23   case, Your Honor?
24           THE COURT:  No.  I'm saying that you can do it.  You
25   can bring it up but he can respond because you are trying to do
```

1  another gimmick.  The Cast thing is out of the case.  You want
2  to bring it back in for a limited purpose, but if you are going
3  to bring it in for any purpose, Mr. Pak is going to be able to
4  blow you out of the water and say those are invalid.
5          **MR. RICHTER:**  That's how their accused products work.
6          **THE COURT:**  I've made my ruling.  I'm letting you put
7  it to this witness, but he is going to have very much fair
8  latitude.  I can't say question by question.  I'm going to rule
9  fair latitude.  To bring out that anything having to do with
10 cast, C-A-S-T, is invalid.
11         **MR. RICHTER:**  Okay.  That's even the name of the
12 accused products Chromecast Audio.
13         **THE COURT:**  It's too confusing.  You are trying to use
14 it as a gimmick.
15         **MR. RICHTER:**  It is an accused product.
16         **THE COURT:**  It is confusing.  Everyone is going to
17 associate cast with this thing sending it to your TV.  Sorry.
18 That's the ruling.  The jury will be able to keep it straight.
19         **MR. PAK:**  Thank you, Your Honor.
20         **THE COURT:**  All right.
21         **MR. PAK:**  I believe just a very discrete issue that
22 Mr. Judah today will be addressing on hearsay objections.
23         **THE COURT:**  Yes, what's your problem.
24         **MR. JUDAH:**  James Judah today for Google, Your Honor.
25 There are two issues.  One is TX82385, which is a document that

### CERTIFICATE OF REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:   Monday, May 8, 2023

_____

Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
United States District Court - Official Reporter