1  CLEMENT SETH ROBERTS (SBN 209203)
   croberts@orrick.com
2  BAS DE BLANK (SBN 191487)
   basdeblank@orrick.com
3  ALYSSA CARIDIS (SBN 260103)
   acaridis@orrick.com
4  ORRICK, HERRINGTON & SUTCLIFFE LLP
   The Orrick Building
5  405 Howard Street
   San Francisco, CA 94105-2669
6  Telephone:   +1 415 773 5700
   Facsimile:   +1 415 773 5759

7  SEAN M. SULLIVAN (*pro hac vice*)
8  sullivan@ls3ip.com
   J. DAN SMITH (*pro hac vice*)
9  smith@ ls3ip.com
   MICHAEL P. BOYEA (*pro hac vice*)
10 boyea@ ls3ip.com
   COLE B. RICHTER (*pro hac vice*)
11 richter@ls3ip.com
   LEE SULLIVAN SHEA & SMITH LLP
12 656 W Randolph St., Floor 5W
   Chicago, IL 60661
13 Telephone:   +1 312 754 0002
   Facsimile:   +1 312 754 0003
14

15 *Attorneys for Sonos, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA,

SAN FRANCISCO DIVISION

| | |
|---|---|
| SONOS, INC., <br><br> Plaintiff and Counter-defendant, <br><br> v. <br><br> GOOGLE LLC, <br><br> Defendant and Counter-claimant. | Case No. 3:20-cv-06754-WHA <br><br> Consolidated with <br> Case No. 3:21-cv-07559-WHA <br><br> **SONOS, INC.'S BRIEF RE CLAIM CONSTRUCTION** <br><br> Judge: Hon. William Alsup <br> Courtroom: 12, 19th Floor <br> Trial Date: May 8, 2023 |

The Court requested Sonos's position on the proper constructions for several terms in the zone scenes patents, including (1) the claim terms "storage" and "predefined grouping," as well as (2) the concept of user naming. Sonos explains what the Court has previously held, what the patents themselves say, and why Google has waived any remaining issues with respect to infringement of the '966 patent by its original products.

**I.  THE COURT'S PREVIOUS HOLDINGS REGARDING CLAIM CONSTRUCTION AND INFRINGEMENT**

In the Court's summary judgment order regarding Claim 1 of the '885 patent (Dkt. 309), the Court adopted certain claim constructions in the course of resolving the disputed issues in that motion. In particular, the Court adopted, *arguendo*, Google's proposed construction of "zone scene" as "a previously-saved grouping of zone players according to a common theme." Dkt. 309 at 7. (Both parties' proposed constructions included the term "previously-saved grouping of zone players. *See* Dkt. 208 at 8-10; Dkt. 274 at 1.) The Court also rejected Google's argument that a "common theme" must apply certain "theme attributes." Dkt. 309 at 7-8. For a theme, the Court held that "[t]he question, then, is simply whether a user's ability to name speaker groups means that the user can group speakers according to a common theme," and that "[t]he answer is yes." *Id.* at 8.

In the course of deciding the motion the Court looked at how the Google Home App is used to create, name, and save speaker groups. TX0036. It noted that the user first selects which speakers they want in the group. Dkt. 309 at 7-8. This creates a "predefined" group, as required by the construction of zone scene. The user can then name the group according to a common theme by giving the group a thematic name. *Id.* at 8. "The name serves to allow the user to remember the theme that binds a particular set of speakers." *Id.* Then, the user pushes the "save" button on the Home App and the group is stored. *Id.* at 9. After it has been saved, and as a distinct action, the zone scene can later be invoked. The Court thus found that the "accused products are readily capable of allowing users to pre-save groups of speakers and give them thematic names" as the '885 patent requires. *Id.* at 8-9.

The Court considered and rejected Google's noninfringement arguments, including its assertion that the claim language "indication that the … zone player *has been added* to … a zone scene" meant that a speaker is required "to receive a message regarding its grouping status *later*, after it has already been added to the group by some prior command." *Id.* at 9-10. The Court rejected that construction, noting that "[t]he plain language of the claim does not require a follow-up indication memorializing that the zone player has already been added to the group by an initial command so that the zone player can use that information later" and instead "simply requires the zone player to receive an indication from the network device that it has been added to a zone scene." *Id.* at 10. Google also argued that limitation 1.5(i) should be read so that the word "comprising" modifies "indication," but as the Court concluded, "[a] more natural reading of the claim is that 'comprising' modifies 'zone scene.'" *Id.* at 10-11.

The parties prepared expert reports and their trial strategy based on these rulings.

**II.    SAVING, STORAGE, PREDEFINED GROUPS, AND USER NAMING**

The Court asks now, what is the relationship between the concepts of saving, user naming, and the claim terms "causing storage" and "predefined group"?

As shown above, the zone scene is first defined by the user – a process that includes selecting its members, giving it a thematic name, and then saving it. Neither party disputes the zone scenes must be saved *before* they are invoked. And (contrary to the argument Google has been making) there is nothing in the specification that requires the groups to be saved or stored in *nonvolatile* memory. To the contrary, the specification says expressly (with reference to Figure 2) that the zone scene can be saved in either memory 206 ('966 patent at 5:65-6:1) or in "module" 212 (*id.* at 6:22-25) while *nothing* in the specification suggests that either structure is limited to a particular type of data storage. Indeed, during deposition Dr. Schonfeld agreed that "memory is usually volatile." Kolker Decl. Ex. 1 (2/3/2023 Schonfeld Dep. Tr.) at 203:14-15.

Because the '966 patent is claimed from the perspective of the computing device that *causes* storage of the zone scene (i.e., that sets the saving into motion), the '966 patent

expressly requires, among other things, *causing storage of the first zone scene*. *E.g.*, Limitation 1.6. Such "storage" is the means by which the information defining the zone scene is saved. The concept of *saving* is inherent in Claim 1 of the '885 patent, because it is part of the definition of a zone scene ("previously saved…") and because the zone scene must be "predefined." *See, e.g.*, Dkt. 309 at 9 ("Google admits that its accused products are readily capable of allowing users to pre-save groups of speakers and give them thematic names. Consequently, the accused products allow users to form zone scenes.").

Moreover, both patents require a first and second "predefined grouping of zone players." Here, "predefined" refers to the fact that the user selects (though the user interface) the members of the zone scene (along with the thematic name) thereby *defining* the scene which is then saved or stored until it is invoked. For example, Limitation 1.5 of the '966 patent recites "receiving a first request to create a first zone scene comprising a first predefined grouping of zone players," while Limitation 1.6 requires "based on the first request, i) causing creation of the first zone scene, ii) causing an indication of the first zone scene to be transmitted to the first zone player, and iii) causing storage of the first zone scene." '966 patent, claim 1. Claim 1 of the '885 patent includes parallel language reciting "receiving … a first indication that the first zone player has been added to a first zone scene comprising a first predefined grouping of zone players." '885 patent, claim limitation 1.5(i). (And after the create, name, and save functions, the predefined group of zone players can later be invoked in a separate process.)

User naming is explicitly discussed in the specification (e.g., "a group of 3 zones named after 'Morning'") as "a mechanism to allow a *user* to group [some of the] players *according to a theme or scene*." *See, e.g.*, Dkt. 309 at 4. "The name serves to allow the user to remember the theme that binds a particular set of speakers" for later invocation. *Id.* at 8. As the Court previously explained, after a user "form[s]" (i.e., creates) a zone scene by selecting the members and naming the groups, *id.* at 4, the zone scene is "sav[ed]," after which "the user can 'invoke' the group on demand," *id.* at 5. *See also, e.g., id.* at 16 ("The user 'decide[s] which zone players to be associated with the scene' and then the scene is

'[s]aved.' Once a scene is saved, it can then be 'invoke[d]' later."). The Court also discussed user naming in the context of Google's argument that it did not infringe because "its users can form speaker groups and name the groups *anything*." *Id.* at 7 (emphasis added). But as the Court correctly held, "[t]his only shows … that Google's products have capabilities in addition to those recited by the claim." *Id.* at 8. Because "Google admits that its accused products are readily capable of allowing users to pre-save groups of speakers and give them thematic names," "the accused products allow users to form zone scenes." *Id.* at 9.

### III. THERE IS NO REASONABLE DISPUTE THAT GOOGLE'S PRIOR VERSIONS INFRINGE THE ASSERTED CLAIMS OF THE '966 PATENT

Google has stated that the '885 and '966 patents are "two sides of the same coin." *See, e.g.*, Dkt. 592-5 (Google's Opp. to Sonos MIL 2) at 5; 5/8/23 Tr. at 224:4-9 (Google Opening Statement). As the Court recognized, there are some differences between the claims. *Cf.* Dkt. 631-2 (Sonos's Suppl. Brief Re '885 and '966 Patents). Those differences are relevant to infringement by Google's newer products and to invalidity. *Id.* at 6-7. But they *are not* relevant to infringement by Google's prior versions. *Id.* at 3-5.

As Sonos has previously explained, before opening statements Google put forward *no* specific argument that its prior products do not infringe the '966 patent. *See* Dkt. 631-2 at 3-4. Nor did Google move for summary judgment of noninfringement of the prior versions of its accused products (despite moving on five other issues). Dkt. 483. Sonos has previously explained why infringement by the prior versions of Google's accused products rises and falls together for both the '885 and '966 patents. Dkt. 631-2 at 3-6. Sonos incorporates those arguments by reference here.

Google's only response to those arguments—without any supporting citation—is that it would not agree to any stipulation because its "accused products do not meet the following limitation as required by the claims of the '966 patent:"

> based on the first request, i) causing creation of the first one scene, ii) causing an indication of the first zone scene to be transmitted to the first zone player, and iii) causing storage of the first zone scene

Dkt. 633 at 2; *see also* Tr. 227:17-228:8, 231:8-10 (Google's opening statement).

In other words, Google's *sole* noninfringement argument for the '966 patent as to prior versions of its products is that its controllers do not have programming for causing storage of the speaker group.[1]  This argument is not supported and Google has waived it in any event.

Among other things, as the Court heard today, Google's witness Ken MacKay admitted that Google's speaker group is a "static group … that the user configures and it's saved persistently." Kolker Decl. Ex. 2 (MacKay 5/10/22 Dep. Tr.) at 117:17-24.  That means the *sole* non-infringement argument which Google has attempted to advance has been refuted by its own corporate representative.

Google's argument that it does not store zone scenes is also waived.  Google's Opposition to Sonos's Motion in Limine No. 2 argued that "'storage' of a 'zone scene'" is *not* "a difference between the '885 and '966 claims," because—according to Google and Dr. Schonfeld—"the ability to save a 'zone scene' is at least inherent under the Court's construction." Dkt. 592-5 at 6.  In other words Google has conceded that *storage* of zone scenes is inherent under the Court's construction and for that reason argues that "storage" is not "a difference between the '885 and '966 claims."

Because "causing storage" is the only basis on which Google contends its prior versions of the accused products do not infringe claims 1, 4, 6, and 8 of the '966 patent, Google has conceded that storage of zone scenes is inherent to the Court's construction, and Google's own witness admitted that its products store zone scenes, there is no reasonable dispute that Google's prior versions infringe the asserted claims of the '966 patent.  Google should therefore be prohibited from arguing that there is any difference between "saving" a group and "storage" of the group.  Because that is the only basis for Google's noninfringement arguments for the '966 patent with respect to Google's prior product versions, the Court should find that the '966 patent is infringed by Google's prior products and so instruct the jury.

---

[1] Google has represented to the Court that the only difference between its noninfringement positions for the '885 and '966 patents is "causing storage."  The Court has already determined that Google's prior versions infringe the '885 patent.  So "causing storage" is the only possible reason why the '966 patent might not be infringed by Google's prior versions.

Dated: May 10, 2023

ORRICK HERRINGTON & SUTCLIFFE LLP
*and*
LEE SULLIVAN SHEA & SMITH LLP

By: */s/ Clement Seth Roberts*
    Clement Seth Roberts

*Attorneys for Sonos, Inc.*