QUINN EMANUEL URQUHART & SULLIVAN, LLP
Sean Pak (Bar No. 219032)
  seanpak@quinnemanuel.com
Melissa Baily (Bar No. 237649)
  melissabaily@quinnemanuel.com
James Judah (Bar No. 257112)
  jamesjudah@quinnemanuel.com
Lindsay Cooper (Bar No. 287125)
  lindsaycooper@quinnemanuel.com
Iman Lordgooei (Bar No. 251320)
  imanlordgooei@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:    (415) 875-6600
Facsimile:    (415) 875-6700

Marc Kaplan *(pro hac vice)*
  marckaplan@quinnemanuel.com
191 N. Wacker Drive, Ste 2700
Chicago, Illinois 60606
Telephone:    (312) 705-7400
Facsimile:    (312) 705-7401

*Attorneys for GOOGLE LLC*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| SONOS, INC.,<br><br>           Plaintiff,<br><br>     vs.<br><br>GOOGLE LLC,<br><br>           Defendant. | Case No. 3:20-cv-06754-WHA<br>Consolidated with Case No. 3:21-cv-07559-WHA<br><br>**GOOGLE LLC'S RESPONSE TO THE COURT'S REQUEST FOR INFORMATION REGARDING SAVING AND STORING** |

1    Pursuant to the Court's request for information at today's trial, Google provides the
2    following brief explanation of its positions on whether regarding the "saving," "predefined," and
3    "storage" aspects of the asserted claims of the '885 and '966 patents. *See* Ex. 1 (5-10-23
4    Transcript of Jury Trial Proceedings) at 646:14-647:7. Claim 1 of the '966 and '885 patent are
5    reproduced below in pertinent part below, and key terms from each are highlighted.

| '996 Patent, Claim 1 (Controller) | '885 Patent, Claim 1 (Zone Player) |
|---|---|
| **[1.5]** receiving a first request to create a first ==zone scene== comprising a first ==predefined== grouping of zone players including at least the first zone player and a second zone player that are to be configured for synchronous playback of media when the first ==zone scene== is invoked;<br><br>**[1.6]** based on the first request, i) causing creation of the first zone scene, ii) causing an indication of the first ==zone scene== to be transmitted to the first zone player, and iii) ==causing storage== of the first zone scene; | **[1.6]** (i) receiving, from a network device over a data network, a first indication that the first zone player has been added to a first ==zone scene== comprising a first ==predefined== grouping of zone players including at least the first zone player and a second zone player that are to be configured for synchronous playback of media when the first ==zone scene== is invoked; and |

## I.   GOOGLE'S POSITIONS REGARDING "PREDEFINED," "SAVING" AND "STORAGE"

Limitations 1.0-1.4 of the '966 patent are directed to a "computing device" that comprises "one or more processors," a "computer readable medium," and "program instructions." Similarly, limitations 1.0-1.4 of the '885 patent are directed to a "zone player" with a "network interface," "one or more processors" and "program instructions." The two patents are two sides of the same coin, and each patent shares the same specification and figures. In particular, claim 1 of the '966 patent claims a controller device that controls the zone player in claim 1 of the '885 patent.

Both claims recite a first and second "zone scene" that comprises a "predefined grouping" of zone players. The plain meaning of the term "predefined group" means a grouping of zone players that is defined in advance. The claim language informs a person of skill in the art what the zone scene must be defined in advance of.

In particular, claim 1 of the '966 patent recites that the grouping of zone players is defined in advance of the controller device receiving a "request to create a first zone scene comprising a first

predefined grouping of zone players." *See* '966 patent, Limitation 1.5.  The claim then goes on to recite that the request to create a first scene actually "cause[s] creation" of the "zone scene."  Google contends that the ***created*** zone scene may be temporarily saved, and in accordance with the parties' agreed construction it must also have a common theme.  *See* Ex. 2 (5-9-23 Transcript of Jury Trial Proceedings) at 508:23-25 (parties agreed construction is "a previously saved grouping of zone players according to a common theme").  The controller will also cause "an indication of the first zone scene to be transmitted to the first zone player." *See* '966 patent, Limitation 1.6.

Claim 1 of the '885 patent is directed to the zone player.  This claim recites: "receiving, from a network device over a data network, a first indication that the first zone player has been added to a first zone scene comprising a first predefined grouping of zone players."  *See* '885 patent, Limitation 1.6.  The claim language, therefore, informs a person of skill in the art that the predefined grouping of zone players is defined in advance of receiving the "first indication."  That first indication in the '885 patent corresponds to the indication that was transmitted by the controller in claim 1 of the '966 patent, but the first indication limitation of the '885 patent contains the additional limitation that it is "from the network device that the zone player has been added by the user to a zone scene" (which is missing in the '966 patent claims).

Claim 1 of the '996 patent also includes an additional limitation that is not present in claim 1 of the '885 patent; specifically, the claimed network device (which corresponds to the "controller" in the '885 patent claim) must "caus[e] storage of the first zone scene." *See* '966 patent, Limitation 1.6.  Both experts, Dr. Schonfeld and Dr. Almeroth, agree this is an additional limitation that exists in the '966 patent claims, but not in the '885 patent claim.  Google's expert, Dr. Schonfeld, opines that "causing storage of the first zone scene" requires that the first zone scene is stored in a persistent manner (*i.e.*, not temporarily or ephemerally) .While placing information in "non-volatile" memory is one common way of achieving persistence, such persistence can be achieved using other techniques.  For instance, the zone players in Sonos's 2005 prior art system were designed to remain powered on such that they would continue to store the identity of the zone players indefinitely.  *See also* https://infohub.delltechnologies.com/l/powerprotect-appliance-data-invulnerability-architecture/persistent-ram-protection-1 ("Persistent RAM feature maintains power and control to

the system."). Thus, the group membership information in the Sonos 2005 prior art system was persistently stored for days, months, or (conceivably) even years. In his opening report on infringement, Dr. Almeroth agreed that the "causing storage" limitation requires "persistent" storage, but in his reply report he recognized the challenges this posed for his infringement read and provided a different opinion that causing storage does not require persistent storage.

## II. PARTY MODE MAPPING

The language of the claims can be best understood in the context of the Sonos 2005 prior art system. The Sonos 2005 prior art system included a party mode that the inventor of the patent described as a "zone scene" in his historical business record. Ex. 2 (5-9-23 Transcript of Jury Trial Proceedings) at 520:7-521:17.

The inventor of these patents, Mr. Lambourne, testified that the party mode was hard coded into the controller. Ex. 2 (5-9-23 Transcript of Jury Trial Proceedings) at 420:1-11. Thus, it is a predefined grouping of zone player because it was defined prior to a request to create the "party mode" zone scene. A user could then select the "party mode" button on the user interface of the Sonos 2005 prior art system's controller, which would create the zone group by linking the zone player together and saving it for displaying to the user on the screen. However, to answer the Court's other question, a "user" is not required nor claimed as part of the claim language of either patent, with the possible exception of the "indication" limitation of only the '885 patent. The controller in the Sonos 2005 prior art system would also transmit an indication to the zone player, which would result in the zone player storing membership information that identified the members in the group. As mentioned above, the zone players in Sonos's 2005 prior art system were designed to remain on and powered such that they would continue to store group membership information for days, months, or (conceivably) years, so long as the zone player was not turned off.

## III. GOOGLE'S POSITION IS CONSISTENT WITH ITS OPPOSITION TO MOTION IN LIMINE #2

During trial on May 10th, the Court set forth a hypothetical scenario wherein a "group" of "Zone Players 1 and 3" is created but is "not stored in a permanent fashion," and asked whether this would constitute "storage" under claim 1 of the '966 patent. Trial Tr. at 578:14-21. Google

contended "that would not be storage" of the group because it was only "temporary." *Id.* at 578:22-579:7. The Court then indicated that this position may have been inconsistent with Google's prior position in its response to Sonos's Motion *in Limine* #2. *Id.* at 579:8-9. We respectfully disagree.

Sonos's Motion *in Limine* #2 asked the Court to strike portions of Dr. Schonfeld's invalidity expert report where for his analysis of invalidity with respect to the '966 patent, he "cross-referenced his ***analysis*** of the prior art in the context of claim 1 of the '885 patent." Dkt. 594 at 3 (emphasis added). Google responded that cross-referencing is widely applied in expert reports, particularly where the ***evidence and analysis*** applicable to one claim is relevant to an overlapping or related claim. *E.g.*, Dkt. 592-5 at 1. The Court found that Google's cross-referencing was not improper and would instead permit Sonos to object at trial to any opinions that Dr. Schonfeld provided, on a question-by-question basis, that were outside the scope of his expert report. Ex. 3 (2023-05-03 Hearing Tr.) at 90:17-24.

As part of Google's response to Sonos's Motion *in Limine* #2, Google identified how Dr. Schonfeld cross-referenced his invalidity opinions for the '966 patent to the evidence and analysis that he provided earlier when analyzing the '885 patent. For the "storage" limitation of the '966 patent, Google provided an exemplary discussion of what Dr. Schonfeld identified in his report as meeting this requirement in view of page limitations. Further, Google's response could have been more precise in stating that "Dr. Schonfeld's cross-referenced opinions nevertheless explain the prior art zone scenes are <u>persistently</u> saved," rather than omitting the word persistent. Dkt. 592-5 at 6. Given the Court's questions during trial, and the focus on the distinction between "previously saved" zone scenes and "storage" of zone scenes, this is the more precise and accurate formulation.

Nonetheless, Dr. Schonfeld <u>did</u> provide his analysis and evidence describing numerous examples of his cited prior art references and systems storing in a <u>persistent</u> (*i.e.*, non-temporary) manner in his report that he cross-referenced to show further "storage" of the "previously saved" zone scene, making his cross-references accurate and well corroborated. For example, regarding the Sonos 2005 prior art system, Dr. Schonfeld opined in part that the system "maintained" a "collection of group members" as directed "by the group coordinator . . . ." Schonfeld Op. Rep. ¶ 356. Dr. Schonfeld cited numerous source code files in support of his opinions that this zone scene

membership information would be "maintained," (*i.e.*, stored in a persistent and non-temporary manner). *Id.* As another example, Dr. Schonfeld identified the Sonos Forums as disclosing this claim element, because those forum posts described users' suggestions to create virtual zones that "would avoid having to 'keep manually linking/unlinking multiple zones every time.'" *Id.* ¶ 364. In other words, storing persistently (non-temporarily) would allow a user to return at a later point in time to his or her zone scenes that had been previously created and saved. The Nourse patent further discloses "storage" because according to Dr. Schonfeld that system allowed speakers to "be assigned up to four group identifiers." *Id.* ¶ 369. The storage of *four* overlapping zone scenes strongly implies that the storage of those zone scenes would not merely be temporary but would instead be in a persistent manner (or would render any such storing obvious). As another example, the Crestron prior art system disclosed "a whole-house 'party' mode," which compared with the system's ability to allow users to "configure preset groups" of speakers. *Id.* ¶ 371. The "party mode" was linked to a dedicated "pushbutton," similar to the "party mode" zone scene in the prior art Sonos 2005 System, and accordingly it was stored in a persistent manner. *Id.* Finally, Dr. Schonfeld opined that the Yahama "DME system disclosed creating 'scenes' that could be named, **saved, and recalled**." *Id.* at 285. The storage of these zone scenes was made in a persistent manner because the zone scenes could be "named, saved, and recalled," without restriction on the amount of time between a user saving and then recalling the saved zone scene. These are just some of the opinions set forth in Dr. Schonfeld's expert report on claim limitation 1.6 of the '885 patent that were cross-referenced in his analysis of the "causing storage" limitation of claim 1 of the '966 patent.

| | | |
|---|---|---|
| 1 | Dated: May 10, 2023 | Respectfully submitted, |
| 2 | | */s/ Sean Pak* |
| 3 | | Attorneys for GOOGLE LLC |
| 4 | | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| 5 | | *Counsel for Google LLC* |

**CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure and Local Rule 5-1, I hereby certify that, on May 10, 2023, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system and email.

DATED: May 10, 2023

By: __/s/ Sean Pak__
　　　Sean Pak