CLEMENT SETH ROBERTS (SBN 209203)
croberts@orrick.com
BAS DE BLANK (SBN 191487)
basdeblank@orrick.com
ALYSSA CARIDIS (SBN 260103)
acaridis@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:   +1 415 773 5700
Facsimile:   +1 415 773 5759

SEAN M. SULLIVAN (*pro hac vice*)
sullivan@ls3ip.com
J. DAN SMITH (*pro hac vice*)
smith@ls3ip.com
MICHAEL P. BOYEA (*pro hac vice*)
boyea@ls3ip.com
COLE B. RICHTER (*pro hac vice*)
richter@ls3ip.com
LEE SULLIVAN SHEA & SMITH LLP
656 W Randolph St., Floor 5W
Chicago, IL 60661
Telephone:   +1 312 754 0002
Facsimile:   +1 312 754 0003

*Attorneys for Sonos, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA,

SAN FRANCISCO DIVISION

| | |
|---|---|
| SONOS, INC.,<br><br>   Plaintiff and Counter-Defendant,<br><br>   v.<br><br>GOOGLE LLC,<br><br>   Defendant and Counter-Claimant. | Case No. 3:20-cv-06754-WHA<br>Consolidated with Case No. 3:21-cv-07559-WHA<br><br>**SONOS, INC.'S PROFFER OF TESTIMONY OF ALAINA KWASIZUR**<br><br>Judge: Hon. William Alsup<br>Courtroom: 12, 19th Floor<br>Trial Date: May 8, 2023 |

## I. **INTRODUCTION**

Sonos submits this proffer of the testimony of Alaina Kwasizur, reflecting the direct examination testimony that Ms. Kwasizur would have offered, including the exhibits she would have authenticated and discussed, had the Court not precluded this testimony through its rulings at the pretrial conference, during trial, and at summary judgment.

Prior to trial, the Court ruled as a matter of law that the filing of a complaint could not trigger knowledge for purposes of finding willfulness or indirect infringement.  Case No. 3:21-cv-07559-WHA, Dkt. 156 at 7-8, 11.

At the final pretrial conference, the Court also ruled that Sonos could not put in evidence the communications Sonos sent Google putting it on notice that Google infringes the Sonos patents-in-suit without "opening the door" to Google discussing what happened to the four patents mentioned in that correspondence which are no longer in the case.  The Court further ruled that Sonos would be deemed to have opened the door to Google discussing these other patents even if it redacted them from the relevant communications.  5/3/23 Tr. at 104:11-14.  And the Court also ruled during trial that Sonos would be deemed to have opened the door to Google discussing the disposition of these other patents if Ms. Kwasizur *mentioned* that Sonos had provided Google with pre-suit notice – even if Sonos did not seek to introduce any document that mentioned those other patents.  5/8/23 Tr. at 175:6-177:21.  The Court noted, however, that if Sonos had a cease and desist letter that only mentioned the remaining patents in suit, it could introduce that without opening the door.  5/3/23 Tr. at 56:12-13, 58:25-59:2.  The Court also ruled that Sonos could not introduce any evidence from the parties' licensing negotiation to prove Google's state of mind (a permissible use of settlement communications under FRE 408) because those communications created unfair prejudice under FRE 403, 5/3/23 Tr. at 59:8-22, and ruled during trial that Sonos could not introduce any evidence (of any kind) that Google knew about other patents in the same family of the patents in suit to support its willful blindness theory.  5/8/23 Tr. at 180:18-25.

Taken together, we understand the Court's ruling to be that (i) the only proper way for

Sonos to give notice was to send cease and desist letters outside the settlement context (although it is not clear how or why they could be admitted without opening the door if, as the Court has found, a draft complaint mentioning other patents cannot be admitted without opening the door[1]) and (ii) that willful blindness cannot be supported by evidence that a defendant knew about the patent family at issue and knew that additional patents were being prosecuted under that family. Sonos respectfully believes that these rulings are in error and therefore submits this proffer as to the testimony it would have introduced if the Court had not so ruled.

II. **STATEMENT OF RELEVANT FACTS**

At the final pretrial conference, Sonos noted its plan to introduce evidence at trial regarding "the fact that Sonos has provided Google, in the course of their negotiations, with patent charts and assertions and knowledge of Google's infringement of more than a hundred patents." Sonos explained that this evidence "goes to a willful blindness theory that shows Google's pattern of knowing about Sonos' intellectual property, knowing about Google's infringement of that intellectual property, and disregarding it." 5/3/23 Tr. at 55:6-19. The Court ruled that Sonos would not be permitted to "put in hundreds of patents" as part of Sonos's willfulness or willful blindness case. *Id.* at 56:12-15. The Court instructed that Sonos was "not going to get off in some donnybrook about all these other patents and all these other products. No way." *Id.* at 56:21-22. The Court also ruled that Sonos would not be permitted to introduce evidence of the claim charts that Sonos provided Google in the context of negotiations. *Id.* at 58:17-24. The Court held that "anything that deals with these negotiations, pointing the finger at who walked away, there was a term sheet, that'll take two days to try, and it doesn't prove very much. So under Rule 403, all of that is excluded." *Id.* at 59:15-18. Sonos's counsel attempted to explain the relevance of this evidence, and the Court noted "I have made my ruling. All of this is out …." *Id.* at 59:3-22.

---

[1] Perhaps the Court is of the view that the only proper way to give notice is to send cease and desist letters each of which mention an individual patent so that, in the event some patents are later found invalid or withdrawn, a letter can be introduced that does not mention other patents without any redactions. But even if this is the case, it is not clear why that also would not open the door under the Court's reasoning and ruling regarding Ms. Kwasizur's oral testimony because the defendant could claim that given the letter the plaintiff has opened the door to the entire notice process.

The Court also ruled that Sonos would be deemed to have opened the door to Google discussing the disposition of these other patents if Ms. Kwasizur testified orally that Sonos had provided Google with pre-suit notice – even if Sonos did not seek to introduce any document that mentioned those other patents. 5/8/23 Tr. at 175:6-177:21. Similarly, the Court ruled that Sonos could not introduce any evidence (of any kind) that Google knew about other patents in the same family of the patents in suit to support its willful blindness theory. 5/8/23 Tr. at 180:18-25.

Previously, at the second stage of summary judgment, the Court granted Google's motion for summary judgment of no willful or indirect infringement of the '885 patent, holding that "Google has shown that there are no genuine disputes of material fact as to whether it committed willful or indirect infringement of the '885 patent." Dkt. 566 at 29-31. Prior to that ruling, Sonos planned to introduce much of the same evidence at trial regarding Google's knowledge of and/or willful blindness to its infringement of the '885 patent.

### III.   OVERVIEW OF PROFFER

As described in the attached Declaration of Alaina Kwasizur, Ms. Kwasizur would have testified regarding Sonos's repeated communications to Google regarding Google's infringement of Sonos's patent portfolio. As Ms. Kwasizur would have testified, Sonos put Google on notice of Google's infringement beginning in 2016, shortly after Google's initial competing products came onto the market. *See, e.g.*, Kwasizur Decl. ¶ 4. Sonos continued to notify Google of infringement during the period 2016 to 2020. Sonos provided Google with multiple detailed presentations and letters, as well as claim charts for hundreds of Sonos patents. *Id.* ¶¶ 4-29. This notice also included repeated communications to Google regarding Google's infringement of patents in the zone scene patent family—i.e., patents that have the same specification as both of the asserted patents in this case. *Id.* ¶¶ 7-15, 17-21, 25-29.

For example, in September 2016, Sonos sent Google an email summarizing an August 2016 meeting between the parties and attaching a document summarizing a number of Sonos patents that Sonos identified as being relevant to Google's competing products. *Id.* ¶ 5. That document identifies, as one of several patents relevant to Google, Sonos's Patent No. 8,483,853 ("the '853 patent"). *Id.* ¶ 8. The '853 patent is the first issued patent in the zone scene patent

family at issue in this case. *Id.* It is the ultimate parent patent to both patents in the trial and all share a substantively identical specification. *Id.*; *see also, e.g., id.* ¶¶ 9-10. Sonos highlighted the '853 patent to Google again in an October 2016 email. *Id.* ¶¶ 12-13. And at an October 25, 2016 in-person meeting between Sonos and Google, Sonos showed Google another example indicating to Google the relevance of the zone scene patent family—including U.S. Pat. No. 8,843,228 ("the '228 patent"), which is the child application to the '853 patent and the great grandparent to the '966 and '885 patents. *Id.* ¶¶ 12, 14-15. Sonos highlighted the '228 patent to Google *again* at a presentation that Sonos gave to Google in January 2018, with a detailed explanation of how Google's products practiced the '228 zone scene patent, including both the ability to create zone scenes and the invoking of those zone scenes using Google's app. *Id.* ¶ 17. Sonos also put Google on notice of its infringement of the '228 zone scene patent in February 2019, by providing a claim chart illustrating Google's infringement of this patent. *Id.* ¶¶ 18-19. Sonos highlighted Google's infringement of the '228 zone scene patent, as well as Sonos's zone scene patent family more broadly, to Google yet again in a June 2019 presentation and email. *Id.* ¶¶ 20-21.

In addition to putting Google on notice of infringement of multiple patents in the zone scene patent family, Sonos also put Google on notice that Sonos "keeps the patent families alive," which means that Sonos typically files additional child applications based on their existing patent applications. *Id.* ¶¶ 6-7, 11, 27. This statement, combined with Sonos's notice of Google's infringement of earlier patents in the same family, put Google on notice that additional patents in each family—including the zone scene patent family—would be filed and that Google needed to be aware of those patents in order to monitor for infringement.

Ms. Kwasizur would have testified that because Sonos has been identifying zone scene patents to Google since 2016, including providing detailed presentations on Sonos's zone scene patent family and Google's infringement thereof, and told Google that Sonos keeps patent families alive, Google was on notice to check and see when the Patent Office issued new patents to Sonos, particularly in the zone scene family. Thus, the only way Google would not have known about the '966 patent prior to Sonos's suit (or, with respect to the '885 patent, prior to issuance or to Sonos's provision of a claim chart in January 2021) was if Google willfully blinded

itself to these new patents. Had Google checked, it would have found the '966 patent as early as its issue date, which was November 5, 2019, and it would have found the '885 patent as early as its issue date, which was November 24, 2020. Instead, Google contends in this case that it did not become aware of the '966 patent until September 28, 2020. In light of Google's admitted knowledge of the '966 patent as of September 28, 2020, the only way Google would not have known about the '885 patent—which Google itself describes as the other side of the coin from the '966 patent—was if it purposefully didn't check for these new patents. Google also would have known that its own acts infringed Sonos's '966 and '885 patents, because the inventions claimed in those patents are described in the specification Google was aware of for years.

Sonos therefore maintains that Ms. Kwazisur's testimony is relevant to and probative of Google's knowledge of the '966 and '885 patents, Google's knowledge of infringement of those patents, or Google's willful blindness to both those patents and its infringement, all for purposes of establishing the "knowledge" element of willful and indirect infringement.

As a general matter, "[k]nowledge of infringement and specific intent may be inferred from circumstantial evidence." Dkt. 566 at 30 (citing *Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 824 F.3d 1344, 1347 (Fed. Cir. 2016)); *see also*, *e.g.*, *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 140 S. Ct. 768, 779 (2020) ("actual knowledge can be proved through 'inference from circumstantial evidence'" (citation omitted)). As the Supreme Court has repeatedly recognized, actual knowledge can also be established by showing willful blindness. *See id.*; *see also Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 142 S. Ct. 941, 948 (2022) ("We have recognized in civil cases that willful blindness may support a finding of actual knowledge."). So, at a minimum, the testimony described in this proffer is relevant to Sonos's claim that Google was willfully blind to its infringement of the asserted patents. *See Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011); *Corephotonics, Ltd. v. Apple, Inc.*, No. 17-CV-06457-LHK, 2018 WL 4772340, at *9 (N.D. Cal. Oct. 1, 2018).

The Federal Circuit has made clear that under the willful blindness totality of circumstances standard, an alleged infringer's knowledge of related patents is relevant to knowledge of infringement of the asserted patent in question. For example, the Federal Circuit

concluded that the ITC had "adequate evidence" to find willful blindness of infringement of the '344 patent where the alleged indirect infringer "was well-aware of competitor products, of Cross Match's prominence in the fingerprint scanner market, and of Cross Match's relevant '562 patent." *Suprema, Inc. v. Int'l Trade Comm'n*, 626 F. App'x 273, 280-81 (Fed. Cir. 2015).  The Court noted that "Suprema specifically studied the '562 patent, which incorporates by reference in four portions of its specification the patent application (U.S. Patent Ser. No. 10/345,420) that led to the '344 patent." *Id.* at 281.  The Court described the ITC's conclusion that "because the '562 and '344 patents have overlapping inventors and share the same assignee, Cross Match, 'a word search likely would have identified both patents.'" *Id.* (citation omitted).  And the Court noted that "had Suprema checked for the issuance of the '344 patent at the time it was reviewing the '562 patent, Suprema would have undoubtedly discovered that the '344 patent had issued." *Id.* Accordingly, "given the similarities in content, inventorship, and ownership between the '344 and '562 patents, and the facts that Suprema studied the '562 patent during its extensive market analysis, was aware of Cross Match's activities in the scanner field, and specifically targeted the market Cross Match serviced when developing its own products," the Court concluded that under the totality of the circumstances, the ITC had adequate evidence to find willful blindness.  *Id.*

Other courts have concluded under similar factual circumstances that "[a] reasonable jury could find that [the alleged infringer] had pre-suit knowledge of the '234 patent because it knew of the '226 and '325 patents, which are in the same patent family as the '234 patent, as well as other patent applications in the same family." *Kewazinga Corp. v. Microsoft Corp.*, 558 F. Supp. 3d 90, 119-20 (S.D.N.Y. 2021), *reconsideration denied*, No. 1:18-CV-4500-GHW, 2022 WL 4236301 (S.D.N.Y. Sept. 14, 2022).  In *Kewazinga*, as here, "the parties met and communicated about [the alleged infringer's] alleged infringement of those patents" in the same family.  *Id.*  And "[w]hile this evidence does not establish knowledge of the '234 patent itself, '[e]vidence of pre-suit knowledge of a patent can be circumstantial' and a reasonable factfinder could infer that [the alleged infringer] was aware of the '234 patent based on its actual knowledge of patents in the same family, including the '226 and '325 patents."  *Id.* (citation omitted); *see also, e.g., Sunoco Partners Mktg. & Terminals L.P. v. Powder Springs Logistics, LLC*, No. CV 17-1390-RGA, 2022

WL 3973479, at *7-8 (D. Del. Aug. 31, 2022) (denying defendants' motion for JMOL of no willful infringement for the '686 patent where defendant had knowledge of the '671 patent, which "has the same specification as and similar claims to the" '686 patent).

Sonos acknowledges that this Court, and some other district courts, "have held that *general* knowledge of a patent portfolio is insufficient to support willfulness." *Illumina, Inc. v. BGI Genomics Co.*, No. 19-CV-03770-WHO, 2022 WL 899421, at *13 (N.D. Cal. Mar. 27, 2022) (collecting cases) (emphasis added).  But "the Federal Circuit has cast significant doubt on that authority." *Id.* at *14 (quoting *SiOnyx, LLC v. Hamamatsu Photonics K.K.*, 330 F. Supp. 3d 574, 609-10 (D. Mass. 2018)).  In *WCM Industries*, the alleged infringer argued that "the district court erred in refusing to grant judgment as a matter of law of no willfulness because there [wa]s no evidence that [the infringer] had knowledge of the patents before the lawsuit began." *WCM Indus., Inc. v. IPS Corp.*, 721 F. App'x 959, 970 (Fed. Cir. 2018).  The Federal Circuit found these "arguments unpersuasive," noting that there is no *per se* rule requiring knowledge of a specific patent for willfulness, emphasizing that willfulness "must be inferred from all the circumstances." *Id.* (citation omitted).  Sonos maintains that *WCM*'s rejection of a rigid rule is controlling here, as other district courts have concluded. *See, e.g.*, *Illumina*, 2022 WL 899421, at *14 ("Accordingly, knowledge of the specific patents is not required to support a finding of willful infringement.  Instead, 'the patentee must show the accused infringer had a specific intent to infringe at the time of the challenged conduct' based on the totality of the circumstances." (citation omitted)).  Because the Court has ruled against Sonos on this point, Sonos submits this proffer of the testimony that Alaina Kwasizur would have presented had she been permitted to do so.

### IV.     CONCLUSION

As discussed above, Sonos submits this proffer of the testimony of Alaina Kwasizur.

Dated: May 10, 2023

ORRICK HERRINGTON & SUTCLIFFE LLP
*and*
LEE SULLIVAN SHEA & SMITH LLP

By: */s/ Clement S. Roberts*
    Clement Seth Roberts

*Attorneys for Sonos, Inc.*