1    QUINN EMANUEL URQUHART & SULLIVAN,
     LLP
2      Sean Pak (Bar No. 219032)
       seanpak@quinnemanuel.com
3      Melissa Baily (Bar No. 237649)
       melissabaily@quinnemanuel.com
4      James Judah (Bar No. 257112)
       jamesjudah@quinnemanuel.com
5      Lindsay Cooper (Bar No. 287125)
       lindsaycooper@quinnemanuel.com
6      Iman Lordgooei (Bar No. 251320)
       imanlordgooei@quinnemanuel.com
7    50 California Street, 22nd Floor
     San Francisco, California 94111-4788
8    Telephone:     (415) 875-6600
     Facsimile:     (415) 875-6700
9
       Marc Kaplan (*pro hac vice*)
10     marckaplan@quinnemanuel.com
     191 N. Wacker Drive, Ste 2700
11   Chicago, Illinois 60606
     Telephone:     (312) 705-7400
12   Facsimile:     (312) 705-7401

13   *Attorneys for GOOGLE LLC*

14

15                    UNITED STATES DISTRICT COURT

16                  NORTHERN DISTRICT OF CALIFORNIA

17                      SAN FRANCISCO DIVISION

18   SONOS, INC.,                          Case No. 3:20-cv-06754-WHA
                                           Consolidated with Case No. 3:21-cv-07559-
19              Plaintiff,                 WHA

20         vs.                             **GOOGLE LLC'S RESPONSE TO THE
                                           COURT'S REQUEST FOR BRIEFING
21   GOOGLE LLC,                           ON WRITTEN DESCRIPTION
                                           SUPPORT FOR THE '885 AND '966
22              Defendant.                 PATENTS**

23

24

25

26

27

28

Google LLC ("Google") provides this response to the Court's request for briefing regarding the question of adequate written description support in the '885 and '966 patents for "overlapping zone scenes." Ex. 1 (May 10, 2023 Tr.) at 660:24-661:5, 661:7-10.[1]  Because there is no such written description support for this claim requirement, the Court should vacate its prior summary judgment order and permit Google to try its written description defense in its entirety to the jury.

## I.       The Summary Judgment Order Should Be Vacated

During the patent showdown, Google argued that "the specification never discloses that a zone player may be added to two zone scenes at the same time." Dkt. 247-3 at 20.  Sonos responded that the specification does disclose overlapping groups because "when a user is selecting which 'zone players to add during setup of each 'zone scene,' the user is presented with 'ALL the zones in the system, ***including the zones that are already grouped*.'"  Dkt. 273-4 at 9 (emphasis and all caps in original). Sonos quoted from the '885 Patent at 10:12-19 for this argument.  Because of the unique posture of the summary judgment briefing, where Google raised written description as a defense to infringement in its rebuttal, Google did not have an opportunity to respond to this argument in writing.  The Court's summary judgment order then relied on Sonos's representation about this portion of the specification to find that the patent specification disclosed overlapping speaker groups, quoting the exact language that Sonos identified:

> The specification clarifies that "[t]he list of zones in the user interface" shown in Figure 5B "includes ALL the zones in the system, *including the zones that are already grouped*"

Dkt. 309 at 15.  The problem is that this language did not appear in the original non-provisional patent filing in the chain of continuations on September 11, 2007, and therefore it is legally irrelevant.  In fact, Sonos did not add this disclosure to either specification of the patents-in-suit until ***August 23, 2019***:

---

[1]   All cited exhibits are attached to the contemporaneously filed Declaration of Marc Kaplan.

- Please amend current paragraph [0060] of the specification as indicated below, which will become paragraph [0062] to reflect the new paragraphs [0028] and [0029] above.

[0062]     FIG. 5B shows another user interface 520 to allow a user to form a scene. The user interface 520 that may be displayed on a controller or a computing device, lists available zones in a system. <u>The list of zones in the user interface 520 includes ALL the zones in the system, including the zones that are already grouped.</u> A checkbox is provide next to each of the zones so that a user may check in the zones to be associated with the scene.                                                             [2]

Clearly, Sonos recognized that the disclosure of overlapping zone scenes was absent in the original non-provisional specification and attempted to patch up the disclosure before asserting these patents against Google just a year later.  But amending the specification in ***2019*** cannot meet the written description support that was required of the specification in ***2007*** for the original non-provisional application.  *See, e.g.*, *Agilent Techs., Inc. v. Affymetrix, Inc.*, 567 F.3d 1366, 1379 (Fed. Cir. 2009) ("The written description doctrine prohibits new matter from entering into claim amendments, particularly during the continuation process."); *In re Lew*, 257 F. App'x 281, 284 (Fed. Cir. 2007) ("It is well established that 'when the applicant adds a claim or otherwise amends his specification after the original filing date . . . the new claims or other added material must find support in the original specification.'") (cleaned up).

Sonos may argue that this one-sentence disclosure was present in an appendix to the 2006 *provisional* application, and therefore choosing not to add it to the non-provisional application until 2019 is harmless—but that would be highly misleading.  What the provisional application discloses is being able to create ***dynamic zone groups*** (which Sonos contends is not the claimed zone scenes) by selecting multiple speakers at a time to add to the group.  Ex. 3 (Provisional App'x A) at 17.  As the provisional application explains, "the ***current*** Link and Drop Zones features allow the user to link and drop Zones one at a time. This feature would allow the user to link and drop ***multiple zones*** in one screen." *Id.* (emphasis added).  This is clearly illustrated by the accompanying images from the provisional

---

[2]  Ex. 2 (TX0004) at 808.

application (below on the left), which shows that a user can expand or shrink an existing zone group using a <u>controller user interface</u>—*not* a zone scene.  There is no mention in this figure or the accompanying text that even suggests that multiple overlapping zone scenes can be created using the user interface depicted.  Indeed, Appendix A to the provisional application ***explicitly teaches against*** using the <u>controller user interface</u> for setting up zone scenes: "it is not expected that the Zone Scenes should be set up using the Handheld Controller."  *Id.* at 9.



**Provisional application (annotated)**          **Patent Figure in Amended Specification**

Accordingly, the provisional application was not describing any zone scenes whatsoever.  However, Sonos's decision to modify the image by omitting the top portion and replacing the textual description of zone groups with zone scenes in the amended specification may have misled the reader to believe that it ***was*** discussing the creation of zone scenes.  This was exacerbated by Sonos inserting the sentence describing ***zone groups*** from the provisional application into a paragraph exclusively discussing the creation of ***zone scenes*** in the amended specification.

> FIG. 5B shows another user interface **520** to allow a user to form a scene. The user interface **520** that may be displayed on a controller or a computing device, lists available zones in a system. <u>The list of zones in the user</u>

1

interface **520** <u>includes ALL the zones in the system, including the zones that
are already grouped.</u> A checkbox is provide [*sic*] next to each of the zones so
that a user may check in the zones to be associated with the scene.

2

3

'885 Pat. at 10:12-19.

4

Further confounding the issues, Sonos's provisional appendices differ in critical ways from the

5

underlying business records that were used to create them.  For example, while Appendix B to the

6

provisional application is ostensibly based on the "Sonos UI Specification" (TX6544), it was actually

7

modified in important and potentially misleading ways before submission to the Patent Office.  The

8

statement that "'***Party Mode' that currently ships with the product is one example of a Zone Scene***"

9

was removed, as were other references to "Party Mode."  Likewise, the statement that the "Zone Scene

10

feature" was "***similar to the current Party Mode setting that is available***" was removed from the "Sonos

11

UI Specification: Zone Scenes" document (TX6545) before it was submitted as Appendix B in the

12

Provisional Application.  These irregularities provide ample justification to treat Sonos's reliance on the

13

provisional application for written description support with skepticism, since critical disclosures

14

describing a pre-existing example of a zone scene in the Sonos 2005 prior art system were omitted from

15

the provisional application.

16

Turning back to the Court's patent showdown order, the Court relied on "the specification's

17

disclosure that '*various scenes* may be saved in any of the members in a group.'" Dkt. 309 at 15.[3]  This

18

anemic disclosure cannot save the patents either.  This disclosure only indicates that *any* of the members

19

of the speaker system can store created zone scenes.  For example, a speaker system with speaker groups

20

A+B and C+D.  Speakers A, B, C, or D could *each* store the fact that these two groups have been created.

21

But this does not indicate in any way that an *overlapping* zone scene is created.  That would only be true

22

if the specification recited "various *overlapping* scenes may be saved in any of the members of the

23

24

25

26

---

27

[3]   Although this statement did not appear in the provisional application, it did appear in the
September 2007 non-provisional application, and therefore it is at least legally relevant to written
description, although the lack of disclosure in the provisional proves that Sonos is ***not*** entitled to a 2006
priority date—subjecting the patent application to yet another year's worth of prior art.

28

1   group." It does not. Furthermore, other excerpts cited by Sonos in the patent showdown briefing were

2   not cited by the Court and are not relevant.

## II.     The Disclosure in the Specification is Inadequate

4          Even if Sonos were able to stretch the examples of zone scenes in the amended patent

5   specification to somehow cobble together an "overlapping" group, that disclosure is so technically

6   lacking that it cannot meet the written description requirement. "[D]rafters of patent applications

7   know that they must describe their inventions as well as disclose how to enable their use . . . The

8   essence of the written description requirement is that a patent applicant, as part of the bargain with

9   the public, must describe his or her invention so that the public will know what it is and that he or

10  she has truly made the claimed invention." *AbbVie Deutschland GmbH & Co., KG v. Janssen*

11  *Biotech, Inc.*, 759 F.3d 1285, 1298 (Fed. Cir. 2014). "The written description requirement prohibits

12  inventors from preempting the future before it has arrived," "yet here the inventor left the actual

13  inventive work . . . for subsequent inventors to complete." *CreAgri, Inc. v. Pinnaclife, Inc.*, No. 11-

14  CV-6635-LHK, 2013 WL 6673676, at *16 (N.D. Cal. Dec. 18, 2013), *aff'd*, 579 F. App'x 1003

15  (Fed. Cir. 2014) (cleaned up).

16         Here, there is no evidence that the inventor "truly made the claimed invention." *See AbbVie*,

17  759 F.3d at 1298. Indeed, Sonos's expert Dr. Almeroth testified "there wasn't the hardware

18  capability needed for implementing these patents until S2 came out" in June 2020. Ex. 4 (May 11

19  Trial Tr.) at 915:12-13. He continued that "[u]ntil S2 came out, there wasn't the hardware and the

20  memory to support the storage of these zone scenes." *Id.* at 915:20-22; *see also id.* at 916:13-14

21  ("It was a hardware issue that Sonos had to deal with, specifically to what would go into their

22  products"); *id.* at 925:3-5 ("that kind of capability as part of Sonos's hardware development effort

23  didn't exist until S2"). Mr. Lambourne is not a software engineer and he has never written source

24  code for any product. Ex. 5 (May 9, 2023 Trial Tr.) at 530:2-8. He is instead an industrial designer,

25  *id.* 406:9-25, and accordingly he was not qualified to provide adequate written description support

26  describing how an engineer of ordinary skill in the art would actually implement the claimed

27  functionality.

28

1

2
Dated:  May 11, 2023

Respectfully submitted,

3
*/s/ Sean Pak*

Attorneys for GOOGLE LLC

4

5
QUINN EMANUEL URQUHART &
SULLIVAN, LLP

6
*Counsel for Google LLC*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**ATTESTATION**

2          Pursuant to the Federal Rules of Civil Procedure and Local Rule 5-1, I hereby certify that,

3  on May 11, 2023, all counsel of record who have appeared in this case are being served with a copy

4  of the foregoing via the Court's CM/ECF system and email.

5

6   DATED:  May 11, 2023

7                                                    By:   _/s/ Sean Pak_____

8                                                          Sean Pak

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28