QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Sean Pak (Bar No. 219032)
  seanpak@quinnemanuel.com
  Melissa Baily (Bar No. 237649)
  melissabaily@quinnemanuel.com
  James Judah (Bar No. 257112)
  jamesjudah@quinnemanuel.com
  Lindsay Cooper (Bar No. 287125)
  lindsaycooper@quinnemanuel.com
  Iman Lordgooei (Bar No. 251320)
  imanlordgooei@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

  Marc Kaplan *(pro hac vice)*
  marckaplan@quinnemanuel.com
191 N. Wacker Drive, Ste 2700
Chicago, Illinois 60606
Telephone:     (312) 705-7400
Facsimile:     (312) 705-7401

*Attorneys for GOOGLE LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SONOS, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 3:20-cv-06754-WHA<br>Consolidated with Case No. 3:21-cv-07559-WHA<br><br>**GOOGLE LLC'S RESPONSE TO SONOS'S REQUEST RE: NO LONGER ASSERTED PATENTS (DKT. 699) AND PROFFER OF TESTIMONY OF ALAINA KWASIZUR (DKT. 715)** |

Sonos is alleging willful and indirect infringement for the '966 patent in this case. Both claims require Sonos to prove that Google had knowledge of the patent and knowledge of infringement. Case No. 3:21-cv-07559-WHA, Dkt. 156. The Court has already ruled as a matter of law that the filing of a complaint alone does not trigger post-suit knowledge. *Id.*

This is not a typical willfulness or indirect infringement case. Sonos plans to introduce Google's declaratory judgment complaint in an effort to prove the knowledge and intent elements for willful and indirect infringement. Dkt. 699 at 1. The Court previously ruled that Sonos's reliance on either Sonos's draft complaint or Google's declaratory judgment complaint "open[s] the door" to Google completing the picture for the jury and explaining that Sonos no longer has infringement claims for the majority of those patents based on rulings of invalidity and/or non-infringement (as well as Sonos's own withdrawal of its infringement claims). Pretrial Conference Transcript at 104:4-24; Trial Tr. at 177:16-177:21. The Court should not alter that ruling for the following reasons.

### I. Introduction Of Google's Declaratory Judgment Complaint Opens The Door To Evidence Regarding The Disposition Of The Four Previously-Asserted Patents

If Sonos admits Google's declaratory judgment complaint, Google should be permitted to elicit testimony from Ms. Kwasizur regarding the fate of four of the five patents mentioned therein.

*First*, if Google is not permitted to tell the jury the full story regarding the disposition of Sonos's four other patents, then the jury will be left wondering whether Google infringes them. That would be confusing and unfair.

*Second*, the full story regarding the disposition of Sonos's four other patents is directly probative of Google's good-faith belief in non-infringement, and thus Google's **lack** of specific intent for infringement. *See, e.g., Samsung Elecs. Co. v. Quanta Comp., Inc.*, 2006 WL 2850028, at *2-3 (N.D. Cal. Oct. 4, 2006) (denying motion to prevent defendant "from referencing the five patent infringement claims previously asserted by [patent owner] in this action that were voluntarily dismissed by stipulation of the parties" because "the withdrawn patents may be relevant to [patent owner's] claim for willfulness"); *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 2012 WL 5463669, at *1 (W.D. Pa. Nov. 7, 2012) ("[T]he Court agrees with [defendant] that evidence of dropped or changed claims or

products shows the reasonableness of its infringement 'defenses'."). Google has not been found to infringe any one of those other patents. Specifically, Google was expressly found not to infringe the '615 patent. Sonos withdrew the '206 patent (which is another Zone Scenes patent) before Google could make its substantive non-infringement arguments because the Texas Court found that the patent was invalid as indefinite. And Google did not have the opportunity to litigate its non-infringement positions with respect to the '033 and '460 patents, because the first was found to be invalid and the other was voluntarily withdrawn by Sonos just months into the litigation. If the declaratory judgment complaint is admitted, the jury should be permitted to consider this evidence in determining whether Google had the requisite intent for willful and indirect infringement. The jury's evaluation of Google's specific intent should be based on a totality of the circumstances. *AOS Holding Company v. Bradford White Corp.*, 2021 WL 5411103, *34 (D. Del. Mar. 31, 2021) ("even post-*Halo,* willfulness looks to 'totality of the circumstances presented in the case'"); (quoting *WCM Indus, Inc. v. IPS Corp.*, 721 Fed. App'x. 959, 970 (Fed. Cir. 2018)); *Kahr v. Cole*, 2016 WL 8139020, at *2 (E.D. Wis. July 28, 2016) (observing that the "factual determination" of willful infringement "should be 'made after consideration of the totality of the circumstances'" (citing *Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1530 (Fed. Cir. 1993). The disposition of Sonos's four patents is relevant to that inquiry.

In the "Request" it filed last night (Dkt. 699), Sonos proposes two "solutions" to prevent Google from telling the jury about the no-longer asserted patents. Neither is workable.

    **A.**   *The Court Should Not Instruct The Jury That A Declaratory Relief Claim For Non-Infringement Is Conclusive Evidence That Google Had Specific Intent To Infringe*

Sonos first suggests that the Court simply instruct the jury that Google had knowledge of infringement as of September 28, 2020, in which case Sonos's position is that "none of this evidence needs to come in." Dkt. 699 at 3-4. It would be extremely prejudicial for the Court to give such an instruction, particularly given the lack of other pre-suit knowledge. Although Google had notice of the '966 patent as of September 28, 2020, Google did not have knowledge of *infringement* as of that date. Google's declaratory judgment complaint demonstrates that it had a good-faith belief that it did *not* infringe. There is no logical basis to presume that Google's allegation of non-infringement

is factual support for the exact opposite proposition. *Apple Inc. v. Princeps Interface Technologies LLC*, 2020 WL 1478350, at *4 (N.D. Cal. 2020) ("Apple, in filing an action seeking a declaratory judgment of noninfringement, arguably asserts a 'reasonable, good-faith belief in noninfringement,' which 'can negate the specific intent required for induced infringement.'").[1]

The Court has expressed skepticism that Google could have studied the asserted patents and put together a declaratory judgment complaint with an adequate Rule 11 basis in one day. But when Sonos sent Google its draft complaint, the parties had already been engaged in months of intense parallel litigation before the International Trade Commission. And although Google had no notice of the '966 patent prior to September 28, 2020, the parties' ongoing ITC case involved the same products accused here, meaning Google and its counsel were already familiar with their design and operation. Google was thus able to identify quickly at least one element per independent claim that it had a reasonable and good faith belief that it did not practice. *Gen. Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 981 (Fed. Cir. 1997) ("Literal infringement requires that every limitation of the patent claim be found in the accused infringing device.").[2]

Furthermore, Sonos has never argued that Google lacked a Rule 11 basis for its declaratory judgment complaint. Sonos did not send Google a Rule 11 letter. It also did not move for Rule 11 sanctions. To the contrary, Sonos's case depends on Google *having* a Rule 11 basis because Sonos contends that the declaratory judgment complaint is circumstantial evidence that Google had pre-

---

[1] Such a finding could turn every declaratory judgment case into a willful and indirect infringement case, and chill parties from filing declaratory judgment claims for fear of providing the necessary predicate for such claims. Addressing this argument at the motion to dismiss stage, the Court held that "[i]nfringers should not be allowed to immunize themselves from ongoing willfulness by forcing patent owners into litigation." Dkt. 156. But filing a declaratory judgment complaint would not immunize a defendant from willful infringement allegations in every case. If there are plausible allegations to support willfulness or knowledge, a plaintiff can raise them. The question is whether a patentee can use a declaratory judgment claim as a weapon, turning a denial of infringement into factual support that supports knowledge of infringement. Google respectfully submits that such an instruction would be a novel change in law.

[2] The Court has suggested that it would take weeks to assess the validity of multiple patents. Google's complaint only asserted declaratory judgment claims of non-infringement, not invalidity. Dkt. 1.

suit knowledge of the '966 patent.  Dkt. 699 at 3 ("[U]nder Rule 11 Google also **must** have had knowledge of how its accused products map onto the claim limitations to file its declaratory judgment complaint") (emphasis in original).

### B. *Sonos's Offer To Withdraw Its Willfulness Claim Does Not Render The Disposition Of The Four Previously-Asserted Patents Irrelevant*

Sonos suggests that it would drop its claim that infringement of the '966 patent is willful because "the disposition of the four no longer-asserted patents is relevant, if at all, exclusively to willfulness." Dkt. 699 at 3.  Sonos's proposal would not, however, render irrelevant all evidence of how those declaratory judgment claims were resolved.  Rebutting Sonos's allegations of willful infringement is one reason why the four other no longer-asserted patents are relevant, but it is not the only reason.  As the Court previously held, the "knowledge of the patent" and "knowledge of infringement" elements are the same for willful infringement, induced infringement, and contributory infringement.  *See Sonos, Inc. v. Google LLC*, 591 F. Supp. 3d 638, 647 (N.D. Cal. 2022), *leave to appeal denied,* No. 2022-134, 2022 WL 1486359 (Fed. Cir. May 11, 2022) ("Like willful infringement, both forms of indirect infringement—induced and contributory infringement—require knowledge of the patent and knowledge of infringement. Everything discussed above for willfulness applies here."); *see also Plantronics, Inc. v. Aliph, Inc.*, 2014 WL 789115, at *4 (N.D. Cal. Feb. 26, 2014) (Alsup, J.) ("This order also notes that [patent owner] has asserted indirect infringement and willfulness wherein intent play a role.  In that regard, [patent owner] has opened the door to evidence of intent and it would be unfair to cripple [alleged infringer's] defense.  [Patent owner] cannot have it both ways.").  The four no longer-asserted patents are thus relevant to indirect infringement for the same reasons they are relevant to willfulness.  *See* Pretrial Conference Transcript at 104:4-24; 5/18 Trial Transcript at 177:16-179:24; *see also Apple*, 2020 WL 1478350, at *4 (N.D. Cal. 2020) (finding that a declaratory judgment of non-infringement can "negate the specific intent required for induced infringement" because it demonstrates a "reasonable, good-faith belief in noninfringement").

*Commil USA, LLC v. Cisco Sys., Inc.,* 575 U.S. 632 (2015) is inapposite.  The issue here is one of completeness; the jury should not be left to wonder whether Google was found to infringe

the other patents referenced in the complaint. To the contrary, the outcomes related to the other four patents demonstrate that none of Google's non-infringement positions as set forth in the declaratory relief complaint for those patents has been rejected. And this is evidence that the jury should be permitted to consider when determining Google's intent.

Accordingly, the facts of *Commil* are distinguishable. In that case, unlike here, the accused infringer conceded that it had knowledge of the patent and that infringement was occurring. 575 U.S. at 642. The accused infringer nevertheless argued that it could not be liable for indirect infringement since it had a good-faith belief that the patent was invalid. *Id.* The Supreme Court rejected this argument, holding that a belief regarding invalidity could not negate pre-existing scienter. *Id.* at 642-46. Unlike in *Commil*, Google has not conceded that it had knowledge of the patent before Ms. Kwasizur's draft complaint, and Google does not concede that infringement is occurring. Google is also not relying on a belief regarding invalidity to negate scienter.

### C. *Sonos's Curative Instruction Is Inaccurate*

If the Court does not adopt either of Sonos's proposed "solutions," Sonos asks the Court to provide a curative instruction to "help mitigate the risk of juror confusion about the significance of the other patents." Dkt. 699 at 5. As a preliminary matter it is unclear why Sonos is seeking a curative instruction. Sonos is the party opening the door to the evidence in question.

Moreover, Sonos's proposed instruction is incorrect because it tells the jury that they can only consider the four no longer-asserted patents for willfulness. But as explained above, the disposition of these patents is relevant to Google's knowledge for the purposes of indirect infringement as well.

### D. *Sonos's Designations of Mr. Kowalski's Testimony Inappropriately Attempt to Draw an Adverse Inference*

Sonos has also designated deposition testimony from Mr. Kowalski in an effort to prove the knowledge element for willful and indirect infringement. The designated testimony includes privilege invocations on the record, for example with respect to the following questions:

> Q. Do you understand that there is a Rule 11 obligation to certify that factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support a er a reasonable opportunity for further investigation or discovery?

> MR. NARDINELLI: If you know the answer to that, Tim, you can answer yes or no.
>
> THE WITNESS: I'm generally aware of Rule 11. I am not a litigator, so it doesn't come up in my daily practice.
>
> . . .
>
> Q. Google states in this pleading that it does not infringe the '966 patent. Do you know if that contention had evidentiary support at the time that this was filed?
>
> MR. NARDINELLI: Instruct you not to answer on grounds of privilege.
>
> THE WITNESS: Confirming I'm going to follow counsel's advice.
>
> BY MR. KOLKER: Q. Prior to filing this declaratory judgment complaint, did Google have an opportunity to confirm its contention that it did not have -- the '966 patent had evidentiary support?
>
> MR. NARDINELLI: Instruct you not to answer on grounds of privilege.
>
> THE WITNESS: Confirming I'm going to follow counsel's advice.

See Ex. 1 (Kowalski Designations) at 65:09-67:01; 92:02-93:16; 94:04-95:21.[3]

Google does not object to Sonos's introduction of the declaratory relief complaint through Mr. Kowalski. Once admitted, Sonos can use the declaratory relief complaint to support its arguments. But Google's counsel's privilege invocations would be unnecessarily cumulative and prejudicial. The Federal Circuit has held that it is not appropriate for the trier of fact to draw an adverse inference of willful infringement from a privilege invocation. *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1344 (Fed. Cir. 2004) ("When the attorney-client privilege and/or work-product privilege is invoked by a defendant in an infringement suit, is it appropriate for the trier of fact to draw an adverse inference with respect to willful infringement? The answer is 'no.'").

---

[3] Earlier today, the Court suggested that Google's privilege invocation at 92:02-92:09 was improper. Ex. 1 ("Q. Do you know when Google formed a basis as to its belief that it did not infringe the '966 patent? MR. NARDINELLI: Object to form. And also, Tim, I will instruct you not to answer that question on grounds of privilege."). But Mr. Kowalski was not a 30(b)(6) designee. Had Sonos's counsel asked him when he formed a basis regarding his personal belief, that would have been fair. But any information regarding when Google formed a basis for its belief would have been based on privileged information.

## II. The Court Should Not Revisit Its Prior Evidentiary Rulings In Light Of Sonos's Proffer Of Testimony From Alaina Kwasizur

Sonos has also submitted a Proffer of testimony that "reflect[s] the direct examination testimony that Ms. Kwasizur would have offered . . . had the Court not precluded this testimony through its rulings at the pretrial conference, during trial, and at summary judgment." Dkt. 705 at 1. Sonos's Proffer mischaracterizes both the Court's rulings and the factual record.

The Court's evidentiary rulings regarding notice, knowledge, and intent fall into two main categories. *First*, there is evidence that the Court permitted, which includes any notice that Sonos provided of the '966 patent. *Second*, there is evidence that the Court excluded, namely the parties' pre-suit licensing discussions. Contrary to Sonos's characterizations, these rulings were not based on any application of categorical or per se rules. Rather, the Court correctly applied Rule 402 and 403 by conducting a case-specific balancing of the probative value of the evidence compared to the risk of unfair prejudice, jury confusion, and waste of trial time.

### A. *The Parties' Pre-Suit Licensing Discussions Are Irrelevant to Willful or Indirect Infringement*

From 2016 through early 2019, Google and Sonos engaged in communications, that both sides designated as protected under FRE 408, related to a potential licensing agreement. Importantly, Sonos never identified the '966 patent in any of those licensing discussions, and those discussions ended before the '966 patent issued in November 2019. Sonos ignores that fact in its Proffer, and tries to imply that Sonos's September 28, 2020 email attaching the "courtesy copy" of the draft complaint was part of those licensing discussions.[4] It was not. Rather, during the licensing negotiations Sonos sent Google several presentations identifying specific Sonos patents that Sonos alleged were infringed by Google, and provided over 100 claim charts. Google in turn provided its own presentations that identified, *inter alia*, why Google did not infringe Sonos's patents (including, for example, the previously asserted '206 patent, as well as and U.S. Patent No. 8,843,228 – both of

---

[4] *See*, *e.g.*, Proffer at 3 ("As Ms. Kwasizur would have testified, Sonos put Google on notice of Google's infringement beginning in 2016, shortly after Google's initial competing products came onto the market. See, e.g., Kwasizur Decl. ¶ 4. Sonos continued to notify Google of infringement during the period 2016 to 2020.").

which are family members of the '966 patent). See Ex. 2 (TX6614) (███████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
During the course of those licensing discussions, the parties ██████████████
████████████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████. Dkt. 677-6. Of the more than 100 patents that Sonos identified during the multi-year licensing negotiations, Sonos selected three of them as worthy of inclusion in the draft complaint that Ms. Kwasizur sent on September 28, 2020 – the '206 Zone Scenes patent, the '615 Direct Control patent, and the '460 patent. All three of those patents have either been invalidated (the '615 patent and '206 patent), determined to not be infringed by Google (the '615 patent), or withdrawn by Sonos (the '460 patent).

> **B.** *The Court's Evidentiary Ruling Excluding the Parties' Licensing Discussions Was Correct and Should Stand*

As the Court explained at the Pretrial Conference, introducing evidence regarding these protracted and complicated licensing negotiations has little to no relevance to any issue in the case,[5] and would require exactly the sort of confusing, prejudicial, and time-consuming "mini-trial" that Rule 403 is designed to avoid. See, e.g., Pretrial Conference Transcript at 58:22-24 ("THE COURT: No, I don't like that argument because then you get -- you open a whole can of worms with the settlement negotiations."); id. at 59:11-18 ("THE COURT: I think none of this should come into evidence. None of it from -- on willfulness, and none of it over on your side. That's my view. End of story. … But anything that deals with these negotiations, pointing the finger at who walked away, there was a term sheet, that'll take two days to try, and it doesn't prove very much. So under Rule 403, all of that is excluded."). The order to exclude this evidence under Rule 403 is correct, and well within the discretion of the Court. See, e.g., *Tennison v. Circus Circus Enterprises, Inc.*, 244 F.3d 684, 690 (9th Cir. 2001) ("Although the testimony is probative for this purpose, the trial court

---

[5] While Google disputes that the licensing discussions are relevant at all to the issue of "willful blindness" for purposes of either willfulness or indirect infringement, Google contends that the parties' term sheet is probative of certain damages issues.

enjoys considerable discretion in determining whether to exclude evidence under Rule 403 for unfair prejudice. Here, admitting Doss' and Bilyeu's testimony might have resulted in a 'mini trial,' considering that much of their testimony was disputed by Defendants. The trial court could reasonably conclude this would be an inefficient allocation of trial time.") (internal citation omitted).

Sonos is simply wrong about the substance and basis for the Court's ruling. The Court did not rule "that willful blindness cannot be supported by evidence that a defendant knew about the patent family at issue and knew that additional patents were being prosecuted under that family." Dkt. 699 at 2. Nor did the Court rule "that Sonos could not introduce any evidence (of any kind) that Google knew about other patents in the same family in suit to support its willful blindness theory." *Id.* at 3. Rather, the Court ruled that the specific evidence that Sonos sought to introduce at this trial in support of its willful blindness theory for the '966 patent – related to complicated licensing negotiations that ended before the '966 patent even existed – should be excluded under Rule 403. If Sonos had other evidence to support its willful blindness theory, it could rely on it. Sonos does not.

### C. The Court's Evidentiary Ruling Permitting Sonos's Notice of Draft Complaint and Google's Declaratory Judgment Complaint

Sonos also mischaracterizes the Court's rulings regarding the evidence that Sonos may introduce at trial to support its willfulness and indirect infringement allegations. The Court did not rule that "the only proper way for Sonos to give notice was to send cease and desist letters outside the settlement context[.]" Dkt. 699 at 1. Rather, the Court determined that based on the specific circumstances in this case, if Sonos chose to rely on Ms. Kwasizur's September 28, 2020 email, the draft complaint or Google's declaratory judgment complaint to establish pre-suit notice of the '966 patent, then that would open the door to the other patents asserted in those documents as a matter of fairness and completeness. *See* Pretrial Conference Transcript at 104:13-24; Trial Transcript at 177:16-22 ("Then that would open the door to what content of the notice was … you are trying to sanitize it in a way that is grossly unfair to Google."). If Sonos had other evidence of pre-suit notice (or of knowledge or intent more generally), it could rely on that. Sonos does not. There is no rule, and Sonos does not cite to any, that requires that Sonos be permitted to selectively introduce

willfulness or indirect infringement evidence in a way that avoids any facts or context that it believes is unhelpful to its case.

    **D.**    ***The Testimony and Exhibits In Sonos's Proffer Are Not Relevant to Any Issues or Notice, Knowledge, or Intent.***

Allegations of general knowledge of a patent family, or a patent portfolio, are insufficient to allege specific knowledge of a particular patent." *MasterObjects, Inc. v. Amazon.com, Inc.*, No. C 20-08103 WHA, 2021 WL 4685306, at *3 (N.D. Cal. Oct. 7, 2021). In *MasterObjects*, for example, this Court rejected the argument that pre-suit knowledge of the asserted patent could be inferred from allegations that the plaintiff previously sued the defendant for infringing a patent in the same patent family, especially in light of the fact that the Patent Office did not issue the asserted patent until after the conclusion of that prior lawsuit. *Id*. ("Knowledge of a patent cannot be plausibly alleged when the triggering event occurred prior to the issuance of the patent."). Similarly, in *Finjan, Inc. v. Juniper Networks, Inc.*, No. C 17-05659 WHA, 2018 WL 905909, at *3 (N.D. Cal. Feb. 14, 2018), this Court held that the patentee failed to allege pre-suit knowledge of the patent despite allegations that it met with the defendant multiple times to discuss the defendant's alleged infringement of the plaintiff's patent portfolio. This Court reasoned that "generally discussing purported infringement of Finjan's patent portfolio hardly translates to specifically alerting Juniper to infringement of the patents-in-suit." *Id*.

This is especially true where the plaintiff alleges presuit knowledge of the asserted patent based on alleged knowledge of a pending patent application. *See Fluidigm Corp. v. IONpath, Inc.*, No. C 19-05639 WHA, 2020 WL 408988, at *3 (N.D. Cal. Jan. 24, 2020) ("The complaint alleges defendant's knowledge of the '386 and '698 patents via defendant's 2011 citation to an old relative of the two, U.S. Patent No. 7,479,630 . . . . But the applications leading to the '386 and '698 patents were filed in 2018, and the patents issued in 2019. Defendant could not have divined the eventual issuance of the two patents eight-years later."). As the Federal Circuit has explained:

> To willfully infringe a patent, the patent must exist and one must have knowledge of it. A "patent pending" notice gives one no knowledge whatsoever. It is not even a guarantee that an application has been filed. Filing an application is no guarantee any patent will issue and a very substantial percentage of applications never result in patents. What the scope of claims in patents that do issue will be is something totally unforeseeable.

*State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985).

The non-precedential decision, *Suprema, Inc. v. Int'l Trade Comm'n*, 626 F. App'x 273, 280-81 (Fed. Cir. 2015), that Sonos cites is not to the contrary. Suprema had "specifically studied the '562 patent" and the ITC therefore concluded that "because the '562 and '344 patents have overlapping inventors and share the same assignee, Cross Match, 'a word search likely would have identified both patents.'" *Id*. at 281. As the decision notes:

> The Commission found it notable that the '344 patent issued in April 2007, six months prior to the October 2007 issue date of the '562 patent. Thus, had Suprema checked for the issuance of the '344 patent at the time it was reviewing the '562 patent, Suprema would have undoubtedly discovered that the '344 patent had issued.

*Id*. at 281. Further, the record in that case contained evidence that the respondent had a "subjective belief of the high probability that Cross Match's scanner technology was patented, and further evidenced its deliberate actions to avoid learning of that fact." *Id.* The decision concludes that "none of the facts upon which the Commission relied, in isolation, would support a finding of willful blindness." *Id*. at 282.

But even crediting Sonos's interpretation of *Suprema*, it provides no reason for the Court to reconsider its evidentiary rulings. *Suprema* suggests at most that the evidence Sonos has proffered is relevant, under the totality of the circumstances to willfulness. It does not suggest that this Court erred in its determination that any probative value was substantially outweighed by the risk of prejudice, jury confusion, and waste of trial time.[6]

Dated:  May 11, 2023

Respectfully submitted,

*/s/ Sean Pak*
Attorneys for GOOGLE LLC

QUINN EMANUEL URQUHART & SULLIVAN, LLP

*Counsel for Google LLC*

---

[6] Further, were the Court to reverse its ruling and allow a mini-trial on the parties' multi-year licensing negotiations, Google would be substantially prejudiced because it has allocated its trial time based on the Court's prior evidentiary ruling excluding this evidence.

**ATTESTATION**

I, Lindsay Cooper, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1, I hereby attest that Sean Pak has concurred in this filing.

DATED: May 11, 2023

By:   */s/ Lindsay Cooper*
       Lindsay Cooper