QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Sean Pak (Bar No. 219032)
  seanpak@quinnemanuel.com
  Melissa Baily (Bar No. 237649)
  melissabaily@quinnemanuel.com
  James Judah (Bar No. 257112)
  jamesjudah@quinnemanuel.com
  Lindsay Cooper (Bar No. 287125)
  lindsaycooper@quinnemanuel.com
  Iman Lordgooei (Bar No. 251320)
  imanlordgooei@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

  Marc Kaplan (*pro hac vice*)
  marckaplan@quinnemanuel.com
191 N. Wacker Drive, Ste 2700
Chicago, Illinois 60606
Telephone:     (312) 705-7400
Facsimile:     (312) 705-7401

*Attorneys for Google LLC*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

|  |  |
|---|---|
| GOOGLE LLC,<br><br>                             Plaintiff,<br><br>        vs.<br><br>SONOS, INC.,<br><br>                             Defendant. | Case No. 3:20-cv-06754-WHA<br>Related to Case No. 3:21-cv-07559-WHA<br><br>**GOOGLE LLC'S RESPONSE TO THE COURT'S REQUEST REGARDING CLAIM CONSTRUCTION**<br><br>The Hon. William H. Alsup |

On May 12, 2023, the Court invited claim construction briefing on the U.S. Patent No. 10,469,966 (the "'966 patent") in light of Sonos's contention that the patent covers any device with the Google Home app downloaded, regardless whether that device is ever connected to or used with any speakers.  5/12/23 Trial Tr. at 1030:24-1031:25.  Google submits this brief in response to the Court's request.

## I.   "COMPUTING DEVICE" SHOULD BE CONSTRUED AS "A DEVICE CONFIGURED TO CONTROL A PLURALITY OF ZONE PLAYERS"

The ordinary meaning of a claim term is not "the meaning of the term in the abstract." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1321 (Fed. Cir. 2005) (en banc).  "In reviewing the intrinsic record to construe the claims, we strive to capture the scope of the actual invention, rather than strictly limit the scope of claims to disclosed embodiments *or allow the claim language to become divorced from what the specification conveys is the invention*."  *Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1305 (Fed. Cir. 2011) (emphasis added).  "[T]o attribute to the claims a meaning broader than any indicated in the patent[] would be to ignore the totality of the facts of the case and exalt slogans over real meaning."  *Ormco Corp. v. Align Tech., Inc.*, 498 F.3d 1307, 1316 (Fed. Cir. 2007).  Thus, even where a claim term seems broad on its face, it must be construed more narrowly where the intrinsic evidence makes clear that what the applicants invented was narrower.

Here, the asserted claims of the '966 patent—namely, claims 1, 2, 4, 6, and 8—claim a "computing device" comprising processors, a computer-readable medium, and program instructions that cause the computer device to serve as "a controller for a networked media playback system comprising a first zone player and at least two other zone players."  Dkt. 1-5 at 11:35-44.  The claims require the computing device "serving as a controller" to cause indications to be transmitted to the first zone player and to cause the first zone player to transition from operating in the standalone mode.  *Id.* at 11:35-47.  The claim language does not recite any functions to be performed by the computing device unrelated to that device "serving as a controller."

Moreover, the specification defines the "invention"—both generally and specifically—as a device configured to control players.  For example, the specification states that "[i]n general, the

present invention pertains to controlling a plurality of multimedia players, or simply players, in groups" and "[i]n particular, the invention is related to method and apparatus for controlling or manipulating a plurality of multimedia players in a multi-zone system."  Dkt. 1-5 at 1:30-34 ("Field of the Invention"), 2:36-37 ("Summary of the Invention").  The various "aspect[s] of the present invention" are described with reference to "a controlling device" or "controller."  *Id*. at 2:52-56 ("According to still another aspect of the present invention, a controlling device (also referred to herein as controller) is provided to facilitate a user to select any of the players in the system to form respective groups each of which is set up per a scene."), 2:62-67 ("According to yet another aspect of the present invention, a configurable module is implemented in the controlling device that provides interactive graphic user interface for forming, managing and controlling groups in the system, de-grouping a group or adjusting audio volume of individual players or a group

FIG. 2B

of players.").  And in pointing out that "the controller 240 in FIG. 2B  [reproduced on the right] is not the only controlling device that may practice the present invention," the specification states that "[o]ther devices that provide the equivalent control functions (e.g., a computing device, a hand-held device) may also be *configured to practice the present invention*."  *Id*. at 8:20-25 (emphasis added).

Construing "computing device" as a "device configured to control a plurality of zone players" thus appropriately tethers the claims directly to the scope of the alleged invention disclosed in the specification.  *See Phillips,* 415 F.3d at 1312 ("The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.") (internal citations omitted); *Retractable Techs.,* 653 F.3d at 1305 (holding that while the term "'body' may encompass a syringe body composed of more than one piece," the specification tells us otherwise," a construction of "'body' that limits the term to a one-piece body is required to tether the claims to what the specifications indicate the inventor actually invented."); *UltimatePointer, LLC v. Nintendo Co.*, 816 F.3d 816, 821-24 (Fed. Cir. 2016) (claimed "handheld device" had to be a "direct pointing" handheld device where the specification emphasized the superiority of direct pointing over indirect pointing); *Tyco Healthcare Retail Servs. AG v. Kimberly–*

*Clark Corp.*, 2007 WL 2155571, at *4 n. 7 (E.D.Pa. July 24, 2007) (noting that "the Federal Circuit has warned . . . that claim construction should focus not on a term's abstract meaning but rather [on] its use in the patent") (citing cases).  Indeed, all of the statements from the specification quoted above refer to the "invention" or the "present invention," making those statements especially relevant to determining the appropriate scope of the claims.  *Honeywell Int'l, Inc. v. ITT Indus., Inc.*, 452 F.3d 1312, 1318 (Fed. Cir. 2006) (finding that, where the specification characterized the "invention" as a "fuel filter," it was appropriate to limit the claimed "fuel injection system component" to a "fuel filter" and noting that "[t]he public [wa]s entitled to take the patentee at his word and the word was that the invention is a fuel filter"); s*ee also Microsoft Corp. v. Multi-Tech Sys.*, 357 F.3d 1340, 1348 (Fed. Cir. 2004) ("In light of those clear statements in the specification that the invention ('the present system') is directed to communications 'over a standard telephone line,' we cannot read the claims . . . to encompass data transmission over a packet-switched network such as the Internet."); *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1308 (Fed. Cir. 2007) (holding that statements in specification concerning the "invention" limited the scope of the claims); *Netcraft Corp. v. eBay, Inc*., 549 F.3d 1394, 1397-98 (Fed. Cir. 2008) (claimed "communications link" was limited to Internet access, despite seemingly broader phrasing, where the objects of the "present invention" were to provide Internet access and the specification did not disclose other embodiments); *Regents of Univ. of Minn. v. AGA Med. Corp*., 717 F.3d 929, 936 (Fed. Cir. 2013) (claims reciting two disks required separate disks where the patent described the "present invention" as having two separate disks and every embodiment disclosed separate disks).

## II.    SONOS HAS THE BURDEN TO PROVE INFRINGEMENT BY A HOME APP INSTALLATION ALONE, WITHOUT ANY MODIFICATION

Separate and apart from the claim construction issue discussed above, the burden is on Sonos to prove that an installation of the Google Home app alone—without any additional hardware or software—infringes the asserted claims.

The Federal Circuit has emphasized that an apparatus claimed "in functional terms" is only infringed if "the product is designed in such a way as to enable the user of that [product] to utilize the function *without having to modify the product*."  *Nazomi Commc'ns, Inc. v. Nokia Corp.*, 739

F.3d 1339, 1345 (Fed. Cir. 2014) (emphasis original); *Fantasy Sports Properties, Inc. v. Sportsline.com, Inc.*, 287 F.3d 1108, 1118 (Fed. Cir. 2002).  As such, the Federal Circuit has taught that "the apparatus as provided must be 'capable' of performing the recited function, not that it might later be modified to perform that function." *Typhoon Touch Technologies, Inc. v. Dell, Inc.*, 659 F.3d 1376, 1380 (Fed. Cir. 2011) (internal citation omitted); *see also  Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1326, 1330 (Fed. Cir. 2001) (finding accused product non-infringing because it could not place international calls, a claim limitation of the asserted patent, without an outside carrier).

In *Nazomi*, summary judgment of non-infringement was granted under similar circumstances as those here, and the Federal Circuit affirmed.  *Nazomi Communications, Inc. v. Nokia Corp.*, Case No. 10-cv-04686-RMW, 2012 WL 3536768, *aff'd Nazomi*, 739 F.3d at 1345. There, the products were CPUs containing code that could optionally be used if "JTEK software" were installed to activate it and make use of its instructions.  *Id*. at *6.  Because the accused products could not function as specified in the claims without additional JTEK software, summary judgment of no direct infringement was granted.  *Id*.

The Federal Circuit agreed, reiterating that to infringe a computer-implemented apparatus claim, the accused product must be "designed in such a way as to enable the user of that product to utilize the function without having to modify the product." *Nazomi*, 739 F.3d at 1345.  The Federal Circuit held that "[t]he purchase and installation of [additional] software clearly constitutes a 'modification' of the accused products." *Id.*  And in response to Nazomi's argument that the accused devices infringed "if they have the capability of being configured or programmed to perform the stated function," the Federal Circuit found that "[t]he installation of [] software is not unlocking existing functionality, but adding new functionality not currently present." *Id*. at 1346.[1]

---

[1] *Nazomi* went on to distinguish cases like *Finjan, Inc. v. Secure Computing Corp.*,  626 F.3d 1197, 1205 (Fed. Cir. 2010).  As the Federal Circuit explained, in *Finjan* the infringing device included at the time of sale the necessary structure to operate in the infringing mode, whereas in *Nazomi* "the structure (i.e., JTEK software) necessary to enable" the allegedly infringing mode "is not even present on the accused products" and must instead be purchased and installed.  *Nazomi*, 739 F.3d at 1347.

Here, Sonos has not met its burden to prove that an installation of Google Home app alone is "capable of" causing the claimed functions to be performed without additional hardware and software.  As just one example, Sonos has not met its burden to prove that an installation of the Google Home app is capable of "causing storage of the first zone scene" and "causing storage of the second zone scene" on its own (*i.e.*, without additional hardware or software).  This is especially true given that Sonos's expert Dr. Almeroth has testified that those first and second zone scenes are stored ***on the players***:  "The information about the group is stored on the players, and so that would be sufficient to meet the requirements of the claim."  5/11/23 Trial Tr. at 787:20-788:13.  Based on the evidence elicited by Sonos, then, the purchase of additional hardware (namely, the players) is in fact required to perform the storage functions of the asserted claims.  Similarly, Sonos has not met its burden of proof to show that the Google Home app alone is "capable of" causing an indication of the first zone scene or second zone scene to be transmitted to the first zone player so that, per Dr. Almeroth's testimony, the zone scenes can be stored on the player.

In sum, even without additional claim construction, to meet its burden on infringement, Sonos must demonstrate that an installation of the Google Home app, without additional hardware and/or software, is capable of performing the functions of the asserted '966 patent claims.  *Nazomi*, 739 F.3d at 1345-46; *Deep9 Corp. v. Barnes & Noble, Inc.*, 2012 WL 4336726, *13-14 (W.D. Wash. Sept. 12, 2012) (Barnes & Nobles "Nook device" did not satisfy claim directed to "[a] computer readable medium encoded with a set of executable instructions to perform a method for updating modules of information via a common communication channel interconnecting a plurality of terminals" because computer instructions needed to "update" and "download" information from a "terminal" over a "communication channel" were not present on the device at the time of sale).

Accordingly, Sonos has not met its burden to show infringement of the '966 patent.

Dated:  May 14, 2023

Respectfully submitted,

*/s/ Sean Pak*

Attorneys for GOOGLE LLC

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

*Counsel for Google LLC*

**<u>ATTESTATION</u>**

I, Melissa Baily, am the ECF user whose ID and password are being used to file the above Declaration. In compliance with Civil L.R. 5-1, I hereby attest that Sean Pak has concurred in the aforementioned filing.

_/s/ Melissa Baily_
Melissa Baily