QUINN EMANUEL URQUHART & SULLIVAN, LLP
Sean Pak (Bar No. 219032)
seanpak@quinnemanuel.com
Melissa Baily (Bar No. 237649)
melissabaily@quinnemanuel.com
James Judah (Bar No. 257112)
jamesjudah@quinnemanuel.com
Lindsay Cooper (Bar No. 287125)
lindsaycooper@quinnemanuel.com
Iman Lordgooei (Bar No. 251320)
imanlordgooei@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

Marc Kaplan (*pro hac vice*)
marckaplan@quinnemanuel.com
191 N. Wacker Drive, Ste 2700
Chicago, Illinois 60606
Telephone:     (312) 705-7400
Facsimile:     (312) 705-7401

*Attorneys for GOOGLE LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SONOS, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 3:20-cv-06754-WHA<br>Consolidated with Case No. 3:21-cv-07559-WHA<br><br>**GOOGLE LLC'S RESPONSE TO THE COURT'S INQUIRY ON THE APPENDICES IN THE SONOS 2006 PROVISIONAL AND ADDITIONAL QUESTIONS FOR REQUESTED BRIEFING (DKT. 719)** |

Google submits the following information and responses to the Court's questions regarding the '407 provisional application (U.S. Prov. Pat. No. 60/825,407) and its attached appendices as they relate to the alleged disclosures of overlapping "zone scenes" in the '885 and '966 patents. *See* Ex. 1 (May 12, 2023 Trial Tr.) at 975:23-976:19; Dkt. 719.[1]

### 1. The Legal Significance Of A Provisional Appendix

As a general matter, attaching information in an appendix to a provisional application is permissible and can be considered as part of the provisional application because there is no specific format required for such applications. *See* 35 U.S.C. § 111(b); *see also* MPEP 201.04. Also, as a general matter, provisional applications (including any appendices) can be relied on for priority and incorporated by reference in subsequent non-provisional patent applications, along with any disclaimers. *See, e.g.*, *X2Y Attenuators, LLC v. ITC*, 757 F.3d 1358, 1362-63 (Fed. Cir. 2014) ("The incorporated patents are effectively part of the host [patents] as if [they] were explicitly contained therein. . . . As a result, the disclaimers of the incorporated patents are a part of the asserted patents.") (citations and internal quotation marks omitted). Whether a provisional application or its appendices contain sufficient written description disclosure under Section 112, however, depends on the specific facts at issue and contents of the application. *See New Railhead Mfg., L.L.C. v. Vermeer Mfg. Co.*, 298 F.3d 1290, 1294 (Fed. Cir. 2002) ("the specification of the provisional must 'contain a written description of the invention and the manner and process of making and using it, in such *full, clear, concise, and  exact terms*'" (emphasis added)).

Provisional applications (including any appendices) are not published, but rather become publicly available on the United States Patent and Trademark Office ("PTO") patent database as of the date of publication of the first non-provisional application that claims priority to the provisional application. *See* 37 C.F.R. § 1.14(a)(1)(vi).

### 2. Dkt. 719, Q1: Can Sonos claim priority for the '966 patent, written from the perspective of the controller, back to a provisional application that said it was not expected that the controller could do the claimed invention?

---

[1] All cited exhibits are attached to the contemporaneously filed Declaration of Marc Kaplan.

1  No. First, Sonos cannot claim priority for the '966 patent back to the '407 provisional because the '407 provisional provides no written description support for the asserted claims of the '966 patent. As Google summarized in Dkt. 712, the key disclosures cited by the Court in its prior summary judgment order and advanced at trial by Sonos as suggesting overlapping zone scenes were not added during prosecution **until August 2019**. Although those additions made it *appear* that Sonos had disclosed overlapping zone scenes in its 2006 provisional application and 2007 non-provisional application, those earlier disclosures exclusively related to *dynamic zone grouping* that Sonos admits was a feature of the Sonos 2005 prior art system, not to the claimed zone scenes. *See* Dkt. 712-4 at 35, 45 (App'x A at 7, 17).[2]

Second, the statement that the Court referenced in the '407 provisional application confirms that the inventor **was not** in possession of the claimed invention at that time. The '407 provisional application teaches that "it is **not** expected that the Zone Scenes should be set up using the Handheld Controller." Dkt. 712-4 at 38 (App'x A at 9) (emphasis added). Yet Sonos attempts to read the '407 provisional application to teach exactly the opposite—that zone scenes **should** be set up using the handheld controller user interface (which itself does not teach any overlapping zone scenes for the reasons discussed in Google's prior filings and oral arguments). Specifically, Sonos argues that Figure 5B from the patent can be combined with a statement from the provisional application to teach overlapping *zone scenes*. *See* Dkt. 712-4 at 45 (App'x A at 17) ( "The list of zones in the screen above includes ALL the zones in the system, including the Zones that are already grouped.") ("'407 statement"); '966 Pat. 10:15-17. Not so. The '407 provisional treats zone scene set-up and dynamic zone grouping as two different concepts, and by combining Fig. 5B (a truncated version of the figures in the provisional) with the unrelated statement regarding dynamic grouping, Sonos is improperly mixing claim elements from different embodiments (*i.e.*, zone set-up and dynamic zone grouping). *See Flash-Control, LLC v. Intel Corp.*, No. 2020-2141, No. 2020-2141, 2021 WL 2944592, at *3 (Fed. Cir. July 14, 2021), *see also Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d

---

[2] Citations to Dkt. 712-4 are to the ECF page numbers. Parallel citations to the page numbers internal to Appendix A are in parentheses.

1336, 1352 (Fed. Cir. 2010). The '407 provisional includes a "Scene Setup" section (Dkt. 712-4 at 37-44 (App'x A Section 3)), which is separate and distinct from a section on "Alternative Linking Methods" (Dkt. 712-4 at 45-46 (App'x A Section 4)). The latter section on "Alternative Linking Methods" can be used to expand or shrink *dynamic zone groups* by checking multiple speakers at a time to add to or drop from the group–which only makes the group larger or smaller in size, but does not relate to overlapping zone scenes. Dkt. 712-4 at 45 (App'x A at 17). The '407 provisional therefore discloses zone scene set-up and dynamic zone grouping as two different concepts and provides two distinct user interfaces. Notably, in this litigation, Sonos has consistently argued that dynamic zone groups are *not* the claimed zone scenes. *See, e.g.*, Dkt. 711 at 2 ("[w]ith the prior art dynamic grouping, this wasn't possible").

Thus, the '407 provisional specifically *taught away* from combining zone scenes and dynamic grouping. Further, the '407 provisional distinguishes these distinct features by stating "[i]t is not expected that the Zone Scenes should be set up using the Handheld Controller," whereas dynamic zone groups in Section 4 are represented on a Handheld Controller user interface. *See* Dkt. 712-4 at 37, 45 (App'x A at 9, 17). *See, e.g.*, *NYKO Techs., Inc. v. Energizer Holdings Inc.*, No. CV 12-3001 GAF (VBKx), 2013 WL 11232100, at *7-9 (C.D. Cal. Oct. 22, 2013) (finding that provisional did not adequately disclose the claims where the provisional, *inter alia,* taught away from the claims at issue by discussing the failings of a system without a particular element, and finding that while one skilled in the art *may have been* able to conceive of a different invention by studying the provisional, such invention plainly was not *disclosed* in the provisional).

Accordingly, Sonos cannot claim priority back to the '407 provisional to mix and match a sentence describing *zone groups* from the '407 provisional with a paragraph exclusively discussing the creation of *zone scenes* in the amended specification.

3. **Dkt. 719, Q2: Was the statement referenced above specifically brought to the attention of the examiner on the '966 patent?**

No. Although the statement referenced above was included within the materials in front of the Examiner, Sonos did not bring it to the attention of the Examiner with the necessary context. On *August 23, 2019*, Sonos amended the specification of the applications that issued as the '885 and

'966 patents and, only then, did it add Figures 7-8 and their corresponding descriptions, and amended the paragraph describing Figure 5B to include the sentence: "The list of zones in the user interface 520 includes ALL the zones in the system, including the zones that are already grouped." Sonos, however, misrepresented to the Examiner that *no new matter* was added through these amendments: "Applicant inserts material into the specification and figures that was previously incorporated by reference in this application, and the amendment contains no new matter. In particular, the inserted material can be found at least at pp. 5-6[3] and 17 of Appendix A to provisional application 60/825,407, the entirety of which was incorporated by reference on the filing date of the application." Ex. 2 (August 23, 2019 Office Action Responses) at 18, 38. Sonos did not tell the examiner that the support for the above-referenced statement in the '407 Provisional was in a completely different context corresponding to dynamic zone groups, and the ability for a user to expand or shrink an existing zone group—***not*** create overlapping zone scenes. *Id*, *see also* Dkt. 712-4 at 37, 45 (App'x A at 9, 17).

4. **Dkt. 719, Q3:  Were the appendices ever represented to the PTO to be the user manual? How did they differ from the user manual for the Sonos 2005 system? What is the legal significance of any discrepancy?**

The appendices were not represented to the PTO to be the Sonos 2005 system user manual. Indeed, Sonos did not disclose the Sonos 2005 user manual or any other information regarding the Sonos 2005 system to the PTO until 2016.[4] The appendices submitted to the PTO in 2006 omitted key information regarding the alleged inventions that were disclosed in the user manuals first submitted to the PTO a decade later in 2016, including the existence of the "All Zones - Party Mode" that Sonos's own inventor, Mr. Lambourne, considered to be "an example of a zone scene" in his historical documents. Ex. 4 (TX6544); Ex. 7 (May 10, 2023 Trial Tr.) at 627:6-12, 628:4-7, 630:8-10.

---

[3]  Pages 5-6 of Appendix A relate to a method of invoking zone scenes using a soft button and relate to Figs. 7-8.  *See* Dkt 712-4 at 33-34 (Appx' A at 5-6).

[4] User manuals for the Sonos 2005 system were first submitted to the PTO in 2016 during prosecution of the related application that issued as the '532 patent. The Sonos Controller for iPad Product Guide (2004-2013) and several Sonos Play:3 Product Guides were first disclosed to the PTO in a July 1, 2016 information disclosure statement. The Sonos Digital Music System User Guide  (version 050801, August 2005) was first disclosed to the PTO in a November 17, 2016 information disclosure statement.

In particular, these user manuals contain customer-facing information such as steps to add or drop a zone player to an existing zone group. *See, e.g.*, Ex. 3 (TX0062 and TX0063) (Sonos Digital Music System User Guide) at 4-5. The user manuals also disclose the functionality of using "All Zones - Party Mode" to "join all the zones in your house." The user manuals, thus, confirm the presence of "Party Mode" in the Sonos 2005 system, a highly relevant and material prior art system that was publicly available in January 2005, yet Sonos did *not* disclose them to the PTO until 2016–nearly a decade after filing its original patent application in this family.

Accordingly, the '407 Provisional is missing key disclosures of the "All Zones - Party Mode" in the context of the Sonos 2005 User Guide, which provides crucial context to understand what was already known as opposed to what Mr. Lambourne allegedly invented. For example, the '407 Provisional describes on page 17 of Appendix A: "*Currently*, as discussed in the introduction of this document, the current Link and Drop Zones features allow the user to link and drop Zones one at a time." In other words, the current product (*i.e.*, the Sonos 2005 prior art system) allowed a user to add zones to a dynamic group one-by-one. This is shown in the figure below and to the left from the Sonos 2005 User Guide. The '407 Provisional continues: "This feature would allow the user to link and drop multiple zones in one screen." In other words, the *improvement* discussed in the '407 Provisional over the Sonos 2005 prior art system was that a user could, for dynamic zone groups, add or drop *multiple* zones at the same time, rather than doing so one-by-one. This is shown in the '407 Provisional excerpt below on the right.



What this makes clear is that this disclosure is *not* related to zone scenes; instead, it was a minor improvement to the "current" system of adding zones to a dynamic zone group one at a time.

Moreover, the appendices are based on two internal Sonos documents, the "Sonos UI Specification" (Ex. 4 (TX6544)) and the "Sonos UI Specification: Zone Scenes" (Ex. 5 (TX6545)), but Sonos substantially modified these specifications before submitting them to the PTO.  In doing so, Sonos obfuscated the nature of its alleged invention.  Specifically, Sonos withheld from the PTO the fact that there already existed a zone scene in the form of an "All Zones - Party Mode" in the prior art Sonos 2005 system.  Importantly, the statement that "'***Party Mode' that currently ships with the product is one example of a Zone Scene***" was removed from TX6544 before it was submitted to the PTO as Appendix B in the '407 Provisional, as were other references to "Party Mode" in that document.  Likewise, as shown below, the statement that the "Zone Scene feature" was "*similar to the current Party Mode setting that is available*" was removed from TX6545 before it was submitted as Appendix A in the '407 Provisional, resulting in a nonsensical disclosure that "[t]he Zone Scene feature" is somehow "much more flexible and powerful" than itself.

**Sonos UI Specification: Zone Scenes**

# 1 Introduction

The Zone Scene feature allows the user to arrange the zones into groups using one single command. However, the Zone Scene feature is much more flexible and powerful.

('407 Provisional, Appendix A, filed September 12, 2006)

**Sonos UI Specification: Zone Scenes**

# 1 Introduction

The Zone Scene feature allows the user to arrange the zones into groups using one single command. <mark>This is similar to the current Party Mode setting that is available.</mark> However, the Zone Scene feature is much more flexible and powerful.

(TX6545, modified December 21, 2005)

The legal significance of all this is that Sonos cannot claim priority back to the disclosures in its '407 Provisional, particularly given the omission of critical facts regarding the Sonos 2005 prior art system and Sonos's alleged improvements over that system. Accordingly, the alleged inventions of the patents-in-suit can, at best, only claim priority back to the August 2019 amendment in which Sonos's counsel amended the specification to introduce the revisions described above.

5. **Dkt. 719, Q4: What lurks in the prosecution history of the '206 patent, and other patents in the zone scene family, that sheds light on what led to the one sentence amendment to column 10 of the specifications of the two patents-in-suit in 2019, or otherwise bears on these issues?**

In the direct chain of applications stemming from Sonos's 2006 provisional application, the '885 and '966 patents are the first patents that attempted to insert overlapping zone scenes into the claims. Those patents were filed in April 2019 and rejected by the Examiner on July 5, 2019. Sonos responded on August 23, 2019 by amending the claims and attempting to distinguish the prior art the Examiner cited. As part of that same 2019 response, Sonos also amended the specification of the '885 and '966 patents to add descriptions for Figures 7 and 8 and to add the disputed sentence to column 10 of the specification. It appears, therefore, that in the process of responding to the Examiner, Sonos realized that its written description support for the newly added claims was inadequate. Sonos's newly-added Figure 7 provided additional relevant disclosures regarding zone

scenes, including disclosures of a "party mode" and "morning wakeup" scene in the same controller image, and newly-added Figure 8 provided additional relevant disclosures regarding zone scene selection. To address overlapping speaker groups in particular, though, Sonos appears to have realized that additional, direct disclosure was required, and therefore Sonos added the sentence regarding "ALL the zones in the system, including the zones that are already grouped" to the description of Figure 5B.

6. **Dkt. 719, Q5: Does the sentence added to column 10 of these specifications go to the priority date for conception or to written description only? If written description only, then the Google systems would not be prior art to the two patents-in-suit, true?**

Regardless of whether Sonos can prove that it conceived of the claimed invention before Google conceived of the accused products in 2015, the claims are invalid under the on-sale bar of pre-AIA Section 102(b). That is so because unlike anticipation under pre-AIA Section 102(a), which turns on prior *conception*, invalidity under on-sale bar of pre-AIA Section 102(b) turns on whether the claimed invention was on sale in this country more than a year before the *effective filing date* of the claimed invention. Here, Sonos's earliest possible effective filing date is August 2019, when it modified its specification to add the new matter described above. Google's accused products were undisputedly on sale in 2015, more than a year earlier.

Google denies that its accused products actually practice the claimed invention, but that is irrelevant for the purpose of assessing invalidity in this case in view Sonos's assertions. The critical point is that Sonos *asserts* that the accused products practice the asserted claims. The Federal Circuit has long held that for purposes of the on-sale bar, a plaintiff is bound by its contention that the accused products practice the claims. Accordingly, where, as here, those accused products were on sale in this country more than a year before the plaintiff's effective filing date, the claims are invalid as *a matter of law*. *See Vanmoor v. Wal-Mart Stores, Inc.*, 201 F.3d 1363, 1366 (Fed. Cir. 2000) ("Although Wal–Mart and the manufacturers bore the burden of proving that the cartridges that were the subject of the pre-critical date sales anticipated the '331 patent, that burden was satisfied by Vanmoor's allegation that the accused cartridges infringe the '331 patent."); *see also Evans Cooling Sys. Inc. v. General Motors Corp.*, 125 F.3d 1448, 1451 (Fed. Cir. 1997).

7. **Dkt. 719, Q6: Please quote each place in this case (all the way back to day one in both actions) where either side represented to a court that the specifications of the two patents-in-suit were the same as the provisional application specification or the first nonprovisional application specification.**

1. <u>Sonos's Representations</u>

Google has identified the following representations by Sonos to the Court regarding the similarity of the specifications of the '885 and '966 patents to their priority family members.

- Ex. 7 (May 10, 2023 Trial Tr.) at 656:12-22 ("But is this the -- I'm reading the one that happens to be '966 -- is that the same as what was published in 2005, or is this a brand-new -- brand-new specification? MR. RICHTER: The specification was published in 2006, I believe, Your Honor, but it's a straight continuation and so it's the ***nearly identical specification*** from the original filing, yes. THE COURT: But it's different in some respect? MR. RICHTER: It has an initial sentence in the very first that says this application claims priority to such and such an application. ***Other than that, no changes***.") (all emphases added unless noted otherwise); Ex. 6 (May 11, 2023 Trial Tr.) at 748:6-16 ("MR. RICHTER: I need to apologize for a clarification. You and I had a discussion yesterday about the specification in this case and whether it's the same, and I said it was the same, and that's true insofar as there's an incorporation by reference in the specification to the provisional. However, the specification has changed ***in slight ways*** as the applicant has amended the specification over the years to bring in things from the provisional, which is perfectly permissible under Rule 57(g).").

- Dkt. 704-2 (Kwasizur Decl.) ("Line 5 of the additional patent disclosures shows Sonos's Patent No. 8,483,853 ('the '853 patent'). This is ***the first non-provisional*** filed in the zone patent family at issue in this case. It is the ultimate parent patent to the zone scene patents at issue in this case and ***shares a substantively identical specification to the zone patents at issue in this case***.").

- Ex. 7 (May 10, 2023 Trial Tr.) at 676:24-677:5 (Dr. Almeroth, testifying: "How do the '885 and '966 patents relate? A. They are part of what's called a '***continuation chain***.' ***So they date back over time where patents were filed with the same specification*** and they have different sets of claims at the end. But the description of the invention, what the specification is, the columns in it, the figures, ***that's all the same***.").

- Dkt. 135 (Answer to Amended Complaint) ¶ 78 ("The '885 Patent is related to the '206 and '966 Patents in that they are all continuations of application No. 13/896,829, filed on May 17, 2013, now U.S. Patent No. 8,843,228. Thus, the '885, '966 and '206 Patents ***share essentially the same specification***.").

- *Sonos, Inc. v. Google LLC*, 3:21-cv-07559-WHA (N.D. Cal.) ("Transferred Action"), Dkt. 144 (Sonos Opp. to MTD) at 2, 18 ("The '966 and '885 Patents had not issued at the time of this letter, but are continuations from the '853 patent and ***share a common specification***."); *id.* at 3 ("The '966 and '885 patents (which had

not yet issued) are continuations from the '228 patent, and therefore *share a specification with it*."). The '853 patent issued from the first non-provisional application.

2. <u>Google's Representations</u>

Google was unable to find any instances in which it represented to the Court that the specifications of the two patents-in-suit were identical to the first nonprovisional application. However, Google did find a footnote to its claim construction briefing in the Western District of Texas almost two years ago stating that the two zone scene patents-in-suit "are each continuations, sharing substantively the same specification and all claim priority to a single provisional application filed on Sept. 12, 2006." Transferred Action, Dkt. 64 at 5 n.1. For purposes of that brief, however, there were no issues regarding *overlapping* zone scenes and Google did not reference either the first non-provisional application or the provisional application. Instead, Google has taken a consistent position that the asserted claims, drafted thirteen years after the claimed priority date, lack written description support in the originally filed provisional and non-provisional applications. *E.g.*, Dkt. 249 (Opp. to Showdown Summary Judgment) at 18-31; Dkt. 249-1 (Schonfeld Decl.) at ¶ 45; Dkt. 321-3 (Google Showdown Summary Judgment Slides) at 46; Dkt. 622 (Google Trial Br.) at 4.

Dated:  May 14, 2023

Respectfully submitted,

 */s/ Sean Pak*
Attorneys for GOOGLE LLC

QUINN EMANUEL URQUHART & SULLIVAN, LLP

*Counsel for Google LLC*

**ATTESTATION**

Pursuant to the Federal Rules of Civil Procedure and Local Rule 5-1, I hereby certify that, on May 14, 2023, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system and email.

DATED: May 14, 2023

By:  */s/ Sean Pak*
     Sean Pak