# EXHIBIT 23



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/130,919 | 04/15/2016 | Robert A. Lambourne | 07-0901-CON0416 | 9288 |

107361          7590          04/25/2018

McDonnell Boehnen Hulbert & Berghoff LLP
Sonos, Inc.
300 South Wacker Drive
Chicago, IL 60606

| EXAMINER |
|---|
| MCCORD, PAUL C |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2656 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 04/25/2018 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

| *Office Action Summary* | Application No. 15/130,919 | Applicant(s) LAMBOURNE, ROBERT A. | |
|---|---|---|---|
| | Examiner PAUL MCCORD | Art Unit 2656 | AIA (First Inventor to File) Status No |

| -- The MAILING DATE of this communication appears on the cover sheet with the correspondence address -- |
|---|

### Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) months from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

### Status

1)☒   Responsive to communication(s) filed on <u>4/15/16</u>.
    ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.
2a)☐   This action is **FINAL**.    2b)☒ This action is non-final.
3)☐   An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.
4)☐   Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

### Disposition of Claims*

5)☒   Claim(s) <u>1-33</u> is/are pending in the application.
    5a) Of the above claim(s) _____ is/are withdrawn from consideration.
6)☐   Claim(s) _____ is/are allowed.
7)☒   Claim(s) <u>1-33</u> is/are rejected.
8)☐   Claim(s) _____ is/are objected to.
9)☐   Claim(s) _____ are subject to restriction and/or election requirement.
* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov.

### Application Papers

10)☐   The specification is objected to by the Examiner.
11)☒   The drawing(s) filed on <u>4/15/16</u> is/are: a)☒ accepted or b)☐ objected to by the Examiner.
    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

### Priority under 35 U.S.C. § 119

12)☐   Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
**Certified copies:**
    a)☐ All  b)☐ Some**  c)☐ None of the:
    1.☐   Certified copies of the priority documents have been received.
    2.☐   Certified copies of the priority documents have been received in Application No. _____.
    3.☐   Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).
** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**
1) ☒ Notice of References Cited (PTO-892)
2) ☒ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b) Paper No(s)/Mail Date _____.
3) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____.
4) ☐ Other: _____.

Application/Control Number: 15/130,919                                      Page 2
Art Unit: 2656

1)  The present application is being examined under the pre-AIA first to invent provisions.

    The present application, filed on or after March 16, 2013, is being examined under the

first inventor to file provisions of the AIA

**DETAILED ACTION**

*Priority*

1.

2.     Applicant's claim for the benefit of a prior-filed application under 35 U.S.C. 119(e) or

under 35 U.S.C. 120, 121, 365(c), or 386(c) is acknowledged. Applicant has not complied with

one or more conditions for receiving the benefit of an earlier filing date under 35 U.S.C. 112 as

follows:

    The later-filed application must be an application for a patent for an invention which is

also disclosed in the prior application (the parent or original nonprovisional application or

provisional application). The disclosure of the invention in the parent application and in the later-

filed application must be sufficient to comply with the requirements of 35 U.S.C. 112(a) or the

first paragraph of pre-AIA 35 U.S.C. 112, except for the best mode requirement.  See *Transco

Products, Inc. v. Performance Contracting, Inc.*, 38 F.3d 551, 32 USPQ2d 1077 (Fed. Cir. 1994)

The disclosure of the prior-filed application, Application No. 60825407, 11853790,

13896829 filed respectively 9/12/2006, 9/11/2007, 5/17/2013 fails to provide adequate support

or enablement in the manner provided by 35 U.S.C. 112(a) or pre-AIA 35 U.S.C. 112, first

Application/Control Number: 15/130,919                                      Page 3
Art Unit: 2656

paragraph for one or more claims of this application.  The recited display of a selectable

indication of a zone scene which upon selection invokes the zone scene onto plural of the

playback devices lacks written description in the above referenced applications. Accordingly the

instant application will be afforded the 8/21/14 priority date of prior filed application 14465457.


### *Claim Rejections - 35 USC § 103*


3.      In the event the determination of the status of the application as subject to AIA 35 U.S.C.

102 and 103 (or as subject to pre-AIA 35 U.S.C. 102 and 103) is incorrect, any correction of the

statutory basis for the rejection will not be considered a new ground of rejection if the prior art

relied upon, and the rationale supporting the rejection, would be the same under either status.

4.      The following is a quotation of 35 U.S.C. 103 which forms the basis for all obviousness

rejections set forth in this Office action:

> A patent for a claimed invention may not be obtained, notwithstanding that the claimed invention is not
> identically disclosed as set forth in section 102 of this title, if the differences between the claimed
> invention and the prior art are such that the claimed invention as a whole would have been obvious
> before the effective filing date of the claimed invention to a person having ordinary skill in the art to
> which the claimed invention pertains.  Patentability shall not be negated by the manner in which the
> invention was made.

5.      The factual inquiries set forth in *Graham v. John Deere Co.*, 383 U.S. 1, 148 USPQ 459

(1966), that are applied for establishing a background for determining obviousness under 35

U.S.C. 103 are summarized as follows:

        1. Determining the scope and contents of the prior art.

        2. Ascertaining the differences between the prior art and the claims at issue.

        3. Resolving the level of ordinary skill in the pertinent art.

Application/Control Number: 15/130,919                                    Page 4

Art Unit: 2656

    4. Considering objective evidence present in the application indicating obviousness or

nonobviousness.

6.      Claims 1-33 rejected under 35 U.S.C. 103 as being unpatentable over Yamaha DME

Designer Version 3.5 (hereinafter DME: manual provided by Examiner; available for sale and

manual copyright at least 2004).

7.      Regarding claim 1, 12, 23

        DME teaches:

        A multimedia controller, method and medium bearing coded instructions for and

including a processor, the controller configured to:

        receive, via a network interface, zone configuration data from a first independent

playback device (DME: pp 3-8; Ch. 3, 4; Particularly pp 193-186: DME configuration

files comprising zones, scenes, configurations, etc. saved on any of plural independent

playback devices in the form of each/any DME type device(s) in a configuration, the

DME device accessed and the DME configuration data retrieved over a network by/to a

controller in the form of a personal computer),

        wherein the zone configuration data is configured via the controller (DME: pp 3-

8, 47-51; Ch. 4, 6: a controller operates to configure zones, scenes, configurations, etc.

the configurations comprising components, parameters, etc. edited and saved by the

controller and instantiated upon the DME device(s)) and

        maintained at the first independent playback device (DME: pp 3-8; 47-51, 54-69:

configurations may be saved to, instantiated upon the DME device(s)), and

Application/Control Number: 15/130,919                                                                Page 5
Art Unit: 2656

> wherein the zone configuration data characterizes one or more zone scenes
> (DME: pp 3-8; 47-51, 54-69, Ch. 4, 6: a configuration characterizes a zone, scene, etc. as
> a collection of components and a description of connections between/among said
> components) wherein at least one of the one or more zone scenes identifies a group
> configuration associated with two or more independent playback devices (DME: pp 3-8:
> configurations comprise user definable groupings of components/connections instantiable
> on/over up to 16 independent playback devices); and

> cause a selectable indication of the at least one of the one or more zone scenes to
> be displayed (DME: pp 92-95, Ch. 4, 5; see also pp 493-499: configuration manager
> comprises a displayed indication of available zones, scenes which may be selectably
> opened, edited , saved, closed, deleted, etc. by the user, the selectable file controls
> operable upon the controller or upon the front screen of each/any of the independent
> playback device(s), opened/edited zone scenes instantiated upon the plurality of playback
> devices using a synchronization command or front panel controls), wherein the displayed
> selectable indication is selectable to cause the one or more zone scenes to be invoked by
> the two or more independent playback devices (DME: pp 92-95, Ch. 4, 5; see also pp
> 493-499).

> DME causes an indication to be displayed which is provided by the utility of an
> open or new command sufficient to open or create a zone scene for instantiation on the
> plurality of playback devices (see at least DME pp 3-8; 47-51, 54-69, 92-95) these
> operations function to open or otherwise instantiate a particular configuration of players.
> This is considered substantially similar to the disclosed invocation of a scene such as

Application/Control Number: 15/130,919                                             Page 6
Art Unit: 2656

upon the instant disclosed players upon the event of a stored alarm configuration (see ¶

57-60; Fig 3A, 4 of the instant PGPub: 20160234615; Examiner must point out that this

is the extent of the indication disclosed by the 60825407, 11853790, 13896829

applications) DME further discloses the display of selectable indications that invoke

particular scenes based on a user selection of the displayed selectable indicator (DME

493-499: by user selection of the P 495 displayed scene 1, scene 2, etc.). DME admits of

separate possibilities for such an invocation of scenes upon DME type devices using

controls such as the P 495 scene instantiation an embodiment where each of the scene

controls operate to select configurations using a single DME type device, an embodiment

where a scene control such as "scene 1" operates to invoke a configuration on one DME

type device and where a second scene control "scene 2" operates on to invoke a

configuration on a setup comprising plural (2 to 16) DME type devices, and an

embodiment where each scene control "scene 1," "scene 2," etc. operates to invoke

configurations comprising plural DME type devices. As such Examiner considers that it

would have been obvious to one of ordinary skill in the art on or before the effective

priority date of the instant application to operate the DME disclosed displayed selectable

indicators to cause one or more zone scenes to be invoked on two or more playback

devices. As this would comprise no more than a choice between a finite number of

identified predictable solutions, with a reasonable expectation of success such a

configuration would have been obvious to try. The average skilled practitioner would

have been motivated to do so for the purpose of quickly instantiating enterprise wide

Application/Control Number: 15/130,919                                    Page 7
Art Unit: 2656

configurations of 2 to 16 DME type devices and would have expected no more than

predictable results therefrom.

8.      Regarding claim 2, 13, 24

        DME teaches or suggests:

        A multimedia controller, method and medium bearing coded instructions, wherein

causing the selectable indication of the at least one of the one or more zone scenes to be

displayed comprises causing an indication of the group configuration associated with the

two or more independent playback devices to be displayed. (DME: pp 3-8; 47-69, 92-95,

Ch. 4, 5; see also pp 493-499: configurations may be opened or otherwise displayed,

edited or otherwise operated upon and instantiated to the playback devices (s), saved,

etc.)

9.      Regarding claim 2, 13, 24

        DME teaches or suggests:

        A multimedia controller, method and medium bearing coded instructions wherein

the indication of the group configuration comprises one group of independent playback

devices (DME: pp 3-8; 47-69, 92-95, Ch. 4, 5; see also pp 493-499: up to 16 playback

devices may be configured, operated upon, etc.).

10.     Regarding claim 4, 15, 26

        DME teaches or suggests:

        A multimedia controller, method and medium bearing coded instructions wherein

the indication of the group configuration comprises two or more groups of independent

Application/Control Number: 15/130,919                                      Page 8
Art Unit: 2656

playback devices (DME: pp 3-8; 47-69, 92-95, Ch. 4, 5; see also pp 493-499: up to 16

playback devices may be variously grouped).

11.      Regarding claim 5, 16, 27

         DME teaches or suggests:

         A multimedia controller, method and medium bearing coded instructions further

configured to: after causing the indication of the at least one of the one or more zone

scenes to be displayed, cause at least one of the one or more zone scenes to be activated

(DME: pp 92-95, Ch. 4, 5; see also pp 493-499: configuration manager comprises a

displayed indication of available zones, scenes which may be selectably opened, edited ,

saved, closed, deleted, etc. by the user, the selectable file controls operable upon the

controller or upon the front screen of each/any of the independent playback device(s),

opened/edited zone scenes instantiated upon the plurality of playback devices using a

synchronization command or front panel controls).

12.      Regarding claim 6, 17, 28

         DME teaches or suggests:

         A multimedia controller, method and medium bearing coded instructions further

configured to: after causing the indication of the at least one of the one or more zone

scenes to be displayed, cause one of the at least one of the one or more zone scenes to be

activated (DME: pp 92-95, Ch. 4, 5; see also pp 493-499: configuration manager

comprises a displayed indication of available zones, scenes which may be selectably

opened, edited , saved, closed, deleted, etc. by the user, the selectable file controls

operable upon the controller or upon the front screen of each/any of the independent

Application/Control Number: 15/130,919                                              Page 9
Art Unit: 2656

playback device(s), opened/edited zone scenes instantiated upon the plurality of playback

devices using a synchronization command or front panel controls).

13.      Regarding claim 7, 18, 29

          DME teaches or suggests:

          A multimedia controller, method and medium bearing coded instructions further

configured to: before receiving the zone configuration data, send, to the first independent

playback device, a command to save the at least one of the one or more zone scenes

(DME: pp 3-8; 47-69: configurations saved to particular any independent playback

device(s), a configuration must be saved in order to be further opened, received, etc.).

14.      Regarding claim 8, 19, 30

          DME teaches or suggests:

          A multimedia controller, method and medium bearing coded instructions wherein

the command to save the at least one of the one or more zone scenes comprises (a) an

indication of two or more independent playback devices identified by the zone scene and

(b) at least one other parameter pertaining to the scene (DME: pp 3-8; 47-51, 54-69, Ch.

4, 6: a configuration characterizes a zone, scene, etc. as a collection of components

instantiated on/over plural independent playback devices and a description of connections

between/among said components and devices).

15.      Regarding claim 9, 20, 31

          DME teaches or suggests:

          A multimedia controller, method and medium bearing coded instructions wherein

the at least one other parameter pertaining to the scene is one or more of (i) a volume

Application/Control Number: 15/130,919                                        Page 10
Art Unit: 2656

level (DME: pp 3-8; 47-51, 54-69, Ch. 4, 6: volume controls variously managed by at

least mixer components as well as other among the output controls), (ii) a specific music

(DME: Ch. 3, 6: analog input controls define the specific audio input to a particular

channel in the configuration or a wav file to a particular channel), (iii) a play mode

(DME: Ch. 3, 6: play modes include determinations of specific music by directing an

input to a channel or a wav file to a channel), or (iv) an equalization (DME: Ch. 6:

equalization parameters saved, edited instantiated by at least equalizer components

included in a zone, scene, configuration).

16.      Regarding claim 10, 21, 32

         DME teaches or suggests:

         A multimedia controller, method and medium bearing coded instructions, wherein

each of the independent playback devices is associated with a name (DME: pp 3-8; 47-

51, 54-69: various DME type devices identified by name).

17.      .Regarding claim 11, 22, 33

         DME teaches or suggests:

         A multimedia controller, method and medium bearing coded instructions, wherein

each of the one or more zone scenes is associated with a name (DME: pp 3-8; 47-51, 54-

69, Ch. 4, 6: configurations saved, opened, instantiated by name).


                                    ***Conclusion***

Application/Control Number: 15/130,919                                                    Page 11
Art Unit: 2656

Any inquiry concerning this communication or earlier communications from the
examiner should be directed to PAUL MCCORD whose telephone number is (571)270-3701.
The examiner can normally be reached on M-F 7:30AM - 5:00PM EST.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's
supervisor, CURTIS KUNTZ can be reached on (571)272-7499.  The fax phone number for the
organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent
Application Information Retrieval (PAIR) system.  Status information for published applications
may be obtained from either Private PAIR or Public PAIR.  Status information for unpublished
applications is available through Private PAIR only.  For more information about the PAIR
system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR
system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would
like assistance from a USPTO Customer Service Representative or access to the automated
information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/PAUL MCCORD/

Primary Examiner, Art Unit 2656

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 34119703 |
| **Application Number:** | 15130919 |
| **International Application Number:** | |
| **Confirmation Number:** | 9288 |
| **Title of Invention:** | Zone Scene Activation |
| **First Named Inventor/Applicant Name:** | Robert A. Lambourne |
| **Customer Number:** | 107361 |
| **Filer:** | Brandon Jacob Kennedy |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | 07-0901-CON0416 |
| **Receipt Date:** | 25-OCT-2018 |
| **Filing Date:** | 15-APR-2016 |
| **Time Stamp:** | 17:32:24 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | CARD |
| Payment was successfully received in RAM | $1400 |
| RAM confirmation Number | 102618INTEFSW17325900 |
| Deposit Account | 132490 |
| Authorized User | Brandon Kennedy |

The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows:

    37 CFR 1.16 (National application filing, search, and examination fees)

    37 CFR 1.17 (Patent application and reexamination processing fees)

37 CFR 1.19 (Document supply fees)

37 CFR 1.20 (Post Issuance fees)

37 CFR 1.21 (Miscellaneous fees and charges)

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | Sonos_07-0901-CON0416_MBHB_15-1461-US-CON2_Response_to_Non-Final_Office_Action.pdf | 129616<br><br>c08e00c4f4286bd0d74710b2b72e988629f92e46 | yes | 11 |

| | Multipart Description/PDF files in .zip description | | | | |
|---|---|---|---|---|---|
| | **Document Description** | | **Start** | **End** | |
| | Applicant Arguments/Remarks Made in an Amendment | | 9 | 11 | |
| | Claims | | 2 | 8 | |
| | Amendment/Req. Reconsideration-After Non-Final Reject | | 1 | 1 | |

**Warnings:**

**Information:**

| 2 | Fee Worksheet (SB06) | fee-info.pdf | 30464<br><br>6ff438a162cbec20ecdc316cb1c769a80cbecab3 | no | 2 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| **Total Files Size (in bytes):** | 160080 |
|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
**If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.**
**National Stage of an International Application under 35 U.S.C. 371**
**If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.**
**New International Application Filed with the USPTO as a Receiving Office**
**If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.**

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**
Case No. 07-0901-CON0416 (MBHB 15-1461-US-CON2)

In re Application of:

    Robert Lambourne

Serial No.:  15/130,919

Filing Date:  April 15, 2016

Title:  Zone Scene Activation

Confirmation No.:  9288

Examiner:  Paul C. McCord

Group Art Unit:  2656

**RESPONSE TO NON-FINAL OFFICE ACTION**
**MAILED APRIL 25, 2018**

In response to the Non-Final Office Action mailed April 25, 2018, Applicant submits the following amendments and remarks.  Claim amendments are provided beginning at page 2. Remarks then begin at page 9.

Applicant believes that all fees required for the present response have been filed during the electronic filing process. Applicant authorizes the office to charge any underpayment or credit any overpayment to Deposit Account No. 132490, and to treat any filing in this matter that requires an extension of time as incorporating a request for the extension.

# CLAIMS

We Claim:

1.      (Original)  A multimedia controller including a processor, the controller configured to:

receive, via a network interface, zone configuration data from a first independent

playback device, wherein the zone configuration data is configured via the controller and

maintained at the first independent playback device, and wherein the zone configuration data

characterizes one or more zone scenes, wherein at least one of the one or more zone scenes

identifies a group configuration associated with two or more independent playback devices; and

cause a selectable indication of the at least one of the one or more zone scenes to be

displayed, wherein the displayed selectable indication is selectable to cause the one or more zone

scenes to be invoked by the two or more independent playback devices.


2.      (Original)  The multimedia controller of claim 1, wherein causing the selectable

indication of the at least one of the one or more zone scenes to be displayed comprises causing

an indication of the group configuration associated with the two or more independent playback

devices to be displayed.


3.      (Original)  The multimedia controller of claim 2, wherein the indication of the group

configuration comprises one group of independent playback devices.


4.      (Original)  The multimedia controller of claim 3, wherein the indication of the group

configuration comprises two or more groups of independent playback devices.

5.      (Original)  The multimedia controller of claim 1, further configured to:

after causing the indication of the at least one of the one or more zone scenes to be

displayed, cause at least one of the one or more zone scenes to be activated.


6.      (Original)  The multimedia controller of claim 1, further configured to:

after causing the indication of the at least one of the one or more zone scenes to be

displayed, cause one of the at least one of the one or more zone scenes to be activated.


7.      (Original)  The multimedia controller of claim 1, further configured to:

before receiving the zone configuration data, send, to the first independent playback

device, a command to save the at least one of the one or more zone scenes.


8.      (Original)  The multimedia controller of claim 7, wherein the command to save the at

least one of the one or more zone scenes comprises (a) an indication of two or more independent

playback devices identified by the zone scene and (b) at least one other parameter pertaining to

the scene.


9.      (Original)  The multimedia controller of claim 8, wherein the at least one other parameter

pertaining to the scene is one or more of (i) a volume level, (ii) a specific music, (iii) a play

mode, or (iv) an equalization.


10.      (Original)  The multimedia controller of claim 1, wherein each of the independent

playback devices is associated with a name.

11.     (Original)  The multimedia controller of claim 1, wherein each of the one or more zone scenes is associated with a name.

12.     (Original)  A method comprising:

receiving, by a multimedia controller including a processor, via a network interface, zone configuration data from a first independent playback device, wherein the zone configuration data is configured via the controller and maintained at the first independent playback device, and wherein the zone configuration data characterizes one or more zone scenes, wherein at least one of the one or more zone scenes identifies a group configuration associated with two or more independent playback devices; and

causing a selectable indication of the at least one of the one or more zone scenes to be displayed, wherein the displayed selectable indication is selectable to cause the one or more zone scenes to be invoked by the two or more independent playback devices.

13.     The method of claim 12, wherein causing the selectable indication of the at least one of the one or more zone scenes to be displayed comprises causing an indication of the group configuration associated with the two or more independent playback devices to be displayed.

14.     (Original)  The method of claim 13, wherein the indication of the group configuration comprises one group of independent playback devices.

15.     (Original)  The method of claim 14, wherein the indication of the group configuration comprises two or more groups of independent playback devices.

16.     (Original)  The method of claim 12, further comprising:

         after causing the indication of the at least one of the one or more zone scenes to be displayed, causing at least one of the one or more zone scenes to be activated.

17.     (Original)  The method of claim 12, further comprising:

         after causing the indication of the at least one of the one or more zone scenes to b displayed, causing one of the at least one of the one or more zone scenes to be activated.

18.     (Original)  The method of claim 12, further comprising:

         before receiving the zone configuration data, sending, to the first independent playback device, a command to save the at least one of the one or more zone scenes.

19.     (Original)  The method of claim 18, wherein the command to save the at least one of the one or more zone scenes comprises (a) an indication of two or more independent playback devices identified by the zone scene and (b) at least one other parameter pertaining to the scene.

20.     (Original)  The method of claim 19, wherein the at least one other parameter pertaining to the scene is one or more of (i) a volume level, (ii) a specific music, (iii) a play mode, or (iv) an equalization.

21.     (Original)  The method of claim 12, wherein each of the independent playback devices is associated with a name.

22.     (Original)  The multimedia controller of claim 12, wherein each of the one or more zone scenes is associated with a name.

23.     (Original)  A non-transitory computer-readable medium having stored therein instructions executable by one or more processors to cause a computing device to perform operations comprising:

receiving, via a network interface, zone configuration data from a first independent playback device, wherein the zone configuration data is configured via the controller and maintained at the first independent playback device, and wherein the zone configuration data characterizes one or more zone scenes, wherein at least one of the one or more zone scenes identifies a group configuration associated with two or more independent playback devices; and

causing a selectable indication of the at least one of the one or more zone scenes to be displayed, wherein the displayed selectable indication is selectable to cause the one or more zone scenes to be invoked by the two or more independent playback devices.

24.     (Original)  The non-transitory computer readable medium of claim 23, wherein causing the selectable indication of the at least one of the one or more zone scenes to be displayed comprises causing an indication of the group configuration associated with the two or more independent playback devices to be displayed.

6

25.    (Original)  The non-transitory computer readable medium of claim 24, wherein the indication of the group configuration comprises one group of independent playback devices.

26.    (Original)  The non-transitory computer readable medium of claim 25, wherein the indication of the group configuration comprises two or more groups of independent playback devices.

27.    (Original)  The non-transitory computer readable medium of claim 23, wherein the operations further comprise:

after causing the indication of the at least one of the one or more zone scenes to be displayed, causing at least one of the one or more zone scenes to be activated.

28.    (Original)  The non-transitory computer readable medium of claim 23, wherein the operations further comprise:

after causing the indication of the at least one of the one or more zone scenes to be displayed, causing one of the at least one of the one or more zone scenes to be activated.

29.    (Original)  The non-transitory computer readable medium of claim 23, wherein the operations further comprise:

before receiving the zone configuration data, sending, to the first independent playback device, a command to save the at least one of the one or more zone scenes.

30.     (Original)  The non-transitory computer readable medium of claim 29, wherein the command to save the at least one of the one or more zone scenes comprises (a) an indication of two or more independent playback devices identified by the zone scene and (b) at least one other parameter pertaining to the scene.

31.     (Original)  The non-transitory computer readable medium of claim 30, wherein the at least one other parameter pertaining to the scene is one or more of (i) a volume level, (ii) a specific music, (iii) a play mode, or (iv) an equalization.

32.     (Original)  The non-transitory computer readable medium of claim 23, wherein each of the independent playback devices is associated with a name.

33.     (Original)  The non-transitory computer readable medium of claim 23, wherein each of the one or more zone scenes is associated with a name.

REMARKS

**1.      Summary of the Office Action**

In the Non-Final Office Action mailed April 25, 2018 ("the Action"), the Examiner stated

that the disclosures of the prior filed applications, to which the current application claims

priority, fail to provide adequate support or enablement in the manner provided by 35 U.S.C.

112(a) or pre-AIA 35 U.S.C. 112, first paragraph for one or more claims of this application.  The

Examiner also rejected claims 1-33 under 35 U.S.C. § 103 as allegedly unpantentable over

Yamaha DME Designer Version 3.5 ("DME").


**2.      Status of the Claims**

Claims 1-33 are pending, of which claims 1, 12, and 23 are independent and the

remainder are dependent.


**3.      Response to Examiner's Statements Regarding Priority Claim**

In the current rejection, the Examiner stated that "[t]he recited display of a selectable

indication of a zone scene which upon selection invokes the zone scene onto plural of the

playback devices lacks written description" in the applications to which the present application

claims priority.  Applicant respectfully disagrees, and points the Examiner to at least Appendix A

to the specification filed in the provisional application No. 60/825,407, at pages 5-8.  Therein,

Appendix A discusses and illustrates several examples of a "selectable indication of the at least

one of the one or more zone scenes," which are "selectable to cause the one or more zone scenes

to be invoked by the two or more independent playback devices."

Because this disclosure in provisional application No. 60/825,407 provides written description support for the cited portion of the present claims, the present application should be afforded the September 12, 2006 priority date of the provisional application.  Further, and with reference to MPEP 2159.02, the present application does not contain, nor has it contained at any time, "a claim to a claimed invention that has an effective filing date that is on or after March 16, 2013."

4.      **Response to Rejections under 35 U.S.C. § 103**

As noted above, the Examiner rejected claims 1-33 as allegedly unpatentable over Yamaha DME Designer Version 3.5 ("DME Manual").  Applicant respectfully traverses, and submits that the cited reference does not describe all features of independent claims 1, 12, and 23.  In particular, in the Examiner's "Reasons for Allowance" of application 14/465,457, to which the current application claims priority, the Examiner identified claim limitations in that application that were not taught in the prior art.  Applicant submits that the same allowable claim limitations are present in the current claims.

For example, the DME Manual does not teach or suggest at least ". . . wherein the zone configuration data is configured via the controller and maintained at the first independent playback device, and wherein the zone configuration data characterizes one or more zone scenes, wherein at least one of the one or more zone scenes identifies a group configuration associated with two or more independent playback devices" in combination with the other elements in claims 1, 12, and 23.

Rather, the DME Manual discloses a group master DME that maintains a group configuration associated with, at most, *one* independent playback device.  The DME Manual discloses the connection of a DME Designer application (*e.g.*, running on a personal computer)

to a DME unit that is a "group master" of a given device group.   DME Manual p. 3-4.
Configurations and scenes for the device group can be edited via the DME Designer and synced
with the group master DME.  *Id.* at p. 40-51.  But other DME units within the same device group
are not "independent playback devices", rather they are "slave" devices controlled via the group
master DME.   *Id.* at p. 3 ("Each device Group has one 'Group Master.'");  *id.* at p. 4 ("By
connecting the computer on which the DME Designer application is running to a Group Master,
it becomes possible to control multiple devices simultaneously.").  Thus, the DME Manual does
not teach or suggest that the group master DME maintains a group configuration associated with
a second group master DME.

Because DME does not teach or suggest all of the elements recited in independent claims
1, 12, and 23, independent claims 1, 12, and 23 are patentable over the cited references.  Further,
dependent claims 2-11, 13-22, and 24-33 are patentable over the cited references for at least the
reason that they depend from patentable independent claims.

**5.      Conclusion**

In view of the foregoing, Applicant respectfully requests favorable action.  Applicant
does not acquiesce in any assertion in the office action that is not expressly addressed by these
remarks.  The Examiner is invited to call the undersigned at (312) 913-3377 with any questions
or comments.

Respectfully submitted,

**MCDONNELL BOEHNEN
HULBERT & BERGHOFF LLP**

Date:  October 25, 2018           By:  /Brandon J. Kennedy/
                                        Brandon J. Kennedy
                                        Reg. No. 67,894

# UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/130,919 | 04/15/2016 | Robert A. Lambourne | 07-0901-CON0416 | 9288 |

107361          7590          11/14/2018
McDonnell Boehnen Hulbert & Berghoff LLP
Sonos, Inc.
300 South Wacker Drive
Chicago, IL 60606

| EXAMINER |
|---|
| MCCORD, PAUL C |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2656 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 11/14/2018 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

| *Office Action Summary* | Application No.<br>15/130,919 | Applicant(s)<br>Lambourne, Robert A. | |
|---|---|---|---|
| | Examiner<br>PAUL C MCCORD | Art Unit<br>2656 | AIA Status<br>No |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☑ Responsive to communication(s) filed on <u>10/25/18</u>.
   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.
2a) ☑ This action is **FINAL.**   2b) ☐ This action is non-final.
3) ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.
4) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims***

5) ☑ Claim(s) <u>1-33</u> is/are pending in the application.
   5a) Of the above claim(s) _____ is/are withdrawn from consideration.
6) ☐ Claim(s) _____ is/are allowed.
7) ☑ Claim(s) <u>1-33</u> is/are rejected.
8) ☐ Claim(s) _____ is/are objected to.
9) ☐ Claim(s) _____ are subject to restriction and/or election requirement
* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to **PPHfeedback@uspto.gov.**

**Application Papers**

10) ☐ The specification is objected to by the Examiner.
11) ☐ The drawing(s) filed on _____ is/are: a) ☐ accepted or b) ☐ objected to by the Examiner.
   Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
   Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
   **Certified copies:**
   a) ☐ All  b) ☐ Some**  c) ☐ None of the:
   1. ☐ Certified copies of the priority documents have been received.
   2. ☐ Certified copies of the priority documents have been received in Application No. _____.
   3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).
** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☐ Notice of References Cited (PTO-892)
2) ☐ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b)  Paper No(s)/Mail Date _____.
3) ☐ Interview Summary (PTO-413)  Paper No(s)/Mail Date _____.
4) ☐ Other: _____.

Application/Control Number: 15/130,919                                                      Page 2
Art Unit: 2656

*Notice of Pre-AIA or AIA Status*

The present application is being examined under the pre-AIA first to invent provisions.

DETAILED ACTION

*Priority*

1.      Applicant's assertion of priority as resolving the subject matter in Pages 4-8 of the Appendix to the Provisional Specification filed 9/12/06 is accepted and the priority date of the instant claims is considered to resolve the 9/12/06.

*Claim Rejections - 35 USC § 103*

2.      In the event the determination of the status of the application as subject to AIA 35 U.S.C. 102 and 103 (or as subject to pre-AIA 35 U.S.C. 102 and 103) is incorrect, any correction of the statutory basis for the rejection will not be considered a new ground of rejection if the prior art relied upon, and the rationale supporting the rejection, would be the same under either status.

3.      The following is a quotation of 35 U.S.C. 103 which forms the basis for all obviousness rejections set forth in this Office action:

> A patent for a claimed invention may not be obtained, notwithstanding that the claimed invention is not identically disclosed as set forth in section 102 of this title, if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains.  Patentability shall not be negated by the manner in which the invention was made.

4.      The factual inquiries set forth in *Graham v. John Deere Co.*, 383 U.S. 1, 148 USPQ 459 (1966),

that are applied for establishing a background for determining obviousness under 35 U.S.C. 103 are

summarized as follows:

    1. Determining the scope and contents of the prior art.

    2. Ascertaining the differences between the prior art and the claims at issue.

    3. Resolving the level of ordinary skill in the pertinent art.

    4. Considering objective evidence present in the application indicating obviousness or

nonobviousness.

5.      Claims 1-33 rejected under 35 U.S.C. 103 as being unpatentable over Yamaha DME Designer

Version 3.5 (hereinafter DME: manual provided by Examiner; available for sale and manual copyright at

least 2004).

6.      Regarding claim 1, 12, 23

        DME teaches:

        A multimedia controller, method and medium bearing coded instructions for and

including a processor, the controller configured to:

        receive, via a network interface, zone configuration data from a first independent

playback device (DME: pp 3-8; Ch. 3, 4; Particularly pp 193-186: DME configuration files

comprising zones, scenes, configurations, etc. saved on any of plural independent playback

devices in the form of each/any DME type device(s) in a configuration, the DME device accessed

and the DME configuration data retrieved over a network by/to a controller in the form of a

personal computer; the DME type playback devices; absent specific lexicographical definition in

the specification as filed Examiner considers the broadest reasonable interpretation of an

independent device as a device which is physically discrete and/or distinct from another device;

in this context see DME pp 8; each DME device is physically distinct, independently powered,

Application/Control Number: 15/130,919                                          Page 4
Art Unit: 2656

independently operable or groupable as a zone scene and supportive of independently

addressable sets of inputs and outputs ),

      wherein the zone configuration data is configured via the controller (DME: pp 3-8, 47-

51; Ch. 4, 6: a controller operates to configure zones, scenes, configurations, etc. the

configurations comprising components, parameters, etc. edited and saved by the controller and

instantiated upon the DME device(s)) and

      maintained at the first independent playback device (DME: pp 3-8; 47-51, 54-69:

configurations may be saved to, instantiated upon the DME device(s)), and

      wherein the zone configuration data characterizes one or more zone scenes (DME: pp 3-

8; 47-51, 54-69, Ch. 4, 6: a configuration characterizes a zone, scene, etc. as a collection of

components and a description of connections between/among said components) wherein at

least one of the one or more zone scenes identifies a group configuration associated with two or

more independent playback devices (DME: pp 3-8: configurations comprise user definable

groupings of components/connections instantiable on/over up to 16 independent playback

devices); and

      cause a selectable indication of the at least one of the one or more zone scenes to be

displayed (DME: pp 38-41; 92-95, Ch. 4, 5; see also pp 493-499: configuration manager

comprises a displayed indication of available zones, scenes which may be selectably opened,

edited , saved, closed, deleted, etc. by the user, the selectable file controls operable upon the

controller or upon the front screen of each/any of the independent playback device(s),

opened/edited zone scenes instantiated upon the plurality of playback devices using a

synchronization command or front panel controls, please compare the instant selection from a

menu shown in DME pp38-41 with the instant claimed indicator selectable from a menu on p 8

of the 9/12/06 Appendix to the Specification; DME also teaches a clickable icon operable to

Application/Control Number: 15/130,919                                          Page 5
Art Unit: 2656

select a scene; the independent playback devices also display a menu operable to "cause a

selectable indication of the at least one of the one or more zone scenes to be displayed," see pp

496), wherein the displayed selectable indication is selectable to cause the one or more zone

scenes to be invoked by the two or more independent playback devices (DME: pp 38-41, 92-95,

Ch. 4, 5; see also pp 493-499).

       DME causes an indication to be displayed which is provided by the utility of an open or

new command sufficient to open or create a zone scene for instantiation on the plurality of

playback devices (see at least DME pp 3-8; 47-51, 54-69, 92-95) these operations function to

open or otherwise instantiate a particular configuration of players. This is considered

substantially similar to the disclosed invocation of a scene such as upon the instant disclosed

players upon the event of a stored alarm configuration (see ¶ 57-60; Fig 3A, 4 of the instant

PGPub: 20160234615; Examiner must point out that this is the extent of the indication disclosed

by the 60825407, 11853790, 13896829 applications) DME further discloses the display of

selectable indications that invoke particular scenes based on a user selection of the displayed

selectable indicator (DME 493-499: by user selection of the P 495 displayed scene 1, scene 2,

etc.). DME admits of separate possibilities for such an invocation of scenes upon DME type

devices using controls such as the P 495 scene instantiation an embodiment where each of the

scene controls operate to select configurations using a single DME type device, an embodiment

where a scene control such as "scene 1" operates to invoke a configuration on one DME type

device and where a second scene control "scene 2" operates on to invoke a configuration on a

setup comprising plural (2 to 16) DME type devices, and an embodiment where each scene

control "scene 1," "scene 2," etc. operates to invoke configurations comprising plural DME type

devices. As such Examiner considers that it would have been obvious to one of ordinary skill in

the art on or before the effective priority date of the instant application to operate the DME

disclosed displayed selectable indicators to cause one or more zone scenes to be invoked on

two or more playback devices. As this would comprise no more than a choice between a finite

number of identified predictable solutions, with a reasonable expectation of success such a

configuration would have been obvious to try. The average skilled practitioner would have been

motivated to do so for the purpose of quickly instantiating enterprise wide configurations of 2 to

16 DME type devices and would have expected no more than predictable results therefrom.

7.       Regarding claim 2, 13, 24

         DME teaches or suggests:

         A multimedia controller, method and medium bearing coded instructions, wherein

causing the selectable indication of the at least one of the one or more zone scenes to be

displayed comprises causing an indication of the group configuration associated with the two or

more independent playback devices to be displayed. (DME: pp 3-8; 47-69, 92-95, Ch. 4, 5; see

also pp 493-499: configurations may be opened or otherwise displayed, edited or otherwise

operated upon and instantiated to the playback devices (s), saved, etc.)

8.       Regarding claim 2, 13, 24

         DME teaches or suggests:

         A multimedia controller, method and medium bearing coded instructions wherein the

indication of the group configuration comprises one group of independent playback devices

(DME: pp 3-8; 47-69, 92-95, Ch. 4, 5; see also pp 493-499: up to 16 playback devices may be

configured, operated upon, etc.).

9.       Regarding claim 4, 15, 26

         DME teaches or suggests:

         A multimedia controller, method and medium bearing coded instructions wherein the

indication of the group configuration comprises two or more groups of independent playback

Application/Control Number: 15/130,919                                                    Page 7
Art Unit: 2656

devices (DME: pp 3-8; 47-69, 92-95, Ch. 4, 5; see also pp 493-499: up to 16 playback devices may

be variously grouped).

10.      Regarding claim 5, 16, 27

         DME teaches or suggests:

         A multimedia controller, method and medium bearing coded instructions further

configured to: after causing the indication of the at least one of the one or more zone scenes to

be displayed, cause at least one of the one or more zone scenes to be activated (DME: pp 92-95,

Ch. 4, 5; see also pp 493-499: configuration manager comprises a displayed indication of

available zones, scenes which may be selectably opened, edited , saved, closed, deleted, etc. by

the user, the selectable file controls operable upon the controller or upon the front screen of

each/any of the independent playback device(s), opened/edited zone scenes instantiated upon

the plurality of playback devices using a synchronization command or front panel controls).

11.      Regarding claim 6, 17, 28

         DME teaches or suggests:

         A multimedia controller, method and medium bearing coded instructions further

configured to: after causing the indication of the at least one of the one or more zone scenes to

be displayed, cause one of the at least one of the one or more zone scenes to be activated

(DME: pp 92-95, Ch. 4, 5; see also pp 493-499: configuration manager comprises a displayed

indication of available zones, scenes which may be selectably opened, edited , saved, closed,

deleted, etc. by the user, the selectable file controls operable upon the controller or upon the

front screen of each/any of the independent playback device(s), opened/edited zone scenes

instantiated upon the plurality of playback devices using a synchronization command or front

panel controls).

12.      Regarding claim 7, 18, 29

DME teaches or suggests:

A multimedia controller, method and medium bearing coded instructions further

configured to: before receiving the zone configuration data, send, to the first independent

playback device, a command to save the at least one of the one or more zone scenes (DME: pp

3-8; 47-69: configurations saved to particular any independent playback device(s), a

configuration must be saved in order to be further opened, received, etc.).

13.        Regarding claim 8, 19, 30

DME teaches or suggests:

A multimedia controller, method and medium bearing coded instructions wherein the

command to save the at least one of the one or more zone scenes comprises (a) an indication of

two or more independent playback devices identified by the zone scene and (b) at least one

other parameter pertaining to the scene (DME: pp 3-8; 47-51, 54-69, Ch. 4, 6: a configuration

characterizes a zone, scene, etc. as a collection of components instantiated on/over plural

independent playback devices and a description of connections between/among said

components and devices).

14.        Regarding claim 9, 20, 31

DME teaches or suggests:

A multimedia controller, method and medium bearing coded instructions wherein the at

least one other parameter pertaining to the scene is one or more of (i) a volume level (DME: pp

3-8; 47-51, 54-69, Ch. 4, 6: volume controls variously managed by at least mixer components as

well as other among the output controls), (ii) a specific music (DME: Ch. 3, 6: analog input

controls define the specific audio input to a particular channel in the configuration or a wav file

to a particular channel), (iii) a play mode (DME: Ch. 3, 6: play modes include determinations of

specific music by directing an input to a channel or a wav file to a channel), or (iv) an

Application/Control Number: 15/130,919                                    Page 9
Art Unit: 2656

equalization (DME: Ch. 6: equalization parameters saved, edited instantiated by at least

equalizer components included in a zone, scene, configuration).

15.      Regarding claim 10, 21, 32

          DME teaches or suggests:

          A multimedia controller, method and medium bearing coded instructions, wherein each

of the independent playback devices is associated with a name (DME: pp 3-8; 47-51, 54-69:

various DME type devices identified by name).

16.      Regarding claim 11, 22, 33

          DME teaches or suggests:

          A multimedia controller, method and medium bearing coded instructions, wherein each

of the one or more zone scenes is associated with a name (DME: pp 3-8; 47-51, 54-69, Ch. 4, 6:

configurations saved, opened, instantiated by name).


                                    *Response to Arguments*


17.      Applicant's arguments filed 10/25/18 have been fully considered but they are not persuasive.

          Applicant argues: "the Examiner's "Reasons for Allowance" of application 14/465,457, to which

the current application claims priority, the Examiner identified claim limitations in that application that

were not taught in the prior art." The claims in the '457 application diverge from, and are considerably

more specific than the instant claims. As Applicant admits in the response filed 4/18/16 in the '457

application: "patentability of the claims does not necessarily rest on only the aspects that the Examiner

listed in the statement of reasons for allowance."

Application/Control Number: 15/130,919                                                    Page 10
Art Unit: 2656

Regarding the instant prior art rejection Applicant argues unpersuasively that the DME

specification does not at least suggest ". . . wherein the zone configuration data is configured via the

controller and maintained at the first independent playback device, and wherein the zone configuration

data characterizes one or more zone scenes, wherein at least one of the one or more zone scenes

identifies a group configuration associated with two or more independent playback devices." Applicant

asserts that DME discloses a master DME which is associated at most with one independent playback

device." DME in fact discloses that zone scenes identify group configurations associated with up to as

many as 16 devices in a group and 32 such groups in a zone (see DME P 3).

Applicant then argues unpersuasively for a particular definition of term "independent playback

devices." However as noted above the specification does not bear a clear definition of independence. As

such Examiner considers an independent device as a device capable of operation without reliance on

another device for such operation.  In Examiners broadly reasonable interpretation each DME device is

physically distinct; independently powered; independently operable and/or groupable as a zone scene;

and supportive of independently addressable sets of inputs and outputs (see DME pp 3-8 for an overview

of the independent functionality of DME devices as well as the groupwise capability of DME devices

configures as zone, scenes, etc.).

Applicant's argument are thus considered not persuasive and no claims are currently allowable.


*Conclusion*

**THIS ACTION IS MADE FINAL.**  Applicant is reminded of the extension of time policy as set forth

in 37 CFR 1.136(a).

A shortened statutory period for reply to this final action is set to expire THREE MONTHS from

the mailing date of this action.  In the event a first reply is filed within TWO MONTHS of the mailing date

of this final action and the advisory action is not mailed until after the end of the THREE-MONTH

Application/Control Number: 15/130,919                                                          Page 11
Art Unit: 2656

shortened statutory period, then the shortened statutory period will expire on the date the advisory

action is mailed, and any extension fee pursuant to 37 CFR 1.136(a) will be calculated from the mailing

date of the advisory action.  In no event, however, will the statutory period for reply expire later than

SIX MONTHS from the mailing date of this final action.

Any inquiry concerning this communication or earlier communications from the examiner

should be directed to PAUL C MCCORD whose telephone number is (571)270-3701.  The examiner can

normally be reached on 730-630 M-F.

Examiner interviews are available via telephone, in-person, and video conferencing using a

USPTO supplied web-based collaboration tool. To schedule an interview, applicant is encouraged to use

the USPTO Automated Interview Request (AIR) at http://www.uspto.gov/interviewpractice.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor,

Curtis Kuntz can be reached on (571) 272-7499.  The fax phone number for the organization where this

application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application

Information Retrieval (PAIR) system.  Status information for published applications may be obtained

from either Private PAIR or Public PAIR.  Status information for unpublished applications is available

through Private PAIR only.  For more information about the PAIR system, see http://pair-

direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer

Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR

CANADA) or 571-272-1000.


/PAUL C MCCORD/
Primary Examiner, Art Unit 2656