# EXHIBIT 24

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/130,919 | 04/15/2016 | Robert A. Lambourne | 07-0901-CON0416 | 9288 |

135176          7590          08/06/2020
LS3 Sonos
Lee Sullivan Shea & Smith LLP
656 W. Randolph St.
Floor 5W
Chicago, IL 60661

| EXAMINER |
|---|
| MCCORD, PAUL C |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2654 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 08/06/2020 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

ls3_docketing@cardinal-ip.com
york@ls3ip.com

PTOL-90A (Rev. 04/07)

| *Office Action Summary* | Application No. 15/130,919 | Applicant(s) Lambourne, Robert A. | |
|---|---|---|---|
| | Examiner PAUL C MCCORD | Art Unit 2654 | AIA (FITF) Status No |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☑ Responsive to communication(s) filed on <u>5/12/20</u>.
   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.
2a) ☐ This action is **FINAL**.   2b) ☑ This action is non-final.
3) ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.
4) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims***

5) ☑ Claim(s) <u>1-4,7-15,18-26 and 29-39</u> is/are pending in the application.
   5a) Of the above claim(s) _____ is/are withdrawn from consideration.
6) ☐ Claim(s) _____ is/are allowed.
7) ☑ Claim(s) <u>1-4,7-15,18-26 and 29-39</u> is/are rejected.
8) ☐ Claim(s) _____ is/are objected to.
9) ☐ Claim(s) _____ are subject to restriction and/or election requirement

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to **PPHfeedback@uspto.gov.**

**Application Papers**

10) ☐ The specification is objected to by the Examiner.
11) ☐ The drawing(s) filed on _____ is/are:  a) ☐ accepted or  b) ☐ objected to by the Examiner.
   Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
   Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12) ☐ Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
   **Certified copies:**
   a) ☐ All   b) ☐ Some**   c) ☐ None of the:
   1. ☐ Certified copies of the priority documents have been received.
   2. ☐ Certified copies of the priority documents have been received in Application No. _____.
   3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).
** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☐ Notice of References Cited (PTO-892)
2) ☑ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b)
   Paper No(s)/Mail Date _____.
3) ☑ Interview Summary (PTO-413)
   Paper No(s)/Mail Date _____.
4) ☐ Other: _____.

Application/Control Number: 15/130,919                                                    Page 2
Art Unit: 2654

*Notice of Pre-AIA or AIA Status*

The present application is being examined under the pre-AIA first to invent provisions.

**DETAILED ACTION**

*Priority*

1.      The later-filed application must be an application for a patent for an invention which is also

disclosed in the prior application (the parent or original nonprovisional application or provisional

application). The disclosure of the invention in the parent application and in the later-filed application

must be sufficient to comply with the requirements of 35 U.S.C. 112(a) or the first paragraph of pre-AIA

35 U.S.C. 112, except for the best mode requirement.  See *Transco Products, Inc. v. Performance*

*Contracting, Inc.*, 38 F.3d 551, 32 USPQ2d 1077 (Fed. Cir. 1994)

The disclosure of the prior-filed application, Application No. 60825407, 11853790, 13896829,

14465457 fails to provide adequate support or enablement in the manner provided by 35 U.S.C. 112(a)

or pre-AIA 35 U.S.C. 112, first paragraph for one or more claims of this application.  The claimed causing

of "selectable indications of the two or more zone scenes to be simultaneously displayed, wherein the

displayed selectable indications are each selectable to cause a respective one of the two or more zone

scenes to be invoked by the first zone player" is not supported in the prior-filed applications and is

afforded the filing date of the instant application, 4/12/19, as the priority date.

*Claim Rejections - 35 USC § 103*

Application/Control Number: 15/130,919                                              Page 3
Art Unit: 2654

2.        In the event the determination of the status of the application as subject to AIA 35 U.S.C. 102

and 103 (or as subject to pre-AIA 35 U.S.C. 102 and 103) is incorrect, any correction of the statutory

basis for the rejection will not be considered a new ground of rejection if the prior art relied upon, and

the rationale supporting the rejection, would be the same under either status.

3.        The following is a quotation of 35 U.S.C. 103 which forms the basis for all obviousness rejections

set forth in this Office action:

> A patent for a claimed invention may not be obtained, notwithstanding that the claimed invention is
> not identically disclosed as set forth in section 102 of this title, if the differences between the claimed
> invention and the prior art are such that the claimed invention as a whole would have been obvious
> before the effective filing date of the claimed invention to a person having ordinary skill in the art to
> which the claimed invention pertains.  Patentability shall not be negated by the manner in which the
> invention was made.

4.        The factual inquiries set forth in *Graham v. John Deere Co.*, 383 U.S. 1, 148 USPQ 459 (1966),

that are applied for establishing a background for determining obviousness under 35 U.S.C. 103 are

summarized as follows:

        1. Determining the scope and contents of the prior art.

        2. Ascertaining the differences between the prior art and the claims at issue.

        3. Resolving the level of ordinary skill in the pertinent art.

        4. Considering objective evidence present in the application indicating obviousness or

nonobviousness.

5.        Claims 1-4, 7-15, 18-26, 29-39 rejected under 35 U.S.C. 103 as being unpatentable over Yamaha

DME Designer Version 3.5 (hereinafter DME: manual provided by Examiner; available for sale and

manual copyright at least 2004) further in view of Takemura: 20050195999 hereinafter Tak.

6.        Regarding claim 1, 12, 23

                DME teaches:

A computing device, multimedia controller, method and medium bearing coded instructions for and including one or more processors (DME: pp 3-8; Ch. 3, 4), the controller configured to:

while serving as a controller for a networked media playback system comprising a first zone player and a second zone player, wherein the first zone player is operating in a standalone mode in which the first zone player is configured to playback media individually (DME: pp 3-8, 492-499; Ch. 3, 4: each/any of a plurality of DME devices operable as a standalone player and further operable under direction of a user interface at least presented on a front panel of the standalone player to instantiate and playback media using only the processing, input and output resources upon the standalone player)

receive, via a network interface, zone configuration data (DME: pp 3-8, 47-51, 492-499; Ch. 3, 4; particularly pp 193-186: DME configuration files comprising zones, scenes, configurations, etc. saved on any of plural independent playback devices in the form of each/any DME type device(s) in a configuration, the DME device accessed and the DME configuration data retrieved over a network by/to a controller in the form of a personal computer and/or the front screen of each/any of the DME type playback devices; absent specific lexicographical definition in the specification as filed Examiner considers the broadest reasonable interpretation of an independent device as a device which is physically discrete and/or distinct from another device; in this context see DME pp 8; each DME device is physically distinct, independently powered, independently operable or groupable as a zone scene and supportive of independently addressable sets of inputs and outputs and operable by a controller operable to configure zones, scenes, configurations, etc. the configurations comprising components, parameters, etc. edited and saved by the controller and instantiated upon the

DME device(s) at the direction of the controller or the user interface upon the front panel of

each/any DME device) and

that characterizes two or more zone scenes (DME: pp 3-11; 47-51, 54-69, 80-95; 146,

147Ch. 4, 6: a configuration characterizes a zone, scene, etc. as a collection of components and a

description of connections between/among said components; with regard to the instant claimed

constellation of playback devices DME teaches a set of devices in a "device group" and that such

devices groups can comprise diverse sets of the device group devices each/any of the devices

saved and operable as part of a scene and that such device group scenes may be linked together

within a linked scene(s))

wherein

a first zone scene comprises a first group configuration including at least a first zone

player and a second zone player that are to be configured for synchronous playback of media

when the first zone scene is invoked (DME: pp 3-11; 47-51, 54-69, 80-95 492-499; Ch. 4, 6: a

device group comprising a first and second DME type playback device selectably instantiable by

a controller),

and wherein

a second zone scene comprises a second group configuration including the first zone

player but not the second zone player (DME: pp 3-11; 47-51, 54-69, 80-95 492-499; Ch. 4, 6:

controller operable to configure plural players within a device group including a grouping

comprising only a first DME type playback device selectably instantiable by a controller),

and cause selectable indications of the two or more zone scenes to be simultaneously

displayed (DME: pp 3-11; 38-41; 47-51; 55-63; 92-95, Ch. 4, 5; see also pp 492-499:

configuration manager comprises a displayed indication of available zones, scenes which may be

selectably opened, edited , saved, closed, deleted, etc. by the user, the selectable file controls

Application/Control Number: 15/130,919                                          Page 6
Art Unit: 2654

operable upon the controller or upon the front screen of each/any of the independent playback

device(s), opened/edited zone scenes instantiated upon the plurality of playback devices using a

synchronization command or front panel controls, please compare the instant selection from a

menu shown in DME pp 38-41 with the instant claimed indicator selectable from a menu on p 8

of the 9/12/06 Appendix to the Specification; DME also teaches a clickable icon operable to

select a scene; the independent playback devices also display a menu operable to "cause a

selectable indication of the at least one of the one or more zone scenes to be displayed," see pp

492-499),

      wherein the displayed selectable indications are each selectable to cause a respective

one of the two or more zone scenes to be invoked by the first <u>zone player</u> independent playback

device, etc. (DME: pp 3-11; 38-41, 80-95, 146-147; Ch. 4, 5; see also pp 492-499)

      based on the request, cause the first zone player to transition from operating in the

standalone mode to operating in accordance with the first group configuration such that the

first zone player is configure to coordinate with the at least second zone player to output media

in synchrony with the output of media by at least the second zone player (DME: pp 3-11, 38-41,

80-95, Ch. 4, 5; see also pp 492-499: a network of plural DME type zone players may by

selectively partitioned into plural scenes by the controller where each/any of the scenes may

comprise a particular configuration of first, second, etc. DME players).

      Further, DME strongly suggests a second zone scene comprises a second group

configuration including the first zone player and a third zone player but not the second zone

player.

      A device group of as many as 16 devices each/any of the devices operable to be

included or not included in a particular saved scene, that is, there may be multiple available

scenes in a device group and a scene manager allows selection among plural scenes,

Application/Control Number: 15/130,919                                    Page 7
Art Unit: 2654

furthermore scenes may be linked among device groups such that invoked scenes instantiate

operation upon a plurality of devices with a plurality of device groups (DME: pp 3-11; 47-51, 54-

69, 80-95, 146, 147, 492-499; Ch. 4, 6). Further, a first scene with a first device group may be

linked to a second scene upon a second device group in a linked scene such that on invocation

of a linked scene the first and second scenes are instantiated upon the first and second

subgroups.

     DME causes an indication to be displayed which is provided by the utility of an open or

new command sufficient to open or create a zone scene for instantiation on the plurality of

playback devices (see at least DME pp 3-11, 47-51, 54-69, 80-95, 146, 147, 492-499) these

operations function to open or otherwise instantiate a particular configuration of players. This is

considered substantially similar to the instant invocation of a scene such as upon the instant

disclosed players by user operation or upon the event of a stored alarm configuration (see ¶ 57-

60; Fig 3A, 4 of the instant PGPub: 20160234615; Examiner must point out that this is the extent

of the indication disclosed by the 60825407, 11853790, 13896829 applications) DME discloses

the display of selectable indications that invoke particular scenes based on a user selection of

the displayed selectable indicator (DME 493-499: by user selection of the P 495 displayed scene

1, scene 2, etc.). DME admits of separate possibilities for such an invocation of scenes upon

DME type devices using controls such as the P 495 scene instantiation: an embodiment where

each of the scene controls operate to select configurations using a single DME type device, an

embodiment where a scene control such as "scene 1" operates to invoke a configuration on one

DME type device and where a second scene control "scene 2" operates on to invoke a

configuration on a setup comprising plural (2 to 16) DME type devices, and an embodiment

where each scene control "scene 1," "scene 2," etc. operates to invoke configurations

comprising plural DME type devices.

Application/Control Number: 15/130,919                                                   Page 8
Art Unit: 2654

     In this way DME describes a hierarchy of plural resource zones comprising multiple device groups said device groups representing sets or subsets of available or otherwise addressable independent playback devices, a/any device group of independent playback devices selectable from multiple available playback device configurations wherein the device and groups thereof can be arranged in zone window common to all devices over multiple configurations by which a controller determines availability of operable parameters and performs operations thereon; said operations including selectable instantiation of and operations upon values of available operable parameter states comprising available resources located on any of a plurality of audio networking protocols suitable to discover, verify and operate available network devices (DME: pp 3-11, 80-95, 146, 147, 181-186, 265-265, 281-287, **473-485, 495-499**). DME further discloses the availability of diverse subsets of independently and simultaneously operable network devices instantiated based on an invocation of a scene wherein the scene comprises scene link information suitable to invoke a linked scene comprising scenes invoked within multiple DME device groups (DME: pp 3-11, 80-95, 146, 147).

     Nevertheless DME does not explicitly teach invocation of a second zone scene comprising a second group configuration including the first zone player and a third zone player but not the second zone player. However this is considered a reasonable permutation by which to compose or create a scene using the available DME devices

     Examiner takes official notice that the agnostic networked operation of satellite devices to particular device group instantiations was well known to the average skilled practitioner before the filing and/or invention date of the instant specification. The average skilled practitioner would been motivated to do so for the purpose of storing, editing, recalling **one or more zone scenes to be invoked on a variety of device groups said device groups including a variety of subsets of particular, first, second, sixteenth, etc. devices and** would have found such

Application/Control Number: 15/130,919                                        Page 9
Art Unit: 2654

permutations an obvious inclusion for quickly instantiating enterprise wide configurations of 2

to 16 DME type devices and would have expected no more than predictable results therefrom.

As evidence consider Tak which teaches a network of addressable independent

processing engines (Tak: ¶ 8-11; Fig 1) operably instantiable as a plurality of device groups (Tak:

¶ 60, 86-114; Fig 2, 4, 7) wherein a plurality of device configurations are available to each of

plural zones and said devices operate independently in a/any determined configuration and

each/any device may be operated independently or within independent groups wherein the

independent groups may or may not comprise a particular second, additional playback device

(Tak: ¶ 86-114; 131-158: Fig 2, 4, 7, 10) and wherein the system operates to cause selectable

indications of the two or more zone scenes to be simultaneously displayed, wherein the

displayed selectable indications are each selectable to cause a respective one of the two or

more zone scenes to be invoked by the first zone player (Tak: ¶ 86-114; 131-158: Fig 2, 4, 7, 10,

11). Thus an instantiated playback environment may comprise a standalone player and/or a user

designated set of available players (Tak: ¶ 86-114; 131-158: Fig 2, 4, 7, 10). That is, there can be

players not grouped into a zone which when not so grouped a zone operate independently and

when grouped into a zone operate synchronously (Tak: ¶ 86-114; 131-158: Fig 2, 4, 7, 10). It

would have been obvious to one of ordinary skill in the art before the effective filing date of the

instant application to group and/or subgroup the DME disclosed devices under direction of the

Tak taught user interface, commands, metadata, etc. to create, save, edit, recall, etc.

independent operational groupings of the available independent, addressable networked audio

devices. The average skilled practitioner would have been motivated to do so for the purpose of

instantiating a selectable variety of enterprise wide device configurations and operational

parameters upon groupings of DME type devices and would have expected predictable results

therefrom.

7.      Regarding claim 2, 13, 24

        DME in view of Tak teaches or suggests:

        A computing device, multimedia controller, method and medium bearing coded

instructions, wherein the program instructions that are executable by the at least one processor

and thereby cause the selectable indication of the first zone scene to be displayed comprise

program instructions that are execut6able by the at least one processor and thereby cause the

computing device to be configured to cause an indication of the first group configuration to be

displayed. (DME: pp 3-8; 47-69, 92-95, Ch. 4, 5; see also pp 493-499: configurations may be

opened or otherwise displayed, edited or otherwise operated upon and instantiated to the

playback devices (s), saved, etc. a particular configuration of device(s) is invoked using a

displayed scene indication); (Tak: ¶ 8-11, 60, 86-114; 131-158: Fig 2, 4, 7, 10).

8.      Regarding claim 3, 14, 25

        DME in view of Tak teaches or suggests:

        A computing device ,multimedia controller, method and medium bearing coded

instructions wherein the first group configuration consists of one group of zone players to be

configured for synchronous playback of media when the first zone scene is invoked (DME: pp 3-

8; 47-69, 92-95, Ch. 4, 5; see also pp 493-499: up to 16 playback devices may be configured,

operated upon, etc. and invoked using a displayed scene indication ); (Tak: ¶ 8-11, 60, 86-114;

131-158: Fig 2, 4, 7, 10).

9.      Regarding claim 4, 15, 26

        DME in view of Tak teaches or suggests:

        A computing device, multimedia controller, method and medium bearing coded

instructions wherein the first group configuration comprises two or more groups of zone

players, each respective group of zone payers configured for synchronous playback of respective

media when the first zone scene is invoked (DME: pp 3-8; 47-69, 92-95, 429-499 Ch. 4, 5; see

also pp 493-499: up to 16 playback devices may be variously grouped and configured for

playback of a particular media through particular device channels).

10.       Regarding claim 7, 18, 29

          DME in view of Tak teaches or suggests:

          A computing device, multimedia controller, method therefor and medium bearing

coded instructions further configured to: before receiving the zone configuration data, cause

storage of the zone configuration data characterizing the two or more zone scenes (DME: pp 3-

8; 47-69: plural configurations of one or more devices created on a user interface and particular

configurations saved to and/or invoked upon any independent playback device(s), a

configuration must be saved in order to be further opened, received, edited, etc. ); (Tak: ¶ 8-11,

60, 86-114; 131-158: Fig 2, 4, 7, 10).

11.       Regarding claim 8, 19, 30

          DME in view of Tak teaches or suggests:

          A computing device, multimedia controller, method and medium bearing coded

instructions wherein the zone configuration data characterizing the two or more zone scenes

comprises (a) an indication of at least the first zone player and the second zone player

comprising the first zone scene and (b) at least one other parameter pertaining to the first zone

scene (DME: pp 3-8; 47-51, 54-69, Ch. 4, 6: a configuration characterizes a zone, scene, etc. as a

collection of components and stored parameter values thereof instantiated on/over plural

independent playback devices and a description of connections between/among said

components and devices); (Tak: ¶ 8-11, 60, 86-114; 131-158: Fig 2, 4, 7, 10).

12.       Regarding claim 9, 20, 31

DME in view of Tak teaches or suggests:

A computing device, multimedia controller, method and medium bearing coded

instructions wherein the at least one other parameter pertaining to the first zone scene is one or

more of (i) a volume level (DME: pp 3-8; 47-51, 54-69, Ch. 4, 6: volume controls variously

managed by at least mixer components as well as other among the output controls), (ii) a

specific media item to be played back (DME: Ch. 3, 6: analog input controls define the specific

audio input to a particular channel in the configuration or a wav file to a particular channel), (iii)

a play back mode (DME: Ch. 3, 6: play modes include determinations of specific music by

directing an input to a channel or a wav file to a channel and or toggling between external in

internal sources), or (iv) an equalization (DME: Ch. 6: equalization parameters saved, edited

instantiated by at least equalizer components included in a zone, scene, configuration); (Tak: ¶

8-11, 60, 86-114; 131-158: Fig 2, 4, 7, 10).

13.      Regarding claim 10, 21, 32

         DME in view of Tak teaches or suggests:

         A computing device, multimedia controller, method and medium bearing coded

instructions, wherein each of the first zone player and the second zone player is associated with

a name (DME: pp 3-8; 47-51, 54-69: various DME type devices identified by name).

14.      Regarding claim 11, 22, 33

         DME in view of Tak teaches or suggests:

         A computing device, multimedia controller, method and medium bearing coded

instructions, wherein each of the two or more zone scenes is associated with a name (DME: pp

3-8; 47-51, 54-69, Ch. 4, 6: configurations saved, opened, instantiated by name); (Tak: ¶ 8-11,

60, 86-114; 131-158: Fig 2, 4, 7, 10).

15.      Regarding claim 34-39

Application/Control Number: 15/130,919                                                                 Page 13
Art Unit: 2654

DME in view of Tak teaches or suggests:

A computing device, multimedia controller, method and medium bearing coded

instructions, wherein the program instructions that are executable by the at least one processor

and thereby cause the computing device to be configured to cause storage of the zone

configuration data comprise program instructions that are executable by the at least one

processor and thereby cause the computing device to be configured to cause storage of the

zone configuration data at a location other than the computing device, including a first, second,

etc. zone player. (DME: pp 3-8; 47-51, 54-69, Ch. 4, 6: configurations saved, opened, instantiated

by name a configuration composed upon a computer hosted controller, user interface, etc. may

be saved to storage upon any among the DME type devices active upon the network and

operated upon by a user interface upon the network DME type device to perform the variously

disclosed controller operations); (Tak: ¶ 8-11, 60, 86-114; 131-158, 492-495: Fig 2, 4, 7, 10).


***Response to Arguments***


16.      Applicant's arguments filed 11/18/19 have been fully considered but they are not persuasive.

Particularly applicant argues DME in view of Takemura does not teach at least "a first zone scene

comprises a first group configuration including at least a first zone player and a second zone player. .. a

second zone scene comprises a second group configuration including the first zone player and a third

zone player but not the second zone player. .. cause selectable indications of the two or more zone

scenes to be simultaneously displayed. . ." in combination with the other elements in amended claims 1,

12, and 23.

Examiner respectfully disagrees. As shown above DME teaches that each/any DME device

comprises a user interface operable while each/any zone player is operable in the network (DME: pp 3-

Application/Control Number: 15/130,919                                            Page 14
Art Unit: 2654

8, 492-499). That is, either a DME operating standalone or in a configuration with other players

responds to directions input to its front panel user interface. Tak teaches that each/any DME device may

operate as a standalone device or as a first, second, etc. device in a network of synchronized DME

devices. (Tak: ¶ 86-114; 131-158: Fig 2, 4, 7, 10). When a scene is invoked upon the user interface a DME

device may select any configuration of DME devices either within a first device group and/or within a

second device group within a linked scene (DME: pp 3-11, 80-95, 146, 147, 181-186, 265-265, 281-287,

473-485, 495-499); (Tak: ¶ 86-114; 131-158: Fig 2, 4, 7, 10: particularly fig 7 shows that invoked scenes

partition a network of DME devices) and a scene or configuration when invoked configures the DME

type devices therein or linked thereto to transition from a current operating mode into an invoked

operating mode (DME: pp 3-11, 80-95, 146, 147, 181-186, 265-265, 281-287, 473-485, 495-499); (Tak: ¶

86-114; 131-158: Fig 2, 4, 7, 10). When a standalone device is used to invoke a configuration comprising

plural DME devices said set of plural devices are configured to coordinate to output media in synchrony

each device with each/any other device in the network (DME pp 3-8; 47-51, 54-69, 92-95, 492-499);

(Tak: ¶ 86-114; 131-158: Fig 2, 4, 7, 10).

Applicant further asserts that a DME unit cannot "cause selectable indications of the two or

more zone scenes to be simultaneously displayed" as found in Applicant's claims, wherein the first zone

player is included in two different group configurations. Rather, according to DME, an individual DME

unit within a given Zone cannot be assigned to multiple Device Groups or overlapping Device Groups.

And supports the assertion stating "This illustrates that the selection of a Scene in DME does not serve

to re-define the member units of a given Device Group. Rather, "Scene 004" in either alternative shown

on page 8 of DME corresponds to a given audio processing configuration for the current Device Group."

Examiner respectfully disagrees, the recitation of the independent claims does not require that

a zone operate outside a device group and furthermore each any DME device may operate to display a

plurality of invokable scenes (DME: pp 495-499) invocation of a scene may comprise activation of any of

the DME type devices within a device group or linked device group (DME: pp 3-11, 80-95, 146, 147, 495-499) whereupon devices not joined, grouped, etc. by invocation of a scene operate independently (Tak: ¶ 86-114; 131-158: Fig 2, 4, 7, 10, 11). As such it is not necessary to re-define member units in a device group as the member units may be variously grouped into operable zones or operate independently as depicted in Tak: Fig 7 (Tak: ¶ 86-114; 131-158: Fig 2, 4, 7, 10, 11).

Applicant submits that a recall of a "scene" in Takemura does not provide for the ability to shift between the groupings of Area 1 and Area 2 shown in FIG. 7. However this is directly contradicted by Tak at Fig 11 which illustrates the shift from Area 1 to Area 2 and changes the groupings of players, and zones therein (Tak: ¶ 86-114; 131-158: Fig 2, 4, 7, 10). And even assuming *arguendo* that a scene control of the kind referred by to the Examiner at p. 495 of DME cannot "cause selectable indications of the two or more zone scenes to be simultaneously displayed" simultaneous display sufficient to meet the claim is shown in Tak fig 10, 11 (Tak: ¶ 86-114; 131-158: Fig 2, 4, 7, 10).

As such the claims are considered obvious over DME in view of Tak, particularly inasmuch as Tak can be considered to describe operations of a network of DME type devices. As such Applicant's arguments are not persuasive and no claim currently stand allowable.

### Conclusion

Any inquiry concerning this communication or earlier communications from the examiner should be directed to PAUL C MCCORD whose telephone number is (571)270-3701.  The examiner can normally be reached on 730-630 M-F.

Examiner interviews are available via telephone, in-person, and video conferencing using a USPTO supplied web-based collaboration tool. To schedule an interview, applicant is encouraged to use the USPTO Automated Interview Request (AIR) at http://www.uspto.gov/interviewpractice.

Application/Control Number: 15/130,919                                                          Page 16
Art Unit: 2654

      If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor,

VIVIAN CHIN can be reached on 5712727848.  The fax phone number for the organization where this

application or proceeding is assigned is 571-273-8300.

      Information regarding the status of an application may be obtained from the Patent Application

Information Retrieval (PAIR) system.  Status information for published applications may be obtained

from either Private PAIR or Public PAIR.  Status information for unpublished applications is available

through Private PAIR only.  For more information about the PAIR system, see https://ppair-

my.uspto.gov/pair/PrivatePair. Should you have questions on access to the Private PAIR system, contact

the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information system, call 800-786-

9199 (IN USA OR CANADA) or 571-272-1000.

/PAUL C MCCORD/
Primary Examiner, Art Unit 2654

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 41569143 |
| **Application Number:** | 15130919 |
| **International Application Number:** | |
| **Confirmation Number:** | 9288 |
| **Title of Invention:** | Zone Scene Activation |
| **First Named Inventor/Applicant Name:** | Robert A. Lambourne |
| **Customer Number:** | 135176 |
| **Filer:** | Brandon Jacob Kennedy |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | 07-0901-CON0416 |
| **Receipt Date:** | 06-JAN-2021 |
| **Filing Date:** | 15-APR-2016 |
| **Time Stamp:** | 13:24:40 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | CARD |
| Payment was successfully received in RAM | $640 |
| RAM confirmation Number | E202116D25140624 |
| Deposit Account | 506632 |
| Authorized User | Brandon Kennedy |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |

37 CFR 1.16 (National application filing, search, and examination fees)

37 CFR 1.17 (Patent application and reexamination processing fees)

37 CFR 1.19 (Document supply fees)

37 CFR 1.20 (Post Issuance fees)

37 CFR 1.21 (Miscellaneous fees and charges)

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | 07-0901-CON0416_Response_to_NFOA.pdf | 164807<br><br>561cbeae20318b407eba76b919b6d5ac181ff02b | yes | 16 |

| | Multipart Description/PDF files in .zip description | | | | |
|---|---|---|---|---|---|
| | Document Description | | Start | | End |
| | Amendment/Req. Reconsideration-After Non-Final Reject | | 1 | | 1 |
| | Claims | | 2 | | 11 |
| | Applicant Arguments/Remarks Made in an Amendment | | 12 | | 16 |

**Warnings:**

**Information:**

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 2 | Fee Worksheet (SB06) | fee-info.pdf | 30762<br><br>7968f74cf12df5f02a1ebd86703496d16572a7a4 | no | 2 |

**Warnings:**

**Information:**

| | | | | | |
|---|---|---|---|---|---|
| | | **Total Files Size (in bytes):** | 195569 | | |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
**If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.**
**National Stage of an International Application under 35 U.S.C. 371**
**If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.**
**New International Application Filed with the USPTO as a Receiving Office**
**If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.**

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**
**(Attorney Docket No. 07-0901-CON0416)**

| | | |
|---|---|---|
| In the Application of: | ) | |
|     Robert Lambourne | ) | Examiner: McCord, Paul |
| | ) | |
| Serial No.: 15/130,919 | ) | Group Art Unit: 2654 |
| | ) | |
| Filed: April 15, 2016 | ) | Confirmation No. 9288 |
| | ) | |
| Title:   Zone Scene Activation | ) | |
| | ) | |

**RESPONSE TO NON-FINAL OFFICE ACTION**
**MAILED AUGUST 8, 2020**

In response to the Non-Final Office Action mailed August 8, 2020, Applicant submits the following amendments and remarks.

**Claim Amendments** begin at page 2.

**Remarks** begin at page 12.

Applicant believes that all fees required for the present response have been filed during the electronic filing process. Applicant authorizes the office to charge any underpayment or credit any overpayment to Deposit Account No. 506632, and to treat any filing in this matter that requires an extension of time as incorporating a request for the extension.

## CLAIM AMENDMENTS

1.      (Currently Amended) A computing device comprising:

one or more processors;

~~a wireless network interface configured to communicatively couple the computing device to a wireless data network;~~

a non-transitory computer-readable medium; and

program instructions stored on the non-transitory computer-readable medium that are executable by the at least one processor and thereby cause the computing device to be configured to:

while serving as a controller for a networked media playback system comprising a first zone player and a second zone player, wherein the first zone player is operating in a standalone mode in which the first zone player is configured to play back media ~~received over the wireless data network~~ individually:

receive, via ~~a the wireless~~ network interface, zone configuration data that characterizes two or more zone scenes, wherein a first zone scene comprises a first group configuration including at least a first zone player and a second zone player that are to be configured for synchronous playback of media ~~over the wireless data network~~ when the first zone scene is invoked, and wherein a second zone scene comprises a second group configuration including the first zone player and a third zone player but not the second zone player;

cause selectable indications of the two or more zone scenes to be simultaneously displayed, wherein the displayed selectable indications are each

selectable to cause a respective one of the two or more zone scenes to be invoked

by the first zone player; and

receive a request to invoke the first zone scene; and

based on the request, cause the first zone player to transition from operating in the

standalone mode to operating in accordance with the first group configuration such that the

first zone player is configured to coordinate with at least the second zone player over the

wireless data network to output media in synchrony with output of media by at least the

second zone player.

2.      (Previously Presented) The computing device of claim 1, wherein the program

instructions that are executable by the at least one processor and thereby cause the selectable

indication of the first zone scene to be displayed comprise program instructions that are executable

by the at least one processor and thereby cause the computing device to be configured to cause an

indication of the first group configuration to be displayed.

3.      (Previously Presented) The computing device of claim 1, wherein the first group

configuration consists of one group of zone players to be configured for synchronous playback of

media when the first zone scene is invoked.

4.      (Previously Presented) The computing device of claim 1, wherein the first group

configuration comprises two or more groups of zone players, each respective group of zone players

configured for synchronous playback of respective media when the first zone scene is invoked.

3

5.      (Canceled)


6.      (Canceled)


7.      (Previously Presented) The computing device of claim 1, further configured to:

before receiving the zone configuration data, cause storage of the zone configuration data

characterizing the two or more zone scenes.


8.      (Previously Presented) The computing device of claim 1, wherein the zone

configuration data characterizing the two or more zone scenes comprises (a) an indication of at

least the first zone player and the second zone player comprising the first zone scene and (b) at

least one other parameter pertaining to the first zone scene.


9.      (Previously Presented) The computing device of claim 8, wherein the at least one

other parameter pertaining to the first zone scene is one or more of (i) a volume level, (ii) a specific

media item to be played back, (iii) a play back mode, or (iv) an equalization.


10.     (Previously Presented) The computing device of claim 1, wherein each of the first

zone player and the second zone player is associated with a name.


11.     (Previously Presented) The computing device of claim 1, wherein each of the two

or more zone scenes is associated with a name.

12.    (Currently Amended) A method implemented by a computing device, the method comprising:

while serving as a controller for a networked media playback system comprising a first zone player and a second zone player, wherein the first zone player is operating in a standalone mode in which the first zone player is configured to play back media received over a wireless data network individually:

receiving, via a wireless network interface configured to communicatively couple the computing device to the wireless data network, zone configuration data that characterizes two or more zone scenes, wherein a first zone scene comprises a first group configuration including at least a first zone player and a second zone player that are to be configured for synchronous playback of media over the wireless data network when the first zone scene is invoked, and wherein a second zone scene comprises a second group configuration including the first zone player and a third zone player but not the second zone player; and

causing selectable indications of the two or more zone scenes to be simultaneously displayed, wherein the displayed selectable indications are each selectable to cause a respective one of the two or more zone scenes to be invoked by the first zone player; and

receiving a request to invoke the first zone scene; and

based on the request, causing the first zone player to transition from operating in the standalone mode to operating in accordance with the first group configuration such that the first zone player is configured to coordinate with at least the second zone player over the wireless data network to output media in synchrony with output of media by at least the second zone player.

13.     (Previously Presented) The method of claim 12, wherein causing the selectable indication of the first zone scene to be displayed comprises causing an indication of the first group configuration to be displayed.

14.     (Previously Presented) The method of claim 12, wherein the first group configuration consists of one group of zone players to be configured for synchronous playback of media when the first zone scene is invoked.

15.     (Previously Presented) The method of claim 12, wherein the first group configuration comprises two or more groups of zone players, each respective group of zone players configured for synchronous playback of respective media when the first zone scene is invoked.

16.     (Canceled)

17.     (Canceled)

18.     (Previously Presented) The method of claim 12, further comprising:

before receiving the zone configuration data, cause storage of the zone configuration data characterizing the two or more zone scenes.

19.     (Previously Presented)  The method of claim 12, wherein the zone configuration data characterizing the two or more zone scenes comprises (a) an indication of at least the first

zone player and the second zone player comprising the first zone scene and (b) at least one other parameter pertaining to the first zone scene.

20.     (Previously Presented) The method of claim 19, wherein the at least one other parameter pertaining to the first zone scene is one or more of (i) a volume level, (ii) a specific media item to be played back, (iii) a play back mode, or (iv) an equalization.

21.     (Previously Presented) The method of claim 12, wherein each of the first zone player and the second zone player is associated with a name.

22.     (Previously Presented) The method of claim 12, wherein each of the two or more zone scenes is associated with a name.

23.     (Currently Amended) A tangible, non-transitory computer-readable medium, wherein the non-transitory computer-readable medium is provisioned with program instructions that are executable by one or more processors such that a computing device is configured to:

    while serving as a controller for a networked media playback system comprising a first zone player and a second zone player, wherein the first zone player is operating in a standalone mode in which the first zone player is configured to play back media received over a wireless data network individually:

        receive, via a wireless network interface configured to communicatively couple the computing device to the wireless data network, zone configuration data that characterizes two or more zone scenes, wherein a first zone scene comprises a first group configuration

including at least a first zone player and a second zone player that are to be configured for synchronous playback of media ~~over the wireless data network~~ when the first zone scene is invoked, and wherein a second zone scene comprises a second group configuration including the first zone player and a third zone player but not the second zone player; and

cause selectable indications of the two or more zone scenes to be simultaneously displayed, wherein the displayed selectable indications are each selectable to cause one of the two or more zone scenes to be invoked by the first zone player; and

receive a request to invoke the first zone scene; and

based on the request, cause the first zone player to transition from operating in the standalone mode to operating in accordance with the first group configuration such that the first zone player is configured to coordinate with at least the second zone player ~~over the wireless data network~~ to output media in synchrony with output of media by at least the second zone player.

24.    (Previously Presented) The non-transitory computer readable medium of claim 23, wherein the program instructions that are executable by at least one processor such that the computing device is configured to cause the selectable indication of the first zone scene to be displayed comprise program instructions that are executable by at least one processor such that the computing device is configured to cause an indication of the first group configuration to be displayed.

25.    (Previously Presented) The non-transitory computer readable medium of claim 23, wherein the first group configuration consists of one group of zone players to be configured for synchronous playback of media when the first zone scene is invoked.

26.     (Previously Presented) The non-transitory computer readable medium of claim 23, wherein the first group configuration comprises two or more groups of zone players, each respective group of zone players configured for synchronous playback of respective media when the first zone scene is invoked.

27.     (Canceled)

28.     (Canceled)

29.     (Previously Presented) The non-transitory computer readable medium of claim 23, wherein the operations further comprise:

before receiving the zone configuration data, cause storage of the zone configuration data characterizing the two or more zone scenes.

30.     (Previously Presented)  The non-transitory computer readable medium of claim 23, wherein the zone configuration data characterizing the two or more zone scenes comprises (a) an indication of at least the first zone player and the second zone player comprising the first zone scene and (b) at least one other parameter pertaining to the first zone scene.

31.     (Previously Presented) The non-transitory computer readable medium of claim 30, wherein the at least one other parameter pertaining to the first zone scene is one or more of (i) a

volume level, (ii) a specific media item to be played back, (iii) a play back mode, or (iv) an equalization.

32.     (Previously Presented) The non-transitory computer readable medium of claim 23, wherein each of the first zone player and the second zone player is associated with a name.

33.     (Previously Presented) The non-transitory computer readable medium of claim 23, wherein each of the two or more zone scenes is associated with a name.

34.     (Previously Presented) The computing device of claim 7, wherein the program instructions that are executable by the at least one processor and thereby cause the computing device to be configured to cause storage of the zone configuration data comprise program instructions that are executable by the at least one processor and thereby cause the computing device to be configured to cause storage of the zone configuration data at a location other than the computing device.

35.     (Previously Presented)  The computing device of claim 34, wherein the location other than the computing device is the first zone player.

36.     (Previously Presented)  The method of claim 18, wherein causing storage of the zone configuration data comprises causing storage of the zone configuration data at a location other than the computing device.

37.     (Previously Presented)  The method of claim 36, wherein the location other than the computing device is the first zone player.


38.     (Previously Presented)  The non-transitory computer readable medium of claim 29, wherein the program instructions that are executable by at least one processor such that the computing device is configured to cause storage of the zone configuration data comprise program instructions that are executable by at least one processor such that the computing device is configured to cause storage of the zone configuration data at a location other than the computing device.


39.     (Previously Presented)  The non-transitory computer readable medium of claim 38, wherein the location other than the computing device is the first zone player.

## REMARKS

**1.     Summary of the Office Action**

In the Non-Final Office Action mailed August 8, 2020 (the "Action"), the Office asserted

that the prior-filed application(s) failed to provide adequate support or enablement for one or more

claims of the present application; rejected claims 1-4, 7-15, 18-26, and 29-39 under 35 U.S.C. §

103 as being allegedly unpatentable over Yamaha DME Designer Version 3.5 ("DME") further in

view of U.S. Patent Pub. 2005/0195999 ("Takemura").

**2.     Summary of Examiner Interview**

A telephonic Examiner Interview took place on November 2, 2020. Participants included

Examiner Paul McCord and Applicant's representative Brandon Kennedy.  During the interview, the

participants discussed the cited references, the rejections of the claims, and suggested amendments to

the claims.  No agreement regarding allowance was reached.  Applicant thanks the Examiner for his

time in conducting the interview.

**3.     Status of the Claims**

Without conceding the merits of the claim rejections, Applicant has amended claims 1, 12,

and 23.  Claims 1-4, 7-15, 18-26, and 29-39 are now pending, of which claims 1, 12, and 23 are

independent and the remainder are dependent.  No new matter has been added by way of these

amendments.

### 4.   Response to Statements Regarding Priority Claim

In the Action, the Examiner asserted that "causing of 'selectable indications of the two or more zone scenes to be simultaneously displayed, wherein the displayed selectable indications are each selectable to cause a respective one of the two or more zone scenes to be invoked by the first zone player' is not supported in the prior-filed applications." Action at p. 2.  Applicant respectfully disagrees and submits that support for this subject matter can be found in provisional application 60/825,407, at a minimum, in the example user interface figure shown on p. 5 of Appendix A to the Specification, reproduced below:



Accordingly, Applicant submits that the provisional application supports the subject matter identified by the Examiner, and that the present application should be afforded the filing date of the provisional application.

Further, Applicant notes that the subject matter noted above (and other subject matter) from the provisional application was previously inserted into the specification and figures of the present application, in accordance with 37 CFR 1.57(g), in Applicant's prior office action response filed on November 18, 2019.

5.      **Response to Rejections of Claims 1, 12, and 23 under 35 U.S.C. § 103**

As noted above, the Examiner rejected independent claims 1, 12, and 23 under § 103 as unpatentable over DME in view of Takemura.  Applicant respectfully disagrees, and submits that DME in view of Takemura does not teach at least a computing device that "receive[s], via the wireless network interface, zone configuration data that characterizes . . . a first zone player and a second zone player that are to be configured for synchronous playback of media over the wireless data network when the first zone scene is invoked" and "cause[s] the first zone player to . . . coordinate with at least the second zone player over the wireless data network to output media in synchrony with output of media by at least the second zone player" in combination with the other elements in amended claims 1, 12, and 23.

In particular, DME teaches an audio system including a DME Designer application running on a computer that is physically connected to DME units.  For example, the DME manual instructs users to "[c]onnect the DME unit and computer using a USB cable or an Ethernet cable."  DME at p. 48.  Further, the DME manual instructs users to "[u]se an Ethernet cable connected to the [NETWORK] connectors to make connections between DME series units" (DME at p. 137-140) and to "[b]e careful to avoid loop connections both when connection via physical cables and in the Designer window."  DME at p. 474, 476.  Indeed, nowhere does DME teach or suggest playback devices configured to "coordinate . . . over the wireless data network to output media in synchrony," as found in Applicant's amended claims

Similarly, Takemura discusses connecting a "mixer engine 10" to a control network "via an interface of, for example, a USB (Universal Serial Bus) standard, an RS-232C standard, an IEEE (Institute of Electrical and Electronic Engineers) 1394 standard, an Ethernet (registered

trademark) standard, or the like." Takemura at [0050]. Like DME, Takemura does not teach playback configured to "coordinate . . . over the wireless data network to output media in synchrony."

Applicant has also reviewed several of the additional references mentioned by the Examiner during the interview, including the previously cited EtherSound and CobraNet user manuals, and has not found that they compensate for the shortcomings of DME and Takemura. For instance, the cited EtherSound AVKit user manual states that "[u]p to 8 audio input channels can be transmitted from a AD8HR Yamaha device to any other EtherSound[TM] compatible equipment, over regular CAT5 cables." *See* AVKIT-ES for AD8HR User's Manual (2005) at p. 3 (reference cited in PTO-892 Form mailed July 17, 2019).

As another example, the cited CobraNet manual states that "[w]e have recently done some experimentation with 802.11b WiFi wireless Ethernet. Even under best case laboratory conditions we found this technology did not provide adequate bandwidth for most CobraNet applications. Additionally network performance was not stable enough to meet the real time requirements of CobraNet." *See* CobraNet Manual (2005) at p. 7-8 (reference cited in PTO-892 Form mailed July 17, 2019).

Because the cited combination of DME and Takemura does not teach every element of independent claims 1, 12, and 23, the cited combination does not render claims 1, 12, and 23 unpatentable. Consequently, Applicant requests withdrawal of the § 103 rejections of claims 1, 12, and 23 over the combination of DME and Takemura, and submits that independent claims 1, 12, and 23 should be allowed. Further, Applicant submits that dependent claims 2-4, 7-11, 13-15, 18-22, 24-26, and 29-39 should be allowed as well for at least the reason that they each depend from an allowable independent claim.

**6.      Conclusion**

For at least the foregoing reasons, Applicant submits that the claims are in condition for allowance.  Applicant thus respectfully requests favorable reconsideration and allowance of the claims.  Applicant does not acquiesce in any assertion by the Examiner that is not expressly addressed by these remarks.  Should the Examiner wish to discuss this case, the Examiner is encouraged to call the undersigned at (312) 754-9315.

Respectfully submitted,

**LEE SULLIVAN SHEA &
SMITH LLP**

Date: <u>January 6, 2021</u>                    By:  <u>/Brandon J. Kennedy/</u>
                                                          Brandon J. Kennedy
                                                          Reg. No. 67,894

16



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

| 135176 | 7590 | 02/03/2021 |
| --- | --- | --- |

LS3 Sonos
Lee Sullivan Shea & Smith LLP
656 W. Randolph St.
Floor 5W
Chicago, IL 60661

| EXAMINER |
| --- |
| MCCORD, PAUL C |

| ART UNIT | PAPER NUMBER |
| --- | --- |
| 2654 | |

DATE MAILED: 02/03/2021

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
| --- | --- | --- | --- | --- |
| 15/130,919 | 04/15/2016 | Robert A. Lambourne | 07-0901-CON0416 | 9288 |

TITLE OF INVENTION: Zone Scene Activation

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
| --- | --- | --- | --- | --- | --- | --- |
| nonprovisional | UNDISCOUNTED | $1200 | $0.00 | $0.00 | $1200 | 05/03/2021 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT.
PROSECUTION ON THE MERITS IS CLOSED. THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS.
THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON
PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING
DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD
CANNOT BE EXTENDED. SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT
FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN
THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST
TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

**HOW TO REPLY TO THIS NOTICE:**

I. Review the ENTITY STATUS shown above. If the ENTITY STATUS is shown as SMALL or MICRO, verify whether entitlement to that
entity status still applies.

If the ENTITY STATUS is the same as shown above, pay the TOTAL FEE(S) DUE shown above.

If the ENTITY STATUS is changed from that shown above, on PART B - FEE(S) TRANSMITTAL, complete section number 5 titled
"Change in Entity Status (from status indicated above)".

For purposes of this notice, small entity fees are 1/2 the amount of undiscounted fees, and micro entity fees are 1/2 the amount of small entity
fees.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office
(USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b"
of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a
request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing
the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail
Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Maintenance fees are due in utility patents issuing on applications filed on or after Dec. 12, 1980.
It is patentee's responsibility to ensure timely payment of maintenance fees when due. More information is available at
www.uspto.gov/PatentMaintenanceFees.**

Page 1 of 3

PTOL-85 (Rev. 02/11)

# PART B - FEE(S) TRANSMITTAL

Complete and send this form, together with applicable fee(s), by mail or fax, or via EFS-Web.

| By mail, send to: | Mail Stop ISSUE FEE<br>Commissioner for Patents<br>P.O. Box 1450<br>Alexandria, Virginia 22313-1450 | By fax, send to: | (571)-273-2885 |

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

135176          7590          02/03/2021

LS3 Sonos
Lee Sullivan Shea & Smith LLP
656 W. Randolph St.
Floor 5W
Chicago, IL 60661

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being transmitted to the USPTO via EFS-Web or by facsimile to (571) 273-2885, on the date below.

_____ (Typed or printed name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/130,919 | 04/15/2016 | Robert A. Lambourne | 07-0901-CON0416 | 9288 |

TITLE OF INVENTION: Zone Scene Activation

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | UNDISCOUNTED | $1200 | $0.00 | $0.00 | $1200 | 05/03/2021 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| MCCORD, PAUL C | 2654 | 700-094000 |

| 1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).<br><br>❏ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.<br><br>❏ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-09 or more recent) attached. **Use of a Customer Number is required.** | 2. For printing on the patent front page, list<br>(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,<br>(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed. | 1 _____<br><br>2 _____<br><br>3 _____ |

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document must have been previously recorded, or filed for recordation, as set forth in 37 CFR 3.11 and 37 CFR 3.81(a). Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                    (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) : ❏ Individual ❏ Corporation or other private group entity ❏ Government

4a. Fees submitted: ❏Issue Fee   ❏Publication Fee (if required)   ❏Advance Order - # of Copies _____

4b. Method of Payment: *(Please first reapply any previously paid fee shown above)*

❏ Electronic Payment via EFS-Web   ❏ Enclosed check   ❏ Non-electronic payment by credit card (Attach form PTO-2038)

❏ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment to Deposit Account No. _____

5. **Change in Entity Status**  (from status indicated above)

❏ Applicant certifying micro entity status. See 37 CFR 1.29

❏ Applicant asserting small entity status. See 37 CFR 1.27

❏ Applicant changing to regular undiscounted fee status.

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.
NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.
NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

Authorized Signature _____          Date _____

Typed or printed name _____          Registration No. _____

PTOL-85 Part B (08-18) Approved for use through 01/31/2020      OMB 0651-0033      U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/130,919 | 04/15/2016 | Robert A. Lambourne | 07-0901-CON0416 | 9288 |

135176        7590        02/03/2021

| | EXAMINER |
|---|---|
| LS3 Sonos | |
| Lee Sullivan Shea & Smith LLP | MCCORD, PAUL C |

| ART UNIT | PAPER NUMBER |
|---|---|

656 W. Randolph St.
Floor 5W
Chicago, IL 60661

2654

DATE MAILED: 02/03/2021

**Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)**
(Applications filed on or after May 29, 2000)

The Office has discontinued providing a Patent Term Adjustment (PTA) calculation with the Notice of Allowance.

Section 1(h)(2) of the AIA Technical Corrections Act amended 35 U.S.C. 154(b)(3)(B)(i) to eliminate the requirement that the Office provide a patent term adjustment determination with the notice of allowance. See Revisions to Patent Term Adjustment, 78 Fed. Reg. 19416, 19417 (Apr. 1, 2013). Therefore, the Office is no longer providing an initial patent term adjustment determination with the notice of allowance. The Office will continue to provide a patent term adjustment determination with the Issue Notification Letter that is mailed to applicant approximately three weeks prior to the issue date of the patent, and will include the patent term adjustment on the patent. Any request for reconsideration of the patent term adjustment determination (or reinstatement of patent term adjustment) should follow the process outlined in 37 CFR 1.705.

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 02/11)

## OMB Clearance and PRA Burden Statement for PTOL-85 Part B

The Paperwork Reduction Act (PRA) of 1995 requires Federal agencies to obtain Office of Management and Budget approval before requesting most types of information from the public. When OMB approves an agency request to collect information from the public, OMB (i) provides a valid OMB Control Number and expiration date for the agency to display on the instrument that will be used to collect the information and (ii) requires the agency to inform the public about the OMB Control Number's legal significance in accordance with 5 CFR 1320.5(b).

The information collected by PTOL-85 Part B is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 30 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450. Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b) (2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:
1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

| *Notice of Allowability* | Application No. 15/130,919 | Applicant(s) Lambourne, Robert A. | |
|---|---|---|---|
| | Examiner PAUL C MCCORD | Art Unit 2654 | AIA (FITF) Status No |

**-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--**

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☑ This communication is responsive to claims and remarks filed 1/6/21.

   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

3. ☑ The allowed claim(s) is/are See Continuation Sheet. As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see **http://www.uspto.gov/patents/init_events/pph/index.jsp** or send an inquiry to **PPHfeedback@uspto.gov.**

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

   **Certified copies:**

   a) ☐All     b) ☐ Some     *c) ☐ None of the:

      1. ☐ Certified copies of the priority documents have been received.

      2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

      3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

   * Certified copies not received: _____ .

   Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS (as "replacement sheets") must be submitted.

   ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____ .

   **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)

2. ☑ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date _____ .

3. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material _____ .

4. ☑ Interview Summary (PTO-413), Paper No./Mail Date. _____ .

5. ☐ Examiner's Amendment/Comment

6. ☑ Examiner's Statement of Reasons for Allowance

7. ☐ Other _____ .

/PAUL C MCCORD/
Primary Examiner, Art Unit 2654

**Continuation Sheet (PTOL-37)**                                                                 **Application No. 15/130,919**

Continuation of 3. The allowed claim(s) is/are: 1-4,7-15,18-26 and 29-39

Application/Control Number: 15/130,919                                                                    Page 2
Art Unit: 2654

*Notice of Pre-AIA or AIA Status*

The present application is being examined under the pre-AIA first to invent provisions.

*Priority*

Applicant's remarks filed 1/6/21 are accepted by Examiner and suffice to establish support for the claimed subject matter in the prior filed parent case 60/825407 and afford the instant application an effective priority date of 9/12/06.

*Reasons for Allowance*

The following is an examiner's statement of reasons for allowance: while the prior art operates to accomplish playback of selected media in synchrony on a selected subset of grouped playback devices when a scene is invoked upon a set of playback devices the prior art does not allow for transition during playback from one scene to another wherein a playback device discontinues operating within a first configuration and begins to operate in a second configuration while outputting audio, nor does the prior art teach such group agnostic synchronous operation over a wireless network. That is, in the instant prior art the synchronous operation may be seen as operating with respect to the start of a grouping operation rather than operating in a manner similar to the claimed invention which allows a user to add any of a playback device and/or subset of playback devices with a media currently playing back on a particular playback device wherein said playback device(s) operate in this ad hoc synchronous manner over a wireless network.

Any comments considered necessary by applicant must be submitted no later than the payment of the issue fee and, to avoid processing delays, should preferably accompany the issue fee.  Such submissions should be clearly labeled "Comments on Statement of Reasons for Allowance."

Application/Control Number: 15/130,919                                            Page 3
Art Unit: 2654

*Conclusion*

Any inquiry concerning this communication or earlier communications from the examiner

should be directed to PAUL C MCCORD whose telephone number is (571)270-3701.  The examiner can

normally be reached on 730-630 M-F.

Examiner interviews are available via telephone, in-person, and video conferencing using a

USPTO supplied web-based collaboration tool. To schedule an interview, applicant is encouraged to use

the USPTO Automated Interview Request (AIR) at http://www.uspto.gov/interviewpractice.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor,

VIVIAN CHIN can be reached on 5712727848.  The fax phone number for the organization where this

application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application

Information Retrieval (PAIR) system.  Status information for published applications may be obtained

from either Private PAIR or Public PAIR.  Status information for unpublished applications is available

through Private PAIR only.  For more information about the PAIR system, see https://ppair-

my.uspto.gov/pair/PrivatePair. Should you have questions on access to the Private PAIR system, contact

the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information system, call 800-786-

9199 (IN USA OR CANADA) or 571-272-1000.

/PAUL C MCCORD/
Primary Examiner, Art Unit 2654