CLEMENT SETH ROBERTS (STATE BAR NO. 209203)
croberts@orrick.com
BAS DE BLANK (STATE BAR NO. 191487)
basdeblank@orrick.com
ALYSSA CARIDIS (STATE BAR NO. 260103)
acaridis@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:    +1 415 773 5700
Facsimile:    +1 415 773 5759

SEAN M. SULLIVAN (*pro hac vice*)
sullivan@ls3ip.com
J. DAN SMITH (*pro hac vice*)
smith@ ls3ip.com
MICHAEL P. BOYEA (*pro hac vice*)
boyea@ ls3ip.com
COLE B. RICHTER (*pro hac vice*)
richter@ls3ip.com
LEE SULLIVAN SHEA & SMITH LLP
656 W Randolph St., Floor 5W
Chicago, IL 60661
Telephone:    +1 312 754 0002
Facsimile:    +1 312 754 0003

*Attorneys for Sonos, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA,

SAN FRANCISCO DIVISION

| | |
|---|---|
| SONOS, INC., | Case No. 3:20-cv-06754-WHA |
| Plaintiff and Counter-defendant, | Related to Case No. 3:21-cv-07559-WHA |
| v. | **SONOS, INC.'S PROFFER RE REVENUE ASSOCIATED WITH ACCUSED PRODUCTS** |
| GOOGLE LLC, | |
| Defendant and Counter-claimant. | Judge:  Hon. William Alsup<br>Courtroom:  12, 19th Floor<br>Trial Date: May 8, 2023 |

1      Sonos respectfully requests that the Court permit Mr. Malackowski to testify about the

2  amount of revenue Google receives from sales of the Accused Products.

3      On Friday, Mr. Malackowski testified, "without going into any numbers at this point,"

4  that "Google generated a significant amount of revenue based on the accused products," and that

5  revenue is from "not only the sale" of the accused products themselves, but Google "also

6  generate[s] revenue from advertising and sale of data." 5/12/23 Trial Tr. 1096:2-13. He also

7  testified that Google (1) generates "revenue associated with these products [] from not only the

8  sale," (2) "often they'll give away product, literally even giving away speakers or apps," and (3)

9  "they also generate revenue from advertising and sale of data." *Id.* 1096:6-13.

10     Mr. Malackowski was not able to testify about the amount of revenue that Google earns as

11  a result of sales of the Accused Products. Google objected (i) that "search revenue broken down

12  by paid distribution, but broken down by various categories" is confidential, *id.* 1105:13-14, (ii)

13  that this revenue related to "unaccused product[s]," *id.* 1105:16-19, and (iii) that the large

14  numbers Google earns were "extremely prejudicial," *id.* 1111:16-17. The Court should overrule

15  these objections and allow Mr. Malackowski to provide his full testimony.

16     As to Google's first objection, Sonos takes no position on whether a single page of

17  Google's financial information is so sensitive it cannot be published at trial. Sonos does agree

18  that the information it seeks to discuss is more granular than financial information publicly

19  available in, e.g., Google's parent company's SEC filings. So, simply pulling information from

20  Alphabet's SEC filings would not be sufficient. *Cf id.* 1110:25-1111:2 (Court asking if Google's

21  "annual profit" is available in SEC filings).

22     As to the second objection, Google is wrong that this information relates to "unaccused

23  products." The financial information Sonos asked to present is from a table titled "FY20

24  SEARCH & PLAY REVENUE (2) CHANNELED THROUGH PIXEL DEVICES." Caridis

25  Decl. Ex. A (demonstrative slide PDX3.32); *id.* Ex. B (TX6256). The financial information is

26  broken down by country and by the "% of total play + search revenue." This information would

27  help the jury better understand how much of Google's revenue is channeled through Pixel

28  devices. Pixel devices are accused products. 5/12/23 Trial Tr. 1106:19-1107:3.

The information is also helpful in showing the jury that, in understanding the bargaining position of the parties to the hypothetical negotiation, it should not look to Google's *profit* from sales of hardware, but rather the *revenue* Google earns from the products.  Mr. Malackowski would testify, for example, that under *Georgia-Pacific* factor 6—the effect of selling the patented specialty in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of his non-patented items—Google and Sonos would understand the overall value to Google in having a customer buy Google speakers over Sonos speakers.  He would also testify that under *Georgia-Pacific* factor 8—the established profitability of the product made under the patent and its commercial success—that Google and Sonos would understand that Google values the hardware products *above* their "established profitability" in recognition of the other revenue attached to the products.  As Mr. Malackowski explained, Google has a different "ecosystem" than a pure speaker company, and speaker companies "don't make the same money on the products the way Google does." *Id.* 1068:1-3.  Sonos and Google would take that into account and arrive at a reasonable royalty that reflects that reality.  Mr. Malackowski would also testify that Google's own financial information establishes that Google employs a "loss leader or lock-in effects [strategy] that Google uses to purposely lower the price of its products, lower the profits of its accused products, but generate revenue and profit for other products." *Id.* 1105:24-1106:2.

Moreover, Google previously agreed that Sonos could use "actual financial data" to establish that "Google loses money and is a loss leader." *Id.* 1108:2-7 (quoting 5/3/23 PTC Tr. 67:18-24).  Sonos wishes to do exactly that.  Sonos would use Google's own financial data to help the jury understand why it is that Google can give away the Home App for free, give away devices for free, and "lose[] money" on its products.  That is because Google makes money from the products in other ways.

Finally, Google's complaint of prejudice should be rejected.  The fact that Google makes a lot of money from the accused products is not "extremely prejudicial." *Id.* 1111:16-17.  It is just a fact, and Google cannot use its success to shield actual numbers from the jury.  And it is hardly a secret that Google is "one of the gigantic companies.  And you do have tentacles

SONOS, INC.'S PROFFER RE REVENUE
3:20-CV-06754-WHA

1  everywhere.  So please don't try to fool me into thinking it's a poor, struggling company.  That's

2  part of their case.  I'm going to let them make that argument."  5/3/23 PTC Tr. 67:22-68:15.  As

3  Google admits, Sonos's "argument itself is okay," 5/12/23 Trial Tr. 1111:18, Google just doesn't

4  want the actual facts—the extent of its financial success from the accused products—in front of

5  the jury.

6      For the foregoing reasons, the Court should allow Mr. Malackowski to testify about the

7  numbers behind Google's loss leader strategy.  This would allow the jury to better evaluate his

8  opinions and give the jury concrete numbers on how much Google actually makes from the

9  accused products.

10

11  Dated:  May 15, 2023

ORRICK HERRINGTON & SUTCLIFFE LLP
*and*
LEE SULLIVAN SHEA & SMITH LLP

12

13  By: */s/ Clement Seth Roberts*

14      Clement Seth Roberts

15  *Attorneys for Sonos, Inc.*

16

17

18

19

20

21

22

23

24

25

26

27

28

SONOS, INC.'S PROFFER RE REVENUE
3:20-cv-06754-WHA