QUINN EMANUEL URQUHART & SULLIVAN, LLP
Sean Pak (Bar No. 219032)
seanpak@quinnemanuel.com
Melissa Baily (Bar No. 237649)
melissabaily@quinnemanuel.com
James Judah (Bar No. 257112)
jamesjudah@quinnemanuel.com
Lindsay Cooper (Bar No. 287125)
lindsaycooper@quinnemanuel.com
Iman Lordgooei (Bar No. 251320)
imanlordgooei@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

Marc Kaplan (*pro hac vice*)
marckaplan@quinnemanuel.com
191 N. Wacker Drive, Ste 2700
Chicago, Illinois 60606
Telephone:     (312) 705-7400
Facsimile:     (312) 705-7401

*Attorneys for GOOGLE LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SONOS, INC.,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>GOOGLE LLC,<br><br>　　　　Defendant. | Case No. 3:20-cv-06754-WHA<br>Consolidated with Case No. 3:21-cv-07559-WHA<br><br>**GOOGLE LLC'S RESPONSE TO SONOS, INC.'S BRIEF REGARDING PRIORITY DATE AND WRITTEN DESCRIPTION (DKT. 723)** |

I.  LEGAL STANDARD ........................................................................................................ 1

    A.  Disclosure Of The Claimed Invention Must Be Immediately Discernable From The Written Description And Not Left To Inference ....................................................... 1

    B.  The Written Description Is Not Satisfied By Disclosures That Render The Claimed Invention Obvious .................................................................................................... 1

    C.  Describing The Result That One Might Achieve With The Invention, But Not The Particular Way In Which To Achieve The Result Is Inadequate ............................. 2

II.  SONOS'S ORIGINAL NON-PROVISIONAL DISCLOSURE DOES NOT PROVIDE WRITTEN DESCRIPTION SUPPORT FOR OVERLAPPING ZONE SCENES .............. 2

    A.  The Disclosures Sonos Identifies Do Not Disclose Overlapping Zone Scenes ........ 2

        1.  Background and Summary of the Invention ('853 Patent at 1:59-2:17; '853 Patent at 2:37-41). ....................................................................................... 3

        2.  Configuring a Set of Zones into a Zone Scene ('853 Patent at 7:66-8:14) ... 4

        3.  Configuring a Set of Zones into a Zone Scene ('853 Patent at 8:14-20) ...... 4

        4.  One set of Linked Zones as a Scene (Fig. 3A,'853 Patent at 8:21-28) ......... 5

        5.  Multiple Sets of Linked Zones as a Scene (Fig. 3A, '853 Patent at 8:29-34) 6

        6.  Gathering Multiple Groups at the Same Time (Fig. 3B, '853 Patent at 8:35-47; 8:48-54). .............................................................................................. 6

        7.  Flowchart for Providing Zone Scenes ('853 Patent at Fig. 6, 9:59-10:39) ... 8

    B.  Sonos Needed to Add New Matter To Support Its Overlapping Zone Scene Claims. ................................................................................................................................. 9

III.  THE NEW MATTER SONOS ADDED BY AMENDMENT RELATES TO "DYNAMIC GROUPING," NOT "ZONE SCENES." ........................................................................... 10

IV.  GOOGLE HAS NOT WAIVED ANY PRIORITY DATE CHALLENGE OR WRITTEN DESCRIPTION ARGUMENT ......................................................................................... 12

The Court requested that the parties answer six questions related to the '407 Provisional. Dkt. 719 (Additional Questions For Requested Briefing). Google LLC ("Google") understood the Court to be requesting short briefing, and thus submitted a short brief in response to the Court's request. However, Sonos, Inc. ("Sonos") submitted a 56-page Brief Regarding Priority Date and Written Description (Dkt. 723, "Sonos Br.") and twenty-six appendices. Google submits the following submission to address certain of the arguments and inaccuracies in Sonos's Brief.

I.   **LEGAL STANDARD**

   A.   **Disclosure Of The Claimed Invention Must Be Immediately Discernable From The Written Description And Not Left To Inference**

"To satisfy the written description requirement, the applicant must convey with reasonable clarity to those skilled in the art that, as of the filing date sought, he or she was in possession of the invention, and demonstrate that by disclosure in the specification of the patent." *Flash-Control, LLC v. Intel Corp.*, No. 2020-2141, 2021 WL 2944592, at *3 (Fed. Cir. July 14, 2021) (quoting *Centocor Ortho Biotech, Inc. v. Abbott Labs.*, 636 F.3d 1341, 1348 (Fed. Cir. 2011)).

"[N]ovel aspects of the invention must be disclosed and **not left to inference**." *Crown Operations Intern., Ltd. v. Solutia Inc.*, 289 F.3d 1367, 1380 (Fed. Cir. 2002) (all emphases added unless noted otherwise). A person of skill in the art ("POSITA") reading the specification "must **immediately** discern the limitation at issue in the claims." *Purdue Pharma L.P. v. Faulding Inc.*, 230 F.3d 1320, 1323 (Fed. Cir. 2000). The POSITA must recognize that the inventor invented what is claimed when "viewing the matter from the proper vantage point 'of one with no foreknowledge of the specific [limitations].'" *Novozymes v. DuPont Nutrition Biosciences APS*, 723 F.3d 1336, 1349 (Fed. Cir. 2013) ("Working backward from a knowledge of [the claims]" to "derive written description support from **an amalgam of disclosures plucked selectively** from the [disclosures]" is inadequate to satisfy the requirement.).

   B.   **The Written Description Is Not Satisfied By Disclosures That Render The Claimed Invention Obvious**

As the Federal Circuit has cautioned, "[i]t is not sufficient for purposes of the written description requirement of § 112 that the disclosure, when combined with the knowledge in the art,

would lead one to *speculate* as to modifications that the inventor might have envisioned, but failed to disclose." *Lockwood v. Am. Airlines*, 107 F.3d 1565, 1572 (Fed. Cir. 1997); *see also PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1310 (Fed. Cir. 2008) ("Obviousness simply is not enough; the subject matter must be disclosed to establish possession."). One shows that one is "in possession" of the invention by *describing* the invention, with all its claimed limitations, not that which makes it obvious. *Lockwood*, 107 F.3d at 1572 (citation omitted).

### C. Describing The Result That One Might Achieve With The Invention, But Not The Particular Way In Which To Achieve The Result Is Inadequate

It has long been the rule that a patent "will not be sustained if the claim is for a result," *Fuller v. Yentzer*, 94 U.S. 288, 288 (1876), because a result, without more, is not an invention. Rather, an invention "consists in the means or apparatus *by which the result is obtained*." *Id*. Patents that seek to claim a "result or function" are impermissible because they effectively seek to "extend the monopoly beyond the invention" and, thereby, "discourage rather than promote invention." *Holland Furniture Co. v. Perkins Glue Co.*, 277 U.S. 245, 257-58 (1928).

An adequate written description requires "a description of an invention, not an indication of a result that one might achieve if one made that invention." *Regents of the Univ. of Cal. v. Eli Lilly & Co., Inc.*, 119 F.3d 1559, 1568 (Fed. Cir. 1997). A description that amounts to "a '*mere wish or plan*' for obtaining the claimed invention" fails the written description requirement. *Taylor v. Iancu*, 809 F. App'x 821, 824 (Fed. Cir. 2020) (quoting *Novozymes*, 723 F.3d at 1344); *Centocor*, 636 F.3d at 1348. The written description requirement thus "prohibits a patentee from 'leaving it to the . . . industry to complete an *unfinished* invention'" because a patent "is not a reward for the search, but compensation for its successful conclusion." *Novozymes*, 723 F.3d at 1350) (quoting *Ariad Pharms., Inc. v. Eli Lilly and Co.*, 598 F.3d 1336, 1353 (Fed. Cir. 2010)).

### II. SONOS'S ORIGINAL NON-PROVISIONAL DISCLOSURE DOES NOT PROVIDE WRITTEN DESCRIPTION SUPPORT FOR OVERLAPPING ZONE SCENES

#### A. The Disclosures Sonos Identifies Do Not Disclose Overlapping Zone Scenes

The '885 and '966 patents are both part of a chain of applications claiming priority back to a non-provisional application filed on September 11, 2007 (U.S. Pat. App. No. 11/853,790) that

issued as U.S. Patent No. 8,483,853 ("the '853 patent"). The '853 patent is, thus, the first and original non-provisional disclosure for the asserted patents.

The '853 patent, however, fails to provide adequate written description for the asserted claims. There is no express disclosure of overlapping zone scenes because the '853 patent discloses grouping, un-grouping, and/or saving existing groups, which would have been ***dynamic groups*** and, thus, non-overlapping. At best, the '853 patent discloses that a "zone scene" may overlap with a *dynamic zone group*—***not*** another zone scene. In fact, Sonos has represented to the Court that dynamic zone grouping was a feature of the Sonos 2005 prior art system and is ***not*** a claimed zone scene. *See, e.g.*, Dkt. 723 at 30-31; Dkt. 711 at 2. With this context, Google addresses the following exemplary disclosures relied upon by Sonos.

> 1. Background and Summary of the Invention ('853 Patent at 1:59-2:17; '853 Patent at 2:37-41).

The Background of the invention discloses that "[b]ecause the morning group, the evening group and the weekend group contain the den, it can be difficult for the traditional system to accommodate the requirement of dynamically managing the ad hoc creation and deletion of groups." '853 Patent at 1:59-2:17. Sonos contends that this background of the invention addresses problems with ad hoc group creation and therefore provides support for overlapping zone scenes as a solution. Dkt. 723 at 31-32. But, while this passage addresses ***ad hoc group*** creation, it is silent about overlapping ***zone scenes*** as a solution. At most, the passage discloses that it can be difficult for a "traditional" system to manage speakers in ad hoc groups because the user needed to go through a series of steps to manually link and unlink each speaker—but this does not disclose overlapping zone scenes as required by the claims.

The summary of the invention also discloses: "According to still another aspect of ***the present invention***, a controlling device (also referred to herein as controller) is provided to facilitate a user to select any of the players in the system to form ***respective groups each of which*** is set up ***per a scene***." '853 Patent at 2:37-41. This statement about ***the*** invention of the '853 patent refers to each dynamic group being set up individually as a scene—*i.e.*, "per a scene." It says nothing about ***overlapping*** zone scenes, since dynamic groups are themselves non-overlapping and this

disclosure simply teaches saving each such dynamic group as a separate scene. *See, e.g.*, Dkt. 723 at 31 ("In the old paradigm, zone groups/dynamic groups were invoked at the moment they were created. That was why a given player could ***not be in more than one zone group/dynamic group at the same time*** and why a prior zone group/dynamic group (containing e.g., the 'den' would have to be destroyed when the user was ready to use a new group containing the 'den').").  Simply put, dynamic groups are by nature non-overlapping and, thus, setting each such group into a zone scene could only result in non-overlapping zone scenes.

There is no disclosure in these passages of overlapping zone scenes—any attempt by Sonos to read overlapping zone scenes into this disclosure is improper inference. *See* Section I.A.  And even if the Court were to credit Sonos's inference (it should not), these passages actually describe the '853 patent's invention as setting up non-overlapping zone scenes.  Therefore, the passage cannot provide written description support for the alleged invention of the later-filed patents-in-suit because it lacks any disclosure of the particular way in which to form and invoke overlapping zone scenes.  *See* Section I.B.

2. <u>Configuring a Set of Zones into a Zone Scene ('853 Patent at 7:66-8:14)</u>

This passage discloses that "[o]ne mechanism for 'joining' zone players together for music playback is to link a number of zone players together to form a group. To link a number of zone players together a user may manually link each zone player or room ***one after the other***."  This passage, as in the background section, describes one of the purported downsides of dynamic groups, which required linking speakers one by one, but falls well short of disclosing overlapping zone scenes.  Indeed, the term zone scene does not even appear in this passage.  And the purported downsides of dynamic grouping do not in any way necessitate forming and invoking overlapping zone scenes (as opposed to, for example, non-overlapping zone scenes).

3. <u>Configuring a Set of Zones into a Zone Scene ('853 Patent at 8:14-20)</u>

This passage states: "According to one embodiment, a set of zones can be dynamically linked together using one command. Using what is referred to herein as a theme or a zone scene, zones can be configured in a particular scene (e.g., morning, afternoon, or garden), where a predefined zone grouping and setting of attributes for the grouping are automatically effectuated."

As an initial matter, the passage expressly states it is a description of a single "embodiment"—not of *the* invention.

Regardless, the embodiment is being described with respect to the formation of a singular "*particular* scene" that can be a "morning, afternoon, *or* garden" scene, and says nothing about any other scenes, let alone disclosing overlapping zone scenes that may exist at the same time—as required by the claims of the patents-in-suit. The cited passage also fails to disclose a particular way to add a single zone player to more than one zone scene in succession—also required by the claims of the patents-in-suit. Thus, it fails to meet the legal standard for written description as set forth above. The Federal Circuit has made clear that novel aspects of the invention must be expressly disclosed and not left to inference. Yet the disclosures identified by Sonos do not include any express statement that a zone player can be in overlapping zone scenes. It is not surprising, therefore, that Sonos later amended its written description in August 2019 to add new matter in support of its amended claims as explained in Google's prior filing. Dkt. 722.

### 4. One set of Linked Zones as a Scene (Fig. 3A,'853 Patent at 8:21-28)

Figure 3A of the '853 patent discloses another distinct embodiment in which "all zones are separate" initially (*i.e.*, on the left side of the image) but then three of those zones are later grouped to create a zone scene named "Morning" (boxed in red below). *See, e.g.*, '853 at 8:21-24. Sonos



cannot mix and match different embodiments with the benefit of hindsight to arrive at a new invention. *Novozymes*, 723 F.3d at 1349 ("Working backward from a knowledge of [the claims]" to "derive written description support from *an amalgam of disclosures plucked selectively* from the [disclosures]" is impermissible.).

The corresponding disclosure in the specification discloses that "one command" causes the zone players in the "Morning" zone scene to be "dynamically linked together," thereby replacing the need for the user to "manually and individually link each zone." '853 at 8:21-28. In other words,

1  the passage discloses nothing more than a single zone scene containing multiple zone players that
2  can be invoked using a single command. It does not discuss a second zone scene, let two zone
3  scenes with an overlapping zone player. Sonos's attempt to infer overlapping zone scenes from this
4  disclosure does not satisfy the written description requirement. *See* Section 1.A. As plainly shown
5  in the figure above, the only result achieved by this embodiment is a ***single*** zone scene containing
6  one group of three zone players and three additional, separate zone players.

        5.      <u>Multiple Sets of Linked Zones as a Scene (Fig. 3A, '853 Patent at 8:29-34)</u>

This passage slightly modifies the idea described in Fig. 3A by stating that a singular "Zone Scene can be set to create multiple sets of linked zones." Whereas the '853 patent at 8:21-28 discloses grouping three separate zone players to form a singular zone scene, this passage discloses linking distinct groups of zone players to form the singular zone scene. According to this passage, the singular zone scene can include distinct groups of zone players—here, a group of "upstairs" zone players, "downstairs" zone players, and "outside" zone players. Critically, there is no disclosure of overlapping zone scenes whatsoever. Rather, "groups" in this passage refers to dynamic groups, which cannot include an overlapping set of zone players according to Sonos. Thus, the result of this disclosure is that multiple groups can exist inside of a single zone scene but, again, there is no disclosure of overlapping ***zone scenes*** or even zone groups for that matter.

        6.      <u>Gathering Multiple Groups at the Same Time (Fig. 3B, '853 Patent at 8:35-47; 8:48-54).</u>

These passages refer to yet another distinct embodiment, shown in Fig. 3B, in which multiple distinct groups of zone players are gathered at the same time to create a singular zone scene. *See, e.g.*, '853 at 8:35-47. Importantly, Fig. 3B is a different embodiment than that of Fig. 3A; they are

alternative embodiments. In the Fig. 3B embodiment, a first group (Bedroom, Den, and Dining Room) and a second group (Garage and Garden) may be further grouped within the singular zone scene (boxed in red in the image).

This embodiment also allows separate zone players to be part of the singular zone scene—*i.e.*, Bathroom, Family Room, Foyer. But, critically, this Fig. 3B embodiment never discloses *two* zone scenes let alone overlapping zone scenes existing at the same time—it only discloses *one single* zone scene that includes three non-overlapping groups and three additional zone players that are not part of any group. Indeed, this Fig. 3B embodiment further teaches that any zone players in a pre-existing group "***should be separated*** from ***any group*** if they were part of ***a group*** before the Zone Scene was invoked." '853 at 8:45-47. It says nothing about a zone player that is part of a previously created zone scene being added to another zone scene, as required by the asserted claims of the patents-in-suit.

Separately, in a different embodiment (*i.e.*, "[i]n one embodiment"), the '853 patent discloses that "a command is provided and links all zones in one step, if invoked" and that this "command is in a form of a zone scene." '853 at 8:48-54. There is no disclosure, however, that this zone scene linking all zone players could exist alongside any other zone scene, nor does it disclose any particular way of adding a zone player to multiple zone scenes in succession as required by the asserted claims. Again, Sonos cannot mix and match different embodiments with the benefit of hindsight to arrive at a new invention. *Novozymes*, 723 F.3d at 1349. The notion that a zone player, which is saved as part of an "all zones" zone scene, could be further added and saved as part of a different zone scene is wholly unsupported by this or any other disclosure in the '853 patent. Tellingly, Sonos failed to include any written disclosure of its prior art Sonos 2005 "All Zone – Party Mode" zone scene in the '853 patent, and later added new matter in August 2019 to support its amended claims in the patents-in-suit (*see* Dkt. 722).

7. Flowchart for Providing Zone Scenes ('853 Patent at Fig. 6, 9:59-10:39)

In its written submission, Sonos annotates Fig. 6 of the patents and alleges that this figure and accompanying description in the specification disclose the "mechanism" that allows for overlapping zone scenes. Dkt. 723 at 29-30. Not so.

The passages associated with Fig. 6 disclose "providing … a zone scene for a plurality of players, where one or more of the players are placed in a zone." This disclosure is again silent on the ability to place a zone player in more than one zone scene in succession as required by the asserted claims. As an example, this disclosure describes having ten zone players in a household and associating four of them with a singular zone "scene," but says nothing about the possibility of adding any of the same four zone players to a different zone scene. Indeed, the disclosure refers to a singular zone scene ("a saved scene" and "the scene"). Nowhere does it describe an embodiment in which overlapping zone scenes exist at the same time, as required by the asserted claims. Even assuming *arguendo* that multiple zone scenes can be created via the flowchart of Fig. 6, there is no disclosure that a zone player belonging to a previously created and saved zone scene would be *available for inclusion* in forming a subsequent zone scene. Indeed, this is precisely the feature that Sonos previously argued was disclosed by the new matter inserted for the first time as written description support in Sonos's August 2019 amendment for the asserted claims of the patents-in-suit (*i.e.*, "[t]he list of zones in the user interface 520 includes ALL the zones in the system, including the zones that are already grouped"). Rather, the more logical reading of this passage is that the six *remaining* zone players that were not saved as part of the first zone scene may be later available for inclusion as part of another zone scene. As discussed above, mere inference is insufficient to provide written description support.

Fig. 6 (annotated).

In fact, the disclosure at 10:34-39 of the '853 patent teaches away from overlapping zone scenes. It states: "One of the features, benefits and advantages in the present invention is to allow sets of related devices … to exist as a group *without interfering with other components*" and that "*[e]ach* of the sets is configured to *a theme or scene*." In other words, this passage discloses that each zone scene is configured to exist on its own without interference (or overlap) with other components or zone scenes, and further discloses that each group ("[e]ach of the sets") is configured as a separate zone scene. Accordingly, these statements about the benefits and advantages of "*the* present invention" undercuts Sonos's interpretation of the Fig. 6 disclosure as well as *all* embodiments of the alleged invention disclosed prior to Sonos's introduction of new matter in 2019. *See, e.g.*, *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1308 (Fed. Cir. 2007) (holding that statements in specification concerning "the" invention limited the scope of the claims); *see also* Dkt. 721 at 2-3.

### B. Sonos Needed to Add New Matter To Support Its Overlapping Zone Scene Claims.

Because all the disclosures in the '853 patent (as well as subsequent filings prior to Sonos's introduction of new matter in 2019) revolved around how to use scenes to save different combinations of zone *groups*, and because zone groups were dynamic (and thus not overlapping), the '853 patent lacked any disclosure of overlapping zone *scenes*. Only by adding new matter during prosecution of the patents-in-suit in 2019 (*e.g.*, adding "[t]he list of zones in the user interface 520 includes ALL the zones in the system, including the zones that are already grouped" to the discussion of Fig. 5B) could Sonos even argue that it had written description support for overlapping zone scenes. And even that new matter had to be plucked from a section of Sonos's provisional application that discussed linking prior art dynamic groups, not forming overlapping zone scenes. *See* Dkt. 722.

The prosecution history provides important context in considering the validity of Sonos's arguments. On July 5, 2019, Sonos received an Office Action rejecting the pending claims of the '885 and '966 patents over a prior art reference referred to as the DME Manual describing the Yamaha prior art system. In response, on August 23, 2019, Sonos (1) amended its specification to

include new matter (*i.e.*, stating that "[t]he list of zones in the user interface 520 includes ALL the zones in the system, including the zones that are already grouped" in the context of Fig. 5B), (2) added Figs. 7-8 to its specification, (3) amended its pending claims, and (4) made arguments based on these amendments and additions to purportedly distinguish and overcome the DME Manual. Dkt. 722-3 at 21 (August 23, 2019 Office Action response).  Sonos acknowledged during prosecution that the DME Manual discloses multiple "DME Scenes [that] can be configured/stored/recalled within a given DME device group that is already established—but the DME Manual does ***not*** suggest that recalling a DME Scene can re-group individual devices into different DME device groups." *Id*. (emphasis in original).  Thus, Sonos argued to the Patent Office that simply disclosing mechanisms for creating and saving multiple zone scenes does not further disclose the creation and saving of ***overlapping*** zone scenes as required by the asserted claims. Sonos should not be permitted to take a contrary position now in order to seek an earlier priority date based on its earlier analogous written disclosures.

### III. THE NEW MATTER SONOS ADDED BY AMENDMENT RELATES TO "DYNAMIC GROUPING," NOT "ZONE SCENES."

Sonos does not dispute that it amended the specification of the '885 and '966 patents to add a sentence from Section 4 of Appendix A to the '407 Provisional. That sentence reads: "[t]he list of zones in the user interface 520 includes ALL the zones in the system, including the zones that are already grouped." Dkt. 712-4 at 46-47 (App'x A Section 4).[1]

---

[1] Citations to Dkt. 712-4 are to the ECF page numbers. Parallel citations to the page numbers internal to Appendix A are in parentheses.

1    In its earlier submission, Google has shown that Section 4 of Appendix A (and the sentence
2 that Sonos added to the specification of the patents) discloses a user interface for expanding or
3 shrinking dynamic zone groups (a feature that both parties agree was present in the Sonos 2005
4 System). Dkt. 723 at 36 (citing 05-15-2023 Tr. Tran. at 955:16-956:7); *see also* Dkt. 722 at 2-3.
5 This does not show the creation and formation of overlapping zone scenes. *Id*. Sonos incorrectly
6 alleges that Google's showing is a "misrepresentation to the Court," and asserts that Section 4 of
7 Appendix A is a screen for setting up "zone scenes." Dkt. 723 at 36-37. Not so.




8 First, Sonos provides an inaccurate description of the
9 Zone Menus image (reproduced on the left). Dkt. 723
10 at 37-38. Sonos describes the top image as showing a
11 Zone Menu that has a "'Zone Linking' button" which
12 Sonos says is used "for setting up zone scenes," and a
13 "'Scenes' button" that Sonos says is used for invoking
14 zone scenes." *Id*. This is ***not*** what the image shows.
15 Rather, immediately below the image, there is an
16 example of how the Zone Linking button was intended
17 to operate. Dkt. 712-4 at 46 (App'x A Section 4). The
18 example involves: (1) a "User is playing 'Radio 1' in
19 the Living Room only," (2) the user selects the "Zone
20 Linking soft button," (3) "check[s] the Kitchen, [and]
21 uncheck[s] the Living Room," and (4) "Hit[s] the OK
22 button." *Id*. The "Result [is] Radio1 is now playing in the Kitchen and not the Living Room
23 (***without interrupting the music***)." *Id*. In other words, this disclosure teaches that the zone players
24 selected using the Zone Linking menu are immediately invoked for playback. Sonos has repeatedly
25 represented to this Court that the difference between the prior art dynamic grouping and a zone
26 scene is that the former is "invoked at the time of creation," while the latter is not. 05-10-2023 Trial
27 Tr. at 580:3-10; *see also id*. at 641:3-6 ("Again, for dynamic grouping, it is immediate invocation.
28

1  There's no creation and then later on invoking in the future; okay."). Sonos cannot now argue that
2  this same dynamic zone grouping teaches a "zone scene."

3  Again, Section 4 of Appendix A does not relate to setting up zone scenes (it relates to
4  expanding or shrinking dynamic zone groups). Indeed, the section that *precedes* Section 4 is titled
5  "Scene Setup." Dkt. 712-4 at 38-45 (App'x A Section 3). The Scene Setup section includes three
6  subsections: "Handheld Controller," "Desktop Controller," and "Additional setup Ideas." *Id*. The
7  "Handheld Controller" subsection states that "[i]t is not expected that Zone Scenes should be set up
8  using the Handheld Controller" and does not include a single description or illustration of zone
9  scenes. In contrast, the "Desktop Controllers" subsection states that "Zone Scene Setup is available
10 from the Zone menu on the DCRs [Desktop Controllers]" and discloses other user interfaces for
11 forming zone scenes. The last subsection, "Additional setup Ideas," includes a single sentence that
12 discusses an idea in which a user may "right click" on a zone group and have a "menu item 'Make
13 this group a Scene'" appear. *Id*. The ability to "right click" on a zone group indicates the presence
14 of a computer and mouse and is consistent once again with zone scenes being formed using only the
15 Desktop Controller.

16 Consistent with the disclosure in Section 3 that the Handheld Controller is not expected to
17 be used for forming zone scenes, Section 4 of Appendix A describes "Alternative Linking Methods"
18 that can be used for the Handheld Controller. Dkt. 712-4 at 46-47 (App'x A Section 4). This section
19 does not include a single mention of the term "zone scene," but does state that its linking method is
20 for forming "a zone *group*." Dkt. 712-4 at 46-47 (App'x A Section 4). And as Google has already
21 explained, Section 4 describes a minor improvement to the "current" (*i.e.*, Sonos 2005) system of
22 adding zones to a dynamic zone group one at a time. *See* Dkt. 722 at 6.

23 **IV.  GOOGLE HAS NOT WAIVED ANY PRIORITY DATE CHALLENGE OR WRITTEN DESCRIPTION ARGUMENT**
24
25 Sonos requests that the Court find that Google has waived any right to challenge the priority
26 date of the '885 and '996 patents. Dkt. 723 at 44. The Court should reject Sonos's request.

27 *First*, Sonos's waiver argument fails because it is **Sonos's burden** to establish it is entitled
28 to an earlier priority date. *See PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1305-06

1  (Fed. Cir. 2008) (holding that the district court "correctly placed the burden on [patentee] to come
2  forward with evidence to prove entitlement to claim priority to an earlier filing date"); *see also*
3  *Purdue Pharma L.P. v. Iancu, Fed. Appx.*, 767 Fed. Appx. 918, 924 (Fed. Cir. 2019) (explaining
4  "patent owner has 'the burden of going forward with evidence either that the prior art does not
5  actually anticipate, or ... that it is not prior art because the asserted claim is entitled to the benefit of
6  a filing date prior to the alleged prior art'"). Here, Google has presented prior art that puts the
7  priority date of the asserted patents at issue—*e.g.*, additional Sonos Forum posts will fall within the
8  scope of the prior art if Sonos is not entitled to its earlier priority date, and Sonos has also accused
9  Google functionality that predates the filing date of the asserted patents. The Court should reject
10 Sonos's waiver arguments and require Sonos to meet its burden to establish an earlier priority date.

11 *Second*, Sonos has failed to prove that Google waived any written description defense. A
12 waiver requires a knowing abandonment of a claim, which did not occur here. *Wood v. Milyard,*
13 132 S. Ct. 1826, 1832 n.4 (2012) ("A waived claim or defense is one that a party has knowingly and
14 intelligently relinquished."). Indeed, Google raised its lack of written description arguments from
15 the start of this litigation. Google first addressed written description in its invalidity contentions,
16 and then in the expert reports during the showdown (Dkt. 309). *See, e.g.*, Dkt. 249-1 (Schonfeld
17 Decl.) at ¶¶ 43-52 (explaining that the specification and provisional patent application do not contain
18 adequate written disclosure of overlapping zone scenes). Google also addressed written description
19 in its opposition to Sonos's summary judgment motion. Dkt. 249 (Google Opp.) at 18-31
20 (identifying Sonos's improper introduction of new matter into the '885 patent, including the concept
21 of overlapping zone scenes, and explaining why it was not disclosed earlier). Google again
22 addressed written description in its brief showing cause for why summary judgment of validity of
23 the '885 patent should not be granted. *See* Dkt. 350-9 (Google Sealed Mot. to Vacate Validity
24 Order) at 6 n.2.

25 Furthermore, this court is permitted to vacate its prior decision finding that claim 1 of the
26 '885 patent had not been shown to be invalid for lack of written description. *See EOS GmbH Electro*
27 *Optical Sys. v. DTM Corp.*, 2004 WL 5683723, at *1 (C.D. Cal. Jan. 12, 2004) (vacating Markman
28 Order and reversing its prior decision granting summary judgment upon becoming "increasingly

convinced" that its prior rulings were incorrect). In fact, this Court previously vacated its order finding claim 1 of the '885 patent valid. *See* Dkt. 539 (Order) at 2 ("The Court's prior ruling of summary judgment in favor of Sonos as to the validity of claim 1 of the '885 patent is hereby withdrawn."). And, of course, the Court "unquestionably possesses the power to enter summary judgment" of no written description "*sua sponte.*" *Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*, 2016 WL 454065, *2 & *6-*7 (N.D. Cal. 2016) (quoting *Norse v. City of Santa Cruz*, 629 F.3d 966, 971 (9th Cir. 2010)), *aff'd in relevant part*, 909 F.3d 398, 405 (Fed. Cir. 2018).

Sonos also points to Google's opposition to Sonos's Motion *in Limine* ("MIL") No. 3. In that opposition Google stated it "is not going to argue to the jury at trial about an 'alleged lack of written description support or enablement of the asserted claims of the '885 and '966 patents,' at least because the Court already found there was sufficient written description support for claim 1 of the '885 patent" (citing the Court's summary judgment order). Google's statements with respect to written description were, thus, premised on the Court's prior ruling on written description. Notably, the Court ultimately did not rule on Sonos's MIL No. 3, but even if it had, the Court is allowed to change its ruling. *See, e.g.*, *United States v. Bensimon,* 172 F.3d 1121, 1127 (9th Cir. 1999) ("[A] ruling on a motion in limine is essentially a preliminary opinion that falls entirely within the discretion of the district court. The district court may change its ruling at trial because testimony may bring facts to the district court's attention that it did not anticipate at the time of its initial ruling." (internal citation omitted)). Thus, this statement by Google in an undecided MIL hardly establishes any waiver.

Dated:  May 15, 2023   Respectfully submitted,

*/s/ Sean Pak*
Attorneys for GOOGLE LLC

QUINN EMANUEL URQUHART & SULLIVAN, LLP

*Counsel for Google LLC*

**ATTESTATION**

Pursuant to the Federal Rules of Civil Procedure and Local Rule 5-1, I hereby certify that, on May 15, 2023, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system and email.

DATED:  May 15, 2023

By:   */s/ Sean Pak*