CLEMENT SETH ROBERTS (SBN 209203)
croberts@orrick.com
BAS DE BLANK (SBN 191487)
basdeblank@orrick.com
ALYSSA CARIDIS (SBN 260103)
acaridis@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:    +1 415 773 5700
Facsimile:    +1 415 773 5759

SEAN M. SULLIVAN (*pro hac vice*)
sullivan@ls3ip.com
J. DAN SMITH (*pro hac vice*)
smith@ ls3ip.com
MICHAEL P. BOYEA (*pro hac vice*)
boyea@ ls3ip.com
COLE B. RICHTER (*pro hac vice*)
richter@ls3ip.com
LEE SULLIVAN SHEA & SMITH LLP
656 W Randolph St., Floor 5W
Chicago, IL 60661
Telephone:    +1 312 754 0002
Facsimile:    +1 312 754 0003

*Attorneys for Sonos, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA,

SAN FRANCISCO DIVISION

| | |
|---|---|
| SONOS, INC.,<br><br>    Plaintiff and Counter-defendant,<br><br>v.<br><br>GOOGLE LLC,<br><br>    Defendant and Counter-claimant. | Case No. 3:20-cv-06754-WHA<br><br>Consolidated with<br>Case No. 3:21-cv-07559-WHA<br><br>**SONOS, INC.'S BRIEF REGARDING DR. SCHONFELD'S UNDISCLOSED THEORIES**<br><br>Judge:  Hon. William Alsup<br>Courtroom:  12, 19th Floor<br>Trial Date: May 8, 2023 |

The Court should preclude Dr. Schonfeld from further testifying regarding (and Google from relying in any way on) two undisclosed alleged non-infringement theories and instruct the jury to disregard the testimony they have already heard regarding those theories.

Dr. Schonfeld's rebuttal report regarding infringement disclosed a variety of theories regarding two, *and only two*, "modes": "standalone mode"—which he also refers to as "individual playback mode"—and "group playback mode."  But Dr. Schonfeld's testimony and demonstratives introduce, for the first time, a brand-new mode, called "idle mode."  *See, e.g.*, DDX10.24, DDX10.25, DDX10.26, DDX10.27, DDX10.28, DDX10.29, DDX10.30, DDX10.31. Dr. Schonfeld then extensively relied on this new mode (*i.e.* a mode that is neither standalone nor group) to argue non-infringement.  But "idle mode" is not a phrase ever used in Dr. Schonfeld's rebuttal report—even the word "idle" alone is not used.  Worse, the presence of *any* third mode (regardless of its name) was not part of any theory presented in Dr. Schonfeld's report.

Instead, Dr. Schonfeld's rebuttal report discloses his non-infringement theory that Google's new products do not infringe (i.e. are not in standalone mode at the relevant times) because the StopCurrentApp() function stops audio *playback*.  Dr. Schonfeld nowhere disclosed a theory that that function entirely removes the *app* from operation, by e.g. "killing" or "tearing down" the app.  Yet in his testimony today, Dr. Schonfeld opined that the StopCurrentApp() function does not just stop playback—the only disclosed theory—but that the function also kills or tears down the app entirely.  This is a new argument: that the device is not in "standalone mode" because it is not running the application responsible for playing music.

The Court should not permit Google to rely on trial by ambush.  The time to disclose these theories was *January* 2023, not six days into a jury trial after Sonos has rested its case.

## I.      DR. SCHONFELD'S REPORT DOES NOT DISCLOSE ANY IDLE MODE THEORY

Dr. Schonfeld's rebuttal report regarding infringement disclosed theories regarding two "modes": "standalone mode"—which he also refers to as "individual playback mode"—and

"group playback mode."  Dr. Schonfeld's *entire* non-infringement theory for Google's new products rests on this distinction.  For example, Dr. Schonfeld argues that:

> [T]o the extent that an accused "zone player" can or does "***operat[e] in a standalone mode in which the first zone player is configured to play back media individually***," this is ***no longer the case*** when the accused "zone player" receives "a second indication that the first zone player has been added to a first zone scene." Rather, as illustrated supra, ***any speaker added to a speaker group immediately begins operating as a member of the group***, for example by playing music or not playing music, which varies based on the current operation of the group.

Schonfeld Rebuttal Rep. ¶ 88 (emphases added).[1]  In Dr. Schonfeld's disclosed theory, the accused Google speakers stop operating in standalone mode when they are added to a group *because* they "immediately" begin operating as a member of that group.  There is no assertion that when they are added to a group they enter an "idle mode."  Indeed, we invite Google to point to any disclosure of "idle mode" or even the word "idle" in his report.  Sonos has been unable to find any such reference.  Nor have we been able to identify any interrogatory responses that identify this theory.

But to be clear, this is not a naming issue.  Dr. Schonfeld disclosed *no* theory regarding any third mode of operation (beyond standalone mode and group playback mode), and instead disclosed a theory in which the accused products are in one of those two modes.

Indeed, the entirety of Dr. Schonfeld's opinions in his report is that players automatically enter group mode from standalone mode—*not* that players enter some third, unnamed intermediary stage.  For example, when arguing that the "redesign" does not meet the various claim limitations relating to "stand alone" mode, Dr. Schonfeld argues:

> As described in Section IX, to the extent that an accused "zone player" can or does "operat[e] in a standalone mode in which the first zone player is configured to play back media individually," this is no longer the case when the accused "controller" receives "a first request to create a first zone scene." Rather, as described in detail *supra*, any accused speaker added to a speaker group ***immediately begins operating as a member of the group***, for example by playing music or not playing music, which varies based on the current operation of the group. ***Accordingly, any such speaker does not operate in the accused "standalone mode" as claimed***.

---

[1] Sonos will bring copies of Dr. Schonfeld's rebuttal report to Court on May 17, 2023.

1    Schonfeld Rebuttal Rep. ¶ 104 (emphases added).  This same theory—that a speaker doesn't

2    remain in standalone mode at various points during group creation because it automatically

3    transitions into group mode—is consistent throughout Dr. Schonfeld's report.  *Id.* ¶¶ 92-93

4    (arguing the redesign doesn't meet element 1.8 of the '885 patent because "[u]pon receiving a

5    group assignment, that speaker will instead immediately begin to operate as a member of the

6    group"); *id.* ¶¶ 120-121 (similar arguments for elements of the '966 Patent).

7         Google may attempt to confuse the issues by arguing that its alleged redesign of *no*

8    standalone mode referred to this new, third "idle mode," but the Court should not be misled.  Dr.

9    Schonfeld was clear that the alleged "no standalone mode" redesign consisted of players being

10   removed from *standalone* mode and put instead into *group* playback mode.  For example, Dr.

11   Schonfeld had this to say regarding his analysis of source code and testing of the functionality of

12   the accused players:

13

14        In the case where a new group is created, the players within that group cease to
         function as individual players and are instead stopped and are being controlled as a
15        group. In the case where an existing group is modified by adding a new device to
         that group, the new device becomes part of the reconfigured group, and immediately
16        adopts the configuration of the group. Therefore, in neither case do players added to
         a new or existing group continue to operate in an individual playback mode that the
17        speakers were in prior to being added to the group.

18   Schonfeld Rebuttal Rep. ¶ 59.  Depending on the scenario, in Dr. Schonfeld's disclosed theory,

19   playback may cease or change—or, if nothing is playing, no change in playback may occur—but

20   in all scenarios, the move is from standalone mode to a group configuration (whether one that is

21   playing back audio currently or not)—not some undisclosed intermediary "idle" mode.  *See also,*

22   *e.g.*, *id.* ¶ 47 ("A commonality between each of these methods for creating a group is that the

23   speakers added to the group no longer continue their previous activity and instead either play

24   back music (if that is what the group was doing) or stop playback to match the group's state of

25   stopped playback. Speakers added to a speaker group do not continue with their previous

26   playback or non-playback state when added to a group."); ¶ 49 ("When the speaker named

27   'yellow' is added to the group, the speaker named 'yellow' discontinues playback, matching the

28   behavior of the group and ceasing playback."); ¶ 50 ("Next, the scenario where a speaker not

1   playing back music is added to a group that is not playing back music is illustrated below. …

2   Because the speaker moves from an individual playback mode of not playing back music to a

3   group playback mode of not playing back music, the behavior to the user is trivial in this

4   instance."); ¶ 53 ("As shown above, each time a speaker is added to an existing group, the

5   speaker immediately begins to match the playback (or non-playback) behavior of a group."); ¶ 54

6   ("I now describe the behavior of a speaker added to a group where the group was not previously

7   created. …In each instance, each speaker added to the new group acts as a member of the group

8   by not playing back any music. Further, each speaker added to the new group leaves its prior

9   playback state, and its playback is stopped at the same time and in conjunction with every other

10  speaker in the new group.").

11  Because Dr. Schonfeld has not disclosed any third mode and because the reliance on any

12  third mode contradicts the theories he did provide (which all *rely* on the idea that you

13  immediately move between standalone and group mode), he should be precluded from testifying

14  regarding any such theory, his previous testimony on this issue should be struck from the record,

15  with the jury instructed to disregard it.

16  **II.  DR. SCHONFELD'S REPORT DOES NOT DISCLOSE ANY THEORY THAT**
    **THE STOPCURRENTAPP() FUNCTION DOES ANYTHING OTHER THAN**
17  **STOP MEDIA *PLAYBACK***

18  Until May 16, 2023, Dr. Schonfeld had disclosed exactly one theory regarding what the

19  "StopCurrentApp()" function does—it stops playback, and as a result, an audio player is not in

20  standalone mode.  Indeed, the "StopCurrentApp()" function appears a mere three times in his

21  report.  Schonfeld Rebuttal Rep. ¶¶ 59, 108, 109.  The only substantive discussion of the function

22  is when Dr. Schonfeld disclosed his theory that "for local_groups that are not found within the set

23  of speaker groups_, *playback* for that group is immediately ***terminated***. ('StopCurrentApp'). And

24  only after this ***playback*** is ***terminated*** on the speaker is the new group then added through the

25  AddGroup function."  *Id.* ¶ 108 (emphasis added).

26  On May 16, 2023,  Dr. Schonfeld for the first time testified that "when you press to join

27  the group together with the JoinGroup  command, then, once again, the same thing happens.

28  All of the members are grouped together, ***the app is killed on any device that's running the app,***

and the music is stopped." 5/16/23 Tr. at 1360:15-18 (emphasis added). When the Court asked Google to "show me where it says 'app being killed' in the report," Google could only identify an instance referring to *playback* being terminated, not an *app* being terminated or killed. 5/16/23 Tr. at 1361:13-22. Similarly, Dr. Schonfeld testified that "[w]hen you try to add members into a group, it will ***tear down that app***, it will stop the music, and it will no longer operate in standalone mode." 5/16/23 Tr. at 1359:15-17.

Dr. Schonfeld's disclosed theory has always been that *playback* stops, not that an app itself is destroyed, terminated, torn down, or anything else. *See e.g.*, Schonfeld Rebuttal Rep. ¶ 47 ("A commonality between each of these methods for creating a group is that the speakers added to the group no longer continue their previous activity and instead either play back music (if that is what the group was doing) or ***stop playback*** to match the group's state of ***stopped playback***."); ¶ 50 ("As discussed above, if the speaker were playing music, it would have ***stopped playback***."); ¶ 54 ("Further, each speaker added to the new group leaves its prior playback state, and its ***playback is stopped*** at the same time and in conjunction with every other speaker in the new group."); ¶ 55 ("As part of that process, ***speakers that were playing music*** (i.e., "purple") ***are stopped*** and operate as a group ***playing back no music***."); ¶ 56 ("As part of that process, both ***speakers that were playing music are stopped*** and operate as a group ***playing back no music***."); ¶ 57 (same); ¶ 58 ("The speakers leave their prior state, ***stop playback*** in unison, and ***remain stopped*** in conjunction with the group."). That is why, at the beginning of his testimony he asserted that standalone mode "means you're actually playing audio. You hear it." 5/16/23 Tr. at 1332:8-15. By contrast, Dr. Schonfeld nowhere discloses any theory regarding the idea that a device is not in standalone mode not only because playback stops, but also because the app *itself* is torn down, terminated, killed, or destroyed.

With respect to both of the above new theories, Sonos took expert discovery, and based its summary judgment and trial strategy on the theories that Dr. Schonfeld disclosed. The Court should not permit Google to improvise new noninfringement theories *after Sonos has already presented its case in chief* and should instead strike the testimony and instruct the jury to disregard it.

Dated:  May 16, 2023

ORRICK HERRINGTON & SUTCLIFFE LLP
*and*
LEE SULLIVAN SHEA & SMITH LLP

By: */s/ Clement Seth Roberts*
       Clement Seth Roberts

*Attorneys for Sonos, Inc.*