QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Sean Pak (Bar No. 219032)
  seanpak@quinnemanuel.com
  Melissa Baily (Bar No. 237649)
  melissabaily@quinnemanuel.com
  James Judah (Bar No. 257112)
  jamesjudah@quinnemanuel.com
  Lindsay Cooper (Bar No. 287125)
  lindsaycooper@quinnemanuel.com
  Iman Lordgooei (Bar No. 251320)
  imanlordgooei@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:     (415) 875-6600
Facsimile:      (415) 875-6700

  Marc Kaplan (*pro hac vice*)
  marckaplan@quinnemanuel.com
191 N. Wacker Drive, Ste 2700
Chicago, Illinois 60606
Telephone:     (312) 705-7400
Facsimile:      (312) 705-7401

*Attorneys for GOOGLE LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SONOS, INC.,<br><br>        Plaintiff,<br><br>   vs.<br><br>GOOGLE LLC,<br><br>        Defendant. | Case No. 3:20-cv-06754-WHA<br>Consolidated with Case No. 3:21-cv-07559-WHA<br><br>**GOOGLE LLC'S RESPONSE TO THE COURT'S REQUEST FOR INFORMATION REGARDING CLAIM CONSTRUCTION AND *O2 MICRO*** |

Google hereby provides its submission regarding claim construction and *O2 Micro* issues pursuant to the Court's request for additional briefing. There is no waiver of these issues because Google preserved its underlying positions regarding the proper claim scope within the context of its long-standing non-infringement arguments in this case. Further, as explained in more detail below, Google filed a summary judgment motion seeking non-infringement of the new design that was previously deferred to a bench trial before the Court determined it would present the issue to the jury. Accordingly, the time for resolution of these claim construction disputes is now.

## I.   THE COURT, NOT THE JURY, MUST RESOLVE DISPUTES REGARDING THE PROPER SCOPE OF THE CLAIMS

"When the parties raise an actual dispute regarding the proper scope of these claims, the court, not the jury, must resolve that dispute." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008). Indeed, "'a district court may (and sometimes must) revisit, alter, or supplement its claim constructions…to the extent necessary to ensure that final constructions serve their purpose of genuinely clarifying the scope of claims for the finder of fact.'" *Level Sleep LLC v. Sleep No. Corp.*, 2021 WL 2934816, at *3 (Fed. Cir. July 13, 2021) (quoting *In re Papst Licensing Digit. Camera Pat. Litig.*, 778 F.3d 1255, 1261 (Fed. Cir. 2015)).

The Federal Circuit permits courts to construe and modify claim constructions throughout litigation: "district courts may engage in a rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves." *Pressure Products Medical Supplies, Inc. v. Greatbatch Ltd.*, 429 F.3d 1364, 1377 (Fed. Cir. 2005) (internal quotations omitted). For example, in *Pressure Products*, the district court "defined the term ['score line'] largely in response to Enpath's cross-examination of Pressure Products' witnesses" at trial. *Id.*; *see also Utah Med. Prods., Inc. v. Graphic Controls Corp.*, 350 F.3d 1376, 1381–82 (Fed. Cir. 2003) (holding that the district court did not err in amending its claim construction during oral arguments for pretrial motions nearly two years after the original construction); *Wisconsin Alumni Research Foundation v. Apple, Inc.,* 2015 WL 5882868, *3 (W.D. Wis. Oct. 8, 2015) (construing claim term "on the second day of trial").

## II. THE PARTIES HAVE PRESENTED DISPUTES REGARDING THE SCOPE OF CERTAIN CLAIM TERMS THAT SHOULD BE RESOLVED BY THE COURT

As the Court is aware, the accused products in this case include prior and new versions of Google's speakers.[1] Both the '996 patent and the '885 patent require that a first zone player "operate[] in a standalone mode in which the first zone player is configured to playback media individually." The claims further recite, *inter alia*, that "while operating" in the standalone mode the first zone player must [1] receive respective indications that it has been added to a first zone scene and a second zone scene, and [2] continue to operate in a standalone mode until one of those zone scenes is invoked. As set forth in Google's previously filed summary judgment brief, the new version of Google's accused products do *not* operate in the standalone mode while receiving an indication that they have been added to a first and second zone scene. *See* Dkt. 483 at 20-24. Whenever a Google speaker with the new design receives an indication that it has been added to a new speaker group (the alleged zone scene), it executes a "StopCurrentApp" function to terminate any playback application running on the speaker and to cease output of media playback—thereby removing the speaker from any standalone mode it may have been in. *Id.* Sonos opposed Google's understanding of the scope of the claims (Dkt. 508 at 19-23 ("the redesigned player [] will continue operating in standalone mode while not actively playing audio after being added to the new speaker group")) and continues to advance its theories at trial—thereby presenting a clear dispute regarding claim scope for the Court's resolution.

Further, two additional disputes of claim scope arose in this case with respect to the '966 patent due to Sonos's advancement of overbroad infringement theories—including at trial through the testimony of Dr. Almeroth. First, as set forth in Google's previously filed brief, the '966 patent's recitation of a "computing device" should be tethered to the alleged invention of the patent and not

---

[1] It is well-established that "knowledge of [the accused] product or process provides meaningful context for. . . claim construction." *Wilson Sporting Goods Company v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1326-27 (Fed. Cir. 2006); *see also Aero Prods. Int'l, Inc. v. Intex Rec. Corp.*, 466 F.3d 1000, 1012 n.6 (Fed. Cir. 2006) (noting that it is permissible for district court to be made aware of accused product in connection with claim construction).

just any computing device. Dkt. 721. In other words, the claims should be limited in scope to the particular implementation of overlapping zone scenes in a networked multimedia system comprising zone players and a controller allegedly invented by Sonos. Dr. Almeroth, however, accuses any and all devices with the Google Home app—even those that are never used in a networked multimedia system with the requisite number of speakers. *See id.*

Finally, as set forth in Google's previously filed brief, the "storage" limitation of the '966 patent requires storage of the "predefined grouping" (*i.e.*, membership information for the claimed overlapping zone scenes) for later invocation of the same grouping for playback in a group mode. Dkt. 703. Sonos, however, has advanced at trial a theory that even new membership information or simply a group ID is enough to satisfy the claims—thereby improperly expanding its claim scope and resulting in the instant dispute.

### A. "Operating In A Standalone Mode In Which The First Zone Player Is Configured To Play Back Media Individually" ('885 and '966 patents)

Both the '996 patent and '885 patent require that a first zone player "operate[] in a standalone mode in which the first zone player is configured to playback media individually" (the "Standalone Limitation"). The claim further require that the first zone player continue to operate in the standalone mode until a zone scene is invoked, at which point the first zone player "transitions from operating in the standalone mode to operating in accordance with the first predefined grouping of zone players." The parties dispute the proper scope of the Standalone Limitation. Google contends that for a zone player to be operating in the standalone mode it must be actively playing back media, whereas Sonos contends that any zone player that is not playing back media as part of a group is necessarily in a standalone mode (regardless of whether that zone player is actively playing back media or is even configured for such individual playback). Google's position stays true to the intrinsic evidence, while Sonos's does not. Thus, the Court should construe the Standalone Limitation to mean "operating in a mode whether a zone player is actively playing back media individually."

Sonos's interpretation of the Standalone Limitation improperly reads out the phrase "in which the first zone player is configured to playback media individually." *See, e.g.*, *Intel Corp. v.*

*Qualcomm Inc.*, 21 F.4th 801, 810 (Fed. Cir. 2021) ("[i]t is highly disfavored to construe terms in a way that renders them void, meaningless, or superfluous"). According to Sonos, a first zone player is in standalone mode if it is not "operating in accordance with the first predefined grouping." In other words, Sonos equates the term "standalone mode" with operating individually (*i.e.*, not in a group). But the term "standalone" inherently requires operating individually. Thus, the language of the claims indicates that operating in standalone mode requires something more, namely that the "first zone player is "operating in a standalone mode in which the first zone player is configured to play back media individually." Simply put, the first zone player must be actively playing audio, such as music, while the remaining claim limitations are being performed through the execution of the claimed program instructions.

The meaning of the Standalone Limitation is also clear from the prosecution history of the '966 and '885 patent, which indicates that a zone player must be continuously outputting media as part of the Standalone Limitation. In particular, during prosecution, the asserted claims of the '966 and '885 patents were allowed over the prior art Yamaha "DME" reference. TX0006 ('885 patent file history) at 5850. In explaining the reasons for allowance over the DME prior art, the Examiner explained that the Standalone Limitation requires the first zone player is "continuously outputting media" while joining the claimed overlapping zone scenes:

> Particularly while DME operates to accomplish playback of selected media in synchrony on a selected set of first, second, etc. playback devices when a scene is invoked upon said set of players, ***DME does not allow for continuous output of media on a particular playback device and joining the continuous output by a selected playback device*** or set thereof in synchrony ***with media currently playing back upon the particular playback device***."

TX0006 ('885 patent file history) at 5850. More specifically, the asserted claims require that the first zone player "transition from operating in the standalone mode to operating in accordance with the first predefined grouping of zone players." The Examiner concluded that the DME prior art did not satisfy the limitation because a first zone player in the DME prior art could not transition from being configured for "continuous output of media" in the standalone mode to operating in accordance with a first predefined grouping of zone players. *See also* TX6 at 5850; Trial Tr. (Vol. 7) at 1345:12-1347:16 (Schonfeld testimony re meaning of claim term in view of file history).

B.  **"Computing Device" And "Causing Storage Of The First Zone Scene" ('966 Patent)**

The '966 patent recites a "computing device" in both the preamble and body of Claim 1. The '966 patent also discloses that the computing device must "caus[e] storage of the first zone scene." The Court previously recognized that the parties have raised actual disputes regarding the proper scope of these claim terms, and requested that the parties submit briefing regarding the meaning of the terms. *See* Dkt. 721 (Google LLC's Response To The Court's Request Regarding Claim Construction) at 1 (proposing construction of "computing device" as "a device configured to control a plurality of zone players"); Dkt. No. 703 (Google LLC's Response to The Court's Request For Information Regarding Saving And Storing) at 1-3 (proposing construction of "causing storage of the first zone scene" as "the first zone scene is stored in a persistent manner (i.e., not temporarily or ephemerally)." Because the parties have raised a fundamental dispute regarding the scope of these claim terms, the Court, not the jury, should resolve that dispute. *See* Section I.

Dated: May 16, 2023

Respectfully submitted,

*/s/ Sean Pak*
Attorneys for GOOGLE LLC

QUINN EMANUEL URQUHART & SULLIVAN, LLP

*Counsel for Google LLC*

**CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure and Local Rule 5-1, I hereby certify that, on May 16, 2023, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system and email.

DATED: May 16, 2023

By: /s/ Sean Pak
Sean Pak