CLEMENT SETH ROBERTS (SBN 209203)
croberts@orrick.com
BAS DE BLANK (SBN 191487)
basdeblank@orrick.com
ALYSSA CARIDIS (SBN 260103)
acaridis@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:    +1 415 773 5700
Facsimile:    +1 415 773 5759

SEAN M. SULLIVAN (*pro hac vice*)
sullivan@ls3ip.com
J. DAN SMITH (*pro hac vice*)
smith@ls3ip.com
MICHAEL P. BOYEA (*pro hac vice*)
boyea@ls3ip.com
COLE B. RICHTER (*pro hac vice*)
richter@ls3ip.com
LEE SULLIVAN SHEA & SMITH LLP
656 W Randolph St., Floor 5W
Chicago, IL 60661
Telephone:    +1 312 754 0002
Facsimile:    +1 312 754 0003

*Attorneys for Sonos, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA,

SAN FRANCISCO DIVISION

| | |
|---|---|
| SONOS, INC., <br><br> Plaintiff and Counter-defendant, <br><br> v. <br><br> GOOGLE LLC, <br><br> Defendant and Counter-claimant. | Case No. 3:20-cv-06754-WHA <br><br> Consolidated with <br> Case No. 3:21-cv-07559-WHA <br><br> **SONOS, INC.'S STATEMENT RE CLAIM CONSTRUCTION** <br><br> Judge:  Hon. William Alsup <br> Courtroom:  12, 19th Floor <br> Trial Date: May 8, 2023 |

Google, for the first time, asks for constructions of: (1) "while operating in standalone mode"; (2) "storage," and (3) "computing device."  Google did not ask for *any* of these terms to be construed despite multiple opportunities to do so.  The parties submitted claim construction briefing to this Court.  Dkt. 126, 184, 200, 202.  The parties also submitted full claim construction briefing in the Texas Action.  *See* 21-cv-7559, Dkts. 60, 64, 66, 81, 94.  Google addressed claim construction in its showdown briefing.  Dkt. 249.  And it had an opportunity to request claim construction in its summary judgment papers.  Dkts. 483, 538.  Nor did Google raise any claim construction disputes in the pretrial order, Dkt. 615, or the draft jury instructions, Dkt. 617.

Sonos believes the time for Google to seek constructions to support its non-infringement arguments is long past.  The timing of Google's request also distinguishes this case from *O2 Micro*, where the parties agreed that there was a dispute about claim scope that the court needed to resolve.  *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1358-60 (Fed. Cir. 2008).  To be clear, the Court *can* conduct claim construction at any time.  But it isn't required to allow Google an infinite numbers of bites at the apple on claim construction (or all the other theories Google is trying to inject into the trial).  And given the obvious equity issues—with these new arguments raised after the close of Sonos's case—the Court should decline to do so.  *Fujifilm Corp. v. Motorola Mobility LLC*, No. 12-CV-03587-WHO, 2015 WL 757575, at *5 (N.D. Cal. Feb. 20, 2015); *Apple, Inc. v. Samsung Elec. Co.*, No. 12–cv–00630–LHK, 2014 WL 252045, at *3–5 (N. D. Cal. Jan. 21, 2014).

**Standalone mode ('885 and '966 patents)**:  The claims recite operating "in a standalone mode in which the first zone player *is configured to* play back media individually."  Sonos submits that the plain and ordinary meaning should apply.  The claim language explains that a player is in "standalone mode" if it is "*configured to* play back media individually."  The claim language does not specify whether the player is or is not actively playing media.  So a player operating in "standalone mode" may or may not be actively playing media.  The plain language of the claims also shows that "standalone mode" is a mode in which the player is configured for *individual* playback as opposed to a mode in which the player is configured for *grouped*

playback. The claim language does so by, for example, explaining that the player "transition(s)" from "operating in the standalone mode" in which the player is "configured to play back media individually" to operating in group mode in which "the zone player is configured to coordinate with at least [one other] zone player … to output media in synchrony."[1]

In contrast, Google ignores the plain and ordinary meaning and now contends that "standalone mode" requires a player to be "actively playing audio." Tr. 1392:17-18. Google's construction rewrites the claims as shown below:

> while operating in a standalone mode in which the first zone player is ~~configured to~~ play*ing* back media individually in a networked media playback system comprising the first zone player and at least two other zone players ['885 patent, claim 1]
>
> while serving as a controller for a networked media playback system comprising a first zone player and at least two other zone players, wherein the first zone player is operating in a standalone mode in which the first zone player is ~~configured to~~ play*ing* back media individually ['966 patent, claim 1]

As the redlines above show, a player "*configured to* play back media individually" does not have to be actively outputting media. Just like the Court's phone is *configured* to receive telephone calls, even when no one is calling. Accordingly, Google does not contend that its construction is the term's plain and ordinary meaning as supported by the claim language or specification. Instead, to support its position Google points to one piece of the prosecution history. Dkt. 732 at 4; TX0006 at 5850. Google asserts that the Examiner distinguished the DME prior art because it did not "allow for continuous output of media on a particular playback device and joining of the continuous output," among other reasons. *Id.* This is insufficient to rewrite the claims for four reasons.

First, the examiner statements were not about standalone mode at all. The examiner allowed the claims following an amendment describing *group* mode. TX0006 at 4127. In

---

[1] Consistent with that plain and ordinary meaning, the Court has already explained: "In plain English, these limitations explain that an individual smart speaker that has been added to a speaker group will continue to operate individually — i.e., in "standalone mode" — until the speaker group of which it is a member is activated by the user, at which point the individual speaker will transition to being controlled as part of the group." Dkt. 309 at 15.

1  particular, the Examiner required an amendment to describe that when the players move from

2  standalone mode into group mode, the players become "configured to coordinate with" each other

3  "in order to output media in synchrony with output of media by the at least one other zone

4  player…." *Id.* This has nothing to do with whether the player is required to actively play media

5  in standalone mode.

6  Second, the examiner's statements do not constitute a clear and unmistakable disclaimer

7  of claim scope. *Cordis Corp. v. Medtronic AVE, Inc.*, 339 F.3d 1352, 1359–60, 67 U.S.P.Q.2d

8  1876 (Fed. Cir. 2003); *Eolas Techs. Inc. v. Microsoft Corp.*, 399 F.3d 1325, 1338 (Fed. Cir.

9  2005). Nothing the examiner said in describing what happens when players are grouped together

10 clearly and unmistakably requires active playback in standalone mode.

11 Third, Sonos did not agree with those statements. *See* TX0006 at 6647; *Biogen Idec, Inc.*

12 *v. GlaxoSmithKline LLC*, 713 F.3d 1090, 1096 (Fed. Cir. 2013) ("If an applicant chooses, she can

13 challenge an examiner's characterization in order to avoid any chance for disclaimer"). Thus,

14 Sonos did not endorse the examiner's reading of any of the claim terms and never agreed that the

15 claims required "continuous output of media on a particular playback device and joining of the

16 continuous output," contrary to Google's argument.

17 Fourth, although Google is *now* taking the position that "standalone mode" requires

18 continuous playback of audio, its expert previously took the exact *opposite* position. Schonfeld

19 Dep. Tr. (Aug. 31, 2022) at 52:10-18 (Q. So a player can be in standalone mode even if it's not

20 playing audio, correct? A. **Yes**. The only thing that I want to make clear is that my

21 understanding of Sonos's initial interpretation is that that was, by itself, sufficient for being

22 considered to be in standalone mode, and I would disagree with that, but the answer to your

23 question is: **Yes, you can be in standalone mode and not play audio.**") (emphasis added); *see*

24 *also id.* at 49:12-16 (Q. In order to meet the standalone mode, does the zone player have to be

25 playing audio? [objection] A. That's not my understanding."). These statements were made in a

26 deposition from August 31, 2022 *before* Google released its redesign. Since then, of course,

27 Google's expert has said the opposite. But that is not a basis to revisit claim construction.

28

**Storage ('966 patent)**: Google asks for a ruling on whether "causing storage" must be causing *persistent* storage. Nothing in the claims or the specification requires persistent storage, and in any event Google's witness said that Google speaker groups were stored persistently. *See also* Dkt. 701. Again, Google is trying to rewrite the claims, this time to add "persistently."

Google has also advanced an argument that players must save the identifiers of every member of the group. This is not required by the express claim language and again is contradicted by the specification, which says the player may save "a set of data pertaining to the scene" and "*[i]n one embodiment*, the parameters include, *but may not be limited to*, identifiers (e.g., IP address) of the associated players." '966 at 10:46-49. That cannot limit the claims.

**Computing device ('966 patent)**: In response to the Court's question of whether a smartphone installed with the Google Home app infringes the '966 patent, Google did not dispute that (1) the claim requires only a smartphone and associated programming, and (2) does not require a system of a smartphone and multiple speakers for infringement. Dkt. 721. Instead, Google asked the Court to construe "computing device" as "a device configured to control a plurality of zone players." *Id.* at 1; *compare* Dkt. 720 (Sonos's brief).

This term should be given its plain and ordinary meaning. Claim 1 of the '966 patent is to "a computing device" and the remainder of the claim lists every required element of the device. As relevant here, Claim 1 requires that the computing device *can* serve as "a controller for a networked media playback system comprising a first zone player and at least two other zone players," and that "*while* serving" as that controller, performs various functions. Claim 1 is not limited to a computing device that "*is serving*" as a controller for a networked media playback system comprising a first zone player and at least two other zone players."

To the extent that Google's construction requires a computing device that is networked with a plurality of zone players, it is inconsistent with the language of the claims. And if Google's construction does not require that the controller be networked with the zone players, it is unclear what this construction is adding to the existing language of the claims. Thus, plain and ordinary meaning is appropriate.

Dated: May 16, 2023

ORRICK HERRINGTON & SUTCLIFFE LLP
*and*
LEE SULLIVAN SHEA & SMITH LLP

By: */s/ Clement Seth Roberts*
    Clement Seth Roberts

*Attorneys for Sonos, Inc.*