CLEMENT SETH ROBERTS (SBN 209203)
croberts@orrick.com
BAS DE BLANK (SBN 191487)
basdeblank@orrick.com
ALYSSA CARIDIS (SBN 260103)
acaridis@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:  +1 415 773 5700
Facsimile:  +1 415 773 5759

SEAN M. SULLIVAN (*pro hac vice*)
sullivan@ls3ip.com
J. DAN SMITH (*pro hac vice*)
smith@ ls3ip.com
MICHAEL P. BOYEA (*pro hac vice*)
boyea@ ls3ip.com
COLE B. RICHTER (*pro hac vice*)
richter@ls3ip.com
LEE SULLIVAN SHEA & SMITH LLP
656 W Randolph St., Floor 5W
Chicago, IL 60661
Telephone:  +1 312 754 0002
Facsimile:  +1 312 754 0003

*Attorneys for Sonos, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA,

SAN FRANCISCO DIVISION

| | |
|---|---|
| SONOS, INC., <br><br> Plaintiff and Counter-defendant, <br><br> v. <br><br> GOOGLE LLC, <br><br> Defendant and Counter-claimant. | Case No. 3:20-cv-06754-WHA <br><br> Consolidated with <br> Case No. 3:21-cv-07559-WHA <br><br> **SONOS, INC.'S SUPPLEMENTAL BRIEF REGARDING APPENDIX A OF THE '407 PROVISIONAL SPECIFICATION** <br><br> Judge:  Hon. William Alsup <br> Courtroom:  12, 19th Floor <br> Trial Date: May 8, 2023 |

At the May 16, 2023 hearing, the Court asked whether the 2006 provisional application needed to "use the magic words" "incorporate" and "reference" relative to the appendix *to that very same application* if Sonos wanted to rely on it to support the claims of the '885 and '966 patents. The answer is no, for at least three reasons.[1]

***First***, you don't need to incorporate by reference something that is already encompassed within a document. And here, the inventor did not need, in the first part of the specification, to formally incorporate by reference the other two parts of the specification titled "Appendix A" and "Appendix B" because they were already *part of* one single specification. The Electronic Acknowledgement Receipt that accompanies the 2006 provisional application, for example, acknowledges that applicant identified the Appendices as "Specification" documents upon filing the provisional application:

| Document Number | Document Description | File Name | File Size(Bytes) | Multi Part | Pages |
|---|---|---|---|---|---|
| 1 | Specification | ProvisionalAsfiled.pdf | 117135 | no | 14 |
| Warnings: | | | | | |
| Information: | | | | | |
| 2 | Drawings | Drawings.pdf | 94791 | no | 5 |
| Warnings: | | | | | |
| Information: | | | | | |
| 3 | Specification | AppendixA.pdf | 450053 | no | 20 |
| Warnings: | | | | | |
| Information: | | | | | |
| 4 | Specification | AppendixB.pdf | 979042 | no | 43 |
| Warnings: | | | | | |
| Information: | | | | | |
| 5 | Fee Worksheet (PTO-875) | fee-info.pdf | 8123 | no | 2 |

Ex. 1 at 2.

---

[1] Sonos explained at greater length and in greater detail why Google has waived this issue and the various other reasons why the Court need not and should not reach it, Dkt. 723, but responds in this supplemental brief only to the specific question raised by the Court at this morning's hearing.

The PTO gave *all* parts of that application (including the specification, the drawings and the appendix) the same *application number*—because it sees the entire thing as *the* application:



*See* Dkt. 723 at 19. Sonos addressed precisely this point in its previous brief, *see id.* at 23 n.9, explaining why, at a minimum, the *non-provisional*'s incorporation by reference of the provisional was effective and included the provisional appendix (along with all other parts of the provisional application). As Sonos explained, priority chains list application numbers, not all of the individual attachments and component parts of the applications. And that is done because the regulation requires it. *See* 37 C.F.R. § 1.57(c)(2) (requiring incorporations by reference to "[c]learly identify the referenced *patent, application,* or publication" (emphasis added)). And when you look up a patent application on the PTO's website, you see a list of documents filed under that application number—like the image above—including the specification, the drawings, and appendices. Google filed a supplemental brief, Dkt. 729, taking issue with much of what Sonos had to say, but did not disagree with Sonos on this point.

Indeed, even Google appears to agree that the appendix to a provisional application is part of that application. As they put it:

> As a general matter, **attaching information in an appendix to a provisional application is permissible and can be considered as part of the provisional application** because there is no specific format required for such applications. *See* 35 U.S.C. § 111(b); *see* also MPEP

> 201.04. Also, as a general matter, ***provisional applications (including any appendices) can be relied on for priority and incorporated by reference in subsequent non-provisional patent applications***, along with any disclaimers.

Dkt. 722 at 1 (emphasis added); *see also, e.g.*, Dkt. 729 (Google's Response to Sonos's Br. Re: Priority Date and Written Description) (taking no issue with Sonos's explanation that the appendix is part of the provisional application).[2]

The Court seems troubled by the idea that something may be amiss here, but other courts—and the PTO in this case—have treated a patent application's appendix as part of the application's specification without requiring the application to incorporate the appendix by reference. For example, in *Phoenix Licensing*, Judge Payne treated the appendix to a patent application as part of that patent's specification in the context of a claim construction dispute. *See Phoenix Licensing, LLC v. Advance Am.*, No. 2:15-CV-1367-JRG-RSP, 2016 WL 6217180, at *10-11 (E.D. Tex. Oct. 25, 2016). In that case, the Plaintiffs argued that "***the specification of the '434 Patent*** discloses 'giv[ing] you the choice of selecting the particular type of coverage that best suits your individual needs.' (Dkt. No. 114 at 18) (***citing '434 Patent at Appendix 1A***)." *Id.* at *10 (emphasis added). And they argued that "the ***intrinsic*** record expressly identifies text fields/text entry boxes as examples of choices that may be made by a recipient of communication generated as disclosed in the specification. (*Id.* at 10) (***citing Appendix 1C of the '434 Patent***)." *Id.* at *11 (emphasis added). In its opinion, the Court rejected some of the arguments advanced by each party, but relied on Appendix 1C: "Similarly, Appendix 1C of the '434 Patent identifies text fields/text entry boxes as examples of choices that may be made by a recipient of a communication. '434 Patent at Appendix 1C (illustrating the text entry field under 'Amount' in the 'NEED ADDITIONAL INSURANCE?' section.)." *Id.*

Attached as Ex. 2 is a copy of the '434 patent from that case, including its appendices, filed with that federal court. Sonos has been unable to identify any incorporation by reference

---

[2] Should Google perform an about-face, Sonos objects as waived to any new "magic words" challenge by Google after failing to raise such an argument *after* more than two and half years of litigation, *after* Sonos rested its case, and *after* filing two sequential briefs on this same issue in which Google didn't raise this issue.

language in this patent. Instead, the patentee there seems to have simply stated that they were attaching the appendices to the specification. For example:

- "An Example of a presentation letter prepared using the preferred system and method and employing the individual mortgage life insurance program outlined using a procedure essentially as described above with respect to FIGS. 6-8 *is attached as Appendix 1*." Ex. 2 at 23 (14:61-66) (emphasis added).

- "An example of a presentation letter prepared using the preferred system and method and employing the individual life insurance program outlined using the procedure essentially as discussed above with respect to FIG. 9 *is attached as Appendix 2*." Ex. 2 at 23-24 (14:66-15:3) (emphasis added).

Similarly, in *Trustees of Columbia University*, the court in mediating a priority dispute relied on a provisional application's appendix that was not expressly incorporated by reference by the provisional specification, instead treating the appendix as automatically incorporated into the specification itself. *See Trs. of Columbia Univ. in City of New York v. NortonLifeLock, Inc.*, 580 F. Supp. 3d 236, 251 (E.D. Va. 2022) ("In the body of the application, the 898 Provisional Application incorporates the ideas embodied in the May 22, 2006 NICECAP Draft Proposal.… *As Appendix A, the 898 Provisional Application incorporates the ideas embodied in the earlier May 14, 2006 NICECAP Draft Proposal*." (emphasis added)); Ex. 3 (Dkt. 313-7 in the same case, showing provisional application with Appendix A appended to specification with no incorporation by reference language in specification).

*Second*, assume arguendo that one part of the specification of the 2006 provisional was supposed to incorporate by reference the appendix in order to make it another part of the specification. Even if that *were* the case, each subsequent non-provisional application in the zone scenes family (starting with the first non-provisional in 2007) incorporated by reference the entire 2006 provisional application—without limitation and "in its entirety" (e.g., '966 at 1:23-24)—until the 2019 amendment expressly brought that material into the four corners of the specification. So even if the appendix were somehow found not to be part of the 2006 provisional

specification, the appendix was still incorporated by reference into the 2007 non-provisional specification and each subsequent non-provisional, up to the point when that incorporation was no longer needed because of the amendment.

The Court may wonder whether this scenario creates a problem for Sonos under 37 C.F.R. § 1.57(d), which requires that any incorporation by reference of essential material be made only "by reference to a U.S. patent or U.S. patent application publication, which patent or patent application publication does not itself incorporate such essential material by reference." 37 C.F.R. § 1.57(d). The answer is no. As Sonos explained, *see* Dkt. 723 at 33 & 33 n.11, there is a split in authority on whether this regulation prohibits incorporating by reference a provisional application in order to rely on "essential material" therein. But even assuming that 37 C.F.R. § 1.57(d) prohibits reliance on a provisional application for incorporation of essential material, Sonos complied with the regulations. Take the first non-provisional as an example. That patent application incorporated the provisional application by reference but did not rely on it for written description support, making the provisional *non*-essential material. 37 C.F.R. § 1.57(e). And 37 C.F.R. § 1.57(e) expressly permits incorporating by reference a much broader range of documents, including "prior and concurrently filed commonly owned U.S. applications," whether published or not. And each subsequent non-provisional application in the chain *also* incorporated the provisional by reference while *also* not relying on it for written description support—until the application that led to the physical amendment in 2019. So at all times, the applications in the chain either (1) did not rely on the provisional for written description support and thus properly incorporated it by reference as non-essential material under 37 C.F.R. § 1.57(e), or (2) did not need to incorporate the provisional by reference at all, because at that point its relevant content was amended in—no longer *by reference*—directly into the specification. In sum, there is no "essential material" issue in this case.

***Third***, the PTO approved the amendment, after having been told that Sonos's basis for amendment was material from the provisional's appendix. Dkt. 723 at 17. In order to approve the amendment, the PTO had to find that there was no new matter. *Id.* That means that at least

one of two things must be true: Either (1) the appendix was **already part** of the provisional specification, and/or (2) the appendix was properly **incorporated** by reference into the specification of the non-provisional. If neither of those things were true, then there would have at least been an argument that the material physically amended into the specification was new matter. But the PTO found that it was **not** new matter, and that determination is entitled to an "especially weighty presumption of correctness." *Commonwealth Sci. & Indus. Rsch. Organisation v. Buffalo Tech. (USA), Inc.*, 542 F.3d 1363, 1380 (Fed. Cir. 2008); *see also, e.g.*, Dkt. 723 at 17, 18, 35, 42. And despite filing two briefs so far on this topic, Google has yet to acknowledge this legal rule or explain how its new matter challenge could possibly pass that test, much less overcome that test in light of its waiver and clear and convincing evidence burden.

Google contends that it is *Sonos* that has the burden of proof on this issue, but Google is wrong. The only thing Google cites in support of this proposition—while failing to address the authority Sonos cites—is *PowerOasis*. *See* Dkt. 729 at 12-13 (citing *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1305-06 (Fed. Cir. 2008)). Google contends that *PowerOasis* held that the district court "correctly placed the burden on [patentee] to come forward with evidence to prove entitlement to claim priority to an earlier filing date." *Id.* But that case is inapposite in at least four material respects. First, it involved—unlike here—a series of "continuation-in-part" applications: that is, applications that *by definition* include new matter. *PowerOasis*, 522 F.3d at 1304, 1304 n.3. Second, and again in contrast to this case, the Federal Circuit found it significant that "the PTO did not, at any point, make any determination with regard to the priority date of the various claims of the asserted patents." *Id.* at 1304; *cf.* Dkt. 723 at 11-12 (examiner finding support for effective priority date of 9/12/06). Third, there is no indication in *PowerOasis* that—as here—the alleged infringer had *stipulated to a conception date*. And last, the Federal Circuit subsequently clarified that *PowerOasis* did *not* "modif[y] the traditional burdens rule so that the patentee has the burden of persuasion to prove it was entitled to the earlier filing date." *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1328 (Fed. Cir. 2008). As the Court clarified, "*PowerOasis* says nothing more than, and should be understood to

say, that once a challenger (the alleged infringer) has introduced sufficient evidence to put at issue whether there is prior art alleged to anticipate the claims being asserted, prior art that is dated earlier than the apparent effective date of the asserted patent claim, the patentee has the burden of going forward with evidence and argument to the contrary." *Id.* at 1329.

In sum, Google's challenge comes down to whether there was new matter. As we have explained, the answer is no. Dkt. 723. And the PTO expressed no objection to Sonos's amendment. This Court is bound to accord the PTO's decision an especially weighty presumption of correctness. Google has raised nothing remotely close to meeting its burden to overturn that presumption. Nor would there be any basis for the Court to *sua sponte* overturn that finding, much less to do so in the middle of trial without giving Sonos an opportunity to conduct fact and expert discovery on the many questions that the Court has raised.

Dated: May 16, 2023

ORRICK HERRINGTON & SUTCLIFFE LLP
*and*
LEE SULLIVAN SHEA & SMITH LLP

By: */s/ Cole B. Richter*
    Clement Seth Roberts

*Attorneys for Sonos, Inc.*