QUINN EMANUEL URQUHART & SULLIVAN, LLP
Sean Pak (Bar No. 219032)
seanpak@quinnemanuel.com
Melissa Baily (Bar No. 237649)
melissabaily@quinnemanuel.com
James Judah (Bar No. 257112)
jamesjudah@quinnemanuel.com
Lindsay Cooper (Bar No. 287125)
lindsaycooper@quinnemanuel.com
Iman Lordgooei (Bar No. 251320)
imanlordgooei@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

Marc Kaplan *(pro hac vice)*
marckaplan@quinnemanuel.com
191 N. Wacker Drive, Ste 2700
Chicago, Illinois 60606
Telephone:     (312) 705-7400
Facsimile:     (312) 705-7401

*Attorneys for GOOGLE LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SONOS, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 3:20-cv-06754-WHA<br>Consolidated with Case No. 3:21-cv-07559-WHA<br><br>**GOOGLE LLC'S BRIEF REGARDING PROSECUTION HISTORY OF '885 AND '966 PATENTS** |

Google hereby provides further briefing with respect to the priority date and written description issues regarding the patents-in-suit. In particular, Google provides additional facts and evidence to show that Sonos has failed to meet its burden of proving the '885 and '966 patents are entitled to the priority date of a parent application. *See Tech Licensing Corp. v. VideoTek*, 545 F.3d 1316, 1327 (Fed. Cir. 2008). Sonos has failed to show that the subject matter inserted into the specifications of the patents-in-suit for the first time in August 2019[1] was sufficiently disclosed in earlier applications. The material inserted into the patents-in-suit from the '407 Provisional and its appendices constituted *new* subject matter for the reasons set forth in Google's prior submissions and below. *See* Dkts. 712, 722, 729. That is the dispositive question: did Sonos introduce new matter through its August 2019 amendments to the specification of the patents-in-suit? If the answer is yes (and it is), then Sonos cannot claim priority to its earlier-filed applications (including the '407 Provisional) and, as such, the accused Google products anticipate the asserted claims as a matter of law. Nothing Sonos's counsel raised during yesterday morning's arguments changes that *dispositive* inquiry with respect to the priority date issue.

Specifically, during the morning trial arguments held May 16, 2023, Sonos argued that its amendments to the specifications of the '885 and '966 patents in August 2019 did not add essential material to the asserted claims, and that even if they did, then such amendments were proper under 37 CFR § 1.71(g). *See* Trial Tr. (Vol. 7) at 1191:22-1192:12, 1195:2-1196:2. Sonos also argued that because the examiner withdrew a written description rejection in a related application (that did not claim overlapping zone scenes), the examiner effectively agreed that the 2019 amendments did not add new matter with respect to the patents-in-suit. *Id*. Based on these assumptions, Sonos's counsel argued that *this Court* must give "especially high weight" to the examiner's acceptance of Sonos's 2019 Amendment to the specifications of the '885 and '966 patents. *Id*. at 1191:15-21;

---

[1] In the 2019 Amendment, Sonos amended the specifications of some of its patent applications to add a sentence to the description of Fig. 5B ("[t]he list of zones in the user interface 520 includes ALL the zones in the system, including the zones that are already grouped.") and to add Figs. 7-8 and their description.

Dkt. 723. To the contrary, this Court should disregard the examiner's failure to discern and identify the new matter added by Sonos.

The 2019 Amendment *did* add new matter because, as Google explained in prior briefing, the subject matter inserted from the '407 Provisional related to *dynamic grouping*, not the claimed *overlapping zone scenes*. Sonos distorted the actual disclosure in Appendix A of the '407 Provisional relating to dynamic groups to insert the concept of overlapping zone scenes into the specifications of the patents-in-suit. *See* Dkt 722, 729. Sonos is also wrong that this Court should defer to the Examiner. Simply because the examiner withdrew a written description rejection in a *different* patent with *different* claim limitations does not mean the examiner of the patents-in-suit affirmatively agreed that Sonos introduced no new matter into these patents. And because Sonos introduced new matter in August 2019, it is not entitled to an earlier priority date as a matter of law under 35 U.S.C. § 120.

## I. TIMELINE OF AMENDMENTS IN THE PROSECUTION HISTORY

To orient the Court, a summary of the priority chain that led to the '885 and '966 patents is reproduced below:

Sept. 12, 2006: U.S. App. No. 60/825,407
→ Sept. 11, 2007: U.S. App. No. 11/853,790 [U.S. Pat. No. 8,483,853]
→ May 17, 2013: U.S. App. No. 13/896,829 [U.S. Pat. No. 8,843,228]
→ Aug. 21, 2013: U.S. App. No. 14/465,457 [U.S. Pat. No. 9,344,206]
→ Apr. 15, 2016: U.S. App. No. 15/130,919 [U.S. Pat. No. 11,388,532]
→ Apr. 12, 2019: U.S. App. No. 16/383,561 [the '885 Patent]
→ Apr. 12, 2019: U.S. App. No. 16/383,565 [the '966 Patent]
→ May 24, 2019: U.S. App. No. 16/422,160 [U.S. Pat. No. 10,897,679]
→ July 11, 2022: U.S. App. No. 17/861,882 [pending]

Dkt 723 at 5.

In 2018, during prosecution of the application that ultimately issued as the '532 patent (the immediate parent of the patents-in-suit), the examiner identified a lack of support for a claim limitation that is unrelated to those at issue in this case: a "selectable indication" of the zone scenes. Sonos pointed the examiner to pages 5-8 of Appendix A in the '407 Provisional and argued that "Appendix A discusses and illustrates several examples of a 'selectable indication of the at least one of the one or more zone scenes,' which are 'selectable to cause the one or more zone scenes to be

invoked by the two or more independent playback devices.'" Dkt 723-25 at 24. Notably, Sonos did not amend the specification of the '532 patent at that time.

On May 24, 2019, Sonos filed a new continuation from the '532 patent. This new continuation eventually issued as the '679 patent (U.S. Pat. No. 10,897,679).

On June 4, 2019, before any Office Action had issued, Sonos amended the '679 patent specification to include the 2019 Amendment. Sonos represented to the examiner that no new matter was being added, pointing to pages 5-6 and 17 of the '407 Provisional, Appendix A for support. Dkt 723-14.

Sonos did not, however, amend the specification of the '885 and '966 patents-in-suit at that same time. Instead, Sonos waited until August 23, 2019, in response to Office Actions raising Yamaha DME as prior art, to amend the specifications of the '885 and '966 patents to include the new matter in its 2019 amendment as set forth in Google's prior briefing on this issue. *See* Dkts 722, 729. On November 18, 2019, Sonos amended the specification of the '532 patent to include the 2019 Amendment. Dkt 723-11.

On August 6, 2020, one month before this case was filed, during prosecution of the '532 patent, the Examiner again raised the lack of adequate written description support for claims that did *not* recite overlapping zone scenes. Dkt 723-24. Sonos pointed the examiner to page 5 of Appendix A in the '407 Provisional. *Id.* Sonos also pointed the examiner to its insertion of subject matter via its November 18, 2019 amendment. *Id.* But the "selectable indications of the two or more zone scenes" language of the '532 patent did not recite or relate to ***overlapping*** zone scenes.

During trial in this case, Sonos stated that the examiner considered the provisional in the context of the '532 patent, but it admitted in response to questioning from the Court that the '532 patent "was *not* talking about the claim language of the patents in suit and the word 'overlap' or the discussion of overlap was *not* being discussed specifically here." Trial Tr. (Vol. 7) at 1193:14-18 (all emphases added unless noted otherwise).

## II.   INCORPORATION BY REFERENCE

Sonos and Google disagree with respect to whether the 2019 Amendment was required to incorporate "essential material" into the specification as written description support for the claims

of the '885 and '966 patents. Either way, however, the 2019 Amendment added *new matter* directed to overlapping zone scenes and, as a result, Sonos is not entitled to an earlier priority date than August 23, 2019.

Google does not dispute that the '407 Provisional was filed with Appendices A and B on the same day and as part of the same specification. *See* Dkt. 722 at 2. And Google has not identified any authority that required the *provisional* application to incorporate by reference Appendices A and B that were filed together on the same date.

With respect to incorporation by reference of subject matter in the provisional application, as the Court noted, 37 C.F.R. 1.57 sets limits on incorporation by reference for "essential material," which is material that is necessary to provide a written description of the claimed invention. 37 C.F.R. 1.57(d). 37 C.F.R. 1.57 is silent on the ability to incorporate essential material by reference to a provisional application because a provisional application is neither a U.S. patent nor a U.S. patent application publication. *See* Dkt. 722. The Patent Trial and Appeal Board has held that applicants cannot simply incorporate by reference any essential matter contained in an appendix to a provisional application and must, instead, amend their specification to add that matter. *See, e.g.*, *Ex Parte Benjamin S. Miller*, No. APPEAL 2018-008078, 2020 WL 635619, at *16 (P.T.A.B. Feb. 5, 2020) (requiring applicant to have amended its application to add essential material required for written description support where the essential material came from the *appendices* of a provisional application).

However, 37 CFR 1.57(g) also makes clear than an amendment to the specification must be "accompanied by a statement that the material being inserted is the material previously incorporated by reference *and that the amendment contains no new matter*." And although Sonos did amend its specification via 2019 amendment, that amendment *did* contain new matter. *See* Dkt 722, 729. Thus, Section 1.57(g) is inapplicable to the present facts.

### III. SONOS'S 2019 AMENDMENT ADDED NEW MATTER

As Google has previously explained, Sonos claims that its amendments in 2019 were supported by the '407 Provisional. *See* Dkt 722, 729. But because all the disclosures in the provisional (as well as subsequent filings before Sonos's introduction of new matter in 2019)

revolved around how to use scenes to save different combinations of zone groups, and because zone groups were dynamic and thus not overlapping, the provisional lacked any disclosure of overlapping zone scenes. Only by adding new matter during prosecution of the patents-in-suit in 2019 could Sonos even argue that it had written description support for overlapping zone scenes. The added matter had to be plucked from a section of Sonos's provisional application that discussed linking prior art dynamic groups, not forming overlapping zone scenes. *Id.*

## IV. NO "ESPECIALLY HIGH WEIGHT" TO EXAMINER'S ACCEPTANCE OF AMENDMENTS IN DIFFERENT APPLICATION

Sonos argues that because the examiner "affirmatively blessed [the amendment] . . . [i]n the '532 patent case, he affirmatively blessed it [in the '885 and '966 patents]." Trial Tr. (Vol. 7) at 1198:14-16. Not so. Sonos ignores the critical, undisputed fact that the asserted claims of the '885 and '966 patents are directed to overlapping zone scenes, whereas the claims at issue in the '532 patent were not. *See* Trial Tr. (Vol. 7) at 1193:14-18.

The examiner considered the 2019 amendment and withdrew his rejection with respect to a limitation in the '532 patent that required "the recited display of a selectable indication of *a zone scene* which upon selection invokes *the zone scene* onto the plural of playback devices." But it strains credulity to take the examiner's withdrawal of his written description rejections in *the '532 patent* and apply them to unrelated limitations and unrelated file history in the '885 and '966 patents.

Even if the examiner's acceptance of the 2019 amendment for the '532 patent were relevant to the '885 and '966 patents (it is not), there is still no requirement for *this Court* to give any weight, let alone "especially high weight," to the Examiner's acceptance of new matter injected into the specification of the patents-in-suit for the first time in August 2019. Indeed, courts have recognized that "[w]hether particular technological information is 'new matter' *depends on the facts of the case*: the nature of the disclosure, the state of the art, and the nature of the added matter." *Brooktree Corp. v. Advanced Micro Devices, Inc.,* 977 F.2d 1555, 1574 (Fed. Cir. 1992).

V.  **SONOS HAS NOT MET ITS BURDEN TO SHOW THAT THE '885 AND '966 CLAIMS ARE ENTITLED TO AN EARLIER PRIORITY DATE**

Because the 2019 amendment added new matter (Dkt. 722, 729), the '885 and '966 patents are effectively continuation-in-part applications[2] with, at best, an August 23, 2019 filing date. Sonos bears of proving that the asserted claims are entitled to an earlier priority date. *See Tech Licensing Corp. v. VideoTek*, 545 F.3d 1316, 1327 (Fed. Cir. 2008) (to establish that a claim of a patent-in-suit is entitled to the priority filing date of an earlier parent application, the patentee has the burden of proving that the written description in that earlier application supports the later-filed claim); *see also Go Med. Indus. Pty, Ltd. v. Inmed Corp.*, 471 F.3d 1264, 1270 (Fed. Cir. 2006) (continuation-in-part patent applications are entitled to the priority date of the parent application for those claims that have an adequate written description in that parent application).

When a dispute arises concerning a continuation-in-part, as with the '885 and '966 patents, the ***patentee*** bears the burden of proof to show it is entitled to the priority date of the original application. In *PowerOasis*, for example, the court shifted the burden to the patentee to show entitlement to the earlier filing date and relied on the fact that the PTO did not "make any determination with regard to the priority date of the various claims of the asserted patents." *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1305-06 (Fed. Cir. 2008). Here, the PTO at best made a priority date determination with respect to ***the '532 patent***, not the patents-in-suit. As discussed above, the examiner's withdrawal of the written description rejection with respect to the '532 patent (which does not claim overlapping zone scenes) was a far cry from an affirmative priority date determination with respect to the '885 and '966 patents (which are directed to overlapping zone scenes). Because there was no such determination, no presumption of entitlement attaches. *Id.* at 1305; *see also Bone Care Int'l, LLC v. Pentech Pharms., Inc.,* 741 F. Supp. 2d 865, 873-74 (N.D. Ill. 2010) (rejecting the patentee's argument that "the examiner implicitly 'accepted'

---

[2] A continuation-in-part or CIP application is an application containing a portion or all of the disclosure of an earlier application together with added matter not present in that earlier application. *Transco Prods., Inc. v Performance Contracting, Inc.,* 38 F.3d 551, 555 (Fed. Cir. 1994) (citing M.P.E.P 201.08).

their assertion regarding the priority date" by issuing the patent, in the absence of any explicit determination of priority in the patent's file history), *see also e.g., Purdue Pharma, L.P. v. F.H. Faulding & Co.*, 48 F. Supp. 2d 420, 432 (D. Del. 1999) ("[E]ven if the Court were to consider the Examiner's decision not to reject the amended claims as evidence that the claims were supported, the Examiner's inaction does not tell the Court what the Examiner believed to be the adequate support for the new claims. Whether the patent specification adequately describes a patent for purposes of Section 112 must be determined by the text and examples of the specification and their meaning to those skilled in the art, and not by the Patent Examiner's failure to act.")

In short, Sonos bears the burden to prove that the asserted claims are entitled to a priority date earlier than 2019. It has failed to carry that burden. And the claim are invalid as a result.

Dated: May 17, 2023

Respectfully submitted,

 */s/ Sean Pak* 
Attorneys for GOOGLE LLC

QUINN EMANUEL URQUHART & SULLIVAN, LLP

*Counsel for Google LLC*

**ATTESTATION**

Pursuant to the Federal Rules of Civil Procedure and Local Rule 5-1, I hereby certify that, on May 17, 2023, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system and email.

DATED: May 17, 2023

By:  */s/ Sean Pak*