CLEMENT SETH ROBERTS (SBN 209203)
croberts@orrick.com
BAS DE BLANK (SBN 191487)
basdeblank@orrick.com
ALYSSA CARIDIS (SBN 260103)
acaridis@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:   +1 415 773 5700
Facsimile:    +1 415 773 5759

SEAN M. SULLIVAN (*pro hac vice*)
sullivan@ls3ip.com
J. DAN SMITH (*pro hac vice*)
smith@ls3ip.com
MICHAEL P. BOYEA (*pro hac vice*)
boyea@ls3ip.com
COLE B. RICHTER (*pro hac vice*)
richter@ls3ip.com
LEE SULLIVAN SHEA & SMITH LLP
656 W Randolph St., Floor 5W
Chicago, IL 60661
Telephone:   +1 312 754 0002
Facsimile:    +1 312 754 0003

*Attorneys for Sonos, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA,

SAN FRANCISCO DIVISION

| | |
|---|---|
| SONOS, INC., <br><br> Plaintiff and Counter-defendant, <br><br> v. <br><br> GOOGLE LLC, <br><br> Defendant and Counter-claimant. | Case No. 3:20-cv-06754-WHA <br><br> Consolidated with <br> Case No. 3:21-cv-07559-WHA <br><br> **SONOS, INC.'S BRIEF REGARDING THE COURT'S PROPOSED JURY INSTRUCTIONS** <br><br> Judge:  Hon. William Alsup <br> Courtroom:  12, 19th Floor <br> Trial Date: May 8, 2023 |

In addition to the objections made on the record today and without prejudice to further objections at the May 19, 2023 continued charge conference, Sonos objects to the following proposed jury instructions:

As a global matter and for the reasons discussed on the record with respect to the proposed verdict form, Sonos objects to instructing the jury on invalidity prior to infringement. As requested in both parties' draft verdict forms (Dkts. 615-5, 615-6), to avoid confusion and the need for multiple contingent instructions, and to potentially reduce the need to retry this case, the jury should answer infringement first, then invalidity regardless of infringement, and finally damages if needed.

**Instructions 11 and 18 (§ 112 and obviousness)**

Sonos objects to Instruction 18 (and the corresponding parts of Instruction 11, at 6:4-15). The Court's instruction is a clear misstatement of the law and is heavily biased in favor of a finding of invalidity. The obviousness inquiry requires comparing the *claims* to the prior art, which is why both parties' requested instructions regarding obviousness said exactly that—Google did not request an instruction about comparing the *specification* to the prior art. Dkt. 617 at 55-61. The Court's instruction invites hindsight bias and injects irrelevant and incorrect considerations into the obviousness question.

The Supreme Court and the Federal Circuit has repeatedly cautioned that the "factfinder should be aware, of course, of the distortion caused by hindsight bias and must be cautious of arguments reliant upon *ex post* reasoning." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 421 (2007). And the factfinder must avoid the "temptation to read into the prior art the teachings of the invention in issue." *Id.* (quoting *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 36 (1966)). The Court's proposed instruction would have the jury commit precisely that legal error, because "[a] patent's own disclosure cannot be used to suggest that the invention would have been obvious." *Union Carbide Chems. v. Shell Oil Co.*, 163 F. Supp. 2d 426, 442 (D. Del. 2001) (citing *In re Dow Chem. Co.*, 837 F.2d 469, 473 (Fed. Cir. 1988)), *aff'd in relevant part, rev'd in part sub nom. Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*, 308 F.3d 1167

(Fed. Cir. 2002); *see also In re Glaug*, 283 F.3d 1335, 1341 (Fed. Cir. 2002) (reversing finding of obviousness; "Glaug complains that the Board used Glaug's own explanation of his invention against him, instead of citing evidence from the prior art. An inventor's explanation of how the invention works does not render obvious that which is otherwise unobvious"). In *Union Carbide*, the Federal Circuit affirmed the district court's grant of a new trial on obviousness, *see* 308 F.3d at 1187-88, where "Shell witnesses testified that such techniques were well-known in the art at the time, [but] the only evidence Shell cited to support that contention was the specification of the [asserted] '243 patent," 163 F. Supp. 2d at 442.

In contrast to obviousness, which asks whether the *prior art* and evidence of secondary considerations make the claims obvious to a person of ordinary skill in the art, a written description or enablement inquiry asks whether the material within the four corners of the specification meets the requirements of § 112. Those inquiries are different. For example, a specification may disclose the complete invention of Elements A, B, and C, sufficient to support written description and enablement. At the same time, the prior art discloses Elements A, B, and C in the same level of detail as the specification. The obviousness question asks whether those prior art disclosures, combined with objective indicia of nonobviousness, motivation to combine, and reasonable expectation of success render the claims obvious. Nothing about the obviousness inquiry involves looking to the patent's specification. And, as explained above, it would be error to do so, as it invites hindsight reasoning.

The Court's instruction also improperly suggests that Sonos's specification was lacking in some respect, and that Sonos did something wrong before the PTO. 5/18/23 Tr. 1745: 1-3 ("You have the skimpiest specification in history and the reason it's skimpy is for reasons we all know, but that's not for the jury."). This instruction also plays into Google's trial theme that Sonos was required to submit its confidential source code to the Patent Office or include it in its specification. That is not a requirement for patentability. And Google has not raised—and has expressly abandoned—any § 112 defenses. Dkt. 723 at 43-45; Dkt. 596-5 at 2, 5. Sonos objects

to the Court's inclusion of an instruction that invites the jury to question Sonos's patent on grounds that were not raised at trial.

**Instructions 14 and 30 ('966 patent and three speakers):** For the reasons discussed on the record, 5/18/23 Tr. 1749:2-15, and explained in Sonos's previous briefing, Sonos objects to Instructions 14 and 30's statement regarding claim construction and infringement of the '966 patent. The '966 patent is a device claim to a computing device with software capable of performing different functions. It is not a system claim requiring a computing device and three speakers. In the event the Court continues to overrule this objection and maintain its claim construction, Sonos requests that the Court reword the instructions to focus on what the jury needs to decide rather than what they do not.

For Instruction 14, the Court should replace page 7:17-8:4 as follows:

> Sonos contends that computing devices installed with the Google Home App and networked with at least three zone players infringe the '966 patent. This would be a smaller subset than every computing device installed with the Google Home App. That smaller subset may (or may not) infringe. That determination will be up to you and must be made based on your finding of whether or not all other claim requirements, or "limitations," are met as to that subset.

For Instruction 30, the Court should replace page 15:27-16:2 as follows:

> As stated above, Sonos contends that computing devices installed with the Google Home App and networked with at least three zone players infringe the '966 patent. A computing device installed with the Google Home App that is *not* yet networked with at least three zone players does not infringe. For those computing devices that *are* so networked, it is up to you to decide whether Sonos has proven direct infringement.

Informing the jury that the Court "found that the '966 accused products … do not infringe the '966 patent" is confusing and prejudicial. Dkt. 751 at 15:27-16:1. The Court did not make that finding; the Court simply construed the claims to require three zone players. The instruction also suggests that the Court has a view on infringement of devices that are networked with three zone players, and invites the jury to speculate about why the Court "found" no infringement.

**Instruction 28 (dependent claims):**  Sonos requests that the Court amend this instruction to apply to both validity and infringement and give the instruction before addressing invalidity. It would be helpful for the jury to hear that claims are evaluated individually and to understand how independent and dependent claims relate to each other when deciding obviousness.

**Instruction 46 at 24:3-5 (lump sum).**  The Court should amend this instruction to fit the facts of the case as follows: "This differs from payment of a per-unit royalty because, with a per-unit royalty, Google pays based on the ~~revenue~~ number of actual licensed products it sells." Sonos's per-unit royalty is not based on revenue but on number of products sold.

**Doubts resolved against infringer:**  The Court should instruct the jury that uncertainty about the number of infringing products is resolved against Google.  *See* AIPLA Instruction No. 10.3; Dkt. 618 at 33-34 (explaining that this instruction is not limited to lost profits cases). As the Court is aware, despite Sonos timely requesting this data, Google has not produced data from which we can know the number of Home Apps networked with three speakers.  Google told Sonos that it was "unable to locate such data."  Dkt. 735 at 5-6; Dkt. 734-2 at 1.  Sonos instead introduced evidence showing that 29% of households have three or more smart speakers.  5/12/23 Tr. 1132:1-4.  Any uncertainty about the number of infringing units should be resolved against Google, and the jury should be so instructed.  *Sensonics, Inc. v. Aerosonic Corp*., 81 F.3d 1566, 1572 (Fed. Cir. 1996) (given lack of information on the "number of infringing devices made by [infringer]," "damages may be estimated on the best available evidence, taking cognizance of the reason for the inadequacy of proof and *resolving doubt against the infringer*" (emphasis added)).

Dated:  May 18, 2023

ORRICK HERRINGTON & SUTCLIFFE LLP
*and*
LEE SULLIVAN SHEA & SMITH LLP

By: */s/ Clement Seth Roberts*
    Clement Seth Roberts

*Attorneys for Sonos, Inc.*