QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Sean Pak (Bar No. 219032)
  seanpak@quinnemanuel.com
  Melissa Baily (Bar No. 237649)
  melissabaily@quinnemanuel.com
  James Judah (Bar No. 257112)
  jamesjudah@quinnemanuel.com
  Lindsay Cooper (Bar No. 287125)
  lindsaycooper@quinnemanuel.com
  Iman Lordgooei (Bar No. 251320)
  imanlordgooei@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:    (415) 875-6600
Facsimile:    (415) 875-6700

  Marc Kaplan (*pro hac vice*)
  marckaplan@quinnemanuel.com
191 N. Wacker Drive, Ste 2700
Chicago, Illinois 60606
Telephone:    (312) 705-7400
Facsimile:    (312) 705-7401

*Attorneys for GOOGLE LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

|  |  |
|---|---|
| SONOS, INC.,<br><br>         Plaintiff and Counter-<br>         Defendant,<br><br>    vs.<br><br>GOOGLE LLC,<br><br>         Defendant and Counter-<br>         Claimant. | Case No. 3:20-cv-06754-WHA<br>Consolidated with Case No. 3:21-cv-07559-WHA<br><br>**GOOGLE LLC'S NOTICE OF MOTION AND MOTION FOR JUDGMENT AS A MATTER OF LAW THAT THE ASSERTED PATENTS ARE INVALID**<br><br>Location: Courtroom 12, 19th Floor<br>Judge:    Hon. William Alsup |

1

## NOTICE OF MOTION AND MOTION

2  PLEASE TAKE NOTICE that on May 19, 2023 at the close of Defendant Google LLC

3  ("Google")'s rebuttal case against Plaintiff Sonos, Inc. ("Sonos"), in Courtroom 12 before the

4  Honorable William Alsup, 450 Golden Gate Avenue, San Francisco, California, Google moved

5  for judgment as a matter of law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure.

6  Google submits its memorandum in further support of the Motion.

7  This Motion is made on the basis that Sonos failed to provide a legally sufficient evidentiary

8  basis for a reasonable jury to find in favor of Sonos on invalidity of the asserted patents.

9  This Motion is based on the testimony and evidence admitted at trial, all pleadings,

10  exhibits, and records in this action, and such other papers, evidence, and/or argument as may

11  be submitted to the Court in connection with this Motion or that the Court may take notice or

12  otherwise consider.

13

14  DATED:  May 19, 2023                 QUINN EMANUEL URQUHART & SULLIVAN,
                                        LLP
15

16                                      By _____/s/ Sean Pak_____
17                                          Sean Pak
                                            Melissa Baily
18                                          James D. Judah
                                            Lindsay Cooper
19                                          Marc Kaplan
                                            Iman Lordgooei
20

21                                          *Attorneys for GOOGLE LLC*

22

23

24

25

26

27

28

## ASSERTED CLAIMS

'885 Patent, Claim 1:

[1.0]. A first zone player comprising:

[1.1] a network interface that is configured to communicatively couple the first zone player to at least one data network;

[1.2] one or more processors;

[1.3] a non-transitory computer-readable medium; and

[1.4] program instructions stored on the non-transitory computer-readable medium that, when executed by the one or more processors, cause the first zone player to perform functions comprising:

[1.5] while operating in a standalone mode in which the first zone player is configured to play back media individually in a networked media playback system comprising the first zone player and at least two other zone players;

[1.6] (i) receiving, from a network device over a data network, a first indication that the first zone player has been added to a first zone scene comprising a first predefined grouping of zone players including at least the first zone player and a second zone player that are to be configured for synchronous playback of media when the first zone scene is invoked; and

[1.7] (ii) receiving, from the network device over the data network, a second indication that the first zone player has been added to a second zone scene comprising a second predefined grouping of zone players including at least the first zone player and a third zone player that are to be configured for synchronous playback of media when the second zone scene is invoked, wherein the second zone player is different than the third zone player;

[1.8] after receiving the first and second indications, continuing to operate in the standalone mode until a given one of the first and second zone scenes has been selected for invocation;

[1.9] after the given one of the first and second zone scenes has been selected for invocation, receiving, from the network device over the data network, an instruction to operate in accordance with a given one of the first and second zone scenes respectively comprising a given one of the first and second predefined groupings of zone players; and

[1.10] based on the instruction, transitioning from operating in the standalone mode to operating in accordance with the given one of the first and second predefined groupings of zone players such that the first zone player is configured to coordinate with at least one other zone player in the given one of the first and second predefined groupings of zone players over a data network in order to output media in synchrony with output of media by the at least one other zone player in the given one of the first and second predefined groupings of zone players.

'966 Patent, Claim 1:

[1.0] A computing device comprising:

[1.1] one or more processors;

[1.2] a non-transitory computer-readable medium; and

[1.3] program instructions stored on the non-transitory computer-readable medium that, when executed by the one or more processors, cause the computing device to perform functions comprising:

[1.4] while serving as a controller for a networked media playback system comprising a first zone player and at least two other zone players, wherein the first zone player is operating in a standalone mode in which the first zone player is configured to play back media individually:

[1.5] receiving a first request to create a first zone scene comprising a first predefined grouping of zone players including at least the first zone player and a second zone player that are to be configured for synchronous playback of media when the first zone scene is invoked;

[1.6] based on the first request, i) causing creation of the first zone scene, ii) causing an indication of the first zone scene to be transmitted to the first zone player, and iii) causing storage of the first zone scene;

[1.7] receiving a second request to create a second zone scene comprising a second predefined grouping of zone players including at least the first zone player and a third zone player that are to be configured for synchronous playback of media when the second zone scene is invoked, wherein the third zone player is different than the second zone player;

[1.8] based on the second request, i) causing creation of the second zone scene, ii) causing an indication of the second zone scene to be transmitted to the first zone player, and iii) causing storage of the second zone scene;

[1.9] displaying a representation of the first zone scene and a representation of the second zone scene; and

[1.10] while displaying the representation of the first zone scene and the representation of the second zone scene, receiving a third request to invoke the first zone scene; and

[1.11] based on the third request, causing the first zone player to transition from operating in the standalone mode to operating in accordance with the first predefined grouping of zone players such that the first zone player is configured to coordinate with at least the second zone player to output media in synchrony with output of media by at least the second zone player.

GOOGLE'S NOTICE OF MOTION AND MOTION FOR JUDGMENT AS A MATTER OF LAW

## MEMORANDUM AND POINTS OF AUTHORITIES

Google moves for judgment as a matter of law ("JMOL") in its favor pursuant to Rule 50(a) of the Federal Rules of Civil Procedure.  As demonstrated in greater detail below, Google put forth clear and convincing evidence that claim 1 of the '885 patent, and claims 1, 2, 4, 6 and 8 of the '966 patent are invalid.  Sonos either did not respond or failed to raise a legally sufficient evidentiary basis to find that the patents are not invalid, the court should grant judgment as a matter of law. Google requests that the Court enter judgment in its favor.

## ARGUMENT

Judgment as a matter of law is appropriate "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a).  In making this determination, "the court should review all of the evidence in the record[.]" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  Rule 50 "allows the trial court to remove . . . issues from the jury's consideration when the facts are sufficiently clear that the law requires a particular result." *Weisgram v. Marley Co.*, 528 U.S. 440, 448 (2000) (internal quotations omitted).  The standard for granting judgment as a matter of law mirrors the standard for granting summary judgment, and "the inquiry under each is the same." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  A motion for JMOL may be made at any time before the case is submitted to the jury. *See* Fed. R. Civ. P. 50(a)(2).

## I. NO REASONABLE JURY COULD FIND THE ASSERTED CLAIMS OF THE '885 AND '966 PATENTS NOT INVALID

It is undisputed that the Sonos prior art system ("Sonos 2005 System") is prior art.  Multiple Sonos witnesses confirmed that the Sonos 2005 System was commercially released in January 2005, which is more than a year before the filing of Sonos's provisional application in September of 2006. Trial Tr. (Millington) at 280:4-11, 280:16-19, 314:3-9, 315:13-24; *id.* (Lambourne) at 520:14-16; TX0062; TX0063; TX6991; TX6974; TX6979; TX6730.  Because the Sonos 2005 System was publicly on-sale more than a year before Sonos's provisional application was filed, it constitutes prior art under 35 U.S.C. § 102(b).

Google presented testimony from Dr. Schonfeld with respect to '885 patent elements [1.0]-[1.4] (Trial Tr. at 1375:18-1377:8) and [1.5]-[1.6] (Trial Tr. at 1377:9-1389:14) and '966 [1.0]-[1.6] and [1.9] of the '966 patent (Trial Tr. at 1389:17-1390:18).  With respect to these elements, Sonos did not dispute that the Sonos 2005 System included zone players (ZP100) comprising a network interface, one or more processors, and a non-transitory computer-readable medium with program instructions, as Dr. Schonfeld opined consistent with the evidence and Mr. Millington and Mr. Lambourne's testimonies.  Nor did Sonos dispute that the Sonos 2005 System allowed a zone player to connect to a wired or wireless home network, Trial Tr. (Millington) 320:11-20, or that the Sonos 2005 System included a controller capable of controlling at least three zone players.  *E.g.*, Trial Tr. (Millington) 320:18-25.  There was also no dispute that the Sonos 2005 System could create groups of zone players by using, for example, the physical CR100 controller's menus.  *E.g.*, Trial Tr. (Millington) 323:17-324:6.   And the zone players in the Sonos 2005 System could then output music synchronously after they were grouped, which was not disputed.  *E.g.*, Trial Tr. (Millington) 321:21-322:4.

Google also presented testimony from Dr. Schonfeld with respect to elements 1.9-1.10 of the '885 patent (Trial Tr. at 1420:5-1422:3) and elements 1.10 and 1.11 of the '966 patent (Trial Tr. at 1422:6-14).  And with respect to '885 patent elements [1.7]-[1.8] and '966 patent elements [1.7]-[1.8], because Sonos 2005 disclosed saved zone scenes, and disclosed overlapping groups, but did not disclose an additional zone scene, Google relied on combinations with the knowledge of a person of ordinary skill in the art ("POSITA"), Sonos forums, Nourse, and Squeezebox.  Trial Tr. at 1422:15-1451:9; *see also* Section II.  Notably, Dr. Almeroth failed to address let alone rebut several of these references in his rebuttal testimony, including the Sonos forums, Nourse, and Squeezebox. *See generally*, Trial Tr. (Almeroth) at 1641:13-1709:1.

Google also presented substantively unrebutted testimony from Dr. Schonfeld with respect to the asserted dependent claims of the '966 patent.  *E.g.*, Trial Tr. (Schonfeld) at 1451:10-1455:2. For instance, Dr. Schonfeld presented testimony that claim 2 of the '966 patent (Trial Tr. (Schonfeld) at 1451:23-1452:12), claims 3 and 4 of the '966 patent (Trial Tr. (Schonfeld) at 1452:13-1453:9), claim 6 of the '966 patent (Trial Tr. (Schonfeld) at 1453:10-1454:11), and claim

GOOGLE'S NOTICE OF MOTION AND MOTION FOR JUDGMENT AS A MATTER OF LAW

8 of the '966 patent (Trial Tr. (Schonfeld) at 1454:12-1455:2) are invalid.  Sonos did not provide any substantive rebuttal to Dr. Schonfeld's opinions regarding the dependent claims independent from its arguments for the independent claims.  *See* Trial Tr. (Almeroth) at 1687:18-1668:11.

As Dr. Almeroth opined, according to Sonos there are only "two fundamental disagreements . . . as it relates to validity."  Trial Tr. (Almeroth) at 1653:21-22.  Dr. Almeroth argued that (1) "the Sonos 2005 System does not include zone scenes" and (2) that Google's analysis is flawed because it "incorporated hindsight" rather than viewing the issue from the perspective "of a person of skill in the art in 2005 specifically."  Trial Tr. (Almeroth) at 1653:23-1654:8.

But Google presented unrebutted evidence that Sonos 2005 System in view of one or more of [1] the knowledge of a POSITA, [2] the Sonos Forums, [3] the Squeezebox system, and [4] the Nourse patent, rendered these differences obvious.  And Sonos's attempt to cherry-pick soundbites implying that Google evaluated the Sonos 2005 System in the present rather than in the 2005 timeframe is meritless.   Google and Dr. Schonfeld consistently articulated that their analysis was from the perspective of a POSITA at the time of the invention.  *Infra.*  Indeed, Dr. Schonfeld confirmed what was and should have been clear to Dr. Almeroth throughout this case and at trial—that the timeframe Dr. Schonfeld applied consistently throughout his obviousness opinions was "2005."  Trial Tr. (Schonfeld) at 1712:18-21.

Moreover, even assuming *arguendo* that the Sonos 2005 system did not include zone scenes (it did), Dr. Almeroth failed to even address let alone rebut the undisputed record evidence and testimony from Dr. Schonfeld establishing that several *other* prior art references also included zone scenes and would have been obvious to combine with Sonos 2005 (*see infra*), including the prior art Squeezebox system.  *E.g.*, Trial Tr. (Schonfeld) at 1449:11-1450:24 (testifying that Squeezebox had overlapping zone scenes).  Thus, there is no apparent dispute from Dr. Almeroth that the combination of Sonos 2005 and Squeezebox disclosed all of the elements of the asserted claims.

Accordingly, as discussed below, no reasonable jury could find the asserted claims of the patents-in-suit not invalid.

## II.   NO REASONABLE JURY COULD FIND THAT THE ASSERTED CLAIMS ARE

**NOT OBVIOUS OVER THE SONOS 2005 SYSTEM**

**A.     THE SONOS 2005 SYSTEM IN VIEW OF KNOWLEDGE OF A POSITA**

The Court should grant judgment as a matter of law that the asserted claims are invalid because no reasonable jury could find that the Sonos 2005 system in view of the knowledge of a person of skill in the art does not render the asserted claims invalid.

**1.     *Sonos 2005 System In View Of The Knowledge Of A POSITA Rendered Obvious Zone Scenes***

The Sonos 2005 System allowed users to create custom groups of two or more zone players by selecting each Zone Player manually, one-by-one.  *E.g.*, Trial Tr. (Millington) 324:7-22, 327:3-17; TX0062 at 30; TX0063 at 3.  It also included a "Party Mode" grouping that was "hard-coded" in the controller (*i.e.*, stored).  *Id.*; TX0063 at 4; TX3923 (Lambourne Decl.) ¶ 6; *e.g.*, Trial Tr. (Lambourne) at 420:1-7, 489:23-25, 490:1-5, 502:25-503:1-2, 503:12-23, 505:9-23; *see also* TX6544 at 27.  The Party Mode group included all of the zone players in the system and could be invoked from the Zone Menu screen using a "single touch."  *Id.*  The user could then modify the Party Mode group to remove zone players from the group, creating a slightly smaller group of zone players.  *E.g.*, Trial Tr. (Millington) at 327:14-328:1; Trial Tr. (Schonfeld) at 1384:15-24.

The testimony from Sonos's own inventor, corroborated by his own contemporaneous documents, conclusively established that the party mode in the Sonos 2005 System was a zone scene.  *E.g.*, Trial Tr. (Lambourne) at 420:1-7, 489:23-25, 490:1-5, 502:25-503:1-2, 503:12-23, 505:9-23; *see also* TX6544 at 27 (1-19-06 Sonos UI Specification, stating: "'Party Mode' that currently ships with the product is one example of a Zone Scene."); '966 Patent at Fig. 7 (illustrating "Party Mode" as an exemplary zone scene); TX3941 at 1 ("Zone Scene Macros. 'Party Mode' is one example"); TX0120 at 1 ("one click to put their Zones into predefined groupings []think Party-mode").  Google also presented evidence that even under Dr. Almeroth's view, which required that zone scene creation and invocation in the Sonos 2005 System take place at the same time, the zone scene would be disclosed or obvious.  *E.g.*, Trial Tr. (Schonfeld) at 1713:9-1714:7.

**2.     *Combining Sonos 2005 System With The Knowledge Of A POSITA Would Have Been Obvious In 2005***

Given that the Sonos 2005 System already included a first zone scene (party mode) there is

-4-

no genuine dispute of fact that adding a second, overlapping zone scene would have been obvious in view of the knowledge of a POSITA.  *See* Trial Tr. (Schonfeld) at 1713:1-5 ("is it also your opinion based on everything that we've heard that it would have been obvious to modify the Sonos 2005 System to meet the additional requirements for the second zone scene? A. Absolutely, for the same reasons I discussed yesterday.").

Google's expert, Dr. Schonfeld, testified that a person of ordinary skill in the art would have been motivated to modify the Sonos 2005 system to include more than one zone scene.  Specifically, Dr. Schonfeld testified that a POSITA would have found it obvious to modify the Sonos 2005 System in combination with the knowledge of a POSITA. Trial Tr. (Schonfeld) at 1334:1-1335:8 (agreement on level of skill of POSITA); 1712:18-1713:6 (obviousness for Sonos 2005 in view of POSITA).  The Squeezebox System, Nourse patent, and Sonos Forums posts, discussed below are also evidence of the knowledge and skill of a person of ordinary skill in the art.  Because each of those prior art references disclosed multiple overlapping zone scenes, they are relevant evidence of the motivation to combine the Sonos 2005 System with the knowledge of a person of skill in the art to meet these claim elements.  Google presented substantial evidence that at the time of the alleged invention in December of 2005, POSITAs were aware of various commercial systems that implemented multiple zone-scenes, including overlapping zone scenes, and the benefits of allowing for zone scenes in a media playback system.  TX2426 (Yamaha) at 55 ("Display the number of the current scene"); TX6000 (Bosed) at 7, 10, 44; TX3937 (Squeezebox); TX6513 (Nourse) at Abstract. In fact, the obviousness and desirability of implementing overlapping zone scenes in the Sonos 2005 system was immediately recognized by users of the Sonos Forums, thereby further evidencing the obviousness of this feature.  TX3930 ("*Just got the intro bundle*…I would have 2 party modes, Summer and Winter.") (emphasis added).  Thus, the state of the art at the time of the alleged invention included the use of zone scenes and overlapping zone scenes in media playback systems.

Dr. Schonfeld also described at length the knowledge of the patent examiner and certain prior art references discussed by that patent examiner, further illuminating the knowledge of a person of ordinary skill in the art and supporting the obviousness of the claimed system.  *See* Trial Tr. (Schonfeld)  at  1342:6-1347:16  (Yamaha DME),  1351:4-1352:2  (Bose),  1430:5-10.    For

GOOGLE'S NOTICE OF MOTION AND MOTION FOR JUDGMENT AS A MATTER OF LAW

example, Dr. Schonfeld presented evidence that during prosecution of the asserted patents the examiner found that the prior art "enabled the practice of the claimed subject matter without undue experimentation, and as such grouping of playback device and channels thereon would have been obvious as a matter of routine experimentation over the course of normal operation by the average skilled practitioner upon the DME interface to create, save, and recall various configurations including and/or excluding the particular enumerated playback devices."   Trial Tr. at 1343:5-13445:8.

Dr. Schonfeld also testified that a person of skill in the art would have had a reasonable expectation of success in modifying the Sonos 2005 system.  *E.g.*, Trial Tr. at 1388:22-1389:12 ("Q. . . . . how obvious would it be to modify the Sonos 2005 system to create -- to save the first zone group here that you've already created in the system? A. It will be a trivial change in my view. Q. And why would it be trivial? A. Because we are talking about saving it for later, which means something very simple."), *id.* at 1423:22-1425:2 ("Q. How difficult would it have been back in 2005 timeframe to a person of ordinary skill in the art to make the modification of saving one of the extra groups that was provided for in that system? A. It would be a trivial step in my view, and I can explain why. . . . how difficult . . .  would it have been for that person back in 2005 to make the simple modifications that you were just describing? A. In my opinion, it would have been a trivial exercise to do.  You are just shifting one code and not discarding the identifiers.  That's a very simple operation to do in the code."), *id.* at 1425:5-18 ("would it have been obvious to make the modification that you talked about to save the first zone group here for later?  Is that your testimony? A. It is my testimony. The moment you just decide that that's what you want to do, you can do it immediately."), 1426:2-7.

Sonos did not adequately rebut the combination of Sonos 2005 with the knowledge of a person of ordinary skill in the art or the reasonable expectation of success in doing so.  Dr. Almeroth did not provide any testimony directly rebutting evidence that a POSITA would have had a reasonable expectation of success in modifying the Sonos 2005 to include more than one zone scene. At most, Dr. Almeroth testified that his obviousness opinions for Sonos 2005 generally applied to combinations, but he provided no testimony regarding the particular knowledge of a POSITA, and

GOOGLE'S NOTICE OF MOTION AND MOTION FOR JUDGMENT AS A MATTER OF LAW

1   the combination of that knowledge with the Sonos 2005 system.  Trial Tr. (Almeroth) at 1651:10-13

2   ("you have to have a reasonable expectation of success, that the idea that you -- that people at the

3   time, people with skill in the art, would say, 'Okay.  That's something that would be obvious to

4   do.'").  Dr. Almeroth's testimony regarding a Sonos Forum post stating "potential side effects if

5   zones can be allowed to be in more than one group" is not evidence of a lack of a reasonable

6   expectation of success.   Trial Tr. (Almeroth) at 1674:16-1675:12.  Dr. Almeroth testified that this

7   related to skepticism, which is a secondary consideration, not a response to reasonable expectation

8   of success.  *Id.*  Furthermore, Dr. Almeroth's testimony regarding that Forum post did not actually

9   identify any potential side effects, and the Forum post came well after Sonos's claimed conception

10  date.  Trial Tr. (Almeroth) at 1691:16-1695:17.  Dr. Almeroth also attempts to rely on two Forum

11  posts from a decade later, but these are not relevant because they were not statements regarding the

12  level of skill of a person of skill in the art at the time of the invention, nor did they specifically

13  identify any concrete implementation issues.  *Id.*; Trial Tr. (Almeroth) at 1675:15-1676:25; TX6958.

14  Further, Dr. Almeroth again described these issues as related to the secondary consideration of

15  skepticism, not the reasonable expectation of success of the alleged combination.  *See id.*

16       Furthermore, Mr. Lambourne himself was a user interface designer, not a computer or

17  electrical engineer.  Trial Tr. at 530:2-11, 531:5-14, 409:9-20.  Thus, Mr. Lambourne's specification

18  does not provide the type of detail Dr. Almeroth appears to be arguing is necessary for the prior art

19  to enable the zone scenes technology.  *See In re Epstein*, 32 F.3d 1559, 1568 (Fed. Cir. 1994) ("[T]he

20  Board's observation that appellant did not provide the type of detail in his specification that he now

21  argues is necessary in prior art references supports the Board's finding that one skilled in the art

22  would have known how to implement the features of the references and would have concluded that

23  the reference disclosures would have been enabling."), *Uber Tech., Inc. v. X One, Inc.*, 957 F.3d

24  1334, 1349 (2020) ("The specification of the '593 patent is entirely silent on how to transmit user

25  locations and maps from a server to a user's mobile device, suggesting that a person of ordinary skill

26  in the art was more than capable of selecting between the known methods of accomplishing this."),

27  *In re Publicover*, 813 F. App'x 527, 532 (2020) ("Publicover argues that Venable and Kiderman's

28  disclosures are too sparse to adequately explain to a skilled artisan how to modify Venable's system

GOOGLE'S NOTICE OF MOTION AND MOTION FOR JUDGMENT AS A MATTER OF LAW

to identify vestibulo-ocular movement. But as the examiner and Board correctly found, Publicover's specification is just as sparse on how a system would identify this type of eye movement."). Especially in view of the prior art Sonos 2005 system already implementing a first zone scene, there is no genuine dispute of fact that a POSITA was more than capable of adding a second, overlapping zone scene to the prior art Sonos 2005 system and would have been motivated to do so.

## B.   THE SONOS FORUMS

The Court should also grant judgment as a matter of law that the asserted claims are invalid because a reasonable jury could only find that the Sonos 2005 system in view of Sonos Forums rendered  the asserted claims obvious.

### 1.   Sonos Forums Disclosed Zone Scenes

The only alleged difference that Dr. Almeroth identifies between the Sonos 2005 System and the claimed invention—namely, that the Sonos 2005 System allegedly does not include zone scenes—was disclosed by the Sonos Forums.  Indeed, Google presented evidence that the Sonos Forums were "a website that allowed users to write about their experiences of using a Sonos system."  Trial Tr. (Lambourne) at 466:12-15.  Google further established, without substantive rebuttal from Sonos, that the Sonos Forums disclosed adding to the Sonos 2005 System the ability to create overlapping zone scenes that may be saved and later invoked—prior to Sonos's alleged December 21, 2005 conception date.  Trial Tr. at 535:11-551:25; TX2424; TX3928; TX3930.

Two threads from the Sonos forums are particularly relevant here: [1] "Virtual Zones and Zone Grouping" (TX2424, TX2425) and [2] "Macro / presets" (TX3930, TX3928).  In the first thread, "Virtual Zones and Zone Grouping," the user "theboyg" noted that the way the Sonos 2005 System permitted users to create groups—by linking and unlinking speakers in real time—was "cumbersome."  TX2424 at 1.  He suggested adding to the prior art system "a virtual zone – i.e., a zone called 'Downstairs'" that would allow a user to "group all [his] downstairs zones" and avoid the necessity to "keep manually linking/unlinking multiple zones at a time."  Id.  In the second thread, "Macro / presets," the user "JeffT" suggested that the Sonos 2005 system should "save Zone links [i.e., speakers linked into a group] as favorites" so that, for example, he could set up "2 party modes, Summer and Winter," where the "Summer mode" would include "the deck speakers and the

GOOGLE'S NOTICE OF MOTION AND MOTION FOR JUDGMENT AS A MATTER OF LAW

1  Winter mode would not."  Users "Majik," "kengreenwood" and "floras_dad" agreed with JeffT that

2  adding this feature to the Sonos 2005 system would be "useful" and a "great idea," and explained

3  that the functionality could be implemented using a "macro" function that would allow the user to

4  invoke the group using a "single selection" (*e.g.*, by selecting a "soft-key" on the controller screen).

5  TX3930 at 1-2; *see also* Dkt. 309 (Summary Judgment Order) at 8 ("This conclusion also aligns

6  with the basic purpose of the invention, which is to allow users to pre-save customized speaker

7  groups and later 'invoke' the named group on demand.").

8      Indeed, there is no dispute that each of the above-mentioned posts are prior art.  The parties

9  agree, and the jury instructions instruct, that the above-mentioned Sonos Forum posts are prior art.

10  Dkt. 751 at 16 (Final Jury Instructions) ("the Sonos forum posts that expressly predate December

11  21, 2005, are prior art (e.g., those of 'theboyg' and 'JeffT'").  Google also presented unrebutted

12  evidence establishing that the posting pre-date Sonos's alleged conception date.  For instance,

13  Google presented evidence that "theboyg" posting in the Virtual Zones and Zone Grouping thread

14  was dated "27 February 2005."  TX2424 at 1.  Google also presented evidence that JeffT, Majik,

15  kengreenwood and floras_dad postings in the Macros/presets thread had dates ranging from "22

16  September 2005" to "27 September 2005."

17      The unrebutted evidence establishes that the prior art Sonos Forums disclose adding to the

18  Sonos 2005 system the ability for users to create multiple zone scenes and overlapping zone scenes.

19  For example, the inventor of the asserted patents, Robert Lambourne, admitted that the Sonos Forum

20  posts disclosed creating overlapping zone scenes that can be saved and later invoked:

21      Q. But zone scenes was being -- was being described -- zone
    scene were being described by users of the Sonos 2005 prior art
22      system before your December 20th, 2005 date which is a
    conception date, and they were talking about zone scenes
23      overlapping zone scenes and using macros which is one of the
    solutions you had in mind, to implement zone scenes; correct?

24      A.  Yes they were talking about macros and seen [*sic*] groups, yes.
25
    Trial Tr. (Lambourne) at 466:19-22, 536:20-539:25 ("those zone scenes could be overlapping in
26
    that they would share a speaker or a ZonePlayer; correct? A. Yes."); *see also id*. at 537:21-25, 538:1-
27
    25, 539:17-24, 540:13-19, 541:2-542:12, 549:24-550:10.  Mr. Lambourne further admitted that the
28

Sonos Forums disclosed implementing the overlapping zone scene functionality using "macros," which was the same solution that Mr. Lambourne described in his alleged conception documentation.   Trial Tr. (Lambourne) at 528:11-25, 529:1-7, 531:15-22, 541:2-25, 542:1-12, 546:8-13.   And Mr. Lambourne also conceded that he reviewed the Sonos Forums "[d]uring the design and development of zone scene technology."   *Id*. at 466:19-22; Trial Tr. (Lambourne) at 553:1-4 ("Q. It's true, sir, that you did look at Sonos forum postings during your career, you just don't happen to know or remember now all of the times you looked at those postings; correct? A. Correct, yes.").

2.   ***Combining Sonos 2005 with Sonos Forums would have been obvious in 2005***

Sonos did not and could not genuinely dispute that a person of skill in the art would have been motivated to combine the Sonos 2005 system with the teachings of the Sonos forum posting. It would have been obvious for a POSITA to modify the Sonos 2005 system to arrive at the claimed invention.   For instance, Mr. Lambourne testified that the Sonos Forums was specifically directed at discussing the prior art Sonos 2005 System.   Trial Tr. (Lambourne) at 467:10-18, 532:9-14, 532:22-533:6.   He also testified that he was looking at the Sonos forums during the period he was designing and developing the "zone scenes technology," and that he would review Sonos Forum postings discussing new features.   Trial Tr. (Lambourne) at 466:19-467:1, 532:9-21, 533:11-20.   Mr. Lambourne also conceded that "common practice in the industry" is to consider posts from users, such as the prior art Sonos Forum postings, and "incorporate that feedback into future planning for products."   *Id*. at 534:1-7.   Google also presented unrebutted testimony that combining the Sonos 2005 System with the Sonos Forum posts to achieve the alleged invention of the asserted claims was obvious and that a person of skill in the art would have found substantial motivation to combine within the Sonos Forums, given their explicit suggestion to modify the Sonos 2005 System.   Trial Tr. (Schonfeld) at 1431:22-1432:4 ("would it have been obvious to those skilled in the art back in 2005 when they looked at the Sonos 2005 system and also looked at the forum postings about that system to make a combination in their mind? A. Yeah, absolutely. The Sonos forum was posting of people who were interested -- users, dealers who were interested in the Sonos 2005 system, and they

1   were making suggestions of how to modify the Sonos 2005 system to improve it").

2          There is also no genuine dispute of fact that a POSITA would have had a reasonable

3   expectation of success in combining Sonos 2005 with Sonos Forums to arrive at the asserted claims.

4   For example, named inventor Mr. Lambourne testified that his solution for implementing zone

5   scenes involved using "macros," just like the Forums explicitly suggested in, for example, the

6   Macro/Presets thread.  Trial Tr. (Lambourne) at 528:11-25 ("Q. And one of the solutions that you

7   were thinking of for your eventual zone scenes invention was the use of macros to implement zone

8   scenes; correct? A. Yes...."); *see also id*. At 466:19-22, 531:15-22, 537:21-25, 538:1-25, 541:22-

9   542:12, 546:8-13, 548:8-17.   Mr. Lambourne confirmed that the Sonos Forum postings also

10  disclosed this same solution, namely using macros to implement overlapping zone scenes.  *Id*.; *see*

11  *also* TX2425, TX3930.  Google's expert, Dr. Schonfeld, also demonstrated that a person skilled in

12  the art in 2005 would have had a reasonable expectation of success in combining Sonos 2005 system

13  with the Sonos Forums at least because [1] Sonos forum posters "were interested in the Sonos 2005

14  system, and they were making suggestions of how to modify the Sonos 2005 system to improve it"

15  (Trial Tr. (Schonfeld) at 1431:22-1432:4), and [2] were discussing the same "solution" to

16  implementing macros as Mr. Lambourne.   Trial Tr. (Schonfeld) at 1423:22-1424:18, 1434:16-

17  1435:2.

18          Sonos did not rebut the combination of Sonos 2005 with Sonos Forums.  Dr. Almeroth

19  pointed to a single post in which a user on the Sonos Forums asserted, without support, that "it is

20  logically impossible to have the same speakers in multiple groups."  Trial Tr. (Almeroth) 1675:22-

21  1676:6.   Initially, the post that Dr. Almeroth relies upon is legally irrelevant because it is dated in

22  2016, whereas the obviousness analysis must be performed at the time of the alleged invention in

23  December 2005.  *See Forest Laboratories, LLC v. Sigmapharm Laboratories, LLC*, 918 F.3d 928,

24  937 (Fed. Cir. 2019) (unexpected result "must be 'unexpected by one of ordinary skill in the art at

25  the time of [the] application'") (citing *In re Geisler*, 116 F.3d 1465, 1470 (Fed. Cir. 1997)).  Not

26  once did Dr. Almeroth analyze what one of skill in the art would have understood as of December

27  of 2005.  Furthermore, Dr. Almeroth did not testify that he agreed with the statements of this user

28  that it was "logically impossible" to have the same speaker in multiple groups.  In fact, the evidence

1  in the record contradicts this statement.  For example, multiple users responded to the post and

2  explained that having the same speaker in multiple groups was not only possible but also a "basic

3  feature" and "not a difficult concept."  Trial Tr. (Almeroth) at 1691:6-1695:21.  It is also undisputed

4  that at the time of the post Dr. Almeroth is relying upon Google had already implemented the

5  accused grouping functionality.  Trial Tr. (Mackay) at 1272:23-1273:2, Trial Tr. (Maclellan) at

6  1299:6-9.   As explained *supra*, Dr. Almeroth also argued that this post related to secondary

7  considerations rather than a reasonable expectation of success.  Accordingly, no reasonable jury

8  could rely upon the statement in this posting to find the patents are valid.[1]

9        Dr. Almeroth did not present any other particularized showing with respect to the Sonos

10  Forums or their teachings.  Trial Tr. (Almeroth) at 1668:15-22 ("all [Dr. Schonfeld] relied on in the

11  combinations for – in the knowledge of a person of skill in the art, in Nourse, the Sonos forums, and

12  everything else he presented, my opinions apply equally to all of those.").

13        **C.   SQUEEZEBOX**

14        The Court should grant judgment as a matter of law that the asserted claims are invalid

15  because a reasonable jury could only find that the Sonos 2005 system in view of Squeezebox

16  rendered the asserted claims invalid.

17              **1.   *Squeezebox Disclosed Zone Scenes***

18        The Squeezebox was a prior art device made by Slim Devices – the Squeezebox system was

19  "designed to allow you to play to individual Squeezebox players or to synchronize multiple of

20  them."  Trial Tr. (Schonfeld) at 1448:13-15.  Google established that Squeezebox source code

---

22  [1]   Sonos's counsel has also argued that the Sonos Forum posts are not enabling.  But the Federal

23  Circuit has repeatedly held that a prior art reference asserted under § 103 does not necessarily have

to enable its own disclosure, *i.e.*, be "self-enabling."  *Symbol Techs., Inc. v. Opticon, Inc.*, 935 F.2d

24  1569, 1578 (Fed. Cir. 1991) ("While a reference must enable someone to practice the invention in

order to anticipate under § 102(b), a non-enabling reference may qualify as prior art for the purpose

25  of determining obviousness under § 103."); *Beckman Instruments Inc. v. LKB Produkter AB*, 892

F.2d 1547, 1551 (Fed. Cir. 1989) ("Even if a reference discloses an inoperative device, it is prior art

26  for all that it teaches.").  In any event, Dr. Schonfeld's testimony confirms that a POSITA could

make and use the alleged invention of the asserted claims in view of the prior art, taken as a whole.

27  Indeed, Mr. Lambourne testified that the Sonos Forums disclose the same solution for implementing

overlapping zone scene that he described.  Trial Tr. (Lambourne) at 528:11-25, 529:1-7, 531:15-22,

28  541:2-25, 542:1-12, 546:8-13.

1   (Slimserver v.5.3.1) was dated October 1, 2004 and was therefore prior art to the asserted patents.

2   Trial Tr. (Schonfeld) at 1445:23-1446:20, TX2508 (wayback machine for code directories), TX3007

3   (source code).

4         Google established that the Squeezebox system also disclosed the ability to include

5   overlapping zone scenes.  Google presented substantial evidence that the Squeezebox system was

6   designed to allow users to play to individual Squeezebox players or to synchronize multiple

7   Squeezebox players, and that two overlapping zone scenes could be created.  Trial Tr. (Schonfeld)

8   at 1448:14-1449:16.  Specifically, Google established that one player could reside in two different

9   groups with two different sync group IDs.  Trial Tr. (Schonfeld) at 1449:19-1450:24.  Google

10  established, without relevant rebuttal from Sonos, that the Squeezebox disclosed adding to the Sonos

11  2005 system the ability to create overlapping zone scenes that may be saved and later invoked prior

12  to Sonos's alleged December 21, 2005 conception date.  Trial Tr. at 561:4-566:18, TX3937, TX3808

13  (Squeezebox user manual), TX2508 (wayback machine for code).  Sonos also admitted that in 2003

14  users could name Squeezeboxes and had the ability to dynamically add or delete squeezebox players

15  and synchronize them.  Trial Tr. (Lambourne) at 561:4-566:18,  TX3937, *see also* Trial Tr.

16  (Schonfeld) at 1442:21-1443:8 (recalling Lambourne testimony that Sonos obtained and tested

17  Squeezebox systems for grouping functionality in 2003).  For example, Mr. Lambourne testified

18  that prior to the alleged conception date in December of 2005, Sonos was testing Squeezebox

19  devices, including by synchronizing multiple Squeezebox players into saved groups (*e.g.*, "Dining

20  Room + Master Bedroom" and "Dining Room + Master Bedroom + Living Room").  Trial Tr.

21  (Lambourne) at 561:4-566:18; TX3937; *see also* Trial Tr. (Schonfeld) at 1442:21-1443:8 (recalling

22  Lambourne testimony that Sonos obtained and tested Squeezebox systems for grouping

23  functionality in 2003).

24        Sonos's counsel attempted to rebut Dr. Schonfeld's testimony by suggesting the Squeezebox

25  devices Dr. Schonfeld tested had firmware from after the priority date.  Trial Tr. at 1482:12-16.  But

26  Sonos does not provide any basis for believing this distinction is of any significance.  And Sonos

27  did not dispute the Squeezebox source code that Dr. Schonfeld relied upon was prior art, or that Dr.

28  Schonfeld also ran "virtual machines" that simulated the operation of the Squeezeboxes in 2005.

Trial Tr. (Schonfeld) at 1485:12-19, 1506:1506:3-1507:1

### 2. *Combining Sonos 2005 With Squeezebox Would Have Been Obvious In 2005*

There is no genuine dispute of fact that a person of skill in the art would have been motivated to combine the Sonos 2005 system with the teachings of Squeezebox. Google presented unrebutted evidence that the combination of the prior art Sonos 2005 system combined with the Squeezebox prior art system would satisfy all the limitations of the asserted claims. TX3808, Trial Tr. (Schonfeld) at 1444:5-15; 1451:2-1455:2. Sonos also admitted that in November 2003, when thinking how to design the Sonos 2005 system, Sonos set-up and tested multiple Squeezeboxes. Trial Tr. (Lambourne) at 556:15-22; 557:24-558:3 (Q. So in November of 20 -- November 25th, 2003, you knew, and as part of your work you were looking at information about a Squeezebox product that was being sold by Slim Devices; correct? A. Yes, I was."), TX2831.  Google established that because Squeezebox and Sonos were competitors and that a POSITA working on one would have looked to the other to see what they were doing. Trial Tr. (Schonfeld) at 1443:1-8 ("do the same type of system. They would have looked into each other's system and tried to see what the competitor is doing and they did.")

*Sonos did not rebut the combination of Sonos 2005 with Squeezebox*.  At most, Dr. Almeroth testified that his obviousness opinions for Sonos 2005 generally applied to combinations, but he provided no testimony regarding the particular teachings of Squeezebox, and their combination with the Sonos 2005 system.  Trial Tr. (Almeroth) at 1668:15-22 ("all [Dr. Schonfeld] relied on in the combinations for – in the knowledge of a person of skill in the art, in Nourse, the Sonos forums, and everything else he presented, my opinions apply equally to all of those.")

### D. *NOURSE*

The Court should grant judgment as a matter of law that the asserted claims are invalid because a reasonable jury could only find that the Sonos 2005 system in view of Nourse render the asserted claims obvious.

### 1. *Nourse Disclosed Zone Scenes*

Nourse was a patent publication, qualifying as prior art as of its September 28, 2001 priority

date, and first published in 2003.  TX6513, Trial Tr. (Schonfeld) at 1438:6-1441:10.  Google established that Nourse was a "general management system for general speaker systems," and taught that "each speaker based on the addresses can receive …. content to the speaker and play individually or as a group depending on which address is used, which means it's able to play and operate in standalone mode and play back individually or play synchronously as part of a group." Trial Tr. (Schonfeld) at 1439:18-23.  Google established, without relevant rebuttal from Sonos, that the Nourse reference disclosed the ability to create overlapping zone scenes that may be saved and later invoked prior to Sonos's alleged December 21, 2005 conception date.  Trial Tr. (Schonfeld) at 1438:6-1441:10, TX6514.

2.    ***Combining Sonos 2005 With Nourse Would Have Been Obvious In 2005***

There is no genuine dispute of fact that a person of skill in the art would have been motivated to combine the Sonos 2005 system with the teachings of Nourse. Google established that a POSITA would have been motivated to combinate the Sonos 2005 system with Nourse to include storage of a second overlapping zone scene, at least because Nourse already disclosed zone scene storage and because both Sonos 2005 and Nourse addressed a similar problem of how to save zone groups.  Trial Tr. (Schonfeld at 1439:24-1440:19.  Dr. Schonfeld's unrebutted testimony also established that a POSITA would have had a reasonable expectation of success in combining Sonos 2005 with Nourse to arrive at the asserted claims.  Dr. Schonfeld testified that it would not have been difficult to store the group information for later use – that doing so would have been a "trivial operation," especially considering the amount of storage Nourse already disclosed. Trial Tr. (Schonfeld) at 1440:6-19, *see also*  Trial Tr. (Schonfeld) at 1441:4-10 ("They're both addressed to the same type of topic. They are solving very similar problems of managing saving zone groups and making them available and flexible to play individually or play later.")

***Sonos did not rebut the combination of Sonos 2005 with Nourse***.  At most, Dr. Almeroth testified that his obviousness opinions for Sonos 2005 generally applied to combinations, but he provided no testimony regarding the particular teachings of Nourse, and their combination with the Sonos 2005 system.  Trial Tr. (Almeroth) at 1668:15-22 ("all [Dr. Schonfeld] relied on in the combinations for – in the knowledge of a person of skill in the art, in Nourse, the Sonos forums, and

everything else he presented, my opinions apply equally to all of those.")

## III.   SONOS'S EVIDENCE OF SECONDARY CONSIDERATIONS FAILS TO REBUT GOOGLE'S STRONG SHOWING OF OBVIOUSNESS

Sonos only briefly addressed secondary considerations of non-obviousness, in an attempt to rebut Google's strong showing of obviousness.  No reasonable jury could rely upon Sonos's evidence of secondary considerations to find the asserted claims valid.

Indeed, the Federal Circuit has made clear that where, as here, there is a strong obviousness showing, evidence of secondary consideration of non-obviousness are frequently deemed inadequate as a matter of law.  *Ohio Willow Wood Co. v. Alps South, LLC*, 735 F.3d 1333, 1344, (Fed. Cir. 2013) ("[W]here a claimed invention represents no more than the predictable use of prior art elements according to established functions, as here, evidence of secondary indicia are frequently deemed inadequate to establish non-obviousness."); *Odom v. Microsoft Corp.*, 429 Fed. Appx. 967, 973 (Fed. Cir. 2011) ("As for Odom's arguments of secondary considerations, we have stated that weak secondary considerations generally do not overcome a strong prima facie case of obviousness.").  Here, Sonos has not presented any meaningful evidence of secondary consideration that could overcome Google's invalidity showing.

Sonos's expert, Dr. Almeroth briefly testified about "skepticism" based on a single post on the Sonos Forums in which a user states that adding a speaker to multiple groups is "logically impossible."  Trial Tr. (Almeroth) at 1676:16-25; TX6958.  However, there is no evidence in the record that the statement in this post was made by a POSITA or that it reflects the understanding of a POSITA.  In fact, the post was made in *2016*, more than a decade after the relevant time period for assessing secondary considerations.  And even in the same string of posts—which Dr. Almeroth had not fully reviewed—*other* forums users were commenting on the simplicity of the concept of zone scenes.  Trial Tr. (Almeroth) at 1691:2-1695:17; TX6958.  Moreover, Dr. Almeroth himself did not testify that he agreed with the statements made by the user, or that they were coherent or consistent with the understanding of a POSITA.  Google also presented evidence in the record establishing that adding a speaker to multiple groups was not only logically possible, but also had already been implemented by the time of the 2016 post—indeed, by Google's own accused

technology. *See* Section II.B.2.

Dr. Almeroth also testified briefly about industry praise.  Trial Tr. at 1677:1-1680:21; TX6787; TX6788; TX6780.   However, as the Court pointed out, Dr. Almeroth presented no evidence tying any industry praise to the  supposed advance:  overlapping zone scenes.  Trial Tr. at 1678:5-7 ("THE COURT:  But I have to say this:  It doesn't say 'overlap.'  It doesn't say 'three or more.'  It just says 'a group of speakers as a preset.'"), 1678:21-25 ("that's not quite right.  The praise is supposed to be of the invention, and here the invention requires three or more and overlapping.  This does not praise that.  It praises something that may be in the same ballpark but it's a group of speakers as a preset").  And in fact, none of the articles relied upon by Dr. Almeroth say anything about overlapping zone scenes, let alone heap praise upon the alleged invention.  *See* TX6787 (relating to saved groups, but nowhere mentioning overlapping zone scenes); TX6780 (same); TX6788 (same and also indicating that the feature "***could be*** very useful" but for grouping home theater speakers into a saved "theater" group, without any mention of overlapping zone scenes).  Other evidence in the record similarly confirms that overlapping speaker groups is not something "most people would configure."  TX6958 at 1.  Thus, Sonos has failed to establish the required nexus between the purported industry praise and the alleged invention.  *See Bosch Automotive Solutions, LLC v. Matal*, 878 F.3d 1027, 1036 (Fed. Cir. 2017) ("Evidence of [objective indicia] is only relevant to the obviousness inquiry 'if there is a nexus between the claimed invention and the [objective indicia].'") (quoting *In re Affinity Labs of Tex., LLC*, 856 F.3d 883, 901 (Fed. Cir. 2017)).

## <u>CONCLUSION</u>

Google respectfully requests that the Court grant judgment as a matter of law that claim 1 of the '885 patent, and claims 1, 2, 4, 6, and 8 of the '966 patent are invalid.

DATED:  May 19, 2023                    QUINN EMANUEL URQUHART & SULLIVAN, LLP

                                        By     _/s/ Sean Pak_____
                                               Sean Pak
                                               Melissa Baily
                                               James D. Judah
                                               Lindsay Cooper
                                               Marc Kaplan
                                               Iman Lordgooei


                                               *Attorneys for GOOGLE, LLC*

# CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure and Local Rule 5-1, I hereby certify that, on May 19, 2023, all counsel of record who have appeared in this case are being served with a copy of the foregoing via email.


                                   */s/ Sean Pak*
                                    Sean Pak

Case No. 3:20-cv-06754-WHA
GOOGLE'S NOTICE OF MOTION AND MOTION FOR JUDGMENT AS A MATTER OF LAW