CLEMENT SETH ROBERTS (SBN 209203)
croberts@orrick.com
BAS DE BLANK (SBN 191487)
basdeblank@orrick.com
ALYSSA CARIDIS (SBN 260103)
acaridis@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:    +1 415 773 5700
Facsimile:    +1 415 773 5759

SEAN M. SULLIVAN (*pro hac vice*)
sullivan@ls3ip.com
J. DAN SMITH (*pro hac vice*)
smith@ ls3ip.com
MICHAEL P. BOYEA (*pro hac vice*)
boyea@ ls3ip.com
COLE B. RICHTER (*pro hac vice*)
richter@ls3ip.com
LEE SULLIVAN SHEA & SMITH LLP
656 W Randolph St., Floor 5W
Chicago, IL 60661
Telephone:    +1 312 754 0002
Facsimile:    +1 312 754 0003

*Attorneys for Sonos, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA,

SAN FRANCISCO DIVISION

| | |
|---|---|
| SONOS, INC., <br><br> Plaintiff and Counter-defendant, <br><br> v. <br><br> GOOGLE LLC, <br><br> Defendant and Counter-claimant. | Case No. 3:20-cv-06754-WHA <br><br> Consolidated with <br> Case No. 3:21-cv-07559-WHA <br><br> **SONOS, INC.'S OPPOSITION TO GOOGLE'S MOTION FOR JUDGMENT AS A MATTER OF LAW RE VALIDITY** <br><br> Judge: Hon. William Alsup <br> Courtroom: 12, 19th Floor <br> Trial Date: May 8, 2023 |

## I. INTRODUCTION

Drawing all reasonable inferences in Sonos's favor, this Court should deny Google's motion for judgment as a matter of law (JMOL) and allow the jury to decide whether the asserted claims are invalid as obvious. In the alternative, the Court should grant Sonos's motion that Google failed to meet its burden to show by clear and convincing evidence that the asserted claims are invalid as obvious. Dkt. 754.

## II. LEGAL STANDARD

The Court must view the evidence in the light most favorable to the non-moving party, *Reed v. Lieurance*, 863 F.3d 1196, 1204 (9th Cir. 2017), and must deny JMOL unless "no reasonable juror could find in the non-moving party's favor." *Torres v. City of Los Angeles*, 548 F.3d 1197, 1205 (9th Cir. 2008).

## III. ARGUMENT

Google had the burden to overcome the asserted patents' "presumption of validity" by presenting "clear and convincing evidence" to the contrary. *SRAM Corp. v. AD-II Eng'g, Inc.*, 465 F.3d 1351, 1357 (Fed. Cir. 2006). A reasonable juror could find that Google failed to meet that burden.

### A. The Sonos 2005 System Does Not Teach Zone Scenes And Does Not Make The Asserted Claims Obvious.

Google's obviousness challenge relied heavily on the Sonos 2005 System. Google contended that the Sonos 2005 System taught one "zone scene"—party mode—plus the ability to create dynamic (i.e. single-use) speaker groups. So according to Google, the only change needed to the Sonos 2005 System was the ability to save one additional speaker group.

Sonos showed that both of Google's premises were wrong. The Sonos 2005 System did not have any zone scenes, including party mode. So simply saving another "zone scene" was not the only change needed.

The Sonos 2005 System also lacked any ability to separately create and invoke zone scenes. Dr. Schonfeld admitted "the actual Sonos prior art system didn't have the ability to save regular zone scenes; correct? A. That's absolutely correct." 5/17/23 Tr. at 1477:2-5. Instead,

the Sonos 2005 System could create temporary, one-time use "zone groups." 5/18/23 Tr. at 1658:11-19. The zone group was "immediately launched into a group" and could not be "previously saved." *Id.* As Mr. Millington explained, zone groups would not be saved "for future use, no. All you can do is invoke it immediately. … [Y]ou can't come back the next day and reapply that group." 5/8/23 Tr. at 328:11-20. In fact, as soon as any speaker is added or removed from a group, the prior group "is gone." *Id*. at 328:21-329:7. *See also* 5/9/23 Tr. at 423:10-425:10. As Google itself acknowledges, users suggested changing "the way the Sonos 2005 System permitted users to create groups—by linking and unlinking speakers in real time" because it was "cumbersome." Mot. at 8 (citing TX2424 at 1); *see also* Dkt. 566 at 24-25 (noting the parties "generally agree on how [Sonos's 2005 System] grouping worked," including that "they generally agree that this system did not allow for speaker groups that could be named, saved, and later activated on-demand."). Because the "zone groups" were immediately invoked and were not saved, they did not teach the set-up and invocation functionality in the asserted claims.

Party Mode was also not a zone scene and does not meet all of the claim limitations related to setting up, saving, and invoking speaker groups. 5/18/23 Tr. at 1659:21-1664:13. First, Party Mode has no saved group membership—the Party Mode function would simply serially link every speaker on the network to play together. 5/8/23 Tr. at 342:3-10, Tr. 343:5-19. Put differently, Party Mode stores a rule for forming a group, it does not store the group itself. This is like the "reply all" function in an email program. That function is (like party mode) "hard coded" into the software, and – when invoked – will gather information to create a group of recipients for an email message. But "reply all" itself is not a group but a rule. Thus, Party Mode is not a "previously saved grouping according to a common theme," as required for a zone scene.

Second, in the 2005 system, Party Mode did not use the process followed by the claim. As Dr. Schonfeld admitted, Party Mode was both created and invoked at one time. 5/17/23 Tr. at 1476:14-22; *see also* 5/11/23 Tr. at 904:16-24 (Almeroth: "I think one example was Party Mode in the 2005 system. You're not keeping track of all the players in the system. You press the button. It creates and invokes at the same time."). Indeed, Dr. Almeroth explained that

"instances where the creation and the invocation is what's called atomic," such that there would be no "time or delay between when you create something and you invoke that same thing." *Id*. at 904:16-20. Third, as soon as the user left Party Mode, the group membership would disappear until it was reconstituted the next time the user invoked Party Mode. 5/9/23 Tr. at 459:8-13 ("So Party Mode wasn't saved in the -- the players that would play in Party Mode wasn't saved in the system in the original design."); *see also id.* at Tr. 464:1-465:21.

Thus, even if Party Mode could be considered a "zone scene" under the Court's construction, the way it was implemented did not satisfy the process set forth in the claim. For this reason, it simply is not true that adding a second party mode (e.g. a winter party mode) or some other "second zone scene" would bring the Sonos 2005 system within the scope of the claims. Put differently, Google's argument about Party Mode fails both because it wasn't a zone scene, and because (even if it was) the way it was implemented didn't satisfy the claim limitations.

Although Google insists that Mr. Lambourne "conclusively established that the party mode in the Sonos 2005 System was a zone scene," Mot. at 4, Mr. Lambourne explained why that is not true. Mr. Lambourne's "Alarm Clock" specification included the statement that party mode is an example of a zone scene. TX6544 at 27; 5/9/23 Tr. at 462:16-463:17. Mr. Lambourne corrected that statement in the 2005/2006 timeframe. His "Zone Scenes" specification—the "more accurate description of his zone scene technology" (*id.*, 461:19-3)—explained that zone scenes were more flexible and powerful than Party Mode. TX6545; 5/9/23 Tr. at 457:9-21, Tr. 463:21-465:22; 5/10/23 Tr. at 610:9-611:8.[1] At best for Google, this is a dispute of fact going to the "scope and content of the prior art" and the "differences between the prior art and the claims at issue," which are issues for the jury to resolve. *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17 (1966).

As demonstrated above, the Sonos 2005 System relied on fundamentally different architecture for linking speakers together. Instead of saved groups, the system allowed only ad

---

[1] Besides, when Mr. Lambourne explained his invention to the Patent Office in his provisional application, he corrected the Alarm Clock specification by removing that mistaken sentence. *See* 5/19/23 Tr. at 1814:13-1815:5.

hoc grouping that immediately invoked the speaker group.  The Sonos 2005 System therefore lacked several limitations of the asserted claims, including receipt of a "request to invoke" a zone scene, sending requests to add a single zone player to multiple zone scenes, and saving a zone scene.  5/18/23 Tr. at 1664:20-1666:22; Ex. 1 (Almeroth Invalidity Demonstratives) at PDX8.106 – PDX8.109.

Nothing in the prior art references (the knowledge of a POSITA, the Sonos Forums, the Squeezebox system, and the Nourse patent) overcomes those deficiencies—and Dr. Schonfeld did not even opine that it did.  Instead, he relied on the secondary references to simply show *saving* a group or the creation of *overlapping* groups.  He did not opine that the secondary references taught, for example, the basic architectural differences between ad hoc grouping and static grouping requirements, like saving and invoking zone scenes.  And he similarly failed to address why a person of ordinary skill in the art would have been motivated to rework the Sonos 2005 System to add static speaker groups.

**Knowledge of a person of ordinary skill:**  Dr. Schonfeld opined that a person of ordinary skill could have added more zone scenes to a system.  E.g., Dkt. 757 at 5.  But he did not opine that a person of ordinary skill would have found it obvious to separately create, save, and later invoke multiple zone scenes.  Dr. Schonfeld presented no opinion that making those changes would have been obvious.

**Sonos Forums:**  The Sonos Forums do not disclose how to save and later invoke saved groups.  The Forums do not say or suggest a way of implementing overlapping groups, much less the process set forth in the asserted claims.  The Forums introduced into evidence are simply a discussion of features that users would like to see.  And while they suggest using "macros" to implement overlapping groups, that is like telling someone to use paper and pencil to make a picture.  Macros are simply "a series of instructions that a computer or technology or, in our case, a player would sort of -- would sort of automatically go through."  5/9/23 Tr. at 434:5-9; Tr. 528:11-22 (a macro is "a sequence of instructions that happen in an automated way, like step one,

step two, step three.").[2]  Thus macros are a *tool* that might allow you to create programming, but the disclosure of macros does not teach or suggest the specific *solution* recited in the patent claims.  For this reason, Dr. Schonfeld did not opine that the Sonos Forums taught the claim limitations directed to (for example) separately defining and saving the groups.

**Squeezebox:**  Dr. Schonfeld relied on the Squeezebox system to show overlapping groups.  But he admitted that he did not "add a single Squeezebox player to two different sync groups that existed at the same time" on a single server and "no physical devices were in two overlapping zones in [his] testing."  5/17/23 Tr. at 1482:22-1483:1, Tr. 1483:23-25.  The jury is free to disregard his testimony on the capability of the Squeezebox system for that reason alone.  Furthermore, Dr. Schonfeld did not show that the Squeezebox system made up for the limitations missing from the Sonos 2005 system.  For example, he admitted that the individual zone players within the Squeezebox system do not communicate with each other in order to achieve synchronization (in the Squeezebox system, synchronization is instead handled by a central server), a significant difference between the claims and the Squeezebox system.  *Id*. at 1484:9-20.

**Nourse:**  Dr. Schonfeld relied on Nourse for limitations 1.7 and 1.8—creating a second group of zone players—of the '885 patent.  5/17/23 Tr. at 1438:18-22.  But Dr. Schonfeld acknowledged that Nourse did not teach separately saving and invoking speaker groups—instead the system would have to be modified to store group information.  *Id.* at 1440:6-11.  He did not address how the system would have to be modified to later invoke groups.  *Id.*

Moreover, other than the Forums posts, the Patent Office had extensive information about all of the systems Schonfeld considered, plus the Nourse patent, and all that material was considered by the Examiner during prosecution.  5/17/23 Tr. at 1488:1-1490:5.  That leaves Google with "a particularly heavy burden in establishing invalidity."  *Impax Lab'ys, Inc. v. Aventis Pharms. Inc.*, 468 F.3d 1366, 1378 (Fed. Cir. 2006).

---

[2] Google's repeated suggestion that Mr. Lambourne obtained the idea of overlapping groups from the Forums posts is completely unsupported.  E.g., Mot. at 9.  Mr. Lambourne developed the idea for zone scenes separately from the Forum posts, as evidenced by his notebooks.  5/10/23 Tr. at 613:16-617:11; TX6539, TX8236.

Finally, as to dependent claim 6, the combination of Party Mode and another group could not invalidate that claim. Claim 6 requires "the first predefined grouping of zone players does not include the third zone player, and wherein the second predefined grouping of zone players does not include the second zone player." Because party mode includes *every* zone player in the system, an additional zone scene with one fewer player does not meet claim 6. 5/18/23 Tr. at 1668:1-11.

### B. Google Presented Insufficient Evidence On The "Display" Limitations In The '966 Patent.

Apart from the failure to identify zone scenes in the prior art, Dr. Schonfeld presented no analysis on how the prior art demonstrates Limitations 1.9 and 1.10 of claim 1 of the '966 patent. These limitations require display of both zone scenes at the same time. Google offered no fact or expert testimony establishing that any prior art reference teaches this limitation, nor that any combination of the prior art would make it obvious.

Dr. Schonfeld testified that Sonos's 2005 prior art system satisfied limitations 1.9 and 1.10 of the '966 patent based on his analysis of Limitations 1.6 and 1.7 of the '885 patent. 5/17/23 Tr. at 1477:25-1478:11. But as Dr. Schonfeld acknowledged, the limitations of the '966 patent call for displaying a representation of the first zone scene and displaying a representation of the second zone scene, while Limitations 1.6 and 1.7 of the '885 patent do not. *Id*. at 1478:7-1479:7.³ And Dr. Schonfeld admitted "the display part is not there in the claim language" of limitations 1.6 and 1.7 of the '885 patent. *Id*. at 1479:17-24. So Dr. Schonfeld's only "analysis" of limitation 1.9 is to cross-reference his analysis of limitations 1.6 and 1.7 of the '885 patent. *Id*. at 1480:16-24; *see also* 5/16/23 Tr. at 1390:12-17 ("Q. Looking at claim 1 of the '966 patent for limitations from 1.0 to 1.6 and 1.9, what is your opinion on whether those limitations are disclosed in the Sonos 2005 prior art system? A. Yeah. As I mentioned, those are all satisfied by Sonos 2005 based on the same evidence and analysis I just presented for claim limitation 1.6 of the '885 patent.").

---

³ Google's unsupported cross-referencing between the '885 and '966 patents was the subject of Sonos's Motion in Limine No. 2. Dkt. 594.

Dr. Schonfeld's "analysis" of why Sonos's 2005 prior art system satisfied limitation 1.10 suffers the same fatal flaw—the only support he identifies for the proposition that limitation 1.10 was met came in this statement: "So based on the same evidence and analysis I just performed for claim limitations 1.9 and 1.10 of the '885 patent, claim limitations 1.10 and 1.11 of the '966 patent are satisfied respectively." 5/17/23 Tr. at 1422:6-14.  And while limitation 1.10 of the '966 patent requires displaying a representation of the first zone scene and displaying a representation of the second zone scene, limitations 1.9 and 1.10 of the '885 patent contain no such requirement. In other words, Dr. Schonfeld's only "analysis" of why Sonos's 2005 prior art system satisfied limitations 1.9 and 1.10 is an unexplained cross-reference to limitations of the '885 patent that he admits do not contain analogous language at all.  This fails as a matter of law.

### C. Google Did Not Establish A Motivation To Combine Or Reasonable Expectation Of Success.

Google did not show a motivation to combine or reasonable expectation of success.  The Federal Circuit has made clear that motivation to combine cannot be established by conclusory expert testimony, particularly expert testimony that "primarily consisted of conclusory references to [the expert's] belief that one of ordinary skill in the art *could* combine these references, not that they *would* have been motivated to do so." *TQ Delta, LLC v. CISCO Sys., Inc.*, 942 F.3d 1352, 1359–60 (Fed. Cir. 2019) (emphasis in original).  Similarly, the expert cannot simply "rel[y] on the [challenged] patent itself as her roadmap for putting what she referred to as pieces of a 'jig-saw puzzle' together." *Id.* at 1360.  Expert testimony must not just explain *why* a person of ordinary skill in the art would have combined elements, but why they would have done so "*in the way the claimed invention does*." *Id.* (emphasis in original).

Google offers no motivation to combine evidence outside of Dr. Schonfeld's testimony, and Dr. Schonfeld's testimony features each of these legal flaws.  At a minimum, a reasonable jury could find that a person of ordinary skill in 2005 would not have been motivated to combine the references or would not have had a reasonable expectation of success in doing so.

For example, Dr. Schonfeld was asked why it would have been obvious to those skilled in the art back in 2005 to combine Nourse with the Sonos 2005 prior art system.  In response, Dr.

Schonfeld testified that "[i]t's addressing management of speaker systems. They're both addressed to the same type of topic. They are solving very similar problems of managing saving zone groups and making them available and flexible to play individually or play later." 5/17/23 Tr. at 1441:4-10. That explanation merely states that combination was possible not, that a person of ordinary skill in 2005 would have had reason to do so, much less a reason to do so in the way the claimed invention does.

Similarly, Dr. Schonfeld was asked "would it have been obvious to those skilled in the art back in 2005 when they looked at the Sonos 2005 system and also looked at the forum postings about that system to make a combination in their mind?" 5/17/23 Tr. at 1431:22-25. In response, he testified "Yeah, absolutely. The Sonos forum was posting of people who were interested -- users, dealers who were interested in the Sonos 2005 system, and they were making suggestions of how to modify the Sonos 2005 system to improve it." *Id*. at 1432:1-4. Dr. Schonfeld offers no explanation as to why a POSITA in 2005 would have been motivated to make "a combination" in the way the claimed invention does.

As one more example, Dr. Schonfeld testified that a POSITA in 2005 would have combined what was known in the Squeezebox system with the Sonos 2005 prior art system because "they were competitors back then. They were trying to do the same type of system. They would have looked into each other's system and tried to see what the competitor is doing and they did." 5/17/23 Tr. at 1443:1-8. Once again, that conclusory opinion offers no explanation whatsoever as to why a POSITA in 2005 would have been motivated to make this combination in the way the claimed invention does.

Google also presented no evidence that there was a reasonable expectation of success in arriving at the claimed invention. There is a "clear distinction in our case law between a patent challenger's burden to prove that a skilled artisan would have been motivated to combine prior art references and the additional requirement that the patent challenger also prove that the skilled artisan would have had a reasonable expectation of successfully achieving the claimed invention from the combination." *Eli Lilly & Co. v. Teva Pharms. Int'l GmbH*, 8 F.4th 1331, 1344 (Fed. Cir. 2021). Dr. Schonfeld's testimony offers no analysis beyond conclusory statements that the

8

SONOS'S OPP. TO GOOGLE'S MOTION FOR
JUDGMENT AS A MATTER OF LAW RE VALIDITY
CASE NO. 3:20-cv-06754-WHA

combination would have been "trivial" or "simple." *See, e.g.*, 5/17/23 Tr. at 1440:8-19, 1424:1, 18. For example, asked how difficult it would have been to store group identifiers, Dr. Schonfeld responded that it would be a "trivial operation" and "a trivial thing to do" and "a trivial change" because computing devices have sufficient memory to store group identifiers. *Id.* at 1440:8-19. But that is like saying that it would be trivial to build a library inside of a basketball stadium because there's plenty of room. Memory capacity is one requirement for storage, but it is hardly the only problem to solve.

And in another case, Dr. Schonfeld's "trivial" conclusion is buttressed only with a conclusion that the claims involve nothing more than "keep instead of discarding" a group. In Dr. Schonfeld's words:

> Q. How difficult would it have been back in 2005 timeframe to a person of ordinary skill in the art to make the modification of saving one of the extra groups that was provided for in that system?
>
> A. It would be a trivial step in my view, and I can explain why.
>
> Q. Can you please explain?
>
> A. Sure. It's – we're talking about saving it for later and if you remember yesterday, I said you need two things: One is to continue to operate as you are now until you need it later; and when you do need it later, you have to make sure it's available.
>
> So all you have to do is, if you remember yesterday, I said that there is a channel that has to be shifted from the local playlist to the external playlist, you just move the same code in response to the play message instead of the set AVTransport URI message; and then the same -- the same information that was saved already in persistent memory on the coordinator, the only difference you just keep instead of discarding it when you no longer -- when you are done working with a particular zone group just like you would for the Party Mode. So these are two very simple steps.

5/17/23 Tr. at 1423:22-1424:18. Dr. Schonfeld nakedly asserted that the process he describes consists of "two very simple steps." But what did he actually testify to? He was asked how hard it would be to make the modification of saving a group, and his answer was that it was simple, because all you have to do is save it. That hardly addresses the fundamental problem with his lack of explanation of how the prior art makes separately saving and invoking groups obvious.

1  Meanwhile, Dr. Alermoth explained that the Sonos Forum posts evidence significant
2  "skepticism" such that "it is my opinion that a person of skill in the art would have been
3  dissuaded from modifying the Sonos 2005 system in view of the identified user posts from the
4  Sonos forum."  5/18/23 Tr. at 1675:9-12; *see also id*. 1676:3-25.  At minimum, this is a dispute of
5  fact for the jury to resolve.

### D. Google Did Not Address Objective Indicia Of Nonobviousness.

Google's obviousness case fails to address the substantial evidence of objective indicia of non-obviousness.  "[E]vidence of secondary considerations may often be the most probative and cogent evidence in the record."  *Henny Penny Corp. v. Frymaster LLC*, 938 F.3d 1324, 1332 (Fed. Cir. 2019) (quoting *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538 (Fed. Cir. 1983)).  A fact-finder "must *always* consider any objective evidence of nonobviousness presented in a case."  *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1305 (Fed. Cir. 2010) (emphasis in original); *see also Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 667 (Fed. Cir. 2000) (holding that the district court erred by failing to consider secondary considerations and observing that "[Federal Circuit] precedents clearly hold that secondary considerations, when present, must be considered in determining obviousness.").

Dr. Schonfeld improperly ignored or discounted the evidence of secondary considerations.  For example, Google advanced testimony from Dr. Schonfeld that a 2020 article from CNN does not give any praise to the specific claims in this case.  5/17/23 Tr. at 1455:13-1456:5.  Dr. Schonfeld similarly testified that the article fails to say anything about overlapping group scenes specifically.  *Id.*  But "there is a presumption of nexus for objective considerations when the patentee shows that the asserted objective evidence is tied to a specific product and that product 'is the invention disclosed and claimed in the patent.'"  *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1329 (Fed. Cir. 2016).  Here it is undisputed that Sonos's 2020 system practices the claimed invention, and Google did not even attempt to rebut the presumption of nexus.  And the jury also saw an article from Tech Hive describing multiple groups including upstairs, downstairs, back of house and front of house.  Dr. Almeroth explained that this demonstrated praise for overlapping

1   groups specifically.  5/18/23 Tr. at 1679:11-1680:3, Tr. 1703:3-15.  Dr. Schonfeld offered no

2   basis to disregard the evidence of industry praise.

3         Dr. Almeroth also testified about longstanding skepticism that overlapping zone scenes

4   were possible.  5/18/23 Tr. at 1674:16-1676:25; TX6958.  And the jury heard ample evidence

5   about Sonos's commercial success, as well as Google's commercial success with its products that

6   embody the claims (and its refusal to disable speaker grouping functionality).  Dr. Schonfeld's

7   failure to account for that evidence in his own obviousness analysis is a sufficient basis for the

8   jury to find that Google failed to carry its burden of proof.

9         **E.**      **Google's Obviousness Case Relies On Hindsight.**

10        Dr. Schonfeld committed the cardinal sin of obviousness analysis—analysis based on

11  hindsight.  As the Supreme Court has held, "[a] factfinder should be aware, of course, of the

12  distortion caused by hindsight bias and must be cautious of arguments reliant upon *ex post*

13  reasoning."  *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 421(2007).  *See also Graham*, 383 U.S.

14  at 36 (warning against a "temptation to read into the prior art the teachings of the invention in

15  issue" and instructing courts to "guard against slipping into use of hindsight").

16        Dr. Schonfeld engaged in hindsight-based analysis.  Although he testified that he was

17  considering obviousness at the time of the invention, he never acknowledged what a person of

18  skill in the art would have known at the time of the invention.  For example, Dr. Schonfeld's

19  references to what a POSITA would have known at the time comes in the form of conclusory

20  statements that certain modifications would be "trivial" or obvious to that person without any

21  explanation of why or how it would have been trivial to a POSITA in 2005.  *See, e.g.*, 5/17/23 Tr.

22  at 1424:19-1425:2 (Q: "[H]ow difficult would it be for that person -- would it have been for that

23  person back in 2005 to make the simple modifications that you were just describing?"  A: "In my

24  opinion, it would have been a trivial exercise to do.  You are just shifting one code and not

25  discarding the identifiers.  That's a very simple operation to do in the code."); *id.* at 1425:5-12

26  (Q: "[A] person of ordinary skill in the art back in 2005 could make the modification -- would it

27  have been obvious to make the modification that you talked about to save the first zone group

28  here for later?  Is that your testimony?"  A: "It is my testimony.  The moment you just decide that

11      Sonos's Opp. to Google's Motion for
Judgment as a Matter of Law Re Validity
Case No. 3:20-cv-06754-WHA

1  that's what you want to do, you can do it immediately."). Dr. Schonfeld did not provide
2  sufficient explanation on how or why a person of ordinary skill would "shift[] one code" to arrive
3  at the claimed invention, absent using Sonos's specifications as a roadmap to arrive at the claims.
4        In contrast, Dr. Alermoth was careful to look at the obviousness question from the
5  perspective of "a person of ordinary skill in the art but, more importantly, it has to be done from
6  the time period in December 2005. You can't consider it from the perspective of today. It has to
7  be from 2005." 5/18/23 Tr. at 1669:11-16; *see also id*. at 1650:16-1651:2. He explained that
8  there was no reason to alter the Sonos 2005 System to add zone scenes; instead, that analysis
9  "shows hindsight bias." *Id*. at 1681:6-12. Based on this dispute between the experts, a
10 reasonable jury could find that Dr. Schonfeld did not show, by clear and convincing evidence,
11 that the asserted claims would have been obvious to a person of ordinary skill in the art at the
12 time of the invention.
13       **F.     The Prior Art As A Whole Does Not Enable The Claims.**
14       To invalidate a claim as obvious, "the prior art, taken as a whole, must enable a skilled
15 artisan to make and use the claimed invention." *Raytheon Tech. Corp. v. Gen. Elec. Co.*, 993
16 F.3d 1374, 1380 (Fed. Cir. 2021). Although Google argues that the prior art need not enable the
17 claims (Mot. at 7), the Federal Circuit is clear that "that if an obviousness case is based on a non-
18 self-enabled reference, and no other prior art reference or evidence would have enabled a skilled
19 artisan to make the claimed invention, then the invention cannot be said to have been obvious."
20 *Id.* at 1377.
21       None of Google's cited cases excuse that requirement. Mot. at 7-8. Google first cites *In
22 re Epstein,* where there was no dispute that the prior art *actually disclosed* the claimed features
23 and the applicant merely disputed whether "one skilled in the art would have known how to
24 implement the features of the references." *In re Epstein*, 32 F.3d 1559, 1568 (Fed. Cir. 1994).
25 Here, however, Sonos disputes whether any of the prior art references disclose static groups at all,
26 let alone how a system that only allows for dynamic groups would be altered to allow for static
27 groups. Google's other two cases are about simple substitution where the purportedly missing
28 feature of the prior art was not a key feature of the claims. For example, in *Uber* the claims

required "server-side" location plotting instead of "terminal-side." *Uber Techs., Inc. v. X One, Inc.*, 957 F.3d 1334, 1339 (Fed. Cir. 2020).  But "the alleged novelty of the '593 patent is not related to the differences between server-side or terminal-side plotting," and the specification admitted that both techniques already existed, so it was obvious to substitute one for another.  *Id.* at 1339-40.  And in *Publicover*, 813 F. App'x 527, 532 (2020), the Federal Circuit found that claims to a virtual reality headset that tracked a known type of eye movement was obvious.  The prior art disclosed headsets that tracked eye movement, and disclosed tracking the known "vestibulo-ocular movement." *Id.* at 531.  As an additional basis for upholding the PTO's invalidity finding, the Court "note[d]" the PTO's finding the specification briefly described this eye movement by "provid[ing] the 'well-known' definition of vestibulo-ocular movement." *Id.*  Given the well-known description, there was no need for the prior art to contain detailed descriptions of "how to modify [the prior art] system to identify vestibulo-ocular movement." *Id.*  So here again, the prior art was simply used to add well-known features to the primary reference, not to modify the primary reference to include entirely new features (e.g., multiple saved, overlapping groups) with no details on how to implement that change.

   Here, Google did not introduce sufficient evidence for any reasonable juror to conclude that its alleged prior art enabled a person of ordinary skill in the art to make and use the claimed invention of either asserted patent.  Google relies on the general knowledge of person of ordinary skill to (1) come up with a new design for saving and invoking groups or (2) the Sonos Forums as a way to restructure the Sonos 2005 System to allow for saved, overlapping groups.  There is no dispute that the Sonos Forums do not contain implementation details on how create, save, and invoke overlapping groups.  Instead, once again, Dr. Schonfeld provided conclusory testimony boiling down to naked assertions that it would have been obvious how to make and use the claimed invention.  *See, e.g.*, 5/17/23 Tr. at 1425:5-12 (Q: "[A] person of ordinary skill in the art back in 2005 could make the modification -- would it have been obvious to make the modification that you talked about to save the first zone group here for later?  Is that your testimony?"  A: "It is my testimony.  The moment you just decide that's what you want to do, you can do it immediately.").

Thus, the Court should reject Google's obviousness claims as a matter of law, or at a minimum allow the jury to decide.

## IV. **CONCLUSION**

Sonos respectfully requests that the Court deny Google's motion for judgment as a matter of law.

Dated: May 22, 2023

ORRICK HERRINGTON & SUTCLIFFE LLP
*and*
LEE SULLIVAN SHEA & SMITH LLP

By: */s/ Clement Seth Roberts*
    Clement Seth Roberts

*Attorneys for Sonos, Inc.*