# EXHIBIT 1

# FILED UNDER SEAL

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Charles K. Verhoeven (Bar No. 170151)
  charlesverhoeven@quinnemanuel.com
  Melissa Baily (Bar No. 237649)
  melissabaily@quinnemanuel.com
  Lindsay Cooper (Bar No. 287125)
  lindsaycooper@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Attorneys for GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| GOOGLE LLC,<br><br>                    Plaintiff<br><br>        v.<br><br>SONOS, INC.,<br><br>                    Defendant. | Case No. 3:20-cv-06754-WHA |

### GOOGLE LLC'S FIFTH SUPPLEMENTAL OBJECTIONS AND RESPONSES TO PLAINTIFF SONOS, INC.'S FIRST SET OF FACT DISCOVERY INTERROGATORIES (NO. 12)

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant Google LLC ("Google") hereby objects and responds to Plaintiff Sonos, Inc.'s ("Sonos") First Set of Fact Discovery Interrogatories to Defendant ("Interrogatories"). Google responds to these Interrogatories based on its current understanding and the information reasonably available to Google at the present time. Google reserves the right to supplement these responses if and when additional information becomes available.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

**OBJECTIONS AND RESPONSES TO FACT DISCOVERY INTERROGATORIES**

**INTERROGATORY NO. 12:**

Separately for each Asserted Claim of each Patent-In-Suit, set forth in detail the complete legal and factual basis for any assertion by Google that the Accused Instrumentalities have not infringed each such claim, including, but not limited to: an identification of each Asserted Claim of each Patent-In-Suit that Google believes is not infringed; an identification of which elements of each such Asserted Claim are allegedly not present in the Accused Instrumentalities; and for each claim element that is allegedly not present in the Accused Instrumentalities, an identification and detailed explanation of the basis for Google's assertion that the claim element is allegedly not present in the Accused Instrumentalities, including the basis for any assertion by Google that any differences between the claim element and the corresponding structure in the Accused Instrumentalities are not insubstantial and/or that the claim element and the corresponding structure in the Accused Instrumentalities do not perform substantially the same function in substantially the same way to achieve substantially the same result; and an identification of all facts supporting or refuting Google's non-infringement allegations, all persons knowledgeable of these facts (including every person whose knowledge or opinion is relied upon as a basis for Google's non-infringement assertions, the opinion or substance of his/her knowledge, and the entire basis of that knowledge or opinion), and all documents and things, including the Bates number(s) of such documents and things, concerning Google's assertion of non-infringement.

**OBJECTIONS:** Google incorporates by reference all of its General Objections as if fully set forth herein. Google objects to the characterization of this interrogatory as a single interrogatory given that it contains multiple discrete subparts under Fed. R. Civ. P. 33(a)(1). Google further objects to this interrogatory on the grounds that it is vague, ambiguous, unclear as to information sought, and lacking sufficient particularity to permit Google to reasonably prepare a response with respect to the undefined terms "differences between the claim element and the corresponding structure in the Accused Instrumentalities," "insubstantial," "do not perform substantially the same function in substantially the same way to achieve substantially the same result," and "knowledgeable

of." Google further objects to this interrogatory on the grounds that it assumes the existence of hypothetical facts that are incorrect or unknown to Google.

Google also objects to this interrogatory as overbroad, burdensome, and not proportional to the needs of the case, including to the extent it (i) seeks information regarding "[s]eparately for each Asserted Claim of each Patent-In-Suit," (ii) seeks identification of "*all* persons knowledgeable" of certain facts, and (iii) seeks "*all* documents things" concerning Google's assertion of non-infringement. Google further objects to this interrogatory as overbroad and unduly burdensome to the extent that it seeks information that is publicly available, not uniquely within the control of Google, or is equally available to Sonos. Google additionally objects to this interrogatory to the extent it seeks communications and information protected from disclosure by the attorney-client privilege and/or attorney work product doctrine. Google further objects to this interrogatory to the extent it seeks confidential and/or proprietary business information. Google also objects to this interrogatory to the extent that it premature seeks expert discovery, opinion, and/or testimony. Google also objects to this interrogatory on the grounds that it seeks information that is obtainable through less burdensome and more convenient forms of discovery.

Google further objects to this interrogatory to the extent that it is premature insofar as it seeks expert testimony before expert discovery. Google further objects to this interrogatory to the extent it improperly attempts to shift the burden of proving infringement, which belongs to Sonos, not Google. Google further objects to this interrogatory to the extent it purports to seek ESI before Sonos has shown good cause for such ESI and before the parties have agreed on a procedure for doing so in accordance with the Court's OGP.

**RESPONSE:**

Subject to and without waiving the foregoing General and Specific objections, Google responds, as follows:

Google objects to this interrogatory on the grounds that it is premature, improperly seeks expert testimony, and improperly attempts to shift the burden to Google. Sonos has failed to meet its burden to serve infringement contentions that provide Google adequate notice of Sonos's infringement theories and claims for infringement, and thus Google lacks sufficient information to

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

player comprises a 'zone player.'" Ex. D at 1-2. Sonos therefore recognizes that the claimed "zone player" requires more than simply connecting devices to a network. Indeed, Sonos argues that the zone player must be "configured to process and output audio," which Sonos has failed to show for each "Cast-enabled media player."

Sonos also purports to accuse "various other third-party media players with built-in Cast functionality," but does not identify any such third-party media players. Google does not know which products Sonos is purportedly referring to. Sonos has therefore failed to meet its burden of proof regarding infringement and Google accordingly denies infringement.

"**network interface**": Sonos's contentions fail to demonstrate that this limitation is satisfied. For example, Sonos has neither identified any hardware nor any software that constitutes the claimed "network interface" within the "Cast-enabled media players." Sonos generically references "Wi-Fi," but does not identify any Wi-Fi hardware, software, adapters, nor any particular Wi-Fi version or compatibility for each of the "Cast-enabled media players."

"**processor**": Sonos's contentions fail to demonstrate that this limitation is satisfied. For example, Sonos has not identified any hardware that constitutes the claimed "processor" within the "Cast-enabled media players." Sonos generically references the specifications pages for some of the "Cast-enabled media players," but in many instances there is no processor information provided.

"**non-transitory computer readable medium**": Sonos's contentions fail to demonstrate that this limitation is satisfied. For example, Sonos has not identified any hardware that constitutes the claimed "non-transitory computer readable medium" within the "Cast-enabled media players." Sonos generically references the specifications pages for some of the "Cast-enabled media players," but there is not "non-transitory computer readable medium" identified.

"**zone scene**": Sonos's contentions fail to demonstrate that this limitation is satisfied. For example, Sonos's argument that the alleged "speaker groups" are the claimed "zone scene" is flawed. Sonos argues that:

> Thus, this first "speaker group" that a user creates amounts to the claimed "first zone scene comprising a first predefined grouping of zone players including at least the first zone player and a second zone player that are to be configured for synchronous playback of media when the first zone scene is invoked" because it is a previously-saved group of Cast-enabled players that has been predefined to include the first Cast-enabled media player and a second

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

>Cast-enabled media player and that is capable of existing in two states – an uninvoked state in which each Cast-enabled player in the previously saved group is configured for individual playback of audio and an invoked state in which the Cast-enabled players in the previously-saved group are configured for synchronous playback of audio.

As the intrinsic evidence, extrinsic evidence, and the court's claim construction held, however, "zone scenes" are not mere "speaker groups" as Sonos alleges in its infringement contentions. Sonos's allegation that the groups are "previously saved" is unclear as Sonos does not identify what the groups were saved "previous" to. Sonos's allegation that the groups are "predefined" is unclear as Sonos does not identify when the groups were defined or what would make them <u>pre</u>defined. Sonos also mentions an "invoked" and an "uninvoked" state for the zone players, but does not identify why or how this is relevant to its conception of "zone scenes." Nor has Sonos identified the "invoked" and "uninvoked" states that allegedly reflect any states in the accused products.

Next, Sonos argues that the accused products meet the "zone scene" definition if the claim construction is maintained:

>Moreover, even if the Court were to construe the term "zone scene" to mean "a previously-saved group of zone players according to a common theme," as Judge Alan Albright suggested during the Markman hearing in 20-cv-881-ADA (see D.I. 106 at 38:1-3), this first "speaker group" amounts to a first "zone scene" under that construction. Indeed, every "speaker group" that a user creates in a Cast-enabled playback system is a previously-saved, predefined group of Cast-enabled players that is capable of existing in two states – an uninvoked state in which each Cast-enabled player in the previously-saved group is configured for individual playback of audio and an invoked state in which the Cast-enabled players in the previously-saved group are configured for synchronous playback of audio.

This is the same argument addressed immediately above, and it fails for the same reason here. Next, Sonos argues why it believes the accused products use a "common theme":

>Further, every "speaker group" that a user creates in a Cast-enabled playback system has some common theme, which in this context amounts to whatever common topic, subject, etc. led the user to decide that these particular Cast-enabled media players should be placed into a previously-saved group that allows for synchronous playback when invoked. [*Citations omitted*] Typically, this common theme will be a specific area (or set of areas) within the user's listening environment in which the user desires to listen to audio in synchrony across multiple Cast-enabled media players, although Google's "Cast" technology provides a user with the flexibility to create a previously saved group of Cast-enabled media players according to any common topic or subject that is of interest to the user. As part of the user workflow for creating a "speaker group," a Cast-enabled computing device also prompts the user to input a name for the "speaker group," which serves as the user's shorthand label of the common theme that led the user to create the previously-saved

group of Cast-enabled media players and thereby allows the user to locate and select that previously-saved group later when the user wishes to invoke it for synchronous playback.

This argument also fails. Sonos alleges that the common theme is "whatever common topic, subject, etc. let the user to decide that these particular Cast-enabled media players should be placed into a previously-saved group . . . ," but never identifies any accused common theme. Nor does Sonos identify how the accused products store or are even aware of any accused common theme. Because the patent claims must provide objective notice of the scope of the patentee's rights, Sonos's interpretation of the claim, which makes the scope dependent on the accused infringer's state of mind at the time of allegedly committing the infringing act, cannot be correct and would render the claim indefinite. *See, e.g., Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1353 (Fed. Cir. 2001) ("Amazon's reading of the key passage from the file history injects subjective notions into the infringement analysis … We are not prepared to assign a meaning to a patent claim that depends on the state of mind of the accused infringer."); *see also Boston Scientific Corp. v. Cordis Corp.*, 2008 WL 171049, *13 (N.D. Cal. 2008) ("The Court questions the permissibility of a claim limitation that relies on the subjective preference of a person who is performing a method…. the Court declines to adopt a practitioner-based definition of 'no preferred geometric form when disposed' because it would make the claim ambiguous and therefore arguably indefinite."). Sonos does not identify any instrumentality in the accused products that stores or receives the alleged common theme information. Neither does Sonos articulate how, even if its infringement theory is credited, one is to determine when a user creates a group with the alleged "common theme" or does not create a group with the alleged "common theme." To the extent Sonos is arguing that a common theme is necessarily present whenever a group is created, then Sonos has improperly conflated the terms "group" and "zone scene." Indeed, the court already rejected this argument at claim construction where Google identified this flaw. None of the citations Sonos offers support such an understanding of the claims, and the reference to Google's oral argument only supports Google's position, which is that Sonos needs to identify a "common theme" in the accused products, which it has not done. Finally, Sonos argues that a group name "serves as the user's shorthand label of the common theme that led the user to create the previously-saved group,"

and therefore appears to conflate group names with the claimed "zone scene." This is contrary to the specification, which uses group naming and zone scenes separately and distinguishes between them.

"**predefined**": Sonos's contentions fail to demonstrate that this limitation is satisfied. For example, Sonos appears to identify the join_group message as creating the "predefined grouping of zone players," but Sonos does not identify when or how the group is "predefined" or what it is defined prior to. *See* Ex. D at 4. Sonos has identified no predefined groups that are created by Google or that are provided with the accused products to customers.

**'885 patent: "receiving, from a network device over a data network, a first indication that the first zone player has been added to a first zone scene" / "receiving, from the network device over the data network, a second indication that the first zone player has been added to a second zone scene"**

**'966 patent: "causing an indication of the first zone scene to be transmitted to the first zone player" / "causing an indication of the second zone scene to be transmitted to the first zone player"**

Sonos's contentions fail to demonstrate that these limitations are satisfied. For example, Sonos appears to identify the join_group message as meeting these claim elements, but Sonos does not identify when or how the join_group message is received or transmitted after a first or second zone player has been added to a zone scene. Further, Sonos does not identify different instrumentalities meeting this claim element and the "causing creation of the first/second zone scene" element of the '966 patent, and instead identifies the join_group message as satisfying both limitations, which is self-contradictory and inadequate. Sonos accuses the join_group message as creating the claimed "zone scenes," not an indication of those zone scenes, and join_group does not have this functionality.

"**invoke**" / "**selected for invocation**": Sonos's contentions fail to demonstrate that this limitation is satisfied. For example, Sonos appears to accuse as "invoking" when a user performs a "'cast' to a previously-created 'speaker group' (and thereby cause the 'speaker group' to be invoked)." Ex. D at 1. The accused devices are not "invoked" at all as claimed and instead may

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

| | | |
|---|---|---|
| 1 | DATED: April 7, 2022 | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| 2 | | |
| 3 | | By:     /s/ Charles K. Verhoeven
Charles K. Verhoeven (*pro hac vice*)
charlesverhoeven@quinnemanuel.com |
| 4 | | Melissa Baily (*pro hac vice*)
melissabaily@quinnemanuel.com |
| 5 | | Lindsay Cooper (*pro hac vice*)
lindsaycooper@quinnemanuel.com |
| 6 | | QUINN EMANUEL URQUHART & SULLIVAN LLP |
| 7 | | 50 California Street, 22nd Floor
San Francisco, California 94111-4788 |
| 8 | | Telephone:    (415) 875 6600
Facsimile:     (415) 875 6700 |
| 9 | | |
| 10 | | *Counsel for Defendant Google LLC* |

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28