QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
Melissa Baily (Bar No. 237649)
melissabaily@quinnemanuel.com
Lindsay Cooper (Bar No. 287125)
lindsaycooper@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:    (415) 875-6600
Facsimile:    (415) 875-6700

*Attorneys for GOOGLE, LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| GOOGLE LLC,<br><br>              Plaintiff,<br><br>       vs.<br><br>SONOS, INC.,<br><br>              Defendant. | Case No. 3:20-cv-06754-WHA<br>Related to CASE NO. 3:21-cv-07559-WHA<br><br>**GOOGLE LLC'S BRIEF SHOWING CAUSE WHY THE COURT SHOULD NOT ENTER SUMMARY JUDGMENT *SUA SPONTE* OF VALIDITY OF THE '885 PATENT**<br><br>Location: Courtroom 12, 9th Floor<br>Judge:    Hon. William Alsup |

**TABLE OF CONTENTS**

**Page**

CLAIM 1 OF THE '885 PATENT ................................................................................................... II

I. INTRODUCTION ................................................................................................................1

II. NO INFERENCE THAT CLAIM 1 OF THE '885 PATENT IS VALID—OR THAT THERE IS NO DISPUTED FACT REGARDING VALIDITY—SHOULD BE DRAWN FROM GOOGLE'S SELECTION OF ARGUMENTS PRESENTED TO THE COURT TO DATE ......................................................................................................2

III. THE CLAIMED INVENTION ............................................................................................3

IV. GOOGLE CAN DEMONSTRATE—AT SUMMARY JUDGMENT OR AT TRIAL—THAT THE SONOS PRIOR ART SYSTEM COMBINED WITH THE SONOS FORUMS RENDERS THE ASSERTED CLAIM OBVIOUS .............................4

    A. The Sonos System ...................................................................................................4

    B. The Sonos Forum Threads ......................................................................................4

    C. The Sonos Prior Art System and Forums Meet Each Element of the Claim .........6

        1. The Sonos Prior Art System Discloses The Foundational Elements Of The Asserted Claim ................................................................................6

            (a) The Sonos Prior Art System Discloses Elements [1.P] Through [1.4] ......................................................................................6

            (b) The Sonos Prior Art System Discloses Element [1.5] ......................6

        2. The Sonos Prior Art System Plus The Sonos Forums Disclose All Of The "Zone Scene" Elements Of The Asserted Claim .................................7

            (a) Sonos and Sonos Forums Render Obvious Element [1.6] ................7

            (b) Sonos and Sonos Forums Render Obvious Element [1.7] ...............7

            (c) Sonos and Sonos Forums Render Obvious Element [1.8] ................8

            (d) Sonos and Sonos Forums Render Obvious Elements [1.9] and [1.10] ...........................................................................................9

V. AT A MINIMUM, THERE ARE TRIABLE ISSUES OF FACT REGARDING VALIDITY .............................................................................................................................9

VI. CONCLUSION ..................................................................................................................10

## CLAIM 1 OF THE '885 PATENT

[1.P]  1. A first zone player comprising:

[1.1]  a network interface that is configured to communicatively couple the first zone player to at least one data network;

[1.2]  one or more processors;

[1.3]  a non-transitory computer-readable medium; and

[1.4]  program instructions stored on the non-transitory computer-readable medium that, when executed by the one or more processors, cause the first zone player to perform functions comprising:

[1.5]  while operating in a standalone mode in which the first zone player is configured to play back media individually in a networked media playback system comprising the first zone player and at least two other zone players:

[1.6]  (i) receiving, from a network device over a data network, a first indication that the first zone player has been added to a first zone scene comprising a first predefined grouping of zone players including at least the first zone player and a second zone player that are to be configured for synchronous playback of media when the first zone scene is invoked; and

[1.7]  (ii) receiving, from the network device over the data network, a second indication that the first zone player has been added to a second zone scene comprising a second predefined grouping of zone players including at least the first zone player and a third zone player that are to be configured for synchronous playback of media when the second zone scene is invoked, wherein the second zone player is different than the third zone player;

[1.8]  after receiving the first and second indications, continuing to operate in the standalone mode until a given one of the first and second zone scenes has been selected for invocation;

[1.9]  after the given one of the first and second zone scenes has been selected for invocation, receiving, from the network device over the data network, an instruction to operate in accordance with a given one of the first and second zone scenes respectively comprising a given one of the first and second predefined groupings of zone players; and

[1.10] based on the instruction, transitioning from operating in the standalone mode to operating in accordance with the given one of the first and second predefined groupings of zone players such that the first zone player is configured to coordinate with at least one other zone player in the given one of the first and second predefined groupings of zone players over a data network in order to output media in synchrony with output of media by the at least one other zone player in the given one of the first and second predefined groupings of zone players.

## I. INTRODUCTION

The Court should not *sua sponte* enter summary judgment that claim 1 of U.S. Patent No. 10,848,885 ("'885 patent") is valid. The alleged innovation of the '885 patent is the use of a "zone scene" when grouping/saving zones. Before transfer, Judge Albright rejected Sonos's proposed construction of "zone scene" (that the limitation is met simply by saving) and granted Google's proposed construction (that a common theme is required). Given the 25-page limit for showdown summary judgment briefing, and this claim construction ruling, Google elected to focus its showdown papers on non-infringement and not on prior art invalidity.

In its '885 patent summary judgment order, however, this Court ruled that a "zone scene" is satisfied merely by naming/saving a group. While that construction resulted in the denial of Google's non-infringement motion, it also has the effect of removing the sole "innovation" alleged by Sonos in the '885 patent over the prior art. Now that the Court has construed "zone scene" to read on the prior art, the '885 patent cannot survive a prior art invalidity challenge.

Specifically, in the context of non-infringement, Google had argued that claim 1 was limited to speakers grouped by a "common theme" defined by a particular attribute, such as type of music, specific equalization setting, or certain volume. *E.g.*, Dkt. 211 at 22-23. But as urged by Sonos, the Court concluded that a "common theme" can be established simply by naming and saving a speaker group, with the Court finding that the "basic purpose of the invention . . . is to allow users to pre-save customized speaker groups and later 'invoke' the named group on demand." Dkt. 309 at 9.

The notion of a user pre-saving customized named groups and later invoking those named groups is as old as commercial software itself. Microsoft's Windows 95 (released in 1995) allowed users to pre-save customized groups of files in a folder and later invoke that named folder. Apple's iPod (released in 2001) allowed users to pre-save customized groups of songs in a playlist and later invoke that named playlist. Indeed, offering users the ability to customize consumer software in this manner was the norm well before December 2005, when Sonos purportedly conceived of the subject matter of the '885 patent. And having become accustomed to such functionality across software interfaces, it was Sonos's users who identified that this would be a straightforward feature to add to Sonos's existing system, before the relevant priority date here.

In fact, Sonos concedes that its own prior art speaker system satisfies the basic requirements of claim 1 of the '885 patent: it was comprised of a set of "smart" speakers connected through a network interface to a wireless controller; it could create groups of speakers; it had a predefined named group of speakers ("party mode") that invoked all speakers in the household; and it supported a user's creation of speaker groups in real-time, while music was playing. *See* Ex. 1 at 147-50. Sonos contends that the alleged innovation of the '885 patent over its own prior art system is the ability to permanently save groups created and named by a user. But, again, it was Sonos's own users who suggested that such functionality be added to Sonos's prior art system before the purported conception of the '885 patent: those users submitted written requests to Sonos asking for the ability to save "favorite" groups, which those users called "custom zone groups," "preset" groups, and "scenes" (the very term Sonos used in the '885 patent). That everyday consumers using Sonos's prior art system articulated what later became claim 1 of Sonos's '885 patent (*i.e.*, adding named zone scenes to the Sonos prior art system) demonstrates the obviousness of the claim.

Against this backdrop, it is clear that summary judgment of obviousness should be granted based on Sonos's own prior art products. At a minimum, there are material issues of disputed fact as to whether third-party prior art systems from Logitech and Bose render the '885 patent invalid.

Given the Court's ruling regarding the scope of "zone scene," the long history of software products that allowed users to create, save, name, and invoke groups, and the fact that Sonos's own users articulated the subject matter of the claim prior to the relevant priority date, the Court should not find that claim 1 of the '885 patent is valid. Rather, Google respectfully requests permission to file a motion for summary judgment of invalidity with respect to claim 1 of the '885 patent on at least the grounds described herein. At a minimum, invalidity in view of third-party prior art systems must tried to a jury based on the facts outlined below.

## II. NO INFERENCE THAT CLAIM 1 OF THE '885 PATENT IS VALID—OR THAT THERE IS NO DISPUTED FACT REGARDING VALIDITY—SHOULD BE DRAWN FROM GOOGLE'S SELECTION OF ARGUMENTS PRESENTED TO THE COURT TO DATE

Prior to briefing summary judgment issues related to claim 1 of the '885 patent and claim 13 of the '615 patent, claim construction issues relevant to those claims were considered by the

Western District of Texas. In those proceedings, Google had argued that the term "zone scene" as used in the '885 patent requires a "common theme"; Sonos had argued that the term did not require a "common theme," contending instead that the term should be construed as "a previously-saved grouping of zone players that are to be configured for synchronous playback of media when the zone scene is invoked." 6:20-cv-00881-ADA Dkt. 60 at 13. The Western District of Texas rejected Sonos's position that a "zone scene" is merely a previously-saved group of speakers and found that a "common theme" is required. 6:20-cv-00881-ADA Dkt. 106 at 38.

Google made its selection of arguments to raise at summary judgment based in part on that Western District of Texas ruling. Specifically, Google carried forward its position that a "zone scene" with a "common theme" requires something more than simply saving a speaker group (*i.e.*, the construction that had been proposed by Sonos but rejected by the Western District of Texas). Google put forward arguments about what is required by a "common theme" and argued that the accused products did not have a "common theme" and thus did not infringe.

When this Court considered the issues at summary judgment, however, the Court found that "a user's ability to name speaker groups means that the user can group speakers according to a common theme." Dkt. 309 at 8. In view of that finding with respect to "zone scene" (as opposed to the narrower interpretation put forward by Google), Google has very strong grounds of invalidity based on third party prior art. Google's summary of its prior art arguments below demonstrate good cause not only why the Court should not find validity but also why the Court should consider permitting summary judgment briefing on invalidity.

### III. THE CLAIMED INVENTION

In connection with ruling that Google infringed claim 1 of the '885 patent, the Court found that "the '885 Patent allows a user to customize and save multiple groups of smart speakers or other players . . . and then later 'activate a customized group, called a 'zone scene,' on demand." Dkt. 309 at 4. The Court also found that the "basic purpose of the invention . . . is to allow users to pre-save customized speaker groups and later 'invoke' the named group on demand." *Id.* at 9. Sonos's expert opines that the claimed "grouping process enables a user to activate a user-created group of 'zone players' for synchronous playback in a more seamless manner, because instead of having to

select each 'zone player' to include in the group in a 'time consuming' ad-hoc manner at the time that the user wishes to activate the group, the user can simply select a previously-saved 'zone scene' comprising a predefined version of the group." Ex. 1 at 25-26, 40, 138-139. In other words, the alleged innovation over the prior art is the ability to save named speaker groups instead of creating them at the time of use.

### IV. GOOGLE CAN DEMONSTRATE—AT SUMMARY JUDGMENT OR AT TRIAL—THAT THE SONOS PRIOR ART SYSTEM COMBINED WITH THE SONOS FORUMS RENDERS THE ASSERTED CLAIM OBVIOUS

#### A. The Sonos System

The Sonos prior art system launched no later than January 2005, when Sonos publicly announced that it was shipping the system to customers. Ex. 2 at 3-80; *see also* Ex. 6 at 26-32; Ex. 1 at 136-137. Because the claimed earliest effective filing date for the '885 patent is September 2006, the Sonos prior art system constitutes a statutory bar under 35 U.S.C. § 102(b) because it was in "public use or on sale in this country, more than one year prior to the date of the application for patent."

#### B. The Sonos Forum Threads

Sonos's online forums allowed users to communicate with each other and with Sonos. Two threads from Sonos's online forums are relevant here. The first is a forum thread titled "Virtual Zones and Zone Grouping." Ex. 8. In that thread, "theboyg" offered his view that the way the Sonos prior art system permitted users to create groups—by linking and unlinking speakers in real time—was "cumbersome." He suggested adding to the prior art system "a virtual zone – *i.e.*, a zone called 'Downstairs'" that would allow a user to "group all [his] downstairs zones" and avoid the necessity to "keep manually linking/unlinking multiple zones everytime."

> **Virtual Zones and Zone Grouping**
> 17 years ago · 190 replies · 45500 views
> 27 February 2005
>
> **theboyg**  Avid Contributor I · 22 replies
> This "link/unlink" business is really cumbersome - and not a joy to use which goes against the ease of use of the rest of the system.
>
> Why can't I have a virtual zone - ie a zone called "Downstairs" - and I can group all my downstairs zones into this. Then I dont have to keep manually linking/unlinking multiple zones everytime.
>
> PLEASE !
>
> G.

Another user agreed that the ability to save often-used speaker groups as "virtual zones," was a

"great idea." *Id.* Still another other user commented that such functionality—*i.e.*, "user-customizable" "zone groups"—would be "what we have now" in the prior art system but with the added "ability to persist [*i.e.*, save] the groups"; this user also confirmed that such functionality could allow the addition of a speaker to "1 or more zone groups," thereby creating, saving, and naming overlapping groups of speakers:

The second relevant Sonos forums thread is titled "Macro/Presets." Ex. 7. In that thread, "JeffT" suggested that the Sonos prior art system be able to "save Zone links [*i.e.*, speakers linked into a group in the prior art system] as favorites" so that, for example, he could set up "2 party modes, Summer and Winter," where the "Summer mode" would include "the deck speakers and the Winter mode would not."

These forum posts are still available on Sonos's website.[1] As the timestamps show, all of the posts were created and publicly available prior to Sonos's September 12, 2006 provisional filing date, and are therefore prior art under 35 U.S.C. § 102(a) or (b). Sonos is not entitled to its claimed

---

[1] https://en.community.sonos.com/music-services-and-sources-228994/macro-presets-4528; https://en.community.sonos.com/music-services-and-sources-228994/virtual-zones-and-zone-grouping-14604.

-5-                                        Case No. 3:20-cv-06754-WHA
GOOGLE'S BRIEF SHOWING CAUSE WHY SUMMARY JUDGMENT SHOULD NOT BE GRANTED

conception date of December 2005,[2] and even if it were, the posts from "theboyg" and "JeffT" predate the purported conception and are therefore prior art at least under 35 U.S.C. § 102(a).

### C. The Sonos Prior Art System and Forums Meet Each Element of the Claim

Because the Sonos forum posts expressly discuss modifying the Sonos prior art system, there is a clear motivation to combine these references. *See Optivus Technology, Inc. v. Ion Beam Applications S.A.*, 469 F.3d 978, 990–91 (Fed. Cir. 2006). The Sonos forum posts along with the Sonos prior art system disclose each and every element of claim 1 of the '885 patent.

#### 1. *The Sonos Prior Art System Discloses The Foundational Elements Of The Asserted Claim*

(a)   *The Sonos Prior Art System Discloses Elements [1.P] Through [1.4]*

There is no dispute that the Sonos prior art system includes the foundational aspects of the claim, with "smart" speakers, controllers sending music and instructions to those smart speakers, and user interfaces providing grouping and playback functionality. Indeed, Sonos does not contest that the Sonos prior art system discloses elements 1.P through 1.4 of the asserted claim.[3] Ex. 11 at 85-86. Nor did Sonos's expert Dr. Almeroth contest that any of elements 1.P through 1.4 were not met by the Sonos prior art system. Ex. 1 at 131-132; Ex. 6 at 156-173.

(b)   *The Sonos Prior Art System Discloses Element [1.5]*

This claim element essentially requires that a speaker operate individually—in "standalone mode"—as opposed to as a member of a group. A single speaker in the Sonos prior art system could play back media individually (*i.e.*, in standalone mode) when there were other speakers as part of the system. Ex. 1 at 162-164; 137 ("Each of the 'zone players' in the networked multi-zone audio system described in the '885 Patent (and in Sonos's own system at the time) was capable of playing

---

[2] Sonos claims its December 2005 conception date primarily based on a "Sonos UI Specification." Ex. 1 at 74-75. Sonos did not file its provisional application until September 2006—***9 months later***—showing a lack of diligence because the provisional application simply reformulates the disclosures of this UI specification. Ex. 9; Ex. 10. Although Sonos also purports to rely on development work related to an "alarm clock" feature to show diligence, Ex. 1 at 92-96, that feature does not practice the invention and is thus irrelevant; in fact Sonos did not implement the claimed feature until 2020 (15 years after the claimed conception). *See id.* at 349.

[3] Google provided a mapping of the claim elements to their identifier (*e.g.*, [1.4]) in the claim appendix *supra*.

back audio individually (*i.e.*, on its own).").  This element is thereby met.

### 2. The Sonos Prior Art System Plus The Sonos Forums Disclose All Of The "Zone Scene" Elements Of The Asserted Claim

To the extent not disclosed in the Sonos prior art system itself,[4] user comments on the Sonos forums disclose the "zone scene" elements of the asserted claim.

#### (a) Sonos and Sonos Forums Render Obvious Element [1.6]

In the Sonos prior art system, the controller (either the handheld controller or the desktop controller software) sends an indication to the zone player that it has been added to a speaker group. Specifically, the zone player that was added to the speaker group by the user would receive a message and would then automatically configure itself for synchronous playback as part of that speaker group during the period of time that the speaker group was activated. Ex. 1 at 151-152, 161-162.  As a result, the only aspect of element [1.6] that is arguably missing from the Sonos prior art system is saving the "zone scene" so that it can later be "invoked."

But this very aspect of element [1.6] was suggested to Sonos by users of Sonos's prior art system. As shown above, Sonos users suggested that the Sonos prior art product be modified to allow them to save their favorite speaker groups so that they did not need to keep manually recreating those groups. For example, in February 2005, users suggested adding a "virtual zone – *i.e.* a zone called 'Downstairs'" allowing the user to "group all my downstairs zone[s] into this," which would allow the user to avoid "manually linking/unlinking multiple zones everytime." *Supra*.

#### (b) Sonos and Sonos Forums Render Obvious Element [1.7]

This claim element effectively requires that two zone scenes overlap, with the first zone player being a member of both the first "predefined grouping" of zone players and the second "predefined grouping" of zone players. In the prior art Sonos speaker system, a speaker could already be grouped together with any other speaker to form a group that overlaps with the pre-set "party mode." Ex. 4 at 29-31.

---

[4] Even crediting Sonos's view that the Sonos prior art system does not render obvious the claimed invention, there can be no dispute that the Sonos forums in combination with the Sonos prior art system disclose the subject matter of claim 1 of the '885 patent. For purposes of this response to the Court's order to show cause, we focus on that combination here.

1    And users on the Sonos forums disclosed saving those user-created speaker groups,
2    thereby creating overlapping speaker groups saved as zone scenes. Indeed, users of the Sonos
3    prior art system explicitly suggested the creation and saving of overlapping zone scenes in
4    combination with the Sonos prior art system. For example, in the "Macro / presets" forum thread,
5    users discussed modifying the Sonos prior art products to allow a user to "have 2 party modes,
6    Summer and Winter," where the Summer group "would include the deck speakers and the Winter
7    mode would not," thereby creating saved, named, overlapping speaker groups. *Supra.* Other
8    users similarly suggested allowing speakers to "be in 1 or more zone groups." *Supra.*

(c)   *Sonos and Sonos Forums Render Obvious Element [1.8]*

This claim element generally requires that after two speaker groups are created and the speakers are notified of the groupings, a speaker within those groups continues to operate individually until the user invokes one of the speaker groups. As already discussed *supra*, in the Sonos prior art system, speakers that were available in the "party mode" group would continue to play music individually until that party mode group was invoked for playback. Accordingly, setting aside the requirement to save groups as "zone scenes," addressed in elements [1.6] and [1.7], the Sonos prior art system already included "standalone mode" speakers within the "party mode" group. And the Sonos forums clearly disclosed the remainder of this element because user posts discussed saving a speaker group as a "favorite" and later "invoking" that group.

**Macro / presets**
16 years ago · 61 replies · 15135 views
22 September 2005

JeffT  Trending Lyricist I · 20 replies

Just got the intro bundle, and I am impressed. I did a search and did not find this suggested, but I would save Zone links as favorites. With only 2 ZPs it is not a problem yet, but when I add more it maybe. I would like to setup say Morning mode for the units I want in the morning and a preset volume between the units. Another example I would have 2 party modes, Summer and Winter. The Summer mode would include the deck speakers and the Winter mode would not. Also it would be nice to have playlists or radio station associated with each mode. So when I get up I press Morning the DI Chill radio station plays.

Jeff

Ex. 7. Sonos argued and the Court accepted at summary judgment that saving and later invoking a speaker group adequately disclosed the "standalone mode" element. Dkt. 309 at 16-17. The prior art discloses the same, and therefore meets this claim element. *See Novo Nordisk Pharm., Inc. v. Bio-Technology Gen. Corp.*, 424 F.3d 1347, 1355 (Fed. Cir. 2005) ("While section 112 'provides

that the specification must enable one skilled in the art to 'use' the invention,' 'section 102 makes no such requirement as to an anticipatory disclosure.'") (cleaned up).

        (d) *Sonos and Sonos Forums Render Obvious Elements [1.9] and [1.10]*

  Claim elements [1.9] and [1.10] essentially require that once a speaker group has been selected, the speakers within that group will perform synchronous playback regardless of whether they were in "standalone" mode previously. This element is disclosed by the Sonos prior art system, in view of the "zone scene" and "standalone" mode features discussed in the Sonos forums. There is no dispute that once a speaker group is invoked in the Sonos prior art system, each of the speakers within that group will commence synchronous playback. Ex. 1 at 137 ("[E]ach of the 'zone players' in the networked multi-zone audio system described in the '885 Patent (and in Sonos's own system at the time) was capable of being grouped together with one or more other 'zone players' so that the grouped 'zone players' become configured for synchronous playback."). That the claimed groups are saved and named (*i.e.*, "predefined") is disclosed by the same Sonos forum posts discussed above for the same reasons as discussed above.

## V. AT A MINIMUM, THERE ARE TRIABLE ISSUES OF FACT REGARDING VALIDITY

  There are additional compelling grounds of anticipation and obviousness that may not be suited for summary judgment but should still be (at least) tried to a jury. For example, Google relies on the third-party prior art Logitech system as anticipating claim 1 of the '885 patent. To prove up this prior art, Google's expert ran the prior art software virtually on a prior art operating system. Ex. 6 at 237-239. Google's expert used this platform to trace traffic across the Logitech system's network to show various elements of the claims. *E.g.*, *id.* at 270-271, 294, 301-316; Ex. 12 at 22-31, 38-57. But Sonos quibbles with the virtual recreation of the prior art and argues that a person of skill would not have configured the prior art system as it was tested. *E.g.*, Ex. 1 at 228-229, 248. Google's expert disagrees. Ex. 6 at 238. Thus, although the Logitech prior art system discloses each and every element of claim 1 of the '885 patent, *id.* at 232-239, Sonos's contentions regarding that prior art may implicate one or more questions of fact for trial.

  Similarly, Google argues that another third-party prior art system, a set of Bose prior art

products, including the Bose Lifestyle 50 and Bose's SA-2 and SA-3 amplifiers, renders obvious the claimed invention. *Id.* at 393-470. Google's expert opines that the Bose system and amplifiers were compatible and that a person of ordinary skill would have been motivated to combine them in a way that reads on the asserted claim. *E.g.*, *id.* at 417-420. Sonos, however, contends that a person of skill would not have used the Bose Lifestyle 50 system in conjunction with Bose's SA-2 and SA-3 amplifiers to set up the claimed "zone scenes." Ex. 1 at 293-294. Here again, the issues regarding whether a person of ordinary skill would utilize certain Bose technology in connection with the use of Bose's system and amplifiers may be appropriate for decision by a factfinder.

Indeed, with knowledge of the record regarding these asserted prior art grounds of invalidity, Sonos itself elected not to move for summary judgment of validity.

## VI.  CONCLUSION

In view of (i) the Court's interpretation of "zone scene" to mean any group of speakers that is saved with a name and later invoked and (ii) the evidence above, which makes clear that "zone scenes" were at least obvious in view of the prior art, Google requests full summary judgment briefing to explain in detail why the Court should grant summary judgment of invalidity. In the alternative, the Court should allow Google to present these issues at trial. Moreover, the Sonos prior art system and Sonos forums are just one ground of invalidity, and Google's contentions based on prior art products from Logitech and Bose are also ripe for trial. In advance of trial or summary judgment briefing (should the Court request it), Google requests that the Court order Sonos to make its validity expert available for deposition so that the Court and/or jury can decide the validity issue on a full record. Sonos has thus far refused to make its expert available for deposition on the ground that the instant show cause briefing should be completed before its expert is deposed.

| | | |
|---|---|---|
| 1 | DATED: September 15, 2022 | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| 2 | | |
| 3 | | By  */s/ Charles K. Verhoeven* |
| 4 | | Charles K. Verhoeven |
| | | Melissa Baily |
| 5 | | Lindsay Cooper |
| 6 | | *Attorneys for GOOGLE, LLC* |

**CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure and Local Rule 5-1, I hereby certify that, on September 15, 2022, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system and email.

> */s/ Charles K. Verhoeven*
> Charles K. Verhoeven