QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Sean Pak (Bar No. 219032)
  seanpak@quinnemanuel.com
  Melissa Baily (Bar No. 237649)
  melissabaily@quinnemanuel.com
  James Judah (Bar No. 257112)
  jamesjudah@quinnemanuel.com
  Lindsay Cooper (Bar No. 287125)
  lindsaycooper@quinnemanuel.com
  Iman Lordgooei (Bar No. 251320)
  imanlordgooei@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

  Marc Kaplan (*pro hac vice*)
  marckaplan@quinnemanuel.com
191 N. Wacker Drive, Ste 2700
Chicago, Illinois 60606
Telephone:     (312) 705-7400
Facsimile:     (312) 705-7401

*Attorneys for GOOGLE LLC*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| SONOS, INC.,<br><br>            Plaintiff and Counter-<br>            Defendant,<br><br>      vs.<br><br>GOOGLE LLC,<br><br>            Defendant and Counter-<br>            Claimant. | Case No. 3:20-cv-06754-WHA<br>Consolidated with Case No. 3:21-cv-07559-WHA<br><br>**GOOGLE LLC'S POSITION STATEMENT REGARDING THE COURT'S REEVALUATION OF WRITTEN DESCRIPTION**<br><br>Location: Courtroom 12, 19th Floor<br>Judge:     Hon. William Alsup |

# TABLE OF CONTENTS

I.    GOOGLE'S PRIOR PRESENTATION OF THE WRITTEN DESCRIPTION
      ISSUES TO THE COURT .................................................................................... 1

II.   GOOGLE'S AWARENESS OF THE WRITTEN DESCRIPTION ISSUES ....................... 3

III.  GOOGLE'S PROPOSAL FOR ADDRESSING THE WRITTEN DESCRIPTION
      ISSUES ............................................................................................................ 6

      A.    The Court Has Authority To Vacate Its Order Under Federal Rule of Civil
            Procedure 54(b) And Civil Local Rule 7-9 .................................................. 8

      B.    The Court Can Exercise Its Authority To Find The Patents Are Invalid For
            Lack Of Written Description.......................................................................... 9

IV.   GOOGLE'S PROPOSAL FOR ADDRESSING AFFIRMATIVE DEFENSES
      AND INJUNCTIVE RELIEF................................................................................. 15

# TABLE OF AUTHORITIES

**Page**

## Cases

*Abada v. Charles Schwab & Co.*,
    127 F. Supp. 2d 1101 (S.D. Cal. 2000) ...................................................................9

*AbbVie Deutschland GmbH & Co., KG v. Janssen Biotech, Inc*.,
    759 F.3d 1285 (Fed. Cir. 2014) ...........................................................................14

*Advanced Semiconductor Materials Am., Inc. v. Applied Materials, Inc.*,
    922 F. Supp. 1439 (N.D. Cal. 1996) .......................................................................7

*Agilent Techs., Inc. v. Affymetrix, Inc.*,
    567 F.3d 1366 (Fed. Cir. 2009) ...........................................................................11

*Am. Canoe Ass'n v. Murphy Farms, Inc.*,
    326 F.3d 505 (9th Cir. 2003) ..................................................................................9

*Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*,
    402 U.S. 313 (1971) .............................................................................................11

*Cardinal Chemical Co. v. Morton Intern, Inc.*,
    508 U.S. 83 (1993) ...............................................................................................11

*City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*,
    254 F.3d 882 (9th Cir. 2001) ..............................................................................7, 9

*Credit Suisse First Boston Corp. v. Grunwald*,
    400 F.3d 1119 (9th Cir. 2005) ................................................................................8

*Crown Operations Intern., Ltd. v. Solutia Inc.*,
    289 F.3d 1367 (Fed. Cir. 2002) ...........................................................................14

*D Three Enterprises, LLC v. SunModo Corp.*,
    890 F.3d 1042 (Fed. Cir. 2018) ..............................................................................9

*International Visual Corp. v. Crown Metal Mfg. Co., Inc.*,
    991 F.2d 768 (Fed. Cir. 1993) ................................................................................9

*In re Lew*,
    257 F. App'x 281 (Fed. Cir. 2007).......................................................................11

*Newport Corp. v. Lighthouse Photonics, Inc.*,
    2014 WL 3361757 (C.D. Cal. July 2, 2014)...........................................................8

*Oracle Am., Inc. v. Google Inc.*,
    No. C 10-03561 WHA, 2012 WL 1965778 (N.D. Cal. May 31, 2012)..................15

*Quinn v. Fresno Cnty. Sheriff,*
    2012 WL 2839648 (E.D. Cal. July 10, 2012) ................................................................9

*Ralston Purina Co. v. Far–Mar–Co, Inc.,*
    772 F.2d 1570 (Fed. Cir. 1985) .......................................................................................12

*Schering Corp. v. Amgen Inc.,*
    222 F.3d 1347 (Fed. Cir. 2000) .......................................................................................11

*Sharper Edge, Inc. v. Continental Ins. Co.,*
    176 F.3d 489 (10th Cir. 1999) ...........................................................................................7

*Tsyn v. Wells Fargo Advisors, LLC,*
    2016 WL 7635883 (N.D. Cal. June 27, 2016) ............................................................9, 10

*Vanmoor v. Wal-Mart Stores, Inc.,*
    201 F.3d 1363 (Fed. Cir. 2000) ...................................................................................8, 14

*Vas–Cath Inc. v. Mahurkar,*
    935 F.2d 1555 (Fed. Cir. 1991) .......................................................................................11

**Statutes**

35 U.S.C. § 112 ......................................................................................................................1, 7, 15

**Other Authorities**

N.D. Cal. Civ. L.R. 7-9 .......................................................................................................8, 9, 10

Fed. R. Civ. P. 50(b) ..................................................................................................................15

Fed. R. Civ. P. 54(b) .............................................................................................................7, 8, 9

Fed. R. Civ. P. 56(f) .....................................................................................................................8

Google LLC ("Google") hereby submits its response to the Court's request for its "proposal or comments on how the Court should go about addressing" the issue relating to written description support and effective priority date for overlapping zone scenes claimed in the '885 and '966 Patents—specifically, the recently-uncovered fact confirmed through trial testimony that the only passage purportedly supporting overlapping zone scenes in the specification of the asserted patents was added by amendment in 2019 and derives from an out-of-context portion of Sonos's provisional application that is unrelated to creating zone scenes.  Google also hereby provides its response to the Court's separate request for additional briefing on "a proposed course of action for hearing and ruling on injunctive relief and the affirmative defenses." Dkt. 775.

## I.  GOOGLE'S PRIOR PRESENTATION OF THE WRITTEN DESCRIPTION ISSUES TO THE COURT

During the patent showdown, Google opposed Sonos's motion for summary judgment of infringement by arguing that "because the asserted claim is invalid under 35 U.S.C. § 112 . . . no liability can result from any infringement."  Dkt. 247-3 at 18; *see also id*. at 25 ("The Court should find that the asserted claim lacks an adequate written description and deny Sonos's motion on that basis.").[1]  Google's opposition argued that claim 1 of the '885 Patent was invalid for lack of written description and that the specification failed to disclose a first zone player added to overlapping zone scenes: "[t]he claims require that the first zone player is added to both a first and second zone scene, but there is no description, or even an illustration of adding a first zone player to two different scenes of zone players."  *Id.* at 20-25.[2]

In reply, Sonos identified the purported key written description support for overlapping zone scenes, arguing:

> Third, the '885 Patent discloses that when a user is selecting which "zone players to add during setup of each "zone scene," the user is presented with "ALL the zones in the system, ***including the zones that are already grouped***" – which conveys to a POSITA that each "zone scene" being set up can include ***any*** grouping of "zone players" in a multi-zone audio system, regardless of whether the "zone players" are

---

[1]   In granting Sonos's motion, the Court construed Google's opposition as a cross-motion for summary judgment of invalidity under § 112 as well.  Dkt. 309 (Order) at 1 ("The alleged infringer [Google] cross moves for summary judgment of . . . invalidity.").

[2]   Google additionally argued that "[t]he specification provides no description or figures describing what happens when a speaker in 'standalone mode' (a term never used in the specification) is added to multiple zone scenes and then one of those zone scenes is later invoked." Dkt. 248-3 at 22.

included in any other "zone scenes" and thus that multiple "zone scenes" with one or more overlapping "zone players" can be set up and exist at the same time. *See* '885 Pat., 10:12-19; *see also id.*, 10:4-6; 10:36-42; Ex. R, ¶47.

Dkt. 273-4 at 9 (emphasis in original).

Thus, in asserting that the patents provided written description of overlapping zone scenes, Sonos specifically relied on the specifications' statement that "[t]he list of zones in the user interface 520 includes ALL the zones in the system, including the zones that are already grouped." '885 Patent at 10:15-17; '966 Patent at 10:15-19 (collectively, the "New Matter"). But Sonos did not disclose that this passage had been taken from a different context in the provisional application (*i.e.*, Section 4, relating to Zone Linking and not Scenes). Indeed, during fact discovery, Sonos *did not identify* Section 4 of the provisional application (in which the New Matter originally appeared) in responding to Google's Interrogatory No. 1, which asked: "To the extent that you identify provisional patent applications as such evidence, for each Asserted Claim that *you contend is entitled to claim priority to the filing date of the provisional applications*, respectively, identify in detail in chart form the disclosure in the provisional applications that you contend provides support and/or written description for each element of each Asserted Claims" (all emphases added unless noted otherwise).

Due to Sonos's late disclosure of its reliance on the New Matter, and its prior failure to identify Section 4 of the provisional application as providing support for its priority date, Google did not have sufficient opportunity to investigate the New Matter and uncover the irregularities associated with its inclusion into the specifications of the asserted patents in 2019. Moreover, Google was not entitled to a sur-reply brief in the showdown briefing and, given the limited available time, the showdown oral argument focused primarily on other issues, with little discussion of Google's written description arguments. July 13, 2022 Showdown Hearing Tr. at 110:10-114:14.[3]

After the Court issued its Order rejecting Google's written description defense, Google shifted its focus to other defenses. As discussed *infra*, Google did not uncover these irregularities in the prosecution history until the issues of written description and priority date arose at trial in

---

[3] The parties' showdown briefing spent hundreds of pages on other non-infringement and invalidity issues involving the '885 Patent and the '615 Patent, and the oral argument primarily addressed those other issues.

1   response to the Court's questions posed to the parties and as further revealed by trial testimony.

2   **II.**   **GOOGLE'S AWARENESS OF THE WRITTEN DESCRIPTION ISSUES**

3          The Court has asked whether Google was aware of the written description issues relating to

4   the New Matter but "withheld it" because Google did not "want to prejudice [its] position in some

5   other case."  Unequivocally, that is not the case.  Google has not knowingly withheld any

6   information from the Court in this case.  Google did not uncover and appreciate the facts

7   surrounding Sonos's amendments to its specifications of the '885 and '966 Patents, and the effects

8   thereof, until the Court inquired about it during trial and asked the parties to look into it further.  *See*

9   Trial Tr. at 656:4-662:9.  In response to the Court's inquiry, Google analyzed the priority chain to

10  address the Court's questions and concerns about the sufficiency of the written description support

11  for overlapping zone scenes, particularly relating to the addition of New Matter in 2019.  *See* Dkt.

12  712.  Google's analysis was further informed by the trial testimony of the inventor, Robert

13  Lambourne, regarding zone scenes and his purported conception documents.

14         While preparing its responses to the Court on this issue during trial, Google uncovered, for

15  the first time, the irregularities in the prosecution history of the asserted patents related to Sonos's

16  amendment of the specifications, including significant modifications that had been made to Mr.

17  Lambourne's conception documents (*i.e.*, Sonos's UI and Alarm Clock Specifications) before those

18  documents were filed with the Patent Office as Appendices to Sonos's provisional patent

19  application.[4]  Google's investigation revealed that Sonos had ***removed*** from Mr. Lambourne's

20  conception documents all references to the "Party Mode" in the Sonos 2005 prior art system as being

21  an example of a zone scene.  Google's investigation further revealed that the key passage cited by

22  Sonos and relied upon by the Court to find adequate written description support for overlapping

23  zone scenes (*i.e.*, that "[t]he list of zones in the user interface" shown in Figure 5B "includes ALL

24

25  _____

26  [4]   Nothing in the prior ITC litigation between Sonos and Google gave Google notice of the
    irregularities now at issue.  Sonos's ITC complaint raised five patents (U.S. Patent Nos. 9,195,258,
    10,209,953, 8,588,949, 9,219,959, and 10,439,896) patents, but none of those patents claimed
27  overlapping zone scenes.  The ***accused products*** in the two cases were similar, which enabled
    Google to quickly investigate Sonos's infringement allegations and promptly file suit seeking a
    declaration of non-infringement.  But that analysis did not address the ***validity*** of the patents-in-suit
28  here, much less Sonos's assertion of a 2006 effective filing date for these claims.

1   the zones in the system, including the zones that are already grouped"—the New Matter) (Dkt. 309

2   at 15) was not only added to the asserted patent specifications by amendment in 2019, but was pulled

3   from a portion of Sonos's provisional patent application that had *nothing to do with zone scenes*.

4          Google submitted its brief the next day identifying the newly discovered facts.  *See* Dkt. 712

5   at 1-2 ("The problem is that this language did not appear in the original non-provisional patent filing

6   in the chain of continuations on September 11, 2007, and therefore it is legally irrelevant.  In fact,

7   Sonos did not add this disclosure to either specification of the patents-in-suit until *August 23,*

8   *2019*.") (emphasis in original), 2-3 ("[T]he provisional application was not describing any zone

9   scenes whatsoever.  However, Sonos's decision to modify the image by omitting the top portion and

10  replacing the textual description of zone groups with zone scenes in the amended specification[s]

11  may have misled the reader to believe that it *was* discussing the creation of zone scenes.  This was

12  exacerbated by Sonos inserting the sentence describing *zone groups* from the provisional

13  application into a paragraph exclusively discussing the creation of *zone scenes* in the amended

14  specification.") (emphases in original).

15         The Court then requested that the parties submit additional briefing regarding the priority

16  date and written description of the '966 and '885 Patents.  Dkt. 719; *see also* Dkt. 722; Dkt. 729.  As

17  Google established in those briefs, the '853 Patent (the original non-provisional disclosure for the

18  asserted patents) lacked any disclosure of overlapping zone scenes.  Dkt. 729 at 2-12.  Only by

19  adding the New Matter during prosecution of the asserted patents in 2019 was Sonos able to argue

20  that it had written description support for overlapping zone scenes.  And even that New Matter had

21  to be plucked from a section of Sonos's provisional application that discussed linking prior art

22  *dynamic groups*, not forming overlapping *zone scenes*.  *Id.* at 10-12.

23         All this became more apparent and salient in view of the trial testimony of Sonos's sole

24  inventor, Mr. Lambourne, who denied that zone grouping was related to zone scenes and attempted

25  to distinguish the two features throughout his testimony.  *See, e.g.*, Trial Tr. (Lambourne) at 456:5-

26  457:21, 611:9-612:23 (attempting to distinguish zone scenes and dynamic grouping, including the

27  original party mode).  For example, on May 9, 2023, Mr. Lambourne confirmed that, at the time of

28  the alleged invention, he stated in a Sonos UI Specification discussing "zone scenes" that "*party*

*mode* that currently ships with the [prior art Sonos 2005 system] is **one example of a zone scene**." *Id*. at 462:16-20.  The next day, however, Sonos's counsel elicited testimony from Mr. Lambourne that party mode was purportedly **not** a zone scene, directing Mr. Lambourne to a statement in another Sonos UI Specification stating that the zone scene feature "is similar to the current Party Mode setting that is available.  However, the zone scene feature is much more flexible and powerful." *Id*. at 610:13-611:1.  Google was able to more fully appreciate the significance of Sonos's patent specification amendments in view of Mr. Lambourne's inconsistent testimony because Mr. Lambourne was attempting to distinguish the prior art dynamic grouping from his alleged zone scenes technology, yet the purported written description support for overlapping zone scenes was added to the specifications of the asserted patents based on a sentence in the provisional patent application that was exclusively describing **dynamic grouping**, not zone scenes.

Until that point in the case, Sonos had represented that the specifications of the '885 and '966 Patents were the same as those of the earlier patents in the priority chain.  *See* Dkt. 722 at 9-10.  For example, in Sonos's opposition to Google's motion to dismiss, Sonos represented that "[t]he '966 and '885 patents had not issued at the time of this letter, but are continuations from the '853 patent and **share a common specification**."  Transferred Action, Dkt. 144 (Sonos Opp. To MTD) at 2; *id*. at 3. ("The '966 and '885 patents (which had not yet issued) are continuations from the '228 patent, and therefore **share a specification with it**.").  Indeed, those representations continued during the trial.  For example, Sonos's technical expert, Dr. Almeroth, testified that the '885 and '966 Patents "are part of what's called a 'continuation chain.'  So they date back over time where patents were **filed with the same specification** and they have different sets of claims at the end.  But the description of the invention, what the specification is, the columns in it, the figures, **that's all the same**."  Trial Tr. (Almeroth) at 676:24-677:5.  Sonos's general counsel, Alaina Kwasizur, also submitted a sworn declaration attesting that:

> Line 5 of the additional patent disclosures shows Sonos's Patent No. 8,483,853 ("the '853 patent").  This is **the first non-provisional** filed in the zone patent family at issue in this case.  It is the ultimate parent patent to the zone scene patents at issue in this case and **shares a substantively identical specification to the zone patents at issue in this case**.

Dkt. 704-2.

When asked by the Court, Sonos's counsel represented during trial that the specification for the '966 patent had a "nearly identical specification" to the originally filed application, and other than "an initial sentence in the very first that says this application claims priority to such and such an application. **Other than that, no changes**." Trial Tr. at 656:12-22. Only after the Court and Google began looking more closely into that representation did Sonos's counsel retract and offer the incomplete concession that the "specification has changed **in slight ways**." Id. at 748:6-16.

Thus, at bottom, Google presented the Court with its findings as soon as it discovered them—Google did not withhold any findings for a strategic purpose. Indeed, Google has **not** taken any positions in its other litigations with Sonos that are inconsistent with its positions here regarding the written description issues. This is not surprising given the unique nature of the irregularities in the prosecution history of the '885 and '966 Patents—including the length of time between the provisional application and the non-provisional applications for the issued patents (i.e., nearly 13 years), the amendments to the specifications to insert an out-of-context excerpt from one of the provisional application appendices (i.e., the New Matter), and Sonos's repeated misrepresentations.

III. **GOOGLE'S PROPOSAL FOR ADDRESSING THE WRITTEN DESCRIPTION ISSUES**

As the Court has been made aware through numerous trial briefs filed on this issue, Sonos's alleged written description support for the claimed concept of overlapping zone scenes derives from a portion of its provisional patent application that relates to dynamic zone **grouping** (i.e., Section 4, which had not been identified by Sonos as providing priority date support for overlapping zone scenes in its prior interrogatory responses)—**not** zone **scenes**. See Dkts. 712, 722, 729. Critically, this passage was added to the specifications of the asserted patents by amendment in 2019 and was taken out of context from the provisional application. Id.

Rule 54(b) authorizes the Court to "revise[] at any time before the entry of judgment" "any order or other decision . . . that adjudicates fewer than all the claims[.]" Fed. R. Civ. P. 54(b). The Court's order denying Google's cross-motion seeking invalidity for lack of written description (Dkt. 309, "Order") adjudicated fewer than all the claims, and the Court did not certify its Order as a final judgment. The Court's Order, thus, did not constitute a final judgment, and may be **reconsidered**

1   ***at any time*** before the entry of final judgment.  *See, e.g.*, *City of Los Angeles, Harbor Div. v. Santa*

2   *Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) ("As long as a district court has jurisdiction

3   over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an

4   interlocutory order for cause seen by it to be sufficient.") (internal quotation and emphasis

5   omitted).  Reconsidering the Order is particularly appropriate where, as here, the Court is now

6   presented with a more complete record upon which to decide the issues.  *See, e.g.*, *Sharper Edge,*

7   *Inc. v. Continental Ins. Co.*, 176 F.3d 489, 489 (10th Cir. 1999) ("Sharper Edge contends the district

8   court erred in reversing itself, initially finding the insurance policy language ambiguous, and then

9   deciding that very same language was not ambiguous. We find no error in the district court's

10  reconsideration of its initial ruling in light of a more complete record. The grant of summary

11  judgment is not improper merely because an earlier motion for summary judgment, which raised

12  the same issues, had been denied."); *Advanced Semiconductor Materials Am., Inc. v. Applied*

13  *Materials, Inc.*, 922 F. Supp. 1439, 1441 (N.D. Cal. 1996) (granting a renewed motion for summary

14  judgment of invalidity for failure to comply with section 112's "best mode" requirement based on

15  a more complete record, after initially denying the motion a year earlier).

16      Google, therefore, respectfully requests that the Court reconsider its prior Order granting

17  summary judgment to Sonos and rejecting Google's arguments that claim 1 of the '885 Patent is

18  invalid for lack of written description (which is equally applicable to the '966 Patent).  *See* Dkt. 309

19  at 17.  In addition to the briefing preceding the Court's issuance of its Order (Dkts. 247-3 and 273-

20  4), the Court—during trial—ordered the parties to submit briefs addressing whether the asserted

21  claims lacked written description support for overlapping zone scenes (Dkts. 711, 712, 722, 723,

22  729).  Based on that prior briefing and the current set of submissions, the Court has been presented

23  with the full factual record and can now modify the Order to find that claim 1 of the '885 Patent is

24  invalid for lack of written description without further motion practice (*n.b.*, there is no written

25  description support for overlapping zone scenes in Sonos's original specifications or its 2006

26  provisional application; thus, to the extent Sonos insists on a 2006 priority date, the asserted claims

27  of the '885 and '966 patents are invalid for lack of written description).

28      Alternatively, the Court may also consider the issue under at least its own inherent authority

-7-

and Rule 56(f), which provides that the Court may, *inter alia*, "consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." In particular, there are no disputed material facts regarding when the specifications of the asserted patents were amended or the substance of the amendments. Accordingly, the Court can consider, on its own, the effect of the amendments (*i.e.*, that they added new matter) and any outcomes resulting therefrom (*i.e.*, that the priority date for the asserted claims of both patents should be 2019, not 2006, and thus the accused Google products invalidate the asserted claims). *Vanmoor v. Wal-Mart Stores, Inc.*, 201 F.3d 1363 (Fed. Cir. 2000). Google would also be amenable to submitting a brief addressing the written description issues under the summary judgment standard, so that the Court has access to one set of briefing with the now-fully developed record, under the appropriate legal standard, to assist in making its decision.

### A.    *The Court Has Authority To Vacate Its Order Under Federal Rule of Civil Procedure 54(b) And Civil Local Rule 7-9*

Federal Rule of Civil Procedure 54(b) provides, in relevant part: "[a]ny order or other decision, however designated, that adjudicates fewer than all the claims . . . ***may be revised at any time before the entry of a judgment*** adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Pursuant to this authority, "a district court can modify an interlocutory order at any time before entry of a final judgment[.]" *Credit Suisse First Boston Corp. v. Grunwald*, 400 F.3d 1119, 1124 (9th Cir. 2005) (internal quotations and citations omitted); *Newport Corp. v. Lighthouse Photonics, Inc.*, 2014 WL 3361757, at *1 (C.D. Cal. July 2, 2014) ("a district court retains the power to modify rulings on partial dispositive motions") (citing *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514-15 (9th Cir. 2003).

Whether to reconsider, rescind, or modify an order is committed to the sound discretion of the Court. *City of Los Angeles*, 254 F.3d at 889 ("As long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient.") (internal quotations and citations omitted). Civil Local Rule 7-9 also provides that a litigant may request reconsideration of an interlocutory order where, for example, there is "a ***material difference in fact*** or law exists from

1   that which was presented to the Court before entry of the interlocutory order" (L.R. 7-9(b)(1)) or

2   based on "[t]he ***emergence of new material facts*** or a change of law occurring after the time of such

3   order" (L.R. 7-9(b)(2)).  However, the "rule does not restrict the *court's* ability to revisit its previous

4   orders."  *Tsyn v. Wells Fargo Advisors, LLC*, 2016 WL 7635883, at *1 (N.D. Cal. June 27, 2016)

5   (explaining that the court has the inherent authority to "entertain the reconsideration motion" even

6   if the circumstances in Local Rule 7-9 do not apply) (emphasis in the original).  Indeed, "[a] district

7   court may reconsider and reverse a previous interlocutory decision for any reason it deems

8   sufficient, ***even in the absence of new evidence*** or an intervening change in or clarification of

9   controlling law."  *Quinn v. Fresno Cnty. Sheriff*, 2012 WL 2839648, at *2 (E.D. Cal. July 10, 2012);

10  *see also Tsyn*, 2016 WL 7635883, at *1 (citing *Abada v. Charles Schwab & Co.*, 127 F. Supp. 2d

11  1101, 1102 (S.D. Cal. 2000)).

12         Moreover, the Court "may ***sua sponte*** reconsider a Rule 54(b) ruling."  *Tsyn*, 2016 WL

13  7635883, at *1 (citing *City of Los Angeles, Harbor Div.*, 254 F.3d at 886.  And because the Court

14  has already put Sonos on notice that it must come forward with the alleged written description

15  support for overlapping zone scenes, the Court has the authority to enter summary judgment that

16  claim 1 of the '885 Patent is invalid for lack of written description based on the existing record.  *See*

17  *International Visual Corp. v. Crown Metal Mfg. Co., Inc.*, 991 F.2d 768 ,771 (Fed. Cir. 1993)

18  ("[D]istrict courts are widely acknowledged to possess the power to enter summary judgments *sua*

19  *sponte*, so long as the losing party was on notice that she had to come forward with all of her

20  evidence."); *see also D Three Enterprises, LLC v. SunModo Corp.*, 890 F.3d 1042, 1048-49 (Fed.

21  Cir. 2018) (district court did not err in granting summary judgment based on an inadequate written

22  description by finding there was a lack of specific detail that had not been argued by the accused

23  infringer because the patentee "knew" that lack of written description "would be an issue" and "had

24  a full opportunity to present evidence to support its position") (internal quotations omitted).

25         **B.**      ***The Court Can Exercise Its Authority To Find The Patents Are Invalid For Lack
                    Of Written Description***

26

27         As discussed *supra,* the Court has ample legal authority to reconsider its previous order

28  denying summary judgment of lack of written description, and there is good cause for the Court to

1   do so now.

2   First, the Court should reconsider its prior Order because there is a "material difference in

3   fact . . . from that which was presented to the Court before entry of the" Order and the "emergence

4   of [the] new material fact[]" was uncovered at trial such that it was not previously available to the

5   Court.  L.R. 7-9(b)(1) and (b)(2).  Indeed, the Court was unaware that the key evidence it cited in

6   support of its finding that the patent claims contained an adequate written description was actually

7   New Matter added during prosecution of the asserted patents in 2019.  Sonos did not disclose this

8   fact during fact and expert discovery in this action and, indeed, represented multiple times over the

9   course of the case *and* during trial that the specification had not changed throughout the long

10  "continuation chain" of the asserted patents.  *See supra* Section II.  Those misrepresentations appear

11  to have given the Court the misimpression that there were no relevant changes between the

12  provisional application and the asserted patents' specifications, which is not accurate.  To the

13  contrary, Sonos changed the specification in material ways during prosecution in an attempt to add

14  written description support for the asserted claims.  *See* Dkts. 712, 729.  Google uncovered these

15  material facts only after the Court issued its Order, as a result of trial testimony from Mr. Lambourne

16  and questions from the Court about the sufficiency of the written description.  *See supra* Section II.

17  Second, the Court should reconsider its prior Order under its own inherent authority to do

18  so.  *Tsyn*, 2016 WL 7635883, at *1 (explaining a court may reconsider its own prior order for "any

19  reason it deems sufficient," even where none of the circumstances in L.R. 7-9 apply).  It is well-

20  established that enforcing invalid patents would provide no benefit to the public and would be

21  contrary to the goal of the patent system, which is to promote new and non-obvious

22  inventions. *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313,

23  343 (1971) ("The far-reaching social and economic consequences of a patent, therefore, give the

24  public a paramount interest in seeing that patent monopolies spring from backgrounds free from

25  fraud or other inequitable conduct and that *such monopolies are kept within their legitimate*

26  *scope.*"); *Cardinal Chemical Co. v. Morton Intern, Inc.*, 508 U.S. 83 (1993) ("[O]f the two questions

27  [infringement or validity], validity has the greater public importance . . . and the District Court in

28  this case followed what will usually be the *better practice by inquiring fully into the validity of this*

1    *patent*.") (internal citations and quotations omitted).  Thus, it is "better practice" and of "great[]

2    public importance" for the Court to revisit its Order and fully evaluate the written description issues

3    based on the complete record.

4         At bottom, Sonos's "best" piece of evidence for its argument that the claims had adequate

5    written description for overlapping zone scenes is that the amended patent specifications contain the

6    following sentence:  "The list of zones in the user interface 520 includes ALL the zones in the

7    system, including the zones that are already grouped."  *See* Dkt. 273-4 at 9 (citing '885 Patent at

8    10:12-19) (emphasis omitted).  But Sonos added this sentence to the specifications during

9    prosecution of the asserted patents in August 2019 by taking it out of context from the provisional

10   application.  *E.g.*, TX0004 at 808.  And it is black letter law that the "written description doctrine

11   ***prohibits new matter*** from entering into claim amendments, particularly during the continuation

12   process."  *Agilent Techs., Inc. v. Affymetrix, Inc.*, 567 F.3d 1366, 1379 (Fed. Cir. 2009); *In re Lew*,

13   257 F. App'x 281, 284 (Fed. Cir. 2007) ("It is well established that when the applicant adds a claim

14   or otherwise amends his specification after the original filing date the new claims or other added

15   material must find support in the original specification.") (internal quotes and citations omitted).

16        Sonos's belated amendment to the patent specifications by itself cannot provide written

17   description support, and "[t]he fundamental inquiry is whether the material added by amendment

18   was inherently contained in the ***original application***."  *Schering Corp. v. Amgen Inc.*, 222 F.3d

19   1347, 1352 (Fed. Cir. 2000); *Vas–Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563 (Fed. Cir. 1991)

20   ("[T]he test for sufficiency of support . . . is whether the disclosure of the application relied upon

21   'reasonably conveys to the artisan that the inventor had possession at that time of the later claimed

22   subject matter.'") (quoting *Ralston Purina Co. v. Far–Mar–Co, Inc.*, 772 F.2d 1570, 1575 (Fed. Cir.

23   1985)).  Although the particular sentence added to the patent specifications also exists in the

24   provisional application, that portion of the provisional application was describing dynamic zone

25   grouping and adding or dropping zone players (referred to as "Zones" in the provisional application)

26   in a dynamic group—critically, it was ***not*** describing zone scenes. Dkt. 712-4 at 45.  The provisional

27   application was explicit that this  portion (*i.e.*, Section 4) described a modification for the "***current***

28   Link and Drop Zones features," which "allow[ed] the user to link and drop Zones one at a

-11-

time." *Id.*  The modification to the then-current system "would allow the user to link and drop multiple zones in one screen." *Id.*  Accordingly, the provisional application was describing the then-"current" feature of the Sonos 2005 System for creating and managing dynamic groups—***not*** zone scenes—and was only describing a modification that would allow a user to link or unlink more than one zone player at a time instead of linking or unlinking them one by one.  Indeed, the provisional application explicitly teaches ***against*** setting up zone scenes using the handheld controller interface that was illustrated for the dynamic zone grouping in Section 4:  "It is not expected that the Zone Scenes should be set up using the Handheld Controller."  *Id*. at 37.

As shown in the excerpt from Sonos's provisional application, the image above the sentence (which is highlighted in the figure below) added to the patent specifications in 2019 further confirm that this sentence related to "zone linking" for dynamic groups, ***not*** for creating zone scenes.  Thus, the highlighted sentence in its original context of the provisional application provides no disclosure of creating any zone scenes, never mind overlapping zone scenes as claimed in the asserted patents.



– The list of zones in the screen above includes ALL the zones in the system, including the Zones that are already grouped.

*Id*. at 45 (highlighting and annotation added); *see also* Dkt. 729 at 10-12 (proving that provisional application describes the zone group selected using the Zone Linking menu as being ***immediately invoked***, not saved for later invocation). And contrary to Sonos's prior suggestions, the separate "Scenes" button in the above figure is completely unrelated to the functionality being described in Section 4 and is only used to invoke scenes that had been ***previously*** created using a different desktop user interface as described in a separate section, Section 3 titled "Scene Setup" (Dkt. 712-4 at 37: "It is ***not expected*** that the Zone Scenes should be set up using the Handheld Controller";

1    *id*. at 44: "Right click on a current Zone group," indicating a desktop user interface).

2         Despite the fact that the above-highlighted sentence in Section 4 had nothing to do with Zone

3    Scenes, Sonos copied that sentence from its disclosure regarding dynamic zone grouping ("Zone

4    Linking") into the portion of the asserted patents' specifications describing the creation of "scenes"

5    as part of its 2019 amendment:

6              FIG. 5B shows another user interface 520 to allow a user to form a scene. The user
7              interface 520 that may be displayed on a controller or a computing device, lists
               available zones in a system. ***The list of zones in the user interface 520 includes***
               ***ALL the zones in the system, including the zones that are already grouped.*** A
8              checkbox is provide next to each of the zones so that a user may check in the zones
               to be associated with the scene.

9    '885 Patent at 10:12-19.  Moreover, this amended paragraph is describing Figure 5B in the patent

10   specifications, which ***omitted*** the top portion of the actual image from the provisional

11   application.  This omission created the false impression that the image was describing the creation

12   of zone ***scenes*** rather than dynamic zone linking, as clearly depicted in the top portion of the original

13   image in the provisional application.  However, even this contorted disclosure fails because, at best,

14   it requires inferring that there are overlapping zone scenes.  *See* Trial Tr. at 661:3-5 (Court: "It

15   doesn't say 'overlapping zone scenes.'  ***You have to infer that*** – that it can support the essence of

16   the invention over the prior art.");  *Crown Operations Intern., Ltd. v. Solutia Inc.*, 289 F.3d 1367,

17   1380 (Fed. Cir. 2002) ("novel aspects of the invention must be disclosed and ***not left to inference***").

18        In sum, a person of ordinary skill in the art reading Section 4 of the provisional application

19   would ***not*** understand that the inventor "truly made the claimed [overlapping zone scenes]

20   invention" because this portion of the provisional application was not describing creating zone

21   scenes at all.  *AbbVie Deutschland GmbH & Co., KG v. Janssen Biotech, Inc*., 759 F.3d 1285, 1298

22   (Fed. Cir. 2014).  Moreover, to the extent the Court finds that the introduction of the New Matter

23   provided written description support for the claimed overlapping zone scenes, then it is clear that it

24   only did so from the date the specifications of the asserted patents were amended to introduce the

25   New Matter—*i.e.*, August 2019, which is years after Google introduced its products and

26   functionalities accused of infringement in this case.  Accordingly, it would also be appropriate for

27   the Court to find that the asserted patents are invalid under the long-standing precedent that which

28

1    infringes if later anticipates if before.  *Vanmoor,* 201 F.3d at 1366 (confirming asserted patent was

2    invalid under the on-sale bar based on patentee's own allegations against prior art accused products).

3    **IV.    GOOGLE'S PROPOSAL FOR ADDRESSING AFFIRMATIVE DEFENSES AND INJUNCTIVE RELIEF**

4
5          Google respectfully submits that the issue arising from the addition of New Matter in 2019

6    is dispositive of the case (particularly in view of the jury's finding of non-infringement for the '966

7    patent), and thus further briefing on other issues may be mooted by the Court's ruling on this issue.

8          If further briefing is deemed to be necessary by the Court, as set forth in the parties'

9    [Proposed] Joint Final Pretrial Order, Google's remaining affirmative defenses include prosecution

10   history estoppel, equitable estoppel, waiver, implied license, and prosecution laches, and "Google's

11   estoppel, waiver, and implied license defenses are for the Court to decide."  Dkt. 615 at 3 (citing

12   *Oracle Am., Inc. v. Google Inc.*, No. C 10-03561 WHA, 2012 WL 1965778, at *1 (N.D. Cal. May

13   31, 2012)).  Accordingly, Google proposes that it be allowed to file a 30-page trial brief setting forth

14   the bases for the defenses, Sonos be provided a 30-page response, and Google be provided a 20-

15   page reply in advance of a hearing to be set at the convenience of the Court.  Alternatively, a hearing

16   may be unnecessary should the Court deem the briefing sufficient to rule on the affirmative defenses.

17         Google further proposes that the Court issue its judgment after it has ruled on the affirmative

18   defenses according to the proposed briefing and hearing.  Only after the Court rules on the impact

19   of the New Matter issue on the Court's grant of summary judgment of validity under § 112 and its

20   prior rejection of Google's argument of invalidity based on lack of written description, and further

21   rules on the affirmative defenses and the parties' subsequent renewed Rule 50(b) motions (as

22   needed), should the Court address the issue of injunctive relief.  In particular, while Google does

23   not believe any injunctive relief is warranted under the facts here (*e.g.*, the lengthy delay in

24   amending the patent specifications to add New Matter in 2019 and Sonos's reliance on its prior

25   license agreements that covered its entire patent portfolio consisting of over 1,000 patents including

26   the asserted patents), there is no reason to consider the issue of any injunctive relief until all other

27   defenses and issues of liability have been resolved—many of which could (and Google believes

28   likely would) moot the issue.

1    DATED:  May 30, 2023                QUINN EMANUEL URQUHART & SULLIVAN,
                                         LLP
2

3                                  By    */s/ Sean Pak*
                                         Sean Pak
4                                        Melissa Baily
                                         James Judah
5                                        Lindsay Cooper
                                         Marc Kaplan
6                                        Iman Lordgooei

7

8                                        *Attorneys for GOOGLE LLC*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>CERTIFICATE OF SERVICE</u>

2

The undersigned certifies that on May 30, 2023, all counsel of record who are deemed to

3 have consented to electronic service are being served with a copy of this document through the

4 Court's CM/ECF system.

5

6 DATED:  May 30, 2023

7
                                                         */s/ Sean Pak*
                                                      _____
8                                                        Sean Pak

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28