CLEMENT SETH ROBERTS (SBN 209203)
croberts@orrick.com
BAS DE BLANK (SBN 191487)
basdeblank@orrick.com
ALYSSA CARIDIS (SBN 260103)
acaridis@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:    +1 415 773 5700
Facsimile:    +1 415 773 5759

SEAN M. SULLIVAN (*pro hac vice*)
sullivan@ls3ip.com
MICHAEL P. BOYEA (*pro hac vice*)
boyea@ ls3ip.com
COLE B. RICHTER (*pro hac vice*)
richter@ls3ip.com
LEE SULLIVAN SHEA & SMITH LLP
656 W Randolph St., Floor 5W
Chicago, IL 60661
Telephone:    +1 312 754 0002
Facsimile:    +1 312 754 0003

*Attorneys for Sonos, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA,

SAN FRANCISCO DIVISION

| | |
|---|---|
| SONOS, INC., | Case No. 3:20-cv-06754-WHA |
| *Plaintiff and Counter-defendant*, | Consolidated with Case No. 3:21-cv-07559-WHA |
| v. | **SONOS, INC.'S RESPONSE TO THE COURT'S REQUESTS FOR FURTHER BRIEFING CONCERNING WRITTEN DESCRIPTION, INJUNCTIVE RELIEF, AND AFFIRMATIVE DEFENSES** |
| GOOGLE LLC, | |
| *Defendant and Counter-claimant*. | |
| | Judge:  Hon. William Alsup |
| | Courtroom:  12, 19th Floor |
| | Trial Date:  May 8, 2023 |

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................... i

TABLE OF AUTHORITIES ...................................................................... ii

INTRODUCTION ...................................................................................1

I.  COURSE OF ACTION FOR WRITTEN DESCRIPTION ...........................1

   A.  The Circumstances Do Not Warrant Reopening The Court's Ruling On Written Description Or Allowing Google To Raise New Arguments .................................................................................1

   B.  Google Was Obligated to Raise All Written Description Issues It Intended to Pursue ...................................................................5

   C.  The Rules Do Not Allow For Reopening Written Description At This Stage Without Reopening Fact And Expert Discovery ...............6

   D.  Reopening the Court's Written Description Would Require Significant Resources .............................................................8

II.  COURSE OF ACTION FOR INJUNCTIVE RELIEF, DAMAGES, AND AFFIRMATIVE DEFENSES.........................................................10

   A.  Injunction...........................................................................10

   B.  Ongoing Royalty Rate ..........................................................12

   C.  Supplemental Damages ........................................................14

   D.  Prejudgment and Post-Judgment Interest..................................15

   E.  Affirmative Defenses ...........................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ActiveVideo Networks, Inc.* v. *Verizon Commc'ns, Inc.*,
    694 F.3d 1312 (Fed. Cir. 2012)...................................................................................13

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
    No. 2:10-cv-248, 2011 WL 4899922 (E.D. Va. Oct. 14, 2011) ...............................14

*Affinity Labs of Tex. v. BMW N. Am., LLC*,
    783 F. Supp. 2d 891 (E.D. Tex. 2011)........................................................................13

*Agro Dutch Indus. Ltd. v. United States*,
    589 F.3d 1187 (Fed. Cir. 2009)......................................................................................8

*AMA Multimedia, LLC v. Wanat*,
    970 F.3d 1201 (9th Cir. 2020) .......................................................................................5

*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
    809 F.3d 633 (Fed. Cir. 2015)......................................................................................11

*Ariad Pharms., Inc. v. Eli Lilly & Co.*,
    598 F.3d 1336 (Fed. Cir. 2010)......................................................................................9

*Blanton v. Anzalone*,
    813 F.2d 1575 (9th Cir. 1987) .......................................................................................7

*Centrak, Inc. v. Sonitor Techs., Inc.*,
    915 F.3d 1360 (Fed. Cir. 2019).....................................................................................15

*Commonwealth Sci. & Indus. Rsch. Org. v. Buffalo Tech. (USA), Inc.*,
    542 F.3d 1363 (Fed. Cir. 2008)......................................................................................2

*DMF, Inc. v. AMP Plus, Inc.*,
    2-18-cv-07090, 2019 WL 1099982 (C.D. Cal. Mar. 7, 2019) .................................11

*Douglas Dynamics, LLC v. Buyers Prods. Co.*,
    717 F.3d 1336 (Fed. Cir. 2013).....................................................................................11

*eBay Inc. v. MercExchange, L.L.C.*,
    547 U.S. 388 (2006)......................................................................................................10

*Garamendi v. Henin*,
    683 F.3d 1069 (9th Cir. 2012) .......................................................................................8

*General Motors Corp., v. Devex Corp.*,
    461 U.S. 648 (1983)......................................................................................................15

*Greenlaw v. United States*,
    554 U.S. 237 (2008)..................................................................................................5

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,
    869 F.3d 1372 (Fed. Cir. 2017)...............................................................................15

*Maquet Cardiovascular LLC v. Abiomed, Inc.*,
    No. 17-12311, 2022 WL 4138711 (D. Mass. Sept. 12, 2022)....................................2

*Mikohn Gaming Corp. v. Acres Gaming, Inc.*,
    No. CV-S-97-1383- EJW, 2001 WL 34778689 (D. Nev, Aug. 2, 2001) ..............................14

*Nat'l Instruments Corp. v. The Mathworks, Inc.*,
    No. Civ. A. 2:01-cv-11-TJW, 2003 WL 24049230 (E.D. Tex. June 23, 2003).....................14

*Paice LLC v. Toyota Motor Corp.*,
    504 F.3d 1293 (Fed. Cir. 2007)...............................................................................13

*Paice LLC v. Toyota Motor Corp.*,
    609 F. Supp. 2d 620 (E.D. Tex. 2009).....................................................................13

*Plexxikon Inc. v. Novartis Pharm. Corp.*,
    2020 WL 247948 (N.D. Cal. 2020) ............................................................................5

*Reiffin v. Microsoft Corp.*,
    214 F.3d 1342 (Fed. Cir. 2000)..................................................................................2

*Richtek Tech. Corp. v. uPI Semiconductor Corp.*,
    No. C 09-05659 WHA, 2016 WL 4269095 (N.D. Cal. Aug. 15, 2016)..........................9

*Robert Bosch LLC v. Pylon Manuf. Corp.*,
    659 F.3d 1142 (Fed. Cir. 2011)................................................................................11

*Tattersalls, Ltd. v. Dehaven*,
    745 F.3d 1294 (9th Cir. 2014) ...................................................................................8

*United States v. Sineneng-Smith*,
    140 S. Ct. 1575 (2020)................................................................................................5

*XY, LLC v. Trans Ova Genetics*,
    890 F.3d 1282 (Fed. Cir. 2018)................................................................................13

**Statutes**

28 U.S.C. § 1961.........................................................................................................15

35 U.S.C. § 112 ¶ 1.......................................................................................................2

35 U.S.C. § 120..............................................................................................................2

35 U.S.C. § 283.............................................................................................................13

35 U.S.C. § 284 ................................................................................................................15

Civil L. R. 7-9 ..................................................................................................................5

**Other Authorities**

Fed. R. Civ. P. 50(b) ........................................................................................................13

Fed. R. Civ. P. 56 ......................................................................................................7, 8, 9

Fed. R. Civ. P. 56(f) ..........................................................................................................8

Fed. R. Civ. P. 56(f)(2) ......................................................................................................7

Fed. R. Civ. P. 56(f)(2)-(3) ................................................................................................8

Fed. R. Civ. P. 56(f)(3) ................................................................................................7, 9

Fed. R. Civ. P. 59 ............................................................................................................13

Fed. R. Civ. P. 60 ..............................................................................................................9

Fed. R. Civ. P. 60(a) ..................................................................................................9, 10

**INTRODUCTION**

Sonos submits this brief in response to the Court's request for the parties' proposed course of action concerning: (i) the question of written description for overlapping zone scenes and (ii) "hearing and ruling on injunctive relief and the affirmative defenses."  Dkts. 771, 775.

## I.   COURSE OF ACTION FOR WRITTEN DESCRIPTION

### A.   The Circumstances Do Not Warrant Reopening The Court's Ruling On Written Description Or Allowing Google To Raise New Arguments

Sonos respectfully maintains that the circumstances do not warrant (i) reopening the question of whether the '885 or '966 patents contain adequate written description for overlapping zone scenes or (ii) allowing Google to challenge the '885 or '966 priority date based on arguments that neither the provisional nor the first non-provisional applications in the priority chain provide adequate written description.  Dkt. 309 at 15.

In its May 5, 2022 submission during the patent showdown, Google cross-moved for summary judgment on the question of whether the '885 patent contains an adequate written description for overlapping zone scenes.  Dkt. 249.  The record demonstrates that, as of that date, Google had fully analyzed the publicly available file histories and priority chains of the '885 and '966 patents.  For example, as of the date that Google moved for summary judgment, the parties had litigated claim construction disputes implicating the disclosures in the provisional application, and Google had served invalidity contentions that repeatedly referred to alleged deficiencies in the "original disclosure" of the '885 and '966 patents.[1]  Thus, *at least as of May 5, 2022,* Google could have raised the issue of whether the provisional application, or Sonos' first non-provisional application, provided adequate written description for the inventions claimed in the '885 and '966 patents.

Because Google raised its written description challenge in response to Sonos's summary judgment motion, Sonos had to address that issue along with multiple other defenses raised by

---

[1] As one example, on June 1, 2021, Google submitted a responsive *Markman* brief and expert declaration in the Western District of Texas.  Case No. 3:21-cv-7559-WHA ("-7559 Case"), Dkts. 64, 64-12.  That expert declaration renders opinions concerning, *inter alia*, the '966 and '885 patents and states that Google's expert "considered the Asserted Patents, their file Histories . . ."  Dkt. 64-12, ¶ 5.

Google (infringement, written description of "standalone mode," and patentable subject matter) in a single, 15-page reply brief. In that filing, Sonos and its expert cited to at least five different aspects of the '885 patent as providing support for overlapping zone scenes, of which the "ALL the zones" sentence was identified as one example. Dkt. 274 at 9-11.

It was entirely proper for Sonos to rely on that "ALL the zones" sentence as providing written description. As an initial matter, Google's motion *only* challenged whether the '885 patent contained adequate written description. As a result, the question raised by the motion was whether *the specification of the patent* (which includes the relevant sentence) provides adequate written description. *See Reiffin v. Microsoft Corp.*, 214 F.3d 1342, 1346 (Fed. Cir. 2000) ("Although § 120 incorporates the requirements of § 112 ¶ 1, these requirements and the statutory mechanism allowing the benefit of an earlier filing date are separate provisions with distinct consequences. In accordance with § 120, claims to subject matter in a later-filed application not supported by an ancestor application in terms of § 112 ¶ 1 are not invalidated; they simply do not receive the benefit of the earlier application's filing date."). If Google had wanted (as part of its motion) to challenge the *priority date* of the '885 patent based on alleged deficiencies in the written description of earlier family members it could have done so, but it did not. *See* Dkt. 249. And because it did not, there was no reason for Sonos to delve into the prosecution history. Moreover, Sonos had added the relevant sentence to the '885 and '966 patents using the Patent Office's well-defined procedure for inserting previously incorporated material *directly* into the specification, and the Examiner both expressly noted the addition and accepted the amendment. *See* Dkt. 723 at 14-17. That decision is entitled to "an especially weighty presumption of correctness." *Maquet Cardiovascular LLC v. Abiomed, Inc.*, No. 17-12311, 2022 WL 4138711, *7 (D. Mass. Sept. 12, 2022) (*quoting Commonwealth Sci. & Indus. Rsch. Org. v. Buffalo Tech. (USA), Inc.*, 542 F.3d 1363, 1380 (Fed. Cir. 2008)).

On June 22, 2022 (after Sonos filed its reply brief but before the summary judgment hearing), the parties exchanged opening expert reports related to claim 1 of the '885 patent. In those reports Google's expert, Dr. Dan Schonfeld, acknowledged that the "ALL the zones" sentence had been added during prosecution of the '885 patent. The relevant excerpt of Dr.

Schonfeld's June 22, 2022 expert report is reproduced below:

> 37.    The Applicant responded on August 23, 2019 making amendments to the claims and specification, adding for example, a disclosure that "[t]he list of zones in the user interface 520 includes ALL the zones in the system, including the zones that are already grouped." Likewise, the Applicant amended the claims to (among other things) require a "standalone" mode where zone players are configured to play back media individually, that the standalone speaker "continues to operate in the standalone mode until" one of the "zone scenes has been selected for invocation" and that the standalone mode speaker "transitions" to play back media in synchrony.

This paragraph appears in a section of Dr. Schonfeld's report summarizing the prosecution history of the '885 patent. But Dr. Schonfeld never went on to offer any opinion that the amendment to the specification was improper, or that the addition had any impact on either the written description analysis (in general) or on any alleged interaction between written description and the priority date of the '885 or '966 patents.

After the hearing on the parties' summary judgment motions on July 13, 2022, the Court

This paragraph unequivocally proves that Google's expert and its counsel were fully aware of the amendment to the specification by no later than *June 22, 2022*—three weeks before the Court's July 13, 2022 hearing on Google's written description challenge. Yet, Google *never* questioned the legitimacy of the amendment during the hearing, and never argued that the amendment had any impact on the priority date in any brief filed before or after the hearing. *See, e.g.*, Dkt. 249; *see also* Dkt. 723 at 43-45. And there is a very good reason for this: just like the Examiner, Google did not believe that the amendment was improper or broke the priority chain.

After the hearing on the parties' summary judgment motions on July 13, 2022, the Court ruled that the '885 patent has written description support for overlapping zone scenes on July 21, 2022. Dkt. 309 at 14-15. While the Court did rely on the "ALL the zones" sentence as an example of the disclosure of overlapping zone scenes, it also cited to 2:56-59 and FIG. 5B as other support for its ruling. *Id*. And the Court's decision that the patent has adequate written description is fully supported by various other aspects of the '885 patent's disclosure. *See* Dkt. 274 at 9-11; Dkt. 723 at 24-32. Perhaps most notably, both the originally filed 2007

specification (the first non-provisional in the family) and the specification of the '885 and '966 patents include a statement that "a controlling device (also referred to herein as controller) is provided to facilitate a user to *select **any** of the players in the system to form respective **groups*** each of which is set up per a scene." *See* Dkt. 723 at 7, 26 (citing U.S. 11/853,790 at [0010]) (emphasis added).[2]  This statement provides a substantially similar disclosure to the "ALL the zones" sentence.  Thus, even if the Court were to reopen its prior rulings or allow Google to mount a priority date defense based on written description it would not change the outcome of the case, because *at most* the priority date would be moved from 2006 to 2007 and Google's accused products would not be prior art.

The correctness of the Court's ruling that the '885 patent has written description for overlapping zone scenes is further confirmed by the fact that, despite being fully aware that the "ALL the zones" sentence cited in the Court's ruling was added by amendment during prosecution of the '885 and '966 patents, Google ***never*** filed a motion for reconsideration or otherwise asked the Court to revisit its written description ruling.  And of course, Google did not seek leave to file a sur-reply while that motion for summary judgment was still pending.  Instead, Google dropped its written description defenses for both the '885 and '966 patents and sought reconsideration of the Court's ruling that claim 1 of the '885 patent was valid under theories of anticipation or obviousness.  Dkt. 397.  Put differently, Google doubled down on *some* of its theories, but it chose to affirmatively move on from its written description arguments.

For at least these reasons, Sonos respectfully maintains that the circumstances do not warrant reopening the Court's prior ruling that the '885 patent (and by implication the '966 patent) has written description for overlapping zone scenes, or allowing Google to (belatedly) transmute its written description challenge into a priority-date challenge.  Dkt. 309 at 15.

---

[2] During trial, the parties' experts provided testimony that further supports the conclusion that other disclosure in the '885 and '966 patents provides written description support for overlapping zone scenes.  For instance, Dr. Almeroth testified that the cited statement from the originally filed 2007 specification provides disclosure for overlapping zone scenes.  Trial Tr. at 681:12-20, 1655:3-12.

1

2

**B.     Google Was Obligated to Raise All Written Description Issues It Intended to Pursue**

It was Google's obligation to raise all arguments in support of its written description challenge at the time it went forward with the challenge.  Google was the party who moved on the issue of whether the '885 patent had adequate written description, and it was Google's burden to prove the lack of written description by clear and convincing evidence.  *See* 35 U.S.C. § 282(a).  If the addition of the "ALL the zones" sentence were relevant to whether (or when) the '885 or '966 patent had adequate written description, then, under the party-presentation rule, Google needed to raise that fact in connection with its challenge.

The party-presentation rule dictates that Courts must "rely on the parties to frame the issues for decision," because courts occupy "the role of neutral arbiter of matters the parties present."  *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) (quoting *Greenlaw v. United States*, 554 U.S. 237, 243 (2008)).  Indeed, our adversarial system rests on "the premise that parties represented by competent counsel know what is best for them, and are responsible for advancing *the facts* and argument entitling them to relief."  *Id.* (emphasis added and internal quotations omitted).  The Court was entitled to rely on Google's presentation of its written description challenge.  Dkts. 249, 309.  In that challenge, Google failed to raise any issue regarding the amendment of the specification to include the previously incorporated "ALL the zones" sentence.  Accordingly, under the party-presentation rule, the Court was entitled to decide the issue on the facts as Google presented them.  Dkt. 309.  The Court ought not to cure Google's failure at this stage of the case.  *See AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1215 (9th Cir. 2020) (declining, under the party-presentation rule, to consider an argument that a party failed to raise until it filed a supplemental brief at the court's request).

Indeed, at this point, Google's challenge is either a motion for reconsideration (which Google has not requested, much less demonstrated that it is entitled to under Civil L.R. 7-9) or it is a request for another summary judgement motion on an issue that it did not timely raise or seek to preserve.  *See Plexxikon Inc. v. Novartis Pharm. Corp.*, 2020 WL 247948, *1-*3 (N.D. Cal. 2020) (denying party from filing a second motion for summary judgment explaining "[t]he

SONOS'S RESPONSE TO THE COURT'S
REQUEST FOR FURTHER BRIEFING
CASE NO. 3:20-CV-06754-WHA

Court's standing order limits each party to filing one motion for summary judgment and requires a party seeking to exceed that limit to show 'good cause,'" and noting that "Novartis provides no explanation for why it could not have [made its desired argument] in its first motion for summary judgment.").

### C.   The Rules Do Not Allow For Reopening Written Description At This Stage Without Reopening Fact And Expert Discovery

Rule 56 does not permit the Court to reopen written description now, after fact and expert discovery have long closed, to consider on summary judgment new factual issues not previously raised.  If the Court were to entertain this request under Rule 56, Sonos must be given a fair opportunity to respond, which would require reopening fact and expert discovery.

Google may argue that Rule 56(f)(2) permits the Court to grant a summary judgment motion "on grounds not raised by a party," or that Rule 56(f)(3) permits the Court to "consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute."  Fed. R. Civ. P. 56(f)(2)-(3).  Thus, Google may argue, the Court should use Rule 56 to grant a summary judgment motion that the '885 and '966 patents lack written description support, or that they are not entitled to their priority dates, because of the addition of the "ALL the zones" sentence.

Rule 56(f) permits the Court to do this only "[a]fter giving notice and a reasonable time to respond."  *Id.*  Because of the late stage of the case, with fact and expert discovery having long since closed, Sonos has not had sufficient notice or a reasonable time to respond to this challenge.  Indeed, Google *still* has not yet laid out clear factual and legal arguments as to why the addition of the "ALL the zones" sentence either (i) cannot be considered in evaluating written description of the '885 and '966 patents or (ii) constitutes the addition of new matter that would break the priority chain.  There is, for example, *no argument* to this effect in Google's discovery responses, expert reports, or expert depositions.

That burden is borne by Google, not Sonos, because patents are presumed valid.  Even if Google were permitted to lay out its factual and legal arguments at this late stage, Sonos must be given an opportunity to respond and to test those allegations through discovery.  Additionally,

SONOS'S RESPONSE TO THE COURT'S
REQUEST FOR FURTHER BRIEFING
CASE NO. 3:20-CV-06754-WHA

1  Sonos has not had an opportunity to develop expert testimony in support of either (i) the

2  procedural propriety of adding the previously incorporated "ALL the zones" sentence by

3  amendment or (ii) the contention that the amendment did not constitute "new matter."  Sonos has

4  also not had an opportunity to depose or cross-examine Google's expert concerning any opinions

5  Google intends to offer on these positions or even to know what other positions or arguments

6  their expert might choose to present in briefing on the issue.  For these reasons, neither the

7  "notice" nor the "reasonable time to respond" requirements of Rule 56(f) have been satisfied.  As

8  discussed below, to the extent the Court were to find that Google can litigate this issue at this late

9  juncture, it would (in fairness and under Rule 56) need to reopen both written and expert

10  discovery.

11      Entry of summary judgment in favor of Google under Rule 56(f)(3) at this stage would

12  also be improper because there are numerous material facts in dispute.  Namely, Sonos contends

13  at least the following facts preclude summary judgment in favor of Google (and it is not

14  presently clear which, if any, of these facts Google even disputes): (i) the Patent Office was

15  correct in permitting the addition of the previously incorporated "ALL the zones" sentence

16  during prosecution, (ii) the "ALL the zones" sentence was not new matter, (iii) the addition of

17  the "ALL the zones" sentence was supported by the provisional application, (iv) the entire

18  provisional application, including its appendices, was properly incorporated by reference into the

19  non-provisional applications, and (v) the provisional and non-provisional applications provide

20  written description support for the overlapping zone scenes concept that is independent of the

21  "ALL the zones" sentence.  For at least these reasons, entry of summary judgment in favor of

22  Google under Rule 56(f)(3) at this stage would not be proper.

23      Rule 60 is also not a proper vehicle for reopening written description or considering new

24  arguments about how written description impacts the patents' priority date.  Rule 60(a) allows a

25  court, "on motion or on its own," to "correct a clerical mistake or a mistake arising from

26  oversight or omission whenever one is found in a judgment, order, or other part of the record."

27  Determining whether a mistake falls within Rule 60(a)'s purview requires "focus[ing] on what

28  the court *originally intended* to do."  *Blanton v. Anzalone*, 813 F.2d 1575, 1577 (9th Cir. 1987).

SONOS'S RESPONSE TO THE COURT'S
REQUEST FOR FURTHER BRIEFING
CASE NO. 3:20-CV-06754-WHA

For a correction to be proper under Rule 60(a), it must maintain "fidelity to the intent behind the original judgment." *Garamendi v. Henin*, 683 F.3d 1069, 1078 (9th Cir. 2012).  Thus, "the basic distinction between 'clerical mistakes' and mistakes that cannot be corrected pursuant to Rule 60(a) is that the former consist of 'blunders in execution' whereas the latter consist of instances where the court *changes its mind*." *Tattersalls, Ltd. v. Dehaven*, 745 F.3d 1294, 1297 (9th Cir. 2014) (quoting *Blanton*, 813 F.2d at 1577).

Here, the Court granted summary judgment to Sonos that the '885 patent's specification provides support for the claims.  Dkt. 309 at 17.  Revisiting that order now to consider new evidence—that Google ***chose*** not to present to the Court before—and potentially reach a different or new result would "deviate from the original intent of the [C]ourt" and be improper under Rule 60(a).  *Garamendi*, 683 F.3d at 1079; *see also Agro Dutch Indus. Ltd. v. United States*, 589 F.3d 1187, 1192 (Fed. Cir. 2009) (explaining that a trial court's discretion "encompasses the correction of errors needed to comport the order with the *original understandings* and intent of the court and the parties" (emphasis added)).  Considering new evidence is wholly unlike, for example, amending an order "to correct a failure to memorialize part of [the court's] decision" or to "permit enforcement" of the order.  *Id.*  Rule 60(a) does not permit the Court to revisit and amend an order "because it has reached a different conclusion" in hindsight.  *Tattersalls*, 745 F.3d at 1299.  Put differently, Rule 60(a) "does not allow a court to make corrections that, under the guise of mere clarification, reflect a new and subsequent intent because it perceives its original judgment to be incorrect." *Garamendi*, 683 F.3d at 1080 (internal quotations omitted).

### D. Reopening the Court's Written Description Would Require Significant Resources

Reopening the Court's written description ruling at this late stage of the case would require significant resources.  *Cf.* Dkt. 36 at 5 ("This action and the accompanying international campaign are emblematic of the worst aspects of patent litigation. … The resources invested into this dispute already are doubtless enormous.  By the end, our parties' legal bills will likely have been able to build dozens of schools, pay all the teachers, and provide hot lunches to the

1    children.").

2          For instance, as a starting point, Sonos would need to serve new written discovery (or

3    have Google supplement its existing discovery) in order to understand the basis for Google's

4    new (and untimely) priority date challenge.  Neither Google's discovery responses nor Google's

5    invalidity contentions provided any indication or notice that Google intended to argue that the

6    accused products were prior art or that the addition of the "ALL the zones" sentence broke the

7    patent's priority chain, which Sonos contends operates as a complete waiver of these arguments.

8    Leaving aside the fact that the whole purpose of the local rules is to require parties to crystalize

9    their theories at the start of the case[3] (to avoid exactly the situation we have here) and assuming

10   *arguendo* that the Court has decided to allow Google to pursue this theory after the verdict, it

11   should allow Sonos the opportunity to take the factual discovery that Sonos would have taken if

12   the issue were raised in a timely way.

13         At a minimum, the parties would need to engage experts to formulate opinions and

14   submit reports on (i) the procedural propriety of adding the previously incorporated "ALL the

15   zones" sentence by amendment, (ii) the contention that the amendment did not constitute "new

16   matter," and (iii) the factual question of whether the disclosure of the '885 and '966 patents

17   provides adequate written description support for overlapping zone scenes independent of the

18   "ALL the zones" sentence.  And given that the written description is a question of fact, *Ariad*

19   *Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010), a second jury trial may

20   also be required.

21         Again, Sonos maintains that devoting further resources to this issue is neither fair nor

22   (given the disclosures in the 2007 specification) could it change the outcome.  But if the Court is

23   determined to allow Google to reopen written description or recast those arguments as a priority

24   date challenge over Sonos's objection, Sonos requests that the Court permit Sonos a full and fair

25   opportunity to conduct fact and expert discovery on the issue and to have any factual issues

26
27   _____

[3] *See, e.g.*, *Richtek Tech. Corp. v. uPI Semiconductor Corp.*, No. C 09-05659 WHA, 2016 WL
     4269095, at *1 (N.D. Cal. Aug. 15, 2016) ("The rules are designed to require parties to
     crystallize their theories of the case early in the litigation and to adhere to those theories once
28   they have been disclosed." (citation omitted)).

Google intends to advance be decided via jury trial.  Specifically, in such event, Sonos proposes the following schedule:

- Sonos serves additional interrogatories directed to this issue no later than June 9;
- Google serves responses to these additional interrogatories, supplemental responses to existing Sonos interrogatory No. 19, and supplemental invalidity disclosures no later than July 10, to the same level of detail required by the local rules.
- Sonos be given six weeks to serve subpoenas or conduct fact discovery ending no later than August 21.
- Google serves an opening expert report concerning written description on September 8, 2023.
- Sonos serves a rebuttal expert report on October 6, 2023.
- Expert depositions be completed by October 31, 2023.
- A jury trial to commence on January 29, 2024.

Sonos acknowledges that this schedule provides about three months' time between now and the start of expert discovery, but this time is necessary due to the fact that Sonos may need to take factual discovery (*e.g.* to show that the PTO did, in fact, publish Sonos's provisional application at the time it issued the first non-provisional) and the fact that, between now and then, Sonos and Google have *two* ITC trials (one in June 2023 and one in July 2023) against one another in cases that Google has brought against Sonos alleging that Sonos infringes Google's patents.

## II.   COURSE OF ACTION FOR INJUNCTIVE RELIEF, DAMAGES, AND AFFIRMATIVE DEFENSES

Sonos respectfully requests the opportunity to brief the issues related to an injunction and ongoing damages in this case.  Sonos proposes that Google produce updated damages information by June 5, 2023, that Sonos file an opening brief of no more than 20 pages on June 16, 2023, that Google files an opposition brief of no more than 25 pages on June 30, 2023, and that Sonos files a reply brief of no more than 5 pages on July 7, 2023.  This briefing would be separate from any briefing in support of motions under Rule 50(b) or Rule 59.

### A.   Injunction

Sonos will to submit briefing in support of a motion for a permanent injunction against Google pursuant to 35 U.S.C. § 283.  *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388,

SONOS'S RESPONSE TO THE COURT'S
REQUEST FOR FURTHER BRIEFING
CASE NO. 3:20-CV-06754-WHA

391 (2006); *Robert Bosch LLC v. Pylon Manuf. Corp.*, 659 F.3d 1142, 1149 (Fed. Cir. 2011).

The evidence in this case supports the grant of an injunction.  Indeed, courts have granted

injunctions where, like here, there is (i) direct competition between the plaintiff and the

defendant and (ii) a potential ecosystem effect (*i.e.*, where one company's customers will

continue to buy that company's products and recommend them to others).  *See, e.g., Apple Inc.

v. Samsung Elecs. Co., Ltd.*, 809 F.3d 633, 640-641 (Fed. Cir. 2015); *Douglas Dynamics, LLC

v. Buyers Prods. Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013); *DMF, Inc. v. AMP Plus, Inc.*, 2-18-

cv-07090, 2019 WL 1099982, at *12 (C.D. Cal. Mar. 7, 2019).

   As part of this injunction briefing, Sonos also intends to ask the Court to enjoin Google

from encouraging or inducing any *indirect* infringement going forward.  Sonos briefly explains

why it believes it should be permitted to do so notwithstanding the Court's previous rulings.

   Throughout this litigation, Sonos has contended that the filing of an infringement

complaint can be used to establish notice and knowledge of infringement for purposes of both

willful and indirect infringement.  The Court has ruled against Sonos on this point.  *See, e.g.*, -

7559 Case, Dkt. 156, 210.  Sonos is *not* seeking to relitigate those issues.  But there is a

difference between saying that (i) the Complaint cannot be used to *provide* notice and (ii) that if

a Complaint is served without prior notice a defendant can never *thereafter* obtain notice or

knowledge of infringement.

   At the pleadings stage, the Court issued two rulings holding that "knowledge (required

for both willful and indirect infringement) cannot be **established by** the filing of the complaint

itself." -7559 Case, Dkt. 210 at 1-2; *id.* Dkt. 156 (emphasis added).  The Court explained that

this rule encouraged patentees to send "a cease-and-desist letter in these circumstances," which

"explains why the accused product infringes and gives the infringer a fair chance to cease or to

obtain a license." Dkt. 210 at 2.  But (i) this holding is not a ruling that a defendant can never

*gain* knowledge after a complaint is served and (ii) the policy reasons cited by the Court have

much less force *after a jury verdict of validity and infringement*.  At a minimum, that the case

went all the way through to a jury verdict shows that the parties likely would *not* have settled

their dispute through the exercise of pre-suit letter writing.  But more importantly, the latter rule

SONOS'S RESPONSE TO THE COURT'S
REQUEST FOR FURTHER BRIEFING
CASE NO. 3:20-CV-06754-WHA

would mean that *if* a party does not send a letter prior to filing a complaint, the defendant would (thereafter) be perpetually entitled to induce or contribute to infringement – because he or she could *never* obtain the knowledge necessary to establish indirect infringement.

Sonos contends that such a rule makes no sense.  At a minimum, once a party (like Google here) has been *found* to infringe by a jury, the jury verdict itself can be used to establish notice of and knowledge of infringement sufficient to enjoin the party from continuing to indirectly infringe.  Sonos acknowledges that the Court (implicitly) ruled against Sonos on the related question of whether the showdown summary judgment order provided adequate notice of infringement for *post*-suit willful and indirect infringement.  *See* Dkt. 566 at 30-31.  But the two situations are distinguishable.

After the showdown summary judgment order, Google hung its non-infringement arguments on its "redesign" and on the alleged invalidity of the '885 patent.  So, at that point, Google still had *arguments* about whether it had the requisite knowledge and intent to infringe. But on May 26, 2023, the jury said that Sonos was right, and that ***all*** of Google's arguments about the '885 patent were wrong.  Put differently, by considering and rejecting *all* of Google's remaining arguments, the jury *told* Google that it is infringing and took away any fig leaves Google might otherwise have had up to that point.  Google should not be allowed to *ignore* the jury's verdict – or to contest that it *knows* it is infringing a valid patent at least as of the date the jury told it that it was*.*  Again, even if the original complaint cannot be used to *show* knowledge of infringement, there is no reason to treat the complaint as somehow *counteracting* or removing the knowledge that Google gained from an adverse jury verdict.  Sonos therefore intends to ask the Court to enjoin Google from both direct and indirect infringement of the '885 patent.

**B.     Ongoing Royalty Rate**

Sonos will also submit briefing in support of an ongoing royalty rate in the event the Court does not grant an injunction.  The Federal Circuit has held that, "[u]nder some circumstances, awarding an ongoing royalty for patent infringement in lieu of an injunction

SONOS'S RESPONSE TO THE COURT'S
REQUEST FOR FURTHER BRIEFING
CASE NO. 3:20-CV-06754-WHA

may be appropriate." *Paice LLC v. Toyota Motor Corp.,* 504 F.3d 1293, 1314 (Fed. Cir. 2007); *see also ActiveVideo Networks, Inc.* v. *Verizon Commc'ns, Inc.,* 694 F.3d 1312, 1342-43 (Fed. Cir. 2012). "District courts have considerable discretion in crafting equitable remedies," including ongoing royalties. *Paice*, 504 F.3d at 1316 (Rader, J., concurring); *see also ActiveVideo,* 694 F.3d at 1343 ("We leave the procedural aspects of how to proceed on the issue of prospective damages to the discretion of the district court.").

"[T]he trial testimony and jury findings with respect to past damages can provide a basis for calculating a market royalty for any ongoing infringement." *Affinity Labs of Tex. v. BMW N. Am., LLC,* 783 F. Supp. 2d 891, 898 (E.D. Tex. 2011). However, "pre-suit and post-judgment acts of infringement are distinct, and may warrant different royalty rates given the change in the parties' legal relationship and other factors." *Paice,* 504 F.3d at 1317 (Rader, J., concurring). For example, "[f]ollowing a jury verdict and entry of judgment of infringement and no invalidity, a defendant's continued infringement will be willful absent very unusual circumstances." *Affinity Labs,* 783 F. Supp. 2d at 899; *Paice LLC v. Toyota Motor Corp.,* 609 F. Supp. 2d 620, 626 (E.D. Tex. 2009) ("Injunction or no injunction, pre-suit and post-judgment licensing negotiations are necessarily different due at least to the change in legal status of the parties. Once judgment is entered, ongoing infringement by the adjudged infringer is willful . . . .").

And, as the Federal Circuit has repeatedly held, "there is a 'fundamental difference' between 'a reasonable royalty for pre-verdict infringement and damages for post-verdict infringement.'" *XY, LLC v. Trans Ova Genetics*, 890 F.3d 1282, 1297 (Fed. Cir. 2018). Thus, "when calculating an ongoing royalty rate, the district court should consider the 'change in the parties' bargaining positions, and the resulting change in economic circumstances, resulting from the determination of liability." *Id.*

And for the same reason that Sonos intends to ask the Court to enjoin Google from indirectly infringing after May 26, 2023, Sonos intends to ask the Court to order Google to pay royalties for acts of indirect infringement committed after May 26, 2023.

### C.     Supplemental Damages

Sonos will also seek supplemental damages for infringement occurring after Google's last production of sales data and up until the time that the Court rules on Sonos's request for a permanent injunction or ongoing royalty (or until Google removes the infringing feature).

The parties' damages experts performed damages calculations based on sales of Google's infringing audio players from November 2020 through September 30, 2022—upon which the jury relied in finding 14 million units sold—as those were the only periods for which Google had produced sales data.  It is "standard practice" in patent infringement actions for courts to order an accounting for infringement not included in the jury's verdict.  *See, e.g., ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.,* No. 2:10-cv-248, 2011 WL 4899922, at *2, *4 (E.D. Va. Oct. 14, 2011) (awarding supplemental damages of pre-verdict infringing sales not covered by the jury verdict); *Mikohn Gaming Corp. v. Acres Gaming, Inc.,* No. CV-S-97-1383- EJW, 2001 WL 34778689, at *18 (D. Nev, Aug. 2, 2001) (referring to accounting as "standard practice" and awarding supplemental damages that include pre-verdict infringing sales not contained in the expert reports or presented to the jury).

In order to calculate these supplemental damages Google must provide data for its infringing audio players from October 1, 2022 to the present, which has not yet been disclosed to Sonos.  To determine supplemental damages, the Court can apply the $2.30 per unit royalty rate provided in the jury's verdict to this data, and add that amount to the jury's damages award.  *See, e.g., Nat'l Instruments Corp. v. The Mathworks, Inc.,* No. Civ. A. 2:01-cv-11-TJW, 2003 WL 24049230, at *4 (E.D. Tex. June 23, 2003).

Based on the jury's verdict that Google's alleged redesign failed to avoid infringement and evidence presented at trial that Google's "redesigned" software was pushed to all Google speakers that currently receive updates, Dkt. 755-2 at ECF p. 56, Sonos also intends to request supplemental damages for Google's direct infringement in the form of *making* infringement devices by pushing the infringing software update to accused speakers.  To be clear, this is not

SONOS'S RESPONSE TO THE COURT'S
REQUEST FOR FURTHER BRIEFING
CASE NO. 3:20-CV-06754-WHA

an argument about indirect infringement[4] and there would be **no** double counting.  For example, assume (just for ease of illustration) that 20 million Google speakers received the infringing software update – *i.e.* that Google *made* 20 million infringing devices by sending that update out to its users.  The jury's damages calculation already accounts for 14 million speakers that were *sold* during the damages period, so those would not be part of supplemental damages and would be subtracted out in the calculation Sonos presents to the Court.  But then there would be, in this example, 6 million speakers that were *sold* prior to the damages period but *made* within the damages period in December 2022 when they received the infringing software update, then Sonos is entitled to supplemental damages for those acts of direct infringement as well.[5]

### D.   Prejudgment and Post-Judgment Interest

Sonos would also like to address prejudgment and post-judgment interest in its briefing.  Under 35 U.S.C. § 284, Sonos is entitled to prejudgment interest on the damages awarded for Google's patent infringement.  *General Motors Corp., v. Devex Corp.,* 461 U.S. 648, 654 (1983).  Under 28 U.S.C. § 1961, Sonos is also entitled to post-judgment interest on the damages awarded for Google's patent infringement.

### E.   Affirmative Defenses

Sonos is not aware of any remaining viable affirmative defenses requiring the Court's attention.  Indeed, the pretrial order stated that "each side shall have 14 hours to present *all* of the issues to be tried in this case.  No additional time will be allotted to affirmative defenses."  Dkt. 660 at 8.  Sonos is not aware of the record viably supporting any *additional* defenses; the Court ought not to grant Google additional time to argue or try additional affirmative defenses.

---

[4] If the Court agrees with Sonos that Google can obtain knowledge sufficient to support indirect infringement from the Jury verdict, Sonos may ask for supplemental post-verdict damages for indirect infringement as well.

[5] Installing new software on existing hardware is an infringing act.  "[A]s long as a defendant adds the final limitations to complete a claimed combination, the defendant infringes."  *Centrak, Inc. v. Sonitor Techs., Inc.*, 915 F.3d 1360, 1372 (Fed. Cir. 2019) (Defendant's configuration of software on existing hardware may constitute "making" an infringing system); *see also Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372 (Fed. Cir. 2017) (Defendant infringes claims for two-part seal used on recreational vehicle by installing the seal on existing RV).

SONOS'S RESPONSE TO THE COURT'S
REQUEST FOR FURTHER BRIEFING
CASE NO. 3:20-CV-06754-WHA

Dated:  May 30, 2023

ORRICK HERRINGTON & SUTCLIFFE LLP
*and*
LEE SULLIVAN SHEA & SMITH LLP

By: */s/ Clement Seth Roberts*
    Clement Seth Roberts

*Attorneys for Sonos, Inc.*

SONOS'S RESPONSE TO THE COURT'S
REQUEST FOR FURTHER BRIEFING
CASE NO. 3:20-CV-06754-WHA