QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Sean Pak (Bar No. 219032)
  seanpak@quinnemanuel.com
  Melissa Baily (Bar No. 237649)
  melissabaily@quinnemanuel.com
  James Judah (Bar No. 257112)
  jamesjudah@quinnemanuel.com
  Lindsay Cooper (Bar No. 287125)
  lindsaycooper@quinnemanuel.com
  Iman Lordgooei (Bar No. 251320)
  imanlordgooei@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

  Marc Kaplan (*pro hac vice*)
  marckaplan@quinnemanuel.com
191 N. Wacker Drive, Ste 2700
Chicago, Illinois 60606
Telephone:      (312) 705-7400
Facsimile:      (312) 705-7401

*Attorneys for GOOGLE LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SONOS, INC.,<br><br>                Plaintiff and Counter-Defendant,<br><br>        vs.<br><br>GOOGLE LLC,<br><br>                Defendant and Counter-Claimant. | Case No. 3:20-cv-06754-WHA<br>Consolidated with Case No. 3:21-cv-07559-WHA<br><br>**GOOGLE LLC'S RESPONSE TO SONOS'S RESPONSE TO THE COURT'S REQUESTS FOR FURTHER BRIEFING CONCERNING WRITTEN DESCRIPTION, INJUNCTIVE RELIEF, AND AFFIRMATIVE DEFENSES**<br><br>Location: Courtroom 12, 19th Floor<br>Judge:     Hon. William Alsup |

Google hereby submits its response to Sonos's brief on its "proposed course of action concerning: (i) the question of written description for overlapping zone scenes and (ii) 'hearing and ruling on injunctive relief and the affirmative defenses.'"  Dkt. 786 (quoting Dkts. 771, 775).

## I.   COURSE OF ACTION FOR WRITTEN DESCRIPTION AND RELATED ISSUES

### A.   *The Circumstances Warrant Reopening The Court's Written Description Ruling*

As explained in Google's submission, it was not until Sonos filed its reply brief during the patent showdown proceedings that Google became aware of Sonos's reliance on the "ALL the zones" sentence pulled from its provisional patent application (the "New Matter") as purportedly providing the key written description support for overlapping zone scenes. Dkt. 785 at 1-3.  Indeed, Google had specifically asked Sonos in an interrogatory to identify any portions of its provisional application that "provide[d] support and/or written description" for the asserted claims, yet Sonos *never* identified the New Matter copied from its provisional application into the specifications of the asserted patents by amendment in August 2019.  *Id*. at 2.  And it was not until Mr. Lambourne's trial testimony and the Court's request that the parties investigate the written description issues more closely that Google uncovered and recognized the significance of the irregularities in the prosecution history of the asserted patents—specifically, that the New Matter had been added to the specifications of the asserted patents based on a section of the provisional patent application that disclosed zone grouping and *not* zone scenes.  *Id*. at 3-5.  Thus, even if Google could have raised these issues earlier, that is no bar to reconsideration now by the Court because it was *Sonos's* repeated misrepresentation and failure to present complete facts regarding its alleged written description support that delayed the discovery of the underlying issue and its import.  *Id*.

Contrary to Sonos's briefing, it was *not* "entirely proper" for Sonos to rely on the "ALL the zones" sentence as providing written description because that sentence was new matter improperly added to the asserted patents by amendment, which Sonos's trial counsel at LS3 (the firm that prosecuted these patents and others in the same family) knew, or should have known, yet failed to disclose.  An applicant *may not add new matter* to an application and retain its original priority date.  *See, e.g.*, *TurboCare Div. of Demag Delaval Turbomachinery Corp. v. GE*, 264 F.3d 1111, 1118 (Fed. Cir. 2001) ("When the applicant adds a claim or otherwise amends his specification after

the original filing date, as [patentee] did in this case, the new claims or other added material must find support in the original specification."); *Schering Corp. v. Amgen Inc.*, 222 F.3d 1347, 1352 (Fed. Cir. 2000) ("The fundamental inquiry is whether the material added by amendment was inherently contained in the original application."); *Litton Sys., Inc. v. Whirlpool Corp.*, 728 F.2d 1423, 1437-38 (Fed. Cir. 1984).  In *TurboCare*, for example, the Federal Circuit found the patentee's original specification did not clearly or necessarily disclose the embodiment at issue and, thus, later-added claims directed to such an embodiment were invalid.  264 F.3d at 1119-20 (explaining such an embodiment "may have been obvious from [patentee's] vague [disclosures]" but "***that is not enough*** to satisfy the written description requirement") (all emphases added).  Indeed, the Federal Circuit upheld the district court's finding that the claim was invalid because the patent had not been filed as a continuation-in-part ("CIP") and, as such, the patentee could not rely on any alternative filing date for the invalidated claim.  *Id*. at 1120.  Similarly, in *Litton*, the Federal Circuit noted "any new matter must be added to a C-I-P application ***prior to filing***, and ***not*** through amendment" and, thus, a patentee adding "***new matter*** to a [] continuation application" would "mak[e] that application ***invalid*** under § 112."  728 F.2d at 1437-38 (citing MPEP § 608.04(b)).

Maquet Cardiovascular LLC v. Abiomed, Inc.*, No. CV 17-12311-FDS, 2022 WL 4138711 (D. Mass. Sept. 12, 2022), cited by Sonos, is inapposite.  The patent at issue there incorporated an earlier, abandoned application by reference but was later amended to "physically incorporat[e] the [earlier] application into the specification rather than incorporating it by reference."  *Id*. at *3, *7. The defendant argued that the incorporation of an unpublished, abandoned application by reference was insufficient to maintain the priority chain.  The court gave "an especially weighty presumption of correctness" to the fact that the PTO had accepted incorporation by reference of the abandoned application as sufficient for maintaining priority; the court also found that physical duplication of ***the entirety*** of an application previously incorporated by reference did not add new matter.  *Id*. at *7.  Critically, the court gave the PTO the "presumption of correctness" only by "[a]ssuming that the examiner was not misled."  *Id*.  By contrast, here, Sonos did not duplicate the entirety of its provisional patent Appendix A into the specifications of the asserted patents.  Rather, it misleadingly plucked its New Matter sentence relating to dynamic zone grouping and dropped it into a portion of

1   the specifications describing zone scenes, thereby deviating materially from the provisional

2   application.  Sonos's amendment thus introduced new matter, and no presumption of correctness

3   applies.  It is also highly likely that the examiner was misled by Sonos's amendment.[1]

4          Sonos next argues that *another* portion of the first non-provisional application provided

5   support for overlapping zone scenes.  Dkt. 786 at 3-4.  Yet Sonos ***did not identify*** that passage in its

6   summary judgment briefing or its discovery responses on written description support in the non-

7   provisional applications—for good reason, because the cited passage actually proves Google's

8   point.  The statement in the non-provisional application that "a controlling device (also referred to

9   herein as controller) is provided to facilitate a user to select any of the players in the system to form

10  ***<u>respective</u> groups <u>each</u> of which is set up <u>per a scene</u>***" teaches the opposite of overlapping zone

11  scenes.  It explains that any of the zone players can be chosen to join a "respective group" (*i.e.*, a

12  separate group) and that ***each*** such group may

13  be set up as part of ***a particular scene***, not

14  multiple overlapping zone scenes as claimed

15  in the asserted patents. For example, annotated

16  Fig. 3B (to the right) shows that certain players

17  have been grouped into two respective groups

18  (Group 1 and Group 2) and that each group is

19  set up as part of the same "Evening Scene" as

20  described at col. 9, lines 1-15 of the '885 Patent.



**FIG. 3B**

21         In no way does this disclosure teach those of ordinary skill in the art that any of the players

22  may be joined to ***multiple*** zone scenes let alone multiple ***overlapping*** scenes.  *See* Dkt. 729 at 3-4

23  ―――――――――――――――――

24  [1] Dr. Schonfeld's recitation of the prosecution history in his expert report does not suggest that
    Google was aware of Sonos's prosecution irregularities before trial.  Dkt. 786 at 2-3.  Dr. Schonfeld

25  merely noted that an amendment to the specification had added the "ALL the zones" sentence.  *Id.*
    The simple fact that there was an amendment is not the basis for Google's request for

26  reconsideration.  Rather, Google's request is based on recent discovery that the sentence was pulled
    from a portion of the provisional application relating to dynamic zone grouping, which the

27  inventor's trial testimony made clear is ***not*** zone scenes, as well as other irregularities in the
    provisional application (*i.e.*, that key information regarding "party mode" in the Sonos 2005 prior

28  art system had been scrubbed from the appendices).  Dkt. 785 at 3-6.

(explaining why this statement discloses ***non-overlapping*** zone scenes); *id*. at 3-9 (explaining other disclosures in the same application also teach non-overlapping zone scenes). And the fact that this statement was made in the context of "the present invention" means that, prior to 2019, Sonos itself did ***not*** consider the alleged invention to include overlapping zone scenes. *See, e.g.*, *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1308 (Fed. Cir. 2007) (holding that statements in specification concerning "the" invention limited the scope of the claims). Because the New Matter sentence was not added to the nonprovisional application (which itself requires an inference as conceded by Sonos's counsel in response to the Court's questioning during trial), Sonos again tries to ***infer*** a disclosure of overlapping zone scenes where there is none. This type of inference is inadequate as a matter of law. *See, e.g.*, *Crown Operations Int'l., Ltd. v. Solutia Inc.*, 289 F.3d 1367, 1380 (Fed. Cir. 2002) (explaining "the novel aspects of the invention must be disclosed and not left to inference, that is, a patentee may not rely on the inference of a person of ordinary skill in the pertinent art to supply such novel aspects"). "Working backward from a knowledge of [the claims]" to "derive written description support from an amalgam of disclosures plucked selectively from the [disclosures]" is inadequate to satisfy the written description requirement. *Novozymes v. DuPont Nutrition Biosciences APS*, 723 F.3d 1336, 1349 (Fed. Cir. 2013). The non-provisional application simply did not provide any written description of overlapping zone scenes, further proving that new matter was added by amendment in 2019, even assuming the New Matter sentence provided adequate written description support (which it does not since it relies on an inference at best).

Finally, Google was not required to file a motion for reconsideration or otherwise ask the Court to revisit its prior written description ruling or else risk forever acceding to its outcome. *See* Dkt. 786 at 4 (arguing that "Google ***dropped*** its written description defenses for both the '885 and '966 patents"). Just as parties must accept adverse claim constructions, they must accept adverse summary judgment rulings for purposes of trial, subject to their right to appeal those rulings later. That does not mean that Google abandoned the defense, nor that either it or the Court is precluded from revisiting the written description issue based on changed circumstances.

**B.**     ***Google Raised The Written Description Issues Of Which It Was Aware, And Never Dropped Or Withdrew Its Defense***

Sonos also argues that the Court should look the other way on written description because Google did not "challenge the priority date of the '885 patent based on alleged deficiencies in the written description of earlier family members" (Dkt. 786 at 2) and did not "raise all arguments in support of its written description challenge at the time it went forward with the challenge." *Id*. at 5. As explained in Google's submission (and above), however, there is good cause for the Court to reconsider these issues now in view of the more complete record developed through trial. Dkt. 785 at 6-15. Tellingly, Sonos's submission largely ignores the Court's discretion to review its own prior order in view of the more complete trial record and recently discovered facts, and that discretion is ***unaffected*** by the "party-presentation rule." "When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." *Kamen v. Kemper Fin. Servs.*, 500 U.S. 90, 99 (1991) (citation omitted).[2]

**C.**     ***No Further Fact Or Expert Discovery Is Required For The Court To Address The Written Description Issues***

Because important issues, including both written description and Google's affirmative defenses, remain undecided, Google respectfully urges the Court to vacate the judgment entered yesterday and proceed to decide those issues. In any event, contrary to Sonos's arguments, no additional fact discovery or expert opinions are needed to find that the asserted patents lack written

---

[2] The cases cited by Sonos are inapposite. In *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020), the Supreme Court held that the Ninth Circuit abused its discretion in finding a statute unconstitutional and overbroad based on invited briefing from three *amici* despite that the defendant "presented a contrary theory of the case in the District Court." *Id*. at 1581. That is a far cry from a trial court reconsidering its own prior order on written description. Dkt. 785 at 6-15. Indeed, the Court in *Sineneng-Smith* recognized that "[t]he party presentation principle is supple, not ironclad. There are no doubt circumstances in which a modest initiating role for a court is appropriate." *Id*. at 1579 (citing *Day v. McDonough*, 547 U. S. 198, 202 (2006) (finding court had "authority, on its own initiative," to correct a party's "evident miscalculation of the elapsed time under a statute" absent "intelligent waiver")). For its part, *AMA Multimedia, Ltd. Liab. Co. v. Wanat* merely held that "[a]bsent exceptional circumstances, we generally will not consider arguments ***raised for the first time on appeal***" (despite recognizing it "[had] discretion to do so"). 970 F.3d 1201, 1213 (9th Cir. 2020).

description support for overlapping zone scenes.  There are no disputed facts regarding the timing and substance of the specification amendments.  Nor do any of the five points raised by Sonos as "material facts in dispute" (Dkt. 786 at 7) require further discovery or fact findings to resolve.  The facts on their face make clear that the "ALL the zones" language added to the specifications of the asserted patents in 2019 was improper new matter that appeared in the provisional application in a different context than where it was transposed into the asserted patents' specifications.[3]  It is also clear on the current record that nothing else in the  specifications disclosed the concept of overlapping zone scenes.  *See generally*, Dkts. 712, 729, 785.  Moreover, Sonos had more than a full and fair opportunity to address the written description issues through the patent showdown process (during which it failed to disclose that the New Matter had been transposed into the specifications by amendment in 2019 from a different context in the provisional application) and in numerous subsequent trial briefs and oral arguments.  *See D Three Enterprises, LLC v. SunModo Corp.*, 890 F.3d 1042, 1048-49 (Fed. Cir. 2018) (district court did not err in granting summary judgment based on an inadequate written description despite no such argument by defendant because the patentee "knew" that lack of written description "would be an issue" and "had a full opportunity to present evidence to support [its] position") (internal quotations omitted).

Sonos further argues that "Rule 60 is also not a proper vehicle for reopening written description or considering new arguments about how written description impacts the patents' priority date" (Dkt. 786 at 7-8), yet it nowhere addresses Rule 60(b).  Rather, Sonos characterizes any reconsideration of the written description issues as being a "deviat[ion] from the original intent of the [C]ourt" akin to the Court "chang[ing] its mind," which Sonos argues is improper under ***Rule 60(a)***.  *Id.*  But Rule 60(b) permits the Court to reconsider the written description issue to correct any misrepresentation (or misconduct by an opposing party) or for any other reason that justifies

---

[3] Sonos argues that "Google still has not yet laid out clear factual and legal arguments as to why the addition of the 'ALL the zones' sentence either (i) cannot be considered in evaluating written description of the '885 and '966 patents or (ii) constitutes the addition of new matter that would break the priority chain."  Dkt. 786 at 6.  Yet Google filed multiple trial briefs on this issue.  *See, e.g.*, Dkt. 729 at 9-12 (explaining "ALL the zones" is new matter); Dkt. 712 at 1-2 (citing cases for why the amendment invalidates); Dkt. 722 (answering the Court's questions regarding the same).

GOOGLE'S RESPONSE TO SONOS'S STATEMENT REGARDING WRITTEN DESCRIPTION

1 relief, consistent with the reasons to do so set forth in Google's submission.  Dkt. 785; Fed. R. Civ.

2 P. 60(b).  Whether to grant relief under Rule 60(b) is committed to the Court's sound discretion.  *In*

3 *re Int'l Fibercom, Inc.*, 503 F.3d 933, 939, 941 (9th Cir. 2007).  The Court is also entitled to vacate

4 the recently issued judgment under Rule 59(d) and use its inherent authority to reconsider its rulings.

5 ### D. *No Additional, Let Alone "Significant," Resources Would Be Required For the Court To Reconsider And Address The Written Description Issues*

6

7 As discussed *supra*, the Court need not reopen fact or expert discovery to decide these issues.

8 Sonos contends that it would need to serve new written discovery, but Sonos is already in possession

9 of any additional facts it may want to elicit at least because its trial counsel prosecuted the asserted

10 patents and also knew written description was at issue early in this case.  There is also no need for

11 written discovery on Google for Sonos to understand Google's priority date challenge.  Google's

12 position is clear from the briefing and trial arguments on this issue.  *E.g.*, Dkts. 712, 722, 729.

13 Google's position is simple: addition of the New Matter to the asserted patents' specifications in

14 August 2019 was improper, and the patents are invalid for lack of written description as a result.

15 Alternatively, if the Court holds that the introduction of the New Matter was proper but changes

16 Sonos's effective filing date to 2019, then the claims are invalid under the on-sale bar of pre-AIA

17 Section 102(b) because Sonos has asserted them against Google products released four years earlier.

18 No significant additional resources will be required for the Court to reconsider and address the

19 written description issues.  Nor would a second jury trial be required.  Dkt. 786 at 10.  The Federal

20 Circuit has often held that "[c]ompliance with the written description requirement [of 35 U.S.C. §

21 112(a)] is a question of fact *but is amenable to summary judgment in cases where no reasonable*

22 *fact finder could return a verdict for the non-moving party*." *D Three Enterprises*, 890 F.3d at

23 1047 (emphasis added); *PowerOasis, Inc. v. T–Mobile USA, Inc.*, 522 F.3d 1299, 1307 (Fed. Cir.

24 2008).  Such is the case here, where the Court already was able to rule once on the written description

25 issue on summary judgment—without any objection from Sonos.  Dkt. 309.

26 Sonos's proposed discovery schedule is a bluff intended to discourage immediate resolution

27 of the written description issue.  Indeed, it is unclear why Sonos would need to "serve subpoenas"

28 or reopen invalidity contentions such that Google must serve "supplemental invalidity disclosures"

1   that are "to the same level of detail required by the local rules" in order for the Court to decide one

2   isolated written description issue.  There is no need for additional discovery.

## II.  COURSE OF ACTION FOR INJUNCTIVE RELIEF, DAMAGES, AND AFFIRMATIVE DEFENSES

On the one hand, Sonos cites the parties' upcoming ITC trials in June and July 2023 to propose a schedule for further discovery on the written description issues that puts "about three months' time between now and the start of expert discovery." Dkt. 786 at 10. Yet in the same breath, Sonos seeks accelerated briefing on injunctive relief and damages issues that could (and should) be moot in view of the written description issues, the parties' Rule 50(b) motions, and Google's remaining affirmative defenses (*see infra*).  There is no reason for the parties to engage in discovery and briefing on damages issues that are likely to be mooted or at least significantly affected by the many open issues in this case.  Sonos's proposal for production of updated damages information and briefing should be denied without prejudice pending resolution of other, predicate issues. Sonos's injection of damages-related issues such as ongoing royalties, supplemental damages and pre- and post-judgment interest into its submission should be disregarded as unresponsive to the Court's request for additional briefing on a "proposed course of action for hearing and ruling on injunctive relief and the affirmative defenses."  Dkt. 775.  Google will respond fully to Sonos's arguments if and when they are properly brought before the Court.  Nevertheless, Google responds briefly to Sonos's assertions.

***Injunction***.  As Google noted in its submission, Sonos is not entitled to any injunctive relief under the facts of this case because it has not demonstrated any irreparable injury not compensable by monetary damages.  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *Nichia Corp. v. Everlight Americas, Inc.*, 855 F.3d 1328, 1344 (Fed. Cir. 2017) (affirming denial of injunctive relief where patentee failed to establish irreparable harm).  Sonos's new request for an injunction with respect to "*indirect* infringement" of the '885 Patent "going forward" also lacks merit.  Dkt. 768 at 11 (emphasis in original).  Sonos appears to contend that the jury's finding of ***direct*** infringement of the '885 Patent can now establish the notice and specific intent requirements for ***indirect*** infringement.  But the Court already granted Google's motion for summary judgment of no

1   indirect infringement for the '885 patent.  Dkt. 566 at 29-31.  And the only indirect infringement

2   claim Sonos presented at trial was for the '966 Patent, which the jury found Google did not infringe.

3   Dkt. 774 at 2-3; Dkt. 762 at 17 ("Sonos accuses Google of indirectly infringing the '966 patent.").

4   Sonos **never proffered** any theory or evidence of indirect infringement at trial for the '885 Patent.

5   *See, e.g.*, Dkt. 615 at 3 ("For purposes of this trial, Sonos seeks a judgment (1) . . . that Google's

6   newer products ***directly infringe*** claim 1 of the '885 patent") (emphasis added).  Sonos cannot now

7   seek an injunction for a claim that was never presented nor adjudicated by the jury.  *CH2O, Inc. v.*

8   *Meras Eng'g, Inc.*, 2017 WL 1700844, at *4 (C.D. Cal. May 2, 2017) (rejecting proposed injunction

9   precluding "actions that induce or contribute to infringement" when the jury only "concluded that

10  Defendants directly infringed" because "[t]he injunctive relief will be limited to barring the activities

11  that were presented at trial as to which the verdict was entered").  Indeed, it is unclear what indirect

12  infringement Sonos is even attempting to enjoin with respect to the '885 Patent.

13       ***Ongoing Royalty Rate***.  Google maintains that the $2.30 royalty rate awarded by the jury is

14  unsupported by any evidence in the trial record and will address this issue via proper motion

15  practice, including in its Rule 50(b) motion.  The only evidence the jury could have utilized was

16  Sonos's non-comparable, portfolio-wide settlement agreements, which were unreliable and could

17  not form the basis for any damages award as presented by Sonos.  *See* Dkt. 756 at 32-33.  Sonos

18  provided no way for the jury to apportion those agreements to the specific invention.  *Id.*; *Finjan,*

19  *Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1311-12 (Fed. Cir. 2018) (holding that "Finjan failed to

20  present a damages case that can support the jury's verdict" because "[t]here is no evidence that

21  Finjan ever actually used or proposed an $8-per-user fee in any comparable license or negotiation"

22  such that the trier of fact had no "factual basis for a determination of a reasonable royalty").  And

23  for the reasons discussed above, Sonos's request for royalties for purported "indirect infringement"

24  of the '885 Patent (a claim that the jury never heard nor found) should be denied.[4]

25

26

---

27  [4] *See, e.g.*, *Opticurrent, LLC v. Power Integrations, Inc.*, 2019 WL 2389150, at *4-7 (N.D. Cal. June
    5, 2019), *aff'd*, 815 F. App'x 547 (Fed. Cir. 2020) (reducing royalty base from sales of accused

28  products that directly and indirectly infringed to sales of accused products that only directly
    infringed where "[t]he jury found no inducement").

1    ***Supplemental Damages***.  Sonos's request for "supplemental damages" based on Google's

2    redesign is nonsensical.  Based on the jury's verdict that Google's alleged redesign was still

3    infringing, Sonos argues it should be entitled to additional damages for speakers sold prior to the

4    damages period but that "received the infringing software update" because at that point Google

5    apparently "made" those infringing devices anew.  Dkt. 786 at 14-15.  But Sonos does not provide

6    any authority for the notion that updating a product that Google had already sold prior to the

7    damages period somehow constitutes "mak[ing]" a new patented invention under 35 U.S.C. §

8    271(a).[5]  Nor could it.  These devices received software updates before the redesign, and Sonos

9    never previously argued that such updates constitute a new act of infringement, nor did it accuse

10   any additional products that had been sold outside the damages period on this basis.[6]

11   ***Prejudgment and Post-Judgment Interest***.  To the extent Sonos is ultimately awarded any

12   damages, Google will address Sonos's requests for interest at the appropriate time.  *See, e.g.*, *Bio-*

13   *Rad Laboratories, Inc. v. Nicolet Instrument Corp.*, 807 F.2d 964, 969 (Fed. Cir. 1986).

14   ***Affirmative Defenses***.  Google has identified several affirmative defenses that remain for

15   the Court's determination.  *See* Dkt. 785 at 15.  To the extent any of these equitable defenses require

16   any underlying facts, those facts have already been adduced as part of the discovery and trial record.

17   Accordingly, Google is entitled to resolution of its remaining affirmative defenses.

18

19

20

21

22

---

23   [5] The cases Sonos cites are inapposite.  *Centrak, Inc. v. Sonitor Techs., Inc.*, 915 F.3d 1360 (Fed.

24   Cir. 2019), merely held that there were genuine disputes of fact as to whether a party that completes
     the "software setup necessary to make the system work" can infringe when it does not make all the

25   components needed for infringement.  Here, providing firmware updates is not "assembling
     components into the claimed assembly."  *Id.* at 1364.  And *Lifetime Indus., Inc. v. Trim-Lok, Inc.*,

26   869 F.3d 1372 (Fed. Cir. 2017), is not about software at all.  And neither case involves products
     sold before the damages period.

27   [6] Indeed, setting such a precedent would disincentivize an accused infringer from pursuing
     redesigns.  *See TiVo Inc. v. Echostar Corp.*, 646 F.3d 869, 883 (Fed. Cir. 2011) ("[L]egitimate

28   design-around efforts should always be encouraged as a path to spur further innovation.").

DATED:  May 31, 2023

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By   */s/ Sean Pak*
Sean Pak
Melissa Baily
James Judah
Lindsay Cooper
Marc Kaplan
Iman Lordgooei


*Attorneys for GOOGLE LLC*

1

## CERTIFICATE OF SERVICE

2          The undersigned certifies that on May 31, 2023, all counsel of record who are deemed to

3   have consented to electronic service are being served with a copy of this document through the

4   Court's CM/ECF system.

5

6   DATED:  May 31, 2023

7                                                                    /s/ Sean Pak

8                                                                    Sean Pak

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 3:20-cv-06754-WHA
GOOGLE'S RESPONSE TO SONOS'S STATEMENT REGARDING WRITTEN DESCRIPTION