CLEMENT SETH ROBERTS (SBN 209203)
croberts@orrick.com
BAS DE BLANK (SBN 191487)
basdeblank@orrick.com
ALYSSA CARIDIS (SBN 260103)
acaridis@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:   +1 415 773 5700
Facsimile:    +1 415 773 5759

SEAN M. SULLIVAN (*pro hac vice*)
sullivan@ls3ip.com
MICHAEL P. BOYEA (*pro hac vice*)
boyea@ls3ip.com
COLE B. RICHTER (*pro hac vice*)
richter@ls3ip.com
LEE SULLIVAN SHEA & SMITH LLP
656 W Randolph St., Floor 5W
Chicago, IL 60661
Telephone:   +1 312 754 0002
Facsimile:    +1 312 754 0003

*Attorneys for Sonos, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA,

SAN FRANCISCO DIVISION

| | |
|---|---|
| SONOS, INC., <br><br> *Plaintiff and Counter-defendant,* <br><br> v. <br><br> GOOGLE LLC, <br><br> *Defendant and Counter-claimant.* | Case No. 3:20-cv-06754-WHA <br><br> Consolidated with <br> Case No. 3:21-cv-07559-WHA <br><br> **SONOS, INC.'S REPLY RE THE COURT'S REQUESTS FOR FURTHER BRIEFING CONCERNING WRITTEN DESCRIPTION, INJUNCTIVE RELIEF, AND AFFIRMATIVE DEFENSES** <br><br> Judge: Hon. William Alsup <br> Courtroom: 12, 19th Floor <br> Trial Date: May 8, 2023 |

Sonos submits this brief in reply to Google's response. Dkt. 785. As explained below, Google provides no basis for the Court to reopen written description or priority issues. Google also provides no basis to delay prompt resolution of post-trial motions.

## I. COURSE OF ACTION FOR WRITTEN DESCRIPTION

### A. There are No "New" Facts that Warrant Reopening Written Description for Overlapping Zone Scenes or The Priority Date.

Google tries to justify its request to reopen written description and/or priority date by arguing that Sonos's 2019 amendment to the specification of the '885 and '966 Patents was a "new" fact previously unknown to Google. The record shows this is not correct.

First, Sonos's 2019 amendment to the specification of the '885 and '966 Patents that inserted the "ALL the zones" sentence from the provisional application was prominently memorialized in the publicly-available file histories of those patents, as shown below:

> - Please amend current paragraph [0060] of the specification as indicated below, which will become paragraph [0062] to reflect the new paragraphs [0028] and [0029] above.
>
> [0062]    FIG. 5B shows another user interface 520 to allow a user to form a scene. The user interface 520 that may be displayed on a controller or a computing device, lists available zones in a system. <u>The list of zones in the user interface 520 includes ALL the zones in the system, including the zones that are already grouped.</u> A checkbox is provide next to each of the zones so that a user may check in the zones to be associated with the scene.

> 3.    **Amendment to the Specification**
>
> In the present response, pursuant to 37 CFR 1.57(g), Applicant inserts material into the specification and figures that was previously incorporated by reference in this application, and the amendment contains no new matter. In particular, the inserted material can be found at least at pp. 5-6 and 17 of Appendix A to provisional application 60/825,407, the entirety of which was incorporated by reference on the filing date of this application.

TX6 at 4085, 4101.

1    Given that this amendment was part of the publicly-available file histories—file histories which Google did, in fact, review and rely on to support its arguments in this very litigation—Google has no basis to now contend that the amendment is a "new" fact.

Second, during the claim construction proceedings in this case while it was pending in Texas, Google represented to the court that the '885 Patent, the '966 Patent, *and* the '206 Patent (which was granted before the 2019 amendment) "are each continuations, *sharing substantively the same specification* and all claim priority to a single provisional filed on Sept. 12, 2006." Case No. 3:21-cv-07559-WHA, Dkt. 64 at 1, n.1 (emphasis added). Google could not have made this representation without having reviewed and compared the specifications of the '885 Patent, the '966 Patent, and the '206 Patent.[1] In other words we *know* that Google at least purported to have reviewed both the pre-and post-amendment specifications. Thus, it cannot now argue that the fact of the amendment is "new."

Third, Google's expert discussed Sonos's 2019 amendment in his June 22, 2022 expert report. Dkt. 786 at 2-3. This definitively establishes that Google's counsel was aware of the amendment at least by that date. But Google's brief ignores the June 22, 2022 expert report, which directly contradicts Google's claim that Sonos's 2019 amendment to the specification was a "new" fact that Google "uncovered, for the first time" "[w]hile preparing its responses to the Court on this issue during trial." *Id.* at 3.

Because the amendments to Sonos's specification were public, the onus was on Google to raise them to the Court if Google believed that they were relevant to its written description arguments.[2] Google chose not to, and under the party-presentation rule, the Court was entitled to decide the issue on the facts as Google presented them. Dkt. 786 at 5.

---

[1] In its brief, Google criticizes Sonos for making similar representations to the Court, but this demonstrates that Google **agreed** with Sonos that the specifications of the zone scene patents are not substantively different – and in Sonos's view they are not substantively different because all of them incorporate the provisional application's disclosure by reference and therefore contain the same *substantive* disclosures.

[2] Google has also been aware that Sonos was relying on the "ALL the zones" sentence for written description support since February 4, 2022, when Sonos served its supplemental response to Google's interrogatory number 3. In that supplemental response, Sonos identified the passage beginning at col. 9, ln. 64 and ending at col. 10, ln. 19 as providing written description support

Google's other suggestion that it was Sonos's duty to raise this fact when responding to Google's written description challenge makes no sense. Google's motion was specifically limited to challenging whether the specification of the '885 Patent provided written description support and did not raise any priority date or new matter challenge.

### B. Mr. Lambourne's Testimony Did Not Raise "New" Facts Regarding Written Description or Priority Date

Contrary to Google's contention, there is nothing from Mr. Lambourne's testimony constituting "new" facts that would justify reopening the issue of written description and/or priority date issues.

To begin, Mr. Lambourne did not provide any testimony regarding Sonos's 2019 amendment to the specification. Mr. Lambourne's testimony was directed to his conception and development of the zone scene technology, but that is not relevant to written description and priority date – those issues are determined based on the disclosure found in the patents at issue and their priority applications.

Moreover, the trial testimony of Mr. Lambourne cited in Google's brief was directly in line with both his prior deposition testimony and Sonos's prior contentions and expert reports, which have consistently explained that the claimed zone scene technology was distinct from the zone grouping and party mode features of Sonos's 2005 system.

As such, Google's attempt to cast Mr. Lambourne's trial testimony as raising new facts that warrant reopening the issue of written description and/or priority date for overlapping zone scenes has no merit, and should be rejected.

### C. Google Fails to Establish a Meritorious Basis for Reopening Written Description or Priority Date Issues.

Turning to the merits of Google's brief, the underlying premise of Google's request to reopen the issues of written description and/or priority date for overlapping zone scenes is that (i) the "ALL the zones" sentence is Sonos's only written description support for overlapping zone

---

for the asserted claims of the '885 and '966 Patents, and that passage included the "ALL the zones" sentence.

scenes and (ii) Sonos cannot rely on the "ALL the zones" sentence for written description support because it is new matter. However, Google is wrong on both counts.

As Sonos's opening brief explained, there are other aspects of the original disclosure of the '885 and '966 Patents that independently provide written description support for overlapping zone scenes, which were discussed at length in Sonos's trial brief filed on May 14, 2023. *See* Dkt. 723 at 24-36. For instance, the '885 and '966 Patents include the following passage that has been part of the specification since the first non-provisional:

> According to still another aspect of the present invention, a controlling device (also referred to herein as controller) is provided to facilitate a user to ***select any of the players in the system to form respective groups*** each of which is set up per a scene. Although ***various scenes*** may be saved in ***any of the members in a group***, commands are preferably sent from the controller to the rest of the members when one of the scenes is executed.

TX3 ('885 Patent) at 2:52-59 (emphasis added); *see also* Dkt. 723-4 at [0010]. This passage – which is substantially similar to the "ALL the zones" sentence – provides written description support for the ability to add a zone player to multiple zone scenes. Indeed, Sonos's expert testified at trial that the first sentence of this passage describes the ability to add a zone player to multiple zone scenes, and the Court previously relied on the second sentence of this passage to support its finding that there is written description support for adding a zone player to multiple zone scenes. Trial Tr. at 681:12-20; Dkt. 309 at 15.

Likewise, there are other aspects of the original disclosure of the provisional application that provide written description support. For instance, the figure on page 5 of Appendix A of the provisional application – which was later inserted into the disclosure of the '885 and '966 Patents as Figure 7 – discloses a "Party Mode" zone scene and a "Morning Wakeup" zone scene that have overlapping members, as Google's own expert admitted during trial. Trial Tr. at 1338:10-19.[3]

---

[3] Sonos also added this figure from the provisional into the '885 and '966 Patents as part of its 2019 amendment, and unlike the "ALL the zones" sentence, Google has never challenged this amendment as adding new matter.

1    Google does not dispute that these other disclosures were part of Sonos's original
2    disclosure, and has not offered any argument as to why these other disclosures fail to provide
3    written description support for overlapping zone scenes.

4    Turning to Sonos's 2019 amendment, Google fails to dispute that (i) Sonos's
5    incorporation by reference of the provisional application, including its appendices, was
6    procedurally proper, (ii) Sonos was permitted under Patent Office procedures (specifically,
7    37 C.F.R. § 1.57) to insert material from the incorporated provisional application into the '885
8    and '966 Patents during prosecution, (iii) the Examiner accepted Sonos's 2019 amendment to the
9    specification as a proper amendment that did not add new matter, and (iv) the Examiner's
10   acceptance of the Sonos's 2019 amendment to the specification is entitled to an especially
11   weighty presumption of correctness.

12   Google's only argument is that the "ALL the zones" sentence is new matter that cannot
13   provide written description support for overlapping zone scenes because it was allegedly taken
14   out of context from the provisional application.  More specifically, Google asserts that the "ALL
15   the zones" sentence from Section 4 of Appendix A of the provisional application (*i.e.*, the "Sonos
16   UI Specification: Zone Scenes") allegedly describes Sonos's "dynamic zone grouping" and not
17   Sonos's zone scenes because, for example, Section 3 of Appendix A states that "[i]t is not
18   expected that the Zone Scenes should be set up using the Handheld Controller" and the "ALL the
19   zones" sentence in Section 4 allegedly references screens from Sonos's 2005 Handheld
20   Controller (*i.e.*, the CR100).  Dkt. 785 at 11-15.  However, this argument does not justify
21   Google's request that the Court reopen the issues of written description and/or priority date.

22   First, as Sonos previously explained in detail its trial brief filed on May 14, 2023, the
23   "ALL the zones" sentence cannot be new matter because it was not taken out of context from the
24   provisional application. *See* Dkt. 723 at 36-41.  To the contrary, Section 4 of the "Sonos UI
25   Specification: Zone Scenes" document discloses "alternative" embodiments for setting up zone
26   scenes. With this context, a person of ordinary skill in the art would understand the statement
27   "[t]he list of zones in the screen above includes ALL the zones in the system, including the

28

Zones that are already grouped" to disclose presenting a user with a list of all the zones in the system when she goes to set up a zone scene.

This interpretation is also consistent with the fact that when the original specification of the '853 Patent, including FIG. 5B, was filed on September 11, 2007—eight years before Google released its infringing speaker group technology and 13 years before Sonos filed its complaint asserting the'885 and '966 Patents—the specification expressly disclosed that FIG. 5B was a user interface for setting up/forming a zone scene. Dkt. 723-4 at [0060] ("FIG. 5B shows another user interface 520 to allow a user to form a scene…. A checkbox is provide[d] next to each of the zones so that a user may check in the zones to be associated with the scene.").

The "it is not expected" statement does not change this fact. Dkt. 723 at 37. That statement does not say that the handheld controller cannot be used to set up zone scenes – instead it discloses that the preferred embodiment would be to use Sonos's Desktop Controller as described in "Section 3." But then the document goes on to discloses "alternative" embodiments that use Sonos's Handheld Controller to set up zone scenes in Section 4 (which is entitled "Alternative Linking Methods"). *Id.*[4]

Second, in the provisional, the "ALL the zones" sentence describes what became FIG. 5B in the first non-provisional (filed in 2007). That original specification expressly described that FIG. 5B as showing the interface for setting up/forming a zone scene – not as an interface for dynamic grouping. Dkt. 723-4 at [0060] ("FIG. 5B shows another user interface 520 to allow a user to form a scene…. A checkbox is provide next to each of the zones so that a user may check in the zones to be associated with the scene.").[5]  This is important for at least two reasons: (i) it

---

[4] To be clear, the screens shown in Section 4 of the "Sonos UI Specification: Zone Scenes" document were **not** existing screens from Sonos's 2005 Handheld Controller for setting up dynamic groups. Rather, they were new screens proposed by Mr. Lambourne for setting up zone scenes, which is consistent with the language at the beginning of subsection 4.1 states that "[t]his feature is an adaptation of the Link and Drop Zone feature." Dkt. 723 at 37-39.

[5] Google also suggests that Sonos did something improper by not including in the 2007 '853 patent specification a different screen that appeared above the FIG. 5B screen in the "Sonos UI Specification: Zone Scenes." Dkt. 785 at 14. There is no merit to this argument. There is no requirement that the specification of the '853 patent include every image from the "Sonos UI Specification: Zone Scenes." Indeed, the vast majority of the images in the "Sonos UI

supports Sonos' argument that, in context, the parallel material in the provisional would have been understood as an interface for setting up zone scenes, and (ii) even if a jury were to ultimately find otherwise, the alleged change in context occurred in 2007.  Because Google did not start implementing the concept until 2013, this fact is fatal to Google's argument that its own product invalidates the patent.

Third, the issues of written description and priority date for overlapping zone scenes do not hinge on the "ALL the zones" sentence, because there is other written description support for overlapping zone scenes that was part of the original disclosure for the '885 and '966 Patents. Thus, even redlining the "ALL the zones" would not change the priority date.

Fourth, nothing about Sonos's amendment or its reliance on the "ALL the zones" sentence is new to Google – these facts have been known to Google for nearly a year (if not longer), and the time for Google to challenge Sonos's amendment has long since passed.

Accordingly, Google has not established any legitimate basis for reopening the issues of written description and/or priority date for overlapping zone scenes.

### D. Rule 54(b) and Civil Local Rule 7-9 Do Not Authorize The Court To Vacate Its Prior Order.

Google has not established that the Court may *sua sponte* enter summary judgment in favor of Google to invalidate the '885 and '966 Patents for failure to comply with the written description requirement without giving Sonos adequate notice and a reasonable opportunity to respond.  Google relies primarily on Rule 54(b)'s provision that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time ***before the entry of a judgment*** adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P 54(b) (emphasis added).  However, the Court has now entered final judgment. Dkt. 787.  This

---

Specification: Zone Scenes" are not included in the '853 patent.  In other words, the image Google complains is missing is not the only image Sonos chose not to include in the '853 patent.

extinguishes the ability to use Rule 54 to "revise[]" prior orders. And even if Rule 54(b) applied at this post-judgment stage, Google points to no authority supporting a *sua sponte* reversal of a previous grant of summary judgment in favor of one party because the other party desires to belatedly raise a new argument that it could have raised earlier. Google must now proceed under either Rule 59(e) or Rule 60(b).

Reconsideration of a final judgment under Rule 59(e) is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (internal quotation marks omitted); *Indivior Inc. v. Dr. Reddy's Laboratories, S.A.*, 930 F.3d 1325, 1340-41 (Fed. Cir. 2019) ("While Rule 59 gives a court authority to alter or amend a judgment, that authority is exercised only in limited circumstances, such as to prevent a manifest injustice . . . it is neither unusual nor unjust for a party to be bound by its litigation decisions."). Indeed, a losing party cannot use a Rule 59(e) motion to "relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Alcohol Monitoring Systems, Inc. v. BI Incorporated*, 2014 WL 3508894, *2 (D. Colo. 2014).

Google has not demonstrated that it is entitled to relief under Rule 59(e) or Rule 60(b). And even were Google to show that it is entitled to such extraordinary relief, Sonos would still be entitled to adequate notice and a reasonable opportunity to respond, as Sonos's brief laid out. Rule 56(f) states that a Court may consider summary judgment on its own but only "[a]fter giving notice and a reasonable time to respond." This requires at least an opportunity to develop the factual and expert record in rebuttal to Google's new invalidity position.

Google argues that the addition of the "ALL the zones" sentence was a "new material fact" that justifies reconsideration under Civil L.R. 7-9. However, (despite Civil L.R. 7-9 no longer applying due to the entry of final judgment, Dkt. 787), this amendment to the specification was a public fact as of the time it happened – August 2019. Moreover, Google knew about it at least as early as June 2022, when its expert pointed it out in his expert report. At best, Google has a new *appreciation* of a known fact. That's not the same. Google's desire to litigate the fact now does not make it "new."

Finally, Google resorts to the inherent power of the Court to reconsider prior rulings.[6] But even Google acknowledges that the Court must give Sonos adequate notice and a reasonable opportunity to respond before doing so. And contrary to Google's brief, the Court has not been presented with "a full factual record" and there are not "no undisputed material facts" regarding this issue. Google has not laid out its invalidity position and thus Sonos has not had an opportunity to test this position by developing the factual record and expert testimony. Sonos has not had an opportunity to cross-examine Google's experts on this issue. And at least the following facts preclude summary judgment in favor of Google: (i) the Patent Office was correct in permitting the addition of the previously incorporated "ALL the zones" sentence during prosecution, (ii) the "ALL the zones" sentence was not new matter, (iii) the addition of the "ALL the zones" sentence was supported by the provisional application, (iv) the entire provisional application, including its appendices, was properly incorporated by reference into the non-provisional applications, and (v) the provisional and non-provisional applications provide written description support for the overlapping zone scenes concept that is independent of the "ALL the zones" sentence. For at least the foregoing reasons, entry of summary judgment pursuant to Rule 56, or relief from prior orders pursuant to Rules 59(e) and Rule 60(b) would be improper.

## II. COURSE OF ACTION FOR INJUNCTIVE RELIEF, DAMAGES, AND AFFIRMATIVE DEFENSES

Sonos respectfully requests that the Court set a schedule for briefing post-trial issues. Google's request to delay consideration of Sonos's request for injunctive relief should be denied.

---

[6] Google's brief suggests that the Court's prior ruling on written description was based on "misrepresentations" made by Sonos that gave the Court a "misimpression" regarding the specification of the '885 Patent. Dkt. 785 at 10. The Court based its ruling on the parties' summary judgment briefing and hearing, and Google fails to identify a single statement made by Sonos during that brief or hearing that would have given the Court a "misimpression" regarding the relationship between the specification of the '885 Patent and its priority applications. All but one of the Sonos statements that Google identified are from trial, and thus could not possibly have influenced the Court's ruling that came 10 months earlier. Nor could the statements from Sonos's opposition to Google's motion to dismiss, which merely noted that the '885 and '966 Patents "share" a specification with certain priority applications (a common way to refer to continuation applications).

**Injunction, supplemental damages, ongoing royalty, interest:** As explained in its Response, Dkt. 786, Sonos proposes that Google produce updated damages information by June 5, 2023, that Sonos file an opening brief covering injunctive relief, supplemental damages, ongoing royalty, and interest of no more than 20 pages on June 16, 2023, that Google files an opposition brief of no more than 25 pages on June 30, 2023, and that Sonos files a reply brief of no more than 5 pages on July 7, 2023.

**Rule 50 and 59 motions:** 28 days after entry of judgment on the verdict, both parties submit opening briefs of 25 pages, followed 14 days later by oppositions of 25 pages, and 7 days later by reply briefs of 15 pages. *See* Fed. R. Civ. Pro. 50(b), 59; N.D. Cal. L. R. 7.

**Affirmative defenses:** Sonos does not believe that additional briefing on affirmative defenses is necessary. Certainly Google does not need 50 pages to address its affirmative defenses. Dkt. 785 at 15. All of the evidence in support of these defenses must already be in the trial record. Dkt. 660 at 8. While Google contends it has evidence to support "prosecution history estoppel, equitable estoppel, waiver, implied license, and prosecution laches," Dkt. 785 at 15, Sonos does not believe that Google introduced evidence as to any of these defenses. For example, prosecution history estoppel applies to infringement under the doctrine of equivalents, which Sonos did not rely on at trial. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1457 (Fed. Cir. 1998), abrogated on other grounds by *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335 (Fed. Cir. 2015). As another example, equitable estoppel requires, among other elements, that "the patentee, through misleading conduct, led the alleged infringer to reasonably believe that the patentee did not intend to enforce its patent against the infringer." *Aspex Eyewear Inc. v. Clariti Eyewear, Inc.*, 605 F.3d 1305, 1310 (Fed. Cir. 2010). Here, Sonos sued Google on the '885 and '966 Patents promptly after issuance. Google cannot point to anything suggesting that Sonos "did not intend to enforce" the '885 or '966 Patents against Google. If the Court allows briefing on affirmative defenses, it should be on the same schedule and with the same (or lower) page limits as Sonos's injunction and damages briefing.

Dated: May 31, 2023

ORRICK HERRINGTON & SUTCLIFFE LLP
*and*
LEE SULLIVAN SHEA & SMITH LLP

By: */s/ Clement Seth Roberts*
    Clement Seth Roberts

*Attorneys for Sonos, Inc.*