# ATTACHMENT 3

# *Sonos, Inc.* *vs.* *Google LLC*

Civil Action No. 3:20-cv-06754

# Summary of Opinions
## James Malackowski

# James Malackowski









- Senior Managing Director of **Ocean Tomo, LLC**, a part of J.S. Held

  - **Ocean Tomo** is an IP-focused valuation, strategy and investment banking firm

- Past President, **Licensing Executives Society International**, world's largest technology transfer professional association

- **Inventor** on 20 issued patents

- Summa Cum Laude graduate of the **University of Notre Dame** majoring in accountancy and philosophy

- **Certified Public Accountant**

- **Certified Licensing Professional**

- **Adjunct Instructor** for graduate studies on IP management

- Served as an **expert** on questions relating to intellectual property economics on over 100 occasions

PDX3.2

# Summary of Assignment

**Identify the amount of compensation that Google would pay to access patented Sonos technology**



Reasonable Royalty Damages

PDX3.3

# Information Relied Upon



PDX3.4

# 35 U.S.C. § 284



Upon finding for the claimant the court shall award
the claimant **damages adequate to compensate for the
infringement, but in no event less than a reasonable
royalty** for the use made of the invention by the infringer,
together with interest and costs fixed by the court.

35 U.S.C. § 284

PDX3.5

# Hypothetical Negotiation





The royalty that a licensor (such as Sonos) and a licensee (such as Google) would have agreed upon if both had been **reasonably and voluntarily trying to reach an agreement**

PDX3.6

# Required Assumptions

**'966 Patent**

November 2019

**'885 Patent**

November 2020





**Hypothetical Negotiations**

**Patents Are Valid and Infringed**

**Parties Must Reach an Agreement**

Supplemental Expert Report of James E. Malackowski, December 9, 2022, Sections 2 and 11.7

PDX3.7

# Key Questions

**1** What is the **competitive relationship** between Sonos and Google?

**2** Are there value indicators in the market for **comparable technologies**?

**3** How important is the **patented technology**?

**4** How does Google **value and share the benefits** of third-party technology?

**5** Does Google have any commercially and technically viable **non-infringing alternatives**?

# Reasonable Royalty Damages

Hypothetical negotiation would have resulted in a **minimum per-unit reasonable royalty** of

**'966 Patent**

$0.82

**'885 Patent**

$0.87

November 5, 2019 /
September 30, 2022

November 24, 2020 /
November 15, 2022

Reply Expert Report of James E. Malackowski, January 23, 2023, Appendix 3.1-R

PDX3.9

# Determining A Reasonable Royalty



PDX3.10

# Determining A Reasonable Royalty



# Evaluation of Royalty



**Market Approach**

- How much is paid for comparable technologies?



**Income Approach**

- How much value is created by the patented technology?



**Cost Approach**

- Is there a technologically and economically viable non-infringing alternative?

PDX3.12

# Quantitative Indicators



**Market Approach**

- Comparable license agreements and industry technology payments



**Income Approach**

- Revenue earned by the Accused Instrumentalities due, specifically, to the Asserted Patents



**Cost Approach**

- Cost of non-infringing alternatives

PDX3.13

# Market Approach – Technology Valuation

Technology  *Comparison*









# Quantitative Indicators



**Market Approach**

- Comparable license agreements and industry technology payments



**Income Approach**

- Revenue earned by the Accused Instrumentalities due, specifically, to the Asserted Patents



**Cost Approach**

- Cost of non-infringing alternatives

PDX3.15

# Income Approach

**'966 Patent**
94.7 million
Google Home
app installs



MORE PRODUCTS

=

GREATER USAGE

=

MORE REVENUE

**'885 Patent**
14.1 million
Google Home,
Nest, and
Chromecast units

Supplemental Expert Report of James E. Malackowski, December 9, 2022, Sections 12.2 and 14.11, Appendix 7.2-S;
Reply Expert Report of James E. Malackowski, January 23, 2023, Appendix 7.4-R

PDX3.16

# Quantitative Indicators



**Market Approach**

- Comparable license agreements and industry technology payments



**Income Approach**

- Revenue earned by the Accused Instrumentalities due, specifically, to the Asserted Patents



**Cost Approach**

- Cost of non-infringing alternatives

PDX3.17

# Cost Approach

| |
|---|
| **Proposed NIA** |
| Non-Infringing |
| Commercially Acceptable |
| Technically Feasible |



"No Stand Alone Mode"

"No Overlapping Groups"

Rebuttal Expert Report of Dr. Kevin C. Almeroth, January 13, 2023, Section XVII;
Reply Expert Report of Dr. Kevin C. Almeroth, January 23, 2023, Section XV.A

PDX3.18

# Determining A Reasonable Royalty



# *Georgia-Pacific* Factors

| Licensing | The Invention | Economics |
|---|---|---|
| 1. Other licenses for these patent | 9. Advantages over substitutes | 5. Commercial relationship between the parties |
| 2. Comparable patents licensed or purchased by the infringer | 10. Nature and benefits of patented invention | 6. Derivative or convoyed sales |
| 3. Nature and scope of license | 11. Extent and benefit from infringer's use of the patent | 8. Profitability of product |
| 4. Established policy and licensing programs | 12. Customary industry value benchmarks | 14. The opinion of qualified experts |
| 7. Duration of the patent | 13. Portion of profit related to the invention | 15. Amount deemed reasonable as a result of hypothetical negotiations between licensee and patent holder |

*Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970)

PDX3.20

# *Georgia-Pacific* Factor # 1

## Other Licenses for these Patents



# *Georgia-Pacific* Factor # 1

## Other Licenses for these Patents

This Confidential Patent License Agreement ("**Agreement**"), by and between Lenbrook Industries Limited, having a primary place of business at 633 Granite Ct, Pickering, ON L1W 3K1, Canada ("**Lenbrook**"), and Sonos, Inc., a Delaware corporation having a primary place of business at 614 Chapala Street, Santa Barbara, CA 93101 ("**Sonos**"), is effective as of January 1, 2020 ("**Effective Date**") and executed as of July 28, 2020 ("**Execution Date**"). Each of Sonos and Lenbrook may also be referenced individually, a "**Party**"; collectively, the "**Parties**".

4.2.1.1 U.S. Licensing Royalties. For each Covered Product Sold in the United States (excluding those Sold for export), the following Royalty Rates shall apply:

| Sonos US Patent Portfolio Licensing Rates | | | | | |
|---|---|---|---|---|---|
| Units of Covered Product(s) Sold annually | 0-5,000 | 5,001-10,000 | 10,001-20,000 | 20,001-40,000 | 40,001+ |
| Royalty Rate | $12 | $15 | $19 | $24 | $30 |

CONFIDEN

This Confiden
Industries Limited, hav
Canada ("**Lenbrook**")
business at 614 Chapa
1, 2020 ("**Effective Da**
and Lenbrook may also

In considerati
good and valuable con
the Parties agree as fo

**Section 1.    Definitions**

"Acquiring En

"Acquired Par

"Acquired Pro
product lines acquired
Affiliated third party,
improvements, succes

"**Acquisition**" s

"**Affiliate**" mea
common Control with s

"Alternate For

"Clone Produ
Effective Date that h
(including elements un
first publicly announc
the other Party's unrel
a Party or its Affiliate
replacements thereof).

"**Control**" mea
outstanding shares rep
managing officers of a
fifty percent (50%) of
entity, or (iii) the powe
entity, by contract or o

"Covered Pro

B5142886.11

Highly Confidential - Attorneys' Eyes Only          TX6632, Page 1 of 22          SONOS-SVG2-00042923

CASE NO 3:20-cv-06754-WHA
DATE ENTERED
BY
DEPUTY CLERK



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
**TX6632**
3:20-cv-06754-WHA

# *Georgia-Pacific* Factor # 1

## Other Licenses for these Patents

### CONFIDENTIAL PATENT LICENSE AGREEMENT

This Confidential Patent License Agreement ("**Agreement**"), by and between Pass & Seymour, Inc. ("**Licensee**"), having a primary place of business at 50 Boyd Avenue, Syracuse, NY 13221, and Sonos, Inc. ("**Sonos**"), a corporation having a primary place of business at 614 Chapala Street, Santa Barbara, CA 93101, is effective as of December 1, 2020 ("**Effective Date**"). Sonos and Licensee (each individually, a "**Party**"; collectively, the "**Parties**") agree as follows.

4.2.1.1  U.S. Licensing Royalties. For each Covered Product Sold in the United States, the following  Royalty Rates shall apply:

**Sonos US Patent Portfolio Licensing Rates**

| Units of Covered Product(s) Sold annually | 0-5,000 | 5,001-10,000 | 10,001-20,000 | 20,001-40,000 | 40,001+ |
|---|---|---|---|---|---|
| Royalty Rate | $12 | $15 | $19 | $24 | $30 |



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

TX6631

3:20-cv-06754-WHA

SONOG-SVG2-00042905-922 at 905, 910.

PDX3.23

# *Georgia-Pacific* Factor # 1

## Patent Owner Licensing Concerns

| Negotiation Consideration | Commercial Competitor | NPE |
|:---:|:---:|:---:|
| **Pricing Pressure** | **RISK** | **NO RISK** |
| **Market Share Loss** | **RISK** | **NO RISK** |
| **Technology Reputation** | **RISK** | **NO RISK** |
| **Impact on Royalty Rate** | **INCREASE** | **DECREASE** |

Supplemental Expert Report of James E. Malackowski, December 9, 2022, Section 12.1.3

PDX3.24

# *Georgia-Pacific* Factor # 2

## Comparable Patents Licensed or Purchased by the Infringer

| Licensee | Malackowski | Reason | Google Expert | Reason |
|---|---|---|---|---|
| Times Square | ❌ | NPE; Worldwide | ❌ | Worldwide |
| Haltek | ❌ | NPE (via IIF) | ❌ | NPE (via IIF) |
| Vendaria Media | ❌ | NPE (via IIF) | ❌ | NPE (via IIF) |
| Outland Research | ❌ | NPE | ✅ | Similar |
| Peekaboo | ❌ | NPE | ❌ | None Provided |

Supplemental Expert Report of James E. Malackowski, December 9, 2022, Sections 11.7 and 12.1.2;  Reply Expert Report of James E. Malackowski, January 23, 2023, Section 6; Rebuttal Expert Report of W. Christopher Bakewell, January 13, 2023, pp. 181-204.

PDX3.25

# *Georgia-Pacific* Factor # 2

## Outland Research



Google was recently assigned a number of unusual and interesting patents from Outland Research, LLC, from inventor Louis B. Rosenberg, a Stanford PhD, Cal Polytech Professor on leave, and most recently professional film maker. A number of Rosenberg's inventions

These patents cover a wide range of inventions, but none of them really involve search. In addition to an alternative game controller or computer input device, there's another patent that describes controlling electronic devices by looking at them and commanding them. Another watches where you're looking on a computer or ebook reader to save your place if you look away or switch documents. A pair of the Outland Research patents provide ways to use your cell phone to collaboratively rate or reject songs that might be played in restaurants or nightclubs. A series of other patents add enhancements to cell phones and/or media players such as the ability for a group of people to run their own collaborative radio station, or to shake a media player in a certain way to change songs or playlists.



**TX6913**

3:20-cv-06754-WHA

Slawski, B., "Google Picks Up Hardware and Media Patents from Outland Research," *SEObytheSea.com*,
https://www.seobythesea.com/2011/09/google-picks-up-hardware-and-media-patents-from-outland-research

PDX3.26

# *Georgia-Pacific* Factor # 3

## Nature and Scope of License





**Non-Exclusive
Worldwide Portfolio**

**Non-Exclusive
U.S. Asserted Patents Only**

# *Georgia-Pacific* Factor # 4

## Established Policy and Licensing Programs

# Sonos **actively maintained** its patent monopoly

---

**Sonos and Lenbrook Reach Settlement In Patent Infringement Case**

*Undisclosed terms include multi-year licensing deal associated with all BluOS enabled solutions worldwide*

**Santa Barbara, Calif. – July 30, 2020** – Sonos (Nasdaq: SONO) and Lenbrook Industries today announced they have reached a confidential settlement in Sonos' patent infringement lawsuit against Lenbrook Industries, and Lenbrook America, which sell the Bluesound high-resolution multizone audio systems. As part of this settlement, Lenbrook Industries will pay royalties for a license to Sonos' patents for all BluOS enabled devices.

"Sonos is a company founded on innovation – it is a part of our DNA. Nearly twenty years ago, we invented multi-room wireless streaming, and since then we have developed many of the innovations that enable today's listening experiences and will also enable tomorrow's," said Eddie Lazarus, Chief Legal Officer.  "We welcome and encourage competition, and want to make sure that all companies entering this space recognize the strength of our IP and provide appropriate compensation.  Today's settlement reflects those principles."

---

Supplemental Expert Report of James E. Malackowski, December 9, 2022, Section 14.4; SONOS-SVG2-00042923-944 at 941

PDX3.28

# *Georgia-Pacific* Factor # 5

## Commercial Relationship Between the Parties

# Google **recognizes competition** with Sonos








Supplemental Expert Report of James E. Malackowski, December 9, 2022, Section 14.5;
GOOG-SONOSNDCA-00056580-600 at 583; GOOG-SONOSNDCA-00056500-572 at 502.

PDX3.29

# *Georgia-Pacific* Factor # 6

## Derivative or Convoyed Sales

# Google generates **significant indirect revenue** from related non-hardware sales



Chromecast, Nest, Pixel                    YouTube, YouTube TV, Search, E-commerce

Supplemental Expert Report of James E. Malackowski, December 9, 2022, Sections 13 and 14.6

PDX3.30

# *Georgia-Pacific* Factor # 7

## Duration of the Patent



Supplemental Expert Report of James E. Malackowski, December 9, 2022, Section 14.7

PDX3.31

# *Georgia-Pacific* Factors # 9 & 10

## Advantages Over Substitutes Nature and Benefits of Patented Invention

| | |
|---|---|
| 12 | 709.    For instance, the ability to use the Accused Google Controllers to create and save |
| 13 | predefined speaker groups of Accused Google Players that can later be launched on demand for |
| 14 | synchronized playback provides advantages over other technology for grouping "zone players" in |
| 15 | a networked multi-zone audio system that requires a user to create a group from scratch each time |
| 16 | the user wishes to listen to synchronized audio on a different group by selecting the particular |
| 17 | "zone players" to include in the group in an ad-hoc manner, one-by-one, at the time that the group |
| 18 | is to be activated for synchronous playback. *See* '885 Patent at 8:30-45. As the '885 Patent notes, |
| 19 | this ad-hoc grouping process "may sometimes be quite time consuming," because each time the |
| 20 | user wishes to activate a different group for synchronous playback, the user has to repeat the ad- |
| 21 | hoc process of selecting each of the "zone players" to include in the group even if it is a grouping |
| 22 | of "zone players" that has previously been formed and activated by the user on many other |
| 23 | occasions in the past. *Id.* By incorporating Sonos's claimed "zone scene" technology into the |
| 24 | Accused Google Controllers and the Accused Google Players, a user can create and save as many |
| 25 | speaker groups as desired using the Google Home app, and then later listen to synchronized audio |
| 26 | on any one of the pre-saved speaker groups on demand by simply selecting the speaker group for |
| 27 | launch via, for example, the Google Home app, Google's YouTube Music app, or the Spotify app. |
| 28 | This is advantageous because instead of having to create each group from scratch by selecting the |
| 1 | Accused Google Players to include in the speaker group in a "time consuming" ad-hoc manner at |
| 2 | the time the user wishes to activate the group for synchronous playback, the user can simply select |
| 3 | a pre-saved speaker group for launch. |

Supplemental Expert Report of James E. Malackowski, December 9, 2022, Sections 14.9 and 14.10

PDX3.33

# *Georgia-Pacific* Factor # 11

## Extent and Benefit from Infringer's Use of the Patent

# Google **markets and promotes** the benefits provided by the Asserted Patents

## Listen, from room to room to room.



"Hey Google, play party playlist on my speakers group"

Nest speakers work together, so you can create your own audio system.

---

### Group your Google Assistant devices

You can create groups of speakers, Smart Displays, and Smart Clocks so all of your devices play the same audio throughout your house.

This feature doesn't work on Bose or Sonos speakers that have the Google Assistant.

### What you need

You need two or more of the devices listed below. You can group speakers, Smart Displays, and Smart Clocks in any combination.

- Google Home
- Google Nest Speakers
- Chromecast (2nd generation and above)
- Smart Displays with Google Assistant
- Chromecast Audio
- Speakers with Chromecast built-in
- Smart Clock

# *Georgia-Pacific* Factor # 12

## Customary Industry Value Benchmarks

| Wired System | Mobile Application | Embedded Software |
|:---:|:---:|:---:|
|  |  |  |
|  |  | **MOST VALUABLE** |

Sonos, "Sonos Investor Event," https://s22.q4cdn.com/672173472/files/doc_presentations/2021/03/FINAL-Sonos-Investor-Event-Presentation-3.9.21.pdf

# *Georgia-Pacific* Factor # 12

## IFTTT – If This Then That





Supplemental Expert Report of James E. Malackowski Report, December 9, 2022, Section 12.2.4.1

PDX3.36

# *Georgia-Pacific* Factor # 12

## IFTTT Service Options



Supplemental Expert Report of James E. Malackowski, December 9, 2022, Sections 12.2.4.2

PDX3.37

# *Georgia-Pacific* Factor # 12

## IFTTT Technology Comparison

| Capability | IFTTT | Sonos Patents |
|---|:---:|:---:|
| Create predefined speaker group | ✅ | ✅ |
| Save predefined speaker group | ✅ | ✅ |
| Invoke predefined speaker group later | ✅ | ✅ |
| Name predefined speaker group to common theme | ✅ | ✅ |
| Allows predefined speaker groups to include overlap | ✅ | ✅ |
| Configure speaker group for synchronous media playback | ❌ | ✅ |

Supplemental Expert Report of James E. Malackowski, December 9, 2022, Section 12.2.4.1;
Reply Expert Report of Dr. Kevin C. Almeroth, January 23, 2023, Section XVII

PDX3.38

# *Georgia-Pacific* Factor # 12

## Comparable Technology Market Price



($1.99 USD or more)

**Minimum** monthly price offered, $1.99, as starting point

# *Georgia-Pacific* Factor # 12

## Apportion for Smartphone Lifespan

### The average life of a smartphone

The opinions about the average lifespan of a smartphone are quite varied. The Consumentenbond estimates the average lifespan at 2.5 years. Other sources indicate that a new smartphone will last 15 to 18 months. The lifespan of your smartphone depends on how you handle your device. Yet, however economical you are on your device, there are several factors that affect lifespan. You can read which ones are below.

**The average smartphone can last for about 2 to 4 years at about the 3-year mark you'll notice that the hardware on your phone is significantly outdated and your battery will have a capacity far less than it's original, or it might be no longer functional.**

Smartphone average lifespan is **2.5 years**

Supplemental Expert Report of James E. Malackowski, December 9, 2022, Section 12.2.4.3

PDX3.40

# *Georgia-Pacific* Factor # 12

## Apportion for Multi-Speaker Households





"The Smart Audio Report – Spring 2020," *NPR*, slide 9, https://www.nationalpublicmedia.com/uploads/2020/04/The-Smart-Audio-Report_Spring-2020.pdf

PDX3.41

# *Georgia-Pacific* Factor # 12

## Discounted IFTTT Price – '966 Patent

| '966 Patent Metric | Q4 2019 | Q1 2020 | Q2 2020 | Q3 2020 | Q4 2020 | Q1 2021 |
|---|---|---|---|---|---|---|
| Quarterly Subscription Fee | $ 0.60 | $ 0.60 | $ 0.60 | $ 0.60 | $ 0.60 | $ 0.60 |
| Partial Period Factor | 0.153 | 1.000 | 1.000 | 1.000 | 1.000 | 1.000 |
| Present Value Factor | 0.994 | 0.953 | 0.870 | 0.799 | 0.735 | 0.675 |
| **Net Present Value** | **$ 0.09** | **$ 0.57** | **$ 0.52** | **$ 0.48** | **$ 0.44** | **$ 0.40** |

| '966 Patent Metric | Q2 2021 | Q3 2021 | Q4 2021 | Q1 2022 | Q2 2022 | Total |
|---|---|---|---|---|---|---|
| Quarterly Subscription Fee | $ 0.60 | $ 0.60 | $ 0.60 | $ 0.60 | $ 0.60 | $ 6.57 |
| Partial Period Factor | 1.000 | 1.000 | 1.000 | 1.000 | 0.847 | *n/a* |
| Present Value Factor | 0.621 | 0.571 | 0.524 | 0.482 | 0.446 | *n/a* |
| **Net Present Value** | **$ 0.37** | **$ 0.34** | **$ 0.31** | **$ 0.29** | **$ 0.23** | **$ 4.04** |

# *Georgia-Pacific* Factor # 12

## Discounted IFTTT Price – '885 Patent

| '885 Patent Metric | Q4 2020 | Q1 2021 | Q2 2021 | Q3 2021 | Q4 2021 | Q1 2022 |
|---|---|---|---|---|---|---|
| Quarterly Subscription Fee | $ 0.60 | $ 0.60 | $ 0.60 | $ 0.60 | $ 0.60 | $ 0.60 |
| Partial Period Factor | 0.101 | 1.000 | 1.000 | 1.000 | 1.000 | 1.000 |
| Present Value Factor | 0.996 | 0.961 | 0.892 | 0.831 | 0.773 | 0.720 |
| **Net Present Value** | **$ 0.06** | **$ 0.57** | **$ 0.53** | **$ 0.50** | **$ 0.46** | **$ 0.43** |

| '885 Patent Metric | Q2 2022 | Q3 2022 | Q4 2022 | Q1 2023 | Q2 2023 | Total |
|---|---|---|---|---|---|---|
| Quarterly Subscription Fee | $ 0.60 | $ 0.60 | $ 0.60 | $ 0.60 | $ 0.60 | $ 6.57 |
| Partial Period Factor | 1.000 | 1.000 | 1.000 | 1.000 | 0.899 | *n/a* |
| Present Value Factor | 0.670 | 0.624 | 0.581 | 0.541 | 0.506 | *n/a* |
| **Net Present Value** | **$ 0.40** | **$ 0.37** | **$ 0.35** | **$ 0.32** | **$ 0.27** | **$ 4.27** |

# *Georgia-Pacific* Factor # 12

## Per-Unit Quantitative Indicators

| | '966 Patent | '885 Patent |
|---|---|---|
| Discounted IFTTT Price | $4.04 | $4.27 |
| | ✕ | ✕ |
| Multi-Speaker Household Apportionment | **29%** | **29%** |
| Quantitative Indicator | **$1.17** | **$1.24** |

Supplemental Expert Report of James E. Malackowski, December 9, 2022, Section 12.2.4, Appendices 4.1.3 and 4.2.3

PDX3.44

# *Georgia-Pacific* Factor # 12

## Conservative Nature of Quantitative Indicators

- Minimum **$1.99** subscription price



- Use only **2 of 20 applets** to create one zone scene



- Limit to smartphone lifespan **2.5 years**



- Exclude households with **2 or less** devices



Supplemental Expert Report of James E. Malackowski, December 9, 2022, Section 12.2.4.3

# *Georgia-Pacific* Factor # 13

## Portion of Realizable Profit Attributable to Invention

### <u>Google Play Store Help Center</u>

## Service fees

Apps and in-app products sold through Google Play's billing system or an Additional Billing System (as defined below) in accordance with the Payments policy are subject to a service fee.

As of January 1, 2022, that service fee is equivalent to:

- For developers who are enrolled in the 15% service fee tier, the service fee is:
  - 15% for the first $1M (USD) of earnings each year,
  - 30% for earnings in excess of $1M (USD) each year.
- For developers who are not enrolled in the 15% service fee tier, the service fee is 30%.
- For automatically renewing subscription products purchased by subscribers, the service fee is 15%.



PDX3.46

# *Georgia-Pacific* Factor # 14

## The Opinion of Qualified Experts

I have considered the opinion testimony of qualified experts, including:

**Dr. Almeroth**



These considerations are reflected **throughout my discussion** of both the **valuation approaches** and the *Georgia-Pacific* Factors

# *Georgia-Pacific* Factor # 15



Key Valuation
Inputs

*Georgia-Pacific*
Analysis

Reasonable
Royalty

Unit-Based

Apportioned
IFTTT Price

No Alternatives
Available



70% SONOS

30% Google

**Per-Unit
Reasonable
Royalty Rate**

Supplemental Expert Report of James E. Malackowski, December 9, 2022, Section 14.15

PDX3.48

# *Georgia-Pacific* Factor # 15



Supplemental Expert Report of James E. Malackowski, December 9, 2022, Section 14.15, Appendices 4.1.2 and 4.2.2

PDX3.49

# Reasonable Royalty Damages

Hypothetical negotiation would have resulted in a **minimum per-unit reasonable royalty** of

| '966 Patent | '885 Patent |
|:---:|:---:|
| $0.82 | $0.87 |

November 5, 2019 /
September 30, 2022

November 24, 2020 /
November 15, 2022

Reply Expert Report of James E. Malackowski, January 23, 2023, Appendix 3.1-R

PDX3.50

# Reasonable Royalty Damages

## Hypothetical negotiation would have resulted in a **minimum reasonable royalty** of

| '966 Patent |
| :--- |
| 94,660,967 |
| x                    $0.82 |
| **$77,546,923** |

November 5, 2019 /
September 30, 2022

| '885 Patent |
| :--- |
| 14,133,558 |
| x                    $0.87 |
| **$12,246,294** |

November 24, 2020 /
November 15, 2022

Reply Expert Report of James E. Malackowski, January 23, 2023, Appendix 3.1-R

PDX3.51