QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Sean Pak (Bar No. 219032)
  seanpak@quinnemanuel.com
  Melissa Baily (Bar No. 237649)
  melissabaily@quinnemanuel.com
  James Judah (Bar No. 257112)
  jamesjudah@quinnemanuel.com
  Lindsay Cooper (Bar No. 287125)
  lindsaycooper@quinnemanuel.com
  Iman Lordgooei (Bar No. 251320)
  imanlordgooei@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:    (415) 875-6600
Facsimile:    (415) 875-6700

  Marc Kaplan (*pro hac vice*)
  marckaplan@quinnemanuel.com
191 N. Wacker Drive, Ste 2700
Chicago, Illinois 60606
Telephone:    (312) 705-7400
Facsimile:    (312) 705-7401

*Attorneys for GOOGLE LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SONOS, INC.,<br><br>　　　　Plaintiff and Counter-Defendant,<br><br>　　vs.<br><br>GOOGLE LLC,<br><br>　　　　Defendant and Counter-Claimant. | Case No. 3:20-cv-06754-WHA<br>Consolidated with Case No. 3:21-cv-07559-WHA<br><br>**GOOGLE LLC'S RESPONSE TO COURT'S REQUEST RE PRIORITY DATE**<br><br>Location: Courtroom 12, 19th Floor<br>Judge:　　Hon. William Alsup |

**TABLE OF CONTENTS**

I.  GOOGLE CONSISTENTLY DISPUTED SONOS'S ALLEGED PRIORITY DATE ..................................................................................................................1

    A.  Google Disputed Sonos's Alleged 2006 Priority Date During Fact Discovery ..................................................................................................2

    B.  Google Disputed Sonos's Alleged 2006 Priority Date During Expert Discovery ..................................................................................................3

    C.  Google's Briefs And Oral Arguments Throughout This Case Never Agreed To The Alleged 2006 Priority Date ...............................................4

    D.  Google Disputed Sonos's Alleged Priority Date At And Before Trial, And Stipulated Only To Sonos's Conception Date .........................................5

II.  RELATIONSHIP BETWEEN THE STIPULATED CONCEPTION DATE AND PRIORITY DATE ........................................................................................7

III. THE FINAL JUDGMENT SHOULD BE VACATED PENDING RESOLUTION OF, *INTER ALIA*, THE WRITTEN DESCRIPTION ISSUE ...........................12

# TABLE OF AUTHORITIES

**Page**

### Cases

*Agilent Techs., Inc. v. Affymetrix, Inc.*,
  567 F.3d 1366 (Fed. Cir. 2009) ............................................................................................... 14

*Ariad Pharms., Inc. v. Eli Lilly & Co.*,
  598 F.3d 1336 (Fed. Cir. 2010) (*en banc*) ................................................................................ 8

*Burroughs Wellcome Co. v. Barr Labs., Inc.*,
  40 F.3d 1223 (Fed. Cir. 1994) .................................................................................................. 8

*Crown Operations Int'l, Ltd. v. Solutia Inc.*,
  289 F.3d 1367 (Fed. Cir. 2002) ........................................................................................... 8, 12

*E.I. du Pont De Nemours & Co. v. Unifrax I LLC*,
  921 F.3d 1060 (Fed. Cir. 2019) ................................................................................................ 8

*In re Lew*,
  257 F. App'x 281 (Fed. Cir. 2007) ......................................................................................... 15

*Mylan Pharms. Inc. v. Merck Sharp & Dohme Corp.*,
  50 F.4th 147 (Fed. Cir. 2022) ................................................................................................... 8

*Rivera v. Int'l Trade Comm'n*,
  857 F.3d 1315 (Fed. Cir. 2017) ............................................................................................... 13

*In re VerHoef*,
  888 F.3d 1362 (Fed. Cir. 2018) ................................................................................................ 7

### Statutes

35 U.S.C. § 102(a) ........................................................................................................................ 8

35 U.S.C. § 102(b) ........................................................................................................................ 8

35 U.S.C. § 102(g) ........................................................................................................................ 8

35 U.S.C. § 112 ............................................................................................................................. 8

### Other Authorities

Fed. R. Civ. P. 59(d) ................................................................................................................... 13

N.D. Cal. Patent L.R. 3-3 ............................................................................................................. 2

Google hereby submits its response to the Court's request for information regarding whether "Google stipulated to or admitted that the priority date for the patents-in-suit was September 12, 2006." Dkt. 796 at 2. In short, Google never stipulated to nor admitted that Sonos was entitled to any priority date for the '885 and '966 patents. Rather, Google acknowledged that the patents, on their face, claim priority to a September 12, 2006 provisional application, and contested whether Sonos was entitled to that date. Moreover, although Google stipulated to the December 21, 2005 *conception* date for the patents-in-suit, that is a different concept than a priority date. The conception date is the date an invention is conceived, whereas the priority date is the effective filing date of the first patent application on the invention. The two dates typically differ, and did here. Sonos's conception date was based on Mr. Lambourne's conception documents, including his description of the Sonos 2005 prior art system's "All Zones-Party Mode" zone scene. The 2006 provisional application, however, contains no such disclosure and, in fact, was scrubbed to remove any narrative mention of a party mode and to omit key disclosures stating that the prior art "All Zones-Party Mode" is an example of a zone scene. Thus, as explained in further detail below, there is no relevant relationship here between the stipulated conception date and priority date and, as such, Google respectfully requests that final judgment be vacated pending resolution of the instant written description issue. *See also* Dkt. 788 at 5-7.

## I. GOOGLE CONSISTENTLY DISPUTED SONOS'S ALLEGED PRIORITY DATE

To answer the Court's request, Google has reviewed its discovery responses, invalidity contentions, expert reports and deposition transcripts, hearing transcripts, and other stipulations and filings, as well as statements and representations made during trial. Based on that review, Google has found no instance in which it stipulated to or admitted that the priority date (*i.e.*, effective filing date) for the patents-in-suit was September 12, 2006. To the contrary, Google has consistently disputed this date due to, among other things, the 2006 provisional application's failure to disclose the claimed standalone mode limitations that were added during prosecution of the patents-in-suit in 2019 to overcome the Yamaha DME prior art reference. *See* Dkt. 247-3 at 18-25 ("Sonos filed the application that led to the '885 Patent on April 12, 2019, but that patent application claims priority through a long chain of continuation applications all the way back to a provisional

application filed on September 12, 2006. In the intervening **13 years** of patent prosecution, Sonos 'inappropriately added new matter during the claim amendment process,' rendering the '885 Patent invalid."); TX0004 at 30-31, 810, 4577; TX0006 at 4087, 5850-5851.

### A.   *Google Disputed Sonos's Alleged 2006 Priority Date During Fact Discovery*

Throughout discovery in this case, Google has noted that Sonos bears the burden of proving it is entitled to the 2006 date of its provisional application as the priority date for the '885 and '966 patents, and it has never admitted that Sonos is entitled to or has proved that date. For example, Google's December 6, 2021 invalidity contentions state that "**Sonos asserted** the [September 12, 2006] priority dates in its October 21, 2021 Disclosure of Asserted Claims and Infringement Contentions" for the '966 and '885 patents. Ex. A, Google's Dec. 6, 2021 Patent L.R. 3-3 Invalidity Contentions at 6 (all emphases added herein unless noted otherwise). But Google did not admit to nor agree that this is the appropriate priority date. Indeed, Google contended that "[i]t is **Sonos' burden** to show entitlement to its asserted priority dates, and Sonos **has failed** to meet that burden." *Id.* Google also identified several limitations of the asserted claims that lacked "an enabling disclosure of and written description support" in "the specification **and original patent application**," including the overlapping zone scenes and standalone mode limitations, among others. *Id*. at 19-20, 26. Google's invalidity contentions thus alleged that the asserted claims "cannot claim priority to earlier continuation applications on the face of the Asserted Patents." *Id*. at 6. Google also noted that "[n]othing in these contentions constitutes an admission concerning the priority date, conception date, or date of reduction to practice of the Asserted Claims" and "reserve[d] the right to modify or supplement … including in response to any positions taken or information disclosed regarding the priority date, conception date, or date of reduction to practice of the Asserted Claims." *Id.* at 86.

Similarly, in its interrogatory responses, Google neither admitted nor agreed to Sonos's claim to a 2006 priority date for the '885 and '966 patents. For example, Sonos served Interrogatory No. 19 asking for the legal and factual basis for each defense pled in Google's Answer and Counterclaims. Google's objections and responses to this interrogatory included a reference to the priority chain of the '966 patent as indicated on the face of the '966 patent, which "claim[ed]"

1  priority to U.S. Provisional App No. 60/825,407 filed on September 12, 2006.  *See* Google's Tenth
2  Suppl. Objections and Responses to Sonos's First Set of Interrogatories at 85.  But Google in no
3  way indicated agreement with the alleged September 12, 2006 priority date.  *Id.*  As Google's
4  invalidity contentions had made clear, Google did not agree that Sonos was entitled to this alleged
5  priority date.  The alleged September 12, 2006 priority date did not come up in any other
6  interrogatories or responses, or in any other written discovery (*e.g.*, requests for admission).

7        The record thus shows that Google disputed Sonos's alleged 2006 priority date based on the
8  original applications' failure to disclose key claim limitations including standalone mode and
9  overlapping zone scenes.  But when the Court rejected Google's argument in its showdown
10 infringement summary judgment opposition that the '885 patent was invalid for lack of written
11 description support on these grounds, construed Google's opposition as cross-motion of invalidity
12 under § 112, and then denied that motion (*see* Dkt. 247-3 (Google Opp.); Dkt. 309 (Court's Order)),
13 Google believed the Court also resolved the priority date dispute.  As explained in prior briefing on
14 this issue, Google did not appreciate until further investigation during trial at the request of the Court
15 that the key element of alleged written description support for overlapping zone scenes identified
16 by Sonos and relied upon by the Court in the showdown order had been added during prosecution
17 from an unrelated portion of the 2006 provisional application and, thus, constituted improper new
18 matter.  *E.g.*, Dkts. 785, 788.  Simply put, Google never acceded to Sonos's alleged 2006 priority
19 date.

20     **B.**    ***Google Disputed Sonos's Alleged 2006 Priority Date During Expert Discovery***

21       Google also reviewed the relevant expert reports and deposition testimony in this case and
22 found no admissions or agreement regarding the alleged 2006 priority date of the '885 and '966
23 patents.  For example, in ¶ 66 of Dr. Schonfeld's June 22, 2022 expert report, he opined that the
24 "'885 patent *claims* priority to an earlier application with a priority date of September 11, 2007"
25 and that "**Sonos has alleged** that the ''885 patent is entitled to an earlier effective filing date,
26 September 12, 2006," but he did not admit or otherwise concede that Sonos is actually ***entitled*** to
27 either of those dates. Ex. B, ¶ 67.  To the contrary, Dr. Schonfeld expressly stated in ¶ 66 of the
28 same report: "I ***do not agree*** that Sonos adequately disclosed the invention or was in possession of

the invention at an earlier date." And in § XI of his report (¶¶ 702-722), Dr. Schonfeld provided his opinion that neither the specification of the '885 patent nor the 2006 provisional application include written description support for the alleged invention. Dr. Schonfeld presented similar opinions in his November 30, 2023 expert report. *E.g.*, Ex. C, Schonfeld Nov. 30, 2022 Rpt. at § VI.E ("I do not agree that Sonos adequately disclosed the invention or was in possession of the invention at an earlier date."). And in describing the prosecution histories of the '885 and '966 patents in the November 30, 2023 report, Dr. Schonfeld expressly noted that Sonos amended the specifications and asserted claims to overcome the examiner's rejection of the claims in view of the Yamaha DME prior art reference. *Id.* at ¶¶ 72-80, 84-87. In deposition, Dr. Schonfeld also expressed disagreement with Sonos's alleged priority date; he simply testified that even if the Court agreed that Sonos was entitled to its alleged priority date, his invalidity opinions would not be affected. Schonfeld Feb. 3, 2023 Dep. Tr. at 18:6-22:21.[1] Simply put, Google disputed Sonos's alleged 2006 priority date during expert discovery just as it had during fact discovery.

        C.    ***Google's Briefs And Oral Arguments Throughout This Case Never Agreed To The Alleged 2006 Priority Date***

Google has also reviewed relevant briefs and oral arguments presented to the Court in this case and could not find any instance in which Google stipulated or agreed to a 2006 priority date for the '885 and '966 patents. In its summary judgment motion asserting invalidity of the asserted claims of the '885 and '966 patents, Google presented invalidity theories assuming a 2006 priority date (in view of the Court's showdown order), but without agreeing that Sonos is actually entitled to that date. *E.g.*, Dkt. 483 at 16 ("the **claimed** earliest effective filing date for the '885 and '966 patents is September 2006"); *id.* at 17 (explaining the Sonos Forums posts "were created and publicly available prior to Sonos's September 12, 2006 provisional filing date" without agreeing that the provisional date is the actual priority date to which the '885 and '966 patents are entitled).

---

[1] Google similarly argued in its trial brief that the prior art Sonos Forums posts and Squeezebox system qualify as prior art even based on Sonos's provisional patent filing "on September 12, 2006." Dkt. 621-3 at 4, 10, 12. But this does not mean that Google agreed or stipulated that Sonos was entitled to the 2006 date.

Similarly, in its opposition to Sonos's patent showdown motion for summary judgment of infringement, Google noted that the '885 patent *claims* priority to September 12, 2006, but did not agree that Sonos was *entitled* to that date. Dkt. 247-3 at 19 ("Sonos filed the application that led to the '885 Patent 3 on April 12, 2019, but that patent application *claims* priority through a long chain of continuation applications all the way back to a provisional application filed on September 12, 2006.") (emphasis added). Indeed, Google specifically argued that it could not infringe the asserted claims of the '885 patent because they were invalid due to lack written description support and also argued that the 2006 provisional application failed to disclose the claimed standalone mode limitations added during prosecution of the '885 patent in 2019 (and also the '966 patent). *Id.* at 19-25.

### D.  *Google Disputed Sonos's Alleged Priority Date At And Before Trial, And Stipulated Only To Sonos's Conception Date*

Google also did not agree at or before trial that Sonos was entitled to a 2006 (or even 2007) priority date. In the Pretrial Order, Google stipulated to certain undisputed facts, including that the patents *claim*, on their face, priority to a September 12, 2006 provisional application. Dkt. 615 at 7 ("The '885 patent issued on November 24, 2020 and claims priority, through a series of patent applications, to U.S. Provisional No. 60/825,407 filed on September 12, 2006.").[2] Once again, Google neither admitted nor stipulated that Sonos was *entitled* to any priority date, let alone the 2006 date of its provisional application. To the contrary, Google objected each time Sonos proposed that the parties' joint timeline of key dates for the jury include an identification of September 12, 2006 as the asserted patents' "Effective Filing Date." Instead, Google only agreed to identify September 12, 2006 as the date Sonos's "Provisional application [was] filed." Ex. D at 2. Similarly, when the Court requested during trial that each side propose a timeline of important dates, Google identified September 12, 2006 as the "Provisional application filing date," *not* the priority or effective filing date. Dkt. 713. Further, in the parties' proposed jury instruction regarding

---

[2] In the Pretrial Order, Google included invalidity for both patents as "Factual Issue[s] That Remain to Be Tried" (Dkt. 615 at 8) but did not separately identify the priority date issue because the Court had previously ruled on Google's related written description defense. *See supra* § I.A.

"Invalidity – Perspective of One of Ordinary Skill in the Art" (No. 15), Google struck out language from the Northern District of California's Model Rules that referred to the "effective filing date of the patents," and instead proposed language referring to the "relevant timeframe" for purposes of the prior art that Google was presenting at trial. Dkt. 617 at 42.[3]

Google also did not represent during trial that September 12, 2006 was the priority or effective filing date of the '885 and '966 patents. Rather, it was **Sonos's** counsel who represented to the Court that, with respect to its zone scene patents, "[a]ll of them have a priority date stemming from a provisional patent that was filed in 2006." Trial Tr. at 743:7-16. Google's counsel, on the other hand, argued that the 2006 provisional application did **not** support the asserted claims. Trial Tr. at 951:13-961:23, 971:20-975:15 (explaining that the portion of the asserted patents' specifications cited for written description support of overlapping zone scenes was transposed from an unrelated portion of the 2006 provisional application discussing dynamic zone groupings, not zone scenes).[4] Indeed, Google's counsel indicated during trial that "if, in fact, the 2006 provisional is not providing written description support and they're stuck with the amendment date, which is two, three years after our product was released" then the asserted claims would be invalidated. *Id*. at 961:16-23.

Google also did not agree that the 2007 filing date of Sonos's first non-provisional patent

---

[3] The dispute with Sonos regarding this instruction was whether the "relevant timeframe" for the '885 and '966 patents was "2005" (Sonos's proposal) or "between December 2005 and September 2006" (Google's proposal). Dkt. 617 at 41-42. These proposed jury instructions were submitted before Google stipulated to the December 2005 conception date, and accordingly Google argued that the relevant timeframe for purposes of the "Perspective of One of Ordinary Skill in the Art" was not the (still disputed) conception date, but rather the timeframe between the alleged conception date and the alleged priority date. See Dkt. 620 at 12. Similarly, in the proposed instruction regarding "Invalidity – Obviousness" (No. 19), Google disputed the December 2005 conception date and took the position that for purposes of obviousness the earliest alleged priority date was September 2006. Dkt. 617 at 59. Google took the same position in its Trial Brief, *i.e.*, that the 2005 Sonos forum posts and Squeezebox system are undisputedly prior art because they predate both the alleged conception date (December 21, 2005) and the alleged priority date (September 12, 2006). *See* Dkt. 621-3 at 10 and 12.

[4] Moreover, Google's expert, Dr. Schonfeld, testified at trial that "[t]he **alleged** priority date is 2006," and that his invalidity opinions are based on that alleged date—but he never agreed Sonos was actually **entitled** to that date. Trial Tr. (Schonfeld) at 1487:15-20.

application was the appropriate priority date. Indeed, Google submitted briefing to show that nothing in the 2007 non-provisional patent application supports or discloses the concept of overlapping zone scenes. *See* Dkt. 729 at 2-10 ("The '853 patent, however, fails to provide adequate written description for the asserted claims. There is no express disclosure of overlapping zone scenes because the '853 patent discloses grouping, un-grouping, and/or saving existing groups, which would have been dynamic groups and, thus, non-overlapping.").

Google did stipulate to December 21, 2005 as the earliest date of *conception* for the asserted patents (*e.g.*, Trial Tr. at 446:18-447:7), but as discussed below, conception dates and priority dates are distinct concepts based on different factual premises. Indeed, even Sonos's counsel recognized the distinction pointing out that December 21, 2005 is the conception date of the asserted patents, *not* the priority date. Trial Tr. at 451:2-9 (clarifying for the jury that December 21, 2005 is the agreed-upon conception date).

Consistent with his statements during discovery, Dr. Schonfeld testified at trial that "[t]he *alleged* priority date is 2006" and that his invalidity opinions were based on that alleged date—but he never agreed that Sonos was actually *entitled* to that date. Trial Tr. at 1487:15-20.

In short, Google neither stipulated nor agreed to any alleged priority date for the '885 and '966 patents.

## II.     RELATIONSHIP BETWEEN THE STIPULATED CONCEPTION DATE AND PRIORITY DATE

At various points during the trial, the Court inquired into the "priority date" of the asserted patents, and the parties responded to the Court with (1) their positions regarding the priority claims on the face of the patents and (2) Sonos's claimed "conception date." The conception date and the priority claim on the face of the patents are *two different legal concepts* that turn on *different sets of underlying facts*.

"Conception is the touchstone of invention and it requires a definite and permanent idea of an operative invention, including every feature of the subject matter sought to be patented." *In re VerHoef*, 888 F.3d 1362, 1366 (Fed. Cir. 2018), as amended (May 7, 2018) (cleaned up). "An idea is definite and permanent when the inventor has a specific, settled idea, a particular solution to the

problem at hand, not just a general goal or research plan." *Id.* If the applicant seeks to benefit from the alleged conception date, the applicant must show diligence through the time of an actual or constructive reduction to practice, the latter "occurring when a patent application is filed." *E.I. du Pont De Nemours & Co. v. Unifrax I LLC*, 921 F.3d 1060, 1075 (Fed. Cir. 2019); *Mylan Pharms. Inc. v. Merck Sharp & Dohme Corp.*, 50 F.4th 147, 154 (Fed. Cir. 2022) (discussing diligence). Conception/invention dates matter for certain purposes such as anticipation under pre-AIA 35 U.S.C. §§ 102(a) and 102(g).

With respect to priority or effective filing date, however, the focus is not on the applicant's conception but, rather, the date of the first-filed patent application that fully enables and provides written description support for the alleged invention. *E.g.*, *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1355 (Fed. Cir. 2010) ("written description is determined as of the filing date") (*en banc*). The priority/effective filing date matters for other legal purposes, including anticipation under pre-AIA 35 U.S.C. § 102(b) and post-AIA 35 U.S.C. § 102(a).

The inventor's conception and reduction to practice are, therefore, two different steps in the inventive process, each with its own requirements and each with its own legal significance. The dates are related insofar as both require an adequate and concrete description of the alleged invention. In the case of conception, the evidence must prove "the formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice," including "every feature of the claimed invention." *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1228 (Fed. Cir. 1994) (citing and quoting cases) (also explaining that the alleged invention must be "so clearly defined in the inventor's mind that only ordinary skill would be necessary to reduce the invention to practice, without extensive research or experimentation"). Similarly, to establish an alleged priority date, the inventor's application must include a written description at a level of detail that fully and adequately "demonstrate[s] that the inventor had possession of the invention being claimed at the time the patent application was filed" (35 U.S.C. § 112) and that does not leave any novel aspects of the invention to inference. *Crown Operations Int'l, Ltd. v. Solutia Inc.*, 289 F.3d 1367, 1380 (Fed. Cir. 2002). Nevertheless, conception of an invention within the inventor's mind and submission of a patent application with

a written description demonstrating possession to others are different events, and the former may and typically does occur well before the latter.

Here, there were key *differences* between the basis for Sonos's December 21, 2005 conception date (to which Google agreed at trial) and Sonos's alleged September 12, 2006 priority date based on its provisional patent application (which, as explained above, Google did not agree to). Sonos's conception date is based on Mr. Lambourne's conception documents—*i.e.*, Sonos's 2005 UI and Alarm Clock Specifications, TX6545 and TX6544, respectively—whereas alleged Sonos's priority date is based on a materially altered copy of the conception documents that were attached as appendices to Sonos's 2006 provisional application. Critically, while the 2005 conception documents include material disclosures and admissions regarding the "All Zones–Party Mode" feature of the prior art Sonos 2005 system *constituting a zone scene*, all such disclosures and admissions were scrubbed from Sonos's 2006 provisional application.

For example, Sonos relies on TX6544, the "Sonos UI Specification" for "Clock and Alarm Clock," for its conception date, but submitted a different version of this document as Appendix B to Sonos's 2006 provisional application. In the 2005 version of the document relied on for conception, Sonos admitted that "'Party Mode' that currently ships with the product is one example of a Zone Scene":

> **4.1    Zone Scenes**
>
> Zone Scenes are a mechanism whereby the user can setup and invoke Zone Grouping using a single action. In the current design, Zone groups are created by linking rooms one-by-one.
>
> For Example
>
> Start with **Living Room**
>
> - Link the Kitchen to the Living Room to make a group of (**Living Room** + **Kitchen**)
> - Then link the Den to the (**Living Room** + **Kitchen**) to make a group of (**Living Room** + **Kitchen** + **Den**)
>
> The Zone Scene feature would allow the user to create a group of (**Living Room** + **Kitchen** + **Den**) with one command.
>
> 'Party Mode' that currently ships with the product is one example of a Zone Scene.

TX6544 at 27 (highlighting added); *see also* Trial Tr. (Lambourne) at 520:21-521:10. However, in the version of this document Sonos submitted as Appendix B to its 2006 provisional application, Section 4.1 discussing "zone scenes" was removed in its entirety. TX2651 at 49.

Similarly, Sonos relies on TX6545, the "Sonos UI Specification" for "Zone Scenes," for its

conception date, yet a different version of this document was submitted as Appendix A to Sonos's 2006 provisional application. In the 2005 version of the document relied on for conception, Sonos admitted that the "Zone Scene feature" is "similar to the current Party Mode setting that is available" in the prior art Sonos 2005 system:

### 1    Introduction

The Zone Scene feature allows the user to arrange the zones into groups using one single command. This is similar to the current Party Mode setting that is available. However, the Zone Scene feature is much more flexible and powerful.

Currently in the Sonos UI, zone groups are created by manually linking zones one at a time until the desired zone grouping is reached.

TX6545 at 2 (highlighting added). However, in the version of this document Sonos submitted as Appendix A to its 2006 provisional application, Sonos deleted this sentence, resulting in the nonsensical statement that "[t]he Zone Scene feature is much more flexible and powerful" than itself:

### 1    Introduction

The Zone Scene feature allows the user to arrange the zones into groups using one single command. However, the Zone Scene feature is much more flexible and powerful.

Currently in the Sonos UI, zone groups are created by manually linking zones one at a time until the desired zone grouping is reached.

TX2651 at 30.

Accordingly, while the 2005 conception documents provide support for the concept of overlapping zone scenes (*i.e.*, they disclose a user-configurable zone scene such as a morning scene that includes fewer than all zone players, as well as a party mode zone scene that includes all zone players, thereby necessarily disclosing an overlap between those zone scenes), the 2006 provisional application contains no such disclosure and, thus, contains no written description of overlapping zone scenes. *See also* Dkt. 785 at 1-6, 11-15 (explaining that the omission of these key portions of the conception documents from the 2006 provisional application resulted in lack of written description for overlapping zone scenes in the latter); Dkt. 788 at 1-4 (same); Dkt. 807 (explaining that a reference to "Party Mode" in Fig. 7 of the patents does not disclose overlapping zone scenes without the additional context provided by the "party mode" disclosures in Sonos's 2005 conception

1  documents or by a POSITA's background knowledge of the prior art Sonos 2005 system, as
2  explained by Dr. Schonfeld during trial).

3  As a further example, Sonos also cited Mr. Lambourne's inventor notebooks to show that he
4  was on his way to fully conceiving the alleged invention by December 21, 2005.  Trial Tr. at 445:8-
5  23.  Those notebooks illustrated zone scenes such as "party mode" and "downstairs" as being
6  implemented using scripts called "Macros," but these notebooks were never submitted to the Patent
7  Office as part of the 2006 provisional application (or even in later prosecution):



TX6539 at 31, 42 (highlighting added to both).

Also not disclosed to the Patent Office were the prior art Sonos Forums posts that described the same use of "macros" to implement overlapping "zone scenes"—***before both*** Sonos's claimed conception date and its claimed priority date:



***

TX3928 at 1.  Indeed, even inventor Lambourne, admitted that the Sonos Forums users had proposed the same solution to the same problem as his alleged invention.  Trial Tr. (Lambourne) at 539:17-24, 541:2-7, 542:9-12.

None of this was disclosed in Sonos's 2006 provisional application and what that application did contain did not provide written description support for the concept of overlapping zone scenes.  Absent the key disclosures that were stripped from the versions of the conception documents submitted as part of Sonos's 2006 provisional application, a POSITA can at best only **infer** the presence of overlapping zone scenes in the 2006 provisional application.  But the law is clear that relying on inference is insufficient to establish written description.  *Crown Operations Int'l*, 289 F.3d at 1380.

In sum, the evidence Sonos used to support its claimed priority date on the face of the patents is very different—and intentionally altered—from what Sonos relied on for its claimed conception date.  As shown above, Sonos stripped the provisional appendices of any admissions showing that the party mode zone scene existed in Sonos's 2005 prior art system.  Sonos's alleged conception evidence also undercuts Sonos's validity claims in other ways.  For example, Sonos's conception evidence directly mapped the implementation of zone scenes such as party mode to "macros," which were described in the prior art Sonos Forum posts.

In sum, Sonos's conception/invention date and its priority/effective filing date are different concepts evaluated under different standards and different factual evidence. The Court therefore should not confuse Google's agreement to a December 2005 conception date as a concession to a September 2006 priority date.

### III. THE FINAL JUDGMENT SHOULD BE VACATED PENDING RESOLUTION OF, *INTER ALIA*, THE WRITTEN DESCRIPTION ISSUE

Based on the foregoing, and as set forth in Google's previously-filed briefing on this issue (Dkts. 785, 788), Google respectfully requests that the Court vacate the final judgment entered in this case (Dkt. 787) pending resolution of, *inter alia*, the written description issue.  The Court would be well within its authority to vacate the final judgment under Fed. R. Civ. P. 59(d) and reconsider its prior ruling regarding written description (*i.e.*, Dkt. 309) in view of the additional evidence and

testimony that came to light at trial regarding the provenance of the key sentence that the Court cited as providing written description support for overlapping zone scenes (*i.e.*, the "ALL the zones" sentence added to the specifications of the asserted patents by amendment in 2019).

In particular, the evidence adduced at trial proved that Sonos manipulated the appendices attached to its 2019 provisional application to remove any mention of the prior art "party mode" that its own inventor, Mr. Lambourne, regarded as an example of a zone scene. *E.g.*, Trial Tr. at 520:21-521:10, 627:6-12. Such express disclosure and description of party mode as a zone scene *could* have provided written description support for overlapping zone scenes,[5] but was entirely omitted from the 2006 provisional application and subsequent non-provisional applications. Without such disclosure, the specifications of the asserted patents as originally filed contained no written description for overlapping zone scenes. Indeed, Sonos was only able to defeat Google's motion seeking invalidity of the '885 patent for lack of written description support for overlapping zone scenes by pointing to the "ALL the zones" sentence that was ***not*** part of the '885 patent specification as originally filed but was rather introduced by amendment. *See, e.g.*, Trial Tr. at 1410:16-20 (The Court: "I ruled for Sonos specifically [calling] out a sentence in the specification that was served up by Sonos to say there was an adequate written description. I did not realize that that came in later by amendment. That would have made a difference to me if I had known that."). No other disclosure in the specifications of the asserted patents discloses overlapping zone scenes. *See, e.g.*, Dkt. 247-3 at 20-25; Dkt. 729 at 2-10; Dkt. 788 at 1-4; Dkt. 807. Accordingly, even accepting the position set forth by Sonos's counsel at trial that if the "ALL the zones" sentence is deemed to be "new material, then I -- I think the -- what would happen is that that sentence would then just be struck from the specification," what would remain is a specification devoid of any disclosure or even implication of overlapping zone scenes resulting in invalidity. Trial Tr. at 968:9-

---

[5] As explained in Google's reply to Sonos's response identifying Figure 7 as allegedly disclosing overlapping zone scenes because it includes a reference to "Party Mode," such disclosure at best allows a POSITA to infer overlapping zone scenes, but that is not enough to satisfy the written description requirement. *See* Dkt. 807; *see also Crown Operations Int'l, Ltd.*, 289 F.3d at 1380 (written description cannot be satisfied by inference); *Rivera v. Int'l Trade Comm'n*, 857 F.3d 1315, 1319-23 (Fed. Cir. 2017) (written description inquiry only looks within "the four corners of the specification").

21 (The Court: "And so if it's new material and it's not considered and this is the only thing that would support the invention, then the written description is no good, the patent is no good . . . .").

Moreover, though the Court framed its request as seeking information regarding Google's position on "the priority date for the patents-in-suit," Google respectfully notes that the priority date is secondary to the main issue of lack of written description support.  Specifically, as explained in Google's prior briefing, the addition of the "ALL the zones" sentence to the specifications of the '885 and '966 patents by amendment in 2019 improperly introduced new matter.  *E.g.*, Dkt. 785 at 6-15; Dkt. 788 at 1-8;  Dkt. 729 at 9-12; Dkt. 712 at 1-4.  Google also explained in many of those briefs that new matter cannot be introduced into a patent application filed as a continuation, as the '885 and '966 patents were here, because any matter added to a continuation patent must have express support in the original specification.  *See, e.g.*, *Agilent Techs., Inc. v. Affymetrix, Inc.*, 567 F.3d 1366, 1379 (Fed. Cir. 2009) ("The written description doctrine prohibits new matter from entering into claim amendments, particularly during the continuation process."); *In re Lew*, 257 F. App'x 281, 284 (Fed. Cir. 2007) ("It is well established that when the applicant adds a claim or otherwise amends his specification after the original filing date the new claims or other added material must find support in the original specification.") (internal quotes and citations omitted).  Here, the "ALL the zones" sentence had no support in the original specification; rather, Sonos had to pull that sentence from a portion of its 2006 provisional application that was discussing dynamic zone groups—***not*** zone scenes.  Accordingly, regardless of their alleged priority date, the '885 and '966 patents are ultimately invalid based on the addition of new matter to their specifications, as well as the absence of any other disclosure of overlapping zone scenes in their specifications.

| | | |
|---|---|---|
|1| DATED: June 6, 2023 | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
|2| | |
|3| | By  /s/ Sean Pak |
|4| | Sean Pak |
| | | Melissa Baily |
|5| | James Judah |
| | | Lindsay Cooper |
|6| | Marc Kaplan |
| | | Iman Lordgooei |
|7| | |
|8| | *Attorneys for GOOGLE LLC* |