# Exhibit 1

CLEMENT SETH ROBERTS (SBN 209203)
croberts@orrick.com
BAS DE BLANK (SBN 191487)
basdeblank@orrick.com
ALYSSA CARIDIS (SBN 260103)
acaridis@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:    +1 415 773 5700
Facsimile:    +1 415 773 5759

SEAN M. SULLIVAN (*pro hac vice*)
sullivan@ls3ip.com
J. DAN SMITH (*pro hac vice*)
smith@ ls3ip.com
MICHAEL P. BOYEA (*pro hac vice*)
boyea@ ls3ip.com
COLE B. RICHTER (*pro hac vice*)
richter@ls3ip.com
LEE SULLIVAN SHEA & SMITH LLP
656 W Randolph St., Floor 5W
Chicago, IL 60661
Telephone:    +1 312 754 0002
Facsimile:    +1 312 754 0003

*Attorneys for Sonos, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| SONOS, INC.,<br><br>      Plaintiff and Counter-defendant,<br><br>v.<br><br>GOOGLE LLC,<br><br>      Defendant and Counter-claimant. | Case No. 3:20-cv-06754-WHA<br>Consolidated with Case No. 3:21-cv-07559-WHA<br><br>**DECLARATION OF ALAINA KWASIZUR IN SUPPORT OF SONOS, INC.'S MOTION FOR A PERMANENT INJUNCTION** |

# Exhibit 1

I, Alaina Kwasizur, declare as follows and would so testify under oath if called upon to do so:

1.      I am an attorney and member in good standing of the Bar of the State of California.  I am the General Counsel (Americas and Pacific) at Sonos, Inc. ("Sonos"), and I have worked at Sonos since 2013.  I make this declaration based on my personal knowledge, unless otherwise noted.  If called and permitted to testify by the Court, I can and will testify competently to the matters set forth herein.

2.      I make this declaration in support of Sonos's Motion for a Permanent Injunction against Google for infringement of Sonos's U.S. Patent No. 10,848,885 ("the '885 patent").

**Sonos and Google Compete In The Wireless Multiroom Audio Market**

3.      Sonos's business is selling audio products.  In addition to speakers and soundbars, Sonos sells speaker components, like amplifiers, and speaker accessories, like charging stations and mounting brackets for its speakers.

4.      Every Sonos employee works on speaker-related technology or supports Sonos's speaker business in some way.

5.      Hardware sales are Sonos's primary source of revenue.  Revenue from the sales of Sonos's audio players pays for employees' salaries and supports Sonos's research-and-development initiatives.

6.      Sonos and Google both offer "smart speaker" products.  For example, Sonos sells the Sonos One smart speaker and Sonos Five premium speaker.  Google sells the Nest Audio smart speaker and previously sold the Home Max premium speaker.

7.      These products are widely recognized as competing products and have been for many years.  This is true both product-by-product and generally.  And multiple news outlets and consumer review sites directly compare Sonos and Google products.  For example, a 2020 Tom's Guide article directly compared the Google Home Nest and the Sonos One.  The article is attached hereto as Ex. B.  A 2020 Android Central article made similar comparisons.  The article is attached hereto as Ex. C.  Likewise, a 2020 article from The Next Web called Google's Nest

DECL. OF KWASIZUR ISO SONOS, INC.'S
MOT. FOR A PERMANENT INJUNCTION
3:20-CV-06754-WHA

Audio "Google's clearest attempt at a Sonos competitor yet."  The article is attached hereto as Ex. D.

8.      As I testified at trial, Sonos and Google remain competitors today.  I also heard testimony from Chris Chan of Google acknowledging that Sonos and Google are competitors.

9.      And more recent articles also identify Sonos and Google as competitors.  For example, a 2023 CNET article discusses Sonos's products and lists "Google Chromecast built-in" as a competitor.  The article is attached hereto as Ex. E.  A 2023 article from Digital Trends directly compares the Sonos One and Google Nest Audio.  The article is attached hereto as Ex. F.  And a 2022 article from Inc. Magazine described how "Sonos puts a lot of effort into developing technology so that it can compete with far bigger companies—like Google."  The article is attached hereto as Ex. G.

**Sonos Loses Sales To Google**

10.      In my experience, and as evidenced by the news and product articles just discussed, customers directly compare Sonos and Google products.

11.      Customers sometimes chose Google over Sonos, for a variety of reasons.  I am aware that customers chose Google over Sonos based on price, integration with other Google smarthome devices, and brand familiarity.

12.      In this respect, Google's infringing smart speaker devices are priced well below Sonos's speakers.  For instance, I am aware that the infringing Nest Audio device currently retails for at or below $99.99, and the infringing Nest Mini device currently retails for at or below $49.99.  The Sonos One speaker retails for $219.00.

13.      Speakers from different brands are difficult to group together, or, in some cases, cannot be grouped together.  For instance, a Sonos speaker cannot be grouped together with a Google speaker in order to have these speakers play back audio in synchrony.  This means that if a customer buys one speaker from a particular brand, we expect that customer to stick to the same brand over their lifetime.  This is called a "lock-in" effect.  In other words, when a consumer purchases a Google smart speaker, such as a Nest Audio, it is more likely that subsequent smart

Decl. of Kwasizur ISO Sonos, Inc.'s
Mot. for a Permanent Injunction
3:20-cv-06754-WHA

speaker purchases from that same consumer would be of Google smart speaker devices, as opposed to smart speaker devices of another brand, such as Sonos.

14.     Sonos cannot quantify the monetary value of the lock-in effect.  However, our internal data shows that once a customer buys one Sonos product, they are likely to buy around three total more Sonos products over their lifetime.  This number is rising, and is projected to be around four to six total products per lifetime in the coming years.  Thus, if Sonos loses out on an initial sale of a speaker product to a new household, then Sonos likely loses out on the sale of at least three devices to that household.

**Google Sells Its Products At A Loss To Secure Households**

15.     Google seeks to monetize their customers through the sale of additional services, rather than the speakers themselves; these lower-priced speaker offerings can adversely impact Sonos's ability to counter ongoing price erosion that frequently affects consumer products.

16.     In contrast to Google, Sonos places a strong emphasis on quality and privacy, focusing on using customer data to enhance their experience rather than aggressive monetization of customer data.

17.     As our Chief Legal Officer Eddie Lazarus has testified before Congress, "Google's strategy is to sell products below cost, because Google, in contrast to Sonos or other smart speaker makers, can afford to lose money on the speaker products because they aren't counting on profits from the product sales themselves. Instead, they make their money by protecting the dominance of their monopoly products and from the rich trove of personal data that these microphone-enabled products vacuum up from consumers. The speakers are mostly just a conduit to their dominant advertising and ecommerce platforms — and so they can take the profits from those platforms and subsidize the speakers themselves."  Ex. H at 3.

**Google's Infringement Damages Sonos's Reputation As An Innovator**

18.     One of Sonos's core values as a company is innovation.  Sonos is known throughout our industry as a company that offers groundbreaking speaker and audio capabilities.

19.     Sonos's innovation is reflected in our portfolio of over 1,000 patents issued in the U.S. alone, a number that continues to grow every year as we invest heavily in new audio experiences.

20.     Sonos believes that enforcing its patent portfolio is essential to maintaining our place in the market.  We cannot compete against huge tech companies like Google on the basis of price.  Instead, we compete by offering the best products with the most desirable value propositions.

21.     Sonos takes great pride in introducing features that other companies do not—and cannot—offer.  We are continuously innovating new product features, and continuously working with our patent attorneys to protect our innovations.

22.     When other companies use Sonos's proprietary technology, especially without permission, it damages Sonos's reputation as an innovator, and suggests to consumers that they can enjoy Sonos's technology without buying a Sonos product.

**Sonos And Other Market Participants Can Meet The Demand For Speakers If Google's Products Are Enjoined.**

23.     Sonos has the manufacturing and supplier capacity to make up for much of the demand for Google's media players.  Although Sonos experienced manufacturing and supply shortfalls early in the COVID-19 pandemic, at this time Sonos can ramp up its capacity to meet increased need for smart speaker products.  Other companies such as Amazon and Apple also produce comparable speakers that could satisfy consumer demand for smart speakers.

24.     In addition, many of Sonos's products are compatible with the Google Assistant voice technology or with other voice assistant technology like Amazon or Apple Siri.  This means that users who need to use voice technology to interact with their speakers can use many of Sonos's speakers in the same way they would use Google speakers.  For example, I heard Mr. MacLellan testify that his wife used the Google Assistant voice technology while she was recovering from a bicycle accident.  Trial Tr. at 1297.  The same or similar voice technology is also accessible on Sonos's speakers with microphones.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.  Executed this 15th day of June, 2023 at San Diego, California.

_____
Alaina Kwasizur