CLEMENT SETH ROBERTS (SBN 209203)
croberts@orrick.com
BAS DE BLANK (SBN 191487)
basdeblank@orrick.com
ALYSSA CARIDIS (SBN 260103)
acaridis@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:    +1 415 773 5700
Facsimile:    +1 415 773 5759

SEAN M. SULLIVAN (*pro hac vice*)
sullivan@ls3ip.com
J. DAN SMITH (*pro hac vice*)
smith@ls3ip.com
MICHAEL P. BOYEA (*pro hac vice*)
boyea@ls3ip.com
COLE B. RICHTER (*pro hac vice*)
richter@ls3ip.com
LEE SULLIVAN SHEA & SMITH LLP
656 W Randolph St., Floor 5W
Chicago, IL 60661
Telephone:    +1 312 754 0002
Facsimile:    +1 312 754 0003

*Attorneys for Sonos, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SONOS, INC., <br><br> Plaintiff and Counter-defendant, <br><br> v. <br><br> GOOGLE LLC, <br><br> Defendant and Counter-claimant. | Case No. 3:20-cv-06754-WHA <br><br> Consolidated with <br> Case No. 3:21-cv-07559-WHA <br><br> **SONOS, INC.'S REPLY IN SUPPORT OF MOTION FOR INJUNCTIVE RELIEF** <br><br> Judge: Hon. William Alsup <br> Courtroom: 12, 19th Floor <br> Trial Date: May 8, 2023 |

**TABLE OF CONTENTS**

**Page(s)**

I. THE COURT SHOULD PERMANENTLY ENJOIN GOOGLE ..................................... 1
    A. Sonos Has Suffered Irreparable Harm ................................................................. 1
        1. Sonos and Google directly compete ........................................................ 1
        2. Google underprices the accused products to lock in consumers ............... 2
        3. Sonos's harm is connected to Google's infringement ............................... 4
    B. Monetary Damages Are Inadequate To Compensate Sonos ................................. 7
    C. The Balance Of Hardships Favors An Injunction ................................................ 8
    D. The Public Interest Would Not Be Disserved By An Injunction ......................... 9
    E. Google Should Give Notice Of Its Infringement To Consumers ........................ 10
II. ABSENT AN INJUNCTION, ONGOING ROYALTIES ARE WARRANTED ........... 10
III. SUPPLEMENTAL DAMAGES AND INTEREST ......................................................... 11
    A. Sonos Is Entitled To Pre-Verdict Supplemental Damages ................................. 11
    B. Sonos Is Entitled To Damages For Infringing Products That Google "Made." ............................................................................................................... 11
    C. Sonos Is Entitled To Pre- And Post-Judgment Interest ...................................... 12
IV. CONCLUSION ................................................................................................................. 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
    694 F.3d 1312 (Fed. Cir. 2012) ................................................................................................ 8

*Acumed LLC v. Stryker Corp.*,
    551 F.3d 1323 (Fed. Cir. 2008) ................................................................................................ 8

*Apple Inc. v. Motorola, Inc.*,
    757 F.3d 1286 (Fed. Cir. 2014) ................................................................................................ 8

*Apple Inc. v. Samsung Elecs. Co.*,
    809 F.3d 633 (Fed. Cir. 2015) ............................................................................................. 3, 9

*Braintree Lab'ys, Inc. v. Nephro-Tech., Inc.*,
    81 F. Supp. 2d 1122 (D. Kan. 2000) ...................................................................................... 10

*DDR Holdings, LLC v. Hotels.com, L.P.*,
    773 F.3d 1245 (Fed. Cir. 2014) .............................................................................................. 12

*Edwards Lifesciences AG v. CoreValve, Inc.*,
    699 F.3d 1305 (Fed. Cir. 2012) ................................................................................................ 1

*Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*,
    946 F.3d 1367 (Fed. Cir. 2020) .............................................................................................. 11

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
    582 F.3d 1288 (Fed. Cir. 2009) .............................................................................................. 10

*Genband US LLC v. Metaswitch Networks Corp.*,
    861 F.3d 1378 (Fed. Cir. 2017) ........................................................................................... 4, 7

*Metalcraft of Mayville, Inc. v. The Toro Co.*,
    848 F.3d 1358 (Fed. Cir. 2017) ................................................................................................ 7

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
    No. C 09-5235 MMC, 2015 WL 604582 (N.D. Cal. Feb. 12, 2015) ....................................... 6

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
    No. CIV.A. 04-1371-JJF, 2008 WL 5210843 (D. Del. Dec. 12, 2008) ................................. 10

*Presidio Components Inc. v. Am. Tech. Ceramics Corp.*,
    702 F.3d 1351 (Fed. Cir. 2012) ................................................................................................ 9

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
    875 F.3d 1369 (Fed. Cir. 2017) ................................................................................................ 7

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Schwendimann v. Arkwright Advanced Coating, Inc.*,
    959 F.3d 1065 (Fed. Cir. 2020) .................................................................................................. 12

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
    14 F.4th 1323 (Fed. Cir. 2021) .................................................................................................. 11

*United Constr. Prod., Inc. v. Tile Tech, Inc.*,
    843 F.3d 1363 (Fed. Cir. 2016) ................................................................................................... 9

*Whitserve, LLC v. Computer Packages, Inc.*,
    694 F.3d 10 (Fed. Cir. 2012) .................................................................................................... 10

**Statutes**

28 U.S.C. § 1961 ............................................................................................................................ 12

35 U.S.C. § 271(a) ......................................................................................................................... 11

## I. THE COURT SHOULD PERMANENTLY ENJOIN GOOGLE.

### A. Sonos Has Suffered Irreparable Harm.

Irreparable harm often arises where the patentee "practices its invention and is a direct market competitor" with the infringer. *Edwards Lifesciences AG v. CoreValve, Inc.*, 699 F.3d 1305, 1315 (Fed. Cir. 2012). Google does not dispute that those facts, as a matter of law, are enough to show irreparable harm. Nor does Google dispute that both Sonos and Google practice the '885 patent. Dkt 820 ("Mot.") at 3. Instead, Google contends that it does not directly compete with Sonos. Dkt. 829 ("Opp.") at 5-6. Google's assertion is belied by its own actions and witness testimony. Google also tries to downplay evidence that it underprices its products to lock customers into its ecosystem and evidence of a causal nexus, but those efforts fail too.

#### 1. Sonos and Google directly compete.

At trial, witnesses testified that (1) Google repeatedly introduced products that compete with Sonos's products, (2) Google used the Sonos Play:5 as a direct comparator with Google's products, and (3) this competition started in 2015 and continues today. Mot. 3 (citing Trial Transcript ("Tr.") at. 310:4-311:2, 1534:2-13, 298:25-299:3; 1010:11-13; 1117:5-1118:6). The expert witnesses recognized competition between Sonos and Google, as do third-party market observers and media. *Id.* (citing Tr. 1116:21-1117:18; 1603:19-24; TX158; Tr. 1118:11-13; Dkt. 821 ("Kwasizur Decl.") ¶¶ 7, 9).[1] That is more than enough to demonstrate direct competition. Nonetheless, Google argues that "there is at most only limited evidence of direct competition." Opp. 5 (capitalization omitted). And while faulting Sonos for providing a declaration from its General Counsel—who has personal knowledge of Sonos's competition with Google—Google relies on declarations from its employee and outside counsel to try to prove that many of Google's accused products are sold too *cheaply* to compete with Sonos's products. *Cf.* Opp. 5-6.

Google cannot rebut Sonos's showing of competition, and its own documents refute its arguments. For example, Google emphasizes that "many of the accused products" "are sold for

---

[1] Google moved to strike Ms. Kwasizur's declaration for, among other things, exhibiting news articles … while Google responds in its motion with declarations that rely on different news articles. Sonos will separately oppose Google's motion to strike.

$50 or less." Opp. 5.  But the news articles that Google cites make clear that Google is simply cherry-picking the cheapest of the accused products.  *See, e.g.*, Dkt. 829-7 at ECF p. 3 (noting that Chromecast is the "**entry-level** casting-only **option** in Google's streaming arsenal" (emphasis added)); Dkt. 829-9 at 6 (describing the Nest Mini as "**the most affordable** Google-powered smart speaker available" (emphasis added)).[2]  And Google argues that Sonos—unlike Google— "aims to attract audiophiles who desire high-quality audio." Opp. 5.  But Google's cited PC Magazine review of its Chromecast Audio product notes that the product's support for "[h]igh-resolution audio" "makes the device an appealing option for … audiophiles." Dkt. 829-8 at 5; *see also id.* at 4 (noting "excellent" "[a]udio quality").  Google also contends that Sonos does not offer a *direct* Chromecast analog, and for that reason, Google and Sonos do not compete.  Opp. 6.  But Google's cited Chromecast Audio review describes the product's support for multi-room audio in detail, noting that "[y]ou can now group more than one speaker together and play music on several in the same room" or house, a feature that "put[s] the device's flexibility closer to the standards set by wireless audio systems from Sonos." Dkt. 829-8 at 3.[3]  Against that evidence and Sonos's, the self-serving assertion of a current Google employee that "I do not think of Google and Sonos as competitors in the smart speaker space," Dkt. 829-1 ¶ 9, is entitled to little, if any, weight.[4]

### 2. Google underprices the accused products to lock in consumers.

Sonos presented unrebutted evidence that once a customer buys a Sonos or Google speaker, that customer is likely to (a) buy more speakers and (b) stick with the ecosystem that the

---

[2] Google's citation of Ms. Kwasizur's testimony related to products under $50, Opp. 5, relates to companies much smaller than Google for which there is no evidence in this case of artificial underpricing.

[3] Google also argues that a Google study comparing Sonos and Google products does not literally say that the two companies compete.  Google's commissioned study on the smart speaker market compares the company's products and mentions Sonos and Sonos's competing products throughout the document.  *See, e.g.*, TX158 at 6, 8, 9, 15, 16, 17, 18, 21, 25, 26, 40, 41, 43.

[4] The Court should reject Mr. Chan's declaration as an attempt to override his unfavorable trial testimony.  At trial, the jury heard testimony from Mr. Chan that Google and Sonos compete in the "smart speaker market." Tr. 1226:23-1227:10; Dkt. 755-2 ("Q. [D]o you believe that Google competes with Sonos in the smart speaker market? Again, I'm using your definition of competition.  A. In certain cases, I believe there is some competition, yes.") (cleaned up).

customer has already bought into. Mot. 3-4 (citing Tr. 1019:19-1020:6; 1021:21-26; Dkt. 755-2 at ECF pp. 59-60; TX158 at 21; Tr. 1606:17-25; 1607:5-8). For example, Ms. Kwasizur testified that Sonos customers buy, on average, 2.9 speakers, explaining why Sonos's sales focus is not selling individual products but on household acquisition. Tr. 1020:25-1022:3. Every household that "chooses" Google will not choose Sonos, locking those customers into the Google ecosystem and harming Sonos. The Federal Circuit has recognized that this "ecosystem effect" can be difficult to quantify and irreparable—as it is here. *Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 645 (Fed. Cir. 2015)); Mot. 3-4.

Google argues that Sonos has not presented "**any** evidence regarding lost sales or market share—circumstantial or otherwise." Opp. 3. That simply ignores the trial evidence and logical chain described above and corroborated by the personal knowledge of Sonos's general counsel, Mot. 4. Google suggests that because Sonos did not pursue a lost profits theory of damages, "[t]his failure of proof, alone, should end the inquiry." Opp. 3. But Google's cited authority does not support that assertion. *Nichia Corp. v. Everlight Americas, Inc.*, for example, involved a patentee that sold "directly to customers" while the defendant sold "to distributors"; because the two parties thus sold to entirely "different parties" at different points in the chain, their competition was not "meaningful." 855 F.3d 1328, 1342 (Fed. Cir. 2017).

Google also contends that Sonos is wrong that "Google prices the accused products at a loss," while at the same time admitting that "Google's financial records demonstrate that it loses money on sales of some accused products." Opp. 4. So Google offers a current employee's statement that Google (1) prices the products "at a lower price point," but (2) does not price the accused products below cost. *Id.* at 5. But Mr. Chan clarifies that he means only that Google does not set the MSRP below the *manufacturing* cost, Dkt. 829-1 ¶ 6, ignoring Google's costs like product development, software engineering, and marketing. Mr. Chan does not dispute that Google does not generate a profit on these products, or that Google intentionally prices the product at an artificially low price to attract customers to the Google ecosystem.

And just as significant is the chorus of media voices that *Google* asks the Court to listen to for purposes of opposing Sonos's request for injunctive relief. Take the GeekWire article

SONOS, INC.'S REPLY ISO MOTION
FOR INJUNCTIVE RELIEF
3:20-CV-06754-WHA

regarding Google's market share compared with Amazon and Apple. Dkt. 829-3. This article explains that Google's goal (like Amazon's) is to achieve customer lock-in: "One critical goal for everyone in the industry is to get as many units into as many homes as possible." *Id.* at ECF p. 2. The reason? "With multiple devices in a single home, a smart speaker platform can claim that literal real estate as theirs, as barriers to switching get very high." *Id.*

Google's cited articles also make clear Google's "aggressive" pricing strategy. One article discussing Chromecast, for example, describes Google's low pricing as "aggressive" as Google is "taking another stab at being the center of your living room." Dkt. 829-5. *See also, e.g., id.* at 3 ("at $35 [Chromecast] borders on an impulse purchase"). Google is achieving all these sales and capture of households through its infringement of Sonos's patent.

Google also asserts that "Sonos's 'lock-in effect' argument is particularly dubious in light of its own significant delay in implementing the functionality." Opp. 4. But Google's argument regarding purported "delay" has just as little relevance to Sonos's request for an injunction as it does to Google's affirmative defenses. Dkt. 828. Google does not point to any legal authority suggesting that Sonos's timeline for implementing its commercial embodiments is relevant—much less controlling. Similarly, Google asserts that Sonos should have sought a preliminary injunction. But Sonos determined that "the merits [would] be much better presented through full litigation than through abbreviated preliminary-injunction proceedings"; Sonos made no "implied concession that the infringement-caused injury is not actually irreparable." *Genband US LLC v. Metaswitch Networks Corp.*, 861 F.3d 1378, 1385 (Fed. Cir. 2017).

Last, Google contends that "Sonos's losses are likely due to other companies." Opp. 5. But that is mere speculation. There is no ***evidence*** in this case that "Amazon, Apple, and Bose" underprice their products in order to lock in customers, while there is extensive evidence that Google does precisely that, at Sonos's expense.

      **3.**    <u>Sonos's harm is connected to Google's infringement.</u>

There is ample evidence that "the patented features impact consumers' decisions to purchase the accused devices," establishing a causal nexus between Google's infringement and Sonos's harm. Mot. 4-6 (quoting *Apple*, 809 F.3d at 642). To establish irreparable harm, Sonos

1  need not show that the infringing features of Google's products "were the exclusive or
2  predominant reason why consumers bought" Google's products; instead, the proper inquiry looks
3  to "whether there is *some connection* between the patented features and the demand" for
4  Google's products.  *Id.* at 4 (quoting *Apple*) (emphasis added).
5        Claim 1 of the '885 patent covers static grouping and the necessary architecture for
6  creating, saving, and later invoking saved groups.  Mot. 4 (citing Dkt. 711 at 1).  Google does not
7  contest that static grouping is a key feature of the accused products.  *Id.* (citing Tr. 1234:5-
8  1235:19; 1275:5-21, 1519:8-18, 1529:12-19, 1600:13-23; TX158 at 36).  Google's only response
9  is to argue that the '885 patent "covers only one narrow way to implement static grouping
10 involving at least two overlapping speaker groups."  Opp. 7.  But as Sonos has explained,
11 "overlapping groups" is just one limitation of the claims; static grouping is the primary feature.[5]
12 Dkt. 711.  Google's argument that "[t]he causal nexus inquiry must focus on 'the importance of
13 the *claimed invention* in the context of the accused product,'" Opp. 7 (quoting *Apple, Inc. v.
14 Samsung Elecs. Co.*, 735 F.3d 1352, 1364 (Fed. Cir. 2013), thus fails to help Google here:  The
15 claims cover static grouping and that is a key feature of Google's infringing products.  Indeed,
16 this feature was so important to Google that, rather than remove the feature to avoid the
17 possibility of an injunction, Google slightly changed how it implemented the feature in hopes that
18 the jury would bless this new version as non-infringing and Google could continue to offer the
19 feature.  That effort failed.  Google similarly attempts to wave away its own survey showing
20 consumer demand for the ability to "group speakers to hear music in multiple rooms at the same
21 time" with an overly constrained view of what the claimed invention is.  This attorney argument
22 cannot replace the record evidence on this point.
23       Sonos noted that Google's minimalist redesign demonstrates the value of the invention,
24 because Google preferred to retain the ability to add a speaker to multiple static groups when
25 (unsuccessfully) trying to avoid infringement—confirming that static grouping is a key feature.

---

[5] Google's claim that the '885 patent covers "only one narrow way" is also belied by the verdict itself.  Google purportedly "designed around" the '885 patent utilizing a different way to effect static grouping.  The jury found this purported design-around to also infringe.

1   Mot. 6.  Google's only substantive response is that it "had a good faith belief that its first design

2   change" did not infringe, but that is beside the point.  Opp. 9.  If the feature were as unimportant

3   as Google claims it is, Google could have removed it and rid itself of its ongoing infringement of

4   the '885 patent.  That Google chose not to and instead has deliberately chosen to continue to

5   (willfully) infringe the '885 patent speaks for itself.

6      Sonos also identified consumer demand for Sonos's zone scenes technology and

7   widespread praise for zone scenes.  Mot. 5 (citing Tr. 469:14-470:15); *id.* at 6 (citing Tr. 469:14-

8   470:15, 1677:6-10, 1677:23-1678:3; Dkt. 820-2 (Kolker Decl. Ex. 1)).  Google suggests that this

9   evidence is irrelevant because it does not show demand for the "claimed invention in the context

10  of the accused product."  Opp. 8 (citing *Power Integrations, Inc. v. Fairchild Semiconductor Int'l,*

11  *Inc.*, No. C 09-5235 MMC, 2015 WL 604582, at *3 (N.D. Cal. Feb. 12, 2015)).  But *Power*

12  *Integrations* merely held that the patentee's evidence regarding "its own products" was

13  "insufficient to establish a causal nexus between those features and demand for [the defendant's]

14  competing products" because there was no "showing that consumers demand [the patentee's]

15  products and [the defendant's] products *for the same reasons*."  2015 WL 604582, at *3

16  (emphasis added).  Here, Google's own cited materials make that case.  *See, e.g.*, *supra* 2

17  (discussing Dkt. 829-8 at 3).

18     Sonos's cited evidence confirms that Google advertises the ability to create speaker

19  groups, meaning Google understood those features were valuable to customers.[6]  Mot. 5 (citing

20  Tr. 1123:1-4; 1530:7-10, 1530:11-17; TX6353, Tr. 1519:12-18, 1523:6-10).  That evidence was

21  bolstered by Google's employee Mr. Shekel's testimony on the importance of overlapping

22  groups.  *Id.* (citing Shekel 109:11-110:05; Dkt. 755-2 at 6-7).[7]  Google also attempts to sanitize

---

[6] Google argues that it does not consider "blog posts" to be "advertising."  Opp. 8.  The blog posts inform current and potential customers about the accused technology to encourage them to buy and use Google's products.  Google educates customers because consumers value and want to know how to use the accused technology on the accused products.  Mr. Chan admitted this. *See* Tr. 1530:7-10 ("Q: Google provides instructions to customers on how to create multizone groups of two or more speakers; isn't that right?  A: Yes.").

[7] Google now suggests that Mr. Shekel's testimony is somehow irrelevant or unrelated to zone scenes technology because it involved "Cast for Audio."  Opp. 9.  But the entire basis for Google's equitable estoppel claim is the connection between Cast for Audio and overlapping groups, so Google's objection that "Cast for Audio" "is not accused," Opp. 9, rings hollow.

Mr. Chan's testimony by arguing that Mr. Chan testified that of users of static groups, "most create *only* one single group covering every speaker they own." Opp. 9 (citing Tr. 1522:19-1523:1, 1523:6-10; Dkt. 829-1 (Chan Decl.) ¶ 3) (emphasis added). But nothing in the cited testimony, nor even in Mr. Chan's declaration, states these users create *only* that single group. *Cf.* Mot. 5 (discussing Mr. Chan's testimony).

Google contends that Sonos's claim fails because "Sonos fails to demonstrate that any alleged lost sales to Google were lost due to the accused feature." Opp. 9-10. But the authority Google cites for this proposition does not support Google's rule. For example, in *Genband*, the Federal Circuit noted that "under the causation approach suitable for a multi-feature, multi-purchaser context, the patentee may be able to make the causal connection between infringement and the relevant lost sales through evidence of ***various kinds***, e.g., ***that the infringing features significantly increased the product's desirability***, that soundly ***supports an inference of causation*** of a significant number of purchasers' decisions." 861 F.3d at 1384 (emphasis added). And in *Presidio Components*, the Court merely held that where a finding of irreparable harm was "based" "on the jury's lost profits award," the reversal of the underlying lost profit award necessarily required *vacatur* of the injunction. *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1383 (Fed. Cir. 2017). That did not end the matter; the district court still needed to "determine whether **other evidence** could support a finding of irreparable injury." *Id.* at 1384 (emphasis added).

### B. Monetary Damages Are Inadequate To Compensate Sonos.

Monetary damages are inadequate because of (1) the ecosystem effect and (2) Google's harm to Sonos's reputation as an innovator in the wireless multiroom audio market. Mot. 6-7. But as the ecosystem evidence (*e.g.*, Mot. 3-4) shows, losing any potential Sonos household to Google permanently stunts Sonos's growth in ways that a simple royalty cannot address. And because the downstream effects of Google's ecosystem grab are substantial but "difficult to quantify," *Metalcraft of Mayville, Inc. v. The Toro Co.*, 848 F.3d 1358, 1368 (Fed. Cir. 2017), damages alone are not adequate.

Google responds first that monetary damages are sufficient because in 2017 "Sonos

offered to license the '885 patent to Google before litigation began." Opp. 11. But the term sheet in question was merely a non-binding proposal made *before* Google had launched the majority of the infringing products and rapidly and drastically increased its infringement—and therefore its competition with Sonos. Google also argues that monetary damages are sufficient because Sonos has provided "Denon, Lenbrook, and Legrand with portfolio-wide licenses." *Id*. But obviously, none of those companies has anything resembling Google's size and power in the market.[8] Google also asserts that it does not offer the accused products as a "loss leader," *id*. 11-12, but Google uses a narrow definition of "cost" that misleadingly does not include the full, true cost of bringing its products to market. It is undisputed that Google does not make a profit on the accused products. *See* Tr. 1120:7-15 (Q. "[C]an you just give a little bit more description of the profitability of the products at issue in this case? A. So in—these products are often what we considered a loss leader. So they can be sold at an amount that doesn't generate a net profit. And so to understand why Google would do that, it is in order to capture that home, to be able to then deliver those advertisements and to collect that data. So that's part of the strategy of this business."). Google's discussion of the ecosystem effect also fails for the reasons discussed above. And Google simply ignores the damages to Sonos's reputation as an innovator in the field of wireless multiroom audio. *See, e.g.*, Dkt. 829-8 at 3 (describing the "standard set by Sonos").

### C.   The Balance Of Hardships Favors An Injunction.

Google's argument on balance of the hardships rehashes its argument that Google and Sonos are not competitors. Opp. 13-14. The record says otherwise. *Supra* 1-2. Google offers no response to consideration of "the parties' sizes, products, and revenue sources when assessing the balance of hardships," which soundly favors Sonos. Mot. 8 (internal quotation marks omitted).

---

[8] Google's cited authority is either inapposite or belies Google's position. For example, Google strategically omits the emphasized language: "***Motorola's FRAND commitments***, which have yielded many license agreements encompassing the '898 patent, strongly suggest that money damages are adequate to fully compensate Motorola for any infringement." *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1332 (Fed. Cir. 2014), *overruled by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015). Similarly, Google ignores the following: "To be clear, ***we are not holding that any time a patentee offers a license to the defendant, it will be unable to secure an injunction.***" *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1340 (Fed. Cir. 2012). *See also Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1332 (Fed. Cir. 2008) (***affirming permanent injunction*** despite "past licenses having been granted").

Google instead argues that it will "suffer significant hardship" because the proposed injunction is "overbroad." Opp. 14. The injunction covers infringing products and activities that support those infringing products, as necessary to prevent further irreparable harm. And it appropriately extends to products that are "substantially similar to" the accused products. Dkt. 820-5 at 2. Google should not be permitted to avoid the injunction by making trivial changes that do not avoid infringement. Thus, the Federal Circuit approved language prohibiting the "sale, advertisement, marketing, or promotion of a substantially similar product." *United Constr. Prod., Inc. v. Tile Tech, Inc.*, 843 F.3d 1363, 1372 (Fed. Cir. 2016). Nothing in Sonos's proposed injunction prevents Google from removing the infringing feature with a simple software update.

### D.  The Public Interest Would Not Be Disserved By An Injunction.

Google contends that "preserving rights of patent holders" "cannot alone justify injunctive relief because such interests 'are always present in a patent case.'" Opp. 14 (quoting *Presidio Components Inc. v. Am. Tech. Ceramics Corp.*, 723 F. Supp. 2d 1284, 1339 (S.D. Cal. 2010)). Google's only support for that point was vacated on appeal because "the district court abused its discretion when it denied Presidio a permanent injunction." *See Presidio Components Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1364 (Fed. Cir. 2012). And contrary to Google's argument, "the public interest nearly always weighs in favor of protecting property rights," based "not only on the Patent Act's statutory right to exclude, which derives from the Constitution, but also on the importance of the patent system in encouraging innovation." *Apple*, 809 F.3d at 647. Those factors become even stronger "when the patentee practices [its] inventions." *Id.*; Mot. 9.

Google argues that the proposed injunction would harm the public because, for example, people use the infringing products for "non-infringing uses," such as "controlling smart home devices" and "setting timers." Opp. 14-15. But anyone who already owns infringing products can continue to use them. And Google's own exhibits show that consumers could turn to Amazon (or others) if they want to buy speakers at a price point lower than Sonos. *See* Dkt. 829-3 at ECF p. 2 (article discussing Amazon's "dominant share of the U.S. market for smart speakers"). Meanwhile, Google could eliminate any problems by removing the infringing feature from its products with a simple software update. Google also speculates that Sonos continues to

have supply chain issues, but a news article from February 2023 cannot overcome Ms. Kwasizur's up-to-date personal knowledge. *See* Opp. 16; *cf.* Kwasizur Decl. ¶¶ 23-24.

Lastly, Google contends that the 14-day sunset period in Sonos's proposed injunction is too short. Opp. 15. Google offers no evidence that a months-long sunset period is needed.

### E. Google Should Give Notice Of Its Infringement To Consumers.

Google argues that Sonos has "no authority" for requiring Google to notify consumers of its infringement. Opp. 16. Sonos showed that other courts have required infringers to give notice to their customers and third parties. *E.g.*, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, No. CIV.A. 04-1371-JJF, 2008 WL 5210843, at *2 (D. Del. Dec. 12, 2008) (notice to "all distributors, customers or other third-parties who have ordered, received or purchased any of the parts enumerated"); *Braintree Lab'ys, Inc. v. Nephro-Tech., Inc.*, 81 F. Supp. 2d 1122, 1137 (D. Kan. 2000) (notice to customers and third parties); *see* Mot. 20. Giving notice to Google's current customers is especially important because, as the record demonstrates, those customers are likely to purchase more of Google's speaker products in the future. *Supra* 2-4.

## II.   ABSENT AN INJUNCTION, ONGOING ROYALTIES ARE WARRANTED.

Google contends that Sonos is not entitled to an ongoing royalty "because the jury's award already overcompensates Sonos." Opp. 18.[9] But by definition, a reasonable royalty is not excessive; it is "merely the floor below which damages shall not fall." *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 33 (Fed. Cir. 2012) (citation omitted). Google cannot dispute that the jury's reasonable royalty has not been applied to any post-verdict sales, so the jury's award does not "fully compensate" Sonos for the full scope of Google's infringement. *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1303 (Fed. Cir. 2009). So if the Court does not issue an injunction, an award of ongoing royalties would be appropriate. *See* Mot. 9-10.

Sonos demonstrated that the record supports an award of ongoing royalties "at a minimum of $2.30 per unit"—the jury's rate. Mot. 10, 12. Google has little to say about the jury's rate other than referring the Court to its "pending JMOL." Opp. 18. The jury's rate sets the floor for

---

[9] Google also asks the Court to delay ongoing royalties pending appeal. Opp. 17. Resolving the issue now would conserve judicial resources here and on appeal.

SONOS, INC.'S REPLY ISO MOTION
FOR INJUNCTIVE RELIEF
3:20-cv-06754-WHA

an ongoing royalty, so Google cannot dispute that, if the Court awards an ongoing royalty, it should grant Sonos at least $2.30 per unit.

As to post-verdict willfulness, although Google disputes that it is behaving like "a pirate," Opp. 21, Google carefully avoids saying that its post-verdict infringement is not willful. For good reason: "willful infringement can simply be 'deliberate' infringement." *Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1379 (Fed. Cir. 2020). The jury rejected all of Google's arguments, and Google's ongoing post-verdict infringement is indisputably willful. *See SRI Int'l, Inc. v. Cisco Sys., Inc.*, 14 F.4th 1323, 1330 (Fed. Cir. 2021).

### III.     SUPPLEMENTAL DAMAGES AND INTEREST.

#### A.     Sonos Is Entitled To Pre-Verdict Supplemental Damages.

Google agrees that, if the jury's infringement verdict and damages award stand, Google must "provide updated sales data" for its infringing products. Opp. 22; *see also* Mot. 14. That would be a simple calculation of number of infringing products times the jury's per-unit rate. Deferring that calculation until after any appeals, as Google requests, would not conserve judicial resources or serve any purpose other than delay.

#### B.     Sonos Is Entitled To Damages For Infringing Products That Google "Made."

The jury's award should be supplemented to account for additional infringing devices that Google "made" by way of its December 2022 firmware update. Google contends that a device, once "fully assembled" and "sold," cannot later be "made" into an infringing device. Opp. 23. That rule lacks support and would effectively convey immunity to would-be infringers so long as they first sell a product and then add infringing software features in a second step. Sonos properly seeks damages on the firmware update that the jury has already deemed infringing when installed on Google's speakers.[10]

---

[10] Google's assertion that "Sonos never previously argued that pushing a firmware update constituted an act of infringement" is wrong. In every set of infringement contentions, Sonos plainly asserted that "Google has directly infringed and continues to directly infringe claims 1-3, 5-10, 12-14 of the '885 Patent by virtue of installing software (*e.g.*, firmware updates) onto Cast-enabled media players, which constitutes 'mak[ing]' an infringing device under 35 U.S.C. § 271(a)." *E.g.,* Dkt. 173-7 at 6 (Sonos's infringement contentions for '885 patent).

C. **Sonos Is Entitled To Pre- And Post-Judgment Interest.**

Google contends that the Court should deny pre-judgment interest, because "the jury's award already overcompensates Sonos for Google's pre-verdict infringement." Opp. 24. Pre-judgment interest "is the rule, not the exception." *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1263 (Fed. Cir. 2014) (internal quotation marks omitted). Even Google's cited authority does not support denying pre-judgment interest. Opp. 24. In *mophie, Inc. v. Shah*, the jury awarded substantial punitive damages, such that pre-judgment interest was not required. No. SA CV 13-1321, 2015 WL 13917980, at *1 (C.D. Cal. Dec. 11, 2015). Likewise, in *Conceptus, Inc. v. Hologic,* the jury awarded both a 20% royalty rate and a "lost profits award of $18 million." No. C 09-02280, 2012 WL 44064, at *2 (N.D. Cal. Jan. 9, 2012). Here, Sonos received only a reasonable royalty and no additional damages, so there is no "justification for withholding" pre-judgment interest. *DDR Holdings*, 773 F.3d at 1263.

Google asks the Court to "calculate pre-judgment interest based on the Treasury Bill rate and annual compounding" instead of using the prime rate and compounding quarterly. Opp. 24-25. "A trial court is afforded wide latitude in the selection of interest rates … and may award [pre-judgment] interest at or above the prime rate." *Schwendimann v. Arkwright Advanced Coating, Inc.*, 959 F.3d 1065, 1076 (Fed. Cir. 2020) (internal quotation marks omitted). Here, the prime rate "represents the cost of borrowing money" and thus "best compensates a patentee for lost revenues during the [infringement] period." Mot. 18. Sonos also explained that quarterly compounding ensures full compensation for the patentee, and that Sonos's licensing agreements required quarterly payments to Sonos. Mot. 18 (citing TX6631 at 3; TX6632 at 3).

Google agrees that Sonos will be entitled to "post-judgment interest in accordance with 28 U.S.C. § 1961" from the date of the final judgment. Opp. 25; *see also* Mot. 19.

IV. **CONCLUSION**

The Court should grant Sonos's Motion for Injunctive Relief and Additional Damages.

Dated: July 6, 2023

ORRICK HERRINGTON & SUTCLIFFE LLP
*and*
LEE SULLIVAN SHEA & SMITH LLP

By: */s/ Clement Seth Roberts*
    Clement Seth Roberts

*Attorneys for Sonos, Inc.*