CLEMENT SETH ROBERTS (SBN 209203)
croberts@orrick.com
BAS DE BLANK (SBN 191487)
basdeblank@orrick.com
ALYSSA CARIDIS (SBN 260103)
acaridis@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:    +1 415 773 5700
Facsimile:    +1 415 773 5759

SEAN M. SULLIVAN (*pro hac vice*)
sullivan@ls3ip.com
J. DAN SMITH (*pro hac vice*)
smith@ls3ip.com
MICHAEL P. BOYEA (*pro hac vice*)
boyea@ls3ip.com
COLE B. RICHTER (*pro hac vice*)
richter@ls3ip.com
LEE SULLIVAN SHEA & SMITH LLP
656 W Randolph St., Floor 5W
Chicago, IL 60661
Telephone:    +1 312 754 0002
Facsimile:    +1 312 754 0003

*Attorneys for Sonos, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA,

SAN FRANCISCO DIVISION

| | |
|---|---|
| SONOS, INC.,<br><br>    Plaintiff and Counter-defendant,<br><br>v.<br><br>GOOGLE LLC,<br><br>    Defendant and Counter-claimant. | Case No. 3:20-cv-06754-WHA<br><br>Consolidated with<br>Case No. 3:21-cv-07559-WHA<br><br>**SONOS, INC.'S OPPOSITION TO GOOGLE'S MOTION TO STRIKE**<br><br>Date:   August 10, 2023<br>Time:   8:00 a.m.<br>Judge:  Hon. William Alsup<br>Courtroom:  12, 19th Floor |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

**Page(s)**

I.    INTRODUCTION ......................................................................................................... 1

II.   LEGAL STANDARD ................................................................................................... 1

III.  ARGUMENT ............................................................................................................... 2

    A.   Google's Overbroad Motion To Strike Alleged Hearsay Should Be Denied. .................. 2

    B.   Google Has Already Admitted That Ms. Kwasizur's Statements Are Correct................ 5

    C.   Ms. Kwasizur Does Not Offer Expert Opinion.................................................. 7

IV.   CONCLUSION ........................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Honeywell Ret. Earnings Plan*,
 No. CV-04-424-PHX-ROS, 2005 WL 8160551 (D. Ariz. July 27, 2005)............... 2, 6, 9, 10, 11

*Brigadier Roofing, Inc. v. Roofers' Unions Welfare Tr. Fund*,
 No. 14 CV 10496, 2017 WL 2834533 (N.D. Ill. June 30, 2017)............................................. 2, 3

*Edwards v. Toys "R" Us*,
 527 F. Supp. 2d 1197 (C.D. Cal. 2007) .......................................................................... 1, 6, 11

*Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*,
 No. 597, 2006 WL 1330002 (N.D. Cal. May 15, 2006) ......................................................... 12

*Interwoven, Inc. v. Vertical Computer Sys.*,
 No. CV 10-04645 RS, 2013 WL 3786633 (N.D. Cal. July 18, 2013) ................................. 2, 12

*Lankford v. Taylor*,
 No. CV-17-02797-PHX-DWL, 2020 WL 6395294 (D. Ariz. Nov. 2, 2020) ............................ 3

*Self-Realization Fellowship Church v. Ananda Church of Self-Realization*,
 206 F.3d 1322 (9th Cir. 2000).................................................................................................... 1

*Tyco Thermal Controls LLC v. Redwood Industrials*,
 No. C 06-07164 JF (PVT), 2010 WL 1526471 (N.D. Cal. Apr. 15, 2010) ...................... 8, 9, 10

**Other Authorities**

Fed. R. Evid. 402 ............................................................................................................................ 7

Fed. R. Evid. 403 ............................................................................................................................ 7

Fed. R. Evid. 602 ................................................................................................................... 1, 2, 8

Fed. R. Evid. 701 ................................................................................................... 1, 2, 7, 11, 12

Fed. R. Evid. 702 .................................................................................................................. 1, 2, 11

Fed. R. Evid. 801 ............................................................................................................................ 1

L.R. 7-5(b) ...................................................................................................................................... 4

1    **I.      INTRODUCTION**

2          Google's motion to strike lacks merit.  Google asks the Court to strike broad swaths of

3    Ms. Kwasizur's declaration as hearsay without identifying any specific hearsay issue.  Google

4    also asks the Court to strike statements made by, relied upon, or offered by Ms. Kwasizur that are

5    nearly *identical* in form, subject, and scope to statements made by, relied upon, or offered by

6    *Google's* proffered declarants.  Finally, Google asks the Court to strike as "unsupported"

7    declaration statements based on Ms. Kwasizur's testimony at trial—testimony that Google fails to

8    even acknowledge, much less address.

9          The Court should deny Google's motion in its entirety.

10   **II.     LEGAL STANDARD**

11         ***Personal knowledge.***  Under Rule 602, a lay "witness may testify to a matter only if

12   evidence is introduced sufficient to support a finding that the witness has personal knowledge of

13   the matter.  Evidence to prove personal knowledge may consist of the witness's own testimony."

14   Fed. R. Evid. 602.  A declarant's "[p]ersonal knowledge can be inferred from [the] affiant's

15   position."  *Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 206 F.3d

16   1322, 1330 (9th Cir. 2000).  And where "[p]ersonal knowledge can be inferred from a declarant's

17   position within a company or business," the party seeking to strike must "offer[] … evidence that

18   rebuts the inference of personal knowledge flowing from [the declarant's] position."  *Edwards v.*

19   *Toys "R" Us*, 527 F. Supp. 2d 1197, 1201-02 (C.D. Cal. 2007) (citing *In re Kaypro*, 218 F.3d

20   1070, 1075 (9th Cir. 2000), *inter alia*).

21         ***Hearsay.***  Hearsay is "a statement that" "the declarant does not make while testifying at

22   the current trial or hearing; and [that] a party offers in evidence to prove the truth of the matter

23   asserted in the statement."  Fed. R. Evid. 801(c).

24         ***Lay opinion testimony.***  "If a witness is not testifying as an expert, testimony in the form

25   of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful

26   to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not

27

28                                                        1        SONOS'S OPP. TO GOOGLE'S MOTION TO STRIKE
                                                                                    3:20-CV-06754-WHA

based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  Fed. R. Evid. 701.

*Motions to strike*.  Because "motions to strike are generally disfavored," "any doubt as to the propriety of a statement should be resolved in favor of the party opposing the motion." *Interwoven, Inc. v. Vertical Computer Sys.*, No. CV 10-04645 RS, 2013 WL 3786633, at *11 (N.D. Cal. July 18, 2013).

III.   **ARGUMENT**

A.   **Google's Overbroad Motion To Strike Alleged Hearsay Should Be Denied.**

Google asks the Court to strike Paragraphs 7, 9, 10, and 17 of the Kwasizur Declaration, arguing that each of these paragraphs is "based on hearsay derived from news articles and statements of an out-of-court declarant."  Mot. 2.  Google argues that the Court should strike this testimony because it "is 'necessarily derive[d] from the contents of documents or the statements of out-of-court-declarants,'" and that Rule 602 "prevent[s] a witness from testifying to the subject matter of a hearsay statement, as he has no personal knowledge of it."  *Id.* (quoting *Allen v. Honeywell Ret. Earnings Plan*, No. CV-04-424-PHX-ROS, 2005 WL 8160551, at *3 (D. Ariz. July 27, 2005)).  But Google seeks to strike whole paragraphs without even identifying the alleged hearsay within those passages.  To the extent that Google bothers to identify any specific statements with which it takes issue, it makes an unsupported assumption that the statements are being offered for the truth of what is asserted.  And while Google challenges Ms. Kwasizur's quotation of Congressional testimony, Google has already effectively admitted the accuracy of the relevant statements from the testimony in question—making any "hearsay" issue moot.

In paragraph 7 of her declaration, Ms. Kwasizur explains that "multiple news outlets and consumer review sites directly compare Sonos and Google products."  She then provides three examples of articles that make that comparison.  But Ms. Kwasizur's own observation that third parties *make* a comparison is not an out-of-court statement offered for the truth of the matter asserted—it is a statement by the declarant about what other parties *do*.  And to the extent that Google's objection and argument turns on *one* quote from the three articles asserting that Google

1    and Sonos *do in fact* compete, Google's motion to strike is overbroad.  *See, e.g.*, *Brigadier*

2    *Roofing, Inc. v. Roofers' Unions Welfare Tr. Fund*, No. 14 CV 10496, 2017 WL 2834533, at *2

3    (N.D. Ill. June 30, 2017) ("This motion to strike is overbroad and denied."); *Lankford v. Taylor*,

4    No. CV-17-02797-PHX-DWL, 2020 WL 6395294, at *3 (D. Ariz. Nov. 2, 2020) (denying motion

5    in limine "because it is overbroad").  Indeed, Google identifies no hearsay problem whatsoever

6    with Exhibits B or C to Ms. Kwasizur's declaration, and only identifies one purportedly

7    problematic statement from Ex. D.[1]  *See* Mot. 2 (taking issue with statement that "Google's Nest

8    Audio product is 'Google's clearest attempt at a Sonos competitor yet'").  Google is wrong about

9    that statement too—Sonos offers it not for the truth of the (at most) *implied* statement that

10   "Google competes with Sonos" but rather as an example of a third party making a comparison

11   between Google and Sonos products.

12        Google identifies no specific hearsay statements in paragraph 9, and that paragraph

13   contains no hearsay for the same reason as paragraph 7.

14        Nor does Google identify any specific hearsay statements in paragraph 10.  Once again,

15   Google's motion to strike is overbroad and must be denied.  For example, paragraph 10 states: "In

16   my experience, and as evidenced by the news and product articles just discussed, customers

17   directly compare Sonos and Google products."  This is a statement about what customers *do*—

18   directly compare these products—not a statement offered for the truth of the implicit statement

19   that Sonos's and Google's products are in fact directly comparable.

20        Google next takes issue with paragraph 17's citation of Congressional testimony offered

21   by Sonos's Chief Legal Officer, Eddie Lazarus.  Google complains about Ms. Kwasizur's citation

22   of Mr. Lazarus's statement regarding "Google's strategy … to sell products below cost" and

23   related statements about Google's loss leader strategy.  Google argues that even if a hearsay

24

25

---

26   [1] And in fairness to Sonos, Google cannot now use its reply brief to identify for the first time
     hearsay objections or specific allegedly problematic statements that it could have raised in its
27   opening brief but chose not to.  *See* Tr. 1787:16-1788:13 (Court explaining what constitutes
     improper "sandbagging").

28
                                                     3        SONOS'S OPP. TO GOOGLE'S MOTION TO STRIKE
                                                                            3:20-CV-06754-WHA

1    exception applies, the testimony "would still be improper" because these "sweeping and

2    conclusory accusations … are wholly unsubstantiated."  Mot. 2.

3         Google's disagreement with the substance of Mr. Lazarus's testimony is not a basis to

4    strike a declaration that quotes from the testimony.  Google argues, for example, that these

5    "statements do not identify facts and should also be stricken" for that reason.  Mot. 3 (citing L.R.

6    7-5(b)).  But even *if* this provision applied to a declaration's *quotation* from Congressional

7    testimony as opposed to a declarant's *own* statements—a leap that Google doesn't bother to

8    support—Google offers no authority interpreting Local Rule 7-5(b) to permit striking facts from a

9    declaration simply because the other party disagrees with them.

10        Regardless, Mr. Lazarus's testimony (and Ms. Kwasizur's declaration) is accurate, as

11   confirmed by the trial evidence and Google's *own* post-trial filings.  For example, Mr.

12   Malackowski offered unrebutted testimony at trial that "these products are often what we

13   considered a loss leader"; explaining that "they can be sold at an amount that doesn't generate a

14   net profit" "in order to capture that home," as "part of the strategy of this business."  Tr. 1120:7-

15   15.  Google—in opposing Sonos's request for injunctive relief—purports to rebut Mr.

16   Malackowski's loss leader testimony, but in doing so only *confirms* Google's loss leader strategy.

17   Google admits that "Google's financial records demonstrate that it loses money on sales of some

18   accused products."  Dkt. 829 at 4.  That is agreement, not rebuttal.  Google also offers a current

19   employee, Mr. Chan's, statement that Google (1) prices the products "at [a] lower price point,"

20   but (2) does not price the accused products below cost.  *Id.* at 5.  But Mr. Chan clarifies that he

21   means only that Google does not set the MSRP below the *manufacturing cost*, Dkt. 829-1 ¶ 6,

22   ignoring Google's other costs, such as product development, software engineering, and

23   marketing.  And Mr. Chan does not even attempt to dispute that Google does not generate a profit

24   on these products, or that Google intentionally prices the product at an artificially low price to

25   attract customers to the Google ecosystem—i.e., the substance of Mr. Malackowski's still

26   unrebutted trial testimony.

27

28                                                      4                SONOS'S OPP. TO GOOGLE'S MOTION TO STRIKE
                                                                         3:20-CV-06754-WHA

1    Because Google has not rebutted Mr. Malackowski's testimony and has, in responding to

2    that testimony, admitted that Mr. Malackowski was right, Google's motion to strike is moot with

3    respect to these statements, because their equivalent are already part of the record for purposes of

4    trial and post-trial briefing.

5    And Google's motion to strike is inappropriate for another reason as well.  The Court has

6    made clear to the parties—and to Google in particular—that it is improper to "move[] to strike

7    not out of prejudice but to secure an advantage," describing this practice as "emblematic of the

8    worst of patent litigation."  Dkt. 565 at 19.  *See also id.* at 18 (partially granting Sonos's motion

9    to strike and denying Google's motion to strike "in its entirety").  And the Court has warned

10   Google about advancing objections just for the sake of objecting.  Tr. 375:9-376:8 (instructing

11   Google to "revise your objections" because "I did go through it on the first one," and "I would

12   say that only about 10 percent deserve to be made").

13   Notwithstanding this clear direction from the Court, Google has now introduced yet more

14   motion practice—indeed, ancillary motion practice *about* motion practice—in order to try to gain

15   a strategic edge in opposing Sonos's request for injunctive relief.  Google challenges Sonos's

16   proffered declaration with one hand while offering a fistful of its own news articles with the

17   other:  Google's opposition to Sonos's motion for injunctive relief relies on a declaration that on

18   its face has the same issues that Google identifies here.  *See, e.g.*, Dkt. 829-2 (exhibiting ***thirteen***

19   news articles); *cf. also, e.g.*, Dkt. 829-1 ¶ 9 (Mr. Chan opining that "I do not think of Google and

20   Sonos as competitors in the smart speaker space").  Unlike Google, Sonos is adhering to the

21   Court's admonitions and is not moving to strike Google's competing declarations.

22   **B.      Google Has Already Admitted That Ms. Kwasizur's Statements Are Correct**

23   Google moves to strike paragraphs 15 and 16 of Ms. Kwasizur's declaration as not based

24   on her personal knowledge.  Once again, Google's motion to strike is both overbroad and beside

25   the point, quibbling with statements regarding facts that Google has already admitted.

26   Ms. Kwasizur, the General Counsel of Sonos, has personal knowledge of the statements

27   made in her declaration.  For example, Google seeks to strike—as not based on personal

28

5                                    SONOS'S OPP. TO GOOGLE'S MOTION TO STRIKE
                                                      3:20-CV-06754-WHA

1   knowledge—Ms. Kwasizur's statement that Google's "lower-priced speaker offerings can

2   adversely impact Sonos's ability to counter ongoing price erosion that frequently affects

3   consumer products." Mot. 3 (moving to strike ¶ 15 in its entirety); Dkt. 830-2 ¶ 15. Similarly,

4   Google seeks to strike Ms. Kwasizur's statement that "Sonos places a strong emphasis on quality

5   and privacy, focusing on using customer data to enhance their experience rather than aggressive

6   monetization of customer data." Mot. 3 (moving to strike ¶ 16 in its entirety); Dkt. 830-2 ¶ 16.

7   But Google offers literally no argument or explanation as to why the General Counsel of Sonos

8   would not have personal knowledge of Sonos's commitment to quality and privacy or to Sonos's

9   pricing strategy. *See, e.g.*, *Allen*, 2005 WL 8160551, at *3 ("personal knowledge may be inferred

10   from the context of the affidavit and the affiant's position" (citing *Barthelemy v. Air Line Pilots*

11   *Ass'n*, 897 F.2d 999, 1018 (9th Cir. 1989)). And Google offers no "evidence" to "rebut[] the

12   inference of personal knowledge flowing from [Ms. Kwasizur's] position." *Edwards*, 527 F.

13   Supp. 2d at 1201-02.

14          Google appears to only actually take issue with Ms. Kwasizur's statements regarding

15   Google's pricing strategy and business, identifying two statements that Google says must be

16   struck. First, Google takes issue with Ms. Kwasizur's statement that "Google seeks to monetize

17   their customers through the sale of additional services, rather than the speakers themselves." But

18   as explained above, Google has *admitted* in this case that (1) it does not sell the accused speakers

19   at a profit, (2) that some of the accused speakers are in fact sold at a loss, and (3) that the

20   remaining speakers are not sold at a loss—if and only if Google excludes from that analysis every

21   single cost *except* for manufacturing cost. In other words, Google is wasting the Court's and

22   Sonos's time by seeking to strike a statement that Google has already admitted, and which is

23   already the subject of unrebutted trial testimony by Mr. Malackowski; here too the Court may

24   deny Google's motion to strike as moot.

25          Second, Google takes issue with Ms. Kwasizur's statement that Google engages in

26   "aggressive monetization of customer data." Mot. 3. But once again, Google does not actually

27   dispute the substance of this statement. Google purports to rebut this statement, but offers only a

28

6                    SONOS'S OPP. TO GOOGLE'S MOTION TO STRIKE
                     3:20-CV-06754-WHA

1   narrow, carefully worded statement from Mr. Chan, who states that "Google does not *sell* any

2   customer data that it *may* collect from its smart speakers."  Dkt. 829-1 ¶ 8 (emphasis added).

3   Google's declaration does not dispute that Google uses customer data to generate revenue,

4   contending only that Google does not *sell* customer data.[2]  And Google does not even offer the

5   Court any definitive statement as to whether and what kind of data it *does* collect, hiding the ball

6   with the statement "any customer data that it *may* collect."  Similarly, Mr. Chan also states that

7   "Google does not display or play" *its own* "advertisements on its smart speaker products," Dkt.

8   829-1 ¶ 7, but does not substantively contest that Google monetizes customer data in other ways.

9   This is not the stuff of rebuttal; this is an acknowledgement that Ms. Kwasizur's statement is

10  materially correct.

11  ## C.    Ms. Kwasizur Does Not Offer Expert Opinion

12          Finally, Google moves to "strike portions of paragraph 13 and 14 and the entirety of

13  paragraphs 11, 15, and 23 as impermissible expert opinion."  According to Google, Ms. Kwasizur

14  has failed to limit her opinion testimony to that which is "rationally based on [her] perception,"

15  under Rule 701.  But Google's objections are nearly coterminous with Google's arguments about

16  the *weight* and *meaning* of certain evidence that Sonos points to in its motion for injunctive relief.

17  Google thus "move[s] to strike not out of prejudice but to secure an advantage," Dkt. 565 at 19,

18  and the Court should reject Google's tactic.

19          ***First***, Google argues that Ms. Kwasizur "attempts to give improper expert testimony

20  regarding the behavior of consumers" with respect to the lock-in and ecosystem effect.  Mot. 4.

21  Google highlights Ms. Kwasizur's statement that "if Sonos loses out on an initial sale of a speaker

22  product to a new household, then Sonos likely loses out on the sale of at least three devices to that

23  _____

24  [2] And even this statement by Mr. Chan is so qualified that it does not actually appear to rebut
    Mr. Malackowski's trial testimony that Google "generate[s] revenue from advertising and sale of
25  data."  Tr. 1096:12.  Google chose to save its "rebuttal" evidence for its post-trial declaration,
    knowing that Sonos would not have an opportunity to probe Mr. Chan's statements, and fought—
26  through pretrial motion practice—to exclude the revenues that could have shed light on this
    question.  *See, e.g.*, Dkt. 616-3 at 4-7 ("The Court Should Exclude References To Financial
    Information For Unaccused Products Under FRE 402 and 403."); *id.* at 5 (specifically taking
27  issue with Sonos's allegation that Google's infringement "has paved the way for Google to
    generate billions of dollars in revenue" from "advertising, data collection, and search").

28

1   household" and then complains that Ms. Kwasizur has not "explained how statements regarding

2   the likelihood that Sonos will lose sales of multiple devices is based on her 'perception' as a lay

3   person." Mot. 4. But Ms. Kwasizur testified at trial,[3] without objection and where Google had

4   the opportunity to cross examine her, that Sonos determined that "if one customer buys one Sonos

5   [speaker], we know from our data that on average they buy 2.9 or 3 more products." Tr. 1019:23-

6   24. As she explained, "I think you heard the Google [in-house attorney] Mr. Kowalski in the

7   video say he has eight; right?" Tr. 1019:25-1020:1. Elaborating, Ms. Kwasizur noted that "when

8   we look at households, you know, we do look at how much our customers buy and how likely

9   they are to buy another Sonos product or another one; or even -- even if you bought this one

10  product, you are probably more likely to buy this, you know, home theater thing. Like, we tend to

11  look at it in the aggregate as households. So, like I said, on average one customer buys I think it's

12  up to 2.98 is the latest stat on how you know what the repeat trends are …." Tr. 1021:12-20.[4]

13        Google also complains that "Ms. Kwasizur has not laid any foundation as to how her

14  testimony regarding the 'likely' behavior of consumers who purchase Google speakers or the

15  effect of Google's product prices on Sonos's speaker products is based on 'first-hand knowledge

16  or observation.'" Mot. 4 (quoting *Tyco Thermal Controls LLC v. Redwood Industrials*, No. C 06-

17  07164 JF (PVT), 2010 WL 1526471, at *4 (N.D. Cal. Apr. 15, 2010)). Let's take a look at some

18  of the offending statements. For example, Google takes issue with Ms. Kwasizur's statement that

19  "I am aware that customers chose Google over Sonos based on price, integration with other

20  Google smarthome devices, and brand familiarity." Dkt. 830-2 ¶ 11. Does anyone even doubt

21  any part of this statement? Google's own witness Mr. Chan makes near-identical statements in

22

23  ─────────────
    [3] *See, e.g.*, Fed. R. Evid. 602 ("Evidence to prove personal knowledge may consist of the witness's own testimony.").

24  [4] Google's argument that Sonos is "now attempt[ing] to re-assert" "its lost profits theory"
25  "through conclusory statements by Ms. Kwasizur" is equally baseless. Sonos does not seek
    damages based on lost profits. But the fact that Google's monopolistic and predatory pricing
26  threatens Sonos's profits is hardly a secret—it is the entire reason for this litigation. And as
    discussed in Sonos's reply in support of its motion for injunctive relief, Google's legal
27  argument—that injunctive relief *requires* a showing of lost profits—is not supported by the legal
    authorities on which Google relies. Dkt. 836 at 3, 7.

28
SONOS'S OPP. TO GOOGLE'S MOTION TO STRIKE
                                         3:20-CV-06754-WHA

his competing declaration, stating that he "do[es] not think of Google and Sonos as competitors in the smart speaker space," apparently based on the distinction that "***Google sells its speakers and devices at a lower price point than Sonos*** and generally attracts customers ***who are interested in*** the intelligence of the Google Assistant ***to control their smart homes***."  Dkt. 829-1 ¶ 9.  *See also, e.g.*, Dkt. 829 at 5 (Google arguing that it "sells its products at lower price points" to customers who want to use "Google Assistant to control their smart homes" while "Sonos prices its premium products at higher price points").  Google identifies literally no reason why Ms. Kwasizur, the general counsel of Sonos, would not have personal knowledge of Google's sales advantages on pricing, smart-home integration, and brand familiarity.[5]  *See Allen*, 2005 WL 8160551, at *3 ("personal knowledge may be inferred from the context of the affidavit and the affiant's position").  You don't need a Ph.D. in economics to know that Google is a more universally recognized brand than Sonos.  *See, e.g.*, Dkt. 829 at 6 (***Google*** quoting TX158 for the proposition that ***"[b]rand is a strong influencer on choice and Google does well"***); Tr. 1034:20-21 (Court describing Google as "the biggest company in the world").  Indeed, jury selection was complicated in this matter because of the sheer number of potential jurors who, for example, owned Google stock.  *See, e.g.*, Tr. 111:23-113:8, 116:15-25, 117:9-16, 119:12-16, 119:22-120:3.

Google similarly takes issue with Ms. Kwasizur's statements regarding the lock-in effect, *e.g.*, "when a consumer purchases a Google smart speaker, such as a Nest Audio, it is more likely that subsequent smart speaker purchases from that same consumer would be of Google smart speaker devices, as opposed to smart speaker devices of another brand, such as Sonos."  Mot. 4; Dkt 830-2 ¶ 13.  Once again, this statement is at the very least reasonably supported by Ms. Kwasizur's trial testimony regarding the data for repeat purchasers of Sonos products, *see supra*.  Nothing in the trial record suggests that that repeat purchaser dynamic would *not* be analogous for purchasers of Google products.

Google also relies upon legal authority that is entirely inapposite.  *See* Mot. 4 (citing *Tyco*, 2010 WL 1526471, at *4).  In *Tyco*, the declarant was a paralegal at a law firm who "work[ed] on

---

[5] Google offers no evidence rebutting the presumption of her personal knowledge, either.

SONOS'S OPP. TO GOOGLE'S MOTION TO STRIKE
3:20-CV-06754-WHA

1   litigation matters involving Monsanto" and before that had been a paralegal at Monsanto from

2   1981 to 1987.  2010 WL 1526471, at *3.  Tyco argued that "as a result of [the paralegal's]

3   experience as a Monsanto employee from August 1981 to August 1997 and her current

4   employment at a firm that represents Monsanto, Belleau developed personal knowledge about

5   Monsanto shipping records and their significance."  *Id.*  But as the court noted, the paralegal's

6   "employment at Monsanto did not begin until August 1981, many years after the end of the

7   period relevant to the instant case," putting her in no position to have "'first-hand knowledge or

8   observation' required to explain the significance of shipping records dated from 1958 to 1971."[6]

9   *Id.* at *4.  Here, by contrast, Ms. Kwasizur has been employed at Sonos during the entire period

10  of Google's competition with Sonos and infringement, and she participated in licensing

11  discussions that went into granular detail on Google's product line of speakers during the period

12  2016 to 2019.  *See generally* Dkt. 705.

13      **Second**, Google seeks to strike—as improper expert opinion—Ms. Kwasizur's statements

14  regarding the ability of Sonos and other market participants to meet demand if the Court enjoins

15  Google's infringement.  Mot. 4-5.  But as an executive at Sonos, Ms. Kwasizur naturally has

16  knowledge of Sonos's manufacturing and supplier capacity.  Ms. Kwasizur, who has been

17  employed at Sonos since 2013, explained that "selling audio products" is the core of Sonos's

18  business, and "[e]very Sonos employee works on speaker-related technology or supports Sonos's

19  speaker business in some way."  Dkt. 821 ¶¶ 1, 3-4.  As she explained, "[h]ardware sales are

20  Sonos's primary source of revenue."  *Id.* ¶ 5.  Ms. Kwasizur thus has general knowledge on

21  Sonos's sales of speakers, including those that compete with Google.

22      Google specifically takes issue with Ms. Kwasizur's statement that "Sonos has the

23  manufacturing and supplier capacity to make up for much of the demand for Google's media

24  players," suggesting that Ms. Kwasizur has no first-hand knowledge of this and arguing that

25  ─────────────

26  [6] Similarly, in another case on which Google relies, the court in *Allen* struck—for lack of personal knowledge—a declaration paragraph describing the activities of the Honeywell retirement plan in 1983 where the declarant "has been the Honeywell plan administrator since only 2000."  2005

27  WL 8160551, at *2-3.

28                                          10                SONOS'S OPP. TO GOOGLE'S MOTION TO STRIKE
                                                              3:20-CV-06754-WHA

1    "there are several accused products for which Sonos makes no similar product."  Mot. 4.  But

2    Ms. Kwasizur did not say that Sonos alone could make up *all* of the demand, and indeed

3    specifically identified other large players in the market that could make up any demand that

4    Sonos could not, *see infra*.

5          Google also objects to this statement in paragraph 23:  "Although Sonos experienced

6    manufacturing and supply shortfalls early in the COVID-19 pandemic, at this time Sonos can

7    ramp up its capacity to meet increased need for smart speaker products."  It is unclear on what

8    basis Google even objects to this statement.  Ms. Kwasizur describes the fact that Sonos

9    experienced constraints early in the pandemic, but explains that those constraints no longer

10   prevent Sonos *in 2023* from "ramp[ing] up its capacity to meet increased need."  This is precisely

11   the type of high-level information on capacity and supply chain issues that a reasonable person

12   would expect an executive of a publicly traded company to be aware of.  *See* Rule 701(a) ("If a

13   witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:

14   (a) rationally based on the witness's perception.");  *Allen*, 2005 WL 8160551, at *3; *Edwards*, 527

15   F. Supp. 2d at 1201-02.  Google identifies no *reason* to think that Ms. Kwasizur would not be

16   aware of these facts, no specific *testimony or evidence* undercutting her statement, nor any *legal*

17   *authority* precluding this type of lay testimony from a witness analogous to Ms. Kwasizur.  Those

18   failures require the Court to deny Google's motion.

19         Google separately takes issue with Ms. Kwasizur's statement that "Amazon and Apple

20   also produce comparable speakers that could satisfy consumer demand for smart speakers."

21   Mot. 4-5.  It is unclear why Google thinks that this is a matter for expert opinion when *Google*

22   *itself* argues that Amazon has "implement[ed] the [accused] feature," Dkt. 829 at 12, and that

23   "Amazon has the 'dominant share of the U.S. market for smart speakers,'" *id.* at 5.  Google's own

24   assertions both (1) make clear that Ms. Kwasizur's statement is *correct* as a factual matter and

25   (2) belie Google's argument that Ms. Kwasizur's statement is "based on *scientific, technical, or*

26   *other specialized knowledge* within the scope of Rule 702."  Rule 701(c) (emphasis added).  And

27

28                                                                            SONOS'S OPP. TO GOOGLE'S MOTION TO STRIKE
                                    11                                        3:20-CV-06754-WHA

1    Google does not dispute that the "accused products for which Sonos makes no similar product"

2    have analogues made by Amazon and Apple.

3         In sum, Google argues that "Ms. Kwasizur is not an economist qualified to discuss supply

4    and demand in the smart speaker market, nor does she purport to have personal knowledge of

5    Sonos's manufacturing capacities."  Mot. 5 (citing *Fresenius Med. Care Holdings, Inc. v. Baxter*

6    *Int'l, Inc.*, No. 597, 2006 WL 1330002, at *3 (N.D. Cal. May 15, 2006)).  But Google's citation to

7    *Fresenius* is inapposite.  In that case, a court struck the parts of a fact witness's declaration in

8    which he offered classic technical expert opinion, including (1) comparing an accused product to

9    the limitations of an asserted patent and (2) opinions on "whether certain components of

10   hemodialysis and/or heart lung machines were well known in the industry" as of the priority date

11   of the asserted patent.  Mot. 3, 5.  Ms. Kwasizur is not providing testimony at the level of an

12   economic expert, or offering any precise data analysis that would require "specialized

13   knowledge."  Instead, her "conclusions are … based on h[er] personal observations and

14   knowledge as a result of h[er] position at [Sonos]" and "are not so specific as to require technical

15   or other specialized knowledge in violation of Federal Rule of Evidence 701."  *Interwoven*, 2013

16   WL 3786633, at *11.  Her declaration is therefore proper under Rule 701.  *Id.*  Indeed, her

17   personal knowledge is *presumed* as a result of her position, *see supra*, and Google has failed to

18   offer any proof to rebut that presumption.

19   **IV.    CONCLUSION**

20        The Court should deny Google's motion to strike.

21

22   Dated:  July 13, 2023                           ORRICK HERRINGTON & SUTCLIFFE LLP

23                                                   *and*
                                                     LEE SULLIVAN SHEA & SMITH LLP

24
                                                     By: */s/ Clement Seth Roberts*
25                                                        Clement Seth Roberts

26                                                   *Attorneys for Sonos, Inc.*

27

28
                                        12          SONOS'S OPP. TO GOOGLE'S MOTION TO STRIKE
                                                    3:20-CV-06754-WHA