1  CLEMENT SETH ROBERTS (SBN 209203)
   croberts@orrick.com
2  BAS DE BLANK (SBN 191487)
   basdeblank@orrick.com
3  ALYSSA CARIDIS (SBN 260103)
   acaridis@orrick.com
4  ORRICK, HERRINGTON & SUTCLIFFE LLP
   The Orrick Building
5  405 Howard Street
   San Francisco, CA 94105-2669
6  Telephone:     +1 415 773 5700
   Facsimile:      +1 415 773 5759
7
   SEAN M. SULLIVAN (*pro hac vice*)
8  sullivan@ls3ip.com
   J. DAN SMITH (*pro hac vice*)
9  smith@ ls3ip.com
   MICHAEL P. BOYEA (*pro hac vice*)
10 boyea@ ls3ip.com
   COLE B. RICHTER (*pro hac vice*)
11 richter@ls3ip.com
   LEE SULLIVAN SHEA & SMITH LLP
12 656 W Randolph St., Floor 5W
   Chicago, IL 60661
13 Telephone:     +1 312 754 0002
   Facsimile:      +1 312 754 0003
14
   *Attorneys for Sonos, Inc.*
15

16                UNITED STATES DISTRICT COURT

17             NORTHERN DISTRICT OF CALIFORNIA,

18                  SAN FRANCISCO DIVISION

19

20 SONOS, INC.,                          Case No. 3:20-cv-06754-WHA

21     Plaintiff and Counter-defendant,   Consolidated with
                                          Case No. 3:21-cv-07559-WHA
22     v.
                                          **SONOS, INC.'S REPLY IN SUPPORT**
23 GOOGLE LLC,                           **OF RULE 50 AND 59 MOTION**

24     Defendant and Counter-claimant.    Judge:  Hon. William Alsup
                                          Courtroom:  12, 19th Floor
25

26

27

28

# TABLE OF CONTENTS

Page(s)

I.    INTRODUCTION ............................................................................................... 1

II.   A REASONABLE JURY WAS REQUIRED TO FIND THAT GOOGLE DIRECTLY INFRINGES THE '966 PATENT ................................................................. 1

    A.    The jury determined that Google's "no standalone mode" redesign infringes. .......... 1

    B.    A reasonable jury could only have found that Google's accused products store the zone scene ......................................................................................................... 2

    C.    A correctly instructed jury would be required to find that the '966 patent was directly infringed. ............................................................................................... 5

III.  A REASONABLE JURY WAS REQUIRED TO FIND THE '966 PATENT INDIRECTLY AND WILLFULLY INFRINGED ................................................................ 9

    A.    A reasonable jury was required to find the '966 patent indirectly infringed ............. 9

    B.    A reasonable jury was required to find that Google's infringement of the '966 patent was willful. ..................................................................................................... 14

IV.  IF THE COURT GRANTS SONOS A NEW TRIAL ON INFRINGEMENT OF THE '966 PATENT, THE COURT SHOULD CORRECT CERTAIN RULINGS. ............................. 15

V.    CONCLUSION ................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACCO Brands, Inc. v. ABA Locks Mfrs. Co.*,
    501 F.3d 1307 (Fed. Cir. 2007) .................................................................. 9, 10, 13

*Chicago Bd. Options Exch., Inc. v. Int'l Sec. Exch., LLC*,
    677 F.3d 1361 (Fed. Cir. 2012) .......................................................................... 6

*Lucent Techs., Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009) ........................................................................ 13

*Nazomi Communications, Inc. v. Nokia Corp.*,
    739 F.3d 1339 (Fed. Cir. 2014) .......................................................................... 8

*Pavo Solutions LLC v. Kingston Tech. Co., Inc.*,
    No. 8:14-cv-01352-JLS-KES, 2020 WL 9158697, (C.D. Cal. Aug. 7, 2020),
    *aff'd*, 35 F.4th 1367 (Fed. Cir. 2022) ................................................................ 4

*Retractable Techs., Inc. v. Becton, Dickinson & Co.*,
    653 F.3d 1296 (Fed. Cir. 2011) .......................................................................... 7

*Ricoh Co. v. Quanta Computer Inc.*,
    550 F.3d 1325 (Fed. Cir. 2008) ........................................................................ 12

*Silicon Graphics, Inc. v. ATI Techs., Inc.*,
    607 F.3d 784 (Fed. Cir. 2010) ............................................................................ 6

*Toshiba Corp. v. Imation Corp.*,
    681 F.3d 1358 (Fed. Cir. 2012) ........................................................................ 13

*Typhoon Touch Techs., Inc. v. Dell, Inc.*,
    F.3d 1376 (Fed. Cir. 2011) ................................................................................. 8

**Other Authorities**

Fed. R. Civ. P. 50 ................................................................................... 1, 4, 14

Fed. R. Civ. P. 50(a) .................................................................................. 1, 10

Fed. R. Civ. P. 59 ....................................................................................... 1, 14

1    **I.      INTRODUCTION**

2         Sonos is entitled to judgment as a matter of law that Google infringes the '966 patent.

3    The Court should enter judgment in Sonos's favor, or, in the alternative, grant Sonos's motion for

4    a new trial on the '966 patent pursuant to Rule 59.

5    **II.     A REASONABLE JURY WAS REQUIRED TO FIND THAT GOOGLE
            DIRECTLY INFRINGES THE '966 PATENT**

6

7         As Sonos explained, Mot. 1-2, Sonos proved and Google does not dispute infringement of

8    the vast majority of the limitations of the asserted claims of the '966 patent.[1]  Google raised three

9    non-infringement arguments for the '966 patent: (a) the redesigned accused products do not

10   remain in standalone mode while the speaker groups are set up and invoked, (b) the speaker

11   groups are not stored on the accused media players, and (c) Sonos failed to prove that any

12   customer had networked three accused media players with a computing device provisioned with

13   the Google Home App.  Those arguments fail, Mot. 1-16, and a reasonable and properly

14   instructed jury was required to find that Google directly infringes the '966 patent.

15        **A.      The jury determined that Google's "no standalone mode" redesign infringes.**

16        Google argues that its redesigned products do not continue to operate in "standalone

17   mode" after being added to a speaker group.  Mot. 2-4.  That argument fails for two reasons.

18        **First**, claim 1 of the '966 patent (unlike claim 1 of the '885 patent) does not *require*

19   "continuous" operation in standalone mode.  Mot. 1-2.  Google argues that "at each one of the

20   *steps*" of claim limitations 1.5, 1.6, 1.7, 1.8, and 1.9, the claim requires that the steps "be done

21   while operating in standalone mode."  Opp. 12 (quoting Almeroth testimony); *see also id.* at 11.

22   We agree.  Our argument is that "claim 1 of the '966 patent does not require 'continuous'

23   operation in standalone mode," Mot. 2, that is, the claim does not require that the player *remain* in

24   ───────────────

25   [1] Google argues that Sonos's motion fails to analyze "***each and every*** element of the '966 patent
     asserted claims" but does not actually dispute that the other elements are met.  Opp. 2.  Google
26   suggests that Sonos improperly incorporated by reference its Rule 50(a) motion (discussing these
     other claim elements), Opp. 2 n.1, before itself "fully incorporat[ing]" "by reference" the
27   arguments that it made in its *own* Rule 50 motion, Opp. 11.  Google's selective objection ignores
     that Sonos's motion is a *renewed* motion under Rule 50.

28                                                          SONOS, INC.'S REPLY ISO
                                   1                        RULE 50 AND 59 MOTION
                                                            3:20-CV-06754-WHA

standalone mode *in between* each recited step.[2]  And Google's only answer is to resort to its

quixotic prosecution history argument, which the Court—correctly—did not adopt during trial.

*See* Opp. 13.  *Compare also, e.g.*, Dkt. 732 at 4 (Google arguing that "the prosecution history of

the '966 and '885 patent … indicates that a zone player must be continuously outputting media as

part of the Standalone Limitation"), *with* Dkt. 762 (final charge not adopting this claim

construction).  As Sonos has previously explained, the Examiner's statements that Google relies

on were not about *standalone* mode at all, and the examiner allowed the claims following an

amendment describing *grouped* mode.  *See, e.g.*, Dkt. 839 at 17-18; Dkt. 733.

**Second**, even if claim 1 of the '966 patent *did* require continuous operation in standalone

mode, the jury's verdict that Google infringes claim 1 of the '885 patent necessarily means that

Google's products meet the "standalone mode" requirements of claim 1 of the '966 patent.  Mot.

2-3.  Google argues that the claims are not "identical with respect to the standalone mode

requirements."  Opp. 13-14.  But Google does not dispute that (1) its non-infringement defense

regarding standalone mode was identical for both patents, (2) its standalone mode argument was

weaker as to the claims of the '966 patent than with respect to the '885 patent, and (3) its redesign

effected *no change* to the software accused of infringing the '966 patent.  Mot. 4.  Because

Google's "redesign" infringes the '885 patent, there is no basis on which a reasonable jury could

conclude that Google does not infringe the '966 patent as to the "standalone mode" limitation.

   **B.**    **A reasonable jury could only have found that Google's accused products store the zone scene.**

   Google offered only one non-infringement theory unique to the '966 patent: the accused

products (in both prior and new versions) do not "cause storage" of zone scenes.  *See* Opp. at 1

(identifying causing storage as the only difference in the claims).  Google's arguments regarding

"causing storage" are both inconsistent with the claim language and refuted by Google's own

---

[2] Google attempts to shoehorn in its rejected "idle mode" theory, arguing that the speaker moves from standalone mode to idle mode before saving the group.  Opp. 12.  The jury necessarily found through its infringement verdict on the '885 patent that the StopCurrentApp function does not cause the speaker to leave grouped mode, so this argument fails.

SONOS, INC.'S REPLY ISO
RULE 50 AND 59 MOTION
3:20-CV-06754-WHA

1    witnesses and technical documents.  Mot. 4-7.  No reasonable jury could find that the Google

2    Home App does not cause storage of the zone scenes.

3         Google first argues that "[u]ndisputed testimony established that Google's speakers are

4    grouped *dynamically*."  Opp. 2 (emphasis added).  But Google's own employees confirmed that

5    the accused grouping technology is *static* rather than dynamic.  Mr. MacKay testified, for

6    example, that "a 'static group' is what is being referred to -- in this document, 'Create and

7    manage speaker groups,'" in contrast to a dynamic group.  Dkt. 755-2 at ECF p. 25-26, *see also,*

8    *e.g.*, *id.* at ECF p. 26 (the phrase "static" refers to speaker groups "***as sort of the opposite of*** -- of

9    ***dynamic***, or like as an ***alternative to dynamic*** to differentiate the two kinds of groups"); *id.* at

10   ECF p. 75 (Chan: "[t]he Google Home app is required to create a ***static*** speaker group").  And

11   Google's related argument that its "accused products operate dynamically, without persistent

12   storage of the grouping," Opp. 3, is contradicted by Mr. MacKay's admission that Google's

13   accused speaker groups are "saved persistently," including the "the name and ID of the group."

14   Dkt. 754-2 (MacKay 5/10/22) at 11; Dkt. 754-3 at 117:20-24; Tr. at 1277:5-9.

15        Even more fundamentally, as Sonos explained, zone scenes *must* be saved persistently

16   because—as Google's witnesses admitted—the zone scenes can be invoked hours, days, or weeks

17   later.  Mot. 6.  Google does not dispute this, but argues that under this logic, Sonos's 2005

18   System would have invalidated the claims.  Opp. 3-4.  But Google's argument ignores the

19   differences between creating and immediately invoking versus saving and later invoking a group.

20   As Mr. Lambourne testified, the zone groups in Sonos's 2005 system "would remain in existence

21   *until the user decided to do something else*," and so, "if you went away for a few days *with the*

22   *two rooms grouped together* and came back, they would still be grouped together," but as soon as

23   you changed the grouping, the group would be lost and had to be recreated to use it again.  Tr.

24   418:9-419:6 (emphases added).  That is a basic difference between static groups (e.g., zone

25   scenes) and dynamic groups (e.g., party mode), and there is no substantive dispute that Google's

26   speaker groups are static groups.

27        Sonos also explained that because the Court has already found that Google's speaker

28

3

SONOS, INC.'S REPLY ISO
RULE 50 AND 59 MOTION
3:20-CV-06754-WHA

1  groups are saved in the context of the '885 patent, that means that Google's speaker groups are

2  stored for purposes of the '966 patent.  Mot. 6.  Google argues that Sonos failed to "raise[] this

3  point to the jury, as required under Rule 50."  Opp. 4.[3]  This is not only untrue—Sonos repeatedly

4  argued that Google's speaker groups are saved, e.g., Tr. 1278:11-14—but immaterial for two

5  reasons.  First, the jury was instructed on both the claim construction of "zone scenes" and the

6  Court's finding that Google infringes claim 1 of the '885 patent, so it obviously knew that zone

7  scenes are previously stored.  Second, with respect to infringement of the '885 patent, Google

8  only disputed whether its redesigned products meet the standalone mode requirements; there was

9  no dispute Google's products use zone scenes.  Similarly, Google's complaint that "the '885

10  *claim language* does not mention saving or storing" is beside the point where Google admits that

11  the concept of saving in the '885 patent comes from "the Court's construction of 'zone scene,'"

12  Opp. 4 (emphasis added), which Google does not challenge.  Regardless, Google's argument that

13  it "introduced substantial evidence at trial showing that the accused speaker groups … were not

14  ***stored*** for later invocation," Opp. 5, is belied by the fact that the speaker groups are *retrievable*

15  for later invocation, as discussed above (citing Mot. 6).

16       Sonos further established that Google stores "the name and ID of the group." Dkt. 754-2

17  (MacKay 5/10/22) at 11.  Google argues that storing the identifier and name of the speaker group

18  is not enough to meet either the storage limitation or the construction "previously-saved grouping

19  of zone players," but offers no support beyond its own argument that the jury "found it

20  insufficient."  Opp. 5.  Google identified nothing in the record suggesting that a reasonable jury

21  could accept Google's argument that "a mere group identifier and name" do not "meet the

22  claimed 'previously-saved grouping of zone players' construction," Opp. 5.  Google instead

23  contends that "there is no 'storage' of zone scenes"—if you understand "storage" to mean

24  ─────────────────────

25  [3] This is hardly analogous to *Pavo Solutions LLC v. Kingston Tech. Co., Inc.*, where the court granted an "unopposed" 50(b) motion, finding that the defendant stated that "it was 'dropping' its invalidity arguments," presented "no evidence or argument bearing on invalidity" at all, and

26  "agreed to revise the jury instructions to remove all reference to invalidity."  No. 8:14-cv-01352-JLS-KES, 2020 WL 9158697, at *3 (C.D. Cal. Aug. 7, 2020), *aff'd*, 35 F.4th 1367 (Fed. Cir.

27  2022).

28

SONOS, INC.'S REPLY ISO
RULE 50 AND 59 MOTION
3:20-CV-06754-WHA

1    persistently stored, stored in a single location, or storing a list of the members of the zone scene.

2    Opp. 2-7.  None of these arguments are persuasive because none of Google's glosses on "storage"

3    are reflected in the claims, as Dr. Schonfeld admitted.  Mot. 5.

4         Google's main argument is that its "accused devices use an architecture where 'each

5    device ***doesn't* . . . *have*** stored information about what other members of the group exist so it

6    ***doesn't know*** which other devices are members of that group.'"  Opp. 2-3.  But Google identifies

7    no claim limitation of the '966 patent requiring that each networked speaker "know which other

8    [speakers] are members of that group"—because there is none.

9         To support its argument that storage must mean a list of group members, Google contends

10   that Sonos cannot "cite a single embodiment of a zone scene in the '966 patent that does not

11   include group membership information."  Opp. 6-7.  This is irrelevant because Google's citation

12   is to one "preferred embodiment[]," disclosed "by way of example[] only," and ignores the legal

13   rule that claims of a patent are not limited to exemplary embodiments.  TX0001 at 4:10, 11:23;

14   Mot. 7 (citing *Dow Chem. Co. v. United States*, 226 F.3d 1334, 1342 (Fed. Cir. 2000)).  But in the

15   end, it is undisputed that Google *does* store group membership information, because the group

16   leader "stores information about the followers that are currently connected to it."  Mot. 7 (quoting

17   Dkt. 754-2 (MacKay 5/10/22) at 8; Dkt. 766-2 at 95:14-20).[4]

18        A reasonable jury could only find that the Home App causes storage of the zone scenes.

19   **C.    A correctly instructed jury would be required to find that the '966 patent was**

20   **      directly infringed.**

21        That leaves only one basis on which the jury could have found Google did not infringe the

22   '966 patent:  the Court's ruling that "Google cannot infringe the '966 patent with respect to

23   computing devices with the Google Home app installed that are not yet networked with at least

24   three zone players that may be added to overlapping zone scenes using the Google Home app."

25   _____

26   [4] Google argues that Mr. MacKay "clarified" at trial that this information was only stored
     temporarily, Opp. 6, but Mr. MacKay admitted on cross examination that this was new testimony

27   at trial that he had not testified to at his deposition, Tr. 1277:1-4, so that "clarifi[cation]" was
     entitled to little weight.

28

                                                    SONOS, INC.'S REPLY ISO
                                                    RULE 50 AND 59 MOTION
                                                    3:20-CV-06754-WHA

Dkt. 762 at 16-17 (Instruction No. 31).  As Sonos explained, that construction is wrong as a matter of law.  Mot. 8-16.  And had the jury been correctly instructed, a reasonable jury would have found that Google directly infringes the '966 patent.  Mot. 16.  Accordingly, the Court should grant Sonos's motion for judgment as a matter of law that Google directly infringes the '966 patent or grant Sonos's motion for a new trial on infringement of the '966 patent.

Google defends the Court's claim construction by redlining the claim language as follows:

> 1. A computing device ~~comprising: one or more processors;~~
>
> ~~a non-transitory computer-readable medium; and program instructions stored on the non-transitory computer-readable medium that, when executed by the one or more processors, cause the computing device to perform functions comprising:~~
>
> ~~while~~ serving as a controller for a networked media playback system comprising a first zone player and at least two other zone players, wherein the first zone player is operating in a standalone mode in which the first zone player is configured to play back media individually:

Google removes key language including "program instructions … that, **when executed** … **cause** the computing device to perform functions."  TX0001 at 11:37-41 (Claim 1) (emphasis added).  Google's re-writing of the claim's express terms makes little sense on its face, and would define, for example, a wallet as something that *must* have cash in it, rather than something that *is designed to be able to* hold cash.  Google's rewriting would also erroneously convert these device claims into method claims or system claims, which they plainly are not.  *See, e.g.*, *Chicago Bd. Options Exch., Inc. v. Int'l Sec. Exch., LLC*, 677 F.3d 1361, 1373 (Fed. Cir. 2012) (district court erred in construing device claim as method claim).  As Sonos has explained, proving direct infringement of "an apparatus claim directed to a computer that is claimed in functional terms" requires showing "the product is designed in such a way as to enable a user of that [product] to utilize the function ... without having to modify [the product]."  *Silicon Graphics, Inc. v. ATI Techs., Inc.*, 607 F.3d 784, 794 (Fed. Cir. 2010).  Under the proper construction, Sonos met that burden here.

Google's principal defense of the Court's claim construction is just to say that this is something the "Court has already considered" and decided.  Opp. 7-8.  And Google's only

1    affirmative legal argument to defend the Court's construction is to point to cases providing that

2    claim language must be tethered to the specification.  *Id.*  But none of those cases support

3    rewriting claims.  For example, Google cites *Retractable Techs., Inc. v. Becton, Dickinson & Co.*

4    for the proposition that "in claim construction courts 'strive to capture the scope of the actual

5    invention, rather than . . . allow the claim language to become divorced from what the

6    specification conveys is the invention.'"  *Id.* (quoting 653 F.3d 1296, 1305 (Fed. Cir. 2011)).

7    Sonos's construction of the asserted claims of the '966 patent *does* capture the invention

8    described in the specification, because it requires a controller with program instructions that

9    closely track the static speaker group functionality described in the specification.  *See, e.g.*,

10   TX00001 Fig. 6.  Thus, the claims do not cover "any mobile device," Opp. 8, but only a mobile

11   device with specific functionality.

12         Google does not seriously dispute the applicability of any of Sonos's cited cases on

13   capability, configuration, or functional claim language—including cases in which Google made

14   and lost these same arguments.  Mot 10-13.  Google's argument instead is that those cases did not

15   "analyze[] the same claim language at issue here."  Opp. 8.  Of course the cases did not evaluate

16   the exact claim language at issue here.  Sonos's legal authority does not lose all persuasive and

17   binding force merely because it involves a different patent; Google's failure to substantively rebut

18   these cases is an admission that it *cannot* rebut them.  Similarly, Google argues against its own

19   strawman in contending that "not every 'computing device' is covered by the claims, only those

20   that serve as a controller …"  Opp. 8.  But Sonos does not contend that "every" computing device

21   or smartphone meets the claim's limitations; Sonos only accuses computing devices that have

22   specific *program instructions* stored on the device that give the device the capability to carry out

23   certain functions, as the Google Home app does.

24         Google also faults Sonos for purportedly failing to address the Court's holding that

25   (1) "[t]he claim language does not recite any functions to be performed …unrelated to those

26   computing devices 'serving as a controller'" and that (2) "a computing device is not capable of

27   serving as a controller unless it is networked with at least three zone players that may be added to

28

7

1   overlapping zone scenes."  Opp. 8.  Sonos does not dispute that the *functions* to be performed all

2   involve serving as a controller, but as the claim language makes clear, the recited *device* need

3   only be ***programmed*** to serve as a controller.

4        Google points to the "causing storage of the [] zone scene[s]" function as an example of

5   something the controller cannot do "without additional hardware and software (that of the

6   speakers)."  Opp. 8-9.  But Google ignores the trial evidence that Sonos relies on.  Dr. Almeroth

7   showed that the Google Home App can cause storage of the zone scene without *any* modification

8   to the software.  Mot. 15 (citing TX441; Tr. at 770:3-791:20).  That is the relevant test, as

9   Google's own caselaw, discussed below, confirms.  At no point in Dr. Almeroth's testing did he

10  "modify" the software; all he did was invoke existing functionality as it was designed for

11  customers to invoke (and as Google, in fact, advertised to customers how to invoke).  For

12  example, Dr. Almeroth did not change any programming within the Google Home App or add

13  any additional software to cause the Home App to send the "join_group" message.  Mot. 15-16

14  (citing Tr. at 784:9-16; TX78 at SC-GOOG-SONOSNDCA-000146).  As Sonos further

15  explained, that functionality was already programmed into the Google Home App and was

16  present on a computing device the instant the Google Home App was downloaded and installed

17  onto that computing device.  *Id.*  Dr. Almeroth even pointed out to the jury the exact lines of

18  source code containing that function, and Google never disputed that these were genuine software

19  instructions that Google engineers added to the Google Home App.

20       Google's cases, including *Nazomi Communications, Inc. v. Nokia Corp.*, confirm that is

21  sufficient to find infringement, because "an apparatus claim directed to a computer that is claimed

22  in functional terms is nonetheless infringed so long as the product is designed in such a way as to

23  enable the user of that [product] to utilize the function *without having to modify the product*."

24  739 F.3d 1339, 1345 (Fed. Cir. 2014) (citation omitted).  And in *Typhoon Touch Techs., Inc. v.*

25  *Dell, Inc.*, the Federal Circuit similarly held that "the apparatus as provided must be 'capable' of

26  performing the recited function, not that it might later be modified to perform that function."  659

27  F.3d 1376, 1380 (Fed. Cir. 2011).

28

8

SONOS, INC.'S REPLY ISO
RULE 50 AND 59 MOTION
3:20-CV-06754-WHA

In sum, Google's non-infringement argument was based on the purported need to network the computing device with at least three zone players, which hinged entirely on the Court's incorrect jury instructions. Mot. 16 (citing Tr. at 1872:20-1873:17). Absent that erroneous instruction, a reasonable jury would have no basis for finding that the installation of the Google Home App on a computing device does not infringe the '966 patent. Google's only other non-infringement arguments were either already rejected by the jury ("no standalone mode") or could not be credited by a reasonable jury (causing storage). Because a properly instructed jury would be compelled to find that the '966 patent was infringed, the Court should grant Sonos judgment as a matter of law that Google directly infringed the '966 patent. At minimum, Sonos is entitled to a new trial with correct jury instructions.

## III.   A REASONABLE JURY WAS REQUIRED TO FIND THE '966 PATENT INDIRECTLY AND WILLFULLY INFRINGED

### A.   A reasonable jury was required to find the '966 patent indirectly infringed.

Sonos established that Google both induced infringement of the '966 patent and contributorily infringed by offering the Google Home App for installation on internet-connected computing devices.

**Direct infringement by third parties:** The jury heard unrebutted evidence of nearly 100 million downloads of the Google Home App, *e.g.*, Tr. at 1203:17-20, combined with unrebutted evidence that a large plurality of households with smart speakers have three or more speakers. Mot. 17 (collecting cites). And under the Court's construction, once a computing device installed with the Home App is networked with three or more speakers, that system "necessarily infringes the patent in suit" because the Home App has all required functionality. *ACCO Brands, Inc. v. ABA Locks Mfrs. Co.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007). That is overwhelming circumstantial evidence of direct infringement. Google appears to argue that Sonos had to provide *direct* evidence of infringement. But circumstantial evidence is sufficient to prove infringement. Mot. 17-18.

Google quibbles that Mr. Malackowski's testimony did not establish that all of these

1    households have "three speakers compatible with the Google Home app," Opp. 10, but the only

2    possible inference is that at least some of them do.  For example, the jury heard unrebutted

3    testimony from Ms. Kwasizur that Sonos determined that "if one customer buys one Sonos

4    [speaker], we know from our data that on average they buy 2.9 or 3 more products" *from Sonos*,

5    Tr. 1019:23-24, *see also id.* at 1019:25-1020:1, 1021:12-20, and nothing in the trial record

6    suggests that that repeat purchaser dynamic is *not* analogous for purchasers of Google products.

7    In light of this unrebutted evidence, and because a computing device installed with the Home App

8    and networked to three or more speakers "*necessarily* infringes the patent in suit," *ACCO*, 501

9    F.3d at 1313, a reasonable jury could only find that there were acts of direct infringement—even

10   under the Court's incorrect claim construction ruling.[5]  And under the *correct* claim construction

11   ruling, there is no question of direct infringement, as shown by evidence of the number of

12   downloads of the Google Home App.

13          Google further argues that Sonos had to prove a specific instance of a user or Google

14   "creat[ing] multiple overlapping speaker groups."  Opp. 9.  Google suggests that this was required

15   "under the Court's construction," but the Court's construction requires that a computing device *be*

16   *networked with zone players*, not that a *user create* overlapping groups.  Indeed, a large part of

17   Google's invalidity defense at trial and in its Rule 50(a) motion consisted of its argument that

18   "the claims in this case -- ***all the claims*** -- ***do not require any type of user action in terms of***

19   ***creation***, ***configuration***, ***saving*** and recollection of any of the ***zone scenes***."  Tr. 1944:20-23 (oral

20   argument on Rule 50(a) motions).

21          Both of Google's arguments are also wrong insofar as they suggest that a capability claim

22   requires *direct* proof that the recited capability was *performed*.  Google emphasizes that "even in

23   the context of claims 'directed to capability,' the Federal Circuit has made clear the patentee is

---

[5] Google suggests that the accused computing devices "have many non-infringing uses," Opp. 14-15, but that does not help Google.  The question is whether "the accused device can be used … in a noninfringing manner."  *Id.* (quoting *ACCO*, 501 F.3d at 1313).  As Sonos has explained, *even under* the Court's claim construction, in the context of a capability claim, there is infringement any time a computing device with the Google Home app is part of a network that includes three or more zone players.

SONOS, INC.'S REPLY ISO
RULE 50 AND 59 MOTION
3:20-CV-06754-WHA

1    still required to prove infringement in the ordinary manner, which involves 'compar[ing] the

2    claims to the accused products.'"  Opp. 9.  But Google cannot identify any claim limitation that

3    requires that a user networked a controller to three or more zone players (much less a limitation

4    requiring that a user actually *created* overlapping groups), because there is none.

5          **Active steps and specific intent to induce infringement**:  Sonos explained that the trial

6    evidence showed that Google took active steps to induce infringement.  Mot. 18-19 (collecting

7    cites).  Specifically, Google encourages users to download the Google Home App, thereby

8    encouraging users to "make" an infringing device.  Google also encourages people to use the

9    accused functionality to create static speaker groups.  Mot. 19.

10         Sonos also established Google's specific intent to infringe, through evidence that Google

11   instructs users on how to use the Google Home App to set up speaker groups, and evidence

12   regarding the number of speaker owners who own multiple speakers.  Mot. 21.  Accordingly,

13   because "direct evidence is not required" and "circumstantial evidence may suffice," a reasonable

14   jury would be required to conclude that by instructing users on how to set up speaker groups

15   generally, Google *intended* for users to set up more than one speaker group.  *Id.* (quoting

16   *GlaxoSmithKline LLC v. Teva Pharms. USA, Inc.*, 7 F.4th 1320, 1327 (Fed. Cir. 2021), *cert.*

17   *denied sub nom. Teva Pharms. USA, Inc. v. GlaxoSmithKline LLC, et al.*, No. 22-37, 2023 WL

18   3440748 (U.S. May 15, 2023)).

19         Google argues in response that this evidence fails because "nothing in the record suggests

20   that Google encouraged users to download the Google Home app in order to network three or

21   more speakers (or create two overlapping static speaker groups)."  Opp. 17.  But Google is wrong

22   that the claim here requires *actual* creation of groups (even under the Court's construction).  And

23   Google requires the Home App to use any Google media players, whether one player or three.

24         Google also contends that "Sonos … failed to present evidence that any purported attempt

25   to induce users to infringe ever reached alleged infringers," arguing that "[h]ere, the record was

26   devoid of any evidence that Google **succeeded** in encouraging any user to infringe the '966

27   patent."  Opp. 17-18 (emphasis added).  This argument makes little sense considering Google

28

SONOS, INC.'S REPLY ISO
RULE 50 AND 59 MOTION
3:20-CV-06754-WHA

1   does not dispute that Google requires customers to download the Google Home App to set up and

2   use a Google media player.

3   Google suggests that its "redesign demonstrates that Google did not intend to encourage

4   infringement," Opp. 18, but the jury found that Google's redesign continues to infringe the '885

5   patent.  Google quotes *Ricoh Co. v. Quanta Computer Inc.* for the proposition that "failure to

6   remove or diminish infringing features of a distributed product is relevant to a party's intent that

7   those features be used for direct infringement."  Opp. 18 (quoting 550 F.3d 1325, 1343 (Fed. Cir.

8   2008)).  That legal rule supports *Sonos*, not Google.  Instead of disabling the accused

9   functionality—a redesign contemplated by Google's technical and damages experts—or adopting

10  other redesign options, Google chose to insert a single line of code that terminates current

11  playback when a speaker is added to a group.  Google's failure to remove the infringing feature

12  further shows why a reasonable jury would be compelled to find that Google specifically intended

13  those features be used for direct infringement.

14  **Knowledge of infringement:**  As Sonos explained, Google also had knowledge that its

15  acts were causing infringement of the '966 patent.  Mot. 20-21 (collecting cites).

16  In response, Google contends that its declaratory judgment complaint proves that it "a

17  good faith belief in ***non-infringement.***"  Opp. 15.  But as the Court has previously found, Google

18  filed that bare-bones complaint just in order to anchor venue in San Francisco.  Dkt. 36 at 3.  And

19  the jury heard unrebutted testimony from Ms. Kwasizur explaining that Sonos's draft

20  complaint—served prior to the initiation of this suit—contained detailed claim charts regarding

21  Google's infringement of the '966 patent, Tr. 1044:5-1045:7, and that Sonos's *87* page draft

22  complaint was met by Google's *13* page complaint later the same day, Tr. 1049:13-1050:8.

23  Meanwhile, Google's in-house counsel, Mr. Kowalski, refused to answer any questions related to

24  Google's belief of non-infringement, so Google cannot now weaponize its own invocation of

25  privilege.  *See, e.g.*, Mot. 23 (citing Dkt. 754-9 (Kowalski 5/8/23) at 4-5, 6-8; Dkt. 766-5 at 65:9,

26  65:16-17, 66:5-6, 66:9-11, 66:13-14, 66:17-22, 66:25-67:1, 92:2-9, 92:11-95:21).  Either way, the

27  Court should not permit Google to make this argument where the Court itself has recognized that

28

SONOS, INC.'S REPLY ISO
RULE 50 AND 59 MOTION
3:20-CV-06754-WHA

1   Google's complaint failed to satisfy the "minimal burden" for pleading a declaratory relief claim,

2   "offer[ing] *no allegation of fact* in support of the claims of noninfringement," in contrast to

3   Sonos's "detail[ed]" "eighty-seven page" complaint.  Dkt. 36 at 3-4.

4       **No non-infringing uses:** Sonos established that the Google Home App—and the specific

5   accused programming within it—is a material component of infringing devices and is not a staple

6   article or commodity of commerce suitable for substantial non-infringing use.  The only possible

7   use for this software component is to be installed and run on infringing computing devices.  Mot.

8   19-20 (citing *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1320-21 (Fed. Cir. 2009)).

9   Google attempts to distinguish *Lucent* by arguing that there are non-infringing uses here, because

10  the Google Home app can be used for "non-infringing speaker group creation" as well as

11  infringing speaker group creation.  Opp. 18.  But even under the Court's construction, once a

12  computing device installed with the Home App is networked to three or more speakers, that

13  system "necessarily infringes the patent in suit" because the Home App has all the required

14  functionality.  *ACCO*, 501 F.3d at 1313.  The contributory infringement analysis in *Toshiba Corp.*

15  *v. Imation Corp.*, on which Google relies, is inapposite; in that case, "Toshiba admit[ted] that

16  users may record data on the accused DVDs without ever finalizing the DVDs, and that such

17  DVDs may be read in the recorder in which the data was written."  681 F.3d 1358, 1363 (Fed.

18  Cir. 2012).[6]  Here, by contrast, there is no way to use a computing device installed with the

19  Google Home app and networked with three zone players that does *not* infringe, because once the

20  accused device is *capable* of infringement, it "necessarily infringes."

21                          *       *       *

22      For the reasons discussed above, the Court should grant judgment as a matter of law that

23  Google indirectly infringed the '966 patent.  In the alternative, and at a minimum, the Court

24  should grant Sonos's motion for a new trial and allow a jury to determine indirect infringement

25  _____

26  [6] And notably, *Toshiba* supports Sonos's claim for induced infringement and the inference of
    direct infringement, holding that "where an alleged infringer designs a product for use in an
27  infringing way and instructs users to use the product in an infringing way, there is sufficient
    evidence for a jury to find direct infringement."  681 F.3d at 1365.

28

SONOS, INC.'S REPLY ISO
RULE 50 AND 59 MOTION
3:20-CV-06754-WHA

1    under a correct claim construction.

2    **B.** **A reasonable jury was required to find that Google's infringement of the '966 patent was willful.**

3

4    Sonos also presented conclusive proof of willfulness.  Mot. 22-24.  Google argues that

5    "Sonos has failed to provide any authority requiring the Court to disturb the jury's verdict of no

6    willfulness."  Opp. 20.  But the jury did not reach *any* finding on willfulness, Dkt. 774 at 3, and

7    Google fails to address that significant fact.  For the reasons explained in Sonos's motion with

8    respect to willfulness and indirect infringement, Mot. 17-24, and for the reasons discussed above

9    with respect to indirect infringement, Sonos established Google's willfulness.

10   To avoid any confusion created by Google's erroneous characterization, we want to be

11   clear: the jury here did not reach any finding on willfulness.  Dkt. 774 at 3.  That *non*-finding was

12   premised solely on the jury's finding of non-infringement of the '966 patent.  *Id.*  So, at a

13   minimum, if the Court grants Sonos's Rule 50 or 59 motion with respect to infringement of the

14   '966 patent, Sonos would be entitled under Rule 59 to a new trial on willfulness without any

15   further showing, because the lack of a willfulness verdict was simply a consequence of the jury's

16   finding of non-infringement of the '966 patent.  Dkt. 774 at 3; *see also* Mot. 24.  Google does not

17   substantively dispute Sonos's alternative request for a new trial on willfulness.

18   But even with respect to Sonos's request under Rule 50—that the Court grant Sonos

19   judgment as a matter of law that Google's infringement of the '966 patent was willful—Google's

20   mischaracterization of the verdict infects each of its arguments in opposition, starting from the

21   flawed premise that the jury's purported finding of no willfulness is entitled to some measure of

22   deference or presumption of correctness.  For example, in discussing the evidentiary value of its

23   privilege assertions[7] and its purported rebuttal evidence, Google hangs its hat on this incorrect

24   _____

25   [7] Google relies on Sonos's closing argument to argue about what "improper inference Sonos attempted to elicit" at trial.  Opp. 20.  That is incorrect.  *See* Mot. 23.  But either way, Sonos's

26   *motion* does not ask for any adverse inference, and instead relies on the Court's jury instruction, establishing that Google had knowledge of Sonos's allegations of infringement, Mot. 23-24, and

27   the Court's ruling that Google's receipt of a draft complaint and filing of a declaratory judgment

28

14

premise: "In any event, ***the jury was unconvinced*** by this strained factual argument after hearing evidence that Google implemented the technology years before Sonos did, Google's engineers independently developed the accused functionality, and Google immediately sought the Court's assistance because it believed its products were non-infringing."  Opp. 20.  Similarly, Google argues that "[n]one of the other examples of so-called 'ample evidence' warrants ***overturning the jury's verdict.***"  Opp. 21.  But the jury was not convinced of anything, and Sonos does not seek to overturn any jury verdict on willfulness, so those arguments necessarily fail.  Google also contends that its pre-2020 conduct is categorically irrelevant, Opp. 21, but that argument relies on Google's erroneous assumption that the invention consists just of overlapping groups.  *Cf.* Dkt. 711 at 1 (Sonos explaining why "overlapping groups are not the 'heart' of the invention").

The Court should accordingly grant Sonos judgment as a matter of law that Google's infringement of the '966 patent was willful.  At a minimum, should the Court grant Sonos's alternative request for a new trial on infringement of the '966 patent, the jury in that new trial should be permitted to decide under all the facts whether Google's infringement was willful.

### IV.   IF THE COURT GRANTS SONOS A NEW TRIAL ON INFRINGEMENT OF THE '966 PATENT, THE COURT SHOULD CORRECT CERTAIN RULINGS.

As Sonos explained, at any new trial on infringement of the '966 patent, the Court should correct its rulings (1) excluding the IFTTT damages theory, (2) excluding evidence of Google's pre-suit knowledge of the patents and its infringement based on Sonos's disclosure of the "zone scenes" patent family, and (3) precluding Sonos from pursuing pre-suit damages for Google's indirect and willful infringement of the '966 patent.  Google offers no substantive response.

### V.   CONCLUSION

The Court should grant Sonos's motion for judgment as a matter of law, or in the alternative, Sonos's motion for a new trial on infringement and damages for the '966 patent.

---

action on the same day "goes to the issue of notice of the patents and whether or not the Plaintiff has proven there was willful infringement."  Tr. at 1051:23-1052:5.

SONOS, INC.'S REPLY ISO
RULE 50 AND 59 MOTION
3:20-CV-06754-WHA

1   Dated:  July 14, 2023

ORRICK HERRINGTON & SUTCLIFFE LLP
*and*
LEE SULLIVAN SHEA & SMITH LLP

By: */s/ Clement Seth Roberts*
        Clement Seth Roberts

*Attorneys for Sonos, Inc.*

SONOS, INC.'S REPLY ISO
RULE 50 AND 59 MOTION
3:20-CV-06754-WHA