QUINN EMANUEL URQUHART & SULLIVAN, LLP
Sean Pak (Bar No. 219032)
seanpak@quinnemanuel.com
Melissa Baily (Bar No. 237649)
melissabaily@quinnemanuel.com
James Judah (Bar No. 257112)
jamesjudah@quinnemanuel.com
Lindsay Cooper (Bar No. 287125)
lindsaycooper@quinnemanuel.com
Iman Lordgooei (Bar No. 251320)
imanlordgooei@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Marc Kaplan *(pro hac vice)*
marckaplan@quinnemanuel.com
191 N. Wacker Drive, Ste 2700
Chicago, Illinois 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

*Attorneys for GOOGLE LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

SONOS, INC.,

Plaintiff and Counter-Defendant,

vs.

GOOGLE LLC,

Defendant and Counter-Claimant.

Case No. 3:20-cv-06754-WHA
Consolidated with Case No. 3:21-cv-07559-WHA

**GOOGLE LLC'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE PORTIONS OF THE DECLARATION OF ALAINA KWASIZUR IN SUPPORT OF SONOS, INC.'S MOTION FOR PERMANENT INJUNCTION**

Hearing Date: August 10, 2023, 8:00 a.m.
Location: Courtroom 12, 19th Floor
Judge: Hon. William Alsup

# TABLE OF CONTENTS

**Page**

I. ARGUMENT ..... 1

A. Sonos Fails To Establish That Certain Statements Are Not Hearsay ..... 1

1. Google Identified The Improper Hearsay In The Kwasizur Declaration ..... 1

2. Sonos Offers The Statements For The Truth Of The Matter Asserted ..... 3

3. Sonos Concedes Mr. Lazarus's Inaccurate Testimony Is Hearsay And Lacks Foundation ..... 3

4. Sonos's Other Arguments Are Inapposite ..... 5

B. Sonos Concedes Ms. Kwasizur Has No Personal Knowledge For Certain Statements Regarding Google ..... 6

C. Sonos Fails To Demonstrate Ms. Kwasizur's Statements Are Proper Lay Opinion ..... 7

1. Sonos Bears the Burden Of Establishing That Ms. Kwasizur's Statements Are Proper Lay Opinion ..... 8

2. That The Substance Of The Statements Is Allegedly Not Disputed Is Irrelevant ..... 8

3. Sonos Fails To Lay Any Foundation For Ms. Kwasizur's Opinions ..... 9

II. CONCLUSION ..... 12

# TABLE OF AUTHORITIES

**Page**

## Cases

*Allen v. Honeywell Ret. Earnings Plan*,
No. CV-04-424-PHX-ROS, 2005 WL 8160551 (D. Ariz. July 27, 2005) ................................2

*AMCO Ins. Co. v. Madera Quality Nut LLC*,
No. 1:04-CV-06456-SMS, 2006 WL 2091944 (E.D. Cal. July 26, 2006)................................6

*Amirian v. Umpqua Bank*,
No. CV177574FMOFFMX, 2018 WL 3655666 (C.D. Cal. July 31, 2018)..............................6

*Art of Living Found. v. Does 1-10*,
No. 5:10-CV-05022-LHK, 2012 WL 1565281 (N.D. Cal. May 1, 2012) ................................7

*Asics Am. Corp. v. Lutte Licensing Grp. LLC*,
No. SACV131993JGBJPRX, 2014 WL 12577412 (C.D. Cal. Aug. 19, 2014) ........................6

*Barthelemy v. Air Lines Pilots Ass'n*,
897 F.2d 999 (9th Cir. 1990) ...........................................................................................11

*BRC Rubber & Plastics, Inc. v. Cont'l Carbon Co.*,
No. 1:11-CV-190, 2014 WL 554565 (N.D. Ind. Feb. 11, 2014) ............................................12

*Brigadier Roofing, Inc. v. Roofers' Unions Welfare Tr. Fund*,
No. 14 CV 10496, 2017 WL 2834533 (N.D. Ill. June 30, 2017) ...............................................2

*City of Long Beach v. Standard Oil Co.*,
46 F.3d 929 (9th Cir. 1995) ..............................................................................................8

*Cleveland v. Groceryworks.com, LLC*,
200 F. Supp. 3d 924 (N.D. Cal. 2016) .........................................................................9, 11

*Doe v. Texaco, Inc.*,
No. C06-02820 WHA, 2006 WL 2850035 (N.D. Cal. Oct. 5, 2006) ...................................4, 5

*Everest Stables, Inc. v. Canani*,
No. CV099446DSFVBKX, 2011 WL 13213657 (C.D. Cal. Oct. 6, 2011)..........................8, 12

*Finjan, Inc. v. Check Point Software Techs., Inc.*,
No. 18-CV-02621-WHO, 2019 WL 7801443 (N.D. Cal. Aug. 12, 2019) ................................7

*Garcia v. Wal-Mart Stores Inc.*,
207 F. Supp. 3d 1114 (C.D. Cal. 2016)...............................................................................6

*Grouse River Outfitters Ltd. v. Oracle Corp.*,
No. 16-CV-02954-LB, 2019 WL 8918902 (N.D. Cal. June 21, 2019)....................................10

*Hanline v. Cnty. of Ventura*, No. CV158808VAPAJWX, 2017 WL 11682912 (C.D. Cal. Aug. 7, 2017) .......... 5

*Johnson v. Cate*, No. 1:10-CV-00803-AWI, 2015 WL 5321784 (E.D. Cal. Sept. 10, 2015) .......... 3

*Lankford v. Taylor*, No. CV-17-02797-PHX-DWL, 2020 WL 6395294 (D. Ariz. Nov. 2, 2020) .......... 2

*Lotenero v. Cripps*, No. 1:11-CV-00200-AWI, 2013 WL 708163 (E.D. Cal. Feb. 26, 2013) .......... 11

*Richardson v. CBS Studios Inc.*, No. CV 12-7925 ABC (SHX), 2013 WL 12120265 (C.D. Cal. Sept. 25, 2013 .......... 7

*Sun v. Governmental Authorities on Taiwan*, No. C 94-2769 SI, 2001 WL 114443 (N.D. Cal. Jan. 24, 2001), *aff'd sub nom. Sun v. Taipei Econ*., 34 F. App'x 529 (9th Cir. 2002) .......... 2

*Tyco Thermal Controls LLC v. Redwood Industrials*, No. C 06-07164 JF (PVT), 2010 WL 1526471 (N.D. Cal. Apr. 15, 2010) .......... 10

*United States v. Rubin/Chambers*, 828 F. Supp. 2d 698 (S.D.N.Y. 2011) .......... 8

*Washington v. Kellwood Co*., No. 05-CV-10034 (SN), 2016 WL 5680374 (S.D.N.Y. Sept. 30, 2016), *aff'd*, 714 F. App'x 35 (2d Cir. 2017) .......... 10

*X17, Inc. v. Lavandeira*, No. CV06-7608-VBF(JCX), 2007 WL 790061 (C.D. Cal. Mar. 8, 2007) .......... 7

**Other Authorities**

Fed. R. of Evid. 602 .......... 11

Fed. R. Evid. 701 .......... 8, 10, 12

Fed. R. Evid. 701(a) .......... 8

Fed. R. Evid. 702 .......... 12

Local Rule 7-5(b) .......... 1, 5

Sonos fails to justify the improper statements in Ms. Kwasizur's declaration, largely conceding that they violate the Federal Rules of Evidence and Local Rule 7-5(b). Instead, Sonos argues that the statements should stand because (1) Google has allegedly admitted that they are accurate, (2) Google has not rebutted the substance of the statements, and (3) the statements are supported by other evidence in the record. Even if Sonos were correct, none of these excuses cure the evidentiary violations that pervade Ms. Kwasizur's declaration. Sonos is seeking an excessive and overbroad injunction—it should not be permitted to do so based on its own lawyer's unsupported testimony comprised of hearsay, unfounded statements, and impermissible lay opinion.

# I. ARGUMENT

## A. Sonos Fails To Establish That Certain Statements Are Not Hearsay

Sonos offers a mishmash of arguments to distract from the undisputed fact that paragraphs 7, 9, 10, and 17 are inadmissible hearsay that should be stricken. None has merit.

### 1. Google Identified The Improper Hearsay In The Kwasizur Declaration

Sonos contends that Google does not "identify[] the alleged hearsay within those passages." Dkt. 841 ("Opp.") at 2. But as Google's motion stated plainly, the entirety of these paragraphs and the articles they reference constitute hearsay because they are based on paraphrase or directly quote statements made by out-of-court declarants—*i.e.*, the authors of those articles. Dkt. 830 ("Mot.") at 2. For example, Ms. Kwasizur references several articles to assert that Google's and Sonos's speakers "are widely recognized as competing products . . . both product-by-product and generally" and then purports to summarize the hearsay statements therein. Dkt. 821 ("Kwasizur Decl.") ¶¶ 7, 9 (describing content of articles as "directly compar[ing] Sonos and Google products," "directly compar[ing] the Google Home Nest and the Sonos One," "identify[ing] Sonos and Google as competitors," "discuss[ing] Sonos's products and list[ing] 'Google Chromecast built-in' as a competitor," and "directly compar[ing] the Sonos One and Google Nest Audio"), ¶ 10 (describing contents of "the news and product articles" attached as "customers directly compar[ing] Sonos and Google products"). And as Sonos itself recognizes, Google identified the remainder of paragraphs 7, 9, and 10 and the entirety of paragraph 17 as direct quotations to out-of-court statements that are hearsay. *Id.* ¶ 7 (quoting The Next Web article), ¶ 9 (quoting Inc. Magazine article), ¶ 17 (quoting

statements made by Sonos's Chief Legal Officer).

Importantly, Sonos does not dispute that testimony "necessarily derive[d] from the contents of documents or the statements of out-of-court declarants . . . is hearsay." *Allen v. Honeywell Ret. Earnings Plan*, No. CV-04-424-PHX-ROS, 2005 WL 8160551, at *3 (D. Ariz. July 27, 2005); *see also Sun v. Governmental Authorities on Taiwan*, No. C 94-2769 SI, 2001 WL 114443, at *6 (N.D. Cal. Jan. 24, 2001), *aff'd sub nom. Sun v. Taipei Econ*., 34 F. App'x 529 (9th Cir. 2002) (striking paragraph of declaration that summarized the findings from out-of-court investigation records because it was being offered to prove their contents). The Court made clear that even Sonos's expert, who *is* allowed to rely on hearsay, could not use newspaper articles as a basis for his opinions:

> THE COURT: We're not going to do that. We're not going to do that. That kind of inflammatory stuff is Mickey Mouse. No. No newspaper stories, headlines like that. That's it. Sorry. We got -- time is too short. Life is too short. You can do a better job than that. We're not going to make that kind of -- newspaper articles. Now, I'm not saying that anticompetitive conduct is not -- if there's some legitimate basis for that; but relying on newspapers, for goodness sakes, to prove somebody's done something wrong, that – there's a thing called a hearsay rule, and I'm not going to let an expert get around the hearsay rule by regurgitating crap like that to the jury. I'm ashamed to know that you would even try such a thing. Please don't – don't do that.

Pretrial Conf. Hr'g Tr. at 66:1-14. Ms. Kwasizur—a *fact* witness—should not be permitted to opine on the substance of news articles in her declaration as an end run around the Court's directive.

Given the entirety of paragraphs 7, 9, 10, and 17 is based on hearsay, it follows that Google's motion to strike is not "overbroad" as Sonos contends. Opp. at 2-3. Sonos cites authority for the generic assertion that motions to strike can be denied for being overbroad, but those cases involve entirely different facts and are distinguishable. *See Brigadier Roofing, Inc. v. Roofers' Unions Welfare Tr. Fund*, No. 14 CV 10496, 2017 WL 2834533, at *2 (N.D. Ill. June 30, 2017) (denying motion to strike parts of a statement of facts in support of a summary judgment motion because "the purpose of [the statement of facts] is to permit the district court to identify . . . which material facts are in dispute"); *Lankford v. Taylor*, No. CV-17-02797-PHX-DWL, 2020 WL 6395294, at *2 (D. Ariz. Nov. 2, 2020) (denying motion *in limine* seeking to "'exclude at trial any evidence or argument regarding, or reference to, claims and defendants that were previously dismissed in this matter'"

because the court could not conclude "as a categorical matter[] that *all* evidence pertaining to the now-dismissed counts and defendants will be irrelevant at trial").

2. Sonos Offers The Statements For The Truth Of The Matter Asserted

Sonos unconvincingly argues that Ms. Kwasizur does not offer the statements or news articles for the truth of the matter asserted, but rather to provide an example of "third part[ies] making a comparison between Google and Sonos products." Opp. at 2, 3. But this is merely pretext in an attempt to sneak improper testimony into the record. The *only* purpose for which Ms. Kwasizur cites these articles is to try to prove that Google and Sonos are indeed competitors, a point prominently featured in Sonos's motion for injunctive relief and additional damages. *See* Dkt. 820 at 1-4, 6, 11. In fact, Sonos cites paragraphs 7 and 9 of Ms. Kwasizur's declaration summarizing and quoting the contents of these articles precisely to try to support its assertion that "[the parties'] competition started in 2015 and continues today, at least as to media players like Nest Audio." Opp. at 3 (citing Kwasizur Decl. ¶¶ 3-9). Tellingly, Sonos does not identify how else third-party comparisons of Google's and Sonos's products would be relevant, if not to prove the "truth" of Sonos's assertion that those products compete.

Sonos also fails to explain how describing Ms. Kwasizur's testimony as "a statement by the declarant about what other parties *do*" meaningfully changes the analysis when what the other parties are "doing" is making out-of-court statements via online articles. *Id.* at 2 (emphasis in original). The same argument could apply to any hearsay statement. Because Google is unable to question or challenge the declarant who stated that Google's Nest Audio is "Google's clearest attempt at a Sonos competitor yet," for example, these paragraphs and corresponding exhibits must be stricken. *See Johnson v. Cate*, No. 1:10-CV-00803-AWI, 2015 WL 5321784, at *9 (E.D. Cal. Sept. 10, 2015) ("It is axiomatic to state that newspaper articles are by their very nature hearsay evidence and are thus inadmissible if offered to prove the truth of the matter asserted[.]").

3. Sonos Concedes Mr. Lazarus's Inaccurate Testimony Is Hearsay And Lacks Foundation

As for paragraph 17, Sonos does not dispute that Ms. Kwasizur's recitation of Mr. Lazarus's Congressional testimony is hearsay, which is inadmissible. *See* Opp. at 3-4. Simply put, there is

no declaration from Mr. Lazarus, even though there could have been, and that renders paragraph 17 of Ms. Kwasizur's declaration inadmissible hearsay. Instead, Sonos contends that the Court should ignore this cornerstone evidentiary rule because—according to Sonos—its own Chief Legal Officer's testimony is "accurate." *Id.* at 4. In other words, Sonos appears to take the untenable position that it is acceptable to offer hearsay for the truth of the matter asserted, so long as the matter asserted in Mr. Lazarus's statements is true. That is not the law.

Sonos's own views regarding the "accuracy" of Mr. Lazarus's statements are irrelevant to whether they are inadmissible hearsay and/or lack the requisite foundation. Nevertheless, Google briefly responds to correct Sonos's misrepresentation that "Google has already effectively admitted the accuracy of the relevant statements." Opp. at 2, 4. With respect to Sonos's "loss leader" concept, Google spelled out expressly in its opposition to Sonos's motion for a permanent injunction that Google does not intentionally price its products in a way to lose money no matter the sales volume. Dkt. 829 at 4. Far from "unrebutted," Sonos's "loss leader" theory has been invalidated numerous times by Google and its witnesses. *See, e.g.*, *id.* at 4; Dkt. 619 at 3. Sonos's only alleged "evidence" of its speculative theory is the *ipse dixit* of its own damages expert.

Finally, Sonos makes two ancillary arguments, both of which are immaterial. First, contrary to Sonos's assertion, Google did not move to strike Ms. Kwasizur's recitation of Mr. Lazarus's statements simply because Google "disagrees with them." Opp. at 4. As explained in Google's motion, the Court should strike this paragraph not only because it quotes undisputedly out-of-court statements—but also because Mr. Lazarus does not have the personal knowledge to opine on "Google's strategy," how Google makes money, or the various allegations he makes regarding Google's speakers as ***Sonos's*** Chief Legal Officer. Mot. at 2-3; *Doe v. Texaco, Inc.*, No. C06-02820 WHA, 2006 WL 2850035, at *2 (N.D. Cal. Oct. 5, 2006) ("Any statement made must specify the information or belief the declarant bases his or her statement upon."). During trial, the Court recognized that testimony regarding Google's business practices by Sonos witnesses "[c]alls for speculation." Trial Tr. at 298:1. For example, the Court sustained Google's objection to testimony by Sonos's Chief Innovation Officer, Nick Millington, concerning "the Amazons['], the Googles['], [and] the Apples[']" motivations for "compet[ing] in a multiroom audio space[.]" *Id.* at 297:7-

298:1. The Court should therefore exclude similar testimony in support of Sonos's request for a permanent injunction. Second, Sonos suggests that Local Rule 7-5(b) does not apply when a declaration contains quotations as opposed to a declarant's own statements. Opp. at 4. There is no basis for this assertion; the rule does not draw such a distinction and instead expressly states that "[a]n affidavit or declaration ***may contain only facts***" without any exceptions for quotations. Because Mr. Lazarus's statements do not identify facts, Ms. Kwasizur's verbatim repetition of his statements certainly cannot contain facts and must be stricken. *See Doe*, 2006 WL 2850035, at *2 ("Civil Local Rule 7-5(b) mandates that declarations only contain facts," "be based on personal knowledge," and "avoid conclusions and argument.").

4. Sonos's Other Arguments Are Inapposite

Sonos's other arguments all fail. First, Sonos's allegation that Google is "advancing objections just for the sake of objecting" is belied by the case law and Sonos's failure to meaningfully respond to any category of improper statements. Opp. at 5. Second, Sonos baselessly accuses Google of introducing "ancillary motion practice *about* motion practice [] in order to try to gain a strategic edge" while ignoring the fact that Sonos previously filed a motion to strike in a similar context. *Id.* (emphasis in original); *see also* Dkt. 219 (seeking to strike declaration in support of Google's motion for summary judgment). Moving to strike improper statements in a declaration is not an attempt to gain "a strategic edge" when the moving party has a legitimate basis, as Google does here.

Finally, Sonos cannot point to Google's declarations submitted in support of its opposition to Sonos's motion for injunctive relief to justify Ms. Kwasizur's improper statements. The news articles that Google attaches to its opposition via an attorney declaration (as both parties have been doing throughout the course of this litigation) merely identify the prices of certain accused products; critically, they do not offer a fact witness' endorsement of them. Nor does Sonos explain how Mr. Chan's statement about whether he *personally* views the parties as competitors —as a product manager in the smart speaker space during the relevant time period and Google's corporate designee—could be hearsay. *See Hanline v. Cnty. of Ventura*, No. CV158808VAPAJWX, 2017 WL 11682912, at *5 (C.D. Cal. Aug. 7, 2017) (witness' statement "simply stat[ing] what he thought

about" another person was not hearsay).

**B. Sonos Concedes Ms. Kwasizur Has No Personal Knowledge For Certain Statements Regarding Google**

Sonos attempts to salvage the statements in Ms. Kwasizur's declaration for which she has no personal knowledge on the ground that they contain "statements regarding facts that Google has already admitted." Opp. at 5. But as the party relying on Ms. Kwasizur's declaration, Sonos has the burden of demonstrating that Ms. Kwasizur's statements are supported by personal knowledge. *See AMCO Ins. Co. v. Madera Quality Nut LLC*, No. 1:04-CV-06456-SMS, 2006 WL 2091944, at *5 (E.D. Cal. July 26, 2006) ("The burden is on the proponent to establish personal knowledge to the extent that a reasonable trier of fact could believe that the witness had personal knowledge about the fact."); *see also Amirian v. Umpqua Bank*, No. CV177574FMOFFMX, 2018 WL 3655666, at *3 (C.D. Cal. July 31, 2018); *Garcia v. Wal-Mart Stores Inc.*, 207 F. Supp. 3d 1114, 1121 (C.D. Cal. 2016). Nothing in Ms. Kwasizur's declaration, or her role as a ***Sonos*** lawyer, suggests that she has personal knowledge of ***Google's*** business practices.

Ms. Kwasizur's declaration fails to identify the basis for her claims that "Google seeks to monetize their customers through the sale of additional services, rather than the speakers themselves" and "[i]n contrast to Google, Sonos places a strong emphasis on quality and privacy, focusing on using customer data to enhance their experience rather than aggressive monetization of customer data." Kwasizur Decl. ¶¶ 15, 16. Her "declaration does not identify the source of the information summarized" nor "state that [she] reviewed [] records from which the data was gathered." *Asics Am. Corp. v. Lutte Licensing Grp. LLC*, No. SACV131993JGBJPRX, 2014 WL 12577412, at *4 (C.D. Cal. Aug. 19, 2014).

Ms. Kwasizur's personal knowledge about Sonos's business practices is itself already questionable. *See id.* (finding that proponent of declaration "has not laid adequate foundation for [certain] data" referenced in the declaration because "the Court is not convinced that it can be inferred that [the declarant] would have knowledge of marketing expenses and sales numbers from his position as general counsel for Asics"). And there is nothing about Ms. Kwasizur's position as Sonos's General Counsel that implies she would have personal knowledge about Google's business

practices. *See Art of Living Found. v. Does 1-10*, No. 5:10-CV-05022-LHK, 2012 WL 1565281, at *11 (N.D. Cal. May 1, 2012) ("Although personal knowledge can sometimes be inferred from the position held by the declarant, [the declarant's] positions do not on their own support a reasonable inference that they have personal knowledge of a particular oral or written agreement that allegedly occurred eight years earlier."); *X17, Inc. v. Lavandeira*, No. CV06-7608-VBF(JCX), 2007 WL 790061, at *3 (C.D. Cal. Mar. 8, 2007) (concluding that proponent of declaration "failed to introduce evidence of [declarant's] personal knowledge" where the proponent "furnishe[d] only [the declarant's] job title and her conclusory assertions of personal knowledge of everything contained in the declarations").

That Google's Motion does not additionally dispute the substance of Ms. Kwasizur's statements does not provide Sonos with an end-run around the rules of evidence. *See Finjan, Inc. v. Check Point Software Techs., Inc.*, No. 18-CV-02621-WHO, 2019 WL 7801443, at *10 (N.D. Cal. Aug. 12, 2019) (rejecting argument that motion to strike declaration "should be denied because the declaration is factually correct" because a "declaration made without personal knowledge is entitled to no weight"). In fact, Sonos's argument that Google "already admitted" Ms. Kwasizur's claims in paragraphs 15 and 16 of her declaration—if it were correct—would compel exclusion of such statements for violation of the best evidence rule. Opp. at 5; *see Richardson v. CBS Studios Inc.*, No. CV 12-7925 ABC (SHX), 2013 WL 12120265, at *6 (C.D. Cal. Sept. 25, 2013) ("[T]he statements regarding falsified cue sheets lack foundation as they are not based on personal knowledge and also violate the best evidence rule as the cue sheets themselves are the best evidence of their contents and the vast majority of them are not attached to Plaintiffs' opposition.").

### C. Sonos Fails To Demonstrate Ms. Kwasizur's Statements Are Proper Lay Opinion

Finally, Sonos unsuccessfully attempts to mask the expert opinions in paragraphs 11, 13, 14, 15, and 23 of Ms. Kwasizur's declaration—which contain conclusions regarding consumer purchasing behavior, a purported "lock-in" effect, price erosion, and the ability for market participants to meet the demand in the case of an injunction—as Ms. Kwasizur's lay opinion testimony. Because Sonos fails to establish that these opinions are "rationally based on [her]

perception" through "first-hand knowledge or observation," they must be stricken. Fed. R. Evid. 701(a); Fed. R. Evid. 701 Advisory Committee Note.

1. Sonos Bears the Burden Of Establishing That Ms. Kwasizur's Statements Are Proper Lay Opinion

Once again, Sonos improperly seeks to shift its burden of showing that Ms. Kwasizur's declaration complies with the Federal Rules onto Google. *See* Opp. at 9 ("Google identifies literally no reason why Ms. Kwasizur, the general counsel of Sonos, would not have personal knowledge of Google's sales advantages on pricing, smart-home integration, and brand familiarity."); *id.* at 11 ("Google identifies *no reason* to think that Ms. Kwasizur would not be aware of these facts"). But as discussed above (*supra* Sec. I.B), the burden is on ***Sonos***—as "the party seeking to introduce lay opinion testimony"—to "establish a proper foundation" for the statements in Kwasizur's declaration. *United States v. Rubin/Chambers*, 828 F. Supp. 2d 698, 703 (S.D.N.Y. 2011); *see also City of Long Beach v. Standard Oil Co.*, 46 F.3d 929, 937 (9th Cir. 1995) ("The proponent of the evidence bears the burden of laying the proper foundation for the admission.").

Sonos also incorrectly contends—without any supporting authority—that there is a *presumption* that Ms. Kwasizur has the requisite personal knowledge to offer her lay opinions that Google must rebut. *See* Opp. at 9 n.5 ("Google offers no evidence rebutting the presumption of her personal knowledge."); *id.* at 12 ("Indeed, her personal knowledge is *presumed* as a result of her position"). But as previously discussed, Sonos has the burden of establishing that Ms. Kwasizur's opinion testimony is proper. *See supra*. While Courts have *inferred* personal knowledge based on "particularized knowledge that the witness has by virtue of his or her position in the business," such as the owner or officer of a business testifying to "the value or projected profits of a business," such an inference is inapplicable here. *Everest Stables, Inc. v. Canani*, No. CV099446DSFVBKX, 2011 WL 13213657, at *2 (C.D. Cal. Oct. 6, 2011). As discussed further below, Sonos provides no basis from which the Court can infer Ms. Kwasizur's personal knowledge to opine on consumer behavior, price erosion, and the ability for market participants to meet increased market demand based on her position as Sonos's in-house lawyer.

2. That The Substance Of The Statements Is Allegedly Not Disputed Is Irrelevant

Sonos again asserts that Ms. Kwasizur's improper statements should be permitted because the parties do not disagree with them and they are "*correct* as a factual matter." Opp. at 11; *id.* at 8 ("Does anyone even doubt any part of this statement?"). As discussed above, this is not a basis to admit testimony that violates the Federal Rules. *See supra* Sec. I.B. Sonos's assertion that Mr. Chan's declaration "makes near-identical statements" is incorrect. Mr. Chan provides his personal opinion as to how he views the parties' relationships based on his "first-hand knowledge or observation" of the different price points and customer bases ***as a product manager*** for Google smart speakers. Mr. Chan's first-hand knowledge and observation in this role is thus a far cry from Ms. Kwasizur's allegedly percipient knowledge as Sonos's General Counsel.

3. Sonos Fails To Lay Any Foundation For Ms. Kwasizur's Opinions

Sonos does not (and cannot) dispute that Ms. Kwasizur's declaration provides little by way of laying foundation for her personal knowledge; indeed, she merely states that she is "the General Counsel (Americas and Pacific) at Sonos, Inc." and "ha[s] worked at Sonos since 2013." Kwasizur Decl. ¶ 1. Thus, Sonos's only rebuttal is that Ms. Kwasizur's personal knowledge can be inferred—but "[a]n affidavit must include sufficient facts clearly within the affiant's personal knowledge to permit this inference." *Cleveland v. Groceryworks.com, LLC*, 200 F. Supp. 3d 924, 940 (N.D. Cal. 2016). Because Sonos fails to set forth any facts that would establish Ms. Kwasizur's personal knowledge regarding the matters in paragraphs 11, 13, 14, 15, and 23, they are impermissible lay opinion testimony.

*(a) Ms. Kwasizur Cannot Opine on Any Alleged "Lock-in Effect," Consumer Behavior, or Price Erosion*

Nothing in Ms. Kwasizur's declaration or elsewhere contains facts that would allow one to infer, from her position as Sonos's general counsel, that she has personal knowledge as to: (1) the basis for consumer's purchasing decisions, (2) the conclusion that purchasing behavior of consumers leads to a "lock-in" effect such that Sonos will lose sales, or (3) that Google causes price erosion that impacts Sonos. Kwasizur Decl. ¶¶ 11, 13, 14, 15.

Sonos cannot seriously dispute that a company's attorney would not typically be involved in or exposed to this type of information, nor has Ms. Kwasizur provided facts to indicate that her

specific role at Sonos deviates from the ordinary duties of a legal counsel such that she could provide these opinions based on "first-hand knowledge or observation." Advisory Committee Note. Fed. R. Evid. 701. For example, if Ms. Kwasizur had declared that she is involved with Sonos's internal surveys or studies (as Mr. Chan does), one could possibly infer her personal knowledge—but no such declaration was made. And at trial, Ms. Kwasizur testified that "a normal day for [her] at [her] job at Sonos" involves "look[ing] at contracts all day and work[ing] on deals." Trial Tr. at 1002:1-4. "When a witness has not identified the objective bases for his opinion, the proffered opinion obviously fails completely to meet the requirements of Rule 701 . . . because there is no way for the court to assess whether it is rationally based on the witness's perceptions[.]" *Washington v. Kellwood Co*., No. 05-CV-10034 (SN), 2016 WL 5680374, at *5 (S.D.N.Y. Sept. 30, 2016), *aff'd,* 714 F. App'x 35 (2d Cir. 2017).

Contrary to Sonos's assertions, Ms. Kwasizur's lay opinions go far beyond those that "result from a process of reasoning familiar in everyday life" and her testimony at trial. 2000 Advisory Comm. Notes, Fed. R. Evid. 701. There, she testified that Sonos customers purchase 2.98 products on average, an assertion she repeats in her declaration and that Google does not seek to strike. Trial Tr. at 1021:12-20; *see* Dkt. 830-2 ¶ 14. But her declaration goes further and draws improper conclusions; for example, positing that Google has caused lost sales and price erosion without explaining how she has the foundation to find such an economic relationship. *See Grouse River Outfitters Ltd. v. Oracle Corp*., No. 16-CV-02954-LB, 2019 WL 8918902, at *11 (N.D. Cal. June 21, 2019) ("The court is skeptical that a foundation can be laid for [the company's founder and former CEO] to testify about lost profits, much less what losses were caused by NetSuite."). It is particularly inappropriate for Ms. Kwasizur to opine on such matters when Sonos's *expert* was unable to establish lost profits in this matter, and Sonos dropped that theory of damages. *See* Dkt. 829 at 3-4.

Finally, Sonos focuses on the timing aspect of the *Tyco* case but neglects to mention that the court in that case also struck the declaration because the declarant "provide[d] no explanation of the context in which her position as a paralegal gave her access to Monsanto's records or the basis of her alleged understanding of the records." *Tyco Thermal Controls LLC v. Redwood Industrials*, No.

C 06-07164 JF (PVT), 2010 WL 1526471, at *4 (N.D. Cal. Apr. 15, 2010). Ms. Kwasizur similarly fails to do the same here.

*(b) Ms. Kwasizur Cannot Opine On Manufacturing And Supplier Capacity*

Having failed to include the necessary foundational information in Ms. Kwasizur's declaration, Sonos attempts to demonstrate her personal knowledge to opine on the ability for Sonos and "other market participants" to meet the demand for Google's speakers after the fact through its brief. As an initial matter, mere attorney argument regarding a declarant's knowledge does not constitute evidence and does not satisfy the Federal Rules' requirement. *See* Evid. R. of Evid. 602 ("A witness may testify to a matter only if ***evidence*** is introduced sufficient to support a finding that the witness has personal knowledge. . . . ***Evidence*** to prove personal knowledge may consist of ***the witness's own testimony***.") (emphasis added). Even if it was sufficient, Sonos provides nothing more than vague, conclusory assertions that she "naturally has knowledge of Sonos's manufacturing and supplier capacity" as "an executive at Sonos" (Opp. at 10), and that the statements are "precisely the type of high-level information . . . a reasonable person would expect an executive of a publicly traded company to be aware of" (*id.* at 11); *cf. Lotenero v. Cripps*, No. 1:11-CV-00200-AWI, 2013 WL 708163, at *3 (E.D. Cal. Feb. 26, 2013) (citing *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999 (9th Cir. 1990) ("A declarant's mere assertion that he or she possesses personal knowledge . . . [is] not sufficient." ).

There are simply no facts in Ms. Kwasizur's declaration or Sonos's brief that demonstrate how or why Sonos's in-house attorney would have knowledge about Sonos's production capabilities. *See Cleveland*, 200 F. Supp. 3d at 941 (striking portions of declaration because it did not set forth facts indicating a delivery driver would be made aware of company knowledge). Nor does the fact that "Ms. Kwasizur has general knowledge on Sonos's sale of speakers, including those that compete with Google," establish that she can opine specifically on Sonos's "manufacturing and supplier capacity" to make up for additional demand. Indeed, it is unclear how Ms. Kwasizur could have "first-hand knowledge or observation" to make such a conclusion when there is no information

on what the future demand for Google's speakers will be, and her declaration does not state that she estimated future demand through a projection or otherwise. Even if she had, this would be improper:

> Where . . . lay witnesses seek to go beyond the existing business and opine upon future sales, they are no longer supplying particularized knowledge derived from their positions in the business. Instead, they are engaging in an economic analysis. Their testimony must consider comparable products or services, the activities of competitors, pricing, demand for the product or service, and the ability to meet that demand. In contrast to testimony that is a snap-shot of a business at the time of an injury, an opinion that incorporates future sales assumptions is an assessment of a relevant market. Evaluating conditions in a market is not based upon knowledge of the internal workings of a business; it is analysis requiring specialized knowledge. This should be the exclusive province of expert testimony.

*BRC Rubber & Plastics, Inc. v. Cont'l Carbon Co.*, No. 1:11-CV-190, 2014 WL 554565, at *4 (N.D. Ind. Feb. 11, 2014). Sonos's damages expert never analyzed Sonos's manufacturing and marketing capabilities. Sonos cannot now inject these opinions under the guise that it is lay witness opinion from its own counsel. *See Everest Stables, Inc. v. Canani*, No. CV099446DSFVBKX, 2011 WL 13213657, at *2 (C.D. Cal. Oct. 6, 2011) ("[A] party simply may not use Rule 701 as an end-run around the reliability requirements of Rule 702 and the disclosure requirements of the Rules of Procedure.").

As for Ms. Kwasizur's opinions regarding the capabilities of "other companies" such as Amazon and Apple, the issue is unrelated to Amazon's *current* market share for smart speaker products (Opp. at 11), but rather whether Amazon and Apple have the capability to meet an increased demand should Google be enjoined from selling its smart speakers in the future. Sonos does not dispute that Ms. Kwasizur would not have any firsthand knowledge of such information for companies at which she does not and has never worked. Worse, Sonos's outside counsel appears to have begun testifying in its motion, baldly asserting that Amazon and Apple have "analogues" for the accused products for which Sonos makes no similar product—an opinion that Ms. Kwasizur does not even offer in her declaration.

## II. CONCLUSION

For the foregoing reasons, Google requests that the Court strike portions of paragraphs 13 and 14 and the entirety of paragraphs 7, 9, 10, 15, 16, 17, and 23 of the Kwasizur declaration.

DATED: July 20, 2023

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By */s/ Sean Pak*

Sean Pak
Melissa Baily
James D. Judah
Lindsay Cooper
Marc Kaplan
Iman Lordgooei

*Attorneys for GOOGLE LLC*