QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Sean Pak (Bar No. 219032)
  seanpak@quinnemanuel.com
  Melissa Baily (Bar No. 237649)
  melissabaily@quinnemanuel.com
  James Judah (Bar No. 257112)
  jamesjudah@quinnemanuel.com
  Lindsay Cooper (Bar No. 287125)
  lindsaycooper@quinnemanuel.com
  Iman Lordgooei (Bar No. 251320)
  imanlordgooei@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:      (415) 875-6600
Facsimile:      (415) 875-6700

  Marc Kaplan (*pro hac vice*)
  marckaplan@quinnemanuel.com
191 N. Wacker Drive, Ste 2700
Chicago, Illinois 60606
Telephone:      (312) 705-7400
Facsimile:      (312) 705-7401

*Attorneys for GOOGLE LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SONOS, INC., | CASE NO. 3:20-cv-06754-WHA |
| Plaintiff, | Related to CASE NO. 3:21-cv-07559-WHA |
| vs. | **CHART C TO GOOGLE LLC'S REVISED OMNIBUS ADMINISTRATIVE MOTION TO FILE UNDER SEAL PURSUANT TO THE COURT'S ORDER RE NEW MOTIONS TO SEAL (DKT. 846)** |
| GOOGLE LLC, | |
| Defendant. | |

**CHART C: Damages-Related Information**

| Dkt. | Document | Portions to be Sealed | Narrowing from Original Request to Seal | Narrowing from Revised Request to Seal | Basis for Sealing[1] |
|---|---|---|---|---|---|
| 482-12 | Exhibit 21 to Google's MSJ | Portions outlined in green boxes | Removed request to seal references to source code file names for playback of queues in YouTube apps, description of the operation of autoplay and casting functionalities in YouTube apps, and excerpts from internal Google documents regarding queues in YouTube apps when not casting and in the MDx context. | None | Page 167: Contains references to the existence and terms of confidential patent licensing and purchase agreements that were not at issue at trial and thus not discussed in open court. Google considers and treats this information as highly confidential business information, and does not disclose this information publicly. The public disclosure of such agreements and their terms would harm Google's competitive standing and its ability to negotiate future licensing agreements by giving competitors access and insight into Google's highly confidential business thinking, asymmetrical information about Google's patent licensing and purchasing strategies, and Google's prior patent licensing and purchase terms to other entities. |
| 511-3 | Google's Opposition to Sonos's Motion to Realign the Parties | Portions outlined in pink boxes | None | Removed request to seal terms of Service Integration Agreement between the parties. | Page 3: Contains information regarding terms of a confidential, non-binding term sheet between Google and Sonos exchanged during license negotiations between the parties. The public disclosure of such information would harm Google's |

---

[1] All pin cites refer to internal document page and exhibit numbers.

| | | | | | competitive standing and its ability to negotiate future licensing agreements by giving competitors access and insight into Google's highly confidential business thinking, asymmetrical information about Google's licensing strategies, and Google's prior licensing terms. |
|---|---|---|---|---|---|
| 511-4 | Exhibit 1 to the Declaration of Jocelyn Ma in Support of Google's Opposition to Sonos's Motion to Realign the Parties | Entire Document | None | None | Document comprising a confidential, non-binding term sheet between Google and Sonos exchanged during license negotiations between the parties, the public disclosure of which would harm Google's competitive standing and its ability to negotiate future licensing agreements by giving competitors access and insight into Google's highly confidential business thinking, asymmetrical information about Google's licensing strategies, and Google's prior licensing terms. |
| 590-2 | Sonos's Motion *in Limine* No. 1 | Portions outlined in green boxes | Removed request to seal scaled lump-sum royalty amounts for the zone scene patents based on a Google patent agreement and reference to the Outland Research Agreement, which was discussed at trial. | None | Pages 4, 6: Contains references to the existence and terms of confidential patent licensing and purchase agreements that were not at issue at trial and thus not discussed in open court.  Google considers and treats this information as highly confidential business information, and does not disclose this information publicly.  The public disclosure of such agreements and their terms would harm Google's competitive standing and its ability to negotiate future licensing agreements by giving competitors access and insight into Google's highly confidential business |

| | | | | | thinking, asymmetrical information about Google's patent licensing and purchasing strategies, and Google's prior patent licensing and purchase terms to other entities. Accordingly, if this information were made public, Google's competitive standing would be harmed. |
|---|---|---|---|---|---|
| 590-4 | Exhibit B to Declaration of Joseph R. Kolker in Support of Sonos's Motion *in Limine* No. 1 | Portions outlined in red boxes | Removed request to seal entirety of document. | Removed request to seal cost of implement non-infringing alternatives, lump-sum nature of Google's agreements, existence of Garnet settlement agreement (which was disclosed publicly in connection with litigation), identities of certain companies with which Google entered into agreements (AST and IIF) as Google's involvement with them has been disclosed publicly through litigation or otherwise, and the nature of the agreements (purchase agreements). | Pages 180-182, 184, 185, 187, 190, 193, 202-204: Contain references to the existence and terms of confidential patent licensing and purchase agreements that were not at issue at trial and thus not discussed in open court. Google considers and treats this information as highly confidential business information, and does not disclose this information publicly. The public disclosure of such agreements and their terms would harm Google's competitive standing and its ability to negotiate future licensing agreements by giving competitors access and insight into Google's highly confidential business thinking, asymmetrical information about Google's patent licensing and purchasing strategies, and Google's prior patent licensing and purchase terms to other entities.<br><br>Page 177: Contains information regarding terms of a confidential, non-binding term sheet between Google and Sonos exchanged during license negotiations between the parties, the public disclosure of which |

| | | | | | would harm Google's competitive standing and its ability to negotiate future licensing agreements by giving competitors access and insight into Google's highly confidential business thinking, asymmetrical information about Google's licensing strategies, and Google's prior licensing terms to other entities.<br><br>Pages 163, 168: Contain compensation information for Google engineers. Google considers and treats this information as confidential business information, and does not disclose this information publicly. The public disclosure of such compensation information would harm Google's competitive standing as an employer by impairing future negotiations with other employees and undermining Google's ability to hire or retain employees. It would also give competitors access to information that Google does not have similar access to about them, allowing them to gain a competitive advantage when hiring. |
|---|---|---|---|---|---|
| 590-5 | Google's Response to Sonos's Motion *in Limine* No. 1 | Portions outlined in green boxes and highlighted in green | Removed request to seal Mr. Bakewell's royalty estimates based on adjustments to Mr. Malackowski's damages figures and reference to the Outland Research | None | Page 3: Contains references to the existence and terms of confidential patent licensing and purchase agreements that were not at issue at trial and thus not discussed in open court. Google considers and treats this information as highly confidential business information, and does not disclose this information publicly. The public disclosure |

| | | | | | |
|---|---|---|---|---|---|
| | | | Agreement, which was discussed at trial. | | of such agreements and their terms would harm Google's competitive standing and its ability to negotiate future licensing agreements by giving competitors access and insight into Google's highly confidential business thinking, asymmetrical information about Google's patent licensing and purchasing strategies, and Google's prior patent licensing and purchase terms to other entities.<br><br>Pages 5, 6: Contains information regarding terms of a confidential, non-binding term sheet between Google and Sonos exchanged during license negotiations between the parties, the public disclosure of which would harm Google's competitive standing and its ability to negotiate future licensing agreements by giving competitors access and insight into Google's highly confidential business thinking, asymmetrical information about Google's licensing strategies, and Google's prior licensing terms to other entities. |
| 598-2 | Google's Response to Sonos's Motion *in Limine* No. 4 | Portions highlighted in green | None | None | Page 7: Contains information regarding terms of a confidential, non-binding term sheet between Google and Sonos exchanged during license negotiations between the parties, the public disclosure of which would harm Google's competitive standing and its ability to negotiate future licensing agreements by giving competitors access and insight into Google's highly |

| | | | | | confidential business thinking, asymmetrical information about Google's licensing strategies, and Google's prior licensing terms to other entities. |
|---|---|---|---|---|---|
| 598-3 | Exhibit 4 to the Declaration of James Judah in Support of Google's Response to Sonos's Motion *in Limine* No. 4 | Portions outlined in green boxes | None | Removed request to seal market share percentage for Android. | Page 30: Contains Google internal confidential information regarding number of installations of the Google Home app on Android, the public disclosure of which would give competitors with same or similar products a competitive advantage by, for example, providing information regarding download trends. Although the total number of Google Home app applications between November 2020 and Q4 2022 was discussed during trial, the data was not discussed at this granular level on a quarterly basis. |
| 598-4 | Exhibit 8 to Judah Declaration in Support of Google's Response to Sonos's Motion *in Limine* No. 4 | Entire Document | None | None | Document comprising a confidential, non-binding term sheet between Google and Sonos exchanged during license negotiations between the parties, the public disclosure of which would harm Google's competitive standing and its ability to negotiate future licensing agreements by giving competitors access and insight into Google's highly confidential business thinking, asymmetrical information about Google's licensing strategies, and Google's prior licensing terms to other entities. |
| 605-3 | Exhibit D to the Declaration of Joseph Kolker in | Portions outlined in red boxes | Removed approximate total number of Google Home app | Further removed requests to seal excerpt from YouTube Remote | Pages 69, 108-110: Contains non-public information regarding revenue for YouTube applications, accused instrumentalities, and |

| | | installations over infringement period and excerpts of internal documents regarding multiroom audio. | presentation regarding; royalty estimates based on "quantitative indicators;" identities of certain companies with which Google entered into agreements (AST, IIF) as Google's involvement with them has been disclosed publicly through litigation or otherwise; and certain internal business documents regarding speaker comparisons, and internal documents regarding Google's Cast SDK. | Pixel products.  As Google is a publicly-traded company, this information should remain under seal because it was provided at a more granular level of detail that is not disclosed in Google's public SEC filings. The public disclosure of such information would harm Google's competitive standing and create a risk of injury by providing Google's competitors with information that Google does not have similar access to about them, allowing the competitors to gain a competitive advantage in the market place, including by giving competitors an understanding of Google's product pricing and unit economics, and allowing them to formulate specific pricing/discounting strategies for their own products.  In addition, knowledge of Google's highly confidential revenue information for these products that is more geographically limited than what is publicly reported would provide competitors with detailed information as to the success or failure of these products with customers in the U.S. and would give competitors better insights into how they should focus their own product strategies in order to better compete with Google in different geographic markets.  Disclosure would also reveal to suppliers, retailers, and other parties information they could use to gain an advantage when negotiating contracts and agreements with Google. |
|---|---|---|---|---|
| Support of Sonos's Opposition to Google's Motion *in Limine* No. 1 | | | | |

| | | | | | Page 95: Contains references to the existence and terms of confidential patent purchase agreements from Allied Security Trust that were not at issue at trial and thus not discussed in open court. Google considers and treats this information as highly confidential business information, and does not disclose this information publicly. The public disclosure of such agreements and their terms would harm Google's competitive standing and its ability to negotiate future licensing agreements by giving competitors access and insight into Google's highly confidential business thinking, asymmetrical information about Google's patent licensing and purchasing strategies, and Google's prior patent licensing and purchase terms to other entities. |
|---|---|---|---|---|---|
| | | | | | Page 103: Contains information regarding confidential patent licensing negotiations between Google and Sonos. Google considers and treats this information as highly confidential business information, and does not disclose this information publicly. The public disclosure of such financial information would harm Google's competitive standing and its ability to negotiate future licensing agreements by giving competitors access and insight into Google's highly confidential business |

| | | | | | thinking, asymmetrical information about Google's licensing strategies, and Google's prior licensing terms to other entities.<br><br>Pages 99-101: Contain references to confidential internal surveys, conjoint studies, and lifetime value analyses regarding Google products that were not discussed during trial in open court. Google considers and treats this information as highly confidential business information, and does not disclose this information publicly. The public disclosure of such financial information would harm Google's competitive standing and create a risk of injury by providing Google's competitors with information that Google does not have similar access to about them and allowing the competitors to gain a competitive advantage in the market place, including by releasing same or similar products. It would also provide Google's competitors with an unfair advantage by allowing them to benefit from Google's research and development to compete against Google.<br><br>Pages 104-106: Contains an analysis of indirect revenue from Google Pixel devices and Google TV. Google considers and treats this information as highly confidential business information, and does not disclose this information publicly. The public disclosure of such financial information |
|---|---|---|---|---|---|

| | | | | | would harm Google's competitive standing and create a risk of injury by providing Google's competitors with information that Google does not have similar access to about them, allowing the competitors to gain a competitive advantage in the market place, including by giving competitors an understanding of Google's product pricing and unit economics, and allow them to formulate specific pricing/discounting strategies for their own products.  In addition, knowledge of Google's highly confidential revenue information for these products regarding specific geographic areas would provide competitors with detailed information as to the success or failure of these products with customers in the U.S. and would give competitors better insights into how they should focus their own product strategies in order to better compete with Google in different geographic markets.  Disclosure would also reveal to suppliers, retailers, and other parties information that they could use to gain an advantage when negotiating contracts and agreements with Google.<br><br>In addition, this information was excluded from the record at trial as more prejudicial than probative and thus was neither discussed publicly nor relied upon by the jury in calculating damages. |
|---|---|---|---|---|---|

| | | | | | Page 102: Contains references to business strategy and future plans for Google products, and/or technology that Google is developing but has not yet released.  Google considers and treats this information as highly confidential business information, and does not disclose this information publicly.  The public disclosure of such financial information would harm Google's competitive standing and create a risk of injury by providing Google's competitors with access and insight into Google's highly confidential business thinking, asymmetrical information about Google's business strategies, and future business plans, which could allow a competitor to develop and launch the same or similar technologies to unfairly compete against Google.<br><br>Pages 113, 114, 118: Contains references to internal, non-public usage metrics for the YouTube applications and installations data for Google applications identified by each fiscal quarter.  Information regarding the YouTube applications was not at issue during trial given that the cloud queue patents were invalidated, and the data for the Google applications was not discussed at trial in open court at this level of granularity.  Google considers and treats this information as highly confidential business information, and does not disclose |
|---|---|---|---|---|---|

| | | | | | |
|---|---|---|---|---|---|
| | | | | | this information publicly.  As Google is a publicly-traded company, this information should remain under seal because it was provided at a more granular level of detail that is not disclosed in Google's public SEC filings. The public disclosure of this information could harm Google's competitive standing and create a risk of injury by providing competitors with access to information that Google does not have similar access to about them, and could allow competitors to gain an unfair advantage over Google in future business or licensing negotiations that may be affected by metrics and usage information of Google's applications.  It may also allow competitors and/or bad actors to manipulate or gain insight into how Google maintains its data. |
| 609-4 | Exhibit A to the Declaration of Joseph Kolker in Support of Sonos's Opposition to Google's Motion *in Limine* No. 2 | Portions outlined in red boxes | Removed approximate total number of Google Home app installations over infringement period and excerpts of internal documents regarding multiroom audio. | Further removed requests to seal excerpt from older YouTube Remote presentation regarding; royalty estimates based on "quantitative indicators;" identities of certain companies with which Google entered into agreements (AST, IIF) as Google's involvement with them has been disclosed publicly through litigation or otherwise; | Pages 9, 108-110:  Contains highly confidential information regarding revenue for YouTube applications and accused mobile and tablet products.  Information regarding the YouTube applications was not at issue during trial given that the cloud queue patents were invalidated, and the revenue information for the accused hardware products were not utilized by either party to calculate damages and was not disclosed at trial.  As Google is a publicly-traded company, this information should remain under seal because it was provided at a more granular level of detail |

<table>
<tr>
<td></td>
<td></td>
<td></td>
<td></td>
<td>and certain internal business documents regarding speaker comparisons, and internal documents regarding Google's Cast SDK.</td>
<td>that is not disclosed in Google's public SEC filings. The public disclosure of such information would harm Google's competitive standing and create a risk of injury by providing Google's competitors with information that Google does not have similar access to about them, allowing the competitors to gain a competitive advantage in the market place, including by giving competitors an understanding of Google's product pricing and unit economics, and allowing them to formulate specific pricing/discounting strategies for their own products. In addition, knowledge of Google's highly confidential revenue information for these products that is more geographically limited than what is publicly reported would provide competitors with detailed information as to the success or failure of these products with customers in the U.S. and would give competitors better insights into how they should focus their own product strategies in order to better compete with Google in different geographic markets. Disclosure would also reveal to suppliers, retailers, and other parties information they could use to gain an advantage when negotiating contracts and agreements with Google.

Page 10: Contains non-public information regarding number of units sold of Google's accused hardware products on a quarterly</td>
</tr>
</table>

|  |  |  |  |  | basis, the public disclosure of which would give competitors with same or similar products a competitive advantage by, for example, providing information regarding sales trends. Although the total number of units between November 2019 and Q4 2022 was discussed during trial, the data was not discussed at this granular level on a quarterly basis, nor does Google provide this level of detail in its public SEC filings.<br><br>Page 66, 95: Contains references to the existence and terms of confidential patent licensing and purchase agreements that were not at issue at trial and thus not discussed in open court.  Google considers and treats this information as highly confidential business information, and does not disclose this information publicly.  The public disclosure of such agreements and their terms would harm Google's competitive standing and its ability to negotiate future licensing agreements by giving competitors access and insight into Google's highly confidential business thinking, asymmetrical information about Google's patent licensing and purchasing strategies, and Google's prior patent licensing and purchase terms to other entities.<br><br>Page 103: Contains information regarding confidential patent licensing negotiations |
|--|--|--|--|--|--|

| | | | | | between Google and Sonos.  Google considers and treats this information as highly confidential business information, and does not disclose this information publicly.  The public disclosure of such financial information would harm Google's competitive standing and its ability to negotiate future licensing agreements by giving competitors access and insight into Google's highly confidential business thinking, asymmetrical information about Google's licensing strategies, and Google's prior licensing terms to other entities. Pages 99-101: Contains references to internal surveys, conjoint studies, and lifetime value analyses regarding Google products that were not discussed during trial in open court.  Google considers and treats this information as highly confidential business information, and does not disclose this information publicly.  The public disclosure of such financial information would harm Google's competitive standing and create a risk of injury by providing Google's competitors with information that Google does not have similar access to about them, allowing the competitors to gain a competitive advantage in the market place, including by releasing same or similar products. It would also provide Google's competitors with an unfair advantage by allowing them to benefit from |
|---|---|---|---|---|---|

| | | | | | Google's research and development to compete against Google.<br><br>Pages 104-106: Contains an analysis of indirect revenue from Google Pixel devices and Google TV.  Google considers and treats this information as highly confidential business information, and does not disclose this information publicly.  The public disclosure of such financial information would harm Google's competitive standing and create a risk of injury by providing Google's competitors with information that Google does not have similar access to about them, allowing the competitors to gain a competitive advantage in the market place, including by giving competitors an understanding of Google's product pricing and unit economics, and allow them to formulate specific pricing/discounting strategies for their own products.  In addition, knowledge of Google's highly confidential revenue information for these products regarding specific geographic areas would provide competitors with detailed information as to the success or failure of these products with customers in the U.S. and would give competitors better insights into how they should focus their own product strategies in order to better compete with Google in different geographic markets.  Disclosure would also reveal to suppliers, retailers, and other |
|---|---|---|---|---|---|

parties information that they could use to
gain an advantage when negotiating
contracts and agreements with Google.  In
addition, this information was excluded
from the record at trial as more prejudicial
than probative and thus was neither
discussed publicly nor relied upon by the
jury in calculating damages.

Page 102: Contains references to business
strategy and future plans for Google
products, and/or technology that Google is
developing but has not yet released.  Google
considers and treats this information as
highly confidential business information,
and does not disclose this information
publicly.  The public disclosure of such
financial information would harm Google's
competitive standing and create a risk of
injury by providing Google's competitors
with access and insight into Google's highly
confidential business thinking,
asymmetrical information about Google's
business strategies, and future business
plans, which could allow a competitor to
develop and launch the same or similar
technologies to unfairly compete against
Google.

Pages 113, 114, 118 Contains references to
internal, non-public usage metrics for the
YouTube applications and installations data
for Google applications identified by each

| | | | | | fiscal quarter.  Information regarding the YouTube applications was not at issue during trial and the data for the Google applications was not discussed at trial in open court at this level of granularity.  Google considers and treats this information as highly confidential business information, and does not disclose this information publicly.  As Google is a publicly-traded company, this information should remain under seal because it was provided at a more granular level of detail that is not disclosed in Google's public SEC filings.  The public disclosure of this information could harm Google's competitive standing and create a risk of injury by providing competitors with access to information that Google does not have similar access to about them, and could allow competitors to gain an unfair advantage over Google in future business or licensing negotiations that may be affected by metrics and usage information of Google's applications.  It may also allow competitors and/or bad actors to manipulate or gain insight into how Google maintains its data. |
|---|---|---|---|---|---|
| 612-3 | Exhibit 3 to the Declaration of Jocelyn Ma in Support of Google's Motion *in Limine* No. 3 | Portions outlined in red boxes | Removed requests to seal costs of implementing Google's proposed non-infringing alternatives, mechanics of | Further removed requests to seal costs of implementing non-infringing alternatives, Google's firmware update schedule, and royalty figures from which one | Page 129: Contains compensation information for Google engineers and the number of engineer hours required to implement Google's proposed non-infringing alternatives.  Google considers and treats this information as confidential business information, and does not disclose |

| | | | implementing Google's proposed non-infringing alternatives, and Mr. Malackowski's opinion on the total royalty rate for the '033 patent. | could deduce revenue information for the YouTube application. | this information publicly. The public disclosure of such compensation information would harm Google's competitive standing as an employer by impairing future negotiations with other employees and undermining Google's ability to hire or retain employees. It would also give competitors access to information that Google does not have similar access to about them, allowing them to gain a competitive advantage when hiring. |
| --- | --- | --- | --- | --- | --- |
| 616-3 | Sonos's Opposition to Google's Motion *in Limine* No. 4 | Portions outlined in green boxes | Removed request to seal the fact that Google has lost money on accused products and the amount of Google's cash on hand. | Further removed request to seal amount of cash on hand. | Page 3, lines 3-4: Contains highly confidential information regarding the revenue numbers for the accused Pixel devices and accused media players and speaker products, the public disclosure of which would harm Google's competitive standing and create a risk of injury by providing Google's competitors with information that Google does not have similar access to about them, allowing the competitors to gain a competitive advantage in the market place, including by giving competitors an understanding of Google's product pricing and unit economics, and allowing them to formulate specific pricing/discounting strategies for their own products. In addition, knowledge of Google's highly confidential revenue information for these products that is more geographically limited than what is publicly reported would provide competitors with detailed information as to the success or |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | failure of these products with customers in the U.S. and would give competitors better insights into how they should focus their own product strategies in order to better compete with Google in different geographic markets. Disclosure would also reveal to suppliers, retailers, and other parties information they could use to gain an advantage when negotiating contracts and agreements with Google.<br><br>Page 3, lines 10-12: Contains information regarding confidential patent licensing negotiations between Google and Sonos. Google considers and treats this information as highly confidential business information, and does not disclose this information publicly. The public disclosure of such financial information would harm Google's competitive standing and its ability to negotiate future licensing agreements by giving competitors access and insight into Google's highly confidential business thinking, asymmetrical information about Google's licensing strategies, and Google's prior licensing terms to other entities. |
| 616-4 | Exhibit 1 to the Declaration of Lana Robins in Support of Motion *in Limine* No. 4 | Portions outlined in red boxes | None | Removed requests to seal royalty figures from which one could deduce revenue information for the YouTube application. | Pages 22, 76, 77: Contains highly confidential subscription and advertising revenue data for YouTube and Google Play Music as well as sales data for YouTube and the accused Pixel products. Information regarding the YouTube |

| | | | | | applications was not at issue during trial given that the cloud queue patents were invalidated. As Google is a publicly-traded company, this information should remain under seal because it was provided at a more granular level of detail that is not disclosed in Google's public SEC filings. Google considers and treats this information to as highly confidential business information, and does not disclose this information publicly. The public disclosure of such financial information would harm Google's competitive standing and create a risk of injury by providing Google's competitors with information that Google does not have similar access to about them, allowing the competitors to gain a competitive advantage in the market place, including by giving competitors an understanding of Google's product pricing and unit economics, and allowing them to formulate specific pricing/discounting strategies for their own products. In addition, knowledge of Google's highly confidential revenue information for these products that is more geographically limited than what is publicly reported would provide competitors with detailed information as to the success or failure of these products with customers in the U.S. and would give competitors better insights into how they should focus their own product strategies in order to better compete |
|---|---|---|---|---|---|

| | | | | | with Google in different geographic markets.  Disclosure would also reveal to suppliers, retailers, and other parties information that they could use to gain an advantage when negotiating contracts and agreements with Google.  Pages 104-106: Contains an analysis of indirect revenue from Google Pixel devices and Google TV.  Google considers and treats this information as highly confidential business information, and does not disclose this information publicly.  The public disclosure of such financial information would harm Google's competitive standing and create a risk of injury by providing Google's competitors with information that Google does not have similar access to about them, allowing the competitors to gain a competitive advantage in the market place, including by giving competitors an understanding of Google's product pricing and unit economics, and allow them to formulate specific pricing/discounting strategies for their own products.  In addition, knowledge of Google's highly confidential revenue information for these products regarding specific geographic areas would provide competitors with detailed information as to the success or failure of these products with customers in the U.S. and would give competitors better insights into how they should focus their |
| --- | --- | --- | --- | --- | --- |

| | | | | | own product strategies in order to better compete with Google in different geographic markets.  Disclosure would also reveal to suppliers, retailers, and other parties information that they could use to gain an advantage when negotiating contracts and agreements with Google.  In addition, this information was excluded from the record at trial as more prejudicial than probative and thus was neither discussed publicly nor relied upon by the jury in calculating damages.<br><br>Page 76: Contains references to internal, non-public usage metrics for the YouTube applications.  Information regarding the YouTube applications was not at issue during trial and thus was not discussed in open court.  Google considers and treats this information as highly confidential business information, and does not disclose this information publicly.  The public disclosure of this information could harm Google's competitive standing and create a risk of injury by providing competitors with access to information that Google does not have similar access to about them, and could allow competitors to gain an unfair advantage over Google in future business or licensing negotiations that may be affected by metrics and usage information of Google's applications.  It may also allow competitors and/or bad actors to manipulate |
|---|---|---|---|---|---|

| | | | | | |
|---|---|---|---|---|---|
| | | | | | or gain insight into how Google maintains its data. |
| 616-5 | Exhibit 5 to the Declaration of Lana Robins in Support of Motion *in Limine* No. 4 | Portions outlined in red boxes | None | None | Page 238: Contains references to lifetime value analyses for unaccused Google products that were not discussed during trial in open court.  Google considers and treats this information as highly confidential business information, and does not disclose this information publicly.  The public disclosure of such financial information would harm Google's competitive standing and create a risk of injury by providing Google's competitors with information that Google does not have similar access to about them, allowing the competitors to gain a competitive advantage in the market place, including by releasing same or similar products. |
| 616-6 | Exhibit 6 to the Declaration of Lana Robins in Support of Google's Motion *in Limine* No. 4 | Portions outlined in red boxes | None | None | Page 125: Contains references to the bill of materials for the Nest Mini and the Nest Audio.  The public disclosure of such confidential internal financial information would harm Google's competitive standing and create a risk of injury by providing Google's competitors with information that Google does not have similar access to about them, allowing the competitors to gain a competitive advantage in the market place.  It would also reveal to suppliers, retailers, and other parties information that they could use to gain an advantage when negotiating contracts and agreements with Google. |

| 616-7 | Exhibit A to the Declaration of Joseph Kolker in Support of Sonos's Opposition to Google's Motion *in Limine* No. 4 | Portions outlined in red boxes | None | Removed requests to seal excerpt from older YouTube Remote presentation. | Pages 69, 108, 109: Contains highly confidential profit and revenue data for the YouTube app. The YouTube app was not at issue during trial and thus its financial information was not presented in open court. Google considers and treats this information to as highly confidential business information, and does not disclose this information publicly. The public disclosure of such financial information would harm Google's competitive standing and create a risk of injury by providing Google's competitors with information that Google does not have similar access to about them, allowing the competitors to gain a competitive advantage in the market place. It would also reveal to suppliers, retailers, and other parties information that they could use to gain an advantage when negotiating contracts and agreements with Google.<br><br>Page 108: Contains highly confidential information regarding profit and revenue information for the accused hardware products. The public disclosure of this information would harm Google's competitive standing and create a risk of injury by providing Google's competitors with information that Google does not have similar access to about them, allowing competitors to gain a competitive advantage in the market place, including by giving |
|---|---|---|---|---|---|

competitors an understanding of Google's product pricing and unit economics, and allowing them to formulate specific pricing/discounting strategies for their own products.  In addition, knowledge of Google's highly confidential revenue information for these products that is more geographically limited than what is publicly reported would provide competitors with detailed information as to the success or failure of these products with customers in the U.S. and would give competitors better insights into how they should focus their own product strategies in order to better compete with Google in different geographic markets.  Disclosure would also reveal to suppliers, retailers, and other parties information they could use to gain an advantage when negotiating contracts and agreements with Google.

Pages 104-106: Contains an analysis of indirect revenue from Google Pixel devices and Google TV.  Google considers and treats this information as highly confidential business information, and does not disclose this information publicly.  The public disclosure of such financial information would harm Google's competitive standing and create a risk of injury by providing Google's competitors with information that Google does not have similar access to about them, allowing the competitors to

| | | | | | gain a competitive advantage in the market place, including by giving competitors an understanding of Google's product pricing and unit economics, and allow them to formulate specific pricing/discounting strategies for their own products.  In addition, knowledge of Google's highly confidential revenue information for these products regarding specific geographic areas would provide competitors with detailed information as to the success or failure of these products with customers in the U.S. and would give competitors better insights into how they should focus their own product strategies in order to better compete with Google in different geographic markets.  Disclosure would also reveal to suppliers, retailers, and other parties information that they could use to gain an advantage when negotiating contracts and agreements with Google.  In addition, this information was excluded from the record at trial as more prejudicial than probative and thus was neither discussed publicly nor relied upon by the jury in calculating damages.

Page 103: Contains information regarding confidential patent licensing negotiations between Google and Sonos.  Google considers and treats this information as highly confidential business information, and does not disclose this information |
|---|---|---|---|---|---|

| | | | | | |
|---|---|---|---|---|---|
| | | | | | publicly.  The public disclosure of such financial information would harm Google's competitive standing and its ability to negotiate future licensing agreements by giving competitors access and insight into Google's highly confidential business thinking, asymmetrical information about Google's licensing strategies, and Google's prior licensing terms to other entities. |
| 616-8 | Exhibit D to the Declaration of Joseph Kolker in Support of Sonos's Opposition to Google's Motion *in Limine* No. 4 | Portions outlined in red boxes | None | Removed request to seal identities of certain companies with which Google entered into agreements (IIF and Garnet) as Google's involvement with them has been disclosed publicly through litigation or otherwise. | Pages iii: Contains references to the existence of confidential patent licensing and purchase agreements that were not at issue at trial and thus not discussed in open court.  Google considers and treats this information as highly confidential business information, and does not disclose this information publicly.  The public disclosure of such agreements would harm Google's competitive standing and its ability to negotiate future licensing agreements by giving competitors access and insight into Google's highly confidential business thinking, asymmetrical information about Google's patent licensing and purchasing strategies, and Google's prior patent licensing and purchase terms to other entities. |
| 643-1 | Exhibit B to the Declaration of Joseph Kolker in Support of Sonos's Motion *in Limine* No. 1 | Portions outlined in red boxes | Removed request to seal cost to implement non-infringing alternatives and existence and terms of Outland Research | Further removed request to seal lump-sum nature of Google's agreements, existence of Garnet settlement agreement (which was disclosed | Pages 163, 168: Contain compensation information for Google engineers.  Google considers and treats this information as confidential business information, and does not disclose this information publicly. The public disclosure of such compensation |

| | | | agreement, which was disclosed at trial. | publicly through litigation), identities of certain companies with which Google entered into agreements (AST, IIF, Garnet) as Google's involvement with them has been disclosed publicly through litigation or otherwise, and the nature of the agreements (purchase agreements). | information would harm Google's competitive standing as an employer by impairing future negotiations with other employees and undermining Google's ability to hire or retain employees. It would also give competitors access to information that Google does not have similar access to about them, allowing them to gain a competitive advantage when hiring.

Page 177: Contains information regarding terms of a confidential, non-binding term sheet between Google and Sonos exchanged during license negotiations between the parties, the public disclosure of which would harm Google's competitive standing and its ability to negotiate future licensing agreements by giving competitors access and insight into Google's highly confidential business thinking, asymmetrical information about Google's licensing strategies, and Google's prior licensing terms to other entities.

Pages 180-182, 184, 185, 187, 190, 193, 202-204: Contains references to the existence and terms of confidential patent licensing and purchase agreements that were not at issue at trial and thus not discussed in open court. Google considers and treats this information as highly confidential business information, and does not disclose this information publicly. The |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | public disclosure of such agreements and their terms would harm Google's competitive standing and its ability to negotiate future licensing agreements by giving competitors access and insight into Google's highly confidential business thinking, asymmetrical information about Google's patent licensing and purchasing strategies, and Google's prior patent licensing and purchase terms to other entities. |
| 643-2 | Exhibit 1 to the Declaration of Lindsay Cooper in Support of Google's Response to Sonos's Motion *in Limine* No. 1 | Portions outlined in red boxes | Removed request to seal cost of implementing NIAs. | Removed request to seal Google Home install events and Malackowski's estimated "total" install events using Android operating system share and Malackowski's royalty figures based on revenue information for the YouTube application. | Pages 50-53: Contains information regarding confidential patent licensing negotiations between Google and Sonos. Google considers and treats this information as highly confidential business information, and does not disclose this information publicly.  The public disclosure of such financial information would harm Google's competitive standing and its ability to negotiate future licensing agreements by giving competitors access and insight into Google's highly confidential business thinking, asymmetrical information about Google's licensing strategies, and Google's prior licensing terms to other entities.<br><br>Pages 50-53: Contains information regarding terms of a confidential, non-binding term sheet between Google and Sonos exchanged during license negotiations between the parties, the public disclosure of which would harm Google's |

competitive standing and its ability to negotiate future licensing agreements by giving competitors access and insight into Google's highly confidential business thinking, asymmetrical information about Google's licensing strategies, and Google's prior licensing terms to other entities.

Page 53: Contains references to the existence and terms of confidential patent licensing and purchase agreements that were not at issue at trial and thus not discussed in open court. Google considers and treats this information as highly confidential business information, and does not disclose this information publicly. The public disclosure of such agreements and their terms would harm Google's competitive standing and its ability to negotiate future licensing agreements by giving competitors access and insight into Google's highly confidential business thinking, asymmetrical information about Google's patent licensing and purchasing strategies, and Google's prior patent licensing and purchase terms to other entities.

Page 30: Contains non-public information regarding number of installations of the Google Home app on Android per quarter, the public disclosure of which would give competitors with same or similar products a

| | | | | | competitive advantage by, for example, providing information regarding download trends or during future business or licensing negotiations that may be affected by metrics and usage of Google's applications. Although the total number of Google Home app applications between November 2020 and Q4 2022 was discussed during trial, the data was not discussed at this granular level on a quarterly basis.<br><br>Page 129: Contains compensation information for Google engineers and the number of engineer hours required to implement Google's proposed non-infringing alternatives.  Google considers and treats this information as confidential business information, and does not disclose this information publicly.  The public disclosure of such compensation information would harm Google's competitive standing as an employer by impairing future negotiations with other employees and undermining Google's ability to hire or retain employees.  It would also give competitors access to information that Google does not have similar access to about them, allowing them to gain a competitive advantage when hiring. |
|---|---|---|---|---|---|
| 643-3 | Exhibit 2 to the Declaration of Lindsay Cooper in Support of | Portions outlined in red boxes | Removed request to seal cost to implement NIAs and existence | Removed request to seal lump-sum nature of Google's agreements and the parties' non-binding | Page 179: Contains information regarding confidential patent licensing negotiations between Google and Sonos.  Google considers and treats this information as |

| | Google's Response to Sonos's Motion *in Limine* No. 1 | | and terms of Outland Research agreement. | term sheet; identities of certain companies with which Google entered into agreements (AST, IIF, Garnet) as Google's involvement with them has been disclosed publicly through litigation or otherwise; the nature of the agreements (patent purchase); and royalty estimates based on "quantitative indicators." | highly confidential business information, and does not disclose this information publicly. The public disclosure of such financial information would harm Google's competitive standing and its ability to negotiate future licensing agreements by giving competitors access and insight into Google's highly confidential business thinking, asymmetrical information about Google's licensing strategies, and Google's prior licensing terms to other entities.

Pages 180, 187-189, 192, 193, 199, 204, 267: Contain references to the existence and terms of confidential patent licensing and purchase agreements that were not at issue at trial and thus not discussed in open court. Google considers and treats this information as highly confidential business information, and does not disclose this information publicly. The public disclosure of such agreements and their terms would harm Google's competitive standing and its ability to negotiate future licensing agreements by giving competitors access and insight into Google's highly confidential business thinking, asymmetrical information about Google's patent licensing and purchasing strategies, and Google's prior patent licensing and purchase terms to other entities. |
|---|---|---|---|---|---|

| | | | | | | Pages 177, 178: Contains information regarding terms of a confidential, non-binding term sheet between Google and Sonos exchanged during license negotiations between the parties, the public disclosure of which would harm Google's competitive standing and its ability to negotiate future licensing agreements by giving competitors access and insight into Google's highly confidential business thinking, asymmetrical information about Google's licensing strategies, and Google's prior licensing terms to other entities.

Page 42: Contains highly sensitive product revenue and sales data regarding Pixel products.  Google considers and treats this information as highly confidential business information, and does not disclose this information publicly.  As Google is a publicly-traded company, this information should remain under seal because it was provided at a more granular level of detail that is not disclosed in Google's public SEC filings.  The public disclosure of such financial information would harm Google's competitive standing and create a risk of injury by providing Google's competitors with information that Google does not have similar access to about them, allowing the competitors to gain a competitive advantage in the market place, including by giving competitors an understanding of Google's |
|---|---|---|---|---|---|---|

| | | | | | product pricing and unit economics, and allowing them to formulate specific pricing/discounting strategies for their own products. In addition, knowledge of Google's highly confidential revenue information for these products that is more geographically limited than what is publicly reported would provide competitors with detailed information as to the success or failure of these products with customers in the U.S. and would give competitors better insights into how they should focus their own product strategies in order to better compete with Google in different geographic markets. Disclosure would also reveal to suppliers, retailers, and other parties information that they could use to gain an advantage when negotiating contracts and agreements with Google. |
|---|---|---|---|---|---|
| 643-4 | Exhibit 3 to the Declaration of Lindsay Cooper in Support of Google's Response to Sonos's Motion *in Limine* No. 1 | Portions outlined in green boxes | Removed request to seal royalty estimates based on quantitative indicators for the '885 and '966 patents that were presented at trial. | Further removed request to seal royalty estimates based on "quantitative indicators" for the '033 patent. | Exhibit 1.0, Page 2: Contains highly confidential subscription and advertising revenue data for the YouTube mobile app. Information regarding the YouTube applications was not at issue during trial given that the cloud queue patents were invalidated. As Google is a publicly-traded company, this information should remain under seal because it was provided at a more granular level of detail that is not disclosed in Google's public SEC filings. Google considers and treats this information as highly confidential business information, and does not disclose this information |

| | | | | | publicly.  The public disclosure of such financial information would harm Google's competitive standing and create a risk of injury by providing Google's competitors with information that Google does not have similar access to about them, allowing the competitors to gain a competitive advantage in the market place, including by giving competitors an understanding of Google's product pricing and unit economics, and allowing them to formulate specific pricing/discounting strategies for their own products.  In addition, knowledge of Google's highly confidential revenue information for these products that is more geographically limited than what is publicly reported would provide competitors with detailed information as to the success or failure of these products with customers in the U.S. and would give competitors better insights into how they should focus their own product strategies in order to better compete with Google in different geographic markets. Disclosurewould also reveal to suppliers, retailers, and other parties information that they could use to gain an advantage when negotiating contracts and agreements with Google. |
| 671-3 | Exhibit 2 to the Declaration of Lindsay Cooper in Support of Google's | Portions outlined in green boxes | Removed request to seal description of usage metrics and file names. | Removed request to seal title and headers of chart with data regarding speaker usage. | Exhibits 4.3 & 4.4 : Contains highly confidential information regarding the average daily number of speakers executing certain commands related to grouping and average daily number of connected |

| | | | | | |
|---|---|---|---|---|---|
| | Response to Request for Information (Dkts. 649, 661) | | | | speakers, as well as descriptions of the function of those commands. Google considers these internal usage metrics for the grouping functionality highly confidential business information, the public disclosure of which would give competitors with same or similar products a competitive advantage by, for example, providing information regarding usage trends or during future business or licensing negotiations that may be affected by metrics and usage of Google's applications. Although the total weighted percentages of devices in groups was discussed during trial, the data was not discussed at this granular level. |
| 671-4 | Google's Response to Request for Information (Dkts. 649, 661) | Portions outlined in green boxes | Removed request to seal approximate usage information for grouping functionality. | Further removed request to seal total number of products and Google Home app installations Sonos accuses of infringing. | Page 2: Contains information regarding the amount of revenue IFTTT received as a result of sales on the Google Play store, the number of IFTTT downloads, and the number of worldwide financial transactions associated with the IFTTT app, the public disclosure of which would harm Google's competitive standing and create a risk of injury by providing competitors with access to information that Google does not have similar access to from competing app platforms, including regarding the type of data that Google maintains. In addition, Google has an interest in protecting the confidential financial and metrics data of apps written by third parties and distributed on the Google Play Store, and if such data is |

| | | | | | publicly disclosed, developers may be less inclined to work with Google in the future. . |
|---|---|---|---|---|---|
| 675-3 | Response to Sonos's Request for Clarification | Portions highlighted in green | None | None | Page 3: Contains information regarding terms of a confidential, non-binding term sheet between Google and Sonos exchanged during license negotiations between the parties, the public disclosure of which would harm Google's competitive standing and its ability to negotiate future licensing agreements by giving competitors access and insight into Google's highly confidential business thinking, asymmetrical information about Google's licensing strategies, and Google's prior licensing terms to other entities. |
| 675-4 | Exhibit 2 to the Declaration of James Judah in Support of Google's Response to Sonos's Request for Clarification | Entire Document | None | None | Document comprising letter from Sonos regarding confidential licensing negotiations between Google and Sonos. Google considers and treats this information as highly confidential business information, and does not disclose this information publicly.  The public disclosure of such licensing negotiations would harm Google's competitive standing and its ability to negotiate future licensing agreements by giving competitors access and insight into Google's highly confidential business thinking, asymmetrical information about Google's licensing strategies, and Google's prior licensing terms to other entities. |
| 675-5 | Exhibit 5 to the Declaration of James Judah in | Entire Document | None | None | Document comprising a confidential, non-binding term sheet between Google and Sonos exchanged during license |

| | | | | | |
|---|---|---|---|---|---|
| | Support of Google's Response to Sonos's Request for Clarification | | | | negotiations between the parties, the public disclosure of which would harm Google's competitive standing and its ability to negotiate future licensing agreements by giving competitors access and insight into Google's highly confidential business thinking, asymmetrical information about Google's licensing strategies, and Google's prior licensing terms to other entities. |
| 704-10 | Exhibit 10 to Declaration of Alaina Kwasizur in Support of Sonos's Proffer of Testimony | Entire Document | None | None | Document comprising letter from Sonos regarding confidential licensing negotiations between Google and Sonos. Google considers and treats this information as highly confidential business information, and does not disclose this information publicly.  The public disclosure of such licensing negotiations would harm Google's competitive standing and its ability to negotiate future licensing agreements by giving competitors access and insight into Google's highly confidential business thinking, asymmetrical information about Google's licensing strategies, and Google's prior licensing terms to other entities. |
| 704-13 | Exhibit 13 to Declaration of Alaina Kwasizur in Support of Sonos's Proffer of Testimony | Portions outlined in green boxes | Removed request to seal the entirety of document. | None | Page 19: Contains information regarding Google's patent licensing strategies and models from confidential, FRE 408 licensing negotiations between Google and Sonos, the public disclosure of which would harm Google's competitive standing and its ability to negotiate future licensing agreements by giving competitors access and insight into Google's highly |

| | | | | | confidential business thinking, asymmetrical information about Google's licensing strategies, and Google's prior licensing terms to other entities. |
|---|---|---|---|---|---|
| 715-3 | Google's Response to Sonos's Request re: No Longer Asserted Patents (Dkt. 699) and Proffer of Testimony of Alaina Kwasizur (Dkt. 715) | Portions highlighted in green | None | None | Page 8: Contains information regarding terms of a confidential, non-binding term sheet between Google and Sonos exchanged during license negotiations between the parties, the public disclosure of which harm Google's competitive standing and its ability to negotiate future licensing agreements by giving competitors access and insight into Google's highly confidential business thinking, asymmetrical information about Google's licensing strategies, and Google's prior licensing terms to other entities. |
| 715-4 | Exhibit 2 to Google's Response to Sonos's Request re: No Longer Asserted Patents (Dkt. 699) and Proffer of Testimony of Alaina Kwasizur (Dkt. 715) | Entire Document | None | None | Document reflecting Google's internal analysis of an intellectual property licensing model from a confidential, FRE 408 licensing negotiation presentation between Google and Sonos, the public disclosure of which would harm Google's competitive standing and its ability to negotiate future licensing agreements by giving competitors access and insight into Google's highly confidential business thinking, asymmetrical information about Google's licensing strategies, and Google's prior licensing terms to other entities. |
| 728-2 | Exhibit A to Caridis Declaration | Portions outlined in red boxes | Removed request to seal entirety of document. | None | PDX3.32: Contains analysis of indirect revenue from Google Pixel devices. Google considers and treats this information as |

| | | | | | highly confidential business information, and does not disclose this information publicly.  As Google is a publicly-traded company, this information should remain under seal because it was provided at a more granular level of detail that is not disclosed in Google's public SEC filings.  The public disclosure of such financial information would harm Google's competitive standing and create a risk of injury by providing Google's competitors with information that Google does not have similar access to about them, allowing the competitors to gain a competitive advantage in the market place, including by giving competitors an understanding of Google's product pricing and unit economics, and allow them to formulate specific pricing/discounting strategies for their own products.  In addition, knowledge of Google's highly confidential revenue information for these products regarding specific geographic areas would provide competitors with detailed information as to the success or failure of these products with customers in the U.S. and would give competitors better insights into how they should focus their own product strategies in order to better compete with Google in different geographic markets.  Disclosure would also reveal to suppliers, retailers, and other parties information that they could use to gain an advantage when negotiating |
|---|---|---|---|---|---|

| | | | | | |
|---|---|---|---|---|---|
| | | | | | contracts and agreements with Google.  In addition, this information was excluded from the record at trial as more prejudicial than probative and thus was neither discussed publicly nor relied upon by the jury in calculating damages. |
| 728-3 | Exhibit B to Caridis Declaration | Entire Document | None | None | Internal document comprising an analysis of indirect revenue from Google Pixel devices.  Google considers and treats this information as highly confidential business information, and does not disclose this information publicly.  The public disclosure of such financial information would harm Google's competitive standing and create a risk of injury by providing Google's competitors with information that Google does not have similar access to about them, allowing the competitors to gain a competitive advantage in the market place, including by giving competitors an understanding of Google's product pricing and unit economics, and allow them to formulate specific pricing/discounting strategies for their own products.  In addition, knowledge of Google's highly confidential revenue information for these products regarding specific geographic areas would provide competitors with detailed information as to the success or failure of these products with customers in the U.S. and would give competitors better insights into how they should focus their own product strategies in |

| | | | | | order to better compete with Google in different geographic markets.  Disclosure would also reveal to suppliers, retailers, and other parties information that they could use to gain an advantage when negotiating contracts and agreements with Google.  In addition, this information was excluded from the record at trial as more prejudicial than probative and thus was neither discussed publicly nor relied upon by the jury in calculating damages. |
|---|---|---|---|---|---|
| 826-3 | Ma Declaration in Support of Google's Opposition to Sonos's Permanent Injunction Motion | Portions outlined in red boxes | None | N/A | Paragraph 2: Contains quarterly sales data for the accused Google hardware products.<br><br>Paragraph 3: Contains total sales units of Google Home Mini, Google Nest Mini, and Chromecast devices sold during the damages period and the corresponding percentage that these units make up of the total number of accused products sold (from which the number of sales units could be derived).<br><br>Paragraph 4: Contains sales units of Chromecast devices sold during damages period and the corresponding percentage that these units make up of the total number of accused products sold (from which the number of sales units could be derived).<br><br>Paragraph 5: Contains sales units of Google Nest Hub, Google Nest Hub Max, and |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | Google Nest Audio devices sold during damages period and the corresponding percentage that these units make up of the number of non-Chromecast devices sold from which the number of sales units could be derived).<br><br>The public disclosure of this information would give competitors with same or similar products a competitive advantage by, for example, providing information regarding sales trends. Although the total number of units of all the accused hardware products sold between November 2019 and Q4 2022 was discussed during trial, the data was not discussed at this granular level on a quarterly basis or broken down into different product categories in this manner. |
| 826-4 | Exhibit 2 to Ma Declaration | Portions outlined in red boxes | None | N/A | Pages 95, 96, and Exhibit 13.1: Contain references to confidential internal surveys and conjoint studies regarding Google products that were not discussed during trial in open court.  Google considers and treats this information as highly confidential business information, and does not disclose this information publicly.  The public disclosure of such financial information would harm Google's competitive standing and create a risk of injury by providing Google's competitors with information that Google does not have similar access to about them and allowing the competitors to |

| | | | | | gain a competitive advantage in the market place, including by releasing same or similar products.  It would also provide Google's competitors with an unfair advantage by allowing them to benefit from Google's research and development to compete against Google. |
|---|---|---|---|---|---|