QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Charles K. Verhoeven (Bar No. 170151)
  charlesverhoeven@quinnemanuel.com
  Melissa Baily (Bar No. 237649)
  melissabaily@quinnemanuel.com
  Lindsay M. Cooper (Bar No. 287125)
  lindsaycooper@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

*Attorneys for GOOGLE LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| GOOGLE LLC,<br><br>                Plaintiff,<br><br>        vs.<br><br>SONOS, INC.,<br><br>                Defendant. | Case No. 3:20-cv-06754-WHA<br>Related to Case No. 3:21-cv-07559-WHA<br><br>**GOOGLE LLC'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL CLAIM CONSTRUCTION BRIEFING**<br><br>**FILED UNDER SEAL**<br><br>Date:       November 10, 2022<br>Time:       8:00 a.m.<br>Location: Courtroom 12, 19th Floor<br>Judge:     Hon. William Alsup |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on November 10, 2022 at 8:00 a.m. or as soon thereafter as this matter can be heard before the Honorable Judge William Alsup in Courtroom 12, Nineteenth Floor, United States District Court for the Northern District of California, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Google LLC ("Google") will and hereby does move for leave to file supplemental claim construction briefing.  Google's Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the proposed order submitted herewith, all exhibits and other papers on file in this action, such other evidence and argument as may be presented at or before the hearing on this motion, and all matters of which the Court may take judicial notice.

DATED:  October 6, 2022

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By:    _/s/ Charles K. Verhoeven_
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
Melissa Baily (Bar No. 237649)
melissabaily@quinnemanuel.com
Lindsay Cooper (Bar No. 287125)
lindsaycooper@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

*Attorneys for GOOGLE LLC*

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION.................................................................................................1

II.     STATEMENT OF THE ISSUES TO BE DECIDED ........................................................3

III.    STATEMENT OF RELEVANT FACTS .....................................................................3

        A.      Sonos Files The '033 Patent And Claims A Playback Queue Provided By A
                Third Party Application (*i.e.*, A "Remote Playback Queue")..................................3

        B.      Google Proposes That The Term "Remote Playback Queue" Be Construed
                As A "Playback Queue Provided By A Third-Party Application"..........................6

        C.      Sonos Files An Australian Counterpart In Which It Admits That A "Remote
                Playback Queue" Is A Queue Provided By A Third-Party Application..................8

        D.      Google Discovers Sonos's Blatant Admissions And Diligently Files This
                Motion Long Before This Court Is Set To Rule On Claim Construction In
                Connection With Summary Judgment For The '033 Patent................................10

IV.     ARGUMENT.................................................................................................11

        A.      Sonos's Admissions Regarding The Plain Meaning Of "Remote Playback
                Queue" Are New Evidence Warranting Supplemental Briefing..........................11

        B.      Supplemental Claim Construction Briefing Is Necessary And Proper To
                Resolve The Parties' Dispute Over Claim Scope .................................................15

V.      CONCLUSION.................................................................................................16

GOOGLE LLC'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL
CLAIM CONSTRUCTION BRIEFING

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Actelion Pharms., Ltd. v. Sun Pharm. Indus., Inc.*,
No. 317CV5015PGSDEA, 2019 WL 653149 (D.N.J. Feb. 15, 2019) ...............................14, 15

*Apple Inc. v. Motorola, Inc.*,
757 F.3d 1286 (Fed. Cir. 2014)............................................................................................ 13

*Ballard Med. Prod. v. Allegiance Healthcare Corp.*,
268 F.3d 1352 (Fed. Cir. 2001)........................................................................................15, 16

*Baxter Healthcare Corp. v. HQ Specialty Pharma Corp.*,
133 F. Supp. 3d 692 (D.N.J. 2015) ...............................................................................13, 14, 15

*Every Penny Counts, Inc. v. Am. Express Co.*,
563 F.3d 1378 (Fed. Cir. 2009)............................................................................................ 15

*Gillette Co. v. Energizer Holdings, Inc.*,
405 F.3d 1367 (Fed. Cir. 2005)............................................................................................ 14

*Kyowa Hakka Bio, Co., Ltd v. Ajinomoto Co.*,
No. CV 17-313, 2020 WL 3403207 (D. Del. June 19, 2020).....................................13, 14, 15

*Kyowa Hakko Bio, Co., Ltd v. Ajinomoto Co.*,
No. 17-CV-00313-MSG, 2019 WL 5061066 (D. Del. Oct. 9, 2019)..................................... 14

*MLC Intellectual Prop., LLC v. Micron Tech, Inc.*,
No. 14-CV-03657-SI, 2018 WL 4616255 (N.D. Cal. Sept. 26, 2018)................................... 12

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
521 F.3d 1351 (Fed. Cir. 2008)............................................................................................ 15

*Power Integrations, Inc. v. ON Semiconductor Corp., et al.*,
No. 5:16-cv-06371, Dkts. 181, 185 (N.D. Cal.) ................................................................... 12

*Siemens Gamesa Renewable Energy A/S v. Gen. Elec. Co.*,
No. CV 21-10216-WGY, 2021 WL 5040409 (D. Mass. Oct. 28, 2021)................................ 14

*Uniloc 2017, LLC v. HTC America, Inc.*,
No. 2:18-cv-1732-RSM, Dkts. 57, 64 (W.D. Wash.) ........................................................... 12

*Williamson v. Citrix Online, LLC*,
792 F.3d 1339 (Fed. Cir. 2015)............................................................................................ 13

I.    **INTRODUCTION**

Google LLC ("Google") respectfully requests leave to file supplemental claim construction briefing regarding the term "remote playback queue" in U.S. Patent No. 10,779,033 ("'033 patent") within fourteen days of an order granting this Motion. Sonos, Inc. ("Sonos") has recently made a number of critical admissions regarding the meaning of the term "remote playback queue" during the prosecution of an Australian counterpart patent application to the '033 patent. Those admissions squarely foreclose a finding of infringement of the '033 patent in this case. Sonos had not yet made those admissions when Google submitted its original claim construction briefing. Accordingly, Google seeks leave to file a short supplemental claim construction brief demonstrating that the term "remote playback queue" means a "playback queue provided by a third-party application," in accordance with Sonos's own admissions.

The '033 patent is directed to a "computing device" (*e.g.*, a mobile phone) capable of transferring playback of a "remote playback queue" to one or more playback devices of a media playback system. During the claim construction proceedings that occurred in Texas prior to this case being transferred, Google proposed that "remote playback queue" be construed to mean a playback queue "provided by a third-party application." Sonos argued no construction was necessary at that time and that the geographic location of the playback queue determines whether it is a "remote playback queue." Ultimately, the Texas court provided a construction of plain meaning and instructed the parties that they may argue at summary judgment that their respective constructions are the plain meaning in view of the specification.

But just months ago, Sonos made a series of critical admissions regarding the plain and ordinary meaning of the term "remote playback queue" during the prosecution of an Australian counterpart to the '033 patent that includes similar claims as the '033 patent, has the same inventors, and features a virtually identical specification. Sonos's admissions confirm that Google's proposed construction of "remote playback queue" should be adopted. Specifically, Sonos admitted that the plain meaning of "remote" in view of the intrinsic record is "a system unconnected or with little relationship to the initial system," and that a "remote playback queue" is a playback queue "the user is editing/managing in the third party application." Sonos also admitted that the geographical

GOOGLE LLC'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL
CLAIM CONSTRUCTION BRIEFING

location of the playback queue (*e.g.*, in the cloud) is not determinative of whether it is a "remote" playback queue. Sonos's admissions were made across multiple filings and Sonos supported them with citations to the intrinsic record that appears in both the '033 patent and the Australian counterpart, as well as statements regarding the understanding of persons of skill in the art. For example:

- "**The Report finds that specification does not provide a clear and complete enough disclosure of . . . 'a remote playback queue' . . . The Report appears to make this assertion on the basis that the term 'remote' refers to any entity in a different geographic location**, whereas local refers to an entity in the same geographic location. **The Applicant asserts with respect that the Report has erred in construction of the Terms**."

- "In terms of [a] playback system, **[a] person skilled in the art would understand the term 'remote' to mean a system unconnected or with little relationship to an initial system**."

- "The **'remote playback queue' referred to in claim 1 corresponds to the 'queue that the user is editing/managing in the third party application' as described at [89] of the application as filed**. . . . Thus, **the geographical location** of the mobile device running the third party application **is not determinative as to whether the third party application is remote with respect to the local playback queue**."

- "It is therefore submitted that, **to a person skilled in the art, the meaning of the remote playback queue would clearly be the playback queue that the user is managing in the third party application**."

In Google's accused YouTube system, however, the alleged "remote playback queue" is indisputably ***not*** provided by a third-party application, and is certainly not "in a third party application." As a result, in this case, Sonos has been forced to advance an interpretation of "remote playback queue" that is wholly inconsistent with the '033 patent and the clear admissions Sonos made to the Australian patent office. Specifically, Sonos proposes in this litigation that the geographic location of the playback queue (in the cloud) is determinative of whether it is a "remote playback queue" and that no third-party application is necessary.

Sonos's admissions to the Australian patent office are new evidence that warrant supplemental claim construction briefing. Courts routinely hold a patentee to the admissions it made to a foreign patent office regarding the meaning of claim terms when construing claims. Here, Sonos's admissions regarding the meaning of a "remote playback queue" are highly relevant to (and likely dispositive of) the issue of non-infringement. Google therefore requests limited supplemental

1  briefing to address Sonos's admissions abroad and their impact on the construction of "remote
2  playback queue."

3      Supplemental claim construction briefing is also warranted because the Court has yet to
4  conduct claim construction for the '033 patent, and the parties' differing interpretations of "remote
5  playback queue" presents a fundamental claim construction dispute regarding the scope of a claim
6  that should be resolved by the Court. Sonos has long been aware of Google's position that a "remote
7  playback queue" is a playback queue provided by a third-party application and therefore Google's
8  intention to argue that its products lack the claimed third-party queue. Because summary judgment
9  motions relating to the '033 patent are not due for another four months, and this Court addresses
10  claim construction at summary judgment, the parties have ample time to complete supplemental
11  claim construction briefs on this limited issue.

## II.    STATEMENT OF THE ISSUES TO BE DECIDED

13      Whether the Court should grant leave to file supplemental claim construction briefing
14  addressing the term "remote playback queue" in the '033 patent.

## III.    STATEMENT OF RELEVANT FACTS

### A.    Sonos Files The '033 Patent And Claims A Playback Queue Provided By A Third Party Application (*i.e.*, A "Remote Playback Queue")

18      On December 30, 2011, Sonos filed U.S. Patent Application No. 13/341,237 ("'237
19  Application"). Dkt. 1-3 at 2 (filed 63, "Related U.S. Application Data"). The '237 Application
20  names Arthur Coburn and Joni Hoadley as inventors and is entitled "[s]ystems and methods for
21  networked music playback." Sonos has filed many continuation applications from the '237
22  Application, including the '033 patent asserted in this case. *Id.* at 3.

23      The first continuations that Sonos filed—including U.S. Patent No. 9,967,615 ("'615
24  patent") that this Court recently found was invalid and not infringed—recited a "local playback
25  queue" on a playback device of a media playback system. *See* Dkt. 316. Years later, however,
26  beginning with the '033 patent that is the subject of this Motion, Sonos began to draft claims directed
27  at a "remote playback queue" from a "cloud-based media service." The phrase "remote playback
28  queue" does not appear in the specification of the '237 Application. It was first added in November

2019 during prosecution of the '033 patent, eight years after the '237 Application was filed.  *See* Dkt. 80-5 at 4-5 ('033 prosecution history, 11/1/2019 amendment adding notion of "remote playback queue").

The intrinsic evidence demands that the term "remote playback queue" refer to a queue provided by a third-party application.  Indeed, the '033 patent discloses a local playback system (*e.g.*, a Sonos music system).  Dkt. 1-3 at 4:61-5:19.  The patent provides various embodiments by which a "third party application" (*e.g.*, "Pandora, Rhapsody, Spotify, and so on") is used to play media from the third-party media service on the local playback system.  *See, e.g.*, *id.* at 12:27-13:54 (embodiment of Figure 7 allows a "third party application" to "utilize an application programming interface (API) to pass music to the household playback system without tight coupling to that household playback system"), 13:57-14:25 (embodiment of Figure 8 "a third-party application acts as a 'virtual line-in' to the local playback system"), 14:26-15:42 (embodiments of Figures 9 and 10 allow for playback on a local playback system when a "link or other reference [that] is embedded in a third-party application (*e.g.*, Facebook™ or Twitter)" is selected), 15:43-16:38 (embodiment of Figure 11 may use a "throw it over the wall" approach in which the "third party application . . . tells the local playback system what to play").  Consistent with these teachings, the specification uses the term "queue" ten times, consistently describing two types of queues: a "local playback queue" of the local playback system and a "queue . . . in [a] third party application."[1]  These disclosures are reproduced below:

- "[T]he third party application not only tells the local playback system what to play, but also maintains two-way communication with the local playback (e.g., Sonos™) system.  **Two-way communication helps enable features such as keeping a local playback <u>queue</u> synchronized with a <u>queue</u> that the user is editing/managing in the third party application**; allow the third party application to know what is currently playing on the local playback system; allow integrated transport control between the third party application and the local playback system; and so on."

- "**Certain embodiments provide <u>queue</u> management to allow a third party application to control a local playback queue**.  **That is, the local playback system has a <u>queue</u>, but the third party application allows users to add, delete and so**

---

[1]  The application also teaches that certain embodiments may keep the local and third-party queue synchronized via a "shared queue."  *See* Dkt. 1-3.

on from the <u>queue</u>, for example."

- "**Certain embodiments allow a third party application to override a local playback <u>queue</u> with its own application-specific <u>queue</u>.** The local playback system periodically fetches a short list of tracks to play next. The list of tracks to play is determined by the third-party application, for example. **In certain embodiments, a shared <u>queue</u> is provided between the local playback system and the third party application** to keep the local system and application synchronized."

- "Certain embodiments facilitate control of a local playback system from outside a household or other location at which the local playback network is configured. For example, **a user can <u>queue</u> up music while away from his or her house. The application can facilitate setup and/or configuration. For example, a third party application may ask the user to enter a Sonos customer email address and password**. The application can then make a request to a Sonos server in the cloud to determine the zone groups on which music can be played."

*Id.* at 16:16-27, 16:49-58, 16:59-67, 17:17-16 (emphasis added). Clearly, the "remote playback queue" recited in the '033 patent cannot refer to the "local playback queue" because the patentee chose to distinguish between a "local" and a "remote" queue. Thus, to the extent the term does find support in the specification, it must refer to the queue provided by a third-party application.[2]

Indeed, Sonos has represented to this Court that the '033 patent is one of its "Direct Control" patents—*not* a "Cloud Queue" patent—when arguing that the parties' collaboration agreement, which provides Google rights in the accused cloud queue technology is not applicable:

> **The '033 and '615 patents are, and have consistently been, referred to by Sonos as "direct control" patents**. *Sonos -7559 Case*, Dkt. 60 at 2 ("Sonos's '615 and '033 Patents (the "Direct Control Patents") . . ."); *see also* Richter Decl., Ex. C (Sonos IP License Model shared with Google referring separately to both "Cloud Queue" and "Direct Control"). **The phrase "cloud queue" does not appear anywhere in the 2011 specification, the claims of the '615 or '033 patents, in Sonos's infringement complaint in the Texas Action, or in Sonos's infringement contentions.** Sonos has other patents, such as U.S. Patent No. 9,363,255, that it refers to as "cloud queue" patents, as evidenced by the use of the term "cloud queue" right in the title of those patents.

Dkt. 81 at 13-14; *see also* Dkt. 80 at 7-8 (describing collaboration agreement and Google's rights in the same). Sonos's documents and inventor testimony confirm that the alleged invention of Direct Control (which Sonos previously called "Play to Sonos") was the ability to play back a queue provided by a third-party application (*e.g.*, a Spotify or Rhapsody application), "without the user

---

[2]  The only other type of queue referred to in the patent is a "shared queue" that is provided to keep the playback queue of the third-party application and local playback system synchronized.

having to go through the Sonos app." Ex. 1 at 101:3-7 ("Q. Okay. What is Play to Sonos? A. I would say Play to Sonos is an earlier term that we used which pretty – pretty much corresponds to the 'DirectControl' term that I've been using."); Ex. 2 at SONOS-SVG2-00180137 ("What is Play to Sonos? Play to Sonos is a solution that would embed basic functionality in a 3rd party app (such as Spotify's iPhone app), giving customers a way to play the music from that app on Sonos."); Ex. 3 at 167:22-168:12 ("play to Sonos is the general feature whereby a – a third-party music app; i.e., an app – a third party meaning not an app written by Sonos – could transfer music playback from playing locally on the phone, or whatever device the app was running on, and transfer the playback to one or more Sonos speakers without the user having to go through the Sonos app."); Ex. 4 at 111:15-18 ("Q. And could you remind me what Play-to-Sonos was? What did it involve? A. Play-to-Sonos was the ability to play music using a non-Sonos app on the Sonos system.").[3] As Tad Coburn, an inventor of the '033 patent and Sonos's corporate representative, admitted at deposition, the ability to play a queue provided by a "third-party" application is not merely an embodiment—it is the "whole patent":

> Q. Did you do anything to figure out what Sonos' view is on the earliest known use of the alleged inventions claimed in the patents-in-suit?
>
> A. So as I mentioned, Sonos itself did not reduce the **-- the '033 patent to -- into practice because it required a partner to -- the – the whole patent was around a third-party app playing to Sonos.** So we never -- we, Sonos, never actually reduced it to practice in the sense of an actual implementation that worked.

Ex. 3 at 173:7-17. The "remote playback queue" is intended to capture this ability to play a queue provided by a third-party application.

### B.    Google Proposes That The Term "Remote Playback Queue" Be Construed As A "Playback Queue Provided By A Third-Party Application"

Sonos filed the related action to this case in the Western District of Texas, and that case was later transferred to this Court. *Sonos, Inc. v. Google LLC*, Case No. 6:20-cv-00881-ADA, Dkt. 1 (W.D. Tex. Sept. 29, 2020) ("Transferred Action").

---

[3]  All numbered exhibits cited in this brief are attached to the Declaration of Nima Hefazi filed in support of this brief and concurrently herewith.

While the Transferred Action was pending in Texas, the parties participated in claim construction before the Texas court. In April through June of 2021, the parties submitted claim construction briefing in which Google argued that the term "remote playback queue" means a "remote playback queue provided by a third-party application," while Sonos argued that no construction was necessary. *See* Transferred Action, Dkts. 60 at 32-34; 64 at 29-31; 66 at 17-19. Before the Transferred Action was transferred to this Court, the Texas court conducted a Markman hearing and stated on the record that the "remote playback queue" should be given its plain meaning in view of the intrinsic record. *See* Ex. 5. The Texas court explained that where it construes a term as plain meaning, it was not "saying that the proposed construction was incorrect and rejecting it." *Id.* at 6:14-17. Rather, the court explained that for terms it construed as plain meaning the parties are free to "assert[] at a later time, for example, in a summary judgment motion or pretrial proceeding, that the plain and ordinary meaning of these terms as understood in the context of the patents-in-suit is the construction" that was proposed by the party. *Id.* at 6:1-10:21.[4]

After the Transferred Action was transferred to the Northern District of California, the parties submitted infringement and invalidity contentions pursuant to the Court's Case Management Order and the Patent Local Rules in October and December of 2021, respectively. Hefazi Declaration ("Hefazi Decl.") ¶¶ 2, 3; Dkt. 67 ¶ 22. The parties thereafter filed a joint claim construction statement on February 4, 2022. Dkt. 126. In view of Sonos's October 2021 infringement contentions—which provided additional details and source code citations regarding Sonos's infringement theories that were not present at the time the parties submitted claim terms for construction in the Transferred Action—Google proposed two terms for construction: "playback device" and "resource locators." *See* Dkts. 184; 200; 202. Neither of the terms that Google proposed for construction were the subject of the claim construction proceedings in the Transferred Action. Sonos proposed three additional terms for construction: (1) "playback device," (2) "zone player,"

---

[4] Sonos has characterized the Texas court's claim construction rulings as "preliminary" and argued that they are not binding on this Court. Dkt. 184 at 6-8. Google, in contrast, has explained that the rulings, including the instruction to re-raise disputes over the plain meaning of a term at summary judgment, are law of the case that may be revisited when the parties present new evidence (such as the Australian prosecution statement at issue here). Dkt. 200 at 5-9.

and (3) "media particular playback system." Dkt. 126. Because the term "remote playback queue" had already been submitted in Western District of Texas, Google did not propose it for construction. *Id.* at 3-4. Instead, as instructed by the Texas court, Google informed Sonos that it would argue that at summary judgment and/or trial that its products do not infringe because the plain meaning of "remote playback queue" is a queue provided by a third-party application. Ex. 6 at 48:14-19 ("The only written description support for this limitation in the '033 patent is for a remote playback queue managed by a third-party. Thus, a person of ordinary skill in the art would understand that the plain meaning of a 'remote playback queue provided by a cloud-based computing system associated with a cloud-based media service' in the context of the claims and specification requires a third-party playback queue.").

The parties completed claim construction briefing on April 11, 2022. *See* Dkt. 202. On August 2, 2022, the Court construed the term "playback queue" as "[a] list of multimedia content selected for playback" as part of its order granting Google's motion for summary judgment. Dkt. 316 at 5. The Court has not construed any other term from the '033 patent in this case, including the term "remote playback queue." Thus, the dispute as to whether the plain meaning of a "remote" playback queue requires a playback queue provided by a third-party application remains a live issue.

**C.    Sonos Files An Australian Counterpart In Which It Admits That A "Remote Playback Queue" Is A Queue Provided By A Third-Party Application**

On September 25, 2020, Sonos filed Australian Patent Application No. 2020239784 ("'784 Application"). *See* Ex. 7. The '784 Application is a foreign counterpart of the '033 patent. *Id.* at 4. The '033 patent and '784 Application recite similar claims. Most notably, both the '033 patent and the '784 Application recite a "remote playback queue" provided by "a cloud-based media service." *Compare* Ex. 7 at 34 *with* Dkt. 1-3 at 17:40-42. Both applications also share the same title ("System and methods for networked music playback"), claim priority to the same '237 Application that was filed on December 30, 2011, and name the same inventors (Arthur Coburn and Joni Hoadley). *Compare* Ex. 7 at 2, 4 *with* Dkt. 1-3 at 2-3. Both applications also share virtually

the same specifications and figures.[5]  A redline comparing the two specifications is attached as Exhibit 8.

On October 14, 2021, the Examiner issued a report finding that "the specification, as filed, fails to disclose: 'a remote playback queue.'"  Ex. 9 at 2; *see also id.* (explaining that the specification discloses "a 'local playback queue', but there is no reference to a remote playback queue in the filed specification.").  The Examiner thus rejected the claims because they did not "enable the person skilled in the art to perform the invention over the whole scope of the claims without undue burden or the need for further invention." *Id.*

On April 26, 2022 and June 27, 2022, Sonos submitted responses to the Examiner's rejection of the claims.  Exs. 10, 11.  Sonos argued that the Examiner had misconstrued the term "remote" playback queue to mean a playback queue in a different geographic location from the playback system, and that when the term "remote playback queue" is properly construed as a playback queue provided by a third-party application, "the specification provides sufficient information to implement the invention." Ex. 11 at 2.

Specifically, Sonos stated that the Examiner erred by construing the term "remote" as a reference to a playback queue in a "a different geographic location" from the playback system:

> The Report finds that specification does not provide a clear and complete enough disclosure of the claimed invention . . . **The Report appears to make this assertion on the basis that the term "remote" refers to any entity in a different geographic location, whereas local refers to an entity in the same geographic location.  The Applicant asserts with respect that the Report has erred** in construction of the terms.

*Id.* at 1 (emphasis added).  Sonos claimed that a person of skill in the art would understand that the plain meaning of a "remote" playback queue in the context of the specification has nothing to do with the "geographic location" of the playback queue.  *Id.* at 2 (Sonos admitting that interpreting "remote" to refer to a queue in a different geographic location "applie[s] an over-meticulous verbal

---

[5]  There are three trivial differences between the applications.  First, the '784 Application adds paragraph [0001] which identifies its priority applications.  Second, the '784 Application adds paragraphs [0003] to [0010] in which it recites the proposed claims as "aspects of the present disclosure."  Third, the '784 Application adds paragraph [0097] in which it recites the original claims that were included in the '237 Application (which is the parent application from which both the '784 Application and '033 patent descend).

analysis" that contradicts the intrinsic evidence and common knowledge of persons of skill in the art).

Sonos also clearly and repeatedly admitted that the plain and ordinary meaning of "remote" in the context of the specification is "a queue that the user is editing/managing in a third-party application":

- "The **'remote playback [queue]' relates to a queue that the user is editing/managing in a third party application** (see application as filed at [0082]). It is submitted that this would be clear to a person skilled in the art in the context of both the art and the specification as a whole." Ex. 10 at 1.

- "In terms of [a] playback system, **[a] person skilled in the art would understand the term 'remote' to mean a system unconnected or with little relationship to an initial system.**" Ex. 10 at 2.

- "**The 'remote playback queue' referred to in claim 1 corresponds to the 'queue that the user is editing/managing in the third party application'** as described at [89] of the application as filed. . . . Thus, **the geographic location of the mobile device running the third party application is not determinative** as to whether the third party application is remote with respect to the local playback system." Ex. 11 at 2.

- "It is therefore submitted that, to a person skilled in the art, **the meaning of the remote playback queue would clearly be the playback queue that the user is managing in the third party application**." Ex. 11 at 2.

Sonos supported its statements regarding the plain meaning of a "remote playback queue" with citations to written description and figures in the '784 Application that appear verbatim in the '033 patent, as well as statements regarding the understanding of persons of skill in the art.[6]

**D.** **Google Discovers Sonos's Blatant Admissions And Diligently Files This Motion Long Before This Court Is Set To Rule On Claim Construction In Connection With Summary Judgment For The '033 Patent**

Google became aware of Sonos's admissions to the Australian patent office only through its own diligence after the parties submitted their claim construction disclosures and briefs in this case. Hefazi Decl. ¶ 4. Indeed, although Google served requests for production in this case seeking the prosecution histories of foreign counterpart patents and applications, Sonos failed to make Google

---

[6] For instance, Sonos explained that the following disclosures in the '784 Application demonstrate the "remote playback queue" is a "playback queue that the user is managing in the third party application": ¶¶ 70, 84, 87, 89-90, 93, Fig. 7. *See* Exs. 7, 10, 11. Each of these disclosures appears verbatim in the '033 patent: 12:41-64, 15:34-43, 15:64-16:4, 16:16-38, 16:59-67, Fig. 7 (respectively). *See* Dkt. 1-3.

aware of its admissions during discovery and failed to produce prosecution histories for the '784 Application.  *See* Exs. 12 at 2, 6, 7; 13 at 2, 9.

After learning of Sonos's admissions, Google asked Sonos to stipulate to the construction of "remote playback queue" that it offered in the '784 Application, namely "a playback queue that the user is managing in a third-party application."  *See* Ex. 14.  Sonos declined.  *See id.*  The parties subsequently telephonically met and conferred about stipulating to supplemental claim construction briefing on September 21, 2022.  *See* Hefazi Decl. ¶ 5.  Sonos indicated it would oppose Google's request for supplemental claim construction, necessitating this Motion.  *Id.*

This Court has not conducted any claim construction hearing on the '033 patent to date. Rather, the Court has indicated it will defer claim construction issues until summary judgment, which is still four months away on January 26, 2023.  Dkt. 67 ¶ 12.  Fact discovery does not close until November 30, 2022, expert discovery does not close until January 4, 2023, and trial is set for May 10, 2023.  *Id.* ¶¶ 5, 12, 14.  Accordingly, there is ample time for supplemental claim construction briefing.

## IV.   ARGUMENT

The Court should grant Google's request for supplemental claim construction for at least two reasons.  First, Sonos made crucial admissions that the plain meaning of the term "remote playback queue" does not depend on the geographic location of the playback queue, and instead refers to a playback queue provided by a third-party application—after the parties completed claim construction briefing in this case.  Google should have the opportunity to account for these admissions in its claim construction analysis, which are directly at odds with the interpretation of "remote playback queue" that Sonos is advancing in this litigation.  Second, it is necessary and proper for the Court to resolve the parties' dispute regarding the scope of the term "remote playback queue" at this stage of the case, especially where, as here, the Court performs claim construction along with summary judgment.

**A.   Sonos's Admissions Regarding The Plain Meaning Of "Remote Playback Queue" Are New Evidence Warranting Supplemental Briefing**

Courts frequently engage in supplemental claim construction when changes in the record arise. *See, e.g.*, *MLC Intellectual Prop., LLC v. Micron Tech, Inc.*, No. 14-CV-03657-SI, 2018 WL 4616255 (N.D. Cal. Sept. 26, 2018) (granting supplemental claim construction in light of statements the plaintiff made during *ex parte* reexamination); *Power Integrations, Inc. v. ON Semiconductor Corp., et al.*, No. 5:16-cv-06371, Dkts. 181, 185 (N.D. Cal.) (granting supplemental claim construction where plaintiff filed a Patent Owner Response in an *inter partes* review of an asserted patent after claim construction briefing had closed); *Uniloc 2017, LLC v. HTC America, Inc.*, No. 2:18-cv-1732-RSM, Dkts. 57, 64 (W.D. Wash.) (same).

Here, the parties engaged in claim construction prior to this case being transferred from Texas. Google proposed that the court construe the term "remote playback queue" as a "remote playback queue provided by a third-party application." Transferred Action, Dkt. 64 at 29. Sonos, in contrast, argued that the geographic location of the queue (*e.g.*, in the cloud) was determinative of whether the queue was "remote." Transferred Action, Dkts. 60 at 32-34; 66 at 17-19. The Texas court ultimately adopted a plain meaning construction and explained that this was intended to allow the parties to argue that their construction is the plain meaning at summary judgment or at pre-trial proceedings. Ex. 5 at 6:1-10:21. Google, therefore, provided Sonos with notice that it would argue its accused products do not infringe under the plain meaning of "remote playback queue" because the accused playback queue is not part of a third-party application, and the mere fact that the queue is in the cloud does not mean it is a "remote" playback queue. Ex. 6 at 48:13-19 (Google's non-infringement contentions stating that Google does not infringe because "a person of ordinary skill in the art would understand that the plain meaning of a 'remote playback queue provided by a cloud-based computing system associated with a cloud-based media service' in the context of the claims and specification requires a third-party playback queue.").

Since claim construction, new evidence has come to light that is highly relevant to the parties' claim construction dispute. Specifically, Sonos has made admissions that contradict the arguments it made at claim construction and unambiguously confirm that Google's proposed construction is the plain meaning of "remote playback queue." For example, in prosecuting the '784 Application—which is an Australian counterpart of the '033 patent that also recites a "remote

playback queue" and includes the same disclosures, inventors, and title as the '033 patent—Sonos repeatedly asserted (1) that the plain meaning of "remote playback queue" is a playback queue provided by a third-party application, and (2) that the geographic location of the queue (*e.g.*, in the cloud) does not determine whether or not the queue is "remote." *See* Section III.B. Yet, Sonos continues to advance an infringement argument here that contradicts those assertions. Sonos's assertions are new evidence that constitute good cause for granting supplemental claim construction briefing.

During the parties' meet-and-confer, Sonos argued that its admissions were inconsequential because "interactions with a foreign patent office are hardly determinative of how a district court should construe a claim term in a United States patent." Ex. 14. However, the Federal Circuit has instructed that courts ***should*** consider statements made before a foreign patent examiner during claim construction if the statements are relevant and not related to unique aspects of foreign patent law. *See, e.g., Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1312-13 (Fed. Cir. 2014), *overruled on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015) ("This court has also considered statements made before a foreign patent office when construing claims if they are relevant and not related to unique aspects of foreign patent law."); *Kyowa Hakka Bio, Co., Ltd v. Ajinomoto Co.*, No. CV 17-313, 2020 WL 3403207, at *9 (D. Del. June 19, 2020) (The Federal Circuit "has cautioned that [statements made before foreign patent offices] may be irrelevant to claim construction if the statements were made in response to patentability requirements unique to foreign law. Nonetheless, the Federal Circuit has routinely approved reliance upon statements in foreign prosecutions where they constituted blatant admissions directed at the relevant art.") (cleaned up); *Baxter Healthcare Corp. v. HQ Specialty Pharma Corp.*, 133 F. Supp. 3d 692, 703 (D.N.J. 2015) ("[T]he Federal Circuit has routinely approved reliance upon statements in foreign prosecutions where they constituted blatant admissions directed at the relevant art, and where the statements proved otherwise consistent with the claims and the invention described in the specification at issue.") (cleaned up). Accordingly, courts routinely find that a patentee should be held to admissions it made to a foreign patent office regarding the meaning of claim terms when construing claim terms. *See, e.g., Gillette Co. v. Energizer Holdings, Inc.*, 405 F.3d 1367, 1374

-13-

1  (Fed. Cir. 2005) (finding a "blatant admission by [the] same defendant before the" European Patent

2  Office ("EPO") to "clearly support[]" the court's claim construction); *Siemens Gamesa Renewable*

3  *Energy A/S v. Gen. Elec. Co.*, No. CV 21-10216-WGY, 2021 WL 5040409, at *5 (D. Mass. Oct.

4  28, 2021) (considering representations made by the plaintiff to the EPO because "even where

5  prosecution history statements do not rise to the level of unmistakable disavowal, they do inform

6  the claim construction"); *Kyowa Hakko Bio, Co., Ltd v. Ajinomoto Co.*, No. 17-CV-00313-MSG,

7  2019 WL 5061066, at *8 (D. Del. Oct. 9, 2019), *report and recommendation adopted sub nom.*

8  *Kyowa Hakka Bio, Co., Ltd v. Ajinomoto Co.*, No. CV 17-313, 2020 WL 3403207, at *8 (D. Del.

9  June 19, 2020) (finding that the plaintiff's "two diametrically opposed positions about the meaning

10 of the same phrase" before the EPO and the court "strongly suggest[] that the claim is indefinite");

11 *Baxter Healthcare*, 133 F. Supp. 3d at 704 (holding that the plaintiff's "statements to the EPO lend

12 further support for the construction supported by the specification" because its remarks "could not

13 be more sweeping and clear").

14        Here, Sonos's statements to the Australian patent examiner are both highly relevant to the

15 construction of "remote playback queue" and unrelated to unique aspects of Australian patent law.

16 Sonos's statements to the Australian patent examiner are "blatant admissions" that a "remote

17 playback queue" is "a playback queue that the user is managing in a third-party application," which

18 clearly support the claim construction advanced by Google and opposed by Sonos in the Western

19 District of Texas. If Google's construction is adopted, the accused products cannot infringe the '033

20 patent because they do not use a playback queue provided by a third-party. *See infra* IV.B. And

21 since Sonos's statements regarding the scope of the term "remote playback queue" were "a response

22 to a technical question regarding what a specific term meant," they do "not involve any issue unique

23 to foreign patent law[.]" *Kyowa Hakka Bio*, 2020 WL 3403207, at *9; *see also Actelion Pharms.,*

24 *Ltd. v. Sun Pharm. Indus., Inc.*, No. 317CV5015PGSDEA, 2019 WL 653149, at *9 (D.N.J. Feb. 15,

25 2019) ("[T]he statements made by [plaintiff's] counsel in prosecuting the EU application were

26 clearly made to distinguish the prior art (Flolan) and therefore are both relevant and not related to

27 unique aspects of foreign patent law.") (cleaned up); *Baxter Healthcare*, 133 F. Supp. 3d at 703-04

28

(finding that statements regarding claim scope made by plaintiff's agent to the EPO did not "arise in response to patentability requirements unique to European law").

**B.**    **Supplemental Claim Construction Briefing Is Necessary And Proper To Resolve The Parties' Dispute Over Claim Scope**

The Court should also grant Google's Motion because it is proper and even required for the Court to resolve a dispute over the scope of a patent claim. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) ("When the parties present a fundamental dispute regarding the scope of a claim, it is the court's duty to resolve it."); *Every Penny Counts, Inc. v. Am. Express Co.*, 563 F.3d 1378, 1383 (Fed. Cir. 2009) ("Again, the court's obligation is to ensure that questions of the scope of the patent claims are not left to the jury. In order to fulfill this obligation, the court must see to it that disputes concerning the scope of the patent claims are fully resolved.") (internal citation omitted). For example, in *O2 Micro*, the parties agreed that the term "only if" had a common meaning, but disagreed as to the scope of the term. *O2 Micro*, 521 F.3d at 1361. The Federal Circuit held that the district court erred by failing to adjudicate the disputed scope because it resulted in the parties improperly presenting their claim construction arguments to the jury. *Id.* at 1361.

Here, the Court has not conducted a claim construction hearing and has not issued any claim construction ruling for the '033 patent. Instead, the Court has indicated that it will conduct claim construction in connection with the parties' summary judgment motions, which is still nearly four months away. Sonos's statements to the Australian patent office are new evidence that was not available at the time the parties submitted claim construction briefing, and those statements should preclude Sonos from arguing to a jury that the "remote playback queue" is anything other than a playback queue provided by a third party application. Indeed, the Court, not the jury, must resolve the parties' fundamental dispute over the scope of the term "remote playback queue." *Ballard Med. Prod. v. Allegiance Healthcare Corp.*, 268 F.3d 1352, 1358 (Fed. Cir. 2001) ("claim construction is the province of the court, not a jury"). Supplemental claim construction briefing will allow the Court to address this dispute at the upcoming summary judgment hearing.

1    And the resolution of this dispute will be dispositive as to whether Google infringes the '033

2    patent because it is undisputed that the accused playback queue is not provided by a third-party

3    application.

4    Sonos also would not be prejudiced by supplemental claim construction briefing. Sonos has

5    long been aware that Google contends the plain meaning of "remote playback queue" is a playback

6    queue provided by a third-party application and that Google would move for non-infringement on

7    this ground. Sonos has also been aware that this Court addresses claim construction at summary

8    judgment. Dkt. 67 ¶ 21 ("[p]ostponing claim construction until after the judge has the benefit of the

9    trial evidence or at least the benefit of the summary judgment record is more likely to avoid a mistake

10   in claim construction"). Here, the term "remote playback queue" exists only in the '033 patent. The

11   '033 patent was not part of the patent showdown trial and the deadline for summary judgment

12   motions relating to the '033 patent is four months away. The parties will have ample time to

13   complete supplemental briefs on this limited issue in advance of summary judgment.

14   **V.    CONCLUSION**

15   For these reasons, Google respectfully requests leave to file supplemental claim construction

16   briefing directed at the term "remote playback queue" within fourteen days of this Court's Order.

17

18   DATED: October 6, 2022                    Respectfully submitted,

19                                             QUINN EMANUEL URQUHART &
20                                             SULLIVAN, LLP

21                                             By _____/s/ Charles K. Verhoeven_____
22                                                Charles K. Verhoeven
                                                  Melissa Baily
23                                                Lindsay Cooper
                                                  *Attorneys for GOOGLE LLC*

24

25

26

27

28

GOOGLE LLC'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL
CLAIM CONSTRUCTION BRIEFING

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure and Local Rule 5-1, I hereby certify that, on October 6, 2022, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system and email.

/s/ Charles K. Verhoeven
Charles K. Verhoeven
