# EXHIBIT 3
## FILED UNDER SEAL

HIGHLY CONFIDENTIAL - ATTORNEYS EYES' ONLY

Page 1

```
 1           UNITED STATES DISTRICT COURT
 2        FOR THE NORTHERN DISTRICT OF CALIFORNIA
 3   SONOS, INC.,
 4        Plaintiff,
 5           vs.              Case No. 3:21-CV-07559-WHA
 6   GOOGLE LLC,
 7        Defendant.
     _____
 8
     -AND-
 9
     GOOGLE LLC,
10
          Plaintiff,
11
             vs.              Case No. 3:20-CV-06754-WHA
12
     SONOS, INC.,
13
          Defendant.
14   _____
          GOOGLE DESIGNATED ATTORNEYS' EYES ONLY
15        SONOS DESIGNATED HIGHLY CONFIDENTIAL &
     ATTORNEYS' EYES ONLY UNDER THE PROTECTIVE ORDER
16
        ZOOM DEPOSITION OF TAD COBURN AS 30(B)(1) &
17       AS SONOS' 30(b)(6) CORPORATE REPRESENTATIVE
18   (Reported Remotely via Video & Web Videoconference)
     Wolfeboro, New Hampshire (Deponent's location)
19
                 Tuesday, July 12, 2022
20
     STENOGRAPHICALLY REPORTED BY:
21   REBECCA L. ROMANO, RPR, CSR, CCR
     California CSR No. 12546
22   Nevada CCR No. 827
     Oregon CSR No. 20-0466
23   Washington CCR No. 3491
24   JOB NO. 5319142
25   PAGES 1 - 245
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES' ONLY

Page 2

```
 1              UNITED STATES DISTRICT COURT
 2         FOR THE NORTHERN DISTRICT OF CALIFORNIA
 3   SONOS, INC.,
 4        Plaintiff,
 5            vs.            Case No. 3:21-CV-07559-WHA
 6   GOOGLE LLC
 7        Defendant.
     _____
 8   -AND-
 9   GOOGLE LLC,
10        Plaintiff,
11            vs.            Case No. 3:20-CV-06754-WHA
12   SONOS, INC.,
13        Defendant.
     _____
14
15
16          DEPOSITION OF TAD COBURN, taken on behalf
17   of the Google LLC, with the deponent located in
18   Wolfeboro, New Hampshire, commencing at 9:29 a.m.,
19   Tuesday, July 12, 2022, remotely reported via Video
20   & Web Videoconference before
21   REBECCA L. ROMANO, a Certified Shorthand
22   Reporter, Certified Court Reporter, Registered
23   Professional Reporter.
24
25
```

Page 3

```
 1              APPEARANCES OF COUNSEL
 2    (All parties appearing via Web Videoconference)
 3
 4    For the Sonos, Inc:
 5         LEE SULLIVAN SHEA & SMITH LLP
 6         BY:  AMY D. BRODY
 7         Attorney at Law
 8         656 Randolph Street
 9         Floor 5W
10         Chicago, Illinois 60661
11         (312) 754-9602
12         abrody@ls3ip.com
13
14    For the Google LLC:
15         QUINN EMANUEL URQUHART & SULLIVAN, LLP
16         BY:  MELISSA J. BAILY
17         Attorney at Law
18         50 California Street
19         22nd Floor
20         San Francisco, California 94111
21         (415) 875-6600
22         melissabaily@quinnemanuel.com
23
24    ALSO PRESENT:
25         Scott Slater, Videographer
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES' ONLY

Page 167

```
 1    Is that better?
 2            THE COURT REPORTER:  Yes.
 3        Q.   (By Ms. Baily)  Okay.  So, Mr. Coburn,
 4    you are a coinventor on the '615 patent, correct?
 5        A.   That is correct.
 6        Q.   Do you recall who the other coinventors
 7    on the '615 patent are?
 8        A.   I believe that Joni Hoadley was listed as
 9    the other inventor.
10        Q.   And when did you and Ms. Hoadley conceive
11    of the invention claimed in the '615 patent?
12        A.   The '615 patent that -- I believe it was
13    in the -- oh, gosh.
14             Yes, I think it was sometime in 2011,
15    around the summertime perhaps.
16        Q.   And how did you and Ms. Hoadley conceive
17    of the invention in the '615 patent?
18             MS. BRODY:  Objection to form.
19             THE DEPONENT:  Can you -- can you be a
20    little clearer on what you mean by "how did we
21    conceive."
22        Q.   (By Ms. Baily)  Well, what do you recall
23    about the conception of the invention of the
24    '615 patent?
25        A.   Well, we were working on the -- the sort
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES' ONLY

Page 168

1  of play to Sonos initiative had already -- had
2  begun at that point.  And we were discussing very
3  alternative -- various alternatives as to how --
4  how to play -- play to Sonos might work.  Where,
5  again, play to Sonos is the general feature whereby
6  a -- a third-party music app; i.e., an app -- a
7  third party meaning not an app written by Sonos --
8  could transfer music playback from playing locally
9  on the phone, or whatever device the app was
10 running on, and transfer the playback to one or
11 more Sonos speakers without the user having to go
12 through the Sonos app.
13        Q.   So in the context of your work on play to
14 Sonos, what do you recall about the conception of
15 the subject matter of the '615 patent?
16             MS. BRODY:  Objection to form.
17             THE DEPONENT:  What do I recall about the
18 conception?
19             I mean, it was 2011.  It's quite a number
20 of years ago.  I don't recall a lot of -- I don't
21 recall the details of the discussions that were had
22 that led up to that patent.
23             I think there were a number of people
24 that we bounced ideas off of and -- yeah.  I -- I
25 don't -- you know, I'm not sure I can give you any

HIGHLY CONFIDENTIAL - ATTORNEYS EYES' ONLY

Page 169

1    specifics about how the idea was conceived.  It was
2    just -- it was one of the alternatives we came up
3    to -- come up -- came up with when discussing
4    various options and, you know, mechanisms that we
5    could use to implement play to Sonos.
6         Q.    (By Ms. Baily)  And besides what you've
7    already told me, do you recall any other facts and
8    circumstances regarding the conception of the
9    subject matter of the '615 patent?
10        A.    Nothing jumps to mind that seems
11   pertinent.
12        Q.    Does anything jump to mind that doesn't
13   seem pertinent?
14        A.    The weather is nice outside.  The wind is
15   blowing.  It's a beautiful day.  Yeah, there's lots
16   of things that are pertinent.
17        Q.    So I just wanted to make sure that you
18   weren't excluding something about the conception of
19   the patent because you didn't think it was
20   pertinent to the case.
21        A.    No.  No, I --
22        Q.    So I understand -- I understand your
23   answer.
24        A.    Okay.  I'm sorry.  I -- I -- I didn't
25   mean to be cute there or I wasn't -- I -- did mean

HIGHLY CONFIDENTIAL - ATTORNEYS EYES' ONLY

Page 173

1  Q. So in topic No. 2 in Exhibit 1137 --
2  A. Yes.
3  Q. -- do you see that it says "the earliest
4  known use of the alleged inventions claimed in the
5  Patents-in-Suit"?
6  A. Yes.
7  Q. Did you do anything to figure out what
8  Sonos' view is on the earliest known use of the
9  alleged inventions claimed in the patents-in-suit?
10 A. So as I mentioned, Sonos itself did not
11 reduce the -- the '033 patent to -- into practice
12 because it required a partner to -- the -- the
13 whole patent was around a third-party app playing
14 to Sonos.
15             So we never -- we, Sonos, never actually
16 reduced it to practice in the sense of an actual
17 implementation that worked.
18             So I guess that's the -- that's the
19 degree to which I did some research on this ahead
20 of time.
21 Q. And are you aware -- if I understand --
22 well, let me make sure I understand.
23 A. Okay.
24 Q. Sonos has never used the alleged
25 invention of the '033 patent; is that right?

1       I, Rebecca L. Romano, a Registered
2    Professional Reporter, Certified Shorthand
3    Reporter, Certified Court Reporter, do hereby
4    certify:
5       That the foregoing proceedings were taken
6    before me remotely at the time and place herein set
7    forth; that any deponents in the foregoing
8    proceedings, prior to testifying, were administered
9    an oath; that a record of the proceedings was made
10   by me using machine shorthand which was thereafter
11   transcribed under my direction; that the foregoing
12   transcript is true record of the testimony given.
13      Further, that if the foregoing pertains to the
14   original transcript of a deposition in a Federal
15   Case, before completion of the proceedings, review
16   of the transcript [X] was [ ] was not requested.
17      I further certify I am neither financially
18   interested in the action nor a relative or employee
19   of any attorney or any party to this action.
20      IN WITNESS WHEREOF, I have this date
21   subscribed my name.
22   Dated: July 15, 2022

                    *Rebecca L. Romano signature*

                    Rebecca L. Romano, RPR, CCR
                    CSR. No 12546