**FILED UNDER SEAL**

1   QUINN EMANUEL URQUHART & SULLIVAN, LLP
      Charles K. Verhoeven (Bar No. 170151)
2     charlesverhoeven@quinnemanuel.com
      Melissa Baily (Bar No. 237649)
3     melissabaily@quinnemanuel.com
      James Judah (Bar No. 257112)
4     jamesjudah@quinnemanuel.com
      Lindsay Cooper (Bar No. 287125)
5     lindsaycooper@quinnemanuel.com
    50 California Street, 22nd Floor
6   San Francisco, California 94111-4788
    Telephone:     (415) 875-6600
7   Facsimile:     (415) 875-6700

8     Marc Kaplan *(pro hac vice)*
      marckaplan@quinnemanuel.com
9   191 N. Wacker Drive, Ste 2700
    Chicago, Illinois 60606
10  Telephone:     (312) 705-7400
    Facsimile:     (312) 705-7401
11
    *Attorneys for GOOGLE, LLC*
12

13                  UNITED STATES DISTRICT COURT

14                  NORTHERN DISTRICT OF CALIFORNIA

15                  SAN FRANCISCO DIVISION

16

17  GOOGLE LLC,                          Case No. 3:20-cv-06754-WHA
                                         Related to Case No. 3:21-cv-07559-WHA
18                   Plaintiff,
                                         **GOOGLE LLC'S MOTION TO STRIKE**
19         vs.                           **PORTIONS OF THE EXPERT REPORTS**
                                         **OF DOUGLAS SCHMIDT**
20  SONOS, INC.,
                                         Date:        March 9, 2023
21                   Defendant.          Time:        8:00 a.m.
                                         Location:    Courtroom 12, 19th Floor
22                                       Judge:       Hon. William Alsup

23

24

25

26

27

28

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................................2

II.   STATEMENT OF ISSUES TO BE DECIDED .....................................................3

III.  STATEMENT OF FACTS.......................................................................................3

IV.   LEGAL STANDARD ..............................................................................................5

V.    ARGUMENT ...........................................................................................................5

    A.   Purported Claim Constructions First Introduced In Sonos's Rebuttal
        Validity Report Should Be Struck...............................................................5

    B.   Sonos's New Infringement Theories Based On The "Playlist Service" And
        "BigTable" Should Be Struck .....................................................................7

    C.   Sonos's Undisclosed New Infringement Theory For The Hub Devices
        Should Be Struck.........................................................................................9

    D.   Sonos's New Doctrine Of Equivalents Arguments, First Presented In
        Sonos's Reply Report On Infringement, Should Be Struck....................11

VI.   CONCLUSION ......................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*ASUS Comp. Int'l v. Round Rock Research, LLC*,
   No. 12–CV–02099–JST (NC), 2014 WL 1463609 (N.D. Cal. Apr. 11, 2014)...................... 5, 12

*Fresenius Medical Care Holdings, Inc. v. Baxter Intern., Inc.*,
   No. C03-1431 (SBA), 2006 WL 1329997  (N.D. Cal., May 15, 2006) ...................................... 5

*Illumina, Inc. v. BGI Genomics Co.*,
   559 F. Supp. 3d 1072 (N.D. Cal. 2021) ................................................................................. 12

## Rules

Patent L.R. 3-1(e) ...................................................................................................................... 11

GOOGLE'S MOTION TO STRIKE PORTIONS OF THE EXPERT REPORTS OF DOUGLAS SCHMIDT

## **NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Plaintiff Google LLC ("Google") hereby moves this Court for an order striking portions of the Opening, Rebuttal, and Reply Expert Reports of Dr. Douglas Schmidt submitted on behalf of Sonos, Inc. ("Sonos") as in violation of the Patent Local Rules, and precluding all testimony and evidence at trial regarding improper theories and positions disclosed therein.

Google's motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Marc Kaplan in support of this motion, and the supporting exhibits, the pleadings, records, and other papers on file with the Court in this matter, and such further argument and evidence which may be presented at or before a hearing.

GOOGLE'S MOTION TO STRIKE PORTIONS OF THE EXPERT REPORTS OF DOUGLAS SCHMIDT

1    **I.    INTRODUCTION**

2        Sonos's expert Dr. Douglas Schmidt has advanced new theories in his expert reports that

3    were never disclosed in Sonos's infringement contentions; indeed, some of Dr. Schmidt's new

4    theories were disclosed for the very first time in Dr. Schmidt's *reply* report on infringement.  Google

5    respectfully requests that the Court strike each of these late-disclosed theories.

6        First, Dr. Schmidt improperly offered a new interpretation of the Court's construction of the

7    term "playback queue" for the first time in his rebuttal report on validity.  On August 2, 2022, the

8    Court issued a construction of this term in its summary judgment order regarding the '615

9    patent.  Sonos did not object to that construction or provide amended contentions addressing its

10   interpretation of that construction.  Nor did Dr. Schmidt put forward his understanding of the

11   requirements associated with that construction in his opening report on infringement.  Instead, in

12   order to address Google's invalidity arguments, Dr. Schmidt – in his rebuttal report on validity – for

13   the first time offered a multi-part re-interpretation of "playback queue," through which he purported

14   to add four different and previously undisclosed limitations to the '033 patent claims.  Dr. Schmidt

15   then incorporated those additional limitations into his infringement opinions for the first time in his

16   reply report on infringement.  Dr. Schmidt's belated re-interpretation of this claim term – and his

17   theories based on that belated re-interpretation – should be struck as untimely.

18       Second, Dr. Schmidt now relies in his reports on a previously undisclosed theory with

19   respect to the "remote playback queue" of the '033 patent claims.  In its infringement contentions,

20   Sonos argued that the "remote playback queue" element was met by a list of media identifiers

21   contained in a message sent to a YouTube application.  Later recognizing that the prior art similarly

22   employed a data structure contained in a message sent to a user's device, Dr. Schmidt shifted his

23   infringement theory in his opening and reply infringement reports, for the first time accusing a

24   different data structure that is stored in the cloud as the "remote playback queue."  Not surprisingly

25   given this fundamental change, *none* of the source code that Dr. Schmidt now identifies as storing

26   his newly accused data structure was cited in Sonos's contentions with respect to the "remote

27   playback queue."  Dr. Schmidt's new "remote playback queue" theory should be struck.

28

Third, Dr. Schmidt accuses Google's "Hub" devices of infringement by relying on two new scenarios that were not previously disclosed by Sonos. In its contentions, Sonos focused exclusively on a single use case to demonstrate purported infringement – namely, using the interface of a Hub device to begin playback and then using that Hub device to transfer playback to a second Hub device. In his infringement reports, however, Dr. Schmidt now describes different use cases – namely, (i) using a mobile device to begin playback, transferring playback to a Hub device, and then transferring playback *again* to a second Hub device and (ii) using voice input to begin playback on a Hub device and then transferring playback from that Hub device to a second Hub device. These new theories are untimely and should be struck.

Finally, Dr. Schmidt belatedly offers two doctrine of equivalents arguments related to the "remote playback queue" in his reply expert report on infringement. But neither of these arguments was disclosed in Sonos's contentions or even in Dr. Schmidt's opening report on infringement. These new theories should be struck as well.

Google respectfully requests that its motion to strike be granted with respect to each of these four categories of untimely expert opinions.

## II.    STATEMENT OF ISSUES TO BE DECIDED

1.    Whether Sonos's untimely expert opinions using a new construction of "playback queue" (that is different from the construction provided by the Court) should be stricken.

2.    Whether Sonos's untimely opinions advancing a new infringement theory that the "remote playback queue" is stored in a BigTable or Playlist Service should be stricken.

3.    Whether Sonos's untimely expert opinions accusing the Nest Hub or Hub Max ("Hub Devices") of infringement based on new infringement theories should be stricken.

4.    Whether Sonos's untimely expert opinions advancing new doctrine of equivalents theories should be stricken.

## III.    STATEMENT OF FACTS

The asserted claims of Sonos's '033 patent are directed at a "computing device" that is configured for playback of a "remote playback queue provided by a cloud based media

service."  The claims further require that the computing device transfer playback responsibility for "the remote playback queue" to a playback device.

Sonos accuses mobile devices running Google's YouTube Main, YouTube Music, YouTube Kids, or YouTube TV applications, as well as the YouTube Main and YouTube Music functionality that exists on Hub Devices, of being a "computing device."  Sonos accuses these computing devices of infringing based on their ability to cast (*i.e.*, send) playback to a playback device (*e.g.*, a speaker or television).

Since the inception of this case in September 2020, Sonos has served multiple iterations of its infringement contentions for the '033 patent.  Sonos served several versions of its infringement contentions prior to this case being transferred from the Western District of Texas to this Court.  On October 21, 2021, after the case was transferred to this Court, Sonos served infringement contentions pursuant to Patent Local Rule 3-1.  Sonos thereafter was granted leave to amend its contentions for the '033 patent several times, most recently on January 12, 2023.  *See* Ex. 1 (11-28-2022 Sonos Supplemental Infringement Contentions); *see also* Dkt. No. 447.

On November 30, 2022, the parties exchanged opening expert reports.  Sonos served the opening expert report of Dr. Douglas Schmidt in which he opined that Google infringed claims 1, 2, 4, 9, 11-13, or 16 of the '033 patent.  Ex. 2 ("Schmidt Opening Rpt.").  Google served the opening expert report of Dr. Samrat Bhattacharjee in which he opined that the asserted claims of the '033 patent were invalid.  Kaplan Decl. ¶ 2.

On January 13, 2023, the parties exchanged rebuttal expert reports.  For the '033 patent, Sonos served the rebuttal expert report of Dr. Schmidt in which he opined that the asserted claims were valid.  Ex. 3 ("Schmidt Rebuttal Rpt.").  Google served the rebuttal expert report of Dr. Bhattacharjee in which he opined that the asserted claims of the '033 patent were not infringed.  Ex. 4 ("Bhattacharjee Rebuttal Rpt.").

On January 13, 2023, the parties exchanged reply expert reports, including reply reports from Dr. Schmidt on infringement and Dr. Bhattacharjee on invalidity.  Ex. 5 ("Schmidt Reply Rpt."); Kaplan Decl. ¶ 3.

As discussed below, Dr. Schmidt presents new infringement and invalidity theories in his rebuttal and reply reports that are based on claim interpretations that were first disclosed in his rebuttal report and that are different than those provided by the Court. Dr. Schmidt also presents new infringement theories in his opening, rebuttal and reply expert reports that were not disclosed in Sonos's infringement contentions. He also presents new infringement theories in his reply expert report that were not disclosed in either Sonos's contentions or in his opening expert report. All of these opinions should be struck for a failure to timely disclose.

## IV.    LEGAL STANDARD

Patent Local Rule 3-1 required Sonos to serve infringement contentions "identifying specifically where and how each limitation of each asserted claim is found within each Accused Instrumentality." These disclosure requirements exist "to further the goal of full and timely discovery and provide all parties with adequate notice and information with which to litigate their cases." *Fresenius Medical Care Holdings, Inc. v. Baxter Intern., Inc.*, No. C03-1431 (SBA), 2006 WL 1329997, at *4 (N.D. Cal., May 15, 2006) (citations omitted). "The rules are designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed." *Id*. A "party may not use an expert report to introduce new infringement theories, new infringing instrumentalities, new invalidity theories, or new prior art references not disclosed in the parties' infringement contentions or invalidity contentions." *ASUS Comp. Int'l v. Round Rock Research, LLC*, No. 12–CV–02099–JST (NC), 2014 WL 1463609, at *1 (N.D. Cal. Apr. 11, 2014).

## V.    ARGUMENT

### A.    Purported Claim Constructions First Introduced In Sonos's Rebuttal Validity Report Should Be Struck

The Court construed the term "playback queue" to mean "a list of multimedia content selected for playback." Dkt. 316 at 8 ("this order construes the term 'playback queue' as 'a list of multimedia content selected for playback.'"). Yet Sonos's expert, Dr. Schmidt, proposed a different claim construction for the first time in his rebuttal report on validity. Specifically, Dr. Schmidt's rebuttal report includes a section entitled "Claim Construction," in which he opines that a queue that

satisfies the Court's construction—*i.e.*, a "list of multimedia content selected for playback"—is only a "playback queue" if it also possesses each of "the following characteristics:

- The playback queue is the list of media items that is used for playback;

- The playback queue contains the entire list of media items selected for playback;

- The playback queue is not being used merely to process the list of media items for playback;[]

- The playback queue is the queue that 'runs the show.'"

Ex. 3 ¶ 107.  Dr. Schmidt then states that based upon these "characteristics" in "a system like the YTR System and Tungsten/Q System, there can only be ***one*** playback queue, which is either remote or local (but not both)."  *Id.* ¶ 108.  For example, Dr. Schmidt states that the cloud queue in the YouTube Remote prior art is not a "playback queue" because it allegedly does not satisfy each of the four additional limitations that he has injected into the patent claims.  *See, e.g.*, *id.* ¶¶ 178, 215, 330, 360.

During the claim construction phase of this case, Sonos did not propose any construction of "playback queue" that includes the purported limitations introduced in Dr. Schmidt's rebuttal report.  *See* Dkt. 126 (joint claim construction statement).  Sonos also did not identify (let alone address) these additional purported limitations for the "playback queue" in its infringement contentions, despite obtaining leave to serve amended contentions just a week prior to the service of opening reports.  Dkt. No. 407 (Sonos's Motion for Leave to serve amended contentions for the '033 patent), Dkt. No. 447 (granting Sonos's motion).  Nor did Sonos identify the purported limitations for the "playback queue" in its response to Google's Interrogatory No. 3, which sought Sonos's validity contentions.  *See generally* Ex. 6 (2-04-2022 Attachment A to Sonos's Interrogatory No. 3).

Dr. Schmidt, too, failed to identify or address these additional purported requirements for the "playback queue" in his opening report on infringement.  Instead, these new requirements were introduced for the first time in Dr. Schmidt's rebuttal report on validity and then integrated into his infringement opinions for the first time in his reply report on infringement.  *See, e.g.*, Ex. 5 ¶ 17.  Sonos's belated disclosure of what it contends is required to meet the "playback queue"

limitations of the '033 patent claims effectively blocked Google from responding to Sonos's theories in that regard. For that reason alone, Dr. Schmidt's opinions regarding the meaning of "playback queue" (and his theories predicated on his four new requirements for "playback queue") should be struck. Those opinions should also be excluded for additional reasons more appropriately addressed in the context of dispositive motions and *Daubert*s.

The Court should strike the following paragraphs of Dr. Schmidt's rebuttal report on validity and reply report on infringement: Ex. 3, ¶¶ 103-112, 132, 178, 215, 304, 329-330, 360, 1005; Ex. 5, ¶¶ 17-18, 38-39, 46, 59-60, 62-63, 65, 68, 128-132, 136-142, 177, 184, 188.

**B.    Sonos's New Infringement Theories Based On The "Playlist Service" And "BigTable" Should Be Struck**

Limitations 1.4 and 12.1 of the '033 Patent require a "computing device" that is "configured for playback of a remote playback queue provided by a cloud-based computing system." *See* Dkt. 1-3 at 17:39-44 (Limitation 1.4), 19:25-28 (Limitation 12.1). Limitations 1.7 and 12.4 further require transferring playback responsibility for "the remote playback queue" from the computing device to a playback device. *See id.* at 17:39-44 (Limitation 1.7), 19:39-42 (Limitation 12.4).

In Sonos's infringement contentions, Sonos identified the accused "remote playback queue" of these limitations as a "Watch Next queue[] provided by one or more cloud servers (e.g., a 'WatchNext,' 'InnerTube,' or 'MDx' server)." Ex. 1 (11-28-2022 Supplemental Infringement Contentions) at 4. Specifically, Sonos contended that the accused "Watch Next queue" is a list of media item identifiers contained in a WatchNext message sent to a YouTube application. *Id.* (11-21-2022 Sonos Supplemental Infringement Contentions) at 11. Consistent with this theory, Sonos's infringement contentions cited to pages of source code purportedly showing that an accused YouTube application receives a WatchNext "response" message that includes the list of identifiers (the "Watch Next queue"), and Sonos accused this of being the "remote playback queue" of the claims. *Id.*(11-28-2022 Supplemental Infringement Contentions) at 17-25. Sonos's contentions did not cite any source code for the PlaylistService. *See id.* (no citations to source code in the folder "/2022-03-22_YTPlaylistService09292020"); *cf.* Ex. 2 ¶ 107 (stating that source code for the "PlaylistService" is found in the folder "/2022-03-22_YTPlaylistService09292020/").

1    But in his opening and reply reports on infringement, Dr. Schmidt did not opine that the

2  accused "remote playback queue" was contained in a WatchNext message – or in any message –

3  received by a YouTube application.  Instead, Dr. Schmidt opined that the accused "remote playback

4  queue" was a list of media item identifiers stored by the "Playlist Service" in a distributed storage

5  system referred to as "BigTable."  *Id.* ¶ 242; Ex. 5 ¶ 50.  The fundamental nature of the difference

6  between accusing a specific "remote playback queue" that is contained in a message received by an

7  application (as Sonos did in its contentions) and vaguely pointing to a purported "remote playback

8  queue" that is stored somehow in a massive distributed data repository (as Dr. Schmidt now opines

9  in his reports) is demonstrated by the fact that Sonos's contentions do not refer to ***any*** of the source

10  code files for the PlaylistService that Dr. Schmidt now relies on in his reports to support his new

11  infringement theory.  Exs. 2 ¶¶ 78-79, 6 ¶ 50.

12    Indeed, this fundamental shift from what Sonos accused in its infringement contentions (a

13  data structure in a message) to what Dr. Schmidt later pointed to in his expert reports (a purported

14  data structure in cloud storage) appears to have been intentionally designed – belatedly – to try to

15  avoid Google's invalidity arguments.  Specifically, Dr. Schmidt argues in his rebuttal report on

16  validity that the "remote playback queue" of the patent is a data structure stored on a cloud server

17  so that he can distinguish certain prior art that, according to Dr. Schmidt, merely sends identifiers

18  for media items to a user's mobile phone.  Ex. 3 ¶¶ 119, 589; *see also id*., Appendix 3 at 17.  In

19  other words, Dr. Schmidt  now tries to argue that the difference between a "remote playback queue"

20  stored in the cloud and a "remote playback queue" contained in a message is critical from a validity

21  perspective.  But, on the infringement side, it is only the latter (a "remote playback queue" contained

22  in a message) that is found in Sonos's contentions.  Sonos should be precluded from belatedly

23  asserting that the former (a "remote playback queue" stored in the cloud) infringes for the first time

24  in its expert reports.

25    Additionally, in another attempt to distinguish the prior art, Sonos's rebuttal report

26  introduced new requirements (*see* Section IV.A) that have resulted in Sonos changing its

27  infringement theory.  For example, one of the requirements Sonos identified in its rebuttal report

28  was that "the playback queue must include the "entire list of media items selected for playback.""

1   These new requirements have resulted in Sonos arguing that the ==Watch Next message== it previously

2   accused in its infringement contentions may contain only a "window" (or subset) of items (not the

3   "entire list"). *See, e.g.,* Schmidt Rebuttal Rpt., 129 (arguing that a mobile device in Google's

4   product plays back a "local" not "remote" queue because allegedly "==the Sender [mobile device] only==

5   ==obtains *windows* of videoIds from the WatchNext service=="), Appendix 4 at slide 19 (graphic

6   purporting to show "Sender [i.e., mobile device obtain[s] Window of Items from Watch Next

7   Service"). Sonos has thus also changed its theory so that it can argue that ==the Playlist Service stores==

8   ==the entire queue, while the Watch Next message may contain a "window" of those items.==

9       The Court should strike the following paragraphs of Dr. Schmidt's opening and reply

10  infringement reports because they advance new infringement theories regarding the "remote

11  playback queue" that are inconsistent with Sonos's contentions: Ex. 2, ¶¶ 128, 152, 235, 248 (as to

12  =="Playlist Service" and "Playlist Document Service" source code==); Ex. 5, ¶¶ 46, 50-52, 60, 62, 67,

13  69, 124, Appendix 4 at 4-18, 20. In addition, Dr. Schmidt's reference to those new infringement

14  theories in the following paragraphs of his rebuttal validity report should also be struck: Ex. 3, ¶

15  589.

16      **C.    Sonos's New Infringement Theory For The Hub Devices Should Be Struck**

17      Dr. Schmidt's opening expert report on infringement improperly introduces two new

18  theories with respect to the YouTube Main and YouTube Music functionality on a Home/Nest Hub

19  or Hub Max ("Hub Device"). First, as illustrated below on the left, Dr. Schmidt accuses a new

20  scenario in which (i) a user initiates playback on a first Hub device (the alleged "computing device")

21  by transferring playback to that Hub from a mobile device and then (ii) transfers playback again

22  from the first Hub to a second Hub Device (the alleged "playback device"). Second, as illustrated

23  below on the right, Dr. Schmidt newly accuses a scenario in which (i) a user initiates playback on a

24  first Hub Device using a "voice input" and then (ii) transfers playback from the first Hub Device to

25  a second Hub Device.

26

27

28



These highly specific (and rare) scenarios that Dr. Schmidt identified as infringing in his opening report were never identified in Sonos's infringement contentions. Instead, Sonos's contentions disclosed a playback path in which (i) a user initiates playback on a first Hub Device (the alleged "computing device") using the display on the first Hub Device and then (ii) transfers playback to a second Hub Device, as shown below.



*See* Ex. 1 (11-28-2022 Sonos Supplemental Infringement Contentions) at 8-9.

The new infringement theories in Dr. Schmidt's infringement reports are substantially different from the theory in Sonos's contentions. For example, Sonos's infringement contentions only disclosed a situation involving a first Hub Device playing back media ***before*** a Cast session is initiated, but Dr. Schmidt's first new infringement theory now involves a first Hub Device playing back media ***after*** a Cast session is initiated. The operation of a Hub Device after initiation of a Cast session is different from the operation of a Hub Device before initiation of a Cast session, including in the way the Hub Device retrieves media from backend servers – which is critical to the asserted '033 patent claims. Indeed, Dr. Schmidt's first theory cites source code that is different from the source code Sonos cited in its infringement contentions. Ex. 2 ¶ 247; *cf.* Ex. 1 (11-28-2022 Sonos Supplemental Infringement Contentions) at 26; *see also* Ex. 4 ¶ 189. For his second new theory, Dr. Schmidt ignores the source code in the contentions and cites no source code at all. *Id.*

The Court should strike the following paragraphs of Dr. Schmidt's opening and reply reports on infringement because they advance new infringement theories for the Hub Devices: Ex. 2, ¶¶ 178, 247; Ex. 5, ¶¶ 146-149, 152-155.

### D. Sonos's New Doctrine Of Equivalents Arguments, First Presented In Sonos's Reply Report On Infringement, Should Be Struck

Limitations 1.4 and 12.1 of the '033 Patent require a "computing device" that is "configured for playback of <u>a remote playback queue</u> provided by a cloud-based computing system." *See* Dkt. 1-3 at 17:39-44 (Limitation 1.4), 19:25-28 (Limitation 12.1). Limitations 1.7 and 12.4 further require transferring playback responsibility for "**the** remote playback queue" from the computing device to a playback device. *See id.* at 17:39-44 (Limitation 1.7), 19:39-42 (Limitation 12.4). The claims thus explicitly require that the "remote playback queue" that is played back before transferring playback is also the "remote playback queue" that is played back after transferring playback.

The accused products do not meet this requirement. Ex. 4 ¶¶ 189, 199-204. So, for the first time in his reply report on infringement, Dr. Schmidt presents two new doctrine of equivalents arguments. <u>First</u>, Dr. Schmidt argues that the limitations at issue are met under the doctrine of equivalents "irrespective of whether the contents of the list [i.e., the specific songs or videos in the list] provided by the YouTube cloud infrastructure is the same or different before and after Casting [i.e., transferring playback]." Ex. 5 ¶¶179-83. <u>Second</u>, Dr. Schmidt argues that these limitations are met under the doctrine of equivalents "irrespective of whether the list of one or more media items selected for playback is stored in the same or a different location in the YouTube cloud infrastructure before and after Casting." *Id.* ¶¶ 184-88. Neither of these opinions is legally permissible because they would read out the antecedent basis required by the claims, but for purposes of this motion to strike, these new opinions should be struck because they were not timely disclosed.

As an initial matter, neither of these doctrine of equivalents arguments was included in Sonos's infringement contentions, as required by the local rules. Patent L.R. 3-1(e) (requiring disclosure of "[w]hether each limitation of each asserted claim is alleged to be literally present or

present under the doctrine of equivalents in the Accused Instrumentality"); *Illumina, Inc. v. BGI Genomics Co.*, 559 F. Supp. 3d 1072, 1085 (N.D. Cal. 2021) ("Illumina was unaware of the DOE theories until the Puglisi Report. The DOE theories are struck from Puglisi's report."); *ASUS Computer Int'l v. Round Rock Rsch., LLC*, No. 12-CV-02099 JST (NC), 2014 WL 1463609, at *3 (N.D. Cal. Apr. 11, 2014) ("RR did not sufficiently describe how, for each claim element, a component of a charted product performed the same function, in the same way, to achieve the same result. . . . RR's experts cannot now articulate that theory at this late stage."). Sonos's infringement contentions for these limitations disclosed only a single doctrine of equivalents theory directed to a different issue: whether a playback queue that includes a list of service-recommended multimedia items is equivalent to a playback queue that includes a list of multimedia items that is "selected by the user for playback." Ex. 1 at 45-46. But in its Order construing the term "playback queue," the Court found that a list of service-recommended media items can meet the "playback queue" limitation as a matter of literal infringement. Dkt. 316 at 8. Thus, the sole doctrine of equivalents theory disclosed in Sonos's infringement contentions has been mooted; it does not provide any disclosure or support for these new doctrine of equivalents theories that Dr. Schmidt belatedly tries to inject into his reply report.

Further, there is no justification for Sonos to have waited until Dr. Schmidt's reply report on infringement to present these new doctrine of equivalents theories. Dr. Schmidt's opening report makes no mention of these new doctrine of equivalents arguments, let alone discloses the multi-paragraph doctrine of equivalents analysis found in Dr. Schmidt's reply report. Ex. 3 ¶¶ 225-59, 288. The Court should strike the following paragraphs of Dr. Schmidt's reply report on infringement because it advances previously undisclosed infringement theories under the doctrine of equivalents: Ex. 5 ¶¶ 179-88.

## VI.    CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court grant this Motion.

1

DATED: January 27, 2023

QUINN EMANUEL URQUHART & SULLIVAN, LLP

2

3

By: _/s/ Charles K. Verhoeven_

Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
Melissa Baily (Bar No. 237649)
melissabaily@quinnemanuel.com
James Judah (Bar No. 257112)
jamesjudah@quinnemanuel.com
Lindsay Cooper (Bar No. 287125)
lindsaycooper@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

4

5

6

7

8

9

10

Marc Kaplan (*pro hac vice*)
marckaplan@quinnemanuel.com
191 N. Wacker Drive, Ste 2700
Chicago, Illinois 60606
Telephone:    (312) 705-7400
Facsimile:    (312) 705-7401

11

12

13

14

*Attorneys for GOOGLE LLC*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GOOGLE'S MOTION TO STRIKE PORTIONS OF THE EXPERT REPORTS OF DOUGLAS SCHMIDT

1

## CERTIFICATE OF SERVICE

2

      Pursuant to the Federal Rules of Civil Procedure and Local Rule 5-1, I hereby certify that,

3

on January 27, 2023, all counsel of record who have appeared in this case are being served with a

4

copy of the foregoing via the Court's CM/ECF system and email.

5

6

  DATED:  January 27, 2023

7

                                    By:    */s/ Charles K. Verhoeven*

8

                                              Charles K. Verhoeven

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GOOGLE'S MOTION TO STRIKE PORTIONS OF THE EXPERT REPORTS OF DOUGLAS SCHMIDT