# EXHIBIT 2
# Filed Under Seal

```
1    Clement S. Roberts (SBN 209203)
     croberts@orrick.com
2    ORRICK HERRINGTON & SUTCLIFFE LLP
     405 Howard Street
3    San Francisco, CA 94105
     Tel: (415) 773-5700 -- Fax: (415) 773-5759
4
5    Alyssa Caridis (SBN 260103)
     acaridis@orrick.com
6    ORRICK HERRINGTON & SUTCLIFFE LLP
     777 South Figueroa Street, Suite 3200
7    Los Angeles, CA 90017
     Tel: (213) 629-2020 -- Fax: (213) 612-2499
8
9    George I. Lee
     lee@ls3ip.com
10   Sean M. Sullivan
     sullivan@ls3ip.com
11   Rory P. Shea
     shea@ls3ip.com
12   J. Dan Smith
     smith@ls3ip.com
13   Michael P. Boyea
     boyea@ls3ip.com
14   Cole B. Richter
     richter@ls3ip.com
15   LEE SULLIVAN SHEA & SMITH LLP
     656 W Randolph St, Floor 5W
16   Chicago, IL 60661
     Tel: (312) 754-0002 -- Fax: (312) 754-0003
17
18   Attorneys for Sonos, Inc.
```

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOOGLE LLC, | Case No. 3:20-cv-6754 |
| *Plaintiff*, | **SONOS, INC.'S CORRECTED SUPPLEMENTAL RESPONSES AND OBJECTIONS TO GOOGLE'S FIRST SET OF INTERROGATORIES [1-20]** |
| v. | |
| SONOS, INC., | Judge: Hon. William Alsup |
| *Defendant.* | Complaint Filed: September 28, 2020 |

| **Claim 26** | |
|---|---|
| multimedia content in synchrony. | |

Sonos reserves the right to revise, correct, add to, supplement, or clarify its response to this Interrogatory as additional information is discovered and/or becomes available.

**INTERROGATORY NO. 3**

*For each Asserted Claim of the Asserted Patents, explain in detail, in chart form, all legal and factual bases for your contention that the Asserted Claims are not invalid under 35 U.S.C. §§ 101, 102, 103, or 112, based on but not limited to Google's invalidity contentions in This Litigation.*

**RESPONSE TO INTERROGATORY NO. 3**

Sonos objects to this interrogatory as overbroad, unduly burdensome, and not reasonably proportional to the needs of the case insofar as it purports to require Sonos to "explain in detail . . . . ***all*** legal and factual bases . . . ."

Sonos also objects that the terms "Asserted Claim" and "Asserted Claims" have not been defined in the interrogatories. Sonos will interpret "Asserted Claims" to mean the asserted claims of the Asserted Patents in this litigation.

Sonos further objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege and/or work product doctrines.

Sonos further objects to this Interrogatory as premature to the extent it seeks expert discovery in advance of the date set forth in the Federal Rules of Civil Procedure and/or the Court's Scheduling Order.

Sonos further objects to this Interrogatory on the ground that it is a premature contention interrogatory that has been filed before a substantial amount of discovery has been conducted in this lawsuit. *See* Fed. R. Civ. P. 33(a)(2) ("[T]he court may order that [a contention] interrogatory need not be answered until after designated discovery is complete . . . ."). In this

1. respect, Google's preliminary invalidity contentions fail to set forth with particularity the factual and legal bases on which Google contends that any asserted claim is invalid. As a non-limiting example, Google's "anticipation" charts merely quote from large blocks of patent references without any explanation as to how or why these large blocks of text meet the elements of the claims. As another non-limiting example, some of Google's "anticipation" charts refer to "systems" that Google has neither produced nor made available for inspection. As yet another non-limiting example, Google's "obviousness contentions" do not set forth any specific combinations of prior art – let alone explain why a POSITA would have been motivated to combine a particular reference with any one or more other particular references to arrive at any claimed invention having any reasonable expectation of success. Rather, Google merely sets forth a menu of possible references that it hopes one might pick from "[t]o the extent one or more [of its "anticipation"] references do not explicitly or inherently disclose [the claim elements]." This is woefully deficient and fails to rise to even a *prima facie* level of invalidity – let alone suffices to carry Google's clear and convincing evidentiary burden. As such, Google's contentions are not amenable to a response.

Sonos also objects to Google's attempt to use this interrogatory to shift its burden regarding proof of invalidity. Google has the burden of proving that the patents-in-suit are invalid. This never shifts. See *SFA Systems, LLC v. Amazon.com, Inc. et al, LLC,* No. 6:11-cv-052-LED (E.D. Tex. April 11, 2013) ("It is premature to compel SFA to provide a substantive response to Interrogatory No. 6. Defendant bears the burden of proving that the patents-in-suit are invalid for failure to meet the written description requirement. Therefore, after Amazon has met its initial burden through its expert report, Plaintiff may rebut Amazon's position, but not vice versa.") (cleaned up); *Tech Licensing Corp. v. Videotek Inc.,* 545 F.3d 1316, 1327 (Fed. Cir. 2008); *Microsoft Corp. v. i4i Ltd. Partnership*, 131 S. Ct. 2238, 2243 (2011) ("[T]he burden of proving invalidity [is] on the attacker. That burden is constant and never changes.").

Sonos also objects to this Interrogatory as premature to the extent that some of the information called for by this interrogatory is in the possession of Google or third parties and has not yet been produced in this case.

1    Subject to, and without waiving, the foregoing Specific and General Objections, Sonos
2    states that under 35 U.S.C. § 282, all the claims of the Asserted Patents are presumed to be valid,
3    including with respect to the requirements of 35 U.S.C. § 101, 102, 103, and 112. *See* 35 U.S.C.
4    § 282(a) and (b)(3)(A). This presumption of validity is also fully supported by the presumption
5    of administrative correctness, as the Asserted Patents were all duly issued by the United States
6    Patent & Trademark Office ("USPTO"), and the USPTO would not have issued the Asserted
7    Patents if they failed to comply with the requirements of any of 35 U.S.C. §§ 101, 102, 103, and
8    112. Moreover, under 35 U.S.C. § 282, Defendants bear the burden of establishing (by clear and
9    convincing evidence) any invalidity, including invalidity for failure to satisfy the requirements of
10   35 U.S.C. §§ 101, 102, 103, and 112. *See* 35 U.S.C. § 282(a) and (b)(3)(A). As the Supreme
11   Court recently noted:

12   Under the Patent Act, and the case law before its passage, a patent is presumed
13   valid. That presumption takes away any need for a plaintiff to prove his patent is valid to bring a
14   claim.

15   *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1929 (2015) (internal citations and
16   quotation marks omitted). Thus, Sonos is not required to prove validity, which this Interrogatory
17   appears to seek.

18   Further, Sonos's position is that all issued claims of the '966, '885, '615, 'and 033
19   Patents are valid and are in full compliance with the requirements of 35 U.S.C. § 101, 102, 103,
20   and 112. To the extent that Google asserts a specific invalidity challenge in its final invalidity
21   contentions, Sonos will provide a rebuttal to such a challenge during the expert phase of this
22   litigation.

23   Additionally, pursuant to Fed. R. Civ. P. Rule 33(d), Sonos has produced copies of the
24   Asserted Patents and their file histories from which further information sought in this
25   Interrogatory may be derived. *See* SONOS-SVG2-00001167-4215; SONOS-SVG2-00004216-
26   6558; SONOS-SVG2-00006559-1279; SONOS-SVG2-00011280-7989. Sonos reserves the right
27   to revise, correct, add to, supplement, or clarify its response to this Interrogatory as additional
28   information is discovered and/or becomes available.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3 (2/4/2022)**

Sonos incorporates by reference its response and objections above. Sonos further responds as follows:

Sonos incorporates by reference Attachment A.

Sonos reserves the right to revise, correct, add to, supplement, or clarify its response to this Interrogatory as additional information is discovered and/or becomes available.

**SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3 (3/21/2022)**

Sonos incorporates by reference its response and objections above. Sonos further responds as follows:

**Further Response to Google's Contentions Under 35 U.S.C. §§ 102, 103**

I.   '996 Patent

   A.   Further Response to Ex. 966-5 ("Sonos Forums")

As previously stated, Google has failed to establish that the "Sonos Forums" anticipate or render obvious the asserted claims of the '966 and '885 Patents. *See* Sonos's Responses and Objections to Google's First Set of Interrogatories (No. 3, Attachment A at 36-39, 79-83). In fact, the "Sonos Forums" submissions primarily relied upon by Google do not even qualify as prior art because they are dated after the conception date of December 21, 2005 (and not more than a year before the effective filing date of September 12, 2006). *Id.; see also* Sonos's Responses and Objections to Google's First Set of Interrogatories (No. 1). However, to the extent Google attempts to rely on any "Sonos Forums" submissions prior to the December 21, 2005 conception date to assert that the "Sonos Forums" anticipate or render obvious the asserted claims of the '966 and '885 Patents, Sonos reiterates that inventor Robert Lambourne began memorializing his thoughts on his "Zone Scene" concept by March 2, 2005. *See* Sonos's Responses and Objections to Google's First Set of Interrogatories (No. 1).

Moreover, to the extent Google argues that the September 2005 "Sonos Forums" submissions cited in Google's invalidity contentions anticipate or render obvious the asserted

1  claims of the '966 and '885 Patents, Sonos contends that, with respect to the claimed inventions,
2  Mr. Lambourne had already previously memorialized his "Zone Scene" concept in at least as
3  much detail as those September 2005 "Sonos Forums" submissions. For example, as shown
4  below, the September 22, 2005 "Sonos Forums" submission cited throughout Google's invalidity
5  contentions merely discloses a customer request for two "party modes" – "Summer and Winter"
6  – where "Summer mode would include the deck speakers and the Winter mode would not":

**Macro / presets**

16 years ago • 61 replies • 15082 views

22 September 2005

 **JeffT** Trending Lyricist I • 20 replies

Just got the intro bundle, and I am impressed. I did a search and did not find this suggested, but I would save Zone links as favorites. With only 2 ZPs it is not a problem yet, but when I add more it maybe. I would like to setup say Morning mode for the units I want in the morning and a preset volume between the units. Another example I would have 2 party modes, Summer and Winter. The Summer mode would include the deck speakers and the Winter mode would not. Also it would be nice to have playlists or radio station associated with each mode. So when I get up I press Morning the DI Chill radio station plays.

15  However, in an email to Andrew Schulert on April 11, 2005, inventor Robert Lambourne
16  disclosed "2 approaches" for his "Zone Scene" concept. In particular, Mr. Lambourne disclosed
17  an approach to "[a]llow a user to save Zone Profiles," which would "allow a user with one click
18  to put their Zones into predefined groups." SONOS-SVG2-00026888 - SONOS-SVG2-
19  00026889 at 888. Mr. Lambourne further disclosed "[e]xamples of possible group profiles" for
20  such "predefined groups" including the following:

```
 - Examples of possible group profiles:
--"downstairs" (groups all downstairs rooms with one click)
--"upstairs" (groups all upstairs rooms with one click)
--"upstairs and downstairs" (puts upstairs zones in a group, and downstairs zones in another group)
--"mornings" (groups all living spaces and master bedroom, ungroups all bedrooms)
 Etc etc.
```

26  *Id.* In this regard, Mr. Lambourne was already steps ahead of the foregoing September 2005
27  submission posted on "Sonos Forums" and was contemplating the best approach to add his
28

1  "Zone Scene" concept to the existing Sonos System. Indeed, in his April 11, 2005 email, Mr. Lambourne identified that the "main problem" was "making the UI simple enough and dealing with the chances for many 'blown' queues," which required Mr. Lambourne additional time to consider and refine. *Id* ("I have some UI sketches, I'll put them in order and we can discuss further."); *see also* SONOS-SVG2-00026625 (Mr. Lambourne's sketchbook memorializing refinements to his "Zone Scene" concept). As previously explained, the claimed inventions of the '966 and '885 Patents were then conceived by December 21, 2005, and reduced to practice by September 12, 2006. *See* Sonos's Responses and Objections to Google's First Set of Interrogatories (No. 1).

Thus, for at least the additional reasons set forth above, the "Sonos Forums" do not (i) anticipate or render obvious the asserted claims of the '966 and '885 Patents; or (ii) qualify as prior art under 35 U.S.C. § 102(f).

**B.  Further Response to Ex. 966-6 ("Sonos System")**

As previously stated, Google has failed to establish that the "Sonos System" anticipate or render obvious various limitations of the asserted claims of the '966 and '885 Patents. *See* Sonos's Responses and Objections to Google's First Set of Interrogatories (No. 3, Attach. A at 39-43, 83-88). In particular, while Google alleged that a "Sonos System" that was "publicly available at least as of August 2005" anticipates or renders obvious the asserted claims of the '966 and '885 Patents, Google primarily relied on two references: (1) "Sonos Digital Music System User Guide, dated April 2005," and (2) "Sonos Digital Music System User Guide, dated January 2006." However, as previously stated, the "Sonos Digital Music System User Guide, dated January 2006" does not qualify as prior art because it is dated after the conception date of December 21, 2005 and not more than a year before the effective filing date of September 12, 2006. *See id.*, Appx. A at 39-40.

Moreover, Google's contention that the "Sonos Digital Music System User Guide, dated April 2005" anticipates the asserted claims of the '966 and '885 Patents is implausible given that that the existing Sonos system at that time did not include Mr. Lambourne's "Zone Scene" concept. Indeed, in April 2005, inventor Mr. Lambourne was still contemplating how his "Zone

1  Scene" concept would work on the existing Sonos System.

2  For instance, in an email to Mr. Schulert on April 11, 2005, Mr. Lambourne disclosed "2 approaches" for his "Zone Scene" concept. In particular, Mr. Lambourne disclosed an approach to "[a]llow a user to save Zone Profiles," which would "allow a user with one click to put their Zones into predefined groups (think Party-mode, but instead of[] linking all Zones, certain Zones get grouped." SONOS-SVG2-00026888 - SONOS-SVG2-00026889 at 888. Mr. Lambourne further disclosed "[e]xamples of possible group profiles," including the following:

```
- Examples of possible group profiles:
--"downstairs" (groups all downstairs rooms with one click)
--"upstairs" (groups all upstairs rooms with one click)
--"upstairs and downstairs" (puts upstairs zones in a group, and downstairs zones in another group)
--"mornings" (groups all living spaces and master bedroom, ungroups all bedrooms)
Etc etc.
```

*Id*. However, Mr. Lambourne identified that the "main problem" was "making the UI simple enough and dealing with the chances for many 'blown' queues," which required Mr. Lambourne additional time to consider and refine. *Id* ("I have some UI sketches, I'll put them in order and we can discuss further."); *see also,* SONOS-SVG2-00026625 (Mr. Lambourne's sketchbook memorializing refinements to his "Zone Scene" concept). The '966 and '885 Patents were then conceived by December 21, 2005, and reduced to practice by September 12, 2006. *See* Sonos's Responses and Objections to Google's First Set of Interrogatories (No. 1).

Thus, for at least the additional reasons set forth above, the "Sonos System" does not anticipate or render obvious the asserted claims of the '966 and '885 Patents.

**II.   '885 Patent**

**C.   Further Response to Ex. 885-5 ("Sonos Forums")**

Sonos incorporates by reference its responses above concerning Ex. 966-5.

**D.   Further Response to Ex. 885-6 ("Sonos System")**

Sonos incorporates by reference its responses above concerning Ex. 966-6.

Sonos reserves the right to revise, correct, add to, supplement, or clarify its response to

this Interrogatory as additional information is discovered and/or becomes available.

**INTERROGATORY NO. 4**

*State whether you contend there are secondary considerations that should be considered by the Court in connection with its determination pursuant to 35 U.S.C. § 103 of the validity of each Asserted Claim of the Asserted Patents, and if the answer is anything other than an unqualified negative for any Asserted Claim, Identify for that claim each such secondary consideration and describe in detail Defendant's contentions as to why each such secondary consideration demonstrates obviousness or non-obviousness and all facts in support thereof, including but not limited to any Documents in support of such facts, testimony from past cases in support of such facts, and any Persons with knowledge of such facts.*

**RESPONSE TO INTERROGATORY NO. 4**

Sonos objects to this interrogatory as overbroad, unduly burdensome, and not reasonably proportional to the burden insofar as it purports to require Sonos to "[i]dentify. . . *all* facts in support thereof, including but not limited to *any* Documents in support of such facts . . . and *any* Persons with knowledge of such facts."

Sonos also objects that the term "Asserted Claim" has not been defined in the interrogatories. Sonos will interpret "Asserted Claim" to mean each asserted claim of the Asserted Patents in this litigation.

Sonos further objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege and/or work product doctrines.

Sonos further objects to this Interrogatory as premature to the extent it seeks expert discovery in advance of the date set forth in the Federal Rules of Civil Procedure and/or the Court's Scheduling Order.

Sonos further objects to this Interrogatory on the ground that it is a premature contention interrogatory that has been filed before a substantial amount of discovery has been conducted in this lawsuit. *See* Fed. R. Civ. P. 33(a)(2) ("[T]he court may order that [a contention] interrogatory need not be answered until after designated discovery is complete . . . .").

concerning Sonos's knowledge or awareness . . . and identify *all* Persons with knowledge of those facts and *all* documents concerning those facts."

Sonos also objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege and/or work product doctrines.

Subject to, and without waiving, the foregoing Specific and General Objections, Sonos states that it became aware of the products accused of infringement in this litigation at or around the time those products were publicly announced by Google. Sonos's in-house counsel Mark Triplett (VP, Intellectual Property) and Chris Butts (Senior Director, U.S. Patent Development) are knowledgeable about Sonos's first awareness of the products accused of infringement in this case.

Additionally, pursuant to Fed. R. Civ. P. Rule 33(d), Sonos will produce documents from which further information sought in this Interrogatory may be derived.

Sonos reserves the right to revise, correct, add to, supplement, or clarify its response to this Interrogatory as additional information is discovered and/or becomes available.

Dated: November 30, 2022

ORRICK HERRINGTON & SUTCLIFFE LLP
*and*
LEE SULLIVAN SHEA & SMITH LLP

By: */s/ Cole B. Richter*
    Cole B. Richter (admitted *pro hac*)

*Attorneys for Sonos, Inc.*

# Attachment A

the level of ordinary skill of one in the art, and the state of technology at issue at the time of the alleged invention, Google's current invalidity contentions fail to demonstrate that the "Tungsten System" either anticipates or renders obvious the asserted claims of the '033 Patent.

For instance, Google has failed to establish that the "Tungsten System" anticipates or renders obvious at least the following limitations of the asserted claims of the '033 Patent:

- [1.3]/[12.1] [operating in a first mode in which the computing device is configured for playback of a remote playback queue provided by a cloud-based computing system associated with a cloud-based media service]
    - at least because Google has failed to establish that the "Tungsten System" embodied "operating in a first mode in which the computing device is configured for playback of a remote playback queue provided by a cloud-based computing system associated with a cloud-based media service."

- [1.4]/[12.2] [while operating in the first mode, displaying a representation of one or more playback devices in a media playback system that are each i) communicatively coupled to the computing device over a data network and ii) available to accept playback responsibility for the remote playback queue]
    - at least because Google has failed to establish that the "Tungsten System" embodied "operating in the first mode," much less "while operating in the first mode, displaying a representation of one or more playback devices in a media playback system that are each . . . available to accept playback responsibility for the remote playback queue"

- [1.5]/[12.3] [while displaying the representation of the one or more playback devices, receiving user input indicating a selection of at least one given playback device from the one or more playback devices]
    - at least because Google has failed to establish that the "Tungsten System" embodied "while displaying the representation of the one or more playback devices, receiving user input indicating a selection of at least one given playback device from the one or more playback devices."

- [1.6]/[12.4] [based on receiving the user input, transmitting an instruction for the at least one given playback device to take over responsibility for playback of the remote playback queue from the computing device, wherein the instruction configures the at least one given playback device to (i) communicate with the cloud-based computing system in order to obtain data identifying a next one or more media items that are in the remote playback queue, (ii) use the obtained data to retrieve at least one media item in the remote playback queue from the cloud-based media service; and (iii) play back the retrieved at least one media item]
    - at least because Google has failed to establish that the "Tungsten System" embodied claim limitations "(i)" and "(ii)."

- [1.7]/[12.5] [detecting an indication that playback responsibility for the remote playback queue has been successfully transferred from the computing device to the at least one given playback device]
    - at least because Google has failed to establish that the "Tungsten System" embodied "detecting an indication that playback responsibility for the remote playback queue has been successfully transferred from the computing device to the at least one given playback device."

- [1.8]/[12.6] [after detecting the indication, transitioning from i) the first mode in which the computing device is configured for playback of the remote playback queue to ii) a second mode in which the computing device is configured to control the at least one given playback device's playback of the remote playback queue and the computing device is no longer configured for playback of the remote playback queue]
    - at least because Google has failed to establish that the "Tungsten System" embodied limitations [1.3]/[12.1] or [1.7]/[12.5], let alone "transitioning from i) the first mode in which the computing device is configured for playback of the remote playback queue to ii) a second mode in which the computing device is configured to control the at least one given playback device's playback of the remote playback queue and the computing device is no longer configured for playback of the remote playback queue."

- [2.1]/[13.1] [wherein the instruction comprises an instruction for the cloud-based computing system associated with the media service to provide the data identifying the next one or more media items to the given playback device for use in retrieving the at least one media item from the cloud-based computing system associated with the cloud-based media service]
    - at least because Google has failed to establish (i) that the "Tungsten System" embodied independent claims 1 and 12 and (ii) that the "Tungsten System" embodied "an instruction for the cloud-based computing system associated with the media service to provide the data identifying the next one or more media items to the given playback device for use in retrieving the at least one media item from the cloud-based computing system associated with the cloud-based media service."

- [4.1] [wherein the representation of the one or more playback devices comprises at least one selectable indicator for a group of playback devices that includes the given playback device and one or more other playback devices that are to be configured for synchronous playback of the remote playback queue, and wherein the user input indicating the selection of at least one given playback device from the one or more playback devices comprises user input indicating a selection of the group of playback devices]
    - at least because Google has failed to establish (i) that the "Tungsten System" embodied independent claim 1 and (ii) that the "Tungsten System" embodied "at least one selectable indicator for a group of playback devices that includes the given playback device and one or more other playback devices that are to

112

> be configured for synchronous playback of the remote playback queue," and "user input indicating a selection of the group of playback devices."

- [7.0-7.2] [The computing device of claim 1, wherein: operating in the first mode further involves providing a control interface comprising one or more selectable control icons that are configured to control playback of the remote playback queue by the computing device; transitioning from the first mode to the second mode further involves modifying the control interface such that the one or more selectable control icons are configured to control playback of the remote playback queue by the at least one playback device instead of the computing device.]
    - at least because Google has failed to establish (i) that the "Tungsten System" embodied independent claim 1 and (ii) that the "Tungsten System" embodied wherein "operating in the first mode further involves providing a control interface comprising one or more selectable control icons that are configured to control playback of the remote playback queue by the computing device" and "transitioning from the first mode to the second mode further involves modifying the control interface such that the one or more selectable control icons are configured to control playback of the remote playback queue by the at least one playback device instead of the computing device."

- [8.0-8.2] [The computing device of claim 7, further comprising program instructions stored on the non-transitory computer-readable medium that, when executed by the at least one processor, cause the computing device to perform functions comprising: after transitioning to the second mode, receiving user input indicating a selection of a given control icon of the one or more selectable control icons, wherein the given control icon corresponds to a given transport control operation; and based on receiving the user input indicating the selection of the given control icon, causing the corresponding transport control operation to be executed by the given playback device.]
    - at least because Google has failed to establish (i) that the "Tungsten System" embodied independent claim 1, (ii) that the "Tungsten System" embodied dependent claim 7, and (iii) that the "Tungsten System" embodied "after transitioning to the second mode, receiving user input indicating a selection of a given control icon of the one or more selectable control icons."

- [9.0-9.1] [The computing device of claim 8, wherein the transport control operation comprises one of a play operation, a pause operation, a skip forward operation, or a skip back operation.]
    - at least because Google has failed to establish that the "Tungsten System" embodied independent claim 1, (ii) that the "Tungsten System" embodied dependent claim 7, and (iii) that the "Tungsten System" embodied dependent claim 8.

- [11.1] [displaying the representation of the one or more playback devices in response to receiving a selection of a displayed icon indicating that playback responsibility for the remote playback queue can be transferred]

113

- - at least because Google has failed to establish that the "Tungsten System" embodied independent claim 1 and (ii) that the "Tungsten System" embodied "displaying the representation of the one or more playback devices in response to receiving a selection of a displayed icon indicating that playback responsibility for the remote playback queue can be transferred."
- [16.1] [before displaying the representation of the one or more playback devices, receiving an indication that the one or more playback devices in the media playback system are available to accept playback responsibility for the remote playback queue]
  - at least because Google has failed to establish (i) that the "Tungsten System" embodied independent claim 15 (which mirrors independent claims 1 and 12), and (ii) that the "Tungsten System" embodied "before displaying the representation of the one or more playback devices, receiving an indication that the one or more playback devices in the media playback system are available to accept playback responsibility for the remote playback queue."

### 2. Response to Ex. 033-2 ("Nexus Q System")

Google summarily contends that the "Nexus Q System" qualifies as prior art to the '033 Patent under pre-AIA 35 U.S.C. § 102(a), (b), and (g) and "prior inventors for purposes of Section 102(g)[ ] includ[e] … Eugene Koh, Jason Simmons, John Grossman, and Dmitry Dolinsky." Google's Invalidity Contentions, Ex. 033-2 at 1-2. Google's contentions are flawed for various reasons.

For instance, Google failed to adequately establish the existence of a "Nexus Q System" at a time and place that would qualify it as prior art against the '033 Patent, much less the existence of a "Nexus Q System" that actually operated and did so for its intended purposes. Indeed, the "Nexus Q System" had many short comings even after the '033 Patent was conceived and reduced to practice. *See, e.g.,* SONOS-SVG2-00059360 at 363 ("The goal was to re-create this social streaming situation that we were shown during the [2012] Google I/O keynote -- namely, people queuing up their favorite tunes and most hilarious YouTube clips. That experiment turned out to be rather less exciting when we learned that re-creating this situation was impossible. The app, of course, is wholly incompatible with their non-Jelly Bean devices."); SONOS-SVG2-00059355 at 355 (June 27, 2012 article noting that "[r]ight now, the only device