# EXHIBIT 3
# Filed Under Seal

HIGHLY CONFIDENTIAL - SOURCE CODE - ATTORNEYS' EYES ONLY

CLEMENT SETH ROBERTS (STATE BAR NO. 209203)
croberts@orrick.com
BAS DE BLANK (STATE BAR NO. 191487)
basdeblank@orrick.com
ALYSSA CARIDIS (STATE BAR NO. 260103)
acaridis@orrick.com
EVAN D. BREWER (STATE BAR NO. 304411)
ebrewer@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:    +1 415 773 5700
Facsimile:    +1 415 773 5759

SEAN M. SULLIVAN (*pro hac* vice)
sullivan@ls3ip.com
MICHAEL P. BOYEA (*pro hac* vice)
boyea@ls3ip.com
COLE B. RICHTER (*pro hac* vice)
richter@ls3ip.com
LEE SULLIVAN SHEA & SMITH LLP
656 W Randolph St., Floor 5W
Chicago, IL 60661
Telephone:    +1 312 754 0002
Facsimile:    +1 312 754 0003

*Attorneys for Sonos, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| GOOGLE LLC,<br><br>    Plaintiff and Counter-defendant,<br><br>v.<br><br>SONOS, INC.,<br><br>    Defendant and Counter-claimant. | Case No. 3:20-cv-06754-WHA<br>Related to Case No. 3:21-cv-07559-WHA<br><br>**OPENING EXPERT REPORT OF DOUGLAS C. SCHMIDT** |

320.    For instance, based on receiving user input indicating a selection of at least one Receiver from the Device Picker menu, a YouTube Sender functions to transmit an instruction for the selected Receiver to take over responsibility for playback of the Watch Next queue from the YouTube Sender that in turn configures (e.g., sets up to operate in a particular way[32]) the Receiver to communicate with the YouTube cloud infrastructure in order to obtain data identifying a next one or more media items that are in the Watch Next queue, which takes the form of a WatchNextResponse that contains at least a videoId for the next media item in the Watch Next queue. *Supra* ¶¶156-57, 194-95.

321.    In this regard, (i) by virtue of a user device provisioned with any YouTube app transmitting a launch and setPlaylist instruction, a recipient Receiver becomes configured to communicate with the WatchNext service of the YouTube cloud infrastructure and (ii) by virtue of a Hub device provisioned with the YouTube Main or YouTube Music app transmitting a launch and ResumeSession instruction, a recipient Receiver becomes configured to communicate with the WatchNext service of the YouTube cloud infrastructure. *Supra* ¶¶156, 194.

322.    In addition to the evidence that I cited above, I have seen other evidence confirming that each YouTube Sender is programmed to function in this manner. For example, in Google's Second Supplemental Response to Sonos's Interrogatory No. 15, Google admitted:

> An example of a "method" the Screen[33] can receive from the YouTube Frontend service is the "GetWatchNext" method. Generally, at some point after the Screen begins playback of the current media item, GetWatchNext is called by the Screen to request the next WatchEndpPoint [*sic*]. In response to GetWatchNext, the Screen receives WatchNextResponse, a protobuf message, which ***contains the videoId for the next item to play***, along with metadata for the item currently playing, and other elements, such as an autoplay setting, for example.

Google LLC's Third Supplemental Objections and Responses to Plaintiff Sonos, Inc.'s First Set of Fact Discovery Interrogatories (Nos. 13, 14, 15), p. 21; *see also, e.g.*, 20-cv-6754, Dkt. 210.15 [Google's Motion for Summary Judgment Pursuant to the Court's Patent Showdown Procedure];

---

[32] SONOS-SVG2-00018365, 367 (defining "configure" as "to set up a computer or program to be used in a particular way"); SONOS-SVG2-00018495, 495 (defining "configure" as "to set up for operation especially in a particular way").

[33] As noted, "Screen" is another term for "Receiver."

HIGHLY CONFIDENTIAL - SOURCE CODE - ATTORNEYS' EYES ONLY

a Cast session with, or a stream transfer to, a Receiver, the Sender transitions to a Casting or remote mode in which it is no longer configured for playback of the Watch Next queue. To the extent that I understand the alleged alternative based on the limited information that Google has provided, it appears that this alleged alternative would not have been technically feasible for at least a couple of reasons.

517. For example, I understand that at least the YouTube Music app has streaming limitations that prevent streaming media from more than one device at a time. *See, e.g.*, SONOS-SVG2-00224826 [YouTube Premium & streaming limits] ("[Y]ou can only stream music-related videos on one device at a time.... If you begin streaming a second music-related video from another device, you'll see an error on the first device: 'Playback paused because your account is being used in another location.'").

518. As another example, even assuming Google could have resolved the aforementioned streaming limitations, it would have been hard to enable simultaneous playback of a given media item at both the Sender and Receiver without introducing new technical challenges. For instance, Google's alleged alternative where "the playback can be continued with only the video alone (and the audio muted)" would have presented technical challenges associated with synchronizing at least video playback of the given media item between a Sender and Receiver.

519. Likewise, Google's alleged alternative to implement "a 'set and forget' operation [that] could turn the receiver into a playback device without direct control from the YT app on the phone or tablet" would have presented technical challenges associated with how to control the Receiver's playback of the given media item since the Sender's transport controls would ostensibly control its own playback of the given media item. In this regard, Google's alleged alternative would have introduced complexity and cost that was entirely unnecessary. Google has failed to articulate if and how it would have addressed these technical challenges.

520. Next, to the extent that I understand this alleged alternative based on the limited information that Google has provided, it appears that this alleged alternative would not have been commercially acceptable. For example, to the extent that Google alleges that this alleged alternative applies to YouTube Music's music-only playback, Google's own employee testified "I

- 156 -

*absolutely do not* want my phone, which is a much lower quality audio device, outputting sound at the same time" as the system used with a Cast device. *See* Nicholson Dep. Tr., 159:17-160:8. As another example, assuming Google argues that the aforementioned streaming limitation problem could have been resolved by paying for a "family plan" or the like, it seems that consumers would not have found paying extra as commercially acceptable. As yet another example, it would seem that consumers would have found the aforementioned inability to use a Sender to control a Receiver's playback once in a Cast session in Google's alternative design as commercially unacceptable. In still a further example, one of Google's touted benefits of Casting (i.e., not draining a Sender's battery) would be nullified with such an approach. *Supra* ¶471.

521. It is therefore my opinion that Google's alleged "non-infringing alternative" #4 would not have been an available, acceptable non-infringing alternative at the time of Google's first infringement for at least these reasons.

E. **Alleged Alternative #5**

522. For Google's alleged "non-infringing alternative" #5, Google argues that, "[t]o the extent Sonos argues that the YouTube Remote prior art does not satisfy the claims of the '033 patent, the YouTube Remote prior art would also be a non-infringing alternative for at least those reasons." Google LLC's Eighth Supplemental Objections and Responses to Plaintiff Sonos Inc.'s First Set of Fact Discovery Interrogatories (No. 18), p. 15. Google also argues that "[t]he Court also found that the YouTube Remote prior art in combination with the YouTube Remote patent rendered claim 13 of the '615 patent invalid," and "[t]hat prior art combination is also prior art to the '033 patent and is therefore an available non-infringing alternative." *Id.*

523. It is my opinion that there are various flaws to Google's assertions regarding alleged "non-infringing alternative" #5.

524. *First*, I understand that it is Google's burden of proving by clear and convincing evidence that the YouTube Remote qualifies as prior art to the '033 Patent and prove that the YouTube Remote anticipates or renders obvious each and every Asserted Claim of the '033 Patent. Google, however, has yet to present any such evidence with respect to the '033 Patent. As a result, I do not have enough information to fully evaluate whether this alleged alternative would have been

**HIGHLY CONFIDENTIAL - SOURCE CODE - ATTORNEYS' EYES ONLY**

Dated: November 30, 2022

_____
DOUGLAS C. SCHMIDT