# EXHIBIT 6

# FILED UNDER SEAL

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
      Charles K. Verhoeven (Bar No. 170151)
2     charlesverhoeven@quinnemanuel.com
      Melissa Baily (Bar No. 237649)
3     melissabaily@quinnemanuel.com
      Lindsay Cooper (Bar No. 287125)
4     lindsaycooper@quinnemanuel.com
   50 California Street, 22nd Floor
5  San Francisco, California 94111-4788
   Telephone: (415) 875-6600
6  Facsimile: (415) 875-6700

7  Attorneys for GOOGLE LLC

8

9
                    UNITED STATES DISTRICT COURT
10
                    NORTHERN DISTRICT OF CALIFORNIA
11
                    SAN FRANCISCO DIVISION
12

13   GOOGLE LLC,

14                          Plaintiff

15        v.                                            Case No. 3:20-cv-06754-WHA

16   SONOS, INC.,

17                          Defendant.

18

19   **GOOGLE LLC'S NINTH SUPPLEMENTAL OBJECTIONS AND RESPONSES TO
     PLAINTIFF SONOS, INC.'S FIRST SET OF FACT DISCOVERY INTERROGATORIES**
20                                  **(NO. 12)**

21         Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant Google LLC

22  ("Google") hereby objects and responds to Plaintiff Sonos, Inc.'s ("Sonos") First Set of Fact

23  Discovery Interrogatories to Defendant ("Interrogatories"). Google responds to these

24  Interrogatories based on its current understanding and the information reasonably available to

25  Google at the present time. Google reserves the right to supplement these responses if and when

26  additional information becomes available.

27

28

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**OBJECTIONS AND RESPONSES TO FACT DISCOVERY INTERROGATORIES**

**INTERROGATORY NO. 12:**

Separately for each Asserted Claim of each Patent-In-Suit, set forth in detail the complete legal and factual basis for any assertion by Google that the Accused Instrumentalities have not infringed each such claim, including, but not limited to: an identification of each Asserted Claim of each Patent-In-Suit that Google believes is not infringed; an identification of which elements of each such Asserted Claim are allegedly not present in the Accused Instrumentalities; and for each claim element that is allegedly not present in the Accused Instrumentalities, an identification and detailed explanation of the basis for Google's assertion that the claim element is allegedly not present in the Accused Instrumentalities, including the basis for any assertion by Google that any differences between the claim element and the corresponding structure in the Accused Instrumentalities are not insubstantial and/or that the claim element and the corresponding structure in the Accused Instrumentalities do not perform substantially the same function in substantially the same way to achieve substantially the same result; and an identification of all facts supporting or refuting Google's non-infringement allegations, all persons knowledgeable of these facts (including every person whose knowledge or opinion is relied upon as a basis for Google's non-infringement assertions, the opinion or substance of his/her knowledge, and the entire basis of that knowledge or opinion), and all documents and things, including the Bates number(s) of such documents and things, concerning Google's assertion of non-infringement.

**OBJECTIONS:** Google incorporates by reference all of its General Objections as if fully set forth herein. Google objects to the characterization of this interrogatory as a single interrogatory given that it contains multiple discrete subparts under Fed. R. Civ. P. 33(a)(1). Google further objects to this interrogatory on the grounds that it is vague, ambiguous, unclear as to information sought, and lacking sufficient particularity to permit Google to reasonably prepare a response with respect to the undefined terms "differences between the claim element and the corresponding structure in the Accused Instrumentalities," "insubstantial," "do not perform substantially the same function in substantially the same way to achieve substantially the same result," and "knowledgeable

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

of." Google further objects to this interrogatory on the grounds that it assumes the existence of hypothetical facts that are incorrect or unknown to Google.

Google also objects to this interrogatory as overbroad, burdensome, and not proportional to the needs of the case, including to the extent it (i) seeks information regarding "[s]eparately for each Asserted Claim of each Patent-In-Suit," (ii) seeks identification of "*all* persons knowledgeable" of certain facts, and (iii) seeks "*all* documents things" concerning Google's assertion of non-infringement. Google further objects to this interrogatory as overbroad and unduly burdensome to the extent that it seeks information that is publicly available, not uniquely within the control of Google, or is equally available to Sonos. Google additionally objects to this interrogatory to the extent it seeks communications and information protected from disclosure by the attorney-client privilege and/or attorney work product doctrine. Google further objects to this interrogatory to the extent it seeks confidential and/or proprietary business information. Google also objects to this interrogatory to the extent that it premature seeks expert discovery, opinion, and/or testimony. Google also objects to this interrogatory on the grounds that it seeks information that is obtainable through less burdensome and more convenient forms of discovery.

Google further objects to this interrogatory to the extent that it is premature insofar as it seeks expert testimony before expert discovery. Google further objects to this interrogatory to the extent it improperly attempts to shift the burden of proving infringement, which belongs to Sonos, not Google. Google further objects to this interrogatory to the extent it purports to seek ESI before Sonos has shown good cause for such ESI and before the parties have agreed on a procedure for doing so in accordance with the Court's OGP.

**RESPONSE:**

Subject to and without waiving the foregoing General and Specific objections, Google responds, as follows:

Google objects to this interrogatory on the grounds that it is premature, improperly seeks expert testimony, and improperly attempts to shift the burden to Google. Sonos has failed to meet its burden to serve infringement contentions that provide Google adequate notice of Sonos's infringement theories and claims for infringement, and thus Google lacks sufficient information to

1  accordance with a given one of the first and second zone scenes respectively comprising
2  a given one of the first and second predefined groupings of zone players
3  - based on the instruction, transitioning from operating in the standalone mode to
4  operating in accordance with the given one of the first and second predefined groupings
5  of zone players such that the first zone player is configured to coordinate with at least
6  one other zone player in the given one of the first and second predefined groupings of
7  zone players over a data network in order to output media in synchrony with output of
8  media by the at least one other zone player in the given one of the first and second
9  predefined groupings of zone players

*Dependent Claims*. The Accused Instrumentalities do not infringe the dependent claims for at least the same reasons as set forth with respect to the independent claims above.

**FIRST SUPPLEMENTAL RESPONSE:**

Subject to and without waiving the foregoing General and Specific objections, Google further responds, as follows:

Google objects to the term "Accused Instrumentalities" to the extent it purports to include instrumentalities Sonos has not identified by name or model number in its infringement contentions, or for which Sonos has not provided Google with its infringement theories. For example, Google objects to the term to the extent it purports to include the Podcast application, which Sonos is no longer accusing of infringement. Google also objects to the term to the extent it purports to include the Spotify application, which Sonos is no longer accusing of infringement.

Sonos's infringement contentions are also incoherent, vague, and ambiguous, and it is accordingly difficult, if not impossible, for Google to understand Plaintiff's theories of infringement. Google has detailed issues in Sonos's infringement contentions in correspondence among the parties, including its November 2, 2021 letter, and Sonos has continued to fail to remedy them. Sonos has also vaguely asserted that certain terms should be construed as "plain and ordinary meaning," while at the same time refusing to explain what it contends is the plain and ordinary meaning of the term. Google has accordingly used its own constructions of the disputed terms in

1  particular playback system." The accused Google Play Music application is not concerned with and
2  do not use "zones" or "zone group." At most, Sonos's contentions identify traditional speaker
3  groupings. A grouping of speakers in the accused Google Play Music application do not require or
4  suggest that the speakers are part of a particular area of "zone," and, in fact, speakers may be located
5  in different areas.

6  Google further responds by referring Sonos to the source code produced in this case,
7  including the following exemplary source code files: cloud_queue_rpc.proto,
8  GetItemWindowImpl.java, playermanager.js, cloudqueue.js, getitemwindowrequest.js,
9  cloudqueueexterns.js, CloudQueueManager.java, CloudQueueSyncCoordinator.java, constant.js.

10  **'033 Patent**

11  **'033 Patent, Claim 1**

12  "**computing device comprising: at least one processor; a non-transitory computer
13  readable medium…**" Google does not infringe Claim 1 because Sonos has not shown Google sells,
14  offers to sell, or imports into the United States a "computing device comprising: at least one
15  processor; [and] a non-transitory computer readable medium" that contains the accused application
16  and functionality.

17  "**based on receiving the user input, transmitting an instruction for the at least one given
18  playback device to take over responsibility for playback of the remote playback queue from
19  the computing device, wherein the instruction configures the at least one given playback device
20  to (i) communicate with the cloud-based computing system in order to obtain data identifying
21  a next one or more media items that are in the remote playback queue, (ii) use the obtained
22  data to retrieve at least one media item in the remote playback queue from the cloud-based
23  media service; and (iii) play back the retrieved at least one media item**." Sonos's contentions
24  fails to demonstrate that this limitation is satisfied. For example, Sonos's contentions allege that
25  based on receiving the user input, a YouTube application running on the alleged computing device
26  transmits a "setPlaylist" message "to one or more MDx servers." Sonos's Infringement Contention,
27  Ex. B at 37. The MDx servers then generate a further set Playlist message "requesting the screen to
28  start playing the video identified by the videoID from the currentTime." *See, e.g.,* GOOG-

1  SONOSWDTX-00041650 at 57. Thus, it is the MDx server, not the alleged computing device, that
2  transmits an instruction for the at least one given playback device to take over responsibility for
3  playback.

4        Moreover, Sonos has failed to demonstrate that the setPlaylist message (whether from the
5  computing device or the MDx server) performs all the functions required by the claim, namely: (i)
6  communicate with the cloud-based computing system in order to obtain data identifying a next one
7  or more media items that are in the remote playback queue, (ii) use the obtained data to retrieve at
8  least one media item in the remote playback queue from the cloud-based media service; and (iii)
9  play back the retrieved at least one media item." The setPlaylist message does not perform all of
10 these functions. Instead, there are multiple API requests and messages that occur after the setPlaylist
11 request between the server and the cast receiver to obtain data to play back from the alleged remote
12 playback queue.

13       "**remote playback queue provided by a cloud-based computing system associated with**
14 **a cloud-based media service.**" The only written description support for this limitation in the '033
15 patent is for a remote playback queue managed by a third-party. ==Thus, a person of ordinary skill in
16 the art would understand that the plain meaning of a "remote playback queue provided by a cloud-
17 based computing system associated with a cloud-based media service" in the context of the claims
18 and specification requires a third-party playback queue==. ==The CloudQueue server or MDx is only
19 provided by Google, not supplied by third parties.==

20       "**detecting an indication that playback responsibility for the remote playback queue**
21 **has been successfully transferred from the computing device to the at least one given playback**
22 **device.**" Sonos's contentions fail to demonstrate that this limitation is satisfied. For example,
23 Sonos argues that the "cast button" changing colors demonstrates that the computing device detects
24 the claimed indication. But Sonos has not identified what specifically it contends is the indication
25 that is detected by the computing device or how it satisfies the claims. Sonos appears to rely upon
26 the YouTube application detecting a successful connection to an MDxSession. Sonos's
27 Infringement Contentions, Ex. B at 57. But Sonos has failed to articulate how a connection to an
28 MDxSession indicates that playback responsibility has been successfully transferred. An MDx

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

Session is established prior to playback on the screen or speaker, and Sonos has failed to show that playback responsibility from the alleged computing device to the alleged at least one given playback device is one and the same with connection to an MDxSession.

Sonos has also failed to show that the claims are satisfied under the doctrine of equivalents ("DoE"). Initially, Sonos's DoE analysis is conclusory and does not cite to evidence or provide an explanation that might support a finding of infringement under DoE. Thus, Sonos has failed to meet its burden under DoE. To the extent Sonos is permitted to expand upon its DoE analysis or provide additional evidence or explanation, Google reserves the right to supplement its response.

Additionally, as it does for the '615 patent, Sonos argues that under DoE the "playback queue" the "Autoplay" feature may be considered part of the playback queue. Sonos's conclusory DoE analysis fails to demonstrate that the difference between the claims and the accused AutoPlay feature is an insubstantial difference or that the difference meets the function/way/result test. Google's products do not perform substantially the same function, in substantially the same way to achieve substantially the same result. The claimed invention contemplates a system in which a user may "queue up" items in a playback queue and then transfer playback of a "playback queue" from a control device to a playback device. '033 patent, 17:10-17. The user may select media items (e.g., individual tracks or playlists provided by online music providers, or station) that should be added to the "playback queue," and may add, delete, or move tracks, or may play them back in a particular order (shuffled, unshuffled, repeat track, etc.). '615 patent, 16:51-55, 16:22-26. Because the accused Autoplay feature is not part of the "playback queue," it does not provide the features and functionalities of a queue. Users cannot edit the Autoplay media items, cannot move them around, cannot play them back in an unshuffled order, cannot delete them, etc. In other words, Sonos's DoE argument essentially removes the requirement that the "playback device" playback a "playback queue" and reads the term so broadly as to cover any gapless playback of audio. There is a substantial difference between playing back media items from a playback queue, versus playing back a recommended set of media that is not added to the playback queue.

**'033 Patent, Claims 2, 4, 9, 11, 16**

Claims 2, 4, 9, 11, and 16 depend on Claim 1. Accordingly, Google does not infringe these claims at least for the reasons identified in connection with Claim 1.

Further, the accused YouTube applications do not infringe Claim 2 for the additional reasons that Sonos has not shown "the instruction comprises an instruction for the cloud-based computing system associated with the media service to provide the data identifying the next one or more media items to the given playback device for use in retrieving the at least one media item from the cloud-based computing system associated with the cloud-based media service." For example, Sonos points to the transmission of a "setPlaylist" message for this limitation. But the setPlaylist message does not cause a media service to "provide the data identifying the *next* one or more media items to the given playback device for use in retrieving the at least one media item from the cloud-based computing system." At most, Sonos has shown that the setPlaylist message causes the MDx server to provide a videoID corresponding to the media item that is currently playing. Further, the accused YouTube applications do not infringe Claim 11 for the additional reasons that Sonos has not shown "a displayed icon indicating that playback responsibility for the remote playback queue can be transferred."

**Claim 12.**

Claim 12 recites the same limitations as Claim 1. Accordingly, Google does not infringe this claim at least for the reasons identified in connection with Claim 1.

**Claim 13.**

Claim 13 depends on Claim 12. Accordingly, Google does not infringe these claims at least for the reasons identified in connection with Claim 12.

Further, the accused YouTube applications do not infringe Claim 13 for the additional reasons that Sonos has not shown "the instruction comprises an instruction for the cloud-based computing system associated with the cloud-based media service to provide the data identifying the next one or more media items to the given playback device for use in obtaining the at least one media item from the cloud-based computing system associated with the cloud-based media service." For example, Sonos points to the transmission of a "setPlaylist" message for this

1  limitation. But the setPlaylist message does not cause a media service to "provide the data
2  identifying the *next* one or more media items to the given playback device for use in retrieving the
3  at least one media item from the cloud-based computing system." At most, Sonos has shown that
4  the setPlaylist message causes the MDx server to provide a videoID corresponding to the media
5  item that is currently playing.

### '885 and '966 Patents

*Direct Infringement By Google*

Sonos accuses Google of directly infringing by "offering to sell, selling, and/or importing into the United States" its "Pixel" brand of computing devices in violation of 35 U.S.C. § 271(a). However, Sonos has not provided any evidence that Pixel devices include the accused Google Home applications that Sonos contends are necessary for infringement when offered for sale, sold or imported in the United States.

Sonos also purports to identify numerous third-party devices in an Appendix 1 to the infringement contentions. Sonos has not provided any evidence that Google offers to sell, sells or imports into the United States any or all of the devices in Appendix 1. Nor has Sonos shown that any or all of these devices are even capable of including the accused Google Home application. For example, Sonos has not provided any evidence that Google offers to sell, sells or imports into the United States any Arirang (North Korean) devices, or Yota (Russian device), or that these North Korean and Russian devices are even capable of including the accused Google Home applications.

Sonos further alleges that Google infringes the asserted claims "by virtue of installing at least the Google Home app onto computing devices, which constitutes 'mak[ing]' an infringing device under 35 U.S.C. § 271(a)" and because "Google has directly infringed and continues to directly infringe each asserted claim of the '885 Patent by virtue of using Cast-enabled media players, which constitutes 'us[ing]' an infringing device under 35 U.S.C. § 271(a)." But Sonos has not provided any evidence that Google installs the accused applications onto the accused computing devices or Cast-enabled media players. Nor has Sonos shown that any updates (*e.g.*, firmware updates) would include the accused functionality. Accordingly, Sonos has not shown any "making" of an infringing device by Google.

continue to be accessed through a tap or other physical interface to the device, permitting control of volume or media playback. Further, Sonos's understanding of the "invoked" and "uninvoked" states is flawed. Sonos argues that the "Cast-enabled media players" are capable of existing in an uninvoked state and an invoked state:

> Cast-enabled media player and that is capable of existing in two states – an uninvoked state in which each Cast-enabled player in the previously saved group is configured for individual playback of audio and an invoked state in which the Cast-enabled players in the previously-saved group are configured for synchronous playback of audio. Ex. D at 5.

But even under Sonos's theories, the "Cast-enabled media player" would be "invoked" by a current "cast" command to it that initiated the alleged "individual playback of audio" and also if the "Cast-enabled media player" is playing audio in the "previously-saved" group. Accordingly, Sonos has not made any distinction between an invoked and an uninvoked group or "Cast-enabled media player" and therefore its infringement theories are flawed and Google denies them.

Finally, Sonos has not identified any infringement theory for the term "selected for invocation." Ex. D at 10-11. Sonos appears to be accusing the same functionality of being "invoked" and being "selected for invocation," but the terms are different and distinguished by the claims. *Id.* ("the Cast-enabled media player continues to operate in the standalone mode until one of the first 'speaker group' (which is the claimed 'first zone scene') or the second predefined "speaker group" (which is the claimed 'second zone scene') has been selected for invocation."). Sonos has not identified any selection process for 'invoking' and therefore its infringement theories are deficient. The accused products do not practice the "selected for invocation" limitation.

**SECOND SUPPLEMENTAL RESPONSE**:

Subject to and without waiving the foregoing General and Specific objections, Google further responds, as follows:

**'033 Patent (All Asserted Claims)**

On November 23, 2022, Sonos filed a motion for leave to amend to add new features and theories of infringement ("Amended Infringement Contentions"), including citations to numerous

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

new "exemplary" source code files. Sonos's new allegations are vague, and ambiguous, and do not adequately disclose Sonos's theories of infringement. Google objects to these untimely additions. Nevertheless, to the extent Sonos is permitted to introduce these new theories, Google contends that its products do not infringe for at least the reasons discussed in its prior responses. In addition to the reasons discussed above, Sonos's Amended Infringement Contentions fail to establish that the accused YouTube applications practice at least the following limitations:

**"remote playback queue provided by a cloud-based computing system associated with a cloud-based media service."** As Google explained in its prior response, a person of ordinary skill in the art would understand that the plain meaning of a "remote playback queue provided by a cloud-based computing system associated with a cloud-based media service" in the context of the claims and specification requires a third-party playback queue. Google does not infringe under the plain meaning because Sonos has not identified any third-party queue. Google incorporates by references the briefing and exhibits on its Motion for Leave to file Supplemental Claim Construction Briefing (Dkt. No. 375).

Google further incorporates by reference its third supplemental response to Sonos's Interrogatory No. 15. As explained in that response, when playing back media on the alleged "computing device," the accused YouTube application plays back a local queue stored on the computing device. Thus, even under Sonos's interpretation of "remote playback queue," Sonos has failed to show the accused YouTube application infringes the "remote playback queue" limitations that require playback of the remote playback queue on the computing device.

**"detecting an indication that playback responsibility for the remote playback queue has been successfully transferred from the computing device to the at least one given playback device."** Sonos has failed to show that the accused products satisfy this limitation. Sonos contends that the accused products are "programmed with the functionality capability [*sic*] to detect an

indication that playback responsibility for the remote playback queue has been successfully transferred," and asserts that this limitation is satisfied during a stream transfer because allegedly a "Cast-enabled display will take back over playback responsibility that was the subject of the 'stream transfer' if the Cast-enabled display does not receive such an indication." Sonos's contentions are vague, ambiguous, and do not adequately disclose Sonos's theories of infringement. The claim language requires that the computing device "detect[] an indication that playback responsibility" was "successfully transferred." Even crediting Sonos's allegations, Sonos fails to explain how detecting that playback responsibility was *not* successfully transferred satisfies this limitation.

Moreover, the claims recite that the detection must occur before transitioning from the claimed "first mode" to the claimed "second mode." For example, the limitation that follows the detecting limitation recites: "after detecting the indication, transitioning from i) the first mode in which the computing device is configured for playback of the remote playback queue to ii) a second mode in which the computing device is configured to control the at least one given playback device's playback of the remote playback queue and the computing device is no longer configured for playback of the remote playback queue." Sonos's contentions do not explain how the transition from the "first mode" to the "second mode" occurs "after detecting the indication." For instance, crediting Sonos's allegation that the "Cast-enabled display will take back over playback responsibility that was the subject of the 'stream transfer' if the Cast-enabled display does not receive such an indication," at most shows that the device will not transition from the claimed first mode to the claimed second mode.

In short, Sonos has failed to present any theory establishing that the accused YouTube applications "detect[] an indication that playback responsibility for the remote playback queue has been successfully transferred from the computing device to the at least one given playback device," let alone a detection that occurs before transitioning from the first mode to the second mode.

**'033 Patent (Claim 4)**

The accused YouTube applications do not infringe Claim 4 for at least the reason that Sonos has not shown a "representation of the one or more playback devices comprises at least one selectable indicator for a group of playback devices that includes the given playback device and one or more other playback devices that are to be configured for synchronous playback of the remote playback queue." The accused YouTube applications do not include functionality for grouping speakers and Sonos has not shown YouTube applications have any awareness of whether a particular icon is for a speaker group. Thus, Sonos has failed to show that icons displayed in the YouTube applications are a "selectable indicator for a group of playback devices."

**'885 and '966 Patents**

Sonos's infringement contentions are vague and ambiguous, and do not adequately disclose Sonos's theories of infringement. Google contends that its products do not infringe for at least the reasons discussed in its prior responses. Based on source code print requests made by Sonos, which may indicate additional information regarding its infringement contentions, Google also discloses the following, while maintaining that Sonos's Infringement Contentions fail to establish that the accused products practice at least the following limitations:

**"standalone mode" (and all related limitations).** Google hereby incorporates by reference its responses to Sonos's interrogatory number 18.

**"receiving a fourth request to invoke the second zone scene; and based on the fourth request, causing the first zone player to (a) cease to operate in accordance with the first predefined grouping of zone players such that the first zone player is no longer configured to coordinate with at least the second zone player to output media in synchrony with output of media by at least the second zone player."** Google's accused products do not infringe because after the computing device "receiv[es] a fourth request to invoke the second zone scene," with

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

| | | |
|---|---|---|
| DATED: November 29, 2022 | | QUINN EMANUEL URQUHART & SULLIVAN, LLP |

By:     */s/ Charles K. Verhoeven*

Charles K. Verhoeven (*pro hac vice*)
charlesverhoeven@quinnemanuel.com
Melissa Baily (*pro hac vice*)
melissabaily@quinnemanuel.com
Lindsay Cooper (*pro hac vice*)
lindsaycooper@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:     (415) 875 6600
Facsimile:      (415) 875 6700

*Counsel for Defendant Google LLC*