# Exhibit 34
# Filed Under Seal

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1              UNITED STATES DISTRICT COURT
 2         FOR THE NORTHERN DISTRICT OF CALIFORNIA
 3   SONOS, INC.,
 4        Plaintiff,
 5            vs.            Case No. 3:21-CV-07559-WHA
 6   GOOGLE LLC,
 7        Defendant.
     _____
 8
     -AND-
 9
     GOOGLE LLC,
10
          Plaintiff,
11
              vs.            Case No. 3:20-CV-06754-WHA
12
     SONOS, INC.,
13
          Defendant.
14   _____
         **HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY**
15
             ZOOM DEPOSITION OF JEFF TORGERSON
16
     (Reported Remotely via Video & Web Videoconference)
17
         Stanwood, Washington (Deponent's location)
18
                 Thursday, August 11, 2022
19
                          Volume 1
20
     STENOGRAPHICALLY REPORTED BY:
21   REBECCA L. ROMANO, RPR, CSR, CCR
     California CSR No. 12546
22   Nevada CCR No. 827
     Oregon CSR No. 20-0466
23   Washington CCR No. 3491
24   JOB NO. 5367029
25   PAGES 1 - 198
```

Page 1

```
 1      UNITED STATES DISTRICT COURT
 2   FOR THE NORTHERN DISTRICT OF CALIFORNIA
 3  SONOS, INC.,
 4      Plaintiff,
 5         vs.    Case No. 3:21-CV-07559-WHA
 6  GOOGLE LLC
 7      Defendant.
    _____
 8  -AND-
 9  GOOGLE LLC,
10      Plaintiff,
11         vs.    Case No. 3:20-CV-06754-WHA
12  SONOS, INC.,
13      Defendant.
    _____
14
15
16      DEPOSITION OF JEFF TORGERSON, taken on
17  behalf of the Google LLC, with the deponent located
18  in Stanwood, Washington, commencing at 9:04 a.m.,
19  Thursday, August 11, 2022, remotely reported via
20  Video & Web Videoconference before
21  REBECCA L. ROMANO, a Certified Shorthand
22  Reporter, Certified Court Reporter, Registered
23  Professional Reporter.
24
25
                                              Page 2
```

```
 1       APPEARANCES(cont'd)
 2  (All parties appearing via Web Videoconference)
 3
 4  ALSO PRESENT:
 5     Dustin Brown, Videographer
 6     Catarina Xu, Summer Associate, Quinn Emanuel
 7  Urquhart & Sullivan, LLP
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25  /////
                                              Page 4
```

```
 1      APPEARANCES OF COUNSEL
 2  (All parties appearing via Web Videoconference)
 3
 4  For the Sonos, Inc:
 5     LEE SULLIVAN SHEA & SMITH LLP
 6     BY:  AMY D. BRODY
 7     Attorney at Law
 8     656 Randolph Street
 9     Floor 5W
10     Chicago, Illinois 60661
11     (312) 754-9602
12     abrody@ls3ip.com
13
14  For the Google LLC:
15     QUINN EMANUEL URQUHART & SULLIVAN, LLP
16     BY:  JOCELYN MA
17     Attorney at Law
18     50 California Street
19     22nd Floor
20     San Francisco, California 94111
21     (415) 875-6600
22     jocelynma@quinnemanuel.com
23
24
25  /////
                                              Page 3
```

```
 1              I N D E X
 2  DEPONENT                    EXAMINATION
 3  JEFF TORGERSON                     PAGE
    VOLUME 1
 4
 5       BY MS. MA                10
 6
 7
 8            E X H I B I T S
 9  NUMBER                             PAGE
10            DESCRIPTION
11  Exhibit 1146 Google LLC's Notice of    17
12       Subpoenas to Third Party Jeff
13       Torgerson;
14
15  Exhibit 1147 LinkedIn Profile;         19
16
17  Exhibit 1148 Email String Subject: Re: 58
18       Thinking of structure,
19       SONOS-SVG2-00081179 -
20       SONOS-SVG2-00081180;
21
22  Exhibit 1149 Email String Subject: Re: 75
23       Sonos/Google Play Music
24       Meeting, SONOS-SVG2-00081105
25       - SONOS-SVG2-00081108;
                                              Page 5
```

## Page 6

```
 1        E X H I B I T S (cont'd)
 2  NUMBER                              PAGE
 3        DESCRIPTION
 4  Exhibit 1150 Email String Subject: Re:    104
 5     Sonos/Google Play Music
 6     Meeting, SONOS-SVG2-00081097-
 7     SONOS-SVG2-00081100;
 8
 9  Exhibit 1151 Email String Subject: Re:    109
10     PLEASE REVIEW: SF Preview
11     Partner Trip Summary,
12     SONOS-SVG2-00078409 -
13     SONOS-SVG2-00078412;
14
15  Exhibit 1152 Email String Subject: Torg's  117
16     notes, Bates
17     SONOS-SVG2-00078510 -
18     SONOS-SVG2-00078511;
19
20  Exhibit 1153 Email String Subject: FW:    121
21     GPM now supports Play to
22     Sonos via Muse,
23     SONOS-SVG2-00070566 -
24     SONOS-SVG2-00070567;
25  /////
```

## Page 7

```
 1        E X H I B I T S (cont'd)
 2  NUMBER                              PAGE
 3        DESCRIPTION
 4  Exhibit 1154 Email String Subject: Fwd:   132
 5     Google Play Music on Sonos
 6     V-Next, SONOS-SVG2-00188768 -
 7     SONOS-SVG2-00188770;
 8
 9  Exhibit 1155 Email String Subject: RE:    163
10     Certification Program
11     Meeting, SONOS-SVG2-00081025
12     - SONOS-SVG2-00081028.
13
14
15        PREVIOUSLY MARKED EXHIBITS
16  NUMBER                              PAGE
17  Exhibit 1021                        180
18
19
20
21
22
23
24
25  /////
```

## Page 8

 1    Stanwood, Washington; Thursday, August 11, 2022
 2         9:04 a.m.
 3         ---o0o---
 4
 5    THE VIDEOGRAPHER: Good morning. We are       09:04:09
 6  on record at 9:04 a.m. on August 11th, 2022.
 7    This is the video-recorded deposition of
 8  Jeff Torgerson.
 9    My name is Dustin Brown, here with our
10  court reporter Rebecca Romano.              09:04:22
11    This deposition is being conducted
12  remotely using virtual technology. The caption of
13  this case is Google, LLC versus Sonos,
14  Incorporated.
15    Please note that audio and video          09:04:35
16  recording will take place unless all parties agree
17  to go off the record.
18    If there are any objections to
19  proceeding, please state them at the time of your
20  appearance, beginning with the noticing attorney.  09:04:44
21    MS. MA: Good morning, everyone.
22    My name Jocelyn Ma with Quinn Emanuel
23  Urquhart & Sullivan on behalf of Google.
24    MS. BRODY: Amy Brody of
25  Lee Sullivan Shea & Smith on behalf of Sonos and   09:04:57

## Page 9

 1  the witness.                               09:05:03
 2    (Discussion off the stenographic record.)
 3    THE COURT REPORTER: At this time, I will
 4  ask counsel to agree on the record that there is no
 5  objection to this deposition officer administering  09:05:03
 6  a binding oath to the deponent via remote
 7  videoconference, starting with the noticing
 8  attorney, please.
 9    MS. MA: No objection.
10    MS. BRODY: No objection.              09:05:26
11    THE COURT REPORTER: If you could raise
12  your right hand for me, please.
13    THE DEPONENT: (Complies.)
14    THE COURT REPORTER: You do solemnly
15  state, under penalty of perjury, that the testimony  09:05:26
16  you are about to give in this deposition shall be
17  the truth, the whole truth and nothing but the
18  truth?
19    THE DEPONENT: I do.
20                                            09:05:27
21
22
23
24
25  /////                                       09:05:27

### Page 10

```
 1            JEFF TORGERSON,                    09:05:45
 2   having been administered an oath, was examined and
 3   testified as follows:
 4
 5               EXAMINATION                     09:05:45
 6   BY MS. MA:
 7      Q.  Good morning, Mr. Torgerson.
 8      A.  Good morning.
 9      Q.  As I mentioned, my name is Jocelyn Ma.  I
10   represent Google in this matter and I will start by    09:05:52
11   saying, thanks for being here today.
12          Could you please state and spell your
13   full name for the record.
14      A.  Yeah.  Jeff Torgerson.  J-E-F-F
15   T-O-R-G-E-R-S-O-N.                              09:06:03
16      Q.  And could you also please state your
17   address for the record as well.
18      A.  25230 12th Avenue Northwest, Stanwood,
19   Washington 98292.
20      Q.  Thank you.                                09:06:21
21          Have you been deposed before,
22   Mr. Torgerson?
23      A.  Yes, a long time ago.
24      Q.  Just once?
25      A.  Yeah.                                     09:06:31
```

### Page 11

```
 1      Q.  And what cases -- or excuse me -- what    09:06:32
 2   case was that in?
 3      A.  I don't honestly remember.  It was with
 4   InfoSpace.
 5      Q.  Is that a place that you formally were    09:06:43
 6   employed?
 7      A.  Correct.  Yes.
 8      Q.  Do you remember what kind of case it was?
 9      A.  No, honestly, I don't.
10      Q.  Was it a civil case?                      09:06:56
11      A.  I'm sure it was.  Yes.  Yes, I think so.
12      Q.  And do you remember who the other party
13   was that was involved?
14      A.  I don't.
15      Q.  Do you recall what the subject matter of  09:07:09
16   your testimony was?
17      A.  Around the technology that we were using.
18      Q.  What kind of technology was that.
19      A.  Just Web software, you know, writing Web
20   pages for companies.                             09:07:23
21      Q.  That deposition did not relate to your
22   work at Sonos; is that correct?
23      A.  Correct.
24      Q.  Have you testified at trial before?
25      A.  No.                                       09:07:34
```

### Page 12

```
 1      Q.  Well, it sounds like you have some        09:07:34
 2   experience with depositions, but you mentioned it
 3   was long ago.  So I'm going to go over some -- some
 4   ground rules.
 5          I'm going to do my very best not to        09:07:46
 6   interrupt you, and I would ask you to please wait
 7   for me to finish my question as well before you
 8   start answering.
 9          Can you do that for me?
10      A.  Yes.                                      09:07:55
11      Q.  There's also a court reporter here who is
12   transcribing everything we say on the record today.
13   So I'm going to ask you to give verbal, audible
14   answers, instead of things like head nods.
15          Okay?                                     09:08:10
16      A.  Yes.
17      Q.  Other than this Zoom session and the
18   Exhibit Share screen, do you have any other windows
19   or applications open?
20      A.  No.                                       09:08:19
21      Q.  Could you represent to me that you won't
22   be reviewing any other materials today other than
23   the ones I show?
24      A.  No.
25      Q.  You can't represent that to me?           09:08:30
```

### Page 13

```
 1      A.  Oh, sorry.  Yes, I can.                   09:08:32
 2      Q.  No problem.
 3      A.  I answered the wrong way.
 4          Yes.
 5      Q.  No problem.                               09:08:36
 6          Can you also represent to me that you
 7   won't be communicating with anyone else, either by
 8   cell phone or any other method, while we are on the
 9   record today?
10      A.  Yes.                                      09:08:46
11      Q.  Today your counsel might raise objections
12   to my questions, but unless Ms. Brody specifically
13   instructs you not to answer, I'm entitled to your
14   full and truthful answer.
15          Does that make sense?                     09:08:57
16      A.  Yes.
17      Q.  And I'm going to try to break every hour
18   or so, but if you need a break at any other time,
19   please just let me know.  I just ask that it not be
20   while a question is pending unless it's to deal   09:09:08
21   with a privilege issue.
22          Okay?
23      A.  Yes.
24      Q.  Finally, Mr. Torgerson, do you understand
25   that you are under oath and have sworn to tell the  09:09:16
```

**Page 54**

```
 1       MS. MA:  We have been going for over an         10:04:16
 2   hour.  Let's take a break.
 3       THE DEPONENT:  Okay.
 4       THE VIDEOGRAPHER:  Sorry, guys.  I was on
 5   mute.                                                10:04:27
 6       Going off record at 10:04 a.m.
 7       (Recess taken.)
 8       THE VIDEOGRAPHER:  We are back on record
 9   at 10:25 a.m.
10   Q.  (By Ms. Ma)  Welcome back, Mr. Torgerson.       10:25:07
11   A.  Thanks.
12   Q.  Did you speak with Ms. Brody during the
13   break about the content of your testimony?
14   A.  No.
15   Q.  I want to go back to one thing.                 10:25:19
16       Do you recall me asking whether it was
17   your understanding that Sonos owned the cloud queue
18   technology that allowed for the Google Play Music
19   implementation?
20   A.  Yeah.  I recall that.                           10:25:35
21   Q.  And do you recall saying that it was your
22   understanding that Sonos owned that cloud queue
23   technology?
24   A.  Correct.
25   Q.  And you mentioned that was your                 10:25:48
```

**Page 55**

```
 1   understanding because it was your role to help      10:25:50
 2   people integrate onto Sonos' platforms, and so the
 3   platform integration was stuff that Sonos had
 4   developed?
 5   A.  That's correct, yes.                            10:26:07
 6   Q.  And so just to make sure I understand,
 7   you are -- you I believe Sonos owned the
 8   cloud queue technology because it was part of a
 9   platform integration and that platform speaker
10   group fabrication was something Sonos developed; is 10:26:22
11   that right?
12   A.  Yes.
13   Q.  Does it follow that if Google had
14   developed anything for the Google implementation,
15   then Google would own that technology it developed? 10:26:35
16       MS. BRODY:  Objection to form.
17       THE DEPONENT:  Yeah, I guess it would --
18   like, integrating with Sonos versus developing that
19   new technology I guess are different.
20   Q.  (By Ms. Ma)  So if Google had developed         10:26:59
21   technology in order to integrate with Sonos, would
22   Google own that technology?
23       MS. BRODY:  Objection to form.
24       THE DEPONENT:  I would guess, yes.
25   Q.  (By Ms. Ma)  One of the requirements            10:27:18
```

**Page 56**

```
 1   Sonos had of the GPM integration was that it passed 10:27:19
 2   the beer test; is that correct?
 3   A.  Yes.
 4   Q.  In other words, Sonos wanted a user who
 5   was playing music from GPM -- from the GPM app to   10:27:31
 6   Sonos speakers to be able to step away and for the
 7   queued-up songs to continue playing; is that right?
 8   A.  That's correct, yes.
 9   Q.  And the concept of cloud queues was a
10   solution to the beer test; is that right?           10:27:57
11       MS. BRODY:  Objection to form.
12       THE DEPONENT:  Yes.  Correct.
13   Q.  (By Ms. Ma)  Is your understanding that
14   Google and Sonos worked together to develop the
15   cloud queue solution during the parties'            10:28:18
16   collaboration?
17       MS. BRODY:  Objection to form.
18       THE DEPONENT:  I would state it
19   differently, personally.  I remember -- I don't
20   remember details, but like, working with Google to  10:28:33
21   try to figure out how things would work on their
22   side, but that we already had, like, this platform
23   capability that -- they were going to be
24   integrating with.
25   Q.  (By Ms. Ma)  And that platform capability      10:28:52
```

**Page 57**

```
 1   involved cloud queues?                              10:28:54
 2   A.  Correct.
 3   Q.  Who, to your knowledge, is the -- who --
 4   was the first partner that Sonos integrated with
 5   using cloud queues?                                 10:29:08
 6   A.  I think it was Google.
 7   Q.  So to your knowledge, prior to the Google
 8   collaboration, Sonos had not integrated with any
 9   partner using cloud queue?
10       MS. BRODY:  Objection to form.                  10:29:32
11       THE DEPONENT:  I don't recall any,
12   correct.
13   Q.  (By Ms. Ma)  And prior to when you joined
14   Sonos in July 2015, Google and Sonos had already
15   begun working on the cloud queue solution, correct? 10:29:48
16       MS. BRODY:  Objection to form.
17       THE DEPONENT:  I believe so, yes.
18   Q.  (By Ms. Ma)  Was it Google or Sonos who
19   first suggested using cloud queues to pass the beer
20   test?                                               10:30:04
21       MS. BRODY:  Objection to form.
22       THE DEPONENT:  I don't know.  I wasn't
23   there.
24   Q.  (By Ms. Ma)  You don't know one way or
25   another whether it was Google who first suggested   10:30:14
```

15 (Pages 54 - 57)

Page 186

1  I will put it back up give me one second.   02:34:18
2  A.  1153.
3  Q.  Yeah, that's right.
4      Okay.  So back to the first email from
5  Mr. Coburn, and on September 22nd, 2015, he says   02:34:56
6  "GPM now supports Sonos via Muse," right?
7  A.  Correct.
8  Q.  And "Play to Sonos" was a term for
9  directly playing back music from the GPM app to
10 Sonos speakers, right?   02:35:14
11 A.  Yeah, generally "direct control" is the
12 term we used, yes.
13 Q.  Yes.  Sorry, yes, direct control.
14     And in the second paragraph, you know, he
15 writes "to confirm that it is really using Muse and   02:35:26
16 not MRP, you can browse ... the web page," right?
17 A.  Yes.
18 Q.  So previously direct control was using
19 MRP, correct?
20     MS. BRODY:  Objection to form.   02:35:43
21     THE DEPONENT:  Yeah, I -- I don't
22 remember if it had been implemented, you know, with
23 the technology on the back end was, Tad -- I
24 remember Tad being much more, like Tad was deep
25 into this stuff.  I was still ramping up at the   02:35:57

Page 187

1  time.  So I don't think I remember at all.   02:36:00
2  Q.  (By Ms. Ma)  Right.
3      But what Tad is saying here is that,
4  you know, the -- the GPM version with direct
5  control via Muse is not using MRP anymore, right?   02:36:13
6      MS. BRODY:  Objection to form.
7      THE DEPONENT:  Yeah, I read it that it's
8  using the Muse not MRP, I don't get that it was MRP
9  before on that but...
10 Q.  (By Ms. Ma)  But what he's discussing   02:36:41
11 is -- when he talks about MRP here it's in the
12 context of direct control, right?
13 A.  Yes.  I would say, yes.
14 Q.  And so "direct control" is different from
15 SMAPI, right?   02:37:00
16 A.  That is correct.
17 Q.  Okay.  Let's close that and bring back up
18 the very last exhibit.
19 A.  Okay.
20 Q.  1155.  No, sorry.  1021.   02:37:16
21     So back to page -55244.
22 A.  Yeah.
23 Q.  And back to section 3.3.  Again with the
24 sentence starting with notwithstanding the
25 foregoing, that states that "the integrated Service   02:37:52

Page 188

1  Offering can't be made commercially available by   02:38:01
2  Sonos unless and until Google provides final Launch
3  confirmation," right? [as read]
4  A.  Correct.
5  Q.  And it says that final launch   02:38:12
6  "confirmation may be contingent on Sonos' adoption
7  of MRP," right?
8  A.  Correct.
9  Q.  And as we just discussed MRP relates to
10 the direct control integration, right?   02:38:30
11     MS. BRODY:  Objection to form.
12     THE DEPONENT:  Correct.
13 Q.  (By Ms. Ma)  And direct control is a
14 separate project from a SMAPI integration, right?
15     MS. BRODY:  Objection to form.   02:38:47
16     THE DEPONENT:  Yes, direct control is
17 different than SMAPI, correct.
18 Q.  (By Ms. Ma)  And so this content
19 integration agreement doesn't appear to just relate
20 to SMAPI, right?   02:39:05
21     MS. BRODY:  Objection to form.
22     THE DEPONENT:  Yeah, I guess with that,
23 you know, like, I don't know.  This is prior to my
24 time.  I'm not sure the conversations were around
25 this but, in general, I remember content   02:39:20

Page 189

1  integration being around the content component of   02:39:22
2  things.  But that's just my recollection.
3  Q.  (By Ms. Ma)  Right.
4      But this reference to MRP in this
5  agreement would suggest that this agreement isn't   02:39:34
6  about SMAPI, right?
7      MS. BRODY:  Objection to form.
8  Speculative.
9      THE DEPONENT:  It appears it's not
10 strictly SMAPI, correct.   02:39:48
11 Q.  (By Ms. Ma)  Okay.  We can close that.
12 A.  Okay.
13 Q.  Give me one second.
14     Mr. Torgerson, do you still -- you no
15 longer work at Sonos, correct?   02:40:13
16 A.  Correct.
17 Q.  And why did you leave Sonos?
18 A.  Right when the pandemic hit the company
19 was, reduction to try to ensure that they can make
20 it through the pandemic, and I worked in the team   02:40:30
21 that was focused on three to five years out on
22 business strategy and our team was one of the ones
23 that was cut.
24 Q.  Do you still keep in contact with anyone
25 who works at Sonos?   02:40:44