# EXHIBIT 2
# FILED UNDER SEAL

CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1              UNITED STATES DISTRICT COURT
 2         FOR THE NORTHERN DISTRICT OF CALIFORNIA
 3   SONOS, INC.,
 4        Plaintiff,
 5             vs.              Case No. 3:21-CV-07559-WHA
 6   GOOGLE LLC
 7        Defendant.
     _____
 8
     -AND-
 9
     GOOGLE LLC,
10
          Plaintiff,
11
               vs.              Case No. 3:20-CV-06754-WHA
12
     SONOS, INC.,
13
          Defendant.
14   _____
             **CONFIDENTIAL - ATTORNEYS' EYES ONLY**
15
         ZOOM DEPOSITION OF JAMES E. MALACKOWSKI
16
     (Reported Remotely via Video & Web Videoconference)
17
           Miami, Florida (Deponent's location)
18
                 Monday, January 30, 2023
19
                        Volume 1
20
     STENOGRAPHICALLY REPORTED BY:
21   REBECCA L. ROMANO, RPR, CSR, CCR
     California CSR No. 12546
22   Nevada CCR No. 827
     Oregon CSR No. 20-0466
23   Washington CCR No. 3491
24   JOB NO. 5686085
25   PAGES 1 - 297
```

Page 1

```
 1   principle is the one that would apply.                    05:21:38

 2        Q.   Yeah.  By "not specific," I mean it's not

 3   limited to them and it applies to essentially every

 4   app on the App Store, regardless of -- of whether

 5   it relate to music or something else or grouping of       05:21:52

 6   speakers or something else or for the IFTTT app or

 7   something else or casting or something else?

 8        A.   True, but more importantly, I would focus

 9   on the fact that it would apply to casting or music

10   grouping or things of that nature.                        05:22:06

11        Q.   Are you aware of any evidence that Sonos

12   has ever assumed the role of an app developer in

13   real-world licensing negotiations?

14        A.   As I describe within my report, Sonos'

15   licensing policy and practice is to avoid that and        05:22:21

16   to keep their technology proprietary unless there

17   is a broader strategic decision or they're trying

18   to settle a dispute.  So they would not seek to do

19   that, which is another reason why this conclusion

20   is conservative, because Sonos -- this would not be       05:22:34

21   something they would willingly do.

22        Q.   And that's -- that's why you're not aware

23   of any evidence that Sonos has ever assumed that

24   role?

25        A.   Well, I'm not aware of any evidence             05:22:48
```

Page 258

| | | |
|---|---|---|
| 1 | because of the description in my report describing | 05:22:49 |
| 2 | Sonos' policy regarding their technology.  So it | |
| 3 | certainly includes that, and I'm not seeing any | |
| 4 | discovery that would suggest otherwise. | |
| 5 |     Q.   You're saying discovery from Sonos? | 05:23:03 |
| 6 |     A.   Correct. | |
| 7 |     Q.   And have you ever seen any evidence that | |
| 8 | Google has used this commission it charges on apps | |
| 9 | in the Play Store as a data point in real-world | |
| 10 | licensing negotiations? | 05:23:17 |
| 11 |     A.   I have not specifically seen that for two | |
| 12 | reasons, both of which we've discussed.  One is | |
| 13 | that under Google's paradigm of efficient | |
| 14 | infringement, it seeks not to have those proactive | |
| 15 | licenses that would naturally invoke this | 05:23:33 |
| 16 | principle. | |
| 17 |     And then secondly, the data points that | |
| 18 | Google has provided as exemplars of licensing | |
| 19 | activity are generally in settlement of litigation | |
| 20 | or part of cooperative patent acquisitions. | 05:23:46 |
| 21 |     So, again, A, that confirms their lack of | |
| 22 | relevance, and B, that reinforces the efficient | |
| 23 | infringement paradigm. | |
| 24 |     Q.   You -- are you aware of any evidence that | |
| 25 | anyone has ever used the 70/30 split that Google | 05:24:04 |

Page 259

```
 1   charges app developers on the App Store -- on the        05:24:08

 2   Play Store as a relevant data point for patent

 3   license negotiations?

 4        A.   Yes.  Going back to our discussion

 5   earlier today, I've used it before, and I believe        05:24:16

 6   there's at least one publicly discussed case from

 7   your firm that's used it.

 8        Q.   But you don't recall the names of any of

 9   those cases?

10        A.   Not as I sit here, no.                          05:24:27

11        Q.   Are you aware of any evidence that Google

12   has agreed to a revenue share as high as 30 percent

13   before?

14        A.   Well, Google agrees to revenue shares all

15   the time for applications across the App Store.  If      05:24:43

16   you're talking about for a patent license per se,

17   for the reasons I've just described to you

18   regarding their paradigm at play and the types of

19   documents they produced in this case, no, I haven't

20   seen it.                                                  05:24:59

21        Q.   Yeah, and I should have clarified my

22   question was in the context of -- of patents.

23   Thank you.

24             Are you aware of any evidence that Google

25   has agreed to a revenue share on products where it       05:25:09
```

Page 260

| | | |
|---|---|---|
| 1 | Q. These -- this section of your report | 05:38:17 |
| 2 | talking about Sonos' negotiating history with | |
| 3 | Google does not reference any -- any proposed 70/30 | |
| 4 | revenue split, correct? | |
| 5 | A. It does not. They are proposing that | 05:38:34 |
| 6 | that be a factor -- a sharing -- some sharing be | |
| 7 | factored into the analysis. And so specifically | |
| 8 | they talk about Sonos contribution versus Google's | |
| 9 | identified features and -- and contribution. | |
| 10 | Q. Right. But those are not -- yeah. Okay. | 05:39:01 |
| 11 | Are you aware of any real-world evidence | |
| 12 | that Sonos has -- has ever agreed to or -- or would | |
| 13 | have agreed to in the hypothetical negotiation to | |
| 14 | the 70/30 revenue split? | |
| 15 | A. I believe I say in my report that I don't | 05:39:20 |
| 16 | believe Sonos would have, because they had no | |
| 17 | desire to license Google at all. They are -- | |
| 18 | especially in this context of -- without the larger | |
| 19 | strategic relationship. They would prefer to keep | |
| 20 | their technology exclusive. | 05:39:35 |
| 21 | That said, they have to come to some | |
| 22 | terms in the negotiation, so I think the fact that | |
| 23 | we're only talking about the 70/30 sharing after we | |
| 24 | conservatively estimate the pie to be shared, which | |
| 25 | at every turn was a conservative assessment in | 05:39:51 |

Page 270

CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1        I, Rebecca L. Romano, a Certified Shorthand
 2   Reporter of the State of California, do hereby
 3   certify:
 4        That the foregoing proceedings were taken
 5   before me remotely at the time and place herein set
 6   forth; that any deponents in the foregoing
 7   proceedings, prior to testifying, were administered
 8   an oath; that a record of the proceedings was made
 9   by me using machine shorthand which was thereafter
10   transcribed under my direction; that the foregoing
11   transcript is true record of the testimony given.
12        Further, that if the foregoing pertains to the
13   original transcript of a deposition in a Federal
14   Case, before completion of the proceedings, review
15   of the transcript [ ] was [X] was not requested.
16        I further certify I am neither financially
17   interested in the action nor a relative or employee
18   of any attorney or any party to this action.
19        IN WITNESS WHEREOF, I have this date
20   subscribed my name.
21   Dated:  February 2, 2023
22
23
24                    _____
                      Rebecca L. Romano, RPR, CCR
25                    CSR. No 12546
```

Page 294