# EXHIBIT 9
# FILED UNDER SEAL

Page 1

1           IN THE UNITED STATES DISTRICT COURT

2              NORTHERN DISTRICT OF CALIFORNIA

3

4    GOOGLE LLC,

5              Plaintiff,

6         vs.                    No. 3:20-cv-06754

7    SONOS, INC.,

8              Defendant.

     _____/

9

10

                -- ATTORNEYS' EYES ONLY --

11

12

       VIDEO-RECORDED DEPOSITION OF JAMES MALACKOWSKI

13

                  REMOTE ZOOM PROCEEDING

14

                  New Buffalo, Michigan

15

                Friday, August 26, 2022

16

17

18

19

20

21

22

23   REPORTED BY:

24   LESLIE ROCKWOOD ROSAS, RPR, CSR 3462

     Job No. CS5367688

25

1     Q.  BY MS. COOPER:  All right.  You should have

2     Exhibit 1198.

3     A.  I do.

4     Q.  You've seen this agreement before; correct?

5     A.  I have.  It's discussed within my report.

6     Q.  This is a patent purchase agreement; correct?

7     A.  It's so labeled as such, and I believe

8     effectively that's what it is, yes.

9     Q.  Do you agree that owning a patent provides more

10    rights than merely having a license to a patent?

11    A.  In general, I believe that to be true.  It also

12    provides more -- requires more obligation, such as

13    maintenance and the like.  But importantly, you need to

14    look at the context of the purchase versus, in contrast,

15    a hypothetical negotiation.

16         Most patents are not of significant value or

17    certainly are not of value reflecting specific features

18    that are promoted and sold in the market, and those are

19    often acquired at lump sum prices but do not reflect

20    important information for the hypothetical.

21    Q.  Have you studied the value of the patents that

22    Google acquired from Outland Research?

23    A.  "Studied" is a vague term.  I understand that

24    there are 12 patents, 4 applications, as part of the

25    agreement, that they relate to music media collaboration

1    reliable information of that case.  I suspect, in having

2    done this hundreds of times, that there are examples

3    where the most reliable or the only data point was an

4    acquisition.

5        Q.  So the fact that a market data point may be a

6    patent purchase agreement rather than a non-exclusive

7    patent license, doesn't rule it out as being potentially

8    relevant; correct?

9        A.  It doesn't rule it out per se, unless there is

10   obviously a better benchmark.  In which case, you would

11   eliminate it as a matter of fact.

12       Q.  One of the reasons you think the Outland patent

13   purchase agreement is not comparable is because Google

14   and Outland are not competitors; correct?

15       A.  And more specifically, as I describe in my

16   report, that Outland is not a manufacturer in -- in the

17   speaker market at all.  That they are more in the realm

18   of a non-practicing entity.

19       Q.  You haven't done a technical analysis regarding

20   the comparability of the patent that Google acquired from

21   Outland Research; correct?

22       A.  I'm not -- I have not advanced a technical

23   comparison.  I do describe what they generally relate to,

24   and I shared that with you earlier.

25       Q.  Do you dispute that the patents that Google

Page 173

1    acquired in this case are technically comparable to the

2    '885 patent?

3        A.  I'm not offering that opinion.  That's a

4    question that's better for the technical experts.

5        Q.  Do you know whether the technical experts

6    dispute that?

7        A.  I don't believe there is an opinion on that

8    agreement from the Sonos technical experts because of the

9    lack of relevance.  But I defer to his report.  I -- I

10   could be misremembering that.

11       Q.  Do you have a basis to disagree with Google's

12   technical experts that the patents covered by this

13   agreement are technically comparable to the '885?

14       A.  I have not offered a disagreement.  I don't

15   think that's a relevant consideration, given the economic

16   comparability.  But I have not offered a technical

17   rebuttal.

18       Q.  In order to purchase the 12 patents and 4 US

19   patent applications relating to music media collaboration

20   and interface technology, Google made a lump sum payment

21   of 2.25 million; correct?

22       A.  Yes.  In consideration of all elements of the

23   agreement, that was the amount of the payment, as I

24   describe on page 49 of my report.

25       Q.  And that's a lump sum payment, not a running

Page 181

1   STATE OF CALIFORNIA      ) ss:

2   COUNTY OF MARIN          )

3

4          I, LESLIE ROCKWOOD ROSAS, RPR, CSR NO. 3462, do

5   hereby certify:

6          That the foregoing deposition testimony was

7   taken before me at the time and place therein set forth

8   and at which time the witness was administered the oath;

9          That testimony of the witness and all objections

10  made by counsel at the time of the examination were

11  recorded stenographically by me, and were thereafter

12  transcribed under my direction and supervision, and that

13  the foregoing pages contain a full, true and accurate

14  record of all proceedings and testimony to the best of my

15  skill and ability.

16         I further certify that I am neither counsel for

17  any party to said action, nor am I related to any party

18  to said action, nor am I in any way interested in the

19  outcome thereof.

20         IN WITNESS WHEREOF, I have subscribed my name

21  this 30th day of August, 2022.

22

23

24

25         LESLIE ROCKWOOD ROSAS, RPR, CSR NO. 3462