1  CLEMENT SETH ROBERTS (STATE BAR NO. 209203)
   croberts@orrick.com
2  ALYSSA CARIDIS (STATE BAR NO. 260103)
   acaridis@orrick.com
3  EVAN D. BREWER (STATE BAR NO. 304411)
   ebrewer@orrick.com
4  Orrick, Herrington & Sutcliffe LLP
   The Orrick Building
5  405 Howard Street
   San Francisco, CA 94105-2669
6  Telephone:    +1 415 773 5700
   Facsimile:    +1 415 773 5759
7
   SEAN M. SULLIVAN (*pro hac vice*)
8  sullivan@ls3ip.com
   MICHAEL P. BOYEA (*pro hac vice*)
9  boyea@ls3ip.com
   COLE B. RICHTER (*pro hac vice*)
10 richter@ls3ip.com
   LEE SULLIVAN SHEA & SMITH LLP
11 656 W Randolph St., Floor 5W
   Chicago, IL 60661
12 Telephone:    +1 312 754 0002
   Facsimile:    +1 312 754 0003
13
   *Attorneys for Sonos, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA,

SAN FRANCISCO DIVISION

| | |
|---|---|
| GOOGLE LLC, <br><br> Plaintiff and Counter-defendant, <br><br> v. <br><br> SONOS, INC., <br><br> Defendant and Counter-claimant. | Case No. 3:20-cv-06754-WHA <br> Related to Case No. 3:21-cv-07559-WHA <br><br> **SONOS, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR LEAVE TO AMEND INFRINGEMENT CONTENTIONS PURSUANT TO PATENT L.R. 3-6** <br><br> Date: Jan. 12, 2023 <br> Time: 8:00 a.m. <br> Place: Courtroom 12, 19th Floor <br> Judge: Hon. William Alsup <br><br> Complaint Filed: September 28, 2020 |

**FILED UNDER SEAL**

SONOS'S REPLY ISO MOTION FOR LEAVE
TO AMEND INFRINGEMENT CONTENTIONS
3:20-cv-06754-WHA

**TABLE OF CONTENTS**

**Page(s)**

I.   INTRODUCTION ........................................................................................................... 1

II.  SONOS HAS GOOD CAUSE ....................................................................................... 1

III. CONCLUSION ............................................................................................................. 10

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Acer, Inc. v. Tech. Properties Ltd.*,
  No. 5:08-CV-00877JF/HRL, 2010 WL 3618687 (N.D. Cal. Sept 10, 2010) ........................ 4, 7

*Ameranth, Inc. v. Genesis Gaming Sols., Inc.*,
  No. SACV 11-0189-AG, 2015 WL 10793431 (C.D. Cal. Jan. 2, 2015) ................................. 6

*Avago Techs., Inc. v. IPtronics Inc.*,
  No. 5:10-CV-02863-EJD, 2015 WL 2395941 (N.D. Cal. May 19, 2015) ............................... 5

*CyWee Grp. Ltd v. Apple Inc.*,
  No. 14-CV-01853-HSG (HRL), 2016 WL 7230865 (N.D. Cal. Dec. 14, 2016) ..................... 4

*Delphix Corp. v. Actifio, Inc.*,
  2015 WL 5693722 (N.D. Cal. Sept. 29, 2015) ................................................................. 3, 10

*Google, Inc. v. Netlist, Inc.*,
  No. C 08-4144 SBA, 2010 WL 1838693 (N.D. Cal. May 5, 2010) ....................................... 6

*KlausTech, Inc. v. Google, Inc.*,
  No. 10-CV-05899-JSW (DMR), 2017 WL 4808558 (N.D. Cal. Oct. 25, 2017) ................. 5, 6

*Slot Speaker Techs., Inc. v. Apple, Inc.*,
  No. 13-CV-01161-HSG(DMR), 2017 WL 386345 (N.D. Cal. Jan. 27, 2017) ........................ 5

*Synopsys, Inc. v. Atoptech, Inc*,
  No. 13-CV-02965-MMC (DMR), 2016 WL 4945489
  (N.D. Cal. Sept. 16, 2016)...................................................................................................... 4

*Tech. Properties Ltd. LLC v. Canon Inc.*,
  No. 14-cv-03643 CW (DMR), 2016 WL 1570163 (N.D. Cal. Apr. 19, 2016) ....................... 7

**Other Authorities**

Fed. R. Civ. P. 30(b)(6) .................................................................................................................. 5

Patent L.R. 3-6 ............................................................................................................................... 3

Patent L. R. 3-6(c) ......................................................................................................................... 2

## I. INTRODUCTION

Sonos seeks a routine amendment of its infringement contentions in order to incorporate discovery that Google withheld until Sonos moved to compel. On November 11, 2022, Google finally provided this discovery. Less than two weeks later—with fact and expert discovery still open—Sonos moved to incorporate that discovery in its infringement contentions. There is no prejudice in allowing Sonos to supplement its infringement contentions in light of the testimony Sonos obtained at the November 11 deposition of Google's 30(b)(6) designee.

Google now attempts to use this routine amendment to obtain further delay, threatening that granting Sonos's motion would require "substantial revisions to the case schedule." Dkt. 424, Opposition to Motion for Leave at 13 ("Opp."). Sonos disagrees that any delay is appropriate or necessary. Any "prejudice" to Google is self-inflicted through its delay in providing a fully prepared 30(b)(6) witness. Sonos is ready to try this case under the current schedule, and nothing in the proposed amendment should prevent Google from doing so either. The Court should reject Google's inflated arguments of prejudice and its transparent attempt to postpone Sonos's day in court, and grant Sonos's motion for leave to amend.

## II. SONOS HAS GOOD CAUSE

As Sonos explained in its motion, Sonos first put Google on notice of its "stream transfer" infringement theory for the '033 patent two years ago, in December 2020. Dkt. 407, Motion for Leave at 1 ("Mot."). Sonos served an interrogatory on Google regarding this functionality in August 2021. *Id.* Google *still* has not sufficiently responded, which is the subject of a pending motion to compel. *Id.* at 1-2. Sonos also served a 30(b)(6) deposition notice on Google on January 5, 2022, seeking testimony regarding the "stream transfer" functionality. *Id.* at 2. Google's first two designees on this topic were not competent to testify, forcing Sonos to move to compel. *Id.* Only after Sonos moved to compel did Google finally produce a designee competent to testify regarding this functionality. On November 11, 2022, Sonos took the deposition of Google witness Tavis Maclellan. Once in possession of the necessary information, less than two weeks later Sonos sought leave to amend its infringement contentions to supplement in light of Mr. Maclellan's testimony.

<u>Sonos has proceeded with diligence</u>.  As Sonos explained in its motion, prior to obtaining Mr. Maclellan's testimony, Sonos had no way to confirm certain details of the "stream transfer" functionality.  For example, Sonos could not confirm the specific source code cites that Sonos now seeks leave to include in the proposed Amended Infringement Contentions.  Moreover, Google's document production of "stream transfer" technical information was slim to none, and Google's interrogatory response—the subject of the pending motion to compel—merely punts to the source code.  *See, e.g.*, Dkt. 406-3, Moss Decl. Ex. 4 at 13 ("Google refers Sonos to the source code that Google has made available, which is the best evidence of how the devices operate with respect to the operation of the accused functionalities."); *id.* at 12 ("Google … refers Sonos to the source code that Google has made available.").  For this reason, Sonos explained, Sonos's motion for leave fits squarely within one of the paradigmatic examples of good cause provided by the Patent Local Rules: "Recent discovery of nonpublic information about the Accused Instrumentality which was not discovered, despite diligent efforts, before the service of the Infringement Contentions."  Pat. L. R. 3-6(c).  As the Patent Local Rules explain, this is precisely the type of circumstance that "may, absent undue prejudice to the non-moving party, support a finding of good cause."  *Id.*

Sonos further detailed how it had consistently and diligently sought discovery on this issue beginning in August 2021, and continuing throughout 2022, and that the only reason it could not supplement earlier was Google's refusal or inability to provide a competent 30(b)(6) designee until mid-November 2022—mere weeks before the close of fact discovery.  Mot. at 3-4.

In opposition, Google offers four arguments as to how Sonos was not diligent.  None hold any water.

First, Google contends that because it had provided *source code* to Sonos, it was Sonos's obligation to interpret Google's source code and technical documents *without the benefit* of Google's 30(b)(6) designee, and to amend its infringement contentions on that basis, even though Google had yet to provide a competent witness who could answer questions on behalf of Google on this topic.  Opp. at 6-7.  In other words, Google seems to say Sonos was entitled to just one type of discovery (source code) on the stream transfer functionality.  This argument ignores that

1  there are multiple types of discovery that complement each other.  Sonos was not required to
2  proceed on just source code.  Indeed, in this case Google itself has claimed that its own source
3  code is too voluminous for Google to be required to fully respond to a Sonos interrogatory.  *See*
4  Reply Declaration of Geoffrey Moss in Support of Sonos, Inc.'s Motion for Leave to Amend
5  Infringement Contentions Pursuant to Patent L.R. 3-6 ("Moss Reply Decl."), Ex. 11 (Google
6  LLC's Third Supplemental Objections and Responses to Plaintiff Sonos Inc.'s First Set of Fact
7  Discovery Interrogatories (No. 15)) at 13 ("Google further objects to this interrogatory as vague,
8  ambiguous, over broad and unduly burdensome …. The accused YouTube applications and
9  systems have numerous functionalities and features, involve many different playback scenarios,
10 and are comprised of millions of lines of source code.")

11       Other courts have recognized that a party needs full discovery before it is required to
12 update its contentions.  For example, in *Delphix Corp. v. Actifio, Inc.*, the Court found that Actifio
13 was diligent in seeking to amend its contentions to include source code where—despite having
14 access to source code for months— Actifio had no way to "understand[] the produced source
15 code without … technical documents that provided context." No. 13-CV-04613 BLF (HRL),
16 2015 WL 5693722, at *5 (N.D. Cal. Sept. 29, 2015).  Here, as in *Delphix*, Mr. Maclellan's
17 testimony finally provided Sonos with necessary information "that describe[d] the confidential
18 details of how [Google's stream transfer functionality] works." *Id.  See* Dkt. 406-2, Moss Decl.
19 Ex. 1 at 84-85 (providing proposed additional exemplary source code directly illustrating cited
20 Maclellan testimony); *id.* at 65 (providing plain English summarization of certain relevant
21 information from Maclellan testimony, *compare* Moss Reply Decl., Ex. 12 (Maclellan Dep. Tr.),
22 165:24-167:20 (summarizing testimony by explaining Hub display (i) internally processes "set
23 playback devices call," (ii) internally "do[es] a store session" process, (iii) "send[s] a Cast V2
24 launch" message "to the destination Cast receiver," and (iv) sends a "resume session message"
25 "to the receiver app running on the destination Cast receiver")); Dkt. 406-2, Moss Decl. Ex. 1 at
26 69-73 (providing proposed additional exemplary source code illustrating this same functionality
27 in context of closely related claim limitation; *compare* Moss Reply Decl., Ex. 12 (Maclellan Dep.
28 Tr.), 168:14-175:2 (discussing OnTransferComplete method that "will be called when the resume

1  session message, which was sent, gets a response" and describing success versus failure
2  scenarios)); Dkt. 406-2, Moss Decl. Ex. 1 at 95-96 (providing, in context of closely related claim
3  limitation, a subset of the same source code already included in the proposed redline at 85).

4        Google's proffered caselaw is not to the contrary.  *Cywee* involved a plaintiff attempting
5  to amend to assert an earlier priority date, where all of the information that the plaintiff needed to
6  amend *belonged to the plaintiff itself*.  *CyWee Grp. Ltd v. Apple Inc.*, No. 14-CV-01853-HSG
7  (HRL), 2016 WL 7230865, at *2 (N.D. Cal. Dec. 14, 2016).  The decision does not involve an
8  accused infringer declining to produce a competent 30(b)(6) witness for ten months, or suggest
9  that a patentee should be required to understand an accused infringer's source code—and its
10 millions of lines—without the benefit of a representative of the infringer to explain granular
11 details of the allegedly infringing technology.  *See id.*  Similarly, in *Acer*, the patentee seeking
12 leave to amend "d[id] not" even "contend that the newly-accused devices or other information are
13 newly-discovered or were difficult to locate" and did not "identif[y]" any "information that was
14 not known or available to it" previously.  *Acer, Inc. v. Tech. Properties Ltd.*, No. 5:08-CV-00877
15 JF/HRL, 2010 WL 3618687, at *3 n.6, 4 (N.D. Cal. Sept. 10, 2010).  *Synopsys* too is inapposite:
16 that case involved no claim that the patentee needed (or had sought) 30(b)(6) testimony in order
17 to understand the source code in question.  *See, e.g.*, *Synopsys, Inc. v. Atoptech, Inc*, No. 13-CV-
18 02965-MMC (DMR), 2016 WL 4945489, at *4 (N.D. Cal. Sept. 16, 2016) (noting patentee's
19 failure to identify *any* specific reason why it could not have amended with source code earlier).

20       Second, Google argues that notwithstanding its *own* refusal or inability to produce a
21 competent 30(b)(6) witness on this topic for *ten months*, it was incumbent on Sonos to take Mr.
22 Maclellan's deposition earlier as a *fact* witness. Opp. at 7.  Google offers no legal support for this
23 surprising assertion.  Google *agreed* to produce a 30(b)(6) witness on this topic, but simply did
24 not *do* so until Sonos moved to compel.  There was no reason for Sonos to seek this discovery
25 through other means, such as a fact deposition, where Google had already agreed to designate a
26 witness on the topic.  It also strains credulity to suggest that, after Google's first two *designated*
27 witnesses were unable to answer basic questions regarding key aspects of its stream transfer
28 technology, Sonos should have sought that discovery from a witness that Google *had not* yet even

designated.[1]  Moreover, fact witnesses provide a different type of testimony than do witnesses designated under Rule 30(b)(6).  Had Sonos attempted to ask these questions of Mr. Maclellan in his capacity as a fact witness, he could have reasonably declined to answer questions based on a lack of personal knowledge, if he lacked such knowledge, and any testimony he provided would not necessarily bind Google.[2]

In support of this dubious theory, Google cites *KlausTech* as "denying patentee leave to amend infringement contentions based on information it discovered during a 30(b)(6) deposition about how the accused source code worked."  Opp. at 7 (citing *KlausTech, Inc. v. Google, Inc.*, No. 10-CV-05899-JSW (DMR), 2017 WL 4808558, at *4-6 (N.D. Cal. Oct. 25, 2017)).  But in *KlausTech*, the patentee "*chose* not to take any of the noticed depositions until … the very end of the discovery period."  2017 WL 4808558, at *5 (emphasis added).  Sonos did not "choose" for Google to designate two different witnesses that were not competent to testify on a topic that Google *agreed* to designate a witness on, and Sonos did not "choose" to have to move to compel in order to obtain the deposition that Google finally provided in the last month of fact discovery.  Indeed, as Google admits, *KlausTech* actually stands for the proposition that "[c]ourts consistently have refused to find diligence where a party delayed in taking key depositions."  Opp. at 7 (quoting 2017 WL 4808558, at *4-6).  But Google offers no support for the idea that *Sonos* delayed a deposition that Google declined to provide for *ten months*, while Sonos pursued

---

[1] In fact, courts within this District have found that one party forcing another to depose multiple 30(b)(6) witnesses due to lack of adequate preparation is *sanctionable*. *See, e.g.*, *Slot Speaker Techs., Inc. v. Apple, Inc.*, No. 13-CV-01161-HSG(DMR), 2017 WL 386345, at *2-3 (N.D. Cal. Jan. 27, 2017) (despite prejudice to moving party being partly mitigated by "a substitute 30(b)(6) deponent," awarding sanctions because moving party "had to depose two witnesses for information it should have been able to obtain from just one."); *see also Avago Techs., Inc. v. IPtronics Inc.*, No. 5:10-CV-02863-EJD, 2015 WL 2395941, at *1, 2 (N.D. Cal. May 19, 2015) (awarding sanctions where designee could not testify to 9 of 24 noticed topics and could address the remainder only in part).

[2] Indeed, even as a 30(b)(6) designee, Mr. Maclellan repeatedly hedged his testimony based on the fact that he didn't write the specific code in question. *See, e.g.*, Moss Reply Decl., Ex. 12 (Maclellan Dep. Tr.), 180:18-25 ("So, again, preface that I didn't write this code."); *id.* at 37:17-19 ("[T]hat is code that I didn't write, so I don't know the most proper term to refer to it as."); *id.* at 74:11-14 ("Again, I didn't write this code so I actually wouldn't be able to tell what the is audio flag means or the field means in this type script file."); *id.* at 114:23-25 ("I did not write this code -- the comment, so I cannot definitively say exactly the intent behind it.").

1  numerous deficiency letters and multiple meet-and-confers, and finally a filed motion to compel.
2  If anything, *Klaustech* shows that Google has not been diligent in meeting its discovery
3  obligations, and so, as discussed below, any prejudice to Google here is self-inflicted.

4      Third, Google seeks to hold *Sonos* accountable for Google's own refusal or inability to
5  produce a competent 30(b)(6) witness, suggesting that it was incumbent on Sonos to move to
6  compel earlier in fact discovery. *See, e.g.*, Opp. at 8 (citing *Google, Inc. v. Netlist, Inc.*, No. C
7  08-4144 SBA, 2010 WL 1838693 (N.D. Cal. May 5, 2010), discussed below). This argument too
8  is without merit. Sonos moved to compel on October 14, 2022, *see* Dkt. 377-2, more than six
9  weeks prior to the close of fact discovery. Google cites no authority suggesting that parties must
10 move to compel earlier than that as a general matter. And here, Sonos sought repeatedly to
11 resolve these discovery issues with Google cooperatively, without involving the Court. Sonos
12 disagrees with Google that Sonos's attempts to resolve these issues cooperatively shows a lack of
13 diligence, especially where Sonos did move to compel, and successfully obtained the deposition
14 prior to the close of fact discovery.

15     Google's proffered authority does not support Google's extreme position. Instead of
16 discussing factually apposite authority, Google relies on cases in which patentees simply dropped
17 the ball, and where none of the delay was attributable to the alleged infringer. For example,
18 *Netlist* involved a party that "failed to" "promptly s[eek] relief from the Court" regarding
19 Google's alleged "fail[ure] to comply with [its] discovery obligations." 2010 WL 1838693, at *3.
20 That party does not seem to have moved to compel at all, much less more than six weeks prior to
21 the close of fact discovery. In *Ameranth*, as in *Klaustech*—discussed above—the Court faulted
22 the patentee for delaying in taking a 30(b)(6) deposition. *See Ameranth, Inc. v. Genesis Gaming*
23 *Sols., Inc.*, No. SACV 11-0189-AG (RNBx), 2015 WL 10793431, at *2 (C.D. Cal. Jan. 2, 2015)
24 (noting that 30(b)(6) designee was not deposed until seven months after the initial review of
25 source code). But *Ameranth* did not involve an accused infringer declining to produce a
26 competent 30(b)(6) witness for ten months, or indeed any apparent claim by the patentee that the
27 alleged infringer was responsible for the delay in obtaining that discovery. In *this* case, Sonos
28 noticed this 30(b)(6) deposition almost a year ago on January 5, 2022, and took its first attempted

1  deposition on this designated topic in April, 2022.  Mot. at 2.  Sonos promptly informed Google
2  of the first witness's incompetence to testify regarding the "stream transfer" functionality, and
3  took the second attempted deposition on this designated topic in June, 2022.  *Id.*  After Google
4  still refused to produce a *competent* witness, Sonos moved to compel.  Perhaps realizing its
5  tenuous position, Google then agreed to designate Mr. Maclellan on this topic, thus mooting a
6  portion of the motion to compel on which Google had no colorable defense.

   *Tech Properties* is inapposite for the same reason.  In that case, the Court faulted the party
8  seeking amendment for "wait[ing] so long to" "serve a subpoena on an admittedly key [] party."
9  *Tech. Properties Ltd. LLC v. Canon Inc.*, No. 14-cv-03643 CW (DMR), 2016 WL 1570163, at *3
10 (N.D. Cal. Apr. 19, 2016).  In *this* case, Sonos served its 30(b)(6) notice on Google on January 5,
11 2022.  Google's repeated failure to identify and put up a competent designee over the course of
12 10 hard-fought months is a problem that lays at Google's feet, not Sonos's.

13     Fourth, Google argues that Sonos's routine amendment actually contains an entirely new
14 theory of infringement.  Opp. at 1, 3, 8-10, 12.  Google argues that Sonos is "add[ing] new
15 theories directed at how the 'stream transfer' feature performs the steps of 'detecting an
16 indication' and the 'after detecting the indication, transitioning. . . . to ii) a second mode in which
17 . . . the computing device is no longer configured for playback.'"  Opp. at 1 (emphasis omitted).
18 Google identifies the offending amendment in one pincite on the second-to-last page of its
19 opposition, identifying "Dkt. 406-2 at 84-85."  Opp. at 12.  According to Google, this citation
20 shows that Sonos is "significantly broaden[ing] the scope of the claims" and for the first time,
21 contending that the "detecting an indication" of successful transfer limitation is met "by a
22 successful cast command where the receiver begins playback (i.e., detecting no error) or the
23 alleged 'computing device' seizing playback responsibility if there is an error."  Google says this
24 "seemingly reads the limitation out of the claim and therefore significantly broadens the scope of
25 the claims."  Opp. at 12.  Google is wrong that this is a new theory of infringement and is
26 blatantly mischaracterizing Sonos's amendment.

27     Sonos's original contentions for the "detecting an indication" limitation refer to a
28 "response to [the] 'ResumeSession' message," *see* Dkt. 406-2, Moss Ex. 1 at 84, which Mr.

Maclellan later confirmed is the key responsive message by which a Hub display knows that a stream transfer was or was not successful. As Sonos explained, a Hub display sends a "ResumeSession" message to a destination media player (e.g., smart speaker) to transfer the Hub display's playback state to the destination media player. *Id.* at 65. A destination media player does not begin playback absent a ResumeSession message. Thus, after reviewing the cited Google technical documentation,[3] Sonos accused this ResumeSession "response" as the recited "indication" in the claim.

Sonos was not able to confirm the full functionality of the ResumeSession "response" until Google's 30(b)(6) designee confirmed for the first time that Sonos's "response message" theory was correct, by explaining that, the Hub display (i) "sends the resume session [message] and … it is waiting on … the destination [media player] to respond with something for the resume session command" (Moss Reply Decl., Ex. 12 (Maclellan Dep. Tr.), 168:14-170:5), (ii) processes this "response" in the OnTransferComplete method (*id.*, 168:14-174:1), (iii) within that method, evaluates the payload of the "response" to determine whether it indicates a success or failure (*id.*, 170:24-174:1), and (iv) takes back responsibility for playback in the failure scenario (*id.*, 174:4-175:2). *See also, e.g.*, *id.*, 180:9-183:25 (testifying about destination player transmitting response to ResumeSession message), *id.*, 195:19-196:15 (describing particular use case of Hub receiving success or failure indication). Because Sonos's citations merely confirm that Sonos's theory was correct all along, Sonos's proposed amendment does not present any new theory.

Elsewhere in its opposition, Google complains repeatedly that the proposed amendment doesn't consist exclusively of citations to Mr. Maclellan's testimony.[4] *See, e.g.*, Opp. at 6 ("Sonos's amendments only include a single citation to Mr. Maclellan's deposition testimony for a single claim limitation"). Of course, the very first paragraph Google complains about consists

---

[3] As noted above, Google's document production of "stream transfer" technical information was slim to none.

[4] As explained above, this misses the point—all of the code that Sonos proposes adding is closely related to and a direct result of Mr. Maclellan's testimony explaining the stream transfer functionality.

*entirely* of evidence obtained at Mr. Maclellan's testimony.[5] And that very citation is the principal amendment that Google complains adds a new theory. *See* Opp. at 12 (citing Dkt. 406-2 at 84-85 as the sole specific pincite to an allegedly new theory by Sonos). So, Google is telling the Court that Sonos is wrong to cite to this new deposition testimony because Google thinks it contains a new theory, while asserting at the same time that Sonos is *also* wrong because Sonos does not cite to this same deposition testimony enough. Because Sonos did not include any new theories in its proposed amendments, and because the proposed amendments consist of Mr. Maclellan's testimony and supporting source code citations, Google's arguments should be rejected.

<u>Google would suffer no undue prejudice from the proposed amendment</u>. As Sonos explained, Google would not be prejudiced if the Court grants this motion, for at least four reasons. Google offers no convincing response. First, Sonos explained why Google has long been aware of and on notice of both this infringement theory, and of Sonos's ongoing efforts to obtain this discovery from Google. Mot. at 4-5. Second, Sonos noted that the amendment consists entirely of information obtained from or confirmed by Google in the November 11, 2022 Maclellan deposition—information of which Google was undoubtedly aware. Mot. at 5. Third, Sonos explained that Google will not be prejudiced by the amendment because the new information overwhelmingly confirms Sonos's currently operative contentions regarding this functionality, with the amendments consisting largely of addition of slightly greater detail, including specific source code citations. Mot. at 5. Fourth, Sonos noted that trial in this matter is set for May 2022, which will provide Google more than ample time to respond to Sonos's amended contentions if necessary. Mot. at 5.

Google's only actual claim of prejudice is that Sonos "now demands an opportunity to change the long-standing infringement theories that have been extant for months." Opp. at 10. Every argument that Google makes regarding prejudice depends upon its contention that Sonos is seeking to smuggle in *new* theories of infringement. *See* Opp. at 10-13. Google is wrong, as

---

[5] And the redlined paragraphs that follow on the rest of pages 84-85 simply provide source code citations illustrating Mr. Maclellan's testimony.

explained above. And because Google's claims of prejudice rely entirely on its incorrect characterization of Sonos's routine amendment, Google effectively concedes that *if* it is wrong about how to characterize Sonos's amendment, then it has no claim of prejudice at all.

Even if the Court agreed with Google that some limited portion of Sonos's proposed amendments reflect a new theory, the Court should still reject Google's inflated claims of prejudice. Google argues "if Sonos is permitted to add new theories of liability and infringement," then Google will be entitled to "substantial revisions to the case schedule." Mot. at 13. Google argues that it will need "an opportunity to amend its invalidity contentions and to serve additional appropriate discovery," "an opportunity to supplement" "its expert report on invalidity," and "time to consider" all of the above. *Id.* Sonos has been asking for this discovery in different forms since August 2021—when Sonos served written discovery—and January 2022—when Sonos served a 30(b)(6) deposition notice. Google now seeks to use its own failure to cooperate in discovery as a reason to deny *Sonos* relief. After failing to produce a competent 30(b)(6) witness for *ten months*—from January 5, 2022 until November 11, 2022—despite Sonos's repeated requests and motion to compel, Google argues that Sonos is trying to amend its infringement contentions too close to the end of fact discovery. But these facts show a lack of diligence on Google's part, not Sonos's. *See Delphix*, 2015 WL 5693722, at *4 ("[E]ven assuming the proposed amended infringement contentions put forth a new theory of infringement, amendment may be allowed if the new theory is based on information that was not previously disclosed."). Any "prejudice" to Google here is self-inflicted. The Court should reject Google's effort to obtain more delay.

## III.  CONCLUSION

For the foregoing reasons, Sonos respectfully requests that the Court grant Sonos leave to amend its infringement contentions as to the '033 Patent.

Dated: December 19, 2022

By: */s/ Alyssa Caridis*
CLEMENT SETH ROBERTS
ALYSSA CARIDIS
EVAN D. BREWER

ORRICK, HERRINGTON & SUTCLIFFE LLP

SEAN M. SULLIVAN
MICHAEL P. BOYEA
COLE B. RICHTER

LEE SULLIVAN SHEA & SMITH LLP

*Attorneys for Sonos, Inc.*