# EXHIBIT 3

# FILED UNDER SEAL

Contains Highly Confidential AEO and Source Code Materials

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| GOOGLE LLC,<br><br>       Plaintiff<br><br>v.<br><br>SONOS, INC.,<br><br>       Defendant. | CASE NO. 3:20-cv-06754-WHA<br>Related to CASE NO. 3:21-cv-07559-WHA |

**OPENING EXPERT REPORT OF DR. DAN SCHONFELD REGARDING CLAIM 1 OF U.S. PATENT NO. 10,848,885**

in standalone mode after being added to a new zone scene, but Sonos cites no direct evidence of this, and instead makes this conclusion from a set of incorrect interpretations of irrelevant portions of the specification.  Fourth, Sonos argues that "invoking" a zone scene causes the zone scene to become configured to play audio in synchrony, but this does not disclose that a zone player continues in standalone mode after being added to a group either.  Rather, the zone player may have been stopped and then later invoked to play back the different audio in synchrony.

## XII.  NON-INFRINGING ALTERNATIVES

723.  As I will explain (in what I expect will be my forthcoming report on non-infringement), Google's products do not infringe the '885 patent.  It is thus my opinion that the accused Google products are themselves non-infringing alternatives to Claim 1 of the '885 patent.

724.  Additionally, I understand that Sonos contends that for Claim 1 of the '885 patent, the date of first infringement in this case is November 24, 2020, the date on which the '885 patent issued.  Based on my current understanding of Sonos's infringement contentions and my review of the evidence in this case, including documents, deposition testimony and source code, it is my opinion that additional non-infringing alternatives were available at the time of the alleged first infringement (and are still available today).

725.  I discuss one of these non-infringing alternatives below.  I reserve the right to update, amend, or supplement my opinions based on further evidence offered by the parties or located based on my investigation, opinions proffered by Sonos's experts, or arguments raised by counsel.

726.  I describe an Alternative, an implementation in which when the accused "standalone" speaker is added to a target group, it matches the music (or silence) of the target group.  The Alternative is a non-infringing alternative for the Accused Instrumentalities to the alleged invention claimed in Claim 1 of the '885 patent.

Contains Highly Confidential AEO and Source Code Materials

727. Claim 1 includes limitations that require the zone player to be added to two different zone scenes: "(i) receiving, from a network device over a data network, a first indication that the first zone player has been added to a first zone scene comprising a first predefined grouping of zone players including at least the first zone player and a second zone player that are to be configured for synchronous playback of media when the first zone scene is invoked" and "(ii) receiving, from the network device over the data network, a second indication that the first zone player has been added to a second zone scene comprising a second predefined grouping of zone players including at least the first zone player and a third zone player that are to be configured for synchronous playback of media when the second zone scene is invoked, wherein the second zone player is different than the third zone player". The claim then requires that "after receiving the first and second indications, continuing to operate in the standalone mode until a given one of the first and second zone scenes has been selected for invocation." In other words, the claim requires the a zone player that was playing back music individually to be added to two different zone scenes, but to continue to operate in a "standalone mode" until one of the two zone scenes is "invoked."

728. Infringement may therefore be avoided simply by having the "standalone" speaker that is added to two zone scenes ***not*** continue to operate in "standalone" mode after it has been added to those zone scenes. As noted above, instead, the accused "standalone" speaker after being added to a zone scene may match the music (or silence) of the target zone scene. Indeed, currently, when a single speaker is playing music and a group is playing music and the single speaker is added to the group, the speaker will begin playing the music that the group was playing. Having this be true for the situation where a speaker is playing music and joined to a group that is not playing music would harmonize the behavior in these two situations.

729. The Alternative would have been an available option for Google to implement at the time of the alleged first infringement and would take little engineering time and cost to

implement. Further, end users would have found Alternative #1 to be an acceptable alternative. It may match user expectations that a speaker added to a group playing music would take on playing the music (or silence) of that group. Indeed, this may be why Sonos has never implemented this claimed feature, and why Mr. Lambourne, the inventor of the '885 patent, testified that a purpose of the zone scene patents was to have synchronous audio playback for groups—not having synchronous audio playback of *some* members of the group while "standalone" speakers play back different/non-synchronous audio. Lambourne Dep. Tr. 57:14-59:3.

730.   I have spoken to Mr. Ken Mackay, a software engineer for Google, regarding the Alternative on June 21, 2022. Mr. Mackay confirmed that to implement the Alternative, Google would only need only one Level-6 software engineer working for one day. Based on my education, my experience, the computer science projects I have supervised as a professor, my consulting experience, relevant deposition transcripts, my discussions with Mr. Mackay and my use of Accused Products, I estimate that the Alternative could be implemented in the accused products using the same engineering resources estimated by Mr. Mackay.

### XIII. UNPATENTABLE SUBJECT MATTER

731.   As an initial matter, I understand that claim 1 of the '885 patent is directed to the abstract idea of grouping and controlling speakers through "zone scenes" that are created using subjective mental processes of human users. At base, the apparent invention according to the patent itself is grouping speakers for simultaneous playback of the same media. '885 Patent at 2:36-37 ("[T]he present invention pertains to controlling a plurality of multimedia 23 players, or simply players, in groups."). As the patent recognizes, "conventional multi-zone audio system[ s] that usually include[] a number of audio players" were already known art and could "play[] different audio sources in different audio players" by being "either hard-wired or controlled by a pre-configured and pre-programmed controller." Dkt. 208-2 at 1:62-65. In fact, the specification

Contains Highly Confidential AEO and Source Code Materials

experience the time-synchronized delivery of media content. *See, e.g.*, '694 patent at Abstract, 10:21-29. Both patents also reference similar hardware such as playback devices and processors as well. *See, e.g.*, '885 patent at 5:21-39, 6:28-48, and '694 patent at 4:31-65, Fig. 1.

## XVI. RESERVATION OF RIGHTS

755. In the event I am called upon to testify as an expert witness in this case, I may also discuss my own work, teaching, and publications in the field, and knowledge of the state of the art in the relevant time period. I may rely on handbooks, textbooks, technical literature, my own personal experience in the field, and other relevant materials or information to demonstrate the state of the art in the relevant period and the evolution of relevant technologies. I also reserve the right to rely on demonstrative exhibits to help explain the opinions set forth in this report.

756. I reserve the right to modify or supplement my opinions, as well as the basis for my opinions, in light of new positions set forth by Sonos, to the extent Sonos is permitted to advance those positions. This includes positions concerning the scope and interpretation of the asserted claim, infringement allegations, conception, diligence, and reduction to practice, and secondary considerations. It is also my understanding that Sonos may submit an expert report corresponding to this Report. I reserve the right to rebut any positions taken in that report.

I, Dan Schonfeld, declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

DATED: June 22, 2022

Dan Schonfeld, Ph.D