# EXHIBIT J

# FILED UNDER SEAL

CLEMENT SETH ROBERTS (STATE BAR NO. 209203)
croberts@orrick.com
BAS DE BLANK (STATE BAR NO. 191487)
basdeblank@orrick.com
ALYSSA CARIDIS (STATE BAR NO. 260103)
acaridis@orrick.com
EVAN D. BREWER (STATE BAR NO. 304411)
ebrewer@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:     +1 415 773 5700
Facsimile:     +1 415 773 5759

SEAN M. SULLIVAN (*pro hac vice*)
sullivan@ls3ip.com
COLE RICHTER (*pro hac vice*)
richter@ls3ip.com
LEE SULLIVAN SHEA & SMITH LLP
656 W Randolph St., Floor 5W
Chicago, IL 60661
Telephone:     +1 312 754 0002
Facsimile:     +1 312 754 0003

*Attorneys for Defendant Sonos, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| GOOGLE LLC,<br><br>    Plaintiff and Counter-defendant,<br><br>v.<br><br>SONOS, INC.,<br><br>    Defendant and Counter-claimant. | Case No. 3:20-cv-06754-WHA<br>Related to Case No. 3:21-cv-07559-WHA<br><br>**OPENING EXPERT REPORT OF**<br>**DR. KEVIN C. ALMEROTH** |

**HIGHLY CONFIDENTIAL - SOURCE CODE - ATTORNEYS' EYES ONLY**

Patent and all the Asserted Claims of the '966 Patent because the Accused Google Players would not *continue* to operate in standalone mode *after* being added to a new speaker group at an Accused Google Controller.  Instead, each Accused Google Player "would immediately adopt the behavior of the accused 'zone scene' to which it was added," which I understand to mean that a new "speaker group" (a claimed "zone scene") would be launched automatically in response to a user requesting that the new "speaker group" be created at an Accused Google Controller (as opposed to not being launched unless and until a user separately requests that the new "speaker group" be launched via an Accused Google Controller, which would cause the Accused Google Controller to send a message to at least one Accused Google Player in the new speaker group that causes the Accused Google Players in the new speaker group to begin operating in accordance with the new speaker group).  In support of this alleged "non-infringement" position, Google and its expert, Dr. Schonfeld, appear to rely on the express language of claim limitation 1.8 of Asserted Claim 1 of the '885 Patent, which recites "*after* receiving the first and second indications" that the first zone player has been added to first and second zone scenes, the first zone player "*continuing* to operate in the standalone mode until a given one of the first and second zone scenes has been selected for invocation."  *See* Google's Eighth Suppl. Resp. to Sonos's First Set of Interrogatories at 8-9; Opening Expert Report of Dan Schonfeld, dated June 22, 2022 and corrected on July 10, 2022, at ¶¶ 727-728; Schonfeld Dep. Tr. (August 31, 2022) at 66:10-24, 69:19-71:13, 71:14-72:6.

743.     However, unlike Asserted Claim 1 of the '885 Patent, the Asserted Claims of the '966 Patent do *not* require the first zone player "*continuing* to operate in the standalone mode" "*after* receiving the first and second indications" that the first zone player has been added to first and second zone scenes, respectively.  Instead, with respect to the "first zone player" operating in "standalone mode," independent claims 1 and 9 of the '966 Patent (the only asserted independent claims of the '966 Patent) recite the following:

> **[1.4]/[9.1]**     while serving as a controller for a networked media playback system comprising a first zone player and at least two other zone players, wherein the first zone player is operating in a *standalone mode* in which the first zone player is configured to play back media individually:

316

**[1.5]/[9.2]** receiving a first request to create a first zone scene comprising a first predefined grouping of zone players including at least the first zone player and a second zone player that are to be configured for synchronous playback of media when the first zone scene is invoked;

**[1.6]/[9.3]** based on the first request, i) causing creation of the first zone scene, ii) causing an indication of the first zone scene to be transmitted to the first zone player, and iii) causing storage of the first zone scene;

**[1.7]/[9.4]** receiving a second request to create a second zone scene comprising a second predefined grouping of zone players including at least the first zone player and a third zone player that are to be configured for synchronous playback of media when the second zone scene is invoked, wherein the third zone player is different than the second zone player;

**[1.8]/[9.5]** based on the second request, i) causing creation of the second zone scene, ii) causing an indication of the second zone scene to be transmitted to the first zone player, and iii) causing storage of the second zone scene;

**[1.9]/[9.6]** displaying a representation of the first zone scene and a representation of the second zone scene; and

**[1.10]/[9.7]** while displaying the representation of the first zone scene and the representation of the second zone scene, receiving a third request to invoke the first zone scene; and

**[1.11]/[9.8]** based on the third request, causing the first zone player to transition from operating in the *standalone mode* to operating in accordance with the first predefined grouping of zone players such that the first zone player is configured to coordinate with at least the second zone player to output media in synchrony with output of media by at least the second zone player.

744.  In my opinion, claim limitations 1.5-1.10/9.2-9.7 of claims 1 and 9 of the '966 Patent can be met by a "computing device" that is capable of performing each respective function of claim limitations 1.5-1.10/9.2-9.7 at a time when the "first zone player" is operating in "standalone mode," regardless of whether the "first zone player" "continues to operate in "standalone mode" during the time in-between when any two of the respective functions recited in claim limitations 1.5-1.10/9.2-9.7 are performed.  Neither claim limitation 1.4/9.1 nor claim limitation 1.11/9.8 nor any other limitation of claims 1 and 9 of the'966 Patent requires the "first zone player" to operate in "standalone mode" *continuously* while all of claim limitations 1.5-1.10/9.2-9.7 are performed by the "computing device."  Rather, with respect to the "standalone mode" requirement, the "computing device" need only be capable of (i) performing each

317

respective function of claim limitations 1.5-1.10/9.2-9.7 at a time when a first Accused Google Player is operating in "standalone mode" and then (ii) performing the function of claim limitation 1.11/9.8, which recites, among other things, "causing the first zone player to transition from operating in the standalone mode to operating in accordance with the first predefined grouping of zone players."

745. Applying this proper interpretation of the "standalone mode" requirement of the Asserted Claims of the '966 Patent, Google's second purported non-infringing alternative does *not* avoid infringement. As explained below, each Accused Google Controller is still programmed with the functional capability for (i) performing each respective function of claim limitations 1.5-1.10/9.2-9.7 at a time when a first Accused Google Player is operating in "standalone mode" and then (ii) performing the function of claim limitation 1.11/9.8, which recites, among other things, "causing the first zone player to transition from operating in the standalone mode to operating in accordance with the first predefined grouping of zone players."

*Claim Limitations 1.5/9.2 and 1.6/9.3*

746. Based on my understanding of Google's second purported non-infringing alternative, it is my opinion that each Accused Google Controller is still programmed with the functional capability required by claim limitations 1.5/9.2 and 1.6/9.3.

747. For instance, based on my understanding of Google's second purported non-infringing alternative, each Accused Google Controller (the claimed "computing device") still has the functional capability to perform each respective function of claim limitations 1.5/9.2 and 1.6/9.3 at a time when a first Accused Google Product (the claimed "first zone player") is operating in standalone mode (whether or not engaging in active playback of media). *See* Sections XIV.C.3, XIV.C.4.

*Claim Limitations 1.7/9.4 and 1.8/9.5*

748. Based on my understanding of Google's second purported non-infringing alternative, it is my opinion that each Accused Google Controller is still programmed with the functional capability required by claim limitations 1.7/9.4 and 1.8/9.5.

749. For instance, based on my understanding of Google's second purported non-