# EXHIBIT 6
# (Filed Under Seal)

CLEMENT SETH ROBERTS (STATE BAR NO. 209203)
croberts@orrick.com
BAS DE BLANK (STATE BAR NO. 191487)
basdeblank@orrick.com
ALYSSA CARIDIS (STATE BAR NO. 260103)
acaridis@orrick.com
EVAN D. BREWER (STATE BAR NO. 304411)
ebrewer@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:    +1 415 773 5700
Facsimile:    +1 415 773 5759

SEAN M. SULLIVAN (*pro hac vice*)
sullivan@ls3ip.com
COLE RICHTER (*pro hac vice*)
richter@ls3ip.com
LEE SULLIVAN SHEA & SMITH LLP
656 W Randolph St., Floor 5W
Chicago, IL 60661
Telephone:    +1 312 754 0002
Facsimile:    +1 312 754 0003

*Attorneys for Defendant Sonos, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION"

| | |
|---|---|
| GOOGLE LLC,<br><br>    Plaintiff and Counter-defendant,<br><br>    v.<br><br>SONOS, INC.,<br><br>    Defendant and Counter-claimant. | Case No. 3:20-cv-06754-WHA<br>Related to Case No. 3:21-cv-07559-WHA<br><br>**REBUTTAL EXPERT REPORT OF<br>DR. KEVIN C. ALMEROTH** |

…

**[1.9]** displaying a representation of the first zone scene and a representation of the second zone scene; and;

600. In my opinion, Sonos's 2005 system did not meet this requirement.

601. As explained above, the evidence I have reviewed establishes that Sonos's 2005 system only provided users with the ability to form and use ad-hoc "zone groups," which are not the claimed "zone scenes" for the reasons explained above. Thus, for this reason, the Sonos controllers in Sonos's 2005 system did not have any functional capability for "displaying a representation" of a "zone scene" – let alone the required functional capability for "displaying a representation of the first zone scene and a representation of the second zone scene" in a manner that allows a user to select between them for purposes of requesting invocation.

602. Further, as explained above, the "first zone scene" and the "second zone scene" for which the "representation[s]" are "display[ed]" are required to overlap with one another by including at least one common "zone player" (i.e., the claimed "first zone player"). However, in Sonos's 2005 system, it was not possible for two ad-hoc "zone groups" to overlap with one another; rather, each ZonePlayer could only be a member of a single "zone group" at any given time. Thus, for this additional reason, a Sonos controller in Sonos's 2005 system did not have the required functional capability to "display[] a representation of the first zone scene and a representation of the second zone scene."

603. Further yet, claim limitations 1.4 and 1.9 require the "computing device" to "display[] a representation of the first zone scene and a representation of the second zone scene" at a time when the "first zone player" is "operating in a standalone mode," which means that the "first zone scene" and the "second zone scene" both must be in an inactive state at the time that the "representation[s]" are "display[ed]" (otherwise, the "first zone player" could not be in "standalone mode"). However, in Sonos's 2005 system, it was not possible for an ad-hoc "zone group" to exist in an inactive state in which the members of the "zone group" could be used for individual playback while the "zone group" remained available for selection by a user; rather, an ad-hoc "zone group" only remained in existence for the temporary period of time during which it

298

was activated, and once deactivated, the "zone group" would cease to exist. Moreover, while a Sonos controller was capable of displaying the hard-coded "All Zones-Party Mode" option at a time when a ZonePlayer was operating in standalone mode, (i) the hard-coded "All Zones-Party Mode" option was not a "zone scene" for the reasons explained above and (ii) the hard-coded "All Zones-Party Mode" option alone cannot possibly meet the claimed requirement of displaying "representations" of multiple overlapping "zone scenes."

604. Despite this clear evidence establishing that the Sonos controllers and ZonePlayers in Sonos's 2005 system did not have any "zone scenes" capability, Dr. Schonfeld nevertheless opines that claim limitations 1.4 and 1.9 of Asserted Claim 1 of the '966 Patent were either disclosed or rendered obvious by Sonos's 2005 system. *See* Schonfeld Op. Report at ¶¶ 970, 976. However, I find Dr. Schonfeld's opinions regarding Sonos's 2005 system and claim limitations 1.4 and 1.8 of Asserted Claim 1 of the '966 Patent to be flawed for several reasons.

605. As an initial matter, the entirety of Dr. Schonfeld's discussion regarding Sonos's 2005 system and claim limitations 1.4 and 1.9 of Asserted Claim 1 of the '966 Patent is shown in the screenshots below from Dr. Schonfeld's Opening Report:

> (iv) *Limitation 1.4 "while serving as a controller for a networked media playback system comprising a first zone player and at least two other zone players, wherein the first zone player is operating in a standalone mode in which the first zone player is configured to play back media individually:"*
>
> 970. *See supra* '885 claim 1 "network device" disclosure in, *e.g.*, 1.6, 1.7, 1.9, "network interface" disclosure in, e.g., 1.1, "zone player" disclosure in, e.g., preamble, 1.1, 1.4-1.7, .9-.10, "standalone mode" disclosure in, e.g., 1.5, 1.8, 1.10.

explained above, Sonos's 2005 system did not "already permit[] this same transition for different 'zone scenes'" because Sonos's 2005 system had no "zone scene" functionality at all, and Dr. Schonfeld's characterization of Asserted Claim 2 as "merely repeating the same steps using the same functionalities with a different 'zone scene'" is also not accurate – Asserted Claim 1 requires the "computing device" to carry out the functionality of limitations 1.10-1.11 at a time when the "first zone scene" and the "second zone scene" are both uninvoked, whereas Asserted Claim 2 requires the "computing device" to carry out the functionality of limitations 2.1-2.2 at a time when the "first zone scene" is invoked and the group members of the "first zone scene" are "configured to coordinate" with one another for synchronous playback.

873. Thus, nothing in Dr. Schonfeld's Opening Report alters my opinion that the Sonos controllers in Sonos's 2005 system did not have the functional capability required by Asserted Claim 2 of the '966 Patent, nor would it have been obvious to add this functionality to Sonos's 2005 system.

### 3. Asserted Claim 4 is Not Rendered Obvious Based on Sonos's 2005 System

874. Asserted Claim 4 of the '966 Patent depends from claim 3 of the '966 Patent, which in turn depends from Asserted Claim 1 of the '966 Patent. Claims 3 and 4 of the '966 Patent require as follows:

> **[3.0]** The computing device of claim 1, **[3.1]** wherein causing storage of the first zone scene comprises causing storage of the first zone scene at a location other than the computing device, and **[3.2]** wherein causing storage of the second zone scene comprises causing storage of the second zone scene at the location other than the computing device.

> **[4.0]** The computing device of claim 3, **[4.1]** wherein the location other than the computing device comprises a zone player of the first predefined grouping of zone players.

875. Thus, Asserted Claim 4 of the '966 Patent requires the claimed "computing device" to cause the claimed "zone scenes" to be stored at a "zone player" within the "predefined grouping" of the "first zone scene," such as the "first zone player" that is included in both the first and second "zone scenes."

391

876. In my opinion, Asserted Claim 4 of the '966 Patent is not rendered obvious based on Sonos's 2005 system in view of the general knowledge of a POSITA, the Sonos Forums, Nourse, Millington, or any of the other secondary references identified by Dr. Schonfeld.

877. Indeed, because Asserted Claim 4 of the '966 Patent depends from Asserted Claim 1 of the '966 Patent (through claim 3), it is my opinion that Asserted Claim 4 of the '966 Patent is not rendered obvious by Sonos's 2005 system in view of the general knowledge of a POSITA, the Sonos Forums, Nourse, Millington, or any of the other secondary references identified by Dr. Schonfeld for at least the same reasons discussed above in connection with Asserted Claim 1 of the '966 Patent.

878. Moreover, it is my opinion that the additional limitations of Asserted Claim 4 of the '966 Patent are neither disclosed by Sonos's 2005 system nor rendered obvious by Sonos's 2005 system in view of the general knowledge of a POSITA, the Sonos Forums, Nourse, Millington, or any of the other secondary references identified by Dr. Schonfeld for similar reasons to those discussed above in connection with limitations 1.6 and 1.8, which require the claimed "computing device" to have the functional capability to cause storage of the "first zone scene" and the "second zone scene." For example, as discussed above, a Sonos "zone group" is not a "zone scene," and the controllers in Sonos's 2005 system did not have any functionality capability for causing storage of a "zone scene" – let alone the functional capability for causing storage of two different, overlapping "zone scenes" – nor would it have been obvious to add this functionality to Sonos's 2005 system. And for similar reasons, the controllers in Sonos's 2005 system did not have any functionality capability for causing a "zone scene" to be stored at a ZonePlayer, nor would it have been obvious to add this functionality to Sonos's 2005 system.

879. Despite these clear deficiencies, Dr. Schonfeld nevertheless opines that intervening claim 3 and Asserted Claim 4 of the '966 Patent are both rendered obvious by Sonos's 2005 system. *See* Schonfeld Op. Report at ¶¶ 980-982. However, I find Dr. Schonfeld's opinion regarding Sonos's 2005 system and claims 3-4 of the '966 Patent to be flawed for several reasons.

880. As an initial matter, the entirety of Dr. Schonfeld's discussion regarding Sonos's 2005 system and claims 3-4 of the '966 Patent is shown in the screenshots below from Dr.

392

Schonfeld's Opening Report:

> **4.  Claim 3 is Obvious Based On Prior Art Sonos System.**
>
> (i)  *3. The computing device of claim 1, wherein causing storage of the first zone scene comprises causing storage of the first zone scene at a location other than the computing device, and wherein causing storage of the second zone scene comprises causing storage of the second zone scene at the location other than the computing device.*
>
> 980.  *See* '966 claim 1 *supra*. As described therein, the claimed "zone scene" is transmitted to and stored at the zone player, which is "a location other than the computing device."
>
> 981.  Furthermore, the decision of where to store the zone scene, which consists of a finite list of options, is obvious. The zone scene may be stored at the zone players, at the computing device, or in on a server. Because the prior art system is networked, there is very little if any effect of the location of storage on the efficacy and effectiveness of the prior art solution.

> **5.  Claim 4 Is Obvious Based On Prior Art Sonos System.**
>
> (i)  *4. The computing device of claim 3, wherein the location other than the computing device comprises a zone player of the first predefined grouping of zone players.*
>
> 982.  *See* '966 claim 3 *supra*.

881.  This shows that Dr. Schonfeld is primarily relying on his discussion of Asserted Claim 1 of his '966 Patent, but as explained above, Dr. Schonfeld has not set forth any analysis for Asserted Claim 1 of his '966 Patent; instead, Dr. Schonfeld relies on his prior discussion of Sonos's 2005 system in the context of certain claim limitations of the '885 Patent. However, the Asserted Claims of the '966 Patent are directed to a different type of device than Asserted Claim 1 of the '885 Patent (a "computing device" configured to "serv[e] as a controller" as opposed to a "zone player"), the Asserted Claims of the '966 Patent use different claim language than Asserted Claim 1 of the '885 Patent, and Dr. Schonfeld fails to provide any further explanation as to how his prior discussion of Sonos's 2005 system in the context of the claim limitations of Asserted

Claim 1 of the '885 Patent applies to the Asserted Claims of the '966 Patent. For these reasons, I disagree that the Dr. Schonfeld's discussion of Asserted Claim 4 of the '966 Patent amounts to a detailed and complete statement of all opinions to be expressed and the basis and reasons therefor, which I understand to be the governing standard for expert reports, and that barebones discussion has prejudiced my ability to fully discern, assess, and respond to his opinions regarding Asserted Claim 4 of the '966 Patent.[32]

882. With that said, as I have discussed above in Section XV.A.1 as well as in my '885 Rebuttal Report regarding Asserted Claim 1 of the '885 Patent, Dr. Schonfeld's analysis of Sonos's 2005 system in the context of Asserted Claim 1 of the '885 Patent suffers from a number of flaws, many of which are applicable to Asserted Claim 4 of the '966 Patent as well – including that his analysis is premised on both an incorrect interpretation if what is required to qualify as a "zone scene" and an inaccurate and misleading characterization of Sonos's 2005 system functionality and the evidence related thereto.

883. I also disagree with Dr. Schonfeld's unsupported and conclusory statement at paragraph 981 that "the decision of where to store the zone scene, which consists of a finite list of options, is obvious." Schonfeld Op. Report at ¶ 981. As explained above, it would not have been obvious to a POSITA in 2005-06 to incorporate any form of "zone scene" functionality into Sonos's 2005 system, let alone would have been obvious to incorporate "zone scene" functionality in which the "zone scenes" were stored at ZonePlayers as opposed to some other system component.

884. Likewise, I disagree with Dr. Schonfeld's unsupported and conclusory statement at paragraph 981 that "[b]ecause the prior art system is networked, there is very little if any effect of the location of storage on the efficacy and effectiveness of the prior art solution." Schonfeld Op. Report at ¶ 981. In my opinion, storing "zone scenes" on "zone players" rather than on the "computing device" as required by Asserted Claim 4 does indeed improve the "efficacy and effectiveness" of a networked media playback system, because it ensures that the "zone scenes"

---

[32] To the extent that Dr. Schonfeld later attempts to and is permitted to address these deficiencies in his Opening Report, I expressly reserve my right to respond.

will be available for selection by users on different controller devices as opposed to being available only on the controller device that was used to create the "zone scenes."

885. Thus, nothing in Dr. Schonfeld's Opening Report alters my opinion that the Sonos controllers in Sonos's 2005 system did not have the functional capability required by Asserted Claim 4 of the '966 Patent, nor would it have been obvious to add this functionality to Sonos's 2005 system.

### 4. Asserted Claim 6 is Not Rendered Obvious Based on Sonos's 2005 System

886. Asserted Claim 6 of the '966 Patent depends from Asserted Claim 1 of the '966 Patent and requires the following:

> **[6.0]** The computing device of claim 1, **[6.1]** wherein the first predefined grouping of zone players does not include the third zone player, and **[6.2]** wherein the second predefined grouping of zone players does not include the second zone player.

887. Thus, Asserted Claim 6 of the '966 Patent requires the claimed "computing device" to be programmed with functionality for creating two overlapping "zone scenes" where each "zone scene" includes at least one "zone player" that is not included in the other "zone scene."

888. In my opinion, Asserted Claim 6 of the '966 Patent is not rendered obvious based on Sonos's 2005 system in view of the general knowledge of a POSITA, the Sonos Forums, Nourse, Millington, or any of the other secondary references identified by Dr. Schonfeld.

889. Indeed, because Asserted Claim 6 of the '966 Patent depends from Asserted Claim 1 of the '966 Patent, it is my opinion that Asserted Claim 6 of the '966 Patent is not rendered obvious by Sonos's 2005 system in view of the general knowledge of a POSITA, the Sonos Forums, Nourse, Millington, or any of the other secondary references identified by Dr. Schonfeld for at least the same reasons discussed above in connection with Asserted Claim 1 of the '966 Patent.

890. Moreover, it is my opinion that the additional limitations of Asserted Claim 6 of the '966 Patent are neither disclosed by Sonos's 2005 system nor rendered obvious by Sonos's 2005 system in view of the general knowledge of a POSITA, the Sonos Forums, Nourse, Millington, or any of the other secondary references identified by Dr. Schonfeld for similar reasons

the '966 Patent. The new functionality is also not commercially acceptable for the same reasons as already discussed.

To the extent Dr. Schonfeld expands on his opinions concerning NIA 1 or the new software update, I reserve my right to respond

## XVIII. DEMONSTRATIVES

1656. To help assist in my testimony at trial, I have prepared a number of demonstratives that are attached hereto as **Exhibit 5**. These demonstratives are exemplary and I reserve the right to create additional demonstratives and/or to modify the demonstratives in **Exhibit 5** based on the material in this report. For example, I reserve the right to create additional demonstratives and/or to modify the demonstratives in **Exhibit 5** based on the images I included in this report as well as the evidence cited in this report. I also incorporate by reference the demonstratives I prepared for my opening report.

1657. I have also reviewed Sonos's Technology Tutorial that provides an overview of the '885 and '966 Patents, which I understand was submitted to the court in February 2022. I incorporate by reference herein Sonos's Technology Tutorial and expressly reserve the right to use the Technology Tutorial in whole or in part as a demonstrative to assist in my testimony. Additionally, I have attached a pdf version of Sonos's Technology Tutorial hereto as **Exhibit 6** and expressly reserve the right to use the images contained therein as demonstratives to assist in my testimony.

## XIX. RESERVATION OF RIGHT

1658. I reserve the right to further expound on my rebuttal opinions, including the validity of the Asserted Claims of the '966 Patent, in subsequent declarations, reports, and/or at trial.

Dated: January 13, 2023    By: *Kevin C. Almeroth*
                                Kevin C. Almeroth