CLEMENT SETH ROBERTS (SBN 209203)
croberts@orrick.com
BAS DE BLANK (SBN 191487)
basdeblank@orrick.com
ALYSSA CARIDIS (SBN 260103)
acaridis@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:   +1 415 773 5700
Facsimile:   +1 415 773 5759

SEAN M. SULLIVAN (*pro hac vice*)
sullivan@ls3ip.com
J. DAN SMITH (*pro hac vice*)
smith@ls3ip.com
MICHAEL P. BOYEA (*pro hac vice*)
boyea@ls3ip.com
COLE B. RICHTER (*pro hac vice*)
richter@ls3ip.com
LEE SULLIVAN SHEA & SMITH LLP
656 W Randolph St., Floor 5W
Chicago, IL 60661
Telephone:   +1 312 754 0002
Facsimile:   +1 312 754 0003

*Attorneys for Sonos, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA,

SAN FRANCISCO DIVISION

| | |
|---|---|
| SONOS, INC., <br><br> Plaintiff and Counter-Defendant, <br><br> v. <br><br> GOOGLE LLC, <br><br> Defendant and Counter-Claimant. | Case No. 3:20-cv-06754-WHA <br><br> Consolidated with <br> Case No. 3:21-cv-07559-WHA <br><br> **SONOS, INC.'S RESPONSE TO REQUEST FOR INFORMATION** <br><br> Judge: Hon. William Alsup <br> Pretrial Conf.: May 3, 2023 <br> Time: 12:00 p.m. <br> Courtroom: 12, 19th Floor <br> Trial Date: May 8, 2023 |

**<u>FILED UNDER SEAL</u>**

Sonos submits the following responses to the Court's request for information, Dkt. 649.

**1. In the real world, how much money has the IFTTT app developer received as a result of sales on the Google Play store?**

Sonos does not have access to the amount of money the IFTTT app developer received from sales on the Google Play store. Sonos reached out to IFTTT for this information after the Court issued its questions but has not heard back. The Court should note that IFTTT is also available on the Apple App store and that Apple has a larger market share than Google.

For context: Sonos's damages calculation does not depend on the *amount* of money that IFTTT received for sales of its solution on the Google Play store. That is because Sonos used IFTTT to establish the *price* that consumers are willing to pay for a comparable technological solution, not the amount of *revenue* that solution generates when sold on its own. Why? Because, of course, both Sonos and Google bundle similar solutions into their products … so consumers don't generally *need* an after-market solution. To give an analogy, the market price of an after-market steering wheel can be used as a starting point for a damages calculation on a steering-wheel patent even though cars already come with steering wheels and thus there is a relatively small after-market. The question is whether the *price* of the comparable after-market steering wheel reflects the fair market value. In this case the facts suggest it does: the makers of IFTTT allowed consumers some flexibility to choose their price and Sonos used the *lowest* price that consumers could choose. Having the actual data about the number of IFTTT sales and their various price points might have allowed Sonos to use a *higher* price as the market price … but the approach Sonos used (taking the lowest available price as the market price) is clearly *reasonable*.

**2. In the real world, how many downloads have been made of the IFTTT app?**

As of May 3, 2022, the IFTTT app was downloaded between 5 million and 10 million times from the Google Play Store. The IFTTT app is also available on the Apple App store, but the Apple App store does not show the number of downloads. The Android market makes up 40-45% of the US Market depending on the year, with the remainder being almost entirely Apple.

**3.      How many users have the Google Home app installed?**

Sonos accuses computing devices installed with at least the Google Home App of infringing the '966 patent. There are between 169,500,677 and 94,660,967 installations of the Google Home App from Q4 2019 through Q4 2022. *See* 12/9/22 Malackowski Suppl. Rep. at 29-30; 1/23/23 Malackowski Reply Rep. at 21. Sonos intends to use the lower number in the damages calculation it presents at trial.

**4.      How many uses does Sonos accuse of infringing the patents?**

Both the '885 and '966 patents are device claims, not method claims. As such, Sonos is not relying on *use* of the accused products for purposes of establishing infringement. The '885 patent claims zone players with software capable of performing certain functions. Sonos accuses Google media players of infringing the '885 patent. The players are *sold* with software capable of performing all the claimed functions. *See* Dkt. 309 at 9 (Order on Summary Judgment confirming that "the accused products only need to be reasonably capable of satisfying the limitation."); *NetFuel, Inc. v. Cisco Sys. Inc.*, 438 F. Supp. 3d 1031, 1035 (N.D. Cal. 2020) (Davila, J.) (applying the "reasonably capable" test to a claim similarly employing "when executed" language); 35 U.S.C. § 271 (Anyone who "makes, uses, offers to sell, or ***sells*** any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor," infringes the patent). Google sold 14,133,558 accused media players between Q4 2020 and Q3 2022. 1/23/23 Malackowski Reply Rep. at 8.

Sonos accuses computing devices installed with at least the Google Home App of infringing the '966 patent. When the Google Home App is *installed on* a computing device, infringement occurs by way of "making" the claimed invention, because the Google Home App programming is capable of performing every function recited in the claims. Dkt. 309 at 9; 35 U.S.C. § 271 (Anyone who "***makes***, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor," infringes the patent). Sonos therefore does not accuse "uses" in the sense of performing the acts of making and invoking zone scenes of infringement.

Dated: May 5, 2023

ORRICK HERRINGTON & SUTCLIFFE LLP
*and*
LEE SULLIVAN SHEA & SMITH LLP

By: */s/ Clement Seth Roberts*
  Clement Seth Roberts

*Attorneys for Sonos, Inc.*