CLEMENT SETH ROBERTS (STATE BAR NO. 209203)
croberts@orrick.com
BAS DE BLANK (STATE BAR NO. 191487)
basdeblank@orrick.com
ALYSSA CARIDIS (STATE BAR NO. 260103)
acaridis@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:   +1 415 773 5700
Facsimile:   +1 415 773 5759

SEAN M. SULLIVAN (*pro hac vice*)
sullivan@ls3ip.com
J. DAN SMITH (*pro hac vice*)
smith@ls3ip.com
MICHAEL P. BOYEA (*pro hac vice*)
boyea@ls3ip.com
COLE B. RICHTER (*pro hac vice*)
richter@ls3ip.com
LEE SULLIVAN SHEA & SMITH LLP
656 W Randolph St., Floor 5W
Chicago, IL 60661
Telephone:   +1 312 754 0002
Facsimile:   +1 312 754 0003

*Attorneys for Sonos, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SONOS, INC.,<br><br>Plaintiff and Counter-defendant,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant and Counter-claimant. | Case No. 3:20-cv-06754-WHA<br>Consolidated with Case No. 3:21-cv-07559-WHA<br><br>**DECLARATION OF ALAINA KWASIZUR IN SUPPORT OF SONOS, INC.'S PROFFER OF TESTIMONY**<br><br>Complaint Filed: September 28, 2020 |

**FILED UNDER SEAL**

I, Alaina Kwasizur, declare as follows and would so testify under oath if called upon to do so:

1. I am an attorney and member in good standing of the Bar of the State of California. I am the General Counsel (Americas and Pacific) at Sonos, Inc. ("Sonos"), and I have worked at Sonos since 2013. I make this declaration based on my personal knowledge, unless otherwise noted. If called and permitted to testify by the Court, I can and will testify competently to the matters set forth herein.

2. I make this declaration in support of Sonos's Proffer of Testimony concerning Google's pre-suit knowledge of the patents at issue in this case, which are U.S. Patent No. 10,469,966 ("the '966 patent") and U.S. Patent No. 10,848,885 ("the '885 patent"), which I may collectively refer to as "the zone scene patents."

3. I advise Sonos on all kinds of legal issues. As relevant to this case I work on many of our strategic partnerships. I negotiate strategic partnership agreements, technology licenses, distribution agreements, and IP licenses.

4. Prior to this litigation, Sonos and Google had several meetings concerning Google's infringement of Sonos's patents. We first approached Google almost as soon as their initial competing products came onto the market back in 2016. As I will explain, I was a key member of the Sonos team involved in those communications with Google.

5. Attached as **Exhibit 1** is TX6637, which is a true and correct copy of an email between Sonos and Google personnel. This is an early email that our legal team sent to Google in September 2016 summarizing a meeting that was held in August 2016 and attaching a document summarizing a number of Sonos patents that we identified as being relevant to Google's competing products. The people listed in the email fields from Sonos include Mark Triplett, a Sonos lawyer who heads up the Sonos IP department; Tom Cullen, who was VP of strategy and one of the founders of Sonos; Craig Shelburne, who was our general counsel at the time; and myself. On the Google side are John LaBarre and Allen Lo, who were Google in-house attorneys.

6. In the email, Mr. Triplett specifically notes that 16 patents are directly relevant to Google at the time. He also explains that there are 8 other patent specifications that the Google folks should review. He notes that "we seek to reach a licensing agreement with Google for the Sonos portfolio of utility patents." Mr. Triplett also explains that "[w]e keep the patent families alive to ensure over time that we accurately and precisely protect all the patentable innovations brought to this world by Sonos."

7. A patent family is a group of patents that share a patent specification and claim priority to one another. Typically, a patent applicant will file an initial patent application with a patent specification and a set of claims. Then the patent applicant can file a second patent application with the exact same specification but change the claims at the end in order to protect a different aspect of the invention. In this way, a patentee can protect different aspects of a product feature. And, as a patentee's products evolve over time, they can file continuation applications to cover the product evolution. The initial patent can be said to be the "grandparent" application, the next patent in the chain can be said to be the parent application, and the subsequent applications can be said to be the child applications.

8. Attached as **Exhibit 2** is TX6638, which is a true and correct copy of the attachment to the email from Exhibit 1. This attachment lists 16 issued Sonos patents that are relevant to Google's competing products. This also lists 4 allowed but not yet issued patents, as of the time of that email. And this lists 8 additional patent disclosures that we identified as relevant to Google. Line 5 of the additional patent disclosures shows Sonos's Patent No. 8,483,853 ("the '853 patent"). This is the first non-provisional filed in the zone patent family at issue in this case. It is the ultimate parent patent to the zone scene patents at issue in this case and shares a substantively identical specification to the zone patents at issue in this case.

9. Attached as **Exhibit 3** is TX6667, which is a true and correct copy of Sonos's Patent No. 8,483,853. This is the same zone scene patent we disclosed to Google in 2016. This patent was filed on Sept. 11, 2007 by Sonos and names inventor Robert Lambourne. The abstract reads "[a]ccording to one aspect of the present invention, a mechanism is provided to allow a user

1  to group some of the players according to a theme or scene, where each of the players is located
2  in a zone. When the scene is activated, the players in the scene react in a synchronized manner."

3      10.    Attached as **Exhibit 4** is TX0001, which is a true and correct copy of Sonos's '966
4  patent, which is one of the patents at issue in this case. For the avoidance of doubt, the cover
5  page lists the related applications (which is continued on to the second page). And at the bottom
6  of the list we see the 8,483,853 patent, which confirms that the '853 patent is the great-
7  grandparent patent to the '966 patent.

8      11.    I previously noted Mr. Triplett explained to Google that "[w]e keep the patent
9  families alive to ensure over time that we accurately and precisely protect all the patentable
10 innovations brought to this world by Sonos." When Mr. Triplett explains that Sonos keeps the
11 patent families alive, this means that Sonos typically files additional child applications based on
12 their existing patent applications and therefore Google should understand that additional patents
13 in each family will be filed and should be on the lookout for them.

14     12.    Attached as **Exhibit 5** is TX6635, which is a true and correct copy of an email Mr.
15 Triplett sent to Google in October 2016 leading up to an October 25, 2016 in-person meeting
16 between Sonos and Google. I am listed on the cc: line. In this email, Mr. Triplett attaches a
17 presentation highlighting some more Sonos patents.

18     13.    Attached as **Exhibit 6** is TX6636, which is a true and correct copy of the
19 attachment to TX6635. On page 3 of the attachment, we identified a number of Sonos patents
20 and the relevant Google products. And in the final box, on page 4, we identified the '853 patent
21 again and noted it was relevant to zone scenes functionality. Page 32 of TX6636 shows that we
22 highlighted the '853 patent again.

23     14.    Attached as **Exhibit 7** is TX6663, which is a true and correct copy of a
24 presentation that Sonos delivered to Google in October 2016. Slide 4 shows the size of Sonos's
25 patent portfolio at the time, which was growing significantly every year. At the meeting and
26 through this presentation, we discussed with Google that Sonos had about 230 issued or allowed
27 U.S. patents and were projected to have about 600 U.S. patents in the next two years. Slide 12
28 shows another example informing Google of the relevance of the zone scene patent family. At

1   the meeting and through the presentation, we highlight U.S. Pat. No. 8,843,228 ("the '228
2   patent"), which is the child application to the '853 patent and the great-grandparent to the '966
3   and '885 patents. In other words, the '228 patent is another zone scene patent in the same family
4   that Sonos disclosed to Google beginning in 2016.

5       15.    Attached as **Exhibit 8** is TX6668, which is a true and correct copy of Sonos's '228
6   patent. Looking back at Exhibit 4—Sonos's '966 patent—the '228 patent is referenced in the
7   related applications section.

8       16.    At the time of the meeting at which we presented Exhibit 7, Google had released
9   what was called a Chromecast Audio dongle and the Google Cast application, which was later
10  renamed the Google Home application. The audio dongle could plug into external speakers to
11  output sound and then you could group the audio dongles together with the Google Cast
12  application to play back music in synchrony. At the time of the meeting, Google had already
13  announced that it was releasing the Google Home speaker product, which was an "all-in-one"
14  speaker product that would directly compete with Sonos. By "all-in-one" I mean that the speaker
15  product had built-in speakers and did not need to plug into any external speakers. At the meeting
16  Sonos told Google that this Google Home product would also infringe Sonos's patents, in hopes
17  that we could reach a license agreement before Google started selling these new products. Sonos
18  disclosed additional patent families in the meeting that were also relevant to Google.

19      17.    Attached as **Exhibit 9** is TX6640, which is a true and correct copy of a
20  presentation that Sonos gave to Google in January 2018. By 2018, Google had significantly
21  expanded its multiroom audio product offerings. For instance, by this point, Google had recently
22  released multiple new products, including the Home, the Home Mini, and the Home Max. Slide
23  10 of Exhibit 9 shows the Google product offering at that time. At this meeting and through the
24  presentation, Sonos explained to Google that we believed that Google infringed at least 50 Sonos
25  patents. For example, Sonos explained why numerous Sonos patents were relevant to the Google
26  Home Max specifically, as well as to the entire Google Home ecosystem more broadly. Slide 8
27  shows an update on the state of Sonos's patent portfolio. By this point we had 450 issued or
28  allowed patents. And at the meeting and through the presentation, we identified the IEEE Patent

1  Power rankings showing that IEEE ranked Sonos's portfolio second only to Apple's in the
2  Electronics category.  Slide 13 also shows some Sonos patents we selected for discussion with
3  Google.  Under the "group management" heading we identified the '228 patent again.  Slides 27
4  through 29 provide an explanation of how Google's products practiced this '228 zone scene
5  patent.  This explained that the ability to create zone scenes (slide 28) and then invoke those zone
6  scenes using Google's app (slide 29) practiced this '228 patent and was relevant to the overall
7  zone scene family.

8     18.    Attached as **Exhibit 10** is TX6129, which is a true and correct copy of a letter Mr.
9  Triplett sent to Google in February 2019.  In this letter at page 2, Mr. Triplett explains that
10 Google has underestimated the number of Sonos patents that it infringes at 43.  He explains that
11 after continued review of Google's products and Sonos's growing portfolio that Sonos has
12 determined that Google infringes no less than 100 patents at this point.  As we can see a few
13 paragraphs above, he provides a link to 100 claim charts that Sonos prepared illustrating Google's
14 infringement of 100 Sonos patents.  Mr. Triplett concludes that letter by writing that "[w]e would
15 like to come to an understanding on a path towards completion of a patent licensing agreement
16 …. We would ask that Google review Sonos's detailed infringement claim charts, provide
17 substantive feedback on Sonos's licensing model, and consider the above feedback on Google's
18 model."

19     19.    Attached as **Exhibit 11** is TX6065, which is a true and correct copy of a claim
20 chart for the '228 patent and shows how Google infringes the ''228 patent.  This was one of the
21 100 claim charts referenced and made available for download via Mr. Triplett's letter.  A patent
22 claim is on the left hand side and a description of Google's products are on the right hand side.
23 The claim chart accuses Google of infringement of the '228 patent via smartphones, tablets, and
24 computers installed with the Google Home app, the Google Play Music app, and/or other
25 Chromecast-enabled apps.

26     20.    Attached as **Exhibit 12** is TX6658, which is a true and correct copy of an email
27 that I sent to Google in June 2019.  In this email I attach another presentation we gave to Google.
28

21.    Attached as **Exhibit 13** is TX6660, which is a true and correct copy of that presentation that we gave to Google in June 2019 and that I attached to my email, Exhibit 12. Slide 3 of Exhibit 13 shows a summary of the discussions to-date between Google and Sonos concerning patent licensing notated with Google's release of infringing products.  It summarizes many of the discrete events along the way in the testimony that I would give if permitted.  By way of example, the Chromecast audio dongle with multiroom support was released in December 2015; this is where Google's infringement began.  Then Sonos had two meetings with Google where we identified to Google 28 Sonos patents by October 2016.  Google then accelerated its infringement by releasing the Google Home in 2016, and then the Google Home Mini and the Google Home Max in 2017.  Following this, we had some additional meetings in 2018, where we brought the total number of Sonos patents identified to Google to 53.  Google then released the Google Home Hub, which was a display device that also infringed.  Finally, in February 2019, as we just discussed, we sent Google a letter identifying Google's infringement of 100 Sonos patents including by way of 100 claim charts.  The blue line shows the number of Sonos patents we identified to Google over time.  To summarize, first, 28, then 40, then 53, then 100.  Slide 15 is bringing to Google's attention once again that it infringes patents from the zone scene family.  And this presentation also brought the '228 patent to Google's attention specifically.  Slide 17 shows the '228 patent identified alongside the Google products.

22.    After the June 2019 presentation, Google continued to infringe by releasing more multiroom products, including the Nest Hub and the Nest Audio.

23.    Attached as **Exhibit 14** is TX6641, which is a true and correct copy of an email that I sent to Google in January 2020.  I write that "We have been patiently and in good faith trying for years to resolve Google's infringement of Sonos's intellectual property.  Despite Sonos's openness and willingness to further engage, our discussions have never meaningfully progressed.  Over this extended time, Google has only increased the scope of its infringement.  We are now going to seek resolution through the courts."

24.    Attached as **Exhibit 15** is TX6130, which is a true and correct copy of an email that I sent to Google in September 2020 concerning this case.  I write: "As you know, Sonos

1   spent years trying patiently and in good faith to resolve Google's infringement of Sonos's

2   intellectual property. Despite Sonos's efforts, our discussions have never meaningfully

3   progressed. Even since we filed in the ITC, Google has increased the scope of its infringement

4   and brought a multiplicity of retaliatory lawsuits in countries around the world. These lawsuits

5   will not have their intended effect. Attached please find a courtesy copy of the complaint that we

6   will file Tuesday, September 29th in the United States District Court. In this lawsuit, Sonos will

7   focus on Google's infringement of U.S. Patent[] . . . 10,469,966 . . . although, as we have

8   discussed, Google infringes many more of Sonos's patents."

9         25.    Attached as **Exhibit 16** is TX6136, which is a true and accurate copy of a draft

10  patent infringement complaint that I attached to Exhibit 15. This draft complaint sets forth

11  Sonos's allegations of infringement concerning the '966 patent.

12        26.    I am aware of Google's contention in this case concerning when it became aware

13  of the '966 patent. Google contends that it became aware of the '966 patent on September 28,

14  2020, which was the day I emailed them and told them we were going to file a lawsuit on the '966

15  patent. Attached as **Exhibit 17** is TX2335, which is a true and correct copy of an interrogatory

16  response served by Google in this case.

17        27.    We have been identifying zone scene patents to Google since 2016. This included

18  the '228 patent and the '853 patent. We also told Google that we keep patent families alive. This

19  put Google on notice to check and see when the Patent Office issued new patents to Sonos,

20  particularly in the zone scene family. Thus, the only way Google would not have known about

21  the '966 patent earlier was if it purposefully didn't check for these new patents. Had Google

22  checked, it would have found the '966 patent as early as its issue date, which was November 5,

23  2019.

24        28.    Moreover, the inventions claimed in the '966 patent (and the '885 patent) are

25  described in the original zone scenes specifications. Google therefore knew that Sonos could

26  claim that technology, and Google also knew that Sonos intended to continue securing patents

27  based on the zone scenes specification.

28

29. I understand that the Court granted Google's motion for summary judgment of no willful or indirect infringement of the '885 patent. Dkt. 566. As a result of that ruling, I understand that I will not be permitted to testify regarding Google's knowledge of its infringement of the '885 patent for purposes of willfulness or indirect infringement. But for the Court's ruling, I would have testified that for all of the same reasons described above, the only way Google would not have known about the '885 patent earlier was if it purposefully didn't check for these new patents. Had Google checked, it would have found the '885 patent as early as its issue date, which was November 24, 2020, and also would have realized it infringed the '885 patent. And as I described previously, I understand Google's contention in this case to be that it did not become aware of the '966 patent until September 28, 2020 (the day I emailed them and told them we were going to file a lawsuit on the '966 patent). But for the Court's ruling at Dkt. 566, I would have testified that even assuming Google was not aware of the '966 patent until September 28, 2020, Google's knowledge of the '966 patent should have put Google on notice of the '885 patent as of the '885 patent's issue date (November 24, 2020). Again—and specifically in light of Google's admitted knowledge of the '966 patent as of September 28, 2020—the only way Google would not have known about the '885 patent was if it purposefully didn't check for these new patents. Had Google checked, it would have found the '885 patent as early as its issue date, which was November 24, 2020.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge. Executed this 10th day of May, 2023 in San Francisco, California.

_____
Alaina Kwasizur