# EXHIBIT D-3

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
  Charles K. Verhoeven (Bar No. 170151)
  charlesverhoeven@quinnemanuel.com
  Melissa Baily (Bar No. 237649)
  melissabaily@quinnemanuel.com
  Lindsay Cooper (Bar No. 287125)
  lindsaycooper@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Attorneys for GOOGLE LLC

CLEMENT SETH ROBERTS (Bar No. 209203)
croberts@orrick.com
BAS DE BLANK (Bar No. 191487)
basdeblank@orrick.com
ALYSSA CARIDIS (Bar No. 260103)
acaridis@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: +1 415 773 5700
Facsimile: +1 415 773 5759

COLE BRADLEY RICHTER (admitted *pro hac vice*)
richter@ls3ip.com
LEE SULLIVAN SHEA & SMITH LLP
656 W Randolph St., Floor 5W
Chicago, IL 60661
Telephone: +1 312 754 0002
Facsimile: +1 312 754 0003

Attorneys for SONOS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOOGLE LLC,<br><br>              Plaintiff,<br><br>    v.<br><br>SONOS, INC.,<br><br>              Defendant. | Case No. 3:20-cv-06754-WHA<br><br>**STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION**<br><br>**JURY TRIAL DEMANDED** |
| SONOS, INC.,<br><br>              Plaintiff,<br><br>    v.<br><br>GOOGLE LLC,<br><br>              Defendant. | Case No. 4:21-cv-07559-WHA |

Upon the stipulation of the parties, the Court ORDERS as follows:

1. This Order streamlines Electronically Stored Information ("ESI") production to promote a "just, speedy, and inexpensive determination of this action, as required by Federal Rule of Civil Procedure 1."

2. This Order may be modified in the Court's discretion or by stipulation.  The parties shall jointly submit any proposed modifications within 30 days after the Federal Rule of Civil Procedure 16 Conference.

3. As in all cases, costs may be shifted for disproportionate ESI production requests pursuant to Federal Rule of Civil Procedure 26.  Likewise, a party's nonresponsive or dilatory discovery tactics are cost-shifting considerations.

4. A party's meaningful compliance with this Order and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations.

5. The parties agree to comply with the District's E-Discovery Guidelines ("Guidelines") and have employed the District's Model Stipulated Order Re: the Discovery of Electronically Stored Information and Checklist for Rule 26(f) Meet and Confer regarding Electronically Stored Information.

6. General ESI production requests under Federal Rules of Civil Procedure 34 and 45 shall not include email or other forms of electronic correspondence (collectively "email").  To obtain email parties must propound specific email production requests.

7. Email production requests shall be propounded for specific issues only, rather than general discovery of a product or business.

8. Email production requests shall be phased to occur after the parties have exchanged initial disclosures and basic documentation about the patents, the prior art, the accused instrumentalities, and the relevant finances. While this provision does not require the production of such information, the Court encourages prompt and early production of this information to promote efficient and economical streamlining of the case.

9. Email production requests shall identify the custodian, search terms, and time frame. The parties shall cooperate to identify the proper custodians, proper search terms and proper timeframe as set forth in the Guidelines.

10. Each requesting party shall limit its email production requests to a total of seven custodians per producing party for all such requests. The parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for additional custodians, upon showing a distinct need based on the size, complexity, and issues of this specific case. Cost-shifting may be considered as part of any such request.

11. Each requesting party shall limit its email production requests to a total of five search terms per custodian per party. The parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for additional search terms per custodian, upon showing a distinct need based on the size, complexity, and issues of this specific case. The Court encourages the parties to confer on a process to test the efficacy of the search terms. The search terms shall be narrowly tailored to particular issues. Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (*e.g.*, "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word. Use of narrowing search criteria (*e.g.*, "and," "but not," "w/x") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery. Should a party serve email production requests with search terms beyond the limits agreed to by the parties or granted by the Court pursuant to this paragraph, this shall be considered in determining whether any party shall bear all reasonable costs caused by such additional discovery.

12. With respect to email production requests, pursuant to Paragraph 19 of the Court's Supplemental Order to Order Setting Initial Case Management Conference in Civil Cases, the

parties agree that the producing Party need only produce hits resulting from the agreed-on search terms and agreed-on custodians.

13. Nothing in this Order prevents the parties from agreeing to use technology assisted review and other techniques insofar as their use improves the efficacy of discovery.

14. Absent a showing of good cause, the following sources need not be searched for documents and information responsive to the parties' discovery requests: automated disaster recovery backup systems and/or disaster recovery backup tapes; RAM or temporary files; temporary internet files, history, cache, cookies, and other on-line access data; data in metadata fields that are updated automatically such as last-opened dates; data remaining from systems no longer in use that is unintelligible on the systems in use; residual, fragmented, damaged, permanently deleted, and unallocated data; legacy computer systems, audio files; video files; server systems; network logs; personal digital assistants; mobile devices; cell phones; voicemails; USB flash drives, or the like; portable disks; voicemail systems; and instant messaging conversations (e.g., Skype, Slack, gChat, etc.).

15. Form of Production and Electronically Stored Information

The metadata fields listed below at paragraph 14n. shall generally be included in the production of Electronically Stored Information ("ESI") if such fields exist and are reasonably available to the producing Private Party. The following parameters shall apply to ESI production:

a) The general document image format of each electronic document produced shall be single-page TIFF Group IV images, black and white, at 300 x 300 dpi resolution with a standard delimited concordance format (DAT file) and either IPRO (LFP file) or Opticon (OPT file) format, including document breaks and page counts. The producing Party may, at any time, reproduce any document in color in JPG format or at a higher resolution. Documents reproduced in color or at a higher resolution shall bear the same production number(s) as the document originally produced document where practicable. A single multi-page text file shall be provided for each document, and the filename should match its respective TIFF image filename.

b) Images shall be produced using a unique file name that will be the production number of that page (e.g., ABC000001.TIF). The production number shall appear on the face of the image.

c) Spreadsheets (e.g., MS Excel, Google Sheets) and delimited text files (e.g., comma-separated value (.csv) files and tab-separated value (.tsv) files) shall be produced in either their native file format or MS Excel. TIFF images need not be produced unless the files have been redacted, in which instance such files shall be produced in TIFF with OCR Text Files. If good cause exists to request production of files, other than those specifically set forth above, in native format, the party may request such production and provide an explanation of the need for native file review, which request shall not be unreasonably denied. Any native files that are produced shall be produced with a link in the NativeLink field, along with extracted text and applicable metadata fields. A TIFF placeholder indicating that the document was provided in native format should accompany the database records. If a file has been redacted, TIFF images and OCR text of the redacted document will suffice in lieu of a native file and extracted text.

d) In addition, when possible native files shall be produced using a name that bears the production number, for example: ABC000002.xls. The DAT file shall also include a path to the native file.

e) Parent-child relationships (association between an attachment and its parent document) shall be preserved to the extent such relationships are maintained in the normal course of business in the source repository. The attachment(s) shall be produced adjacent to the parent document in terms of production numbers, with the first attachment being named with the next sequential number after the parent, and any additional attachment(s) sequentially numbered after that first attachment. Any parent-child relationship will be reflected in the DAT file.

f) Productions that contain foreign language documents shall be Unicode compliant.

STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION

g) To the extent possible, the unitization of a produced electronically stored document and any attachments or affixed notes shall be maintained as it existed in the original file or computer. Scanned/paper documents should be logically unitized (i.e., to preserve page breaks between documents and otherwise allow separate documents to be identified).

h) If unitization cannot be maintained, the original unitization shall be documented in the associated load file or otherwise electronically tracked if possible.

i) A single multi-page text file shall be provided for each document, and the filename should match its respective TIFF filename. A commercially-acceptable technology for optical character recognition ("OCR") shall be used for all scanned, hard copy documents written in English or other Latin-character language. When possible, the text of native files should be extracted directly from the native file. Text files will not contain the redacted portions of the documents and OCR text files will be substituted instead of extracted text files for redacted documents. All documents shall be produced with a link in the TextLink field.

j) The parties will use their best efforts to filter out common system files and application executable files and scan document productions for viruses. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list. Source code files will be provided according to the Protective Order and not included in custodial data productions.

k) The parties are required to produce only a single copy of a responsive document and the parties may de-duplicate responsive ESI (based on MD5 or SHA-1 hash values at the document level) across custodians, provided all custodians from whose files the document was collected are identified in the ALL CUSTODIAN field (see below).

l) The parties are not required to preserve metadata fields that are frequently updated in the ordinary course of business, such as last-opened dates.

m) The parties shall not be required to create any metadata for production (e.g., hash value or other metadata not associated with ESI in the ordinary course of business) except that the parties will create a field to indicate whether or not a document has been marked confidential pursuant to the protective order (see below list of metadata fields). Any

-6-

document produced with a confidentiality designation on the produced image is to be afforded confidential treatment under the Protective Order regardless of whether there is an entry in this field.

n) The following metadata fields shall be included in the production of all ESI if such fields exist and are reasonably available to the producing Private Party:

| Field Name | Field Description |
|---|---|
| BEGBATES | Number stamped on first image page of document |
| ENDBATES | Number stamped on last image page of document |
| BEGATTACH | Number stamped on first image page of attachment(s) |
| ENDATTACH | Number stamped on last image page of attachment(s) |
| CONF | Indicates whether a document has been designated as Confidential or Highly Confidential pursuant to the operative protective order. |
| ALL CUSTODIAN | Where applicable and available, identifies the individual (custodian) from whom the document originated (naming convention: last name, first name) and all Individual(s) whose documents de-duplicated out (De-Duped Custodian). |
| FROM | Email author |
| TO | Email addressee(s) |
| CC | Email copyee(s) |
| BCC | Email blind copyee(s) |
| SUBJECT | Email subject line |
| DATE_SENT | Email date sent |
| TIME_SENT | Email time sent |
| DATE_RECEIVED | Email date received |
| TIME_RECEIVED | Email time received |
| EMAILFOLDER | Email folder path |

STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION

| Field Name | Field Description |
|---|---|
| AUTHOR | Document author |
| TITLE | Document title |
| DATECREATED | Document create date |
| TIMECREATED | Document create time |
| **Field Name** | **Field Description** |
| DATELASTMOD | Document last modified date |
| TIMELASTMOD | Document last modified time |
| FILENAME | File name of an electronic document or attachment |
| FILEPATH | File path of an electronic document or attachment |
| FILESIZE | File size of an electronic document or attachment |
| FILE_EXTENSION | File extension of an electronic document or attachment |
| MD5HASH | Fingerprint signature of an electronic document or attachment |
| NATIVEFILELINK | For documents produced as native file, link to that file |
| TEXTFILELINK | Link to text file produced with document or attachment |

All documents shall be produced in their original language. Where a document responsive to a discovery request exists in a foreign language and an English-language version of that document exists in the producing party's possession, custody or control, the producing party shall produce both the original document and all pre-existing English-language versions.

Bates numbering and confidentiality designations shall not obscure any text or image in a document.

The parties also shall, upon reasonable request, produce a higher-resolution or color image of a document. The producing Private Party shall have the option of producing the native-file version of the documents in response to such requests.

If a party prints (whether in hard copy or to a .pdf or other electronic image) documents, or portions thereof, that are produced in native format, the party shall mark any such printout with a footer containing (1) the document's Bates number, and (2) any confidentiality designation assigned by the producing party to the document.

The parties may use encryption software, such as Accellion, kiteworks, WinZip, or PointSec, to protect any documents or materials produced on physical media.

**IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.**


DATED: February 1, 2022          _/s/ Lindsay Cooper_
                                  Attorneys for Google LLC


DATED: February 1, 2022          _/s/ Cole B. Richter_
                                  Attorneys for Sonos, Inc.



**PURSUANT TO STIPULATION, IT IS SO ORDERED.**

DATED: February 2, 2022          _____

                                  The Honorable William Alsup
                                  United States District Court Judge

# ECF ATTESTATION

I, Lindsay Cooper, am the ECF User whose ID and password are being used to file this Joint Letter for Discovery Relief.  In compliance with General Order 45, X.B., I hereby attest that Cole B. Richter, counsel for Sonos, has concurred in this filing.

Dated:  February 1, 2022

Lindsay Cooper
QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By:  _/s/ Lindsay Cooper_
Lindsay Cooper

STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
  Charles K. Verhoeven (Bar No. 170151)
  charlesverhoeven@quinnemanuel.com
  Melissa Baily (Bar No. 237649)
  melissabaily@quinnemanuel.com
  Lindsay Cooper (Bar No. 287125)
  lindsaycooper@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone:  (415) 875-6600
Facsimile:  (415) 875-6700

Attorneys for GOOGLE LLC

CLEMENT SETH ROBERTS (Bar No. 209203)
croberts@orrick.com
BAS DE BLANK (Bar No. 191487)
basdeblank@orrick.com
ALYSSA CARIDIS (Bar No. 260103)
acaridis@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: +1 415 773 5700
Facsimile: +1 415 773 5759

COLE BRADLEY RICHTER (admitted *pro hac vice*)
richter@ls3ip.com
LEE SULLIVAN SHEA & SMITH LLP
656 W Randolph St., Floor 5W
Chicago, IL 60661
Telephone: +1 312 754 0002
Facsimile: +1 312 754 0003

Attorneys for SONOS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOOGLE LLC,<br><br>        Plaintiff,<br><br>  v.<br><br>SONOS, INC.,<br><br>        Defendant. | Case No. 3:20-cv-06754-WHA<br><br>**STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION**<br><br>**JURY TRIAL DEMANDED** |
| SONOS, INC.,<br><br>        Plaintiff,<br><br>  v.<br><br>GOOGLE LLC,<br><br>        Defendant. | Case No. 4:21-cv-07559-WHA |

Upon the stipulation of the parties, the Court ORDERS as follows:

1. This Order streamlines Electronically Stored Information ("ESI") production to promote a "just, speedy, and inexpensive determination of this action, as required by Federal Rule of Civil Procedure 1."

2. This Order may be modified in the Court's discretion or by stipulation. The parties shall jointly submit any proposed modifications within 30 days after the Federal Rule of Civil Procedure 16 Conference.

3. As in all cases, costs may be shifted for disproportionate ESI production requests pursuant to Federal Rule of Civil Procedure 26. Likewise, a party's nonresponsive or dilatory discovery tactics are cost-shifting considerations.

4. A party's meaningful compliance with this Order and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations.

5. The parties agree to comply with the District's E-Discovery Guidelines ("Guidelines") and have employed the District's Model Stipulated Order Re: the Discovery of Electronically Stored Information and Checklist for Rule 26(f) Meet and Confer regarding Electronically Stored Information.

6. General ESI production requests under Federal Rules of Civil Procedure 34 and 45 shall not include email or other forms of electronic correspondence (collectively "email"). To obtain email parties must propound specific email production requests.

7. Email production requests shall be propounded for specific issues only, rather than general discovery of a product or business.

8. Email production requests shall be phased to occur after the parties have exchanged initial disclosures and basic documentation about the patents, the prior art, the accused instrumentalities, and the relevant finances. While this provision does not require the production of such information, the Court encourages prompt and early production of this information to promote efficient and economical streamlining of the case.

9. Email production requests shall identify the custodian, search terms, and time frame. The parties shall cooperate to identify the proper custodians, proper search terms and proper timeframe as set forth in the Guidelines.

10. Each requesting party shall limit its email production requests to a total of seven custodians per producing party for all such requests. The parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for additional custodians, upon showing a distinct need based on the size, complexity, and issues of this specific case. Cost-shifting may be considered as part of any such request.

11. Each requesting party shall limit its email production requests to a total of five search terms per custodian per party. The parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for additional search terms per custodian, upon showing a distinct need based on the size, complexity, and issues of this specific case. The Court encourages the parties to confer on a process to test the efficacy of the search terms. The search terms shall be narrowly tailored to particular issues. Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (*e.g.*, "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word. Use of narrowing search criteria (*e.g.*, "and," "but not," "w/x") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery. Should a party serve email production requests with search terms beyond the limits agreed to by the parties or granted by the Court pursuant to this paragraph, this shall be considered in determining whether any party shall bear all reasonable costs caused by such additional discovery.

12. With respect to email production requests, pursuant to Paragraph 19 of the Court's Supplemental Order to Order Setting Initial Case Management Conference in Civil Cases, the

parties agree that the producing Party need only produce hits resulting from the agreed-on search terms and agreed-on custodians.

13. Nothing in this Order prevents the parties from agreeing to use technology assisted review and other techniques insofar as their use improves the efficacy of discovery.

14. Absent a showing of good cause, the following sources need not be searched for documents and information responsive to the parties' discovery requests: automated disaster recovery backup systems and/or disaster recovery backup tapes; RAM or temporary files; temporary internet files, history, cache, cookies, and other on-line access data; data in metadata fields that are updated automatically such as last-opened dates; data remaining from systems no longer in use that is unintelligible on the systems in use; residual, fragmented, damaged, permanently deleted, and unallocated data; legacy computer systems, audio files; video files; server systems; network logs; personal digital assistants; mobile devices; cell phones; voicemails; USB flash drives, or the like; portable disks; voicemail systems; and instant messaging conversations (e.g., Skype, Slack, gChat, etc.).

15. Form of Production and Electronically Stored Information

The metadata fields listed below at paragraph 14n. shall generally be included in the production of Electronically Stored Information ("ESI") if such fields exist and are reasonably available to the producing Private Party. The following parameters shall apply to ESI production:

a) The general document image format of each electronic document produced shall be single-page TIFF Group IV images, black and white, at 300 x 300 dpi resolution with a standard delimited concordance format (DAT file) and either IPRO (LFP file) or Opticon (OPT file) format, including document breaks and page counts. The producing Party may, at any time, reproduce any document in color in JPG format or at a higher resolution. Documents reproduced in color or at a higher resolution shall bear the same production number(s) as the document originally produced document where practicable. A single multi-page text file shall be provided for each document, and the filename should match its respective TIFF image filename.

b)  Images shall be produced using a unique file name that will be the production number of that page (e.g., ABC000001.TIF). The production number shall appear on the face of the image.

c)  Spreadsheets (e.g., MS Excel, Google Sheets) and delimited text files (e.g., comma-separated value (.csv) files and tab-separated value (.tsv) files) shall be produced in either their native file format or MS Excel. TIFF images need not be produced unless the files have been redacted, in which instance such files shall be produced in TIFF with OCR Text Files. If good cause exists to request production of files, other than those specifically set forth above, in native format, the party may request such production and provide an explanation of the need for native file review, which request shall not be unreasonably denied. Any native files that are produced shall be produced with a link in the NativeLink field, along with extracted text and applicable metadata fields. A TIFF placeholder indicating that the document was provided in native format should accompany the database records. If a file has been redacted, TIFF images and OCR text of the redacted document will suffice in lieu of a native file and extracted text.

d)  In addition, when possible native files shall be produced using a name that bears the production number, for example: ABC000002.xls. The DAT file shall also include a path to the native file.

e)  Parent-child relationships (association between an attachment and its parent document) shall be preserved to the extent such relationships are maintained in the normal course of business in the source repository. The attachment(s) shall be produced adjacent to the parent document in terms of production numbers, with the first attachment being named with the next sequential number after the parent, and any additional attachment(s) sequentially numbered after that first attachment. Any parent-child relationship will be reflected in the DAT file.

f)  Productions that contain foreign language documents shall be Unicode compliant.

g) To the extent possible, the unitization of a produced electronically stored document and any attachments or affixed notes shall be maintained as it existed in the original file or computer. Scanned/paper documents should be logically unitized (i.e., to preserve page breaks between documents and otherwise allow separate documents to be identified).

h) If unitization cannot be maintained, the original unitization shall be documented in the associated load file or otherwise electronically tracked if possible.

i) A single multi-page text file shall be provided for each document, and the filename should match its respective TIFF filename. A commercially-acceptable technology for optical character recognition ("OCR") shall be used for all scanned, hard copy documents written in English or other Latin-character language. When possible, the text of native files should be extracted directly from the native file. Text files will not contain the redacted portions of the documents and OCR text files will be substituted instead of extracted text files for redacted documents. All documents shall be produced with a link in the TextLink field.

j) The parties will use their best efforts to filter out common system files and application executable files and scan document productions for viruses. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list. Source code files will be provided according to the Protective Order and not included in custodial data productions.

k) The parties are required to produce only a single copy of a responsive document and the parties may de-duplicate responsive ESI (based on MD5 or SHA-1 hash values at the document level) across custodians, provided all custodians from whose files the document was collected are identified in the ALL CUSTODIAN field (see below).

l) The parties are not required to preserve metadata fields that are frequently updated in the ordinary course of business, such as last-opened dates.

m) The parties shall not be required to create any metadata for production (e.g., hash value or other metadata not associated with ESI in the ordinary course of business) except that the parties will create a field to indicate whether or not a document has been marked confidential pursuant to the protective order (see below list of metadata fields). Any

-6-

document produced with a confidentiality designation on the produced image is to be afforded confidential treatment under the Protective Order regardless of whether there is an entry in this field.

n) The following metadata fields shall be included in the production of all ESI if such fields exist and are reasonably available to the producing Private Party:

| Field Name | Field Description |
|---|---|
| BEGBATES | Number stamped on first image page of document |
| ENDBATES | Number stamped on last image page of document |
| BEGATTACH | Number stamped on first image page of attachment(s) |
| ENDATTACH | Number stamped on last image page of attachment(s) |
| CONF | Indicates whether a document has been designated as Confidential or Highly Confidential pursuant to the operative protective order. |
| ALL CUSTODIAN | Where applicable and available, identifies the individual (custodian) from whom the document originated (naming convention: last name, first name) and all Individual(s) whose documents de-duplicated out (De-Duped Custodian). |
| FROM | Email author |
| TO | Email addressee(s) |
| CC | Email copyee(s) |
| BCC | Email blind copyee(s) |
| SUBJECT | Email subject line |
| DATE_SENT | Email date sent |
| TIME_SENT | Email time sent |
| DATE_RECEIVED | Email date received |
| TIME_RECEIVED | Email time received |
| EMAILFOLDER | Email folder path |

| AUTHOR | Document author |
| TITLE | Document title |
| DATECREATED | Document create date |
| TIMECREATED | Document create time |
| **Field Name** | **Field Description** |
| DATELASTMOD | Document last modified date |
| TIMELASTMOD | Document last modified time |
| FILENAME | File name of an electronic document or attachment |
| FILEPATH | File path of an electronic document or attachment |
| FILESIZE | File size of an electronic document or attachment |
| FILE_EXTENSION | File extension of an electronic document or attachment |
| MD5HASH | Fingerprint signature of an electronic document or attachment |
| NATIVEFILELINK | For documents produced as native file, link to that file |
| TEXTFILELINK | Link to text file produced with document or attachment |

All documents shall be produced in their original language. Where a document responsive to a discovery request exists in a foreign language and an English-language version of that document exists in the producing party's possession, custody or control, the producing party shall produce both the original document and all pre-existing English-language versions.

Bates numbering and confidentiality designations shall not obscure any text or image in a document.

The parties also shall, upon reasonable request, produce a higher-resolution or color image of a document. The producing Private Party shall have the option of producing the native-file version of the documents in response to such requests.

If a party prints (whether in hard copy or to a .pdf or other electronic image) documents, or portions thereof, that are produced in native format, the party shall mark any such printout with a footer containing (1) the document's Bates number, and (2) any confidentiality designation assigned by the producing party to the document.

The parties may use encryption software, such as Accellion, kiteworks, WinZip, or PointSec, to protect any documents or materials produced on physical media.

**IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.**


DATED:  February 1, 2022                    _/s/ Lindsay Cooper_
                                            Attorneys for Google LLC


DATED:  February 1, 2022                    _/s/ Cole B. Richter_
                                            Attorneys for Sonos, Inc.



**PURSUANT TO STIPULATION, IT IS SO ORDERED.**

DATED: February 2, 2022

                                            The Honorable William Alsup
                                            United States District Court Judge

STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION

1

**ECF ATTESTATION**

2        I, Lindsay Cooper, am the ECF User whose ID and password are being used to file this

3   Joint Letter for Discovery Relief.  In compliance with General Order 45, X.B., I hereby attest that

4   Cole B. Richter, counsel for Sonos, has concurred in this filing.

5    Dated:  February 1, 2022                                Lindsay Cooper
                                                              QUINN EMANUEL URQUHART &
6                                                             SULLIVAN, LLP

7                                                             By:     /s/ Lindsay Cooper
                                                                      Lindsay Cooper
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28