# ATTACHMENT B

**FILED UNDER SEAL**

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Sean Pak (Bar No. 219032)
seanpak@quinnemanuel.com
Melissa Baily (Bar No. 237649)
melissabaily@quinnemanuel.com
James Judah (Bar No. 257112)
jamesjudah@quinnemanuel.com
Lindsay Cooper (Bar No. 287125)
lindsaycooper@quinnemanuel.com
Iman Lordgooei (Bar No. 251320)
imanlordgooei@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:   (415) 875-6600
Facsimile:   (415) 875-6700

Marc Kaplan (pro hac vice)
marckaplan@quinnemanuel.com
191 N. Wacker Drive, Ste 2700
Chicago, Illinois 60606
Telephone:   (312) 705-7400
Facsimile:   (312) 705-7401

Attorneys for GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SONOS, INC.,<br><br>    Plaintiff and Counter-Defendant,<br><br>vs.<br><br>GOOGLE LLC,<br><br>    Defendant and Counter-Claimant. | Case No. 3:20-cv-06754-WHA<br>Related to Case No. 3:21-cv-07559-WHA<br><br>**GOOGLE'S RESPONSE TO SONOS'S MOTION *IN LIMINE* NO. 1 TO LIMIT THE TESTIMONY OF GOOGLE'S DAMAGES EXPERT W. CHRISTOPHER BAKEWELL**<br><br>Date:    May 3, 2023<br>Time:    12:00 p.m.<br>Location: Courtroom 12, 19th Floor<br>Judge:   Hon. William Alsup |

Sonos's motion to exclude several of the data points that inform Mr. Christopher Bakewell's rebuttal damages opinions should be denied. Bakewell's analysis of the cost to implement non-infringing alternatives is an accepted methodology that both this Court and the Federal Circuit have endorsed. To the extent there is any ambiguity, Mr. Bakewell did not and does not intend to suggest that such costs act as a "cap" on reasonable royalty damages as a matter of law.

Likewise, Bakewell's reliance on comparable agreements rests on sound economic and technical analysis. He compares each technically and economically comparable agreement to a hypothetical negotiation between the parties and derives reasonable damages estimates. His methodology accords with *Daubert* and Federal Circuit precedent giving damages experts "wide latitude" to draw reasonable conclusions from the parties' prior patent license or acquisition agreements. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993).

Sonos's arguments mischaracterize Bakewell's methodology and, at most, are fodder for cross examination, not exclusion. Sonos's arguments amount to unsupported attorney disagreement with Bakewell's damages analysis and/or contentions that the parties' prior agreements are not "perfectly analogous," and thus go to the "weight of the evidence, not its admissibility." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1227 (Fed. Cir. 2014). Sonos's motion should be denied.

I.   **ARGUMENT**[1]

    A.   **Bakewell Is Not Offering An Opinion That The Cost Of A Redesign Is A Cap On Damages**

Sonos's request to preclude Bakewell from offering an opinion that the cost of implementing a non-infringing alternative operates as a cap on damages is premised on a fundamental misunderstanding of Bakewell's opinion. It also misstates patent damages law.

Bakewell will not opine or suggest that reasonable royalty damages are capped by the costs of implementing non-infringing alternatives as a matter of law. *See* Mot. at 2. Bakewell is a damages expert and will not offer any legal opinions. However, Bakewell was tasked with rebutting Sonos's expert, Malackowski, who assumes that no non-infringing alternatives existed. Ex. 1 at

---

[1] In light of the Court's ruling during the April 20, 2023 hearing that Google's redesign will be considered during the upcoming trial, Sonos's argument regarding Bakewell's opinion on the issue is moot, and Google does not address it in this brief. *See* Dkt. 580.

127-30.[2] Accordingly, Bakewell analyzes non-infringing alternatives and calculates the cost of "implementing commercially acceptable non-infringing alternatives" for the '885 and '966 patents as a proper consideration in the reasonable royalty determination.[3] Ex. 2 ¶¶ 31, 35. Sonos's assertion that Bakewell stated the reasonable royalty could be "zero or something close to zero" based on a hypothetical non-infringing alternative mischaracterizes his testimony. When asked if that was a possibility in this case, Bakewell responded "***No, I don't think so***." Mot., Ex. A at 16:8-13 (emphasis added). Moreover, Bakewell was testifying about the '033 patent, which this Court already found invalid and thus is no longer part of this case. Dkt. 566.

This Court—in cases cited by Sonos—has made it "abundantly clear" that "basing a reasonable royalty estimate on the cost of implementing non-infringing alternatives ***is an allowable methodology***." *Open Text S.A. v. Box, Inc.*, No. 13-CV-04910-JD, 2015 WL 393858, at *3 (N.D. Cal. Jan. 29, 2015) (emphasis added); *Looksmart Grp., Inc. v. Microsoft Corp.*, No. 17-CV-04709-JST, 2019 WL 4009263, at *3 (N.D. Cal. Aug. 5, 2019) ("It is well established that a price for a hypothetical license may appropriately be based on consideration of the costs and availability of non-infringing alternatives and the potential infringer's cost savings."). The Federal Circuit agrees. *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1315 (Fed. Cir. 2014), *overruled on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015) ("[T]here may be more than one reliable method for estimating a reasonable royalty. . . . [A] party may . . . estimate the value of the benefit provided by the infringed features by comparing the accused product to non-infringing alternatives."). Bakewell's approach of measuring the cost of implementing non-infringing alternatives at the time of the hypothetical negotiations is thus an accepted approach.

Sonos relies on *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359 (Fed. Cir. 2008) for the proposition that "[r]easonable royalty damages are not capped at the cost of implementing the cheapest available non-infringing alternative." Mot. at 2. But as another case Sonos cites clarified,

---

[2] All cited exhibits are attached to the contemporaneously filed Declaration of Lindsay Cooper.
[3] Bakewell also opines that, to the extent Malackowski's damages theory is given any weight, certain adjustments to his analysis would result in adjusted royalties of "no more than $1.2 million for the '885 patent and no more than $7.4 million for the '966 patent." Ex. 2 ¶ 33; *see also* Ex. 3.

1  "*Mars* only forbids *courts*, not experts, imposing caps based on expected profits as a matter of law."
2  *Open Text*, 2015 WL 393858, at *3 (emphasis added). In fact, the *Open Text* court went on to
3  conclude that "Leonard's opinion . . . that Box would not have been willing to pay more than the
4  cost of implementing a non-infringing alternative . . . *is an acceptable opinion and method about*
5  *damages* at this *Daubert* stage, *and not a legal claim*." *Id.* at *4 (emphasis added). Sonos thus
6  conflates the methodology of using non-infringing alternatives to measure damages—which is
7  widely accepted—with the concept of using such costs as a *legal* cap imposed by a court—which is
8  not an opinion offered by Bakewell.

      **B.**    **Neither Side Should Be Permitted To Testify About Irrelevant Third-Party Agreements**

11  Google agrees that the parties should not refer to third-party agreements that their experts
12  considered but ultimately rejected in connection with *Georgia-Pacific* Factor 2. With respect to
13  Bakewell's analysis, this would apply to the 2003 Investment Invention Fund I agreement, (2) the
14  Google-███████ agreement, (3) the Google ███████ agreement, and (4) the Google-███████
15  agreement. Ex. 3 ¶¶ 531-32, 547, 549, 585.[4] With respect to Malackowski's analysis, this would
16  apply to (1) the Sonos-Denon agreement, (2) the Sonos-Lenbrook agreement; and (3) the Sonos-
17  Legrand agreement. Ex. 1 at 43-49. Bakewell does not intend to testify about irrelevant third-party
18  agreements unless Malackowski is permitted to testify about any of these agreements, in which case
    Bakewell should be allowed to respond. Ex. 2 ¶¶ 509, 531-38, 546-549, 585.

      **C.**    **Bakewell Should Be Permitted To Offer An Opinion On The Google-███████ ███████ Agreement**

21  It is well-established that patent licensing agreements "are almost never perfectly analogous
22  to the infringement action." *Ericsson*, 773 F.3d at 1227. They may "cover more patents than are at
23  issue in the action, include cross-licensing terms, cover foreign intellectual property rights, or, . . .
24  be calculated as some percentage of the value of a multi-component product." *Id.* That a license is
25  not "perfectly analogous," however, "goes to the weight of the evidence, not its admissibility." *Id.*;

---

[4] Google also agrees that Bakewell will not present any opinions regarding the ███████
████████████████████████████████████████████████████████ as those agreements
related to the '033 patent only.

1 | *Apple*, 757 F.3d at 1326 (same).

2       In order for an agreement to be relevant, it must be both technically and economically comparable. *Wordtech Sys., Inc. v. Integrated Networks Sol'ns, Inc.*, 609 F.3d 1308, 1320 (Fed. Cir. 2010). Courts agree that patent acquisition agreements can serve as a comparable data point. *Parthenon Unified Memory Architecture LLC v. Apple Inc.*, No. 2:15-CV-621-JRG-RSP, 2016 WL 7670833, at *1 (E.D. Tex. Sept. 21, 2016) (rejecting argument that a damages expert cannot consider a patent purchase agreement under the *Georgia-Pacific* framework and holding that it should be left "up to the jury to determine the evidentiary value of such agreements and [an expert's] reliance on the agreements at trial").

      In this case, there is no dispute about technical comparability. Google's technical expert, Dr. Dan Schonfeld, opined that the ▓▓▓▓▓ agreement is technically comparable because it covers patents relating to creating collaborative speaker groups and allowing users to play music in different ways depending on the time of day, day of week, and season of the year—a conclusion that none of Sonos's experts challenge. Ex. 2 ¶¶ 555-60; Ex. 9 at 172:25-173:17; Ex. 5 ¶ 183; Ex. 6; Ex. 7; Ex. 8. The only dispute relates to economic comparability.

      The Google-▓▓▓▓▓ agreement is economically comparable, and Bakewell makes appropriate adjustments for the differences that do exist between the ▓▓▓▓▓ agreement and the hypothetical negotiation in this case. In 2011, Google paid $2.25 million to ▓▓▓▓▓ to acquire 12 U.S. patents and four U.S. patent applications. Ex. 2 ¶¶ 550, 552. The form of the agreement is a lump-sum payment rather than a running royalty, which Google strongly prefers and regularly seeks during licensing negotiations. *Id.* ¶¶ 158-63. Although the term differs from that of the hypothetical license here, Bakewell adjusts for the fact that the agreement has a 15.5 year term, whereas the hypothetical licenses for the '966 and '885 patents would have had 7.9 and 6.8 year terms respectively. *Id.* ¶¶ 565-66. And with respect to scope, because the agreement conveys more rights than the non-exclusive license that would have been the subject of the hypothetical negotiation, the agreement *overstates* a hypothetical license amount. Ex. 9 at 170:9-11 ("Q. Do you agree that owning a patent provides more rights than merely having a license to a patent? A. In general, I believe that to be true.").

Sonos argues that the Court should exclude Bakewell's reliance on this agreement because it is an agreement with a non-practicing entity. Mot. at 4. Bakewell expressly considered that the agreement was with a non-practicing entity. Ex. 2 ¶¶ 554, 561. He did not make any adjustments for this fact because, among other reasons, as of the hypothetical negotiation for the '966 patent in November 2019, Sonos *was* a non-practicing entity with respect to the claimed technology. Sonos claims a priority date of September 12, 2006 for the '966 patent, yet did not begin practicing the '966 patent until May or June 2020, almost 14 years after its alleged priority date and nine months after the hypothetical negotiation. Ex. 1 at 18, 30; Ex. 2 ¶ 61. Rather, Sonos's argument is based on the incorrect premise that Google and Sonos were "competitors in a market." Mot. at 4. Google and Sonos are not direct competitors. The accused devices in this case include smartphones, tablets, laptops, TV streaming devices and smart home systems that Sonos does not even sell. Ex. 2 ¶¶ 89, 94, 104-105, 107-110, 113-115. Even with respect to the accused Google smart speaker products, Malackowski has not shown that the '885 and '966 patents drive demand for the accused products or that customers switched to Sonos due to the claimed technology. *Id.* ¶¶ 554, 650, 652, 671. And the parties focus on different market segments and customers. *Id.* ¶¶ 111, 657. Sonos targets the premium segment of the speaker market focusing on audiophiles who appreciate high-end music quality, whereas Google generally targets a more mainstream audience at a lower price point. *Id.* Regardless, the Federal Circuit has affirmed the use of comparable agreements with non-competitors even in competitor cases. *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1211-12 (Fed. Cir. 2010) (affirming use of Finjan-Microsoft agreement even though "Finjan did not compete with Microsoft but does compete against Secure").

Sonos also argues that use of the ▮▮▮▮▮▮▮ agreement "fails to consider what *Sonos* would have agreed to in the hypothetical negotiation." Mot. at 5 (emphasis in original). This is inaccurate, as Bakewell evaluates Google's position, Sonos's position, and broader economic considerations. Ex. 2 ¶¶ 551, 554, 561-563, 648, 650, 652, 671, 760-772. Moreover, the ▮▮▮▮ agreement is in line with ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in the lead up to this case. *See Compare* Ex. 2 ¶¶ 550, 552 (describing $2.25 million lump sum payment to ▮▮▮▮▮) *with id.* ¶¶ 501-508 ▮▮▮▮▮

███████████████████████████████████████████████████████████

Sonos cites two cases in support of its argument that Bakewell's testimony regarding the ███████████ agreement should be excluded. Mot. at 4-5. Both are distinguishable. In *Apple, Inc. v. Samsung Elecs. Co.*, No. 12-CV-00630-LHK, 2014 WL 794328, at *6, 8 (N.D. Cal. Feb. 25, 2014), the agreement in question was a "complicated and unsettled" agreement that purported to resolve "50 worldwide patent litigations and other proceedings." By contrast in this case, the agreement is a lump sum license for patents the parties agree are technically comparable. Ex. 2 ¶ 555-60; Ex. 9 at 172:25-173:17. And *Finjan* supports Google, not Sonos. As discussed above it affirmed the admission of an agreement with a non-competitor in a competitor case. *Finjan*, 626 F.3d at 1211-12. It also found that differences between the comparable license and the hypothetical license were not grounds for exclusion. *Id.* Rather, "[t]he jury was entitled to hear the expert testimony and decide for itself what to accept or reject." *Id.* at 1212.

Because Mr. Bakewell's analysis is thorough and grounded in reliable methods of economic analysis (Ex. 2 ¶¶ 550-570), the Court should deny Sonos's motion with respect to the ███████ ███████ agreement. *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1333 (Fed. Cir. 2012) (affirming decision not to exclude damages expert because the "degree of comparability" of the license agreements is a "factual issue[] best addressed by cross examination and not by exclusion"); *Ericsson*, 773 F.3d at 1227-28 (prior licenses "are almost never perfectly analogous to the infringement action" and "the fact that a license is not perfectly analogous generally goes to the weight of the evidence, not its admissibility").

### D. Bakewell Should Be Permitted To Offer Opinions Regarding Licensing Negotiations Between The Parties

The parties had extensive licensing negotiations before Sonos initiated this case. Bakewell does not rely on any of these licensing negotiations affirmatively (Ex. 2 ¶ 499), but if Malackowski or Sonos bring them up, Bakewell should be allowed to respond. For example, Malackowski discusses these negotiations in his report (Ex. 1 at 50-53), and Sonos has indicated that it plans to rely on these negotiations in support of its willful infringement allegations. Dkt. 509-2 at 24. If Malackowski or Sonos plan to use evidence regarding the parties' negotiations, Google should be

allowed to use the same evidence to respond. See Ex. 2 ¶¶ 501-508.

Sonos also raises an FRE 408 objection to Google's use of TX2109, which is a licensing communication between Google and Sonos. Mot. at 6. The Federal Circuit does not recognize a settlement communication privilege for "negotiations related to reasonable royalties and damage calculations," which makes Sonos's objection inapplicable. *In re MSTG, Inc.*, 675 F.3d 1337, 1348 (Fed. Cir. 2012). Regardless, Sonos has indicated it plans to use FRE 408 communications as well, including by listing them on its exhibit list. *See*, *e.g.*, TX373-TX377, TX6659; Dkt. 509-2 at 24; Dkt. 508-17 (citing FRE 408 communications in its interrogatory response on willfulness). If Sonos opens the door to FRE 408 communications, Google should be allowed to respond.

E.  **Bakewell Should Be Permitted To Respond Regarding Lost Profits If Sonos Opens The Door**

Sonos's argument regarding lost profits is a red herring. Bakewell did not and does not intend to offer any rebuttal opinions regarding that theory of damages because Malackowski admitted that he was unable to identify or quantify any lost profits. Ex. 4 at 182:11-15 ("Q. [I]s it your opinion that the accused '885 functionality drives demand for accused Google media content players? A. In part, but not sufficient to determine a lost profits calculation."); *see id.* at 16:20-24, 162:25-163:18. In fact, Sonos originally proffered a lost profits theory but ultimately agreed that it would "no longer seek lost profits as party of Sonos's requested damages award in this case" or "advance lost sales as a basis for its reasonable royalty analysis." Ex. 10 at 1, 4.

However, **Sonos's** expert improperly opines about lost profits despite conceding that it is not an appropriate measure of damages. Malackowski offers a back-door lost profits opinion by speculating that Google employs a "loss leader" strategy wherein it sells hardware at lower costs in order to lock people into Google's "ecosystem," such that "these consumers do not purchase a similar multiroom audio product from a competitor like Sonos in the future." Ex. 1 at 92. Google has filed its own motion to exclude Malackowski from offering such testimony (*see* Google's MIL No. 4), but to the extent he is permitted to do so and opens the door at trial, Bakewell should be allowed to rebut this opinion by explaining that Sonos has not identified any lost profits as a result of Google's alleged infringement.

| | |
|---|---|
| DATED: April 24, 2023 | QUINN EMANUEL URQUHART & SULLIVAN, LLP<br><br>By    /s/ Sean Pak<br>        Sean Pak<br>        Melissa Baily<br>        James D. Judah<br>        Lindsay Cooper<br>        Marc Kaplan<br>        Iman Lordgooei<br><br>*Attorneys for GOOGLE, LLC* |

**CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure and Local Rule 5-1, I hereby certify that, on April 24, 2023, all counsel of record who have appeared in this case are being served with a copy of the foregoing via email.

           /s/ Sean Pak
           Sean Pak

# ECF ATTESTATION

I, Clement S. Roberts, am the ECF User whose ID and password are being used to file this Response. In compliance with Civil Local Rule 5-1, I hereby attest that Sean Pak, counsel for Google, has concurred in this filing.

Dated: April 25, 2023

By: */s/ Clement S. Roberts*
      Clement S. Roberts