QUINN EMANUEL URQUHART & SULLIVAN, LLP
Sean Pak (Bar No. 219032)
seanpak@quinnemanuel.com
Melissa Baily (Bar No. 237649)
melissabaily@quinnemanuel.com
James Judah (Bar No. 257112)
jamesjudah@quinnemanuel.com
Iman Lordgooei (Bar No. 251320)
imanlordgooei@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Marc Kaplan (pro hac vice)
marckaplan@quinnemanuel.com
191 N. Wacker Drive, Ste 2700
Chicago, Illinois 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

*Attorneys for GOOGLE LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

SONOS, INC.,

Plaintiff and Counter-Defendant,

vs.

GOOGLE LLC,

Defendant and Counter-Claimant.

Case No. 3:20-cv-06754-WHA
Consolidated with Case No. 3:21-cv-07559-WHA

**GOOGLE LLC'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION FOR JUDGMENT AS A MATTER OF LAW AND NEW TRIAL**

Hearing Date: December 10, 2025, 8:00 a.m.
Location: Courtroom 12, 19th Floor
Judge: Hon. William Alsup

# TABLE OF CONTENTS

Page

I. RECENT FEDERAL CIRCUIT OPINIONS CONFIRM THAT GOOGLE SHOULD BE AWARDED JUDGMENT AS A MATTER OF LAW ON DAMAGES ....... 1

A. *Rex Medical, L.P. v. Intuitive Surgical, Inc*. (Fed. Cir. Oct. 2, 2025) ....... 1

B. *EcoFactor, Inc. v. Google LLC* (Fed. Cir. 2025) ....... 4

II. RECENT FEDERAL CIRCUIT OPINION CONFIRMS THAT GOOGLE SHOULD BE AWARDED JUDGMENT AS A MATTER OF LAW ON NON-INFRINGEMENT ....... 6

A. *Finesse Wireless LLC v. AT&T Mobility LLC* (Fed. Cir. Sept. 24, 2025) ....... 6

# TABLE OF AUTHORITIES

**Page**

## Cases

*Apple Inc. v. Wi-LAN Inc.*, 25 F.4th 960 (Fed. Cir. 2022) .......... 2

*EcoFactor, Inc. v. Google LLC*, 137 F.4th 1333 (Fed. Cir. 2025) .......... 5, 6

*EcoFactor, Inc. v. Google LLC* (Fed. Cir. 2025) .......... 5

*Finesse Wireless LLC v. AT&T Mobility LLC* (Fed. Cir. Sept. 24, 2025) .......... 7

*Finesse Wireless LLC v. AT&T Mobility LLC*, No. 2024-1039, 2025 WL 2713518 (Fed. Cir. Sept. 24, 2025) .......... 8, 9

*Rex Medical, L.P. v. Intuitive Surgical, Inc.* (Fed. Cir. Oct. 2, 2025) .......... 1

*Rex Medical, L.P. v. Intuitive Surgical, Inc.*, No. 2024–1072, 2025 WL 2799030 (Fed. Cir. Oct. 2, 2025) .......... 1, 2, 3, 4, 5

*TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278 (Fed. Cir. 2020) .......... 4

*Whitserve, LLC v. Comput. Packages, Inc.*, 694 F.3d 10 (Fed. Cir. 2012) .......... 6

## Statutes

35 U.S.C. § 284 .......... 4

## Other Authorities

Fed. R. Civ. P. 50(b) .......... 8

Fed. R. Civ. P. 50 and 59 .......... 1, 6

Pursuant to the Court's October 31, 2025 Scheduling Order After Remand, Google respectfully submits the following supplemental brief to address intervening changes of law as to its motion under Rules 50 and 59. *See* Dkt. No. 824 ("Motion") and 843 ("Reply").

## I. RECENT FEDERAL CIRCUIT OPINIONS CONFIRM THAT GOOGLE SHOULD BE AWARDED JUDGMENT AS A MATTER OF LAW ON DAMAGES

### A. *Rex Medical, L.P. v. Intuitive Surgical, Inc*. (Fed. Cir. Oct. 2, 2025)

As explained in Google's Motion, judgment as a matter of law on damages is warranted because there was no legally sufficient evidentiary basis for the jury to find a royalty rate of $2.30 per unit. Motion at 18–22; *see also* Reply at 11–14. With the exclusion of Sonos's damages expert's (Mr. Malackowski) unreliable "IFTTT theory" (*see* Dkt. No. 813 ("Opinion")), Sonos was forced to rely on its portfolio-wide licenses without providing any evidence that would allow the jury to properly apportion—as both experts opined during discovery that they were ***not*** comparable. Motion at 18–21. The Federal Circuit's recent decision in *Rex Medical, L.P. v. Intuitive Surgical, Inc.*, No. 2024–1072, 2025 WL 2799030 (Fed. Cir. Oct. 2, 2025), which affirmed a district court's judgment as a matter of law of zero damages based on analogous facts, further supports Google's motion.

Plaintiff (Rex) originally asserted two patents against defendant (Intuitive) but later stipulated to dismiss one. Relying on a $10 million settlement agreement between Rex and third-party Covidien, Rex's damages expert (Mr. Kidder) opined that a hypothetical negotiation would have resulted in a $20 million lump-sum license for the remaining patent. *Id.* at *3. The Covidien license, however, covered a portfolio of Rex's patents—including both the original asserted patents "along with eight other U.S. patents, seven U.S. patent applications and nineteen patents or applications from countries outside the United States." *Id.* The district court excluded portions of Mr. Kidder's testimony for failing to apportion for the one remaining patent, explaining that he did not "adequately address the extent to which [the dismissed patent] and the other patents contributed to the lump sum payment in the Covidien license[.]" *Id.* As a result, neither party's damages expert testified at trial. *Id.* Instead, Rex's president, Lindsay Carter, who had been involved in negotiating the Covidien license (*id.* at *3), testified about various "factors" that Rex considered in licensing

the patent portfolio. *Id.* at *7.

The jury found that Intuitive infringed and awarded Rex $10 million for the one patent. *Id.* at *3. Intuitive moved for judgment as a matter of law on (*inter alia*) damages or, alternatively, for a new trial and/or remittitur. *Id.* The district court agreed that Rex failed to prove its damages, reducing the award to nominal damages of $1 and denying a new damages trial. *Id.* The Federal Circuit's ruling—affirming both the exclusion of Mr. Kidder's testimony and the reduction of the damages award without a new trial (*id.* at *12)—is instructive here.

***First***, the exclusion of Mr. Kidder's opinions on the Covidien license confirms that Sonos's portfolio-wide licenses cannot support the jury's $2.30 per-unit royalty. As the Federal Circuit noted, where patent portfolio licenses are relied upon as comparable benchmarks, there must be evidence "to allocate license fees among the licensed patents covered by an agreement." *Id.* at *4 (citation and quotations omitted). The Federal Circuit then stated that the district court had properly applied *Apple Inc. v. Wi-LAN Inc.*, 25 F.4th 960 (Fed. Cir. 2022)—a case Google repeatedly cited in its Motion, and that Sonos failed to address (*see* Reply at 15 n.8)—as Wi-Lan's damages expert "failed to address the extent to which [. . .] other patents contributed to the royalty rate" in the three comparable license agreements he used to estimate damages for infringement of two patents:

> While each comparable license agreement licensed additional patents, Mr. Kennedy opined "that the '145 and '757 patents were key patents in the three licenses for three reasons[.]" *Id*. at 972. His reasons included: (1) the '145 and '757 patents were listed in the comparable licenses; (2) they were discussed in negotiations with Apple; and (3) Apple continued to use the patented technology after a finding of infringement. *Id*. at 972–73. "To separate the value of the key patents from the rest of the licensed portfolio, he reduced the royalty rate by 25 percent."
>
> . . .
>
> We explained that none of the three licenses listed the '757 patent among the "Asserted Patents." *Id*. And neither Doro nor Unnecto listed the '145 patent as one of the "Asserted Patents." *Id*. Vertu, on the other hand, did list the '145 patent as one of the "Asserted Patents," but it also listed "five other Asserted Patents." *Id*. Mr. Kennedy failed to address the extent to which these other patents contributed to the royalty rate in the Vertu license, and yet he opined that excluding these patents (and the rest of Wi-LAN's portfolio) from the hypothetical negotiation would have netted Apple only a 25 percent discount. *Id*. We explained that "Mr. Kennedy's silence on these equally situated patents is troubling and ma[de] his opinion unreliable." *Id*. at 973–74. We thus concluded that "Mr. Kennedy's damages testimony should have been excluded" and that "the district court abused its discretion in denying Apple's motion for a new trial on damages." *Id*. at 974.

*Rex Medical*, 2025 WL 2799030 at *4–5 (citation and quotations omitted, cleaned up).

Because Mr. Kidder, like Mr. Kennedy, had failed to address apportionment for the asserted patent, the Federal Circuit held "that the district court did not err in excluding his expert testimony." *Id.* at *5. Here, granting no damages as a matter of law is even more appropriate because Sonos did not even *attempt* to provide evidence that would have allowed the jury to adjust for the differences between Sonos's licenses and the hypothetical license—including that (1) Sonos's licenses include thousands of other patents, (2) they included cross-licenses, and (3) they were entered in the settlement context. Motion at 18–22. Sonos offered zero testimony comparing the importance of the '885 patent to the other patents in Sonos's portfolio. *Id.* at 20.

***Second***, the Federal Circuit's affirmance of the district court's grant of JMOL of no damages and the denial of Rex's request for a new damages trial counsels the same result here. Given that its damages expert had been excluded and "Rex presented no evidence that would allow the jury to overcome the deficiencies in Mr. Kidder's excluded expert opinion—i.e., to apportion the $10 million lump sum payment in the Covidien license," the Federal Circuit concluded that Rex had failed to meet the requirement that "[d]amages theories relying on comparable prior licenses must account for distinguishing facts [. . .]when invoking them to value the patented invention." *Id.* at *7–8. Since awarding damages would thus "require improper guesswork," JMOL of no damages was appropriate. *Id.* at *8. As Sonos also failed to meet that requirement (as discussed above), Google's same request for JMOL of no damages should be granted.

Notably, the Federal Circuit was unpersuaded by Rex's assertion that "a license to the [asserted] patent has *some* value" or that the court erred "because the evidence doesn't compel the conclusion that zero is the only reasonable royalty.'" *Id.* at *6 (emphasis in original).[1] Just as Sonos attempted to do when its only damages theory was effectively doomed, Rex tried to rely on the testimony of its lay witness to salvage its damages case. *Id.* at *7. But the Federal Circuit found

[1] The Federal Circuit made clear that the language of the patent damages statute regarding compensation for infringement being "no less than a reasonable royalty" (35 U.S.C. § 284),does *not* require an award of damages "if none are proven that adequately tie a dollar amount to the infringing acts" because damages cannot be based on conjecture. *Rex Medical*, 2025 WL 2799030 at *6 (quoting *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1291 (Fed. Cir. 2020).

that the lay witness did not present any testimony "discussing the relationship or differences between the [asserted and non-asserted patents covered by the license.]" *Id.* Although Sonos similarly points to Ms. Kwasizur's testimony that "different patents have different value" (Dkt. No. 839 ("Sonos Opp.") at 24), she provided no evidence regarding the value of '885 patent or any of the other patents. Motion at 20.

Both Rex and Sonos also argued that testimony regarding other "factors" could have been considered, yet the Federal Circuit found that there was "no testimony on how to consider these five 'factors' to apportion the value of the [asserted patent]"—a conclusion that similarly applies here. *Rex Medical*, 2025 WL 2799030 at *7; *see, e.g.*, Sonos Opp. at 20–22. Importantly, as Google noted in its Reply, any testimony regarding additional factors is insufficient in any event given that the jury had zero evidence from which to calculate an appropriate starting point for a running royalty out of Sonos's portfolio-wide licenses. Dkt. No. 843 ("Reply") at 13–14. It is evident that the jury "received insufficient evidence from which it could apportion" and was forced to improperly speculate given that its per-unit royalty rate of $2.30 was higher than either expert's damages number and thus far beyond "the range encompassed by the record as a whole." *Rex Medical*, 2025 WL 2799030, at *6 (citation and quotations omitted).

***Third***, the *Rex Medical* opinion also confirms that JMOL of no damages, instead of the alternative of a new trial, is the more appropriate relief. Sonos "had the opportunity to conduct discovery and [. . .] to offer other evidence potentially relevant to damages" but instead "chose to hinge its damages theory on the very license[s]" that its experts had already opined were not comparable and its now-excluded IFTTT theory. *Id.* at *8.

**B. *EcoFactor, Inc. v. Google LLC* (Fed. Cir. 2025)**

The Federal Circuit's May 21, 2025 opinion, *EcoFactor, Inc. v. Google LLC*, 137 F.4th 1333 (Fed. Cir. 2025), is a precedential *en banc* decision that also supports Google's post-trial motions regarding damages. *EcoFactor* addressed the admissibility of expert damages testimony and the prejudice to a defendant if inadmissible evidence regarding licenses is presented to the jury.

In the underlying litigation, patentee EcoFactor accused Google's Nest thermostats of infringing patents related to the operation of smart thermostats in computer-networked heating and

cooling systems. *EcoFactor*, 137 F.4th at 1336. Google moved to exclude EcoFactor's damages expert, David Kennedy—who had opined that three lump-sum settlement licenses established industry acceptance (and thus supported the licensee's acceptance) of a certain per unit royalty rate ("$X[2] [1]) for the patented technology. *Id.* at 1337. Because the agreements specifically stated that only *EcoFactor* believed the payment was based on a reasonable royalty calculation of $X—not the licensees—and Mr. Kennedy provided no basis to conclude otherwise, Google argued that his opinion was unsupported by a reliable methodology or sufficient facts. *Id.* After the district court denied the motion, Mr. Kennedy offered that opinion at trial. *Id.* The jury ultimately found Google liable and awarded EcoFactor $20,019,300 in lump-sum damages. *Id.*

Google moved for a new trial on damages based on Mr. Kennedy's unreliable opinion, which the district court denied. *Id.* Upon appeal, a Federal Circuit panel affirmed the district court's order, but with a dissent. *Id.* Google petitioned for rehearing *en banc*, arguing the majority erroneously affirmed the denial of a new trial on damages. The Federal Circuit granted Google's petition and reversed the district court in a precedential, *en banc* decision, holding that it was an abuse of discretion to allow the testimony and that—"[i]n light of this prejudicial error"—it was a further abuse of discretion for the district court to deny Google's motion. *Id.* at 1341, 1346–47.

Although *EcoFactor* concerned the admissibility of expert testimony, the Federal Circuit's *en banc* decision provides guidance on a number of issues relevant to Google's motion under Rules 50 and 59 as to damages. ***First***, the Federal Circuit reiterated that lump-sum licenses cannot support a running-royalty verdict absent evidence allowing the jury to make such a conversion:

> A lump-sum license analysis involves significantly different considerations, from the perspective of both the licensee and the licensor, compared to a running royalty license. *Lucent Techs.*, 580 F.3d at 1326–27. Because of these "fundamental differences," "[f]or a jury to use a running-royalty agreement as a basis to award lump-sum damages" and vice versa, "some basis for comparison must exist in the evidence presented to the jury." *Id.* at 1330; *see also Whitserve, LLC v. Comput. Packages, Inc.*, 694 F.3d 10, 30 (Fed. Cir. 2012).

*EcoFactor*, 137 F.4th at 1341.

---

2 [1] The specific amount was redacted.

This forecloses Sonos's argument that the jury could have used Mr. Bakewell's $2.25 million *lump-sum* royalty opinion to come to its $2.30 *per-unit* royalty, and supports Google's argument that the jury verdict is not supported by sufficient evidence. Reply at 12–13. Sonos's two lump-sum, portfolio-wide licenses cannot support the verdict for the same reason. Motion at 19–20.

***Second***, *EcoFactor* supports Google's Motion because the jury should not have heard Mr. Malackowski's later-excluded expert damages testimony. Motion at 23. The Federal Circuit held that "[t]he district court's decision to admit Mr. Kennedy's unreliable testimony was undoubtedly prejudicial" because "[t]he $X rate was crucial to Mr. Kennedy's damages analysis; he opined that it would be both the starting point and the outcome of a hypothetical negotiation between EcoFactor and Google." *Id.* at 1346. Accordingly, "[o]n this record, we cannot be sure 'that the error did not influence the jury or had but a very slight effect on its verdict.'" *Id.* (citations omitted). The Federal Circuit also rejected the argument, similar to the one Sonos is making here, that "there was other evidence that supported the jury verdict" because, "[a] harmless or prejudicial error analysis [. . .] is not a sufficiency of the evidence analysis" and "we cannot be sure that the admission of Mr. Kennedy's testimony did not influence the jury's damages award." *Id.*

## II. RECENT FEDERAL CIRCUIT OPINION CONFIRMS THAT GOOGLE SHOULD BE AWARDED JUDGMENT AS A MATTER OF LAW ON NON-INFRINGEMENT

### A. *Finesse Wireless LLC v. AT&T Mobility LLC* (Fed. Cir. Sept. 24, 2025)

As explained in Google's Motion, no substantial evidence supported the jury's verdict that Google's newly designed products infringed claim 1 of the '885 patent. Motion at 14–16. Relevant to this supplemental brief, Google showed that under its design change, the accused speakers operated exactly the *opposite* way that the claims require. Namely, the claims require that "*while operating in a standalone mode* in which the first zone player is configured to play back media individually," the zone players when added to a first and second "zone scene" must "*continu[e] to operate in the standalone mode* until a given one of the first and second zone scenes has been selected for invocation." The key is that under the claims, the zone players do not transition from "standalone mode"—which means they are configured for individual playback—to any other mode until the "zone scene" is invoked, at which point the accused speakers play back music as a group.

Google's design change clearly eliminated any chance that the accused speakers could meet this limitation. Under that design change, before a speaker is added to a group, it enters an "idle" mode in which the speaker stops media playback and "kills" any application that could play back media. Mot. at 13–14. As a result, the newly designed products cannot be "configured to play back media individually," *i.e.*, in standalone mode, after they are added to a group. Any ability to play back media is disabled, and therefore the accused speakers are not "configured to play back media individually" as required by the claims, or even configured to play back media *at all*. *Id.* at 14.

Supplemental authority from the Federal Circuit issued after Google filed its Rule 50(b) brief is relevant to this dispute and is controlling. *See Finesse Wireless LLC v. AT&T Mobility LLC*, No. 2024-1039, 2025 WL 2713518 (Fed. Cir. Sept. 24, 2025). In *Finesse*, the plaintiff's expert offered "confusing and unclear" testimony and "offered no clear or detailed explanation for his contradictory testimony." *Id.* at *3–4. As a result, the Federal Circuit found that "[w]hen the party with the burden of proof, such as Finesse, rests its case on an expert's self-contradictory testimony, we may conclude the evidence is insufficient to satisfy that standard [sufficient to support the jury verdict]." *Id.* at *4. Specifically, the plaintiff's expert in *Finesse* had pointed to a specific path in a wireless receiver as meeting one of the claim elements, but when he was shown that the path could not possibly meet the limitation (because it could not *exist* until further downstream), he "pivoted" and attempted to explain away his "misimpression" live on the stand. *Id.* at *4. The Federal Circuit found that the jury's verdict could not stand based on such shaky, confusing, and contradictory testimony from the plaintiff's infringement expert. *Id.*

The same is true here of Dr. Almeroth's testimony in support of infringement. Dr. Almeroth agreed that the claims only recite two different modes of operation for the accused "zone player" speakers—a standalone mode and a group mode. Tr. (Almeroth) at 863 ("Q. They have to be in one or the other; correct? A. I believe that's correct."); *id.* at 887. But Dr. Almeroth applied the test for infringement backwards because he took the claim language and then *assumed* that the accused products must also necessarily have only two modes, like the claims. Tr. (Almeroth) at 802 ("A. [. . .] But the reality is the claim talks about two modes: You're either in group mode where you're synchronized to play in group mode or you're not, you're in standalone mode. So the fact

that you stop playing audio as part of group creation does not take that speaker out of standalone mode. It just stops the ability to hear audio of what's already playing[. . .]."); *id.* at 690:11–19. He did not analyze the third mode in the accused products—the "idle" mode—or how that "idle" mode prevents the accused products from remaining in a "standalone mode" once added to a group. *See* Tr. (Mackay) at 1254–55 ("Q. So, first of all, how many modes of operation are there in Google speakers in terms of group or individual playback? A. There are three modes."). Dr. Almeroth's testimony is "confusing and unclear," *Finesse Wireless*, 2025 WL 2713518, at *3, because he acknowledges that Google changed its design to use the StopCurrentApp function prior to adding a speaker to a group, but he never analyzes that change in view of the claim language, which requires a zone player to be "configured for playback"; instead, he simply asserts (without evidence and contrary to the only testimony in the record regarding its functionality) that the *only* change to the speaker is that "it will stop playing music" after StopCurrentApp runs. *Compare* Tr. (Almeroth) at 799 ("A. Yes. So the idea of the StopCurrentApp that Google is proposing is that if there is an app running that's playing music, then it will be stopped as part of group creation. And so the person who's putting the speaker into the group, if it's playing in standalone mode, will stop playing.") *with* Tr. (Mackay) at 1256 ("Q. And when it says 'StopCurrentApp,' are you just pausing the app? A. No. The app is killed. It's torn down completely."). Despite referencing the source code in a single sentence, Tr. (Almeroth) at 803:4–6, Dr. Almeroth never compares the function of the source code—which as Mr. Mackay explained tears down and completely removes the playback functionality—to the claim language that requires the speaker to be "configured to play back media individually." *Id.* This testimony from Dr. Almeroth is "self-contradictory," *Finesse Wireless*, 2025 WL 2713518, at *4, because Dr. Almeroth also opined during trial that the definition of "standalone mode" *required* an analysis of whether the speaker is "configured to play back media individually." Tr. (Almeroth) at 690:9–19. Dr. Almeroth's confusing, incomplete, and self-contradictory testimony mimics the testimony found by the Federal Circuit in *Finesse* to be insufficient.

DATED: November 12, 2025

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By */s/ Sean Pak*

Sean Pak
Melissa Baily
James D. Judah
Marc Kaplan
Iman Lordgooei

*Attorneys for GOOGLE LLC*

**CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure and Local Rule 5-1, I hereby certify that, on November 12, 2025, all counsel of record who have appeared in this case are being served with a copy of the foregoing via email.

*/s/* Sean Pak
Sean Pak