CLEMENT SETH ROBERTS (SBN 209203)
croberts@orrick.com
BAS DE BLANK (SBN 191487)
basdeblank@orrick.com
ALYSSA CARIDIS (SBN 260103)
acaridis@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:  +1 415 773 5700
Facsimile:  +1 415 773 5759

SEAN M. SULLIVAN (*pro hac vice*)
sullivan@ls3ip.com
COLE RICHTER (*pro hac vice*)
richter@ls3ip.com
LEE SULLIVAN SHEA & SMITH LLP
656 W Randolph St., Floor 5W
Chicago, IL 60661
Telephone:  +1 312 754 0002
Facsimile:  +1 312 754 0003

*Attorneys for Sonos, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SONOS, INC., <br><br> Plaintiff and Counter-defendant, <br><br> v. <br><br> GOOGLE LLC, <br><br> Defendant and Counter-claimant. | Case No. 3:20-cv-06754-WHA <br><br> Consolidated with <br> Case No. 3:21-cv-07559-WHA <br><br> **SONOS, INC.'S SUPPLEMENTAL BRIEF IN OPPOSITION TO GOOGLE'S MOTION FOR JUDGMENT AS A MATTER OF LAW AND NEW TRIAL** <br><br> Hearing Date: December 10, 2025, 8:00 a.m. <br> Judge:  Hon. William Alsup <br> Courtroom:  12, 19th Floor |

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................................................................ ii

I. Google Forfeited Its Belated Request For JMOL Of No Damages. .................................1

II. Google's Own Expert Testified That The Jury Should Award Millions Of Dollars, Making JMOL Of No Damages Improper. ..........................................................................1

III. If The Court Grants Remittitur, The Seventh Amendment Requires Giving Sonos The Option Of A New Trial On Damages. .......................................................................2

IV. Substantial Evidence Supports The Jury's Damages Award. ............................................3

V. Substantial Evidence Supports The Jury's Infringement Finding. ....................................7

CONCLUSION ..................................................................................................................................8

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*City of Los Angeles v. FAA*,
 63 F.4th 835 (9th Cir. 2023) ............................................................................................1

*Claiborne v. Blauser*,
 934 F.3d 885 (9th Cir. 2019) ............................................................................................1

*EcoFactor, Inc. v. Google LLC*,
 137 F.4th 1333 (Fed. Cir. 2025) (en banc) ...........................................................3, 4, 5, 7

*Finesse Wireless LLC v. AT&T Mobility LLC*,
 --- F.4th ---, 2025 WL 2713518 (Fed. Cir. 2025) ............................................................7

*Greenwood v. FAA*,
 28 F.3d 971 (9th Cir. 1994) ..............................................................................................1

*Hetzel v. Prince William County*,
 523 U.S. 208 (1998)..........................................................................................................3

*Hovey v. Ayers*,
 458 F.3d 892 (9th Cir. 2006) ............................................................................................5

*Lucent Techs., Inc. v. Gateway, Inc.*,
 580 F.3d 1301 (Fed. Cir. 2009)........................................................................................5

*Oltz v. St. Peter's Cmty. Hosp.*,
 861 F.2d 1440 (9th Cir. 1988) .........................................................................................3

*Rex Medical, L.P. v. Intuitive Surgical, Inc.*,
 --- F.4th ---, 2025 WL 2799030 (Fed. Cir. 2025) .........................................1, 2, 3, 4, 7

*Estate of Saunders v. Comm'r*,
 745 F.3d 953 (9th Cir. 2014) ............................................................................................1

*Sprint Commc'ns Co. v. Time Warner Cable, Inc.*,
 760 F. App'x 977 (Fed. Cir. 2019) ................................................................................5, 6

*United States v. Perez*,
 116 F.3d 840 (9th Cir. 1997) (en banc) ...........................................................................1

*Virnetx, Inc. v. Cisco Sys., Inc.*,
 767 F.3d 1308 (Fed. Cir. 2014)........................................................................................5

Per the Court's scheduling order, Sonos submits this supplemental brief to respond to Google's supplemental brief (GB) and address several recent opinions from the Federal Circuit.

## I. Google Forfeited Its Belated Request For JMOL Of No Damages.

The trial in this case ended almost three years ago, but Google now seeks JMOL of no damages for the first time. GB at 3. Google forfeited that request by "fail[ing] to make a timely assertion." *Claiborne v. Blauser*, 934 F.3d 885, 893 (9th Cir. 2019) (quoting *United States v. Perez*, 116 F.3d 840, 845 (9th Cir. 1997) (en banc)). Neither Google's JMOL motion nor its reply brief sought JMOL of no damages. *See generally* Dkt. Nos. 824 (Motion), 843 (Reply). Instead, Google asked the Court to either "reduce the damage award to $2.25 million" or grant a new trial on damages. Motion at 18-25; *see also* Reply at 14 ("The Court should grant a new trial on limited issues or remittitur." (capitalization altered)).

At most, a footnote in Google's reply brief alluded to the hypothetical possibility of a zero-damages award: "If the Court finds Sonos failed to satisfy its burden such that the record lacks any evidence of a reasonable royalty rate, the Federal Circuit has even gone so far as to approve an award of zero damages." Reply at 14 n.7. That "bare assertion does not preserve" a request for JMOL of no damages. *Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994). And even if that single sentence in Google's reply brief amounted to a cognizable argument, Google forfeited the argument twice over: once by "raising it for the first time in [the] reply brief," *City of Los Angeles v. FAA*, 63 F.4th 835, 847 (9th Cir. 2023), and again by making the argument "only in [a] footnote[]," *Estate of Saunders v. Comm'r*, 745 F.3d 953, 962 n.8 (9th Cir. 2014).

## II. Google's Own Expert Testified That The Jury Should Award Millions Of Dollars, Making JMOL Of No Damages Improper.

Google portrays this case as "analogous" to *Rex Medical, L.P. v. Intuitive Surgical, Inc.*, --- F.4th ---, 2025 WL 2799030 (Fed. Cir. 2025), only by ignoring its own expert's opinion that a reasonable royalty required Google to pay Sonos millions of dollars. GB at 1-4. Google also ignores significant procedural differences between this case and *Rex Medical*. *See id.*

In *Rex Medical*, Rex's damages case for the single patent asserted at trial primarily rested on two things: (1) a portfolio license covering 36 patents and patent applications that Rex

1  granted to a third party, Covidien, for a lump sum of $10 million; and (2) a fact witness's
2  testimony that negotiations for the Covidien license focused on the asserted patent and one other
3  patent. 2025 WL 2799030, at *7. Based on that evidence, the jury awarded $10 million in
4  damages. *Id.* at *3. But Rex's fact witness had admitted, among other things, that "he was not
5  sure whether the Covidien license was relevant to damages," and "he could not actually assign
6  any value to the [asserted] patent." *Id.* at *7. And "[n]either party's damages expert testified at
7  trial." *Id.* at *3. Thus, the Federal Circuit affirmed the district court's grant of JMOL of no
8  damages because there was no record evidence that would allow the jury to "apportion the
9  Covidien license amount or infer an appropriate damages number." *Id.* at *8.
10         Here, by contrast, even setting aside all the other evidence discussed below that supports
11  the jury's verdict, *infra* 4-7, Google's own expert, Mr. Bakewell, testified that the jury should
12  award a lump-sum royalty of $2.25 million, Tr. 1613:11-19. Google's supplemental brief
13  mentions this testimony only in passing. GB at 6. But Google previously conceded that the
14  record supports at least the royalty Mr. Bakewell testified to: "The Court should therefore limit
15  damages to the amount the record supported—a lump-sum payment of $2.25 million." Reply at
16  14; *see also* Motion at 18. And *Rex Medical* makes clear that "JMOL of no damages would be
17  inappropriate" where the record contains "evidence from which a jury could reasonably
18  determine damages for infringement of the [asserted] patent without speculation." 2025 WL
19  2799030, at *8. The record here, including Google's own expert's testimony, plainly contradicts
20  Google's brand-new argument that the jury could not award any damages without "improper
21  guesswork." *Contra* GB at 3 (quoting *Rex Medical*, 2025 WL 2799030, at *8).

**III.     If The Court Grants Remittitur, The Seventh Amendment Requires Giving Sonos The Option Of A New Trial On Damages.**

           The Court could not grant Google's request for a remittitur to $2.25 million without
offering Sonos "the option of a new trial" on damages instead, as the Constitution demands. *Rex Medical*, 2025 WL 2799030, at *6 n.3 (internal quotation marks omitted). Entering "judgment for a lesser amount than that determined by the jury without allowing [the plaintiff] the option of a new trial cannot be squared with the Seventh Amendment." *Hetzel v. Prince William County*,

2

523 U.S. 208, 211 (1998); *see also Oltz v. St. Peter's Cmty. Hosp.*, 861 F.2d 1440, 1452 (9th Cir. 1988) (If the district court, "after viewing the evidence most favorably to the prevailing party, concludes that excessive damages were awarded, it has two alternatives: it may grant a motion for a new trial or condition denial of such a grant upon acceptance of remittitur by the prevailing party."). Google suggests that *Rex Medical* affirmed "the reduction of the damages award without a new trial," GB at 2, but the Federal Circuit explained that the district court's decision there "[w]as a grant of JMOL of no damages, not a remittitur," 2025 WL 2799030, at *6.

Google also claims that JMOL of no damages would be "more appropriate" than a new trial because "Sonos 'had the opportunity to conduct discovery and … to offer other evidence potentially relevant to damages' but instead 'chose to hinge its damages theory on …' its now-excluded IFTTT theory." GB at 4 (quoting *Rex Medical*, 2025 WL 2799030, at *8). That characterization misrepresents the sequence of events here. In *Rex Medical*, even though the district court excluded Rex's expert's testimony on the Covidien license *before* trial, Rex still chose to rest its case on the same excluded theory at trial, just presented through a fact witness instead. 2025 WL 2799030, at *4, *7. Rex failed to take any steps to try to shift its damages case, such as asking to supplement its expert's report, calling its expert to testify to the non-excluded portions of his report, or calling other witnesses from Intuitive. *See id.* at *7-8. Here, on the other hand, the Court did not exclude Mr. Malackowski's IFTTT-related testimony until the middle of trial, after he had already testified. *See* Tr. 1402:9-21; Dkt. No. 813. Sonos had no opportunity to change its damages theory at that point.

**IV.     Substantial Evidence Supports The Jury's Damages Award.**

Besides ignoring its expert's testimony, Google also disregards most of the evidence supporting the jury's award, along with major procedural differences between this case, *Rex Medical*, and *EcoFactor, Inc. v. Google LLC*, 137 F.4th 1333 (Fed. Cir. 2025) (en banc). Viewing the evidence in the light most favorable to Sonos and drawing all inferences in Sonos's favor, as the Court must in assessing Google's JMOL motion, substantial evidence supports the verdict. As Sonos's opposition to Google's JMOL explained, the jury awarded a running royalty at a rate less than Sonos's portfolio licenses, more than Google's expert opined was appropriate,

and adjusted for the value of the '885 patent. *See* Dkt. No. 839 (Opp.) at 19-25. Ultimately, the jury's rate amounted to about 2.3% of the price of an infringing Nest Audio, which is hardly a disproportionate sum for an important feature that Google's customers would have had a "poor" user experience without. Opp. at 21 (quoting Tr. 820:12-821:12).

To start, Google protests that *Rex Medical*'s affirmance of excluding Rex's expert's testimony on the Covidien license for failure to apportion "confirms that Sonos's portfolio-wide licenses cannot support the jury's $2.30 per-unit royalty." GB at 2-3. But Sonos never argued that the portfolio licenses supported the amount of the award, other than by establishing a "cap" that the jury of course "could not" exceed. Opp. at 20 (quoting Tr. 1100:1-8, 1164:17-24). Unlike in *Rex Medical*, where the jury awarded Rex the exact same royalty for a single patent as the Covidien license used for Rex's entire patent portfolio, *supra* 2, the jury here awarded Sonos far less than the running royalties from its portfolio licenses, which ranged from $6 to $30 per unit, *see* TX6631; TX6632.

That was entirely consistent with the Court's instructions and Mr. Malackowski's testimony. Mr. Malackowski testified expressly that Sonos's portfolio licenses were relevant under the first *Georgia-Pacific* factor to show "that this should be a running royalty" and to "set the cap for the running royalty amount." Tr. 1100:4-8. And the Court instructed the jury "[t]here are license agreements, for example, admitted into evidence that you may find sufficiently comparable and that you may use along with other evidence of economic value if applicable." Tr. 1297:11-14. Google neither asked for a limiting instruction on how the jury could consider the licenses nor made any relevant objection to the Court's instructions on comparable licenses. *See* Opp. at 22-23, 25 (analyzing other evidence supporting using a running royalty); Dkt. No. 762 at 22, 24 (instructions discussing license agreements).

Turning to *EcoFactor*, Google contends that lump-sum royalties such as Mr. Bakewell's opinion "cannot support a running-royalty verdict absent evidence allowing the jury" to "conver[t]" from a lump sum to a running royalty. GB at 5 (citing *EcoFactor*, 137 F.4th at 1341). That is true as a general matter; lump-sum licenses typically cover all past and future usage, so the lump-sum amount is not "tied directly to how often the licensed invention is later

used or incorporated into products by the licensee," unlike a running-royalty payment. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1326 (Fed. Cir. 2009); *see also* Dkt. No. 762 at 26 (instructions on per-unit royalties and lump-sum payments). Here, however, Mr. Bakewell explained that his lump-sum award covered only Google's past usage of Sonos's technology, because (in his view) Google's redesign meant "there's [no] ongoing impact that you'd have to quantify." Tr. 1558:18-24. In other words, to translate Mr. Bakewell's lump sum into a per-unit royalty, all the jury had to do was divide $2.25 million by the number of infringing units, because Google never produced updated financial information for the period following its redesign. From there, the jury could make upward adjustments based on the *Georgia-Pacific* factors and other evidence. *See infra* 5-7.

Google also relies on *EcoFactor* to claim that it suffered prejudice from the jury hearing Mr. Malackowski's IFTTT theory. GB at 6. But this case is *EcoFactor*'s opposite. In *EcoFactor*, the district court denied Google's motion to exclude the damages testimony and allowed the jury to consider that testimony, which the Federal Circuit later held was unreliable and "inadmissible under Rule 702." 137 F.4th at 1337, 1346. Here, the Court excluded Mr. Malackowski's IFTTT testimony and instructed the jury not to rely on that testimony. *See* Dkt. No. 762 at 21-22. The law "presume[s] that juries follow their instructions," *Hovey v. Ayers*, 458 F.3d 892, 913 (9th Cir. 2006), and Google does not even try to identify evidence suggesting that the jury did not do so here, *see* GB at 6. In fact, the jury submitted a note during deliberations asking: "Are any of Mr. Malackowski's non-IFTTT *GP* calculations in evidence?" Tr. 2038:7-20. That shows the jury's understanding that it could not consider the IFTTT testimony. And the jury chose a different damages number than what Mr. Malackowski offered, so there is no reason to believe that the jury improperly relied on his excluded testimony.

What's more, the record contains ample support for the jury's damages award even without the IFTTT testimony. The Federal Circuit—including in *EcoFactor* itself—has explained that apportionment "involve[s] some degree of approximation and uncertainty," *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1328 (Fed. Cir. 2014), and "can be achieved in different ways," *Sprint Commc'ns Co. v. Time Warner Cable, Inc.*, 760 F. App'x 977, 983 (Fed.

Cir. 2019). One way is for the jury to "determin[e] an appropriate royalty by applying the so-called *Georgia-Pacific* factors, under proper instructions embodying apportionment principles." *Id.* That is what happened here. Both sides' experts testified about the *Georgia-Pacific* factors. *See* Opp. at 20. And the Court instructed the jury to consider not only the *Georgia-Pacific* factors, but also "any other factors which in your mind would have increased or decreased the royalty Google would have been willing to pay and Sonos would have been willing to accept." Dkt. No. 762 at 23-24; *see also id.* at 24-25 (apportionment instruction). Google never raised any relevant objection to those instructions, and the Court must presume the jury followed them.[1]

The jury had Mr. Bakewell's extrapolated per-unit royalty as a starting point and Sonos's portfolio licenses as a cap. *Supra* 4-5. Against that backdrop, the jury could consider a host of other evidence in making upward adjustments to Mr. Bakewell's rate. *See* Opp. at 19-25. Among other things, the jury learned the price of Google's products; a Nest Audio, for example, cost $99 at the time of trial. Opp. at 22. The jury also heard that Google had no commercially acceptable non-infringing alternatives to using Sonos's patented technology. Opp. at 21-22. Similarly, the jury knew that Google found having the ability to create overlapping groups to be critical for the user experience, and that Google touted the speaker-grouping feature in its marketing documents. Opp. at 21. What's more, the jury knew that Google considered overlapping groups so valuable that it tried (and failed) to complete a design-around that preserved the overlapping functionality. *Id.* The jury also saw from Google's own data that almost 60% of people are very likely or extremely likely to buy three or more speakers. Opp. at 21. And Sonos's general counsel testified that licensees who sell more products and "cut into [Sonos's] business more … should pay more because they're taking more of our customers." Opp. at 23 (quoting Tr. 1019:19-1020:6). Here, the jury found that Google sold more than 14 million infringing units. Dkt. No. 774 at 4. Plus, the jury knew the rates other licensees had agreed to pay for access to Sonos's whole portfolio, giving a cap for the jury's apportionment analysis. Under the Court's instructions, all of this evidence was relevant to the *Georgia-Pacific*

---

[1] Google asked for the apportionment instruction to mention lump-sum royalties, but Google did not object to the legal principle spelled out in the instruction or the scope of the evidence that the jury could consider when evaluating apportionment. *See* Dkt. No. 752 at 3.

1  analysis, and it allowed the jury to apportion to the value of the '885 patent. All this evidence
2  distinguishes this case from *Rex Medical* and *EcoFactor*.
3        Contrary to Google's view (GB at 4), this evidence is unlike the nebulous "factors" that
4  the Federal Circuit rejected in *Rex Medical* because "the jury heard no testimony on how to
5  consider the[m] to apportion." 2025 WL 2799030, at *7. Those "factors" that Rex's lay witness
6  testified to had nothing to do with the asserted patent's value. *See id.* They included, among
7  other things, that "Covidien settled very early in the litigation process," "Covidien was very
8  cooperative," and "Covidien did not challenge Rex's patents" at the Patent Office. *Id.*

### V. Substantial Evidence Supports The Jury's Infringement Finding.

10        Google's noninfringement argument is just a repeat of its failed trial arguments. *Finesse*
11  *v. AT&T* is miles away from the testimony at issue here. Dr. Almeroth, Sonos's technical expert,
12  explained that players in Google's redesign continue to operate in standalone mode until the
13  player is told to play back media in a group. Tr. 799:14-22. Google's redesign amounted to a
14  single new function in the source code on the accused media players—the "StopCurrentApp"
15  function. Tr. 1281:20-1282:5. Google's engineer, Mr. Mackay, testified that StopCurrentApp
16  puts the player into what Google calls "idle mode," *see* Tr. 1256:18-22, and the jury had to
17  resolve whether "idle mode" was just the claimed standalone mode in disguise. The jury found
18  in Sonos's favor, and nothing in *Finesse* justifies undoing the jury's verdict.
19        In *Finesse*, the patentee's expert flip-flopped between first identifying one set of signals
20  as the claimed "signals of interest and interference generating signals" and then (arguably)
21  identifying a different set of signals when challenged on cross-examination. *Finesse Wireless*
22  *LLC v. AT&T Mobility LLC*, --- F.4th ---, 2025 WL 2713518, at *3-4 (Fed. Cir. 2025). The
23  Federal Circuit: (1) held that the first infringement theory was inconsistent with the claim
24  language; (2) expressed skepticism that the patentee's expert actually offered a second theory;
25  and (3) held that in any event the expert had failed to explain why he had changed course. *Id.* at
26  *4. That left the infringement verdict unsupported by substantial evidence. *Id.*
27        Google tries to fit this case into *Finesse* by pointing to differences between
28  Dr. Almeroth's testimony for Sonos and Mr. Mackay's testimony for Google. Nothing in

*Finesse* suggests that a jury's resolution of competing testimony from opposing parties provides a basis for JMOL. Here, Dr. Almeroth opined that the "StopCurrentApp" function just means any current playback stops, Tr. 799:14-12, while Mr. Mackay said playback is "torn down" or "killed," Tr. 1256:23-25. Whatever difference there was in those descriptions of the accused products and how Sonos's claims applied to them, the jury resolved it.

The closest Google comes to identifying a contradiction in Dr. Almeroth's testimony is to say that Dr. Almeroth needed to explain how a speaker "in idle mode" was "configured to play back music individually." GB at 8. Dr. Almeroth did that by clarifying that the claimed "standalone mode" does not require active playback of music, so stopping playback did not take a speaker out of standalone mode: "[T]he fact that you stop playing audio as part of group creation does not take that speaker out of standalone mode. It just stops the ability to hear audio of what's already playing." Tr. 802:23-25; *see also* Tr. 802:5-803:11.[2] Dr. Almeroth thus explained that a speaker that is not actively playing in a group—including a player that has just stopped playback because of the "StopCurrentApp" function—can still be "configured to play back media individually." And Google's engineer admitted that "idle mode" is like "closing a tab" in a web browser and resuming active playback is "like opening a webpage." Tr. 1292:3-24. A web browser (or a computer loaded with a web browser) is still configured to display websites even when a tab is closed. There was nothing "confusing and unclear" or "self-contradictory" in Dr. Almeroth's testimony.

## CONCLUSION

For the foregoing reasons and the reasons explained in Sonos's opposition at Dkt. No. 839, the Court should deny Google's JMOL motion and its motion for a new trial. Sonos stands on its prior briefing on Injunctive Relief and Additional Damages, Dkt. No. 820, and Sonos's Rule 50 and 59 Motion, Dkt. No. 823.

---

[2] Dr. Almeroth did not use the words "idle mode" because Google first introduced "idle mode" through Mr. Mackay's testimony. The Court struck Google's expert's testimony on "idle mode" as outside the scope of his reports. *See* Tr. 1415:6-1416:19; Dkt. No. 839 at 12-13. Dr. Almeroth's testimony about "StopCurrentApp" covers the same functionality that Google calls "idle mode."

Dated: November 25, 2025

ORRICK HERRINGTON & SUTCLIFFE LLP
*and*
LEE SULLIVAN SHEA & SMITH LLP

By: */s/ Clement S. Roberts*
    Clement S. Roberts

*Attorneys for Sonos, Inc.*

**CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure and Local Rule 5-1, I hereby certify that, on November 25, 2025, all counsel of record who have appeared in this case are being served with a copy of the foregoing via email.

/s/ Clement S. Roberts
Clement S. Roberts